B10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT Central District Of California | PROOF OF CLAIM |
|---|---|
| Name of Debtor: EPD Investment Co., LLC | Case Number: 2:10-62208-ER |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

Telephone number:

Court Claim Number: ____________
(*If known*)

Filed on: ____________

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

**3a. Debtor may have scheduled account as:** ____________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe:** All assets

**Value of Property: $** ____________ **Annual Interest Rate** 12 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $** ____________ **Basis for perfection:** VCC-1

**Amount of Secured Claim: $** 2,672,000 **Amount Unsecured: $** ____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$____________

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 12/12/11 | Signature: The person filing this claim must sign it. Sign ~~and print name~~ and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. [signature], Trustee | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT C

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California** — **PROOF OF CLAIM**

Name of Debtor: EPD Investment Co., LLC

Case Number: 2:10-62208-ER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

Telephone number:

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** ______
*(If known)*

**Filed on:** ______

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

3a. Debtor may have scheduled account as: ______
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe:** All assets

**Value of Property: $** ______ **Annual Interest Rate** 12 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $** ______ **Basis for perfection:** VCC-1

**Amount of Secured Claim: $** 2,672,000 **Amount Unsecured: $** ______

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ ______

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 12/12/11

**Signature:** The person filing this claim must sign it. ~~Sign and print name~~ and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
[signature], Trustee

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

004939

75304004943029

# EXHIBIT D

B 10 (Official Form 10) (12/12)

UNITED STATES BANKRUPTCY COURT Central District of California

**PROOF OF CLAIM**

Name of Debtor: Jerrold S. Pressman

Case Number: 2:12-bk-13760-ER

FILED
FEB 15 2013
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: RS Deputy Clerk

COURT USE ONLY

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Bright Conscience Trust

Name and address where notices should be sent:
Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades, CA 90272-4355
Telephone number: email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: ____________
(*If known*)

Filed on: ____________

Name and address where payment should be sent (if different from above):
Telephone number: email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 3,529,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 0 7 1 0

**3a. Debtor may have scheduled account as:** ____________
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):** ____________
(See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☑ Other
**Describe:** All assets

**Value of Property:** $____________

**Annual Interest Rate** 24.000% ☑ Fixed or ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $____________

**Basis for perfection:** UCC-1

**Amount of Secured Claim:** $ 3,529,000.00

**Amount Unsecured:** $____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:** $____________

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the ~~best of my knowledge~~, information, and reasonable belief.

Print Name: Poshow Ann Kirkland
Title: Trustee of the Bright Conscience Trust
Company:
Address and telephone number (if different from notice address above):

(Signature) 02/13/2013 (Date)

Telephone number: email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# EXHIBIT E

# NOTICE OF ASSIGNMENT

Reference is made to the Secured Promissory Note, Continuing Guaranty, and Security Interest Agreement dated as of November 8, 2007, by and among John C. Kirkland, EPD Investment Co., LLC, and Jerrold S. Pressman, and all other Loan Documents concurrently or subsequently entered into among the parties.

Notice is hereby given that all rights of John C. Kirkland under all such Loan Documents have been sold transferred and assigned to the Bright Conscience Trust Dated September 9, 2009.

John C. Kirkland

ACKNOWLEDGED AND ACCEPTED
AS OF SEPTEMBER 10, 2009:

Jerrold S. Pressman

EPD INVESTMENT CO., LLC

By: ________________
Name: Jerrold S. Pressman
Title: Chairman

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing documents entitled: **CHAPTER 7 TRUSTEE'S REQUESTS FOR ADMISSION TO POSHOW ANN KIRKLAND, IN HER CAPACITY AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 (SET ONE)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

*** Service to judge not required (discovery)

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On ____________ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On ________________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed:

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 20, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed:

*** Service to judge not required (discovery)

**VIA OVERNIGHT MAIL & EMAIL**

Counsel for Poshow Ann Kirkland, in Her Capacity as
Trustee of the Bright Conscience Trust Dated
September 9, 2009
Lewis R. Landau, Esq.
22287 Mulholland Hwy., # 318
Calabasas, CA 91302
Email: Lew@Landaunet.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 20, 2017 | MELA ZEPEDA | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 3

LARRY W. GABRIEL – Bar No. 68329
STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
MICHAEL W. DAVIS – Bar No. 274126
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@bg.law
cweber@bg.law
mdavis@bg.law

Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,<br><br>Consolidated Debtors.<br><br>EIN No. xxx-0994<br><br>JASON M. RUND, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND, individually and as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,<br><br>Defendants. | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-02424-ER<br><br>**CHAPTER 7 TRUSTEE'S REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO POSHOW ANN KIRKLAND, IN HER CAPACITY AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 (SET ONE)**<br><br>**** CORRECTED TYPOGRAPHICAL ERRORS IN DEFINITIONS SECTION**<br><br>**Fed. R. Bankr. P. 7034 and Fed. R. Civ. P. 34** |

**PROPOUNDING PARTY:** **PLAINTIFF, JASON M. RUND, CHAPTER 7 TRUSTEE**

**RESPONDING PARTY:** **DEFENDANT, POSHOW ANN KIRKLAND, in her capacity as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009**

**SET NUMBER:** **ONE (1)**

Plaintiff Jason M. Rund, the duly appointed and acting Chapter 7 Trustee ("Plaintiff" or "Trustee") for the consolidated bankruptcy estate (the "Estate") of Debtors EPD Investments Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (EPD and Pressman are collectively referred to herein as "Debtors") hereby propounds the following Requests for Production of Documents and Things ("Requests for Production"), Set Number One, pursuant to Fed.R.Bankr.P. 7034 and Fed.R.Civ.P. 34, to Defendant POSHOW ANN KIRKLAND, in her capacity as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 ("Defendant").

The Trustee requests that Defendant, within thirty (30) days after service hereof, provide written responses to each and every Request for Production and produce for copying all requested documents at the offices of Brutzkus Gubner, at 21650 Oxnard Street, Suite 500 Woodland Hills, CA 91367.

## PRELIMINARY STATEMENT

1. YOU are required to answer each Request for Production separately and fully in writing, unless it is objected to. If YOU object to any Request for Production, YOU must state the reasons for the objection in lieu of an answer.

2. YOU are to serve a copy of YOUR answers, and objections if any, within thirty (30) days after the service date of these Requests for Production.

3. YOUR response to this discovery must contain a certification as set forth in Fed. R. Civ. P. 26(g). If YOUR certification is made in violation of Fed. R. Civ. P. 26, the Court, upon motion or its own initiative, shall impose upon the person making the certification, upon YOU, or both, an appropriate sanction, which may include an order to pay the amount of reasonable expenses incurred because of the violation, including reasonable attorney's fees.

4. If YOUR responses are deemed insufficient, YOU may be compelled by an order of

the court pursuant to Fed. R. Civ. P. 37 to respond properly to the request and to pay the reasonable expenses incurred, including attorney's fees, in obtaining the order.

5. The singular form of a word should be interpreted as plural and the plural should be interpreted as singular to give the word or words the broadest possible meaning.

**DEFINITIONS**

6. Capitalized terms used herein shall have the following meanings:

a. "ADVERSARY PROCEEDING" means and refers to the adversary proceeding styled *Jason M. Rund, Trustee v. John C. Kirkland, et. al.*, Adv. Case No. 2:12-ap-02424-ER, currently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division.

b. "BANKRUPTCY CASE" means and refers to the consolidated bankruptcy case, styled *In re EPD Investment Company, LLC, and Jerrold S. Pressman*, Case No. 2:10-bk-62208-ER, currently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division.

c. "PLAINTIFF" or "TRUSTEE" means and refers to Jason M. Rund, the Chapter 7 Trustee in the BANKRUPTCY CASE, and the named plaintiff in the ADVERSARY PROCEEDING.

d. "BC TRUST" means and refers to the Bright Conscience Trust Dated September 9, 2009.

e. "DEFENDANT" or "YOU" means and refers to Poshow Ann Kirkland, an individual, solely in her capacity as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 and her assignees, employees, agents, and representatives acting on her behalf.

f. "POSHOW" means and refers to Poshow Ann Kirkland, an individual, and her assignees, employees, agents, and representatives acting on her behalf.

g. "KIRKLAND" means and refers to defendant John C. Kirkland, an individual, and his assignees, employees, agents, and representatives acting on his behalf.

h. “PETITION DATE” shall mean the date on which the involuntary bankruptcy petition was filed against EPD, on December 7, 2010.

i. “EPD” means and refers to EPD Investments Co., LLC, a debtor in the BANKRUPTCY CASE.

j. “FTB” means and refers to the State of California Franchise Tax Board.

k. “IRS” means and refers to the Internal Revenue Service of the United States federal government.

l. “PRESSMAN” means and refers to Jerold S. Pressman, an individual, a debtor in the BANKRUPTCY CASE.

m. “DEBTORS” means and refers collectively to debtors EPD Investment Company, LLC and Jerrold S. Pressman.

n. “COMMUNICATION(S)” means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, e-mails, text messages, facsimiles, letters, memoranda, meetings, notes, speeches, or other transfer of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests transcribes or records any such communication.

o. “DOCUMENT(S)” shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure, and shall include all tangible sources of information, including but not limited to: (a) the original and any non-identical copy (whether different from the original because of handwritten notes or underlining made thereon, attachments affixed thereto, or otherwise) or drafts thereof, of any handwritten, typewritten, printed, recorded or graphic matter, however produced or reproduced, including but not limited to charts, plans, drawings, art work, transparencies, sketches, blueprints, files, electronic mail, computer data and/or tapes, reports, travel reports, expense reports, memoranda, notes, minutes, letters and other correspondence, testimony, summaries, abstracts, studies, surveys, graphs, statistics, tables, forms, work papers, logs, indexes, drafts, advertisements, and scripts; and (b) any mechanical, magnetic or electronic or other

recordings of any voice, sound, image or data including but not limited to photographs, microfilms, video and audio tapes, film, and any other data compilation.

p. "REGARDING" means and refers to directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

q. "RELEVANT PERIOD" shall mean and include the period from December 1, 2003, through the present.

r. "STRETTO" means and refers to Stretto Enterprises, a California Corporation.

s. "TRANSFER(S)" means and refers to (A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of an equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with— (i) property; or (ii) an interest in property. "TRANSFER(S)" also includes any and all monies paid by DEBTORS to YOU or to another entity for the benefit of the BC TRUST, by any means, including but not limited to cash, check, cashier's check or wire transfer, during the RELEVANT PERIOD.

t. "PROOF OF CLAIM 171" means and refers that the certain proof of claim that the BC TRUST filed in the BANKRUPTCY CASE on December 12, 2011 and which has been designated as Claim 171 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 171 is attached hereto as **EXHIBIT A** and is incorporated herein by this reference.

u. "PROOF OF CLAIM 235" means and refers that the certain proof of claim that the BC TRUST filed in the BANKRUPTCY CASE on December 12, 2011 and which has been designated as Claim 235 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 171 is attached hereto as **EXHIBIT B** and is incorporated herein by this reference.

v. "PROOF OF CLAIM 236" means and refers that the certain proof of claim that the BC TRUST filed in the BANKRUPTCY CASE on December 12, 2011 and which has been

designated as Claim 236 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 236 is attached hereto as **EXHIBIT C** and is incorporated herein by this reference.

w. "PROOF OF CLAIM 13-1" means and refers that the certain proof of claim that the BC TRUST filed in bankruptcy case no. 2:12-bk-13760-ER on February 15, 2013 and which has been designated as Claim 13-1 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 13-1 is attached hereto as **EXHIBIT D** and is incorporated herein by this reference.

## **REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1.:**

All DOCUMENTS required to be listed in the BC TRUST's initial disclosures.

**REQUEST FOR PRODUCTION NO. 2.:**

All DOCUMENTS and COMMUNICATIONS REGARDING PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 3.:**

All DOCUMENTS and COMMUNICATIONS that support PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 4.:**

All DOCUMENTS and COMMUNICATIONS evidencing the amount claimed by the BC TRUST as set forth in PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 5.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 171 are entitled to priority treatment in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 6.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 171 are secured by the DEBTORS' assets.

///

///

///

**REQUEST FOR PRODUCTION NO. 7.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that the BC TRUST has perfected its security interests in the DEBTORS' assets REGARDING the amounts claimed in PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 8.:**

All DOCUMENTS and COMMUNICATIONS that the BC TRUST relied upon when preparing PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 9.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who prepared PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 10.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who filed PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 11.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and KIRKLAND REGARDING PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 12.:**

All DOCUMENTS and COMMUNICATIONS between POSHOW and KIRKLAND REGARDING PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 13.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and POSHOW REGARDING PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 14.:**

All DOCUMENTS and COMMUNICATIONS REGARDING PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 15.:**

All DOCUMENTS and COMMUNICATIONS that support PROOF OF CLAIM 235.

///

///

**REQUEST FOR PRODUCTION NO. 16.:**

All DOCUMENTS and COMMUNICATIONS evidencing the amount claimed by the BC TRUST as set forth in PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 17.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 235 are entitled to priority treatment in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 18.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 235 are secured the DEBTORS' assets.

**REQUEST FOR PRODUCTION NO. 19.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that the BC TRUST has perfected its security interests in the DEBTORS' assets REGARDING any amounts claimed in PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 20.:**

All DOCUMENTS and COMMUNICATIONS that the BC TRUST relied upon when preparing PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 21.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who prepared PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 22.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who filed PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 23.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and KIRKLAND REGARDING PROOF OF CLAIM 235.

///

///

**REQUEST FOR PRODUCTION NO. 24.:**

All DOCUMENTS and COMMUNICATIONS between POSHOW and KIRKLAND REGARDING PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 25.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and POSHOW REGARDING PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 26.:**

All DOCUMENTS and COMMUNICATIONS REGARDING PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 27.:**

All DOCUMENTS and COMMUNICATIONS that support PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 28.:**

All DOCUMENTS and COMMUNICATIONS evidencing the amount claimed by the BC TRUST as set forth in PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 29.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 236 are entitled to priority treatment in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 30.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 236 are secured by the DEBTORS' assets.

**REQUEST FOR PRODUCTION NO. 31.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that the BC TRUST has perfected its security interests in the DEBTORS' assets REGARDING any amounts claimed in PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 32.:**

All DOCUMENTS and COMMUNICATIONS that the BC TRUST relied upon when preparing PROOF OF CLAIM 236.

///

**REQUEST FOR PRODUCTION NO. 33.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who prepared PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 34.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who filed PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 35.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and KIRKLAND REGARDING PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 36.:**

All DOCUMENTS and COMMUNICATIONS between POSHOW and KIRKLAND REGARDING PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 37.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and POSHOW REGARDING PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 38.:**

All DOCUMENTS and COMMUNICATIONS REGARDING PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 39.:**

All DOCUMENTS and COMMUNICATIONS that support PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 40.:**

All DOCUMENTS and COMMUNICATIONS evidencing the amount claimed by the BC TRUST as set forth in PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 41.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 13-1 are entitled to priority treatment in the BANKRUPTCY CASE.

///

///

**REQUEST FOR PRODUCTION NO. 42.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 13-1 are secured by the DEBTORS' assets.

