Mr. Pressman's shares in the company have been placed as collateral securing a $2,307,000 promissory note.

**4. North Hills Industrial Park, Inc.**

North Hills Industrial Park's assets are an industrial park in North Hills, California. The property is subject to $24,740,000 in mortgages, and has a negative cash flow. Mr. Pressman is subject to a personal guarantee.

Mr. Pressman is a 10% shareholder. He is subject to a shareholder agreement, prohibiting him from selling his shares in the corporation to a third party without the consent of the majority shareholders, who have refused.

**5. Broadway Entertainment Marketing, Inc.**

Broadway Entertainment Marketing (BEM) was originally formed in 1992 as Billboard Entertainment Marketing, to purchase a license from the music magazine Billboard, to produce the Billboard Awards television award show. The company lost the Billboard license in 1997, and changed its name to Broadway Entertainment. It has virtually no assets other than unsaleable book value good will, is subject to approximately $1.1 million in liabilities, and has an approximate $450,000 negative net worth.

**6. S.C. Club**

S.C. Club, Inc. is the general partner of S.C. Club, L.P., which operates the Key Club nightclub in leased premises on Sunset Blvd. Mr. Pressman is the sole limited partner, and is a one-third shareholder of the general partner. It was originally Billboard Live, as part of an extension of the above license. Upon losing the Billboard name, the venue was converted to the Key Club. It currently carries a negative net worth in excess of $10 million, and to date has a net loss this year of close to $900,000.

**7. Ice Skating Enterprises, Inc. (Easy Street)**

Ice Skating Enterprises is a management company that operates an ice skating rink located in Simi Valley, California. It has shareholder equity of $31,000, of which over $450,000 consists of good will. Mr. Pressman is a minority shareholder.

**8. Ice Group Escondido, Inc.**

Ice Group Escondido is a management company that manages ice rinks in Panorama City, Escondido, and Simi Valley, California. It currently has a negative $235,000 shareholder's

---

equity and is operating at a loss for the year. It does not own any assets. Mr. Pressman is a minority shareholder.

Mr. Pressman's business has generated heavy losses and has had no income for more than five years. None of the entities have any saleable assets with equity in excess of secured liens and other debts. With the exception of BEM. which has no assets, Mr. Pressman does not own a controlling interest in any of the entities, and would not have the ability to force sale or distribution even if they had any positive value (which they do not).

As non-controlling interests in private companies with negative net worth, they would be difficult, if not impossible to sell, even if he were permitted to do so. Most of Mr. Pressman's equity interests are subject to pledge agreements or shareholder lock-ups, and therefore could not be sold even if they had a positive value (which they do not).

Finally, as noted above, all of Mr. Pressman's assets—including his equity interests in all of the above entities, and all of the proceeds thereof—are subject to over $36 million is secured loans to third parties. Accordingly, he would be unable to use any such funds to pay the tax liability even if they existed (which they do not).

After you have had the opportunity to review the enclosed, please let me know your thoughts.

Thank you again for your assistance in this matter.

Sincerely,

John C. Kirkland
JCK:mb

cc: Mr. Jerrold S. Pressman

LA-FS1\320601v01

GT002636

# EXHIBIT "I"

John C. Kirkland
Tel. 310.586.7786
Fax 310.586.0286
KirklandJ@gtlaw.com

July 8, 2005

By U.S. Express Mail

Mr. Terence K. Tanner
Offer in Compromise Specialist
State of California Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

| | |
|---|---|
| Subject: | Offer in Compromise |
| Taxpayer: | Stretto Enterprises |
| Account No.: | 0677268/REDACTED |
| Tax Year: | 1992 |
| Liability: | $456,443 plus interest |
| Offer: | $250,000 |

Dear Mr. Tanner:

Our client, Jerrold Pressman, hereby requests reevaluation of his Offer in Compromise.

In addition, because he was able to obtain a $250,000 line of credit on his residence, Mr. Pressman hereby increases his offer to $250,000. (The original offer he submitted in October 2004 noted that Mr. Pressman intended to seek a second mortgage on his residence to obtain the funds to pay the offer. Due to an increase in the property value, he was able to refinance his home in February 2005.)

The following discussion specifically addresses all reasons for denial, and explains the significant documentation which is enclosed to overcome the reasons for denial. As explained below, the denial is based on misapprehensions of Mr. Pressman's actual finances, and incorrect assumptions regarding apparent inferences from the documentation previously provided.

Mr. Pressman also requests an in-person meeting with an OIC Specialist, to explain his complicated financial circumstances, the reasons he does not have the ability to pay his outstanding liability in full, and why the amount offered is more than the Franchise Tax Board can expect to collect within a reasonable period of time.

LA-FS1\343533v02

1. **Mr. Pressman's Background**

Mr. Pressman is a 70-year old retiree, deeply in dept, with virtually no current income or unencumbered assets.

Many years ago, he began driving around in a pick-up truck, servicing fire extinguishers for small business owners. Over the course of some 35 years, he was able to gradually build up his own small business, by joining together with other fire extinguisher servicemen.

Over this same period of time he built up substantial debt, primarily for equipment and acquisition costs. He would pay the interest on the debt from the income he generated from his business. In 1992, he sold the business and retired. It was that sale which gave rise to the assessment against his company, Stretto Enterprises, that has led to this offer in compromise.

Mr. Pressman used the proceeds of the sale to pay accrued interest on his debt, and to become a passive investor in real estate projects, almost all of which have been disastrous. Throughout the course of his business life, Mr. Pressman never had any personal experience or connection with real estate ownership, developments or management of properties. So, naturally, he invested all his money in real estate.

Wynton Marsalis has said that the best way to make a small fortune as a jazz musician is to start with a large fortune. Mr. Pressman's experience has, unfortunately, applied an extreme version of that maxim to real estate investing. During his ownership of JSP Properties, Westover Hills and North Hills, he has lost millions, gone substantially deeper into debt, and never received a penny in salary or distribution.

2. **American Express Card Statements**

[Since he has no source of current income and no ability to borrow more, Mr. Pressman has effectively been living off his credit cards. He charges the business expenses of companies managed by his son to his American Express card, and obtains cash reimbursement from the companies, essentially using his credit card as a line of credit.]

Enclosed is backup data showing that Mr. Pressman's American Express card was used to pay the expenses of S.C. Club, Inc. (Key Club and the Plush Lounge it is the manager of), where the vendors required cash or would not extend credit. By using his credit card, S.C. Club was able to gain an extra 30 days to pay their bills. Enclosed are detailed statements for July, August and September 2004, indicating that these companies were billed back and reimbursed him for those AMEX charges.

Additionally, enclosed is a copy of a check from Specialty Merchandise Corporation (an unrelated company) reimbursing Mr. Pressman for the Laker tickets referenced in the July 2004 American Express bill, which he was required to sell after owning them for 20 years, since he is unable to afford them.

You will note that, once the company business expenses are deducted, Mr. Pressman's monthly personal expenses were actually only $1,370.00, $659.95 and $1,942.00 for July, August and September 2004, respectively. This does not suggest that Mr. Pressman could enter into an installment agreement to resolve his liability, but rather shows that he cannot.

The monthly expenses of S.C. Club are also no indication that Mr. Pressman has a monthly income. As noted in our letter of March 7, 2005, Mr. Pressman owns a one-third interest in S.C. Club, which has a substantial negative net worth and net loss. (The fact that S.C. Club is asking a minority shareholder to help "float" their monthly expenses is an indication of their financial difficulty.)

Mr. Pressman's credit cards are not paid in full each month, but rather have a steadily increasing outstanding balance. The remaining outstanding balance on Mr. Pressman's AMEX card after making his last monthly payment is approximately $ .

3. **Two "Personal" Properties**

Mr. Pressman's daughter and her family live in the Hawthorne, CA home. A copy of the lease is enclosed. No rent is shown because there is no cash flow. The monthly rent is $1,700 per month, and the mortgage payment is $1,591.15. As shown by the appraisal and mortgage statement previously provided, the home could not be sold for an amount sufficient to pay off the outstanding mortgage balance, realtor fee and closing costs.

The Brentwood, TN property is not a home that anyone could live in. The house was built in 1858, and has stood empty for the past 10 years. No rent is shown because there is no tenant. The property is a contiguous parcel of the undeveloped land owned by JSP Properties (as explained below), that Mr. Pressman was required to purchase out of bankruptcy. However, because it contained a single family residence, Mr. Pressman was able to finance this portion of the land with a residential mortgage with more favorable treatment than a commercial loan. Since it would be cost prohibitive to make the house livable, presumably it will be torn down for development if JSP Properties is ever able to develop or sell the adjacent parcels. As noted by the appraisal and mortgage statement previously provided, this property cannot be sold for an amount sufficient to pay off the outstanding mortgage balance, realtor fee and closing costs. Mr. Pressman has had the property aggressively on the market to sell for the last four years, and has never received any offer sufficient to generate any cash.

4. **JSP Properties, Inc.**

A decade ago, Mr. Pressman became a limited partner in Inglehame Farm. L.P., a real estate limited partnership in Tennessee. In order to "get in with no money down" he was induced to guarantee the financing for the purchase of the original properties.

When that group went into bankruptcy, Mr. Pressman was personally on the line for between S7 and S8 million of debt, so to protect his interests he was forced to have JSP Properties purchase the property out of bankruptcy by financing the purchase through Beal Bank, which allowed him to pay off the accelerated debt that he was facing. The hope was that the new loan would give enough time to sell off the property to earn enough to ultimately cover the new borrowed funds of close to S11 million. Mr. Pressman was also required to cross collateralize the loan with his ownership in Westover and North Hills. His expectation was only to preserve his estate, and while he would have liked to have made a profit, it was very clear this could probably not be done. The enclosed bankruptcy court documents clarify Mr. Pressman's transition from passive investor to his involvement in the ultimate purchase of the property.

A group experienced in real estate development manages the company and is in charge of developing and selling the properties. All monies received by JSP Properties are deposited into their business account and are used only to repay the lenders, pay for required bonding and the contractors related to that preparation of the land for sale. The borrowed funds are specifically tied to the development of each lot with the requirement of paying back the borrower a specific portion of the proceeds upon sale or using the funds specifically for construction, bonding, taxes, etc.

As previously stated, Mr. Pressman has never been able to distribute one penny to himself or his family, and any future prospect of doing so is subordinated to the group operating the business on a contingency if and when a profit is ever generated. The business plan contemplated was designed only to pay off the guaranteed debt and hopefully to buy some time and break even at the end. As of this date, some of the property taxes have not been paid and, as of this month, Mr. Pressman is advised that the bank account of JSP Properties, Inc. was overdrawn $4,800.

[Mr. Pressman feels he was defrauded in the complex financial dealings relating to the Tennessee properties which he was unable to understand and appreciate, given his complete lack of experience with real estate development. He was able to find a trial lawyer in Tennessee to take his case on contingency. Unfortunately, he lost. A copy of the Court of Appeals decision is enclosed for your reference.]

The intertwining of financial interests in JSP Properties does not suggest that Mr. Pressman has the ability to pay more than the amount offered in the OIC, but rather shows that he does not.

LA-FS1\343533v02

5. **North Hills Industrial Park, Inc.**

Unfortunately, North Hills Industrial Property came to me under duress and stressful conditions, but the bottom line was clear, that while I have attempted over the years to sell my ownership in the property, the property has no economic value since up to now and in the foreseeable future all of its income only repays creditors, maintenance and interest and there does not seem to be any potential for profit distribution until the year 2008, at which time if and when a distribution can be made, I will, as a minority owner, receive only my portion. The existing majority owners also have no cash flow, so they have no interest in purchasing my ownership especially with covenants contained in the loan agreement that will not allow me to sell it to a third party, but even if I could, no third party would ever buy a minority interest knowing that they could never sell the property unless the other partners agreed and there was no cash flow in the foreseeable future. Not only can't I sell my interest or leverage it, I have absolutely zero leverage since the leverage rests with the majority owners.

6. **Borrowing on Personal Residence**

As noted above, due to the increasing property values in Southern California, Mr. Pressman has been able to refinance a second mortgage on his home, making available $250,000 in equity which he can use to pay the OIC.

However, the $1.5 million and $600,000 liens recently placed on Mr. Pressman's personal residence do not represent any money received by Mr. Pressman. Rather, they are liens placed on the home as additional security for prior loans.

The $1.5 million lien against his residence was additional security for a refinancing required to release the North Hills as cross collateral from the Beal Bank loan on JSP Properties. If Mr. Pressman was unable to pay off that loan on the North Hills property, he would have been in default and lost his entire interest, and so was only able to borrow the money in North Hills by reposting it as collateral for the loan, and was further required to place a fourth mortgage on his home in order to secure that loan.

The $600,000 mortgage was not given in exchange for a new loan, but rather as additional security for a 1991 loan. The note became due and the creditor required as a condition of not calling the million dollar note, to place third mortgage on Mr. Pressman's personal home and obtain second UCC-1 on all of Mr. Pressman's other assets (including any possible future distributions from JSP Properties or North Hills), which he was forced to do to keep from going into default on their note.

Mr. Pressman did not receive either $1.5 million or $600,000, and did not have the opportunity to apply these funds towards his taxes.

7. **Future Earning Potential**

For the last 10 years after Mr. Pressman sold his business of 35 years, he has had no earning history. Unfortunately, Mr. Pressman does not have the ability to raise money and generate income. If he could, he would.

To the contrary, Mr. Pressman has borrowed substantially and is heavily in debt. The enclosed sampling of promissory notes give an indication of the depth of his financial distress. His borrowings over the years through EPD Investment Co. (originally operated by Mr. Pressman as a sole proprietorship for thirty years, and now operated as an LLC managed and controlled by his son, attorney Keith Pressman, on behalf of the investors) are now tens of millions of dollars, which are personally guaranteed by Mr. Pressman and secured by a lien on his home and a blanket UCC-1 on all his assets. As shown from the enclosed documentation, all of the funds are owed to third parties, many of a fiduciary nature such as banks and IRA accounts. These creditors preclude Mr. Pressman from choosing to apply their funds towards his personal taxes. He simply does not have the actual or legal ability to do so.

Mr. Pressman does not lead an expensive or extravagant lifestyle. Aside from his personal residence (which, fortunately, he has been able to live off the equity of, using it as a source of positive cash flow, rather than a drain), Mr. Pressman has very low monthly personal expenditures. He is unmarried. All of his children are grown. He drives a leased Jeep, as he has for the last 10 years. He is not a member of any club, does not play golf, and does not take vacations. Mr. Pressman is reimbursed for monies that he lays out on behalf of third parties through his credit cards giving him a wash, not a profit.

