stayed in touch with my secretary. And she introduced me to him and basically helped me get contract work from him. So I never really worked for him. I don't really know him very well. But Lisa, his assistant, she had like four or five lawyers on her desk and I was one of them.

Q Is that Lisa Underkoffler?

A Yes.

Q So Lisa Underkoffler was your assistant as well as John Kirkland's assistant at Dreier?

A Yes.

Q And did Ms. Underkoffler follow Mr. Kirkland to his next firm?

A Yes.

Q Do you know where that was?

A Luce Forward.

Q And so Mrs. Underkoffler was Mr. Kirkland's assistant at Luce Forward as well?

A I believe that's right, yes.

Q Have you ever heard of a company called EPD Investment Company, LLC?

A Yes.

Q And when was the first time you heard of that company? And I'll just call it "EPD" for short if that's okay.

A It would have been in connection with the maybe 2010. It was well after the Dreier firm, whenever I started doing this contract work.
Q And what was the context that you heard about EPD in?
A I had been looking, like I said, for contract work and kind of reaching out to different partners from the firm that I knew because I didn't know very many people in L.A. And Lisa called me one day and said that John had a client, John Kirkland had a client that he wanted me to see if I would work with or introduce. I can't remember specifically the conversation, but that's how.
Q And the client was EPD?
A Yes.
Q So did you meet someone representing EPD after that point?
A Yes, I met Jerrold Pressman.
Q And Jerrold Pressman was an officer of EPD at that point?
MR. MICK: Foundation.
MR. WEBER: I'll rephrase.
Q Was Jerrold Pressman an officer, director or have some other title with EPD at that point?
A I don't know what his title was.

again.
MR. WEBER: Sure.
Q Do you have a recollection one way or the other as to whether you were paid by the entities that you represented, like EPD or Jerrold Pressman, as opposed to being paid by a different entity or a law firm or a lawyer?
A Yes, I was paid by the EPD entity or entities; I wasn't paid by Luce Forward or John Kirkland.
Q So the work that you performed for EPD wasn't contract work for Luce Forward or John Kirkland?
MR. MICK: Vague as to "contract work."
MR. WEBER: I'll rephrase.
Q The work that you performed was directly on behalf of the entity rather than contracted out from a law firm; is that correct?
A No. I mean, I was taking direction from the law firm and Kirkland. I would agree, though, that I didn't have a written agreement with the law firm.
Q So the legal services you performed for EPD were based on direction from John Kirkland or Luce Forward?

MR. MICK: Overbroad; may be compound.
THE DEPONENT: More or less, yes.
MR. WEBER: We'll get into more details later.
Q Do you know how long you performed legal services for EPD for?
A Maybe a little under a year or around a year. I don't recall exactly.
Q What type of legal services did you provide for EPD?
A Just defending like routine breach of contract claims in state court.
Q Anything else?
A No.
Q You said you're not a litigator, though; correct?
A That's correct.
Q Do you know why you were selected to perform litigation-related services for EPD?
A No, I don't.
Q Did Mr. Kirkland select you to do that?
MR. MICK: Lacks foundation.
THE DEPONENT: Like I said, I got a call from Lisa. I had been looking for work and I think she was trying to help me. It was presented as, you

know, John will give me the litigation documents and I'm just going to have to coordinate the filing. And I even made some appearances. I was kind of like a quasi junior associate. I was like a fourth year lawyer at the time; I was just doing work for a partner.

Q BY MR. WEBER: And the "John" you're referring to is John Kirkland?

A Yes.

Q I'd like to introduce Exhibits 4 and 5.

(Plaintiff's Exhibits 4 and 5 were marked for identification by the Deposition Officer and are attached hereto.)

Q BY MR. WEBER: Mr. Gruenberg, do you recognize these documents?

A Vaguely.

MR. WEBER: I'll just note for the record that it appears that on both of these documents, Exhibits 4 and 5, there is a mark at the top "Confidential." It's likely due to the production in this adversary proceeding as being protected by a protective order, although these are both state court public filings so they're not confidential.

Q Mr. Gruenberg, on Exhibit 5, the General Denial, is that your signature?

A No.
Q Do you recognize that signature?
A No. I mean, it looks like my name, but it's not my signature.
Q So someone else signed this document for you?
MR. MICK: That assumes a fact with respect to 4.
THE DEPONENT: I don't know.
Q BY MR. WEBER: Someone signed your name on this document; is that correct?
A Yes.
Q Did you authorize your name to be signed on this document?
A I don't recall. Based on the record, I assume so, yes.
Q And if you look on the next page, the Proof of Service on this document says it was served by Lisa Underkoffler.
Do you see that?
A Yes.
Q And that was your assistant at Dreier?
A Yes.
Q And John Kirkland's assistant at Dreier and Luce?

A That's correct.
Q So even though this document at least had your signature name on the block, it was served by Luce Forward?
A It looks that way, yes. I don't recall.
Q Did you prepare this General Denial?
MR. MICK: This would probably be an excellent time for me to point out that as I mentioned on the phone, I had set aside a group of publically filed documents and I did not include them in our stamped production because I assumed you had them all.
And it turns out that one of the documents that I had set aside as what I assumed was a publically filed document is a General Denial in the Jenny Lee Bridal vs. EPD Investment Company matter, but it doesn't quite exactly look like the one that was just marked.
MR. WEBER: For the record --
MR. MICK: Look at the dates and the proofs.
MR. WEBER: For the record, the General Denial that Mr. Mick handed me, it doesn't have a file stamping on it, but it's dated November 18, 2010, as opposed to Exhibit 5, which is November 22nd, 2010. It appears to have a different signature on it. And

it states on the second page that it was served by Ms. Underkoffler on November 19, 2010, as opposed to November 22nd, 2010.

Mr. Mick, is it okay if we introduce this as an exhibit?

MR. MICK: Absolutely.

MR. WEBER: I'd like to mark this as Exhibit 6.

(Plaintiff's Exhibit 6 was marked for identification by the Deposition Officer and is attached hereto.)

Q BY MR. WEBER: Mr. Gruenberg, is the signature on Exhibit 6 your signature?

A Yes.

Q So the signature on Exhibit 5 is not your signature, but the signature on Exhibit 6 is your signature?

A Yes.

Q And are the affirmative defenses listed on Exhibits 5 and 6 the same?

A I believe so, yes.

Q For the record, there are three affirmative defenses listed on Exhibit 5 and Mr. Gruenberg has the sole copy of Exhibit 6.

Mr. Gruenberg, did you come up with those

affirmative defenses listed in the General Denial that's Exhibit 5 and Exhibit 6?
A No.
Q And who came up with those affirmative defenses?
A I don't know.
Q Do you know if it was Mr. Kirkland?
A I couldn't say with certainty. He had someone else, an associate that he worked with, so I don't know if it was -- I don't know. I know I didn't come up with them, but it came from the Luce Forward firm.
Q So it would have been Mr. Kirkland or someone who worked at Luce Forward that came up with the affirmative defenses?
A I believe so.
Q Did you ever discuss those affirmative defenses with Mr. Kirkland?
A No, not to my recollection.
Q How about with Mr. Pressman?
A Not to my recollection.
Q Do you recall what the allegations were in the Complaint filed by Jenny Lee Bridal, LLC that the General Denial is in relation to?
MR. MICK: That's Exhibit 4?

Q I'd like to introduce Exhibits 7 and 8.
(Plaintiff's Exhibits 7 and 8 were marked for identification by the Deposition Officer and are attached hereto.)
Q BY MR. WEBER: Mr. Gruenberg, have you seen these documents before, Exhibits 7 and 8?
A I have a vague recollection of the names, but I don't remember seeing the documents.
Q On Exhibit 8, the General Denial, is that your signature?
A No.
Q It's not your signature?
A No.
Q Do you know whose signature that is?
A No. I mean, it looks like it's my name, but it's not my handwriting.
Q And did you authorize your signature on Exhibit 8, the General Denial?
A I don't recall.
Q If you look at the next page, it appears to be served by Lisa Underkoffler; is that correct?
A Yes.
Q So this is the second General Denial that appears with your name on it on the first page but served by Ms. Underkoffler. Do you recall if the

pleadings that you prepared in the state court litigation matters were served by Ms. Underkoffler as a matter of course?

A I believe so. I don't recall precisely, but I believe so.

Q And on this General Denial, Exhibit 8, it includes two of the same affirmative defenses that are the same as the other General Denial, that the stated interest rate is usurious and the funds were an investment rather than a loan that required repayment.

Do you see that?

A Yes.

Q And did you discuss these affirmative defenses with Mr. Kirkland?

A Not that I can recall.

Q Did you discuss the affirmative defenses with Mr. Pressman?

A Not that I can recall.

Q And did you come up with these affirmative defenses in Exhibit A?

A No.

Q Was it either Mr. Kirkland or someone who worked for Luce Forward that came up with these affirmative defenses?

A I believe so, yes.

Q Do you recall the general nature of this Complaint, Exhibit 7, filed by John Dittmar?
A I don't remember, no.
Q I'm going to introduce Exhibit 9. And for the record, there is a notation of "Confidential" at the top that's likely due to the protective order in this case, but this is a publically filed Superior Court document.
(Plaintiff's Exhibit 9 was marked for identification by the Deposition Officer and is attached hereto.)
Q BY MR. WEBER: Mr. Gruenberg, have you seen this document before?
A Not that I can recall.
Q Mr. Gruenberg, if you look at the page that's Bates stamped T/PR 070527, do you see that?
A Yes.
Q And there is a signature block at the end that appears to be for your signature. Do you see that?
A I do.
Q And is that your signature?
A It's not.
Q So the signature on that page purports to be your signature but it is not your signature?

A That's correct.
Q And do you know whose handwriting that is?
A I don't.
Q Did you authorize someone else to sign your name on this Case Management Statement?
A I really can't recall.
Q You'll note on the first page of this document it lists you as the counsel filing the Case Management Statement.
Do you see that?
A I see that.
Q And then on the page we just looked at a moment ago, it had your signature block but someone else's signature; is that correct?
A Yes.
Q But if you look on the second page of this document Bates stamped T/PR 070525, on Number 8.
Do you see that?
A Yes.
Q For trial representation it states that the parties will be represented at trial by John Kirkland of Luce Forward.
Do you see that?
A Yes.
Q Was it your understanding that even though

A I believe so. That looks like my signature.
Q And Exhibit 11, the General Denial, includes three affirmative defenses. Do you see that?
A I do.
Q And the first and second one are the same as in the other General Denials; is that correct?
A Yes.
Q And that's that the stated interest rate is usurious and the funds were used as an investment rather than a loan that required repayment?
A I see that.
Q And those are the same as the other General Denials that we looked at?
A I think the second didn't have -- it was only two of the three, but yes.
Q The third affirmative defense in Exhibit 11 is that the funds were invested voluntarily under no improper influence or representation.
Do you see that?
A Yes. I think that one is different; right?
Q That appears to be different.
Now, did you come up with these affirmative defenses on Exhibit 11?

A Not to my recollection.
Q And did Mr. Kirkland or some other attorney at Luce Forward come up with these affirmative defenses?
A I really can't recall, but I assume so.
Q Is there anyone else who could have come up with these affirmative defenses?
A Well, I don't know; I would be speculating.
Q Did you discuss these affirmative defenses with Mr. Kirkland?
A Not to my recollection.
Q With any other attorney at Luce Forward?
A Not to my recollection. I don't recall.
Q And how about with Mr. Pressman?
A I don't recall.
Q Do you recall the general nature of the Complaint that is Exhibit 11 filed by Betty Druckman and Valerie Druckman?
A I don't recall, no.
Q I'd like to introduce Exhibit 12.
(Plaintiff's Exhibit 12 was marked for identification by the Deposition Officer and is attached hereto.)
Q BY MR. WEBER: Mr. Gruenberg, have you

seen this document before?
A I don't recall, no.
Q If you look at the fourth page, there is a signature block for you. Do you see that?
A I do.
Q And is that your signature?
A No.
Q Do you recognize the handwriting?
A No. I mean, it looks like the other one we looked at a few moments ago.
Q And if you look on the next page, T/PR 073745, this Case Management Statement appears to have been served by Lisa Underkoffler; is that correct?
A Yes.
Q Do you recall preparing this Case Management Statement?
A No.
Q And do you recall authorizing your signature on this Case Management Statement?
A I don't recall, no.
Q And if you look at the second page, T/PR 073742, on Number 8 it lists John Kirkland as being the trial attorney.
Do you see that?
A Yes.




