STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
MICHAEL W. DAVIS – Bar No. 274126
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: cweber@bg.law
mdavis@bg.law

Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,<br><br>Consolidated Debtors. | Case No. 2:10-bk-62208-ER [Lead Case]<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-02424-ER |
| JASON M. RUND, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,<br><br>Defendants. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF CHAPTER 7 TRUSTEE'S CHAPTER 7 TRUSTEE'S: (1) MOTION FOR SUMMARY ADJUDICATION REGARDING THE TRUSTEE'S FIRST CLAIM FOR RELIEF FOR DISALLOWANCE OF CLAIMS, OR, IN THE ALTERNATIVE, FOR EQUITABLE SUBORDINATION OF CLAIMS AND PROOFS OF CLAIM; AND, (2) MOTION FOR SUMMARY ADJUDICATION REGARDING THE SECOND, THIRD AND SIXTH CLAIMS FOR RELIEF FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS MADE WITH ACTUAL INTENT**<br><br>[Notice of motion, memorandum of points and authorities, declarations of Jason M. Rund and Corey R. Weber and request for judicial notice are filed concurrently herewith.]<br><br>**<u>Hearing</u>:**<br>**Date:** October 17, 2017<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 1568<br>United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

**TO THE HONORABLE ERNEST M. ROBLES, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, DEFENDANTS JOHN C. KIRKLAND AND POSHOW ANN KIRKLAND IN HER CAPACITY AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009, AND ALL OTHER INTERESTED PARTIES:**

Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the consolidated bankruptcy estate of debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (Pressman and EPD, collectively, the "Debtors"), hereby request pursuant to Federal Evidence Rule 201 that the Court take judicial notice of the documents referenced herein in support of the Trustee's concurrently filed: *(1) Motion For Summary Adjudication Regarding The Trustee's First Claim For Relief For Disallowance Of Claims, Or, In The Alternative, For Equitable Subordination Of Claims And Proofs Of Claim; and, (2) Motion For Summary Adjudication Regarding The Second, Third And Sixth Claims For Relief For Avoidance And Recovery Of Fraudulent Transfers Made With Actual Intent*. As documents that are matters of public record in the Debtors' bankruptcy case or in a related adversary proceedings, copies of those documents are included herewith for ease of reference. As to each of the exhibits hereto, the Trustee has redacted personal identifying information where appropriate.

| **EXHIBIT** | **DOCUMENT** | **DATE** |
|---|---|---|
| A | Proof of Claim No. 171 in EPD's Bankruptcy Case | 12/12/2011 |
| B | Proof of Claim No. 235 in EPD's Bankruptcy Case | 12/12/2011 |
| C | Proof of Claim No. 236 in EPD's Bankruptcy Case | 12/12/2011 |
| D | Proof of Claim No. 13-1 in Pressman's Bankruptcy Case | 12/12/2011 |

| | | |
|---|---|---|
| E | Order Granting Chapter 7 Trustee's Motion for Substantive Consolidation of the Bankruptcy Estates of Debtors EPD Investment Co., LLC and Jerrold S. Pressman (Docket No. 69 in Case No. 2:12-bk-13760-ER). | 6/04/2012 |
| F | Objection of Poshow Ann Kirkland, Individually and as Trustee of the Bright Conscience Trust, to Motion of Trustee for Order Authorizing Trustee to Pay Unpaid Prior Allowed Interim Fees (Docket No. 1048 in Case No. 2:10-bk-62208-ER) | 7/23/2014 |
| G | Answer of John C. Kirkland to Second Amended Complaint (Docket No. 119 in Case No. 2:12-ap-02424-ER) | 12/06/2013 |
| H | Answer Of Poshow Ann Kirkland As Trustee Of The Bright Conscience Trust Dated September 9, 2009, To Second Amended Complaint (Docket No. 209 in Case No. 2:12-ap-02424-ER) | 7/26/16 |
| I | Appellant's Opening Brief (Docket No. 9 in the United States District Court for the Central District of California, Western Division, Case No. 2:13-cv-09023-SJO).<br><br>Exhibits omitted. | 2/11/14 |
| J | Appellants' Opening Brief (Docket No. 23-1, Ninth Circuit Case Nos. 14-55740 and 14-56478 (consolidated)).<br><br>Exhibits omitted. | 1/16/15 |
| K | Complaint for Compensatory and Punitive Damages, Case No. BC391366, Superior Court of the State of California, County of Los Angeles | 5/22/08 |
| L | Limited Liability Company Articles of Organization for EPD Investment Co. LLC, on file with the Secretary of State of the State of California, File No. 200317910131. | 6/27/03 |
| M | Defendants' Objection to Report and Recommendation of U.S. Magistrate Judge (Entry of Default) (Docket No. 22, Case No. 1:10-cv-05049, United States District Court For the Northern District of Illinois, Western Division) | 10/06/10 |

| | | |
|---|---|---|
| N | EPD Investment Co. LLC's Statements of Information filed on May 24, 2004, April 1, 2005, and April 26, 2007 | 5/24/04, 4/1/05, and 4/6/07 |
| O | Resignation of Agent Upon Whom Process May be Served | 1/28/11 |
| P | Notice of Motion and Motion of Defendant John C. Kirkland to Compel Arbitration and Stay Adversary Proceeding (Docket No. 73 in Case No. 2:12-ap-02424-ER). | 9/26/13 |
| Q | Plush Lounge Las Vegas, LLC, Limited Liability Company Articles of Organization Filed with Secretary of State of State of Nevada, File No. LLC 6841-03 | 5/09/03 |
| R | Declaration of John C. Kirkland, Esq. in Support of Plaintiff's Oppositions (Plush Lounge Las Vegas, LLC, Plaintiff v. Hotspur Resorts Nevada, Inc., Case No. CV 06-2626 FMC (TLx), United States District Court, Central District of California, Western Division) | 6/13/2006 |
| S | Complaint and Request for Jury Trial, Plush Lounge Las Vegas, LLC, v. Hotspur Resorts Nevada Inc., Case No. 2:06-cv-00335-BES-LRL, United States District Court, District of Nevada (Document No. 1) | 3/20/2006 |
| T | Plaintiff Plush Lounge's Opposition to Defendant's Renewed Motion to Compel, Plush Lounge Las Vegas, LLC v. Hotspur Resorts Nevada, Inc., Case No. CV 06-2626 GW (JTLx), United States District Court, Central District of California, Western Division | 10/26/07 |
| U | EPD Investment Co., LLC., v. Plush Lounge Las Vegas, LLC, Case NO. BC 358166, Superior Court of the State of California, County of Los Angeles: (1) Stipulation for Entry of Judgment, (2) Judgment Pursuant to Stipulation, (3) Final Judgment, and (4) Notice of Lien | 1/03/07, 1/03/07, 2/01/07, 2/16/07 |
| V | Appellant's Opening Brief, Case No. 2:13-cv-08768-SJO, United States District Court, Central District of California, Western Division (Docket No. 12) | 3/13/14 |

| | | |
|---|---|---|
| W | Alleged Debtor's Objection to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee, filed in the Bankruptcy Case (Docket No. 24) | 1/19/11 |
| X | Memorandum of Points and Authorities in Opposition to Plaintiff's Application for Right to Attach Order and Order for Issuance of Writ of Attachment, *Hansel v. EPD, et al.*, Case No. SC 106151, Superior Court for the State of California, County of Los Angeles. | 5/11/10 |
| Y | Defendant Jerrold Pressman's Opposition to Plaintiff's Ex Parte Attachment Motion, *Hansel v. EPD Investment Co., LLC, et al.*, Case No. SC 106151, Superior Court of the State of California, County of Los Angeles, Central District | 6/23/10 |
| Z | UCC Financing Statement, filed with the California Secretary of State, Document No. 09-7208082773 | 9/11/09 |
| AA | UCC Financing Statement Amendment, filed with the California Secretary of State, Document No. 1072311222 | 5/05/10 |
| BB | State of Delaware Limited Liability Company Certificate of Formation for HMB Holdings, LLC | September 14, 2009 |
| CC | Proof of Claim No. 209 in EPD's Bankruptcy Case | 12/12/2011 |
| DD | Chapter 7 Trustee's Third Omnibus Motion for Approval of Compromises, Docket No. 769 in EPD's Bankruptcy Case | 10/31/13 |
| EE | Order Granting Chapter 7 Trustee's Third Omnibus Motion for Approval of Compromises, Docket No. 840 in EPD's Bankruptcy Case | 12/11/13 |
| FF | Chapter 7 Trustee's Eighth Omnibus Motion for Approval of Compromises, Docket No. 995 in EPD's Bankruptcy Case | 4/11/14 |

| | | |
|---|---|---|
| GG | Order Granting Chapter 7 Trustee's Eighth Omnibus Motion for Approval of Compromises, Docket No. 1019 in EPD's Bankruptcy Case | 5/08/14 |
| HH | Review Department of the State Bar Court in Bank, Order in the Matter of Katharine Sabich-Robison; and, Recommendation of Summary Disbarment re Katherine Jean Sabich-Robison, Case No. 05-C-02150, State Bar Court Clerk's Office, Los Angeles | 5/26/06<br><br>8/5/10 |
| II | Declaration of Katharine Werner, Arthur Huerith, et. al. v. Jerrold Pressman, et. al., Case No. 10-05049, United States District Court, Northern District of Illinois, Western Division (Document No. 114-9) | 8/05/13 |
| JJ | Judgment in a Civil Case, Arthur Huerith, et. al. v. Jerrold Pressman, et. al., Case No. 10-05049, United States District Court, Northern District of Illinois, Western Division (Document No. 97) | 12/12/12 |
| KK | Declaration of Ruben Moreno in Opposition to Plaintiff's Application for Right to Attach Order and Order for Issuance of Writ of Attachment, *Hansel v. EPD, et al.*, Superior Court for the State of California, County of Los Angeles, Case No. SC 016151 | 6/23/10 |
| LL | Alleged Debtor's Request for Judicial Notice in Support of Objection to Petitioning Creditors' Motion for Appointment of Interim Chapter 7 Trustee filed in the Bankruptcy Case (Docket No. 23) | 1/19/11 |
| MM | General denial filed in *Druckman v. EPD, et al.*, Case No. BC 450557, Superior Court for the State of California County of Los Angeles | 1/04/11 |
| NN | General denial filed in *Harvey v. Pressman, et al.*, Case No. SC 108418, Superior Court for the State of California, County of Los Angeles | 3/16/11 |
| OO | UCC Financing Statement, filed with the California Secretary of State, Document No. 10-7224658702 | 3/01/2010 |

| | | |
|---|---|---|
| PP | Limited Liability Company Articles of Organization for EPD Investment Leasing Co. LLC, on file with the Secretary of State of the State of California, File No. 201013910145. | 5/18/10 |
| QQ | Motion by Chapter 7 Trustee for Examination of, and Production of Documents and Things By: (1) The Person(s) Most Qualified for Debtor EPD Investment Co, LLC; (2) Jerrold Pressman; (3) Keith Pressman; (4) Ruben Moreno; (5) John C. Kirkland; (6) The Person(s) Most Qualified for Broadway Entertainment Marketing, Inc.; (7) The Person(s) Most Qualified for S.C. Club, L.P.; (8) The Person(s) Most Qualified for S.C. Club, Inc.; (9) The Person(s) Most Qualified for the Bright Conscience Trust; (10) The Person(s) Most Qualified for HMB Holdings, LLC; and (11) Ted Jonavic Pursuant to Fed. R. Bank. P. 2004; Document 23 in the Bankruptcy Case. | 4/27/11 |
| RR | Declaration of John C. Kirkland in Support of Alleged Debtor's Notice of Motion and Motion for Reconsideration of Court's Order for Relief in an Involuntary Case. Docket No. 33 in the Bankruptcy Case. | 2/09/11 |
| SS | Substitution of Attorney. Docket No. 117 in the Bankruptcy Case. | 4/25/11 |
| TT | Substitution of Attorney. Docket No. 119 in the Bankruptcy Case. | 4/26/11 |
| UU | Complaint in Adversary Proceeding, Adversary Docket No. 1 | 10/31/12 |
| VV | First Amended Complaint in Adversary Proceeding, Adversary Docket No. 14 | 12/07/12 |
| WW | Second Amended Complaint in Adversary Proceeding, Adversary Docket No. 45 | 5/24/13 |
| XX | Third Amended Complaint in Adversary Proceeding, Adversary Docket No. 215 | 8/12/16 |
| YY | Fourth Amended Complaint in Adversary Proceeding, Adversary Docket No. 234 | 10/14/16 |

| | | |
|---|---|---|
| ZZ | EPD's *Summary of Schedule* filed in the Bankruptcy Case, Docket No. 110 | 4/15/11 |
| AAA | Jerrold S. Pressman's *Notice of Available Chapter*, and *Summary of Schedules* filed in bankruptcy case no. Case 2:12-bk-13760-ER, United States Bankruptcy Court, Central District of California, Los Angeles Division (Docket No. 26) | 2/29/12 |
| BBB | Complaint for: 1. Breach of Contract; 2. Money Due on Note; 3. Common Count, EPD Investment Company, LLC, v. Plush Lounge Las Vegas, LLC, Case No. BC358166, Superior Court of the State of California, County of Los Angeles | 9/08/216 |
| CCC | Chapter 7 Trustee's Motion for Substantive Consolidation of the Bankruptcy Estates of Debtors EPD Investment Co. LLC, and Jerrold S. Pressman, filed in the Bankruptcy Case (Docket No. 200). | 4/27/12 |
| DDD | Sidecreek Development, Inc.'s Voluntary Bankruptcy Petition, filed in bankruptcy case no. Case 2:12-bk-17787-ER, United States Bankruptcy Court, Central District of California, Los Angeles Division (Docket No. 1) | 3/05/12 |
| EEE | Sidecreek Development, Inc.'s Summary of Schedules, filed in bankruptcy case no. Case 2:12-bk-17787-ER, United States Bankruptcy Court, Central District of California, Los Angeles Division (Docket No. 11) | 3/14/12 |
| FFF | *Declarations In Support Of Alleged Debtor's Reply Memorandum In Further Support Of Motion To Alter Or Amend Order For Relief In An Involuntary Case, Or In The Alternative For Relief From Default*, filed in the Bankruptcy Case (Docket No. 83); and, *Additional Declarations in Support of Alleged debtor's Motion to Convert*, filed in EPD's Bankruptcy Case (Docket No. 101). | 3/25/11<br>4/11/11 |
| GGG | (1) UCC Financing Statement, filed with the California Secretary of State, Document No. 0318960973; (2) UCC Financing Statement, filed with the California Secretary of State, Document No. 09-7204357956 | 7/03/2003, 7/31/2009 |

| | | |
|---|---|---|
| HHH | (1) *Chapter 7 Trustee's First Omnibus Motion for Approval of Compromises*, filed in the Bankruptcy Case (Docket No. 540); (2) Order approving same (Docket No. 613). | 4/30/13, 6/10/13 |
| III | *Petitioning Creditors' And Creditor Michelle Hansel's Motion For Appointment Of Interim Chapter 7 Trustee For Alleged Debtor EPD Investment Company, LLC; Memorandum Of Points And Authorities*, filed in the Bankruptcy Case (Docket No. 6) | 1/11/11 |
| JJJ | General Denial, Hansel v. EPD, et. al.; Case No. SC106151, Los Angeles Superior Court, Los Angeles County, Santa Monica Division. | 3/24/10 |
| KKK | General Denial, Dittmar v. Pressman, et. al.; Case No. BC 446372, Los Angeles Superior Court, Los Angeles County. | 11/22/10 |
| LLL | General Denial, Jenny Lee Bridal v. EPD, et. al.; Case No. BC 427112, Los Angeles Superior Court, Los Angeles County | 11/22/10 |
| MMM | *Chapter 7 Trustee's Motion For Approval Of Compromise With Jerrold Pressman*, filed in the Bankruptcy Case (Docket No. 243) | 7/06/12 |
| NNN | *Non-Dischargeable Judgment In Favor Of The Consolidated Bankruptcy Estate And Against Jerrold S. Pressman As To His Post-Petition Assets*, filed in the Bankruptcy Case (Docket No. 243) | 9/10/12 |
| OOO | *Stipulation To Continue Status Conference, To Extend Discovery Cutoff, And To Continue Pre-Trial Conference And Trial, Based Upon Defendant John C. Kirkland's Unavailability Due To Illness*, filed in the Adversary Proceeding Case (Docket No. 247) | 3/31/17 |
| PPP | Claims Register, Case No. 2:10-bk-62208-ER | Accessed on 9/01/17 |
| | | |

| | | |
|---|---|---|
| QQQ | UCC Financing Statement, filed with the California Secretary of State, Document No. 11-7268647698 | 5/02/11 |

Dated: September 5, 2017

Respectfully submitted,
BRUTZKUS GUBNER

By: /s/ Michael W. Davis
Corey R. Weber
Michael W. Davis
Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

# EXHIBIT A

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California** — **PROOF OF CLAIM**

Name of Debtor: EPD Investment Co., LLC

Case Number: 2:10-62208-ER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: ____________
(If known)

Filed on: ____________

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

Telephone number:

FILED
DEC 1 2 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: money
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: 0710

3a. Debtor may have scheduled account as: ____________
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☒ Other
Describe: All assets

Value of Property: $____________ Annual Interest Rate 12 %

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $____________ Basis for perfection: VCC-1

Amount of Secured Claim: $ 2,672,000 Amount Unsecured: $____________

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$____________

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

Date: 12/12/11

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature], Trustee

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

004939

75304004943029

# EXHIBIT B

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California** | **PROOF OF CLAIM**

Name of Debtor: EPD Investment Co., LLC

Case Number: 2:10-62208-ER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

Telephone number:

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** ____________
*(If known)*

Filed on: ____________

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

**3a. Debtor may have scheduled account as:** ____________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe:** All assets

**Value of Property: $** ____________ **Annual Interest Rate** 12 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $** ____________ **Basis for perfection:** UCC-1

**Amount of Secured Claim: $** 2,672,000 **Amount Unsecured: $** ____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$____________

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 12/12/11

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature], Trustee

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



004939

75304004943029

# EXHIBIT C

Case 2:10-bk-62208-ER Claim 236 Filed 12/12/11 Desc Main Document Page 1 of 1

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California** — **PROOF OF CLAIM**

Name of Debtor: EPD Investment Co., LLC

Case Number: 2:10-62208-ER

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BRIGHT CONSCIENCE

Name and address where notices should be sent:
BRIGHT CONSCIENCE
754 SWARTHMORE AVENUE
PACIFIC PALISADES CA 90272-4355

Telephone number:

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: ____________
(*If known*)

Filed on: ____________

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 2,672,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** money
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 0710

**3a. Debtor may have scheduled account as:** ____________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe:** All assets

**Value of Property: $**____________ **Annual Interest Rate** 12 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $**____________ **Basis for perfection:** VCC-1

**Amount of Secured Claim: $** 2,672,000 **Amount Unsecured: $**____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$____________

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 12/12/11

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature], Trustee

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

004939

75304004943029

# EXHIBIT D

Case 2:12-bk-13760-ER Claim 13-1 Filed 02/15/13 Desc Main Document Page 1 of 2

B 10 (Official Form 10) (12/12)

UNITED STATES BANKRUPTCY COURT Central District of California

# PROOF OF CLAIM

Name of Debtor: Jerrold S. Pressman

Case Number: 2:12-bk-13760-ER

FILED
FEB 15 2013
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: RS Deputy Clerk

COURT USE ONLY

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Bright Conscience Trust

Name and address where notices should be sent:
Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades, CA 90272-4355

Telephone number: email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: ______
(*If known*)

Filed on: ______

Name and address where payment should be sent (if different from above):

Telephone number: email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 3,529,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|---|
| 0 7 1 0 | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☑ Other
**Describe:** All assets

**Value of Property:** $______

**Annual Interest Rate** 24.000% ☑ Fixed or ☐ Variable
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $______

**Basis for perfection:** UCC-1

**Amount of Secured Claim:** $ 3,529,000.00

**Amount Unsecured:** $______

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:** $______

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/12)



**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "**redacted**".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Trustee has file

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Poshow Ann Kirkland
Title: Trustee of the Bright Conscience Trust
Company:
Address and telephone number (if different from notice address above):

(Signature) 02/13/2013 (Date)

Telephone number: email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# EXHIBIT E

Case 2:10-bk-62208-ER Doc 227 Filed 06/04/12 Entered 06/04/12 22:09:06 Desc Main Document Page 1 of 5

STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000, Facsimile: (818) 827-9099
sgubner@ebg-law.com, cweber@ebg-law.com

Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

RICHARD K. DIAMOND (State Bar No. 070634)
rdiamond@dgdk.com
ROBERT A. HESSLING (State Bar No. 096466)
rhessling@dgdk.com
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles CA 90067
Telephone: (310) 277-0070, Facsimile: (310) 277-5735

General Bankruptcy Counsel for Jason M. Rund, Chapter 7 Trustee

FILED & ENTERED

JUN 04 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN,

Consolidated Debtors.

Case No. 2:10-bk-62208-ER
Chapter 7

**ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE BANKRUPTCY ESTATES OF DEBTORS EPD INVESTMENT CO., LLC AND JERROLD S. PRESSMAN**

**<u>Hearing</u>:**
**Date:** May 23, 2012
**Time:** 10:00 a.m.
**Place:** Courtroom 1568
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

The Chapter 7 Trustee's Motion for Substantive Consolidation of the Bankruptcy Estates of Debtors EPD Investment Co., LLC and Jerrold S. Pressman (the "Motion") came on for hearing before the Honorable Ernest M. Robles on May 23, 2012 at 10:00 a.m. in Courtroom 1568 of the United States Bankruptcy Court located at 255 East Temple Street, Los Angeles, California 90012.

Having reviewed the Motion and the accompanying Declarations of Jason M. Rund, Corey R. Weber and Jerrold S. Pressman, no oppositions to the Motion having been filed, the Trustee having submitted on the Court's tentative ruling granting the Motion, and good cause appearing therefor, and for the reasons stated in the Court's Tentative Ruling,

**IT IS HEREBY ORDERED** as follows:

1. The Motion is granted.
2. The bankruptcy estates for EPD [Case No. 2:10-bk-62208-ER] (the "EPD Bankruptcy Case") and Jerrold S. Pressman ("Jerrold Pressman") [Case No. 2:12-bk-13760-ER] (the "Pressman Bankruptcy Case") are hereby substantively consolidated *nunc pro tunc* to December 7, 2010, and all assets of the individual estates constitute the assets of the resulting consolidated estate (the "Consolidated Estate"), and all liabilities of the individual estates shall constitute the liabilities of the Consolidated Estate.
3. The EPD Bankruptcy Case shall be deemed the "lead" case, and all future pleadings shall bear the above caption.
4. All claims filed in the Pressman Bankruptcy Case shall be deemed to have been filed in the EPD Bankruptcy Case against the Consolidated Estate, without the need for claimants to file additional proofs of claim in the EPD Bankruptcy Case.
5. Jason M. Rund shall serve as the sole trustee for the Consolidated Estate.
6. Danning, Gill, Diamond & Kollitz, LLP ("DGDK") is authorized to serve as the general bankruptcy counsel, and Ezra Brutzkus Gubner LLP ("EBG") is authorized to serve as the special litigation counsel, of the Trustee for the Consolidated Estate without further order of the Court.

/ / /

7. The consolidation of the estates shall not have any effect upon the amount, validity, priority or extent of liens against property of the estates.

**IT IS SO ORDERED**.

# # #

DATED: June 4, 2012



United States Bankruptcy Judge



589936

Case 2:10-bk-62208-ER Doc 227 Filed 08/04/12 Entered 08/04/12 22:09:06 Desc Main Document Page 4 of 5

| In re: EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN, Consolidated Debtors. | CHAPTER 7<br>CASE NUMBER 2:10-bk-62208-ER |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing document described **ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE BANKRUPTCY ESTATES OF DEBTORS EPD INVESTMENT CO., LLC AND JERROLD S. PRESSMAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ________________**,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:** On **May 29, 2012,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**BY OVERNIGHT MAIL**

Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg.
255 East Temple Street, Suite 1560
Los Angeles, CA 90012-3332

**BY U.S. MAIL**

United States Trustee (LA)
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

Debtor In Pro Se
EPD Investment Co., LLC
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017

Debtor
Jerrold S. Pressman
1201 Idaho Ave., Apt 10
Santa Monica, CA 90403

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 29, 2012, I** served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**BY EMAIL**

**Robert A Hessling** – rhessling@dgdk.com
**Ian Landsberg** – ilandsberg@landsberg-law.com
**John J Menchaca (TR)** – jmenchaca@menchacacpa.com
**Jason M Rund (TR)** – trustee@srlawyers.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 29, 2012 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

Case 2:10-bk-62208-ER Doc 227 Filed 08/04/12 Entered 08/04/12 22:09:06 Desc
Main Document Page 5 of 5

| In re: EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN, Consolidated Debtors. | CHAPTER 7<br>CASE NUMBER 2:10-bk-62208-ER |
| --- | --- |

**NOTE TO USERS OF THIS FORM**:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)** **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
**4)** **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE BANKRUPTCY ESTATES OF DEBTORS EPD INVESTMENT CO., LLC AND JERROLD S. PRESSMAN** entered on the date indicated as **Entered** on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **May 29, 2012**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

**Robert A Hessling** – rhessling@dgdk.com; DanningGill@gmail.com
**Ian Landsberg** – ilandsberg@landsberg-law.com; bgomelsky@landsberg-law.com; ssaad@landsberg-law.com
**Jason M Rund (TR)** – trustee@srlawyers.com; jrund@ecf.epiqsystems.com
**United States Trustee (LA)** – ustpregion16.la.ecf@usdoj.gov
**Corey R Weber** – ecf@ebg-law.com; cweber@ebg-law.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

John J. Menchaca, Chapter 7 Trustee
Menchaca & Company
835 Wilshire Blvd., Suite 300
Los Angeles, CA 90017

Debtor In Pro Se
EPD Investment Co., LLC
601 S Figueroa St., Suite 3900
Los Angeles, CA 90017

Debtor
Jerrold S. Pressman
1201 Idaho Ave., Apt 10
Santa Monica, CA 90403

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an **Entered** stamp, the party lodging the judgment or order will serve a complete copy bearing an **Entered** stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

# EXHIBIT F

Case 2:10-bk-62208-ER Doc 1048 Filed 07/23/14 Entered 07/23/14 20:54:14 Desc Main Document Page 1 of 13

Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: amcdow@bakerlaw.com
mdelaney@bakerlaw.com

Attorneys for Poshow Ann Kirkland, individually and as trustee of the Bright Conscience Trust

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,

Consolidated Debtors.

Case No.: 2:10-bk-62208-ER

Chapter 7

**OBJECTION OF POSHOW ANN KIRKLAND, INDIVIDUALLY AND AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST, TO MOTION OF TRUSTEE FOR ORDER AUTHORIZING TRUSTEE TO PAY UNPAID PRIOR ALLOWED INTERIM FEES OF:**

**1) ROBERT A. HESSLING, APC;**
**2) BERKELEY RESEARCH GROUP, LLC; AND**
**3) EZRA, BRUTKUS, AND GUBNER, LLP**

**<u>Hearing:</u>**
Date: August 6, 2014
Time: 11:00 a.m.
Place: Courtroom 1568
255 E. Temple Street
Los Angeles, CA 90012



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case 2:10-bk-62208-ER Doc 1048 Filed 07/23/14 Entered 07/23/14 20:54:14 Desc Main Document Page 2 of 13

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, THE CHAPTER 7 TRUSTEE, THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES IN INTEREST:**

Poshow Ann Kirkland ("Ms. Kirkland"), an individual and the trustee of the Bright Conscience Trust dated September 9, 2009 (the "Trust"), hereby files this objection to the *Motion of Trustee for Order Authorizing Trustee to Pay Unpaid Prior Allowed Interim Fees* (the "Motion") [Dkt. No. 1045], and the request for payment of certain prior allowed professional fees to Robert A. Hessling, APC ("Hessling"), as general counsel for the chapter 7 trustee (the "Trustee"); Berkeley Research Group, LLC ("Berkeley"), as accountants and financial advisors for the Trustee; and Ezra Brutkus Gubner LLP ("EBG"), as special litigation counsel for the Trustee.[1]

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

If the Trustee desires to use the Collateral (as that term is defined below), or any portion thereof, to pay the fees requested by the Professionals (collectively the "Professional Fees"), or any portion thereof, he must first obtain the consent of the Trust to do so (through an offer of adequate protection or otherwise) or an adjudication from this Court invalidating the lien in favor of the Trust (the "Trust Lien") or authorizing the use of the Collateral despite the presence of the Trust Lien, *none of which have been done*. It appears that the Trustee believes that simply commencing an adversary proceeding seeking to avoid the Trust Lien is sufficient to excuse him from complying with the provisions of the bankruptcy code aimed at protecting secured creditors.[2] Unfortunately for the Trustee, this is simply not the law.

The adversary proceeding to avoid the liens of the Trust has not been adjudicated, and is not likely to be adjudicated in the near future. The Trust has not consented to the use of its cash collateral to pay the Professional Fees, and has no intention of doing so. This Court has not entered an order authorizing the Trustee to use cash collateral to pay the Professional Fees (which

[1] Hessling, Berkeley and EBG are collectively referred to herein as the "Professionals."
[2] This question is presently the subject of two appeals to the United States District Court, which have been consolidated and are pending as Case No. 2:14-cv-01288-JAK.

Case 2:10-bk-62208-ER Doc 1048 Filed 07/23/14 Entered 07/23/14 20:54:14 Desc Main Document Page 3 of 13

would require a showing of adequate protection). The Trustee has not filed a motion under 11 U.S.C. § 506(c) to surcharge the Collateral, and even if the Trustee had done so, the nature of the Collateral and the inability of the Trustee to demonstrate the requisite benefit to the Trust would render surcharge unavailable. Accordingly, as the Collateral remains subject to the Trust's Lien (despite the dispute), no portion of the Professional Fees can be paid unless and until the Trustee has obtained Court authority upon the provision of adequate protection or the Trust's consent. As the Trustee has obtained neither, the Motion must be denied.

## II. RELEVANT FACTS

### A. BRIGHT CONSCIENCE TRUST

The Bright Conscience Trust is an irrevocable trust which was created on September 9, 2009. The sole trustee of the Trust is Ms. Kirkland, and has been Ms. Kirkland since inception. The Trust is the most senior secured creditor in the estate, holding a $3.5 million claim which is secured by a senior security interest in all assets and perfected by the filing of a UCC-1 financing statement. The Trust's liquidated claim is for approximately two million dollars ($2,000,000.00) in cash, plus accrued interest.

### B. LOAN DOCUMENTS

Between 2007 and 2009, John Kirkland ("Mr. Kirkland"), the husband of Ms. Kirkland, loaned EPD Investment Co., LLC ("EPD") and Jerrold Pressman ("Pressman") (collectively the "Debtors") approximately two million dollars ($2,000,000.00). On account of these loans, in or about November 2007, EPD executed a Secured Promissory Note in the amount of $150,000.00 (the "Note"), as well as a Security Interest Agreement (the "Security Agreement") to secure the obligations under the Note, in favor of Mr. Kirkland. The Security Agreement stated that the obligations set forth under the Note were secured by the following collateral (the "Collateral"):

> "all right, title, and interest of Debtor in and to all of the following, whether now owned or hereafter arising or acquired and wherever located: All assets of the Debtor, including, but not limited to: all personal and fixture property of every kind and nature, including without limitation all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including accounts receivable), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case 2:10-bk-62208-ER Doc 1048 Filed 07/23/14 Entered 07/23/14 20:34:14 Desc Main Document Page 4 of 13

letter of credit is evidenced by a writing), commercial tort claims, Securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, *and all general intangibles* (including all payment intangibles); all Equipment; all Intellectual Property; and any and all claims, rights and interests in any of the above, and all guaranties and security for any of the above, and all substitutes and replacements for, additions, accessions, attachments, accessories, and improvements to, and proceeds (including proceeds of any insurance policies, *proceeds of proceeds and claims against third parties*) of, any and all of the above, and all Debtor's books relating to any and all of the above."

*(emphasis added).*

In or about September 2009, immediately after having their first child, Mr. Kirkland assigned his interest in the Note and the Security Agreement to the Trust (the "Assignment"). On or about September 11, 2009, after realizing that Pressman did not file a UCC-1 financing statement ("UCC-1") as he had agreed to do, the Trust filed a UCC-1 in order to perfect the security interest granted by and through the Security Agreement.[3] As set forth in the UCC-1, the obligations under the Note were secured by "ALL ASSETS" of EPD. Although there appears to have been an amendment to the UCC-1 filed in or about May 2010, it was not authorized by either Mr. Kirkland or Ms. Kirkland, and thus, is void.

### C. THE BANKRUPTCY CASE

On or about December 7, 2010, Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/33/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively the "Petitioning Creditors") filed an involuntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") against EPD. The Trust is listed in the Debtor's schedule D as holding an undisputed secured claim of approximately two million dollars ($2,000,000.00). On or about December 12, 2011, the Trust timely filed a proof of claim in the EPD case reflecting a secured claim of approximately $2.7 million, including interest (the "Trust POC").[4]

### D. THE ADVERSARY PROCEEDING

[3] The Note, the Security Agreement, the Assignment, and the UCC-1 are collectively referred to herein as the "Loan Documents."

[4] It appears that the Trust POC was assigned three different claim numbers – 171-1, 235-1, and 236-1; however, the Trust is not sure why this was done, as the content of each is identical.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case 2:10-bk-62208-ER Doc 1048 Filed 07/23/14 Entered 07/23/14 20:54:14 Desc
Main Document Page 5 of 13

On or about October 13, 2012, the Trustee filed a complaint against Mr. Kirkland, Ms. Kirkland, and the Trust, which initiated the adversary proceeding bearing case number 2:12-ap-02424-ER (the "Adversary Proceeding"). On or about December 7, 2012, the Trustee filed its first amended complaint, and on or about May 24, 2013, the Trustee filed its second amended complaint (the "SAC"), which seeks to avoid and recover the Trust Lien and to disallow or subordinate the Trust POC. The Adversary Proceeding is currently pending, and on or about July 31, 2013, Ms. Kirkland filed a motion to dismiss the SAC, which is currently set to be heard on or about September 16, 2014 at 11:00 a.m.

**E. THE FEE APPLICATIONS**

On or about November 13, 2013, each of the Professionals filed interim applications for the payment of fees and expenses (collectively, the "Fee Applications"). Dkt. Nos. 789, 791, 793. On or about November 20, 2013, Ms. Kirkland and the Trust filed a limited opposition to the Fee Applications. Dkt. No. 806. Following a hearing, and by order entered on or about December 18, 2013 (the "Fee Order") [Dkt. No. 852], the Court granted the Fee Applications and allowed the requested fees and expenses, but authorized payment of only 33.3% of the allowed fees and 100% of the allowed expenses, due to the estate's lack of sufficient funds to pay all allowed fees at that time. Ms. Kirkland and the Trust filed notices of appeal regarding the Fee Order, and filed a motion for leave to file these interlocutory appeals. The motion and appeals are pending. Pursuant to the Motion, the Professionals now seek payment of the remaining 66.7% of fees previously allowed pursuant to the Fee Order.

**III. <u>THE TRUST HAS A VALID SECURITY INTEREST IN ALL FUNDS CURRENTLY IN THE ESTATE</u>**

The Motion indicates that as of June 9, 2014, the estate had cash of about $5,414,000 and total receipts of about $7,036,000 (derived from the Trustee's settlements with certain persons and entities), as well as the possibility of obtaining an additional $200,000 relating to the settlement of other matters and the avoidance of other fraudulent transfers.

