> DISPUTE RESOLUTION We do not anticipate having any disagreements about the quality, cost, or appropriateness of our services, but if any concerns about these matters arise, please notify us immediately. We would endeavor to resolve any disagreements in a fair and amicable manner. If it is not possible to resolve a dispute by agreement, EPD and we agree that *all disputes or claims of any nature whatsoever*, including but not limited to those relating to our fees and the quality or appropriateness of our services, shall be resolved by confidential binding arbitration. The parties choose arbitration because it is usually less expensive and quicker than litigation and will preserve all parties' privacy….

(Kirkland Dec., Ex. G, at 5-6) (emphasis added). A subsequent engagement letter signed by Mr. Kirkland and both Debtors includes a similar arbitration provision:

> DISPUTE RESOLUTION We do not anticipate having any disagreements about the quality, cost, or appropriateness of our services, but if any concerns about these matters arise, please notify us immediately. We would endeavor to resolve any disagreements in a fair and amicable manner. If it is not possible to resolve a dispute by agreement, you and we agree that *all disputes, controversies or claims of any nature whatsoever*, including but not limited to those relating to the quality or appropriateness of our services, alleged legal malpractice, conflict of interest, or breach of fiduciary duty, shall be resolved by confidential binding arbitration before a retired judge at JAMS (www.jamsadr.com) in Santa Monica, California, in accordance with its streamlined and expedited rules. The parties choose arbitration because it is usually less expensive and quicker than litigation and will preserve all parties' privacy….

(Kirkland Dec., Ex. H, at 8-9) (emphasis added).

The Trustee alleges that, in addition to serving as the Debtors' "outside counsel," Mr. Kirkland was also one of the EPD investors (SAC ¶29). To the extent any of Mr. Kirkland's

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

alleged wrongful acts were not committed in connection with providing legal services to the Debtors, they fall within the scope of Mr. Kirkland's investment relationship with the Debtors.

For example, one instance of Mr. Kirkland's conduct that may not explicitly implicate his legal services to EPD and Pressman is his alleged "orchestrating … monthly payments …. to satisfy Kirkland's mortgage loan payment obligations." (SAC, ¶ 30d). EPD's payments to Mr. Kirkland's mortgage lender, however, were made pursuant to his investment in EPD. The Funding Agreement between Mr. Kirkland and EPD acknowledges that EPD has paid "approximately $75,000 to [Mr. Kirkland's] mortgage lender for the benefit of [Mr. Kirkland] over the last year, in monthly payments of approximately of $7,500, and will make additional monthly payments in accordance with this Agreement." (Kirkland Dec., Ex. D, at 1.) In addition to the Funding Agreement, Mr. Kirkland's investment with the EPD was also memorialized by a Security Interest Agreement, dated November 8, 2007 (Kirkland Dec., Ex. A).

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Both agreements contain broad arbitration clauses. The Funding Agreement includes the following provision:

> 8. Arbitration. Any and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents, or involving any of the parties hereto, including, but not limited to, all issues of arbitrability, timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, and all other preliminary issues, will be resolved by final and binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California, in accordance with its most expedited and streamlined rules and procedures, ....

(Kirkland Dec., Ex. D, at 3-4.) The Security Interest Agreement[3] includes the following provision:

> Section 20. Arbitration. Any dispute, controversy, "claim or action of any kind or nature whatsoever, including the issue of arbitrability, arising out of, in connection with or relating to this Agreement shall be resolved by

[3] The Security Interest Agreement was subsequently assigned to the Bright Conscience Trust (SAC, ¶29).

> final and binding arbitration before a retired judge at JAMS in Santa Monica, California, in accordance with its most expedited Streamlined Arbitration Rules, and the Final Offer (or Baseball) Arbitration Option. Any interim or final award of the arbitrator may be enforced by any court of competent jurisdiction….

(Kirkland Dec., Ex. A, at 13.)

It is not possible to identify a single basis for the claims against Mr. Kirkland that is independent from his relationship with the Debtors as their outside counsel or as one of EPD's investors. Accordingly, the arbitration provisions found in the four agreements govern Mr. Kirkland's relationships with the debtors. Multiple other agreements and waivers between the parties contain similar arbitration clauses.

There also can be no possible contention that the claims against the other defendant are not arbitrable so as to undermine Mr. Kirkland's right to arbitration of the claims against him. There are agreements between EPD and Pressman, on the one hand, and the BC Trust, on the other hand, that also contain broad arbitration clauses (Kirkland Dec., Exs. E & F).

There is no basis for contending that arbitrating the Trustee's claims would inherently conflict with the underlying purposes of the Bankruptcy Code. The claims do not implicate the core issue of dischargeability. The claims present nonbankruptcy issues arising under both federal and state law. The factual and legal issues presented by the Second Amended Complaint are not of the sort that are uniquely within the expertise of the Bankruptcy Court. Indeed, the bulk of those issues are more suitable for determination by an arbitrator with expertise in issues of an attorney's obligations to his client in the circumstances in which the Debtors found themselves.

Similarly, it makes more sense to have the Trustee's evidence regarding Mr. Kirkland's conduct evaluated by an arbitrator who can make findings of fact that the Bankruptcy Court can use to fashion appropriate relief. Given the breadth of the allegations, a binding private arbitration, as called for by the various agreements between the Debtors and Mr. Kirkland, is far preferable to requiring the Bankruptcy Court to hear and determine the issues presented.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Conclusion**

For all the reasons set forth herein, Mr. Kirkland respectfully submits that he is entitled to an order compelling arbitration of the Trustee's claims against him and staying action in the Bankruptcy Court regarding the Second Amended Complaint pending completion of the arbitration proceedings.

Dated: September 26, 2013

LANDAU GOTTFRIED & BERGER LLP

By ______________________
Robert G. Wilson

Attorneys for Defendant John C. Kirkland

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**DECLARATION OF JOHN C. KIRKLAND**

**JOHN C. KIRKLAND** declares:

1. I am a member in good standing of the State Bar of California. I am also admitted to practice before the United States District Court for the Central District of California and the Ninth Circuit Court of Appeals. I am a defendant in the above captioned adversary proceeding. I make this declaration on personal knowledge and, if called as a witness, I could and would testify competently to the facts set forth herein.

2. I received my undergraduate degree from Columbia University, and my JD from UCLA School of Law. I currently serve as managing director of an institutional investor in public companies. Until the Fall of 2011, I was engaged in the private practice of law as a corporate securities attorney for more than 20 years. I began my legal career in 1990 as an associate at Cadwalader Wickersham & Taft, which serves a diverse client base, including many of the world's top financial institutions and corporations. I also was a full equity partner at Greenberg Traurig LLP for half dozen years. Greenberg is an international, full-service law firm with approximately 1,750 attorneys serving clients from more than 35 offices worldwide. From 2009 until early 2011, I was a full equity partner at Luce Forward Hamilton & Scripps LLP ("Luce Forward").

3. I am the author of "Practical Approaches to Securities Compliance Issues" in SEC Compliance Best Practices, published in 2010 by Aspatore Books, a legal publication arm of Thomson Reuters, as part of its "Inside the Minds" series which "draws from the collective experience of the best professionals" in different legal specialties. I have also authored various articles on corporate securities and other legal topics. Throughout the course of my legal career, I handled hundreds of billions of dollars in public offerings and private placements of debt and equity securities for clients including "bulge bracket" investment banks such as Goldman Sachs, commercial banks such as Bank of America, commercial lenders such as GE Capital, institutional investors such as SunAmerica, many Fortune 500 corporations, as well as myriad smaller companies, broker-dealers, issuers, investors, and high net worth individuals. I have been quoted in numerous legal and business publications such as The Wall Street Journal, Washington Post,

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Los Angeles Times and New York Times.

4. Attached hereto as exhibits are true and correct copies of the following agreements;

Exh. A Security Interest Agreement, dated November 8, 2007

Exh. B General Release (EPD) dated February 9, 2009

Exh. C General Release (Pressman) dated February 9, 2009

Exh. D Funding Agreement, dated July 24, 2009

Exh. E Forbearance Agreement dated October 15, 2009

Exh. F Additional Forbearance Agreement dated September 3, 2010

Exh. G Engagement and Fee Agreement dated February 17, 2009 and signed June 17, 2009

Exh. H Engagement Agreement and Waiver of Conflicts of Interest dated February 26, 2010.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed this 26th day of September, 2013, at Los Angeles, California.

John C. Kirkland

# EXHIBIT A

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 15 of 74

EXHIBIT: 24
DEPONENT: Kirkland
DATE: 5.27.11
LORI BARKLEY, CSR #6426

## SECURITY INTEREST AGREEMENT

**SECURITY INTEREST AGREEMENT** ("**Security Agreement**"), dated as of November 8, 2007, by and among John C. Kirkland ("**Secured Party**" and collectively with any assignee or designee, the "**Secured Parties**"), and EPD Investment Co., LLC, a California limited liability company (the "**Debtor**").

### RECITALS

A. Reference is made to (i) the Secured Promissory Note of even date herewith (the "**Note**") to which the Debtor and Secured Party are parties, and (ii) the Loan Documents (as defined in the Note), including, without limitation, the Note. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the relevant Loan Documents.

B. Pursuant to the Loan Documents, the Debtor has certain obligations to each of the Secured Parties (all such obligations under all Loan Documents, the "**Obligations**").

C. The Debtor has determined that it shall benefit from the execution of the Loan Documents and the transactions contemplated thereby. In furtherance thereof, and not in limitation thereof, the Debtor has deemed that the execution and delivery of this Security Agreement to which it is a party, and the Debtor's performance of its obligations under each of them, to be necessary and convenient to the conduct, promotion or attainment of the business of the Debtor from the Note or otherwise.

D. In order to induce the Secured Parties to execute and deliver the Loan Documents and to make the payments to the Debtor contemplated thereby, and as contemplated by the Loan Documents and the Note, the Debtor has agreed to grant to the Secured Parties a security interest in the Collateral (as defined below) to secure the due and punctual fulfillment of the Obligations. The Secured Parties are willing to enter into the Note and the other Loan Documents only upon receiving the Debtor's execution of this Security Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the premises, the mutual covenants and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. Grant of Security Interest.

(a) In order to secure the due and punctual fulfillment of the Obligations, the Debtor hereby grants, conveys, transfers and assigns to the Secured Parties (and to each of

them based on their respective Allocable Shares, as defined below) a continuing security interest in the Collateral. Each of the Secured Parties' liens in and to the Collateral shall attach to all Collateral without further act on the part of any Secured Party or Debtor. Anything contained in this Security Agreement or any Loan Document to the contrary notwithstanding, no Debtor has any authority, express or implied, to dispose of any item or portion of the Collateral

(b) For purposes of this Agreement, the following terms shall have the meanings indicated:

"COLLATERAL" includes all right, title and interest of Debtor in and to all of the following, whether now owned or hereafter arising or acquired and wherever located: All assets of the Debtor, including, but not limited to: all personal and fixture property of every kind and nature, including without limitation all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including accounts receivable), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, Securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (including all payment intangibles); all Equipment; all Intellectual Property; and any and all claims, rights and interests in any of the above, and all guaranties and security for any of the above, and all substitutions and replacements for, additions, accessions, attachments, accessories, and improvements to, and proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties) of, any and all of the above, and all Debtor's books relating to any and all of the above.

"CODE" is the California Uniform Commercial Code, as in effect from time to time.

"COPYRIGHTS" include all copyrights, copyright rights, applications or registrations and like protections in each work or authorship or derivative work, whether published or not (whether or not it is a trade secret) now or later existing, created, acquired or held.

"EQUIPMENT" has the meaning set forth in the Code and includes all present and future machinery, equipment, tenant improvements, furniture, fixtures, vehicles, tools, parts and attachments in which Debtor has any interest.

"INTELLECTUAL PROPERTY" includes all present and future (a) Copyrights, (b) trade secret rights, including all rights to unpatented inventions and know-how, and confidential information; (c) mask work or similar rights available for the protection of semiconductor chips; (d) Patents; (e) Trademarks; (f) computer

software and computer software products; (g) designs and design rights; (h) technology; (i) all claims for damages by way of past, present and future infringement of any of the rights included above; (j) all licenses or other rights to use any property or rights of a type described above; and (k) all applications for any of the foregoing.

"NEGOTIABLE COLLATERAL" means all of Debtor's now owned and hereafter acquired right, title, and interest with respect to letters of credit, letter-of-credit rights, instruments, promissory notes, drafts, documents, and chattel paper (including electronic chattel paper and tangible chattel paper), and any and all supporting obligations in respect thereof.

"PATENTS" include patents, patent applications and like protections, including improvements, divisions, continuations, renewals, reissues, extensions and continuations in-part of the same.

"SECURITIES" has the meaning ascribed to it in the Securities Act of 1933, as amended, and includes, but is not necessarily limited to, common stock, preferred stock, warrants, rights and other options, promissory notes or other instruments reflecting obligations of other entities.

"TRADEMARKS" include trademarks, servicemarks, trade styles, and trade names, whether or not any of the foregoing are registered, and all applications to register and registrations of the same and like protections, and the entire goodwill of the business of Debtor connected with and symbolized by any such trademarks.