**REQUEST FOR PRODUCTION NO. 43.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that the BC TRUST has perfected its security interests in the DEBTORS' assets REGARDING any amounts claimed in PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 44.:**

All DOCUMENTS and COMMUNICATIONS that the BC TRUST relied upon when preparing PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 45.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who prepared PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 46.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who filed PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 47.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and KIRKLAND REGARDING PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 48.:**

All DOCUMENTS and COMMUNICATIONS between POSHOW and KIRKLAND REGARDING PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 49.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and POSHOW REGARDING PROOF OF CLAIM 13-1.

///

///

///

**REQUEST FOR PRODUCTION NO. 50.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain Secured Promissory Note, Continuing Guaranty, and Security Interest Agreement dated as of November 8, 2007 by and among John C. Kirkland, EPD Investment Co., LLC, and Jerrold S. Pressman.

**REQUEST FOR PRODUCTION NO. 51.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain Notice of Assignment dated September 10, 2009 by and between John C. Kirkland, Jerrold S. Pressman, and EPD Investment Co., LLC.

**REQUEST FOR PRODUCTION NO. 52.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain UCC-1 financing statement filed by the BC TRUST on or about September 11, 2009 as to all assets of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 53.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain UCC-1 financing statement amended filed by the BC TRUST on or about May 5, 2010 as to the assets of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 54.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that Funding Agreement dated July 24, 2009, between KIRKLAND, on the one hand, and the DEBTORS, on the other hand.

**REQUEST FOR PRODUCTION NO. 55.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that the BC TRUST provided to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 56.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that the BC TRUST provided to EPD.

///

///

**REQUEST FOR PRODUCTION NO. 57.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that KIRKLAND provided to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 58.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that KIRKLAND provided to EPD.

**REQUEST FOR PRODUCTION NO. 59.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that POSHOW provided to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 60.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that POSHOW provided to EPD.

**REQUEST FOR PRODUCTION NO. 61.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from either of the DEBTORS to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 62.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from the BC TRUST to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 63.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from either of the DEBTORS to POSHOW.

**REQUEST FOR PRODUCTION NO. 64.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from POSHOW to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 65.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from either of the DEBTORS to KIRKLAND.

///

**REQUEST FOR PRODUCTION NO. 66.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from KIRKLAND to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 67.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST received from either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 68.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 69.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST received from KIRKLAND.

**REQUEST FOR PRODUCTION NO. 70.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to KIRKLAND.

**REQUEST FOR PRODUCTION NO. 71.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST received from POSHOW.

**REQUEST FOR PRODUCTION NO. 72.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to POSHOW.

**REQUEST FOR PRODUCTION NO. 73.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 74.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to any person or entity REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 75.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING Katherine Werner aka Katy Werner.

///

**REQUEST FOR PRODUCTION NO. 76.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to any person or entity REGARDING Katherine Werner aka Katy Werner.

**REQUEST FOR PRODUCTION NO. 77.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING HMB Holdings, LLC.

**REQUEST FOR PRODUCTION NO. 78.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to any person or entity REGARDING HMB Holdings, LLC.

**REQUEST FOR PRODUCTION NO. 79.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 80.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to any person or entity REGARDING Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 81.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING Keith Pressman.

**REQUEST FOR PRODUCTION NO. 82.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to any person or entity REGARDING Keith Pressman.

**REQUEST FOR PRODUCTION NO. 83.:**

Any and all DOCUMENTS or COMMUNICATIONS that KIRKLAND received from any person or entity REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 84.:**

Any and all DOCUMENTS or COMMUNICATIONS that KIRKLAND sent to any person or entity REGARDING either of the DEBTORS.

///

**REQUEST FOR PRODUCTION NO. 85.:**

Any and all DOCUMENTS or COMMUNICATIONS that KIRKLAND received from any person or entity REGARDING Katherine Werner aka Katy Werner.

**REQUEST FOR PRODUCTION NO. 86.:**

Any and all DOCUMENTS or COMMUNICATIONS that KIRKLAND sent to any person or entity REGARDING Katherine Werner aka Katy Werner.

**REQUEST FOR PRODUCTION NO. 87.:**

Any and all DOCUMENTS or COMMUNICATIONS that KIRKLAND received from any person or entity REGARDING HMB Holdings, LLC.

**REQUEST FOR PRODUCTION NO. 88.:**

Any and all DOCUMENTS or COMMUNICATIONS that KIRKLAND sent to any person or entity REGARDING HMB Holdings, LLC.

**REQUEST FOR PRODUCTION NO. 89.:**

Any and all DOCUMENTS or COMMUNICATIONS that KIRKLAND received from any person or entity REGARDING Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 90.:**

Any and all DOCUMENTS or COMMUNICATIONS that KIRKLAND sent to any person or entity REGARDING Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 91.:**

Any and all DOCUMENTS or COMMUNICATIONS that KIRKLAND received from any person or entity REGARDING Keith Pressman.

**REQUEST FOR PRODUCTION NO. 92.:**

Any and all DOCUMENTS or COMMUNICATIONS that KIRKLAND sent to any person or entity REGARDING Keith Pressman.

**REQUEST FOR PRODUCTION NO. 93.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW received from any person or entity REGARDING either of the DEBTORS.

///

**REQUEST FOR PRODUCTION NO. 94.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW sent to any person or entity REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 95.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW received from any person or entity REGARDING Katherine Werner aka Katy Werner.

**REQUEST FOR PRODUCTION NO. 96.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW sent to any person or entity REGARDING Katherine Werner aka Katy Werner.

**REQUEST FOR PRODUCTION NO. 97.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW received from any person or entity REGARDING HMB Holdings, LLC.

**REQUEST FOR PRODUCTION NO. 98.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW sent to any person or entity REGARDING HMB Holdings, LLC.

**REQUEST FOR PRODUCTION NO. 99.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW received from any person or entity REGARDING Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 100.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW sent to any person or entity REGARDING Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 101.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW received from any person or entity REGARDING Keith Pressman.

**REQUEST FOR PRODUCTION NO. 102.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW sent to any person or entity REGARDING Keith Pressman.

///

**REQUEST FOR PRODUCTION NO. 103.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from POSHOW to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 104.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from KIRKLAND to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 105.:**

Any and all trust agreements REGARDING the BC TRUST.

**REQUEST FOR PRODUCTION NO. 106.:**

Any and all tax returns (state or federal) filed by the BC TRUST.

**REQUEST FOR PRODUCTION NO. 107.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the formation of the BC TRUST.

**REQUEST FOR PRODUCTION NO. 108.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the purpose of the BC TRUST.

**REQUEST FOR PRODUCTION NO. 109.:**

Any and all DOCUMENTS or COMMUNICATIONS identifying the BC TRUST's trustee(s).

**REQUEST FOR PRODUCTION NO. 110.:**

Any and all DOCUMENTS or COMMUNICATIONS identifying the BC TRUST's beneficiaries.

**REQUEST FOR PRODUCTION NO. 111.:**

Any and all DOCUMENTS or COMMUNICATIONS identifying the BC TRUST's settlor(s).

**REQUEST FOR PRODUCTION NO. 112.:**

Any and all DOCUMENTS or COMMUNICATIONS identifying the BC TRUST's grantor(s).

**REQUEST FOR PRODUCTION NO. 113.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any distributions made by the BC TRUST.

**REQUEST FOR PRODUCTION NO. 114.:**

All COMMUNICATIONS and DOCUMENTS between POSHOW and KIRKLAND REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 115.:**

All COMMUNICATIONS and DOCUMENTS between the BC TRUST and KIRKLAND REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 116.:**

All COMMUNICATIONS and DOCUMENTS between the BC TRUST and POSHOW REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 117.:**

All COMMUNICATIONS and DOCUMENTS between POSHOW and KIRKLAND REGARDING the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 118.:**

All COMMUNICATIONS and DOCUMENTS between BC TRUST and KIRKLAND REGARDING the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 119.:**

All COMMUNICATIONS and DOCUMENTS between BC TRUST and POSHOW REGARDING the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 120.:**

All DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 121.:**

All DOCUMENTS or COMMUNICATIONS REGARDING EPD during the RELEVANT PERIOD.

///

**REQUEST FOR PRODUCTION NO. 122.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from either of the DEBTORS to DEFENDANT.

**REQUEST FOR PRODUCTION NO. 123.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from either of the DEBTORS to POSHOW.

**REQUEST FOR PRODUCTION NO. 124.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from either of the DEBTORS to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 125.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from either of the DEBTORS to persons or entities for the BC TRUST's benefit.

**REQUEST FOR PRODUCTION NO. 126.:**

All DOCUMENTS or COMMUNICATIONS REGARDING transfers from either of the DEBTORS to persons or entities for KIRKLAND's benefit.

**REQUEST FOR PRODUCTION NO. 127.:**

All DOCUMENTS or COMMUNICATIONS REGARDING transfers from either of the DEBTORS to persons or entities for POSHOW's benefit.

**REQUEST FOR PRODUCTION NO. 128.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any checks from the BC TRUST to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 129.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any checks from either of the DEBTORS to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 130.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any wire transfers from the BC TRUST to either of the DEBTORS.

///

**REQUEST FOR PRODUCTION NO. 131.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any wire transfers from either of the DEBTORS to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 132.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any cashier's checks from the BC TRUST to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 133.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any cashier's checks from either of the DEBTORS to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 134.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between the BC TRUST and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 135.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between the BC TRUST and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 136.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between POSHOW and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 137.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between the BC TRUST and EPD.

**REQUEST FOR PRODUCTION NO. 138.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between the BC TRUST and EPD.

**REQUEST FOR PRODUCTION NO. 139.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between POSHOW and PRESSMAN.

///

**REQUEST FOR PRODUCTION NO. 140.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between POSHOW and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 141.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between POSHOW and EPD.

**REQUEST FOR PRODUCTION NO. 142.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between POSHOW and EPD.

**REQUEST FOR PRODUCTION NO. 143.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between KIRKLAND and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 144.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between KIRKLAND and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 145.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between KIRKLAND and EPD.

**REQUEST FOR PRODUCTION NO. 146.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between KIRKLAND and EPD.

**REQUEST FOR PRODUCTION NO. 147.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between the BC TRUST and EPD.

**REQUEST FOR PRODUCTION NO. 148.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between the BC TRUST and PRESSMAN.

///

**REQUEST FOR PRODUCTION NO. 149.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between POSHOW and EPD.

**REQUEST FOR PRODUCTION NO. 150.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between POSHOW and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 151.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between KIRKLAND and EPD.

**REQUEST FOR PRODUCTION NO. 152.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between KIRKLAND and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 153.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between KIRKLAND and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 154.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between KIRKLAND and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 155.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between KIRKLAND and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 156.:**

All COMMUNICATIONS and DOCUMENTS between KIRKLAND and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 157.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between POSHOW and Broadway Entertainment Marketing, Inc.

///

**REQUEST FOR PRODUCTION NO. 158.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between POSHOW and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 159.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between POSHOW and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 160.:**

All COMMUNICATIONS and DOCUMENTS between POSHOW and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 161.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between the BC TRUST and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 162.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between the BC TRUST and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 163.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between the BC TRUST and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 164.:**

All COMMUNICATIONS and DOCUMENTS between the BC TRUST and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 165.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans the BC TRUST made to EPD.

**REQUEST FOR PRODUCTION NO. 166.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans the BC TRUST made to PRESSMAN.

///

**REQUEST FOR PRODUCTION NO. 167.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds the BC TRUST invested in EPD.

**REQUEST FOR PRODUCTION NO. 168.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds the BC TRUST invested with PRESSMAN.

**REQUEST FOR PRODUCTION NO. 169.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds the BC TRUST transferred to EPD.

**REQUEST FOR PRODUCTION NO. 170.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds the BC TRUST transferred to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 171.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies the BC TRUST paid to EPD.

**REQUEST FOR PRODUCTION NO. 172.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies the BC TRUST paid to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 173.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any services the BC TRUST provided EPD.

**REQUEST FOR PRODUCTION NO. 174.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any services the BC TRUST provided PRESSMAN.

**REQUEST FOR PRODUCTION NO. 175.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans KIRKLAND made to EPD.

///

**REQUEST FOR PRODUCTION NO. 176.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans KIRKLAND made to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 177.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds KIRKLAND invested in EPD.

**REQUEST FOR PRODUCTION NO. 178.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds KIRKLAND invested with PRESSMAN.

**REQUEST FOR PRODUCTION NO. 179.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds KIRKLAND transferred to EPD.

**REQUEST FOR PRODUCTION NO. 180.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds KIRKLAND transferred to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 181.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies KIRKLAND paid to EPD.

**REQUEST FOR PRODUCTION NO. 182.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies KIRKLAND paid to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 183.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any services KIRKLAND provided EPD.

**REQUEST FOR PRODUCTION NO. 184.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any services KIRKLAND provided PRESSMAN.

///

**REQUEST FOR PRODUCTION NO. 185.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans POSHOW made to EPD.

**REQUEST FOR PRODUCTION NO. 186.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans POSHOW made to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 187.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds POSHOW invested in EPD.

**REQUEST FOR PRODUCTION NO. 188.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds POSHOW invested with PRESSMAN.

**REQUEST FOR PRODUCTION NO. 189.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds POSHOW transferred to EPD.

**REQUEST FOR PRODUCTION NO. 190.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds POSHOW transferred to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 191.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies POSHOW paid to EPD.

**REQUEST FOR PRODUCTION NO. 192.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies POSHOW paid to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 193.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any services POSHOW provided EPD.

///

**REQUEST FOR PRODUCTION NO. 194.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any services POSHOW provided PRESSMAN.

**REQUEST FOR PRODUCTION NO. 195.:**

All DOCUMENTS or COMMUNICATIONS between the BC TRUST and Keith Pressman REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 196.:**

All DOCUMENTS or COMMUNICATIONS between the BC TRUST and Katherine Werner aka Katy Werner REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 197.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's assets prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 198.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's liabilities prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 199.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's lenders prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 200.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's creditors prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 201.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's insolvency prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 202.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING either the DEBTORS' financial statements between 2003 and the PETITION DATE.

///

**REQUEST FOR PRODUCTION NO. 203.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the BC TRUST's knowledge of the DEBTORS' financial status between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 204.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the BC TRUST's knowledge of either of the DEBTORS' inability to pay debts as they became due between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 205.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the BC TRUST's knowledge of any fraudulent activity by either of the DEBTORS between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 206.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the BC TRUST's knowledge of the DEBTORS' operations between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 207.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the BC TRUST's knowledge that EPD operated as a ponzi scheme between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 208.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the BC TRUST's knowledge of EPD's use of funds from later investors to pay earlier investors between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 209.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING POSHOW's knowledge of the DEBTORS' financial status between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 210.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING POSHOW's knowledge of either of the DEBTORS' inability to pay debts as they became due between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 211.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING POSHOW's knowledge of any fraudulent activity by either of the DEBTORS between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 212.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING POSHOW's knowledge of the DEBTORS' operations between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 213.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING POSHOW's knowledge that EPD operated as a ponzi scheme between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 214.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING POSHOW's knowledge of EPD's use of funds from later investors to pay earlier investors between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 215.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING KIRKLAND's knowledge of the DEBTORS' financial status between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 216.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING KIRKLAND's knowledge of either of the DEBTORS' inability to pay debts as they became due between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 217.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING KIRKLAND's knowledge of any fraudulent activity by either of the DEBTORS between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 218.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING KIRKLAND's knowledge of the DEBTORS' operations between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 219.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING KIRKLAND's knowledge that EPD operated as a ponzi scheme between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 220.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING KIRKLAND's knowledge of EPD's use of funds from later investors to pay earlier investors between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 221.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's assets prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 222.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's liabilities prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 223.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's lenders prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 224.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's creditors prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 225.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's insolvency prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 226.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's investors during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 227.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's investors during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 228.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU sent to the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 229.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU sent to the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 230.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU sent to the IRS REGARDING STRETTO during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 231.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU received from the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 232.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU received from the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 233.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU received from the IRS REGARDING STRETTO during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 234.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST sent to the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 235.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST sent to the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 236.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST sent to the IRS REGARDING STRETTO during the RELEVANT PERIOD.