Because Mr. Pressman has offered to pay towards his taxes all of the money that he has been able to raise, and because of his other creditors and the liens on all his assets the amount offered is more that the Franchise Tax Board can expect to collect within a reasonable period of time, Mr. Pressman requests that his offer in compromise be accepted.

Thank you again for your assistance in this matter. Please feel free to contact me with any questions, or if there is any further information we can provide.

Sincerely,

John C. Kirkland

JCK:mb

LA-FS1\343533v02

---

cc: Mr. Jerrold S. Pressman

LA-FS1\343533v02

# EXHIBIT "J"

October 4, 2004

BY U.S. EXPRESS MAIL

Ms. Rhonda Bianco
California Franchise Tax Board
P.O. Box 942857
Sacramento, CA 94257

Re: Stretto Enterprises
Entity ID CORP[redacted]

Dear Ms. Bianco:

Per your instructions, we are submitting to you the enclosed Form 4905, Offer in Compromise, for our client Jerrold Pressman on behalf of Stretto Enterprises.

Also enclosed is the following supporting documentation:

1. Verification of Income (Loss): Personal tax returns on Form 1040 for 2000, 2001, 2002, and 2003 extension
2. Verification of Expenses: Billing statements for the last three months
3. Bank statements
4. Auto lease statements
5. Mortgage statements
6. Power of attorney

Please note that Mr. Pressman is 69 years old and his only current income is from social security. He has incurred more than $10 million in business losses in the last five years, and has received no personal income from his business in that time. His total debt exceeds $48,000,000. All of his real property is mortgaged and virtually all of his other assets are subject to security interests substantially in excess of their ready market value.

After you have had the opportunity to review the Offer in Compromise, please let us know whether you need any further documents or information.

It continues to be our understanding that you will not proceed with involuntary collection against Mr. Pressman without first providing us with written notice. As you and Ms. Chung have discussed, any collection actions would trigger defaults on his loans and result in bankruptcy or total financial collapse.

Thank you for your assistance in this matter.

Very truly yours,

John C. Kirkland

JCK:mb
Enclosures
cc: Carol Perrin, Esq.
Grace Chung, Esq.

Ms. Rhonda Bianco

Page 3

Bcc: Mr. Jerrold S. Pressman

LA-FS1\301031v01

EXHIBIT "K"

John C. Kirkland
Tel: 310.586.7788
Fax: 310.586.0288
KirklandJ@gtlaw.com

December 19, 2005

Diana Perrin
Offer in Compromise Unit
Franchise Tax Board
P. O. Box 2952
Sacramento, CA 95812-2952

Re: *Offer in Compromise for Jerrold Pressman (Stretto Enterprises)*
*Account No. 0677268*
*SSN#:* **REDACTED**
*Tax Year: 1992*
*Liability: $1,492,857.45*

Dear Ms. Perrin:

This letter is in response to your letter dated November 19, 2005 regarding the above-referenced Offer in Compromise. My colleague, Michelle Ferreira, and I have tried to call you to discuss options for resolving this account. Michelle Ferreira is a tax attorney in Greenberg Traurig's Silicon Valley office who solely specializes in tax controversy matters. You are authorized to speak to Michelle Ferreira directly about this account.

Our attempts to contact you were to discuss the resolution of this matter. The FTB should consider accepting the previous offer to resolve this liability for $250,000. I cannot stress that the FTB will not collect the full liability owing from Mr. Pressman, given his age (he is 70 years old) and that he does not have future earning potential the FTB claims he has (he is retired). Mr. Pressman has offered to pay $250,000, which represents the equity he has in a line of credit on his personal residence. If the FTB would prefer that Mr. Pressman turn over the title to both rental properties in satisfaction of this liability, he would gladly do that, however, please understand that the value of these homes has reduced substantially since the date Mr. Pressman made his Offer. Indeed, the value of these two homes is less than the $250,000 Mr. Pressman is offering to satisfy this liability.

Michelle Ferreira has spoken to Charlyn Moore, of the Business Entities Collections Unit, regarding this account last week. Ms. Moore suggested we speak with you, as the Offer in Compromise Unit apparently has the authority to resolve this matter. Michelle offered to place Mr. Pressman in an installment agreement payment plan, of $10,000 per month, and Ms. Moore denied that

request, as the "liability would not be paid, given Mr. Pressman's age." We understand this as well, and this is why the taxpayer offered to pay the $250,000 lump sum payment via the Offer in Compromise.

If the FTB believes this taxpayer will have "future earning potential," as your November 19, 2005 letter states, the FTB is mistaken. Mr. Pressman has provided clear data showing that his living expenses have been paid for the past several years through various lines of credit, including his American Express card. Mr. Pressman's tax returns for 2000 and 2001 show losses of approximately $2 million, and his tax return for 2002 shows losses in excess of $3 million. His tax return for 2003, which has been filed since the Offer in Compromise was submitted, shows losses of **{John, how much?}.** Clearly his income is substantially less than his losses. Indeed, Mr. Pressman's only steady income stream is his social security payment of $1,400 per month. The Offer for $250,000 was in line with his social security payment, assuming he lived to be 85 years old.

Either way, Mr. Pressman's offer to pay either $250,000, in a lump sum amount, or $10,000 per month (for the rest of his life), are fair resolutions to this matter. It seems the FTB would prefer to receive some payment now, rather than nothing at all.

Indeed, if the FTB were to file a lien against Mr. Pressman, he would have to file for bankruptcy. Mr. Pressman currently finds himself in over $48 million of debt, all which is being managed through various loans, notes and lines of credit. If a lien were to be filed by the FTB against Mr. Pressman, his creditworthiness would seriously decrease, which will place him in default with his secured creditors. Any lien filed by the FTB now would put the FTB behind roughly $48 million in secured debt, which would mean the FTB would collect nothing. Mr. Pressman's assets do not exceed this amount, and his Offer in Compromise clearly showed this.

An Offer in Compromise is a business decision by the FTB. If the FTB will collect nothing from an individual taxpayer in the future, and if the offered amount will guarantee some form of collection today, it seems to me that the FTB would take the payment for the state to resolve the liability. However, given the multiple loans, liens and other secured debt (which come before any FTB lien), the FTB will collect nothing from a 70 year old taxpayer who will never have a paying income stream in the future. We seriously hope you will reconsider your blanket refusal to resolve this matter now. If there is an alternative payment option you propose, we welcome a proposal from you.

If you have any questions, please contact me at the number listed above.

Sincerely yours,

John C. Kirkland

Cc: Jerrold Pressman
G. Michelle Ferreira

sv-fs1\20866v01

# EXHIBIT “L”

Grace Chung, Esq.
310-586-7718
chungg@gtlaw.com January 30, 2004

**PERSONAL AND CONFIDENTIAL**
**SUBJECT TO ATTORNEY CLIENT PRIVILEGE**

Stretto Enterprises
c/o Jerold Pressman
705 Pacific Palisades Beach Road
Santa Monica, CA 90402

Re: Offer in Compromise

Dear Mr. Pressman:

We have obtained from Rhonda Bianco of the complex collections division of the Franchise Tax Board (the "FTB") a 30-day suspension on collection activity for Stretto Enterprises (the "Company"), which expires on February 20, 2004. At that time, we will need to provide reasons for further extension.

To enable us to represent the Company before the collections division and with respect to its offer in compromise, please sign and return the enclosed *Power of Attorney*. I have also enclosed, in blank, a *Bank and Corporation Taxes Offer in Compromise*, and an *Offer in Compromise for Individual Taxpayers*, for you to complete as soon as possible with the information that you have available.

The FTB cannot act against you personally until it assesses you personally, but we need to be prepared for this. In particular, we need a copy of the tax clearance certificate or any other document you have signed in which you, personally, assumed the Company's tax liabilities. Any such personal liability would be limited to the lesser of the Company's unsatisfied primary tax liability, or the value of the assets that you received. We therefore need to know <u>exactly</u> how much the Company distributed to you (or to any other party) during the year of its liquidation. If you received any assets other than cash, we need a description of such assets, their fair market value, and the value of any security interests held by the Company's creditors at that time. These considerations will affect our strategy in submitting an offer amount.

Please also advise if you, personally, have signed any forms waiving any statutes of limitations in this matter. Absent such a written waiver, and subject to suspension while the Company was administratively contesting its tax liability, taxes may be assessed against a transferee no more than 5 years from the date that the Company filed its return (or 7 years if the return omitted gross income in excess of 25% of the gross income stated in the return). We are preparing a chronology to determine when would be the expiration date for the FTB to make a transferee assessment in your case.

Please provide the information requested in this letter as soon as possible, so that we may begin to frame our arguments for an offer in compromise, and for cessation of collections activity.

Very truly yours,

GREENBERG TRAURIG, LLP

By: GRACE CHUNG

cc: John Kirkland
Carol Perrin

# EXHIBIT "M"

October 4, 2004

BY U.S. EXPRESS MAIL

Ms. Rhonda Bianco
California Franchise Tax Board
P.O. Box 942857
Sacramento, CA 94257

Re: Stretto Enterprises
Entity ID CORP[redacted]

Dear Ms. Bianco:

Per your instructions, we are submitting to you the enclosed Form 4905, Offer in Compromise, for our client Jerrold Pressman on behalf of Stretto Enterprises.

Also enclosed is the following supporting documentation:

1. Verification of Income (Loss): Personal tax returns on Form 1040 for 2000, 2001, 2002, and 2003 extension
2. Verification of Expenses: Billing statements for the last three months
3. Bank statements
4. Auto lease statements
5. Mortgage statements
6. Power of attorney

Please note that Mr. Pressman is 69 years old and his only current income is from social security. He has incurred more than $10 million in business losses in the last five years, and has received no personal income from his business in that time. His total debt exceeds $48,000,000. All of his real property is mortgaged and virtually all of his other assets are subject to security interests substantially in excess of their ready market value.

After you have had the opportunity to review the Offer in Compromise, please let us know whether you need any further documents or information.

It continues to be our understanding that you will not proceed with involuntary collection against Mr. Pressman without first providing us with written notice. As you and Ms. Chung have discussed, any collection actions would trigger defaults on his loans and result in bankruptcy or total financial collapse.

Thank you for your assistance in this matter.

Very truly yours,

John C. Kirkland

JCK:mb
Enclosures
cc: Carol Perrin, Esq.
Grace Chung, Esq.

Bcc: Mr. Jerrold S. Pressman

LA-FS1\301031v01

**ATTACHMENT TO FTB FORM 4905**
**JERROLD S. PRESSMAN**
**SSN:** [redacted]

**Section 4. Asset and Liability Analysis**

Other assets.

| | | |
|---|---|---|
| 21. | Westover Hills | [redacted] |
| 22. | BCM | [redacted] |
| 23. | SC | [redacted] |

Total: [redacted]

[redacted]301249v01\47727.010900

**ATTACHMENT TO FTB FORM 4905**
**JERROLD S. PRESSMAN**
**SSN:** [redacted]

**Section 4. Asset and Liability Analysis**

17. Other assets. [redacted]

Equity interest in following entities:
- Westover Hills
- Broadway Entertainment Marketing
- S.C. Club
- Iceoplex
- North Hills
- USP Prop.
- Easy Street

Promissory Notes payable from entities in which I have an interest.

Since these interests are not readily marketable, I have valued them at zero.

# CHECK REQUEST

## TRUST ACCOUNT

| | FILE NUMBER | CLIENT-FILE NAME | PAYMENT DESCRIPTION** | AMOUNT | CODE* | ACCOUNTING ONLY |
|---|---|---|---|---|---|---|
| 1 | 47727.010000 | Key Club: EPD Investment | Wire transfer from client trust account | $250,000.00 | 18 | (1) |
| 2 | | | | | | (2) |
| 3 | | | | | | (3) |
| 4 | | | | | | (4) |
| 5 | | | | | | (5) |
| | **This description will print on client invoice when using Code 18 | | TOTAL | $250,000.00 | | |

**Note:** **By requesting a disbursement from any escrow maintained or created by the law firm, the shareholder signing below is representing and confirming to Greenberg Traurig, P.A., Greenberg Traurig, LLP and any entity owned by either of them that neither the shareholder nor any member of the shareholder's immediate family have any legal or beneficial ownership interest (held either directly or indirectly through corporations, partnerships, or other entities) in any entity that is a party to the subject escrow agreement or arrangement. Excluded from this representation is any indirect ownership interest existing as a result of ownership of publicly traded mutual funds.**

**Payee:** EPD Investment Company
Account No. 112122257
ABA No. 122016066
Bank Name: City National Bank
Attn: Staci Ridley
400 N. Roxbury Dr., 2nd Floor
Beverly Hills, CA 90210
310.888-6109
310.888-6113 - Fax
(Fill in address if window envelope will be used)

**Mail to Payee:** Yes ☐ No ☒

**Special Instructions and/or Remarks:** Must be wire transferred today. Thank you.

**Return to:** JCK
Attorney's/Secretary's Initials

**Signature:**

**Printed Name:** John C. Kirkland

*DISBURSEMENT CODES

**ACCOUNTING ONLY**

GT002124
0204

| | | | | | |
|---|---|---|---|---|---|
| (1) Telephone charges | (8) Court Fees\Filing fees | (15) Publication charges | (22) Transcript charges | (29) Federal Express | Payee Code: ______ |
| (2) Messenger | (9) Recording charges | (16) Legal expert & professional | (23) Subpoena Fees | (30) Local Counsel | Ck#: ______ |
| (3) Reproduction charges | (10) Minute books, seal & stock cert | (17) Special Clerical Services | (24) Govt. Agency reports | (31) Arbitrator/Mediators | Date: ______ |
| (4) Word Processing | (11) Travel & Lodging-Out of Town | (18) Other Disbursements | (25) Business Meals | (32) Private Investigators | |
| (5) Witness fees | (12) Printing charges | (19) Certified Copies | (26) Copies from Courthouse | (33) Exhibits | |
| (6) Info & Research | (13) Transportation-Local Travel | (20) Service Company changes | (27) Abstract, title & survey chg | (34) Lit Sup Vendors | |
| (7) Title policies | (14) Postage | (21) Court reporter/Depo | (28) Facsimile | | |

# CHECK REQUEST

## TRUST ACCOUNT

| | FILE NUMBER | CLIENT-FILE NAME | PAYMENT DESCRIPTION** | AMOUNT | CODE* | ACCOUNTING ONLY |
|---|---|---|---|---|---|---|
| 1 | 47727.010000 | Key Club: EPD Investment | Wire transfer from client trust account | $250,000.00 | 18 | (1) |
| 2 | | | | | | (2) |
| 3 | | | | | | (3) |
| 4 | | | | | | (4) |
| 5 | | | | | | (5) |
| | **This description will print on client invoice when using Code 18 | | TOTAL | $250,000.00 | | |