BARKLEY Court Reporters

Q And was it your understanding that if this case went to trial, Mr. Kirkland would be the trial attorney?
A I don't know. I don't recall.
Q I'd like to introduce Exhibits 13 and 14.
(Plaintiff's Exhibits 13 and 14 were marked for identification by the Deposition Officer and are attached hereto.)
Q BY MR. WEBER: Mr. Gruenberg, do you recognize Exhibits 13 and 14?
A I don't recall, no.
Q On Exhibit 14, the General Denial, do you see there is a signature block with your name?
A Yes.
Q Is that your signature?
A No.
Q Do you recognize the handwriting?
A Only that it's similar to the other ones we looked at, but no, I don't.
Q Did you authorize your signature on this General Denial?
A I don't recall.
Q And if you look at the next page on the General Denial, the Proof of Service states that it

was served by Lisa Underkoffler; is that correct?
A Yes.
Q Do you recall preparing this General Denial?
A No.
Q On the first two affirmative defenses, they appear to be the same or similar as the other ones, that the stated interest rate is usurious and the funds were an investment rather than a loan that required repayment.
Do you see that?
A Yes.
Q And that's similar to the other General Denials?
A Yes.
Q And then there are also two other affirmative defenses, that remedies against primary obligor have not been exhausted and there is no continuing guarantee.
Do you see that?
A Yes.
Q Now, as to any of these affirmative defenseses, did you discuss them with Mr. Kirkland?
A Not that I can recall, no.
Q How about with any other attorney at


BARKLEY Court Reporters

Do you see that?
A Yes.
Q And both 16 and 17 appear to be signed by Mr. Kirkland rather than by you; is that correct?
A Yes.
Q And both these General Denials include affirmative defenses, that the stated interest rate is usurious and the funds were an investment rather than a loan that required repayment; is that correct?
A Yes.
Q And then Exhibit 17 also includes other affirmative defenses?
A Yes.
Q Did you assist in the preparation of either of these General Denials, 16 or 17?
A Not that I can recall, no.
Q Do you recall working on this case?
A Vaguely, yes.
Q And on that case were you working for Mr. Kirkland?
A Yes.
Q So Mr. Kirkland would provide instructions as to what legal work to do and you would do whatever the legal work assigned was?
A Yes.

file it with his name.

MR. WEBER: We'll look during a break.

I'd like to introduce Exhibit 19.

(Plaintiff's Exhibit 19 was marked for identification by the Deposition Officer and is attached hereto.)

MR. WEBER: These purport to be responses of EPD to Form Interrogatories. And similar to the statements made with the Complaints, General Denials and Case Management Statements, this is marked "Confidential" but is simply a discovery pleading in a state court litigation case.

Q Mr. Gruenberg, do you recognize this document?

A No, I don't recall it.

Q If you look at the page that's Bates stamped T/PR 078505.

A Yes.

Q Do you see a signature block with your name?

A Yes.

Q Is that your signature?

A No.

Q The signature on that page is not your signature?

A That's correct.
Q Do you recognize the handwriting?
A No, just that it looks similar to the others.
MR. MICK: I think we've got two by my count here.
THE DEPONENT: Okay. No, I don't recognize it.
MR. WEBER: If you flip to the last page in this document, which is Bates stamped T/PR 078507, the Proof of Service, it purports to have been served by Lisa Underkoffler.
Q Do you see that?
A Yes.
Q And again, that's Mr. Kirkland's assistant at Luce?
A Yes.
Q And that was your assistant and Mr. Kirkland's assistant at Dreier?
A Yes.
Q Did you prepare this document?
A I don't recall.
Q Did you authorize your signature on this document?
A I don't recall.

Q That's your e-mail address at the top?
A Yes.
Q And you were corresponding in regard to this e-mail with Mr. Kirkland and also with Lisa Underkoffler about pending state court litigation; is that correct?
A That's what it looks like, yes.
Q And with each of these cases where you were defending EPD and/or Mr. Pressman, did you generally coordinate any action in those cases with Mr. Kirkland and Ms. Underkoffler?
A Yes.
Q And you followed Mr. Kirkland's instructions as to each of the pieces of pending litigation?
A Yes.
Q I'd like to introduce Exhibit 23.
(Plaintiff's Exhibit 23 was marked for identification by the Deposition Officer and is attached hereto.)
Q BY MR. WEBER: Do you recall receiving this e-mail from Mr. Kirkland on or about August 12, 2010?
A No.
Q It attaches a draft opposition from

Q Did you discuss the California Finance Lenders Law, or any of these issues on that page, with Mr. Pressman or anyone at EPD?
A Not to my recollection, no.
Q Do you know what the California Finance Lenders Law is?
A No, not really.
Q I'd like to introduce Exhibit 24.
(Plaintiff's Exhibit 24 was marked for identification by the Deposition Officer and is attached hereto.)
Q BY MR. WEBER: Mr. Gruenberg, do you recall receiving this e-mail and the attached draft declaration?
A No.
Q Do you know who drafted the declaration that's attached to this e-mail?
A No.
Q Did you draft it?
A I don't think so, no.
Q Do you know if Mr. Kirkland or someone at Luce Forward drafted it?
A I don't know.
Q I'd like to introduce Exhibit 25.
///


BARKLEY Court Reporters

Q Did you represent True Position Technologies, Inc.?
A I don't recall. I don't think so.
Q Did you represent Ice Skating Enterprises, Inc.?
A Again, I don't recall.
Q Did you represent S.C. Club, L.P.?
A That name sounds more familiar, but I don't recall.
Q Do you know where the substantive content from these pleadings attached to the e-mail came from?
A I assume from either Luce Forward or from -- I don't recall.
Q Did you discuss any of the substantive content in the draft pleading with Mr. Kirkland or any attorneys at Luce Forward?
A I don't recall discussing it, no.
Q Did you discuss any of the substantive content with Mr. Pressman or anyone with EPD?
A I don't recall.
Q Do you know what kind of a business EPD is or was?
A I thought it was like a leasing company, equipment leasing company.
Q Do you recall anything else about the

general nature of their business or what they did?
A They owned or operated like a nightclub in L.A. and maybe one in Las Vegas.
Q Anything else?
A Toward the very end of work I did for them, I learned that they owned some real estate as well in Tennessee, or somewhere in the south; I don't remember.
Q And who did you get all of the information from as to what type of business EPD ran and what its assets were?
A I don't recall specifically.
Q Do you know if it was from Mr. Kirkland?
A I don't recall.
Q Did you ever discuss --
A Possibly.
Q In the entire time that you performed legal services for EPD and Mr. Pressman, did you ever discuss the nature of EPD's business with Mr. Pressman or anyone with EPD?
MR. MICK: Compound.
THE DEPONENT: No. it was really just -- you know, they wanted me to just basically delay the settlement of these lawsuits and that was really it, and just coordinating with John to respond.

Q BY MR. WEBER: What do you mean by delay in settling the lawsuits?
A In the state court cases, they just wanted me to like -- I don't remember specifically any specific conversations, but I just remember the general theme was to like respond to cases or, like, undo a default and just provide, basically, just general litigation assistance.
Q Did anyone instruct you to make the cases take as long as possible to get to trial?
A I don't remember that specific instruction. But I remember there being kind of like a theme. I remember there was one, I don't remember specifically, but there was one case involving like a mediation that they just wanted to push out, push the mediation out.
Q The instructions as to pushing mediations out or any other actions, were those instructions from Mr. Kirkland?
A Yes, I believe so.
Q I'd like to introduce Exhibit 31.
(Plaintiff's Exhibit 31 was marked for identification by the Deposition Officer and is attached hereto.)
Q BY MR. WEBER: Do you recall having

A I don't recall, no.
Q I'd like to introduce Exhibit 33.
(Plaintiff's Exhibit 33 was marked for identification by the Deposition Officer and is attached hereto.)
Q BY MR. WEBER: Do you recognize this e-mail chain between you and Mr. Kirkland on September 30th, 2010?
A No, I don't recall it.
Q It looks like down below you're asking Mr. Kirkland who can provide an affidavit for EPD Investment Leasing Co., and Mr. Kirkland responds, "yes. only choices would be ruben, keith or jerry."
Do you see that?
A Yes.
Q Is that Ruben Moreno, Keith Pressman, and Jerry Pressman?
A I believe so.
Q And then you replid, "ok, i'll use jerry since he is the easiest to obtain signature from."
A I see that.
Q But that was your response?
A Yes.
Q And Mr. Kirkland wrote, "no, you want to use your least knowledgeable people for declarations.

provides less potentially to impeach them with down the line, at trial or depo."
Is that correct?
A I see that, yes.
Q And then you responded, "makes sense. probably Keith then. you okay with him?"
Is that correct?
A Yes.
Q Do you recall any of that discussion?
A No.
Q And at the very top, it looks like Mr. Kirkland wrote to you saying, "based on the fact that right now it's only a recommendation from the magistrate, not an order from the court, I would file the motion to dismiss on behalf of ALL defendants, including those for whom entry of default is recommended."
Do you see that?
A Yes.
Q Does that relate to the district court litigation in Illinois?
A I don't know.
Q Do you know if the affidavit that's discussed below in terms of who should sign it was in relation to the district court case in Illinois?

property of the debtor to the Trustee and cooperate with the Trustee.
Do you see that?
A Yes.
Q And do you recall preparing any type of objection to that?
A I don't recall.
Q Do you recall discussing this with Mr. Kirkland or Ms. Underkoffler?
A No, I don't recall.
Q And are you admitted to practice in the District Court or Bankruptcy Court for the Central District of California?
A Not to my knowledge, no.
Q And did that happen on, say, a somewhat regular occurrence where Ms. Underkoffler would communicate instructions or requests from Mr. Kirkland?
A Yes.
Q Do you know someone named Katherine Werner?
A No.
Q Have you ever spoken with her?
A I guess it's possible, but I don't recall.
Q The name doesn't sound familiar other than

seeing it in the pleadings?
A I saw it in there.
Q I'd like to introduce Exhibit Numbers 39 and 40.
(Plaintiff's Exhibits 39 and 40 were marked for identification by the Deposition Officer and are attached hereto.)
Q BY MR. WEBER: Mr. Gruenberg, have you seen these Substitution of Attorney forms before?
A Not to my recollection, no.
Q Do you recall authorizing your "/s" to substitute in as counsel of record for EPD in the bankruptcy case?
A I recall this being an issue. I did not authorize to be technically substituted into this case, no.
Q If you look on the third page of each of these documents, they purport to both be served by Ms. Underkoffler; is that correct?
A Yes.
Q Did you review either of these substitutions before they were filed?
A No, I don't believe so. I don't recall.
Q And you didn't authorize your electronic

signature on either of these documents?
A No.
Q And you don't think you're admitted to practice in the District Court or Bankruptcy Court for the Central District of California?
A That's correct.
Q I'd like to turn back to Exhibit 3, which is part two of your production. It's the one that starts with the Bates stamp 0086.
A Mine starts with 0041.
MR. MICK: Because they're out of order.
For the sake of clarity, let's just reorganize that. Ours are organized 41 through 126. And the one that's been marked by the reporter is also organized 41 through 126.
MR. WEBER: Take a look at page Bates stamped MBG-00117.
A Okay.
Q There is an e-mail that states it's from you to John Moe on June 13, 2011.
Do you see that?
A Yes.
Q And you wrote, "After re-reading my e-mail, I want to make something clear. I do not know who filed the substitution or when it was filed.

I only learned that it was filed after getting the e-mail from Corey Weber with the substitution form attached. I then called Lisa and she confirmed that it had been filed."
Do you see that?
A Yes.
Q And "Lisa" is Lisa Underkoffler?
A Yes.
Q So you didn't know that a substitution of counsel in the bankruptcy case had been filed until I brought that to your attention; is that correct?
A Yes.
Q And then after that, you called and spoke with Lisa Underkoffler, and Ms. Underkoffler said that it had been filed?
A I don't remember the sequence of events, but that's what the e-mail says, yes.
Q Did Ms. Underkoffler explain how she filed it without your authorization for your electronic signature?
A I don't recall.
Q If you look below that, there is an e-mail from you and it appears to be part of that same chain with Mr. Moe. And it says, "This is not entirely accurate. John Kirkland never in fact asked me if I

would or could sub in as counsel in the bankruptcy matter. He filed it without notice to me, my consent or discussion with me of any kind whatsoever. The only conversation John and I had with regard to EPD and substitutions was for the state court litigation, which as far as I understand, is primarily stayed because of the bankruptcy. I do recall that Lisa Underkoffler asked me if I would sub in for the bankruptcy matter and I said absolutely not," with "absolutely not" underlined. "Apparently, the substitution was filed anyway. It has become clear to me that John Kirkland used me to achieve some mysterious ends. I appreciate the work you are doing to relieve me in a joint motion but if possible, I would like it to be stronger with regard to my cause."

Do you see that?

A Yes.

Q This reference is a conversation where you spoke with Ms. Underkoffler and she asked you to substitute in as bankruptcy counsel for EPD and you said "absolutely not"; is that correct?

A Yes.

Q Do you recall any of the other substance of the conversation?

A I actually don't remember the

conversation.

Q But the statements here in your e-mail are accurate?

A Yes, as far as I recall. I know I never agreed to substitute in.

Q After you found out that the substitutions had been filed, did you talk with Mr. Kirkland about it?

A I don't think I ever talked to him again, but I don't recall precisely. There may have been one or two. It's been a long time, but I don't believe so, to my recollection.

Q This references, "It has become clear to me that John Kirkland used me to achieve some mysterious ends."

Do you see that?

A Yes.

Q Do you know what Mr. Kirkland was trying to accomplish, what those mysterious ends were?

A I still don't know, no.

Q When was the last time you spoke with Mr. Kirkland?

A In or around this time, June -- I couldn't say June because I don't remember, but sometime in 2011.

MR. MICK: I'm sorry. What is it?
MR. WEBER: The Declaration of Matthew Gruenberg in support of the alleged debtors and non-debtor's opposition to motion of Plaintiff Alan C. Harvey to remand the action to state court.
Q Do you recognize this Declaration?
A No.
Q Did you prepare this Declaration?
MR. MICK: Take a look at 86 in front of it.
THE DEPONENT: I really don't recall.
Q BY MR. WEBER: Was this Declaration prepared at the request of Mr. Kirkland?
A I don't recall.
Q Now, as to each of the actions that -- strike that.
As to each of the pleadings or discovery that were prepared, served, filed on behalf of EPD and Pressman that we've reviewed, did you prepare, file, serve all of that at the instruction of Mr. Kirkland?
A Yes, either him or Theona, yes.
Q Theona Zhordania?
A Yes, or Lisa Underkoffler.
Q And all three of them worked for

Luce Forward?
A Yes.
Q And Ms. Zhordania and Ms. Underkoffler worked directly for Mr. Kirkland?
A I know Lisa did. Ms. Zhordania could have worked for other people. But she worked for him in regards to these matters, yes.
Q She was subordinate to Mr. Kirkland on these matters?
A Yes.
Q Did Mr. Kirkland ever mention to you anything about him or his family trust being investors in EPD?
A No.
Q Did Mr. Kirkland ever reference anything about him or his family trust loaning money to EPD?
A Never, no.
Q Earlier you mentioned a general theme of delay in the litigation; is that correct?
A Yes.
Q I think you said that you couldn't recall an overt instruction to delay, but that was the theme of the way the defense of the litigation was conducted; is that correct?
A Yes.