///

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case 2:10-bk-62208-ER Doc 1048 Filed 07/23/14 Entered 07/23/14 20:54:14 Desc Main Document Page 6 of 13

## A. AVOIDANCE ACTION PROCEEDS

The Motion provides only *one* legal basis – 11 U.S.C. §552(a) - in a meager attempt to reinforce the legal and factual fallacy that the security interest in favor of the Trust does not extend to the proceeds of the Trustee's avoidance actions. However, the Motion does not provide any analysis of the applicable state law, and more disconcerting, conveniently omits reference to 11 U.S.C. § 552(b) altogether, despite the fact that a very thorough analysis of § 552(b) was contained in the very case that the Trustee cites in the Motion support of its argument surrounding § 552(a).

California Commercial Code ("Cal. Comm. Code") § 9102 defines a general intangible as "any personal property, *including things in action*, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software." Cal. Comm. Code. § 9102 (*emphasis added*). As the Security Agreement indicates that "general intangibles" are one of the many forms of the Collateral, as a matter of basic state law and by virtue of the Assignment, the Trust has a valid security interest in "things in action." In turn, a "thing in action" is defined in the California Civil Code ("CCC") as "a right to recover money or other personal property by a judicial proceeding." CCC § 953. Based on the clear language of the Security Agreement and the applicable statutes, there can be little credible dispute that a fraudulent conveyance action is a thing in action, and thus the proceeds of those actions are the proceeds of collateral in which the Trust has a security interest.

11 U.S.C. § 522(b) provides that:

> "[e]xcept as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case 2:10-bk-62208-ER Doc 1048 Filed 07/23/14 Entered 07/23/14 20:54:14 Desc Main Document Page 7 of 13

> that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

11 U.S.C. § 552(b). "Simply stated, Section 552(b) provides that if a pre-petition security interest encumbers proceeds of pre-petition collateral, the post-petition proceeds of pre-petition collateral will be subject to the creditors pre-petition security interest." In re Ludford Fruit Products, Inc., 99 B.R. 18, 25 (C.D.Cal. 1989).

The Cal. Comm. Code defines proceeds as: "any of the following property:

> (A) Whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral.
> (B) Whatever is collected on, or distributed on account of, collateral.
> (C) Rights arising out of collateral.
> (D) To the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral.
> (E) To the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral."

Cal. Comm. Code § 9102(a)(64).

The Court in In re Figearo analyzed the very issue which is before this Court – whether property recovered by a trustee under his avoiding powers remains subject to a security interest that was enforceable against the transferee of the avoided transfer. In re Figearo, 79 B.R. 914, 917 (Bankr. D.Nev. 1987). Although the Court found that the trustee's right to avoid the transfer itself was not a "proceed" as defined by the Uniform Commercial Code (and thus the security interest of the creditor did not extend to the trustee's right to bring the action), it did find that the funds recovered on account of the fraudulent conveyance actions *were* proceeds to which the interest of the secured creditor did attach. Id. In analyzing 11 U.S.C. § 552(a)[5] in conjunction with the applicable state law, the Court held that "an avoidance and recovery of property by the trustee [was] not equivalent to a postpetition acquisition of property by the estate as contemplated

[5] 11 U.S.C. § 552(a) provides that: "*[e]xcept as provided in subsection (b) of this section*, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a). *Emphasis added.*





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

by 11 U.S.C. §§ 552(a) or 541(a)(7)." Id. at 918. Thus, in sum, the Trust Lien attaches to all assets, including any recoveries from preference or fraudulent transfer actions.

## IV. THE TRUSTEE HAS NOT OBTAINED THE REQUISITE AUTHORITY FROM EITHER THE TRUST OR THIS COURT TO USE COLLATERAL ENCUMBERED BY THE SECURITY INTEREST IN FAVOR OF THE TRUST

Although the Trustee is seeking a determination from this Court - by and through the Adversary Proceeding - that the Trust Lien is invalid, such a determination has not been made, and unless and until it has, the Trustee simply cannot proceed as if he already has succeeded in invalidating the Trust Lien. Of particular import, the Motion (as were the Fee Applications) is completely devoid of any discussion regarding the implications of 11 U.S.C. §363(a) and/or (c)(2) on the relief sought by and through the Motion. 11 U.S.C. §363(a) states, in relevant part, that:

> "'cash collateral' means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest *and includes the proceeds, products, offspring, rents, or profits of property*…subject to a security interest as provided in section 552(b) of this title, *whether existing before or after the commencement of a case under this title*."

11 U.S.C. §363(a). *Emphasis added.*

In turn, 11 U.S.C. §363(c)(2) states that "[t]he trustee may not use, sell, or lease cash collateral under [11 U.S.C. §363(c)(1)] unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2). At a minimum, the Trustee has not provided any discussion of, or proposed any adequate protection of the interests of Ms. Kirkland and the Trust, as is required by 11 U.S.C. § 363(e). As the Trust has not authorized the Trustee to use its cash collateral to pay the Professional Fees (and the Trust is not aware of any order of this Court authorizing the use of such cash collateral), and the Trustee has not made any provision for adequate protection of the interests of Ms. Kirkland and the Trust, the Trustee cannot use the Collateral, or any portion thereof, to pay the Professional Fees.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case 2:10-bk-62208-ER Doc 1048 Filed 07/23/14 Entered 07/23/14 20:54:14 Desc
Main Document Page 9 of 13

## V. CONCLUSION

Based on the foregoing, the Trust respectfully requests that the Court deny the relief requested in the Motion to the extent that it seeks to use the Collateral as the source of payment for the Professional Fees, or in the alternative, that payment of the Professional Fees be conditioned on the Trustee providing Ms. Kirkland and the Trust with adequate protection of their interests as mandated by 11 U.S.C. §363(e), and for such other relief as the Court deems just and proper.

Dated: July 23, 2014

BAKER & HOSTETLER LLP

By: ______________________
Ashley M. McDow
Michael T. Delaney

Attorneys for Poshow Ann Kirkland, individually and as trustee of the Bright Conscience Trust

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**Baker & Hostetler LLP, 11601 Wilshire Blvd., Ste. 1400, Los Angeles, CA 90025-0509**

A true and correct copy of the foregoing document entitled (*specify*): **OBJECTION OF POSHOW ANN KIRKLAND, INDIVIDUALLY AND AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST, TO MOTION OF TRUSTEE FOR ORDER AUTHORIZING TRUSTEE TO PAY UNPAID PRIOR ALLOWED INTERIM FEES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 23, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) July 23, 2014, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _______________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 23, 2014 | Harry Garner | */s/ Harry Garner* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

Case 2:10-bk-62208-ER Doc 1048 Filed 07/23/14 Entered 07/23/14 20:54:14 Desc
Main Document Page 11 of 13

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Ronald P Abrams rabrams@ebg-law.com;ecf@ebg-law.com, ecf@ebg-law.com
Ronald P Abrams rabrams@ebg-law.com, ecf@ebg-law.com
Ronald P Abrams rabrams@ebg-law.com, ecf@ebg-law.com
Michael W Aiken MAiken@NBSDefaultServices.com
Justin D Balser justin.balser@akerman.com,
toni.domres@akerman.com;kristine.elliott@akerman.com;victoria.edwards@akerman.com;elizabeth.streible@akerman.com;courtney.linney@akerman.com;brooke.nicholson@akerman.com
Adam N Barasch anb@severson.com
Colin M Bernardino cbernardino@kilpatricktownsend.com
Craig R Bockman crbockman@jonesbell.com, yleandro@jonesbell.com
Craig R Bockman crbockman@jonesbell.com, yleandro@jonesbell.com
Rebecca A Caley rcaley@caleylaw.com, kana@caleylaw.com;carolyn@caleylaw.com
Michael E Clark notices@blclaw.com, ecf@blclaw.com;borowitzclark1@gmail.com
Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
Sara E Cook lpalma@mckenna-law.com, scook@mckenna-law.com;bankruptcy@mckenna-law.com
Ana Damonte ana.damonte@pillsburylaw.com
Michael W Davis mdavis@ebg-law.com, ecf@ebg-law.com
Michael W Davis mdavis@ebg-law.com, ecf@ebg-law.com
Richard K Diamond rdiamond@dgdk.com, DanningGill@gmail.com;rdiamond@ecf.inforuptcy.com
Claire Y Dossier claire.dossier@akerman.com,
toni.domres@akerman.com;amy.rock@akerman.com;melissa.cizmorris@akerman.com;lisa.blaylock@akerman.com;courtney.linney@akerman.com
David K Eldan malvarado@pmcos.com, rpinal@pmcos.com;efilings@pmcos.com
Russ W Ercolani ercolaniecfmail@gmail.com
Debra Fogelman DEBRAFOGELMAN@LIVE.COM
Anthony A Friedman aaf@lnbyb.com
Larry W Gabriel ., nfields@ebg-law.com
Daniel H Gill dh.gill@verizon.net
Jeffrey I Golden jgolden@wgllp.com, kadele@wgllp.com
Michael J Gomez mjg@lrplaw.net, tara@lrplaw.net
Michelle S Grimberg msg@lnbrb.com, angela@lnbrb.com
Steven T Gubner sgubner@ebg-law.com, ecf@ebg-law.com
Regis Guerin efilings@amlegalgroup.com
Alan S Gutman alangutman@gutmanlaw.com
David S Hagen go4broq@earthlink.net
Robert A Hessling rhessling@gmail.com
Robert A Hessling rhessling@gmail.com
Richard B Hopkins rhopkins@bargerwolen.com, gvalles@bargerwolen.com
Lon B Isaacson - DISBARRED - ecfnotices@lbilaw.com
John P Jacobs jpjacobs@steptoe.com, tsosa@steptoe.com;sramme@steptoe.com
James N Knight james@jnk-law.com
Michael S Kogan mkogan@koganlawfirm.com
Alan R Kossoff akossoff@kwikalaw.com, bdipalma@kwikalaw.com
John P Kreis jkreis@kreislaw.com, j.kreis@ca.rr.com
David B Lally davidlallylaw@gmail.com
Lewis R Landau LLandau@HorganRosen.com
Ian Landsberg ilandsberg@landsberg-law.com, bgomelsky@landsberg-law.com;cdonoyan@landsberg-law.com;dzuniga@landsberg-law.com
Ian Landsberg ilandsberg@landsberg-law.com, bgomelsky@landsberg-law.com;cdonoyan@landsberg-law.com;dzuniga@landsberg-law.com
Mary D Lane mal@msk.com, mec@msk.com
Ann G Lee alee@grahamvaagelaw.com

Case 2:10-bk-62208-ER Doc 1048 Filed 07/23/14 Entered 07/23/14 20:54:14 Desc Main Document Page 12 of 13

Jennifer Leland JWLeland@rkmc.com
Kenderton S Lynch kenlynchlaw@aol.com
Howard N Madris hmadris@madrislaw.com
Aaron J Malo amalo@sheppardmullin.com, ksleeth@sheppardmullin.com
Ashley M McDow amcdow@bakerlaw.com, rojeda@bakerlaw.com;mdelaney@bakerlaw.com;sgaeta@bakerlaw.com
Neeta Menon nmenon@btlaw.com
Reed M Mercado rmercado@sheppardmullin.com
Stacey A Miller smiller@tharpe-howell.com
John A Moe jmoe@mckennalong.com
Susan I Montgomery susan@simontgomerylaw.com
Randall P Mroczynski randym@cookseylaw.com
Alan I Nahmias anahmias@mbnlawyers.com, jdale@mirmanbubman.com
Alan I Nahmias anahmias@mbnlawyers.com, jdale@mirmanbubman.com
David L. Neale dln@lnbrb.com
Warren N Nemiroff wnemiroff@yahoo.com
Brian A Paino ecfcacb@piteduncan.com
Kathy Bazoian Phelps kphelps@diamondmccarthy.com, mshabpareh@diamondmccarthy.com
Jason S Pomerantz jspomerantz@pszjlaw.com, jspomerantz@pszjlaw.com
Christopher O Rivas crivas@reedsmith.com
Jason M Rund (TR) trustee@srlawyers.com, jrund@ecf.epiqsystems.com
Deborah L Schrier-Rape dsr@dsr-law.com
Benjamin Seigel bseigel@buchalter.com, IFS_filing@buchalter.com;smartin@buchalter.com
Steven J Shapero sshapero@shaperohurst.com
David B Shemano DBShemano@rkmc.com
Autumn D Spaeth aspaeth@wgllp.com, tjones@wgllp.com
Daniel B Spitzer dspitzer@spitzeresq.com
Michael St James ecf@stjames-law.com
Alberta P Stahl (TR) trusteestahl@earthlink.net,
astahl@ecf.epiqsystems.com;trusteestahl\;\;\;.net@cacbapp.cacb.circ9.dcn
Adam M Starr starra@gtlaw.com, laik@gtlaw.com
Tina M Starr tstarr@caleylaw.com
David A Tilem davidtilem@tilemlaw.com,
DavidTilem@ecf.inforuptcy.com;malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com
Scott C Timpe stimpe@mbnlawyers.com, scott.timpe@gmail.com;aacosta@mbnlawyers.com
John C Torjesen Torjesen@LAinjurylaw.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Susan L Vaage svaage@grahamvaagelaw.com
Corey R Weber ecf@ebg-law.com, cweber@ebg-law.com
Corey R Weber ecf@ebg-law.com, cweber@ebg-law.com
Gilbert B Weisman notices@becket-lee.com
Richard Lee Wynne rlwynne@jonesday.com, sjperry@jonesday.com
Aleksandra Zimonjic azimonjic@lgbfirm.com, marizaga@lgbfirm.com;ncereseto@lgbfirm.com;cboyias@lgbfirm.com
Aaron E de Leest aed@dgdk.com, DanningGill@gmail.com;adeleest@ecf.inforuptcy.com

**2. SERVED BY UNITED STATES MAIL**

Presiding Judge:
Hon. Ernest Robles
U.S. Bankruptcy Court
255 E. Temple Street, Ste 1560
Los Angeles, CA 90012

<u>Interested Parties</u>:

Jeffrey W Cowan
The Cowan Law Firm
1541 Ocean Ave, Ste 200
Santa Monica, CA 90401

Danning Gill Diamond & Kollitz
2029 Century park East, Third Fl.
Los Angeles, CA 90067-2904

EPD Investment Co., LLC
601 S. Figueroa St., Ste 3900
Los Angeles, CA 90017
Ralph Grande
8889 Crown Colony Blvd
Ft Meyers, FL 33908

IX ST Portfolio 14, LP
c/o David K. Eldan, Esq.
Parker, Milliken, et al.
555 S. Flower St., 30th Fl.
Los Angeles, CA 90071

Andrew T Karlin
1242 Third Stt Promenade Ste 207
Santa Monica, CA 90401

Alfonso Ribeiro
C/O Landau Gottfried & Berger LLP
1801 Century Park East Suite 700
Los Angeles, CA 90067

Jeffrey A Simmons
Law Offices of Jeffrey A Simmons
5655 Lindero Canyon Rd. Ste 201
Westlake Village, CA 91362

Sun Trust Bank
Parker Millken
555 S. Flower St., 30th Fl.
Los Angeles, CA 90071

Joel G Weinberg
Freeman Freeman & Smiley LLP
1888 Century Park East Ste 1900
Los Angeles, CA 90067

# EXHIBIT G

Case 2:12-ap-02424-ER Doc 119 Filed 12/06/13 Entered 12/06/13 15:01:24 Desc Main Document Page 1 of 9

**WEILAND, GOLDEN,**
**SMILEY, WANG EKVALL & STROK, LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@wgllp.com
Autumn D. Spaeth, State Bar No. 208707
aspaeth@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone: (714) 966-1000
Facsimile: (714) 966-1002

Attorneys for Defendant John C. Kirkland

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN<br><br>Consolidated Debtors. | Case No. 2:10-bk-62208-ER<br><br>Chapter 7 |
| JASON M. RUND, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND, individually and as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,<br><br>Defendants. | Adv. No. 2:12-ap-02424-ER<br><br>**ANSWER OF JOHN C. KIRKLAND TO SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendant John C. Kirkland ("Kirkland"), through his counsel of record, respectfully submits his answer to the Second Amended Complaint (the "Complaint") filed by Jason M. Rund, the chapter 7 trustee ("Plaintiff"), as follows:

1. Answering paragraph 1, Kirkland denies the allegations contained therein and does not consent to Bankruptcy Court jurisdiction.



Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Case 2:12-ap-02424-ER Doc 119 Filed 12/06/13 Entered 12/06/13 15:01:24 Desc
Main Document Page 2 of 9

2. Answering paragraph 2, Kirkland admits Plaintiff is the chapter 7 trustee and denies all remaining allegations contained therein.

3. Answering paragraph 3, Kirkland admits he is a resident of the State of California and is licensed to practice law in the State of California. Kirkland denies all of the remaining allegations contained therein including that he is subject to the jurisdiction of the Bankruptcy Court.

4. Answering paragraph 4, Kirkland admits defendant Poshow Ann Kirkland ("Ann") is a resident of California, is his wife, and is the trustee of the Bright Conscience Trust. Kirkland denies the all remaining allegations contained therein.

5. Answering paragraph 5, Kirkland denies the allegations contained therein.

6. Answering paragraph 6, Kirkland denies the allegations contained therein and specifically denies the Bankruptcy Court has jurisdiction over this matter.

7. Answering paragraph 7, Kirkland admits that he resides in the District and denies all remaining allegations contained therein.

8. Answering paragraph 8, Kirkland admits the allegations contained therein.

9. Answering paragraph 9, Kirkland admits the allegations contained therein.

10. Answering paragraph 10, Kirkland admits the allegations contained therein.

11. Answering paragraph 11, Kirkland admits the allegations contained therein.

12. Answering paragraph 12, Kirkland admits that EPD was formed as a California limited liability company on June 27, 2003, but does not have sufficient information to admit or deny the remaining allegations contained therein and on that bases, denies them.

13. Answering paragraph 13, Kirkland lacks sufficient information to admit or deny, and on that basis denies the allegations contained therein.

14. Answering paragraph 14, Kirkland lacks sufficient information to admit or deny, and on that basis denies the allegations contained therein.

15. Answering paragraph 15, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

16. Answering paragraph 16, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

17. Answering paragraph 17, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

18. Answering paragraph 18, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

19. Answering paragraph 19, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

20. Answering paragraph 20, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

21. Answering paragraph 21, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

22. Answering paragraph 22, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

23. Answering paragraph 23, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

24. Answering paragraph 24, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

25. Answering paragraph 25, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

26. Answering paragraph 26, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

27. Answering paragraph 27, Kirkland lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

28. Answering paragraph 28, Kirkland admits that he graduated from UCLA Law School and that Keith Pressman was his roommate for a period of time that included a portion of law school and after. Kirkland further admits that from 2003 through the filing of Debtors' bankruptcy case, he was a lawyer practicing in the areas of securities law,

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Case 2:12-ap-02424-ER Doc 119 Filed 12/06/13 Entered 12/06/13 15:01:24 Desc
Main Document Page 4 of 9

corporate transactions and business litigation. Kirkland denies all remaining allegations contained therein.

29. Answering paragraph 29, Kirkland admits that he invested in EPD in an amount in excess of $150,000 of his personal funds. Kirkland lacks sufficient information to admit or deny, and on that basis, denies all remaining allegations contained therein.

30. Answering paragraph 30 and all subsections thereof, Kirkland denies the allegations contained therein.

31. Answering paragraph 31, Kirkland admits the allegations contained therein.

32. Answering paragraph 32 and all subsections thereof, Kirkland denies the allegations contained therein.

33. Answering paragraph 33, Kirkland denies the allegations contained therein.

34. Answering paragraph 34, Kirkland denies the allegations contained therein.

35. Answering paragraph 35, Kirkland denies the allegations contained therein.

36. Answering paragraph 36, Kirkland denies the allegations contained therein.

37. Answering paragraph 37, Kirkland denies the allegations contained therein.

38. Answering paragraph 38, Kirkland incorporates his responses to paragraphs 1-37 of the Complaint as though set forth fully herein.

39. Answering paragraph 39, Kirkland lacks sufficient information to admit or deny, and on that basis, denies all allegations contained therein.

40. Answering paragraph 40, Kirkland admits the BC Trust is the assignee of Kirkland's EPD Interests and the BC Trust's proofs of claim are based upon that interest. Kirkland denies all remaining allegations contained therein.

41. Answering paragraph 41, Kirkland denies all allegations contained therein.

42. Answering paragraph 42, Kirkland denies all allegations contained therein.

43. Answering paragraph 43, Kirkland denies all allegations contained therein.

44. Answering paragraph 44, Kirkland denies all allegations contained therein.

45. Answering paragraph 45, Kirkland denies all allegations contained therein.

46. Answering paragraph 46, Kirkland denies all allegations contained therein.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Case 2:12-ap-02424-ER Doc 119 Filed 12/06/13 Entered 12/06/13 15:01:24 Desc
Main Document Page 5 of 9

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

47. Answering paragraph 47, Kirkland denies all allegations contained therein.

48. Answering paragraph 48, Kirkland incorporates his responses to paragraphs 1-48 of the Complaint as though set forth fully herein.

49. Answering paragraph 49, Kirkland denies all allegations contained therein.

50. Answering paragraph 50, Kirkland denies all allegations contained therein.

51. Answering paragraph 51, Kirkland incorporates his responses to paragraphs 1-50 of the Complaint as though set forth fully herein.

52. Answering paragraph 52, Kirkland denies all allegations contained therein.

53. Answering paragraph 53, Kirkland denies all allegations contained therein.

54. Answering paragraph 54, Kirkland incorporates his responses to paragraphs 1-53 of the Complaint as though set forth fully herein.

55. Answering paragraph 55, Kirkland denies all allegations contained therein.

56. Answering paragraph 56, Kirkland denies all allegations contained therein.

57. Answering paragraph 57, Kirkland incorporates his responses to paragraphs 1-56 of the Complaint as though set forth fully herein.

58. Answering paragraph 58, Kirkland denies all allegations contained therein.

59. Answering paragraph 59, Kirkland denies all allegations contained therein.

60. Answering paragraph 60, Kirkland incorporates his responses to paragraphs 1-59 of the Complaint as though set forth fully herein.

61. Answering paragraph 61, Kirkland denies all allegations contained therein.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is subject to arbitration agreements between Kirkland and the Debtors.

## SECOND AFFIRMATIVE DEFENSE

The Bankruptcy Court lacks jurisdiction to adjudicate the claims asserted against Kirkland as he has not filed a proof of claim in this case or otherwise submitted or consented to its jurisdiction.

Case 2:12-ap-02424-ER Doc 119 Filed 12/06/13 Entered 12/06/13 15:01:24 Desc Main Document Page 6 of 9

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, fails to state facts sufficient to constitute a cause of action against Kirkland because, among other things, he has not filed a proof of claim in the case.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the relevant statute of limitations

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the Federal Rule of Civil Procedure 11 safe harbor.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrine of recoupment.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrines of set off.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrines of laches, waiver, and/or estoppel.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrine of in pari delicto.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred because the claims have been released.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the litigation privilege.

Case 2:12-ap-02424-ER Doc 119 Filed 12/06/13 Entered 12/06/13 15:01:24 Desc Main Document Page 7 of 9

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred because Kirkland took in good faith and for a reasonably equivalent value.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred because Debtors were not insolvent at the time of the transfers.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred because the transfers were not of property of the Debtors.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrine of unclean hands.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrine of respondeat superior.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred because Kirkland was not the immediate or mediate transferee.

## RESERVATION OF RIGHTS

Kirkland reserves the right to add additional affirmative defenses as they become known through discovery and/or investigation of this matter.

Case 2:12-ap-02424-ER Doc 119 Filed 12/06/13 Entered 12/06/13 15:01:24 Desc
Main Document Page 8 of 9

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Wherefore, Kirkland prays for judgment against Plaintiff as follows:

A. That Plaintiff takes nothing by way of the Complaint;

B. That Kirkland be awarded his costs of suit incurred herein; and

C. That Kirkland be awarded such other and further relief as the Court may deem just and proper.

Dated:

WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP

By: /s/ Autumn D. Spaeth
AUTUMN D. SPAETH
Attorneys for Defendant,
John C. Kirkland

## DEMAND FOR JURY TRIAL

Defendant John C. Kirkland hereby demands a trial by jury on all causes of action and issues so triable.

Dated:

WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP

By: /s/ Autumn D. Spaeth
AUTUMN D. SPAETH
Attorneys for Defendant,
John C. Kirkland

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**650 Town Center Drive, Suite 950, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **ANSWER OF JOHN C. KIRKLAND TO SECOND AMENDED COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **December 6, 2013**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael W Davis mdavis@ebg-law.com, ecf@ebg-law.com
Larry W Gabriel lgabriel@ebg-law.com, nfields@ebg-law.com
Jeffrey I Golden jgolden@wgllp.com, kadele@wgllp.com
Ashley M McDow amcdow@bakerlaw.com, rojeda@bakerlaw.com;gharris@bakerlaw.com
Jason M Rund (TR) trustee@srlawyers.com, jrund@ecf.epiqsystems.com
Autumn D Spaeth aspaeth@wgllp.com, tjones@wgllp.com
Scott C Timpe stimpe@mbnlawyers.com, scott.timpe@gmail.com;aacosta@mbnlawyers.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Corey R Weber ecf@ebg-law.com, cweber@ebg-law.com
Robert G Wilson rwilson@lgbfirm.com, kalandy@lgbfirm.com
Aleksandra Zimonjic azimonjic@lgbfirm.com, marizaga@lgbfirm.com;ncereseto@lgbfirm.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Ernest Robles
United States Bankruptcy Court
255 E. Temple St., Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 6, 2013 | Terri Jones | /s/ Terri Jones |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT H

Case 2:12-ap-02424-ER Doc 209 Filed 07/26/16 Entered 07/26/16 22:10:56 Desc Main Document Page 1 of 9

**Lewis R. Landau** (CA Bar No. 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888) 822-4340
*Email: Lew@Landaunet.com*

Attorney for Defendant,
Poshow Ann Kirkland, as Trustee of the
Bright Conscience Trust Dated September 9, 2009

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD Investment Company, LLC and Jerrold S. Pressman,<br><br>Debtors. | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-02424-ER |
| Jason M. Rund, Chapter 7 Trustee,<br><br>Plaintiff,<br>v.<br><br>John C. Kirkland, an individual and Poshow Ann Kirkland, individually and as Trustee of the Bright Conscience Trust Dated September 9, 2009,<br><br>Defendants. | **ANSWER OF POSHOW ANN KIRKLAND AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009, TO SECOND AMENDED COMPLAINT**<br><br>Pretrial Conference:<br>Date: February 14, 2017<br>Time: 11:00 a.m.<br>Place: Courtroom 1568; Judge Robles<br>US Bankruptcy Court<br>255 E. Temple Street, 15th Floor<br>Los Angeles, California 90012 |

Defendant Poshow Ann Kirkland, as Trustee of the Bright Conscience Trust Dated September 9, 2009 (“BC Trust”), hereby answers the Second Amended Complaint (the “Complaint”) [ECF # 45] filed by Jason M. Rund, the chapter 7 trustee (“Plaintiff”), as follows:

///

///

///

1. Answering paragraph 1, BC Trust admits the allegations contained therein solely as they relate to causes of action arising from BC Trust's proofs of claim Nos. 171, 235 and 236 and denies all remaining allegations contained therein.

2. Answering paragraph 2, BC Trust admits Plaintiff is the chapter 7 trustee and admits the allegations contained therein solely as they relate to causes of action arising from BC Trust's proofs of claim Nos. 171, 235 and 236 and denies all remaining allegations contained therein.

3. Answering paragraph 3, BC Trust admits that John C. Kirkland was a resident of the State of California and is licensed to practice law in the State of California. BC Trust admits the allegations contained therein solely as they relate to causes of action arising from BC Trust's proofs of claim Nos. 171, 235 and 236 and denies all of the remaining allegations contained therein.

4. Answering paragraph 4, BC Trust admits defendant Poshow Ann Kirkland was a resident of California, is John C. Kirkland's spouse, and is the trustee of the BC Trust. BC Trust denies the all remaining allegations contained therein.

5. Answering paragraph 5, BC Trust admits the allegations contained therein.

6. Answering paragraph 6, BC Trust admits the allegations contained therein solely as they relate to causes of action arising from BC Trust's proofs of claim Nos. 171, 235 and 236 and denies all remaining allegations contained therein.

7. Answering paragraph 7, BC Trust admits the allegations contained therein solely as they relate to causes of action arising from BC Trust's proofs of claim Nos. 171, 235 and 236 and denies all remaining allegations contained therein.

8. Answering paragraph 8, BC Trust admits the allegations contained therein.

9. Answering paragraph 9, BC Trust admits the allegations contained therein.

10. Answering paragraph 10, BC Trust admits the allegations contained therein.

11. Answering paragraph 11, BC Trust admits the allegations contained therein.

Case 2:12-ap-02424-ER Doc 209 Filed 07/26/16 Entered 07/26/16 22:10:56 Desc
Main Document Page 3 of 9

12. Answering paragraph 12, BC Trust admits that EPD was formed as a California limited liability company on June 27, 2003, but does not have sufficient information to admit or deny the remaining allegations contained therein and on that bases, denies them.

13. Answering paragraph 13, BC Trust lacks sufficient information to admit or deny, and on that basis denies the allegations contained therein.

14. Answering paragraph 14, BC Trust lacks sufficient information to admit or deny, and on that basis denies the allegations contained therein.

15. Answering paragraph 15, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

16. Answering paragraph 16, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

17. Answering paragraph 17, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

18. Answering paragraph 18, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

19. Answering paragraph 19, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

20. Answering paragraph 20, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

21. Answering paragraph 21, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

22. Answering paragraph 22, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

23. Answering paragraph 23, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

24. Answering paragraph 24, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

25. Answering paragraph 25, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

26. Answering paragraph 26, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

27. Answering paragraph 27, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

28. Answering paragraph 28, BC Trust admits that John C. Kirkland graduated from UCLA Law School and that Keith Pressman was his roommate for a period of time that included a portion of law school and after. BC Trust further admits that from 2003 through the filing of Debtors' bankruptcy case, John C. Kirkland was a lawyer practicing in the areas of securities law, corporate transactions and business litigation. BC Trust denies all remaining allegations contained therein.

29. Answering paragraph 29, BC Trust admits that John C. Kirkland invested in EPD in an amount in excess of $150,000 of his personal funds. BC Trust lacks sufficient information to admit or deny, and on that basis, denies all remaining allegations contained therein.

30. Answering paragraph 30 and all subsections thereof, BC Trust denies the allegations contained therein.

31. Answering paragraph 31, BC Trust lacks sufficient information to admit or deny, and on that basis, denies the allegations contained therein.

32. Answering paragraph 32 and all subsections thereof, BC Trust denies the allegations contained therein.

33. Answering paragraph 33, BC Trust denies the allegations contained therein.

34. Answering paragraph 34, BC Trust denies the allegations contained therein.

35. Answering paragraph 35, BC Trust denies the allegations contained therein.

36. Answering paragraph 36, BC Trust denies the allegations contained therein.

37. Answering paragraph 37, BC Trust denies the allegations contained therein.

38. Answering paragraph 38, BC Trust incorporates its responses to paragraphs 1-37 of the Complaint as though set forth fully herein.

Case 2:12-ap-02424-ER Doc 209 Filed 07/26/16 Entered 07/26/16 22:10:56 Desc Main Document Page 5 of 9

39. Answering paragraph 39, BC Trust lacks sufficient information to admit or deny, and on that basis, denies all allegations contained therein.

40. Answering paragraph 40, BC Trust admits the BC Trust is the assignee of John C. Kirkland's EPD Interests and the BC Trust's proofs of claim are based upon that interest. BC Trust denies all remaining allegations contained therein.

41. Answering paragraph 41, BC Trust denies all allegations contained therein.

42. Answering paragraph 42, BC Trust denies all allegations contained therein.

43. Answering paragraph 43, BC Trust denies all allegations contained therein.

44. Answering paragraph 44, BC Trust denies all allegations contained therein.

45. Answering paragraph 45, BC Trust denies all allegations contained therein.

46. Answering paragraph 46, BC Trust denies all allegations contained therein.

47. Answering paragraph 47, BC Trust denies all allegations contained therein.

48. Answering paragraph 48, BC Trust incorporates its responses to paragraphs 1-48 of the Complaint as though set forth fully herein.

49. Answering paragraph 49, BC Trust denies all allegations contained therein.

50. Answering paragraph 50, BC Trust denies all allegations contained therein.

51. Answering paragraph 51, BC Trust incorporates its responses to paragraphs 1-50 of the Complaint as though set forth fully herein.

52. Answering paragraph 52, BC Trust denies all allegations contained therein.

53. Answering paragraph 53, BC Trust denies all allegations contained therein.

54. Answering paragraph 54, BC Trust incorporates its responses to paragraphs 1-53 of the Complaint as though set forth fully herein.

55. Answering paragraph 55, BC Trust denies all allegations contained therein.

56. Answering paragraph 56, BC Trust denies all allegations contained therein.

57. Answering paragraph 57, BC Trust incorporates its responses to paragraphs 1-56 of the Complaint as though set forth fully herein.

58. Answering paragraph 58, BC Trust denies all allegations contained therein.

59. Answering paragraph 59, BC Trust denies all allegations contained therein.

Case 2:12-ap-02424-ER Doc 209 Filed 07/26/16 Entered 07/26/16 22:10:56 Desc Main Document Page 6 of 9

60. Answering paragraph 60, BC Trust incorporates its responses to paragraphs 1-59 of the Complaint as though set forth fully herein.

61. Answering paragraph 61, BC Trust denies all allegations contained therein.

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is subject to arbitration agreements. To the extent any causes of action against BC Trust are not subject to arbitration, such claims should be abated pending conclusion of any arbitration proceedings.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, fails to state facts sufficient to constitute a cause of action against BC Trust.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the relevant statute of limitations.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrine of recoupment.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrines of set off.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrines of laches, waiver, and/or estoppel.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrine of *in pari delicto*.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred because the claims have been released.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the litigation privilege.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred because BC Trust took in good faith and for a reasonably equivalent value.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred because Debtors were not insolvent at the time of the transfers.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred because the monetary transfers were not of property of the Debtors.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrine of unclean hands.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred under a contractual statute of repose.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred because BC Trust was not the immediate or mediate transferee.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred by the doctrine of collateral estoppel.

Case 2:12-ap-02424-ER Doc 209 Filed 07/26/16 Entered 07/26/16 22:10:56 Desc Main Document Page 8 of 9

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint, as a whole and each and every cause of action contained therein, is barred based on Plaintiff's election of remedies.

**RESERVATION OF RIGHTS**

BC Trust reserves the right to add additional affirmative defenses as they become known through discovery and/or investigation of this matter.

*Wherefore*, BC Trust prays for judgment against Plaintiff as follows:

A. That Plaintiff takes nothing by way of the Complaint;

B. That BC Trust be awarded costs of suit incurred herein; and

C. That BC Trust is awarded such other and further relief as the Court may deem just and proper.

Dated: July 26, 2016

**Lewis R. Landau**
**Attorney-at-Law**

By: */s/ Lewis R. Landau*
Lewis R. Landau
Attorneys for Defendant,
Poshow Ann Kirkland, as Trustee
of the Bright Conscience Trust Dated
September 9, 2009

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

22287 Mulholland Hwy., # 318
Calabasas, CA 91302

A true and correct copy of the foregoing document entitled (*specify*): ANSWER OF POSHOW ANN KIRKLAND AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009, TO SECOND AMENDED COMPLAINT

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/26/2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 07/26/2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Robles, US Bankruptcy Court, 255 E Temple Street Suite 1560, Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _______________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/26/2016 | Lewis R. Landau | /s/ Lewis R. Landau |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# EXHIBIT I

2:13-CV-09023-SJO

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

---

IN RE: EPD INVESTMENT COMPANY, LLC, and

JERROLD S. PRESSMAN,

Consolidated Debtors.

---

POSHOW ANN KIRKLAND, individually and as Trustee of

THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,

Appellant,

v.

JASON M. RUND, Chapter 7 Trustee,

Appellee.