(c) The security interests granted pursuant to this Section (the "**Security Interests**") are granted as security only and shall not subject any of the Secured Parties to, or transfer or in any way affect or modify, any obligation or liability of the Debtor under any of the Collateral or any transaction which gave rise thereto.

(d) The term "**Allocable Share**" means, with respect to each Secured Party (if there is more than one Secured Party), as of the relevant date, the fraction equal to (i) the outstanding principal of the Notes then held by such Secured Party, divided by (ii) the aggregate outstanding principal of the Notes then held by all Secured Parties. If there is only one Secured Party, the "Allocable Share" shall mean one hundred percent (100%).

Section 2. Filing; Further Assurances.

(a) The Debtor will, at its expense, cause to be searched the public records with respect to the Collateral and will execute, deliver, file and record (in such manner and form as each of the Secured Parties may require), or permit each of the Secured Parties to file and record, as its attorney in fact, any financing statement, any carbon, photographic or other reproduction of a financing statement or this Security Agreement

(which shall be sufficient as a financing statement hereunder), any specific assignments or other paper that may be reasonably necessary or desirable, or that the Secured Parties may request, in order to create, preserve, perfect or validate any Security Interest or to enable each of the Secured Parties to exercise and enforce its rights hereunder with respect to any of the Collateral. The Debtor hereby appoints each Secured Party as Debtor's attorney-in-fact to execute in the name and behalf of Debtor such additional financing statements as such Secured Party may request.

(b) Each Secured Party has designated an Agent as provided in the Section titled "Agent" below. Among other things, such Agent shall be agent of each such Secured Party for execution of and identification on any financing statement or similar instrument referring to or describing the Collateral.

(c) The Agent is authorized to execute and file any and all financing statements desired to be filed by the relevant Secured Party to reflect the security interest in the Collateral in any and all jurisdictions (including the U.S. Patent and Trademark Office). For such purposes, the Debtor irrevocably appoints the Agent, with full power of substitution to execute and file such financing statements naming the Debtor as debtor thereon.

(d) In the event that any Collateral, including proceeds, is evidenced by or consists of Negotiable Collateral, and if and to the extent that perfection or priority of Secured Party's security interest is dependent on or enhanced by possession, Debtor, promptly upon the request of Secured Party, shall endorse and assign such Negotiable Collateral to Secured Party and deliver physical possession of such Negotiable Collateral to Secured Party.

<u>Section 3. Representations and Warranties of Debtor.</u> The Debtor hereby represents and warrants to each Secured Party (a) that the Debtor is, or to the extent that certain of the Collateral is to be acquired after the date hereof, will be, the owner of the Collateral free from any adverse lien, security interest or encumbrance; (b) that no financing statement covering the Collateral is on file in any public office, other than the financing statements filed pursuant to this Security Agreement; and (c) that the statements made in the Recitals of this Security Agreement, which are deemed incorporated herein by reference, are true, accurate and complete.

<u>Section 4. Covenants of Debtor.</u> The Debtor hereby covenants and agrees with each Secured Party that the Debtor (a) will, at the Debtor's sole cost and expense, defend the Collateral against all claims and demands of all persons at any time claiming any interest therein junior to the Secured Party's interest; (b) will provide the Secured Party with prompt written notice of (i) any change in the chief executive officer of the Debtor or the office where the Debtor maintains its books and records pertaining to the Collateral; (ii) the movement or location of all or a material part of the Collateral to or at any address other than the address of Debtor set forth in its public filings with the U.S. Securities and Exchange Commission; and (iii) any facts which constitute a Debtor Event of Default (as such term is defined below), or which, with the giving of

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 19 of 74

notice and/or the passage of time, could or would constitute a Debtor Event of Default, pursuant to the Section titled "Debtor Events of Default" below; (c) will promptly pay any and all taxes, assessments and governmental charges upon the Collateral prior to the date penalties are attached thereto, except to the extent that such taxes, assessments and charges shall be contested in good faith by the Debtor; (d) will immediately notify the Secured Party of any event causing a substantial loss or diminution in the value of all or any material part of the Collateral and the amount or an estimate of the amount of such loss or diminution; (e) will have and maintain adequate insurance at all times with respect to the Collateral, for such other risks as are customary in the Debtor's industry for the respective items included in the Collateral, such insurance to be payable to the Secured Party and the Debtor as their respective interests may appear, and shall provide for a minimum of ten (10) days prior written notice of cancellation to the Secured Party, and Debtor shall furnish the Secured Party with certificates or other evidence satisfactory to the Secured Party of compliance with the foregoing insurance provisions; (f) will not sell or offer to sell or otherwise assign, transfer or dispose of the Collateral or any interest therein, without the prior written consent of the Secured Party, except in the ordinary course of business; (g) will keep the Collateral free from any adverse lien, security interest or encumbrance and in good order and repair, reasonable wear and tear excepted, and will not waste or destroy the Collateral or any part thereof; and (h) will not use the Collateral in material violation of any statute or ordinance the violation of which could materially and adversely affect the Debtor's business.

<u>Section 5. Records Relating To Collateral.</u> The Debtor will keep its records concerning the Collateral at its offices designated in the caption of this Security Agreement or at such other place or places of business of which the Secured Party shall have been notified in writing no less than ten (10) days prior thereto. The Debtor will hold and preserve such records and chattel paper and will permit representatives of the Secured Party at any time during normal business hours upon reasonable notice to examine and inspect the Collateral and to make abstracts from such records and chattel paper, and will furnish to the Secured Party such information and reports regarding the Collateral as the Secured Party may from time to time reasonably request.

<u>Section 6. General Authority.</u> From and during the term of any Debtor Event of Default, the Debtor hereby appoints the Secured Party the Debtor's lawful attorney, with full power of substitution, in the name of the Debtor, for the sole use and benefit of the Secured Party, but at the Debtor's expense, to exercise, all or any of the following powers with respect to all or any of the Collateral:

(a) to demand, sue for, collect, receive and give acquittance for any and all monies due or to become due;

(b) to receive, take, endorse, assign and deliver all checks, notes, drafts, documents and other negotiable and non- negotiable instruments and chattel paper taken or received by the Secured Party;

(c) to settle, compromise, prosecute or defend any action or proceeding with respect thereto;

(d) to sell, transfer, assign or otherwise deal in or with the same or the proceeds thereof or the related goods securing the Collateral, as fully and effectually as if the Secured Party were the sole and absolute owner thereof;

(e) to extend the time of payment of any or all thereof and to make any allowance and other adjustments with reference thereto; and

(f) to discharge any taxes, liens, security interests or other encumbrances at any time placed thereon;

provided that the Secured Party or the Agent shall give the Debtor not less than ten (10) business days prior written notice of the time and place of any sale or other intended disposition of any of the Collateral.

The exercise by the Secured Party or the Agent of or failure to so exercise any authority granted herein shall in no manner affect Debtor's liability to the Secured Party, and provided, further, that the Secured Party and the Agent shall be under no obligation or duty to exercise any of the powers hereby conferred upon them and they shall be without liability for any act or failure to act in connection with the collection of, or the preservation of, any rights under any of the Collateral and Secured Party shall not be required to proceed against any other person or entity who or which has guaranteed the performance of the Obligations or provided any security therefor before proceeding against Debtor or the Collateral.

Section 7. Debtor Events of Default.

(a) The Debtor shall be in default under this Security Agreement upon the occurrence of any of the following (each, a "**Debtor Event of Default**"):

(i) an Event of Default (as defined in the Note);

(ii) any representation or warranty made by the Debtor in this Security Agreement shall be false or misleading in any material respect;

(iii) Debtor shall breach any covenant of Debtor in this Security Agreement or in any other document or instrument executed by Debtor in favor of or for the benefit of the Secured Parties as contemplated by any of the Loan Documents.; or

(iv) A receiver or trustee shall be appointed with respect to Debtor or any of the Collateral.

(b) The Debtor hereby irrevocably agrees that, upon the occurrence of a Debtor Event of Default, the Debtor shall be deemed to have consented to an immediate conveyance and transfer to the Secured Party of the copyrights and all other rights the Debtor may have in the software included in the Collateral. In furtherance of the foregoing, and not in limitation thereof, the Debtor will, upon the occurrence of a Debtor Event of Default, deliver to the Secured Party copies of the source code of the relevant software, with accompanying written assignment of the software to the Secured Party. Without limiting the foregoing, such source code and assignment shall be in form sufficient to enable the Secured Party to register the software in Secured Party's name with the Copyright Register. The Debtor hereby agrees to take all steps necessary or appropriate, as requested by the Secured Party, to effectuate and reflect such conveyance and transfer or assignment to Secured Party. In all events, such conveyance, transfer or assignment shall be deemed to vest title in such software in the Secured Party.

(c) In furtherance of the foregoing and not in limitation thereof, the Debtor acknowledges and agrees that the Secured Party may, upon the occurrence of a Debtor Event of Default, seek the immediate entry of a preliminary injunction prohibiting the Debtor's use of such software in any shape, way or manner, including, but not necessarily limited to, through the sale of products that use any of such software, and the Debtor hereby irrevocably agrees that it will not contest an application seeking entry of a preliminary injunction and that it will accept the entry of such injunction.

Section 8. Remedies Upon Debtor Event of Default.

(a) If any Debtor Event of Default shall have occurred, then in addition to the provisions of Section 7 hereof, the Secured Party may exercise all the rights and remedies of a secured party under the Code. The Secured Party may require the Debtor to assemble all or any part of the Collateral and make it available to the Secured Party at a place to be designated by the Secured Party which is reasonably convenient. The Secured Party shall give the Debtor ten (10) days prior written notice of the Secured Party's intention to make any public or private sale or sale at a broker's board or on a securities exchange of the Collateral. At any such sale the Collateral may be sold in one lot as an entirety or in separate parcels, as the Secured Party, in its sole discretion, may determine. The Secured Party shall not be obligated to make any such sale pursuant to any such notice. The Secured Party may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for the sale, and such sale may be made at any time or place to which the same may be adjourned. The Secured Party, instead of exercising the power of sale herein conferred upon it, may proceed by a suit or suits at law or in equity to foreclose the Security Interests and sell the Collateral, or any portion thereof, under a judgment or decree of a court or courts of competent jurisdiction.

(b) Upon the occurrence of an Event of Default, the security hereby constituted shall become enforceable and, in addition to all other rights and remedies available to Secured Party as provided hereafter, Secured Party may, at its election, without notice of its election and without demand, do any one or more of the following, all of which are hereby authorized by Debtor:

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc Main Document Page 22 of 74

(i) Proceed directly and at once, without notice, against Debtor to collect and recover the full amount or any portion of the Obligations, without first proceeding against any other person or entity, or against any security or collateral for the Obligations;

(ii) Without notice to Debtor and regardless of the acceptance of any security or collateral for the payment hereof, appropriate and apply toward the payment of the Obligations (i) any indebtedness due or to become due from Secured Party any Debtor, and (ii) any moneys, credits or other property belonging to Debtor at any time held by or coming into the possession of Secured Party;

(iii) May exercise in respect of the Collateral, in addition to other rights and remedies provided for herein and in any other Loan Document to which Debtor is a party or otherwise available to it, all the rights and remedies available to it at law (including those of a secured party under the Code) or in equity;

(iv) Settle or adjust disputes and claims directly with Account Debtors for amounts and upon terms which Secured Party considers advisable, and in such cases, Secured Party will credit the Loan Account with only the net amounts received by Secured Party in payment of such disputed Accounts after deducting all Foothill Expenses incurred or expended in connection therewith;

(v) Without notice or demand upon Debtor, make such payments and do such acts as Secured Party considers necessary or reasonable to protect its security interest in the Collateral. Debtor agrees to assemble the Collateral if Secured Party so requires, and to make the Collateral available to Secured Party as Secured Party may designate. Debtor authorizes Secured Party to enter the premises where the Collateral is located, to take and maintain possession of the Collateral, or any part of it, and to pay, purchase, contest, or compromise any encumbrance, charge, or lien which in Secured Party's determination appears to be prior or superior to its security interest and to pay all expenses incurred in connection therewith. With respect to any of the Debtor's owned premises, each Debtor hereby grants Secured Party a license to enter into possession of such premises and to occupy the same, without charge, for up to one hundred twenty (120) days in order to exercise any of Secured Party's rights or remedies provided herein, at law, in equity, or otherwise;

(vi) Ship, reclaim, recover, store, finish, maintain, repair, prepare for sale, advertise for, sale, and sell (in the manner provided for herein) the Collateral. Secured Party is hereby granted a license or other right to use, without charge, each Debtor's labels, patents, copyrights, rights of use of any name, trade secrets, trade names, trademarks, service marks, and advertising matter, or any property of a similar nature, as it pertains to the Collateral, in completing production of advertising for sale and selling any Collateral, and each Debtor's rights under all licenses and all franchise agreements shall inure to Secured Party's benefit;

(vii) Sell all or any part of the Collateral at either a public or private sale, or both, by way of one or more contracts or transactions, for cash or on terms, in such manner and at such places (including a Debtor's premises) as Secured Party determines is commercially reasonable. It is not necessary that the Collateral be present at any such sale;

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc Main Document Page 23 of 74

(viii) Secured Party shall give notice of the disposition of the Collateral as follows:

(A) Secured Party shall give the applicable Debtor a notice in writing of the time and place of public sale, or, if the sale is a private sale or some other disposition other than a public sale is to be made of the Collateral, then the time on or after which the private sale or other disposition is to be made; and

(B) The notice shall be personally delivered or mailed, postage prepaid, to the Debtor ten (10) days before the earliest time of disposition set forth in the notice; no notice needs to be given prior to the disposition of any portion of the Collateral that is perishable or threatens to decline speedily in value or that is of a type customarily sold on a recognized market;

(ix) Secured Party may credit bid and purchase at any public sale, and, to the maximum extent permitted by law, any private sale;

(x) Secured Party may seek the appointment of a receiver or keeper to take possession of all or any portion of the Collateral or to operate same and, to the maximum extent permitted by law, may seek the appointment of such a receiver or keeper without the requirement of prior notice or a hearing;

(xi) Secured Party shall have all other rights and remedies available at law or in equity or pursuant to any other Loan Document; and

(xii) Any deficiency that exists after disposition of the Collateral as provided above will be paid immediately by the Debtor. Any excess will be returned, without interest and subject to the rights of third persons, by Secured Party to Debtor.