///

**REQUEST FOR PRODUCTION NO. 237.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST received from the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 238.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST received from the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 239.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST received from the IRS REGARDING STRETTO during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 240.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING the IRS and RELATING to either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 241.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING the FTB and RELATING to either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 242.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU sent to the IRS REGARDING KIRKLAND during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 243.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU received from the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 244.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU received from the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

///

///

**REQUEST FOR PRODUCTION NO. 245.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU received from the IRS REGARDING KIRKLAND during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 246.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST sent to the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 247.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST sent to the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 248.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST sent to the IRS REGARDING KIRKLAND during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 249.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST received from the IRS REGARDING KIRKLAND during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 250.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the BC TRUST's knowledge that EPD was making payments to its investors during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 251.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the BC TRUST's knowledge of the source of the funds that EPD was using to make payments to its investors between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 252.:**

Any and all DOCUMENTS or COMMUNICATIONS that EPD sent to its investors during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 253.:**

Any and all DOCUMENTS or COMMUNICATIONS that PRESSMAN sent to his investors during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 254.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any promissory notes or demand notes issued by PRESSMAN between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 255.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any promissory notes or demand notes issued by EPD between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 256.:**

All audited financial statements REGARDING either of DEBTORS between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 257.:**

All unaudited financial statements REGARDING either of the DEBTORS between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 258.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any UCC-1 financing statements REGARDING EPD during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 259.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any UCC-1 financing statements REGARDING PRESSMAN during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 260.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the BC TRUST's interests in EPD between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 261.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING KIRKLAND's interests in EPD between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 262.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any assignment of KIRKLAND's interests in EPD to any person or entity during the RELEVANT PERIOD.

///

**REQUEST FOR PRODUCTION NO. 263.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING HMB Holdings, LLC.

**REQUEST FOR PRODUCTION NO. 264.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING HMB Holdings, LLC's Limited Liability Company Certificate of Formation filed with the Delaware Secretary of State, Division of Corporations on September 14, 2009.

**REQUEST FOR PRODUCTION NO. 265.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain UCC-1 financing statement filed by HMB Holdings, LLC, on or about September 15, 2009 as to all assets of EPD.

**REQUEST FOR PRODUCTION NO. 266.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any proof of claim filed by the BC TRUST in the DEBTORS' BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 267.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any proof of claim filed by HMB Holdings, LLC in the DEBTORS' BANKRUPTCY CASE.

Dated: January 26, 2017

BRUTZKUS GUBNER

By: ______________________________
MICHAEL W. DAVIS
Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee

# EXHIBIT A

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California** — **PROOF OF CLAIM**

Name of Debtor: EPD Investment Co., LLC

Case Number: 2:10-62208-ER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: ____________
(*If known*)

Filed on: ____________

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

Telephone number:

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

3a. Debtor may have scheduled account as: ____________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☒ Other
Describe: All assets

Value of Property: $____________ Annual Interest Rate 12 %

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $____________ Basis for perfection: VCC-1

Amount of Secured Claim: $ 2,672,000 Amount Unsecured: $____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$____________

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

Date: 12/12/11

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature], Trustee

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

004939

75304004943029

# EXHIBIT B

Case 2:10-bk-62208-ER Claim 233-1 Filed 12/12/11 Desc Main Document Page 1 of 1

B10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT Central District Of California | PROOF OF CLAIM |
|---|---|
| Name of Debtor: EPD Investment Co., LLC | Case Number: 2:10-62208-ER |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

Court Claim Number:______
(*If known*)

Telephone number:

Filed on:______

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

**3a. Debtor may have scheduled account as:** ______
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe:** All assets

**Value of Property: $**______ **Annual Interest Rate** 12 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $**______ **Basis for perfection:** VCC-1

**Amount of Secured Claim: $** 2,672,000 **Amount Unsecured: $**______

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$______

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 12/12/11 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. [signature], Trustee | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT C

Case 2:10-bk-62208-ER Claim 236-1 Filed 12/12/11 Desc Main Document Page 1 of 1

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California** — **PROOF OF CLAIM**

Name of Debtor: EPD Investment Co., LLC

Case Number: 2:10-62208-ER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

Telephone number:

FILED
DEC 1 2 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: ___________
*(If known)*

Filed on: ___________

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

**3a. Debtor may have scheduled account as:** ___________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe:** All assets

**Value of Property: $** ___________ **Annual Interest Rate** 12 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $** ___________ **Basis for perfection:** VCC-1

**Amount of Secured Claim: $** 2,672,000 **Amount Unsecured: $** ___________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ ___________

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 12/12/11

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature], Trustee

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

004939

75304004943029

# EXHIBIT D

Case 2:12-bk-13760-ER Claim 13-1 Filed 02/15/13 Desc Main Document Page 1 of 2

B 10 (Official Form 10) (12/12)

| UNITED STATES BANKRUPTCY COURT Central District of California | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor: Jerrold S. Pressman | Case Number: 2:12-bk-13760-ER | FILED FEB 15 2013 CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA BY: RS Deputy Clerk |
| NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.* | | |
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Bright Conscience Trust | | COURT USE ONLY |
| Name and address where notices should be sent: Bright Conscience Trust 754 Swarthmore Avenue Pacific Palisades, CA 90272-4355 Telephone number: email: | | ☐ Check this box if this claim amends a previously filed claim. Court Claim Number:____ *(If known)* Filed on:____ |
| Name and address where payment should be sent (if different from above): Telephone number: email: | | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:** $ 3,529,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|---|
| 0 7 1 0 | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☑ Other
**Describe:** All assets

**Value of Property:** $____

**Annual Interest Rate** 24.000% ☑ Fixed or ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $____

**Basis for perfection:** UCC-1

**Amount of Secured Claim:** $ 3,529,000.00

**Amount Unsecured:** $____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:** $____

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/12)



**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "**redacted**".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the ~~best of my knowledge~~, information, and reasonable belief.

Print Name: Poshow Ann Kirkland
Title: Trustee of the Bright Conscience Trust
Company:
Address and telephone number (if different from notice address above):

(Signature) 02/13/2013 (Date)

Telephone number: email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing documents entitled: **CHAPTER 7 TRUSTEE'S REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO POSHOW ANN KIRKLAND, IN HER CAPACITY AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 (SET ONE) ** CORRECTED TYPOGRAPHICAL ERRORS IN DEFINITIONS SECTION Fed. R. Bankr. P. 7034 and Fed. R. Civ. P. 34**will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

*** Service to judge not required (discovery)

1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On ____________ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2. SERVED BY UNITED STATES MAIL: On ________________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed:

☐ Service information continued on attached page

3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 26, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed:

*** Service to judge not required (discovery)

**VIA OVERNIGHT MAIL & EMAIL**

Counsel for Poshow Ann Kirkland, in Her Capacity as Trustee of the Bright Conscience Trust Dated September 9, 2009
Lewis R. Landau, Esq.
22287 Mulholland Hwy., # 318
Calabasas, CA 91302
Email: Lew@Landaunet.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 26, 2017 | JESSICA ROEL | Jessica [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 4

STEVEN T. GUBNER – Bar No. 156593
LARRY W. GABRIEL – Bar No. 68329
COREY R. WEBER – Bar No. 205912
MICHAEL W. DAVIS – Bar No. 274126
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: sgubner@bg.law
lgabriel@bg.law
cweber@bg.law
mdavis@bg.law

Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,<br><br>Consolidated Debtors.<br><br>EIN No. xxx-0994 | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-02424-ER<br><br>**CHAPTER 7 TRUSTEE'S REQUESTS FOR ADMISSION TO DEFENDANT JOHN C. KIRKLAND (SET ONE)**<br><br>**Fed. R. Bankr. P. 7036 and Fed. R. Civ. P. 36** |
| JASON M. RUND, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND, individually and as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,<br><br>Defendants. | |

**PROPOUNDING PARTY: PLAINTIFF, JASON M. RUND, CHAPTER 7 TRUSTEE**

**RESPONDING PARTY: DEFENDANT, JOHN C. KIRKLAND**

**SET NUMBER: ONE (1)**

Plaintiff Jason M. Rund, the duly appointed and acting Chapter 7 Trustee ("Plaintiff" or "Trustee") for the consolidated bankruptcy estate (the "Estate") of Debtors EPD Investments Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (EPD and Pressman are collectively referred to herein as "Debtors") hereby propounds the following Requests for Admission ("Requests for Admission"), Set Number One, pursuant to Fed. R. Bankr.P. 7036 and Fed.R. Civ. P. 36, to Defendant John C. Kirkland ("Defendant"). The Trustee requests that Defendant, within thirty (30) days after service hereof, provide written responses to each and every Request for Admission.

**PRELIMINARY STATEMENT**

1. YOU are required to answer each Request for Admission separately and fully in writing, unless it is objected to. If YOU object to any Request for Admission, YOU must state the reasons for the objection in lieu of an answer.

2. YOU are to serve a copy of YOUR answers, and objections if any, within thirty (30) days after the service date of these Requests for Admissions.

3. YOUR response to this discovery must contain a certification as set forth in Fed. R. Civ. P. 26(g). If YOUR certification is made in violation of Fed. R. Civ. P. 26, the Court, upon motion or its own initiative, shall impose upon the person making the certification, upon YOU, or both, an appropriate sanction, which may include an order to pay the amount of reasonable expenses incurred because of the violation, including reasonable attorney's fees.

4. If YOUR responses are deemed insufficient, YOU may be compelled by an order of the court pursuant to Fed. R. Civ. P. 37 to respond properly to the request and to pay the reasonable expenses incurred, including attorney's fees, in obtaining the order.

5. The singular form of a word should be interpreted as plural and the plural should be interpreted as singular to give the word or words the broadest possible meaning.

**DEFINITIONS**

6. Capitalized terms used herein shall have the following meanings:

a. "ADVERSARY PROCEEDING" means and refers to the adversary proceeding styled *Jason M. Rund, Trustee v. John C. Kirkland, et. al.*, Adv. Case No. 2:12-ap-02424-ER, currently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division.

b. "BANKRUPTCY CASE" means and refers to the consolidated bankruptcy case, styled *In re EPD Investment Company, LLC, and Jerrold S. Pressman*, Case No. 2:10-bk-62208-ER, currently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division.

c. "PLAINTIFF" or "TRUSTEE" means and refers to Jason M. Rund, the Chapter 7 Trustee in the BANKRUPTCY CASE, and the named plaintiff in the ADVERSARY PROCEEDING.

d. "BC TRUST" means and refers to the Bright Conscience Trust Dated September 9, 2009.

e. "DEFENDANT" or "YOU" means and refers to the named defendant in the ADVERSARY PROCEEDING: John C. Kirkland, an individual, and his assignees, employees, agents, and representatives acting on his behalf.

f. "POSHOW" means and refers to Poshow Ann Kirkland, an individual, and her assignees, employees, agents, and representatives acting on her behalf.

g. "PETITION DATE" shall mean the date on which the involuntary bankruptcy petition was filed against EPD, on December 7, 2010.

h. "EPD" means and refers to EPD Investments Co., LLC, a debtor in the BANKRUPTCY CASE.

i. "FTB" means and refers to the State of California Franchise Tax Board.

j. "IRS" means and refers to the Internal Revenue Service of the United States federal government.

k. "PRESSMAN" means and refers to Jerold S. Pressman, an individual, a debtor in the BANKRUPTCY CASE.

l. "DEBTORS" means and refers collectively to debtors EPD Investment Company, LLC and Jerrold S. Pressman.

m. "COMMUNICATION(S)" means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, e-mails, text messages, facsimiles, letters, memoranda, meetings, notes, speeches, or other transfer of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests transcribes or records any such communication.

n. "DOCUMENT(S)" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure, and shall include all tangible sources of information, including but not limited to: (a) the original and any non-identical copy (whether different from the original because of handwritten notes or underlining made thereon, attachments affixed thereto, or otherwise) or drafts thereof, of any handwritten, typewritten, printed, recorded or graphic matter, however produced or reproduced, including but not limited to charts, plans, drawings, art work, transparencies, sketches, blueprints, files, electronic mail, computer data and/or tapes, reports, travel reports, expense reports, memoranda, notes, minutes, letters and other correspondence, testimony, summaries, abstracts, studies, surveys, graphs, statistics, tables, forms, work papers, logs, indexes, drafts, advertisements, and scripts; and (b) any mechanical, magnetic or electronic or other recordings of any voice, sound, image or data including but not limited to photographs, microfilms, video and audio tapes, film, and any other data compilation, wherever located.

o. "REGARDING" means and refers to directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

p. "RELEVANT PERIOD" shall mean and include the period from December 1, 2003, through the PETITION DATE.

q. "STRETTO" means and refers to Stretto Enterprises, a California Corporation.

r. "TRANSFER(S)" means and refers to (A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of an equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with— (i) property; or (ii) an interest in property. "TRANSFER(S)" also includes any and all monies paid by DEBTORS to YOU or to another entity for the benefit of the BC TRUST, by any means, including but not limited to cash, check, cashier's check or wire transfer, during the RELEVANT PERIOD.

s. "PROOF OF CLAIM 171" means and refers that the certain proof of claim that the BC TRUST filed in the BANKRUPTCY CASE on December 12, 2011 and which has been designated as Claim 171 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 171 is attached hereto as **EXHIBIT A** and is incorporated herein by this reference.

t. "PROOF OF CLAIM 235" means and refers that the certain proof of claim that the BC TRUST filed in the BANKRUPTCY CASE on December 12, 2011 and which has been designated as Claim 235 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 235 is attached hereto as **EXHIBIT B** and is incorporated herein by this reference.

u. "PROOF OF CLAIM 236" means and refers that the certain proof of claim that the BC TRUST filed in the BANKRUPTCY CASE on December 12, 2011 and which has been designated as Claim 236 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 236 is attached hereto as **EXHIBIT C** and is incorporated herein by this reference.

v. "PROOF OF CLAIM 13" means and refers that the certain proof of claim that the BC TRUST filed in bankruptcy case no. 2:12-bk-13760-ER on February 15, 2013 and which has been designated as Claim 13-1 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 13-1 is attached hereto as **EXHIBIT D** and is incorporated herein by this reference.

w. "PROOFS OF CLAIM" means and refers to collectively to PROOF OF CLAIM 171, PROOF OF CLAIM 235, PROOF OF CLAIM 236, and PROOF OF CLAIM 13.

x. "ASSIGNMENT" means and refers to that certain Notice of Assignment dated September 9, 2009, a copy of which is attached hereto as **EXHIBIT E**.

y. "UCC-1" means and refers to that certain UCC-1 financing statement filed by the BC TRUST on or about September 11, 2009 as to the assets of the DEBTORS.

z. "FUNDING AGREEMENT" means and refers to that certain Funding Agreement dated July 24, 2009 between EPD and PRESSMAN, on the one hand, and DEFENDANT, on the other hand, a copy of which is attached hereto as **EXHIBIT F**.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1.:**

Admit that POSHOW is the sole trustee of the BC TRUST.