**Note:** **By requesting a disbursement from any escrow maintained or created by the law firm, the shareholder signing below is representing and confirming to Greenberg Traurig, P.A., Greenberg Traurig, LLP and any entity owned by either of them that neither the shareholder nor any member of the shareholder's immediate family have any legal or beneficial ownership interest (held either directly or indirectly through corporations, partnerships, or other entities) in any entity that is a party to the subject escrow agreement or arrangement. Excluded from this representation is any indirect ownership interest existing as a result of ownership of publicly traded mutual funds.**

**Payee:** EPD Investment Company
Account No. 112122257
ABA No. 122016066
Bank Name: City National Bank
Attn: Staci Ridley
400 N. Roxbury Dr., 2nd Floor
Beverly Hills, CA 90210
310.888-6109
310.888-6113 - Fax
(Fill in address if window envelope will be used)

**Mail to Payee:** Yes ☐ No ☒

**Special Instructions and/or Remarks:** Must be wire transferred today. Thank you.

**Return to:** JCK
**Attorney's/Secretary's Initials**

**Signature:**

**Printed Name:** John C. Kirkland

***DISBURSEMENT CODES**

**ACCOUNTING ONLY**

0203

**GT002126**

| | | | | |
|---|---|---|---|---|
| (1) Telephone charges | (8) Court Fees\Filing fees | (15) Publication charges | (22) Transcript charges | (29) Federal Express |
| (2) Messenger | (9) Recording charges | (16) Legal expert & professional | (23) Subpoena Fees | (30) Local Counsel |
| (3) Reproduction charges | (10) Minute books, seal & stock cert | (17) Special Clerical Services | (24) Govt. Agency reports | (31) Arbitrator/Mediators |
| (4) Word Processing | (11) Travel & Lodging-Out of Town | (18) Other Disbursements | (25) Business Meals | (32) Private Investigators |
| (5) Witness fees | (12) Printing charges | (19) Certified Copies | (26) Copies from Courthouse | (33) Exhibits |
| (6) Info & Research | (13) Transportation-Local Travel | (20) Service Company changes | (27) Abstract, title & survey chg | (34) Lit Sup Vendors |
| (7) Title policies | (14) Postage | (21) Court reporter/Depo | (28) Facsimile | |

Payee Code: ______

Ck#: ______

Date: ______

GT002127

# EXHIBIT "N"

G. Michelle Ferreira
(850) 289-7855
ferreiram@gtlaw.com

February 17, 2006

**VIA FEDERAL EXPRESS**

D. Perrin
Principal OIC Specialist
California State Franchise Tax Board
ITCB- OIC Group
P. O. Box 2952
Sacramento, CA 95812-2952

Re: *Offer in Compromise for Jerrold Pressman*
*a.k.a. Stetto Enterprises*
*Account #* [redacted]
*Tax Year: 1992*
*Offer: $456,443.00*

Dear Ms. Perrin:

Pursuant to your letter dated January 18, 2006, we are hereby responding to the requested information. Specifically, you have requested that the following be addressed by February 18, 2006:

1. The source of the $456,443.00 of funds offered to resolve this matter with the FTB;

2. A copy of the JSP Notes Payable of $1,808,083.94 to Jerrold Pressman; and

3. A copy of the note payable of $1,425,000.00 to Jerrold Pressman for the sale of the [redacted] Lacey Street, Los Angeles, CA property.

We will provide the information you have requested in the order presented in your January 18, 2006 letter.

**1. Source of the $456,443.00 offer in compromise:**

Jerry Pressman has confirmed that he will have the funds by the due date required by the Franchise Tax Board from borrowed funds, as follows:

- $250,000 home equity loan on the home located at 705 Palisades Beach Road, Santa Monica, CA from Wells Fargo Bank;

- $56,000 in unsecured loans from American Express and Visa;
- $150,000 in personal loans from immediate family members (Sven Reckeweg, Robert Pressman, Gary Pressman and Keith Pressman).

**2. JSP Properties note payable:**

A copy of the JSP Properties note payable is attached as the "Inglehame Farms" note in the amount of $2,000,000 to Jerrold Pressman, dated February 10, 1994. (See Exhibit A). Jerrold Pressman had originally invested in Inglehame Farms in the early 1990's to the extent of approximately $8 million on funds he borrowed from various lenders. Inglehame Farms went into bankruptcy in {when?} and a successor company JSP Properties carried the note to Jerrold Pressman from Inglehame Farms. Because the debt is unsecured, and because JSP Properties owns assets worth less than other secured debt, the unsecured promissory note from Inglehame Farms (a bankrupt and defunct company), is essentially worthless and Mr. Pressman has no expectation of repayment on this note. Moreover, the funds he invested in Inglehame Farms were borrowed and he is currently personally liable on that debt.

**3. The Lacey Street note of $1,425,000:**

The Lacey Street property was sold in and the note was paid in April, 2001. The funds Mr. Pressman received from the payment of this note were used to pay various creditors and he no longer has these funds.

Jerrold Pressman had sold the property located at 2684 Lacey Street, Los Angeles on October 16, 2000 and he took back a note from Haven Properties LLC, in the amount of $1,425,000, which encumbered the real property. See Seller's Closing Statement, dated October 12, 2000, which is marked Exhibit B. A copy of the promissory note on the Lacey Street property, in the amount of $1,425,000.00, dated October 12, 2000 is attached hereto and marked Exhibit C

On April 3, 2001, Haven Properties sold the Lacey Street property which required the promissory note to Jerrold Pressman to become due immediately. Attached hereto and marked Exhibit D is a copy of the Request for Beneficiary's Payoff Demand to Commerce Escrow Company for Mr. Pressman's secured note on the property. Exhibit E is a copy of the payoff calculation for the sale of this property, which indicates a net payoff amount to Jerrold Pressman of $1,112,410.25[1].

Mr. Pressman no longer holds an interest in the Lacey Street note.

[1] This amount was the net payoff amount to Mr. Pressman, after payment to Bar-K of principal and interest of $312,971.20 and $2,399.59, respectively. See Exhibit F for a copy of the Bar-K demand for payment on the $312,971.20 loan to Jerrold Pressman.

I hope this clarifies the questions you had in your January 18, 2006 letter. If you need further information from me, please do not hesitate to call. Mr. Pressman would like to resolve this matter with the FTB as quickly as possible, so please contact me as soon as possible to discuss resolution of this account.

Sincerely yours,

G. Michelle Ferreira

Enclosures

Cc: Jerrold Pressman
John Kirkland, Esq.

# EXHIBIT "O"

G. Michelle Ferreira
(650) 289-7855
ferreiram@gtlaw.com

April 6, 2006

**VIA FACSIMILE AND CERTIFIED MAIL**

Terrence Tanner
OIC Specialist
California Franchise Tax Board
Offer in Compromise Unit MS HA- 453-081:726
P. O. Box 2952
Sacramento, CA 95812-2952

Re: *Stretto Enterprises and Jerrold S. Pressman*
*Acct. #* [redacted]
*SSN#* [redacted]
*Original Liability: $1,502,673.15*
*Offer in Compromise for $456,443.00*

Dear Mr. Tanner:

The above-listed taxpayer is hereby responding to your letter dated March 9, 2006. In your letter, you have requested a cashier's check in the amount of $456,443.00 and a copy of Mr. Pressman's 2004 California state income tax return. We are enclosing a copy of the taxpayer's Form 1040 U.S. Individual Income Tax Return, and his Form 540 California Resident Income Tax Return for 2004 for your reference. Both returns for 2004 have been filed and Mr. Pressman had no tax liability for 2004 at the Federal or state level. The funds will be sent to you in a separate cover.

If you have any questions, please do not hesitate to call me.

Sincerely yours,

G. Michelle Ferreira

Enclosures

Cc: Jerrold Pressman
John Kirkland

G. Michelle Ferreira
(650) 289-7855
ferreiram@gtlaw.com

April 10, 2006

**VIA EXPRESS MAIL**

Terrence Tanner
OIC Specialist
California Franchise Tax Board
Offer in Compromise Unit MS HA- 453-081:726
P. O. Box 2952
Sacramento, CA 95812-2952

Re: *Stretto Enterprises and Jerrold S. Pressman*
*Acct. #*[redacted]
*SSN#* [redacted]
*Original Liability: $1,502,673.15*
*Offer in Compromise for $456,443.00*

Dear Mr. Tanner:

The above-listed taxpayer is hereby remitting a cashier's check, in the amount of $456,443 to the Franchise Tax Board in connection with the Offer in Compromise for the account listed above. Per your letter of March 9, 2006, if Mr. Pressman's OIC is not accepted by the FTB, the FTB has agreed to return the check to Mr. Pressman. ***In other words, all funds will be refunded to the taxpayer, in the amount of $456,443.00, if the Offer in Compromise is not accepted.***

If you have any questions, please do not hesitate to call me.

Sincerely yours,

G. Michelle Ferreira

Enclosures

Cc: Jerrold Pressman
John Kirkland

PAGE INTENTIONALLY LEFT BLANK

# EXHIBIT "P"

John C. Kirkland
Tel. 310.586.7788
Fax 310.586.0288
KirklandJ@gtlaw.com

By Fax and Mail

Ms. Diana Perrin
Offer in Compromise Unit
Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

Re: Offer in Compromise for Stretto Enterprises
Account No. [redacted]
Tax Year: 1992
Liability: $456,443 plus interest

Dear Ms. Perrin:

This letter is in response to your letter dated November 19, 2005 regarding the above-referenced Offer in Compromise. My colleague, Michelle Ferreira, and I have tried to call you to discuss options for resolving this account. Ms. Ferreira is a tax attorney in Greenberg Traurig's Silicon Valley office who solely specializes in tax controversy matters. You are authorized to speak to her directly about this account.

Our attempts to contact you were to discuss the resolution of this matter. The FTB should consider accepting the previous offer to resolve this liability for $250,000. I cannot stress that the FTB will not collect the full liability owing from Mr. Pressman, given his age (he is 70 years old) and that he does not have future earning potential the FTB claims he has (he is retired). Mr. Pressman has offered to pay $250,000, which represents the line of credit he has on his personal residence. If the FTB would prefer that Mr. Pressman turn over the title to both rental properties subject to its existing liens, one of which has been in and out of sale escrow three times and remains unoccupied, in satisfaction of this liability, he would gladly do that, however, please understand that the value of these homes has reduced substantially since the date Mr. Pressman made his Offer. Indeed, the value of these two homes is less than the $250,000 Mr. Pressman is offering to satisfy this liability.

Ms. Ferreira has spoken to Charlyn Moore, of the Business Entities Collections Unit, regarding this account. Ms. Moore suggested we speak with you, as the Offer in Compromise Unit apparently has the authority to resolve this matter. Ms. Ferreira offered to

---

place Mr. Pressman in an installment agreement payment plan, of $10,000 per month, and Ms. Moore indicated that request would not be acceptable, as the "liability would not be paid, given Mr. Pressman's age." We understand this as well, and this is why the taxpayer offered to pay the $250,000 lump sum payment via the Offer in Compromise.

If the FTB believes this taxpayer will have "future earning potential," as your November 19, 2005 letter states, the FTB is mistaken. Mr. Pressman has provided extensive data showing that his living expenses have been paid for the past several years through various lines of credit, including his American Express card. Mr. Pressman's tax returns for 2000 and 2001 show losses of approximately $2 million, and his tax return for 2002 shows losses in excess of $3 million. His tax return for 2003, which has been filed since the Offer in Compromise was submitted, shows losses of $3.8 million, all of which were connected to poor investments from the past. His income is substantially less than his losses. Indeed, Mr. Pressman's only steady income stream is his social security payment of $1,400 per month. The Offer for $250,000 was in line with his social security payment, assuming he lived to be over 85 years old.

Either way, Mr. Pressman's offer to pay either $250,000, in a lump sum amount, or $10,000 per month (for the rest of his life), are fair resolutions to this matter. It seems the FTB would prefer to receive some payment now, rather than nothing at all.

Indeed, if the FTB were to file a lien against Mr. Pressman, he may be forced to file for bankruptcy. Mr. Pressman currently finds himself with over $48 million of debt, all which is being managed through various loans, notes and lines of credit. If a lien were to be filed by the FTB against Mr. Pressman, his creditworthiness would be erased, which will place him in default with his secured creditors. Any lien filed by the FTB now would put the FTB behind roughly $48 million in secured debt, including multiple mortgages on all of his real estate, and multiple blanket security interests in all his other assets, which would mean the FTB would collect nothing. Mr. Pressman's assets come no where near the amount of the multiple liens upon them, as his Offer in Compromise showed.

An Offer in Compromise is a business decision by the FTB. If the FTB will collect nothing from an individual taxpayer in the future, and if the offered amount will guarantee some form of collection today, it seems to me that the FTB should take the payment for the state to resolve the liability. However, given the multiple loans, liens and other secured debt (which comes before any FTB lien), the FTB will collect nothing from a 70 year old, unemployed taxpayer who will never have a paying income stream in the future.

This matter is placing immense stress on our elderly client, particularly during the holiday season, and he is desperate to resolve it. We seriously hope you will reconsider your blanket refusal to resolve this matter. If there is an alternative payment option you propose, we welcome a proposal from you.

LA-FS1\379965v01

---

If you have any questions, please contact me at the number listed above.

Sincerely,

John C. Kirkland

JCK:GMF:mb

cc: Ms. Charlyn Moore
Mr. Jerrold S. Pressman
G. Michelle Ferreira, Esq.

# EXHIBIT “Q”

John C. Kirkland
Tel. 310.586.7788
Fax 310.586.0288
KirklandJ@gtlaw.com

Mr. Terence K. Tanner
Offer in Compromise Specialist
State of California Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

Re: Offer in Compromise

Dear Mr. Tanner:

As requested in your letter of December 14, 2004, a copy of which is enclosed for your reference, enclosed please find the following documents:

A. Independent appraisals for each of the following properties, which we are advised have the following approximate mortgage balances:

1. 705 Palisades Beach Road, Santa Monica, CA
2. 1808 Wilson Pike, Brentwood, TN
3. 4507 West 131st Street, Hawthorne, CA

B. Balance Sheets and Profit and Loss Statements for the last two years for the following entities:

1. JSP Properties, Inc.
2. North Hills Industrial Park, Inc.
3. EPD Investment Co., LLC
4. Broadway Entertainment Marketing, Inc.
5. S.C. Club, L.P.
6. Ice Skating Enterprises, Inc.
7. Ice Group Escondido, Inc.
8. West Hills Properties, L.P.