Q And in terms of that general theme or strategy of delay, was it Mr. Kirkland who came up with that strategy?
A I believe so; Kirkland and maybe Pressman to some degree.
Q Do you know what the object of the delay was?
A No. Well, that's not entirely accurate. Now that I recall, toward the end of -- I mentioned that there was some real estate. And toward the end, I think they were trying to refinance the real estate. And it was communicated to me, I remember, that they would use those proceeds to pay people.
Q The people that were the plaintiffs in the state court litigation?
A Yes.
Q So the delay may have been to wait for the financing to occur and then to use those funds to pay the plaintiffs in the suits?
A I don't know that that was -- I mean, that would be speculation, but I just remember that was what was told to me through kind of the end of my involvement.
Q Do you know who the members or managers of EPD were?

# EXHIBIT 22

**Lewis R. Landau** (SBN 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888) 822-4340
*Email: Lew@Landaunet.com*

Attorney for Defendants,
John C. Kirkland, individually and
Poshow Ann Kirkland, solely as Trustee
of the Bright Conscience Trust
Dated September 9, 2009

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD Investment Company, LLC and Jerrold S. Pressman,<br><br>Debtors. | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-02424-ER |
| Jason M. Rund, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>John C. Kirkland, an individual and Poshow Ann Kirkland, solely as Trustee of the Bright Conscience Trust Dated September 9, 2009,<br><br>Defendants. | **SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSIONS**<br><br>**PROPOUNDING PARTY**: Jason M. Rund, Chapter 7 Trustee<br><br>**RESPONDING PARTY**: Poshow Ann Kirkland, solely as Trustee of the Bright Conscience Trust Dated September 9, 2009<br><br>**SET NO.**: One |

## PRELIMINARY STATEMENT

The Responding Party's responses to the Propounding Party's Requests for Admission are made solely for the purpose of and with respect to the above-referenced adversary proceeding. These responses shall not constitute a waiver of any objections which may be asserted during the course of this adversary proceeding, litigation and/or trial with respect to the competency, relevancy, materiality, propriety and admissibility of any document or any evidence. Responses to these Requests for Admissions are being made after reasonable search and investigation by the Responding Party. However, investigation and discovery are continuing and, in the course thereof, the Responding Party may discover further information. Upon discovery of further information, the Responding Party will supplement its response. The Responding Party therefore reserves the right to rely on or use such information so discovered through future discovery or at trial.

## GENERAL OBJECTIONS TO EACH AND EVERY REQUEST FOR ADMISSION

1. The Responding Party objects to each and every request for admission to the extent that it is overbroad, burdensome, oppressive, irrelevant, not calculated to lead to the discovery of admissible evidence, an invasion of the Responding Party's attorney-client privilege and attorney work product privilege, and/or other improper requests to disclose privileged or confidential information.

2. The Responding Party further objects to each and every request for admission to the extent that the burden of producing the information requested outweighs its apparent value to the matters and issues before this Court.

3. The Responding Party further objects to each and every request for admission which requests public information that is readily available to the Propounding Party, such as public court records.

4. The Responding Party further objects to each and every request for admission as not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

**SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSIONS**

**REQUEST FOR ADMISSION NO. 13:**

Admit that YOU did not deposit $2,055,466.23 with the DEBTORS as YOU contend in YOUR initial disclosures.

**RESPONSE:**

Propounding Party has refused to define what he means by "deposit with the Debtors." The Merriam-Webster Dictionary defines the transitive verb "deposit" as "to place especially for safekeeping or as a pledge • depositing her tools in the trunk of the car; especially, economics : to put in a bank • having your paycheck automatically deposited into your bank account." Responding Party's response to this request is based on that definition.

The Responding Party makes no contention in Responding Party's initial disclosures that Responding Party "deposit[ed] $2,055,466.23 with the Debtors." Accordingly, this request is denied.

**REQUEST FOR ADMISSION NO. 14:**

Admit that YOU did not transfer $2,055,466.23 to the DEBTORS as YOU contend in YOUR initial disclosures.

**RESPONSE:**

Objection; the term "transfer" is not defined and Defendant is unable to admit or deny the request.

**SUPPLEMENTAL RESPONSE:**

Based on the Propounding Party's representation that the term "transfer" means the defined term "TRANSER," this request is denied.

**REQUEST FOR ADMISSION NO. 15:**

Admit that YOU did not deposit $400,000 in EPD on or about September 28, 2007 as YOU contend in YOUR initial disclosures.

**RESPONSE:**

Objection; the term "deposit" is not defined and Defendant is unable to admit or deny the request.

**SUPPLEMENTAL RESPONSE:**

Propounding Party has refused to define what he means by "deposit in EPD." The Merriam-Webster Dictionary defines the transitive verb "deposit" as "to place especially for safekeeping or as a pledge • depositing her tools in the trunk of the car; especially, economics : to put in a bank • having your paycheck automatically deposited into your bank account." Responding Party's response to this request is based on that definition.

The Responding Party makes no contention in Responding Party's initial disclosures that Responding Party "deposit[ed] $400,000 in EPD." Accordingly, this request is denied.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU did not transfer $400,000 to either of the DEBTORS on or about September 28, 2007 as YOU contend in YOUR initial disclosures.

**RESPONSE:**

Objection; the term "transfer" is not defined and Defendant is unable to admit or deny the request.

**SUPPLEMENTAL RESPONSE:**

Based on the Propounding Party's representation that the term "transfer" means the defined term "TRANSER," this request is denied.

**REQUEST FOR ADMISSION NO. 17:**

Admit that KIRKLAND did not deposit $400,000 in EPD on or about September 28, 2007 as YOU contend in YOUR initial disclosures.

**RESPONSE:**

Objection; the term "deposit" is not defined and Defendant is unable to admit or deny the request.

**SUPPLEMENTAL RESPONSE:**

Propounding Party has refused to define what he means by "deposit in EPD." The Merriam-Webster Dictionary defines the transitive verb "deposit" as "to place especially for

safekeeping or as a pledge • depositing her tools in the trunk of the car; especially, economics : to put in a bank • having your paycheck automatically deposited into your bank account." Responding Party's response to this request is based on that definition.

The Responding Party makes no contention in Responding Party's initial disclosures that Mr. Kirkland "deposit[ed] $400,000 in EPD." Accordingly, this request is denied.

**REQUEST FOR ADMISSION NO. 18:**

Admit that KIRKLAND did not transfer $400,000 to either of the DEBTORS on or about September 28, 2007 as YOU contend in YOUR initial disclosures.

**RESPONSE:**

Objection; the term "transfer" is not defined and Defendant is unable to admit or deny the request.

**SUPPLEMENTAL RESPONSE:**

Based on the Propounding Party's representation that the term "transfer" means the defined term "TRANSER," this request is denied.

**REQUEST FOR ADMISSION NO. 19:**

Admit that YOU did not deposit $150,000 in EPD on or about March 27, 2008 as YOU contend in YOUR initial disclosures.

**RESPONSE:**

Objection; the term "deposit" is not defined and Defendant is unable to admit or deny the request.

**SUPPLEMENTAL RESPONSE:**

Propounding Party has refused to define what he means by "deposit in EPD." The Merriam-Webster Dictionary defines the transitive verb "deposit" as "to place especially for safekeeping or as a pledge • depositing her tools in the trunk of the car; especially, economics : to put in a bank • having your paycheck automatically deposited into your bank account." Responding Party's response to this request is based on that definition.

The Responding Party makes no contention in Responding Party's initial disclosures that Responding Party "deposit[ed] $150,000 in EPD." Accordingly, this request is denied.

**REQUEST FOR ADMISSION NO. 20:**

Admit that YOU did not transfer $150,000 to either of the DEBTORS on or about March 27, 2008 as YOU contend in YOUR initial disclosures.

**RESPONSE:**

Objection; the term "transfer" is not defined and Defendant is unable to admit or deny the request.

**SUPPLEMENTAL RESPONSE:**

Based on the Propounding Party's representation that the term "transfer" means the defined term "TRANSER," this request is denied.

**REQUEST FOR ADMISSION NO. 21:**

Admit that KIRKLAND did not deposit $150,000 in EPD on or about March 27, 2008 as YOU contend in YOUR initial disclosures.

**RESPONSE:**

Objection; the term "deposit" is not defined and Defendant is unable to admit or deny the request.

**SUPPLEMENTAL RESPONSE:**

Propounding Party has refused to define what he means by "deposit in EPD." The Merriam-Webster Dictionary defines the transitive verb "deposit" as "to place especially for safekeeping or as a pledge • depositing her tools in the trunk of the car; especially, economics : to put in a bank • having your paycheck automatically deposited into your bank account." Responding Party's response to this request is based on that definition.

The Responding Party makes no contention in Responding Party's initial disclosures that Mr. Kirkland "deposit[ed] $150,000 in EPD." Accordingly, this request is denied.

**REQUEST FOR ADMISSION NO. 22:**

Admit that KIRKLAND did not transfer $150,000 to either of the DEBTORS on or about March 27, 2008 as YOU contend in YOUR initial disclosures.

**RESPONSE:**

Objection; the term "transfer" is not defined and Defendant is unable to admit or deny the request.

**SUPPLEMENTAL RESPONSE:**

Based on the Propounding Party's representation that the term "transfer" means the defined term "TRANSER," this request is denied.

**REQUEST FOR ADMISSION NO. 75:**

Admit that KIRKLAND did not check on the collectability of his investments in EPD.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request for admission is denied based on the objection.

**SUPPLEMENTAL RESPONSE:**

This request is compound and conjunctive in that it refers to multiple investments without specifying them, or distinguishing them from the loans referenced in the next request, and ambiguous in that it does not explain why or how Mr. Kirkland was expected to check to determine whether they were capable of being collected. In addition, because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 76:**

Admit that KIRKLAND did not check on the collectability of his loans to EPD.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request for admission is denied based on the objection.

**SUPPLEMENTAL RESPONSE:**

This request is compound and conjunctive in that it refers to multiple loans without specifying them, or distinguishing them from the investments referenced in the prior request, and ambiguous in that it does not explain why or how Mr. Kirkland was expected to check to determine whether they were capable of being collected. In addition, because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 81:**

Admit that YOU designated KIRKLAND as the person most qualified to testify for the BC TRUST at the Rule 2004 Examination of KIRKLAND that took place on May 27, 2011 in the BANKRUPTCY CASE.

**RESPONSE:**

The Defendant has made a good faith investigation of all sources available to her and responds that she is unable to admit or deny the request.

**SUPPLEMENTAL RESPONSE:**

Responding Party has no recollection of designating Mr. Kirkland as the person most qualified to testify for the Bright Conscience Trust, and has located no such designation. On this basis, the request is denied.

**REQUEST FOR ADMISSION NO. 82:**

Admit that KIRKLAND is the person most qualified to testify on behalf of the BC TRUST as to any substantive issues.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, KIRKLAND maybe most qualified as to some issues, but denied that Kirkland is most qualified as to any possible issues.

**SUPPLEMENTAL RESPONSE:**

Responding Party has not identified any substantive issues with regard to which the trust is being asked to testify. On this basis, the request is denied.

**REQUEST FOR ADMISSION NO. 83:**

Admit that KIRKLAND is the person most qualified to testify on behalf of the BC TRUST as to PROOF OF CLAIM 171.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, KIRKLAND maybe most qualified as to some issues, but denied that Kirkland is most qualified as to any possible issues.

**SUPPLEMENTAL RESPONSE:**

Responding Party has not identified any substantive issues with regard to which the trust is being asked to testify. On this basis, the request is denied.

**REQUEST FOR ADMISSION NO. 84:**

Admit that KIRKLAND is the person most qualified to testify on behalf of the BC TRUST as to PROOF OF CLAIM 235.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, KIRKLAND maybe most qualified as to some issues, but denied that Kirkland is most qualified as to any possible issues.

**SUPPLEMENTAL RESPONSE:**

Responding Party has not identified any substantive issues with regard to which the trust is being asked to testify. On this basis, the request is denied.

**REQUEST FOR ADMISSION NO. 85:**

Admit that KIRKLAND is the person most qualified to testify on behalf of the BC TRUST as to PROOF OF CLAIM 236.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, KIRKLAND maybe most qualified as to some issues, but denied that Kirkland is most qualified as to any possible issues.

**SUPPLEMENTAL RESPONSE:**

Responding Party has not identified any substantive issues with regard to which the trust is being asked to testify. On this basis, the request is denied.

**REQUEST FOR ADMISSION NO. 86:**

Admit that KIRKLAND is the person most qualified to testify on behalf of the BC TRUST as to PROOF OF CLAIM 13.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, KIRKLAND maybe most qualified as to some issues, but denied that Kirkland is most qualified as to any possible issues.