---

On Appeal from the U.S. Bankruptcy Court for the Central District of California

---

# APPELLANTS' OPENING BRIEF

---

ASHLEY M. MCDOW, ESQ. (Bar No. 245114)
MICHAEL T. DELANEY (Bar No. 261714)
BAKER & HOSTETLER LLP
16100 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: amcdow@bakerlaw.com

Attorneys for Appellant POSHOW ANN KIRKLAND, individually and as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009

Case 2:13-cv-09023-SJO Document 9 Filed 02/11/14 Page 2 of 19 Page ID #:73

# TABLE OF CONTENTS

**Page(s)**

**I. INTRODUCTION ........................................................................ 1**

**II. BASIS OF APPELLATE JURISDICTION ........................................ 2**

**III. STATEMENT REGARDING ORAL ARGUMENT ............................ 3**

**IV. STATEMENT OF ISSUES PRESENTED ........................................ 3**

**V. STANDARD OF REVIEW .................................................................. 3**

**VI. STATEMENT OF THE CASE ........................................................... 4**

A. Nature of the Case ........................................................................ 4

B. Procedural History and Relevant Facts ........................................ 4

1. Background ........................................................................ 4

2. Adversary Proceeding ........................................................ 5

3. Appeal of John Kirkland to Motion to Compel Arbitration ....... 6

4. Applicable Arbitration Provision(s) ........................................ 7

5. Tentative Ruling Issued By Bankruptcy Court ....................... 7

**VII. ARGUMENT .................................................................................... 8**

A. Federal Policy Categorically Favors Arbitration .......................... 8

B. The Trustee Failed To Meet The Requisite Burden Of Establishing That The Proposed Arbitration Inherently Conflicted With Any Underlying Purpose Of The Bankruptcy Code .................. 10

**VIII. CONCLUSION ................................................................................ 15**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Cooley*,
362 B.R. 514 (N.D. Ala. 2007) ........ 9

*Erection Co., Inc. v. W & W Steel, LLC*,
513 Fed.Appx. 664 (9th Cir. 2013) ........ 2, 4

*In re Hart Ski Mfg. Co.*,
18 B.R. 154 (Bankr. D. Minn. 1982), *aff'd*, 22 B.R. 763 (D. Minn.1982), *aff'd*, 711 F.2d 845 (8th Cir. 1983) ........ 8

*In re Mor-Ben Insurance Markets Corp.*,
73 B.R. 644 (B.A.P. 9th Cir.1987) ........ 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........ 8

*In re P&G Drywall and Acoustical Corp.*,
156 B.R. 704 (D.Maine 1993) ........ 13

*In re Payton Const. Corp.*,
399 B.R. 352 (D.Mass. 2009) ........ 9

*In re Rarities Group, Inc.*,
434 B.R. 1 (D. Mass. 2010) ........ 9

*Rogers v. Royal Caribbean Cruise Line*,
547 F.3d 1148 (9th Cir. 2008) ........ 8

*Shearson/American Express, Inc. v. McMahon*,
482 U.S. 220 (1987) ........ 9

*In re Shores of Panama, Inc.*,
387 B.R. 864 (N.D.Fl. 2008) (*emphasis added*) ........ 12

*In re Snake River Dairyman's Ass'n, Inc.*,
No. 03-41124, 2004 WL 4960361 (Bankr. D. Idaho filed Mar. 1, 2004) ........ 8

*In re Thorpe Insulation Co.*,
671 F.3d 1011 (9th Cir. 2012) ....................................................................3, 9, 10

*Trompeter v. Ally Fin., Inc.*,
914 F. Supp. 2d 1067 (N.D. Cal. 2012) *9 U.S.C. §16(a)(1)(B)*............................2

*Wolsey, Ltd. v. Foodmaker, Inc.*,
144 F.3d 1205 (9th Cir. 1998) ..............................................................................2

**STATUTES**

9 U.S.C. § 2 ...........................................................................................................8

chapter 7 of the Bankruptcy Code. [App. Ex. 10] ...........................................*passim*

Bankruptcy Code. ***No.*** .......................................................................................3

FAA.....................................................................................................................8, 9

Federal Arbitration Act .......................................................................................10

Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ........................................................2

Federal Arbitration Act (the "FAA") .....................................................................8

## I. INTRODUCTION

The loan documents and related agreements between EPD Investments Company, LLC ("EPD") and or Jerrold S. Pressman ("Pressman") (collectively, the "Debtors"), on the one hand, and The Bright Conscience Trust (as assignee), on the other, contain broad form arbitration clauses, requiring any and all disputes, controversies and claims arising out of, relating to, or connected with the agreements, or otherwise involving the parties thereto, to be resolved by expedited, streamlined and binding arbitration before a retired judge at JAMS. As duly noted by the Bankruptcy Court, the Trustee has never challenged the fact that the arbitration provisions in the relevant loan documents are valid and enforceable.

The strong federal policy in favor of arbitration mandates that arbitration agreements are generally enforceable in bankruptcy. Under controlling Ninth Circuit authority, a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision ***only*** if arbitration would conflict with the underlying purposes of the Bankruptcy Code. Because the Chapter 7 Trustee failed to make a showing of any such conflict here, the Bankruptcy Court had no discretion to deny arbitration.

In fact, the only rhetoric (which is not completely legally inapposite) proffered by the Trustee is that arbitration is not appropriate because arbitration inherently conflicts with the underlying policies of the Bankruptcy Code (none of which have actually been identified by the Trustee). Unfortunately for the Trustee, simply repeating this conclusory tautology does not create a non-speculative, concrete, unavoidable conflict. Based upon the strong federal policy in favor of arbitration agreements and the failure of the Trustee to meet the requisite burden, Appellant respectfully submits that the Bankruptcy Court had no discretion to deny the Arbitration Motion.

## II. BASIS OF APPELLATE JURISDICTION

On or about November 15, 2013, the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") entered an order (the "Arbitration Order") denying the motion (the "Arbitration Motion") to compel arbitration and stay the adversary proceeding styled *Jason M. Rund, Chapter 7 Trustee vs. John C. Kirkland, an individual, and Poshow Ann Kirkland, as Trustee of the Bright Conscience Trust Dated September 9, 2009* and bearing case number 2:12-ap-02424-ER (the "Adversary Proceeding") [App. Ex. 21], brought by John Kirkland ("Kirkland") and joined in by Appellant Poshow Ann Kirkland (the "Appellant"), individually and as Trustee of The Bright Conscience Trust Dated September 9, 2009 (the "Trust") [App. Ex. 9].

To ensure that the right to arbitration is protected, the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., authorizes an immediate appeal from an order denying a petition to compel arbitration. *Erection Co., Inc. v. W & W Steel, LLC*, 513 Fed.Appx. 664 (9th Cir. 2013); *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1207 (9th Cir. 1998) *("[w]e have jurisdiction over an appeal from an order denying a motion to compel arbitration under 9 U.S.C. § 16(a)(1)(C)"*); *see also Trompeter v. Ally Fin., Inc.*, 914 F. Supp. 2d 1067, 1079 (N.D. Cal. 2012)(*9 U.S.C. §16(a)(1)(B) "generally permits immediate appeals of orders hostile to arbitration, whether the orders are final or interlocutory, but bars appeals of interlocutory orders favorable to arbitration."*).

Appellant timely appealed the Order on November 29, 2013, by filing a notice of appeal. [App. Ex.24].

Expressly recognizing that "serious legal issues are raised by the Arbitration Motion which should be resolved on appeal" and finding that this appeal presents "the substantial question of whether arbitration of fraudulent transfer claims and

objections to claims conflicts with the purpose of the Bankruptcy Code of having a bankruptcy court decide bankruptcy issues," the Bankruptcy Court entered an order imposing a stay pending the outcome of the instant appeal on or about January 27, 2014. [App. Ex. 29].

**III. STATEMENT REGARDING ORAL ARGUMENT**

Appellant respectfully requests oral argument.

**IV. STATEMENT OF ISSUES PRESENTED**

1. Whether the arbitration agreements should be enforced when there was no showing by the party bearing the burden of proof (the opponent) that enforcement of the applicable arbitration provisions inherently conflict with the underlying purposes of the bankruptcy code. ***Yes.***

2. Whether the Bankruptcy Court had discretion to decline to enforce the applicable arbitration provisions when Jason M. Rund, the Chapter 7 trustee and the plaintiff in the Adversary Proceeding (the "Trustee"), did not meet his burden of demonstrating that a non-speculative, concrete, unavoidable conflict existed between the enforcement of the applicable arbitration provisions and the underlying purposes of the Bankruptcy Code. ***No.*** Absent a showing of an actual conflict by the opposing party, enforcement of the arbitration agreements is not discretionary**.**

**V. STANDARD OF REVIEW**

"Whether a bankruptcy court has discretion to deny a motion to compel arbitration is a question of law that we review de novo." *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1019-20 (9th Cir. 2012).

///

///

///

## VI. STATEMENT OF THE CASE

### A. Nature of the Case

The underlying case (the "Bankruptcy Case") was commenced by the filing of two petitions (one involuntary and one voluntary) under chapter 7 of the Bankruptcy Code. [App. Ex. 10] The estate consists of two substantively consolidated bankruptcy cases—namely, *In re EPD Investments Company, LLC*, Bankr. Case No. 2:10-bk-62208-ER, and *In re Jerrold S. Pressman*, Bankr. Case. No. 2:12-bk-13760-ER. [App. Ex. 10] The substantively consolidated bankruptcy cases proceed under the *In re EPD Investments Company, LLC* bankruptcy case number. [App. Ex. 10] The Trustee is the chapter 7 trustee for the consolidated Bankruptcy Case. [App. Ex. 10]

The Appellant appeals the order denying the Arbitration Motion based primarily upon the failure of the Trustee to meet his burden to demonstrate that there was an inherent conflict between arbitration and the underlying policies of the Bankruptcy Code.

### B. Procedural History and Relevant Facts

1. Background

Between 2007 and 2009, the Trust and/or Kirkland, the assignor of certain interests in EPD Investment Company, LLC ("EPD") presently owned by the Trust, invested $2,100,000 in EPD. [App. Ex. 3][1] As security for the investment, EPD granted Kirkland a security interest in the assets of EPD. [App. Ex. 3]

---

[1] The references to the Second Amended Complaint filed in the Adversary Proceeding or any other pleading or declaration filed by the Trustee or any party other than the Trust contained herein do not constitute an admission as to the accuracy or validity of the statements and/or allegations contained therein. The references are only intended to provide the Court with context to the instant appeal.

Case 2:13-cv-09823-SJO Document 9 Filed 02/11/14 Page 9 of 19 Page ID #:80

The Trust was formed in or about September 2009. [App. Ex. 3] Thereafter, Kirkland assigned his interest in his prior investment in EPD, as represented by the underlying loan documents (including but not limited to a Security Interest Agreement), to the Trust. [App. Ex. 3] Following the assignment of the foregoing interests to the Trust, a UCC-1 Financing Statement was recorded in favor of the Trust. [App. Ex. 3]

On or about December 7, 2010, certain petitioning creditors (collectively, the "Petitioning Creditors") filed an involuntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") against EPD. [App. Ex. 10] The Trust is listed in EPD's schedules as holding an undisputed secured claim of approximately $2,000,000. On December 12, 2011, the Trust filed a timely proof of claim in the EPD bankruptcy case reflecting a secured claim of approximately $2,700,000, including interest. [App. Ex. 10]

On or about February 1, 2012, Jerrold S. Pressman ("Pressman") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. [App. Ex. 10] On or about June 4, 2012, the Bankruptcy Court ordered the EPD and Pressman bankruptcy estates substantively consolidated. [App. Ex. 10] On or about February 15, 2013, the Trust filed a timely proof of claim in the Pressman bankruptcy case reflecting a secured claim of approximately $3,500,000, including interest. [App. Ex. 10].

2. Adversary Proceeding

On or about October 31, 2012, the Trustee commenced the Adversary Proceeding. [App. Ex. 1] On or about December 7, 2012, the Trustee filed the First Amended Complaint in the Adversary Proceeding. [App. Ex. 2] Therein, the Trustee asserted several causes of action, including: (a) aiding and abetting breach of fiduciary duty (against Kirkland); (b) fraudulent concealment (against Kirkland); (c) breach of fiduciary duty (against Kirkland); (d) fraud upon the court

(against Kirkland); (e) disallowance of proofs of claim (against the Trust); and (f) avoidance of fraudulent transfers (against Kirkland and the Trust) under actual intent and constructive fraud theories. [App. Ex. 2] Each cause of action as to the Trust, individually or jointly with Kirkland, was based on the premise that Kirkland was co-trustee of the Trust and, thus, as the Trustee contended, Kirkland's alleged misconduct was imputed to the Trust.

On or about May 24, 2013, the Trustee filed the Second Amended Complaint in the Adversary Proceeding. [App. Ex. 3] Thereby, the Trustee eliminated the first four causes of action solely against Kirkland and amended the remaining causes of action. As to the fifth cause of action for disallowance of the Trust's proofs of claim, the Trustee added an alternate pleading for subordination of the Trust's proofs of claim. [App. Ex. 3] The Trustee also altered the theory of liability due to the fact that Kirkland is not and never has been a co-trustee of the Trust. [App. Ex. 3] The Trustee solely seeks to impute Kirkland's alleged misconduct to the Trust and utilize the same to disallow or subordinate the Trust's proofs of claim. [App. Ex. 3] The remaining causes of action for fraudulent transfer, as with the prior manifestations of the complaint, also rely solely on Kirkland's alleged misconduct. [App. Ex. 3]

The Trustee does not allege any misconduct on behalf of the Trust independent of the alleged misconduct of Kirkland. [App. Ex. 3]

3. Appeal of John Kirkland to Motion to Compel Arbitration

In addition to the instant appeal, the Arbitration Order is subject to an appeal filed by Kirkland on or about November 18, 2013 (the "Kirkland Appeal"). [App. Ex. 22] The Kirkland Appeal seeks, *inter alia*, a determination regarding whether

the Bankruptcy Court erred in deciding not to enforce the arbitration agreements—the same issue presented in the instant appeal.[2]

4. Applicable Arbitration Provision(s)

Section 20 of the Security Interest Agreement, which was one of the loan documents assigned to the Trust and is the basis for the claims in the Adversary Proceeding, states that: "[a]ny dispute, controversy, claim or action of any kind or nature whatsoever, including the issue of arbitrability, arising out of, in connection with or relating to this Agreement shall be resolved by final and binding arbitration before a retired judge at JAMS in Santa Monica, California, in accordance with its most expedited Streamlined Arbitration Rules, and the Final Offer (or Baseball) Arbitration Option. Any interim or final award of the arbitrator may be enforced by and court of competent jurisdiction. The prevailing party shall be awarded its arbitrator, expert witness and attorney fees, costs and expenses." [App. Ex. 7].

5. Tentative Ruling Issued By Bankruptcy Court

On or about November 5, 2013, the Bankruptcy Court issued the Arbitration Tentative, which set forth the reasons for denying the Arbitration Motion and was expressly incorporated into the order denying the Arbitration Motion. [App. Ex. 16] The Arbitration Tentative states that the "sole issue currently before the Court is whether this Court should exercise its discretion to decline to enforce the arbitration provisions because they conflict with the underlying purposes of the Bankruptcy Code." [App. Ex. 16] The Arbitration Tentative makes clear that there were no factual findings made by the Bankruptcy Court with respect to its

[2] The Trustee and Kirkland entered into a stipulation to extend the time for Kirkland to file his opening brief. Although the Trust requested a like extension to have the Kirkland Appeal determined contemporaneously with the Court's determination of the instant appeal, the Trustee refused to agree to an extension.

decision to deny the relief sought by and through the Arbitration Motion. [App. Ex. 16]

Most notably therein, the Bankruptcy Court found that, "the Trustee does not challenge the applicability of the arbitration provisions cited by J. Kirkland in the letters of engagement, Funding Agreement and Security Interest Agreement to the claims in the Complaint." [App. Ex. 16]. Of central import with respect to the issues before this Court, the Bankruptcy Court also found that "enforcing the arbitration provisions herein would conflict with the purpose underlying the Bankruptcy Code of having bankruptcy law issues decided by bankruptcy courts." [App. Ex. 16].

## VII. ARGUMENT

### A. Federal Policy Categorically Favors Arbitration

The Federal Arbitration Act (the "FAA") codifies an "emphatic federal policy in favor of arbitral dispute resolution," *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158 (9th Cir. 2008), and provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at laws or in equity for the revocation of any contract." 9 U.S.C. § 2. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). In fact, a Ninth Circuit bankruptcy court and a Ninth Circuit Bankruptcy Appellate Panel ("BAP") have both held that in a core adversary proceeding, the contest between two parties to an arbitration agreement should continue in arbitration. *In re Mor-Ben Insurance Markets Corp.*, 73 B.R. 644 (B.A.P. 9th Cir.1987); *In re Snake River Dairyman's Ass'n, Inc.*, No. 03-41124, 2004 WL 4960361 (Bankr. D. Idaho filed Mar. 1, 2004).

Furthermore, the Bankruptcy Appellate Panel has expressly recognized that "a creditor may file a claim to secure a right to partake in distribution of the debtor's estate without waiving the right to arbitration." *In re Mor-Ben Insurance Markets Corp.*, 73 B.R. at 646, *citing In re Hart Ski Mfg. Co.*, 18 B.R. 154 (Bankr. D. Minn. 1982), *aff'd*, 22 B.R. 763 (D. Minn.1982), *aff'd*, 711 F.2d 845 (8th Cir. 1983). "Absent a Congressional mandate to preclude arbitration in the bankruptcy context, or a compelling situation serious affecting the rights of creditors in a bankruptcy," the parties should be held to their agreement to arbitrate. *Id*.

"The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which the parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another statute." *In re Rarities Group, Inc.*, 434 B.R. 1, 7 (D. Mass. 2010). "Valid arbitration agreements must be enforced unless it can be determined Congress intended to create an exception to the FAA's mandate for a particular claim." *In re Cooley*, 362 B.R. 514, 519 (N.D. Ala. 2007).

The Supreme Court has long recognized that the FAA mandates enforcement of agreements to arbitrate even if arbitration potentially impacts a competing policy interest set forth in another act of Congress. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). A court may deny arbitration in such a circumstance ***only if*** it is either (i) apparent from the legislative text or history that Congress intended to preclude arbitration or (ii) there is an inherent conflict between arbitration and that statute's underlying purpose. *Id*. at 227. "Courts applying the *McMahon* analysis in the bankruptcy context have found little guidance from either the text of the bankruptcy code or its legislative history to discern congressional intent to create an exception to the FAA in the Bankruptcy Code." *In re Cooley*, 362 B.R. at 519; *see also In re Thorpe Insulation*

*Co.*, 671 F.3d 1011, 1020 (9th Cir. 2012) (*[n]either the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting.”*).

In fact, “most courts have concluded a bankruptcy court has no discretion to refuse to enforce an arbitration agreement unless arbitration would seriously jeopardize the objectives of the Bankruptcy Code.” *Id*. Furthermore, “[t]he burden is on the party opposing arbitration…to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue….” *In re Payton Const. Corp.*, 399 B.R. 352, 361 (D.Mass. 2009).

### B. The Trustee Failed To Meet The Requisite Burden Of Establishing That The Proposed Arbitration Inherently Conflicted With Any Underlying Purpose Of The Bankruptcy Code

“Not all core bankruptcy proceedings are premised on provisions of the Code that ‘inherently conflict’ with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code.” *In re Thorpe*, 671 F.3d at 1021. “[E]ven in a core proceeding...a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision ***only if*** arbitration would conflict with the underlying purposes of the Bankruptcy Code.” *Id*. at 1020 (*emphasis added*).

In an attempt to establish that the strong policy in favor of enforcing arbitration provisions should be overridden, the Trustee relied solely on generalities and unsubstantiated conclusions to create the illusion of a purported “inherent conflict” between the proposed arbitration and the underlying purposes of the Bankruptcy Code when in fact there was and is none. For example, the Trustee stated that “[t]o the extent that the Adversary Proceeding was compelled to

Case 2:13-cv-09023-SJO Document 9 Filed 02/11/14 Page 15 of 19 Page ID #:80

arbitration, there is the potential for conflicting decisions between this Court and the arbitrator as to whether the Debtors operated as a Ponzi scheme and acted with the actual intent to hinder, delay, or defraud creditors." [App. Ex. (Opposition) 10, at pp.8–9] The Trustee further stated that "[t]o the extent that arbitration is compelled, there is a potential for conflicting decisions as to whether the Debtors were insolvent, or as to one of the other insolvency-related tests." Opposition, at p. 9. [App. Ex. 10]

There is nothing in any of the governing case law that suggests that the "potential for conflicting decisions" is a reason to completely disregard the well settled federal policy strongly-favoring arbitration, especially when it reflects the benefit bargained for by the parties. There is the potential for conflicting decisions whenever two different people decide an issue – however, that is simply not the standard by which a determination as meaningful as this one is made. There is nothing (offered by the Trustee or otherwise) to suggest that an experienced panel of arbitrators would not or could not understand the issues otherwise before the Bankruptcy Court. Arbitrators have a myriad of backgrounds and experience, and there is no reason to believe that any number of them could not understand the implications of *Donnell v. Kowell* on an avoidance action. 533 F.3d 762 (9th Cir. 2008). Moreover, the agreements here mandate a retired judge arbitrator.

The Trustee further contended that it would be "inappropriate for an arbitrator to determine the impact of the assignment by Kirkland of his claims against the Debtors to his family trust, the Bright Conscience Trust. It would also be inappropriate for an arbitrator to determine whether any claims of Kirkland or the Bright Conscience Trust should be disallowed or equitably subordinated." Opposition, at p. 10. [App. Ex. 10] In what appears to be an attempt to justify the unjustifiable, the Trustee further states that "[t]he impact on the Debtors' bankruptcy case is acute because, as reflected in Bright Conscience's proofs of

claim, the Bright Conscience Trust asserts that it has a secured claim against the assets of the Debtors in an amount exceeding $2 million. The determination as to proofs of claim is a core matter that is at the heart of bankruptcy cases." Opposition, at pp. 10–11. [App. Ex. 10]

Unfortunately, this statement simply begs the questions of whether an inherent conflict exists. The Trust does not dispute that the proceedings at issue are "core" proceedings; however, this is not the appropriate inquiry at this stage. Rather, the appropriate inquiry is whether enforcement of the arbitration provision would inherently conflict with the Bankruptcy Code. In fact, this is the *only* real inquiry to be made in this case given the absence of dispute that the claims at issue are core.

Nonetheless, the Trustee dedicates only **one** paragraph of the Arbitration Opposition to this determinative issue by relying on a Fifth Circuit case, which states that "[s]ome of the purposes of the Code we mentioned in *National Gypsum* as potentially conflicting with the Arbitration Act include the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." Opposition, at p. 11. [App. Ex. 10].

In an attempt to demonstrate that the foregoing considerations mandate that arbitration be denied, the Trustee makes two conclusions which are factually and legally inapposite. The first is that "it is not appropriate to separate claims against Kirkland and the Bright Conscience Trust because the claims are related, the Bright Conscience Trust obtained its claims based on an assignment from Kirkland, and when the outcome of the determination of the claims will impact the Debtors' bankruptcy estate and its creditors." Opposition, at p. 11. [App. Ex. 10].

Courts, however, have uniformly held that the fact "that the outcome will have an impact on the ultimate distribution of the estate since all creditors will

eventually be paid from the same pot of money…is too tangential to disregard the agreement to arbitrate and <u>does not present an inherent conflict</u> with the Bankruptcy Code." *In re Shores of Panama, Inc.*, 387 B.R. 864, 867 (N.D.Fl. 2008) (*emphasis added*). Furthermore, "[t]he policy of centralization alone does not trump an otherwise enforceable arbitration agreement." *Id.* at 866. "Enforcing the arbitration agreement in this case will not seriously jeopardize the Debtor's attempt to reorganize. Although arbitration may be inconsistent with the policy of centralization, such inconsistency <u>does not rise to the level of an inherent conflict</u>." *Id*. (*emphasis added*).

This point is even more pronounced in the instant case, where there is no absolutely no prospect of reorganization. The instant case is one under chapter 7, as was the case in *In re P&G Drywall and Acoustical Corp.*, where, in holding that the arbitration provision was enforceable, the Court opined that "[a]s a Chapter 7 case, no reorganization could be threatened by the delay, if any, that arbitration would bring." *In re P&G Drywall and Acoustical Corp.*, 156 B.R. 704, 706 (D.Maine 1993).

The second (and final) conclusory statement set forth in the Opposition is that "the Trustee's fraudulent transfer claims are core claims that exist and that are pursued by the Trustee based on the bankruptcy case and the provisions of the Bankruptcy Code. Compelling the arbitration of the Trustee's claims would undermine the purposes of the Bankruptcy Code." <u>Opposition</u>, at p. 12. [App. Ex. 10]. As is the pattern throughout the Opposition, the Trustee again focused on the fact that the claims were core, rather than attempting to demonstrate that an inherent conflict exists which prohibits arbitration of the claims. The reason the Trustee continually posits an irrelevant argument is clear. The Trustee cannot demonstrate that an inherent conflict exists and, thus, the Trustee can only relent or

Case 2:13-cv-09023-SJO Document 9 Filed 02/11/14 Page 18 of 19 Page ID #:89

cling to an indefensible position. Unfortunately, it appears the Trustee has chosen the latter tact.

Based upon the very factors raised by the Trustee in Opposition to the Arbitration Motion, it is clear that arbitration is appropriate. There is no prospect of reorganization and the policy of centralization does not rise to the level of an inherent conflict. Furthermore, if the fear of conflicting results, which is pressed by the Trustee, was sufficient to render an otherwise valid arbitration provision unenforceable, arbitration would be a nullity.

The Arbitration Tentative similarly relies solely on general examples of "conflict" in denying the relief sought by and through the Arbitration Motion. [App. Ex. 16, at p. 9 ("*[a]s in Saigon Plaza, this Court finds that enforcing the arbitration provisions herein would conflict with the purpose underlying the Bankruptcy Code of having bankruptcy law issues decided by bankruptcy courts. In addition, allowing arbitration of those fraudulent transfer claims based on California law would conflict with the purposes of the Code of centralizing resolution of bankruptcy disputes and protecting parties from piecemeal litigation.*")].

If the rationale provided by the Trustee and the Court in requesting and ordering denial were sufficient to justify a denial of a motion to compel arbitration in all core proceedings, the distinction between core and non-core would be completely superfluous in this context.

Because the Trustee failed to evidence an inherent conflict between arbitration and the fundamental policies of the Bankruptcy Code, the Bankruptcy Court had no discretion or authority to deny arbitration.

///

///

Case 2:13-cv-09023-SJO Document 9 Filed 02/11/14 Page 19 of 19 Page ID #:96

## VIII. CONCLUSION

Based on the failure of the Trustee to identify *any* concrete examples of inherent conflicts between the proposed arbitration and the underlying purposes of the Bankruptcy Code, Appellate respectfully requests that this Court reverse the Arbitration Order and enter an order compelling the parties to arbitrate the pertinent claims within the Adversary Proceeding.

# EXHIBIT J

# Nos. 14-55740 and 14-56478

IN THE
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**IN RE: EPD INVESTMENT COMPANY, LLC, et al.,**

**JASON M. RUND, Chapter 7 Trustee,**
*Plaintiff—Appellee,*

*v.*

**POSHOW ANN KIRKLAND, individually and as Trustee of the BRIGHT CONSCIENCE TRUST dated September 9, 2009,**
*Defendant—Appellant.*

**JASON M. RUND, Chapter 7 Trustee,**
*Plaintiff—Appellee,*

*v.*

**JOHN C. KIRKLAND, an individual,**
*Defendant—Appellant.*

APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
S. JAMES OTERO, DISTRICT JUDGE • CASE NOS. 2:13-CV-09023-SJO AND 2:13-CV-08768-SJO

## APPELLANTS' OPENING BRIEF

**HORVITZ & LEVY LLP**
DAVID M. AXELRAD
STEVEN S. FLEISCHMAN
JOHN F. QUERIO
15760 VENTURA BOULEVARD, 18TH FLOOR
ENCINO, CALIFORNIA 91436-3000
(818) 995-0800

ATTORNEYS FOR DEFENDANTS—APPELLANTS
**POSHOW ANN KIRKLAND, individually and as Trustee of the BRIGHT CONSCIENCE TRUST dated September 9, 2009,** AND **JOHN C. KIRKLAND**

**WEILAND GOLDEN LLP**
JEFFREY I. GOLDEN
650 TOWN CENTER DRIVE, SUITE 950
COSTA MESA, CALIFORNIA 92626
(714) 966-1000

ATTORNEYS FOR DEFENDANT—APPELLANT
**JOHN C. KIRKLAND**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ v

INTRODUCTION ........ 1

JURISDICTIONAL STATEMENT ........ 2

STATEMENT OF ISSUES PRESENTED ........ 3

STATEMENT OF THE CASE ........ 5

A. John invests money in EPD pursuant to various agreements, all of which contain arbitration clauses. ........ 5

B. John assigns his security interest in EPD's assets to the Trust. The Trust agrees with EPD to forbear collecting on EPD's indebtedness for a year and three months. These agreements also contain arbitration clauses. ........ 8

C. EPD is forced into involuntary bankruptcy, which destroys it as a going concern. The Trust files proofs of claim based on its security interest in EPD's assets. ........ 10

D. Rund files an adversary proceeding against John, Ann, and the Trust. ........ 11

E. Rund settles claims against John's former law firms arising out of the same conduct as the claims in the adversary proceeding against John, Ann, and the Trust. ........ 12

F. John and Ann (individually and as trustee of the Trust) move to compel arbitration of Rund's claims. The bankruptcy court denies the motion to compel arbitration. John and Ann each appeal to the district court. ........ 13

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 3 of 79

G. John moves to stay the adversary proceeding in the bankruptcy court pending appeal and answers Rund's second amended complaint. The bankruptcy court grants the stay, recognizing that the claims against John cannot be resolved in the bankruptcy court. .................................... 15

H. The district court affirms the bankruptcy court's refusal to compel arbitration of Rund's claims in both John's and Ann's appeals. Both John and Ann (individually and as trustee of the Trust) appeal to this Court. ............................ 17

SUMMARY OF THE ARGUMENT ........................................................ 20

ARGUMENT ................................................................................. 29

I. RUND'S CLAIMS MUST BE ARBITRATED PURSUANT TO THE EPD-KIRKLAND ARBITRATION AGREEMENTS. ........... 29

A. The FAA's presumption in favor of arbitration applies to the EPD-Kirkland arbitration agreements. .......................... 29

B. Under the FAA, Rund's claims must be arbitrated............. 31

II. WHETHER THE ARBITRATION CLAUSES IN THE VARIOUS EPD-KIRKLAND AGREEMENTS APPLY TO RUND'S CLAIMS IS FOR AN ARBITRATOR TO DECIDE. ....... 33

A. An arbitrator must decide issues of arbitrability where the parties have clearly and unmistakably delegated those issues to an arbitrator. ............................................... 33

B. The arbitration agreements in this case clearly and unmistakably show that EPD and the Kirklands intended to have an arbitrator decide all issues of arbitrability. ................................................................... 34

1. The agreements expressly require arbitrability to be arbitrated.............................................................. 34

2. The arbitral rules incorporated into the agreements require arbitration of arbitrability. ............................. 35

C. The district court erred in concluding that the question of whether the arbitration agreements apply to Rund's claims is not an issue of arbitrability for an arbitrator to decide. .......... 38

III. THE ARBITRATION AGREEMENTS APPLY TO RUND'S CLAIMS, AND THE DISTRICT COURT ERRED IN CONCLUDING OTHERWISE. .......... 39

IV. ARBITRATING RUND'S CLAIMS WILL NOT PRESENT AN INHERENT CONFLICT WITH THE PURPOSES OF THE BANKRUPTCY CODE, AND THE DISTRICT COURT ERRED IN CONCLUDING OTHERWISE. .......... 45

A. Bankruptcy courts have discretion to decline to enforce arbitration agreements only where the claims are core and arbitration would inherently conflict with the underlying purposes of the Bankruptcy Code. .......... 45

B. The district court erred in affirming the bankruptcy court's refusal to compel arbitration of Rund's claims against John. .......... 48

1. The bankruptcy court lacked discretion to decline to enforce the arbitration agreements with respect to Rund's fraudulent transfer claims against John. .......... 48

2. The district court erroneously attributed the Trust's proofs of claim to John and to Ann individually in upholding the denial of his motion to compel arbitration. .......... 54

C. The district court erred in affirming the bankruptcy court's refusal to compel arbitration of Rund's claims against Ann and the Trust. .......... 58

V. EVEN IF SOME OF RUND'S CLAIMS ARE NOT ARBITRABLE, THE CLAIMS THAT ARE ARBITRABLE MUST BE SENT TO ARBITRATION AND THE REMAINING CLAIMS STAYED. .......... 65

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 25-1, Page 5 of 79

CONCLUSION ........ 67
STATEMENT OF RELATED CASES ........ 68
CERTIFICATION OF COMPLIANCE ........ 69

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 6 of 79

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Eber* (*In re Eber*),
687 F.3d 1123 (9th Cir. 2012) .................................... 24, 46, 47, 62, 63

*Associated , Inc. v. Oakland Meat Co.*,
210 Cal. App. 2d 825 (1962) ............................................................ 57

*Austin v. Chisick* (*In re First Alliance Mortg. Co.*),
298 B.R. 652 (C.D. Cal. 2003),
*aff'd*, 471 F.3d 977 (9th Cir. 2006) ............................................... 28, 64

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ................................................ 32, 33, 38

*Christensen v. Tucson Estates, Inc.*
(*In re Tucson Estates, Inc.*),
912 F.2d 1162 (9th Cir. 1990) ......................................................... 61

*Cont'l Ins. Co. v. Thorpe Insulation Co.*
(*In re Thorpe Insulation Co.*),
671 F.3d 1011 (9th Cir. 2012) ................................................... passim

*Decker v. Tramiel* (*In re JTS Corp.*),
617 F.3d 1102 (9th Cir. 2010) ......................................................... 44

*Executive Benefits Insurance Agency v. Arkison*
(*In re Bellingham Insurance Agency, Inc.*),
702 F.3d 553 (9th Cir. 2012), *aff'd*,
134 S. Ct. 2165 (2014) ................................................... 15, 24, 50, 51

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .................................................................... 21, 33

*GranfinamesInciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) ......................................................... 24, 49, 50, 51

*Kittay v. Landegger* (*In re Hagerstown Fiber Ltd. P'ship*),
277 B.R. 181 (Bankr. S.D.N.Y. 2002) .................................................. 39

*KPMG LLP v. Cocchi*,
132 S. Ct. 23 (2011) (per curiam) ................................................ 29, 66

*Langenkamp v. Culp*,
498 U.S. 42 (1990) (per curiam)........................................................... 25

*Laycock v. Hammer*,
141 Cal. App. 4th 25 (2006) ............................................. 26, 28, 57, 64

*Mesler v. Bragg Mgmt. Co.*,
39 Cal. 3d 290 (1985) ......................................................................... 57

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011)................................................. 21, 33, 35

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)................................................................................. 29

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982)............................................................................... 46

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013)........................................... 22, 33, 37, 39

*Protectmarriage.com-Yes on 8 v. Bowen*,
752 F.3d 827 (9th Cir. 2014)........................................................ 27, 55

*SEC v. Med. Comm. for Human Rights*,
404 U.S. 403 (1972)...................................................................... 27, 55

*Shearson Lehman Hutton, Inc. v. Wagoner*,
944 F.2d 114 (2d Cir. 1991) ................................................................ 41

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987)...................................................................... 45, 46

*Smith v. Arthur Andersen LLP*,
421 F.3d 989 (9th Cir. 2005)........................................... 23, 41, 42, 44

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 8 of 79

*Stern v. Marshall*,
131 S. Ct. 2594 (2011) .......... 15, 24, 49, 50

*Williams v. Cal. 1st Bank*,
859 F.2d 664 (9th Cir. 1988) .......... 42

*Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*,
497 F. App'x 740 (9th Cir. 2012) .......... 37

**Constitutions**

United States Constitution
art. III .......... 24, 49, 56
amend. VII .......... 24, 25, 49

**Statutes**

9 U.S.C.
§ 2 .......... 20, 29, 30
§ 3 .......... 29, 66
§§ 3-4 .......... 30
§ 16(a)(1)(B) .......... 2

11 U.S.C.
§ 524(g) .......... 62
§ 544(b) .......... 44
§ 544(b)(1) .......... 42
§ 548(a) .......... 44
§ 548(a)(1) .......... 42, 43
§ 550 .......... 43
§ 550(a) .......... 42, 43

28 U.S.C.
§ 157 (2012) .......... 46
§ 157(b)(1)-(2) .......... 47
§ 157(b)(2)(H) .......... 49
§ 157(c)(1) .......... 47
§ 158(a) .......... 2
§ 158(d) .......... 2
§ 1334(a)-(b) .......... 2

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 9 of 79

California Probate Code § 18200 .................................................... 57, 64

**Rules**

Federal Rule of Appellate Procedure 4(a)(1)(A)........................................ 3

Federal Rule of Bankruptcy Procedure 9015(b) ..................................... 50

IN THE

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

**IN RE: EPD INVESTMENT COMPANY, LLC, et al.,**

**JASON M. RUND, Chapter 7 Trustee,**
*Plaintiff—Appellee,*
*v.*
**POSHOW ANN KIRKLAND, individually and as Trustee of the BRIGHT CONSCIENCE TRUST dated September 9, 2009,**
*Defendant—Appellant.*

**JASON M. RUND, Chapter 7 Trustee,**
*Plaintiff—Appellee,*
*v.*
**JOHN C. KIRKLAND, an individual,**
*Defendant—Appellant.*

# APPELLANTS' OPENING BRIEF

## INTRODUCTION

This appeal from the denial of a motion to compel arbitration involves the intersection of the Federal Arbitration Act (FAA) and the Bankruptcy Code. In the bankruptcy context as in all other cases, the FAA mandates enforcement of arbitration agreements according to their terms, such that issues of arbitrability must be decided by the arbitrator when the parties' agreement so provides. In addition, claims in

bankruptcy court must be arbitrated unless they are core *and* arbitration would inherently conflict with the underlying purposes of the Bankruptcy Code. Here, at least some of the claims are non-core, and no inherent conflict exists, each of which are independent reasons why the FAA's mandate should be fully enforced. The bankruptcy court and the district court erred in concluding otherwise, as well as in deciding the issue at all rather than referring the question of arbitrability to the arbitrator as required by the FAA and the parties' agreements.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this bankruptcy case under 28 U.S.C. §§ 158(a) (2012) and 1334(a)-(b) (2012). This Court has jurisdiction over this appeal from the district court's denial of a motion to compel arbitration under 9 U.S.C. § 16(a)(1)(B) (2012) and 28 U.S.C. § 158(d).