(c) Remedies Cumulative. The Secured Parties' rights and remedies under this Security Agreement, the other Loan Documents, and all other agreements shall be cumulative. Secured Party shall have all other rights and remedies not inconsistent herewith as provided under the Code, by law, or in equity. No exercise by Secured Party of one right or remedy shall be deemed an election, and no waiver by Secured Party of any Event of Default on any Debtor's part shall be deemed a continuing waiver. No delay by Secured Party shall constitute a waiver, election, or acquiescence by it

Section 9. Application of Collateral and Proceeds. The proceeds of any sale of, or other realization upon, all or any part of the Collateral shall be applied in the following order of priorities: (a) first, to pay the reasonable expenses of such sale or other realization, including, without limitation, reasonable attorneys' fees, and all expenses, liabilities and advances reasonably incurred or made by the Secured Party in connection therewith, and any other unreimbursed expenses for which the Secured Party is to be reimbursed pursuant to the Section titled "Expenses; Secured Party's Lien" below; (b) second, to the payment of the Obligations in such order of priority as the Secured Party, in its sole discretion, shall determine; and (c) finally, to pay to the Debtor, or its successors or assigns, or as a court of competent jurisdiction may direct, any surplus then remaining from such proceeds.

Section 10. Expenses; Secured Party's Lien. If any Debtor Event of Default shall have occurred, the Debtor will forthwith upon demand pay to the Secured Party: (a) the amount which the Secured Party may have been required to pay to free any of the Collateral from any lien thereon; and (b) the amount of any and all reasonable out-of-pocket expenses, including, without limitation, the reasonable fees and disbursements of its counsel, and of any agents not regularly in its employ, which the Secured Party may incur in connection with the collection, sale or other disposition of any of the Collateral.

Section 11. Termination of Security Interests; Release of Collateral. Upon the earlier to occur of (a) payment or other satisfaction in full of the Note held by the Secured Party or (b) 45 days after the Registration Date (as defined in the Note), the Security Interests shall terminate and all rights to the Collateral shall revert to the Debtor. Upon any such termination of the Security Interests or release of Collateral, the Secured Party will, at the Debtor's expense, to the extent permitted by law, execute and deliver to the Debtor such documents as the Debtor shall reasonably request to evidence the termination of the Security Interests or the release of such Collateral, as the case may be.

Section 12. Notices. All notices, demands, requests, consents, approvals, and other communications required or permitted hereunder shall be in writing and, unless otherwise specified herein, shall be (a) personally served, (b) deposited in the mail, registered or certified, return receipt requested, postage prepaid, (c) delivered by reputable air courier service with charges prepaid, or (d) transmitted by hand delivery, telegram, or facsimile, addressed as set forth below or to such other address as such party shall have specified most recently by written notice given in accordance herewith. Any notice or other communication required or permitted to be given hereunder shall be deemed effective (i) upon hand delivery or delivery by facsimile, with accurate confirmation generated by the transmitting facsimile machine, at the address or number designated below (if delivered on a business day during normal business hours where such notice is to be received), or the first business day following such delivery (if delivered other than on a business day during normal business hours where such notice is to be received) or (ii) on the second business day following the date of mailing by express courier service or on the fifth business day after deposited in the mail, in each case, fully prepaid, addressed to such address, or upon actual receipt of such mailing, whichever shall first occur. The addresses for such communications shall be for (i) the Debtor as provided in the Note, (ii) for each Secured Party as provided in the Note for notices to the Purchaser and (iii) for the Agent as provided in the Note for notices to the Purchaser. Any party hereto may from time to time change its address or facsimile number for notices under this Section in the manner contemplated by the Note.

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 25 of 74

Section 13. Agent.

(a) Anything in the other provisions of this Security Agreement to the contrary notwithstanding, the Secured Party may designate another person or entity to act as agent (the "**Agent**") for the Secured Party with respect to any one or more of the rights of Secured Party hereunder, including, but not necessarily limited to, the right to hold the security interest and/or be named as secured party (as agent for the Secured Party) in any filed financing statement and to take action in the name and stead of the Secured Party hereunder. Such designation may be made with or without power of substitution, Such designation shall remain in effect until canceled by the Secured Party, as provided herein; provided, however, that such cancellation shall not affect the validity of any action theretofore taken by such agent pursuant to this Security Agreement. The Debtor acknowledges and agrees to honor such designation and acknowledges that the Agent is acting as the agent of the Secured Party and not as a principal.

(b) If there is more than one Secured Party, the Agent shall act as agent for all Secured Parties. Any revocation of the authority of the Agent or the designation of an alternate Agent shall be done only by Secured Parties who represent a Majority in Interest of all the Note Holders (as defined below) at that time; provided that at all times all Secured Parties shall be represented by one and the same Agent. The term "Note Holder" means the Holder, as of the relevant date, of the Note. The term "Majority in Interest" means, as of the relevant date, with respect to the relevant classification of Note Holders, one or more Note Holders whose respective outstanding principal amounts of the Notes held by each of them, as of such date, aggregate more than fifty percent (50%) of the Allocable Shares on that date.

Section 14. Miscellaneous.

(a) No failure on the part of the Secured Party to exercise, and no delay in exercising, and no course of dealing with respect to, any right, power or remedy under this Security Agreement shall operate as a waiver thereof; nor shall any single or partial exercise by the Secured Party of any right, power or remedy under this Security Agreement preclude the exercise, in whole or in part, of any other right, power or remedy. The remedies in this Security Agreement are cumulative and are not exclusive of any other remedies provided by law. Neither this Security Agreement nor any provision hereof may be changed, waived, discharged or terminated orally but only by a statement in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought.

(b) The execution and delivery by Debtor of this Security Agreement and all documents delivered in connection herewith have been duly and validly authorized by all necessary corporate action of Debtor and this Agreement and all documents delivered in connection herewith have been duly and validly executed and delivered by Debtor. The execution and delivery by Debtor of this Security Agreement and all documents delivered in connection herewith will

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 26 of 74

not result in a breach or default of or under the Certificate of Incorporation, By-laws or any agreement, contract or indenture of Debtor. This Security Agreement and all documents delivered in connection therewith are legal, valid and binding obligations of Debtor enforceable against Debtor in accordance with their terms.

(c) In the event that any action is taken by Debtor or Secured Party in connection with the this Security Agreement, or any related document or matter, the losing party in such legal action, in addition to such other damages as he or it may be required to pay, shall pay reasonable attorneys' fees to the prevailing party.

Section 15. Separability. If any provision hereof shall prove invalid or unenforceable in any jurisdiction whose laws shall be deemed applicable, the other provisions hereof shall remain in full force and effect in such jurisdiction and shall be liberally construed in favor of the Secured Party.

Section 16. Governing Law.

(a) This Security Agreement shall be governed by and construed in accordance with the laws of the State of California for contracts to be wholly performed in such state and without giving effect to the principles thereof regarding the conflict of laws. To the extent determined by the court, the Debtor shall reimburse the Secured Party for any reasonable legal fees and disbursements incurred by the Secured Party in enforcement of or protection of any of its rights under this Security Agreement. Nothing in this Section shall affect or limit any right to serve process in any other manner permitted by law.

(b) The Debtor and the Secured Party acknowledge and agree that irreparable damage would occur in the event that any of the provisions of this Security Agreement were not performed in accordance with their specific terms or were otherwise breached. It is accordingly agreed that the parties shall be entitled to an injunction or injunctions to prevent or cure breaches of the provisions of this Security Agreement and to enforce specifically the terms and provisions hereof, this being in addition to any other remedy to which any of them may be entitled by law or equity.

Section 17. Jury Trial Waiver. The Debtor and the Secured Party hereby waive a trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other in respect of any matter arising out of or in connection with the Note or this Security Agreement.

Section 18. Assignment. This Security Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, however, that Debtor may not assign this Security Agreement, any Loan Document or any rights or duties hereunder or thereunder without the Secured Parties' prior written consent, and any prohibited assignment shall be absolutely void. No consent to an assignment by Secured Party shall release Debtor from its

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 27 of 74

Obligations. Any Secured Party may at any time freely assign or transfer the whole or any part of its security interest granted hereunder to any one or more persons or entities, and no consent or approval by Debtor is required in connection with any such assignment. Any transferee of the Collateral shall be vested with all of the rights and powers of the assigning Secured Party hereunder with respect to the Collateral.

Section 19. Waivers. Debtor waives any and all rights against the Secured Parties, including any right that Debtor may otherwise have to require Secured Party to proceed against any other person, or proceed against or exhaust any other security, or pursue any other remedy Secured Party may have. Except as otherwise specifically and explicitly set forth in this SecurityAgreement and to the maximum extent permitted by law, Debtor waives demand, protest, notice of protest, notice of default or dishonor, notice of payment and nonpayment, notice of any default, nonpayment at maturity, release, compromise, settlement, extension, or renewal of accounts, documents, instruments, chattel paper, and guarantees at any time held by Secured Party on which Debtor may in any way be liable.

Section 20. Arbitration. Any dispute, controversy, claim or action of any kind or nature whatsoever, including the issue of arbitrability, arising out of, in connection with or relating to this Agreement shall be resolved by final and binding arbitration before a retired judge at JAMS in Santa Monica, California, in accordance with its most expedited Streamlined Arbitration Rules, and the Final Offer (or Baseball) Arbitration Option. Any interim or final award of the arbitrator may be enforced by any court of competent jurisdiction. The prevailing party shall be awarded its arbitrator, expert witness and attorney fees, costs and expenses.

Section 21. Attorneys. Debtor acknowledges, represents, warrants and agrees that (a) neither Secured Party nor any law firm in which Secured Partner is an attorney represents Debtor or its interests in connection with this Security Agreement, and (b) Debtor has been advised to and has obtained independent counsel to advise and represent Debtor and its interests in connection with this Security Agreement.

Section 22. Construction. Neither this Security Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Secured Party, whether under any rule of construction or otherwise. On the contrary, this Agreement has been reviewed by all parties and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of all parties hereto. Unless the context of this Security Agreement clearly requires otherwise, references to the plural include the singular, references to the singular include the plural, the term "including" is not limiting, and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or." The words "hereof" "herein," "hereby," "hereunder," and similar terms in this Security Agreement refer to this Agreement as a whole and not to any particular provision of this Security Agreement. Section, subsection, clause, schedule, and

exhibit references are to this Agreement unless otherwise specified. Any reference in this Security Agreement or in any of the other Loan Documents to this Security Agreement or any of the other Loan Documents shall include all alterations, amendments, changes, extensions, modifications, renewals, replacements, substitutions, and supplements, thereto and thereof, as applicable. In the event of a direct conflict between the terms and provisions of this Security Agreement and any other Loan Document, it is the intention of the parties hereto that both such documents shall be read together and construed, to the fullest extent possible, to be in concert with each other. The inclusion herein of additional obligations on the part of each Debtor and supplemental rights and remedies in favor of Secured Party, in each case in respect of the Collateral, shall not be deemed a conflict with any Loan Document.

Section 23. Secured Party's Liability for Collateral. So long as Secured Party substantially complies with its obligations, if any, under the Code and no willful misconduct occurs, Secured Party shall not in any way or manner be liable or responsible for: (a) the safekeeping of the Collateral; (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause; (c) any diminution in the value thereof; or (d) any act or default of any carrier, warehouseman, bailee, forwarding agency, or other person. All risk of loss, damage, or destruction of the Collateral shall be borne by the Debtor.

Section 24. Indemnification. Debtor agrees to defend, indemnify, save, and hold Secured Parties and their officers, employees, and agents (each an "**Indemnified Person**") harmless against: (a) all obligations, demands, claims, and liabilities claimed or asserted by any other person, and (b) all losses (including reasonable attorneys fees and disbursements) in any way suffered, incurred, or paid as a result of or in any way arising out of, following, or consequential to transactions with Debtor, whether under this Security Agreement, the other Loan Documents or otherwise (all of the foregoing, collectively, the "**Indemnified Liabilities**"). Notwithstanding the foregoing, no Debtor shall have any obligation under this Section with respect to any Indemnified Liability that a court of competent jurisdiction finally determines to have resulted solely from the willful misconduct of such Indemnified Person. This provision shall survive the termination of this Security Agreement.