**REQUEST FOR ADMISSION NO. 2.:**

Admit that POSHOW has been the sole trustee of the BC TRUST since its formation.

**REQUEST FOR ADMISSION NO. 3.:**

Admit that YOU are married to POSHOW.

**REQUEST FOR ADMISSION NO. 4.:**

Admit that YOU were married to POSHOW at the time each of the PROOFS OF CLAIM were filed.

**REQUEST FOR ADMISSION NO. 5.:**

Admit that YOU were married to POSHOW at the time ASSIGNMENT was signed.

**REQUEST FOR ADMISSION NO. 6.:**

Admit that YOU were married to POSHOW at the time UCC-1 was filed.

**REQUEST FOR ADMISSION NO. 7.:**

Admit that YOU make all decisions REGARDING the BC TRUST.

**REQUEST FOR ADMISSION NO. 8.:**

Admit that YOU have made all decisions REGARDING the BC TRUST since its formation.

**REQUEST FOR ADMISSION NO. 9.:**

Admit that YOU make all litigation decisions REGARDING the BC TRUST.

**REQUEST FOR ADMISSION NO. 10.:**

Admit that YOU have made all litigation decisions REGARDING the BC TRUST since its formation.

**REQUEST FOR ADMISSION NO. 11.:**

Admit that the BC TRUST does not have a claim for $2,672,000 against the DEBTORS as the BC TRUST declared in PROOF OF CLAIM 131.

**REQUEST FOR ADMISSION NO. 12.:**

Admit that the BC TRUST does not have a claim for $2,672,000 against the DEBTORS as the BC TRUST declared in PROOF OF CLAIM 235.

**REQUEST FOR ADMISSION NO. 13.:**

Admit that the BC TRUST does not have a claim for $2,672,000 against the DEBTORS as the BC TRUST declared in PROOF OF CLAIM 236.

**REQUEST FOR ADMISSION NO. 14.:**

Admit that BC TRUST does not have a claim for $3,529,000 against the DEBTORS as the BC TRUST declared in PROOF OF CLAIM 13.

**REQUEST FOR ADMISSION NO. 15.:**

Admit that the amounts listed in the PROOFS OF CLAIM are for investments rather than for loans that require repayment.

**REQUEST FOR ADMISSION NO. 16.:**

Admit that YOU prepared letters to the FTB on PRESSMAN's behalf in 2004 while YOU were an attorney at Greenberg Traurig LLP.

**REQUEST FOR ADMISSION NO. 17.:**

Admit that YOU sent letters to the FTB on PRESSMAN's behalf in 2004 while YOU were an attorney at Greenberg Traurig LLP.

**REQUEST FOR ADMISSION NO. 18.:**

Admit that YOU prepared letters to the IRS on PRESSMAN's behalf in 2004 while YOU were an attorney at Greenberg Traurig LLP.

///

**REQUEST FOR ADMISSION NO. 19.:**

Admit that YOU sent letters to the IRS on PRESSMAN's behalf in 2004 while YOU were an attorney at Greenberg Traurig LLP.

**REQUEST FOR ADMISSION NO. 20.:**

Admit that YOU prepared letters to the FTB on PRESSMAN's behalf in 2005 while YOU were an attorney at Greenberg Traurig LLP.

**REQUEST FOR ADMISSION NO. 21.:**

Admit that YOU sent letters to the FTB on PRESSMAN's behalf in 2005 while YOU were an attorney at Greenberg Traurig LLP.

**REQUEST FOR ADMISSION NO. 22.:**

Admit that YOU prepared letters to the IRS on PRESSMAN's behalf in 2005 while YOU were an attorney at Greenberg Traurig LLP.

**REQUEST FOR ADMISSION NO. 23.:**

Admit that YOU sent letters to the IRS on PRESSMAN's behalf in 2005 while YOU were an attorney at Greenberg Traurig LLP.

**REQUEST FOR ADMISSION NO. 24.:**

Admit that in 2004, PRESSMAN was 69 years old.

**REQUEST FOR ADMISSION NO. 25.:**

Admit that in 2004, PRESSMAN's only income was from social security.

**REQUEST FOR ADMISSION NO. 26.:**

Admit that in 2004, PRESSMAN had incurred more than $10 million in business losses over the previous five years.

**REQUEST FOR ADMISSION NO. 27.:**

Admit that in 2004, PRESSMAN's total debt exceeded $48 million.

**REQUEST FOR ADMISSION NO. 28.:**

Admit that in 2004, all of PRESSMAN's real property was mortgaged.

**REQUEST FOR ADMISSION NO. 29.:**

Admit that in 2004, all of PRESSMAN's non-real property assets were subject to security

interests substantially in excess of their market value.

**REQUEST FOR ADMISSION NO. 30.:**

Admit that in 2005, PRESSMAN was 70 years old.

**REQUEST FOR ADMISSION NO. 31.:**

Admit that in 2005, PRESSMAN was deeply in debt.

**REQUEST FOR ADMISSION NO. 32.:**

Admit that in 2005, PRESSMAN had virtually no current income.

**REQUEST FOR ADMISSION NO. 33.:**

Admit that in 2005, PRESSMAN had virtually no unencumbered assets.

**REQUEST FOR ADMISSION NO. 34.:**

Admit that in 2005, PRESSMAN's total debt exceeded $48 million.

**REQUEST FOR ADMISSION NO. 35.:**

Admit that in 2005, EPD's total debt exceeded $47 million.

**REQUEST FOR ADMISSION NO. 36.:**

Admit that in 2005, there were over $36 million in promissory notes due by EPD to third parties.

**REQUEST FOR ADMISSION NO. 37.:**

Admit that in 2005, EPD estimated a $3.4 million loss for 2004.

**REQUEST FOR ADMISSION NO. 38.:**

Admit that in 2005, EPD required at least $4.5 million in new loans, investments or income just to break even based on interest and principal payments due.

**REQUEST FOR ADMISSION NO. 39.:**

Admit that in 2004, PRESSMAN refinanced his home twice to prevent default on obligations due by the DEBTORS.

**REQUEST FOR ADMISSION NO. 40.:**

Admit that in 2005, PRESSMAN had negative net worth.

**REQUEST FOR ADMISSION NO. 41.:**

Admit that in 2005, EPD had negative net worth.

**REQUEST FOR ADMISSION NO. 42.:**

Admit that PRESSMAN did not increase his net worth between 2005 and 2011.

**REQUEST FOR ADMISSION NO. 43.:**

Admit that EPD did not increase its net worth between 2005 and 2011.

**REQUEST FOR ADMISSION NO. 44.:**

Admit that in 2010, all companies in which PRESSMAN held ownership interests had negative net worth.

**REQUEST FOR ADMISSION NO. 45.:**

Admit that in 2009, all companies in which PRESSMAN held ownership interests had negative net worth.

**REQUEST FOR ADMISSION NO. 46.:**

Admit that in 2008, all companies in which PRESSMAN held ownership interests had negative net worth.

**REQUEST FOR ADMISSION NO. 47.:**

Admit that in 2007, all companies in which PRESSMAN held ownership interests had negative net worth.

**REQUEST FOR ADMISSION NO. 48.:**

Admit that in 2006, all companies in which PRESSMAN held ownership interests had negative net worth.

**REQUEST FOR ADMISSION NO. 49.:**

Admit that in 2005, all companies in which PRESSMAN held ownership interests had negative net worth.

**REQUEST FOR ADMISSION NO. 50.:**

Admit that in 2004, all companies in which PRESSMAN held ownership interests had negative net worth.

**REQUEST FOR ADMISSION NO. 51.:**

Admit that in 2010, all of PRESSMAN's assets were encumbered by secured loans.

///

**REQUEST FOR ADMISSION NO. 52.:**

Admit that in 2009, all of PRESSMAN's assets were encumbered by secured loans.

**REQUEST FOR ADMISSION NO. 53.:**

Admit that in 2008, all of PRESSMAN's assets were encumbered by secured loans.

**REQUEST FOR ADMISSION NO. 54.:**

Admit that in 2007, all of PRESSMAN's assets were encumbered by secured loans.

**REQUEST FOR ADMISSION NO. 55.:**

Admit that in 2006, all of PRESSMAN's assets were encumbered by secured loans.

**REQUEST FOR ADMISSION NO. 56.:**

Admit that in 2005, all of PRESSMAN's assets were encumbered by secured loans.

**REQUEST FOR ADMISSION NO. 57.:**

Admit that in 2004, all of PRESSMAN's assets were encumbered by secured loans.

**REQUEST FOR ADMISSION NO. 58.:**

Admit that in 2003, all of PRESSMAN's assets were encumbered by secured loans.

**REQUEST FOR ADMISSION NO. 59.:**

Admit that in 2010, all companies in which PRESSMAN held ownership interests had negative net worth.

**REQUEST FOR ADMISSION NO. 60.:**

Admit that in 2010, the membership interests in EPD did not have any value due to EPD's debt load and negative net worth.

**REQUEST FOR ADMISSION NO. 61.:**

Admit that in 2009, the membership interests in EPD did not have any value due to EPD's debt load and negative net worth.

**REQUEST FOR ADMISSION NO. 62.:**

Admit that in 2008, the membership interests in EPD did not have any value due to EPD's debt load and negative net worth.

**REQUEST FOR ADMISSION NO. 63.:**

Admit that in 2007, the membership interests in EPD did not have any value due to EPD's

debt load and negative net worth.

**REQUEST FOR ADMISSION NO. 64.:**

Admit that in 2006, the membership interests in EPD did not have any value due to EPD's debt load and negative net worth.

**REQUEST FOR ADMISSION NO. 65.:**

Admit that in 2005, the membership interests in EPD did not have any value due to EPD's debt load and negative net worth.

**REQUEST FOR ADMISSION NO. 66.:**

Admit that in 2004, the membership interests in EPD did not have any value due to EPD's debt load and negative net worth.

**REQUEST FOR ADMISSION NO. 67.:**

Admit that in 2003, the membership interests in EPD did not have any value due to EPD's debt load and negative net worth.

**REQUEST FOR ADMISSION NO. 68.:**

Admit that EPD was unable to earn income in excess of outgoing funds during 2010.

**REQUEST FOR ADMISSION NO. 69.:**

Admit that EPD was unable to earn income in excess of outgoing funds during 2009.

**REQUEST FOR ADMISSION NO. 70.:**

Admit that EPD was unable to earn income in excess of outgoing funds during 2008.

**REQUEST FOR ADMISSION NO. 71.:**

Admit that EPD was unable to earn income in excess of outgoing funds during 2007.

**REQUEST FOR ADMISSION NO. 72.:**

Admit that EPD was unable to earn income in excess of outgoing funds during 2006.

**REQUEST FOR ADMISSION NO. 73.:**

Admit that EPD was unable to earn income in excess of outgoing funds during 2005.

**REQUEST FOR ADMISSION NO. 74.:**

Admit that EPD was unable to earn income in excess of outgoing funds during 2004.

///

**REQUEST FOR ADMISSION NO. 75.:**

Admit that EPD was unable to earn income in excess of outgoing funds during 2003.

**REQUEST FOR ADMISSION NO. 76.:**

Admit that EPD had negative cash flow during 2010.

**REQUEST FOR ADMISSION NO. 77.:**

Admit that EPD had negative cash flow during 2009.

**REQUEST FOR ADMISSION NO. 78.:**

Admit that EPD had negative cash flow during 2008.

**REQUEST FOR ADMISSION NO. 79.:**

Admit that EPD had negative cash flow during 2007.

**REQUEST FOR ADMISSION NO. 80.:**

Admit that EPD had negative cash flow during 2006.

**REQUEST FOR ADMISSION NO. 81.:**

Admit that EPD had negative cash flow during 2005.

**REQUEST FOR ADMISSION NO. 82.:**

Admit that EPD had negative cash flow during 2004.

**REQUEST FOR ADMISSION NO. 83.:**

Admit that EPD had negative cash flow during 2003.

**REQUEST FOR ADMISSION NO. 84.:**

Admit that the document attached hereto as **Exhibit G** and produced to YOU by the TRUSTEE and bearing bates numbers TR 006256- TR 006262 is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, State of California Franchise Tax Board, on or about July 8, 2005.

**REQUEST FOR ADMISSION NO. 85.:**

Admit that the document attached hereto as **Exhibit G** and produced to YOU by the TRUSTEE and bearing bates numbers TR 006256- TR 006262 is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, State of California Franchise Tax Board, on or about July 8, 2005.

**REQUEST FOR ADMISSION NO. 86.:**

Admit that the document attached hereto as **Exhibit H** and produced to YOU by the TRUSTEE and bearing bates numbers TR 006263- TR 006267 is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner.

**REQUEST FOR ADMISSION NO. 87.:**

Admit that the document attached hereto as **Exhibit H** and produced to YOU by the TRUSTEE and bearing bates numbers TR 006263- TR 006267 is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner.

**REQUEST FOR ADMISSION NO. 88.:**

Admit that the document attached hereto as **Exhibit I** and produced to YOU by the TRUSTEE and bearing bates numbers TR 006268- TR 006274 is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner, on or about July 8, 2005.

**REQUEST FOR ADMISSION NO. 89.:**

Admit that the document attached hereto as **Exhibit I** and produced to YOU by the TRUSTEE and bearing bates numbers TR 006268- TR 006274 is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner, on or about July 8, 2005.

**REQUEST FOR ADMISSION NO. 90.:**

Admit that the document attached hereto as **Exhibit J** and produced to YOU by the TRUSTEE and bearing bates numbers TR 006275- TR 006277 is a true and correct copy of a letter YOU prepared to send to the California Franchise Tax Board, care of Ms. Rhonda Bianco, on or about October 4, 2004.

**REQUEST FOR ADMISSION NO. 91.:**

Admit that the document attached hereto as **Exhibit J** and produced to YOU by the TRUSTEE and bearing bates numbers TR 006275- TR 006277 is a true and correct copy of a letter

YOU sent to the California Franchise Tax Board, care of Ms. Rhonda Bianco, on or about October 4, 2004.

**REQUEST FOR ADMISSION NO. 92.:**

Admit that the document attached hereto as **Exhibit K** and produced to YOU by the TRUSTEE and bearing bates numbers TR 006278- TR 006280 is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, California Franchise Tax Board, care of Ms. Diana Perrin, on or about December 19, 2005.

**REQUEST FOR ADMISSION NO. 93.:**

Admit that the document attached hereto as **Exhibit K** and produced to YOU by the TRUSTEE and bearing bates numbers TR 006278- TR 006280 is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, California Franchise Tax Board, care of Ms. Diana Perrin, on or about December 19, 2005.

**REQUEST FOR ADMISSION NO. 94.:**

Admit that the document attached hereto as **Exhibit L** is a true and correct copy of a letter Grace Chung prepared to send to STRETTO, care of PRESSMAN, on or about January 30, 2004.

**REQUEST FOR ADMISSION NO. 95.:**

Admit that Grace Chung prepared the document attached hereto as **Exhibit L** at YOUR direction.

**REQUEST FOR ADMISSION NO. 96.:**

Admit that the document attached hereto as **Exhibit L** is a true and correct copy of a letter Grace Chung sent to STRETTO, care of PRESSMAN, on or about January 30, 2004.