After you have had the opportunity to review the enclosed, please let me know if you need any further documents or information.

LA-FS1\320601v01

It continues to be our understanding that the Franchise Tax Board will not proceed with involuntary collection against Mr. Pressman without first providing us with written notice. As we have discussed, any collection actions would trigger defaults on his loans and result in bankruptcy or total financial collapse.

Thank you again for your assistance in this matter.

Sincerely,

John C. Kirkland
JCK:mb
Enclosures

cc: Mr. Jerrold S. Pressman

EXHIBIT "R"

John C. Kirkland
Tel. 310.586.7786
Fax 310.586.0286
KirklandJ@gtlaw.com

By U.S. Express Mail

Mr. Terence K. Tanner
Offer in Compromise Specialist
State of California Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

Re: Offer in Compromise

Dear Mr. Tanner:

The purpose of this letter is to respond to your requests for additional information with regard to the previously-submitted OIC. In particular, you have asked us to provide:

1. The percentage interest that Jerrold Pressman owns and controls of each of the entities listed in his tax returns, and the date he first acquired an interest.
2. An explanation of why Mr. Pressman cannot sell the assets owned by one or more of the entities to pay the tax liability.
3. An explanation of why Mr. Pressman cannot sell his interest in one or more of the entities, and use the proceeds to pay the tax liability.

Although there is obviously significant detail and explanation necessary to fully understand each of the individual investments, we are advised that the basic summary responses are as follows:

1. EPD Investment Co., LLC
   Date Acquired: June 27, 2003
   Percent Ownership: 49%

2. JSP Properties, Inc.
   Date acquired: April 7, 1999
   Percent Ownership: 50%

3. West Hills Properties, L.P.
   Date Acquired: June 22, 1995
   Percent Ownership: 50%

4. North Hills Industrial Park, Inc.
   Date Acquired: May 21, 1998
   Percent Ownership: 10%

5. Broadway Entertainment Marketing, Inc.
   Date Acquired: June 10, 1992
   Percent Ownership: 98.2%

6. S.C. Club, Inc.
   Date Acquired: June 9, 1993
   Percent Ownership: 33.33%

7. Ice Skating Enterprises, Inc.
   Date Acquired: November 25, 2002
   Percent Ownership: 49%

8. Ice Group Escondido, Inc.
   Date Acquired: August 15, 1994
   Percent Ownership: 48.5%

**1. EPD Investment Co., LLC**

EPD has a total liabilities of over $47 million, including over $36 million in promissory notes for funds received from third-parties, most of which are personally guaranteed by Mr. Pressman. Mr. Pressman's personal repayment obligations to the company are secured by a perfected, blanket, first-priority UCC-1 security interest on all of his assets.

EPD estimates a $3.4 million loss for last year. The company received approximately $9 million in 2004, most through third-party loans, including approximately $1.5 million from IRA accounts. Because of the company's high interest expense, over the past three years of economic downturn, it has been unable to earn income in excess of outgoing funds, thereby creating a large negative cash flow.

Currently, the interest requirement exceeds $3 million per year and has averaged approximately $1.5 million per year in demand principal repayments, requiring at least $4.5 million of new loans, investment or income per year just to break even cash flow wise.

In order to stave off default, Mr. Pressman refinanced his home twice during 2004, and deposited the full proceeds from the financing into EPD, to fund some of the interest and principal demands of the existing note holders which he has personally guaranteed.

On a monthly basis, to the extent funds are available, EPD doles out to Mr. Pressman, as a return of the principal from the funds acquired by him through refinancing, enough to meet the interest on the refinancing and his other living expenses. All of these funds come back to him as a return of his principal, not as income or other compensation.

Mr. Pressman cannot misappropriate EPD funds to pay off a personal obligation. The equity interest in EPD is obviously unsaleable due to its massive debt load and negative net worth. The $36 million in secured debt—which encumbers all of Mr. Pressman's other assets—effectively prevents Mr. Pressman from using any proceeds from the sale of any of the assets discussed below to pay the tax obligation.

**2. JSP Properties, Inc.**

JSP Properties' assets consist of undeveloped land in Tennessee. The underlying debt is in excess of $9 million, which is more than two times the value of the undeveloped land. Mr. Pressman executed approximately $7 million of personal guarantees to the banks.

Additional funding would be required to develop the project to make it saleable for an amount in excess of the encumbrances. Mr. Pressman would be unable to sell the property without approval from the other 50% shareholder, who has refused.

Mr. Pressman is subject to a shareholder agreement, prohibiting him from selling his shares in the corporation to a third party without the consent of the other shareholder, who has refused.

**3. West Hills Properties, L.P.**

West Hills Properties' assets consist of undeveloped land in Texas. There have been periodic sales of portions of the property. The cash flow generated by those sales was used to pay the interest and taxes on the underlying mortgage and debt which is approximately $3.9 million. Mr. Pressman is subject to a personal guaranty on the note.

Additional funds would be required in order to entitle the land and prepare it for sale. If the company could sell the property today, the money would go to repaying the two major debts and other creditors of the company. Mr. Pressman would be unable to sell the property without approval from the other 50% partner, who has refused.

Mr. Pressman's shares in the company have been placed as collateral securing a $2,307,000 promissory note.

**4. North Hills Industrial Park, Inc.**

North Hills Industrial Park's assets are an industrial park in North Hills, California. The property is subject to $24,740,000 in mortgages, and has a negative cash flow. Mr. Pressman is subject to a personal guarantee.

Mr. Pressman is a 10% shareholder. He is subject to a shareholder agreement, prohibiting him from selling his shares in the corporation to a third party without the consent of the majority shareholders, who have refused.

**5. Broadway Entertainment Marketing, Inc.**

Broadway Entertainment Marketing (BEM) was originally formed in 1992 as Billboard Entertainment Marketing, to purchase a license from the music magazine Billboard, to produce the Billboard Awards television award show. The company lost the Billboard license in 1997, and changed its name to Broadway Entertainment. It has virtually no assets other than unsaleable book value good will, is subject to approximately $1.1 million in liabilities, and has an approximate $450,000 negative net worth.

**6. S.C. Club**

S.C. Club, Inc. is the general partner of S.C. Club, L.P., which operates the Key Club nightclub in leased premises on Sunset Blvd. Mr. Pressman is the sole limited partner, and is a one-third shareholder of the general partner. It was originally Billboard Live, as part of an extension of the above license. Upon losing the Billboard name, the venue was converted to the Key Club. It currently carries a negative net worth in excess of $10 million, and to date has a net loss this year of close to $900,000.

**7. Ice Skating Enterprises, Inc. (Easy Street)**

Ice Skating Enterprises is a management company that operates an ice skating rink located in Simi Valley, California. It has shareholder equity of $31,000, of which over $450,000 consists of good will. Mr. Pressman is a minority shareholder.

**8. Ice Group Escondido, Inc.**

Ice Group Escondido is a management company that manages ice rinks in Panorama City, Escondido, and Simi Valley, California. It currently has a negative $235,000 shareholder's

equity and is operating at a loss for the year. It does not own any assets. Mr. Pressman is a minority shareholder.

Mr. Pressman's business has generated heavy losses and has had no income for more than five years. None of the entities have any saleable assets with equity in excess of secured liens and other debts. With the exception of BEM, which has no assets, Mr. Pressman does not own a controlling interest in any of the entities, and would not have the ability to force sale or distribution even if they had any positive value (which they do not).

As non-controlling interests in private companies with negative net worth, they would be difficult, if not impossible to sell, even if he were permitted to do so. Most of Mr. Pressman's equity interests are subject to pledge agreements or shareholder lock-ups, and therefore could not be sold even if they had a positive value (which they do not).

Finally, as noted above, all of Mr. Pressman's assets—including his equity interests in all of the above entities, and all of the proceeds thereof—are subject to over $36 million is secured loans to third parties. Accordingly, he would be unable to use any such funds to pay the tax liability even if they existed (which they do not).

After you have had the opportunity to review the enclosed, please let me know your thoughts.

Thank you again for your assistance in this matter.

Sincerely,

John C. Kirkland
JCK:mb

cc: Mr. Jerrold S. Pressman

# EXHIBIT "S"

John C. Kirkland
Tel. 310.586.7788
Fax 310.586.0288
KirklandJ@gtlaw.com

By U.S. Express Mail

Mr. Terence K. Tanner
Offer in Compromise Specialist
State of California Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

Re: Offer in Compromise

Dear Mr. Tanner:

The purpose of this letter is to respond to your requests for additional information with regard to the previously-submitted OIC. In particular, you have asked us to provide:

1. The percentage interest that Jerrold Pressman owns and controls of each of the entities listed in his tax returns, and the date he first acquired an interest.

2. An explanation of why Mr. Pressman cannot sell the assets owned by one or more of the entities to pay the tax liability.

3. An explanation of why Mr. Pressman cannot sell his interest in one or more of the entities, and use the proceeds to pay the tax liability.

Although there is obviously significant detail and explanation necessary to fully understand each of the individual investments, we are advised that the basic summary responses are as follows:

1. EPD Investment Co., LLC
   Date Acquired: June 27, 2003
   Percent Ownership: 49%

2. JSP Properties, Inc.
   Date acquired: April 7, 1999
   Percent Ownership: 50%

3. West Hills Properties, L.P.
   Date Acquired: June 22, 1995
   Percent Ownership: 49.5%

4. North Hills Industrial Park, Inc.
   Date Acquired: May 21, 1998
   Percent Ownership: 10%

5. Broadway Entertainment Marketing, Inc.
   Date Acquired: June 10, 1992
   Percent Ownership: 48.2%

6. S.C. Club, Inc.
   Date Acquired: June 9, 1993
   Percent Ownership: 33.33%

7. Ice Skating Enterprises, Inc.
   Date Acquired: November 25, 2002
   Percent Ownership: 49%

8. Ice Group Escondido, Inc.
   Date Acquired: August 15, 1994
   Percent Ownership: 48.5%

**1. EPD Investment Co., LLC**

EPD has a total liabilities of over $47 million, including over $36 million in promissory notes for funds received from third-parties, most of which are personally guaranteed by Mr. Pressman. Mr. Pressman's personal repayment obligations to the company are secured by a perfected, blanket, first-priority UCC-1 security interest on all of his assets.

EPD estimates a $3.4 million loss for last year. The company received approximately $9 million in 2004, most through third-party loans, including approximately $1.5 million from IRA accounts. Because of the company's high interest expense, over the past three years of economic downturn, it has been unable to earn income in excess of outgoing funds, thereby creating a large negative cash flow.

Currently, the interest requirement exceeds $3 million per year and has averaged approximately $1.5 million per year in demand principal repayments, requiring at least $4.5 million of new loans, investment or income per year just to break even cash flow wise.

---

In order to stave off default, Mr. Pressman refinanced his home twice during 2004, and deposited the full proceeds from the financing into EPD, to fund some of the interest and principal demands of the existing note holders which he has personally guaranteed.

On a monthly basis, to the extent funds are available, EPD doles out to Mr. Pressman, as a return of the principal from the funds acquired by him through refinancing, enough to meet the interest on the refinancing and his other living expenses. All of these funds come back to him as a return of his principal, not as income or other compensation. He intends to use the remainder of these funds to pay the OIC.

Mr. Pressman cannot misappropriate EPD funds to pay off a personal obligation. The equity interest in EPD is obviously unsaleable due to its massive debt load and negative net worth. The $36 million in secured debt—which encumbers all of Mr. Pressman's other assets—effectively prevents Mr. Pressman from using any proceeds from the sale of any of the assets discussed below to pay the tax obligation.

**2. JSP Properties, Inc.**

JSP Properties' assets consist of undeveloped land in Tennessee. The underlying debt is in excess of $9 million, which is more than two times the value of the undeveloped land. Mr. Pressman executed approximately $7 million of personal guarantees to the banks.

Additional funding would be required to develop the project to make it saleable for an amount in excess of the encumbrances. Mr. Pressman would be unable to sell the property without approval from the other 50% shareholder, who has refused.

Mr. Pressman is also subject to a shareholder agreement, prohibiting him from selling his shares in the corporation to a third party without the consent of the other shareholder.

**3. West Hills Properties, L.P.**

West Hills Properties' assets consist of undeveloped land in Texas. There have been periodic sales of portions of the property. The cash flow generated by those sales was used to pay the interest and taxes on the underlying mortgage and debt which is approximately $3.9 million. Mr. Pressman is subject to a personal guaranty on the note.

Additional funds would be required in order to entitle the land and prepare it for sale. If the company could sell the property today, the money would go to repaying the two major debts and other creditors of the company. Mr. Pressman would be unable to sell the property without approval from the other 50% partner, who has refused.

Mr. Pressman's shares in the company have been used as collateral to secure a $2,307,000 promissory note.

**4. North Hills Industrial Park, Inc.**

North Hills Industrial Park's assets are an industrial park in North Hills, California. The property is subject to $24,740,000 in mortgages, and has a negative cash flow. Mr. Pressman is subject to a personal guarantee.

There is no market for Mr. Pressman's 10% interest in the company. He is also subject to a shareholder agreement, prohibiting him from selling his shares in the corporation to a third party without the consent of the majority shareholders.

**5. Broadway Entertainment Marketing, Inc.**

Broadway Entertainment Marketing (BEM) was originally formed in 1992 as Billboard Entertainment Marketing, to purchase a license from the music magazine Billboard, to produce the Billboard Awards television award show. The company lost the Billboard license in 1997, and changed its name to Broadway Entertainment. It has virtually no saleable hard assets other than unsaleable book value good will, is subject to approximately $1.1 million in liabilities, and has an approximate $450,000 negative net worth.

**6. S.C. Club**

S.C. Club, Inc. is the general partner of S.C. Club, L.P., which operates the Key Club nightclub in leased premises on Sunset Blvd. Mr. Pressman is the sole limited partner, and is a one-third shareholder of the general partner. It was originally Billboard Live, as part of an extension of the above license. Upon losing the Billboard name, the venue was converted to the Key Club. It currently carries a negative net worth in excess of $10 million, and to date has a net loss this year of close to $900,000.

**7. Ice Skating Enterprises, Inc. (Easy Street)**

Ice Skating Enterprises operates an ice skating rink on leased property in Simi Valley, California. It is subject to a promissory note with a remaining balance of over $600,000, which is personally guaranteed by Mr. Pressman.

**8. Ice Group Escondido, Inc.**

---

Ice Group Escondido is a management company that manages ice rinks in Panorama City, Escondido, and Simi Valley, California. It does not own any assets, and is operating at a loss. Mr. Pressman's business has generated heavy losses and has had no income for more than five years. None of the entities have any saleable assets with equity in excess of secured liens and other debts. With the exception of BEM, which has no assets, Mr. Pressman does not own a controlling interest in any of the entities, and would not have the ability to force sale or distribution even if they had any positive value (which they do not).