**SUPPLEMENTAL RESPONSE:**

Responding Party has not identified any substantive issues with regard to which the trust is being asked to testify. On this basis, the request is denied.

**REQUEST FOR ADMISSION NO. 87:**

Admit that KIRKLAND was an attorney for the DEBTORS between EPD's formation in 2003 and the PETITION DATE.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding

Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 88:**

Admit that KIRKLAND was an attorney for the DEBTORS at the time of his investments in EPD.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 89:**

Admit that KIRKLAND was an attorney for the DEBTORS at the time of his loans to EPD.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 90:**

Admit that KIRKLAND was an attorney for the DEBTORS at the time the PROOFS OF

CLAIM were filed.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 91:**

Admit that KIRKLAND was an attorney for the DEBTORS at the time the ASSIGNMENT was signed.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 92:**

Admit that KIRKLAND was an attorney for the DEBTORS at the time the BANKRUPTCY CASE was filed.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is admitted as to EPD and denied as to Pressman.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is admitted as to EPD and denied as to Pressman.

**REQUEST FOR ADMISSION NO. 96:**

Admit that KIRKLAND was an attorney for the DEBTORS during 2009.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 99:**

Admit that KIRKLAND was an attorney for the DEBTORS during 2010.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding

Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 102:**

Admit that KIRKLAND was an attorney for the DEBTORS during 2011.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 114:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2003.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 115:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2004.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 116:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2005.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 117:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2006.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 118:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2007.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 119:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2008.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding

Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 120:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2009.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 121:**

Admit that YOU had reason to know that the DEBTORS were insolvent at all points throughout 2010.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 122:**

Admit that KIRKLAND had reason to know that the DEBTORS were insolvent at all points throughout 2003.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 123:**

Admit that KIRKLAND had reason to know that the DEBTORS were insolvent at all points throughout 2004.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 124:**

Admit that KIRKLAND had reason to know that the DEBTORS were insolvent at all points throughout 2005.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 125:**

Admit that KIRKLAND had reason to know that the DEBTORS were insolvent at all points throughout 2006.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 126:**

Admit that KIRKLAND had reason to know that the DEBTORS were insolvent at all points throughout 2007.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 127:**

Admit that KIRKLAND had reason to know that the DEBTORS were insolvent at all points throughout 2008.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 128:**

Admit that KIRKLAND had reason to know that the DEBTORS were insolvent at all points throughout 2009.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 129:**

Admit that KIRKLAND had reason to know that the DEBTORS were insolvent at all points throughout 2010.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 130:**

Admit that the DEBTORS were engaged in business transactions with unreasonably small capital at all points throughout 2003.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 131:**

Admit that the DEBTORS were engaged in business transactions with unreasonably small capital at all points throughout 2004.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 132:**

Admit that the DEBTORS were engaged in business transactions with unreasonably small capital at all points throughout 2005.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 133:**

Admit that the DEBTORS were engaged in business transactions with unreasonably small capital at all points throughout 2006.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 134:**

Admit that the DEBTORS were engaged in business transactions with unreasonably small capital at all points throughout 2007.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 135:**

Admit that the DEBTORS were engaged in business transactions with unreasonably small capital at all points throughout 2008.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 136:**

Admit that the DEBTORS were engaged in business transactions with unreasonably small capital at all points throughout 2009.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 137:**

Admit that the DEBTORS were engaged in business transactions with unreasonably small capital at all points throughout 2010.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 138:**

Admit that the DEBTORS' liabilities exceeded their assets at all points throughout 2003.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 139:**

Admit that the DEBTORS' liabilities exceeded their assets at all points throughout 2004.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 140:**

Admit that the DEBTORS' liabilities exceeded their assets at all points throughout 2005.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding

Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 141:**

Admit that the DEBTORS' liabilities exceeded their assets at all points throughout 2006.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 142:**

Admit that the DEBTORS' liabilities exceeded their assets at all points throughout 2007.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 143:**

Admit that the DEBTORS' liabilities exceeded their assets at all points throughout 2008.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

**REQUEST FOR ADMISSION NO. 144:**

Admit that the DEBTORS' liabilities exceeded their assets at all points throughout 2009.

**RESPONSE:**

Objection. The request for admission contains unintelligible, ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, the request is denied.

**SUPPLEMENTAL RESPONSE:**

Because the request asks about a person other than the Responding Party, Responding Party can only respond based on information and belief. Responding Party states that Responding Party has made reasonable inquiry and that based on the information Responding Party knows or can readily obtain, this request is denied.

DATED: April 21, 2017

**EXECUTED AS TO THE OBJECTIONS BY**
**Lewis R. Landau**
**Attorney-at-Law**

By: */s/ Lewis R. Landau*
Lewis R. Landau
Attorney for Defendant
Poshow Ann Kirkland, solely as Trustee
of the Bright Conscience Trust
Dated September 9, 2009

**VERIFICATION**

I have read the foregoing SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSIONS, and know its contents.

I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 19, 2017.

Boshow Ann Kirkland, solely as Trustee
of the Bright Conscience Trust Dated
September 9, 2009

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

22287 Mulholland Hwy., # 318
Calabasas, CA 91302

A true and correct copy of the foregoing document entitled (*specify*): Privilege Log
Poshow Ann Kirkland, Trustee, Supplemental Responses to Requests for Admissions (set # 1)
John C. Kirkland, Supplemental Responses to Requests for Admissions (set # 1)
John C. Kirkland, Supplemental Responses to Requests for Production of Documents (set # 1)
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ______________, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2. SERVED BY UNITED STATES MAIL:
On (*date*) 04/21/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Corey Weber or Michael Davis
Brutzkus Gubner Rozansky Seror Weber LLP
21650 Oxnard St., Suite 500
Woodland Hills, California, 91367

☐ Service information continued on attached page

3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ______________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/21/2017 | Lewis R. Landau | /s/ Lewis R. Landau |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 23

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| EPD INVESTMENT COMPANY, LLC, | ) | CASE NO. 2:10-BK-62208-ER |
| EIN NO. XXX-0994 | ) | |

RULE 2004 EXAMINATION OF JOHN KIRKLAND

TAKEN ON

MAY 27, 2011

REPORTED BY LORI M. BARKLEY, C.S.R. NO. 6426

RULE 2004 EXAMINATION OF JOHN KIRKLAND, TAKEN ON BEHALF OF THE CHAPTER 7 TRUSTEE, AT 21650 OXNARD BOULEVARD, SUITE 500, WOODLAND HILLS, CALIFORNIA, AT 10:15 A.M., FRIDAY, MAY 27, 2011, BEFORE LORI M. BARKLEY, C.S.R. NO. 6426.

APPEARANCES OF COUNSEL:

SPECIAL LITIGATION COUNSEL FOR JASON M. RUND, CHAPTER 7 TRUSTEE:

EZRA, BRUTZKUS, GUBNER, LLP
BY: COREY R. WEBER, ESQ.
- AND -
MICHAEL DAVIS, ESQ.
- AND -
LARRY GABRIEL, ESQ.
21650 OXNARD BOULEVARD
SUITE 500
WOODLAND HILLS, CALIFORNIA 91367
818.827.9000
CWEBER@EBG-LAW.COM

APPEARANCES (CONTINUED)

LUCE, FORWARD, HAMILTON & SCRIPPS
BY: JOHN A. MOE, ESQ.
601 S. FIGUEROA STREET
SUITE 3900
LOS ANGELES, CALIFORNIA 90017
213.892.4992
JMOE@LUCE.COM

GENERAL COUNSEL FOR JASON M. RUND, CHAPTER 7 TRUSTEE:

DANNING, GILL, DIAMOND, & KOLLITZ
BY: ROBERT A. HESSLING, ESQ.
2029 CENTURY PARK EAST
SUITE 1900
LOS ANGELES, CALIFORNIA 90067-1005
310.277.0077

APPEARANCES (CONTINUED)

FOR THE DEPONENT:

SULMEYER KUPETZ
BY: VICTOR A. SAHN, ESQ.
333 SOUTH HOPE STREET
35TH FLOOR
LOS ANGELES, CALIFORNIA 90071
213.626.2311

ALSO PRESENT: JASON RUND; PAUL SLOAN

Scripps.

MR. SAHN: Victor Sahn, Sulmeyer Kupetz, counsel for the witness.

MR. WEBER: I'd like to mark as exhibit number 1 a Rule 2004 Motion that was filed on this case. And I apologize, on this one, we only have a few of the copies because they're so large, but it's the document that was filed in the bankruptcy case.

(Whereupon Exhibit 1 was marked for identification and is attached hereto.)

BY MR. WEBER:

**Q.** Mr. Kirkland, have you seen this document before?

**A.** Yes.

**Q.** And are you here as a result of the Motion For Rule 2004 examination?

**A.** Apparently so.

**Q.** And in the Motion For Rule 2004 examination, you were requested as a witness or an examinee in your individual capacity or as counsel for the debtor; there's also a request for the Bright Conscience Trust, person most knowledgeable of that entity, to appear on a later date. Are you here today on behalf of that entity

as well?
**A.** Yes.
**Q.** And your counsel, Mr. Sahn, does he represent you individually here today?
**A.** Yes.
**Q.** And does he also represent you as former counsel for the debtor?
**A.** I have no idea what that means.
**Q.** It says he represents you in your capacity as person most qualified for the Bright Conscience Trust.
**A.** I would assume so.
**Q.** Mr. Kirkland, are you a practicing attorney?
**A.** I guess, yes.
**Q.** What do you mean by "I guess"?
**A.** Well, I switched from being a lawyer to being on -- on the investment side, but I remain of counsel to Luce, Forward so I guess still am, at least in that capacity, a practicing attorney.
**Q.** Are you licensed with the State Bar of California?
**A.** Yes.
**Q.** What year did you become a California attorney?
**A.** 1990.
**Q.** And you're still in good standing?
**A.** Yes.

# EXHIBIT 24

**Lewis R. Landau** (SBN 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888) 822-4340
*Email: Lew@Landaunet.com*

Attorney for Defendants,
John C. Kirkland, individually and
Poshow Ann Kirkland, solely as Trustee
of the Bright Conscience Trust
Dated September 9, 2009

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD Investment Company, LLC and Jerrold S. Pressman,<br><br>Debtors. | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-02424-ER |
| Jason M. Rund, Chapter 7 Trustee,<br><br>Plaintiff,<br>v.<br><br>John C. Kirkland, an individual and Poshow Ann Kirkland, solely as Trustee of the Bright Conscience Trust Dated September 9, 2009,<br><br>Defendants. | **SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSIONS**<br><br>**PROPOUNDING PARTY**:<br>Jason M. Rund, Chapter 7 Trustee<br><br>**RESPONDING PARTY**:<br>Poshow Ann Kirkland, solely as Trustee of the Bright Conscience Trust Dated September 9, 2009<br><br>**SET NO.**: One |

**PRELIMINARY STATEMENT**

The Responding Party's responses to the Propounding Party's Requests for Admission are made solely for the purpose of and with respect to the above-referenced adversary proceeding. These responses shall not constitute a waiver of any objections which may be asserted during the course of this adversary proceeding, litigation and/or trial with respect to the competency, relevancy, materiality, propriety and admissibility of any document or any evidence. Responses to these Requests for Admissions are being made after reasonable search and investigation by the Responding Party. However, investigation and discovery are continuing and, in the course thereof, the Responding Party may discover further information. Upon discovery of further information, the Responding Party will supplement its response. The Responding Party therefore reserves the right to rely on or use such information so discovered through future discovery or at trial.

**GENERAL OBJECTIONS TO EACH AND EVERY REQUEST FOR ADMISSION**

1. The Responding Party objects to each and every request for admission to the extent that it is overbroad, burdensome, oppressive, irrelevant, not calculated to lead to the discovery of admissible evidence, an invasion of the Responding Party's attorney-client privilege and attorney work product privilege, and/or other improper requests to disclose privileged or confidential information.

2. The Responding Party further objects to each and every request for admission to the extent that the burden of producing the information requested outweighs its apparent value to the matters and issues before this Court.

3. The Responding Party further objects to each and every request for admission which requests public information that is readily available to the Propounding Party, such as public court records.

4. The Responding Party further objects to each and every request for admission as not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

**SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSIONS**

**REQUEST FOR ADMISSION NO. 83:**

Admit that KIRKLAND is the person most qualified to testify on behalf of the BC TRUST as to PROOF OF CLAIM 171.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, KIRKLAND maybe most qualified as to some issues, but denied that Kirkland is most qualified as to any possible issues.

**SUPPLEMENTAL RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 84:**

Admit that KIRKLAND is the person most qualified to testify on behalf of the BC TRUST as to PROOF OF CLAIM 235.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, KIRKLAND maybe most qualified as to some issues, but denied that Kirkland is most qualified as to any possible issues.

**SUPPLEMENTAL RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 85:**

Admit that KIRKLAND is the person most qualified to testify on behalf of the BC TRUST as to PROOF OF CLAIM 236.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, KIRKLAND maybe most qualified as to some issues, but denied that Kirkland is most qualified as to any possible issues.

**SUPPLEMENTAL RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 86:**

Admit that KIRKLAND is the person most qualified to testify on behalf of the BC TRUST as to PROOF OF CLAIM 13.

**RESPONSE:**

Objection. The request for admission contains ambiguous, compound, conjunctive, or disjunctive statements. Subject to this objection and the general objections stated above, and based on information and belief, KIRKLAND maybe most qualified as to some issues, but denied that Kirkland is most qualified as to any possible issues.

**SUPPLEMENTAL RESPONSE:**

Admit.