The district court issued its opinion affirming the bankruptcy court's denial of Poshow Ann Kirkland's (Ann's)[1] motion to compel arbitration of plaintiff-appellee Chapter 7 Trustee Jason M. Rund's claims on April 9,

---

[1] For the sake of simplicity, we refer to the Kirklands by their first names.

2014. (1 ER 15.) Ann filed a timely notice of appeal on May 5, 2014. (4 ER 696.) The district court issued its opinion affirming the bankruptcy court's denial of John Kirkland's (John's) motion to compel arbitration of Rund's claims on August 29, 2014. (1 ER 23.) John filed a timely notice of appeal on September 8, 2014. (4 ER 709.) *See* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF ISSUES PRESENTED

1. Did the district court err in ruling that an arbitrator may not decide whether arbitration is required under the various agreements between Ann and debtor EPD Investment Co., LLC and between John and EPD (which Ann, individually and as trustee of the Bright Conscience Trust (the Trust), also seeks to enforce by virtue of an assignment from John), when the parties' agreements clearly and unmistakably provide for all issues of arbitrability to be decided by the arbitrator?

2. If arbitrability was not for an arbitrator to decide, did the district court err in deciding that the arbitration clauses in those agreements do not apply to Rund's claims against John and Ann (individually and as trustee of the Trust), when all of those claims arose out of agreements that contain broad mandatory arbitration clauses?

3. Did the district court err in declining to compel arbitration of Rund's claims against John and Ann (individually and as trustee of the Trust) because the claims are all core and arbitrating them would inherently conflict with the underlying purposes of the Bankruptcy Code, when the claims against John are non-core and cannot be resolved by a bankruptcy court in any event because John has demanded his right to a jury trial in district court?

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 14 of 79

## STATEMENT OF THE CASE

### A. John invests money in EPD pursuant to various agreements, all of which contain arbitration clauses.

This case arises out of the consolidated bankruptcies of EPD Investment Co., LLC and Jerrold S. Pressman. (2 ER 90.) Starting in the 1970's, Pressman operated the company that eventually became EPD as an unincorporated sole proprietorship, which was converted into a limited liability company in 2003. (2 ER 92 (¶ 12).) Pressman operated EPD along with his son, attorney Keith Pressman. (*Id.*) EPD solicited funds from investors and then invested those funds in various real estate and other ventures, including real estate in other states. (2 ER 92-93 (¶¶ 13-16).)

John served as legal counsel to EPD and Pressman. (2 ER 96 (¶ 28), 233-58.) The engagement agreements all contained arbitration clauses specifying that, "all disputes or claims of any nature whatsoever, including but not limited to those relating to our fees and the quality or appropriateness of our services, shall be resolved by confidential binding arbitration." (2 ER 238; *see also* 2 ER 249 (same).) Additionally, the engagement agreements specified that, "The arbitrator shall have power to decide all matters, *including arbitrability* and legal questions raised by

pleading or summary judgment motions." (2 ER 238 (emphasis added); *see also* 2 ER 250 (same).) EPD and Pressman each later signed general releases discharging John from any claims of liability due to legal malpractice, breach of fiduciary duty, or related claims arising out of his representation of EPD. (2 ER 216, 218.) Those releases each contained an arbitration clause stating, "Any dispute, controversy or claim arising out of or relating to this release will be resolved by binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California." (*Id.*)

Prior to his legal representation of EPD, John personally invested over $2 million in the company. (2 ER 97 (¶ 29), 220.) As collateral for John's personal loans to EPD, the company signed a Security Interest Agreement in November 2007 granting him a security interest in all of EPD's assets. (2 ER 200-14.) This agreement contained an arbitration clause, stating:

> Any dispute, controversy, claim or action of any kind or nature whatsoever, *including the issue of arbitrability*, arising out of, in connection with or relating to this Agreement shall be resolved by final and binding arbitration before a retired judge at JAMS in Santa Monica, California, in accordance with its most expedited Streamlined Arbitration Rules, and the Final Offer (or Baseball) Arbitration Option.

(2 ER 212 (§ 20) (emphasis added).)

In July 2009, due to EPD's immediate cash flow needs, John lent EPD an additional $100,000. (2 ER 220.) That loan was governed by a Funding Agreement between John and EPD, which reaffirmed John's security interest in all of EPD's assets and provided for repayment of EPD's indebtedness. (2 ER 220-23.) The Funding Agreement contained an arbitration clause, which provided:

> Any and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents [which includes the Security Interest Agreement], or involving any of the parties hereto, *including, but not limited to, all issues of arbitrability,* timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, *and all other preliminary issues*, will be resolved by final and binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California, in accordance with its most expedited and streamlined rules and procedures, with depositions and discovery prohibited or limited to the maximum extent permissible, and the final offer (baseball) arbitration option.

(2 ER 222-23 (§ 8) (emphases added).)

**B. John assigns his security interest in EPD's assets to the Trust. The Trust agrees with EPD to forbear collecting on EPD's indebtedness for a year and three months. These agreements also contain arbitration clauses.**

In September 2009, John assigned his security interest in EPD's assets to the Trust, an irrevocable trust for the benefit of the Kirklands' children that was created as part of routine estate planning when their son was born in August 2009, for which Ann serves as sole trustee. (2 ER 97 (¶ 29); 3 ER 384.)

In October 2009, Ann (as trustee of the Trust) entered into a Forbearance Agreement with EPD, under which the Trust promised not to demand repayment of the debts EPD owed for one year. (2 ER 225-28.) The Forbearance Agreement also contained an arbitration clause, stating:

> Any and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents [which includes the Security Interest Agreement], or involving any of the parties hereto, *including, but not limited to, all issues of arbitrability,* timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, *and all other preliminary issues*, will be resolved by final and binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California, in accordance with its most expedited and streamlined rules and procedures, with depositions and discovery prohibited or limited to the

> maximum extent permissible, and the final offer (baseball) arbitration option.

(2 ER 227 (§ 8) (emphases added).)

In September 2010, Ann (as trustee of the Trust) and EPD entered into an Additional Forbearance Agreement, under which the Trust agreed to push back the repayment date for EPD's debts by three additional months. (2 ER 230-32.) The Additional Forbearance Agreement contained an arbitration clause, which stated:

> Any and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents [which includes the Security Interest Agreement], or involving any of the parties hereto, *including, but not limited to, all issues of arbitrability,* timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, *and all other preliminary issues*, will be resolved by final and binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California, in accordance with its most expedited and streamlined rules and procedures, with depositions and discovery prohibited or limited to the maximum extent permissible, and the final offer (baseball) arbitration option.

(2 ER 232 (§ 6) (emphases added).)

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 19 of 79

**C. EPD is forced into involuntary bankruptcy, which destroys it as a going concern. The Trust files proofs of claim based on its security interest in EPD's assets.**

As a result of the 2007-2009 financial crisis, EPD experienced short-term financial issues. (2 ER 96 (¶ 25).) A few of EPD's alleged creditors filed an involuntary petition to force EPD into bankruptcy, and EPD consequently went out of business. (2 ER 91 (¶ 8).) The bankruptcy court entered an order for relief on February 9, 2011, and Jason M. Rund was appointed Chapter 7 Trustee on February 12, 2011. (*Id.*)

In December 2011, Ann (as trustee of the Trust) filed proofs of claim against the EPD bankruptcy estate in the amount of $2,672,000, reflecting the Trust's security interest in all of EPD's assets for principal and accrued interest. (3 ER 356, 358, 360.) Ann did not file any proofs of claim in her individual capacity. (*Id.*) John did not file any proof of claim in the EPD bankruptcy. (2 ER 182 n.6.)

On February 1, 2012, Jerrold Pressman filed a voluntary petition for Chapter 7 bankruptcy. (2 ER 91 (¶ 9).) On June 4, 2012, the bankruptcy court consolidated Pressman's and EPD's bankruptcy cases; Rund serves as the Chapter 7 Trustee for the consolidated bankruptcy estate of EPD and Jerrold Pressman. (2 ER 91-92 (¶¶ 10-11).)

In February 2013, Ann (as trustee of the Trust) filed a proof of claim against Pressman's bankruptcy estate in the amount of $3,529,000, reflecting the Trust's security interest in Pressman's assets including accumulated interest. (3 ER 362-63.) Ann did not file any proofs of claim in her individual capacity. (*Id.*) John did not file any proof of claim in Pressman's bankruptcy. (2 ER 182 n.6.)

### D. Rund files an adversary proceeding against John, Ann, and the Trust.

In October 2012, Rund filed an adversary proceeding against John, against the Trust (with Ann as trustee), and against Ann individually. (2 ER 33-53.) He asserted claims for aiding and abetting breach of fiduciary duty, fraudulent concealment, breach of fiduciary duty, fraud upon the court, disallowance of proofs of claim, and avoidance and recovery of fraudulent transfers. (2 ER 33.) Some of these claims were based on John's alleged conduct in representing EPD before and during the bankruptcy proceeding. (2 ER 40-48 (¶¶ 24-46).) In December 2012, Rund filed a first amended complaint, asserting the same claims. (2 ER 61-81.)

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 21 of 79

## E. Rund settles claims against John's former law firms arising out of the same conduct as the claims in the adversary proceeding against John, Ann, and the Trust.

In March 2013, Rund moved in the bankruptcy court for approval of a settlement with John's former law firms at which he practiced while representing EPD and allegedly engaging in the conduct that formed the basis for Rund's adversary proceeding (in particular, Rund's disallowance/equitable subordination claim against John, Ann, and the Trust). (MJN 28.) In exchange for an aggregate of $750,000 from the firms, Rund agreed to release the firms *and John* from any potential claims arising from their interactions with EPD. (*Id.*)

In May 2013, Rund filed a second amended complaint—the operative complaint—against John, the Trust, and Ann individually. (2 ER 89-111.) The second amended complaint dismissed the claims for aiding and abetting, breach of fiduciary duty, fraudulent concealment, and fraud upon the court. (2 ER 89.) The operative complaint instead focused on the fraudulent transfer claims based on the funds EPD repaid to John, as well as on disallowing or equitably subordinating the Trust's proofs of claim against the EPD/Pressman bankruptcy estate based on the same factual allegations regarding John's representation of EPD as had been asserted

in the prior two complaints (and that formed the basis for the settled claims against John's former law firms). (2 ER 104-09 (¶¶ 38-61).)

After the bankruptcy court approved the settlements and found them to be in good faith (MJN 28-29), the district court affirmed that ruling on Ann's appeal (MJN 27-31). Importantly, the district court held that Rund's release as to John "prevents [Rund] from asserting future tort claims related to the events alleged in [the Second Amended Complaint]—the same events at issue in the released claims—against [Ann] or the BC Trust," because "'[a] plaintiff cannot recover damages and obtain equitable subordination for the same wrong.'" (MJN 31.) Rund did not appeal from the district court's ruling.

### F. John and Ann (individually and as trustee of the Trust) move to compel arbitration of Rund's claims. The bankruptcy court denies the motion to compel arbitration. John and Ann each appeal to the district court.

In September 2013, John moved in the bankruptcy court to compel arbitration of Rund's claims against him. (2 ER 186-96.) He relied on the arbitration clauses in the Security Interest Agreement, the Funding Agreement, and the engagement letters between EPD and himself. (2 ER

192-95.) Ann and the Trust joined John's motion to compel arbitration. (2 ER 263-65.)

Rund opposed arbitration, arguing that arbitrating his fraudulent transfer and disallowance/equitable subordination claims would conflict with the underlying purposes of the Bankruptcy Code. (3 ER 267-81.) Rund did *not* argue in the bankruptcy court that the arbitration clauses contained in the various agreements between EPD and John and between EPD and the Trust were inapplicable to his claims. (*Id.*; 1 ER 8 ("The Court further notes that [Rund] does not challenge the applicability of the arbitration provisions cited by J. Kirkland in the letters of engagement, Funding Agreement and Security Interest Agreement to the claims in the Complaint.").)

The bankruptcy court denied John's, Ann's and the Trust's motions to compel arbitration of Rund's claims. (1 ER 1, 12.) The court reasoned that Rund's claims were core claims, and that compelling arbitration of those claims would conflict with the underlying purposes of the Bankruptcy Code to have bankruptcy issues decided by bankruptcy courts, to centralize resolution of bankruptcy disputes in one forum, and to protect parties from piecemeal litigation. (1 ER 8-9.)

John and Ann (individually and as trustee of the Trust) each separately appealed the bankruptcy court's ruling denying the motion to compel arbitration to the district court. (3 ER 408, 442.)

### G. John moves to stay the adversary proceeding in the bankruptcy court pending appeal and answers Rund's second amended complaint. The bankruptcy court grants the stay, recognizing that the claims against John cannot be resolved in the bankruptcy court.

Shortly after the appeals were filed, John moved in the bankruptcy court to stay the adversary proceeding pending the appeal. (3 ER 414-24.) He argued that (1) his appeal would succeed since arbitrating Rund's claims would not present an inherent conflict with the Bankruptcy Code because, after *Stern v. Marshall*, 131 S. Ct. 2594 (2011) and *Executive Benefits Insurance Agency v. Arkison* (*In re Bellingham Insurance Agency, Inc.*) (*Bellingham*), 702 F.3d 553 (9th Cir. 2012), *aff'd*, 134 S. Ct. 2165 (2014), those claims would otherwise have to proceed in the district court before a jury, and (2) denying a stay would cause him irreparable harm because if the bankruptcy court's refusal to compel arbitration was ultimately reversed on appeal while litigation in the bankruptcy court continued, the benefits of arbitration (speed and cost savings) would be lost. (3 ER 418-24; 4 ER 506-08.)

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 25 of 79

While the stay motion was pending, John also filed an answer to Rund's second amended complaint. (3 ER 459-66.) Significantly, he refused to consent to the bankruptcy court's jurisdiction over Rund's claims (3 ER 459-60 (¶¶ 1, 3, 6), 463 (2nd Aff. Def.)) and demanded a jury trial in district court on all claims against him (3 ER 466).

The bankruptcy court granted John's motion for a stay pending appeal. (4 ER 534-35.) Important to this appeal, the bankruptcy court found that John had demonstrated a likelihood of success in his appeal, explaining:

> [S]ince Kirkland states that he does not consent to a jury trial before this Court, this matter will be decided by the District Court if it is determined that a jury trial is warranted herein. Consequently, *since a bankruptcy court may not be deciding the fraudulent transfer issues in this action, arbitration may not conflict with the underlying Bankruptcy Code purpose of having bankruptcy courts decide bankruptcy issues*, and there is a likelihood that Kirkland may succeed on appeal. The Court notes that this situation did not exist at the time the Court decided the motion to compel arbitration, since Kirkland's answer in which he demands a jury trial was not filed until 12/6/13.

(4 ER 518 (emphasis added).) The court also noted that this Court has not yet weighed in on the issues presented by this appeal:

> [T]here is no published decision by the Ninth Circuit or any other reviewing court in this circuit which establishes that arbitration of fraudulent transfer claims and objections to claims conflict with the underlying purpose of the Bankruptcy Code. . . . Consequently, the Court finds that the first factor for a stay is satisfied also on the ground that the Arbitration Motion was not frivolous, but presented a serious legal issue to be resolved on appeal, i.e., would arbitration of fraudulent transfer claims and objections to claims conflict with the underlying bankruptcy purpose of having bankruptcy courts decide bankruptcy issues.

(4 ER 519.)

### H. The district court affirms the bankruptcy court's refusal to compel arbitration of Rund's claims in both John's and Ann's appeals. Both John and Ann (individually and as trustee of the Trust) appeal to this Court.

John's and Ann's appeals to the district court argued that the FAA required enforcement of the arbitration clauses in the agreements and that doing so would not conflict with the purposes of the Bankruptcy Code. (4 ER 547-53, 613-31.)

For the first time on appeal, Rund argued that the arbitration clauses did not apply to his claims because he represented the interests of the creditors of the EPD/Pressman bankruptcy estate in asserting the

fraudulent transfer and disallowance/equitable subordination claims. (4 ER 647-53.)

In his reply brief, John argued that the arbitration clauses did apply to Rund's claims, and that, in any event, that question was for an arbitrator to decide because the arbitration clauses clearly and unmistakably delegated the issue of arbitrability to the arbitrator. (4 ER 681-87, 690-92.)

On April 9, 2014, the district court affirmed the bankruptcy court's ruling denying Ann's motion to compel arbitration. (1 ER 15-22.) Even though it acknowledged that Rund failed to raise the argument about whether the arbitration clauses applied to his claims in the bankruptcy court, the district court disregarded this forfeiture because it said the argument presented a purely legal issue and Ann was not prejudiced. (1 ER 17-18.)

Regarding the merits of Rund's new argument, the court ruled that the arbitration clauses did not apply to Rund's fraudulent transfer claims against Ann and the Trust because Rund was representing the interests of the EPD/Pressman bankruptcy estate's creditors on those claims, rather than the interests of the EPD estate itself. (1 ER 18-19.) Thus, the court

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 28 of 79

ruled that Rund did not stand in the shoes of EPD for purposes of those claims. (*Id.*)

With respect to Rund's disallowance/equitable subordination claim, the district court rejected Rund's argument that the arbitration agreements do not apply to that claim. (1 ER 19.)

The district court also ruled that compelling arbitration of Rund's claims would create an inherent conflict with the underlying purposes of bankruptcy. (1 ER 19-22.) The court found that arbitrating Rund's claims would impede the centralization of disputes concerning a debtor's legal obligations in one forum, the protection of creditors from piecemeal litigation, and the objective of having bankruptcy law decided by bankruptcy courts. (*Id.*)

On August 29, 2014, the district court issued a separate order affirming the bankruptcy court's denial of John's motion to compel arbitration. (1 ER 23-32.) The district court's reasoning in its August 29th order largely mirrored its reasoning in its April 9th order in Ann's case. (*Id.*) However, the court also held that, even though John had not submitted a proof of claim in the EPD bankruptcy, the bankruptcy court could potentially impute the Trust's proofs of claim to John if it found that

he had set up the Trust as a shell entity to shield his interest in EPD from Rund's claims that he acquired that interest improperly. (1 ER 29-31.) The district court explained that the issue of whether to impute the Trust's proofs of claim to John was intertwined with Rund's claim for disallowance/equitable subordination of the Trust's proofs of claim, such that the bankruptcy court would have to address the imputation issue in adjudicating that claim. (*Id.*) Consequently, the district court concluded that arbitration of any of Rund's claims (including those against John, and apparently Ann individually) would inherently conflict with the bankruptcy court proceedings. (*Id.*)

John and Ann each filed timely appeals to this Court from the district court's orders in their respective cases. (4 ER 696, 709.) This Court subsequently granted their motions to consolidate the two appeals under Case No. 14-55740. (9th Cir. ECF No. 16.)

## SUMMARY OF THE ARGUMENT

1. The FAA applies to this case because the arbitration agreements are in writing, and Rund's claims arise out of transactions in interstate commerce. *See* 9 U.S.C. § 2 (2012). The arbitration agreements

encompass Rund's claims because those claims arise directly out of, and certainly at the very least relate to, the transactions between John and EPD (and between Ann, as trustee of the Trust, and EPD) embodied in the very agreements that also contain the arbitration clauses at issue here. Under the FAA's heavy presumption in favor of arbitration, Rund's claims must therefore be arbitrated.

2. The district court held that the arbitration agreements do not apply to Rund's claims because he brings those claims as representative of the EPD estate's creditors, rather than as representative of the EPD estate itself. But this is an issue of arbitrability, which the arbitration agreements clearly and expressly delegate to an arbitrator to decide. While arbitrability issues are typically reserved for courts, they must be arbitrated where the parties' agreement clearly and unmistakably provides for an arbitrator to decide those issues. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Momot v. Mastro*, 652 F.3d 982, 987-88 (9th Cir. 2011). The arbitration agreements here satisfy this standard in two ways. First, they expressly state that arbitrability issues will be decided by arbitration. Second, they incorporate the JAMS Streamlined Rules, which themselves provide that an arbitrator shall decide issues of

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 31 of 79

arbitrability. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1071, 1074-75, 1077 (9th Cir. 2013). Thus, Rund's applicability arguments must be decided by the arbitrator.

3. Even if Rund's applicability arguments have not been delegated to an arbitrator to decide, those arguments fail on their own merits. The district court adopted Rund's reasoning that he represents the creditors of the EPD estate, rather than the EPD estate itself, in asserting his fraudulent transfer claims against John, Ann and the Trust. Although the district court implicitly assumed that (1) such creditors exist and (2) their agreements with EPD for some reason do not contain the same arbitration provisions that the Kirklands' agreements do, the district court made nosuch factual findings. Nor could it, because there was no factual record on appeal, since Rund had not raised the issue before the bankruptcy court, and the parties therefore had not submitted any evidence on the issue.

More fundamentally, the district court's reasoning ignores bedrock bankruptcy law that a Chapter 7 trustee is the representative of the debtor's estate and stands in the debtor's shoes, as well as that the trustee has no standing to assert claims directly on behalf of creditors of the

estate. *See Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005). The fact that creditors ultimately and indirectly benefit from the trustee's efforts to marshal the estate's assets, including by litigating fraudulent transfer claims on the estate's behalf, does not change the fact that the trustee brings such claims on behalf of the estate itself and therefore stands in the debtor's shoes. Accordingly, Rund's fraudulent transfer claims are brought on behalf of the EPD estate, not the estate's creditors, and Rund remains bound by EPD's arbitration agreements with John and the Trust.

4. The district court erred in holding that arbitrating Rund's claims would inherently conflict with the underlying bankruptcy policies of centralizing dispute resolution, avoiding piecemeal litigation, and ensuring that bankruptcy issues are decided by bankruptcy courts. In the bankruptcy context, the FAA's presumption in favor of arbitration remains fully applicable, and claims in bankruptcy court must still be arbitrated unless doing so would inherently conflict with an underlying purpose of the Bankruptcy Code. *See Cont'l Ins. Co. v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*) (*Thorpe*), 671 F.3d 1011, 1020-21 (9th Cir. 2012);

*Ackerman v. Eber* (*In re Eber*) (*Eber*), 687 F.3d 1123, 1129-30 & n.6 (9th Cir. 2012).

There is no conflict between arbitration and the purposes of the Bankruptcy Code with respect to Rund's fraudulent transfer claims against John. Those Bankruptcy Code purposes cannot be served in this case even if the claims are not arbitrated because the bankruptcy court lacks the constitutional power to decide the fraudulent transfer claims against John. In the wake of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), this Court has determined that Article III of the Constitution forbids bankruptcy courts from adjudicating fraudulent transfer claims against creditors like John who have not filed proofs of claim against the bankruptcy estate, and that fraudulent transfer defendants in that position have a Seventh Amendment right to a jury trial of such claims. *See Bellingham*, 702 F.3d 553 (9th Cir. 2012); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). Thus, even if Rund's fraudulent transfer claims are not arbitrated, those claims cannot be resolved in the bankruptcy court because the district court sitting with a jury will have to adjudicate those claims.

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 34 of 79

Accordingly, the aforementioned bankruptcy purposes will not be achieved: resolution of the claims will not be centralized in the bankruptcy court because the district court will have to decide them, piecemeal litigation will therefore be unavoidable, and the bankruptcy court will not decide bankruptcy law issues related to the fraudulent transfer claims. There is therefore no bankruptcy policy with which arbitration of those claims could possibly conflict. The bankruptcy court itself acknowledged this reality in its order granting a stay. (4 ER 518.)

The district court suggested that the Trust's proofs of claim could be imputed to John and that, if so, the bankruptcy court could decide all of Rund's claims against him. A party who has filed a proof of claim in a bankruptcy proceeding has by affirmatively consenting to bankruptcy court jurisdiction voluntarily waived his Seventh Amendment right to a jury trial of preferential or fraudulent transfer claims the bankruptcy trustee brings against him. *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990) (per curiam). The district court therefore reasoned that, if the Trust's proofs of claim could be imputed to John, then John could be deemed to have filed proofs of claim against the EPD estate and thereby forfeited his jury trial right. The district court's decision on this point was

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 35 of 79

erroneous because a constitutional right cannot be denied based on mere imputation. Simply put, a party cannot be denied the constitutional right to a trial by jury on the ground that he may ultimately be found liable.

Moreover, no evidence has been presented that John is the alter ego of the Trust, nor has any finding to that effect been made. John's constitutional rights to district court adjudication and a jury trial of Rund's fraudulent transfer claims cannot be stripped so easily based on mere allegations in Rund's complaint. Additionally, the actions of an irrevocable trust's settlor (here, John) cannot be attributed to the trust because such a trust cannot be held liable for the actions of its settlor. *See Laycock v. Hammer*, 141 Cal. App. 4th 25, 30-31 (2006). Thus, the Trust's proofs of claim cannot be imputed to John.

Rund's disallowance/equitable subordination claim must also be arbitrated, and doing so would not conflict with any core bankruptcy purposes. Since the fraudulent transfer claims must be arbitrated anyway, it would best serve judicial economy and avoid piecemeal litigation by arbitrating the disallowance/equitable subordination claim as well. Doing so would not encroach on the bankruptcy court's power to administer the EPD bankruptcy estate by determining priority of claims

and which claims should be allowed or disallowed. The arbitrator can adjudicate the facts underlying the entire dispute, including the disallowance/equitable subordination claim, and the bankruptcy court will then be able to confirm the arbitration award and implement it in administering the EPD estate.

Furthermore, while an action to disallow or subordinate a claim that was actually filed (such as the Trust's proofs of claim here) would ordinarily constitute a core proceeding, Rund cannot manufacture a core proceeding by filing an action to disallow a non-existent claim. Neither John nor Ann individually have filed any proofs of claim in the bankruptcy, and Rund's action to disallow claims that were never filed (and are now time-barred) presents no justiciable case or controversy. *See SEC v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972); *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014). Whatever Rund's claims against John and against Ann individually may be, they are not bond fide core proceedings. As such, they must be arbitrated. *See Thorpe*, 671 F.3d at 1021.

Furthermore, the disallowance/equitable subordination claim fails on its own merits. That claim is based on allegations that deal entirely with

*John's* conduct in rendering legal services to EPD and investing in EPD. (2 ER 96-106 (¶¶ 27-47).) But the claim is brought against *Ann* and the Trust on the basis that the Trust is the assignee of John's interest in EPD. (*Id.*) Since Rund already settled his claims against John's former law firms and released John from liability based on the same conduct that forms the basis for the disallowance/equitable subordination claim against the Trust, Rund is precluded from bringing the disallowance/equitable subordination claim based on the same conduct which Rund has already been paid to settle, as the district court previously found (in an order that Rund did not appeal). (MJN 27-31.) *See Austin v. Chisick* (*In re First Alliance Mortg. Co.*), 298 B.R. 652, 666 n.2 (C.D. Cal. 2003) (*First Alliance*), *aff'd*, 471 F.3d 977 (9th Cir. 2006). In addition, as an irrevocable trust, the Trust cannot be held liable for any of John's acts. *See Laycock*, 141 Cal. App. 4th at 30-31. Accordingly, there is nothing for the bankruptcy court to decide with respect to the disallowance/equitable subordination claim, and no basis for holding that an inherent conflict with the Bankruptcy Code can be based on such a manufactured claim that is facially invalid.

5. At the very least, even if the disallowance/equitable subordination claim is not arbitrable, the fraudulent transfer claims must still be arbitrated. *See KPMG LLP v. Cocchi*, 132 S. Ct. 23 (2011) (per curiam). In that event, further proceedings on the disallowance/equitable subordination claim should be stayed pending completion of the arbitration of the fraudulent transfer claims. *See* 9 U.S.C. § 3 (2012).

## ARGUMENT

## I. RUND'S CLAIMS MUST BE ARBITRATED PURSUANT TO THE EPD-KIRKLAND ARBITRATION AGREEMENTS.

### A. The FAA's presumption in favor of arbitration applies to the EPD-Kirkland arbitration agreements.

The FAA requires that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision establishes "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), under which "questions of arbitrability must be addressed with a

healthy regard for the federal policy favoring arbitration," *id.* "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25. When a dispute falls within an arbitration clause governed by the FAA, district courts are required to stay litigation arising out of that dispute and to compel arbitration. *See* 9 U.S.C. §§ 3-4 (2012).

Section 2 of the FAA extends to any arbitration agreement that is in writing and that evidences a transaction involving interstate commerce. 9 U.S.C. § 2. The multiple arbitration agreements between EPD and John (and between EPD and Ann, as trustee of the Trust) satisfy these requirements and are governed by the FAA. All of the arbitration agreements are in writing. (2 ER 212 (§ 20), 216, 218, 222-23 (§ 8), 227 (§ 8), 232 (§ 6), 238, 249-50.) And the investments which John and the Trust made through the Security Interest Agreement, the Funding Agreement, and related agreements involved interstate commerce. (2 ER 93 (¶ 16) (EPD held promissory notes from its principal, Jerrold Pressman, who invested in properties in Tennessee and Mississippi which the money invested in EPD helped finance).) Rund has never contended, nor have the

bankruptcy court or the district court ever found, that the FAA is inapplicable.

## B. Under the FAA, Rund's claims must be arbitrated.

The language of the various arbitration agreements is broad and covers Rund's claims at issue here. For example, the arbitration clause in the Security Interest Agreement states that "[a]ny dispute, controversy, claim or action of any kind or nature whatsoever, including the issue of arbitrability, arising out of, in connection with or relating to this Agreement shall be resolved by final and binding arbitration." (2 ER 212 (§ 20).) Similarly, the arbitration clauses in the Funding Agreement, the Forbearance Agreement, and the Additional Forbearance Agreement state that "[a]ny and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents, or involving any of the parties hereto, including, but not limited to, all issues of arbitrability, timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, and all other preliminary issues, will be resolved by final and binding arbitration." (2 ER 222 (§ 8), 227 (§ 8), 232 (§ 6).)

The operative complaint shows Rund's claims arise out of, relate to, and are connected with the various agreements by which John and the Trust invested money in EPD and under which John provided legal services to EPD. (*See* 2 ER 96-104 (¶¶ 27-37).) The complaint asserts fraudulent transfer and disallowance/equitable subordination claims based on the transactions between John and EPD and the Trust and EPD that are embodied in these agreements. (*See* 2 ER 104-09 (¶¶ 38-61).) Even if the connection between these agreements and Rund's claims were not so direct, the allegations of the complaint would still suffice to bring the claims within the ambit of these arbitration clauses because the claims at the very least "relate to" the agreements. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131, 1134 (9th Cir. 2000) (holding that language requiring arbitration of "'any dispute, controversy or claim arising out of or relating to'" the agreement is broad and encompasses virtually any dispute in any way connected with the transaction embodied in the agreement or the agreement's application or interpretation). Accordingly, Rund's claims are arbitrable.

## II. WHETHER THE ARBITRATION CLAUSES IN THE VARIOUS EPD-KIRKLAND AGREEMENTS APPLY TO RUND'S CLAIMS IS FOR AN ARBITRATOR TO DECIDE.

### A. An arbitrator must decide issues of arbitrability where the parties have clearly and unmistakably delegated those issues to an arbitrator.

The district court erred in disregarding the threshold issue that whether claims are arbitrable is for an arbitrator to decide when the parties' agreement so provides. This Court reviews the district court's decision *de novo*. *See Oracle*, 724 F.3d at 1072.

Under the FAA, a court presented with a motion to compel arbitration is generally limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130. However, parties can agree to submit even those arbitrability issues to arbitration. In order to do so, the agreement must demonstrate clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to an arbitrator. *First Options*, 514 U.S. at 944; *Momot*, 652 F.3d at 987-88. "Such '[c]lear and unmistakable "evidence" of agreement to arbitrate arbitrability . . . include[s] . . . an express agreement to do so.'" *Momot*, 652 F.3d at 988.

**B. The arbitration agreements in this case clearly and unmistakably show that EPD and the Kirklands intended to have an arbitrator decide all issues of arbitrability.**

**1. The agreements expressly require arbitrability to be arbitrated.**

Here, there is clear and unmistakable evidence in the arbitration agreements showing that the parties intended arbitrability issues to be decided in arbitration. The language of the agreements themselves shows beyond doubt that the parties committed arbitrability to the arbitrator to decide. Each of the agreements expressly states that arbitrability issues are to be decided by final and binding arbitration. (2 ER 212 (§ 20) ("Any dispute, controversy, claim or action of any kind or nature whatsoever, *including the issue of arbitrability*, arising out of, in connection with or relating to this Agreement shall be resolved by final and binding arbitration." (emphasis added)), 222 (§ 8) ("Any and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents, or involving any of the parties hereto, including, but not limited to, *all issues of arbitrability*, timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, and all other preliminary issues, will be resolved by

final and binding arbitration." (emphasis added)), 227 (§ 8) (same), 232 (§ 6) (same).) This language alone is more than sufficient to require Rund's arbitrability objections to be arbitrated. *See Momot*, 652 F.3d at 988 (construing similarly broad language in arbitration clause to require arbitrability to be decided in arbitration).

The agreements here could not be more clear. And there is not just one agreement but multiple agreements that provide for mandatory arbitration of arbitrability, any one of which would suffice. Together, the requirement to arbitrate arbitrability is overwhelming.