<u>Section 25. Entire Agreement.</u> This Security Agreement and the Loan Documents constitute the entire agreement between the parties, and supercede and replace all prior and contemporaneous promises, representations and understandings, whether written or oral.

IN WITNESS WHEREOF, the Parties have executed this Security Agreement as of the day, month and year first above written.

SECURED PARTY:

John C. Kirkland

DEBTOR:

Jerrold S. Pressman

AGREED AND APPROVED
AS TO FORM AND CONTENT:

**LAW OFFICES OF KEITH E. PRESSMAN**

Keith E. Pressman
Attorney for Debtor

# EXHIBIT B

EXHIBIT: 12
DEPONENT: 5·27·11
DATE: Kirkland
[illegible]LEY, CSR #6426

## GENERAL RELEASE

In consideration of $1,000.00, receipt of which is hereby acknowledged, EPD Investment Co., LLC, a California limited liability company, on behalf of itself and its officers, directors, members, managers, employees, representatives, agents, fiduciaries and creditors (collectively, "EPD"), hereby fully, completely, absolutely and unconditionally waives, releases, discharges and holds harmless John C. Kirkland, all of his past, current and future affiliated law firms and companies, and all of their past, present and future officers, directors, managers, members, managing directors, partners, employees, agents, attorneys and assigns, whether acting in their representative, individual or any other capacities (collectively, "Kirkland"), from any and all causes of action, rights, obligations, damages and claims of any kind or nature whatsoever, at law and in equity, including without limitation all claims of legal malpractice, breach of fiduciary duty, fraud, negligent misrepresentation, professional or ordinary negligence, and all claims in any way arising out of or relating to any prior or current representation of EPD or its affiliates, and any transaction between the parties. EPD shall defend, indemnify and hold Kirkland harmless from and against any and all claims asserted by EPD's officers, directors, members, managers, employees, representatives, agents, fiduciaries or creditors.

It is EPD's intention to fully, finally and forever settle, release and resolve all claims, regardless of whether known or unknown, foreseen or unforeseen, suspected or unsuspected, vested or contingent, accrued or unaccrued. The releases given herein shall be and remain in effect to their full extent, notwithstanding the discovery or existence of any additional or different facts or damages. EPD knowingly and voluntarily waives the provisions of California Civil Code section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Any dispute, controversy or claim arising out of or relating to this release will be resolved by binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California. The prevailing party will be awarded its attorney fees, costs and expenses.

EPD acknowledges and agrees that Kirkland does not represent EPD or its interests in connection with this release. This release supersedes all prior and contemporaneous oral agreements, promises and understandings, and may not be modified except in writing signed by Kirkland.

EPD INVESTMENT CO., LLC

Dated: February 9, 2009

By: ______________________
Jerrold S. Pressman
Chairman

ACKNOWLEDGED AND AGREED:

______________________
Keith E. Pressman, Esq.

# EXHIBIT C

# GENERAL RELEASE

In consideration of $1,000.00, receipt of which is hereby acknowledged, Jerrold S. Pressman, on behalf of himself and his affiliates, estate, employees, representatives, agents, fiduciaries and creditors (collectively, "Pressman"), hereby fully, completely, absolutely and unconditionally waives, releases, discharges and holds harmless John C. Kirkland, all of his past, current and future affiliated law firms and companies, and all of their past, present and future officers, directors, managers, members, managing directors, partners, employees, agents, attorneys and assigns, whether acting in their representative, individual or any other capacities (collectively, "Kirkland"), from any and all causes of action, rights, obligations, damages and claims of any kind or nature whatsoever, at law and in equity, including without limitation all claims of legal malpractice, breach of fiduciary duty, fraud, negligent misrepresentation, professional or ordinary negligence, and all claims in any way arising out of or relating to any prior or current representation of Pressman or his affiliates, and any transaction between the parties. Pressman shall defend, indemnify and hold Kirkland harmless from and against any and all claims asserted by Pressman's affiliates, estate, employees, representatives, agents, fiduciaries or creditors.

It is Pressman's intention to fully, finally and forever settle, release and resolve all claims, regardless of whether known or unknown, foreseen or unforeseen, suspected or unsuspected, vested or contingent, accrued or unaccrued. The releases given herein shall be and remain in effect to their full extent, notwithstanding the discovery or existence of any additional or different facts or damages. Pressman knowingly and voluntarily waives the provisions of California Civil Code section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Any dispute, controversy or claim arising out of or relating to this release will be resolved by binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California. The prevailing party will be awarded its attorney fees, costs and expenses.

Pressman acknowledges and agrees that Kirkland does not represent Pressman or his interests in connection with this release. This release supersedes all prior and contemporaneous oral agreements, promises and understandings, and may not be modified except in writing signed by Kirkland.

Jerrold S. Pressman

Dated: February 9, 2009

# EXHIBIT D

# FUNDING AGREEMENT

THIS FUNDING AGREEMENT ("**Agreement**") is entered into on July 24, 2009 (the "**Effective Date**"), between EPD INVESTMENT CO., LLC, a California limited liability company ("**EPD**"), and JERROLD S. PRESSMAN, an individual ("**Pressman**"), on the one hand, and JOHN C. KIRKLAND, an individual ("**Investor**"), on the other hand.

## Recitals

WHEREAS, the parties previously entered into that certain Secured Promissory Note dated as of November 8, 2007 (the "Note"), that certain Continuing Guarantee of even date therewith, and that certain Security Interest Agreement of even date therewith (collectively, together with any documents related thereto, the "**Transaction Documents**"); and

WHEREAS, Investor has invested an aggregate of approximately $2 million in EPD pursuant to the Transaction Documents, all of which is guaranteed and subject to repayment by EPD and Pressman; and

WHEREAS, EPD states that it has paid approximately $75,000 to Investor's mortgage lender for the benefit of Investor over the last year, in monthly payments of approximately $7,500, and will make additional monthly payments in accordance with this Agreement; and

WHEREAS, EPD has advised Investor that, due to temporary cash flow constraints, EPD has an immediate need for $100,000; and

WHEREAS, Investor has agreed to provide EPD with immediate funds subject to and in accordance with the terms hereof;

NOW THEREFORE, in consideration of the premises, and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereby agree as follows:

## Agreement

1. **Additional Funds.** Pursuant to the Transaction Documents, which are hereby incorporated herein by reference as though each of the same were set forth in full herein, Investor will deliver $100,000.00 to EPD on the Effective Date, receipt of which is hereby acknowledged.

2. **Monthly Payments.** The funds delivered pursuant to Section 1 hereof shall be applied as follows: (a) first, to repayment of all funds previously paid by EPD on account of or for the benefit of Investor, to the extent actually paid, (b) second, to payment of any and all monies otherwise due to EPD from Investor, which have not previously been paid, (c) third, to be held in trust by EPD to make at least three consecutive additional monthly payments for the benefit of Investor, and (d) all funds paid by Investor, or previously paid by Investor, to or for the benefit of any EPD Parties or Pressman Entities (as defined below) shall be treated in accordance with the Transaction Documents and subject to guaranteed repayment by EPD and Pressman in accordance with the terms thereof.

3. **Investor Release.** Other than the duties and obligations provided for pursuant to or arising out of the Transaction Documents, including, but not limited to, repayment of the Obligations as defined in the Security Interest Agreement, Investor hereby fully, completely, absolutely and unconditionally waives, releases, remises, acquits, satisfies, and forever discharges and holds harmless EPD, Pressman, all of EPD's past and present officers, directors, managers, members, managing directors, partners, employees, trusts, settlors, trustees, beneficiaries, fiduciaries, relatives, representatives, agents, attorneys and assigns, whether acting in their representative, individual or any other capacities (collectively with EPD and Pressman, the "**EPD Parties**"), from any and all liabilities, duties, causes of action, rights, obligations, damages, suits, debts, sums of money, accounts, reckonings, bonds, bills, demands, agreements, covenants, contracts, controversies, costs, expenses, offsets, and claims of any kind or nature whatsoever, at law and in equity, whether known or unknown, which Investor ever had, now has, or which any representative, fiduciary, trustee, creditor, successor, heir or assign of Investor hereafter can, shall or may have, against any of the EPD Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time to the Effective Date. Investor irrevocably agrees to forever refrain and forbear from commencing, instituting or participating, either as a named party or otherwise, in any lawsuit, action or other proceeding against any EPD Parties in any capacity, whether brought by Investor or by others on Investor's behalf, based on or arising out of any or all matters provided for in the preceding sentence.

4. **EPD Release.** Notwithstanding any other provision, EPD, Pressman individually, and all entities owned or controlled by Pressman (collectively with EPD and Pressman, the "**Pressman Entities**"), hereby fully, completely, absolutely and unconditionally waive, release, remise, acquit, satisfy, and forever discharge and hold harmless Investor, all of Investor's past and present officers, directors, managers, members, managing directors, partners, employees, trusts, settlors, trustees, beneficiaries, fiduciaries, relatives, representatives, agents, attorneys and assigns, whether acting in their representative, individual or any other capacities (collectively with Investor, the "**Investor Parties**"), from any and all liabilities, duties, causes of action, rights, obligations, damages, suits, debts, sums of money, accounts, reckonings, bonds, bills, demands, agreements, covenants, contracts, controversies, costs, expenses, offsets, and claims of any kind or nature whatsoever, at law and in equity, whether known or unknown, which any of the Pressman Entities ever had, now has, or which any representative, fiduciary, trustee, creditor, successor, heir or assign of any of the Pressman Entities hereafter can, shall or may have, against any of the Investor Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time to the Effective Date. Each of the Pressman Entities irrevocably agrees to forever refrain and forbear from commencing, instituting or participating, either as a named party or otherwise, in any lawsuit, action or other proceeding against any of the Investor Parties in any capacity, whether brought by any Pressman Entities or by others on any Pressman Entities' behalf, based on or arising out of any or all matters provided for in the preceding sentence.

5. **1542 Release.** It is the parties' intention to fully, finally and forever settle, release and resolve all claims, regardless of whether known or unknown, foreseen or unforeseen, suspected or unsuspected, vested or contingent, accrued or unaccrued. The releases given herein shall be and remain in effect to their full extent, notwithstanding the discovery or existence of any additional or different facts or damages. Each of the parties knowingly and voluntarily waives the provisions of Civil Code Section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of

executing the release, which if known by him must have materially affected his settlement with the debtor."

6. **Contractual Statute of Repose.** Notwithstanding any other provision: Any action, arbitration, proceeding, claim or cause of action of any kind or nature whatsoever against EPD, Pressman, any of the EPD Parties or Pressman Entities, or Investor or any of the Investor Parties, brought by, on behalf of, or for the benefit of Investor or any of Investor Parties, or EPD, Pressman, any of the EPD Parties or any of the Pressman Entities, or any representative, fiduciary, trustee, creditor, successor, heir or assign of any of the foregoing, whether or not arising of, relating to, or in connection with this Agreement, the Transaction Documents or any relations between the parties, can only be brought and filed within one year (i.e., the day prior to the one-year anniversary) of the date of the earliest (a) occurrence, (b) wrongful act or omission, (c) breach, (d) damage, or (e) accrual of any claim or cause of action, whichever occurs first, with no tolling and regardless of discovery or continuing violation. This paragraph establishes an absolute bar to any ability to commence arbitration or bring suit on or after the one-year anniversary of the earliest of any of the foregoing, and in no event shall the time for the commencement of any action or proceeding exceed one year. The running and expiration of the one-year period cannot and shall not be tolled, extended, suspended, waived or revived for any reason whatsoever, including, but not limited to, the existence or lack of (i) knowledge or discovery, (ii) damage or actual injury, (iii) any continuing representation or ongoing relationship, fiduciary or otherwise, (iv) willful concealment, (v) actual fraud or collusion, (vi) mistake or duress, (vii) minority or disability, (viii) dependence on any future act or event, (ix) ongoing conduct or continuing violation, (x) subsequent acts or separable claims, (xi) exhaustion or pursuit of any remedies, actions or processes, (xii) waiver, failure to assert, or inconsistent action, (xiii) bankruptcy or receivership, (xiv) equity or fairness, or (xv) any other facts or circumstances. All rights, remedies, claims and causes of action shall expire and terminate within one year, and any action or proceeding not commenced prior to the one-year anniversary shall be permanently and forever barred, without regard to any waiver, tolling or limitations period provided for by statute, law, equity or fairness. The parties knowingly and permanently waive any tolling provision, rule or statute of limitations to the contrary. This paragraph is intended to limit the right to sue or arbitrate to a period shorter than that granted by statute, and shall be liberally construed and interpreted to accomplish that result. The protections of this paragraph cannot be waived. All provisions of this paragraph are severable.