**REQUEST FOR ADMISSION NO. 97.:**

Admit that the YOU directed Grace Chung to send the document attached hereto as **Exhibit L** to STRETTO, care of PRESSMAN, on or about January 30, 2004.

**REQUEST FOR ADMISSION NO. 98.:**

Admit that the document attached hereto as **Exhibit M** is a true and correct copy of a letter YOU prepared to send to the California Franchise Tax Board, care of Ms. Rhonda Bianco, on or about October 4, 2004.

**REQUEST FOR ADMISSION NO. 99.:**

Admit that the document attached hereto as **Exhibit M** is a true and correct copy of a letter YOU sent to the California Franchise Tax Board, care of Ms. Rhonda Bianco, on or about October 4, 2004.

**REQUEST FOR ADMISSION NO. 100.:**

Admit that the document attached hereto as **Exhibit N** is a true and correct copy of a letter G. Michelle Ferreira sent to the California Franchise Tax Board, care of Diana Perrin, on or about February 17, 2006.

**REQUEST FOR ADMISSION NO. 101.:**

Admit that the document attached hereto as **Exhibit N** is a true and correct copy of a letter G. Michelle Ferreira prepared to send to the California Franchise Tax Board, care of Diana Perrin, on or about February 17, 2006.

**REQUEST FOR ADMISSION NO. 102.:**

Admit that G. Michelle Ferreira prepared the document attached hereto as **Exhibit N** at YOUR direction.

**REQUEST FOR ADMISSION NO. 103.:**

Admit that YOU directed G. Michelle Ferreira to send the document attached hereto as **Exhibit N** to the California Franchise Tax Board, care of Diana Perrin, on or about February 17, 2006.

**REQUEST FOR ADMISSION NO. 104.:**

Admit that the document attached hereto as **Exhibit O** is a true and correct copy of a letter G. Michelle Ferreira prepared to send to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner on or about April 6, 2006.

**REQUEST FOR ADMISSION NO. 105.:**

Admit that the document attached hereto as **Exhibit O** is a true and correct copy of a letter G. Michelle Ferreira sent to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner on or about April 6, 2006.

///

**REQUEST FOR ADMISSION NO. 106.:**

Admit that G. Michelle Ferreira prepared the document attached hereto as **Exhibit O** at YOUR direction.

**REQUEST FOR ADMISSION NO. 107.:**

Admit that YOU directed G. Michelle Ferreira to send the document attached hereto as **Exhibit O** to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner on or about April 6, 2006.

**REQUEST FOR ADMISSION NO. 108.:**

Admit that the document attached hereto as **Exhibit P** and is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, California Franchise Tax Board, care of Ms. Diana Perrin, on or about December 23, 2005.

**REQUEST FOR ADMISSION NO. 109.:**

Admit that the document attached hereto as **Exhibit P** is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, California Franchise Tax Board, care of Ms. Diana Perrin, on or about December 23, 2005.

**REQUEST FOR ADMISSION NO. 110.:**

Admit that the document attached hereto as **Exhibit Q** is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner, on or about January 28, 2005.

**REQUEST FOR ADMISSION NO. 111.:**

Admit that the document attached hereto as **Exhibit Q** is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner, on or about January 28, 2005.

**REQUEST FOR ADMISSION NO. 112.:**

Admit that the document attached hereto as **Exhibit R** is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner.

///

**REQUEST FOR ADMISSION NO. 113.:**

Admit that the document attached hereto as **Exhibit R** is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner.

**REQUEST FOR ADMISSION NO. 114.:**

Admit that the document attached hereto as **Exhibit S** is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner.

**REQUEST FOR ADMISSION NO. 115.:**

Admit that the document attached hereto as **Exhibit S** is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner.

**REQUEST FOR ADMISSION NO. 116.:**

Admit that the document attached hereto as **Exhibit T** is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner.

**REQUEST FOR ADMISSION NO. 117.:**

Admit that the document attached hereto as **Exhibit T** is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner.

**REQUEST FOR ADMISSION NO. 118.:**

Admit that the document attached hereto as **Exhibit U** is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner, on or about January 28, 2005.

**REQUEST FOR ADMISSION NO. 119.:**

Admit that the document attached hereto as **Exhibit U** is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, State of California Franchise Tax Board, care of Mr. Terence K. Tanner, on or about January 28, 2005.

**REQUEST FOR ADMISSION NO. 120.:**

Admit that the document attached hereto as **Exhibit V** is a true and correct copy of a letter YOU prepared to send to the Offer in Compromise Unit, California Franchise Tax Board, care of Ms. Diana Perrin, on or about December 23, 2005.

**REQUEST FOR ADMISSION NO. 121.:**

Admit that the document attached hereto as **Exhibit V** is a true and correct copy of a letter YOU sent to the Offer in Compromise Unit, California Franchise Tax Board, care of Ms. Diana Perrin, on or about December 23, 2005.

**REQUEST FOR ADMISSION NO. 122.:**

Admit that YOU knew in July 2009 that EPD was insolvent.

**REQUEST FOR ADMISSION NO. 123.:**

Admit that YOU knew in July 2009 that PRESSMAN was insolvent.

**REQUEST FOR ADMISSION NO. 124.:**

Admit that YOU knew in August 2009 that EPD was insolvent.

**REQUEST FOR ADMISSION NO. 125.:**

Admit that YOU knew in August 2009 that PRESSMAN was insolvent.

**REQUEST FOR ADMISSION NO. 126.:**

Admit that YOU knew in September 2009 that EPD was insolvent.

**REQUEST FOR ADMISSION NO. 127.:**

Admit that YOU knew in September 2009 that PRESSMAN was insolvent.

**REQUEST FOR ADMISSION NO. 128.:**

Admit that YOU had reason to know in July 2009 that EPD was insolvent.

**REQUEST FOR ADMISSION NO. 129.:**

Admit that YOU had reason to know in July 2009 that PRESSMAN was insolvent.

**REQUEST FOR ADMISSION NO. 130.:**

Admit that YOU had reason to know in August 2009 that EPD was insolvent.

**REQUEST FOR ADMISSION NO. 131.:**

Admit that YOU had reason to know in August 2009 that PRESSMAN was insolvent.

**REQUEST FOR ADMISSION NO. 132.:**

Admit that YOU had reason to know in September 2009 that EPD was insolvent.

**REQUEST FOR ADMISSION NO. 133.:**

Admit that YOU had reason to know in September 2009 that PRESSMAN was insolvent.

**REQUEST FOR ADMISSION NO. 134.:**

Admit that YOU knew in July 2009 that EPD was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 135.:**

Admit that YOU knew in July 2009 that PRESSMAN was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 136.:**

Admit that YOU knew in August 2009 that EPD was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 137.:**

Admit that YOU knew in August 2009 that PRESSMAN was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 138.:**

Admit that YOU knew in September 2009 that EPD was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 139.:**

Admit that YOU knew in September 2009 that PRESSMAN was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 140.:**

Admit that YOU had reason to know in July 2009 that EPD was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 141.:**

Admit that YOU had reason to know in July 2009 that PRESSMAN was unable to pay debts as they became due.

///

**REQUEST FOR ADMISSION NO. 142.:**

Admit that YOU had reason to know in August 2009 that EPD was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 143.:**

Admit that YOU had reason to know in August 2009 that PRESSMAN was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 144.:**

Admit that YOU had reason to know in September 2009 that EPD was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 145.:**

Admit that YOU had reason to know in September 2009 that PRESSMAN was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 146.:**

Admit that YOU knew at the time of YOUR assignment of YOUR alleged security interest in EPD's assets to the BC TRUST that EPD was insolvent.

**REQUEST FOR ADMISSION NO. 147.:**

Admit that YOU knew at the time of YOUR assignment of YOUR alleged security interest in the DEBTORS' assets to the BC TRUST that PRESSMAN was insolvent.

**REQUEST FOR ADMISSION NO. 148.:**

Admit that YOU knew at the time of YOUR assignment of YOUR alleged security interest in DEBTORS' assets to the BC TRUST that EPD was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 149.:**

Admit that YOU knew at the time of YOUR assignment of YOUR alleged security interest in DEBTORS' assets to the BC TRUST that PRESSMAN was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 150.:**

Admit that POSHOW knew at the time of the filing of the UCC-1 that EPD was insolvent.

**REQUEST FOR ADMISSION NO. 151.:**

Admit that POSHOW knew at the time of the filing of the UCC-1 that PRESSMAN was

insolvent.

**REQUEST FOR ADMISSION NO. 152.:**

Admit that POSHOW knew at the time of the filing of the UCC-1 that EPD was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 153.:**

Admit that POSHOW knew at the time of the filing of the UCC-1 that PRESSMAN was unable to pay debts as they became due.

**REQUEST FOR ADMISSION NO. 154.:**

Admit that when YOU made investments with the DEBTORS, YOU were not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 155.:**

Admit that when YOU made loans to the DEBTORS, YOU were not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 156.:**

Admit that when the FUNDING AGREEMENT was signed, YOU were not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 157.:**

Admit that when the FUNDING AGREEMENT was signed, the BC TRUST was not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 158.:**

Admit that when the FUNDING AGREEMENT was signed, POSHOW was not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 159.:**

Admit that at the time any promissory notes were signed by the DEBTORS in favor of YOU, YOU were not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 160.:**

Admit that at the time any promissory notes were signed by the DEBTORS in favor of the BC TRUST, the BC TRUST was not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 161.:**

Admit that at the time any promissory notes were signed by the DEBTORS in favor of YOU, POSHOW was not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 162.:**

Admit that at the time any promissory notes were signed by the DEBTORS in favor of the BC TRUST, POSHOW was not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 163.:**

Admit that at the time any security agreements were signed by the DEBTORS in favor of YOU, YOU were not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 164.:**

Admit that at the time any security agreements were signed by the DEBTORS in favor of YOU, POSHOW was not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 165.:**

Admit that at the time any security agreements were signed by the DEBTORS in favor of the BC TRUST, YOU were not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 166.:**

Admit that at the time any security agreements were signed by the DEBTORS in favor of the BC TRUST, the BC TRUST was not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 167.:**

Admit that at the time any security agreements were signed by the DEBTORS in favor of the BC TRUST, POSHOW was not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 168.:**

Admit that at the time the UCC-1 was filed, YOU were not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 169.:**

Admit that at the time the UCC-1 was filed, the BC TRUST was not a lender licensed by the State of California.

///

**REQUEST FOR ADMISSION NO. 170.:**

Admit that at the time the UCC-1 was filed, POSHOW was not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 171.:**

Admit that YOU are not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 172.:**

Admit that YOU have never been a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 173.:**

Admit that the BC TRUST is not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 174.:**

Admit that the BC TRUST has never been a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 175.:**

Admit that POSHOW is not a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 176.:**

Admit that POSHOW has never been a lender licensed by the State of California.

**REQUEST FOR ADMISSION NO. 177.:**

Admit that at the time any promissory notes were signed by the DEBTORS in favor of YOU, YOU knew that a 12% interest rate was usurious in the State of California.

**REQUEST FOR ADMISSION NO. 178.:**

Admit that at the time any promissory notes were signed by the DEBTORS in favor of the BC TRUST, YOU knew that a 12% interest rate was usurious in the State of California.

**REQUEST FOR ADMISSION NO. 179.:**

Admit that at the time any security agreements were signed by the DEBTORS in favor of YOU, YOU knew that a 12% interest rate was usurious in the State of California.

**REQUEST FOR ADMISSION NO. 180.:**

Admit that at the time any security agreements were signed by the DEBTORS in favor of the BC TRUST, YOU knew that a 12% interest rate was usurious in the State of California.

///

**REQUEST FOR ADMISSION NO. 181.:**

Admit that at the time the UCC-1 was filed, YOU knew that a 12% interest rate was usurious in the State of California.

**REQUEST FOR ADMISSION NO. 182.:**

Admit that at the time the BC TRUST filed the PROOFS OF CLAIM, YOU knew that a 12% interest rate was usurious in the State of California.

**REQUEST FOR ADMISSION NO. 183.:**

Admit that at the time the BC TRUST filed the PROOFS OF CLAIM, POSHOW knew that a 12% interest rate was usurious in the State of California.

**REQUEST FOR ADMISSION NO. 184.:**

Admit that a 12% interest rate is usurious in the State of California.

**REQUEST FOR ADMISSION NO. 185.:**

Admit that YOU are not exempt from the State of California's usury laws.

**REQUEST FOR ADMISSION NO. 186.:**

Admit that POSHOW is not exempt from the State of California's usury laws.

**REQUEST FOR ADMISSION NO. 187.:**

Admit that the BC TRUST is not exempt from the State of California's usury laws.

**REQUEST FOR ADMISSION NO. 188.:**

Admit that the contractual 12% interest rate listed in YOUR initial disclosures is usurious in the State of California.

**REQUEST FOR ADMISSION NO. 189.:**

Admit that the contractual default 24% interest rate listed in YOUR initial disclosures is usurious in the State of California.

**REQUEST FOR ADMISSION NO. 190.:**

Admit that the contractual 12% interest rate listed in YOUR initial disclosures is prohibited in the State of California.

**REQUEST FOR ADMISSION NO. 191.:**

Admit that the contractual default 24% interest rate listed in YOUR initial disclosures is

prohibited in the State of California.

**REQUEST FOR ADMISSION NO. 192.:**

Admit that the PROOFS OF CLAIM include interest.

**REQUEST FOR ADMISSION NO. 193.:**

Admit that the interest rate included in the PROOFS OF CLAIM is usurious in the State of California.

**REQUEST FOR ADMISSION NO. 194.:**

Admit that the interest rate included in the PROOFS OF CLAIM is prohibited in the State of California.

**REQUEST FOR ADMISSION NO. 195.:**

Admit that PROOF OF CLAIM 171, PROOF OF CLAIM 235, and PROOF OF CLAIM 236 are duplicate claims.

**REQUEST FOR ADMISSION NO. 196.:**

Admit that PROOF OF CLAIM 171, PROOF OF CLAIM 235, PROOF OF CLAIM 236 and PROOF OF CLAIM 13 are duplicate claims.

**REQUEST FOR ADMISSION NO. 197.:**

Admit that the BC TRUST did not deposit any amounts with the DEBTORS.

**REQUEST FOR ADMISSION NO. 198.:**

Admit that the BC TRUST did not transfer any amounts to the DEBTORS.

**REQUEST FOR ADMISSION NO. 199.:**

Admit that YOU did not deposit $2,055,466.23 with the DEBTORS.

**REQUEST FOR ADMISSION NO. 200.:**

Admit that YOU did not invest approximately two million dollars with the DEBTORS.

**REQUEST FOR ADMISSION NO. 201.:**

Admit that YOU did not loan the DEBTORS approximately two million dollars.

**REQUEST FOR ADMISSION NO. 202.:**

Admit that YOU did not transfer approximately two million dollars to the DEBTORS.

///

**REQUEST FOR ADMISSION NO. 203.:**

Admit that YOU did not transfer $2,055,466.23 to the DEBTORS.

**REQUEST FOR ADMISSION NO. 204.:**

Admit that YOU did not deposit $400,000 in EPD on or about September 28, 2007.

**REQUEST FOR ADMISSION NO. 205.:**

Admit that YOU did not transfer $400,000 to either of the DEBTORS on or about September 28, 2007.

**REQUEST FOR ADMISSION NO. 206.:**

Admit that YOU did not deposit $150,000 in EPD on or about March 27, 2008.