As non-controlling interests in private companies with negative net worth, they would be difficult, if not impossible to sell, even if he were permitted to do so. Most of Mr. Pressman's equity interests are subject to pledge agreements or shareholder lock-ups, and therefore could not be sold even if they had a positive value (which they do not).

Finally, as noted above, all of Mr. Pressman's assets—including his equity interests in all of the above entities, and all of the proceeds thereof—are subject to over $36 million is secured loans to third parties. Accordingly, he would be unable to use any such funds to pay the tax liability even if they existed (which they do not).

After you have had the opportunity to review the above, please let me know your thoughts.

Thank you again for your assistance in this matter.

Sincerely,

John C. Kirkland
JCK:mb

cc: Mr. Jerrold S. Pressman

# EXHIBIT "T"

John C. Kirkland
Tel. 310.586.7788
Fax 310.586.0288
KirklandJ@gtlaw.com

By Facsimile and U.S. Mail

Mr. Terence K. Tanner
Offer in Compromise Specialist
State of California Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

Subject: Offer in Compromise
Taxpayer: Stretto Enterprises
Account No.: [redacted]
Tax Year: 1992

Dear Mr. Tanner:

Thank you for your letter dated May 9, 2005, which we received on May 16, 2005. We are in the process of preparing detailed factual responses to each of the issues raised in your letter, but doing so requires extensive documentation. Accordingly, as previously advised, we hereby request a 30-day extension of time to Friday, July 8, 2005 to respond.

Thank you again for your ongoing courtesy and professionalism in this matter.

Sincerely,

John C. Kirkland

JCK:mb
cc: Mr. Jerrold S. Pressman

LA-FS1\343533v01

# EXHIBIT "U"

John C. Kirkland
Tel. 310.586.7788
Fax 310.586.0288
KirklandJ@gtlaw.com

Mr. Terence K. Tanner
Offer in Compromise Specialist
State of California Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

Re: Offer in Compromise

Dear Mr. Tanner:

As requested in your letter of December 14, 2004, a copy of which is enclosed for your reference, enclosed please find the following documents:

A. Independent appraisals for each of the following properties, which we are advised have the following approximate mortgage balances:

1. 705 Palisades Beach Road, Santa Monica, CA
   Appraisal: $4,800,000
   Mortgage: $5,040,000

2. 1808 Wilson Pike, Brentwood, TN
   Appraisal: $1,000,000
   Mortgage: $1,117,000

3. 4507 West 131st Street, Hawthorne, CA
   Appraisal: $520,000
   Mortgage: $464,000

B. Balance Sheets and Profit and Loss Statements for the last two years for the following investments. Although there is obviously significant detail and explanation necessary to fully understand each of the individual investments, we are advised that the basic summary responses to your inquiries with regard to these investmenets are as follows:

1. JSP Properties, Inc.
   A. Date acquired: April 7, 1999
   B. Amount invested:
   C. Percent ownership:

2. North Hills Industrial Park, Inc.
   A. Date acquired: May 21, 1998
   B. Amount invested:
   C. Percent ownership:

3. EPD Investment Co., LLC
   A. Date acquired: June 27, 2003 (sole proprietorship since 19_____)
   B. Amount invested:
   C. Percent ownership:

4. Broadway Entertainment Marketing, Inc.
   A. Date acquired: June 10, 1992
   B. Amount invested:
   C. Percent ownership:

5. S.C. Club, L.P.
   A. Date acquired: May 1, 1996
   B. Amount invested:
   C. Percent ownership:

6. Ice Skating Enterprises, Inc.
   A. Date acquired: November 25, 2002
   B. Amount invested:
   C. Percent ownership:

**[JERRY – CAN'T FIND SECRETARY OF STATE RECORDS FOR THESE TWO ENTITIES]**

7. Iceoplex Panorama City, Escondido
   A. Date acquired:
   B. Amount invested:
   C. Percent ownership:

8. West Hills Properties, L.P.
   A. Date acquired:
   B. Amount invested:

C. Percent ownership:

**[JERRY - FOUND THESE THREE ENTITIES LISTED WITH SECRETARY OF STATE]**

9. Iceoplex Oakland, Inc.
   A. Date acquired: May 31, 1995
   B. Amount invested:
   C. Percent ownership:

10. Iceoplex Fremont, L.P.
   A. Date acquired: July 7, 1993
   B. Amount invested:
   C. Percent ownership:

11. Iceoplex, L.P.
   A. Date acquired: September 13, 1991
   B. Amount invested:
   C. Percent ownership:

After you have had the opportunity to review the enclosed, please let me know if you need any further documents or information.

It continues to be our understanding that the Franchise Tax Board will not proceed with involuntary collection against Mr. Pressman without first providing us with written notice. As we have discussed, any collection actions would trigger defaults on his loans and result in bankruptcy or total financial collapse.

Thank you again for your assistance in this matter.

Sincerely,

John C. Kirkland
JCK:mb
Enclosures

cc: Mr. Jerrold S. Pressman

LA-FS1\320601v01

EXHIBIT "V"

John C. Kirkland
Tel. 310.586.7786
Fax 310.586.0286
KirklandJ@gtlaw.com

By Fax and Mail

Ms. Diana Perrin
Offer in Compromise Unit
Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

Re: Offer in Compromise for Stretto Enterprises
Account No. [redacted]
Tax Year: 1992
Liability: $456,443 plus interest

Dear Ms. Perrin:

This letter is in response to your letter dated November 19, 2005 regarding the above-referenced Offer in Compromise. My colleague, Michelle Ferreira, and I have tried to call you to discuss options for resolving this account. Ms. Ferreira is a tax attorney in Greenberg Traurig's Silicon Valley office who solely specializes in tax controversy matters. You are authorized to speak to her directly about this account.

Our attempts to contact you were to discuss the resolution of this matter. The FTB should consider accepting the previous offer to resolve this liability for $250,000. I cannot stress that the FTB will not collect the full liability owing from Mr. Pressman, given his age (he is 70 years old) and that he does not have future earning potential the FTB claims he has (he is retired). Mr. Pressman has offered to pay $250,000, which represents the line of credit he has on his personal residence. If the FTB would prefer that Mr. Pressman turn over the title to both rental properties subject to its existing liens, one of which has been in and out of sale escrow three times and remains unoccupied, in satisfaction of this liability, he would gladly do that, however, please understand that the value of these homes has reduced substantially since the date Mr. Pressman made his Offer. Indeed, the value of these two homes is less than the $250,000 Mr. Pressman is offering to satisfy this liability.

Ms. Ferreira has spoken to Charlyn Moore, of the Business Entities Collections Unit, regarding this account. Ms. Moore suggested we speak with you, as the Offer in Compromise Unit apparently has the authority to resolve this matter. Ms. Ferreira offered to

place Mr. Pressman in an installment agreement payment plan, of $10,000 per month, and Ms. Moore indicated that request would not be acceptable, as the "liability would not be paid, given Mr. Pressman's age." We understand this as well, and this is why the taxpayer offered to pay the $250,000 lump sum payment via the Offer in Compromise.

If the FTB believes this taxpayer will have "future earning potential," as your November 19, 2005 letter states, the FTB is mistaken. Mr. Pressman has provided extensive data showing that his living expenses have been paid for the past several years through various lines of credit, including his American Express card. Mr. Pressman's tax returns for 2000 and 2001 show losses of approximately $2 million, and his tax return for 2002 shows losses in excess of $3 million. His tax return for 2003, which has been filed since the Offer in Compromise was submitted, shows losses of $3.8 million, all of which were connected to poor investments from the past. His income is substantially less than his losses. Indeed, Mr. Pressman's only steady income stream is his social security payment of $1,400 per month. The Offer for $250,000 was in line with his social security payment, assuming he lived to be over 85 years old.

Either way, Mr. Pressman's offer to pay either $250,000, in a lump sum amount, or $10,000 per month (for the rest of his life), are fair resolutions to this matter. It seems the FTB would prefer to receive some payment now, rather than nothing at all.

Indeed, if the FTB were to file a lien against Mr. Pressman, he may be forced to file for bankruptcy. Mr. Pressman currently finds himself with over $48 million of debt, all which is being managed through various loans, notes and lines of credit. If a lien were to be filed by the FTB against Mr. Pressman, his creditworthiness would be erased, which will place him in default with his secured creditors. Any lien filed by the FTB now would put the FTB behind roughly $48 million in secured debt, including multiple mortgages on all of his real estate, and multiple blanket security interests in all his other assets, which would mean the FTB would collect nothing. Mr. Pressman's assets come no where near the amount of the multiple liens upon them, as his Offer in Compromise showed.

An Offer in Compromise is a business decision by the FTB. If the FTB will collect nothing from an individual taxpayer in the future, and if the offered amount will guarantee some form of collection today, it seems to me that the FTB should take the payment for the state to resolve the liability. However, given the multiple loans, liens and other secured debt (which comes before any FTB lien), the FTB will collect nothing from a 70 year old, unemployed taxpayer who will never have a paying income stream in the future.

This matter is placing immense stress on our elderly client, particularly during the holiday season, and he is desperate to resolve it. We seriously hope you will reconsider your blanket refusal to resolve this matter. If there is an alternative payment option you propose, we welcome a proposal from you.

If you have any questions, please contact me at the number listed above.

Sincerely,

John C. Kirkland

JCK:GMF:mb

cc: Ms. Charlyn Moore
Mr. Jerrold S. Pressman
G. Michelle Ferreira, Esq.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing documents entitled: **CHAPTER 7 TRUSTEE'S REQUESTS FOR ADMISSION TO DEFENDANT JOHN C. KIRKLAND (SET ONE)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

*** Service to judge not required (discovery)

**1.** TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On ____________ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On ________________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed:

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 27, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed:

*** Service to judge not required (discovery)

**VIA OVERNIGHT MAIL & EMAIL**

Counsel for Poshow Ann Kirkland, in Her Capacity as
Trustee of the Bright Conscience Trust Dated
September 9, 2009
Lewis R. Landau, Esq.
22287 Mulholland Hwy., # 318
Calabasas, CA 91302
Email: Lew@Landaunet.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 27, 2017 | JESSICA ROEL | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# EXHIBIT 5

LARRY W. GABRIEL – Bar No. 68329
STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
MICHAEL W. DAVIS – Bar No. 274126
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@bg.law
cweber@bg.law
mdavis@bg.law

Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,

Consolidated Debtors.

EIN No. xxx-0994

---

JASON M. RUND, CHAPTER 7 TRUSTEE,

Plaintiff,

v.

JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND, as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,

Defendants.

Case No. 2:10-bk-62208-ER

Chapter 7

Adv. No. 2:12-ap-02424-ER

**CHAPTER 7 TRUSTEE'S REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT JOHN C. KIRKLAND (SET ONE)**

**Fed. R. Bankr. P. 7034 and Fed. R. Civ. P. 34**

**PROPOUNDING PARTY: PLAINTIFF, JASON M. RUND, CHAPTER 7 TRUSTEE**

**RESPONDING PARTY: DEFENDANT, JOHN C. KIRKLAND**

**SET NUMBER: ONE (1)**

Plaintiff Jason M. Rund, the duly appointed and acting Chapter 7 Trustee ("Plaintiff" or "Trustee") for the consolidated bankruptcy estate (the "Estate") of Debtors EPD Investments Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (EPD and Pressman are collectively referred to herein as "Debtors") hereby propounds the following Requests for Production of Documents and Things ("Requests for Production"), Set Number One, pursuant to Fed.R.Bankr.P. 7034 and Fed.R.Civ.P. 34, to Defendant John C. Kirkland ("Defendant").

The Trustee requests that Defendant, within thirty (30) days after service hereof, provide written responses to each and every Request for Production and produce for copying all requested documents at the offices of Brutzkus Gubner, at 21650 Oxnard Street, Suite 500 Woodland Hills, CA 91367.

## PRELIMINARY STATEMENT

1. YOU are required to answer each Request for Production separately and fully in writing, unless it is objected to. If YOU object to any Request for Production, YOU must state the reasons for the objection in lieu of an answer.

2. YOU are to serve a copy of YOUR answers, and objections if any, within thirty (30) days after the service date of these Requests for Production.

3. YOUR response to this discovery must contain a certification as set forth in Fed. R. Civ. P. 26(g). If YOUR certification is made in violation of Fed. R. Civ. P. 26, the Court, upon motion or its own initiative, shall impose upon the person making the certification, upon YOU, or both, an appropriate sanction, which may include an order to pay the amount of reasonable expenses incurred because of the violation, including reasonable attorney's fees.

4. If YOUR responses are deemed insufficient, YOU may be compelled by an order of the court pursuant to Fed. R. Civ. P. 37 to respond properly to the request and to pay the reasonable expenses incurred, including attorney's fees, in obtaining the order.

5. The singular form of a word should be interpreted as plural and the plural should be

interpreted as singular to give the word or words the broadest possible meaning.