DATED: May 23, 2017

**EXECUTED AS TO THE OBJECTIONS BY**
**Lewis R. Landau**
**Attorney-at-Law**

By: */s/ Lewis R. Landau*
Lewis R. Landau
Attorney for Defendant
Poshow Ann Kirkland, solely as Trustee
of the Bright Conscience Trust
Dated September 9, 2009

**VERIFICATION**

I have read the foregoing AMENDED RESPONSES TO REQUESTS FOR ADMISSION, and know its contents.

I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 23, 2017.

Poshow Ann Kirkland, solely as Trustee
of the Bright Conscience Trust
Dated September 9, 2009

# EXHIBIT 25

CERTIFIED COPY

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

- - -

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC,<br>JERROLD S. PRESSMAN,<br><br>Debtors. | Case No.<br>2:10-bk-62208-ER<br><br>Chapter 7<br><br>Adv. No.<br>2:12-ap-02424-ER |
| JASON M. RUND, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND, as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,<br><br>Defendants. | |

Deposition of THEODORE P. JONAVIC

June 30, 2017

Cynthia K. DuRivage, CSR No. 451.
425499

SINCE 1972

BARKLEY Court Reporters
barkley.com

(310) 207-8000 Los Angeles
(310) 207-8000 Century City
(916) 922-5777 Sacramento
(951) 686-0606 Riverside
(212) 808-8500 New York City
(312) 379-5566 Chicago
(415) 433-5777 San Francisco
(408) 885-0550 San Jose
(800) 222-1231 Martinez
(818) 702-0202 Woodland Hills
(347) 821-4611 Brooklyn
00+1+800 222 1231 Paris
(949) 955-0400 Irvine
(760) 322-2240 Palm Springs
(702) 366-0500 Las Vegas
(702) 366-0500 Henderson
(518) 490-1910 Albany
00+1+800 222 1231 Dubai
(858) 455-5444 San Diego
(800) 222-1231 Carlsbad
(800) 222-1231 Monterey
(516) 277-9494 Garden City
(914) 510-9110 White Plains
001+1+800 222 1231 Hong Kong

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

- - -

| | |
|---|---|
| In re | ) Case No. ) 2:10-bk-62208-ER |
| EPD INVESTMENT COMPANY, LLC, JERROLD S. PRESSMAN, | ) Chapter 7 |
| Debtors. | ) Adv. No. ) 2:12-ap-02424-ER |
| JASON M. RUND, CHAPTER 7 TRUSTEE, | ) |
| Plaintiff, | ) |
| vs. | ) |
| JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND, as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009, | ) |
| Defendants. | ) |

Deposition of THEODORE P. JONAVIC, taken on behalf of Jason M. Rund, Chapter 7 Trustee, at 1522 West Warm Springs Road, Henderson, Nevada, commencing at 1:12 p.m., Friday, June 30, 2017, before Cynthia K. DuRivage, CSR No. 451.



BARKLEY Court Reporters

A P P E A R A N C E S

FOR JASON M. RUND, CHAPTER 7 TRUSTEE:

BRUTZKUS GUBNER
BY: COREY R. WEBER, ESQ.
21650 Oxnard Street
Suite 500
Woodland Hills, California 91367
(818) 827-9000
cweber@bglaw.com

FOR POSHOW ANN KIRKLAND, IN HER CAPACITY AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009:

LEWIS R. LANDAU, ESQ.
(Of Record but Not Present)
22287 Mulholland Highway
Suite 318
Calabasas, California 91302
lew@landaunet.com

* * * * *

Q. Is there anyone else you can think of at EPD who would have done that?
A. Not really.
Q. Other than the spread that you mentioned earlier in regard to the equipment leasing, can you think of any other benefit that EPD would receive through orchestrating or arranging the equipment leases?
A. No. Not really, no.
Q. Was the equipment leasing a big part of EPD's business?
A. "Big" is a relative term.
Q. Material.
A. Material. I'd say it was material, yes.
Q. Material is an accounting term; is that right?
A. Material is an accounting term.
Q. What do you take material to means in terms of accounting jargon?
A. In terms of accounting jargon, it's probably something that represents either 30 or 40 percent of an entity's activities.
Q. So your understanding is that equipment leasing would have comprised at least 30 percent of EPD's business activities from 2003 forward?

A. I believe that's a fair statement.
Q. Now, since EPD was not a lessor or a lessee under the leases, did it record any income from the equipment leases?
A. No.
Q. So EPD never recorded income from equipment leasing?
A. Not from equipment leasing.
Q. How about from the money coming in from investors to purchase the equipment?
A. Not as income, no.
Q. How did EPD record the lease transactions on its books?
A. It didn't really record lease transactions. It would record the money coming in from investors as a liability to that investor.
Q. And that's it?
A. That's it.
MR. WEBER: Why don't we introduce Exhibit 4.
(Exhibit 4 was marked for identification by the reporter.)
BY MR. WEBER:
Q. Mr. Jonavic, have you seen this document before?

A. Yes, I have.
Q. And what is it?
A. It is a partnership tax return for EPD Investments, LLC.
Q. Was this the first tax return that was filed by EPD --
A. Yes, it is.
Q. -- as a limited liability company?
A. Yes, it is.
Q. And you prepared it?
A. Yes, I did.
Q. Now, it says that EPD had in terms of assets on the first page $22,334,669 in assets; is that right?
A. That's what it says.
Q. Do you know what that was comprised of?
A. Notes receivable.
Q. Do you know from whom?
A. Just looking at this tax return, I don't really know for sure.
Q. Other than notes receivable, can you think of any other assets that EPD would have had in 2003?
A. No.
Q. Do you know if a large portion of the notes receivable would have been from Jerrold Pressman as

A. At that time, it was my understanding that EPD and prior to the creation of the LLC, Mr. Jerrold Pressman personally guaranteed the leases, so that in order for him to make sure that his investors were taken care of, he would advance the lease payment.

And so, he chose to deduct it on his tax return even though I would try and tell him that's perhaps not a correct accounting. It should actually go on the balance sheet as an asset.

So if you take that from what I explained, it would reduce the negative by almost a million dollars so that the negative shown on line 21, page 4 of the balance sheet would actually become an asset and not a negative equity.

Q. But how would anything relating to a deduction for the equipment be allowed on EPD's balance sheet as a limited liability company?

A. Because the money advanced by EPD in order to satisfy the personal guarantees would represent what the leasing entity actually owed to EPD as a receivable, and it would be that receivable which would eventually be converted into an ownership position for Mr. Pressman of that particular leasing entity.

Q. So are you saying that EPD did not show


BARKLEY Court Reporters

equipment leasing on its balance sheet?
A. That is correct.
Q. So it showed it as a deduction on a supplemental form --
A. Right.
Q. -- but not on the balance sheet?
A. That is correct.
Q. And do you know what equipment was subject to this deduction on the supplemental form for $971,779?
A. I do not know. It could be anything that apparently they could be able to lease or arrange leases for.
Q. Other than that entry, is there anything else that would impact the balance sheet that's on page 4 of the tax return?
A. To me, that would be the only item of significance.
Q. And if you were to add the roughly 971,000 onto the asset side of the balance sheet on page 4, would the liabilities still be greater than the assets?
A. By a measure, yes, they would.
Q. And there was a negative capital account listed on the balance sheet of negative $1,191,312;

interest payments to investors?
A. That's my understanding that's what they are.
Q. And then, deductions of about 1.2 million?
A. Correct, and that's what is in the supplemental schedule.
Q. And the deductions are on the second-to-last page of the tax return?
A. That is correct.
Q. And so, it looks like, by far, the largest portion of that was equipment rent for $971,779; is that right?
A. That is correct.
MR. WEBER: I'd like to introduce Exhibit 5.
(Exhibit 5 was marked for identification by the reporter.)
BY MR. WEBER:
Q. Have you seen this document before?
A. Yes, I have.
Q. And this is EPD's tax return for 2004?
A. That is correct.
Q. And did you prepare it?
A. Yes, I did.
Q. As to Exhibits 4 and now 5, did you file

(Exhibit 6 was marked for
identification by the reporter.)

MR. WEBER: I'd like to introduce Exhibit 7.

(Exhibit 7 was marked for
identification by the reporter.)

MR. WEBER: For the record, this also appears to be a 2004 tax return, but it appears to have been separately Bates-stamped.

BY MR. WEBER:

Q. I was wondering if you know if there was any difference versus the last one we looked at?

A. No, it doesn't look like there's any difference.

Q. It appears to be the same document?

A. It appears to be the same, yes.

MR. WEBER: I'd like to introduce Exhibit 8.

(Exhibit 8 was marked for
identification by the reporter.)

BY MR. WEBER:

Q. Have you seen this document before?

A. Yes, I have.

Q. And what is this document?

A. This is a 2005 partnership tax return for

EPD Investments, LLC.
Q. And did you prepare it?
A. Yes, I did.
Q. You filed it with the IRS?
A. Yes.
Q. This year, it lists assets of $43,817,222; is that right?
A. $43,817,222, correct.
Q. Do you know how much in liabilities EPD had for 2005?
A. It showed 31,510,905. And apparently 17,209,754.
Q. So it's that combination of those two numbers?
A. It would be a combination.
Q. So it would be approximately just less than 49 million?
A. Just less than 49 million, that is correct.
Q. In liabilities.
And what comprised EPD's assets during 2005?
A. The bulk was notes receivable, 34,728,818, and other investments of 8,213,477.
Q. Do you know who the notes receivable were from?

statement, it's possible there.
MR. WEBER: Let's introduce Exhibit 9.
(Exhibit 9 was marked for identification by the reporter.)
BY MR. WEBER:
Q. And this also appears to be a 2005 tax return for EPD, but it has a different Bates number on it, so I just wanted to check with you to see if there is any difference between the two.
A. There's no apparent difference that I can see.
Q. Just another copy of the same tax return with different Bates numbers on it?
A. That's what it appears to be.
MR. WEBER: Let's introduce Exhibit 10.
(Exhibit 10 was marked for identification by the reporter.)
BY MR. WEBER:
Q. Have you seen this document before?
A. Yes, I have.
Q. Is this EPD's tax return for 2006?
A. Yes, it looks that way.
Q. And did you prepare it?
A. Yes, I did.
Q. And you filed it with the IRS?

detailed general ledger.
Q. How about the summary forms of income statements?
A. If it was disclosed on the income statement, I would see it there.
Q. Do you recall seeing it?
A. Off the top of my head, no.
Q. I'd like to introduce Exhibit 11.
I'm sorry. Before we go on to Exhibit 11, in terms of Exhibit 10, 2006, do you know what made up EPD's assets that year?
A. It appears to be notes receivable. And these other investments.
Q. Do you know what any of that is comprised of?
A. Just from looking at the tax return, I can't tell.
Q. Do you know if any of it was collectible?
A. I have no idea.
MR. WEBER: I'd like to introduce Exhibit 11.
(Exhibit 11 was marked for identification by the reporter.)
BY MR. WEBER:
Q. For the record, this also appears to be a

2006 tax return for EPD but with different Bates numbering.
Do you know if there is any difference with Exhibit 10 that we just looked at?
A. No. They both look the same to me.
Q. Just a duplicate with different Bates numbering?
A. Just a different exhibit, duplicate.
MR. WEBER: I'd like to introduce Exhibit 12.
(Exhibit 12 was marked for identification by the reporter.)
BY MR. WEBER:
Q. Have you seen this document before?
A. Yes, I have.
Q. And did you prepare it?
A. Yes, I did.
Q. This is EPD's tax return for 2007?
A. That's correct.
Q. And you filed this with the IRS?
A. Yes, I did.
Q. For 2007, EPD's assets were $26,678,448; is that correct?
A. That's what the tax return shows.
Q. And what does the tax return show as

the negative equity approximately $8 million and not $20 million.

Q. If you were to account for that way?

A. If you were to account for it that way.

Q. Which EPD didn't?

A. Which EPD didn't.

Q. And that's assuming that the assets are collectible listed on the balance sheet; is that right?

A. That's assuming assets are collectible.

Q. And that would also be assuming that the lease payments are collectible?

A. Due from the -- when you said lease payments?

Q. The ones that you wanted to add on to the asset side of the balance sheet.

A. Assume they are collectible.

MR. WEBER: I'd like to introduce Exhibit 13.

(Exhibit 13 was marked for identification by the reporter.)

(There was a recess taken.)

BY MR. WEBER:

Q. Mr. Jonavic, have you seen Exhibit 13 before?

A. Yes, I have.
Q. Is this EPD's tax return for 2008?
A. Yes, it is.
Q. And did you prepare it?
A. Yes, I did.
Q. And did you file it with the IRS?
A. Yes.
Q. So this lists EPD having assets of $28,573,326?
A. That's what it shows.
Q. And do you know what that's comprised of?
A. Primarily the other assets, which are the -- back on the schedule consisting of the goodwill and notes receivable.
Q. And so, at the end of the year, that amount is comprised of a little over $20 million in notes receivable and a little over $8 million in goodwill?
A. That is correct.
Q. And again, can you think of any reason why EPD would have $8 million in goodwill?
A. Not off the top of my head, I don't recall.
Q. And do you know who owed the money that's referenced in the notes receivable?
A. Just from looking at the tax return, I do not know.

should have been placed as an asset on the balance sheet; is that right?

A. That is my position.

Q. That wasn't EPD's position, right?

A. That was not EPD's position.

Q. So if it was taken into account on the balance sheet, what impact would that have on the balance sheet for 2008?

A. It would probably raise the assets by about 13 million, which would make that around 41, 42 million, changing the negative net worth from 21 million down to about 8 million.