**2. The arbitral rules incorporated into the agreements require arbitration of arbitrability.**

Even without such express language, the arbitration agreements clearly and unmistakably delegate arbitrability to an arbitrator for a different reason: those agreements incorporate the Streamlined Rules of Judicial Arbitration and Mediation Service (JAMS). (*See* 2 ER 212 (§ 20) (arbitration shall be "before a retired judge at JAMS in Santa Monica, California, in accordance with its most expedited Streamlined Arbitration Rules, and the Final Offer (or Baseball) Arbitration Option"), 222-23 (§ 8) (arbitration shall be "before a retired judge at JAMS or its successor in

Santa Monica, California, in accordance with its most expedited and streamlined rules and procedures, with depositions and discovery prohibited or limited to the maximum extent permissible, and the final offer (baseball) arbitration option"), 227 (§ 8) (same), 232 (§ 6) (same).)

The JAMS Streamlined Arbitration Rules and Procedures provide that "[t]he Parties shall be deemed to have made these Rules a part of their Arbitration agreement . . . whenever they have provided for Arbitration by JAMS under its Streamlined Rules . . . ." (MJN 6 (Rule 1(b)).) Thus, by specifying that the JAMS Streamlined Rules will govern any arbitration, the agreements here incorporated those rules. Rule 8 of the JAMS Streamlined Rules states:

> (b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(MJN 12 (Rule 8(b)).) Under this rule, all disputes about arbitrability—including the "scope of the agreement under which [a]rbitration is sought" and "who are proper [p]arties to the [a]rbitration"—are for the arbitrator to decide. (*Id.*)

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 46 of 79

This Court has held that arbitration agreements incorporating arbitral rules that expressly delegate arbitrability issues to the arbitrator satisfy the clear and unmistakable evidence standard. In *Oracle*, this Court held that an arbitration agreement's incorporation of the arbitral rules of the United Nations Commission on International Trade Law (UNCITRAL), which committed arbitrability issues to arbitration in similar fashion to JAMS's rules, provided clear and unmistakable evidence of the parties' intent to have the arbitrator decide issues of arbitrability. 724 F.3d at 1071, 1074-75, 1077. The *Oracle* court also noted that the vast majority of circuits has held that incorporation of the arbitral rules of the American Arbitration Association (AAA), which are also materially similar to JAMS's rules, meets the clear and unmistakable evidence threshold for delegating arbitrability to the arbitrator. *Id.* at 1074. Finally, this Court has held (albeit in an unpublished opinion applying New York law) that incorporation of the JAMS Streamlined Rules at issue here provides clear and unmistakable evidence of the parties' intent that the arbitrator decide issues of arbitrability. *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 F. App'x 740, 741-42 (9th Cir. 2012). These authorities show that the arbitration agreements' incorporation of the JAMS Streamlined Rules in

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 47 of 79

this case is clear and unmistakable evidence of the parties' intent to have an arbitrator decide any preliminary disputes about arbitrability.

### C. The district court erred in concluding that the question of whether the arbitration agreements apply to Rund's claims is not an issue of arbitrability for an arbitrator to decide.

In concluding that the arbitration agreements do not apply to Rund's fraudulent transfer claims, the district court rejected the position that this is an arbitrability issue for an arbitrator to decide. (1 ER 26.) The court explained that this issue depends upon the application of substantive bankruptcy law and the capacity in which Rund is acting, rather than interpretation of the arbitration agreements. (*Id.*) But that is irrelevant. Arbitrators apply provisions of substantive law to the particular circumstances of their cases all the time, and doing so is part of the essence of being an arbitrator.

The district court erred in concluding this is not an arbitrability issue for an arbitrator to decide. Arbitrability consists of "(1) whether a valid agreement to arbitrate exists and, if it does, (2) *whether the agreement encompasses the dispute at issue*." *Chiron*, 207 F.3d at 1130 (emphasis added). Here, the question is whether the EPD-Kirkland arbitration agreements apply to Rund's claims—i.e., "whether the

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 48 of 79

agreement[s] encompass[ ] the dispute at issue." *Id.* Even case law which the district court cited refers to this question as one of arbitrability. *See Kittay v. Landegger* (*In re Hagerstown Fiber Ltd. P'ship*), 277 B.R. 181, 207-08 (Bankr. S.D.N.Y. 2002) ("Here, the trustee challenges the very arbitrability of the fraudulent conveyance claims."). Accordingly, this issue is one of arbitrability for the arbitrator to decide.

## III. THE ARBITRATION AGREEMENTS APPLY TO RUND'S CLAIMS, AND THE DISTRICT COURT ERRED IN CONCLUDING OTHERWISE.

Even if the issue of whether the arbitration agreements apply to Rund's claims was not for the arbitrator to decide, the district court erred in concluding that the arbitration agreements do not apply to Rund's fraudulent transfer claims. The district court held that the arbitration agreements do not apply to those claims because Rund brings them as representative of the creditors of EPD's bankruptcy estate, not as representative of the EPD estate itself. (1 ER 18-19, 27-28.) Since EPD's other creditors are not parties to the EPD-Kirkland arbitration agreements, the district court concluded, those agreements cannot bind Rund while acting on their behalf. (*Id.*) This Court reviews the district court's decision on this issue de novo. *See Oracle*, 724 F.3d at 1072.

To begin, the district court assumed (without any factual basis) that there were other creditors of EPD and that any such creditors did not have similarly broad arbitration agreements with EPD, which would encompass the fraudulent transfer claims against John here and require arbitration of those claims. But the district court did not make a factual record on those points and therefore erred in finding that there were no factual disputes regarding those issues.[2]

The district court's reasoning boils down to the capacity in which Rund acts in asserting the fraudulent transfer claims—if he represents the EPD estate, then he is bound by the arbitration agreements EPD signed; if he represents EPD's other creditors, then he is not bound by those agreements (though he would be bound by any arbitration agreements that such other creditors entered into).

The fundamental flaw in the district court's reasoning is its assumption that a Chapter 7 trustee brings fraudulent transfer claims solely on behalf of a bankruptcy estate's creditors, and not on behalf of the estate of the debtor itself. On the contrary, bedrock law establishes that

[2] In the proceedings to force EPD into involuntary bankruptcy, the bankruptcy court did not make any factual determination that other creditors of EPD (besides John and the Trust) even existed.

Rund brought those claims as representative of the EPD bankruptcy estate, such that the arbitration agreements EPD signed applied to him as well.

A bankruptcy trustee is the representative of the bankruptcy estate and stands in the shoes of the bankrupt debtor; he is thus bound by the debtor's obligations. *See Smith*, 421 F.3d at 1002. Furthermore, "'[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself.'" *Id.*; *see also Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) (same). Accordingly, when Rund asserted claims against John and the Trust, he necessarily did so as representative of the EPD estate, and he was thus bound by the EPD-Kirkland arbitration agreements.

The district court's contrary conclusion runs afoul of this Court's decision in *Smith*, which held that a bankruptcy trustee has no standing to bring claims solely on behalf of an estate's creditors and that any indirect benefits such claims bring to creditors does not change the fact that the trustee asserts such claims in his capacity as representative of the debtor's estate. *Smith*, 421 F.3d at 1004-06; *see id.* at

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 51 of 79

1004 ("It is, of course, true that the dissipation of assets limited the [debtor's] ability to repay its debts in liquidation. Acknowledgment of this fact is not, however, a concession that only the creditors, and not [the debtor] itself, have sustained any injury. Instead, it is a recognition of the economic reality that any injury to an insolvent firm is necessarily felt by its creditors."); *see also Williams v. Cal. 1st Bank*, 859 F.2d 664, 666-67 (9th Cir. 1988). *Smith* also refutes the district court's reliance on the purported fact that EPD's creditors could assert these fraudulent transfer claims outside of bankruptcy. A similar argument was made and rejected in *Smith*, where this Court held that the fact that an estate's creditors could assert such claims outside of bankruptcy does not change the fact that the bankruptcy trustee asserting those claims does so on behalf of the debtor's estate, with the creditors as indirect beneficiaries only. *See Smith*, 421 F.3d at 1005-06.

The structure and purpose of the fraudulent transfer provisions of the Bankruptcy Code bear out this conclusion. While §§ 544(b)(1) and 548(a)(1) allow a trustee to avoid fraudulent transfers,[3] it is § 550(a) that

[3] Section 544(b)(1) provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the (continued...)

gives effect to those other provisions by allowing the trustee to recover avoided transfers (or their equivalent value) from transferees. (*See* 2 ER 109 (¶¶ 60-61) (Rund asserts § 550 claims for recovery of avoided fraudulent transfers).) Section 550(a) states that "to the extent that a transfer is avoided under section[s] 544 . . . [or] 548 . . . of this title, the trustee may recover, *for the benefit of the estate*, the property transferred, or, if the court so orders, the value of such property, from" certain transferees. 11 U.S.C. § 550(a) (2012) (emphasis added). The italicized language demonstrates that a trustee's recovery of avoided fraudulent transfers is for the benefit of the debtor's bankruptcy estate, with the estate's creditors benefiting only indirectly. "The purpose of § 550 is to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred. The primary goal is equity and restoration, *i.e.,* putting the estate back where it would have been but for the transfer."

(...continued)
debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1) (2012). Section 548(a)(1) states that "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor" where such transfer was either actually or constructively fraudulent. *Id.* § 548(a)(1).

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 53 of 79

*Decker v. Tramiel* (*In re JTS Corp.*), 617 F.3d 1102, 1111 (9th Cir. 2010) (citations and internal quotation marks omitted).[4]

Just because a trustee brings fraudulent transfer claims which may (or may not) ultimately benefit the estate's creditors does not mean that he asserts those claims as the direct representative of the creditors. Rather, he asserts those claims as representative of the debtor's estate. The fact that the assets marshalled via such claims will be distributed pro rata to the debtor's creditors does not mean the trustee steps into the creditors' shoes while bringing those claims. Accordingly, Rund represents the EPD estate in asserting his fraudulent transfer claims, and he is thus bound by EPD's arbitration agreements with John and Ann (as trustee of the Trust).[5]

---

[4] The district court cited out-of-circuit authority that a trustee brings fraudulent transfer claims under 11 U.S.C. §§ 544(b) and 548(a) as representative of the estate's creditors, not of the estate itself. (1 ER 18, 27-28.) However, nothing in the language of these statutes indicates that a trustee bringing fraudulent transfer claims under these statutes acts *solely* as representative of the estate's creditors, rather than for the estate itself. *See Smith*, 421 F.3d at 1004.

[5] Rund also argued that the arbitration agreements do not apply to his disallowance/equitable subordination claim (4 ER 573-74, 651-53), but the district court rejected this argument because Rund provided no authority that a debtor's arbitration agreement with a creditor does not apply to a bankruptcy trustee's disallowance/equitable subordination claim against (continued...)

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 54 of 79

## IV. ARBITRATING RUND'S CLAIMS WILL NOT PRESENT AN INHERENT CONFLICT WITH THE PURPOSES OF THE BANKRUPTCY CODE, AND THE DISTRICT COURT ERRED IN CONCLUDING OTHERWISE.

### A. Bankruptcy courts have discretion to decline to enforce arbitration agreements only where the claims are core and arbitration would inherently conflict with the underlying purposes of the Bankruptcy Code.

As explained, *supra*, pp. 29-32, the arbitration agreements apply to Rund's claims, and the FAA therefore mandates that they be arbitrated. However, the district court declined to compel arbitration because it concluded that Rund's claims were all core claims and that arbitrating them would create an inherent conflict with the underlying purposes of the Bankruptcy Code. (1 ER 19-22, 29-31.) The district court's rationale requires examination of how the FAA operates in the bankruptcy context.

The FAA applies to claims arising under federal statutes, and such claims generally must be arbitrated. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The FAA's arbitration mandate can be overcome only by a contrary congressional command in another federal

---

(...continued)
that creditor on behalf of the debtor's estate (1 ER 19, 28-29). The district court's ruling on this issue was correct.

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 55 of 79

statute. *Id.* Where Congress does intend to override the FAA, its intent to do so must be found in the text or legislative history of the other federal statute, "or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* at 227. "The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.*

In the bankruptcy context, this Court has determined that neither the text nor the legislative history of the Bankruptcy Code evinces a congressional intent to preclude arbitration or override the FAA. *See Thorpe*, 671 F.3d at 1020; *Eber*, 687 F.3d at 1129. Therefore, the question boils down to "whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code." *Thorpe*, 671 F.3d at 1020; *Eber*, 687 F.3d at 1129 (internal quotation marks omitted).

In the wake of the Supreme Court's seminal decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), Congress divided claims in bankruptcy into core and non-core claims. 28 U.S.C. § 157 (2012). It gave bankruptcy courts the power to adjudicate and enter final judgment with respect to core claims, which implicate the central purposes of bankruptcy (e.g., allowance and disallowance of claims,

dischargeability of debts, priority of claims). *Id.* § 157(b)(1)-(2). With respect to non-core claims (i.e., claims arising under non-bankruptcy law or that merely relate to bankruptcy cases), Congress allowed bankruptcy courts only to propose findings of fact and conclusions of law but reserved to the district courts the power to adjudicate such claims de novo and enter final judgment. *Id.* § 157(c)(1).

With respect to non-core claims, no inherent conflict between arbitration and any Bankruptcy Code purpose exists, and bankruptcy courts therefore lack discretion to refuse to compel arbitration of non-core claims. *Thorpe*, 671 F.3d at 1021; *Eber*, 687 F.3d at 1130 n.6.

Even with respect to core claims, moreover, bankruptcy courts do not automatically have discretion to decline to compel arbitration. "[N]ot all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the [FAA]; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." *Thorpe*, 671 F.3d at 1021 (internal quotation marks omitted). This Court has accordingly held that "the core/non-core distinction, though relevant, is not alone dispositive." *Id.* "[E]ven in a core proceeding, the *McMahon* standard must be met—that is, a bankruptcy court has discretion to

decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code." *Id.*

Whether a bankruptcy court has discretion to deny a motion to compel arbitration is a question of law that this Court reviews de novo. *Id.* at 1019-20. Only if the bankruptcy court has discretion would this Court review its decision for an abuse of discretion. *Id.* at 1020.

### B. The district court erred in affirming the bankruptcy court's refusal to compel arbitration of Rund's claims against John.

#### 1. The bankruptcy court lacked discretion to decline to enforce the arbitration agreements with respect to Rund's fraudulent transfer claims against John.

In affirming the bankruptcy court's denial of John's motion to compel arbitration of Rund's claims, the district court focused only on Rund's disallowance/equitable subordination claim and did not separately address his fraudulent transfer claims (since it had already erroneously ruled that the arbitration agreements did not apply to those claims). (1 ER 29-31.) However, the fraudulent transfer claims must be arbitrated because arbitrating them will not conflict with the purposes of the Bankruptcy Code. No such conflict can arise because, even if those claims were not

arbitrated, they would have to be adjudicated by the district court sitting with a jury, not by the bankruptcy court. Fraudulent transfer defendants in John's position who have not filed proofs of claim against the bankruptcy estate have a Seventh Amendment right to a jury trial of fraudulent transfer claims, which must take place in the district court under Article III of the Constitution. Accordingly, compelling arbitration of such claims cannot encroach on any powers of the bankruptcy court, since that court cannot adjudicate those claims in the first place.

Arbitration of Rund's fraudulent transfer claims does not conflict with any purpose of the Bankruptcy Code because of the bankruptcy court's limited power to adjudicate such claims. In *Granfinanciera*, the Supreme Court held that a creditor who has filed no proof of claim against the estate has a Seventh Amendment right to a jury trial of fraudulent transfer claims asserted against him by the trustee of the bankruptcy estate, even though fraudulent transfer claims are designated as core claims under 28 U.S.C. § 157(b)(2)(H). 492 U.S. at 36. Then, in *Stern v. Marshall*, the Supreme Court fundamentally changed bankruptcy courts' constitutional power in this area. *Stern* held that Article III of the Constitution forbids bankruptcy courts from adjudicating certain core

claims that are insufficiently connected to the bankruptcy process (in that case, counterclaims by the estate against creditors filing proofs of claim against the estate). 131 S. Ct. at 2600-01, 2618. Synthesizing the holdings of *Granfinanciera* and *Stern*, this Court recently held that a bankruptcy trustee's fraudulent transfer claims against a creditor who has not filed proofs of claim against the estate cannot be constitutionally adjudicated by a bankruptcy court (absent the creditor's consent). *Bellingham*, 702 F.3d at 556, 558-65.

That is precisely the procedural posture of Rund's fraudulent transfer claims here. Rund has filed fraudulent transfer claims against John, who has not filed any proof of claim against the EPD bankruptcy estate, has not consented to bankruptcy court jurisdiction, and has demanded a jury trial. (3 ER 459-60 (¶¶ 1, 3, 6), 463 (2nd Aff. Def.), 466.) Under *Granfinanciera*, *Stern*, and *Bellingham*, John has a right to a jury trial in the district court on Rund's fraudulent transfer claims. *See* Fed. R. Bankr. P. 9015(b) (2009) (jury trials may take place in bankruptcy court *only* where all parties consent).

Furthermore, Rund's fraudulent transfer claims are the constitutional equivalent of non-core claims, with respect to which a

bankruptcy court has no discretion to deny a motion to compel arbitration, *supra*, p. 47. Both *Granfinanciera* and *Bellingham* held that fraudulent transfer claims more closely resemble claims that are deemed non-core than they do traditional core claims at the heart of the bankruptcy process: "Fraudulent conveyance actions . . . 'are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.'" *Bellingham*, 702 F.3d at 562 (quoting *Granfinanciera*, 492 U.S. at 56). When such fraudulent transfer claims are brought against a party who has not filed a proof of claim against the estate, such as John here, they are the constitutional equivalent of non-core claims which are "'unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration'" and do not "'implicate more pressing bankruptcy concerns,'" as traditional core claims do. *Thorpe*, 671 F.3d at 1021. Accordingly, the bankruptcy court lacked discretion to decline to compel arbitration, and erred in doing so.

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 61 of 79

Even if Rund's fraudulent transfer claims are viewed as core claims, however, the bankruptcy court still lacked discretion to decline to compel arbitration. As explained, *supra*, pp. 47-48, this Court has held that the core/non-core distinction, while relevant, is not dispositive, and that even with respect to core claims, the party resisting arbitration still bears the burden to show an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. Here, Rund has failed to demonstrate any such inherent conflict.

The bankruptcy and district courts in this case identified three underlying bankruptcy purposes with which arbitration would conflict: centralization of disputes concerning a debtor's legal obligations, protection of debtors and creditors from piecemeal litigation, and ensuring that bankruptcy law issues are decided by bankruptcy courts. (1 ER 29.) Arbitration of Rund's fraudulent transfer claims does not conflict with those purposes in this case because, even if the claims are not arbitrated, the bankruptcy court will not adjudicate the merits of those claims. As explained, *supra*, pp. 48-51, Rund's fraudulent transfer claims cannot be finally decided by the bankruptcy court, and John has a right to have a jury decide the factual disputes underlying the fraudulent transfer claims

in district court. Since the district court will have to adjudicate the merits of the fraudulent transfer claims, there can be no conflict with any bankruptcy policies necessitating disregard of the FAA's mandate. Resolution of those claims will not be centralized in the bankruptcy court because the district court will have to decide them, piecemeal litigation will therefore be unavoidable, and the bankruptcy court will not decide bankruptcy law issues related to the fraudulent transfer claims. Accordingly, there is no inherent conflict between arbitration of those claims and the Bankruptcy Code.

The bankruptcy court (belatedly) recognized that this position is correct when it granted John's motion to stay Rund's adversary proceeding pending appeal. (4 ER 518.) That court stated:

> [S]ince Kirkland states that he does not consent to a jury trial before this Court, this matter will be decided by the District Court if it is determined that a jury trial is warranted herein. Consequently, since a bankruptcy court may not be deciding the fraudulent transfer issues in this action, arbitration may not conflict with the underlying Bankruptcy Code purpose of having bankruptcy courts decide bankruptcy issues, and there is a likelihood that Kirkland may succeed on appeal.

(*Id.*) Since there is no conflict between the FAA and the Bankruptcy Code with respect to Rund's fraudulent transfer claims against John, those claims must be arbitrated.

**2. The district court erroneously attributed the Trust's proofs of claim to John and to Ann individually in upholding the denial of his motion to compel arbitration.**

Rund purported to assert a claim against John and against Ann individually to disallow or equitably subordinate "their" proofs of claim. (2 ER 104-06 (¶¶ 38-47).) But it is undisputed that the only party that has filed any proofs of claim is the Trust, that neither John nor Ann individually has filed any proof of claim against the EPD estate, and that they never will do so since the proof of claim deadline has long since passed. Since neither John nor Ann individually ever filed any proof of claim, Rund cannot maintain any core claims against them (such as a disallowance/equitable subordination claim), and compelling arbitration as to them therefore cannot conflict with any purpose of the Bankruptcy Code.

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 64 of 79

Furthermore, a claim for disallowance or equitable subordination of any proofs of claim that John or Ann individually might file in the future—which Rund alleges as the basis for this claim against them (2 ER 106 (¶¶ 46-47), 110 (¶¶ 1-3))—presents no justiciable case or controversy, especially given the fact that they will not and cannot ever do so because the deadline for filing proofs of claim has passed. *See Med. Comm. for Human Rights*, 404 US at 407; *Protectmarriage.com*, 752 F.3d at 834.

Rund instead engaged in pure bootstrapping (which the district court accepted), arguing that the proofs of claim filed by the Trust might be attributed to John if the bankruptcy court finds (as Rund alleged without any supporting facts) that John set up the Trust as a shell entity to shield his interest in EPD from Rund's claims, even though it was set up as part of of routine estate planning more than a year before the bankruptcy action was filed. (1 ER 30-31; 2 ER 33, 97 (¶ 29); 3 ER 384.) The only evidence the district court mentioned in support of this theory was that John testified as the person most knowledgeable about the Trust. (1 ER 30; 3 ER 382-83.) It is unclear at best how John's knowledge about the Trust, for which he is the settlor, proves the Trust was set up nefariously.

According to the district court, *if* the bankruptcy court were to someday find that John and the Trust are not distinct entities, it could impute the Trust's proofs of claim to John and could bring Rund's claims against John under its jurisdiction. (1 ER 30-31.) There is no conceivable legal basis to deny a person his constitutional rights to an Article III judge and a jury trial based on an unproven allegation. Nor is there any conceivable basis to grant a bankruptcy court jurisdiction over a person based on a factual finding it may eventually make if it had jurisdiction. That turns the law on its head.

The district court also inexplicably leapt to the conclusion that the bankruptcy court would for some reason have to address these issues before adjudicating the Trust's proofs of claim, which the district court said would create an inherent conflict with arbitration. (*Id.*) But even that would not provide a constitutional basis to assume jurisdiction over John or Ann individually.

The district court's analysis is fundamentally flawed. The court did not find that John established the Trust for any improper purpose or that John and the Trust are alter egos. Nor did the court even purport to impute the Trust's proofs of claim to John. The mere fact that John

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 66 of 79

testified as the PMK for the Trust does not make him an alter ego of the Trust. *See Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 301 (1985) (one party is not alter ego of another unless (1) there is sufficient unity of interest and ownership that the separate legal personalities of the two parties no longer exist, and (2) treating the two parties as separate entities would sanction a fraud, promote injustice, or cause an inequitable result); *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-40 (1962) (listing numerous factors that must be considered in alter ego analysis, none of which have been considered here). The district court was wrong to assume that John and the Trust are one and the same, when no evidence has yet been presented regarding that issue and no finding has been made.

Furthermore, any such imputation would be improper. As an irrevocable trust, the Trust cannot be held liable for John's actions because John is the settlor of the Trust. *See Laycock*, 141 Cal. App. 4th at 30-31 (irrevocable trust not liable for settlor's actions); Cal. Prob. Code § 18200 (2011) (same). Thus, any attempt to equate John and the Trust is barred by controlling California law.

Finally, the district court erred in assuming that the bankruptcy court must adjudicate whether John is an alter ego of the Trust in order to decide the Trust's proofs of claim. Whether those proofs of claim can be imputed to John has nothing to do with whether the proofs of claim are valid and should be allowed. In any event, as discussed, *infra*, pp. 58-65, nothing prevents Rund's claims against the Trust from being arbitrated as well. Accordingly, the issue of whether the Trust's proofs of claim should be imputed to John poses no obstacle to arbitration of Rund's claims.

### C. The district court erred in affirming the bankruptcy court's refusal to compel arbitration of Rund's claims against Ann and the Trust.

In affirming the bankruptcy court's refusal to compel arbitration in Ann's and the Trust's appeal, the district court held that Rund's claims against the Trust are core claims, arbitration of which would inherently conflict with the underlying bankruptcy purposes of centralization of disputes, prevention of piecemeal litigation, and ensuring bankruptcy court adjudication of bankruptcy law issues. (1 ER 19-22.) The district court erred in so holding because the bankruptcy court lacked discretion to decline to compel arbitration of Rund's claims against the Trust, and particularly against Ann individually.

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 68 of 79

The claims against Ann are not proper core claims, and the bankruptcy court therefore lacked discretion to decline to compel arbitration of those claims. *See Thorpe*, 671 F.3d at 1021. Ann never filed any proof of claim individually, and she has not waived her right to a district court jury trial of any claims against her in an individual capacity. No one has ever provided any rationale for why Ann was sued individually, or for why the bankruptcy court could possibly have jurisdiction over her in her individual capacity. The operative complaint contains no allegation of any wrongdoing by Ann individually. (2 ER 89-111.) Nor has anyone ever suggested any reason why claims against Ann individually would have to be decided to resolve the Trust's proofs of claim. Rund has tried to plead what are in reality non-core claims as core claims against Ann individually in order to manufacture a conflict with the Bankruptcy Code and thereby avoid arbitration, even though Ann has not filed and never will file any proof of claim in her individual capacity. Furthermore, as explained *supra*, pp. 27, 55, since Ann individually will not be filing any proofs of claim in the future, the disallowance/equitable subordination claim against her individually fails to present a justiciable case or

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 69 of 79

controversy. Accordingly, Rund's claims against Ann individually must be arbitrated.

While Rund's claims against the Trust are core claims because the Trust filed proofs of claim against the EPD estate, arbitrating those claims will not pose any inherent conflict with the Bankruptcy Code. In fact, the bankruptcy policies of centralization of disputes and avoidance of piecemeal litigation would be better served by sending those claims to arbitration. As explained, *supra*, pp. 48-60, under no circumstances can Rund's claims against John (or Ann individually) be resolved in bankruptcy court, such that arbitration can pose no conflict with bankruptcy policies with respect to those claims. It will serve judicial economy better to have all issues in this adversary proceeding decided in the arbitration forum, including Rund's claims against the Trust, rather than arbitrating the claims against John and Ann but proceeding before the bankruptcy court on the claims against the Trust.

Arbitrating Rund's claims against the Trust would not encroach on the bankruptcy court's power to decide bankruptcy issues either. The essence of the allegations underlying Rund's disallowance/equitable subordination claim has virtually nothing to do with core bankruptcy

matters, such as priority of claims, dischargeability of debts, marshalling the assets of the estate, and distributing those assets pro rata to the estate's creditors. Rather, those allegations have to do with John's alleged pre-petition conduct in representing EPD and investing in EPD. (2 ER 96-106 (¶¶ 27-47).) An arbitrator could adjudicate this claim, after which the bankruptcy court could confirm the arbitration award and then implement it in the administration of the bankruptcy estate. For instance, once the arbitrator decided whether or not John engaged in any of the acts of which he is accused by Rund, the bankruptcy court could still decide what effect to give the arbitrator's findings in determining whether to disallow or equitably subordinate the Trust's proofs of claim. This Court has recognized the difference between the merits of a claim and whether the claim should be disallowed in bankruptcy. *See Christensen v. Tucson Estates, Inc.* (*In re Tucson Estates, Inc.*), 912 F.2d 1162, 1168 (9th Cir. 1990). In that way, the bankruptcy court would keep control of the bankruptcy administration process and would retain the power to decide issues unique to bankruptcy, but the arbitration agreements would still be honored in accordance with the mandate of the FAA.

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 71 of 79

The district court relied heavily on *Thorpe* and *Eber* in concluding that arbitrating Rund's claims against the Trust would conflict with the underlying purposes of bankruptcy. (1 ER 20-22.) But those cases are distinguishable. In *Thorpe*, the very essence of the insurance company's breach of contract claim against the debtor's estate was that the debtor's actions in establishing an asbestos trust under 11 U.S.C. § 524(g) and orchestrating confirmation of a reorganization plan under § 524(g) violated a preexisting settlement agreement. *Thorpe*, 671 F.3d at 1022-24. Thus, the merits of the breach of contract claim overlapped with the substantive provisions of the Bankruptcy Code, such that arbitrating that claim would interfere with the administration of the § 524(g) process. *Id.* This Court explained in detail the unique purpose behind § 524(g) to ensure that bankruptcy courts supervise all aspects of asbestos trusts and how arbitration of the breach of contract claim in that case would directly interfere with that unique purpose. No such idiosyncratic statutory provision or unique statutory purpose exists in this case. Indeed, this case is the antithesis of *Thorpe*, and presents the very type of ordinary commercial dispute that should be referred to arbitration, notwithstanding that it arises in the procedural context of a bankruptcy.

Similarly, in *Eber*, this Court determined that arbitrating the creditors' claims would directly conflict with the bankruptcy court's exclusive power to determine dischargeability of debts. *Eber*, 687 F.3d at 1130-31. By contrast, arbitrating the factual merits of Rund's claims would not encroach on any such core power of the bankruptcy court in this case, since the ultimate decision on whether to disallow or equitably subordinate the Trust's proofs of claim would remain with the bankruptcy court.

In any case, Rund's disallowance/equitable subordination claim against the Trust is facially without merit. All of the allegations underlying that claim pertain to John's purported acts as legal counsel for EPD and Jerrold Pressman, as well as John's pre-petition loans to EPD. (2 ER 96-106 (¶¶ 27-47).) These same allegations formed the basis for Rund's common-law claims against John for fraudulent concealment, breach of fiduciary duty, fraud on the court, and aiding and abetting in the original and first amended complaints. (2 ER 36 (¶¶ 9-10), 40-41 (¶¶ 24-26), 64 (¶¶ 9-10), 68-69 (¶¶ 24-26).) However, Rund settled those claims and released both John and his former law firms, which was approved by the bankruptcy and district courts. (MJN 27-31.) In rejecting Ann's

appeal from the bankruptcy court's good faith settlement determination for lack of standing, the district court held that Rund's release means that "[c]laim preclusion . . . prevents [Rund] from asserting future tort claims related to the events alleged in [the Second Amended Complaint]—the same events at issue in the released claims—against [Ann] or the BC Trust." (MJN 31.) *See First Alliance*, 298 B.R. at 666 n.2 ("[O]nce a party has obtained money damages, *that same party may not also obtain equitable subordination based on the same conduct*." (emphasis added)). Rund did not appeal from the district court's ruling, and it is now res judicata and/or law of the case. Thus, Rund cannot seek to disallow or equitably subordinate the claims of the Trust based on John's alleged conduct.

Rund cannot proceed against the Trust based on John's conduct for another reason as well. John is merely the settlor of the Trust. As an irrevocable trust, under California law, the Trust cannot be liable for any of John's alleged acts. *See Laycock*, 141 Cal. App. 4th at 30-31 (irrevocable trust not liable for settlor's acts); Cal. Prob. Code § 18200 (same). The fact that John assigned his interest in EPD to the Trust does not affect this analysis. *Laycock*, 141 Cal. App. 4th at 31 ("[A] settlor's conduct after an

irrevocable trust has been established will not alter the nature of such a trust.").

Accordingly, Rund's claims against Ann and the Trust must be arbitrated pursuant to the FAA and the parties' arbitration agreements.

## V. EVEN IF SOME OF RUND'S CLAIMS ARE NOT ARBITRABLE, THE CLAIMS THAT ARE ARBITRABLE MUST BE SENT TO ARBITRATION AND THE REMAINING CLAIMS STAYED.

Even if this Court decides that arbitrating Rund's disallowance/equitable subordination claim against the Trust would somehow conflict with the purposes of the Bankruptcy Code, Rund's fraudulent transfer claims and his disallowance/equitable subordination claim against John and Ann individually must still be arbitrated for the reasons explained, *supra*, pp. 29-65. The Supreme Court has held that:

> The [FAA] has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation. From this it follows that state and federal courts must examine with care the complaints seeking to invoke their jurisdiction in order to separate arbitrable from nonarbitrable claims. A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration.

*KPMG*, 132 S. Ct. at 24 (citations omitted). This Court in *Thorpe* indicated that such a course is appropriate in bankruptcy cases as well, although in that case the party seeking arbitration failed to differentiate potentially arbitrable from non-arbitrable claims. *Thorpe*, 671 F.3d at 1023 n.10.

Thus, at the very least, this Court should enforce the arbitration agreements with respect to Rund's fraudulent transfer claims and his disallowance/equitable subordination claim against John and Ann individually, pursuant to *KPMG* and the FAA. If this Court concludes that Rund's disallowance/equitable subordination claim against the Trust is not arbitrable, then it should order further proceedings on that claim stayed until arbitration of the other claims is completed. *See* 9 U.S.C. § 3 (where claims in litigation are subject to arbitration, district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

Case: 14-55740, 01/16/2015, ID: 9386606, DktEntry: 23-1, Page 76 of 79

## CONCLUSION

For the foregoing reasons, the district court's orders affirming the bankruptcy court's refusal to compel arbitration of Rund's claims against John, Ann, and the Trust should be reversed with directions to remand to the bankruptcy court to compel arbitration of those claims. To the extent this Court concludes that any of Rund's claims are not arbitrable, it should order arbitration of the arbitrable claims, and stay further proceedings on the non-arbitrable claims until the arbitration of the arbitrable claims is completed.

January 16, 2015

**HORVITZ & LEVY LLP**
DAVID M. AXELRAD
STEVEN S. FLEISCHMAN
JOHN F. QUERIO
**WEILAND GOLDEN LLP**
JEFFREY I. GOLDEN

By: s/ John F. Querio

Attorneys for Defendants—Appellants
**POSHOW ANN KIRKLAND, individually and as Trustee of the BRIGHT CONSCIENCE TRUST dated September 9, 2009, and JOHN C. KIRKLAND**

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellants are unaware of any related case pending in this Court.

**CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS [FED R. APP. P. 32(a)(7)(C)]**

☒ 1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains 13,199 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

☐ this brief uses monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

☒ 2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using MS-Word in 14-point Century Schoolbook font type, or

☐ this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

January 16, 2015

s/ John F. Querio

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Signature: s/ Jo-Anne Novik

# EXHIBIT K

Conformed Copy
CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 22 2008

John A. Clarke, Executive Officer/Clerk
By ______ Deputy
B.M. SWAIN

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP
John C. Kirkland (No. 149543)
The Water Garden
1620 26th Street
Sixth Floor, North Tower
Santa Monica, CA 90404
Telephone: 424 202 6050
Facsimile: 424 202 6250
Jkirkland@dreierstein.com

Attorneys for Plaintiff
BROADWAY ENTERTAINMENT
MARKETING, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| BROADWAY ENTERTAINMENT MARKETING, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>RJV CAPITAL, LTD., a foreign corporation, ROBERT J. VANIER, an individual, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. BC391366<br><br>**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES FOR:**<br><br>**(1) FRAUD**<br><br>**(2) NEGLIGENT MISPREPRESENTATION**<br><br>**(3) BREACH OF WRITTEN AGREEMENT**<br><br>**(4) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**(5) BREACH OF ORAL AGREEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF ACTION

Plaintiff Broadway Entertainment Marketing, Inc. ("Broadway") brings this action to recoup its losses arising from the acts of a sophisticated con-artist. Defendant Robert J. Vanier ("Vanier") and his front company, RJV Capital, Ltd. ("RJV"), spent months making grandiose – and, ultimately, false – representations and promises to Broadway and its chairman, Jerrold S.



DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

Exhibit 36 for I.D.
MITCH A. GENSER, CSR#3839, RPR
Date: 6/26/17
Witness: Kirkland



36

Pressman ("Pressman"), in an effort to take advantage of Broadway's long-term tenancy and, most important, low rent payments when he had no intention to make good on his claims. Little did Pressman know, and unfortunately did not discover until over a year later, that, at the same time Vanier was conning him, he was doing the same thing to several of Pressman's former business associates with none the wiser. Like the flim-flam man absconding from River City, once he got everything he wanted, he literally took the money and ran – all the way back to Canada – fleeing the jurisdiction to avoid the consequences of his wrongful and fraudulent actions. This action is to bring him back to answer to some of the people and businesses who were the unfortunate and unwitting victims of his shell game.

## THE PARTIES

1. Plaintiff Broadway is, and at all times herein mentioned was, a California corporation qualified to do business in the State of California, with its principal place of business in Los Angeles County, California.

2. Broadway is informed and believes, and on that basis alleges, that defendant RJV is a purported corporation having its principal place of business in Ontario, Canada.

3. Vanier is an individual who resides in Ontario, Canada. Broadway is informed and believes, and on that basis alleges, that at all relevant times, Vanier was the principal of RJV, and there is such a unity of interest between them that he is its alter ego.

4. Broadway does not know the true names and capacities of the Defendants sued herein as DOE 1 through DOE 50, inclusive, and therefore sues these Defendants by such fictitious names. Broadway will amend this Complaint to allege their true names and capacities when such are ascertained. Broadway is informed and believes, and on that basis alleges, that each of the Defendants sued herein as DOES 1 through 50, inclusive, is in some manner legally responsible for the actions alleged herein.

5. Broadway is informed and believes, and on that basis alleges, that Defendants, and each of them, are and were at all times herein mentioned, the agents, servants, employees and/or joint venturers of each of the other Defendants, and at all times herein

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

mentioned were acting within the course and scope of said agency, employment, or service and/or in furtherance of the joint venture.

## BACKGROUND AND FACTS COMMON TO ALL COUNTS

6. In or around 2005, Vanier approached Pressman and proposed a deal whereby Broadway would assume, in its own name, additional office space adjacent to the offices Broadway was then leasing at 520 Broadway Avenue, Suite 660, in Santa Monica, California and then sublease that space to RJV. RJV would pay 100% of the rent due under the sublease directly to Broadway, which Broadway would then pay to the building's owner under its original lease with the owner. Under this arrangement, RJV would pay significantly lower rent for the space because Broadway paid a lower rate established years earlier at the beginning of its long-term tenancy in the building. On the other hand, if RJV were forced to lease the space directly from the owner, RJV would have to pay the significantly higher rent the owner charged its new tenants.

7. To induce Pressman to enter into the sublease arrangement, Vanier bragged that he planned to bring numerous businesses in as tenants in the space and that they would need marketing and publicity services, which Broadway would have the exclusive right to provide. As one part of the deal, Vanier represented that these tenants would pay Broadway to use its radio promotion services, and its in-house radio station, in an arrangement that would be very profitable for Broadway. In total, Vanier promised to bring Broadway over $800,000.00 in promotion and marketing business in exchange for the deep discount in rent the arrangement would give RJV.

8. Vanier repeatedly urged Pressman to agree to the sublease and listed the names of well-known business people he assured Pressman would be involved in and supportive of the business ventures Vanier had planned for the new space. Vanier told Pressman that he had hired one of these individuals, Ben Robert ("Robert"), who was one of Pressman's former business associates, as his assistant in charge of the businesses Vanier planned to operate from the Broadway location. He reassured Pressman about his financial condition and told him that he was the principal in a major oil company that he was taking public and that he had millions of dollars in assets. He reiterated that he planned to bring numerous wealthy contacts in from Canada as tenants and partners in his business venture in the space.



DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

9. Vanier continued to hype his business plan for the space to Pressman and urged him to go forward based on his misrepresentations to Pressman, including his alleged connections with Robert and another of Pressman's former business associates, Pat Brisson ("Brisson"). Brisson is a prominent hockey manager who had worked with Pressman on various projects and maintained an office in Pressman's suite of offices.

10. Despite some initial reluctance, based on Vanier's false assurances and misrepresentations – the falsity of which Pressman did not discover until well over a year later -- Pressman agreed to negotiate with the building's owner to lease the additional 7000 square feet of office space in Suite 650 in Broadway's name for RJV (hereafter, the "Leased Space"), adjacent to Broadway's existing space in Suite 660. At the same time, Pressman and Vanier worked toward finalizing the terms of the sublease.

11. Along these lines, Vanier asked Pressman to negotiate with the building owner to obtain significant tenant improvements that Vanier said were critical to both RJV and the other promised tenants. Vanier planned to design these improvements specifically to meet his own needs and promised to pay all costs. In addition, he asked that Broadway purchase new office furniture, a new computer system, a new copy machine, and a new telephone system, as well as install a second T1 line, in order to accommodate RJV and the other supposed tenants. In one particularly onerous request, Vanier asked that Broadway move its in-house radio station -- at a cost of approximately $48,000 -- in order to accommodate a larger conference room for Vanier and RJV. Broadway agreed but only on the condition that RJV and Vanier pay all of the costs associated with the move.

12. Throughout these negotiations, and with Brisson and/or Robert present at various times, Vanier reaffirmed RJV's commitment to pay the monthly rent and cover any costs Broadway incurred in the tenant improvement process.

13. On January 26, 2006, Broadway and RJV entered into a written "Sub-Tenant Agreement" (the "Sub-Tenant Agreement"), a copy of which is attached hereto as Exhibit "A" and incorporated herein by reference. Pursuant to the terms of the Sub-Tenant Agreement,

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

Broadway would assume the additional office space in its name, which RJV would then sublease for a term of 60 months beginning January 30, 2007.

14. In signing the Sub-Tenant Agreement, RJV and Vanier agreed to be bound by all the terms and conditions of Broadway's original lease with the building owner, and all of the amendments to that lease (hereafter the "Lease"). One of the amendments to the Lease, the Fifth Amendment, enabled Broadway to lease the additional space in its name for RJV (hereafter, the "Fifth Amendment"). The Fifth Amendment also provided the schedule for and amounts of monthly rent payments for the space, as well as the applicable tenant improvement costs. RJV and Vanier specifically agreed to and approved in writing all of the terms of the Fifth Amendment, including the rental payment schedule and tenant improvement costs. A copy of the Fifth Amendment is attached hereto as Exhibit "B" and incorporated by reference.

15. In connection with the Sub-Tenant Agreement, RJV and Vanier continued to make numerous representations and warranties to Broadway.

16. First, pursuant to the Sub-Tenant Agreement and the Fifth Amendment, RJV and Vanier covenanted and agreed with Broadway that, upon execution of the Sub-Tenant Agreement, RJV would pay the first month's rent of $20,054.00 (for the period of January 30, 2007 through February 28, 2007) and a security deposit of $26,398.00 for the Leased Space. RJV also agreed to continue to pay the monthly rent on the Leased Space by the 5th of every month for sixty months beginning March 5, 2007, and ending February 28, 2013. The amount of the monthly rental payments would increase every year throughout the term of the sublease – starting at $20,054.00 and ending at $23,943.38 by 2012 – with a total amount of approximately $1,875,000.00 in rent paid by the end of the rental period.

17. Second, pursuant to a written indemnity agreement, Vanier agreed to personally guarantee the obligations of RJV, and be responsible to Broadway for any losses Broadway sustained in connection with its execution of the Sub-Tenant Agreement and the Fifth Amendment (hereafter the "Guarantee"). A copy of the Guarantee is attached hereto as Exhibit "C" and incorporated herein by reference. Vanier recognized and acknowledged that this

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

agreement and representation constituted material inducements for Broadway to enter into the Sub-Tenant Agreement.

18. Vanier also expressly acknowledged under the terms of the Guarantee that his indemnification of Broadway for any losses it sustained was consideration for Broadway's execution of the Fifth Amendment, through which Broadway assumed the additional space in Suite 650 for sublease to RJV. Thus, it was designed to protect Broadway from any losses it might suffer in signing both the Sub-Tenant Agreement and the Fifth Amendment and Lease.

19. At RJV's urging, and based on the Sub-Tenant Agreement, the Fifth Amendment, and the Guarantee, Broadway and RJV finalized the plans for the tenant improvements to the space. From the start, Vanier and RJV took over all of the architectural planning and negotiations with both the architect and contractor. Vanier repeatedly met with them in person – sometimes with Robert and/or Brisson present – and unilaterally designed the improvement plans to suit his needs. By signing the Sub-Tenant Agreement, RJV and Vanier had expressly agreed to be subject to all the terms and conditions of the original letter of commitment for the tenant improvements to Suites 650 and 660, which Vanier himself had outlined and eventually approved in writing.

20. Not only did Vanier oversee the architectural improvements, he gave detailed instructions for all of the systems improvements he had demanded from Broadway and for which he promised to pay all costs. These included the purchase of new office furniture and copy machine and the installation of a new telephone system, computer system, and T1 line. Other than monitoring the ongoing construction and funding the additional improvements, neither Pressman nor anyone else from Broadway was materially involved in the design process, except to get final approval of Vanier's plans from the building's owner.

21. Throughout the negotiation and planning process, Vanier agreed repeatedly -- both verbally and in writing -- that RJV and/or Vanier would be responsible for any costs associated with the improvements. Besides signing the personal guarantee to cover any losses sustained by Broadway, Vanier personally reviewed and, on July 26, 2006, accepted in writing the Bid Summary submitted by the contractor for the improvements. In signing this document,



DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

Vanier approved in writing the designed improvements and promised to pay any improvement costs over $212,695.00 – the amount covered by the tenant improvement allocation from the building's owner.

22. On or about February 27, 2006, Broadway received a check from RJV for the security deposit for the space in the amount of $26,398.00. At no time did RJV or Vanier give any indication that they might have a problem performing any of their obligations under the agreements, and, in fact, Vanier signed the Bid Summary (and approved the costs of all of the improvements) on July 26, 2006 -- a full five months after signing the Sub-Tenant Agreement and Guarantee and paying the security deposit. Vanier continued to personally commit to Pressman, in front of both Brisson and Robert, that RJV would perform its obligations under the agreements.

23. Accordingly, Broadway and the contractor worked on completing the tenant improvements specifically requested by RJV and Vanier. Broadway also timely performed all of its other obligations under its agreements with RJV and Vanier.

24. As of December 2006, neither RJV nor Vanier had paid the first month's rent of $20,054.00 as agreed under the Sub-Tenant Agreement even though it had been due for nearly a year – at the time the Sub-Tenant Agreement was signed on January 26, 2006. RJV and Vanier also had not contributed to any of the costs of the tenant improvements they had requested and specifically approved. By January 2, 2007, Broadway had incurred losses of approximately $26,550.00 for the purchase and installation of the new copy machine, T-1 line, phone system, and computer upgrades for the workspace. It also had not received any payment from Vanier for the completed tenant improvements (which had been specifically designed and approved in writing by Vanier) that now exceeded the $212,695.00 commitment from the building's owner by $98,650.00. Finally, Broadway had not been reimbursed by Vanier and/or RJV for the $48,000.00 it had spent to move the in-house radio station to accommodate Vanier's requested conference room. In effect, Pressman and Broadway had given a personal guarantee to the building's owner that they would cover all of these costs (totaling $193,254.00), as well as the future rent in the new space (totaling $1,875,000.00 over the entire rental period), based on

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

Vanier's unambiguous and repeated commitments to fill the space, cover the costs for improvements, pay the rent, and bring over $800,000.00 in additional business to Broadway.

25. Broadway repeatedly requested both verbally and in writing that RJV and Vanier perform their obligations under the agreements and pay Broadway $98,650.00 for the tenant improvement costs, $26,550.00 for the installation of the new phone, computer, T-1 line, and copier systems, $48,000.00 to move the radio station, and the first month's rent of $20,054.00 on the Leased Space. Broadway sent RJV and Vanier letters on December 15, 2006, December 18, 2006, and January 2, 2007, and made repeated follow up requests for payment but never received any further payment or communication from either RJV or Vanier.

26. In the December 15, 2006 letter, Broadway made clear to RJV and Vanier that construction was near completion on the Leased Space and yet it had received no payment and no instructions to stop the work. In fact, Vanier had committed by phone to come to Los Angeles from Canada in early December 2006 to meet with Broadway employees and settle RJV's accounts with Broadway. He never contacted anyone at Broadway a second time regarding this alleged visit. Broadway reiterated that it needed a payment and/or further direction from RJV and Vanier or it would be forced to seek legal recourse. Still, Broadway received no response.

27. Because Vanier had approved the specific improvement plans (and costs) in the Bid Summary on July 26, 2006 – over five months after execution of the applicable agreements – and had voiced no complaints or instructions to stop work, Broadway performed its obligations under the Sub-Tenant Agreement and did not sublease the Leased Space to any other tenants. At first, while the Leased Space was under construction for the tenant improvements specified by RJV and Vanier, Broadway could not sublease the space to any other possible tenants.

28. Even after completion of the tenant improvements, Broadway was only able to sublet some of the space to other parties because the space had been designed and built according to Vanier's specifications. Moreover, all of the tenant improvement allocation provided by the building owner had been used to cover Vanier's requested improvements. This

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

left no money for other prospective tenants to make critical improvements to the space specific to their needs. As a result, Broadway could only mitigate a small portion of its losses, which it did, and still does, by subleasing the space on a piecemeal basis. Specifically, Broadway's sporadic "replacement" tenants are only willing to sublease small sections of the larger space for fractions of RJV's and Vanier's original sublease term.

29. As of the date of the filing of this Complaint, Broadway has not received a response to any of its demands or payment of any kind from either RJV or Vanier.

**FIRST CAUSE OF ACTION**

**(Fraud Against All Defendants)**

30. Broadway realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 29, inclusive, of this Complaint.

31. In connection with the Sub-Tenant Agreement and the Guarantee, which memorialize the parties' negotiations and representations, RJV and Vanier made numerous representations and warranties, failed to disclose material facts, and made numerous promises to Broadway without any intention of performing these promises. Without limitation, RJV, through Vanier, made the following express material representations and warranties:

(a) Vanier had millions of dollars to cover all of the monthly payments on the sub-lease and cover all of the tenant improvement and related costs;

(b) Vanier had several clients in Canada that were prepared to occupy and pay rent on the Leased Space;

(c) Vanier and his clients would cover all of the rent for the Leased Space;

(d) Vanier and his clients would bring in over $800,000.00 in new marketing and promotion business for Broadway while operating out of the Leased Space;

(e) Robert was one of Vanier's close business associates;

(f) Brisson was one of Vanier's close business associates;

(g) Numerous other individuals that Pressman knew were Vanier's close business associates;

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

(h) RJV and Vanier needed a larger conference room in connection with the Leased Space and would pay for all costs associated with the expansion, including moving the in-house radio station to accommodate the expanded conference room;

(i) RJV and Vanier needed a new copier, T-1 line, computer system, and telephone system installed in the Leased Space and would cover all related costs;

(j) RJV and Vanier needed a variety of other improvements made to the Leased Space and would cover all related costs;

(k) RJV and Vanier needed new office furniture for the Leased Space and would cover all related costs;

32. Broadway justifiably relied upon RJV's and Vanier's representations, warranties, and promises in entering into the Sub-Tenant Agreement, executing the Fifth Amendment to the lease, implementing the improvements specifically designed and approved by Vanier for the Leased Space, and not seeking other tenants or business opportunities in connection with the Leased Space.

33. Broadway is informed and believes, and thereon alleges, that the foregoing representations and promises made by RJV and Vanier to Broadway were in fact, false.

34. At the time RJV and Vanier made the foregoing representations and promises, Broadway was ignorant of their falsity and believed them to be true.

35. RJV and Vanier made the representations and promises knowing them to be false and said representations and promises were made by RJV and Vanier with the intent to defraud and induce Broadway to rely thereon and enter into and perform its part of the Sub-Tenant Agreement and the Fifth Amendment to the Lease, as well as commence Vanier's requested improvements, and not seek other tenants and business opportunities in connection with the Leased Space. If Broadway had known the true facts, Broadway would not have entered into the Sub-Tenant Agreement, executed the Fifth Amendment to the Lease, or made any improvements to the Leased Space. It also would have sought additional tenants and business opportunities in connection with the Leased Space.

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

36. As a direct and proximate result of RJV's and Vanier's fraudulent misrepresentations, material omissions, and false promises as herein alleged, Broadway was induced to enter into the Sub-Tenant Agreement, execute the Fifth Amendment to the Lease, make specific improvements to the Leased Space, and not seek other sub-tenants and business opportunities in connection with the Leased Space, and has been damaged in an amount in excess of the minimum jurisdiction of this Court, which amount Broadway is informed and believes is in excess of $2,500,000.

37. RJV's and Vanier's acts as herein alleged, were done intentionally, willfully, maliciously, and with wanton disregard for the rights of Broadway. Broadway is therefore entitled to an award of exemplary and punitive damages, in an amount in excess of $25,000,000, according to proof at trial.

**SECOND CAUSE OF ACTION**

**(Negligent Misrepresentation Against All Defendants)**

38. Broadway realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 36, inclusive, of this Complaint.

39. To the extent that RJV and Vanier did not intentionally make the misrepresentations, omissions, and promises described in detail above, Broadway is informed and believes, and based thereon alleges, that RJV and Vanier made them negligently.

40. In making the material misrepresentations, concealing material facts, and making false promises, as set forth above, RJV and Vanier acted negligently, having no reasonable grounds to believe such misstatements to be true and no reasonable grounds to believe that Broadway was aware of the concealed facts and intentions, and acted recklessly and with gross negligence.

41. Broadway is informed and believes, and based thereon alleges, that RJV and Vanier intended to induce Broadway to enter into the Sub-Tenant Agreement, execute the Fifth Amendment to the Lease, assume and make improvements to the Leased Space, and not seek other tenants or business opportunities in connection with the Leased Space.

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

42. Broadway entered into the Sub-Tenant Agreement, executed the Fifth Amendment to the Lease, assumed and made improvements to the Leased Space, and did not seek other tenants and business opportunities in connection with the Leased Space in justifiable reliance on RJV's and Vanier's material misrepresentations and concealment of material facts and intentions and in ignorance of their falsity and of the concealed facts.

43. Had Broadway known of the actual facts and the facts not disclosed by RJV and Vanier, Broadway would not have entered into the Sub-Tenant Agreement, executed the Fifth Amendment to the Lease, or assumed and made improvements to the Leased Space. It also would have sought additional tenants and business opportunities in connection with the Leased Space.

44. As a direct and proximate result of RJV's and Vanier's negligent misrepresentations as herein alleged, Broadway was induced to enter into the Sub-Tenant Agreement, execute the Fifth Amendment to the Lease, assume and make improvements to the Leased Space, and not seek additional tenants and business opportunities in connection with the Leased Space, and has been damaged in an amount in excess of the minimum jurisdiction of this Court, which amount Broadway is informed and believes is in excess of $2,500,000.

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

## THIRD CAUSE OF ACTION

**(Breach of Written Sub-Tenant Agreement Against Defendant RJV and Does 1 through 30)**

45. Broadway realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 44, inclusive, of this Complaint. In the alternative to the fraud and misrepresentation causes of action, Broadway asserts the causes of action set forth below.

46. Broadway and RJV entered into a written "Sub-Tenant Agreement" dated January 26, 2006.

47. As alleged hereinabove, RJV and Vanier made numerous representations and warranties to Broadway in the Sub-Tenant Agreement, including a commitment to pay the first month's rent of $20,054.00 on the Leased Space in Suite 650 upon execution of the Sub-Tenant Agreement on January 26, 2006, as well as the monthly rent for the space by the 5th of

each month for 60 months beginning March 5, 2007. The amount of the monthly rent they agreed to pay increased every year throughout the term of the sublease – starting at $20,054.00 and ending at $23,943.38 by 2012 for a total amount of approximately $1,875,000.00 in rent over the 60-month period. In addition, pursuant to his written indemnity agreement with Broadway, Vanier agreed to personally guarantee the obligations of RJV, and be responsible to Broadway for any losses Broadway sustained in connection with the Sub-Tenant Agreement and the Lease.

48. Broadway has fully performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Sub-Tenant Agreement and the Lease, except insofar as such performance has been waived or excused by virtue of RJV's or Vanier's conduct.

49. RJV has materially breached the Sub-Tenant Agreement and the Lease by, among other things:

(a) Failing to pay or otherwise satisfy its obligation to pay the first month's rent of $20,654.00 (for the period of January 30, 2007 through February 28, 2007) upon execution of the Sub-Tenant Agreement on January 26, 2006;

(b) Failing to pay or otherwise satisfy its obligation to pay monthly rent by the 5th of each month beginning March 5, 2007, and continuing for the 60-month term of the Sub-Tenant Agreement, at a rate of between $20,054.00 and $23,943.38 per month (for a total amount of approximately $1,875,000.00) over the entire period as set forth in the Fifth Amendment; and

(c) Failing and refusing to indemnify Broadway for the losses Broadway sustained and continues to sustain as a result of: (i) Broadway's construction of and payment for tenant improvements specified by RJV and Vanier, which had risen to $98,650.00 over the original allocation from the building's owner, as well as moving the in-house radio station at a cost of approximately $48,000.00; and (ii) Broadway's construction of and payment for, among other things, a new copier, T-1 line, computer system, and phone system, as well as new office furniture, as requested by RJV and Vanier (at a cost of $26,550.00).

50. As a direct and proximate result of RJV's material breaches of the Sub-Tenant Agreement, Broadway has been damaged in an amount in excess of the minimum

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

jurisdiction of this Court, which amount Broadway is informed and believes exceeds $2.5 million, including, but not limited to, damages for the following:

(a) Loss of rental income due to RJV's failure to pay the first month's rent upon execution of the Sub-Tenant Agreement on January 26, 2006;

(b) Loss of rental income due to RJV's failure to pay additional rent by the 5th of each month beginning March 5, 2007 and continuing for sixty months at a rate of between $20,054.00 and $23,943.38 per month (for a total amount of approximately $1,875,000.00) over the entire period, as set forth in the Fifth Amendment;

(c) Unreimbursed and unallocated costs and expenses incurred in making the tenant improvements requested by RJV (at a cost of $98,650.00), as well as moving the in-house radio station (at a cost of approximately $48,000.00);

(d) Unreimbursed costs and expenses incurred in purchasing and installing, among other things, a new copier, T-1 line, phone system, and computer system, as well as new office furniture, for RJV (at a cost of $26,550.00) ; and

(e) Fees and costs incurred in connection with Broadway's investigation of RJV's breaches of the Sub-Tenant Agreement and the Lease.

**FOURTH CAUSE OF ACTION**

**(Breach of Written Personal Guarantee Against Defendants Vanier and Does 20 through 50)**

51. Broadway realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 50, inclusive, of this Complaint.

52. After RJV and Broadway entered into the Sub-Tenant Agreement on January 26, 2006, Vanier signed a written Guarantee dated February 6, 2006, for the benefit of Broadway. Vanier agreed to personally guarantee the obligations of RJV, and be responsible to Broadway for any losses Broadway sustained in connection with its rights under the Sub-Tenant Agreement and the Lease.



DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

53. As alleged hereinabove, RJV and Vanier made numerous representations and warranties to Broadway in connection with the Sub-Tenant Agreement, including a commitment to pay the first month's rent on the Leased Space in Suite 650 upon execution of the Sub-Tenant Agreement on January 26, 2006, as well as the monthly rent for the space by the 5th of each month for 60 months beginning March 5, 2007 for a total amount of approximately $1,875,000.00 in rent over the entire period. Pursuant to the Guarantee, Vanier agreed to personally guarantee the obligations of RJV, and be responsible to Broadway for any losses Broadway sustained in connection the Sub-Tenant Agreement and the Lease.

54. Broadway has fully performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the Sub-Tenant Agreement, the Lease, and the Guarantee, except insofar as such performance has been waived or excused by virtue of RJV's or Vanier's conduct.

55. Vanier has materially breached the Sub-Tenant Agreement, the Lease, and the Guarantee by, among other things:

(a) Failing to pay or otherwise satisfy RJV's obligation to pay the first month's rent of $20,654.00 (for the period of January 30, 2007 through February 28, 2007) upon execution of the Sub-Tenant Agreement on January 26, 2006;

(b) Failing to pay or otherwise satisfy RJV's obligation to pay monthly rent by the 5th of each month beginning March 5, 2007, and continuing for the 60-month term of the Sub-Tenant Agreement at a rate of between $20,054.00 and $23,943.38 per month (for a total amount of approximately $1,875,000.00) over the entire period, as set forth in the Fifth Amendment; and

(c) Failing and refusing to indemnify Broadway for the losses Broadway sustained and continues to sustain as a result of: (i) Broadway's construction of and payment for tenant improvements specified by RJV and Vanier, which had risen to $98,650.00 over the original allocation from the building's owner, as well as moving the in-house radio station at a cost of approximately $48,000.00; and (ii) Broadway's construction of and payment for, among

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

other things, a new copier, T-1 line, computer system, and phone system, as well as new office furniture, as requested by RJV and Vanier (at a cost of $26,550.00).

56. As a direct and proximate result of Vanier's material breaches of the Sub-Tenant Agreement, Broadway has been damaged in an amount in excess of the minimum jurisdiction of this Court, which amount Broadway is informed and believes exceeds $2.5 million, including, but not limited to, damages for the following:

(a) Loss of rental income due to RJV and Vanier's failure to pay the first month's rent of $20,054.00 upon execution of the Sub-Tenant Agreement on January 26, 2006;

(b) Loss of rental income due to RJV and Vanier's failure to pay additional rent by the 5th of each month beginning March 5, 2007 and continuing for sixty months at a rate of between $20,054.00 and $23,943.38 per month (for a total amount of approximately $1,875,000) over the entire period, as set forth in the Fifth Amendment;

(c) Unreimbursed and unallocated costs and expenses incurred in making the tenant improvements requested by RJV (at a cost of $98,650.00), as well as moving the in-house radio station (at a cost of approximately $48,000.00);

(d) Unreimbursed costs and expenses incurred in purchasing and installing, among other things, a new copier, T-1 line, phone system, and computer system, as well as new office furniture, for RJV (at a cost of $26,550.00) ; and

(e) Fees and costs incurred in connection with Broadway's investigation of RJV's and Vanier's breaches of the Sub-Tenant Agreement, the Lease, and the Guarantee.

## FIFTH CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants)**

57. Broadway realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 56, inclusive, of this Complaint.

58. Every agreement imposes, as an implied covenant, an obligation of good faith and fair dealing in its performance and/or enforcement.

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

59. RJV and Vanier entered into valid and enforceable agreements with Broadway to fulfill their obligations under the Sub-Tenant Agreement and Guarantee, as well as all verbal agreements alleged herein, and be responsible to Broadway for any losses Broadway sustained in connection with signing the Sub-Tenant Agreement and the Lease.

60. RJV and Vanier owed Broadway a duty of good faith and fair dealing under all of these agreements.

61. As alleged herein, RJV and Vanier breached the implied covenant of good faith and fair dealing by, among other things: (1) failing to pay the first month's rent on the space in Suite 650 upon execution of the Sub-Tenant Agreement on January 26, 2006, as well as the monthly rent for the space by the 5th of each month for 60 months beginning March 5, 2007 (for a total amount of approximately $1,875,000); (2) failing to be reimburse Broadway for any losses Broadway sustained in connection with all of these agreements, including making improvements requested and approved by Vanier; and (3) failing to fulfill commitments Vanier made to bring Broadway $800,000.00 in new marketing and promotions business in exchange for Broadway's entering into Sub-Tenant Agreement.

62. Broadway was justified in expecting payment under the Sub-Tenant Agreement, the Lease, and the Guarantee, as well as the approximately $800,000.00 in new business it was promised in exchange for entering into the agreements. As a result of RJV's and Vanier's breaches, Broadway's justified expectations were denied.

63. Broadway has fully performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the Sub-Tenant Agreement, the Lease, and all other agreements alleged herein, except insofar as such performance has been waived or excused by virtue of RJV's or Vanier's conduct.

64. As a direct and proximate result of RJV's and Vanier's breaches, Broadway has been damaged in an amount in excess of the minimum jurisdiction of this Court, which amount Broadway is informed and believes exceeds $2.5 million, including, but not limited to, damages for the following:

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

(a) Loss of rental income due to RJV and Vanier's failure to pay the first month's rent of $20,054.00 upon execution of the Sub-Tenant Agreement on January 26, 2006;

(b) Loss of rental income due to RJV and Vanier's failure to pay additional rent by the 5th of each month beginning March 5, 2007 and continuing for sixty months (for a total amount of approximately $1,875,000.00);

(c) Unreimbursed and unallocated costs and expenses incurred in making the tenant improvements requested by RJV (at a cost of $98,650.00), as well as moving the in-house radio station (at a cost of approximately $48,000.00);

(d) Unreimbursed costs and expenses incurred in purchasing and installing, among other things, a new copier, T-1 line, phone system, and computer system, as well as new office furniture, for RJV (at a cost of $26,550.00);

(e) Unrealized marketing and promotion business promised to Broadway by Vanier; and

(f) Fees and costs incurred in connection with Broadway's investigation of RJV's and Vanier's breaches of the Sub-Tenant Agreement, the Lease, and all of the other agreements and covenants alleged herein.

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

**SIXTH CAUSE OF ACTION**

**(Breach of Oral Agreement Against All Defendants)**

65. Broadway realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 64, inclusive, of this Complaint.

66. In addition to entering into the Sub-Tenant Agreement on January 26, 2006, and signing the Guarantee dated February 6, 2006, Vanier verbally agreed to personally guarantee the obligations of RJV, and be responsible to Broadway for any losses Broadway sustained in connection with the Sub-Tenant Agreement and the Lease. Vanier also verbally agreed to bring Broadway approximately $800,000.00 in marketing and promotions business from the businesses he planned to oversee in the Leased Space.

67. As alleged hereinabove, RJV and Vanier made numerous representations and warranties to Broadway in connection with the Sub-Tenant Agreement, including a commitment to pay the first month's rent on the space in Suite 650 on January 26, 2006, as well as the monthly rent for the space by the 5th of each month for 60 months beginning March 5, 2007 (for a total of approximately $1,875,000.00). Vanier also verbally agreed, with Brisson and/or Robert present, to personally guarantee the obligations of RJV under the Sub-Tenant Agreement and the Lease, and be responsible to Broadway for any losses Broadway sustained in connection with the Sub-Tenant Agreement and the Lease. Finally, Vanier agreed to bring Broadway approximately $800,000.00 in exclusive marketing and promotions business from the new entities in the Leased Space (all together, the" Agreements").

68. In exchange, Broadway agreed to execute the Fifth Amendment to the Lease under which it would assume the Leased Space in its name for sublease to RJV and Vanier. Broadway also agreed to make the improvements to the space that were specifically designed and approved by RJV and Vanier.

69. Broadway has fully performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the Agreements, except insofar as such performance has been waived or excused by virtue of RJV's or Vanier's conduct.

70. Vanier has materially breached the oral Agreements by, among other things:

(a) Failing to pay or otherwise satisfy RJV's obligation to pay the first month's rent of $20,654.00 (for the period of January 30, 2007 through February 28, 2007) upon execution of the Sub-Tenant Agreement on January 26, 2006;

(b) Failing to pay or otherwise satisfy RJV's obligation to pay monthly rent by the 5th of each month beginning March 5, 2007, and continuing for the 60-month term of the Sub-Tenant Agreement, for a total of $1,875,000.00;

(c) Failing and refusing to indemnify Broadway for the losses Broadway sustained and continues to sustain as a result of: (i) Broadway's construction of and payment for



GREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

tenant improvements specified by RJV and Vanier, which had risen to $98,650.00 over the original allocation from the building's owner, as well as moving the in-house radio station at a cost of approximately $48,000.00; and (ii) Broadway's construction of and payment for, among other things, a new copier, T-1 line, computer system, and phone system, as well as new office furniture, as requested by RJV and Vanier (at a cost of $26,550.00); and

(d) Failing to provide Broadway with approximately $800,000.00 in new marketing and promotions business.

71. As a direct and proximate result of Vanier's material breaches of the Agreements, Broadway has been damaged in an amount in excess of the minimum jurisdiction of this Court, which amount Broadway is informed and believes exceeds $2.5 million, including, but not limited to, damages for the following:

(a) Loss of rental income due to RJV and Vanier's failure to pay the first month's rent upon execution of the Sub-Tenant Agreement on January 26, 2006;

(b) Loss of rental income due to RJV and Vanier's failure to pay additional rent by the 5th of each month beginning March 5, 2007 and continuing for sixty months (for a total of approximately $1,875,000);

(c) Unreimbursed and unallocated costs and expenses incurred in making the tenant improvements requested by RJV (at a cost of $98,650.00), as well as moving the in-house radio station (at a cost of approximately $48,000.00);

(d) Unreimbursed costs and expenses incurred in purchasing and installing, among other things, a new copier, T-1 line, phone system, and computer system, as well as new office furniture, for RJV (at a cost of $26,550.00);

(e) Unrealized marketing and promotion business promised to Broadway by Vanier; and

(f) Fees and costs incurred in connection with Broadway's investigation of RJV's and Vanier's breaches of the Agreements.

**PRAYER FOR RELIEF**

WHEREFORE, Broadway prays for relief as follows:

**AS TO THE FIRST CAUSE OF ACTION**

1. For an award of general damages in an amount in excess of $2,500,000, according to proof at trial;

2. For an award of punitive damages in an amount in excess of $25,000,000, according to proof at trial;

**AS TO THE SECOND CAUSE OF ACTION**

3. For an award of general damages in an amount in excess of $2,500,000, according to proof at trial;

**AS TO THE THIRD, FOURTH AND FIFTH CAUSES OF ACTION**

4. For an award of special damages in an amount in excess of $2,500,000, according to proof at trial;

5. For an award of compensatory damages in excess of in an amount in excess of $2,500,000, according to proof at trial;

6. For an award of attorneys' fees and expenses incurred herein;

**AS TO ALL CAUSES OF ACTION**

7. For an award of interest as provided by law;

8. For costs of suit incurred herein; and

9. For such other and further relief as the Court deems just and proper.

DATED: May 22, 2008

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

By ______________________
John C. Kirkland
Attorneys for Plaintiff
BROADWAY ENTERTAINMENT
MARKETING, INC.

**DEMAND FOR TRIAL BY JURY**

Plaintiff Broadway Entertainment Marketing, Inc. demands trial by jury on all matters and issues herein.

DATED: May 22, 2008

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

By

John C. Kirkland
Attorneys for Plaintiff
BROADWAY ENTERTAINMENT MARKETING, INC.

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

# EXHIBIT L

# State of California
## Kevin Shelley
## Secretary of State

File # 200317910131

FILED
in the office of the Secretary of State of the State of California

JUN 2 7 2003

KEVIN SHELLEY, SECRETARY OF STATE

This Space For Filing Use Only

**LIMITED LIABILITY COMPANY ARTICLES OF ORGANIZATION**

A $70.00 filing fee must accompany this form.

IMPORTANT – Read instructions before completing this form.

1. NAME OF THE LIMITED LIABILITY COMPANY (END THE NAME WITH THE WORDS "LIMITED LIABILITY COMPANY," "LTD. LIABILITY CO.," OR THE ABBREVIATIONS "LLC" OR "L.L.C.")
EPD INVESTMENT CO., LLC

2. THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE IN ANY LAWFUL ACT OR ACTIVITY FOR WHICH A LIMITED COMPANY MAY BE ORGANIZED UNDER THE BEVERLY-KILLEA LIMITED LIABILITY COMPANY ACT.