7. **Interpretation.** This Agreement shall be binding upon and shall inure to the benefit of the parties and their successors and assigns. This Agreement was drafted and prepared solely by EPD, and shall be interpreted and construed as an instrument drafted by EPD. Each of the EPD Parties acknowledges and agrees that Investor is not acting as an attorney or advisor to any of the EPD Parties, and will instead act solely in Investor's own interests, in connection with this Agreement.

8. **Arbitration.** Any and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents, or involving any of the parties hereto, including, but not limited to, all issues of arbitrability, timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, and all other preliminary issues, will be resolved by final and binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California, in accordance with its most expedited and

streamlined rules and procedures, with depositions and discovery prohibited or limited to the maximum extent permissible, and the final offer (baseball) arbitration option. The prevailing party will be awarded all reasonable arbitration, attorney and expert fees, costs and expenses. Any arbitration award may be entered in any court of competent jurisdiction.

9. **Ratification.** This Agreement shall be interpreted in a manner that is harmonious and consistent with the intent and purpose of the Transaction Documents, but in the event of any conflict between the Loan Document and this Agreement, this Agreement shall control. Except as modified by this Agreement, the Transaction Documents are hereby ratified and confirmed in all respects, and shall be and remain fully effective and enforceable in accordance with their terms.

_______________________
John C. Kirkland

_______________________
Jerrold S. Pressman

EPD INVESTMENT CO., LLC

By:_______________________
Jerrold S. Pressman

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 39 of 74

# EXHIBIT E

# FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "**Agreement**") is entered into on October 15, 2009 (the "**Effective Date**"), between EPD INVESTMENT CO., LLC, a California limited liability company ("**EPD**"), and JERROLD S. PRESSMAN, an individual ("**Pressman**"), on the one hand, and POSHOW ANN KIRKLAND, TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 (the "**Trust**"), on the other hand.

## Recitals

WHEREAS, the Trust is the assignee and holder of all right, title and interest under that certain Secured Promissory Note dated as of November 8, 2007 (the "**Note**"), that certain Continuing Guarantee of even date therewith, and that certain Security Interest Agreement of even date therewith (collectively, together with any documents related thereto, the "**Transaction Documents**"); and

WHEREAS, EPD and Pressman desire a forbearance from the Trust, and an extension of the Maturity Date provided for in the Note to at least one year from the Effective Date; and

WHEREAS, EPD and Pressman may have failed to live up to all promises, representations, covenants and agreements made by them in connection with the Transaction Documents, including, but not necessarily limited to, the representation that they would promptly file a first priority UCC-1 Financing Statement to fully perfect the security interests granted pursuant to the Security Interest Agreement;

NOW THEREFORE, in consideration of the premises, and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereby agree as follows:

## Agreement

1. **Acknowledgement.** Each of the parties acknowledges, confirms and agrees that the Trust is the valid and bona fide assignee of, and sole and exclusive holder of all right, title and interest under, each of the Transaction Documents.

2. **Forbearance.** Notwithstanding any other provision, the Trust hereby agrees that it will not make written demand pursuant to Section 1 of the Note to cause the Maturity Date (as defined in the Note) to be sooner than the one-year anniversary of the Effective Date of this Agreement.

3. **Trust Release.** Other than the duties and obligations provided for pursuant to or arising out of the Transaction Documents, including, but not limited to, repayment of the Obligations as defined in the Security Interest Agreement, the Trust hereby fully, completely, absolutely and unconditionally waives, releases, remises, acquits, satisfies, and forever discharges and holds harmless EPD, Pressman, all of EPD's past and present officers, directors, managers, members, managing directors, partners, employees, trusts, settlors, trustees, beneficiaries, fiduciaries, relatives, representatives, agents, attorneys and assigns, whether acting in their representative, individual or any other capacities (collectively with EPD and Pressman,

the "**EPD Parties**"), from any and all liabilities, duties, causes of action, rights, obligations, damages, suits, debts, sums of money, accounts, reckonings, bonds, bills, demands, agreements, covenants, contracts, controversies, costs, expenses, offsets, and claims of any kind or nature whatsoever, at law and in equity, whether known or unknown, which the Trust ever had, now has, or which any representative, fiduciary, trustee, creditor, successor, heir or assign of the Trust hereafter can, shall or may have, against any of the EPD Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time to the Effective Date. The Trust irrevocably agrees to forever refrain and forbear from commencing, instituting or participating, either as a named party or otherwise, in any lawsuit, action or other proceeding against any EPD Parties in any capacity, whether brought by the Trust or by others on the Trust's behalf, based on or arising out of any or all matters provided for in the preceding sentence.

4. **EPD Release.** Notwithstanding any other provision, EPD, Pressman individually, and all entities owned or controlled by Pressman (collectively with EPD and Pressman, the "**Pressman Entities**"), hereby fully, completely, absolutely and unconditionally waive, release, remise, acquit, satisfy, and forever discharge and hold harmless the Trust, all of the Trust's past and present officers, directors, managers, members, managing directors, partners, employees, trusts, settlors, trustees, beneficiaries, fiduciaries, relatives, representatives, agents, attorneys and assigns, whether acting in their representative, individual or any other capacities (collectively with the Trust, the "**Trust Parties**"), from any and all liabilities, duties, causes of action, rights, obligations, damages, suits, debts, sums of money, accounts, reckonings, bonds, bills, demands, agreements, covenants, contracts, controversies, costs, expenses, offsets, and claims of any kind or nature whatsoever, at law and in equity, whether known or unknown, which any of the Pressman Entities ever had, now has, or which any representative, fiduciary, trustee, creditor, successor, heir or assign of any of the Pressman Entities hereafter can, shall or may have, against any of the Trust Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time to the Effective Date. Each of the Pressman Entities irrevocably agrees to forever refrain and forbear from commencing, instituting or participating, either as a named party or otherwise, in any lawsuit, action or other proceeding against any of the Trust Parties in any capacity, whether brought by any Pressman Entities or by others on any Pressman Entities' behalf, based on or arising out of any or all matters provided for in the preceding sentence.

5. **1542 Release.** It is the parties' intention to fully, finally and forever settle, release and resolve all claims, regardless of whether known or unknown, foreseen or unforeseen, suspected or unsuspected, vested or contingent, accrued or unaccrued. The releases given herein shall be and remain in effect to their full extent, notwithstanding the discovery or existence of any additional or different facts or damages. Each of the parties knowingly and voluntarily waives the provisions of Civil Code Section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

6. **Contractual Statute of Repose.** Notwithstanding any other provision: Any action, arbitration, proceeding, claim or cause of action of any kind or nature whatsoever against EPD, Pressman, any of the EPD Parties or Pressman Entities, or the Trust or any of the Trust Parties, brought by, on behalf of, or for the benefit of the Trust or any of Trust Parties, or EPD, Pressman, any of the EPD Parties or any of the Pressman Entities, or any representative,

fiduciary, trustee, creditor, successor, heir or assign of any of the foregoing, whether or not arising of, relating to, or in connection with this Agreement, the Transaction Documents or any relations between the parties, can only be brought and filed within one year (i.e., the day prior to the one-year anniversary) of the date of the earliest (a) occurrence, (b) wrongful act or omission, (c) breach, (d) damage, or (e) accrual of any claim or cause of action, whichever occurs first, with no tolling and regardless of discovery or continuing violation. This paragraph establishes an absolute bar to any ability to commence arbitration or bring suit on or after the one-year anniversary of the earliest of any of the foregoing, and in no event shall the time for the commencement of any action or proceeding exceed one year. The running and expiration of the one-year period cannot and shall not be tolled, extended, suspended, waived or revived for any reason whatsoever, including, but not limited to, the existence or lack of (i) knowledge or discovery, (ii) damage or actual injury, (iii) any continuing representation or ongoing relationship, fiduciary or otherwise, (iv) willful concealment, (v) actual fraud or collusion, (vi) mistake or duress, (vii) minority or disability, (viii) dependence on any future act or event, (ix) ongoing conduct or continuing violation, (x) subsequent acts or separable claims, (xi) exhaustion or pursuit of any remedies, actions or processes, (xii) waiver, failure to assert, or inconsistent action, (xiii) bankruptcy or receivership, (xiv) equity or fairness, or (xv) any other facts or circumstances. All rights, remedies, claims and causes of action shall expire and terminate within one year, and any action or proceeding not commenced prior to the one-year anniversary shall be permanently and forever barred, without regard to any waiver, tolling or limitations period provided for by statute, law, equity or fairness. The parties knowingly and permanently waive any tolling provision, rule or statute of limitations to the contrary. This paragraph is intended to limit the right to sue or arbitrate to a period shorter than that granted by statute, and shall be liberally construed and interpreted to accomplish that result. The protections of this paragraph cannot be waived. All provisions of this paragraph are severable.

7. **Interpretation.** This Agreement shall be binding upon and shall inure to the benefit of the parties and their successors and assigns. This Agreement was drafted and prepared solely by EPD, and shall be interpreted and construed as an instrument drafted by EPD. Each of the EPD Parties acknowledges and agrees that neither the Trust nor any party in any way affiliated with the Trust is acting as an attorney or advisor to any of the EPD Parties, and will instead act solely in the Trust's interests, in connection with this Agreement.

8. **Arbitration.** Any and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents, or involving any of the parties hereto, including, but not limited to, all issues of arbitrability, timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, and all other preliminary issues, will be resolved by final and binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California, in accordance with its most expedited and streamlined rules and procedures, with depositions and discovery prohibited or limited to the maximum extent permissible, and the final offer (baseball) arbitration option. The prevailing party will be awarded all reasonable arbitration, attorney and expert fees, costs and expenses. Any arbitration award may be entered in any court of competent jurisdiction.

9. **Ratification.** This Agreement shall be interpreted in a manner that is harmonious and consistent with the intent and purpose of the Transaction Documents, but in the event of any conflict between the Loan Document and this Agreement, this Agreement shall control. Except as modified by this Agreement, the Transaction Documents are hereby ratified and confirmed in all respects, and shall be and remain fully effective and enforceable in accordance with their terms.

______________________________
Poshow Ann Kirkland, Trustee
of the Bright Conscience Trust
Dated September 9, 2009

______________________________
Jerrold S. Pressman

EPD INVESTMENT CO., LLC

By:____________________________
Jerrold S. Pressman

# EXHIBIT F

# ADDITIONAL FORBEARANCE AGREEMENT

THIS ADDITIONAL FORBEARANCE AGREEMENT (this "**Agreement**") is entered into on September 3, 2010 (the "**Effective Date**"), between EPD INVESTMENT CO., LLC, a California limited liability company ("**EPD**"), and JERROLD S. PRESSMAN, an individual ("**Pressman**"), on the one hand, and POSHOW ANN KIRKLAND, TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 (the "**Trust**"), on the other hand.

## Recitals

WHEREAS, the Trust is the holder of all right, title and interest under that certain Secured Promissory Note dated as of November 8, 2007 (the "Note"), that certain Continuing Guarantee of even date therewith, and that certain Security Interest Agreement of even date therewith, that certain Funding Agreement dated July 24, 2009, and that certain Forbearance Agreement dated October 14, 2009 (collectively, together with any and all documents related thereto, the "**Transaction Documents**"); and

WHEREAS, there is more than two million dollars ($2,000,000) due to the Trust from EPD and Pressman pursuant to the Transaction Documents, payable on demand, the exact amount of which shall be set forth in an accounting to be prepared by EPD within thirty (30) days; and

WHEREAS, the Trust has previously agreed to forbear from calling the loan to October 14, 2010, and previously gave notice that the Maturity Date provided for in the Note would be November 29, 2010, but has stated its desire to exercise its right to move up the Maturity Date to October 14, 2010; and

WHEREAS, EPD and Pressman desire a further forbearance from the Trust, and a binding extension of the Maturity Date provided for in the Note to three (3) months from the Effective Date of this Agreement;

NOW THEREFORE, in consideration of the premises, and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereby agree as follows:

## Agreement

1. **Forbearance.** Notwithstanding any other provision, the parties hereby agree that the Maturity Date for any and all funds due under the Note and the full and complete satisfaction of all Obligations under the Transaction Documents shall be three (3) months from the Effective Date of this Agreement.

2. **Trust Release.** Other than the duties and obligations provided for pursuant to or arising out of the Transaction Documents, including, but not limited to, full and timely repayment of the Note and all funds advanced thereunder, and full and timely satisfaction of all Obligations as defined in the Security Interest Agreement, the Trust hereby fully, completely, absolutely and unconditionally waives, releases, remises, acquits, satisfies, and forever discharges and holds harmless EPD, Pressman, all of EPD's past and present officers, directors,

managers, members, managing directors, partners, employees, trusts, settlors, trustees, beneficiaries, fiduciaries, relatives, representatives, agents, attorneys and assigns, whether acting in their representative, individual or any other capacities (collectively with EPD and Pressman, the "**EPD Parties**"), from any and all liabilities, duties, causes of action, rights, obligations, damages, suits, debts, sums of money, accounts, reckonings, bonds, bills, demands, agreements, covenants, contracts, controversies, costs, expenses, offsets, and claims of any kind or nature whatsoever, at law and in equity, whether known or unknown, which the Trust ever had, now has, or which any representative, fiduciary, trustee, creditor, successor, heir or assign of the Trust hereafter can, shall or may have, against any of the EPD Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time to the Effective Date. The Trust irrevocably agrees to forever refrain and forbear from commencing, instituting or participating, either as a named party or otherwise, in any lawsuit, action or other proceeding against any EPD Parties in any capacity, whether brought by the Trust or by others on the Trust's behalf, based on or arising out of any or all matters provided for in the preceding sentence.

3. **EPD Release.** Notwithstanding any other provision, EPD, Pressman individually, and all entities owned or controlled by Pressman (collectively with EPD and Pressman, the "**Pressman Entities**"), hereby fully, completely, absolutely and unconditionally waive, release, remise, acquit, satisfy, and forever discharge and hold harmless the Trust, all of the Trust's past and present officers, directors, managers, members, managing directors, partners, employees, trusts, settlors, trustees, beneficiaries, fiduciaries, relatives, representatives, agents, attorneys and assigns, whether acting in their representative, individual or any other capacities (collectively with the Trust, the "**Trust Parties**"), from any and all liabilities, duties, causes of action, rights, obligations, damages, suits, debts, sums of money, accounts, reckonings, bonds, bills, demands, agreements, covenants, contracts, controversies, costs, expenses, offsets, and claims of any kind or nature whatsoever, at law and in equity, whether known or unknown, which any of the Pressman Entities ever had, now has, or which any representative, fiduciary, trustee, creditor, successor, heir or assign of any of the Pressman Entities hereafter can, shall or may have, against any of the Trust Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time to the Effective Date. Each of the Pressman Entities irrevocably agrees to forever refrain and forbear from commencing, instituting or participating, either as a named party or otherwise, in any lawsuit, action or other proceeding against any of the Trust Parties in any capacity, whether brought by any Pressman Entities or by others on any Pressman Entities' behalf, based on or arising out of any or all matters provided for in the preceding sentence.

4. **1542 Release.** It is the parties' intention to fully, finally and forever settle, release and resolve all claims, regardless of whether known or unknown, foreseen or unforeseen, suspected or unsuspected, vested or contingent, accrued or unaccrued. The releases given herein shall be and remain in effect to their full extent, notwithstanding the discovery or existence of any additional or different facts or damages. Each of the parties knowingly and voluntarily waives the provisions of Civil Code Section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

5. **Interpretation.** This Agreement shall be binding upon and shall inure to the benefit of the parties and their successors and assigns. This Agreement was drafted and prepared

solely by EPD, and shall be interpreted and construed as an instrument drafted by EPD. Each of the EPD Parties acknowledges and agrees that neither the Trust nor any party in any way affiliated with the Trust is acting as an attorney or advisor to any of the EPD Parties, and will instead act solely in the Trust's interests, in connection with this Agreement.

6. **Arbitration.** Any and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents, or involving any of the parties hereto, including, but not limited to, all issues of arbitrability, timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, and all other preliminary issues, will be resolved by final and binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California, in accordance with its most expedited and streamlined rules and procedures, with depositions and discovery prohibited or limited to the maximum extent permissible, and the final offer (baseball) arbitration option. The prevailing party will be awarded all reasonable arbitration, attorney and expert fees, costs and expenses. Any arbitration award may be entered in any court of competent jurisdiction.

7. **Ratification.** This Agreement shall be interpreted in a manner that is harmonious and consistent with the intent and purpose of the Transaction Documents, but in the event of any conflict between the Loan Document and this Agreement, this Agreement shall control. Except as modified by this Agreement, the Transaction Documents are hereby ratified and confirmed in all respects, and shall be and remain fully effective and enforceable in accordance with their terms.

______________________________
Poshow Ann Kirkland, Trustee
of the Bright Conscience Trust
Dated September 9, 2009

______________________________
Jerrold S. Pressman

EPD INVESTMENT CO., LLC

By: ______________________________
Jerrold S. Pressman

# EXHIBIT G

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc Main Document Page 49 of 74



LUCE FORWARD
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

601 South Figueroa
Suite 3900
Los Angeles, CA 90017
213.892.4992
213.892.7731 fax
www.luce.com

JOHN C. KIRKLAND, PARTNER
DIRECT DIAL 213.892.4907
DIRECT FAX 213.452.8035
EMAIL jkirkland@luce.com

February 17, 2009

EPD Investment Co., LLC
520 Broadway, Suite 660
Santa Monica, CA 90401
Attn: Mr. Jerrold S. Pressman

EXHIBIT: 97
DEPONENT: Kirkland
DATE: 5-27-11
LORI BARKLEY, CSR #6426

Re: Engagement and Fee Agreement

Dear Jerry:

We are pleased you have chosen Luce Forward as legal counsel to represent EPD Investment Co., LLC, and its affiliates (collectively, "EPD"). We send this letter to memorialize the terms of the attorney-client relationship, and we ask you to return it signed to establish that it is the contract describing that relationship. In advance, we apologize for the formality of this letter, which is in some parts required by rules governing our profession. We also hope you share our belief that everyone benefits from a clear understanding of the terms of the relationship from the beginning.

## OUR SPECIFIC ENGAGEMENT

You have asked and we have agreed to act as general outside counsel for EPD. If you ask us to provide additional legal services and we undertake to provide them, this agreement will apply unless a new written agreement is made. EPD or we may require a new written agreement for any services.

## GENERAL RESPONSIBILITIES OF ATTORNEY AND CLIENT

We will report to you as the authorized representative of EPD in matters requiring client decisions. We will report developments as they occur. We will consult with you as needed to assure timely, effective, and efficient progress of our work. We cannot promise or guarantee the outcome of our legal services.

In addition to conventional landline telephone and means of sending hard copy, we anticipate we will communicate with EPD by Internet e-mail and by cordless or cellular telephone. If security of any of those forms of communication causes concern, please so advise us in writing.

EPD agrees to provide us with the factual information and materials we require to perform the requested services. You will make the business and policy decisions about the matters with

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc Main Document Page 50 of 74



LUCE FORWARD
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

EPD Investment Co., LLC
February 17, 2009
Page 2

which we are assisting. We will provide only legal services. The client acknowledges it is not relying on us for business, investment, or accounting advice or to investigate the character or credit of parties involved in the engagement.

We comply with laws and rules that require us to act professionally. As a matter of professional responsibility and as long as in our judgment it will not impair our client's rights and interests in the subject of our engagement, we retain control over decisions affecting our professionalism and reputation, including whether to extend deadlines for opposing counsel, whether to cooperate with opposing counsel in scheduling and similar matters, and the tone and style by which matters are expressed to courts, government agencies, and other counsel.

From time to time, we may provide newsletters or similar materials about legal developments or matters of current interest. We may also invite client representatives to attend seminars where legal topics are discussed. We do so because well informed clients are better equipped to make decisions about their needs for future legal representation. EPD agrees that we have no obligation to provide such generally disseminated materials, but if we do so, they are not part of our engagement, are not legal advice and do not expand the scope of our engagement.

**STAFFING**

I will be the attorney primarily responsible for this engagement. I am a partner in the firm. My billable rate is currently $800 per hour.

We recognize the high cost of legal services, and we strive to work as cost-effectively as possible. Therefore, when appropriate, we may assign work to junior lawyers and support staff with lower billing rates. We may also consult with senior attorneys whose billing rates reflect specialized knowledge that can be brought to bear efficiently on a matter. While we will take all prudent steps to minimize the number of lawyers who simultaneously provide services, we will charge for attorney conferences and supervision as appropriate to assure our work is done effectively.

**FEES AND EXPENSES**

Unless otherwise agreed for specific matters or types of legal work, we generally bill on an hourly basis. We establish an hourly rate for each attorney and paralegal. We also establish hourly rates for law clerks and staff who perform measurable services on specific engagements. Hourly rates are subject to adjustment. Our rates are generally increased effective as of January 1 of each year. You agree to pay the increased rates as of the date we set as their effective date. We will bill you in quarter-hour increments, although some timekeepers may record their time in tenth-hour increments.

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 51 of 74

05/17/2009 06:48 3103946404 BROADWAY ENT PAGE 04

LUCE FORWARD
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

EPD Investment Co., LLC
February 17, 2009
Page 3

In addition to our fees, we will bill for expenses incurred in our work. The expenses are subject to adjustment based on changes in charges to us. It may also be appropriate to engage third-party providers to support our work. We will either bill for the charges of such providers or arrange in advance for them to bill directly. We have no obligation to incur or advance any expense.

By signing and returning this agreement, EPD agrees to pay for our billed services and expenses. The obligation to pay is not conditional on any future event, related or unrelated to the purpose of our engagement, unless explicitly so agreed in writing. Even if you expect to obtain funds or property from third parties or closing a business transaction, the client is obligated to pay our statements when due in accordance with this agreement. This is true even if your hopes or expectations are delayed or fail entirely, and it is true regardless of any security provided to us. We do not in any respect accept a risk that funds or property that you hope or expect to receive will be the source of payment to us, and this agreement is not in any respect a contingent fee agreement.

From time to time, we may estimate the amount of fees we anticipate will be incurred to perform certain services. Such estimates are by their nature inexact, and we do not agree to any cap or guaranteed maximum fee. The cost of legal services is often difficult to predict, particularly when the work is affected by factors over which we have no control. Unless we agree in writing to a fixed fee, any estimate we provide does not limit the client's obligation to pay for legal services.

On occasion, we may request that you pay a fee greater than specified above, because the reasonable value of our services is in excess of what our fees would be if computed solely on the basis of our hourly rates or other formula. This is most common when (a) you are receiving the benefit of prior legal services performed by us on behalf of other clients, (b) an extraordinary benefit accrues to you due to the value of our services or relationships, or (c) the monetary benefit to you from our services far outweighs the time expended by us. However, any such fees would be subject to the company's approval in your sole and absolute discretion.

## STATEMENTS

We will bill on a monthly basis. Our statements describe the services performed in reasonable detail. Because a responsible attorney must review each statement, we do not necessarily send statements at the same time every month. Statements are due upon presentation. Statements are past due 30 days after the date that the statement is delivered.

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 52 of 74



LUCE FORWARD
ATTORNEYS AT LAW • FOUNDED 1873
Luce, Forward, Hamilton & Scripps LLP

EPD Investment Co., LLC
February 17, 2009
Page 4

SECURITY

It is common in attorney-client relationships, including ours with clients, for the client to deposit funds in trust with the attorney as security for payment of fees and expenses. We have not now made a trust account deposit an element of our engagement. If in the future we become concerned about ability or willingness to pay for our services or expenses, we may give notice to that effect and require security for performance. The meaning of security depends on context, and it will be a matter of our judgment whether the security is adequate. Hypothetically, adequate security may include financial disclosures or legally enforceable security in money or property, including money deposited in our trust account. EPD agrees that we may withdraw if it declines to provide any security we request.

CHARGE ON PAST DUE BALANCES

A charge of one percent per month will be added to all past due balances, commencing ninety calendar days after the closing date specified on each statement. This charge represents our reasonable endeavor to estimate fair compensation for our administrative expenses, and the expenses to the firm which will result from a default in payment of our statements when due. This estimate is made because it would be impracticable or extremely difficult to determine our actual damages. This charge does not delay the time when payment is due.

TERMINATION OF REPRESENTATION

We anticipate a successful and mutually satisfying relationship. Nevertheless, EPD has the right to terminate any lawyer-client relationship at any time. We likewise may withdraw for any reason so long as we comply with the rules governing withdrawals. In addition, there are laws and rules that require an attorney to withdraw from representing a client under certain circumstances. We will withdraw from representation if required to do so by those rules or other applicable laws. A termination by either party should be made in writing.

While we do not expect that any future event will cause us to withdraw, one of the reasons we could do so is a client's breach of either this agreement or the obligation to pay our fees or expenses. It is our policy to discontinue work pending withdrawal if a client becomes delinquent in payment and to withdraw if the delinquency is not promptly resolved.

A court would require a written statement consenting to the withdrawal or substitution of a lawyer who has formally made an appearance for a client. The same may be true under the rules of other tribunals. Each party agrees to provide the other, on request after notice of termination, a signed statement consenting to withdrawal or substitution. If the client does not comply with this agreement, we have the right to ask the court or tribunal's permission to withdraw.

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 53 of 74

06/17/2009 06:48 3103946404 BROADWAY ENT PAGE 06

LUCE FORWARD
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

EPD Investment Co., LLC
February 17, 2009
Page 5

Subject to applicable law, EPD agrees to pay for our services and expenses up to the time of any termination, and agrees to pay for our services and expenses required to protect its interests through the time of and for the purpose of transition of any legal matter to other counsel.

Any file we create or maintain for this engagement is the client's file. If you wish to have files or specific materials delivered after termination of our services; you should so advise us. Otherwise, all materials will be transferred to our archives and ultimately will be destroyed according to our records retention policy. In certain circumstances, we have the right not to release our work product to anyone, including a client, and this agreement does not waive that right.

**DISPUTE RESOLUTION**

We do not anticipate having any disagreements about the quality, cost, or appropriateness of our services, but if any concerns about these matters arise, please notify us immediately. We would endeavor to resolve any disagreements in a fair and amicable manner. If it is not possible to resolve a dispute by agreement, EPD and we agree that all disputes or claims of any nature whatsoever, including but not limited to those relating to our fees and the quality or appropriateness of our services, shall be resolved by confidential binding arbitration. The parties choose arbitration because it is usually less expensive and quicker than litigation and will preserve all parties' privacy.

The place of the confidential binding arbitration will be in Los Angeles, California. Arbitration proceedings may be commenced by any party by giving all other interested parties written notice thereof, and the proceedings shall be governed by the California Arbitration Act (Code Civ. Proc., § 1281 et seq.). The arbitrator must decide all disputes in accordance with that Act and the rules of any arbitral tribunal mutually selected by the parties. The arbitrator shall have power to decide all matters, including arbitrability and legal questions raised by pleading or summary judgment motions. The arbitrator's award shall be final and binding, and a judgment upon the award may be entered and enforced by any court of competent jurisdiction.

The arbitrator must allow limited discovery to enable all parties to present their cases, but must also be mindful of the parties' shared desire to avoid the expense of broad discovery typically allowed in civil litigation. We understand that choosing arbitration is a form of waiving a trial by jury.

Notwithstanding the agreement to arbitrate, fee disputes may first be submitted to the California State Bar's program for arbitration of fee disputes pursuant to Business and Professions Code section 6200 et seq. If a fee dispute arises, we will provide information about the State Bar program. If the Bar panel declines to hear a fee dispute, or if either party rejects the Bar panel's

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 54 of 74



LUCE FORWARD
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP



decision on any fee dispute, then instead of the right to trial mentioned in the statute, the fee dispute will be resolved by private arbitration as set forth above. All parties understand and waive the rule in *Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034 that an attorney and a client cannot agree to arbitrate fee disputes until a dispute has arisen. If that rule is applied to any fee dispute under this agreement, EPD and we agree that the remainder of this arbitration agreement will remain in effect and must be enforced with respect to all other disputes or claims.

GOVERNING LAW, SEVERABILITY, EFFECTIVENESS

This agreement is made and shall be governed by, and construed and enforced in accordance with, the internal laws of the State of California, without regard to the conflict-of-law principles thereof, as the same apply to agreements made solely by residents of California and wholly to be performed within California.

If any part of this agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire agreement will be severable and will remain in effect.

SUBMISSION TO JURISDICTION

EPD and we agree to submit to the exclusive jurisdiction and venue in Los Angeles, California in any action or proceeding arising out of or relating to the enforcement of the arbitration provisions of this agreement or for any other purpose, agree not to bring any action or proceeding of any kind in any other court, and waive any defense of inconvenient forum to the maintenance of any action or proceeding in Los Angeles, California.

CONFIDENTIALITY

The attorney-client privilege encourages candid discussions in which the facts and law about legal engagements can be exchanged without reservation. Generally, communications made in the course of our representation are protected by that privilege against others' efforts to compel disclosure. The client may lose the protection of the attorney-client privilege if it discloses what it communicates to us or what we communicate to it to persons other than those who need to know the information in order to implement our advice. Generally, the law does not provide privileges for communications with other professional service providers, including accountants and financial and business consultants. We therefore recommend that you guard the attorney-client privilege closely and consult with us before disclosing confidential communications to anyone else.

LUCE FORWARD
ATTORNEYS AT LAW
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

EPD Investment Co., LLC
February 17, 2009
Page 7

APPROVAL

If you have any questions concerning our fees and expenses arrangements or procedures, or the scope of the legal services we will provide, we will be pleased to respond. Before signing this agreement, EPD is free to consult with other counsel about the wisdom of agreeing to any term of this agreement, including arbitration.

If you find that this agreement accurately states the terms of our engagement, please sign and return the enclosed copy of this agreement in the enclosed return envelope. This agreement contains the entire agreement of the parties, and no modification of the terms of this agreement will be effective unless set out in writing and signed by EPD and by us.

Again, we thank you for asking us to represent you. We welcome the opportunity to serve, and look forward to a long and beneficial relationship.

Very truly yours,

John C. Kirkland
of
Luce, Forward, Hamilton & Scripps LLP

ACCEPTANCE AND APPROVAL

Client accepts and approves the foregoing engagement and fee agreement.

Date: ____________________

EPD Investment Co., LLC

By: ____________________
Jerrold S. Pressman

# EXHIBIT H

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 57 of 74

LUCE FORWARD

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

601 S. Figueroa St.
Suite 3900
Los Angeles, CA 90017
213.892.4992

www.luce.com

JOHN C. KIRKLAND, PARTNER
DIRECT DIAL NUMBER 213.892.4907
DIRECT FAX NUMBER 213.452.8035
EMAIL ADDRESS jkirkland@luce.com

EXHIBIT: 14
DEPONENT: 5·27·11
DATE: Kirkland
LORI BARKLEY, CSR #6426

February 26, 2010

Mr. Jerrold S. Pressman
EPD Investment Co., LLC
520 Broadway, Suite 660
Santa Monica, CA 90401

*Re: Engagement Agreement and Waiver of Conflicts of Interest*

Dear Jerry:

Thank you for asking Luce, Forward, Hamilton & Scripps, LLP (the "Firm") to act as legal counsel to represent EPD Investment Co., LLC, a California limited liability company ("EPD"), and Jerrold Pressman individually. We send this letter to memorialize the terms of the attorney-client relationship, and ask you to return it signed. In advance, we apologize for the formality of this letter, which is in some parts required by rules governing our profession.

OUR SPECIFIC ENGAGEMENT

You have asked Luce Forward Hamilton & Scripps LLP (the "Firm") to represent you and EPD in connection with a litigation matter brought by EPD investor Michelle Hansel. If you ask us to provide additional legal services on related or other matters, this agreement will apply unless a new written agreement is made. EPD or we may require a new written agreement for any services.

GENERAL RESPONSIBILITIES OF ATTORNEY AND CLIENT

We will report to you as the authorized representative of EPD in matters requiring client decisions. We will report developments as they occur. We will consult with you as needed to assure timely, effective, and efficient progress of our work. We cannot promise or guarantee the outcome of our legal services.

In addition to conventional landline telephone and means of sending hard copy, we anticipate we will communicate with EPD by Internet e-mail and by cordless or cellular telephone. If security of any of those forms of communication causes concern, please so advise us in writing.

EPD agrees to provide us with the factual information and materials we require to perform the requested services. You will make the business and policy decisions about the

Case 2:12-ap-02424-ER Doc 73 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc
Main Document Page 58 of 74

LUCE FORWARD

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Mr. Jerrold S. Pressman
EPD Investment Co., LLC
February 26, 2010
Page 2

matters with which we are assisting. We will provide only legal services. The client acknowledges it is not relying on us for business, investment, or accounting advice or to investigate the character or credit of parties involved in the engagement.

We comply with laws and rules that require us to act professionally. As a matter of professional responsibility and as long as in our judgment it will not impair our client's rights and interests in the subject of our engagement, we retain control over decisions affecting our professionalism and reputation, including whether to extend deadlines for opposing counsel, whether to cooperate with opposing counsel in scheduling and similar matters, and the tone and style by which matters are expressed to courts, government agencies, and other counsel.

From time to time, we may provide newsletters or similar materials about legal developments or matters of current interest. We may also invite client representatives to attend seminars where legal topics are discussed. We do so because well informed clients are better equipped to make decisions about their needs for future legal representation. EPD agrees that we have no obligation to provide such generally disseminated materials, but if we do so, they are not part of our engagement, are not legal advice and do not expand the scope of our engagement.

STAFFING

I will be the attorney primarily responsible for this engagement. I am a partner in the firm. My billable rate is currently $950 per hour.

We recognize the high cost of legal services, and we strive to work as cost-effectively as possible. Therefore, when appropriate, we may assign work to junior lawyers and support staff with lower billing rates. We may also consult with senior attorneys whose billing rates reflect specialized knowledge that can be brought to bear efficiently on a matter. While we will take all prudent steps to minimize the number of lawyers who simultaneously provide services, we will charge for attorney conferences and supervision as appropriate to assure our work is done effectively.

FEES AND EXPENSES

Unless otherwise agreed for specific matters or types of legal work, we generally bill on an hourly basis. We establish an hourly rate for each attorney and paralegal. We also establish hourly rates for law clerks and staff who perform measurable services on specific engagements. Hourly rates are subject to adjustment. Our rates are generally increased effective as of January 1 of each year. You agree to pay the increased rates as of the date we set as their effective date. We

LUCE FORWARD

LUCE, FORWARD, HAMILTON & SCRIPPS LLP



will bill you in quarter-hour increments, although some timekeepers may record their time in tenth-hour increments.

In addition to our fees, we will bill for expenses incurred in our work. The expenses are subject to adjustment based on changes in charges to us. It may also be appropriate to engage third-party providers to support our work. We will either bill for the charges of such providers or arrange in advance for them to bill directly. We have no obligation to incur or advance any expense.

By signing and returning this agreement, you and EPD agree to pay for our billed services and expenses. The obligation to pay is not conditional on any future event, related or unrelated to the purpose of our engagement, unless explicitly so agreed in writing. Even if you expect to obtain funds or property from third parties or closing a business transaction, the client is obligated to pay our statements when due in accordance with this agreement. This is true even if your hopes or expectations are delayed or fail entirely, and it is true regardless of any security provided to us. We do not in any respect accept a risk that funds or property that you hope or expect to receive will be the source of payment to us, and this agreement is not in any respect a contingent fee agreement.

From time to time, we may estimate the amount of fees we anticipate will be incurred to perform certain services. Such estimates are by their nature inexact, and we do not agree to any cap or guaranteed maximum fee. The cost of legal services is often difficult to predict, particularly when the work is affected by factors over which we have no control. Unless we agree in writing to a fixed fee, any estimate we provide does not limit the client's obligation to pay for legal services.

STATEMENTS

We bill on a periodic and often monthly basis. Our statements describe the services performed in reasonable detail. Because a responsible attorney must review each statement, we do not necessarily send statements at the same time every month. Statements are due upon presentation. Statements are past due 30 days after the date that the statement is delivered.

WAIVER OF CONFLICTS OF INTEREST

The above-referenced matter may present potential and actual conflicts of interest between the Firm, EPD and you. This portion of this letter is to confirm your informed written consent to the representation and waiver of conflicts.

LUCE FORWARD
Luce, Forward, Hamilton & Scripps LLP



As you know, I personally have represented you, your family and your affiliated persons on various legal matters. In addition, I have longstanding personal and professional relationships with you and EPD.

The above-described matter may present potential or actual conflicts of interest between EPD and you personally, because although currently aligned it is possible that your interests may in the future diverge. In addition, the matter may present potential or actual conflicts of interest between EPD and me personally, because my family trust is an investor with EPD, although those personal interests may currently be aligned with representing you and EPD in the present dispute, it is possible that this may change in the future.

The California Rules of Professional Conduct and other laws generally prohibit an attorney from accepting representation in which the interests of the client and the attorney, or the interests of current and former clients may or do conflict, unless the attorney receives informed written consent. Rule 3-310 (a complete copy of which is attached to this letter), provides that an attorney "shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client" unless various requirements are met, including advice of separate counsel and informed written consent. Rule 3-310 (also attached), provides in pertinent part as follows:

"... (C) A member shall not, without the informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter. ...

(E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment. ..."

We strongly recommend that you discuss with an independent attorney of your own choosing all possible actual and potential conflicts of interest with regard to the proposed

LUCE FORWARD
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Mr. Jerrold S. Pressman
EPD Investment Co., LLC
February 26, 2010
Page 5

representation, and whether to sign this agreement. You have advised us that you have already done so, and will do so again after receiving this letter. By signing this agreement, you and EPD each:

(1) acknowledge having had an adequate opportunity to consult with independent legal counsel, and represent that you have done so;

(2) consent to our representation of EPD and Jerrold Pressman individually as provided in this agreement;

(3) waives any right to claim we should have been or should be prevented from representing EPD or any of the Pressman Affiliates; and

(4) EPD acknowledges that if conflicts arise among clients and the clients do not resolve them, we may need to withdraw from representing EPD, which may result in EPD having to retain separate counsel to handle matters.

If the Firm represents EPD, potential or future conflicts of interest may arise including, EPD or its members may in the future have opposing views with regard to the handling of the current litigation, as well as any actions taken now, in the past or in the future by the current management. The Firm makes no representations or warranties to EPD with respect to the conduct of pending action, nor does the Firm predict or guarantee any particular outcome with respect to the litigation.

The consent given in this letter agreement applies to all corporate, transactional and litigation matters as to which we are asked to represent EPD. This consent also applies to all matters substantially related to the litigation matter specifically described, any related proceedings, as well as all other legal matters arising out of our representation of EPD.

The Firm advises and strongly encourages both you and EPD to seek the advice of independent counsel of its choice to review the terms of this letter and to advise you and EPD whether your or it should sign the consent and waiver form below, to explain to you and EPD the legal consequences of signing the consent and waiver form, and to advise you EPD whether each or both of you should employ independent counsel of your choice rather than have the Firm represent both you and EPD as legal counsel. Naturally, if either you or EPD, or both, choose to utilize independent counsel, the Firm will cooperate fully with such counsel in all respects, to the maximum extent permitted by our ethical obligations.

LUCE FORWARD
LUCE, FORWARD, HAMILTON & SCRIPPS LLP



You and EPD should understand the disadvantages that may result from having a firm represent you in a matter where the family an individual lawyer in the firm has a separate economic relationship with one of the clients. Whenever a lawyer has personal or individual interests that may be similar or related to issues in dispute in a court proceeding, there is a risk that the personal interests of the attorney could take precedence over the interests of one or more of the clients, or that the attorney might put his personal interests ahead of the interests of either or both clients. Moreover, circumstances may arise in which the interests actually conflict, and either the lawyer or the client may choose or be required to discontinue the representation.

In addition, you and EPD should understand the disadvantages that may result from having one firm represent more than one client in a single matter. First, whenever a lawyer represents more than one client in the same matter, there is a risk that the interests of the group or one particular client could take precedence over the interests of one or more other individual clients, or that the attorney might put certain of the joint clients' interests ahead of others. Moreover, circumstances may arise in which joint clients' interests conflict, thus preventing a lawyer from serving all equally.

Second, lawyers have an obligation to follow the instructions of each of our clients. If any two or more of our clients give us inconsistent instructions, we cannot follow one client's instructions without violating the other client's instructions. Inconsistent instructions may require us to withdraw from representing EPD. If we withdraw from representing EPD, EPD will have to engage new counsel and will incur additional expense for legal representation. Therefore, joint clients need to agree on the instructions to us or need to have a mechanism to resolve disputes that may arise between or among them about instructions to us.

Third, under the "joint client exception" to the attorney-client privilege, communications with one client may not be privileged from disclosure to a joint client on the same matter. In addition, each client may have the right to know the substance of communications we have about a matter with each of the other clients we jointly represent in a matter. If each client we jointly represent in a matter had separate counsel, those lawyers would not have any obligation to share communications (and may have a duty not to share communications without client consent). The prospect of having communications shared with other clients we jointly represent in a matter may cause one or more clients to be less candid with us than they would be with separate counsel, and such reticence could impair our ability to represent some or all of the joint clients in a matter.

Fourth, although you and EPD view their interests as aligned now, they could have conflicting interests in the future. Clients could disagree about facts, dispute how to proceed, or dispute who is responsible for or will benefit from potential results of a matter. If clients do not

LUCE FORWARD
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Mr. Jerrold S. Pressman
EPD Investment Co., LLC
February 26, 2010
Page 7

resolve such a dispute and it affects our engagement, we would have to resolve the conflict by withdrawing from representing EPD.

Fifth, if any joint client were ever to sue another joint client about something within the subject matter of our engagement, the parties to that dispute may not be able to invoke the attorney-client privilege to avoid disclosing communications they had with us about the subject matter of our joint representation.

To provide predictability about what will happen if we need to withdraw from representing one of the two clients because of a future conflict of interest, you and EPD are agreeing that, in such circumstances, we will withdraw from representing EPD. If at any time we cease to represent EPD for any reason, we may continue to represent you individually, if you so chose. In addition, we may continue to represent some or all of your affiliates who desire us to do so, and EPD agrees not to seek to disqualify us or any of our attorneys from representing your individually or any of your affiliates in any matters, notwithstanding any adversity that may develop between you.

Notwithstanding any other provision, by signing and returning this letter you agree that if, for any reason, any circumstances arise in the future that in our sole judgment would in any way compromise the interests of EPD or you (or any of your affiliates), we may withdraw from representing EPD, and continue to represent you individually. Under no circumstances will EPD ever seek to disqualify us from representing Jerrold Pressman, any affiliates or any other clients.

In addition, to the maximum extent allowed by applicable law, EPD waives the joint client exception to the attorney-client privilege, and agree that any communications between us and Jerrold Pressman or any affiliates with respect to any legal matters, whether or not they involve EPD, will remain subject to the attorney-client privilege of Jerrold Pressman individually, and that under no circumstances will EPD have the right to compel their disclosure.

By signing and returning this agreement, you and EPD each grant your informed written consent to the representation set forth above.

TERMINATION OF REPRESENTATION

We anticipate a successful and mutually satisfying relationship. Nevertheless, you and EPD each have the right to terminate any lawyer-client relationship at any time. We likewise may withdraw for any reason so long as we comply with the rules governing withdrawals. In addition, there are laws and rules that require an attorney to withdraw from representing a client

LUCE FORWARD

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Mr. Jerrold S. Pressman
EPD Investment Co., LLC
February 26, 2010
Page 8

under certain circumstances. We will withdraw from representation if required to do so by those rules or other applicable laws. A termination by either party should be made in writing.

While we do not expect that any future event will cause us to withdraw, one of the reasons we could do so is a client's breach of either this agreement or the obligation to pay our fees or expenses. It is our policy to discontinue work pending withdrawal if a client becomes delinquent in payment and to withdraw if the delinquency is not promptly resolved.

A court would require a written statement consenting to the withdrawal or substitution of a lawyer who has formally made an appearance for a client. The same may be true under the rules of other tribunals. Each party agrees to provide the other, on request after notice of termination, a signed statement consenting to withdrawal or substitution. If the client does not comply with this agreement, we have the right to ask the court or tribunal's permission to withdraw.

Subject to applicable law, you and EPD agree to pay for our services and expenses up to the time of any termination, and agrees to pay for our services and expenses required to protect its interests through the time of and for the purpose of transition of any legal matter to other counsel.

Any file we create or maintain for this engagement is the client's file. If you wish to have files or specific materials delivered after termination of our services, you should so advise us. Otherwise, all materials will be transferred to our archives and ultimately will be destroyed according to our records retention policy. In certain circumstances, we have the right not to release our work product to anyone, including a client, and this agreement does not waive that right. To the maximum extent allowed by applicable law, EPD waives the right to compel disclosure of any attorney work product, or of any client files of Jerrold Pressman or any affiliated persons.

DISPUTE RESOLUTION

We do not anticipate having any disagreements about the quality, cost, or appropriateness of our services, but if any concerns about these matters arise, please notify us immediately. We would endeavor to resolve any disagreements in a fair and amicable manner. If it is not possible to resolve a dispute by agreement, you and we agree that all disputes, controversies or claims of any nature whatsoever, including but not limited to those relating to the quality or appropriateness of our services, alleged legal malpractice, conflict of interest, or breach of fiduciary duty, shall be resolved by confidential binding arbitration before a retired judge at JAMS (www.jamsadr.com) in Santa Monica, California, in accordance with its streamlined and

Case 2:12-ap-02424-ER Doc 73-1 Filed 09/26/13 Entered 09/26/13 16:21:12 Desc Main Document Page 65 of 74

LUCE FORWARD

Luce, Forward, Hamilton & Scripps LLP

Mr. Jerrold S. Pressman
EPD Investment Co., LLC
February 26, 2010
Page 9

expedited rules. The parties choose arbitration because it is usually less expensive and quicker than litigation and will preserve all parties' privacy.

The place of the confidential binding arbitration will be in Santa Monica, California. Arbitration proceedings may be commenced by any party by giving all other interested parties written notice thereof, and the proceedings shall be governed by the California Arbitration Act (Code Civ. Proc., § 1281 et seq.). The arbitrator must decide all disputes in accordance with that Act and the most expedited rules of JAMS. The arbitrator shall have power to decide all matters, including arbitrability and legal questions raised by pleading or summary judgment motions. The arbitrator's award shall be final and binding, and a judgment upon the award may be entered and enforced by any court of competent jurisdiction.

The arbitrator must be mindful of the parties' shared desire to avoid the expense of broad discovery typically allowed in civil litigation. We understand that choosing arbitration is a form of waiving a trial by jury.

Notwithstanding the agreement to arbitrate, fee disputes may first be submitted to the California State Bar's program for arbitration of fee disputes pursuant to Business and Professions Code section 6200 et seq. If a fee dispute arises, we will provide information about the State Bar program. If the Bar panel declines to hear a fee dispute, or if either party rejects the Bar panel's decision on any fee dispute, then instead of the right to trial mentioned in the statute, the fee dispute will be resolved by private arbitration as set forth above. All parties understand and waive the rule in Alternative Systems, Inc. v. Carey (1998) 67 Cal.App.4th 1034 that an attorney and a client cannot agree to arbitrate fee disputes until a dispute has arisen. If that rule is applied to any fee dispute under this agreement, EPD and we agree that the remainder of this arbitration agreement will remain in effect and must be enforced with respect to all other disputes or claims.

WAIVER AND RELEASE

As you know, certain investors have threatened to assert various claims against EPD and anyone involved with the company, including its lawyers and other investors. Accordingly, as additional consideration to induce the Firm to agree to represent you, EPD hereby fully, completely, absolutely and unconditionally waives, releases, discharges and holds harmless the Firm, myself, my family trust, and all of the Firm's past and present partners, employees, agents, attorneys and assigns, whether acting in their representative or individual capacities, from any and all causes of action, rights, obligations, damages and claims of any kind or nature whatsoever, at law and in equity, including without limitation all claims for legal malpractice,

LUCE FORWARD

Luce, Forward, Hamilton & Scripps LLP



conflict of interest, or breach of fiduciary duty, and all claims in any way arising out of or relating to any prior representation of EPD.

EPD shall defend, indemnify and hold the Firm harmless from and against any and all claims asserted by EPD, any court appointed receiver or trustee of EPD, or any current, future or former director of EPD.

It is EPD's intention to fully, finally and forever settle, release and resolve all claims, regardless of whether known or unknown, foreseen or unforeseen, suspected or unsuspected, vested or contingent, accrued or unaccrued. The releases given herein shall be and remain in effect to their full extent, notwithstanding the discovery or existence of any additional or different facts or damages. EPD knowingly and voluntarily waives the provisions of California Civil Code section 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

We once again strongly recommend that EPD discuss with an independent attorney of your own choosing all of the matters discussed above, including the nature and effect of the releases provided in this section of the letter, and whether to sign this agreement. As previously noted, you have advised us that you have already done so, and after receiving this letter will review all of the above with independent counsel before signing and returning this letter.

GOVERNING LAW

This agreement is made and shall be governed by, and construed and enforced in accordance with, the internal laws of the State of California, without regard to the conflict-of-law principles thereof, as the same apply to agreements made solely by residents of California and wholly to be performed within California.

SEVERABILITY, EFFECTIVENESS

If any part of this agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire agreement will be severable and will remain in effect.

LUCE FORWARD
LUCE, FORWARD, HAMILTON & SCRIPPS LLP



JURISDICTION AND SOLE VENUE

EPD and we agree to submit to the exclusive jurisdiction and venue in Los Angeles, California in any action or proceeding arising out of or relating to the enforcement of the arbitration provisions of this agreement or for any other purpose, agree not to bring any action or proceeding of any kind in any other court, and waive any defense of inconvenient forum to the maintenance of any action or proceeding in Los Angeles, California.

CONFIDENTIALITY

The attorney-client privilege encourages candid discussions in which the facts and law about legal engagements can be exchanged without reservation. Generally, communications made in the course of our representation are protected by that privilege against others' efforts to compel disclosure. The client may lose the protection of the attorney-client privilege if it discloses what it communicates to us or what we communicate to it to persons other than those who need to know the information in order to implement our advice. Generally, the law does not provide privileges for communications with other professional service providers, including accountants and financial and business consultants. We therefore recommend that you guard the attorney-client privilege closely and consult with us before disclosing confidential communications to anyone else.

APPROVAL

Again, we thank you for asking us to represent you. We welcome the opportunity to serve, and look forward to a long and beneficial relationship.

If you have any questions concerning our fees and expenses arrangements or procedures, or the scope of the legal services we will provide, we will be pleased to respond. Again, before signing this agreement, you and EPD are free to consult with other counsel about the wisdom of agreeing to any term of this agreement, including arbitration.

If you find that this agreement accurately states the terms of our engagement, please sign and return the enclosed copy of this agreement in the enclosed return envelope. This agreement contains the entire agreement of the parties, and no modification of the terms of this agreement will be effective unless set out in writing and signed by the Firm, EPD and you.

If you and EPD are both willing to waive the conflicts discussed in this letter, the Firm will agree to the representation. The consent given in this letter agreement applies to the matters

LUCE FORWARD

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Mr. Jerrold S. Pressman
EPD Investment Co., LLC
February 26, 2010
Page 12

described above. This consent also applies to all other legal matters arising out of or substantially related to the matters specifically described.

The Firm once again advises and strongly encourages you and EPD to seek the advice of independent counsel of your choice to review the terms of this letter, to advise you whether it should sign the consent and waiver form below, and to explain the legal consequences of signing the consent and waiver form. We are happy to answer any questions you may have concerning our representation or this requested consent.

If you and EPD understand and agree to waive the foregoing conflicts, please sign and return this letter at your very earliest convenience.

Very truly yours,

John C. Kirkland
of
Luce, Forward, Hamilton & Scripps LLP

**ACCEPTANCE AND APPROVAL**

Each of the clients named below hereby accept and approve the foregoing engagement and fee agreement, release the claims, and waive the conflicts described above.

______________________
Jerrold S. Pressman

EPD INVESTMENT CO., LLC

By:______________________
Jerrold S. Pressman
Managing Member