**REQUEST FOR ADMISSION NO. 207.:**

Admit that YOU did not transfer $150,000 to either of the DEBTORS on or about March 27, 2008.

**REQUEST FOR ADMISSION NO. 208.:**

Admit that at least $600,000 of the $855,466.23 transferred by Southland Title Corporation to EPD on or about August 18, 2008 was not an investment in EPD.

**REQUEST FOR ADMISSION NO. 209.:**

Admit that at least $600,000 of the $855,466.23 transferred by Southland Title Corporation to EPD on or about August 18, 2008 was not a loan to EPD.

**REQUEST FOR ADMISSION NO. 210.:**

Admit that YOU authorized the amendment to the UCC-1 filed in or about May 2010.

**REQUEST FOR ADMISSION NO. 211.:**

Admit that POSHOW authorized the amendment to the UCC-1 filed in or about May 2010.

**REQUEST FOR ADMISSION NO. 212.:**

Admit that the BC TRUST never loaned funds to the DEBTORS.

**REQUEST FOR ADMISSION NO. 213.:**

Admit that the BC TRUST never invested funds with the DEBTORS.

**REQUEST FOR ADMISSION NO. 214.:**

Admit that the BC TRUST never transferred any funds to the DEBTORS.

**REQUEST FOR ADMISSION NO. 215.:**

Admit that the BC TRUST never paid any monies to the DEBTORS.

**REQUEST FOR ADMISSION NO. 216.:**

Admit that POSHOW never loaned funds to the DEBTORS.

**REQUEST FOR ADMISSION NO. 217.:**

Admit that POSHOW never invested funds with the DEBTORS.

**REQUEST FOR ADMISSION NO. 218.:**

Admit that POSHOW never transferred any funds to the DEBTORS.

**REQUEST FOR ADMISSION NO. 219.:**

Admit that POSHOW never paid any monies to the DEBTORS.

**REQUEST FOR ADMISSION NO. 220.:**

Admit that YOU did not conduct any due diligence REGARDING EPD prior to making investments in EPD.

**REQUEST FOR ADMISSION NO. 221.:**

Admit that YOU did not conduct any due diligence REGARDING EPD prior to making loans to EPD.

**REQUEST FOR ADMISSION NO. 222.:**

Admit that YOU did not receive offering materials of any kind REGARDING YOUR investments in EPD.

**REQUEST FOR ADMISSION NO. 223.:**

Admit that the BC TRUST did not receive offering materials of any kind REGARDING investments in EPD.

**REQUEST FOR ADMISSION NO. 224.:**

Admit that YOU did not receive offering materials of any kind REGARDING loans to EPD.

**REQUEST FOR ADMISSION NO. 225.:**

Admit that the BC TRUST did not receive offering materials of any kind REGARDING loans to EPD.

///

**REQUEST FOR ADMISSION NO. 226.:**

Admit that YOU did not receive regular account statements REGARDING YOUR investments in EPD.

**REQUEST FOR ADMISSION NO. 227.:**

Admit that the BC TRUST did not receive regular account statements REGARDING investments in EPD.

**REQUEST FOR ADMISSION NO. 228.:**

Admit that YOU did not receive regular account statements REGARDING loans to EPD.

**REQUEST FOR ADMISSION NO. 229.:**

Admit that the BC TRUST did not receive regular account statements REGARDING loans to EPD.

**REQUEST FOR ADMISSION NO. 230.:**

Admit that YOU did not check on the status of YOUR investments in EPD.

**REQUEST FOR ADMISSION NO. 231.:**

Admit that YOU did not check on the status of YOUR loans to EPD.

**REQUEST FOR ADMISSION NO. 232.:**

Admit that YOU did not check on the collectability of YOUR investments in EPD.

**REQUEST FOR ADMISSION NO. 233.:**

Admit that YOU did not check on the collectability of YOUR loans to EPD.

**REQUEST FOR ADMISSION NO. 234.:**

Admit that YOU testified at the Rule 2004 Examination that took place on May 27, 2011 in the BANKRUPTCY CASE.

**REQUEST FOR ADMISSION NO. 235.:**

Admit that the BC TRUST designated YOU as the person most qualified to testify for the BC TRUST at the Rule 2004 Examination that took place on May 27, 2011 in the BANKRUPTCY CASE.

///

///

**REQUEST FOR ADMISSION NO. 236.:**

Admit that POSHOW designated YOU as the person most qualified to testify for the BC TRUST at the Rule 2004 Examination that took place on May 27, 2011 in the BANKRUPTCY CASE.

**REQUEST FOR ADMISSION NO. 237.:**

Admit that YOU are the person most qualified to testify on behalf of the BC TRUST as to any substantive issues.

**REQUEST FOR ADMISSION NO. 238.:**

Admit that YOU are the person most qualified to testify on behalf of the BC TRUST as to the PROOFS OF CLAIM.

**REQUEST FOR ADMISSION NO. 239.:**

Admit that YOU were an attorney for the DEBTORS between EPD's formation in 2003 and the PETITION DATE.

**REQUEST FOR ADMISSION NO. 240.:**

Admit that YOU were an attorney for the DEBTORS at the time of YOUR investments in EPD.

**REQUEST FOR ADMISSION NO. 241.:**

Admit that YOU were an attorney for the DEBTORS at the time of YOUR loans to EPD.

**REQUEST FOR ADMISSION NO. 242.:**

Admit that YOU were an attorney for the DEBTORS at the time the PROOFS OF CLAIM were filed.

**REQUEST FOR ADMISSION NO. 243.:**

Admit that YOU were an attorney for the DEBTORS at the time the ASSIGNMENT was signed.

**REQUEST FOR ADMISSION NO. 244.:**

Admit that YOU were an attorney for the DEBTORS at the time the UCC-1 was filed.

**REQUEST FOR ADMISSION NO. 245.:**

Admit that YOU were an attorney for the DEBTORS at the time the BANKRUPTCY CASE

was filed.

**REQUEST FOR ADMISSION NO. 246.:**

Admit that YOU were a partner at Luce, Forward, Hamilton & Scripps LLP during 2009.

**REQUEST FOR ADMISSION NO. 247.:**

Admit that YOU were a partner at Luce, Forward, Hamilton & Scripps LLP during 2010.

**REQUEST FOR ADMISSION NO. 248.:**

Admit that YOU were a partner at Luce, Forward, Hamilton & Scripps LLP during 2011.

**REQUEST FOR ADMISSION NO. 249.:**

Admit that YOU were an attorney for the DEBTORS during 2009.

**REQUEST FOR ADMISSION NO. 250.:**

Admit that YOU were general outside counsel for EPD during 2009.

**REQUEST FOR ADMISSION NO. 251.:**

Admit that Luce, Forward, Hamilton & Scripps LLP was general outside counsel for EPD during 2009.

**REQUEST FOR ADMISSION NO. 252.:**

Admit that YOU were an attorney for the DEBTORS during 2010.

**REQUEST FOR ADMISSION NO. 253.:**

Admit that YOU were general outside counsel for EPD during 2010.

**REQUEST FOR ADMISSION NO. 254.:**

Admit that Luce, Forward, Hamilton & Scripps LLP was general outside counsel for EPD during 2010.

**REQUEST FOR ADMISSION NO. 255.:**

Admit that YOU were an attorney for the DEBTORS during 2011.

**REQUEST FOR ADMISSION NO. 256.:**

Admit that YOU were general outside counsel for EPD during 2011.

**REQUEST FOR ADMISSION NO. 257.:**

Admit that Luce, Forward, Hamilton & Scripps LLP was general outside counsel for EPD during 2011.

**REQUEST FOR ADMISSION NO. 258.:**

Admit that YOU prepared EPD's statements and schedules filed in the BANKRUPTCY CASE.

**REQUEST FOR ADMISSION NO. 259.:**

Admit that YOU filed EPD's statements and schedules in the BANKRUPTCY CASE.

**REQUEST FOR ADMISSION NO. 260.:**

Admit that YOU represented the DEBTORS as their attorney in defending litigation brought by EPD investors during 2009.

**REQUEST FOR ADMISSION NO. 261.:**

Admit that YOU represented the DEBTORS as their attorney in defending litigation brought by EPD investors during 2010.

**REQUEST FOR ADMISSION NO. 262.:**

Admit that the DEBTORS were insolvent at all points throughout 2003.

**REQUEST FOR ADMISSION NO. 263.:**

Admit that the DEBTORS were insolvent at all points throughout 2004.

**REQUEST FOR ADMISSION NO. 264.:**

Admit that the DEBTORS were insolvent at all points throughout 2005.

**REQUEST FOR ADMISSION NO. 265.:**

Admit that the DEBTORS were insolvent at all points throughout 2006.

**REQUEST FOR ADMISSION NO. 266.:**

Admit that the DEBTORS were insolvent at all points throughout 2007.

**REQUEST FOR ADMISSION NO. 267.:**

Admit that the DEBTORS were insolvent at all points throughout 2008.

**REQUEST FOR ADMISSION NO. 268.:**

Admit that the DEBTORS were insolvent at all points throughout 2009.

**REQUEST FOR ADMISSION NO. 269.:**

Admit that the DEBTORS were insolvent at all points throughout 2010.

///

**REQUEST FOR ADMISSION NO. 270.:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2003.

**REQUEST FOR ADMISSION NO. 271.:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2004.

**REQUEST FOR ADMISSION NO. 272.:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2005.

**REQUEST FOR ADMISSION NO. 273.:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2006.

**REQUEST FOR ADMISSION NO. 274.:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2007.

**REQUEST FOR ADMISSION NO. 275.:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2008.

**REQUEST FOR ADMISSION NO. 276.:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2009.

**REQUEST FOR ADMISSION NO. 277.:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2010.

**REQUEST FOR ADMISSION NO. 278.:**

Admit that POSHOW had reason to know that the DEBTORS were insolvent at all points throughout 2003.

///

**REQUEST FOR ADMISSION NO. 279.:**

Admit that POSHOW had reason to know that the DEBTORS were insolvent at all points throughout 2004.

**REQUEST FOR ADMISSION NO. 280.:**

Admit that POSHOW had reason to know that the DEBTORS were insolvent at all points throughout 2005.

**REQUEST FOR ADMISSION NO. 281.:**

Admit that POSHOW had reason to know that the DEBTORS were insolvent at all points throughout 2006.

**REQUEST FOR ADMISSION NO. 282.:**

Admit that POSHOW had reason to know that the DEBTORS were insolvent at all points throughout 2007.

**REQUEST FOR ADMISSION NO. 283.:**

Admit that POSHOW had reason to know that the DEBTORS were insolvent at all points throughout 2008.

**REQUEST FOR ADMISSION NO. 284.:**

Admit that POSHOW had reason to know that the DEBTORS were insolvent at all points throughout 2009.

**REQUEST FOR ADMISSION NO. 285.:**

Admit that POSHOW had reason to know that the DEBTORS were insolvent at all points throughout 2010.

**REQUEST FOR ADMISSION NO. 286.:**

Admit that YOU know what a Ponzi scheme is.

**REQUEST FOR ADMISSION NO. 287.:**

Admit that YOU knew what a Ponzi scheme was at all points between 2003 and 2010.

**REQUEST FOR ADMISSION NO. 288.:**

Admit that YOU had reason to know that EPD was operating as a Ponzi scheme at all points throughout 2003.

**REQUEST FOR ADMISSION NO. 289.:**

Admit that YOU had reason to know that EPD was operating as a Ponzi scheme at all points throughout 2004.

**REQUEST FOR ADMISSION NO. 290.:**

Admit that YOU had reason to know that EPD was operating as a Ponzi scheme at all points throughout 2005.

**REQUEST FOR ADMISSION NO. 291.:**

Admit that YOU had reason to know that EPD was operating as a Ponzi scheme at all points throughout 2006.

**REQUEST FOR ADMISSION NO. 292.:**

Admit that YOU had reason to know that EPD was operating as a Ponzi scheme at all points throughout 2007.

**REQUEST FOR ADMISSION NO. 293.:**

Admit that YOU had reason to know that EPD was operating as a Ponzi scheme at all points throughout 2008.

**REQUEST FOR ADMISSION NO. 294.:**

Admit that YOU had reason to know that EPD was operating as a Ponzi scheme at all points throughout 2009.

**REQUEST FOR ADMISSION NO. 295.:**

Admit that YOU had reason to know that EPD was operating as a Ponzi scheme at all points throughout 2010.

**REQUEST FOR ADMISSION NO. 296.:**

Admit that EPD was operating as a Ponzi scheme at all points throughout 2003.

**REQUEST FOR ADMISSION NO. 297.:**

Admit that EPD was operating as a Ponzi scheme at all points throughout 2004.

**REQUEST FOR ADMISSION NO. 298.:**

Admit that EPD was operating as a Ponzi scheme at all points throughout 2005.

///

**REQUEST FOR ADMISSION NO. 299.:**

Admit that EPD was operating as a Ponzi scheme at all points throughout 2006.

**REQUEST FOR ADMISSION NO. 300.:**

Admit that EPD was operating as a Ponzi scheme at all points throughout 2007.

**REQUEST FOR ADMISSION NO. 301.:**

Admit that EPD was operating as a Ponzi scheme at all points throughout 2008.

**REQUEST FOR ADMISSION NO. 302.:**

Admit that EPD was operating as a Ponzi scheme at all points throughout 2009.

**REQUEST FOR ADMISSION NO. 303.:**

Admit that EPD was operating as a Ponzi scheme at all points throughout 2010.

**REQUEST FOR ADMISSION NO. 304.:**

Admit that at all points throughout 2003 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 305.:**

Admit that at all points throughout 2004 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 306.:**

Admit that at all points throughout 2005 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 307.:**

Admit that at all points throughout 2006 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 308.:**

Admit that at all points throughout 2007 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 309.:**

Admit that at all points throughout 2008 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 310.:**

Admit that at all points throughout 2009 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 311.:**

Admit that at all points throughout 2010 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 312.:**

Admit that YOU had reason to know that at all points throughout 2004 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 313.:**

Admit that YOU had reason to know that at all points throughout 2005 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 314.:**

Admit that YOU had reason to know that at all points throughout 2006 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 315.:**

Admit that YOU had reason to know that at all points throughout 2007 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 316.:**

Admit that at all points throughout 2008 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 317.:**

Admit that YOU had reason to know that at all points throughout 2009 that the DEBTORS could not pay their debts as they matured.

**REQUEST FOR ADMISSION NO. 318.:**

Admit that YOU had reason to know that at all points throughout 2010 that the DEBTORS could not pay their debts as they matured.

///

**REQUEST FOR ADMISSION NO. 319.:**

Admit that in September 2009 YOU knew that the filing of the UCC-1 was a fraudulent conveyance.

**REQUEST FOR ADMISSION NO. 320.:**

Admit that in September 2009 YOU believed that the filing of the UCC-1 was a fraudulent conveyance.

**REQUEST FOR ADMISSION NO. 321.:**

Admit that in September 2009 POSHOW believed that the filing of the UCC-1 was a fraudulent conveyance.

**REQUEST FOR ADMISSION NO. 322.:**

Admit that in September 2009 POSHOW knew that the filing of the UCC-1 was a fraudulent conveyance

**REQUEST FOR ADMISSION NO. 323.:**

Admit that that the filing of the UCC-1 was a fraudulent conveyance.

**REQUEST FOR ADMISSION NO. 324.:**

Admit that EPD had stopped making payments to a majority of its creditors, at latest, in or about September 2009.

**REQUEST FOR ADMISSION NO. 325.:**

Admit that YOU caused the recordation and filing of the UCC-1 in or about September 2009.

**REQUEST FOR ADMISSION NO. 326.:**

Admit that YOU caused to have prepared and filed a UCC-1 financing statement on behalf of HMB Holdings, LLC purportedly against all of the assets of the DEBTORS.

Dated: January 27, 2017

BRUTZKUS GUBNER

By: ______________________
MICHAEL W. DAVIS
Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

# EXHIBIT "A"

B10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT Central District Of California | PROOF OF CLAIM |
|---|---|
| Name of Debtor: EPD Investment Co., LLC | Case Number: 2:10-62208-ER |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
BRIGHT CONSCIENCE
734 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

Court Claim Number: ____________
(*If known*)

Telephone number:

Filed on: ____________

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: money
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: 0710

3a. Debtor may have scheduled account as: ____________
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☒ Other
Describe: All assets

Value of Property: $____________ Annual Interest Rate 12 %

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $____________ Basis for perfection: UCC-1

Amount of Secured Claim: $ 2,672,000 Amount Unsecured: $____________

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$____________

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

Date: 12/12/11

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature] Trustee

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

004939

75304004943029

# EXHIBIT "B"

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California** — **PROOF OF CLAIM**

Name of Debtor: EPD Investment Co., LLC

Case Number: 2:10-62208-ER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_______
*(If known)*

Filed on:_______

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

Telephone number:

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

**3a. Debtor may have scheduled account as:** _______
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
Describe: All assets

**Value of Property:** $_______ **Annual Interest Rate** 12 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

if any: $_______ **Basis for perfection:** VCC-1

**Amount of Secured Claim:** $ 2,672,000 **Amount Unsecured:** $_______

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(_).

**Amount entitled to priority:**

$_______

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 12/12/11

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature], Trustee

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT "C"

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California** | **PROOF OF CLAIM**

Name of Debtor: EPD Investment Co., LLC

Case Number: 2:10 62208-ER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

Telephone number:

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: ____________
(*If known*)

Filed on: ____________

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

**3a. Debtor may have scheduled account as:** ____________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe:** All assets

**Value of Property: $** ____________ **Annual Interest Rate** 12 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $** ____________ **Basis for perfection:** VCC-1

**Amount of Secured Claim: $** 2,672,000 **Amount Unsecured: $** ____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ ____________

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 12/12/11

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
[signature], Trustee

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

004939

75304004943029

# EXHIBIT "D"

B 10 (Official Form 10) (12/12)

**UNITED STATES BANKRUPTCY COURT** Central District of California

**PROOF OF CLAIM**

Name of Debtor: Jerrold S. Pressman

Case Number: 2:12-bk-13760-ER

FILED
FEB 15 2013
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: RS Deputy Clerk

COURT USE ONLY

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Bright Conscience Trust

Name and address where notices should be sent:
Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades, CA 90272-4355

Telephone number: email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: ____________
(*If known*)

Filed on: ____________

Name and address where payment should be sent (if different from above):

Telephone number: email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 3,529,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|---|
| 0 7 1 0 | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☑ Other
Describe: All assets

Value of Property: $____________

Annual Interest Rate 24.000% ☑ Fixed or ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: $____________

Basis for perfection: UCC-1

Amount of Secured Claim: $ 3,529,000.00

Amount Unsecured: $____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority: $____________

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/12) 2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Poshow Ann Kirkland
Title: Trustee of the Bright Conscience Trust
Company:
Address and telephone number (if different from notice address above):

(Signature) 02/13/2013 (Date)

Telephone number: email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

EXHIBIT "E"

# NOTICE OF ASSIGNMENT

Reference is made to the Secured Promissory Note, Continuing Guaranty, and Security Interest Agreement dated as of November 8, 2007, by and among John C. Kirkland, EPD Investment Co., LLC, and Jerrold S. Pressman, and all other Loan Documents concurrently or subsequently entered into among the parties.

Notice is hereby given that all rights of John C. Kirkland under all such Loan Documents have been sold transferred and assigned to the Bright Conscience Trust Dated September 9, 2009.

John C. Kirkland

ACKNOWLEDGED AND ACCEPTED
AS OF SEPTEMBER 10, 2009:

Jerrold S. Pressman

EPD INVESTMENT CO., LLC

By: __________
Name: Jerrold S. Pressman
Title: Chairman

# EXHIBIT "F"

# FUNDING AGREEMENT

THIS FUNDING AGREEMENT ("**Agreement**") is entered into on July 24, 2009 (the "**Effective Date**"), between EPD INVESTMENT CO., LLC, a California limited liability company ("**EPD**"), and JERROLD S. PRESSMAN, an individual ("**Pressman**"), on the one hand, and JOHN C. KIRKLAND, an individual ("**Investor**"), on the other hand.

## Recitals

WHEREAS, the parties previously entered into that certain Secured Promissory Note dated as of November 8, 2007 (the "**Note**"), that certain Continuing Guarantee of even date therewith, and that certain Security Interest Agreement of even date therewith (collectively, together with any documents related thereto, the "**Transaction Documents**"); and

WHEREAS, Investor has invested an aggregate of approximately $2 million in EPD pursuant to the Transaction Documents, all of which is guaranteed and subject to repayment by EPD and Pressman; and

WHEREAS, EPD states that it has paid approximately $75,000 to Investor's mortgage lender for the benefit of Investor over the last year, in monthly payments of approximately $7,500, and will make additional monthly payments in accordance with this Agreement; and

WHEREAS, EPD has advised Investor that, due to temporary cash flow constraints, EPD has an immediate need for $100,000; and

WHEREAS, Investor has agreed to provide EPD with immediate funds subject to and in accordance with the terms hereof;

NOW THEREFORE, in consideration of the premises, and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereby agree as follows:

## Agreement

1. **Additional Funds.** Pursuant to the Transaction Documents, which are hereby incorporated herein by reference as though each of the same were set forth in full herein, Investor will deliver $100,000.00 to EPD on the Effective Date, receipt of which is hereby acknowledged.

2. **Monthly Payments.** The funds delivered pursuant to Section 1 hereof shall be applied as follows: (a) first, to repayment of all funds previously paid by EPD on account of or for the benefit of Investor, to the extent actually paid, (b) second, to payment of any and all monies otherwise due to EPD from Investor, which have not previously been paid, (c) third, to be held in trust by EPD to make at least three consecutive additional monthly payments for the benefit of Investor, and (d) all funds paid by Investor, or previously paid by Investor, to or for the benefit of any EPD Parties or Pressman Entities (as defined below) shall be treated in accordance with the Transaction Documents and subject to guaranteed repayment by EPD and Pressman in accordance with the terms thereof.

3. **Investor Release.** Other than the duties and obligations provided for pursuant to or arising out of the Transaction Documents, including, but not limited to, repayment of the Obligations as defined in the Security Interest Agreement, Investor hereby fully, completely, absolutely and unconditionally waives, releases, remises, acquits, satisfies, and forever discharges and holds harmless EPD, Pressman, all of EPD's past and present officers, directors, managers, members, managing directors, partners, employees, trusts, settlors, trustees, beneficiaries, fiduciaries, relatives, representatives, agents, attorneys and assigns, whether acting in their representative, individual or any other capacities (collectively with EPD and Pressman, the "**EPD Parties**"), from any and all liabilities, duties, causes of action, rights, obligations, damages, suits, debts, sums of money, accounts, reckonings, bonds, bills, demands, agreements, covenants, contracts, controversies, costs, expenses, offsets, and claims of any kind or nature whatsoever, at law and in equity, whether known or unknown, which Investor ever had, now has, or which any representative, fiduciary, trustee, creditor, successor, heir or assign of Investor hereafter can, shall or may have, against any of the EPD Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time to the Effective Date. Investor irrevocably agrees to forever refrain and forbear from commencing, instituting or participating, either as a named party or otherwise, in any lawsuit, action or other proceeding against any EPD Parties in any capacity, whether brought by Investor or by others on Investor's behalf, based on or arising out of any or all matters provided for in the preceding sentence.

4. **EPD Release.** Notwithstanding any other provision, EPD, Pressman individually, and all entities owned or controlled by Pressman (collectively with EPD and Pressman, the "**Pressman Entities**"), hereby fully, completely, absolutely and unconditionally waive, release, remise, acquit, satisfy, and forever discharge and hold harmless Investor, all of Investor's past and present officers, directors, managers, members, managing directors, partners, employees, trusts, settlors, trustees, beneficiaries, fiduciaries, relatives, representatives, agents, attorneys and assigns, whether acting in their representative, individual or any other capacities (collectively with Investor, the "**Investor Parties**"), from any and all liabilities, duties, causes of action, rights, obligations, damages, suits, debts, sums of money, accounts, reckonings, bonds, bills, demands, agreements, covenants, contracts, controversies, costs, expenses, offsets, and claims of any kind or nature whatsoever, at law and in equity, whether known or unknown, which any of the Pressman Entities ever had, now has, or which any representative, fiduciary, trustee, creditor, successor, heir or assign of any of the Pressman Entities hereafter can, shall or may have, against any of the Investor Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time to the Effective Date. Each of the Pressman Entities irrevocably agrees to forever refrain and forbear from commencing, instituting or participating, either as a named party or otherwise, in any lawsuit, action or other proceeding against any of the Investor Parties in any capacity, whether brought by any Pressman Entities or by others on any Pressman Entities' behalf, based on or arising out of any or all matters provided for in the preceding sentence.

5. **1542 Release.** It is the parties' intention to fully, finally and forever settle, release and resolve all claims, regardless of whether known or unknown, foreseen or unforeseen, suspected or unsuspected, vested or contingent, accrued or unaccrued. The releases given herein shall be and remain in effect to their full extent, notwithstanding the discovery or existence of any additional or different facts or damages. Each of the parties knowingly and voluntarily waives the provisions of Civil Code Section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of

executing the release, which if known by him must have materially affected his settlement with the debtor."

6. **Contractual Statute of Repose.** Notwithstanding any other provision: Any action, arbitration, proceeding, claim or cause of action of any kind or nature whatsoever against EPD, Pressman, any of the EPD Parties or Pressman Entities, or Investor or any of the Investor Parties, brought by, on behalf of, or for the benefit of Investor or any of Investor Parties, or EPD, Pressman, any of the EPD Parties or any of the Pressman Entities, or any representative, fiduciary, trustee, creditor, successor, heir or assign of any of the foregoing, whether or not arising of, relating to, or in connection with this Agreement, the Transaction Documents or any relations between the parties, can only be brought and filed within one year (i.e., the day prior to the one-year anniversary) of the date of the earliest (a) occurrence, (b) wrongful act or omission, (c) breach, (d) damage, or (e) accrual of any claim or cause of action, whichever occurs first, with no tolling and regardless of discovery or continuing violation. This paragraph establishes an absolute bar to any ability to commence arbitration or bring suit on or after the one-year anniversary of the earliest of any of the foregoing, and in no event shall the time for the commencement of any action or proceeding exceed one year. The running and expiration of the one-year period cannot and shall not be tolled, extended, suspended, waived or revived for any reason whatsoever, including, but not limited to, the existence or lack of (i) knowledge or discovery, (ii) damage or actual injury, (iii) any continuing representation or ongoing relationship, fiduciary or otherwise, (iv) willful concealment, (v) actual fraud or collusion, (vi) mistake or duress, (vii) minority or disability, (viii) dependence on any future act or event, (ix) ongoing conduct or continuing violation, (x) subsequent acts or separable claims, (xi) exhaustion or pursuit of any remedies, actions or processes, (xii) waiver, failure to assert, or inconsistent action, (xiii) bankruptcy or receivership, (xiv) equity or fairness, or (xv) any other facts or circumstances. All rights, remedies, claims and causes of action shall expire and terminate within one year, and any action or proceeding not commenced prior to the one-year anniversary shall be permanently and forever barred, without regard to any waiver, tolling or limitations period provided for by statute, law, equity or fairness. The parties knowingly and permanently waive any tolling provision, rule or statute of limitations to the contrary. This paragraph is intended to limit the right to sue or arbitrate to a period shorter than that granted by statute, and shall be liberally construed and interpreted to accomplish that result. The protections of this paragraph cannot be waived. All provisions of this paragraph are severable.

7. **Interpretation.** This Agreement shall be binding upon and shall inure to the benefit of the parties and their successors and assigns. This Agreement was drafted and prepared solely by EPD, and shall be interpreted and construed as an instrument drafted by EPD. Each of the EPD Parties acknowledges and agrees that Investor is not acting as an attorney or advisor to any of the EPD Parties, and will instead act solely in Investor's own interests, in connection with this Agreement.

8. **Arbitration.** Any and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents, or involving any of the parties hereto, including, but not limited to, all issues of arbitrability, timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, and all other preliminary issues, will be resolved by final and binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California, in accordance with its most expedited and

streamlined rules and procedures, with depositions and discovery prohibited or limited to the maximum extent permissible, and the final offer (baseball) arbitration option. The prevailing party will be awarded all reasonable arbitration, attorney and expert fees, costs and expenses. Any arbitration award may be entered in any court of competent jurisdiction.

9. **Ratification.** This Agreement shall be interpreted in a manner that is harmonious and consistent with the intent and purpose of the Transaction Documents, but in the event of any conflict between the Loan Document and this Agreement, this Agreement shall control. Except as modified by this Agreement, the Transaction Documents are hereby ratified and confirmed in all respects, and shall be and remain fully effective and enforceable in accordance with their terms.

John C. Kirkland

Jerrold S. Pressman

EPD INVESTMENT CO., LLC

By:____________________
Jerrold S. Pressman

# EXHIBIT "G"

John C. Kirkland
Tel. 310.586.7786
Fax 310.586.0286
KirklandJ@gtlaw.com

July 8, 2005

By U.S. Express Mail

Offer in Compromise Unit
State of California Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

| | |
|---|---|
| Subject: | Offer in Compromise |
| Taxpayer: | Stretto Enterprises |
| Account No.: | 0677268 REDACTED |
| Tax Year: | 1992 |
| Liability: | $456,443 plus interest |
| Offer: | $250,000 |

Dear Offer in Compromise Specialist:

Our client, Jerrold Pressman, hereby requests reevaluation of his Offer in Compromise.

In addition, because he was able to obtain a $250,000 line of credit on his residence, Mr. Pressman hereby increases his offer to $250,000. (The original offer he submitted in October 2004 noted that Mr. Pressman intended to seek a second mortgage on his residence to obtain the funds to pay the offer. Due to an increase in the property value, he was able to refinance his home in February 2005.)

The following discussion specifically addresses all reasons for denial, and explains the significant documentation which is enclosed to overcome the reasons for denial. As explained below, the denial is based on misapprehensions of Mr. Pressman's actual finances, and incorrect assumptions regarding apparent inferences from the documentation previously provided.

Mr. Pressman also requests an in-person meeting with an OIC Specialist, to explain his complicated financial circumstances, the reasons he does not have the ability to pay his outstanding liability in full, and why the amount offered is more than the Franchise Tax Board can expect to collect within a reasonable period of time.

**1. Mr. Pressman's Background**

Mr. Pressman is a 70-year old retiree, deeply in dept, with virtually no unencumbered assets or current income.

Many years ago, he began driving around in a pick-up truck, servicing fire extinguishers for small business owners. Over the course of some 35 years, he was able to gradually build up his own small business, by joining together with other fire extinguisher servicemen.

Over this same period of time he built up substantial debt, primarily for equipment and acquisition costs. He would pay the interest on the debt from the income he generated from his business. In 1992, he sold the business and retired. It was that sale which gave rise to the assessment against his company, Stretto Enterprises, that has led to this offer in compromise.

Mr. Pressman used the proceeds of the sale to purchase a home, pay accrued interest on his debt, and become a passive investor in real estate projects, almost all of which have been disastrous. Throughout the course of his business life, Mr. Pressman never had any personal experience or connection with the stock market, real estate ownership, developments or management of properties. So, naturally, he invested all his money in stocks and real estate.

Wynton Marsalis has said that the best way to make a small fortune as a jazz musician is to start with a large fortune. Mr. Pressman's experience has, unfortunately, applied an extreme version of that maxim to investing. During his ownership of JSP Properties and North Hills, he has lost millions, gone substantially deeper into debt, and never received a penny in salary or distribution.

**2. American Express Card Statements**

Since he has no source of current income and no ability to borrow more, Mr. Pressman has effectively been living off his credit cards. He charges the business expenses of S.C. Club, Inc. (Key Club and the Plush Lounge it is the manager of) to his American Express card, and obtains cash reimbursement from the company, essentially using his credit card as a line of credit.

Enclosed is backup data showing that Mr. Pressman's American Express card was used to pay the expenses of S.C. Club where the vendors required cash or would not extend credit. By using his credit card, S.C. Club was able to gain an extra 30 days to pay their bills. Enclosed are detailed statements for July, August and September 2004, indicating that these companies were billed back and reimbursed him for those AMEX charges. (Tabs 1-6.)

Additionally, enclosed is a copy of a check from Specialty Merchandise Corporation (an unrelated company) reimbursing Mr. Pressman for the Laker tickets referenced in the July 2004

American Express bill, which he was required to sell after owning them for 20 years, since he is unable to afford them. (Tab 7.)

You will note that, once the company business expenses are deducted, Mr. Pressman's monthly personal expenses were actually only $1,370.00, $659.95 and $1,942.00 for July, August and September 2004, respectively. This does not suggest that Mr. Pressman could enter into an installment agreement to resolve his liability, but rather shows that he cannot.

The monthly expenses of S.C. Club are also no indication that Mr. Pressman has a monthly income. As noted in our letter of March 7, 2005, Mr. Pressman owns a one-third interest in S.C. Club, which has a substantial negative net worth and net loss. (That S.C. Club is asking a minority shareholder to help "float" its monthly expenses is an indication of its own financial difficulties.)

Mr. Pressman's credit cards are not paid in full each month, but rather have a steadily increasing outstanding balance. The remaining outstanding balance on Mr. Pressman's AMEX card after making his last monthly payment is over $99,000, bearing interest at high credit card rates.

### 3. Two "Personal" Properties

Mr. Pressman's daughter and her family live in the Hawthorne, CA home. The monthly rent is $1,700 per month, and the mortgage payment is $1,591.15. Accordingly, there is no cash flow. As shown by the appraisal and mortgage statement previously provided, the home could not be sold for an amount sufficient to pay off the outstanding mortgage balance, realtor fee and closing costs.

The Brentwood, TN property is not a home that anyone could live in. The house was built in 1858, and has stood empty for the past 10 years. No rent is shown because there is no tenant. The property is a contiguous parcel of the undeveloped land owned by JSP Properties (as explained below), that Mr. Pressman was required to purchase out of bankruptcy. However, because it contained a single family residence, Mr. Pressman was able to finance this portion of the land with a residential mortgage with more favorable treatment than a commercial loan. Since it would be cost prohibitive to make the house livable, presumably it will be torn down for development if JSP Properties is ever able to develop or sell the adjacent parcels. As noted by the appraisal and mortgage statement previously provided, this property cannot be sold for an amount sufficient to pay off the outstanding mortgage balance, realtor fee and closing costs. Mr. Pressman has had the property aggressively on the market to sell for the last four years, but to date has been unable to sell it for an amount sufficient to generate any cash at closing.

4. **JSP Properties, Inc.**

A decade ago, Mr. Pressman became a limited partner in Inglehame Farm, L.P., a real estate limited partnership in Tennessee. He was induced to guarantee the financing for the purchase of the original properties.

The development failed and the L.P. went into bankruptcy. Mr. Pressman was personally on the line for over $7 million of debt, so to protect his interests he was forced to have JSP Properties, Inc. purchase the property out of bankruptcy. This allowed him to pay off the accelerated debt that he was facing, with the hope that the new loans would allow enough time to sell off the property and ultimately earn enough to cover the new borrowed funds. JSP Properties obtained financing for the purchase through Beal Bank, but Mr. Pressman was also required to obtain additional loans from individual investors through EPD, personally guarantee the debt, and cross collateralize the loan with his ownership interest in North Hills. By that point, his hope was only to preserve his estate, and while he would have liked to have made a profit, it was apparent after the bankruptcy filing that this could probably not be done. The enclosed bankruptcy court plan clarifies Mr. Pressman's transition from passive investor to his involvement in the ultimate purchase of the property. (Tab 8.)

A group experienced in real estate development manages JSP Properties and is in charge of developing and selling the properties. All monies received by the company are deposited into their business account and are used only to repay the lenders, pay for required bonding and the contractors related to that preparation of the land for sale. The borrowed funds are specifically tied to the development of each lot with the requirement of paying back the borrower a specific portion of the proceeds upon sale or using the funds specifically for construction, bonding, taxes, etc.

As previously stated, Mr. Pressman has never been able to have one penny distributed to himself or his family, and any future prospect of doing so is subordinated to the lenders and the group operating the business on contingency if and when a profit is ever generated. The business plan contemplated was designed to pay off the guaranteed debt and hopefully to buy some time and break even at the end. To date enough of the property has been sold to at least meet the debt service. However, as of this date, some of the property taxes have not been paid and, as of this month, Mr. Pressman is advised that the bank account of JSP Properties, Inc. was overdrawn.

Mr. Pressman believes he was fraudulently induced into the complex financial dealings relating to the Tennessee properties, which he was unable to fully understand and appreciate given his complete lack of experience with real estate development. He was able to find a trial lawyer in Tennessee to take his case on contingency. Had he prevailed, he may have recovered enough money to pay his tax liability. Unfortunately, he lost. He appealed, and lost again. A copy of the final Court of Appeals decision is enclosed for your reference. (Tab 9.)

As described in detail above, the intertwining of financial interests in JSP Properties does not suggest that Mr. Pressman has the ability to pay more than the amount offered in the OIC, but rather shows that he does not.

5. **North Hills Industrial Park, Inc.**

Despite speculation that the property could be sold for more than the total encumbrances against it, the economic reality is that it cannot. In addition to a $25 million mortgage which exceeds the value of the property, the property cannot be sold (or even refinanced at a lower interest rate) without payment of a $3 million defeasance penalty to the insurance company who provided the financing.

Mr. Pressman's non-controlling interest in North Hills Industrial Park, Inc. is unsaleable since all of the income from the property only repays creditors, maintenance and interest. The tenant (Federal Express) was given long-term rent concessions in exchange for completing the required build out, and there does not seem to be any potential for profit distribution for the foreseeable future. Any positive cash flow would first be used to pay bridge financing and other lenders who have an interest in the proceeds.

The controlling majority owners have no interest in selling the property (particularly at a loss), or in purchasing Mr. Pressman's stock, especially with a shareholder agreement that will not allow Mr. Pressman to sell it to a third party, even in the unlikely event such a purchaser could be found for a minority share of a single-asset company with no cash flow.

6. **Borrowing on Personal Residence**

As noted above, due to the increasing property values in Southern California, Mr. Pressman has been able to refinance a second mortgage on his home, making available $250,000 in equity which he can use to pay the OIC.

However, the $1.5 million and $600,000 liens recently placed on Mr. Pressman's personal residence do not represent any money received by Mr. Pressman. Rather, they are liens placed on the home as additional security for prior loans.

The $1.5 million lien against his residence was additional security for a refinancing required to release the North Hills as cross collateral from the Beal Bank loan of JSP Properties. If the loan on the North Hills property was not paid off, Mr. Pressman would have been in default and lost everything, and so he was required to place a fourth mortgage on his home in order to secure that loan.

The $600,000 mortgage was not given in exchange for a new loan, but rather as additional security for a 1991 loan from Stanton Greene. The note became due and the creditor required as a condition of not calling the million dollar note, to place third mortgage on Mr. Pressman's personal home and obtain second UCC-1 on all of Mr. Pressman's other assets (including any possible future distributions from JSP Properties or North Hills), which he was forced to do to keep from going into default on the note. (Tab 11, S.)

Mr. Pressman did not receive either $1.5 million or $600,000, and did not have the opportunity to apply these funds towards his taxes.

7. **Future Earning Potential**

For the last 10 years after Mr. Pressman sold his business of 35 years, he has had no earning history. Unfortunately, Mr. Pressman does not have the ability to raise money and generate income. If he could, he would.

To the contrary, Mr. Pressman following the sale of his business he has continued to borrow substantially to finance debt service and living expenses, and is now heavily in debt. The enclosed sampling of promissory notes give an indication of the depth of his financial distress. (Tab 11, A-Z.) His borrowings over the years through EPD Investment Co. (originally operated by Mr. Pressman as a sole proprietorship for thirty years, and now operated as an LLC managed and controlled by his son, attorney Keith Pressman, on behalf of the investors) are now tens of millions of dollars, which are personally guaranteed by Jerrold Pressman and secured by a lien on his home and a blanket UCC-1 on all his assets. (Tab 10.)

As shown from the enclosed documentation, all of the funds are owed to third parties, many of a fiduciary nature such as financial institutions and IRA accounts. Keith Pressman receives no salary or distribution for managing the LLC, but acts to ensure that funds are applied as designated and required. Jerrold Pressman is unable to borrow money to pay his taxes, and the existing creditors preclude him from choosing to apply their funds towards his personal taxes. He simply does not have the actual or legal ability to do so.

Mr. Pressman does not lead an expensive or extravagant lifestyle. Aside from his personal residence (which, fortunately, he has been able to live off the equity of, using it as a source of positive cash flow, rather than a drain), Mr. Pressman has very low monthly personal expenditures. He is unmarried. All of his children are grown. He drives a leased Jeep, as he has for the last 10 years. He is not a member of any club, does not play golf, and does not take vacations. Mr. Pressman is reimbursed for monies that he lays out on behalf of third parties through his credit cards giving him a wash, not a profit.

Because Mr. Pressman has offered to pay towards his taxes all of the money that he has been able to raise, and because of his other creditors and the liens on all his assets the amount offered is more that the Franchise Tax Board can expect to collect within a reasonable period of time. Mr. Pressman requests that his offer in compromise be accepted.

Thank you again for your assistance in this matter. Please feel free to contact me with any questions, or if there is any further information we can provide.

Sincerely,

John C. Kirkland

JCK:mb
cc: Mr. Jerrold S. Pressman

# EXHIBIT "H"

John C. Kirkland
Tel. 310.586.7786
Fax 310.586.0286
KirklandJ@gtlaw.com

By U.S. Express Mail

Mr. Terence K. Tanner
Offer in Compromise Specialist
State of California Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

Re: Offer in Compromise

Dear Mr. Tanner:

The purpose of this letter is to respond to your requests for additional information with regard to the previously-submitted OIC. In particular, you have asked us to provide:

1. The percentage interest that Jerrold Pressman owns and controls of each of the entities listed in his tax returns, and the date he first acquired an interest.

2. An explanation of why Mr. Pressman cannot sell the assets owned by one or more of the entities to pay the tax liability.

3. An explanation of why Mr. Pressman cannot sell his interest in one or more of the entities, and use the proceeds to pay the tax liability.

Although there is obviously significant detail and explanation necessary to fully understand each of the individual investments, we are advised that the basic summary responses are as follows:

1. EPD Investment Co., LLC
   Date Acquired: June 27, 2003
   Percent Ownership: 49%

2. JSP Properties, Inc.
   Date acquired: April 7, 1999
   Percent Ownership: 50%

LA-FS1\320601v01

GT002632

---

3. West Hills Properties, L.P.
   Date Acquired: June 22, 1995
   Percent Ownership: 50%

4. North Hills Industrial Park, Inc.
   Date Acquired: May 21, 1998
   Percent Ownership: 10%

5. Broadway Entertainment Marketing, Inc.
   Date Acquired: June 10, 1992
   Percent Ownership: 98.2%

6. S.C. Club, Inc.
   Date Acquired: June 9, 1993
   Percent Ownership: 33.33%

7. Ice Skating Enterprises, Inc.
   Date Acquired: November 25, 2002
   Percent Ownership: 49%

8. Ice Group Escondido, Inc.
   Date Acquired: August 15, 1994
   Percent Ownership: 48.5%

**1. · EPD Investment Co., LLC**

EPD has a total liabilities of over $47 million, including over $36 million in promissory notes for funds received from third-parties, most of which are personally guaranteed by Mr. Pressman. Mr. Pressman's personal repayment obligations to the company are secured by a perfected, blanket, first-priority UCC-1 security interest on all of his assets.

EPD estimates a $3.4 million loss for last year. The company received approximately $9 million in 2004, most through third-party loans, including approximately $1.5 million from IRA accounts. Because of the company's high interest expense, over the past three years of economic downturn, it has been unable to earn income in excess of outgoing funds, thereby creating a large negative cash flow.

Currently, the interest requirement exceeds $3 million per year and has averaged approximately $1.5 million per year in demand principal repayments, requiring at least $4.5 million of new loans, investment or income per year just to break even cash flow wise.

---

In order to stave off default, Mr. Pressman refinanced his home twice during 2004, and deposited the full proceeds from the financing into EPD, to fund some of the interest and principal demands of the existing note holders which he has personally guaranteed.

On a monthly basis, to the extent funds are available, EPD doles out to Mr. Pressman, as a return of the principal from the funds acquired by him through refinancing, enough to meet the interest on the refinancing and his other living expenses. All of these funds come back to him as a return of his principal, not as income or other compensation.

Mr. Pressman cannot misappropriate EPD funds to pay off a personal obligation. The equity interest in EPD is obviously unsaleable due to its massive debt load and negative net worth. The $36 million in secured debt—which encumbers all of Mr. Pressman's other assets-- effectively prevents Mr. Pressman from using any proceeds from the sale of any of the assets discussed below to pay the tax obligation.

**2. JSP Properties, Inc.**

JSP Properties' assets consist of undeveloped land in Tennessee. The underlying debt is in excess of $9 million, which is more than two times the value of the undeveloped land. Mr. Pressman executed approximately $7 million of personal guarantees to the banks.

Additional funding would be required to develop the project to make it saleable for an amount in excess of the encumbrances. Mr. Pressman would be unable to sell the property without approval from the other 50% shareholder, who has refused.

Mr. Pressman is subject to a shareholder agreement, prohibiting him from selling his shares in the corporation to a third party without the consent of the other shareholder, who has refused.

**3. West Hills Properties, L.P.**

West Hills Properties' assets consist of undeveloped land in Texas. There have been periodic sales of portions of the property. The cash flow generated by those sales was used to pay the interest and taxes on the underlying mortgage and debt which is approximately $3.9 million. Mr. Pressman is subject to a personal guaranty on the note.

Additional funds would be required in order to entitle the land and prepare it for sale. If the company could sell the property today, the money would go to repaying the two major debts and other creditors of the company. Mr. Pressman would be unable to sell the property without approval from the other 50% partner, who has refused.