**DEFINITIONS**

6. Capitalized terms used herein shall have the following meanings:

a. "ADVERSARY PROCEEDING" means and refers to the adversary proceeding styled *Jason M. Rund, Trustee v. John C. Kirkland, et. al.*, Adv. Case No. 2:12-ap-02424-ER, currently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division.

b. "BANKRUPTCY CASE" means and refers to the consolidated bankruptcy case, styled *In re EPD Investment Company, LLC, and Jerrold S. Pressman*, Case No. 2:10-bk-62208-ER, currently pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division.

c. "BC TRUST" means and refers to the Bright Conscience Trust Dated September 9, 2009.

d. "COMMUNICATION(S)" means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, e-mails, text messages, facsimiles, letters, memoranda, meetings, notes, speeches, or other transfer of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests transcribes or records any such communication.

e. "DEBTORS" means and refers collectively to debtors EPD Investment Company, LLC and Jerrold S. Pressman.

f. "DEFENDANT" or "YOU" means and refers to the named defendant in the ADVERSARY PROCEEDING: John C. Kirkland, an individual, and his assignees, employees, agents, and representatives acting on his behalf.

g. "DOCUMENT(S)" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure, and shall include all tangible sources of information, including but not limited to: (a) the original and any non-identical copy (whether different from the

original because of handwritten notes or underlining made thereon, attachments affixed thereto, or otherwise) or drafts thereof, of any handwritten, typewritten, printed, recorded or graphic matter, however produced or reproduced, including but not limited to charts, plans, drawings, art work, transparencies, sketches, blueprints, files, electronic mail, computer data and/or tapes, reports, travel reports, expense reports, memoranda, notes, minutes, letters and other correspondence, testimony, summaries, abstracts, studies, surveys, graphs, statistics, tables, forms, work papers, logs, indexes, drafts, advertisements, and scripts; and (b) any mechanical, magnetic or electronic or other recordings of any voice, sound, image or data including but not limited to photographs, microfilms, video and audio tapes, film, and any other data compilation.

h. "EPD" means and refers to EPD Investments Co., LLC, a debtor in the BANKRUPTCY CASE.

i. "FTB" means and refers to the State of California Franchise Tax Board.

j. "IRS" means and refers to the Internal Revenue Service of the United States federal government.

k. "PETITION DATE" shall mean the date on which the involuntary bankruptcy petition was filed against EPD, on December 7, 2010.

l. "PLAINTIFF" or "TRUSTEE" means and refers to Jason M. Rund, the Chapter 7 Trustee in the BANKRUPTCY CASE, and the named plaintiff in the ADVERSARY PROCEEDING.

m. "POSHOW" means and refers to Poshow Ann Kirkland, an individual, and her assignees, employees, agents, and representatives acting on her behalf.

n. "PRESSMAN" means and refers to Jerold S. Pressman, an individual, a debtor in the BANKRUPTCY CASE.

o. "PROOF OF CLAIM 171" means and refers that the certain proof of claim that the BC TRUST filed in the BANKRUPTCY CASE on December 12, 2011 and which has been designated as Claim 171 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 171 is attached hereto as **EXHIBIT A** and is incorporated herein by this reference.

p. "PROOF OF CLAIM 235" means and refers that the certain proof of claim that the BC TRUST filed in the BANKRUPTCY CASE on December 12, 2011 and which has been designated as Claim 235 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 235 is attached hereto as **EXHIBIT B** and is incorporated herein by this reference.

q. "PROOF OF CLAIM 236" means and refers that the certain proof of claim that the BC TRUST filed in the BANKRUPTCY CASE on December 12, 2011 and which has been designated as Claim 236 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 236 is attached hereto as **EXHIBIT C** and is incorporated herein by this reference.

r. "PROOF OF CLAIM 13-1" means and refers that the certain proof of claim that the BC TRUST filed in bankruptcy case no. 2:12-bk-13760-ER on February 15, 2013 and which has been designated as Claim 13-1 by the Clerk of the Bankruptcy Court. A true and correct copy of PROOF OF CLAIM 13-1 is attached hereto as **EXHIBIT D** and is incorporated herein by this reference.

s. "PROOFS OF CLAIM" means and refers collectively to PROOF OF CLAIM 171, PROOF OF CLAIM 235, PROOF OF CLAIM 236 and PROOF OF CLAIM 13-1 that the BC TRUST filed in the BANKRUPTCY CASE, and which are attached hereto as exhibits A through D and incorporated herein by this reference.

t. "REGARDING" means and refers to directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

u. "RELEVANT PERIOD" shall mean and include the period from December 1, 2003, through the present.

v. "STRETTO" means and refers to Stretto Enterprises, a California Corporation.

w. "TRANSFER(S)" means and refers to (A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of an equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting

with— (i) property; or (ii) an interest in property. "TRANSFER(S)" also includes but is not limited to any and all monies paid and/or real or personal property transferred by DEBTORS to or for the benefit of YOU, the BC TRUST, POSHOW, or to another entity or person for the benefit of YOU, the BC TRUST or POSHOW, by any means, including but not limited to cash, check, cashier's check or wire transfer, during the RELEVANT PERIOD.

x. All references to Requests for Admission refer to the Requests for Admissions propounded on YOU and served on January 27, 2017 by the TRUSTEE with respect to the ADVERSARY PROCEEDING.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1.:**

All DOCUMENTS and COMMUNICATIONS required to be listed in YOUR initial disclosures.

**REQUEST FOR PRODUCTION NO. 2.:**

All DOCUMENTS and COMMUNICATIONS listed in YOUR initial disclosures.

**REQUEST FOR PRODUCTION NO. 3.:**

All DOCUMENTS and COMMUNICATIONS which support YOUR responses to any Requests for Admission that are anything other than unqualified admissions.

**REQUEST FOR PRODUCTION NO. 4.:**

All DOCUMENTS and COMMUNICATIONS identified in YOUR responses to any Requests for Admission that YOU have not produced to the TRUSTEE.

**REQUEST FOR PRODUCTION NO. 5.:**

All DOCUMENTS and COMMUNICATIONS REGARDING YOUR representation of the DEBTORS as their attorney.

**REQUEST FOR PRODUCTION NO. 6.:**

All retainer agreements REGARDING YOUR representation of the DEBTORS as their attorney.

///

**REQUEST FOR PRODUCTION NO. 7.:**

All DOCUMENTS and COMMUNICATIONS REGARDING YOUR representation of the Broadway Entertainment Marketing, Inc. as its attorney.

**REQUEST FOR PRODUCTION NO. 8.:**

All retainer agreements REGARDING YOUR representation of the Broadway Entertainment Marketing, Inc. as its attorney.

**REQUEST FOR PRODUCTION NO. 9.:**

All DOCUMENTS and COMMUNICATIONS REGARDING PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 10.:**

All DOCUMENTS and COMMUNICATIONS that support PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 11.:**

All DOCUMENTS and COMMUNICATIONS evidencing the amount claimed by the BC TRUST as set forth in PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 12.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 171 are entitled to priority treatment in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 13.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 171 are secured by the DEBTORS' assets.

**REQUEST FOR PRODUCTION NO. 14.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that the BC TRUST has perfected its security interests in the DEBTORS' assets REGARDING the amounts claimed in PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 15.:**

All DOCUMENTS and COMMUNICATIONS that the BC TRUST relied upon when preparing PROOF OF CLAIM 171.

///

**REQUEST FOR PRODUCTION NO. 16.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who prepared PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 17.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who filed PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 18.:**

All DOCUMENTS and COMMUNICATIONS between YOU and the BC TRUST REGARDING PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 19.:**

All DOCUMENTS and COMMUNICATIONS between YOU and POSHOW REGARDING PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 20.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and POSHOW REGARDING PROOF OF CLAIM 171.

**REQUEST FOR PRODUCTION NO. 21.:**

All DOCUMENTS and COMMUNICATIONS REGARDING PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 22.:**

All DOCUMENTS and COMMUNICATIONS that support PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 23.:**

All DOCUMENTS and COMMUNICATIONS evidencing the amount claimed by the BC TRUST as set forth in PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 24.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 235 are entitled to priority treatment in the BANKRUPTCY CASE.

///

///

**REQUEST FOR PRODUCTION NO. 25.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 235 are secured the DEBTORS' assets.

**REQUEST FOR PRODUCTION NO. 26.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that the BC TRUST has perfected its security interests in the DEBTORS' assets REGARDING any amounts claimed in PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 27.:**

All DOCUMENTS and COMMUNICATIONS that the BC TRUST relied upon when preparing PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 28.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who prepared PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 29.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who filed PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 30.:**

All DOCUMENTS and COMMUNICATIONS between YOU and the BC TRUST REGARDING PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 31.:**

All DOCUMENTS and COMMUNICATIONS between YOU and POSHOW REGARDING PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 32.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and POSHOW REGARDING PROOF OF CLAIM 235.

**REQUEST FOR PRODUCTION NO. 33.:**

All DOCUMENTS and COMMUNICATIONS REGARDING PROOF OF CLAIM 236.

///

**REQUEST FOR PRODUCTION NO. 34.:**

All DOCUMENTS and COMMUNICATIONS that support PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 35.:**

All DOCUMENTS and COMMUNICATIONS evidencing the amount claimed by the BC TRUST as set forth in PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 36.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 236 are entitled to priority treatment in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 37.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 236 are secured by the DEBTORS' assets.

**REQUEST FOR PRODUCTION NO. 38.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that the BC TRUST has perfected its security interests in the DEBTORS' assets REGARDING any amounts claimed in PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 39.:**

All DOCUMENTS and COMMUNICATIONS that the BC TRUST relied upon when preparing PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 40.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who prepared PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 41.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who filed PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 42.:**

All DOCUMENTS and COMMUNICATIONS between YOU and the BC TRUST REGARDING PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 43.:**

All DOCUMENTS and COMMUNICATIONS between YOU and POSHOW REGARDING PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 44.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and POSHOW REGARDING PROOF OF CLAIM 236.

**REQUEST FOR PRODUCTION NO. 45.:**

All DOCUMENTS and COMMUNICATIONS REGARDING PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 46.:**

All DOCUMENTS and COMMUNICATIONS that support PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 47.:**

All DOCUMENTS and COMMUNICATIONS evidencing the amount claimed by the BC TRUST as set forth in PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 48.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 13-1 are entitled to priority treatment in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 49.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that any of the amounts claimed in PROOF OF CLAIM 13-1 are secured by the DEBTORS' assets.

**REQUEST FOR PRODUCTION NO. 50.:**

All DOCUMENTS and COMMUNICATIONS supporting the BC TRUST's assertion that the BC TRUST has perfected its security interests in the DEBTORS' assets REGARDING any amounts claimed in PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 51.:**

All DOCUMENTS and COMMUNICATIONS that the BC TRUST relied upon when preparing PROOF OF CLAIM 13-1.

///

**REQUEST FOR PRODUCTION NO. 52.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who prepared PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 53.:**

All DOCUMENTS and COMMUNICATIONS identifying the person or person(s) who filed PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 54.:**

All DOCUMENTS and COMMUNICATIONS between YOU and the BC TRUST REGARDING PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 55.:**

All DOCUMENTS and COMMUNICATIONS between YOU and POSHOW REGARDING PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 56.:**

All DOCUMENTS and COMMUNICATIONS between the BC TRUST and POSHOW REGARDING PROOF OF CLAIM 13-1.

**REQUEST FOR PRODUCTION NO. 57.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain Notice of Assignment dated September 9, 2009,

**REQUEST FOR PRODUCTION NO. 58.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain UCC-1 financing statement filed by the BC TRUST on or about September 11, 2009 as to the assets of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 59.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain Funding Agreement dated July 24, 2009 between EPD and PRESSMAN, on the one hand, and YOU, on the other hand.

///

///

**REQUEST FOR PRODUCTION NO. 60.:**

All DOCUMENTS and COMMUNICATIONS reflecting YOUR status as a lender licensed by the State of California.

**REQUEST FOR PRODUCTION NO. 61.:**

All DOCUMENTS and COMMUNICATIONS reflecting POSHOW's status as a lender licensed by the State of California.

**REQUEST FOR PRODUCTION NO. 62.:**

All DOCUMENTS and COMMUNICATIONS reflecting the BC TRUST's status as a lender licensed by the State of California.

**REQUEST FOR PRODUCTION NO. 63.:**

All DOCUMENTS and COMMUNICATIONS reflecting that the interest rates claimed in the PROOFS of CLAIM are not usurious in the State of California.

**REQUEST FOR PRODUCTION NO. 64.:**

All DOCUMENTS and COMMUNICATIONS reflecting that YOU are exempted from the usury laws in the State of California.

**REQUEST FOR PRODUCTION NO. 65.:**

All DOCUMENTS and COMMUNICATIONS reflecting that POSHOW is exempted from the usury laws in the State of California.

**REQUEST FOR PRODUCTION NO. 66.:**

All DOCUMENTS and COMMUNICATIONS reflecting that the BC TRUST is exempted from the usury laws in the State of California.

**REQUEST FOR PRODUCTION NO. 67.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any promissory notes executed by the DEBTORS in YOUR favor.

**REQUEST FOR PRODUCTION NO. 68.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any promissory notes executed by the DEBTORS in favor of the BC TRUST.

///

**REQUEST FOR PRODUCTION NO. 69.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any promissory notes executed by the DEBTORS in favor of POSHOW.

**REQUEST FOR PRODUCTION NO. 70.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any security agreements executed by the DEBTORS in YOUR favor.

**REQUEST FOR PRODUCTION NO. 71.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any security agreements executed by the DEBTORS in favor of the BC TRUST.

**REQUEST FOR PRODUCTION NO. 72.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any security agreements executed by the DEBTORS in favor of POSHOW.

**REQUEST FOR PRODUCTION NO. 73.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain Notice of Assignment dated September 9, 2009 by and among YOU, PRESSMAN, and EPD.

**REQUEST FOR PRODUCTION NO. 74.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain Secured Promissory Note bearing an issuance date of November 8, 2007 by the EPD in YOUR favor.

**REQUEST FOR PRODUCTION NO. 75.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that certain UCC-1 financing statement filed by the BC TRUST on or about September 11, 2009 as to all assets of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 76.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING that Funding Agreement dated July 24, 2009, between YOU, on the one hand, and the DEBTORS, on the other hand.

///

///

**REQUEST FOR PRODUCTION NO. 77.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that the BC TRUST provided to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 78.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that the BC TRUST provided to EPD.

**REQUEST FOR PRODUCTION NO. 79.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that YOU provided to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 80.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that YOU provided to EPD.

**REQUEST FOR PRODUCTION NO. 81.:**

All tax returns YOU filed that reflect YOUR investments in EPD.

**REQUEST FOR PRODUCTION NO. 82.:**

All tax returns YOU filed that reflect YOUR loans to EPD.

**REQUEST FOR PRODUCTION NO. 83.:**

All tax returns YOU filed that reflect repayments on YOUR investments in EPD.

**REQUEST FOR PRODUCTION NO. 84.:**

All tax returns YOU filed that reflect repayments on YOUR loans to EPD.

**REQUEST FOR PRODUCTION NO. 85.:**

All DOCUMEMENTS and COMMUNICATIONS REGARDING YOUR due diligence REGARDING investments in EPD.

**REQUEST FOR PRODUCTION NO. 86.:**

All DOCUMEMENTS and COMMUNICATIONS REGARDING YOUR due diligence REGARDING loans to EPD.

///

///

**REQUEST FOR PRODUCTION NO. 87.:**

All DOCUMEMENTS and COMMUNICATIONS REGARDING offering materials of any kind YOU received REGARDING investments in EPD.

**REQUEST FOR PRODUCTION NO. 88.:**

All DOCUMEMENTS and COMMUNICATIONS REGARDING offering materials of any kind YOU received REGARDING loans to EPD.

**REQUEST FOR PRODUCTION NO. 89.:**

All DOCUMEMENTS and COMMUNICATIONS REGARDING account statements YOU received REGARDING investments in EPD.

**REQUEST FOR PRODUCTION NO. 90.:**

All DOCUMEMENTS and COMMUNICATIONS REGARDING account statements YOU received REGARDING loans to EPD.

**REQUEST FOR PRODUCTION NO. 91.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that POSHOW provided to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 92.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any value that POSHOW provided to EPD.

**REQUEST FOR PRODUCTION NO. 93.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from either of the DEBTORS to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 94.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from either of the DEBTORS for the benefit of the BC TRUST.

**REQUEST FOR PRODUCTION NO. 95.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from the BC TRUST to either of the DEBTORS.

///

**REQUEST FOR PRODUCTION NO. 96.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from either of the DEBTORS to POSHOW.

**REQUEST FOR PRODUCTION NO. 97.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from either of the DEBTORS for the benefit of POSHOW.

**REQUEST FOR PRODUCTION NO. 98.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from POSHOW to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 99.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from either of the DEBTORS to YOU.

**REQUEST FOR PRODUCTION NO. 100.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from either of the DEBTORS for YOUR benefit.

**REQUEST FOR PRODUCTION NO. 101.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any and all TRANSFERS from YOU to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 102.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST received from the DEBTORS.

**REQUEST FOR PRODUCTION NO. 103.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to the DEBTORS.

**REQUEST FOR PRODUCTION NO. 104.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING Broadway Entertainment Marketing, Inc.

///

///

**REQUEST FOR PRODUCTION NO. 105.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to any person or entity REGARDING Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 106.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 107.:**

Any and all DOCUMENTS or COMMUNICATIONS that the BC TRUST sent to any person or entity REGARDING Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 108.:**

All DOCUMENTS or COMMUNICATIONS that YOU received from either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 109.:**

All DOCUMENTS or COMMUNICATIONS that YOU sent to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 110.:**

All DOCUMENTS or COMMUNICATIONS that YOU received from the BC TRUST REGARDING the DEBTORS.

**REQUEST FOR PRODUCTION NO. 111.:**

All DOCUMENTS or COMMUNICATIONS that the YOU received from POSHOW REGARDING the DEBTORS.

**REQUEST FOR PRODUCTION NO. 112.:**

All DOCUMENTS or COMMUNICATIONS that YOU sent to the BC TRUST REGARDING the DEBTORS.

**REQUEST FOR PRODUCTION NO. 113.:**

All DOCUMENTS or COMMUNICATIONS that YOU sent to POSHOW REGARDING the DEBTORS.

///

///

**REQUEST FOR PRODUCTION NO. 114.:**

Any and all DOCUMENTS or COMMUNICATIONS that YOU received from any person or entity REGARDING the DEBTORS.

**REQUEST FOR PRODUCTION NO. 115.:**

Any and all DOCUMENTS or COMMUNICATIONS that YOU sent to any person or entity REGARDING the DEBTORS.

**REQUEST FOR PRODUCTION NO. 116.:**

Any and all DOCUMENTS or COMMUNICATIONS that YOU received from any person or entity REGARDING HMB Holdings, LLC.

**REQUEST FOR PRODUCTION NO. 117.:**

Any and all DOCUMENTS or COMMUNICATIONS that YOU sent to any person or entity REGARDING HMB Holdings, LLC.

**REQUEST FOR PRODUCTION NO. 118.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW received from any person or entity REGARDING the DEBTORS.

**REQUEST FOR PRODUCTION NO. 119.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW sent to any person or entity REGARDING the DEBTORS.

**REQUEST FOR PRODUCTION NO. 120.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW received from any person or entity REGARDING Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 121.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW sent to any person or entity REGARDING Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 122.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW received from any person or entity REGARDING Neah Power Systems, Inc.

///

**REQUEST FOR PRODUCTION NO. 123.:**

Any and all DOCUMENTS or COMMUNICATIONS that POSHOW sent to any person or entity REGARDING Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 124.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from POSHOW to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 125.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from POSHOW for the benefit of the BC TRUST.

**REQUEST FOR PRODUCTION NO. 126.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from YOU to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 127.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from YOU for the benefit of the BC TRUST.

**REQUEST FOR PRODUCTION NO. 128.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from the BC TRUST to YOU.

**REQUEST FOR PRODUCTION NO. 129.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from the BC TRUST for YOUR benefit.

**REQUEST FOR PRODUCTION NO. 130.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from the BC TRUST to POSHOW.

**REQUEST FOR PRODUCTION NO. 131.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from the BC TRUST for POSHOW's benefit.

///

**REQUEST FOR PRODUCTION NO. 132.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from the BC TRUST to YOUR children.

**REQUEST FOR PRODUCTION NO. 133.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any TRANSFERS from the BC TRUST for YOUR childrens' benefit.

**REQUEST FOR PRODUCTION NO. 134.:**

Any and all trust agreements REGARDING the BC TRUST.

REQUEST FOR PRODUCTION NO. 135.:

Any and all tax returns (state or federal) filed by the BC TRUST.

**REQUEST FOR PRODUCTION NO. 136.:**

Any and all tax returns (state or federal) filed REGARDING the BC TRUST.

**REQUEST FOR PRODUCTION NO. 137.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the formation of the BC TRUST.

**REQUEST FOR PRODUCTION NO. 138.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the purpose of the BC TRUST.

**REQUEST FOR PRODUCTION NO. 139.:**

Any and all DOCUMENTS or COMMUNICATIONS identifying the BC TRUST's trustee(s).

**REQUEST FOR PRODUCTION NO. 140.:**

Any and all DOCUMENTS or COMMUNICATIONS identifying the BC TRUST's beneficiaries.

**REQUEST FOR PRODUCTION NO. 141.:**

Any and all DOCUMENTS or COMMUNICATIONS identifying the BC TRUST's settlor(s).

///

**REQUEST FOR PRODUCTION NO. 142.:**

Any and all DOCUMENTS or COMMUNICATIONS identifying the BC TRUST's grantor(s).

**REQUEST FOR PRODUCTION NO. 143.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any distributions made by the BC TRUST.

**REQUEST FOR PRODUCTION NO. 144.:**

All COMMUNICATIONS and DOCUMENTS between POSHOW and YOU REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 145.:**

All COMMUNICATIONS and DOCUMENTS between the BC TRUST and YOU REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 146.:**

All COMMUNICATIONS and DOCUMENTS between the BC TRUST and POSHOW REGARDING either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 147.:**

All COMMUNICATIONS and DOCUMENTS between POSHOW and YOU REGARDING the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 148.:**

All COMMUNICATIONS and DOCUMENTS between BC TRUST and YOU REGARDING the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 149.:**

All COMMUNICATIONS and DOCUMENTS between BC TRUST and POSHOW REGARDING the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 150.:**

All COMMUNICATIONS and DOCUMENTS between POSHOW and YOU REGARDING the DEBTORS' assets.

///

**REQUEST FOR PRODUCTION NO. 151.:**

All COMMUNICATIONS and DOCUMENTS between BC TRUST and YOU REGARDING the DEBTORS' assets.

**REQUEST FOR PRODUCTION NO. 152.:**

All COMMUNICATIONS and DOCUMENTS between BC TRUST and POSHOW REGARDING the DEBTORS' assets.

**REQUEST FOR PRODUCTION NO. 153.:**

All DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 154.:**

All DOCUMENTS or COMMUNICATIONS REGARDING EPD during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 155.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any checks from the BC TRUST to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 156.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any checks from either of the DEBTORS to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 157.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any wire transfers from the BC TRUST to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 158.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any wire transfers from either of the DEBTORS to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 159.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any cashier's checks from the BC TRUST to either of the DEBTORS.

///

**REQUEST FOR PRODUCTION NO. 160.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any cashier's checks from either of the DEBTORS to the BC TRUST.

**REQUEST FOR PRODUCTION NO. 161.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any checks from YOU to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 162.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any checks from either of the DEBTORS to YOU.

**REQUEST FOR PRODUCTION NO. 163.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any wire transfers from YOU to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 164.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any wire transfers from either of the DEBTORS to YOU.

**REQUEST FOR PRODUCTION NO. 165.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any cashier's checks from YOU to either of the DEBTORS.

**REQUEST FOR PRODUCTION NO. 166.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any cashier's checks from either of the DEBTORS to YOU.

**REQUEST FOR PRODUCTION NO. 167.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between the BC TRUST and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 168.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between the BC TRUST and PRESSMAN.

///

**REQUEST FOR PRODUCTION NO. 169.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between the BC TRUST and EPD.

**REQUEST FOR PRODUCTION NO. 170.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between the BC TRUST and EPD.

**REQUEST FOR PRODUCTION NO. 171.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between POSHOW and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 172.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between POSHOW and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 173.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between POSHOW and EPD.

**REQUEST FOR PRODUCTION NO. 174.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between POSHOW and EPD.

**REQUEST FOR PRODUCTION NO. 175.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between POSHOW and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 176.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between YOU and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 177.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between YOU and PRESSMAN.

///

**REQUEST FOR PRODUCTION NO. 178.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between YOU and EPD.

**REQUEST FOR PRODUCTION NO. 179.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between YOU and EPD.

**REQUEST FOR PRODUCTION NO. 180.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between the BC TRUST and EPD.

**REQUEST FOR PRODUCTION NO. 181.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between the BC TRUST and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 182.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between POSHOW and EPD.

**REQUEST FOR PRODUCTION NO. 183.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between POSHOW and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 184.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between YOU and EPD.

**REQUEST FOR PRODUCTION NO. 185.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between YOU and PRESSMAN.

**REQUEST FOR PRODUCTION NO. 186.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any business relationship between YOU and Broadway Entertainment Marketing, Inc.

///

**REQUEST FOR PRODUCTION NO. 187.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between YOU and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 188.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between YOU and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 189.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any AGREEMENTS entered into between YOU and Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 190.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any CONTRACTS entered into between YOU and Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 191.:**

All COMMUNICATIONS and DOCUMENTS between YOU and Broadway Entertainment Marketing, Inc.

**REQUEST FOR PRODUCTION NO. 192.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans the BC TRUST made to EPD.

**REQUEST FOR PRODUCTION NO. 193.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans the BC TRUST made to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 194.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds the BC TRUST invested in EPD.

**REQUEST FOR PRODUCTION NO. 195.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds the BC TRUST invested with PRESSMAN.

///

**REQUEST FOR PRODUCTION NO. 196.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds the BC TRUST transferred to EPD.

**REQUEST FOR PRODUCTION NO. 197.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds the BC TRUST transferred to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 198.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies the BC TRUST paid to EPD.

**REQUEST FOR PRODUCTION NO. 199.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies the BC TRUST paid to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 200.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans YOU made to EPD.

**REQUEST FOR PRODUCTION NO. 201.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans YOU made to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 202.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds YOU invested in EPD.

**REQUEST FOR PRODUCTION NO. 203.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds YOU invested with PRESSMAN.

**REQUEST FOR PRODUCTION NO. 204.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds YOU transferred to EPD.

**REQUEST FOR PRODUCTION NO. 205.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds YOU transferred to

PRESSMAN.

**REQUEST FOR PRODUCTION NO. 206.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies YOU paid to EPD.

**REQUEST FOR PRODUCTION NO. 207.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies YOU paid to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 208.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any services YOU provided EPD.

**REQUEST FOR PRODUCTION NO. 209.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any services YOU provided PRESSMAN.

**REQUEST FOR PRODUCTION NO. 210.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans POSHOW made to EPD.

**REQUEST FOR PRODUCTION NO. 211.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any loans POSHOW made to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 212.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds POSHOW invested in EPD.

**REQUEST FOR PRODUCTION NO. 213.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds POSHOW invested with PRESSMAN.

**REQUEST FOR PRODUCTION NO. 214.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds POSHOW transferred to EPD.

///

**REQUEST FOR PRODUCTION NO. 215.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any funds POSHOW transferred to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 216.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies POSHOW paid to EPD.

**REQUEST FOR PRODUCTION NO. 217.:**

All DOCUMENTS or COMMUNICATIONS REGARDING any monies POSHOW paid to PRESSMAN.

**REQUEST FOR PRODUCTION NO. 218.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's assets.

**REQUEST FOR PRODUCTION NO. 219.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's liabilities.

**REQUEST FOR PRODUCTION NO. 220.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's lenders.

**REQUEST FOR PRODUCTION NO. 221.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's creditors.

**REQUEST FOR PRODUCTION NO. 222.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's investors.

**REQUEST FOR PRODUCTION NO. 223.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's insolvency.

**REQUEST FOR PRODUCTION NO. 224.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING either the DEBTORS' financial statements.

**REQUEST FOR PRODUCTION NO. 225.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the DEBTORS' financial status between 2003 and the entry of the Order for Relief in the BANKRUPTCY CASE.

///

**REQUEST FOR PRODUCTION NO. 226.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the DEBTORS' inability to pay debts as they became due between 2003 and entry of the Order for Relief in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 227.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING fraudulent activity by either of the DEBTORS between 2003 and entry of the Order for Relief in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 228.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING the DEBTORS' operations between 2003 and entry of the Order for Relief in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 229.:**

Any and all DOCUMENTS or COMMUNICATIONS EPD operating as a Ponzi scheme between 2003 and entry of the Order for Relief in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 230.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING EPD's use of funds from later investors to pay earlier investors between 2003 and entry of the Order for Relief in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 231.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING YOUR knowledge of the DEBTORS' financial status between 2003 and entry of the Order for Relief in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 232.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING YOUR knowledge of either of the DEBTORS' inability to pay debts as they became due between 2003 and entry of the Order for Relief in the BANKRUPTCY CASE.

///

///

**REQUEST FOR PRODUCTION NO. 233.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING YOUR knowledge of any fraudulent activity by either of the DEBTORS between 2003 and entry of the Order for Relief in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 234.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING YOUR knowledge of the DEBTORS' operations between 2003 and entry of the Order for Relief in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 235.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING YOUR knowledge that EPD operated as a Ponzi scheme between 2003 and entry of the Order for Relief in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 236.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING YOUR knowledge of EPD's use of funds from later investors to pay earlier investors between 2003 and the entry of the Order for Relief in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 237.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's assets prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 238.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's liabilities prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 239.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's lenders prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 240.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's creditors prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 241.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING PRESSMAN's insolvency prior to the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 242.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU prepared to send to the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 243.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU sent to the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 244.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU prepared to send to the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 245.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU sent to the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 246.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU prepared to send to the IRS REGARDING STRETTO during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 247.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU sent to the IRS REGARDING STRETTO during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 248.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU prepared to send to the FTB REGARDING STRETTO during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 249.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU sent to the FTB REGARDING STRETTO during the RELEVANT PERIOD.

///

**REQUEST FOR PRODUCTION NO. 250.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU received from the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 251.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU received from the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 252.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU received from the IRS REGARDING STRETTO during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 253.:**

Any and all DOCUMENTS OR COMMUNICATIONS YOU received from the FTB REGARDING STRETTO during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 254.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST sent to the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 255.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST sent to the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 256.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST received from the IRS REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 257.:**

Any and all DOCUMENTS OR COMMUNICATIONS that the BC TRUST received from the FTB REGARDING either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 258.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING the IRS and RELATING to either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 259.:**

All DOCUMENTS or COMMUNICATIONS that the BC TRUST received from any person or entity REGARDING the FTB and RELATING to either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 260.:**

All DOCUMENTS or COMMUNICATIONS that YOU received from any person or entity REGARDING the IRS and RELATING to either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 261.:**

All DOCUMENTS or COMMUNICATIONS that YOU received from any person or entity REGARDING the FTB and RELATING to either of the DEBTORS during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 262.:**

Any and all DOCUMENTS or COMMUNICATIONS that EPD sent to its investors during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 263.:**

Any and all DOCUMENTS or COMMUNICATIONS that PRESSMAN sent to his investors during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 264.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any promissory notes or demand notes issued by PRESSMAN between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 265.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any promissory notes or demand notes issued by EPD between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 266.:**

All audited financial statements REGARDING either of DEBTORS between 2003 and the PETITION DATE.

///

**REQUEST FOR PRODUCTION NO. 267.:**

All unaudited financial statements REGARDING either of the DEBTORS between 2003 and the PETITION DATE.

**REQUEST FOR PRODUCTION NO. 268.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any UCC-1 financing statements REGARDING EPD during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 269.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING any UCC-1 financing statements REGARDING PRESSMAN during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 270.:**

Any and all DOCUMENTS or COMMUNICATIONS REGARDING HMB Holdings, LLC.

**REQUEST FOR PRODUCTION NO. 271.:**

All COMMUNICATIONS between YOU and Keith Pressman between 2003 and the present.

**REQUEST FOR PRODUCTION NO. 272.:**

All COMMUNICATIONS between YOU and Katherine Werner between 2003 and the present.

**REQUEST FOR PRODUCTION NO. 273.:**

All COMMUNICATIONS between YOU and Ruben Moreno between 2003 and the present.

**REQUEST FOR PRODUCTION NO. 274.:**

Any COMMUNICATIONS or DOCUMENTS REGARDING YOU relied on for the preparation of the letters YOU sent to the FTB REGARDING PRESSMAN.

**REQUEST FOR PRODUCTION NO. 275.:**

Any COMMUNICATIONS or DOCUMENTS REGARDING YOU relied on for the preparation of the letters YOU sent to the IRS REGARDING PRESSMAN.

**REQUEST FOR PRODUCTION NO. 276.:**

Any COMMUNICATIONS or DOCUMENTS REGARDING YOU relied on for the preparation of the letters YOU sent to the FTB REGARDING EPD.

///

**REQUEST FOR PRODUCTION NO. 277.:**

Any COMMUNICATIONS or DOCUMENTS REGARDING YOU relied on for the preparation of the letters YOU sent to the IRS REGARDING EPD.

**REQUEST FOR PRODUCTION NO. 278.:**

Any COMMUNICATIONS or DOCUMENTS REGARDING YOU relied on for the preparation of the letters YOU sent to the FTB REGARDING STRETTO.

**REQUEST FOR PRODUCTION NO. 279.:**

Any COMMUNICATIONS or DOCUMENTS REGARDING YOU relied on for the preparation of the letters YOU sent to the IRS REGARDING STRETTO.

**REQUEST FOR PRODUCTION NO. 280.:**

All DOCUMENTS and COMMUNICATIONS REGARDING the BC TRUST designating YOU as the person most qualified to testify on behalf of the BC TRUST at the Rule 2004 examination that took place on May 27, 2011 in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 281.:**

All DOCUMENTS and COMMUNICATIONS REGARDING POSHOW designating YOU as the person most qualified to testify on behalf of the BC TRUST at the Rule 2004 examination that took place on May 27, 2011 in the BANKRUPTCY CASE.

**REQUEST FOR PRODUCTION NO. 282.:**

All DOCUMENTS and COMMUNICATIONS REGARDING payments by the DEBTORS to Dreier Stein & Kahan LLP.

**REQUEST FOR PRODUCTION NO. 283.:**

All DOCUMENTS and COMMUNICATIONS REGARDING payments by Dreier Stein & Kahan LLP to the DEBTORS.

**REQUEST FOR PRODUCTION NO. 284.:**

All DOCUMENTS and COMMUNICATIONS REGARDING agreements entered into between EPD and Neah Power Systems, Inc.

///

///

**REQUEST FOR PRODUCTION NO. 285.:**

All DOCUMENTS and COMMUNICATIONS REGARDING agreements entered into between NPS Investments, LLC and Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 286.:**

All DOCUMENTS and COMMUNICATIONS REGARDING contracts entered into between EPD and Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 287.:**

All DOCUMENTS and COMMUNICATIONS REGARDING contracts entered into between NPS Investments, LLC and Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 288.:**

All DOCUMENTS and COMMUNICATIONS REGARDING promissory notes executed by Neah Power Systems, Inc. in favor of EPD.

**REQUEST FOR PRODUCTION NO. 289.:**

All DOCUMENTS and COMMUNICATIONS REGARDING security agreements executed by Neah Power Systems, Inc. in favor of EPD.

**REQUEST FOR PRODUCTION NO. 290.:**

All DOCUMENTS and COMMUNICATIONS REGARDING shares of stock in Neah Power Systems, Inc. that EPD received from Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 291.:**

All DOCUMENTS and COMMUNICATIONS REGARDING warrants for shares of stock in Neah Power Systems, Inc. that EPD received from Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 292.:**

All DOCUMENTS and COMMUNICATIONS REGARDING EPD assigning shares of stock in Neah Power Systems, Inc. that EPD received from Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 293.:**

All DOCUMENTS and COMMUNICATIONS REGARDING EPD assigning warrants for shares of stock in Neah Power Systems, Inc. that EPD received from Neah Power Systems, Inc.

///

**REQUEST FOR PRODUCTION NO. 294.:**

All DOCUMENTS and COMMUNICATIONS REGARDING sales of shares of stock in Neah Power Systems, Inc. by EPD

**REQUEST FOR PRODUCTION NO. 295.:**

All DOCUMENTS and COMMUNICATIONS REGARDING sales of warrants for shares of stock in Neah Power Systems, Inc. by EPD.

**REQUEST FOR PRODUCTION NO. 296.:**

All DOCUMENTS and COMMUNICATIONS REGARDING sales of shares of stock in Neah Power Systems, Inc. by NPS Investments, LLC.

**REQUEST FOR PRODUCTION NO. 297.:**

All DOCUMENTS and COMMUNICATIONS REGARDING sales of warrants for shares of stock in Neah Power Systems, Inc. by NPS Investments, LLC.

**REQUEST FOR PRODUCTION NO. 298.:**

All DOCUMENTS and COMMUNICATIONS REGARDING retainer agreements between YOU and Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 299.:**

All DOCUMENTS and COMMUNICATIONS REGARDING all amounts YOU received from Neah Power Systems, Inc.

**REQUEST FOR PRODUCTION NO. 300.:**

All DOCUMENTS and COMMUNICATIONS REGARDING all shares of stock in Neah Power Systems, Inc. that YOU directly or indirectly received.

**REQUEST FOR PRODUCTION NO. 301.:**

All DOCUMENTS and COMMUNICATIONS REGARDING all options for shares of stock in Neah Power Systems, Inc. that YOU directly or indirectly received.

///

///

///

///

**REQUEST FOR PRODUCTION NO. 302.:**

All DOCUMENTS and COMMUNICATIONS REGARDING warrants for shares of stock in Neah Power Systems, Inc. that YOU directly or indirectly received.

Dated: February 6, 2017

BRUTZKUS GUBNER

By: ______________________
MICHAEL W. DAVIS
Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee

EXHIBIT "A"

B10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT Central District Of California | PROOF OF CLAIM |
|---|---|
| Name of Debtor: EPD Investment Co., LLC | Case Number: 2:10-62208-ER |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>BRIGHT CONSCIENCE | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>BRIGHT CONSCIENCE<br>734 SWARTHMORE AVENUE<br>PACIFIC PALISADES CA 90272-4355<br><br>FILED<br>DEC 12 2011<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>Deputy Clerk<br><br>Telephone number: | Court Claim Number: ________<br>*(If known)*<br><br>Filed on: ________ |
| Name and address where payment should be sent (if different from above):<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |
| 1. Amount of Claim as of Date Case Filed: $ 2,672,000<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 2. Basis for Claim: money<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4). |
| 3. Last four digits of any number by which creditor identifies debtor: 0710<br><br>3a. Debtor may have scheduled account as: ________<br>(See instruction #3a on reverse side.) | |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☒ Other<br>Describe: All assets<br><br>Value of Property: $________ Annual Interest Rate 12 %<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $________ Basis for perfection: VCC-1<br><br>Amount of Secured Claim: $ 2,672,000 Amount Unsecured: $________ | ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br><br>7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: Trustee has file | Amount entitled to priority:<br><br>$________<br><br>**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| Date: 12/12/11 Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>[signature], Trustee | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

004939

75304004943029

# EXHIBIT "B"

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California**

**PROOF OF CLAIM**

Name of Debtor: EPD Investment Co., LLC

Case Number: 2:10-62208-ER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

Court Claim Number: ____________ (*If known*)

Telephone number:

Filed on: ____________

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

**3a. Debtor may have scheduled account as:** ____________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe:** All assets

**Value of Property:** $ ____________ **Annual Interest Rate** 12 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $ ____________ **Basis for perfection:** VCC-1

**Amount of Secured Claim:** $ 2,672,000 **Amount Unsecured:** $ ____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(_).

**Amount entitled to priority:**

$ ____________

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 12/12/11

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature], Trustee

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT "C"

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California**

**PROOF OF CLAIM**

Name of Debtor: EPD Investment Co., LLC

Case Number: 2:10 62208-ER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

Telephone number:

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:____________
(If known)

Filed on:____________

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

**3a. Debtor may have scheduled account as:** ____________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe:** All assets

**Value of Property:** $____________ **Annual Interest Rate** 12 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $____________ **Basis for perfection:** VCC-1

**Amount of Secured Claim:** $ 2,672,000 **Amount Unsecured:** $____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$____________

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 12/12/11

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
[signature], Trustee

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

004939

75304004943029

EXHIBIT "D"

B 10 (Official Form 10) (12/12)

UNITED STATES BANKRUPTCY COURT Central District of California

**PROOF OF CLAIM**

Name of Debtor: Jerrold S. Pressman

Case Number: 2:12-bk-13760-ER

FILED
FEB 15 2013
CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA BY: RS Deputy Clerk

COURT USE ONLY

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Bright Conscience Trust

Name and address where notices should be sent:
Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades, CA 90272-4355

Telephone number: email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: ____________ (*If known*)

Filed on: ____________

Name and address where payment should be sent (if different from above):

Telephone number: email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 3,529,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 0 7 1 0

**3a. Debtor may have scheduled account as:** ____________ (See instruction #3a)

**3b. Uniform Claim Identifier (optional):** ____________ (See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☑ Other
Describe: All assets

Value of Property: $____________

Annual Interest Rate 24.000% ☑ Fixed or ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: $____________

Basis for perfection: UCC-1

Amount of Secured Claim: $ 3,529,000.00

Amount Unsecured: $____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

Amount entitled to priority: $____________

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/12) 2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Poshow Ann Kirkland
Title: Trustee of the Bright Conscience Trust
Company:
Address and telephone number (if different from notice address above):

(Signature) 02/13/2013 (Date)

Telephone number: email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing documents entitled: **CHAPTER 7 TRUSTEE'S REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT JOHN C. KIRKLAND (SET ONE)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

*** Service to judge not required (discovery)

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On _____________ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On _________________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed:

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 6, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed:

*** Service to judge not required (discovery)

**VIA OVERNIGHT MAIL & EMAIL**

Counsel for John C. Kirkland
Lewis R. Landau, Esq.
22287 Mulholland Hwy., # 318
Calabasas, CA 91302
Email: Lew@Landaunet.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 6, 2017 | JESSICA ROEL | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |



0293

1651923

# EXHIBIT 6

**Lewis R. Landau** (SBN 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888) 822-4340
*Email: Lew@Landaunet.com*

Attorney for Defendants,
John C. Kirkland, individually and
Poshow Ann Kirkland, solely as Trustee
of the Bright Conscience Trust
Dated September 9, 2009

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD Investment Company, LLC and Jerrold S. Pressman,<br><br>Debtors. | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-02424-ER |
| Jason M. Rund, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>John C. Kirkland, an individual and Poshow Ann Kirkland, solely as Trustee of the Bright Conscience Trust Dated September 9, 2009,<br><br>Defendants. | **RESPONSES TO REQUESTS FOR ADMISSIONS**<br><br>**PROPOUNDING PARTY:** Jason M. Rund, Chapter 7 Trustee<br><br>**RESPONDING PARTY:** Poshow Ann Kirkland, solely as Trustee of the Bright Conscience Trust Dated September 9, 2009<br><br>**SET NO.:** One |

## PRELIMINARY STATEMENT

The Responding Party's responses to the Propounding Party's Requests for Admission are made solely for the purpose of and with respect to the above-referenced adversary proceeding. These responses shall not constitute a waiver of any objections which may be asserted during the course of this adversary proceeding, litigation and/or trial with respect to the competency, relevancy, materiality, propriety and admissibility of any document or any evidence. Responses to these Requests for Admissions are being made after reasonable search and investigation by the Responding Party. However, investigation and discovery are continuing and, in the course thereof, the Responding Party may discover further information. Upon discovery of further information, the Responding Party will supplement its response. The Responding Party therefore reserves the right to rely on or use such information so discovered through future discovery or at trial.

## GENERAL OBJECTIONS TO EACH AND EVERY REQUEST FOR ADMISSION

1. The Responding Party objects to each and every request for admission to the extent that it is overbroad, burdensome, oppressive, irrelevant, not calculated to lead to the discovery of admissible evidence, an invasion of the Responding Party's attorney-client privilege and attorney work product privilege, and/or other improper requests to disclose privileged or confidential information.

2. The Responding Party further objects to each and every request for admission to the extent that the burden of producing the information requested outweighs its apparent value to the matters and issues before this Court.

3. The Responding Party further objects to each and every request for admission which requests public information that is readily available to the Propounding Party, such as public court records.

4. The Responding Party further objects to each and every request for admission as not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'