Q. So even if you were to add in the lease payments as an asset, the liabilities would still dramatically exceed the assets?

A. That is correct.

Q. And the balance sheet that's actually on the tax return where the liabilities exceeded the assets by about 20 million, that was based on information provided to you by EPD?

A. That is correct.

Q. And that's the way EPD accounted for it?

A. That's correct.

Q. And EPD received a little over $3 million in gross receipts for 2008?


BARKLEY Court Reporters

Exhibit 16.
(Exhibit 16 was marked for identification by the reporter.)
BY MR. WEBER:
Q. This appears to be another multiple advance promissory note for money owed by SC Club, L.P., this time to Jerrold S. Pressman for $8 million in January 9th, 2006.
Do you see that?
A. I do see that.
Q. Do you know if SC Club was borrowing money from Jerrold Pressman?
A. Off the top of my head, no, I really don't.
Q. Do you know if Jerrold Pressman owed EPD a significant sum of money during this time period?
A. I'm not really sure. I don't really know.
Q. Did you also prepare the tax returns for SC Club, L.P. and Broadway Entertainment?
A. Yes, I did.
Q. Do you recall if they had more liabilities than assets?
A. Without looking at the tax return, I don't recall.
MR. WEBER: I'd like to introduce Exhibit 17.

(Exhibit 17 was marked for
identification by the reporter.)
BY MR. WEBER:
Q. Do you recognize this document?
A. Yes, I do.
Q. Is this SC Club, L.P.'s tax return for 2007?
A. That's what it appears to be, yes.
Q. Did you prepare it?
A. Yes, I did.
Q. Did you file it?
A. Looks like it was filed.
Q. And that's your signature, isn't it?
A. That's my signature, yes.
Q. Now, in 2007, did SC Club, L.P. have total assets of just over $6.4 million?
A. That is what the balance sheet reflects, yes.
Q. And how much in liabilities did it have?
A. Well, it had notes payable of 18,586,699, short-term notes of 560,139, and 122,752 in payables.
Q. So it had just under $20 million in liabilities; is that right?
A. Just over 19 million, yeah. Yes.
Q. So the liabilities dramatically exceeded

the assets; is that right?
A. That is correct.
Q. Can you tell from this tax return how much SC Club owed EPD at this point?
A. From this tax return, I can't really tell.
In looking further at the tax return, it appeared that the 18,586,699 on line 19 of page 4 of the tax return in column D is supported by a supplemental schedule found in the back.
Q. I'm sorry. Which number?
A. The 18,586,699 on line 19 of column D at page 4 of the tax return.
Q. That's mortgages, notes, and bonds?
A. Correct.
Q. Okay.
A. And it shows that there's a supplemental schedule for that, and it shows that at that time, 14,869,359 was owed to Mr. Pressman personally.
Q. What page are you looking at?
A. Oh, gosh. One, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty pages back.
It looks like this.
Q. Let me make sure I'm on the right page.

accrual basis taxpayer. So I don't know if it was just accrued or it actually represents cash. I can't tell.

Q. So if that amount was actually paid to EPD to reimburse for lease expenses that EPD paid, that would show on EPD's tax return, wouldn't it?

A. I would assume so.

Q. Looking back at EPD's tax returns, do you see any entry that suggests that that amount or any subset of it was repaid to EPD?

A. Just from looking at the tax return, I can't tell.

Q. Nothing that you can see would show that that amount or any subset was paid to EPD?

A. Correct. I can't tell.

Q. So for 2007, SC Club, L.P. had substantially more liabilities than assets; is that right?

A. Yes.

Q. And it had a negative capital account?

A. That's correct.

MR. WEBER: I'd like to introduce Exhibit 18.

(Exhibit 18 was marked for identification by the reporter.)

BY MR. WEBER:
Q. Before we look at 18, looking back at Exhibit 17, the 2007 SC Club, L.P. tax return, the figures in there were based on the information and data given to you by SC Club, L.P.?
A. Through Mr. Moreno.
Q. Ruben Moreno?
A. Correct.
Q. And also Jerrold Pressman?
A. Correct.
Q. And that's the way SC Club accounted for their balance sheet and income and expenses, everything that you included on the return?
A. That's my understanding, correct.
Q. Turning to 18, have you seen this document before?
A. Yes.
Q. And is this SC Club, L.P.'s tax return for 2008?
A. Yes, it is.
Q. Did you prepare it?
A. Yes, I did.
Q. Did you file it with the IRS?
A. I would assume so.
Q. That's your signature on it?

A. That's my signature, but that doesn't necessarily mean it was filed.
Q. Now, this lists assets for SC Club, L.P. of just over $5 million for 2008; is that right?
A. That is correct.
Q. And how much in liabilities did SC Club, L.P. have in 2008?
A. Long-term liabilities showed 17,075,579. Short-term liabilities of 569,160, and accounts payable of 362,805.
Q. So SC Club, L.P. had just under $18 million in liabilities?
A. Correct.
Q. So there's substantially more liabilities than assets?
A. That is correct.
Q. That's based on information and data provided to you by SC Club, L.P.?
A. Through Mr. Moreno.
Q. And also by Mr. Pressman?
A. That is correct.
Q. Now, can you see anything on here as to amounts that SC Club, L.P. owed to EPD?
(Pause in proceedings.)
THE WITNESS: What was your question,

that range, it would take quite a few years to try and create a situation where assets were ultimately greater than liabilities; is that right?
A. It would probably take them a while, yes.
Q. Maybe a decade or so?
A. Yeah, probably about a decade.
Q. And that's if they were able to keep on generating income in that dollar figure?
A. That's the assumption.
MR. WEBER: I'd like to introduce Exhibit 19.
(Exhibit 19 was marked for identification by the reporter.)
BY MR. WEBER:
Q. Have you seen this document before?
A. Yes, I have.
Q. Is this Broadway Entertainment Marketing, Inc.'s tax return for 2007?
A. Yes, it does appear to be that way.
Q. And did you prepare it?
A. Yes, I did.
Q. Did you file it with the IRS?
A. I would have to assume so.
Q. You signed it?
A. I signed it.

Q. So for 2007, Broadway Entertainment had assets of just over a million dollars; is that right?
A. That's what it shows.
Q. And what were its liabilities?
A. Its liabilities were 2,017,367, loans from shareholders, and 90,493 in other current liabilities.
Q. And so, the liabilities were roughly double the assets; is that right?
A. That's correct, but you've got to understand, if this tax return is accurate, loans from shareholders many times can be combined with the equity. Banks do that all the time.
Q. Do you know who the shareholders were?
A. Well, I don't know. I'd have to look and see if it shows here.
Based on the K-1s alone, the two shareholders were Mr. Pressman personally and a gentleman by the name of Donald Corliss.
Q. Does this show amounts owing by Broadway to EPD?
A. Well, the loans to shareholders definitely does not. And the 90,000 consists of other liabilities of 88,953, which I can't tell who that is or what that is, and security deposits of $1,540.

Q. So if amounts are owed to EPD, they didn't provide that information to you?
A. It's possible Broadway Entertainment didn't owe EPD anything.
Q. And the income is negative; is that right?
A. It showed a negative that year of 86,182.
MR. WEBER: I'd like to introduce Exhibit 20.
(Exhibit 20 was marked for identification by the reporter.)
BY MR. WEBER:
Q. Do you recognize this document?
A. Yes, I do.
Q. Is this Broadway Entertainment Marketing, Inc.'s tax return for 2008?
A. Yes, it is.
Q. Did you prepare it?
A. Yes, I did.
Q. Did you file it?
A. I would assume so.
Q. And this year, Broadway Entertainment had roughly $1.1 million in assets?
A. That is correct.
Q. And how much in liabilities?
A. Well, it shows 223,000 in notes payable in

the year or more; 2,699,884, loans from shareholders; 97,923 in other current liabilities, and short-term notes of 552,802.

Q. So somewhere a little under 3-1/2 million dollars in liabilities?

A. That's approximately -- yes, approximately correct. However, of those liabilities, almost 2.7 million is owed to the shareholder.

Q. But on a balance sheet basis, the liabilities dramatically exceeded the assets; is that right?

A. That's correct.

Q. And who were the shareholders at this point that had the loans to Broadway?

A. In 2008, the sole shareholder was Mr. Keith Pressman. So as a sole shareholder, and that 2.7 million could easily be classified to the equity section making the equity section positive.

Q. But that was not done?

A. That was not done.

Q. Do you know where Keith Pressman got the money to make that kind of a loan?

A. Not a clue.

Q. As to the loans from Jerrold Pressman, do you know where he got the money to make the loans?

A. That's correct.
Q. So in terms of your recommendations on this memorandum, which recommendations were implemented by EPD?
A. At that time, I don't know.
Q. Do you recall any of them being implemented?
A. No.
Q. Now, you were aware that EPD engaged in equipment leasing going back to 2003 and before; is that right?
A. And before, yes.
Q. Did you ever -- when was the first time you told Mr. Pressman or Mr. Moreno that they were accounting for the lease transactions incorrectly?
A. Verbally, gosh, years ago.
Q. 2003 or so?
A. Probably. Maybe even earlier than that.
Q. What was their response when you said that?
A. They appreciated the comments, and then, it appears to be they ignored them.
Q. Did they think about implementing a change?
A. I have no idea.
Q. Did they -- in your discussions with them, did they indicate any interest in rethinking how they

were accounting for lease payments?
A. I think they thought about it, but I don't know if they -- I mean, based on the financial statements that I used to prepare the tax returns, and they didn't take any action on it. Why, I don't know.
Q. So on all the leases, EPD paid the monthly lease payments; is that right?
A. That's correct. And I can understand why.
Q. And EPD wasn't the lessor or the lessee?
A. That is correct.
Q. And for instance, one of the companies was SC Club, L.P.; is that right --
A. That is --
Q. -- that leased the equipment?
A. That is correct.
Q. So EPD would -- strike that.
And SC Club, L.P. was an entity that was partially owned or controlled by Jerrold Pressman?
A. At least through 2007's tax return, the ownership of SC Club, L.P. was Mr. Pressman personally.
Q. So do you know why Mr. Pressman would have EPD's investors in effect -- strike that.
Do you know why Mr. Pressman would have EPD

A. You have to remember that prior to 2003, EPD was Jerrold Pressman. After then, it was the LLC.
Q. I'm just asking about the time period after it was formed as an LLC.
A. After it was formed as an LLC, no, it did not.
Q. EPD did not acquire --
A. No.
Q. -- ownership interests?
A. No.
Q. So after 2003, did EPD operate as a venture capital company?
A. I guess you could consider it a venture capital company because it provided funds for these businesses to operate.
Q. And what did it get in exchange for that?
A. I don't really know, to be honest with you.
Q. Have you seen anything that would show anything that EPD got out of that?
A. Not EPD.
Q. So how would EPD be categorized as a venture capital company after June or July of 2003?
A. Because it provided funding to these entities.

Q. Anything else other than just the providing of funds?
A. No. Probably just providing the funds.
Q. Do you know if Jerrold Pressman and Keith Pressman took money out of EPD?
A. No.
Q. Do you know if they had their personal expenses, credit cards, mortgage payments, utilities, things like that, paid out of EPD?
A. Not as an LLC, no.
Q. You're not sure one way or the other?
A. I never saw it on the LLC.
Q. Did you ever see it on the cash flow statement or expense side of the income statement?
A. No. Not as an LLC, no.
Q. Was John Kirkland an investor in EPD?
A. He may have been at one point.
Q. Do you know how much, approximately, he was owed?
A. No.
Q. Do you know how much he invested?
A. No.
Q. Do you know if it was an investment or a loan transaction?
A. I don't really know.

Q. Do you know what that means?
A. I'm wondering if that has something to do with some kind of fee income that EPD earned or Mr. Pressman, one of the two. I think it was EPD that earned it according to this schedule here.
Q. EPD may have earned that as income from Mr. Kirkland?
A. That's possible.
Q. Is that the way it appears here?
A. That's the way it appears to me at this point.
Q. So it appears that John Kirkland paid EPD $216,000 for fees?
A. That's what it looks like, yes.
MR. WEBER: I'd like to introduce Exhibit 27.
(Exhibit 27 was marked for identification by the reporter.)
BY MR. WEBER:
Q. Have you seen this document before?
A. Yes.
Q. And what is this?
A. It's a schedule of funds by investor.
Q. If --
A. Yeah, go ahead.

Exhibit 29.
///
(Exhibit 29 was marked for
identification by the reporter.)
BY MR. WEBER:
Q. If you look, this is an email from Ruben Moreno to Jerrold Pressman on April 11, 2011. It says, "Final EPD balance sheet with latest changes."
Do you see that?
A. Yes, I do.
Q. And again, you're not a sender or recipient, but if you look on page 16 of 29, there's an entry that says, "Bright gone," and it totals $370,122.01.
Do you see that?
A. Yes, I do.
Q. And it has the initials JK, which may mean John Kirkland, or it may not.
Do you see that?
A. Yes, I do see that.
Q. Other than that entry, do you see any liabilities as owing to John Kirkland, his wife, or the Bright Trust?
A. No, I don't see anything.
Q. And looking back at Exhibit 2, the


BARKLEY Court Reporters

# EXHIBIT 26

EBG
Ezra Brutzkus Gubner LLP
YOUR COUNSEL MATTERS℠

Warner Center
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367

T (818) 827-9000
F (818) 827-9099
www.ebg-law.com

Corey R. Weber
T (818) 827-9122
F (818) 827-9099
cweber@ebg-law.com

September 18, 2012

**VIA OVERNIGHT DELIVERY**

City National Bank
Attention: Legal Department
555 South Flower Street
Los Angeles, CA 90071

**Re: In re EPD Investment Co., LLC and Jerrold S. Pressman**
**City National Bank Accounts relating to consolidated debtors EPD Investment Co., LLC and Jerrold S. Pressman**
**Our File No. 3271.001**

Dear Sir or Madam:

Our firm represents Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") as the Trustee's special litigation counsel. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER, pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, the Honorable Ernest M. Robles presiding. Copies of the order for relief, the notice of appointment of the Trustee and the order granting the substantive consolidation of the bankruptcy estates of EPD and Pressman are enclosed for your reference.

The Trustee seeks, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, City National Bank's production of banking and financial records that are in possession, custody or control of City National Bank, including but not limited to: (1) all account statements; (2) all incoming and outgoing checks (including deposited and canceled checks), cashier's checks and wire transfers (including wire transfer confirmations) in an amount in excess of $10,000.00; (3) all debit and credit memos; and (4) any and all other documents relating to the following accounts and entities (for the period beginning November 1, 2003 through December 7, 2010):

EBG
Ezra Brutzkus Gubner LLP
YOUR COUNSEL MATTERS℠



| Account Holder(s) | Account Number(s) | Notes |
|---|---|---|
| EPD Investment Co., LLC (one of the Debtors) | All accounts, including but not limited to 00112018034, to the extent that such documents have not already been produced to the Trustee | The Trustee previously served a meet-and-confer letter to CNB and CNB produced documents to the Trustee. However, it does not appear that records relating to account no. 00112018034 were produced. |
| Broadway Financial, LLC | All accounts, including but not limited to 00001024116 | See attached authorization letter from Jerrold S. Pressman. |
| Broadway Entertainment Marketing, Inc. | All accounts, including but not limited to 00001660055 | See attached authorization letter from Jerrold S. Pressman. |
| S.C. Club, LP and/or S.C. Club, Inc. and/or Key Club | All accounts, including but not limited to 00101455629, 00112018026 and 00112339124 | See attached authorization letter from Jerrold S. Pressman. |
| M.C. Entertainment, LLC | All accounts, including but not limited to 00112522328 | See attached authorization letter from Jerrold S. Pressman. |
| JSP Properties, Inc. | All accounts | See attached authorization letter from Jerrold S. Pressman. |
| Plush Lounge Las Vegas, LLC | All accounts | See attached authorization letter from Jerrold S. Pressman. |
| Iceoplex Oakland, Inc., Iceoplex Fremont, L.P. and Iceoplex, L.P. | All accounts | Keith Pressman, the agent for service of process for Iceoplex Oakland, Inc., is copied on this letter. Iceoplex Fremont, L.P. and Iceoplex, L.P. do not appear to have agents for service of process but this letter is sent to the business address reflected on the California Secretary of State website. |

EBG
Ezra Brutzkus Gubner LLP
YOUR COUNSEL MATTERS℠

City National Bank
Attention: Legal Department
September 18, 2012
Page 3

| | | |
|---|---|---|
| Fallbrook Investments, LLC | All accounts | Robert Geringer, the managing member of Fallbrook Investments, LLC, is copied on this letter. |
| EPD Investment Leasing Co., LLC | All accounts | Keith Pressman, the agent for service of process for EPD Investment Leasing Co., LLC, is copied on this letter. |
| Ice Group Escondido, Inc. | All accounts | Keith Pressman, the agent for service of process for Ice Group Escondido, Inc., is copied on this letter. |
| Ice Skating Enterprises, Inc. | All accounts | Keith Pressman, the agent for service of process for Ice Skating Enterprises, Inc., is copied on this letter. |
| Preha Investments | All accounts | |

Enclosed with this letter is an authorization letter from Jerrold S. Pressman regarding several of the above-listed entities. As stated in the chart above, this letter is concurrently sent to agents for service of process and/or business addresses for the other companies listed above.

Local Bankruptcy Rule 2004-1 requires that the Trustee attempt to confer with City National Bank either in person or telephonically to obtain a mutually agreeable date, time and scope of production of documents regarding the Rule 2004 examination.

The Federal Rules of Bankruptcy Procedure regarding issuance of a subpoena do not apply in this instance, and the Trustee is required to proceed under Rule 2004. Therefore, the Trustee requests that City National Bank contact me by telephone or e-mail as soon as possible to discuss the foregoing. Unless we hear back from you by no later than the close of business on **September 25, 2012** to meet and confer, the Trustee may proceed to file a motion to obtain the requested documents pursuant to Rule 2004.

EBG
Ezra Brutzkus Gubner LLP
YOUR COUNSEL MATTERS℠



In addition to the foregoing, the Trustee previously sent a meet-and-confer letter with regard to the bank records of Jerrold S. Pressman, and based on discussions by telephone with City National Bank, we agreed that City National Bank would initially produce only the bank statements for Jerrold S. Pressman. We additionally agreed that the Trustee would then contact City National Bank if the back-up documents for the accounts were needed. The Trustee hereby requests that City National Bank produce the following records relating to Jerrold S. Pressman's accounts: (1) all incoming and outgoing checks (including deposited and canceled checks), cashier's checks and wire transfers (including wire transfer confirmations) in an amount in excess of $10,000.00; (2) all debit and credit memos; and (3) any and all other documents relating to Jerrold S. Pressman's accounts (for the period beginning November 1, 2003 through December 7, 2010).

Thank you for your anticipated courtesy and cooperation in this matter.

Sincerely,

COREY R. WEBER

CRW:mwd/mgz
Enclosures
cc: Jason Rund, Chapter 7 Trustee (via Email only)
Robert Hessling, Esq. (via Email only)
Diane Baxa, City National Bank (via Email only)
Jerrold S. Pressman (via Email only)
Robert Geringer (via U.S. Mail)
Keith Pressman (via U.S. Mail)

Form ofri-(orlf7,orlf11,iors) VAN-93
Rev. 12/2010

# United States Bankruptcy Court
# Central District Of California

**255 East Temple Street, Los Angeles, CA 90012**

## ORDER FOR RELIEF AND ORDER TO FILE SCHEDULES, STATEMENTS AND LIST(S)

**DEBTOR(S) INFORMATION:**
EPD Investment Co., LLC
aka EPD Investment Company, aka EPD Investment Leasing Co., LLC
**SSN:** N/A
**EIN:** [redacted]

601 S. Figueroa St., Ste 3900
Los Angeles, CA 90017

**BANKRUPTCY NO.** 2:10-bk-62208-ER
**CHAPTER** 7

Order/Notice to the parties in interest:

An involuntary Chapter 7 petition having been filed against the above-named debtor on December 7, 2010 , and no pleading or other defense to the petition having been filed within 21 days after service of the summons (or within any longer period of time prescribed by the Court), an Order for Relief is hereby issued against the debtor.

Debtor is ordered to file within **seven** days after entry of this order for relief, a list containing the name and address of each entity included on Schedule D, E, F, G, and H as precribed by the Official Forms (Federal Rule of Bankruptcy Procedure 1007 (a)(2)).

Debtor is also ordered to file schedules, statement and a verified Statement of Social Security Number(s) (Official Form B21) referred to in Federal Rule of Bankruptcy Procedure 1007(a),(c) and (f) within 14 days after entry of this Order For Relief.

Dated: February 9, 2011

For The Court,
**Kathleen J. Campbell**
Clerk of Court

ENTERED
FEB - 9 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY Deputy Clerk

FILED
FEB 9 2011

ch Through ck Con

STEVEN T. GUBNER - Bar No. 156593
COREY R. WEBER - Bar No. 205912
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: 818.827.9000
Facsimile: 818.827.9099
Email: sgubner@ebg-law.com
cweber@ebg-law.com

Attorneys for Creditor Michelle Hansel

ANTHONY C. DUFFY - Bar No. 50432
LAW OFFICES OF ANTHONY C. DUFFY
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: 949.222.0995
Facsimile: 949.222.0994
Email: aduffy@aduffylaw.com

Attorneys for Petitioning Creditors Arthur Huerth, Leslie Huerth, Orland McCarthy, Vicki McCarthy, Lynn McCarthy, Jeffrey Saeger, Jayne Ehlert Saeger and Jennie Lee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC<br><br>Alleged Debtor.<br><br>EIN NO. xxx-0994 | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br><br>**ORDER FOR RELIEF IN AN INVOLUNTARY CASE**<br><br>**Status Conference**<br>Date: February 9, 2011<br>Time: 10:00 a.m.<br>Place: Courtroom 1568<br>United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

On consideration of the Petition filed on December 7, 2010 against the above-named debtor, an order for relief under Chapter 7 of the United States Bankruptcy Code (title 11 of the United States Code) is granted as of December 7, 2010.

###

It is so ordered
2/9/11

Ernest Robles

| In re: EPD INVESTMENT COMPANY, LLC Debtor(s). | CHAPTER 7<br>CASE NUMBER 2:10-bk-62208-ER |
|---|---|

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367**

A true and correct copy of the foregoing document described **ORDER FOR RELIEF IN AN INVOLUNTARY CASE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____________, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

John A. Moe - jmoe@luce.com
Office of the United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On January 14, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____________ *personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February , 2011 | | /s/ |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| | |
|---|---|
| In re:<br>EPD INVESTMENT COMPANY, LLC<br><br>Debtor(s). | CHAPTER 7<br><br>CASE NUMBER 2:10-bk-62208-ER |

**VIA OVERNIGHT MAIL**

| | |
|---|---|
| Honorable Ernest M. Robles<br>United States Bankruptcy Court<br>Los Angeles Division - Roybal Federal Building<br>255 East Temple Street, Suite 1560<br>Los Angeles, CA 90012-3332 | Attorneys for Alleged Debtor and Agent for Service of Process<br>John C. Kirkland, Esq.<br>Luce Forward<br>601 South Figueroa Street, Suite 3900<br>Los Angeles, CA 90017 |
| Attorneys for Petitioning Creditors<br>Sara E. Cook, Esq.<br>McKenna Storer<br>666 Russel Court, Suite 303<br>Woodstock, IL 60098 | Alan S. Gutman, Esq.<br>Law Offices of Alan S. Gutman<br>401 Wilshire Blvd., Suite 575<br>Beverly Hills, CA 90212 |

**VIA EMAIL**

| | |
|---|---|
| John C. Kirkland, Esq<br>Luce Forward<br>jkirkland@luce.com | Sara E. Cook, Esq.<br>McKenna Storer<br>scook@mckenna-law.com |

| In re: EPD INVESTMENT COMPANY, LLC Debtor(s). | CHAPTER 7<br>CASE NUMBER 2:10-bk-62208-ER |
|---|---|

## NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER FOR RELIEF IN AN INVOLUNTARY CASE** was entered on the date indicated as AEntered@ on the first page of this judgment or order and will be served in the manner indicated below:

I. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (ANEF@)** B Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of January 14, 2010, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

John A. Moe - jmoe@luce.com
Office of the United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

| | |
|---|---|
| John C. Kirkland, Esq.<br>Luce Forward<br>Los Angeles, CA 90017 | Sara E. Cook, Esq.<br>McKenna Storer<br>666 Russel Court, Suite 303<br>Woodstock, IL 60098 |
| Alan S. Gutman, Esq.<br>Law Offices of Alan S. Gutman<br>401 Wilshire Blvd., Suite 575<br>Beverly Hills, CA 90212 | |

☐ Service information continued on attached page

III. **TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an AEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an AEntered@ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page

**Peter C. Anderson**
**United States Trustee**
**725 S. Figueroa Street**
**26th Floor**
**Los Angeles, CA 90017**
**(213) 894-6811**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Chapter 7A |
| EPD INVESTMENT | Case No. 2:10-bk-62208-ER |
| | NOTICE OF APPOINTMENT OF TRUSTEE AND FIXING OF BOND; ACCEPTANCE OF APPOINTMENT AS INTERIM TRUSTEE |

Pursuant to 11 U.S.C. 701 and 11 U.S.C. 322

JASON RUND, EL SEGUNDO, CA

is appointed Interim Trustee of the case of said debtor(s) and is hereby designated to preside at the meeting of creditors. This case is covered by the chapter 7 blanket bond on file with the Court on behalf of the Trustees listed on Schedule A of the bond and any amendments or modifications thereto.

DATED: February 11, 2011

**PETER C. ANDERSON**

UNITED STATES TRUSTEE

I, the undersigned, affirm that to the best of my knowledge and belief, I am disinterested within the meaning of 11 U.S.C. 101(14), and on this basis, I hereby accept my appointment as Interim Trustee in the above case. I will immediately notify the United States Trustee if I become aware of any facts to the contrary.

DATED:

JASON RUND
Interim Trustee

STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000, Facsimile: (818) 827-9099
sgubner@ebg-law.com, cweber@ebg-law.com

Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

RICHARD K. DIAMOND (State Bar No. 070634)
rdiamond@dgdk.com
ROBERT A. HESSLING (State Bar No. 096466)
rhessling@dgdk.com
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles CA 90067
Telephone: (310) 277-0070, Facsimile: (310) 277-5735

General Bankruptcy Counsel for Jason M. Rund, Chapter 7 Trustee

FILED & ENTERED

JUN 04 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN,

Consolidated Debtors.

Case No. 2:10-bk-62208-ER
Chapter 7

**ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE BANKRUPTCY ESTATES OF DEBTORS EPD INVESTMENT CO., LLC AND JERROLD S. PRESSMAN**

**Hearing:**
**Date:** May 23, 2012
**Time:** 10:00 a.m.
**Place:** Courtroom 1568
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

The Chapter 7 Trustee's Motion for Substantive Consolidation of the Bankruptcy Estates of Debtors EPD Investment Co., LLC and Jerrold S. Pressman (the "Motion") came on for hearing before the Honorable Ernest M. Robles on May 23, 2012 at 10:00 a.m. in Courtroom 1568 of the United States Bankruptcy Court located at 255 East Temple Street, Los Angeles, California 90012.

Having reviewed the Motion and the accompanying Declarations of Jason M. Rund, Corey R. Weber and Jerrold S. Pressman, no oppositions to the Motion having been filed, the Trustee having submitted on the Court's tentative ruling granting the Motion, and good cause appearing therefor, and for the reasons stated in the Court's Tentative Ruling,

**IT IS HEREBY ORDERED** as follows:

1. The Motion is granted.
2. The bankruptcy estates for EPD [Case No. 2:10-bk-62208-ER] (the "EPD Bankruptcy Case") and Jerrold S. Pressman ("Jerrold Pressman") [Case No. 2:12-bk-13760-ER] (the "Pressman Bankruptcy Case") are hereby substantively consolidated *nunc pro tunc* to December 7, 2010, and all assets of the individual estates constitute the assets of the resulting consolidated estate (the "Consolidated Estate"), and all liabilities of the individual estates shall constitute the liabilities of the Consolidated Estate.
3. The EPD Bankruptcy Case shall be deemed the "lead" case, and all future pleadings shall bear the above caption.
4. All claims filed in the Pressman Bankruptcy Case shall be deemed to have been filed in the EPD Bankruptcy Case against the Consolidated Estate, without the need for claimants to file additional proofs of claim in the EPD Bankruptcy Case.
5. Jason M. Rund shall serve as the sole trustee for the Consolidated Estate.
6. Danning, Gill, Diamond & Kollitz, LLP ("DGDK") is authorized to serve as the general bankruptcy counsel, and Ezra Brutzkus Gubner LLP ("EBG") is authorized to serve as the special litigation counsel, of the Trustee for the Consolidated Estate without further order of the Court.

///

7. The consolidation of the estates shall not have any effect upon the amount, validity, priority or extent of liens against property of the estates.

**IT IS SO ORDERED.**

###

DATED: June 4, 2012

United States Bankruptcy Judge

| | |
|---|---|
| In re: EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN, Consolidated Debtors. | CHAPTER 7<br>CASE NUMBER 2:10-bk-62208-ER |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing document described **ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE BANKRUPTCY ESTATES OF DEBTORS EPD INVESTMENT CO., LLC AND JERROLD S. PRESSMAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _______________, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On **May 29, 2012,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**BY OVERNIGHT MAIL**

Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg.
255 East Temple Street, Suite 1560
Los Angeles, CA 90012-3332

**BY U.S. MAIL**

United States Trustee (LA)
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

Debtor In Pro Se
EPD Investment Co., LLC
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017

Debtor
Jerrold S. Pressman
1201 Idaho Ave., Apt 10
Santa Monica, CA 90403

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 29, 2012,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**BY EMAIL**

**Robert A Hessling** – rhessling@dgdk.com
**Ian Landsberg** – ilandsberg@landsberg-law.com
**John J Menchaca (TR)** – jmenchaca@menchacacpa.com
**Jason M Rund (TR)** – trustee@srlawyers.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 29, 2012 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| In re: EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN, Consolidated Debtors. | CHAPTER 7<br>CASE NUMBER 2:10-bk-62208-ER |
|---|---|

**NOTE TO USERS OF THIS FORM:**

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE BANKRUPTCY ESTATES OF DEBTORS EPD INVESTMENT CO., LLC AND JERROLD S. PRESSMAN** entered on the date indicated as **Entered** on the first page of this judgment or order and will be served in the manner indicated below:

I. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **May 29, 2012**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

**Robert A Hessling** – rhessling@dgdk.com; DanningGill@gmail.com
**Ian Landsberg** – ilandsberg@landsberg-law.com; bgomelsky@landsberg-law.com; ssaad@landsberg-law.com
**Jason M Rund (TR)** – trustee@srlawyers.com; jrund@ecf.epiqsystems.com
**United States Trustee (LA)** – ustpregion16.la.ecf@usdoj.gov
**Corey R Weber** – ecf@ebg-law.com; cweber@ebg-law.com

☐ Service information continued on attached page

II. **SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

| | Debtor In Pro Se | Debtor |
|---|---|---|
| John J. Menchaca, Chapter 7 Trustee<br>Menchaca & Company<br>835 Wilshire Blvd., Suite 300<br>Los Angeles, CA 90017 | EPD Investment Co., LLC<br>601 S Figueroa St., Suite 3900<br>Los Angeles, CA 90017 | Jerrold S. Pressman<br>1201 Idaho Ave., Apt 10<br>Santa Monica, CA 90403 |

☐ Service information continued on attached page

III. **TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an **Entered** stamp, the party lodging the judgment or order will serve a complete copy bearing an **Entered** stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

I, Jerrold S. Pressman, confirm that, as to each of the entities below, I am currently the manager an officer, director, or a partner of the following entities, or the entities are no longer operating but I ~~am~~ WAS an officer, director, manager or partner of the entities. As to each of the entities below, I am authorized to act on behalf of the entities:

BELIEVE JSP

1. Broadway Entertainment Marketing, Inc.
2. S.C. Club, Inc.
3. S.C. Club, L.P.
4. S.C. Club, L.P. or S.C. Club., Inc. dba Key Club
5. Plush Lounge Las Vegas, LLC
6. Broadway Financial, LLC
7. M.C. Entertainment, LLC
8. JSP Properties, Inc.

On behalf of the foregoing entities, I authorize Jason M. Rund, the Chapter 7 Trustee for the consolidated bankruptcy estate of EPD Investment Co., LLC and Jerrold S. Pressman, to obtain any and all bank records of the foregoing entities, including but not limited to copies of bank statements, checks, cancelled checks, cashier's checks, wire transfers, deposits, withdrawals, correspondence and other account documents.

Dated August 30, 2012

[signature]

Jerrold S. Pressman

CITY NATIONAL BANK
The way up.

## *DECLARATION AS TO BUSINESS RECORDS*

*State of California, County of Los Angeles, ss:*

*I, the under signed, hereby declare and state as follows:*

*1. I am employed by **City National Bank**, a national banking association, which is engaged in the general business of banking. My place of employment is at 555 S. Flower St, 21st Floor, Los Angeles, CA 90071.*

*2. I am a duly authorized custodian of the records, or qualified witness, and have authority to certify the records herein described.*

*3. City National Bank responds to the United States Bankruptcy Subpoena in the matter of **EPD Investment** case number **2:10-bk-62208-er** as follows:*

*4. Furnished herewith are true copies of all the records described in the United States Bankruptcy Subpoena, except as hereinafter stated.*

*5. The records consist of the following: **Providing copies of Statements, Checks and Wires from August 2003 when account opened to August 2008 for account number 112122257 pertaining to EPD Investment CO. Providing copies of Statements, Checks, and Wires from October 2007 to date of production for account number 112828184 pertaining to EPD Investment. Please note that account number 112122257 was converted to account number 112828184 in October 2007 before it closed in August 2008. Therefore check numbers may reflect on both account statements for October 2007.***

*6. The bank records, true copies of which are furnished herewith, were prepared by or received by the personnel of **City National Bank** in the ordinary course of business, at or near the time of the applicable act, condition or event.*

*7. The records produced were copied from the original or copies maintained by City National Bank as a business record.*

*8. Following is a list of records described in the United States Bankruptcy Subpoena but copies of which cannot be furnished, because the bank does not have the records so describe: **NONE.***

***TO: Ezra Brutzkus Gubner LLP***
***Attn: Corey Weber***
***ADDRESS: 21650 Oxnard Street***
***Suite 500***
***Woodland Hills, CA 91367***

*Executed at Los Angeles, California, this 19th day of April, 2011.*

*I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own personal knowledge and, if called, I would so testify.*

***Shirani Kumarasiri***
***Assistant Vice President***

67333

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 660
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

10/5/2008

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,437.50

Seven Thousand Four Hundred Thirty-Seven and 50/100****** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1619307

[redacted] /0000743750/

[redacted] 10/17/2008 7,437.50

10/17/2008

>122000496<

REDACTED

REDACTED

REDACTED

REDACTED


67548

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 660
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

11/5/2008

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,437.50

Seven Thousand Four Hundred Thirty-Seven and 50/100********** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1619307

[redacted] ⑈0000743750⑈

[redacted] 11/17/2008 7,437.50


11/17/2008 400173<0

>122000496<
UNION BANCAL NA
OTAY PK 91755
111408 47565255

REDACTED

REDACTED

REDACTED

REDACTED

67779

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 560
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

12/5/2008

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,437.50

Seven Thousand Four Hundred Thirty-Seven and 50/100****** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1519307

[redacted] ⑈0000743750⑈

[redacted] 12/17/2008 7,437.50

12/17/2008 10257040

>122000496<
UNION BANCAL NA
UTAY PK 91755
121608 45238212

REDACTED

REDACTED

REDACTED

REDACTED

68014

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 560
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

1/5/2009

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,437.50

Seven Thousand Four Hundred Thirty-Seven and 50/100****************** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1619307

AUTHORIZED SIGNATURE

[redacted] ⑈0000743750⑈

[redacted] 1/20/2009 7,437.50

01/20/2009 19440570

>122000496<
UNION BANCAL NA
MTRY PK 91755
011609 45764392







[redacted] 2/18/2009 7,437.50

REDACTED

REDACTED

REDACTED

68507

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 650
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

3/5/2009

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,809.38

Seven Thousand Eight Hundred Nine and 38/100****** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1619307

AUTHORIZED SIGNATURE

[redacted] ⑈0000780938⑈

[redacted] 3/17/2009 7,809.38

>122000496<
UNION BANKCAL NA
MTRY PK 91755

REDACTED

REDACTED

REDACTED

68869

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 550
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

4/5/2009

PAY TO THE ORDER OF Union Bank of California, N.A. $**7,435.52

Seven Thousand Four Hundred Thirty-Five and 52/100****************** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO
John C. Kirkland Loan # 1619307

AUTHORIZED SIGNATURE

[redacted] ⑆0000743552⑆

[redacted] 4/17/2009 7,435.52

Mortgage

REDACTED

REDACTED

R
REDACTED
E
D
A

69002

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 660
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

5/5/2009

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,435.52

Seven Thousand Four Hundred Thirty-Five and 52/100****** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1619307

AUTHORIZED SIGNATURE

[redacted] /0000743552/

[redacted] 5/18/2009 7,435.52

05/18/2009 [illegible]9790

>122000496<
UNION BANCAL NA
MTRY PK 91755
051509 46441761

::21367

REDACTED

REDACTED

REDACTED

69245

EPD INVESTMENT CO., LLC
520 BROADWAY, STE 650
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

6/5/2009

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,435.52

Seven Thousand Four Hundred Thirty-Five and 52/100************************************************** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1619307

AUTHORIZED SIGNATURE

[redacted] ⑆0000743552⑆

[redacted] 6/17/2009 7,435.52

06/17/2009 40047950

>122000496<
UNION BANCAL NA

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

69491

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 660
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

7/5/2009

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,435.52

Seven Thousand Four Hundred Thirty-Five and 52/100****************************** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO
John C. Kirkland Loan # 1619307

AUTHORIZED SIGNATURE

[redacted] ⑈0000743552⑈

[redacted] 7/17/2009 7,435.52

07/17/2009 40041410

REDACTED

REDACTED

REDACTED


69720

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 660
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

8/5/2009

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,435.52

Seven Thousand Four Hundred Thirty-Five and 52/100****** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1819307

AUTHORIZED SIGNATURE

[redacted] ⑈0000743552⑈


08/17/2009 40097670

>122000496<
UNION BANCAL NA
MTRY PK 91755
081709 46378400

[redacted] 8/17/2009 7,435.52

REDACTED

REDACTED

69855

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 650
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

9/5/2009

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,435.52

Seven Thousand Four Hundred Thirty-Five and 52/100****** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1619307

AUTHORIZED SIGNATURE

[redacted] ⑈0000743552⑈

[redacted] 9/17/2009 7,435.52

09/17/2009 40009360

>122000496<
UNION BANCAL NA
MTRY PK 91755
091609 40027882

REDACTED

REDACTED

REDACTED

69984

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 850
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

10/5/2009

PAY TO THE ORDER OF Union Bank of California, N.A. $ **7,435.52

Seven Thousand Four Hundred Thirty-Five and 52/100****************************** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1616307

AUTHORIZED SIGNATURE

[redacted] ⑈0000743552⑈

[redacted] 10/19/2009 7,435.52

CND
INCLEARINGS
0102 05555 10192099

>122000496<
UNION BANCAL NA
MTRY PK 91755
101609 45305873

::64057

REDACTED

REDACTED

REDACTED

REDACTED


70192

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 550
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK

16-1606-1220

12/14/2009

PAY TO THE ORDER OF: Union Bank of California, N.A. $ **7,807.30

Seven Thousand Eight Hundred Seven and 30/100****** DOLLARS

Union Bank of California, N.A.
Union Bank of Calif. Remittance Banking
P.O. Box 51707
Los Angeles, CA 90051-6007

MEMO John C. Kirkland Loan # 1619307

AUTHORIZED SIGNATURE

[redacted] ⑈0000780730⑈

[redacted] 12/17/2009 7,807.30


CNB
INCLEARINGS
0101 02642 12172009

>122000496<
UNION BANCAL NA
MTRY PK 91755
121509 45048855

::132967

# EXHIBIT 27