3. CHECK THE APPROPRIATE PROVISION BELOW AND NAME THE AGENT FOR SERVICE OF PROCESS.
[✓] AN INDIVIDUAL RESIDING IN CALIFORNIA. PROCEED TO ITEM 4.
[ ] A CORPORATION WHICH HAS FILED A CERTIFICATE PURSUANT TO SECTION 1505. PROCEED TO ITEM 5.
AGENT'S NAME: JOHN C. KIRKLAND

4. ADDRESS OF THE AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL:
ADDRESS 2450 COLORADO AVENUE, SUITE 400E
CITY SANTA MONICA STATE CA ZIP CODE 90404

5. THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY: (CHECK ONE)
[ ] ONE MANAGER
[ ] MORE THAN ONE MANAGER
[✓] ALL LIMITED LIABILITY COMPANY MEMBER(S)

6. OTHER MATTERS TO BE INCLUDED IN THIS CERTIFICATE MAY BE SET FORTH ON SEPARATE ATTACHED PAGES AND ARE MADE A PART OF THIS CERTIFICATE. OTHER MATTERS MAY INCLUDE THE LATEST DATE ON WHICH THE LIMITED LIABILITY COMPANY IS TO DISSOLVE.

7. NUMBER OF PAGES ATTACHED, IF ANY:

8. TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY. (FOR INFORMATIONAL PURPOSES ONLY)

9. IT IS HEREBY DECLARED THAT I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.
Amy Brown
SIGNATURE OF ORGANIZER
JUNE 27, 2003
DATE
AMY BROWN
TYPE OR PRINT NAME OF ORGANIZER

10. RETURN TO:
NAME JOHN C. KIRKLAND
FIRM GREENBERG TRAURIG, LLP
ADDRESS 2450 COLORADO AVENUE, SUITE 400E
CITY/STATE SANTA MONICA, CALIFORNIA
ZIP CODE 90404

SEC/STATE FORM LLC-1 (Rev. 04/2003) – FILING FEE $70.00
APPROVED BY SECRETARY OF STATE

I hereby certify that the foregoing transcript of 2 page(s) is a full, true and correct copy of the original record in the custody of the California Secretary of State's office.

MAR 10 2011

Date:

DEBRA BOWEN, Secretary of State

# EXHIBIT M

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Arthur Huerth, Joan Huerth, Individually and D/B/A Huerth Financial Leasing, AJ Partners and Leslie Huerth,<br><br>Plaintiffs,<br><br>Jerrold Pressman, EPD Investment Co., LLC, a California Limited Liability Company, EPD Investment Leasing Co., LLC, a California Limited Liability Company, EPD Group, Theodore Jonavic, Ruben Moreno, Katherine Werner, True Position Technologies, Inc., a California Corporation, Ice Skating Enterprises, Inc., a California Corporation, S.C. Club, L.P., a California Limited Partnership,<br><br>Defendants. | CASE NO. 10 C 05049<br><br>Assigned Judge:<br>Hon. Philip G. Reinhard<br><br>Designated Magistrate Judge:<br>Hon. P. Michael Mahoney |

**DEFENDANTS' OBJECTION TO REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE (ENTRY OF DEFAULT)**

On September 27, 2010, Defendants Jerrold Pressman ("Pressman"), EPD Investment Co., LLC ("EPD"), Theodore Jonavic ("Jonavic"), Ruben Moreno ("Moreno"), Katherine Werner ("Werner"), and S.C. Club, L.P. ("SC", and together with Pressman, EPD, Jonavic, Moreno and Werner, "Defendants"), received the Report and Recommendation ("Report") of the U.S. Magistrate Judge, recommending that Plaintiffs' motion for entry of default be granted.

Pursuant to Federal Rules of Civil Procedure ("FRCP") 72, and within the time requirement noticed in the Report and FRCP 6, Defendants hereby file their joint objection to the Report. The Defendants base their objections on the fact that service was not properly effectuated. In support thereof, Defendants file this objection and attach the requisite Points and Authorities with supporting exhibits.

## POINTS AND AUTHORITIES

This Court should not approve the Report and Recommendation of the U.S. Magistrate because Defendants Pressman, EPD, Moreno, Werner and SC were not served in this matter. Moreover, Defendant Jonavic's failure to respond was due to an inadvertent scheduling oversight which was not intended as a lack of respect to this Court and no prejudice resulted as only a few weeks have passed since Defendant Jonavic was required to file the appropriate judicial response. Therefore, this Court should refuse to enter default against the Defendants and instead accept each of Defendants' Waivers of Service as well as allow each of the Defendants to proceed in their joint Motion to Dismiss Under Rule 12(b), or Alternatively, to Transfer Venue.

### I. DEFAULT CANNOT BE ENTERED AGAINST DEFENDANTS PRESSMAN, EPD, MORENO, WERNER AND SC BECAUSE PLAINTIFFS FAILED TO EFFECT PROPER SERVICE ON THESE DEFENDANTS

In Plaintiffs' Motion for Entry of Default Order, Plaintiffs claim to have effectuated proper service on defendants Pressman, EPD, Moreno, Werner and SC on August 18, 2010, and purport to have proof of service for each of these defendants. Plaintiffs' Motion, Exhibit A. Plaintiffs' claim is without merit and as this Court will learn the proofs of service proffered by Plaintiffs are unreliable. Entry of default must accordingly be refused.

FRCP 4(e) requires serving an individual with a summons and a copy of the complaint pursuant to state law (in this case California law), by personal in-person service, by leaving a copy at the individual's dwelling, or delivering a copy to the individual's authorized agent. Fed. R. Civ. P. 4(e)(1) and (2). FRCP 4(h), in the case of serving an entity, requires serving a summons with a copy of the complaint in the same manner described under Rule 4(e). Fed. R. Civ. P. 4(h).

When the sufficiency of service is challenged by a defendant, however, the plaintiff bears the burden of making a prima facie showing that service was proper. See *Homer v. Jones-Bey*, 415 F.3d

748, 754 (7th Cir. 2005); *Miles v. WTMX Radio Network*, No. 02 C 427, 2002 WL 31369424 at *2 (N.D. Ill Oct. 18, 2002). Although Plaintiffs' proof of service constitutes prima facie evidence of valid service, it can be overcome by strong and convincing evidence. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F2d 1394, 1398 (7th Cir. 1993). Defendants can establish this by affidavit or other evidence proving lack of service. *In re Brackett*, 243 BR 910, 914-915 (BC ND GA 2000).

In this case, with respect to defendant Pressman, Plaintiffs' proof of service indicates that service was effected on August 20, 2010, by purportedly leaving a copy of the summons at defendant Pressman's work, with David Duquette[1]. *Id.* However, Pressman and David Duquette do not work together. Mr. Duquette is the former President of U.S. Aerospace, Inc., a company that Pressman at one time served on the board. Mr. Duquette is not authorized to receive service for Pressman or any of the other Defendants. Pressman Aff., 4. Pressman and Mr. Duquette do not work in the same office or live in the same residence. *Id.*. Pressman has not been in touch with Mr. Duquette for quite some time and does not know his whereabouts. *Id.*

Moreover, Pressman never received from Mr. Duquette a copy of the summons on or after August 18, 2010, as Plaintiffs' claim, or August 20, 2010, as their proof of service purports. *Id.* Defendant Pressman learned for the first time that suit was filed when defendant Jonavic provided

[1] Plaintiffs in bad faith ignored defendant Pressman's instruction to Plaintiffs' counsel regarding service of process in this matter. In early July 2010, Plaintiffs contacted defendant Pressman with a draft copy of their complaint. Pressman acknowledged receipt of their correspondence and directed Plaintiffs' counsel to send all future communication regarding this lawsuit to Defendants' California counsel, Matthew Gruenberg. See Exhibit A, attached hereto. Pressman provided Plaintiffs' counsel with all of Defendants' counsel's contact information. Pressman anticipated that Plaintiffs would file this lawsuit and intended to waive service and direct the other defendants to do the same once Defendants' counsel was served with Plaintiffs' complaint. Pressman Aff., 5. However, Plaintiffs ignored this request. Instead, as described throughout this Objection, Plaintiffs attempted to serve Defendants through ineffective means and then move swiftly for entry of default.

Case: 1:10-cv-05049 Document #: 22 Filed: 10/06/10 Page 4 of 13 PageID #:280

Pressman with a copy in mid-September 2010. *Id.*, at 6; Jonavic Aff., 4. Clearly, service on Pressman was improper.

With regard to SC, Plaintiffs' proof of service indicates that they similarly served SC by leaving a copy of the summons with Mr. Duquette. Plaintiff's Motion, Exhibit A. Neither SC nor any of its authorized representatives, however, have any affiliation with Mr. Duquette and Mr. Duquette is not SC's authorized agent for service of process. Keith Pressman is the entity's agent for service of process. See Exhibit B, attached hereto. Again, service on SC was improper.

Plaintiffs claim to have served Defendants EPD, Moreno and Werner by leaving a copy of the summons with John Kirkland. Plaintiffs' Motion, Exhibit A. This claim is either mistaken or misleading but in either instance it is inaccurate. John Kirkland is defendant EPD's registered agent for service of process, and a prominent lawyer in the law firm of Luce Forward Hamilton & Scripps LLP, in downtown Los Angeles, California. Mr. Kirkland, however, is not authorized to receive service for Moreno or Werner. But even if he was, Mr. Kirkland was never served in this matter - not for Moreno, Werner or EPD. Kirkland Aff., 4. Curiously, Plaintiffs' proofs of service on John Kirkland do not indicate where service occurred. Service on EPD, Moreno and Werner was never properly effectuated.

In summary, Plaintiffs did not serve any of these defendants in accordance with FRCP 4. Instead, Plaintiffs' purport to have served David Duquette, an individual with no connection, affiliation or contact with the Defendants, and John Kirkland, who, although authorized to receive service on behalf of EPD, never received service in this matter. Lastly, each of Plaintiffs' proofs of service is so vague – both as to place of service and to authorization of the party purportedly served – that collectively, they lack any objective indicia of veracity.

Again, a defendant can overcome a plaintiff's prima facie showing that service was proper by strong and convincing evidence, established by affidavit or other evidence, proving lack of service. *In re Brackett*, 243 BR 910, 914-915 (BC ND GA 2000). In this case, each of these defendants provide an affidavit supporting their position that service was not properly effected. And, as articulated *supra*, Plaintiffs' proofs of service are dubious, at best.

Without proper service of process on a defendant, the Court is deprived of personal jurisdiction over that defendant. See *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Even assuming, *arguendo*, that defendants Pressman, EPD, Moreno , Werner and SC had some other form of notice of the lawsuit before September 2010, mere notice of the lawsuit is not sufficient to establish personal jurisdiction over a defendant. *Id.*

The Court should reject the Report for insufficient service of process because process was not served in compliance with the law. *Bell v. City of Chicago*, No. 03 C 2117, 2004 WL 3119015, *3 (N.D. Ill. Dec. 20, 2004). Accordingly, the Court should refuse to enter default against defendants Pressman, EPD, Moreno, Werner and SC.

**II. DEFAULT AGAINST DEFENDANT JONAVIC SHOULD BE REFUSED BECAUSE FAILURE TO RESPOND DUE TO EXCUSABLE NEGLECT**

Under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 394 (1993), a court can refuse to enter a default judgment due to excusable neglect. The determination of whether a defendant's failure to respond may be excused requires an examination of the relevant circumstances. *Id.*, at 395. These include the prejudice that may be caused to the Plaintiffs, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the defendant and whether the defendant acted in good faith. *Id.*

Case: 1:10-cv-05049 Document #: 22 Filed: 10/06/10 Page 6 of 13 PageID #:288

In this case, Jonavic inadvertently failed to timely schedule and file the appropriate judicial response. Jonavic Aff., 5. This failure was not intended in any way to be disrespectful to this Court. Moreover, only a very short amount of time lapsed from the initial filing of the Complaint to Report filed by the U.S. Magistrate.

Although negligent, Jonavic's failure to respond was not a display of bad faith. Rather, Jonavic simply failed to timely respond due to a misunderstanding in the scheduling of the Court's deadline and he is prepared to address any and all concerns directly. This type of mistake is excusable and within this Court's discretion. *See United States v. $48,595.00*, 705 F2d 909, 912-913 (7th Cir. 1983) (finding excusable neglect where a foreign defendant was unaware of the seriousness of the action).

Finally, excusing Jonavic's neglect will not cause any prejudice to Plaintiffs because there has only been a brief lapse of time – less than twenty-one days – between the date the responses were due, the Report filed by the U.S Magistrate, and this objection. For the foregoing reasons, the Court should refuse to enter default against Jonavic.

## III. DEFENDANTS WILL WAIVE SERVICE IF ALLOWED TO JOIN IN CO-DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b), OR ALTERNATIVELY, TO TRANSFER VENUE

The foregoing arguments notwithstanding, Defendants will, and hereby do, agree to waive service in this matter should this Court refuse entry of default against all Defendants and allow all Defendants to proceed in their Motion to Dismiss Under Rule 12(b), or Alternatively, to Transfer Venue, filed concurrently herewith.

## IV. CONCLUSION

For the aforementioned reasons, the Court should refuse to enter default against all Defendants, accept Defendants' Waiver of Service and allow Defendants to proceed in their Motion to Dismiss Under Rule 12(b), or Alternatively, to Transfer Venue, filed concurrently herewith.

Case: 1:10-cv-05049 Document #: 22 Filed: 10/06/10 Page 7 of 13 PageID #:289

Date: October 5, 2010

/s/ Matthew B. Gruenberg
Attorney for Defendants

Attorneys for Defendants
Mr. Matthew B. Gruenberg CA SBN 264210
LAW OFFICES OF MATTHEW B. GRUENBERG
942A Lincoln Blvd.
Santa Monica, CA 90403
Telephone: (310) 740-5105

/s/ Barney H. Balonick

Mr. Barney H. Balonick, Esq. ID 6238985
Local Counsel
33 North Dearborn Street
Suite 1930
Chicago, IL 60602
Telephone: (312)368-0255

# EXHIBIT A

DEFENDANTS' OBJECTION TO REPORT AND RECOMMENDATION

OF U.S. MAGISTRATE (ENTRY OF DEFAULT)

Gmail by Google

**Matt Gruenberg <[redacted]@gmail.com>**

# Huerth et al v. EPD et al

1 message

**Matt Gruenberg [redacted]@gmail.com>** **Mon, Sep 27, 2010 at 1:38 PM**

To: scook@mckenna-law.com
Cc: mattgruenberg@gmail.com
Bcc: Barney Balonick <barneyb@bgoldberglaw.com>, Jerry Pressman <[redacted]@theepdgroup.com>

sara,

i have several initial concerns regarding this matter:

1. service was not properly effected upon any of the defendants, with exception of janovic, who was personally served.

2. other defendants did not receive notice that the complaint was filed until in or around mid-september, 2010, when janovic reported that he had been served.

3. no notice of the complaint or default hearing was provided to me.

4. you ignored correspondence of july 12, 2010 from defendant pressman, in which you were instructed to direct to me all communication in this matter. before your email of today, in which you enclosed a copy of the magistrate's r&r for entry of default, i have never received any communication from you.

5. you mailed notice of the default hearing by regular mail to epd's santa monica offices on september 17, 2010. they received the notice on september 23, 2010. the hearing took place on september 22, 2010.

6. there is no personal jurisdiction in illinois over any of the defendants.

Case: 1:10-cv-05040 Document #: 22 Filed: 10/06/10 Page 10 of 13 PageID #:292



7. the nd of illinois is an improper venue.

we intend to defend this matter and seek appropriate sanctions. let me know if you are interested in discussing the issues raised by this email before we begin filing motions.

i can be reached as follows:

**Law Office of Matthew B. Gruenberg**
942A Lincoln Blvd.
Santa Monica, CA 90403
Direct (310) 405-7604
Cell (303) 641-6295
Fax (310) 405-7605
[redacted]g@gmail.com

-----Original Message-----
From: "Jerry Pressman" <[redacted]@theepdgroup.com>
To: scook@mckenna-law.com
Date: Mon, 12 Jul 2010 11:05:24 -0700
Subject: Art and Joan Huerth

Dear Ms. Cook,

I am in receipt of your letter dated July 1, 2010. This matter has been turned over to our counsel, Matthew Gruenberg. Please direct all future communication to his office:

Matthew Gruenberg
Attorney-At-Law
942A Lincoln Boulevard
Santa Monica, CA 90403
(303) 641-6295
[redacted]@gmail.com

Thank you.

Sincerely,

Jerrold Pressman

Case: 1:10-cv-03049 Document #: 22 Filed: 10/06/10 Page 12 of 13 PageID #:294

# EXHIBIT B

DEFENDANTS' OBJECTION TO REPORT AND RECOMMENDATION

OF U.S. MAGISTRATE (ENTRY OF DEFAULT)

common good privacy All people Liberty Speak Conscience without discrimination

California Secretary of State Debra Bowen

Business Programs

**Business Entities (BE)**

Online Services
- **Business Search**
- **Disclosure Search**
- **E-File Statements**
- **Processing Times**

**Main Page**
**Service Options**
**Name Availability**
**Forms, Samples & Fees**
**Annual/Biennial Statements**
**Filing Tips**
**Information Requests**
(certificates, copies & status reports)
**Service of Process**
**FAQs**
**Contact Information**

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**
- **International Business Relations Program**

**Customer Alert**
(misleading business solicitations)

## Business Entity Detail

Data is updated weekly and is current as of Friday, September 24, 2010. It is not a complete or certified record of the entity.

| | |
|---|---|
| [illegible] | S.C. CLUB, L.P. |
| [illegible] | 199615200019 |
| [illegible] | 05/01/1996 |
| [illegible] | ACTIVE |
| [illegible] | CALIFORNIA |
| [illegible] | 520 BROADWAY BLVD., STE. 660 |
| [illegible] | SANTA MONICA CA 90401 |
| [illegible] | KEITH PRESSMAN |
| [illegible] | 520 BROADWAY BLVD., STE. 660 |
| [illegible] | SANTA MONICA CA 90401 |

* Indicates the information is not contained in the California Secretary of State's database.

* **Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search** **New Search** **Printer Friendly** **Back to Search Results**

**Privacy Statement** | **Free Document Readers**

Copyright © 2010 California Secretary of State

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

ARTHUR HUERTH, JOAN HUERTH, INDIVIDUALLY AND D/B/A HUERTH FINANCIAL LEASING, AJ PARTNERS AND LESLIE HUERTH,

Plaintiffs,

JERROLD PRESSMAN, EPD INVESTMENT CO., LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, EPD INVESTMENT LEASING CO., LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, THE EPD GROUP, THEODORE JONAVIC, RUBEN MORENO, KATHERINE WERNER, TRUE POSITION TECHNOLOGIES, INC., A CALIFORNIA CORPORATION, ICE SKATING ENTERPRISES, INC., A CALIFORNIA CORPORATION, S.C. CLUB, L.P., A CALIFORNIA LIMITED PARTNERSHIP

Defendants.

CASE NO. 10 C 05049

ASSIGNED JUDGE:
HON. PHILIP G. REINHARD

DESIGNATED MAGISTRATE JUDGE:
HON. P. MICHAEL MAHONEY

**DECLARATION OF KEITH PRESSMAN**
IN SUPPORT **OF DEFENDANTS' MOTION TO DISMISS UNDER RULE** 12(h), OR
**ALTERNATIVELY, TO TRANSFER VENUE**

Having been duly sworn, Keith Pressman deposes and states as follows:

1. I am an equity-owner and an authorized representative of EPD Investment Co., LLC, EPD Investment Leasing Co., LLC, EPD Group, Theodore Janovic, Ruben Moreno, Katherine Werner, Ice Skating Enterprises, Inc., and S.C. Club, and an authorized representative of Jerrold Pressman (collectively, "Defendants"), named defendants in this action. I have personal knowledge of the facts set forth herein and, if called to testify as a witness, could and would testify truthfully and competently thereto under oath.

2. I have received and reviewed Defendants' Motion to Dismiss Under Rule 12(b), or Alternatively, to Transfer Venue, including each document attached as an Exhibit thereto.

3. Each of the documents attached to Defendants' Motion as Exhibits is a true and correct copy of the original.

4. None of Defendants has been to Illinois on company business. To my knowledge, none of Defendants has ever sent any of their officers, directors or employees to the Northern District of Illinois, or anywhere in Illinois, on behalf of Defendants.

5. In Plaintiffs' case. no Deposit Acknowledgements received by Plaintiffs, or Equipment Lease Agreements entered into by Plaintiffs, were made in Illinois or in any way make reference to Illinois.

6. Defendants make no investment transactions available to the general public.

7. Defendants do not have a public website.

8. Defendants have not actively procured business in Illinois and have no temporal relationship with Illinois. Defendants are not licensed to do business in Illinois, do not maintain offices in Illinois nor do they engage in business activities in Illinois. All activity with Plaintiffs occurred in California.

9. Any entrance into Illinois by EPD has resulted from periodic interest payment checks being sent there on request of Plaintiffs, rather than from EPD's own activities in Illinois.

10. All EPD investors become independent, non-exclusive lessors of equipment to third parties in California.

11. I am a California resident, I am not an Illinois resident, and none of Defendants are Illinois-resident companies or Illinois residents, nor were they when agreements were entered into with Plaintiffs or during the time when performance was required under those agreements. Individually named defendants performed services in California on an independent contractor

Case: 1:10-cv-05049 Document #: 22-1 Filed: 10/06/10 Page 3 of 9 PageID #:298

basis with EPD or, in Ice Skating Enterprises' and S.C. Club's cases, entered into lease transactions with Plaintiffs in California.

12. Defendants do not own any real property in Illinois nor are they parties to any contracts requiring acts to be performed in Illinois.

13. Defendants never made any solicitation of Plaintiffs (or any investors) in Illinois.

14. Defendants did not specifically target Illinois investors.

15. None of EPD's investment activities evince any intent to affect Illinois residents.

16. Defendants conduct all of their activities in California and maintain all records and documents in Santa Monica, California.

17. Defendants do not employ anyone, including independent contractors, in Illinois.

18. Plaintiffs initiated the equipment lease transactions between themselves and EPD, in Santa Monica, California.

19. Plaintiffs traveled to Santa Monica for the purpose of meeting representatives from EPD, including Jerrold Pressman.

20. None of Defendants traveled to Illinois or in any way made any effort to procure investments from Plaintiffs in Illinois.

21. Four years passed between the time Plaintiffs first contacted EPD about investment opportunities and the time Plaintiffs traveled to Santa Monica to meet with EPD. During the four year period, none of Defendants made any attempt to contact Plaintiffs.

22. I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed this 4th day of October 2010.

Keith Pressman-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ARTHUR HUERTH, JOAN HUERTH, INDIVIDUALLY AND D/B/A HUERTH FINANCIAL LEASING, Ai PARTNERS AND LESLIE HUERTH,<br><br>Plaintiffs, | CASE NO. 10 C 05049<br><br>ASSIGNED JUDGE:<br>HON. PHILIP G. REINHARD |
| JERROLD PRESSMAN, EPD INVESTMENT CO., LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, EPD INVESTMENT LEASING CO., LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, THE EPD GROUP, THEODORE JONAVIC, RUBEN MORENO, KATHERINE WERNER, TRUE POSITION TECHNOLOGIES, INC., A CALIFORNIA CORPORATION, ICE SKATING ENTERPRISES, INC., A CALIFORNIA CORPORATION, S.C. CLUB, L.P., A CALIFORNIA LIMITED PARTNERSHIP<br><br>Defendants. | DESIGNATED MAGISTRATE JUDGE:<br>HON. P. MICHAEL MAHONEY |

DECLARATION OF THEODORE JONAVIC
IN SUPPORT OF DEFENDANTS' OBJECTION TO REPORT AND
RECOMMENDATION OF U.S. MAGISTRATE (ENTRY OF DEFAULT)

Having been duly sworn, Theodore Jonavic deposes and states as follows:

1. I am an individual, named defendant in this action. I have personal knowledge of the facts set forth herein and, if called to testify as a witness, could and would testify truthfully and competently thereto under oath.

2. I have received and reviewed Defendants' Objection to Report and Recommendation of U.S. Magistrate (Entry of Default), including each of the documents attached as Exhibits thereto (collectively, "Defendants' Objection").

3. Each of the documents attached to Defendants' Objection as Exhibits is a true and correct copy of the original.

4. After being served with the Complaint in this action I made a copy of the same and sometime in mid-September, delivered it to Jerrold Pressman for his review.

5. I inadvertently failed to timely schedule and file the appropriate judicial response to Plaintiffs' Complaint in this action. This was in no way intended to be disrespectful to the Court.

6. I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed this 30th day of September 2010.

Theodore Jonavic

Case: 1:10-cv-05049 Document #: 22-1 Filed: 10/06/10 Page 6 of 9 PageID #:301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ARTHUR HUERTH, JOAN HUERTH, INDIVIDUALLY AND D/B/A HUERTH FINANCIAL LEASING, AJ PARTNERS AND LESLIE HUERTH,<br><br>Plaintiffs, | CASE NO. 10 C 05049<br><br>ASSIGNED JUDGE:<br>HON. PHILIP G. REINHARD |
| JERROLD PRESSMAN, EPD INVESTMENT CO., LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, EPD INVESTMENT LEASING CO., LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, THE EPD GROUP, THEODORE JONAVIC, RUBEN MORENO, KATHERINE WERNER, TRUE POSITION TECHNOLOGIES, INC., A CALIFORNIA CORPORATION, ICE SKATING ENTERPRISES, INC., A CALIFORNIA CORPORATION, S.C. CLUB, L.P., A CALIFORNIA LIMITED ED PARTNERSHIP<br><br>Defendants. | DESIGNATED MAGISTRATE JUDGE:<br>HON. P. MICHAEL MAHONEY |

AFFIDAVIT OF JOHN C. KIRKLAND, ESQ.
IN SUPPORT OF DEFENDANTS' OBJECTION TO REPORT AND
RECOMMENDATION OF U.S. MAGISTRATE (ENTRY OF DEFAULT)

Having been duly sworn, John C. Kirkland deposes and states as follows:

1. I am an attorney, duly licensed to practice before all state and federal courts in California, and a partner in the law firm of Luce Forward Hamilton & Scripps LLP in Los Angeles, California. I have personal knowledge of the facts set forth herein and, if called to testify as a witness, could testify truthfully and competently thereto under oath.

2. This affidavit is submitted in support of Defendants' Objection to Report and Recommendation of U.S. Magistrate (Entry of Default), including each of the documents attached as Exhibits thereto (the "Objection").

3. I am listed with the California Secretary of State as Agent for Service of Process for EPD Investment Co., LLC, a California limited liability company, and EPD Investment Leasing Co., LLC, a California limited liability company. I am not Agent for Service of Process for any other named defendants in the above-entitled matter.

4. I was never personally served with the Summons and/or Complaint in the above-entitled action.. I never saw or received the Summons and/or Complaint in any manner, and was never even aware of the existence of the action, until being asked to execute this affidavit in connection with the Objection.

5. This affidavit is executed this 30th day of September 2010.

John C. Kirkland

State of California

County of Los Angeles

SUBSC D AND WORN to (or affirmed) before me on this 30th of September 30, 2010, by Jo C. Kir and, proved to me on the basis of satisfactory evidence to be the person who ore me.
appeared bef

Seal

Lisa M. Underkoffler

LISA UNDERKOFFLER
Commission # 1784353
Notary Public - California
Los Angeles County
MyComm.EmiceSDec10,2011

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ARTHUR HUERTH, JOAN HUERTH, INDIVIDUALLY AND D/B/A HUERTH FINANCIAL LEASING, AJ PARTNERS AND LESLIE HUERTH,<br><br>Plaintiffs, | CASE NO. 10 C 05049<br><br>ASSIGNED JUDGE:<br>HON. PHILIP G. REINHARD |
| JERROLD PRESSMAN, EPD INVESTMENT CO., LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, EPD INVESTMENT LEASING CO., LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, THE EPD GROUP, THEODORE JONAVIC, RUBEN MORENO, KATHERINE WERNER, TRUE POSITION TECHNOLOGIES, INC., A CALIFORNIA CORPORATION, ICE SKATING ENTERPRISES, INC., A CALIFORNIA CORPORATION, S.C. CLUB, L.P., A CALIFORNIA LIMITED PARTNERSHIP<br><br>Defendants. | DESIGNATED MAGISTRATE JUDGE:<br>HON. P. MICHAEL MAHONEY |

**DECLARATION OF JERROLD PRESSMAN**
**IN SUPPORT OF DEFENDANTS' OBJECTION TO REPORT AND RECOMMENDATION OF U.S. MAGISTRATE (ENTRY OF DEFAULT)**

Having been duly sworn, Jerrold Pressman deposes and states as follows:

1. I am an individual an equity-owner and authorized representative of S.C. Club, LP, named defendants in this action. I have personal knowledge of the facts set forth herein and, if called to testify as a witness, could and would testify truthfully and competently thereto under oath.

2. I have received and reviewed Defendants' Objection to Report and Recommendation of U.S. Magistrate (Entry of Default), including each of the documents attached as Exhibits thereto (collectively, "Defendants' Objection").

3. Each of the documents attached to Defendants' Objection as Exhibits is a true and correct copy of the original.

4. David Duquette is not authorized to receive service for me or SC. Neither I nor SC has been in contact with David Duquette for more than a year. We do not share office space or a residence. I do not know where Mr. Duquette resides or works and neither I nor SC ever received anything from him in connection with this action.

5. On Monday July 12, 2010, I emailed Plaintiffs' counsel Sara Cook, after she sent me a letter with a draft complaint. In the email, I instructed Ms. Cook to send all future communication to our attorney, Matthew Gruenberg, and provided contact information for Mr. Gruenberg. I anticipated that if Ms. Cook were to file this action on behalf of Plaintiffs she would serve Mr. Gruenberg and we would waive service of process.

6. I first received a copy of the filed Complaint in mid-September, 2010, when defendant Jonavic provided a copy to me after he was served.

7. I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed this 30th day of September 2010.

Jerrol ressman

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Arthur Huerth, Joan Huerth, individually and d/b/a/ Huerth Financial Leasing, AJ Partners, and Leslie Huerth,

Plaintiffs,

v.

Jerrold Pressman, EPD Investment Co., LLC, a California limited liability company, EPD Investment Leasing Co., LLC, a California limited liability company, EPD Group, Theodore Jonavic, Ruben Moreno, Katherine Werner, True Position Technologies, Inc., a California corporation, Ice Skating Enterprises, Inc., a California corporation, S.C. Club, L.P., a California limited partnership.

Defendants.

Case No. 10 C 05049

**MOTION FOR ENTRY OF DEFAULT ORDER AND TO SET A HEARING ON DAMAGES FOR ENTRY OF A DEFAULT JUDGMENT**

Plaintiffs, Arthur Huerth and Joan Huerth, individually and d/b/a/ Huerth Financial Leasing, AJ Partners, and Leslie Huerth, through their attorneys McKenna Storer, move for entry of an order of default against defendants Jerrold Pressman, EPD Investment Co., LLC, a California limited liability company, ("EPD"), Theodore Jonavic, Ruben Moreno, Katy Werner, and S.C. Club, L.P., a California limited partnership, and request a date for prove up of damages.

1. The Complaint was filed on August 13, 2010.

2. Service was made on the following defendants on the following dates, with answers due on the following dates:

| Defendant | Service Date | Answer Due Date |
|---|---|---|
| Jerrold Pressman | 08/18/2010 | 09/08/2010 |
| EPD Investment Co., LLC | 08/18/2010 | 09/08/2010 |
| Theodore Jonavic | 08/18/2010 | 09/08/2010 |
| Ruben Moreno | 08/18/2010 | 09/08/2010 |
| Katherine (Katy) Werner | 08/18/2010 | 09/08/2010 |
| S.C. Club, L.P. | 08/18/2010 | 09/08/2010 |

3. Proofs of service are attached hereto as Group Exhibit A.

4. No answers or appearances have been filed by any listed defendant, nor have any been served upon Plaintiffs' attorney.

WHEREFORE, Plaintiffs demand judgment by default in their favor and against defendants Jerrold Pressman, EPD Investment Co., LLC, a California limited liability company, Theodore Jonavic, Ruben Moreno, Katy Werner, and S.C. Club, L.P., a California limited partnership, and request a date for prove-up of damages against these defendants.

Respectfully submitted,

Plaintiffs, Arthur Huerth, Joan Huerth, individually and d/b/a/ Huerth Financial Leasing, AJ Partners, and Leslie Huerth

By: /s/ Sara E. Cook

Sara E. Cook
ARDC 03126995
scookmckenna-law.com
Patricia C. Kraft
ARDC 6190990
pkraft@mckenna-law.com
McKenna Storer
666 Russel Ct., Ste 303
Woodstock, IL 60098(815) 334-9692

Case: 1:10-cv-05043 Document #: 22-2 Filed: 10/06/10 Page 3 of 16 PageID #:307

AO 440 (Rev. 11109) Sul:miens in a Civil Actiesi (Pep 2)

Civil Action No.

PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (0)*

This summons for *(name of individual and ode, &y)* KATHERINE WERNER

was received by me on *(doer)* 06/18/2010

❍ I personally served the summons on the individual at *(ptact)*

On *14 ; Or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

on (dare) , and mailed a copy to the individual's last known address; or

❍ I served the summons On *blame of Individual)* , who L9

designated by law to accept service of process on behalf of *(earn. aforganizattem)*

on *(date)* ; or

❑ I returned the summons unexecuted because ; or

I Other *rypacy5):* I left the summons at the Indlviclues work with *John* Kirkland, a person of suitable age and discretion who works with individual, on August 20, 2010, and mailed a copy to the last known address.

My fees are $ 40.00 for travel and a 40.00 for services, for a total of $ 80.00

I declare under penalty of perjury that this information is true.

Date: 06/21/2010

Bill Bonner

*Server's signature*

Bill Bonner. Orange County CA PSC #2136

*Printed name and title*

245 South Oak Street, #M, Orange, CA 92866

Additional information regarding attempted service, etc:*Server's address*

41 r ... t Hr. 0411 ... I. 1,11 AL11.1t1

# UNITED STATES DISTRICT COURT

NORTH FRN Dis R (11: II I 1\01S

## SUMMONS IN A CIVIL CASE

Arthur I luenh. Juan fluerth, *and* d'bia
Finanvial Leasing, Al Partners. and Leslie Huettli,

CASE NUNIRF.R: 10 C 05049

ASSIGNED it ME: Hon. Philip G. Reinhard

DESIGNATED
MAGISTRATE JUDGE: Hon. P. Michael Mahoney

Jcrruld 1'reaurran,1TI) Invetunenl Co., LI.C, a California limited liability 4:oulpasiy, Tina/urn /unable. R111101 Alurrnia, katherinn Winna. Tine Pusition Tochnialugics. Inc.. a Califonsla vorporation, lee Skating Inneiorrse.... lttu , a Calilurnia curporalion. ti C Club, L,I. L'allturrua limntd ***partnership,***
1>efetularpas

**TO:** (Name and address al' Derrndant)

**S.C. Club, L.P.**
**9039 W. Sunset Blvd.**
**West Hollywood, CA 90069**

**YOU ARE HEREBY SUMMONED and required** to serve **upon PLAINTIFF'S ATTORNEY** (name and address)

Sara E. Cook
**McKenna Storer**
**666 Russel Court, Suite 303**
**Woodstock, IL 60098**

an answer to the complaint which is herewith served upon you, within 21 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief **demanded in the complaint. You must also** file yuur *answer* with the Clerk of this Court within a reasonable period of time after service.

(By) DEPUTY CLERK

**August 13, 2010**
Date

Case: 1:10-cv-05049 Document #: 22-2 Filed: 10/06/10 Page 5 of 16 PageID #:309

Mic ael W. Opbbins, Clerk

Additional information regarding attempted service, etc:*Server 's address*

Case: 1:10-cv-05049 Document #: 22-2 Filed: 10/06/10 Page 8 of 16 PageID #:310

AC 440 (Rtr4. t 2/09) Summons tn ■ Cr' vti Amon (Pigs 2)

Civil Action No.

PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed R. Civ. P. 4 (7))*

This summons for *oic/a711 of tr,dividual and ark (farc-* S.C. CLUB, L.P.
was received by me on *(date)* *08/18/2010*

❍ I personally served the summons on the individual at *(prose)* ______ on *(dais)* ______ ; or

❍ I left the summons at the individual's residence or usual place of abode with ouzo* , a person of suitable age and discretion who resides there, on *(dam)* , and mailed a copy to the individual's last known address; or

I served the summons on (name *of aidividual)* David Duquette , who is designated by law to accept service of process on behalf of *aamof organlzadol)* S. Club, L.P. on *(date)* 08/20/2010 ; or

❍ I returned the summons unexecuted because ______ or

❍ Other (Teems My fees are $ 40.00 for travel and $ 40.00 for services, for a total of $ 80.00

I declare under penalty of perjury that this information i4 true.

Date: 08/21/2010

Bell Bonner
*Server 's signature*

¶Bonner, Orange County CA PSC #2138
*Printed nlhriiiriti Held*

245 South Oak Street, #M, Orange, CA 92868

# UNITED STATES DISTRICT COURT

NON11-IFRN fRICI OF ILLINOIS

SUMMONS IN A CIVIL CASE

Arthur Fluerth, Joan Hurrih, individually and tibia I Itierth Financial Leasing, AJ Partners, and Leslie Ilucrth,

V.

Jerrold Pressman, ETD Investment Co., LLC, a California limited liability company, Theodore Justavie, Ruben Moreno, Knibeinie Werner, True Posinon Technologies, inc. a California corporation, Ice Skating Enterensces, Inc., a California corporation, S.C. Club, L.P., a California limited partnership, Defendants.

CASE NUMBER: 10 C 05049

ASSIGNED JUDGE: Hon. Philip G. Reinhard

DESIGNATED MAGISTRATE JUDGE: Hon. P. Michael Mahoney

TO: (Name and address of Defendant)

Jerrold Pressman, individually
do U.S. Aerospace, Inc.
9835 Romandel Ave.
Santa Fe Springs, CA 90670

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Sara E. Cook
McKenna Storer
666 Russel Court, Suite 303
Woodstock, IL 60098

an answer to the complaint which is herewith served upon you, within 21 clays after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in *the* complaint. You must also file your answer *with* the Clerk of this Court within a reasonable period of time after service.

**Michael W. Dpbbins, Clerk**

(By) DEPUTY CLERK

**August 13, 2010**

Date

**Group Exhibit A**

Case: 1:10-cv-05043 Document #: 22-2 Filed: 10/06/10 Page 8 of 16 PageID #:312

AO 440 (Rev. 12/09) Summons in a Civil Action (Pegg 2)

Civil Action No.

**PROOF OF** SERVICE

***(This secttots should not be flied with the court unless required by Fed. R. Civ. P. 4 (7))***

This summons for *name of fnrWtdieal and role, ((any)* JERROLD PRESSMAN

was received by me on *(date)* 08/18/2010

○ I personally served the summons on the individual at *(picies)* on *(date)* ; or

○ I left the summons at the individual's residence or usual place of abode with *(name)* , a person of suitable age and discretion who resides there, on *(date)* , and mailed a copy to the individual's last known address; or

*Server 's signature*

○ I served the summons on *(name of individual)* , who is designated by law to accept service of process on behalf of *(name of* on *(date)* ; or

○ I returned the summons unexecuted because ; or

Other *("pact/5):* I lett the summons at the Individual's work with David Duquette, a person of suitable age and discretion who works with Individual, on August 20, 2010, and mailed a cony to the individual's last known address.

My fees are $ t10.00 for travel and $ 40.00 for services, for a total of $ 80.00

I declare under penalty of perjury that this information is true.

Date: 08/21/2010

Bill 4ten-rt-4-,

Bill Bonner. Orange County CA PSG #2138
*Printed name and title*

245 South Oak Street, #M, Orange, CA 92886

Case: 1:10-cv-05049 Document #: 22-2 Filed: 10/06/10 Page 9 of 16 PageID #:315

# UNITED STATES DISTRICT COURT

NOR IERN DISTRICI OF ILLINOIS

SUMMONS **IN** A CIVIL CASE

Arthur 11w:tit'. Juan I luerlh, indl%.idually and dibia linerdi Financial Leasing, U Partners, and Leslie Hurrth,

CASE NUMBER: 10 C 05049

v.

ASSIGNED JUDGE: Hon. Philip G. Reinhard

JCITOkl rleirman, lift) Investment Co , a CalitUrnta limited company, Theodore lona+1,:, Robot Muteno, Katlturine Wancr. Tna; Position Tranologios, *Inc, a C3lifomin curroralinn.* Ice Skating Eitterpnses, Inc , a California corporation, N.C. Club, LP,. a CaltiVini, limited partnership, I)clet titan's.

DESIGNATED MAGISTRATE JUDGE: **lion. P.** Michael Mahoney

TO: (Name and address or DcreinknO

EPD Investment Company, LLC
409 Santa Monica Blvd., Ste. E
Santa Monica, CA 90401

YOU **ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and addles()

Sara E. Cook
McKenna Storer
666 Russel Court, Suite 303
Woodstock, **IL** 60098

an answer to the complaint which is herewith served upon you, within ____________ days alter service of this summons upon you, exclusive of the day of service. If you fail to *do* so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time

Additional information regarding attempted service, etc:*Server's address*

alter service.

**Mic ael W. 13pbbins, Clerk**

**August 13, 2010**

(By) DEPUTY CLERK

Date

A0440 (Rev. 1119',1 Summons :n a C vtl Action (PsQe 2)

Civil Action No.

PROOF OF SERVICE

*(This section should not bellied with the court unless required by Fed R Civ. P. 4 (1))*

This summons for *(name a f individual and title, ((any)* EPD INVESTMENT COMPANY, LLC

was received by me *on (dote)* 08/18/2010

0 I personally served the summons on the individual at *(ptacs)* ____________

on *(dote)* ; or

3 I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

OD *(dale)* , and mailed a copy to the individual's last known address; or

Sir I served the summons on *(name of individual)* John Kirkland , who is

designated by law to accept service of process on behalf of *(name of organisadan)*

EPD INVESTMENT COMPANY, LLC on *(du)* 08/19/2010 or

CI I returned the summons unexecuted because ____________ ; or

CI Other *(specify)*:

My fees are 5 25.00 for travel and $ 25.00 for services, for a total of $ 50.00

I declare under penalty of perjury that this information is true.

Date: 08/21/2010

Bill Bonner

*Server's signature*

Bili fanner, Orange County OA PSC #2138

*Printed name and dal*

245 South Oak Street, #M, Orange, CA 92868

Additional information regarding attempted service, etc: *Server's address*

Case: 1:10-cv-05049 Document #: 22-2 Filed: 10/06/10 Page 12 of 16 PageID #:316

II I ••• 4 lle% 0 o414 Nu441441,444. 444 4 1.'4% II .% 91011

U
NITED STATES DISTRICT COURT
NOVI IF.RN DKrutcror

SUMMONS **IN A CIVIL CASE**

Arthur / loci Ill, Juan Itu.rth, individually and dibla Financial Leasing. AJ Partners. and Leslie Fluerik,

CASE NL'MBER: 10 C 05049

V

ASSIGNED JUDGE: Hon. Philip G. Reinhard

Jenold Pressman, EM) In,enment L LC. a California !tinned liahMty company. Theodore 11141:1SIC, Ruben Moreno, Kathcrine Wilmer. True Position Technologies, ItIV..41C;IlifOMill corporation, Ice Skating Fmerprises. lac.. a Colilinnia corporation, S Club. L.P.. a California limited partnership. Defendants.

DESIGNATED
MAGISTRATE iuDGE: Hon. P. Michael Mahoney

TO: (Name and address of f)elendanr)

Theodore Jonavic
Yoss, Allen and Jonavic
414 Yale Ave., Suite I
Claremont, CA 9171 I

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Sara E. Cook
McKenna Storer
666 Russel Court, Suite 303
Woodstock, IL 60098

an answer to the complaint which is herewith served upon you, within 21 days after service of this summons upon you, exclusive of the day of service. If you fail to du su, judgment by default will be taken against you for the relief demanded in the complaint. You must also tile your answer with the Clerk of this Court within a reasonable period of time after service.

Additional information regarding attempted service, etc:*Server's address*

Mlc eel W. Dpbbins, Clerk

(By) DEPUTY CLERK

August 13, 2010
Date



Case: 1:10-cv-03049 Document #: 22-2 Filed: 10/06/10 Page 13 of 16 PageID #:317

AO 440 (Rev. 12109) Summon, in a Civil Action (Pip 1)

Civil Action No.

PROOF OF SERVICE

*(This section should net be filed with the court unless required by Fed R. Civ. P. 4 (1))*

This summons for *(name of Mdtvfdmal and title, (Tarry)* THEODORE JONA=

was received by me on *(date)* 08/18/2010

I personally served the summons on the individual at *(plots)* 414 Yeale Avenue, Suite #1 Claremont, CA 91711 on *(dale)* 09/19/2010 ; or

❍ I left the summons at the individual's residence or usual place of abode with (name) ____, a person of suitable age and discretion who resides there, on *(dal&* ____ and mailed a copy to the individual's last known address; or

❍ I served the summons on *(nano of individie21)* ____, who is designated by law to accept service of process on behalf of *(name of organization)* ____ On *(date)* ____ or

❍ I returned the summons unexecuted because ❍ ❍ ( ❍ ❍ ____ ; or

❑ Other (.spect/59;

My fees are $ 40.00 for travel and $ 40.00 for services, for a total of $ 80.00

I declare under penalty of perjury that this information is true.

Date: 08/21/2010

Bill Bonner

*Server's styli:awe*

Bill Bonner, Orange County CA PSC 02138

*Printed name and title*

245 South Oak Street #M, Orange, CA 92869

Additional information regarding attempted service, etc: *Server's address*

Case: 1:10-cv-05049 Document #: 22-2 Filed: 10/06/10 Page 14 of 16 PageID #:318

# UNITED STATES DISTRICT COURT

Nom HER \ DISTRICT OF ILLINOIS

SUM5IONS IN A CIVIL CASE

Anhui- Nu III. Juan I Itlerth, indiv idually and &Iva I Incrth Financial Lousing. Al Pariners. and Leslic I Itierth. Plairm115.

V.

kirold Pressman, 1:1) Investment Co n California limited 1,0104 oinitany. Theodore lumen:, Ruben Moreno. Kntheroe Wenit.r, Tnie Positron Technologies, California corporation. ke Skating Enierpriaes, Inc.. Califinina eurporanots. S.C. Club. LP a California loaned pannetaltip, tiele Warns

CASE NUMBER: 10 C 05049

ASSIGNED JUDGE: Hon. Philip G. Reinhard

DESIGNATED MAGISTRATE JUDGE: Hon. P. Michael Mahoney

TO: (Name unit oildre.ss ancircnebni)

Ruben Moreno
do EPD Investment Company, LLC
409 Santa Monica Blvd., Ste. E
Santa Monica, CA 90401

YOU ARE HEREBY SUMMONED *and* required to serve upon PLAINTIFF'S ATTORNEY (nom and address/

Sara E. Cook
McKenna Storer
666 Russel Court, Suite 303
Woodstock, IL 60098

an answer to the complaint which is herewith served upon you, within 21 days after service of this summons upon you, exclusive of the day of service. if you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Michael W. Dpbbins, Clerk

(By) DEPUTY CLERK

August 13, 2010
Date

Case: 1:10-cv-03049 Document #: 22-2 Filed: 10/06/10 Page 15 of 16 PageID #:319

AO 4.40 (Rzy / 2/091 Summons In • Civil Adige (**hp** 2)

Civil Action No.

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Om P. 4 (7))*

This summons for *(name of individual and ride, any)* RUBIN MOIRENO

was received by me on *(date)* 08/18/2010

// I personally served the summons on the individual at *(place)* ______ on *(date)* ______ ; Or

O I left the summons at the individual's residence or usual place of abode with *own**, a ______ person of suitable age and discretion who resides there, on *(dart)* , and ______ mailed a copy to the individual's last known address; or

O I served the summons on *(Name of individual)* designated by law to ______ , who is accept service of process on behalf of *(name of organisation)* ______ on *(date)* ______ ; or

O I returned the summons unexecuted because ______ ; or

☑ Other *(specs)*: I left the summons at the individual's work with John Kirkland, a person of suitable age and discretion who works with individual, on August 20, 2010, and mailed a copy to the individual's last known address.

My fees are $ 40.00 for travel and $ 40,00 for services, for a total of $ 80.00

I declare under penalty of perjury that this information is

Date: 08/21/2010

Bill Bonner
*Servers sigmatta-e*

Bill Bonner, (Drumm County CA PSC #2138
*Printed name and title*

245 South Oak Street, #M, Orange, CA 92888
*Server's address*

Additional information regarding attempted service, etc:

A(1 44"iunauunsin a CI, Aeison

# UNITED STATES DISTRICT COURT

NOR 11-1ER\ I RI( risr 11.1 INt1IS

**SUMMONS IN . CIVIL CASE**

Arthur I liscrth, Juan I luerth, ioth% idually and d/b'a I Werth financial Leasing, AJ liar'niers, and Leslie I lucnh.

V.

*Ierritt4 Picssinan, EPO* **Investment Co.. LLC. a California Iiinito0** huhriny **comport,. Theodore Junavic, Ruben Nforetio, Katherine Werner, True Position Technolegirs. lite.. a Oliromia corpotatten. lie Skating Enterprises. Inc.. a California corporation, S.C.Club. L.P., :Calitumia limited partnership. Ikternlants.**

CASE N 0113E12: 10 C 05049

ASSIGNED JUDGE: Hon. Philip G. Reinhard

**DESIGNATED**
MAGISTRATE JUDGE: 1-ton. P. Michael Mahoney

**TO:** (Name and nddress of Defendant)

**Katherine Werner**
**EPD Investment Company, LLC**
**409 Santa Monica Blvd., Ste. E**
**Santa Monica, CA 90401**

**YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY tome And** address)

**Sara E. Cook**
**McKenna Storer**
**666 Russel Court, Suite 303**
**Woodstock, IL 60098**

an answer to the complaint which is herewith served upon you, within 21 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Mic ael W. Dpbbins, Clerk

August 13, 2010
Date

(By) DEPUTY CLERK



# EXHIBIT N

# State of California
## Kevin Shelley
## Secretary of State

**LIMITED LIABILITY COMPANY – STATEMENT OF INFORMATION**

Filing Fee $20.00 – If Amendment, See Instructions

**IMPORTANT**- Read Instructions Before Completing This Form

FILED
In the Office of the Secretary of State of the State of California
MAY 24 2004
KEVIN SHELLEY, Secretary of State
NEC
This Space For Filing Use Only

1. LIMITED LIABILITY COMPANY NAME: (Do not alter if name is preprinted.)
EPD Investment Co., LLC
33

2. SECRETARY OF STATE FILE NUMBER
200317910131

3. STATE OR PLACE OF ORGANIZATION
California

4. PRINCIPAL EXECUTIVE OFFICE
STREET ADDRESS 520 Broadway, Ste. 660
CITY Santa Monica STATE CA ZIP CODE 90401

5. CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (FOR DOMESTIC ONLY)
STREET ADDRESS 520 Broadway, Ste. 660
CITY Santa Monica STATE CA ZIP CODE 90401

6. CHECK THE APPROPRIATE PROVISION BELOW AND NAME THE AGENT FOR SERVICE OF PROCESS
[XX] AN INDIVIDUAL RESIDING IN CALIFORNIA.
[ ] A CORPORATION WHICH HAS FILED A CERTIFICATE PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 1505
AGENT'S NAME: ~~John C. Kirkland , Esq.~~

7. ADDRESS OF THE AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL
ADDRESS C/O Greenberg Traurig 2450 Colorado Ave., Ste. 400E
CITY Santa Monica STATE CA ZIP CODE 90404

8. DESCRIBE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY.
Investment Co.

9. LIST THE NAME AND COMPLETE ADDRESS OF ANY MANAGER OR MANAGERS, OR IF NONE HAVE BEEN APPOINTED OR ELECTED, PROVIDE THE NAME AND ADDRESS OF EACH MEMBER. ATTACH ADDITIONAL PAGES, IF NECESSARY.

9a. NAME Keith Pressman (President)
ADDRESS 520 Broadway, Ste. 660
CITY Santa Monica STATE CA ZIP CODE 90401

9b. NAME Christine Kamps (Vice President)
ADDRESS 520 Broadway, Ste. 660
CITY Santa Monica STATE CA ZIP CODE 90401

9c. NAME Ruben Moreno
ADDRESS 520 Broadway, Ste. 660
CITY Santa Monica STATE CA ZIP CODE 90401

10. CHIEF EXECUTIVE OFFICER (CEO), IF ANY
NAME
ADDRESS
CITY STATE ZIP CODE

11. NUMBER OF PAGES ATTACHED, IF ANY:

12. THIS STATEMENT IS TRUE, CORRECT, AND COMPLETE.

Ruben Moreno — TYPE OR PRINT NAME OF PERSON COMPLETING FORM
[signature] — SIGNATURE
Secretary — TITLE
05/19/04 — DATE

**DUE DATE:**

SEC/STATE FORM LLC-12 (REV. 01/03/03) APPROVED BY SECRETARY OF STATE

I hereby certify that the foregoing transcript of 2 page(s) is a full, true and correct copy of the original record in the custody of the California Secretary of State's office.

MAR 10 2011

Date: ____________________

DEBRA BOWEN, Secretary of State

L

# State of California
## Secretary of State

38

## STATEMENT OF INFORMATION
(Limited Liability Company)

Filing Fee $20.00. If amendment, see instructions.

IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM

FILED
in the office of the Secretary of State
of the State of California

APR 0 1 2005

1. LIMITED LIABILITY COMPANY NAME (Please do not alter if name is preprinted.)

200317910131
EPD INVESTMENT CO., LLC
520 BROADWAY STE 660
SANTA MONICA CA 90401

This Space For Filing Use Only

DUE DATE: 06/30/2005

FILE NUMBER AND STATE OR PLACE OF ORGANIZATION

| 2. SECRETARY OF STATE FILE NUMBER | 3. STATE OR PLACE OF ORGANIZATION |
|---|---|
| 200317910131 | CA |

NO CHANGE STATEMENT

[X] If there has been no change in any of the information contained in the last Statement of Information filed with the Secretary of State, check the box and proceed to Item 13.

If there have been any changes to the information contained in the last Statement of Information filed, or no Statement of Information has been previously filed, this form must be completed in its entirety.

COMPLETE ADDRESSES FOR THE FOLLOWING (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE — CITY AND STATE — ZIP CODE

5. CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (DOMESTIC ONLY) — CITY — STATE CA — ZIP CODE

NAME AND COMPLETE ADDRESS OF THE CHIEF EXECUTIVE OFFICER, IF ANY

6. NAME — ADDRESS — CITY AND STATE — ZIP CODE

NAME AND COMPLETE ADDRESS OF ANY MANAGER OR MANAGERS, OR IF NONE HAVE BEEN APPOINTED OR ELECTED, PROVIDE THE NAME AND ADDRESS OF EACH MEMBER (Attach additional pages, if necessary.)

7. NAME — ADDRESS — CITY AND STATE — ZIP CODE

8. NAME — ADDRESS — CITY AND STATE — ZIP CODE

9. NAME — ADDRESS — CITY AND STATE — ZIP CODE

AGENT FOR SERVICE OF PROCESS (If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California address. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 11 must be left blank.)

10. NAME OF AGENT FOR SERVICE OF PROCESS

11. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL — CITY — STATE CA — ZIP CODE

TYPE OF BUSINESS

12. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| Ruben Moreno | [signature] | Secretary | 3/29/2005 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

LLC-12R (REV 03/2005) APPROVED BY SECRETARY OF STATE



009046

I hereby certify that the foregoing transcript of 3 page(s) is a full, true and correct copy of the original record in the custody of the California Secretary of State's office.

MAR 10 2011

Date:

DEBRA BOWEN, Secretary of State

L

# State of California
## Secretary of State

(16)

STATEMENT OF INFORMATION
(Limited Liability Company)

Filing Fee $20.00. If amendment, see instructions.

IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM

1 LIMITED LIABILITY COMPANY NAME (Please do not alter if name is preprinted.)

200317910131
EPD INVESTMENT CO., LLC
520 BROADWAY STE 660
SANTA MONICA CA 90401

FILED
In the office of the Secretary of State
of the State of California

APR 2 6 2007

254/5 Ref 5/19/07

This Space For Filing Use Only

DUE DATE: 06/30/2007

FILE NUMBER AND STATE OR PLACE OF ORGANIZATION

| 2. SECRETARY OF STATE FILE NUMBER | 3 STATE OR PLACE OF ORGANIZATION |
|---|---|
| 200317910131 | CA |

NO CHANGE STATEMENT

[X] If there has been no change in any of the information contained in the last Statement of Information filed with the Secretary of State, check the box and proceed to **Item 13**

If there have been any changes to the information contained in the last Statement of Information filed, or no Statement of Information has been previously filed, this form must be completed in its entirety

COMPLETE ADDRESSES FOR THE FOLLOWING (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE — CITY AND STATE — ZIP CODE

5 CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (DOMESTIC ONLY) — CITY — STATE CA — ZIP CODE

NAME AND COMPLETE ADDRESS OF THE CHIEF EXECUTIVE OFFICER, IF ANY

6. NAME — ADDRESS — CITY AND STATE — ZIP CODE

NAME AND COMPLETE ADDRESS OF ANY MANAGER OR MANAGERS, OR IF NONE HAVE BEEN APPOINTED OR ELECTED, PROVIDE THE NAME AND ADDRESS OF EACH MEMBER (Attach additional pages, if necessary.)

7. NAME — ADDRESS — CITY AND STATE — ZIP CODE

8 NAME — ADDRESS — CITY AND STATE — ZIP CODE

9. NAME — ADDRESS — CITY AND STATE — ZIP CODE

AGENT FOR SERVICE OF PROCESS (If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California address. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 11 must be left blank.)

10. NAME OF AGENT FOR SERVICE OF PROCESS

11. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL — CITY — STATE CA — ZIP CODE

TYPE OF BUSINESS

12. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM — SIGNATURE — TITLE — DATE

LLC-12R (REV 07/2006) APPROVED BY SECRETARY OF STATE

008282

I hereby certify that the foregoing transcript of 3 page(s) is a full, true and correct copy of the original record in the custody of the California Secretary of State's office.

MAR 10 2011

Date:________________

Debra Bowen

DEBRA BOWEN, Secretary of State

# EXHIBIT O

RA-100

# State of California
## Secretary of State

### Resignation of Agent Upon Whom Process May Be Served

There is no fee for filing this form.

IMPORTANT – Read instructions before completing this form.

FILED
in the office of the Secretary of State
of the State of California

JAN 28 2011

This Space For Filing Use Only

**Entity Type** (Identify the type of business from which you are resigning as agent for service of process. Check only one box.)

1. ☐ CORPORATION (domestic or qualified foreign)
☑ LIMITED LIABILITY COMPANY (domestic or registered foreign)
☐ LIMITED PARTNERSHIP (domestic or registered foreign)
☐ LIMITED LIABILITY PARTNERSHIP (domestic or registered foreign)
☐ REGISTERED GENERAL PARTNERSHIP
☐ UNINCORPORATED ASSOCIATION
☐ FOREIGN PARTNERSHIP (other than a foreign limited partnership)
☐ FOREIGN ASSOCIATION

**Entity Name** (Enter the name of the entity from whom you are resigning as agent for service of process.)

2. EPD INVESTMENT CO., LLC

| Entity File Number (Enter the file number issued to the above-named entity by the Secretary of State.) | Jurisdiction (Enter the jurisdiction (state or country) under which the above-named entity was organized.) |
|---|---|
| 3. 200317910131 | 4. California |

**Statement of Resignation** (The following statement declares intent to resign as agent for service of process and should not be altered.)

5. THE UNDERSIGNED HEREBY RESIGNS AS AGENT UPON WHOM PROCESS MAY BE SERVED IN CALIFORNIA FOR THE ABOVE-NAMED ENTITY.

**Execution**

6. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

January 28, 2011
DATE

John C. Kirkland
TYPE OR PRINT NAME OF DECLARANT (i.e., the individual or corporation resigning as agent for service of process for the above-named entity)

SIGNATURE OF DECLARANT or SIGNATURE OF AUTHORIZED REPRESENTATIVE OF DECLARANT (if declarant is a corporation)

TITLE OF OFFICE OF AUTHORIZED REPRESENTATIVE OF DECLARANT (if declarant is a corporation)

RA-100 (REV 01/2010) APPROVED BY SECRETARY OF STATE

I hereby certify that the foregoing transcript of 2 page(s) is a full, true and correct copy of the original record in the custody of the California Secretary of State's office.

MAR 10 2011

Date: ______________________

DEBRA BOWEN, Secretary of State

# EXHIBIT P

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc Main Document Page 1 of 74

LANDAU GOTTFRIED & BERGER LLP
Robert G. Wilson, SBN 58653
rwilson@lgbfirm.com
Michael I. Gottfried, SBN 146689
mgottfried@lgbfirm.com
Aleksandra Zimonjic, SBN 210252
azimonjic@lgbfirm.com
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Attorneys for Defendant John C. Kirkland

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,<br><br>Consolidated Debtors. | Case No. 2:10-bk-62208-ER<br><br>Chapter 7 |
| JASON M. RUND, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND, individually and as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,<br><br>Defendants. | Adv. No. 2:12-ap-02424-ER<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT JOHN C. KIRKLAND TO COMPEL ARBITRATION AND STAY ADVERSARY PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLA-RATION OF JOHN C. KIRKLAND**<br><br>Date: November 6, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 1568<br>255 East Temple Street<br>Los Angeles, CA |

**TO ALL PARTIES IN INTEREST AND THEIR RESPECTIVE ATTORNEYS OF RECORD AND TO THE CLERK OF THE COURT:**

**PLEASE TAKE NOTICE** that on November 6, 2013, at 10:00 a.m., in Courtroom 1568 of the United States Bankruptcy Court, 255 East Temple Street, Los Angeles, California, defendant John C. Kirkland ("Mr. Kirkland") will move this Court for an order compelling

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 2 of 74

arbitration of the claims asserted against him in the above-captioned adversary proceeding (the "Adversary Proceeding") and staying the Adversary Proceeding pending arbitration of those claims.

This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §2, on the grounds that the claims in the Adversary Proceeding arise from written agreements between Mr. Kirkland and debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") that contain provisions requiring binding private arbitration of all claims between the parties.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities and Declaration of John C. Kirkland, the Request for Judicial Notice filed concurrently herewith, all papers and pleadings on file in the Adversary Proceeding and such other pleadings, evidence and argument as may be considered by the Court at or before the hearing on the Motion.

Dated: September 26, 2013

LANDAU GOTTFRIED & BERGER LLP

By [signature]
Robert G. Wilson

Attorneys for Defendant John C. Kirkland

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant John C. Kirkland ("Mr. Kirkland") respectfully submits this Memorandum of Points and Authorities in support of his motion to compel arbitration of the claims asserted in the Adversary Proceeding filed against Mr Kirkland and to stay this Adversary Proceeding pending the arbitration. Also submitted herewith is the Declaration of John C. Kirkland, dated September 26, 2013 ("Kirkland Dec.").

**PRELIMINARY STATEMENT**

The chapter 7 trustee (the "Trustee") in this bankruptcy case has commenced the Adversary Proceeding by filing a complaint [1] against Mr. Kirkland and defendant Poshow Ann Kirkland, as Trustee of the Bright Conscience Trust. While Mr. Kirkland strenuously disputes the veracity of the allegations against him, the appropriate forum for him to assert his complete factual innocence is not before the Bankruptcy Court, but before an arbitrator, in accordance with the parties' written arbitration agreements. By his Complaint the Trustee seeks, among other things, to avoid and recover alleged fraudulent transfers from Mr. Kirkland. Although the First Claim for Relief is to disallow proofs of claim, Mr. Kirkland has filed no claim, so that the First Claim for Relief is inapplicable to him despite the Trustee's effort to set forth what is effectively an "imaginary" cause of action to disallow any future claim that Mr. Kirkland might ever file in the bankruptcy.

The claims against Mr. Kirkland uniformly arise out of his relationships with debtors EPD and/or Pressman, which relationships are governed by written agreements. Each of those written agreements contains a very broad arbitration provision requiring binding private arbitration, typically of "[a]ny dispute, controversy, claim or action of any kind or nature whatsoever . . . ." Given those provisions, which bind the Trustee who stands in the shoes of the debtors, all of the claims against Mr. Kirkland should be referred to arbitration.

///

[1] On May 24, 2013, the Trustee filed a Second Amended Complaint ("SAC").

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 4 of 74

## Argument

### I. ARBITRATION CLAUSES MUST BE STRICTLY ENFORCED IN BANKRUPTCY AND EVEN "CORE" CLAIMS ARE ARBITRABLE UNLESS TO DO SO WOULD CONFLICT WITH THE "UNDERLYING PURPOSES OF THE BANKRUPTCY CODE."

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., establishes "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA also provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 25 (1991). The strong federal policy in favor of arbitration agreements mandates that courts enforce arbitration agreements according to their terms whenever possible. *See, e.g., Dean Witter Reynolds Inc. v. Byrd*, 470 U. S. 213, 221 (1985).

The FAA applies even when federal statutory claims are at issue, unless the FAA's mandate has been "overridden by a contrary congressional command." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) . *See also Continental Insurance Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),* 671 F.3d 1011, 1020 (9th Cir. 2012) ("A court's duty to 'rigorously enforce' arbitration agreements does not diminish 'when a party bound by an agreement raises a claim founded on statutory rights.'") *citing McMahon.* As the Supreme Court has noted: "In recent years we have held enforceable arbitration agreements relating to claims arising under the Sherman Act, 15 U. S. C. §§ 1-7; § 10(b) of the Securities Exchange Act of 1934, 15 U. S. C. § 78j(b); the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. § 1961 et seq.; and § 12(2) of the Securities Act of 1933, 15 U. S. C. § 77l(2)." *Gilmer v.* 500 U.S. at 26 A party opposing arbitration has the burden to

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

prove that "Congress intended to preclude a waiver of judicial remedies for the [particular claim] at issue." *McMahon*, 482 U.S. at 227. Congress' intent will be determined based on a three-factor test articulated in *McMahon*: "(1) the text of the statute; (2) its legislative history; and (3) whether an inherent conflict between arbitration and the underlying purposes of the statute exist." *Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1129 (9th Cir. 2012). In applying the *McMahon* factors, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer,* 500 U.S. at 26. The relevant inquiry then becomes "whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code." *Thorpe*, 671 F.3d at 1020.

The first two *McMahon* factors support arbitration in the bankruptcy context because neither the text of the Bankruptcy Code, nor its legislative history contain any evidence of Congress' intent to disallow or otherwise discourage the enforcement of arbitration provisions in bankruptcy. "Neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting." *Thorpe*, 671 F.3d at 1020. *Accord Eber*, 687 F.3d at 1129. Thus, the courts focus their analysis on the third prong of the *McMahon* test, *i.e.*, whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code.

In the Ninth Circuit, with regard to non-core matters that are merely "related to" a bankruptcy case, "the bankruptcy court generally does not have discretion to deny enforcement of a valid prepetition arbitration agreement." *Thorpe*, 671 F.3d at 1021. Thus, non-core matters must be referred to arbitration. *Id.*

In fact, the Ninth Circuit holds that even in a core proceeding, the *McMahon* standard must be met – that is, a court "has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code." *Id*. (citations omitted). In other words, "the core/non-core distinction, though relevant, is not alone dispositive" in deciding whether a core claim should be submitted to arbitration. *Id.*

/ / /

/ / /

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc Main Document Page 6 of 74

## II. ALTHOUGH STYLED AS A "CORE" CLAIM TO DISALLOW PROOFS OF CLAIM, THE FIRST CLAIM FOR RELIEF EFFECTIVELY ALLEGES NON-CORE MATTERS AS AGAINST MR. KIRKLAND.

Mr. Kirkland has not filed a proof of claim in the Bankruptcy Court. The initial complaint nevertheless asserted a First Claim for Relief against Mr. Kirkland "individually and as Trustee of the Bright Conscience Trust." The original Complaint alleged claims for relief for, among other things, aiding and abetting breach of fiduciary duty, based upon all manner of alleged misconduct by Mr. Kirkland. The Second Amended Complaint deletes the operative claims for damages against Mr. Kirkland, but still includes those essentially all of the same factual allegations against Mr. Kirkland as the initial complaint.

Since the filing of the original complaint, it has been established that Mr. Kirkland is not, and has never been, a trustee of the trust. The Second Amended Complaint now names Mr. Kirkland solely in his individual capacity, and the Trustee has deleted any claim against Mr. Kirkland as a purported trustee of the trust.

Curiously, the Second Amended Complaint states that the First Claim for Relief, to disallow the proofs of claim filed by the trust, is still asserted against Mr. Kirkland *individually*. Apparently realizing that such an odd claim simply does not meet the case or controversy requirement of Article III, the Trustee also attempts to allege some kind of "theoretical" First Claim for Relief directed at future possible claim by Mr. Kirkland.[2] It is difficult to comprehend how this states a valid claim for relief justifying entry of judgment against Mr. Kirkland.

A claim for relief to disallow or subordinate a proof of claim that was filed in the Bankruptcy Court certainly would be considered a "core" proceeding. However, Mr. Kirkland never filed a proof of claim. Whatever the First Claim for Relief might actually be, it should not be considered a properly alleged core proceeding. As such, whatever it is, it must be referred for decision by an arbitrator. *Thorpe*, 671 F.3d at 1021.

[2] Mr. Kirkland is certainly comfortable representing that he has no intention of ever filing a proof of claim in the Bankruptcy Court, and will never do so.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc Main Document Page 7 of 74

## III. WHILE THE TRUSTEE'S REMAINING CLAIMS ARE "CORE" MATTERS, ARBITRATION WILL NOT CONFLICT WITH THE "UNDERLYING PURPOSES" OF THE CODE.

Aside from the "theoretical" First Claim for Relief directed at some future possible claim by Mr. Kirkland, the Second Amended Complaint is cast as seeking only to recover alleged fraudulent transfers. Under the strict terms of Section 157(b)(2)(H), those claims can be characterized as "core" matters. Nevertheless, the underlying factual allegations remain the same as those that formerly were offered in support of the prior non-core claims for breach of fiduciary duty. Despite the changes in theory, the fraudulent transfer claims continue to arise from Mr. Kirkland's contractual relationships with the Debtors, which are subject to arbitration.

The Trustee specifically alleges the following instances of Mr. Kirkland's purported wrongful conduct: (i) forming a holding company, (ii) recording UCC-1 financing statements, (iii) representing EPD in involuntary bankruptcy proceeding, (iv) demanding release and indemnification provisions in connection with his legal services, (v) representing and EPD affiliate (Plush Lounge), (vi) failing to provide proper legal advice, (vii) forming an LLC and serving as agent for service of process, (viii) contesting the involuntary bankruptcy of EPD, and (ix) accepting payment for legal services (SAC, ¶30).

Each of the specifically alleged acts falls within the scope of Mr. Kirkland's legal representation of the Debtors. Because the Trustee's claims primarily derive from Mr. Kirkland's legal representation of the Debtors, it requires interpretation of the two contracts that are central to the Trustee's claim – Mr. Kirkland's legal engagement contracts with the Debtors. In both contracts Mr. Kirkland and the Debtors agreed to resolve all of their "*disputes or claims of any nature whatsoever*" by arbitration. Specifically, an engagement letter signed by John C. Kirkland of Luce Forward and by Jerrold S. Pressman on behalf of EPD Investment Co., LLC, includes the following arbitration provision:

//

///

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA