# EXHIBIT V

2:13-CV-08768-SJO

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

---

In re EPD INVESTMENT COMPANY, LLC,
and JERROLD S. PRESSMAN

---

JOHN C. KIRKLAND,

Appellant,

v.

JASON M. RUND, Chapter 7 Trustee,

Appellee.

---

On Appeal from the United States Bankruptcy Court for the
Central District of California, Bankruptcy Case No. 2:10-bk-62208-ER.

---

# APPELLANT'S OPENING BRIEF

---

Jeffrey I. Golden (Bar No. 133040)
Autumn D. Spaeth (Bar No. 208707)
**Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone: (714) 966-1000
Facsimile: (714) 966-1002
Email: jgolden@wgllp.com
Email: aspaeth@wgllp.com

*Attorneys for Appellant John C. Kirkland*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........ 1

II. BASIS FOR APPELLATE JURISDICTION ........ 2

III. STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW ........ 2

A. Issue Presented ........ 2

B. Standard of Appellate Review ........ 2

IV. STATEMENT OF THE CASE ........ 3

V. FACTUAL BACKGROUND ........ 5

A. The Bankruptcy Filings ........ 5

B. The Adversary Proceeding ........ 5

VI. ARGUMENT ........ 9

A. Arbitration Clauses Must Be Strictly Enforced Unless Doing So Conflicts with the Underlying Purposes of the Bankruptcy Code ........ 10

1. The Federal Arbitration Act Creates a Strong Presumption in Favor of Arbitration ........ 10

2. The Bankruptcy Court Erred By Exercising its Discretion to Not Enforce the Arbitration Provisions Because the Trustee Failed To Meet His Burden of Proving There Was an Inherent Conflict with the Bankruptcy Code ........ 11

a. Non-Core Claims Must Be Arbitrated ........ 12

b. The Core Designation is Inappropriate, Irrelevant and Misleading In This Adversary Proceeding ........ 17

c. Arbitration Does Not Inherently Conflict with the Purposes of the Bankruptcy Code: *Bellingham* ........ 18

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 3 of 36 Page ID #:30

d. The Cases Relied Upon by the Bankruptcy Court Are Distinguishable .......... 20

3. The Trustee's Additional Arguments Are Insufficient to Override the Strong Presumption in Favor of Enforcing Arbitration Provisions .......... 26

VII. CONCLUSION .......... 27

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) .......... 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ackerman v. Eber (In re Eber)*,
687 F.3d 1123 (9th Cir. 2012) .......... 12

*Bezanson v. Consolidated Constructors & Builders*,
156 B.R. 704 (B.ME 1993) .......... 22, 23, 25, 27

*Boone v. United States*,
944 F.2d 1489 (9th Cir. 1991) .......... 2

*Britton v. Co-Op Banking Grp.*,
916 F. 2d 1405 (9th Cir. 1990) .......... 2

*Dean Witter Reynolds Inc. v. Byrd*,
470 U. S. 213 (1985) .......... 25

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) .......... 10

*Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*,
702 F.3d 553 (9th Cir. 2012) .......... 1, 5, 13, 14, 17, 18, 20, 21, 28

*Gandy v. Gandy (In re Gandy)*,
299 F.3d 489 (5th Cir. 2002) .......... 2, 20, 21

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) .......... 10, 11, 12

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) .......... 14

*In re Cooley*,
362 B.R. 514 (N.D. Ala. 2007) .......... 11, 16, 22

*In re Rarities Group, Inc.*,
434 B.R. 1 (D. Mass. 2010) .......... 11, 21, 24, 25

*In re Saigon Plaza Association, LLC v. California Mortgage & Realty, Inc.*,
2007 WL 3357641, *4 (Bankr. N.D. Cal. 2007) .......... 20

*In re Shores of Panama, Inc.*,
387 B.R. 864 (N.D. Fla. 2008) .......... 23

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 5 of 36 Page ID #:58

*In re Thorpe Insulation*,
671 F.3d 1011 (9th Cir. 2012) ................................ 2, 10, 12, 14, 15, 16, 17

*Insurance Co. of North America v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*,
118 F.3d 1056 (5th Cir. 1997) ....................................................17

*MBNA Am. Bank v. Hill*,
436 F.3d 104 (2nd Cir. 2006) ....................................................16

*MCI Telecommunications Corp., v. Gurga (In re Gurga)*,
176 B.R. 196 (9th Cir. BAP 1994) ....................................................16

*Moses H. Cone Mem'I Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 24 (1983) ....................................................10, 25

*Shearson/American Express, Inc. v. McMahon*,
482 U.S. 220 (1987)........................................................ 10, 11, 12, 16

*Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*,
504 F.3d 775 (9th Cir. 2007) ....................................................18

*Stern v. Marshall*, 131 S.Ct. 2594 (2011)......................................13, 14, 18

*Trinity v. Momentum Telecommunications, Inc.*,
2012 WL 1067673 (E.D. Tenn. 2012)..................................................27

*Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.)*, 479 F.3d 791 (11th Cir. 2007)................16

**STATUTES**

11 U.S.C. § 510 ....................................................21

11 U.S.C. § 524(g) ....................................................15, 16

11 U.S.C. § 542 ....................................................21

11 U.S.C. § 542(b) ....................................................22

11 U.S.C. § 547 ....................................................21

11 U.S.C. § 548 ....................................................21

11 U.S.C. § 550 ....................................................21

15 U.S.C. § 10(b) ....................11

15 U.S.C. § 771(2) ....................11

15 U.S.C. § 78j(b) ....................11

15 U.S.C. §§ 1-7 ....................11

18 U.S.C. § 1961 ....................11

28 U.S.C. § 1334(a) ....................12

28 U.S.C. § 157 ....................12

28 U.S.C. § 157(b)(1) ....................14

28 U.S.C. § 157(b)(2)(B) ....................12

28 U.S.C. § 157(b)(2)(C) ....................12, 13

28 U.S.C. § 157(b)(2)(H) ....................12

28 U.S.C. § 157(c)(1) ....................13

28 U.S.C. § 158(a)(1) ....................2

28 U.S.C. § 158(c)(1) ....................2

9 U.S.C. § 1 ....................10

9 U.S.C. § 16(a)(1)(B) ....................2

9 U.S.C. § 2 ....................10

9 U.S.C. § 3 ....................10

9 U.S.C. § 4 ....................10

Securities Act of 1933 § 12(2) ....................11

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 8001 ....................2

Fed. R. Bankr. P. 8002 ....................2

## I. INTRODUCTION

Due to the strong federal policy in favor of arbitration as evidenced by the Federal Arbitration Act, the Ninth Circuit permits a bankruptcy court to exercise its discretion to deny enforcement of applicable arbitration provisions *only* where the party opposing arbitration proves that it conflicts with the underlying purposes of the Bankruptcy Code. In all other circumstances, the Ninth Circuit has held that applicable arbitration provisions must be enforced. Here, the Trustee completely failed to establish that arbitration conflicts with the purposes of the Bankruptcy Code and the bankruptcy court ("Bankruptcy Court") erred by accepting the Trustee's conclusory statements that it does.

The Bankruptcy Court declined to enforce applicable arbitration provisions relying on a superficial analysis that enforcing arbitration would conflict with the policies of centralizing resolution of bankruptcy disputes and protecting parties from piecemeal litigation. Had the court analyzed the facts of this case in detail at the original hearing, it should have come to a different conclusion. These are matters in which a bankruptcy court can enter a final judgment. The Appellant, a non-creditor, does not consent to bankruptcy court jurisdiction and has filed a jury trial demand. As a result, after *Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012), the district court will conduct the trial of the fraudulent conveyance claims against Appellant. It can not be said then, that because this case would proceed before an arbitrator rather than the Bankruptcy Court, that enforcement of applicable arbitration provisions inherently conflicts with the Bankruptcy Code's purpose to centralize resolution of bankruptcy disputes in the bankruptcy courts or protect parties from piecemeal litigation.

Because the Bankruptcy Court's decision was not supported by the facts of this case or the law upon which it was decided, the Bankruptcy Court's decision

declining to enforce the arbitration provisions should be reversed. The Bankruptcy Court had *no* discretion to deny arbitration.

## II. BASIS FOR APPELLATE JURISDICTION

United States District Courts have jurisdiction over appeals of final orders entered by Bankruptcy Courts. *See* 28 U.S.C. § 158(a)(1). On November 5, 2013, the Bankruptcy Court entered an order denying the appellant's motion to compel arbitration, which under the Federal Arbitration Act ("FAA"), is immediately appealable. *See* 9 U.S.C. § 16(a)(1)(B). Kirkland timely appealed on November 18, 2013, by filing a notice of appeal and an election for the appeal to be heard in this Court. *See* 28 U.S.C. § 158(c)(1); Fed. R. Bankr. P. 8001, 8002.

## III. STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW

### A. Issue Presented

Whether the Bankruptcy Court erred in exercising its discretion to decline to enforce valid and applicable arbitration provisions in an action (1) to disallow or equitably subordinate a claim where no claim was filed by the defendant, and (2) to avoid and preserve a fraudulent transfer against a non-creditor defendant who did not consent to the Bankruptcy Court's entry of a final order and who has asserted his Seventh Amendment right to a jury trial.

### B. Standard of Appellate Review

"Whether a bankruptcy court has discretion to deny a motion to compel arbitration is a question of law that we review de novo." *In re Thorpe Insulation*, 671 F.3d 1011, 1019-20 (9th Cir. 2012), *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 494 (5th Cir. 2002); *See also Britton v. Co-Op Banking Grp.*, 916 F. 2d 1405 (9th Cir. 1990) (issues of law are reviewed de novo). To the extent that the issue also requires factual findings, mixed questions of fact and law are also reviewed *de novo*. *See Boone v. United States*, 944 F.2d 1489, 1492 (9th Cir. 1991).

## IV. STATEMENT OF THE CASE

John C. Kirkland ("Kirkland") is an attorney who previously represented EPD Investments Company, LLC ("EPD"), and Jerold S. Pressman ("Pressman"), its principal. Kirkland was also an investor in EPD. In 2010, an involuntary chapter 7 bankruptcy petition was filed against EPD. Two months later, an order for relief was entered. Pressman subsequently filed a chapter 7 bankruptcy petition and his individual case was substantively consolidated with EPD's bankruptcy case. Jason Rund serves as the chapter 7 trustee (the "Trustee") of the substantively consolidated estate. The proof of claim filing deadline was set for December 12, 2011.

In 2013, the Trustee filed a second amended complaint (the "Complaint") against Poshow Ann Kirkland, individually and as trustee of The Bright Conscience Trust dated September 9, 2009 (the "Trust"), and Kirkland. As to Kirkland, the complaint seeks (1) disallowance or equitable subordination of any claim filed by Kirkland (though Kirkland has not filed a claim) and (2) avoidance and recovery of payments that EPD is alleged to have made to a creditor of Kirkland for Kirkland's benefit on the basis that they were actually or constructively fraudulent transfers. *See* Appellant's Appendix of Exhibits ("App."), Ex. 3.

Because the conduct giving rise to the claims stems either from Kirkland's services as an attorney or his status as an investor, both of which are governed by agreements with broad arbitration provisions, Kirkland sought to compel arbitration. *Id.* at Ex. 7. Specifically, in July 2013, Kirkland filed a motion with this Court to withdraw the reference to the Bankruptcy Court and to compel arbitration. *Id.* at Ex. 5. On that same day and because of the motion filed in this Court, Kirkland filed a motion for a stay of the adversary proceeding with the Bankruptcy Court. *Id.* at Ex. 4. In September 2013, this Court denied the motion

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 11 of 36 Page ID #:64

to withdraw the reference and denied the request to compel arbitration as moot. *Id.* at Ex. 6.

Shortly thereafter, Kirkland filed a motion in the Bankruptcy Court to compel arbitration and to stay the adversary proceeding. *Id.* at Ex. 7. The Trustee opposed the motion, arguing that the Bankruptcy Court should exercise its discretion to deny the request to compel arbitration based on the Trustee's allegations that arbitration would conflict with the Bankruptcy Code's goal of having bankruptcy law issues decided in bankruptcy courts, centralizing resolution of bankruptcy disputes, and protecting the parties from piecemeal litigation. The Trustee did not argue that the arbitration provisions were not otherwise applicable. *Id.* at Ex. 9. The Bankruptcy Court agreed with the Trustee and denied the motion to compel arbitration. *Id.* at Ex. 12. Kirkland timely appealed the order. *Id.* at Ex. 13.

In order to maintain the status quo pending this appeal, Kirkland filed a motion with the Bankruptcy Court for a stay pending appeal. *Id.* at Ex. 14. Before the hearing, Kirkland filed his answer to the Complaint in which he did not consent to the entry of a final order or judgment by the Bankruptcy Court and demanded a jury trial. *Id.* at Ex. 15. The Bankruptcy Court granted the motion for a stay pending appeal over the Trustee's objection, noting that since the Bankruptcy Court had ruled on the motion to compel arbitration, Kirkland had filed an answer in which he demanded a jury trial and did not consent to entry by the Bankruptcy Court of a final order. Because these events presented the possibility that this Court would need to hear the matters instead of the Bankruptcy Court, the Bankruptcy Court determined there was a likelihood of success on appeal. It also determined that there was a serious legal issue involved in this appeal. As a result, it granted the motion for a stay pending the outcome of this appeal. *Id.* at Ex. 18, 19.

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 12 of 36 Page ID #:65

Poshow Ann Kirkland and the Trust also unsuccessfully sought to compel arbitration of the claims against them and have filed a related appeal pending as District Court Case No. 2:13-cv-09023-SJO. The Bankruptcy Court also stayed prosecution of the claims against them pending the outcome of their appeal.

## V. FACTUAL BACKGROUND

### A. The Bankruptcy Filings

In December 2010, creditors filed an involuntary chapter 7 bankruptcy petition against EPD. *Id.*, Ex. 3.[1] Approximately two months later, the Bankruptcy Court entered the order for relief and the Trustee was appointed. In February 2012, Pressman, EPD's principal, filed his own chapter 7 bankruptcy petition. The Court substantively consolidated Pressman's bankruptcy case with EPD's in June 2012. *Id.*

### B. The Adversary Proceeding

In 2012, the Trustee commenced an adversary proceeding against Poshow Ann Kirkland, individually and as trustee of the Trust, and Kirkland. *Id.*, Ex. 1. The Trustee alleged that Pressman formed EPD to provide Pressman with corporate protection and to prepare for Pressman's retirement. *Id.* at 4. The Trustee contended that Pressman caused EPD to borrow funds from third parties, making misrepresentations in the process, and then used those funds to repay earlier lenders or to benefit other entities owned by Pressman. *Id.* The Trustee alleged that EPD was insolvent on a balance sheet basis starting in at least December 2003 and that it operated as a Ponzi scheme from its formation. *Id.* at 7. With respect to Kirkland, the Trustee contended that Kirkland, a lawyer, served as outside counsel to Pressman and his various business entities, including EPD, starting in 2003. In addition, the Trustee contended that Kirkland loaned EPD

---

[1] In citing to the Complaint, Kirkland is not admitting the accuracy of any of the allegations contained in it but is instead referencing it so that the Court has a full understanding of the allegations giving rise to this appeal.

more than $150,000, secured by EPD's assets, and then assigned his rights in that loan to the Trust, which was formed in September 2009. *Id.* at 9. Following that assignment, the Trust recorded a UCC-1 to perfect its lien against the Debtor's assets. *Id.*

In December 2012, the Trustee amended the complaint, asserting a number of causes of action against Kirkland, including (1) aiding and abetting breach of fiduciary duty, (2) fraudulent concealment, (3) breach of fiduciary duty, and (4) fraud upon the Court. It also sought disallowance of the Trust's claims and avoidance and recovery of fraudulent transfers against all of the defendants. *Id.*, Ex. 2. On stipulation of the parties, the Trustee amended the complaint a second time in May 2013. The Complaint eliminated the first four causes of action that were brought solely against Kirkland and amended the rest of the claims. *Id.*, Ex. 3. The Trustee amended the fifth cause of action for disallowance of claims to include an alternative request for equitable subordination and to impute Kirkland's alleged misconduct to the Trust. *Id.* The Trustee sought disallowance or equitable subordination not just of the Trust's proofs of claim, but also any claims of Kirkland against the bankruptcy estate, despite the fact that Kirkland has not filed any. *Id.* In addition, the Complaint seeks to avoid and recover a UCC-1 filed by the Trust and approximately $104,852.82 in payments made by EPD on behalf of the defendants between October 2008 and December 2009 as fraudulent transfers made with either active or constructively fraudulent intent, as permitted by applicable California law. The Complaint seeks to avoid and recover a portion of these same funds ($82,540.32, to be precise) as fraudulent transfers under section 548 of the Bankruptcy Code. The defendants' deadline to respond to the Complaint was extended on several occasions.

Because the claims against the defendants stemmed from engagement letters or various loan agreements, all of which contained broad arbitration provisions and

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 14 of 36 Page ID #:67

were claims in which Kirkland intended to invoke his right to a jury trial and that involved non-bankruptcy federal law, Kirkland filed a motion to withdraw the reference to the Bankruptcy Court in order to avoid unnecessary litigation. *Id.*, Ex. 5. Kirkland simultaneously filed a motion in this Court seeking to compel arbitration. At the same time, he filed a motion in the Bankruptcy Court to stay further prosecution of the Complaint. *Id.*, Ex. 4. By minute order entered on September 25, 2013, this Court denied the motion to withdraw the reference and, as a result, denied the motion to compel arbitration as moot. *Id.*, Ex. 6.

The next day, Kirkland filed a motion in the Bankruptcy Court to compel arbitration and to stay prosecution of the adversary proceeding. *Id.*, Ex. 7. Poshow Ann Kirkland and the Trust joined in the motion. *Id.*, Ex. 8. The motion contended that the claims against Kirkland arose out of his relationships with EPD and Pressman, which were governed by written agreements with broad arbitration provisions that require private binding arbitration with JAMS.[2] The motion contended that the claim for disallowance of proof of claim was a non-core matter because Kirkland had not filed a claim in the bankruptcy case that could be disallowed and, because it was non-core, was subject to the mandatory arbitration provision. While acknowledging that the fraudulent transfer claims were core matters, the motion contended that arbitration would not conflict with the underlying purposes of the Bankruptcy Code, so that arbitration was required. *Id.*,

---

[2] The relevant agreements were attached to the motion to compel arbitration. As an example, there is a funding agreement between the parties that provides as follows:

> Any and all disputes, controversies and claims in any way arising out of, relating to, or connected with this Agreement or any of the Transaction Documents, or involving any of the parties hereto, including, but not limited to, all issues of arbitrability, timeliness, existence of agreement to arbitrate, waiver of right to arbitrate, and all other preliminary issues, will be resolved by final and binding arbitration before a retired judge at JAMS or its successor in Santa Monica, California, in accordance with its most expedited and streamlined rules and procedures.

*Id.*, Ex. 7 at (Ex. D 3-4).

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 15 of 36 Page ID #:68

Ex. 7. The Trustee opposed the motion but, in doing so, never took issue with Kirkland's position that the arbitration provisions were applicable and enforceable. *Id.*, Ex. 9, Ex. 11 at 8 of 31. Instead, the Trustee contended that the Bankruptcy Court should exercise its discretion to deny arbitration because it conflicted with the underlying purposes of the Bankruptcy Code to provide a centralized resolution of pure bankruptcy issues and protect creditors and reorganizing debtors from piecemeal litigation and because of the undisputed power of a bankruptcy court to enforce its own orders. *Id.*, Ex. 9, at 11.

In denying the motion to compel, the Bankruptcy Court found that the claims against Kirkland were core proceedings and that the only issue before it was whether it should exercise its discretion to decline to enforce the arbitration provisions on the basis that arbitration conflicted with the underlying purposes of the Bankruptcy Code. *Id.*, Ex. 11 at 8-9 of 31. The Bankruptcy Court found that there was a conflict "with the purposes of the Code of centralizing resolution of bankruptcy disputes and protecting parties from piecemeal litigation." *Id.*, Ex. 11, at 9 of 31. It entered its order denying the motion on November 15, 2013. *Id.*, Ex. 12. Kirkland filed a notice of appeal three days later. *Id.*, Ex. 13.

In order to preserve the status quo pending appeal and avoid potentially unnecessary litigation, Kirkland filed a motion for a stay pending appeal, noting that stays pending appeals of orders denying arbitration are generally appropriate as long as the motion to compel presented a "'substantial,' non-frivolous legal issue as to the arbitrability of the claims at issue." *Id.*, Ex. 14, at 3. Prior to the hearing on the motion for a stay, Kirkland filed his answer to the Complaint, invoking his Seventh Amendment right to a jury trial and declining to consent to the Bankruptcy Court's entry of a final order or judgment in the matter. *Id.*, Ex. 15. The Trustee opposed the motion. *Id.*, Ex. 16.

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 16 of 36 Page ID #:65

After reviewing the motion and Kirkland's answer, the Bankruptcy Court granted the stay. It noted that although it had been concerned of the risk of conflicting results regarding the issue of whether EPD had operated a Ponzi scheme, Kirkland's filing of an answer in which he asserted his Seventh Amendment right to a jury trial impacted the analysis. Specifically, it noted as follows:

> [S]ince Kirkland states that he does not consent to a jury trial before this Court, this matter will be decided by the District Court if it is determined that a jury trial is warranted herein. Consequently, since a bankruptcy court may not be deciding the fraudulent transfer issues in this action, arbitration may not conflict with the underlying Bankruptcy Code purpose of having bankruptcy courts decide bankruptcy issues, and there is a likelihood that Kirkland will succeed on appeal. The Court notes that this situation did not exist at the time the Court decided the motion to compel arbitration, since Kirkland's answer in which he demands a jury trial was not filed until 12/6/13.

Tentative Ruling, *Id.*, Ex. 18, at 35 of 41. The Bankruptcy Court went on to note that

> There is no published decision by the Ninth Circuit or any other reviewing court in this circuit which establishes that arbitration of fraudulent transfer claims and objections to claims conflict with the underlying purpose of the Bankruptcy Code. . . . Consequently, this Court finds that the first factor for a stay is satisfied also on the ground that the Arbitration Motion was not frivolous, but presented a serious legal issue to be resolved on appeal . . . .

*Id.* The order granting the stay was entered on January 17, 2014. *Id.*, Ex. 19.

## VI. ARGUMENT

The Bankruptcy Court erred in exercising its discretion to decline to enforce valid and applicable arbitration provisions in an action (1) to disallow or equitably subordinate a claim where no claim was filed by the defendant, and (2) to avoid and preserve a fraudulent transfer against a non-creditor defendant who did not consent to the Bankruptcy Court's entry of a final order and who has asserted his Seventh Amendment right to a jury trial. Because the Trustee has not challenged

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 17 of 36 Page ID #:70

the arbitration provisions, their validity and application to this adversary proceeding is conceded and are valid and enforceable.

**A. Arbitration Clauses Must Be Strictly Enforced Unless Doing So Conflicts with the Underlying Purposes of the Bankruptcy Code**

**1. The Federal Arbitration Act Creates a Strong Presumption in Favor of Arbitration**

The Federal Arbitration Act ("FAA") creates a strong presumption in favor of arbitration and as such, valid and applicable arbitration provisions must be enforced unless doing so conflicts with the underlying purpose of the Bankruptcy Code. The FAA, 9 U.S.C. § 1 *et seq*., establishes "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'I Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA also provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The strong federal policy in favor of arbitration agreements mandates that courts enforce arbitration agreements according to their terms whenever possible. *See, e.g., Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221 (1985).

The FAA applies even when federal statutory claims are at issue, unless the FAA's mandate has been "overridden by a contrary congressional command." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987); *see also Continental Insurance Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),* 671 F.3d 1011, 1020 (9th Cir. 2012) ("A court's duty to 'rigorously enforce'

arbitration agreements does not diminish 'when a party bound by an agreement raises a claim founded on statutory rights.'") (*citing McMahon*). As the Supreme Court has noted: "In recent years we have held enforceable arbitration agreements relating to claims arising under the Sherman Act, 15 U.S.C. §§ 1-7; § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*.; and § 12(2) of the Securities Act of 1933, 28 15 U.S.C. § 771(2)." *Gilmer*, 500 U.S. at 26. "The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which the parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another statute." *In re Rarities Group, Inc.*, 434 B.R. 1, 7 (D. Mass. 2010). "Valid arbitration agreements must be enforced unless it can be determined Congress intended to create an exception to the FAA's mandate for a particular claim." *In re Cooley*, 362 B.R. 514, 519 (N.D. Ala. 2007).

### 2. The Bankruptcy Court Erred By Exercising its Discretion to Not Enforce the Arbitration Provisions Because the Trustee Failed To Meet His Burden of Proving There Was an Inherent Conflict with the Bankruptcy Code

The Bankruptcy Court erred by not enforcing the applicable arbitration provisions because the Trustee failed to meet his burden to prove there is an inherent conflict between arbitration and the Bankruptcy Code. A party opposing arbitration has the burden to prove that "Congress intended to preclude a waiver of judicial remedies for the [particular claim] at issue." *McMahon*, 482 U.S. at 227. Congress' intent is determined based on a three-factor test articulated in *McMahon*: "(1) the text of the statute; (2) its legislative history; and (3) whether an inherent

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 19 of 36 Page ID #:72

conflict between arbitration and the underlying purposes of the statute exist." *Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1129 (9th Cir. 2012). In applying the *McMahon* factors, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26.

The first two *McMahon* factors support arbitration in the bankruptcy context because "[n]either the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting." *Thorpe*, 671 F.3d at 1020; *accord Eber*, 687 F.3d at 1129. Thus, bankruptcy courts focus their analysis on the third prong of the *McMahon* test, *i.e*., whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. *See Thorpe*, 671 F.3d at 1020.

a. Non-Core Claims Must Be Arbitrated

In the Ninth Circuit, the inherent conflict analysis begins by determining whether the claims to be arbitrated are core or non-core. *See Thorpe*, 671 F.3d 1011. For this analysis, it is important to understand the nature of the jurisdiction of the bankruptcy courts. Although district courts have exclusive jurisdiction over "all cases under title 11," Congress has permitted them to refer these cases to bankruptcy judges. 28 U.S.C. §§ 157, 1334(a). What a bankruptcy court is authorized to do with a proceeding referred to it by the district court depends on whether it is a "core proceeding" or a "non-core proceeding." Under 28 U.S.C. § 157, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." Core proceedings, generally, are those that are integrally related to administration of a bankruptcy estate and, specifically, include "allowance or disallowance of claims against the estate," "counterclaims by the estate against persons filing claims against the estate," and "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(B), (C), (H).

Where a matter is not a core proceeding but "is otherwise related to a case under title 11 . . . the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). Until recently, if a matter was denominated as a core proceeding, then the bankruptcy court entered the final order in that matter. However, recent case law is changing this landscape considerably as a result of *Stern v. Marshall*, 131 S.Ct. 2594 (2011), which, essentially, held that the bankruptcy court, as a non-Article III court, lacked constitutional authority to enter a final judgment on a state law counterclaim against a non-creditor of the estate despite the fact that Congress granted such authority under 28 U.S.C. § 157(b)(2)(C).[3]

On the heels of *Stern v. Marshall*, in *Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012), the Ninth Circuit held that without consent, because there is a seventh amendment right to jury trial, bankruptcy courts do not "have the general authority to enter final judgments on fraudulent conveyance claims asserted against non-creditors to the bankruptcy estate." *Id.* at 565. Instead, "28 U.S.C. § 157(b)(2)(C).[4]

---

[3] Although it is interesting to understand the genesis of this development, it is a complex and academic area of the law that is not ultimately germane to this appeal, so is not explained here, although it is explained in detail in *Executive Benefits Ins. Agency, Inc. v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012).

[4] Although it is interesting to understand the genesis of this development, it is a complex and academic area of the law that is not ultimately germane to this appeal, so is not explained here, although it is explained in detail in *Executive Benefits Ins. Agency, Inc. v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012).

§ 157(b)(1) provides bankruptcy courts the power to hear fraudulent conveyance cases and to submit reports and recommendations to the district courts. Such cases remain in the core, and the 28 U.S.C. § 157(b)(2)(C).[5]

§ 157(b)(1) power to 'hear and determine' then authorizes the bankruptcy courts to issue proposed findings of fact and conclusions of law." *Id.* at 565-66. These findings of fact and conclusion of law are then subject to de novo review by the district court. *Id.* at 566. Although the Ninth Circuit went on to note that parties could impliedly consent to the bankruptcy court's entry of a final order in a core proceeding in which it would not otherwise have the ability to enter a final order, here, Kirkland did not consent.[6]

Before the Ninth Circuit issued its decision in *Bellingham,* it considered the issue of when to enforce arbitration provisions in bankruptcy proceedings. In *Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011 (9th Cir. 2012), the issue before the court was the enforceability of an arbitration provision that was contained in a settlement agreement between the debtor and Continental Insurance Co., its insurer. The debtor, which distributed and installed asbestos products and was facing mass asbestos-related litigation, settled a coverage dispute with Continental before the debtor filed a chapter 11 bankruptcy. *Id.* at 1014-15. During its bankruptcy case, the debtor proposed to channel all asbestos-related claims to a trust, as permitted by the Bankruptcy Code. *Id.* at 1015-16. Under its chapter 11 plan, the debtor proposed to release insurers that settled with the debtor from coverage for future claims but permitted claimants

---

[5] Although it is interesting to understand the genesis of this development, it is a complex and academic area of the law that is not ultimately germane to this appeal, so is not explained here, although it is explained in detail in *Executive Benefits Ins. Agency, Inc. v. Arkison (In re Bellingham Ins. Agency, Inc.),* 702 F.3d 553 (9th Cir. 2012).

[6] The Ninth Circuit's ruling in *Bellingham* relied primarily on two Supreme Court cases: *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) and *Stern v. Marshall*, 546 U.S. __ , 131 S.Ct. 2594, 180 L. Ed. 2d 475 (2011).

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 22 of 36 Page ID #:73

to sue non-settling insurers directly. The plan also implemented assignments that the debtor had negotiated for prepetition with other insurers pursuant to which they assigned certain rights against other insurers, including Continental. Continental filed a proof of claim, contending that this assignment and other provisions of the debtor's plan violated its prepetition settlement agreement with the debtor. The debtor objected to Continental's claim and Continental filed a motion to compel arbitration, contending that the matter was required under the terms of the settlement to be resolved by arbitration. *Id.* at 1016-17. The Bankruptcy Court held that the proceeding was a core proceeding and that it had discretion to deny the request to compel arbitration and would exercise that discretion. *Id.* at 1017. The District Court, on appeal, ultimately affirmed the Bankruptcy Court's rulings. *Id.* at 1019.

On appeal from the District Court, the Ninth Circuit, adopting the ruling of several other circuits, held that "[i]n non-core proceedings the bankruptcy court generally does not have discretion to deny enforcement of a valid prepetition arbitration agreement. In core proceedings, by contrast, the bankruptcy court, at least when it sees a conflict with bankruptcy law, has discretion to deny enforcement of an arbitration agreement." *Id.* at 1021 (citations omitted). The Ninth Circuit noted that this distinction was relevant because non-core proceedings were not as likely as core proceedings to present a conflict sufficient enough to override the strong presumption in favor of arbitration. *Id.* at 1021. After affirming the Bankruptcy Court's determination that the claim objection proceeding was core, the Ninth Circuit turned to whether the Bankruptcy Court properly exercised its discretion to deny the motion to compel arbitration. *Id.* The Ninth Circuit found that it had, because the dispute involved the debtor's reliance on section 524(g) of the Bankruptcy Code, which permits consolidation of asbestos-related assets and liabilities into a trust for the benefit of claimants, and a claim

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 23 of 36 Page ID #:76

based on these efforts "tests the efficacy of the provision's underlying policies. Because Congress intended that the bankruptcy court oversee all aspects of a § 524(g) reorganization, only the bankruptcy court should decide whether the debtor's conduct in the bankruptcy gives rise to a claim for breach of contract. Arbitration in this case would conflict with congressional intent." *Id.* at 1022. It also found that arbitration of this particular dispute would interfere with the purpose of the Bankruptcy Code of centralizing disputes about debts and protecting creditors and reorganizing debtors from piecemeal litigation. *Id.* at 1022.

Thus, in light of the Ninth Circuit's decision in *Thorpe*, "the core/non-core distinction, though relevant, is not alone dispositive" in deciding whether arbitration of these claims inherently conflicts with the purposes of the Bankruptcy Code. Therefore, the core/non-core designation of a claim, alone, does not determine whether the bankruptcy court has discretion on this issue. Instead, in the Ninth Circuit, "the bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision *only if* arbitration would conflict with the underlying purposes of the Bankruptcy Code." *Id.* at 1021 (emphasis added)[7] As the Fifth Circuit explained: "[c]ertainly not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize

---

[7] *See also Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007) ("even if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code"); *MBNA Am. Bank v. Hill*, 436 F.3d 104, 108 (2nd Cir. 2006) ("even as to core proceedings, bankruptcy courts will not have discretion to override an arbitration agreement unless it finds that proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code"); *MCI Telecommunications Corp., v. Gurga (In re Gurga)*, 176 B.R. 196, 197 (9th Cir. BAP 1994) (arbitration of core claims mandatory unless they conflict with underlying purpose of the Bankruptcy Code); *Cooley v. Wells Fargo Financial (In re Cooley)*, 362 B.R. 514, 519 (N.D. Ala. 2007) (noting that "[t]he Second, Third, Fourth and Fifth Circuit Courts of Appeal, and the Ninth Circuit Bankruptcy Appellate Panel have all refused to apply a simple core versus non-core test in their search for a *McMahon* exception to the FAA's mandate.").

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 24 of 36 Page ID #:77

the objectives of the Bankruptcy Code." *Insurance Co. of North America v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir. 1997).

*Thorpe*, therefore, instructs courts to look beyond the core/non-core designation of a claim to determine whether arbitration of that claim would conflict with the purposes of the bankruptcy code. Because this adversary proceeding against Kirkland is essentially a fraudulent transfer case, *Bellingham* must be considered in the court's analysis.

b. The Core Designation is Inappropriate, Irrelevant and Misleading In This Adversary Proceeding

The Bankruptcy Court did not have discretion to decline to enforce arbitration of the claims asserted against Kirkland because arbitration does not conflict with the underlying purposes of the Bankruptcy Code. The technical designation of core is both inappropriate and irrelevant and is also misleading. Once the claims are examined behind the mischaracterized labels, it is clear that this case is really not core. The Trustee's attempt to object to disallowance of a non-existent claim is a paltry attempt to bootstrap jurisdiction where it does not belong.

The first cause of action for disallowance of claim cannot be the basis for granting the bankruptcy court discretion. Kirkland has not filed a proof of claim, does not intend to, and the proof of claim filing deadline has passed. It cannot be said that Trustee's first cause of action is related to the proper administration of the bankruptcy estate. It is really inappropriate to consider the first cause of action to be "core" for this analysis, no matter its technical designation. Trustee's cause of action to disallow Kirkland's non-existent claim, or worse, the claim of another party, cannot reasonably be the basis for denying Kirkland's prepetition, contractual right to arbitration under the FAA. It cannot be used to grant the

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 25 of 36 Page ID #:78

Bankruptcy Court discretion when in all circumstances, except where there is a clear conflict with the purposes of the Bankruptcy Code, it would have none. Trustee provided the bankruptcy court with no case law to support such a manifestly unjust result.

Second, the Trustee's asserted fraudulent conveyance claims, while also technically core, after *Stern v. Marshall* and *Bellingham*, no longer really fit this categorization. They no longer truly fit the core designation which was originally intended to describe the bankruptcy court's jurisdiction, and, which now, has been called into question by this case law. Therefore, the core/non-core designation is truly irrelevant in this case for determining whether the claims conflict with the purposes of the Bankruptcy Code.

c. Arbitration Does Not Inherently Conflict with the Purposes of the Bankruptcy Code: *Bellingham*

In this adversary proceeding, arbitration does not inherently conflict with the purposes of the Bankruptcy Code. After *Bellingham*, the fraudulent transfer claims against Kirkland are not claims in which the Bankruptcy Court can enter a final order because Kirkland has not filed a proof of claim in the case and did not consent to the Bankruptcy Court's entry of a final judgment. Because Kirkland has asserted his Seventh Amendment right to a jury trial, the district court will need to conduct the trial. *See also Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 787 (9th Cir. 2007).

Here, the Bankruptcy Court erroneously concluded that "enforcement of the arbitration provisions herein would conflict with the purpose underlying the Bankruptcy Code of having bankruptcy law issues decided by bankruptcy courts . . . [and] allowing arbitration of those fraudulent transfer claims based on California law would conflict with the purposes of the Code of centralizing resolution of bankruptcy disputes and protecting parties from piecemeal litigation."

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 26 of 36 Page ID #:79

Tentative Ruling at 9 of 31, included as App. Ex. 16, at 369. Each of these reasons the Bankruptcy Court relied upon for denying arbitration related to its perception that not doing so would keep the proceedings in bankruptcy court.

Here, Kirkland (1) does not consent to the Bankruptcy Court's entry of a final judgment on the claims against him, (2) did not file a proof of claim in the Consolidated Cases, and (3) has asserted his Seventh Amendment right to a jury trial. Although, when the Bankruptcy Court denied arbitration, Kirkland had not yet filed his answer declining consent to the Bankruptcy Court's entry of a final judgment in the matter and demanded a jury trial, Kirkland had already manifested his intent not to consent to the jurisdiction of the bankruptcy court through his motion to withdraw the reference based upon his arbitration rights. Accordingly, it was clear this case would not proceed before the Bankruptcy Court. The district court will instead conduct the jury trial. Therefore, even if arbitration is not enforced, this adversary proceeding will not result in the Bankruptcy Court deciding the bankruptcy law issues, the issues will not be centralized in the Bankruptcy Court, and the litigation will be piecemeal. As a result, these asserted Bankruptcy Code purposes cannot be the basis for arbitration's alleged inherent conflict. This result will happen anyway. In light of the Ninth Circuit's ruling in *Bellingham*, the Bankruptcy Court's basis for declining to compel arbitration was in error.

Indeed, in connection with Kirkland's motion for a stay pending appeal, the Bankruptcy Court noted:

> [S]ince Kirkland states that he does not consent to a jury trial before this Court, this matter will be decided by the District Court if it is determined that a jury trial is warranted herein. Consequently, since a bankruptcy court may not be deciding the fraudulent transfer issues in this action, arbitration may not conflict with the underlying Bankruptcy Code purpose of having bankruptcy courts decide bankruptcy issues, and there is a likelihood that Kirkland will succeed on appeal. The Court notes that this situation did not exist at the time

> the Court decided the motion to compel arbitration, since Kirkland's answer in which he demands a jury trial was not filed until 12/6/13.

Tentative Ruling, *Id.*, Ex. 30, at 35 of 41. The Bankruptcy Court went on to note that:

> There is no published decision by the Ninth Circuit or any other reviewing court in this circuit which establishes that arbitration of fraudulent transfer claims and objections to claims conflict with the underlying purpose of the Bankruptcy Code. . . . Consequently, this Court finds that the first factor for a stay is satisfied also on the ground that the Arbitration Motion was not frivolous, but presented a serious legal issue to be resolved on appeal . . . .

Tentative Ruling (Jan. 14, 2014) at 34, included as App. Ex. 30. Thus, the Bankruptcy Court's asserted conflict is, in fact, not a conflict and the Bankruptcy Court did not have discretion to deny arbitration. The Bankruptcy Court essentially acknowledged Kirkland's rights to arbitration in its ruling on the stay. The order should be reversed.

d. The Cases Relied Upon by the Bankruptcy Court Are Distinguishable

To supports its erroneous decision, the Bankruptcy Court relied upon an unpublished Northern District of California case, *In re Saigon Plaza Association, LLC v. California Mortgage & Realty, Inc.*, 2007 WL 3357641, *4 (Bankr. N.D. Cal. 2007). This case is not instructive, however, because it is pre-*Bellingham* and did not address the implications of that decision on this area of law. In fact, the court's decision was based upon the fact that the litigation would proceed in the bankruptcy court. Moreover, it is factually distinguishable from *Bellingham* and this case because the defendant had filed a proof of claim in the underlying bankruptcy case.

The Bankruptcy Court also cited to *In re Gandy*, 299 F.3d 489 (5th Cir. 2002), to support its position that centralization and protection from piecemeal litigation are purposes of the Bankruptcy Code with which arbitration conflicts.

[Tentative at 9 of 31] Again, *Gandy* was a case in which the adversary action would proceed before the bankruptcy court if not sent to arbitration. That is not the case here, after *Bellingham*. As such, neither of these cases supports the Bankruptcy Court's decision.

Kirkland has located no case that addresses the implications of *Bellingham* to motions to compel arbitration of fraudulent conveyance claims in the bankruptcy court. Although not a post-*Bellingham* case, in a matter very similar to this, a district court reversed the bankruptcy court and ordered arbitration. In *In re Rarities Group, Inc.*, 434 B.R. 1 (D. Mass. 2010), the district court reversed the bankruptcy court's denial of a motion to compel arbitration of an adversary action filed by a chapter 7 trustee asserting twenty-five claims for relief arising from a prior business relationship between the debtor and the defendant, Heritage, an auctioneer. *Id.* at 11. The debtor had scheduled Heritage as an unsecured creditor but Heritage did not file a proof of claim. *Id.* at 6.

There, the district court determined the bankruptcy court erred in refusing to compel arbitration where the trustee's claims included state law claims such as breach of fiduciary duty, conversion, breach of contract, as well as claims that are generally considered to be bankruptcy claims such as turnover under 11 U.S.C. § 542, avoidance of preferential transfers under 11 U.S.C. § 547, avoidance of fraudulent transfers pursuant to 11 U.S.C. § 548 and state law, recovery of avoided transfers under 11 U.S.C. § 550, claim disallowance, and subordination of claims pursuant to Section 510. *Id.* at 11. The district court relied on the strong policy in favor of arbitration.

> The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which the parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, <u>even if the result is 'piecemeal' litigation</u>, at least absent a countervailing policy manifested in another federal statute. Statutory

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 29 of 36 Page ID #:82

> claims, like other claims, may be ordered arbitrated if the parties agreed to do so.

*Id.* at 7 (internal citations omitted) (emphasis added). The court found that the defendant and the debtor had valid prepetition arbitration agreements which applied to all of the causes of action other than one for tortious interference, including the claims of fraudulent transfer, claim disallowance, preference, and turnover. *Id.* at 9.

The district court then analyzed whether enforcing the arbitration agreements would inherently conflict with the purposes of the Bankruptcy Code. The district court noted that this analysis began with whether the subject matter that gives rise to the dispute is based on prepetition events or whether the underlying nature of the proceeding derives exclusively from the Bankruptcy Code, finding that the trustee's claims were based "for the most part, on prepetition transactions and contracts. The Trustee's fundamental claims are essentially based on Heritage's alleged pre-bankruptcy wrongful conduct and breaches…Sorting out the business and property disputes underlying the adversary proceedings will be focused on the parties' respective rights and obligations under their pre-bankruptcy commercial relationship." *Id. at* 10-11. The court acknowledged that, "some of the claims invoke remedies explicitly made available by the Bankruptcy Code" but the court determined there was no reason to believe the goals of the Bankruptcy Code would be jeopardized by arbitration of these claims. *Id.* at 11.[8]

---

[8] Other courts have ruled similarly. *See Bezanson*, 156 B.R. at 706 ("[t]he complaint is essentially nothing more than a …breach of contract action. Turnover proceedings pursuant to § 542(b)….The obligation to pay, and thus the claim, arose pre-petition. Therefore, the nature of this action does not implicate the provisions and policies of the Bankruptcy Code to such a significant degree that arbitration would be improper."); *Cooley*, 362 B.R. at 522 (enforcing arbitration of core claims and rejecting argument that the affect of an issue on the amount of a proof of claim, timing of plan payments or even amount distributed to other creditors is sufficient to deny arbitration because, "these same results will occur whether the recovery is awarded by this Court or an arbitrator.").

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 30 of 36 Page ID #:83

The district court noted the debtor was not reorganizing, there was no plan to confirm, liquidation had begun years ago, and there were no other creditors or third parties whose interests might be affected if the claims were resolved by arbitration rather than by a bankruptcy judge. *Id.* at 11.[9] The district court stated, "[t]he bankruptcy judge's conclusion below that arbitration would interfere with the goals of the bankruptcy system was just that: conclusory."

The district court ordered the matter remanded to the bankruptcy court to compel arbitration. The district court held, "In short, it was an error for the bankruptcy judge to have concluded that enforcement of the parties' arbitration agreements would have necessarily conflicted with achieving the goals of the Bankruptcy Code. The established policy favoring arbitration in accordance with the parties' agreements should have been given effect." *Id.* at 11; *see also Bezanson v. Consolidated Constructors & Builders*, 156 B.R. 704, 706 (B.ME 1993) ("[R]eferral to arbitration is justified notwithstanding the fact that it may result in piecemeal litigation."); *In re Shores of Panama, Inc.*, 387 B.R. 864, 866-867 (N.D. Fla. 2008) (enforcing arbitration provision and stating, "[a]lthough arbitration may be inconsistent with the policy of centralization, such inconsistency does not rise to the level of an inherent conflict[,]" concluding that "[t]he policy of centralization alone does not trump an otherwise enforceable arbitration agreement" and then noting that "[b]esides, another important policy of bankruptcy is the preservation of creditors' nonbankruptcy rights to the extent possible while carrying out the purposes of the Bankruptcy Code.").

---

[9] *See also Bezanson*, 156 B.R. at 706 ("As a Chapter 7 case, no reorganization could be threatened by the delay, if any, that arbitration would bring…and arguments of 'efficiency' have been held not to per se justify refusal to enforce an arbitration clause even in the bankruptcy context.") (internal citations omitted); *In re Shores of Panama*, 387 B.R. at 867 (concluding that an impact on the ultimate distribution of the estate since all creditors will share from the same pot of money is "too tangential" to disregard the agreement to arbitrate and is not an "inherent conflict").

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 31 of 36 Page ID #:84

Similarly, in this case, the underlying factual allegations remaining in the Complaint after two amendments are based almost exclusively on either Kirkland's prepetition services as counsel or his investments in EPD, both of which stemmed from contracts with broad arbitration provisions. Even the Trustee's fraudulent transfer claims, two of which were asserted under California law and two of which were asserted under the Bankruptcy Code, are essentially pre-petition state law claims because they are allegedly based upon the same series of twelve to fourteen pre-petition transfers from EPD to Union Bank for the benefit of Kirkland. *See* App. Ex. 3. The California state law claims, covering all fourteen of the alleged transfers, existed prior to and outside of the bankruptcy case. The fraudulent transfer claims brought under the Bankruptcy Code similarly relate to the exact same facts and twelve of the fourteen prepetition transfers. Thus, the subject matter that gives rise to the dispute is based on prepetition events and is not derived exclusively from the Bankruptcy Code and is based on prepetition transactions and contracts. Moreover, this is not a case where the debtors are reorganizing and the issues interrelated with that reorganization. Most importantly, because Kirkland did not consent to the Bankruptcy Court's entry of a final judgment and because he has asserted his Seventh Amendment right to a jury trial, the claims against Kirkland will not be decided by the Bankruptcy Court in any event, eliminating the primary basis for the Bankruptcy Court's refusal to compel arbitration. As in *Rarities Group*, the Bankruptcy Court's conclusion that arbitration would interfere with the goals of the bankruptcy system was just that: conclusory.

This analysis is largely the same with respect to the cause of action for disallowance of any claim that may be asserted by Kirkland against the bankruptcy estate, although he has not filed one and does not intend to do so. A claim for disallowance of a proof of claim filed against a non-creditor defendant, who did

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 32 of 36 Page ID #:83

not file a proof of claim, cannot possibly be the basis for denying arbitration. There is no conflict with the underlying purposes of the Bankruptcy Code when Kirkland has not filed a proof of claim. Moreover, the strong federal policy in favor of arbitration agreements mandates that courts enforce arbitration agreements according to their terms whenever possible. *See, e.g., Dean Witter Reynolds Inc. v. Byrd*, 470 U. S. 213, 221 (1985). Federal policy directs courts to resolve doubts in favor of arbitrability. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); see also In re Rarities Group, Inc.*, 434 B.R. 1, 8 (D.Mass. 2010). In light of the strong public policy in favor of arbitration, this spurious claim should not be the basis for denying enforcement of valid and applicable arbitration provisions.

However, even if the Bankruptcy Court properly retained jurisdiction over the cause of action for disallowance of any claim asserted by Kirkland, the Bankruptcy Court abused its discretion in declining to enforce arbitration as to the fraudulent transfer claims and should have stayed the balance of the adversary proceeding pending resolution of the arbitration. Then, any factual findings by the arbitrator related to the fraudulent conveyance actions that are relevant to the claim disallowance cause of action would be established between the parties in the adversary proceeding and not need to be relitigated. In *Bezanson v. Consolidated Constructors & Builders*, 156 B.R. 704 (B. Me. 1993), the bankruptcy court held that referral to arbitration was justified notwithstanding the fact that it may result in piecemeal litigation. "The third count in the amended complaint for willful violation of the automatic stay will not necessitate overly duplicative litigation in this Court. Once the parties have completed their arbitration, the issues surrounding the stay violations will be sufficiently narrowed to permit efficient and swift adjudication in this Court." *Id*. at 706. The Trustee's assertion of a cause of

Case 2:13-cv-08768-SJO Document 12 Filed 03/13/14 Page 35 of 36 Page ID #:88

action out of an abundance of caution simply does not override the strong policy in favor of arbitration.

### 3. The Trustee's Additional Arguments Are Insufficient to Override the Strong Presumption in Favor of Enforcing Arbitration Provisions

Although the Bankruptcy Court did not explicitly base its decision on the Trustee's other arguments in opposition to arbitration, these also would not be proper reasons to deny arbitration. The Trustee argued that arbitration of the fraudulent conveyance claims would not be appropriate because the Bankruptcy Court had presided over this bankruptcy case for more than three years and in more than 100 adversary proceedings, almost all of which involve claims for avoidance and recovery of fraudulent transfers. (Trustee Opposition Docket 80, p. 9). The Trustee argued that in this adversary proceeding and the others that are pending, he must prove that EPD ran a Ponzi scheme and was insolvent so that arbitration might lead to "conflicting" decisions regarding these issues.

Again, besides the fact that this adversary will not proceed before the Bankruptcy Court, in every adversary proceeding, the Trustee must properly prove up his case against the defendant. Every defendant is entitled to put the Trustee to this test and the Bankruptcy Court is required to ensure the Trustee produces the necessary quantum of evidence supporting his claims in every case. The Trustee is not entitled to "short cuts" because the Bankruptcy Court is familiar with the case. To the extent that the Trustee's argument is that arbitration should be denied because it will remove these prejudicial "short cuts," it should be rejected by the Court as improper.

Similarly, if the Trustee's argument is that an arbitrator may not reach the same decisions as the Bankruptcy Court based upon the Trustee's presentation of evidence, that too should be given no credibility. If the Bankruptcy Court

previously and repeatedly determined the existence of a Ponzi scheme and found that EPD was insolvent based upon the Trustee's evidence, there is no valid reason to believe an arbitrator would not make the same determination. These types of specious and improper arguments were rejected by the bankruptcy court in *Trinity v. Momentum Telecommunications, Inc.*, 2012 WL 1067673 (E.D. Tenn. 2012). In that case, the bankruptcy court granted a motion to compel arbitration of breach of contract disputes in a chapter 11 case over the debtor's objection that an arbitration panel in Birmingham, Alabama would be biased against it. The bankruptcy court stated, "the court rejects the assumption. The U.S. Supreme Court itself has declined to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." *Trinity*, 2012 WL 1067673 at *16 (internal citations omitted). This unfounded argument was not a basis on which the Bankruptcy Court denied the motion to compel arbitration, and it does not provide a basis on which this Court can affirm the Bankruptcy Court. Instead, it is an illustration of the fact that Trustee completely failed to meet his burden to prove that arbitration of this adversary proceeding would conflict with the purposes of the Bankruptcy Code such that it should be an exception to the Federal Arbitration Act. *See Bezanson*, 156 B.R. 704 (D. Me. 1993) ("In the present case, the Plaintiff has not sustained its burden of proving a conflict between the two federal statutes that would justify this Court's denial of enforcement of the arbitration clause bargained for between the parties").

## VII. CONCLUSION

Discretion to deny enforcement of an applicable arbitration provision in the Ninth Circuit exists only where the court finds the party objecting to arbitration proves that Congress intended to bypass the FAA. In the Bankruptcy Court, this means that the objecting party must establish, and the court must determine, that

arbitration of a core matter inherently conflict with the purposes of the Bankruptcy Code. Here, the Bankruptcy Court erred because it premised the denial of Kirkland's motion to compel arbitration on the basis that arbitration inherently conflicted with the Bankruptcy Code's purposes of centralizing bankruptcy disputes and avoiding piecemeal litigation. However, in light of Kirkland's lack of consent to the Bankruptcy Court jurisdiction and his assertion of his Seventh Amendment right to a jury trial, after *Bellingham* the District Court, will be adjudicating this dispute. Arbitration of this case, then, cannot and does not conflict with these Bankruptcy Code purposes. The Bankruptcy Court's ruling is in error and should be reversed so that the parties are ordered to arbitration and the balance, if any, of the adversary proceeding stayed pending completion of arbitration.

Dated: March 13, 2014

WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP

By: /S/ Jeffrey I. Golden
JEFFREY I. GOLDEN
*Attorneys for Appellant John C. Kirkland*

## Certificate Of Compliance With Rule 32(a)

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements and Type Style Requirements

This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7) because this brief contains 8,296 words, excluding the parts of the brief exempted therefrom. This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14-point font in Times New Roman.

Dated: March 13, 2014

WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP

By: /s/ Jeffrey I. Golden
JEFFREY I. GOLDEN
*Attorneys for Appellant John C. Kirkland*

# EXHIBIT W

John C. Kirkland, State Bar No. 149453
John Moe, State Bar No. 6689
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017
Telephone: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Alleged Debtor
EPD INVESTMENT CO., LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>EPD INVESTMENT CO., LLC,<br><br>Alleged Debtor.<br><br>EIN No. xxx-0994 | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br><br>*Assigned to Hon. Ernest M. Robles*<br><br>**ALLEGED DEBTOR'S OBJECTION TO PETITIONING CREDITORS' MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE**<br><br>Date: January 20, 2011<br>Time: 11:00 a.m.<br>Crtrm.: 1568<br>255 East Temple Street<br>Los Angeles, CA 90012 |

Alleged Debtor EPD Investment Co., LLC, a California limited liability company ("EPD"), herby objects to and opposes the Petitioning Creditors' and Creditor Michelle Hansel's Motion For Appointment Of Interim Chapter 7 Trustee, on that grounds that (1) this case was filed in bad faith, and the instant motion is brought in bad faith as a litigation tactic against EPD, (2) petitioning creditors have no standing to initiate an involuntary bankruptcy, because their claims are all in ongoing litigation, and subject to bona fide disputes, (3) the alleged debtor is generally paying its debts as such debts become due, unless such debts are the subject of a bona fide dispute, (4) there is no imminent risk of loss to property of the estate, and no need to the appointment of a trustee, and (5) the appointment of a trustee would destroy EPD's business.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This is a classic bad faith involuntary bankruptcy petition, brought by parties with whom Alleged Debtor EPD Investment Co., LLC, a California limited liability company ("EPD") has been involved in heavily contested litigation for more than a year. Moving parties are a group of related, disgruntled investors who are unhappy that the investment risks they chose to take have not panned out as they had hoped, and are now lashing out for someone to blame. Though their cash flow problems are unfortunate, they are hardly unique in today's economy; that is the nature of investing. Moving parties have no one to blame but themselves for their own investment decisions. Their funds were fully at risk, and EPD owes them nothing. Athough EPD has done what it can to help them, it has no legal obligation to meet their cashflow shortfalls, and their claims against EPD are without merit.

Indeed, not only are the moving parties' claims against EPD subject to bona fide disputes, they are in fact utterly and completely frivolous. Having met with no real success pursuing their baseless claims in state or federal court, the moving parties now seek extraordinary relief from the Bankruptcy Court, in a bad faith attempt to bludgeon EPD into capitulation. Since they cannot prevail on the merits, they seek to extort an undeserved settlement, by putting EPD at risk of financial ruin through a bad faith bankruptcy petition.

The instant motion is based on gross misrepresentations, completely unsupported by the evidence submitted with the application. There is no valid factual or legal basis for the filing of the involuntary petition, and certainly no urgent need for the appointment of an interim trustee. As such, there is no conceivable basis for the relief sought by the moving parties.

Conversely, if the instant application were somehow granted, it would trigger the standard bankruptcy default provisions in virtually every contract, loan and other agreement to which EPD is a party, destroy its credit, and effectively put the company out of business. The loss would be catastrophic. Indeed, it is not the actions of EPD, but the actions of the Petitioning Creditors that represent the only real threat to the estate. The motion should be denied, and EPD awarded its fees and costs for opposing it.

**II. <u>PETITIONING CREDITORS AND CREDITOR MICHELLE HANSEL'S CLAIMS ARE SUBJECT TO BONA FIDE DISPUTE</u>**

**A. <u>All of the Claims Are The Subject of Long-Ongoing Litigation</u>**

Moving parties attempt to mislead the Court about the true status of the litigation involving EPD. The claims are not undisputed, and no one has any judgment against EPD. All of the claims are vigorously opposed by EPD, and the actions are strenuously contested. EPD is highly confident that it will prevail in the litigation. Moreover, there is nothing whatsoever that is new, imminent or urgent about any of the lawsuits. The cases have all been pending for months, or even years.

The Jenny Lee Bridal case was filed <u>more than a year ago</u>, on December 1, 2009. (*See* Alleged Debtor's Request For Judicial Notice In Support Of Objection To Petitioning Creditors' Motion For Appointment Of Interim Chapter 7 Trustee ("RJN"), Exh. 2.) Although Jenny Lee previously obtained a surreptitious default, that judgment was set aside. (RJN, Exhs. 3, 5.) EPD strenuously contests liability, and the case is now at issue. (RJN, Exh. 4.)

The Hansel case was also filed <u>more than a year ago</u>, in December 2009. (RJN., Exh. 15.) EPD is vigorously defending, and the case has been at issue as to EPD since March of last year. (RJN, Exh. 17.) Hansel, however, has yet to serve all of the defendants in the case. (RJN, Exh. 14.)

EPD initially opposed Hansel's *repeated* prejudgment attachment requests. (RJN, Exh. 16, 18.) Hansel filed <u>dozens</u> of *ex parte* applications, over every conceivable issue, often refilling the same motion after losing, and always with no notice. (RJN., Exh. 14.) Ultimately EPD grew tired of the litigation and became less strenuous in its oppositions, as the litigation became increasingly cost prohibitive. The Court eventually granted a right to attach order, but subject to a $100,000.00 bond, an indication of the tenuous nature of the claim. Hansel never posted the bond, and now seeks effectively the same relief here, but is asking the Court to set "a bond of zero dollars or in a minimal amount." (Motion, 14:23.) Hansel's bad faith could not be more apparent.

In addition, on November 10, 2010, Jerrold Pressman filed suit against Hansel for defamation, for falsely telling business associates that he and EPD were unable to pay their debts as they become due. (RJN, Exh. 20.) The instant filing is simply round two of those same false claims.

The Dittmer case has been pending since October 1, 2010. (RJN, Exh. 7.) EPD strenuously contests liability, and it has been at issue since last November. (RJN., Exh. 8.)

The Huerth case was filed on August 11, 2010. (RJN., Exh. 10.) No answer has been filed, because EPD has moved to dismiss on multiple grounds. (RJN, Exh. 11.) EPD is vigorously defending. (RJN, Exhs. 12, 13.) In short, all of the claims are contested, all of the litigation is ongoing, and there is no final judgment of any kind against EPD.

**B. <u>The Investments Were Investments, Subject to Risk of Loss</u>**

Fundamentally, moving parties are attempting to claim after-the-fact that their at-risk investments were not subject to any risk, and that instead EPD was unconditionally obligated to immediately pay them if anything ever went wrong. Although they attempt to pick and choose individual documents, words and phrases out-of-context, the bulk of the extensive documentary evidence and testimony does not support their version of events.

For example, the Declaration of Ruben Moreno filed in the Hansel case refutes all of the factual claims made by Hansel. (RJN, Exh. 18.) As set forth in detail in Mr. Moreno's sworn declaration, the alleged notes were, as noted on their very face, only "Temporary" to facilitate a long-term investment by Hansel in equipment leases. (*See* RJN, Exh. 18 (Moreno Decl.), ¶¶ 3-7 and Exh. "A".) The temporary loans were in fact converted to such investments. Indeed, Hansel's own tax return **<u>proves</u>** that the $350,000.00 was an at-risk investment, not a loan subject to repayment by EPD. (*Id.*, ¶¶ 8-10 and Exh. "B".) If the money was not an investment fully at risk, then Hansel has committed tax fraud. (*Id.*, ¶ 10.) She reported the $350,000 investment to the IRS as an equipment lease, which was reflected on line 36 of Hansel's 2005 federal income tax return as a $350,000 tax deduction. Obviously a loan is not tax deductible, and the fact that Hansel took a deduction on a tax return filed for the year the "Temporary" note was issued shows that any loan was, in fact, converted to an investment in a lease.[1]

Moving parties clearly understood that they were <u>investors</u> subject to risk that the lease payments might be interrupted, delayed or unpaid, not lenders with a permanent, unconditional,

[1] Petitioning Creditors rely upon similar "Deposit Acknowledgements" and "<u>Temporary</u> Promissory Notes." (*See, e.g.*, McCarthy Decl., p. 10.) Such funds were similarly invested into equipment leases. (*See, e.g.*, Arthur Huerth Decl., Exh. "C.")

immediate repayment right. (*See, e.g.*, Leslie Huerth Decl., Exh. "B" ("We would like to take this opportunity to welcome you as an investor with EPD Investment Company, LLC.") (emphasis added). The myriad emails and other miscellaneous documents attached to the various declarations are replete with references to *investments* and *investors*. Moving parties were more than happy to take advantage of the high returns and tax benefits of their investments for years. But when the economy turned south, they now want to have their cake and eat it too. EPD is not obligated to step up and meet their cashflow shortfall simply because the investments they chose are no longer paying like clockwork.

**C. The Creditors Have Failed to Comply with the California Finance Lenders Law**

Moving parties are now asserting in the various pending actions that their investments with EPD were not investments at all, but were actually permanent, unconditional loans that had to be repaid immediately, with no risk of loss. However, if that were the case, the creditors would be lenders, subject to the California Finance Lenders Law. They are not so licensed, and as such cannot sue to collect on the alleged loans. *See* Cal. Fin. Code § 22100.

The creditors are caught squarely between a rock and a hard place. If the funds were investments, then they were at risk, and not subject to an unconditional repayment obligation. If they were pure loans, then the moving parties are lenders, and subject to the California Finance Lenders Law. They have failed to comply with the law, and therefore cannot sue to collect any alleged loans. *See* Cal. Fin. Code § 22100; *Ury v. Jewlers Acceptance Corp*., 227 Cal. App. 2d 11 (1964).

The only exception under California law, as found by any California court, is for making fewer than one loan per year. *See* Cal. Fin. Code § 22050(e). If the notes were loans, not investments, then the creditors made multiple loans, and cannot possibly fall within the safe harbor. They cannot claim that the temporary notes were merely a personal accommodation between friends, and then seek collection like a bank. Their position is entirely self-defeating. The internal inconsistency within their own position demonstrates that the claims are subject to a bona fide legal dispute.

**III. <u>PETITIONING CREDITORS HAVE NO STANDING TO FILE AN INVOLUNTARY BANKRUPTCY PETITION AGAINST EPD</u>**

Claims that are involved in litigation are the subject of a bona fide dispute, and creditors holding such claims have no standing to initiate involuntary bankruptcy proceedings. *See, e.g., In re Reid*, Bkrtcy, E.D.Va. 1989, 108 B.R. 79 (involuntary Chapter 7 petition dismissed where petitioning creditor's claims were pending in state court action, and thus were subject of bona fide dispute); *In re St. Marie Development Corp. of Montana, Inc.*, Bkrtcy.D.Mont.2005, 334 B.R. 663 (petitioning creditors failed to satisfy burden of showing that there was no bona fide dispute as to debts in question, in light of ongoing litigation with debtor). *See also In re Vortex Fishing Systems, Inc.*, C.A.9 2002, 277 F.3d 1057 (petitioning creditors' claims were subject to bona fide dispute, so that creditors were not eligible to join in involuntary petition, where there were factual questions and legal disputes); *In re Reid*, C.A.7 (Ill.) 1985, 773 F.2d 945 (creditors did not have standing to file involuntary petition against debtor where creditors' claims were subject to bona fide dispute); *In re Tri-County Farm Equipment Co., Inc.*, D.Kan.1988, 87 B.R. 667 (bona fide where alleged debtor had colorable defenses to claims).

The instant case is remarkably similar to *In re Pacific Rollforming, LLC*, Bkrtcy.N.D.Cal.2009, 415 B.R. 750, where the court found that the involuntary petition was basically a litigation tactic on part of those that opposed debtor's claims in pending litigation, and that no creditor not involved in litigation against debtor had elected to joint the petition. Such is the case here.

**IV. <u>MOVING PARTIES HAVE FAILED TO SHOW THAT EPD IS GENERALLY NOT PAYING ITS DEBTS AS THEY BECOME DUE</u>**

Moving parties have utterly failed to make any factual showing that EPD is generally not paying its debts as they become due. This is not surprising given that, with the exception of the claims described above and claims of similar ilk which are subject to bona fide disputes, EPD does not have a single past due bill or late payment. In other words, EPD is generally paying its debts as they become due, unless such debts are subject to a bona fide dispute.

Moving parties have the burden to prove, by admissible evidence, that EPD is insolvent and bankrupt, and that the estate is at great and immediate risk. *See In re St. Marie Development Corp. of*

*Montana, Inc.*, Bkrtcy.D.Mont.2005, 334 B.R. 663 (petitioning creditors failed to satisfy burden of showing that alleged debtor was not generally paying its debts as they became due, where no recent debts had been left unpaid). As such, there is no factual basis for granting the relief requested.

The liens about which moving parties now complain were filed <u>more than a year ago</u>, in September 2009. Moreover, there is nothing unusual or improper about UCC-1 financing statements, which are standard fare in most commercial transactions. Regardless, the filing of standard financing statements a year-and-a-half ago does not provide any reason to believe that assets are being absconded with or that there is imminent risk of loss to the estate.

Indeed, the evidence submitted by moving parties themselves states that EPD has more than $80 million in net assets! (See Motion, 11:16.) How does this constitute grounds for filing of an involuntary bankruptcy petition?

Aside from the facially ambiguous "temporary" notes and similar conflicting documentation, the only other evidence moving parties have are various emails and letters from EPD, which are inadmissible under Fed. R. Evid. 408. Moreover, even if such communications were admissible, they essentially say nothing more than that EPD feels bad about the moving parties' investment problems, and is working hard to make the investments pay off and restore regular payments. That does not mean that the claims now asserted by the creditors are not subject to a bona fide dispute. The communications from EPD do they establish imminent risk of dissipating assets, but instead show EPD's good faith in continuing to work to try to recover the moving parties' losses. Such statements do not show bad faith or dishonesty, and cannot be used as a basis to seek appointment of a trustee.

In addition, moving parties mischaracterize what the communications from EPD actually say. For example, moving parties quote snippets out-of-context from a year-old December 2009 letter. (Motion at 9:8-19.)[2] Although the letter candidly discussed a temporary cash flow issue that existed at that time, it did not state that EPD was unable to pay its debts when due. To the contrary, the only issue was "honoring *requests* for *additional* funds," not meeting required obligations. (*Id.*) Moreover, in addition to openly acknowledging the problems, the letter also stated:

---

[2] Though moving parties assert the letter is from EPD, it is not on letterhead, and is not signed.

> That being said, there is some good news. We have lost no tenants, we have prevailed on all tax audits, our properties have maintained or increased in value, and we recently executed a contract for the sale in Mississippi of 100 acres to the state for approximately 3 million dollars (for which we are still awaiting payment), which will allow us to rezone the property and more than double the current value of the remaining 700 acres. …
>
> We have also arranged for a major recapitalization for early September that should generate a substantial amount of liquidity offering a bridge until we can reestablish our credit line. …
>
> Overall our assets greatly exceed our liabilities, and your funds are well protected. …
>
> This is temporary, and I'm hoping and praying it will correct itself in the next quarter.
>
> While I may not have anticipated the enormity of this financial recession, I want to assure you that I have made no critical errors in judgment. None of our investments have lost value even in these turbulent times due to the conservative nature of our strategy. …

(*See* McCarthy Decl., Exh. E.)

Moving parties fail to explain why temporary cash flow problems that occurred more than a year ago warrant a bankruptcy filing or immediate appointment of an interim trustee now. Indeed, there is nothing about this letter from <u>2009</u> which suggests that EPD is *currently* unable to pay its debts when due. The moving parties submit no evidence at all that this is the case. The only alleged debts that are unpaid are the claims of the Petitioning Creditors themselves—which claims are the subject to ongoing litigation, and have been for months or years.

## V. CONCLUSION

Moving parties have failed to show that EPD is habitually not paying its debts. There is no evidence that EPD is dissolving or dispersing its assets for the purpose of avoiding payment, nor any explanation of why it would attempt to do so. Moving parties have failed to show any improper conduct, and have shown no evidence of any recent conduct at all. The fact that EPD is not paying a small group of disgruntled investors with whom it is in litigation does not warrant involuntary bankruptcy.

In addition, only in highly unusual circumstances, usually involving proof of dishonesty, is a trustee appointed to take over the debtor's business affairs on an interim basis. Moving parties have made absolutely no showing whatsoever of any such improper conduct by EPD. There is not a scintilla of evidence to support any such accusations.

The involuntary petition and the instant motion for appointment of an interim trustee are nothing but bad faith litigation tactics by parties involved in ongoing litigation with EPD. Moving parties have completely failed to meet their burden of proof on any issue. The motion for appointment of an interim trustee should be denied in its entirety.

DATED: January 18, 2011

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: /s/ John C. Kirkland
John C. Kirkland
Attorneys for Alleged Debtor
EPD INVESTMENT CO., LLC

# EXHIBIT X

Exhibit No. 169 MITCH A. GENSER, CSR#8239, NP Date: 6/20/11 Witness: KIRKLAND

COPY

John C. Kirkland, State Bar No. 149453
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa St., Suite 3900
Los Angeles, California 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Defendants
EPD INVESTMENT CO., LLC and JERROLD PRESSMAN

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court
MAY 11 2010
John A. Clarke, Executive Officer/Clerk
By A. WILLIAMS, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| MICHELLE HANSEL,<br><br>Plaintiff,<br><br>v.<br><br>EPD INVESTMENT CO., LLC, a California limited liability company; JERROLD PRESSMAN, an individual; and DOES 1-15,<br><br>Defendants. | Case No. SC 106151<br><br>The Hon. Joseph S. Biderman<br>Dept. WEK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT**<br><br>Date: May 18, 2010<br>Time: 8:30 am<br>Dept.: WEK |

## I. INTRODUCTION

The plaintiff in this case, Michelle Hansel ("Plaintiff"), asked Defendant Investment Company, LLC ("EPD"), a limited liability company to make investments for her and, afterwards, even took the appropriate "investment" tax deductions (*see infra*). In this lawsuit, she now seeks to prematurely recoup her investment -- for which there is no proof of any actual loss (as opposed to a temporary delay in payments) -- by claiming that she "loaned" EPD, together with Defendant Jerrold S. Pressman ("Pressman") (collectively "Defendants"), these funds rather than simply using EPD as a vehicle to make investments on her behalf. The preponderance of the evidence does not support her recast "collection" claims, nor does it in any way establish any individual liability by Mr. Pressman, who only signed some of the underlying documents as a member and

68

representative of EPD, a limited liability company.

Now, by this application, Plaintiff seeks to use the Court's attachment process in an improper attempt to extort a settlement out of Defendants in her otherwise baseless suit. As this Court agreed in the previous hearing on Plaintiff's ex parte application for a writ of attachment, and as set forth in detail below, attachment is inappropriate in this case because, *inter alia*, Plaintiff is extremely unlikely to prevail on the merits of her claims against either EPD or Pressman.[1] Thus, her after the fact "collection" efforts should not be enforced by this Court, especially at such a premature stage without the evidence necessary to support her claims.

## II. PLAINTIFF CANNOT FULFILL THE REQUIREMENTS FOR PREJUDGMENT ATTACHMENT AGAINST DEFENDANTS

### A. Plaintiff's Claims Against Mr. Pressman Are Not The Type Upon Which Attachment May Be Issued

As Plaintiff states in her application, because Mr. Pressman is a natural person, the attachment claim must arise out of conduct related to a "trade, business, or profession," see Cal. Civ. Pro. Code §483.10, which Plaintiff herself defines as "almost any activity engaged in *for profit* with any frequency or regularity (emphasis added)." *See also Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson*, 197 Cal. App. 3d 1, 4 (1987). Plaintiff has made no showing that Mr. Pressman engaged in any activity in connection with Plaintiff "for profit." Since Plaintiff has the burden of proving this by a preponderance of the evidence, and because this is an absolute requirement for attachment against a natural person, her claim fails because of complete lack of any relevant evidence on this required element.

As Plaintiff states, the principal purpose behind exempting the property of natural persons

[1] Defendants have ordered the transcript from the hearing on the ex parte application and will provide a copy to the Court at the Court's request.

unless related to a trade or profession is to limit writs to commercial transactions. (*See id.*) There is no evidence that either EPD or Mr. Pressman conducted any business for profit – and certainly not enough to attach Mr. Pressman's private residence or personal property. In fact, Mr. Pressman is an investor in EPD and minority member, who has no other personal or commercial connections with or obligations to Plaintiff except as a member of EPD, the limited liability company. Even if Plaintiff's claims against Defendants had merit – which they do not – Mr. Pressman cannot be subject to attachment in connection with those claims.

B. <u>Even If Plaintiff's Claims Against Mr. Pressman Were Deemed Commercial Claims Subject To Attachment, Plaintiff Will Not Likely Prevail On Those Claims</u>

**a. Plaintiff Has Provided No Evidence Supporting Alter Ego Liability**

In her case in chief, Plaintiff seeks to hold Mr. Pressman individually liable on Notes he signed only as a member of EPD, a California limited liability company. This is directly contrary to California law regarding limited liability companies, which provides that no individual may held liable solely by virtue of his or her membership in the company. *See* Cal. Corp. Code section 17101 ("no member of a limited liability company shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the limited liability company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a member of the limited liability company").

Plaintiff contends she can attach Mr. Pressman's personal property and home through alter ego liability, although she provides absolutely no evidence to support such a claim. Alter ego liability is extremely difficult to establish in connection with a limited liability company in California, *see e.g.*, Cal. Corp. Code section 17101 ("…the failure to hold meetings of members or managers or the failure to observe formalities pertaining to the calling or conduct of meetings shall not be considered a factor tending to establish that a member or the members have alter ego or personal liability for any debt,

obligation, or liability of the limited liability company…"). In fact, the California Corporations Code only allows a member to be held liable on a personal guarantee for the company if "the agreement to be so obligated is set forth in the articles of organization or in a written operating agreement that specifically references this subdivision." (*Id.*) Plaintiff has provided absolutely no evidence of any alter ego liability between Mr. Pressman and EPD. Thus, her claim for attachment against Mr. Pressman fails for complete lack of evidence on this required element.

**b. Plaintiff Is Not Likely To Prevail On Her Claims Against Mr. Pressman Because None Of The California Civil Code Requirements for Guarantees Have Been Met**

Plaintiff also alleges Mr. Pressman should be held liable individually because he purportedly personally guaranteed repayment of the alleged "loans" from Plaintiff. But this argument is also likely to fail. As explained below, no prejudgment attachment can issue against Mr. Pressman individually because the purported personal guarantee relied upon by Plaintiff as the sole basis for this theory contains none of the *Gradsky* waivers, meets none of the statutory requirements, including his signature in his individual capacity, and is not supported by the consideration necessary to create an enforceable continuing guarantee. *See* Cal. Civ. Code § 2787, et seq.; *Union Bank v. Gradsky*, 265 Cal. App. 2d 40, 71 Cal. Rptr. 64 (1968).

**1. <u>The Purported Guarantee Is Not Signed.</u>**

California Civil Code section 2793 provides that "a suretyship obligation must be in writing, and signed by the surety." Plaintiff has failed to produce any written guarantee signed by Mr. Pressman as an individual. Plaintiff's guarantee claims are based on the temporary promissory notes mentioned above issued by EPD, in which EPD allegedly promises to pay $350,000 and $105,000, respectively, to Plaintiff. (*See* Complaint, Exhs. A and D.) Plaintiff also attaches two "Deposit Acknowledgements" from EPD stating that they are addenda to the original notes from EPD -- **not** from Mr. Pressman. (*See* Complaint, Exhs. B and C.) Each of these four documents is signed by Mr. Pressman only in his capacity as a representative and minority member of EPD -- **not** in his individual

or personal capacity. (*Id.*)

Nonetheless, Plaintiff bases her claims against Mr. Pressman primarily on one of the deposit acknowledgements, which contains a statement at the bottom, "Personally Guaranteed by Jerrold S. Pressman." (*See* Complaint, Exh. B.) However, there is no signature of any kind below this statement, and no signature by Pressman anywhere on that document (or on any other document) in any capacity other than as a member of EPD. (*See* Complaint, Exh. B.) Plaintiff cannot rely on this single statement of guarantee as the sole basis for liability of Mr. Pressman individually. (*See* Complaint, 10.) Such an unsigned guarantee is unenforceable as a matter of law under Cal. Civ. Code § 2793 and the California Corporations Code.

**2. Plaintiff Must Exhaust Her Remedies Against EPD Before Seeking Any Relief From Mr. Pressman**

Even assuming, *arguendo,* that the guarantee were otherwise enforceable, Civil Code section 2845 requires that Plaintiff must first pursue and exhaust her remedies against EPD, before pursuing any claim against Mr. Pressman individually as guarantor. As the court clearly stated in *Gradsky,* "Civ. Code § ... 2845 . . . provide[s] that ... a surety has the right to require the creditor to exhaust his remedies against the debtor and any security **before** he pursues the surety or guarantor." *Gradsky,* 71 Cal. Rptr. at 67 (emphasis added). In the absence of a valid *Gradsky* waiver, Plaintiff cannot pursue her remedies concurrently against both EPD and Mr. Pressman—and certainly cannot seek prejudgment attachment against Mr. Pressman before first exhausting her remedies against the principal obligor. Even if she could obtain and seek to enforce a judgment against EPD (which she cannot), assuming the guarantee were otherwise enforceable (which it is not), she would only be entitled to seek relief from Mr. Pressman to the extent she could not collect from EPD the entire amount purportedly due.

**3. Plaintiff's Actions Have Exonerated Any Claims Against Mr. Pressman**

Under California Civil Code section 2819, "any act of the creditor" by which the principal obligation may be "in any way impaired or suspended" fully exonerates the guarantor. As noted on the face of the notes, the notes were temporary until a more permanent investment by Plaintiff could be entered into. The temporary loans were in fact converted to such investments, and one of

Plaintiff's own tax returns reveals her characterization of the amounts paid as "investments." Specifically, the $350,000 deposit (*see* Complaint, Exh. A) was reflected on line 36 of Plaintiff's 2005 federal income tax return as a $350,000 tax deduction.[2] Obviously a loan is not tax deductible, and the fact that Plaintiff took a deduction on a return filed in the year the note was issued is evidence that even Plaintiff considered these payments investments. As such, they potentially impair the primary obligation of EPD (a limited liability company), provide proof of Plaintiff's own characterization of the funds, and fully exonerate Mr. Pressman as an individual guarantor.

**4. <u>There Can Be No Continuing Guarantee Without Additional Consideration</u>**

Under California Civil Code section 2792, "there must be a consideration distinct from that of the original obligation" for a continuing guarantee to be enforceable. No such consideration is alleged as to Mr. Pressman individually. Accordingly, there can be no continuing guarantee as a matter of law.

**c. Plaintiff Is Unlikely To Prevail On The Merits Of Her Claims Against Defendants Because The Alleged Notes Are Unenforceable As Against Public Policy**

Even if the alleged notes on which Plaintiff sues are deemed to evidence actual "loans" made by Plaintiff to Defendants, these loans would violate the California Constitution and the California Finance Lenders Law and therefore should not be enforced by this Court against any of the Defendants.

First, the California Constitution provides that interest on any loan in California – whether consumer or commercial – may not exceed 10% percent per annum. Cal. Const. Art. 15, section 1. In

[2] In the interests of protecting Plaintiff's privacy, a copy of the tax return is not filed herewith. In the unlikely event that Plaintiff denies the contents of her own tax return, a copy of the as-filed return will be presented to the Court at the hearing.

this case, Plaintiff's alleged Notes require interest payments of 12%. They are therefore usurious and unenforceable.

In addition, to ensure the enforcement of the protections provided by Article 15 of the California Constitution, the Legislature enacted the California Finance Lenders Law. This law requires that, subject to some limitations, anyone who makes more than one loan over $10,000.00 in any 12 month period be a properly licensed broker or finance lender as provided by law. Plaintiff has provided no evidence that she has such a license or is otherwise exempt from this law, yet it is Plaintiff's burden to prove any exemption from these laws by a preponderance of the evidence. Because she cannot, the Court should not enforce usurious loans made by an unlicensed lender.

## III. CONCLUSION

Plaintiff's claims against Defendants do not belong in Court in the first place, and there is certainly no basis to attach any of Defendants' property, especially Mr. Pressman's personal residence. Neither EPD nor Mr. Pressman has ever borrowed any money from Plaintiff. Plaintiff asked EPD to invest money on her behalf, and, as a minority member in EPD, Mr. Pressman merely represented the company in its dealings with Plaintiff on behalf of the company. He has never personally accepted any money from Plaintiff in his individual capacity, and has never received any profits or proceeds from her investment. Moreover, there is no evidence that there has been any loss of Plaintiff's money at all. Rather, there has only been a delay in income payments. For these reasons, Plaintiff is unlikely to prevail on the merits of her claims against EPD or Mr. Pressman, and there is absolutely no basis for attachment of any of Mr. Pressman's personal property, including his personal residence.

DATED: May 11, 2010 LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: ______________________
John C. Kirkland
Attorneys for Defendants EPD INVESTMENT CO., LLC and JERROLD PRESSMAN

**PROOF OF SERVICE**

Hansel v. EPD Investment Co., LLC, et al, Case No. SC106151

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 601 S. Figueroa, Suite 3900, Los Angeles, California 90017.

On May 11, 2010, I served true copies of the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT** on the interested parties in this action as follows:

Stephen M. Doniger, Esq.
DONIGER / BURROUGHS, APC
300 Corporate Pointe, Suite 355
Culver City, CA 90230
Facsimile: 310-417-3538
*Attorney for Michelle Hansel*

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & ScrippsLLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 11, 2010, at Los Angeles, California.

Lisa Underkoffler

# EXHIBIT Y

John C. Kirkland, State Bar No. 149453
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa St., Suite 3900
Los Angeles, California 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Defendants
EPD INVESTMENT CO., LLC and JERROLD PRESSMAN

FILED
LOS ANGELES SUPERIOR COURT
JUN 23 2010
JOHN A. CLARKE, CLERK
BY KRISTEL SANDOVAL, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| MICHELLE HANSEL,<br><br>Plaintiff,<br><br>v.<br><br>EPD INVESTMENT CO., LLC, a California limited liability company; JERROLD PRESSMAN, an individual; and DOES 1-15,<br><br>Defendants. | Case No. SC 106151<br><br>The Hon. Joseph S. Biderman<br>Dept. WEK<br><br>**DEFENDANT JERROLD PRESSMAN'S OPPOSITION TO PLAINTIFF'S EX PARTE ATTACHMENT MOTION**<br><br>DATE: June 23, 2010<br>TIME: 8:30 a.m.<br>DEPT: WEK |

Def(s) ____ Pl(s) 90 EXHIBIT for I.D.
MITCH A. GENSER, CSR#8239, NP
Date: 6/26/17
Witness: Kirkland

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This motion has already been denied twice. The third time is not a charm, and it should be denied again.

Plaintiff filed her complaint last year, waited three months, and then brought an ex parte attachment application against Jerrold Pressman on March 3, 2010. It was denied. The Court stated that plaintiff had failed to show any urgency, and had also failed to establish a probability of success against Mr. Pressman individually, because the purported personal guarantee was not signed, the requirements of the Civil Code for a personal guarantee to be enforceable were not met, and Plaintiff had failed to exhaust her remedies against the primary obligor before suing Mr. Pressman individually, all fatal defects.

Plaintiff waited two more months, and then filed a noticed motion for pre-judgment attachment against both EPD Investment Co. and Mr. Pressman individually. The Court issued a written tentative, denying the motion against Mr. Pressman individually, on essentially the same grounds as it had denied the ex parte, i.e. no probability of success on the merits. Plaintiff submitted on the tentative, and the motion was denied as to Mr. Pressman. At Plaintiff's request, the Court continued the motion against EPD Investment Co. until June 28, 2010, inter alia, to give Plaintiff the opportunity to establish that she had complied with the California Finance Lenders Law.

Apparently undeterred by the Court's prior rulings or Code Civ. Proc. § 1008(e), at 2:00 pm yesterday afternoon, Plaintiff gave ex parte notice that she would today try thrice.[1] In addition to the Court having no jurisdiction to hear the motion again, the instant ex parte continues to suffer from all the same problems as the first two times.

### II. THE MOTION IS BARRED BY CODE CIV. PROC. 1008(e)

When a motion is denied, it can only be brought again on the basis of newly discovered evidence, which could not with reasonable diligence have been presented the first time. *See* Code Civ.

[1] The late notice is particularly problematic, because defense counsel is in trial in Dept. 47 in Chatsworth, and scheduled to give closing argument to the jury at 9:30 this morning.

Proc. § 1008(a). This section specifies the Court's jurisdiction with respect to re-deciding the same motion. *See* Code Civ. Proc. § 1008(e).

III. THE MOTION SHOULD NOT BE HEARD EX PARTE

Attachment may only be issued ex parte when "great or irreparable" injury would result in the absence of ex parte relief. *See* Weil & Brown, *Cal. Civ. Proc. Before Trial*, ¶9:876 (Rutter 2009). This normally requires a showing that the property to be attached will disappear or be harmed pending a noticed hearing. Code Civ. Proc. § 485.010. Indeed, due process mandates that "exigent circumstances" be shown in order to justify granting any relief without full notice, adequate time to prepare a response, and reasonable opportunity to be heard. *Connecticut v Doehr*, 501 U.S. 1, 17 (1991), *Tri-State Develop.* v. *Johnston*, 160 F.3d 528, 530 (9th Cir. 1998), *Cal. Civ. Proc. Before Trial*, ¶9:854.

There is no extreme emergency requiring that Plaintiff's motion be heard ex parte, without providing the individual defendant with an adequate opportunity to respond. Given Plaintiff's delay in seeking relief (and the fact that there was already a noticed motion set for this coming Monday), there is no basis for hamstringing Mr. Pressman's ability to defend himself by allowing the motion to be heard without any notice.

IV. PLAINTIFF SHOULD NOT BE GRANTED ATTACHMENT, BECAUSE SHE HAS NOT PROVEN THAT SHE IS LIKELY TO PREVAIL ON THE MERITS

In order to obtain attachment, Plaintiff must establish the probable validity of her claims. Code Civ. Proc. § 481.190, *Kemp Bros. Const., Inc. v. Titan Elec. Corp.*, 146 Cal. App. 4th 1474, 1476 (2007). A claim has "probable validity" only where it is "more likely than not that the plaintiff will obtain a judgment against the defendant on that claim" Cal. Civ. Proc. Code § 481.190. It is her burden to prove the claims by a preponderance of evidence, based on evidence admissible under proper rules of evidence. *Bank Nederland v. Eyes of the Beholder, Ltd.*, 61 Cal. App. 4th 1384, 1390 (1998). As set forth in detail below, Plaintiff has failed to prove her claims. Indeed, her claims against Mr. Pressman individually are utterly frivolous.

## V. THE PURPORTED GUARANTEE IS NOT SIGNED, AS REQUIRED BY LAW

Pre-judgment attachment cannot issue against Mr. Pressman, because the purported personal guarantee relied upon by Plaintiff as the sole basis for her motion against him is not signed by Mr. Pressman individually. Civil Code section 2793 provides that "a suretyship obligation must be in writing, and signed by the surety." **Plaintiff has failed to produce any written guarantee signed by Mr. Pressman, and her claim against him is therefore legally untenable.**

Plaintiff's complaint relies upon a promissory note and a "Temporary" promissory note allegedly given by defendant EPD Investment Co., LLC, a California limited liability company. *(See* Complaint, Exhs. A and D.) The Complaint also attaches two "Deposit Acknowledgements" from the limited liability company, stating that they are addenda to the original notes from EPD Investment Co. *(See* Complaint, Exhs. B and C.) These same documents are referenced in Michelle Hansel's declaration in support of her noticed motion for attachment. Each of these four documents is signed by the entity, EPD Investment Co., LLC. *(Id.)*

One of the acknowledgements contains a statement at the bottom, "Personally Guaranteed by Jerrold S. Pressman." *(See* Complaint, Exh. B.) However, there is no signature of any kind below this statement. *(See* Complaint, Exh. B.) Nevertheless, the Complaint relies upon this single unsigned statement of guarantee as the sole basis for liability of Mr. Pressman individually. *(See* Complaint, 10.) Such an unsigned guarantee is unenforceable as a matter of law. Civ. Code § 2793. Moreover, Ms. Hansel's ambiguous assertions of oral statements allegedly made by Mr. Pressman cannot satisfy the requirement for a signed writing.

Because the purported guarantee is not signed by Mr. Pressman individually, the Court cannot find by a preponderance of the evidence that he is liable on the guarantee—because as a matter of law he cannot be.

## VI. THE PURPORTED GUARANTEE FAILS TO MEET ANY OF THE STATUTORY REQUIREMENTS FOR AN ENFORCEABLE GUARANTEE

As set forth in detail below, the purported personal guarantee of Mr. Pressman meets none of the statutory requirements for an enforceable personal guarantee. *See* Cal. Civ. Code § 2787, et seq.;

*Union Bank v. Gradsky*, 265 Cal. App. 2d 40, 71 Cal. Rptr. 64 (1968).

A. PLAINTIFF MUST EXHAUST HER REMEDIES AGAINST EPD BEFORE SEEKING ANY RELIEF AGAINST MR. PRESSMAN

Even assuming, *arguendo*, that the guarantee were otherwise enforceable (which it is not), Civil Code section 2845 requires that Plaintiff must first pursue and exhaust her remedies against the alleged primary obligor, EPD Investment Co., before pursuing any claim against Mr. Pressman individually as guarantor. As the court expressly stated in *Gradsky*, "Civ. Code § ... 2845 . . . provide[s] that ... a surety has the right to require the creditor to exhaust his remedies against the debtor and any security **before** he pursues the surety or guarantor." *Gradsky*, 71 Cal. Rptr. at 67 (emphasis added).

In the absence of a valid *Gradsky* waiver, plaintiff cannot pursue her remedies concurrently against both EPD Investment Co. and Mr. Pressman—and certainly cannot seek prejudgment attachment against Mr. Pressman before first exhausting her remedies against the principal obligor. She must first obtain and seek to enforce a judgment against EPD Investment Co. Only if she first obtains a judgment on the merits against EPD Investment Co., and her efforts to collect the judgment against EPD Investment Co. fail to obtain the full amount proven due, can she then seek

B. THERE CAN BE NO CONTINUING GUARANTEE WITHOUT ADDITIONAL CONSIDERATION

Under Civil Code section 2792, "there must be a consideration distinct from that of the original obligation" for a continuing guarantee to be enforceable. No such consideration is alleged as to Mr. Pressman. Accordingly, there can be no continuing guarantee as a matter of law. There can therefore be no likelihood of prevailing on the merits, and the attachment motion must be denied.

VII. PLAINTIFF IS NOT LIKELY TO PREVAIL ON THE MERITS OF HER CLAIM AGAINST EPD INVESTMENT CO., LLC

A. THE FUNDS WERE INVESTMENTS, NOT LOANS SUBJECT TO REPAYMENT

Even assuming, arguendo, that Plaintiff's claims against Mr. Pressman individually did not suffer from all of the fatal defects set forth above (which they do), she has still failed to prove likelihood of

success on the merits of her underlying claim. The Declaration of Ruben Moreno filed herewith refutes all of the factual claims made by Ms. Hansel in her self-serving declarations. As set forth in detail in Mr. Moreno's sworn declaration, the alleged notes were, as noted on their very face, only "Temporary" to facilitate a long-term investment by Plaintiff in equipment leases. (*See* Moreno Decl., ¶¶ 3-7 and Exh. "A".) The temporary loans were in fact converted to such investments. Indeed, Plaintiff's own tax return **proves** that the $350,000.00 was an at-risk investment, not a loan subject to repayment by EPD Investment Co. (*See* Moreno Decl., ¶¶ 8-10 and Exh. "B".) If the money was not an investment fully at risk, the Plaintiff has committed tax fraud. (*See* Moreno Decl., ¶ 10.) She reported the $350,000 investment to the IRS as an equipment lease, which was reflected on line 36 of Plaintiff's 2005 federal income tax return as a $350,000 tax deduction. Obviously a loan is not tax deductible, and the fact that plaintiff took a deduction on a tax return filed for the year the "Temporary" note was issued shows that any loan was, in fact, converted to an investment in a lease.

Aside from the facially ambiguous "temporary" notes, the only other evidence Ms. Hansel has is a settlement communication. (See Hansel Decl., Exh. 6.) As the Court itself rightfully noted at the initial ex parte hearing, such an offer in compromise is completely inadmissible. *See* Cal. Evid. Code § 352(a).

In addition, Plaintiff herself concedes that payments of approximately $250,000 were given to her by EPD Investment Co.[2] (See also Moreno Decl., ¶ 17.) Together with the $350,000 write off, this show that Plaintiff has already been made whole on the $600,000 she claims, and there is no conceivable basis for any attachment.

When there are major factual disputes, directly conflicting evidence, and documentary evidence proving beyond peradventure that Plaintiff's evidence is, at least in part, incorrect, the Court cannot and should not find probable validity of the claims, i.e. that Plaintiff is likely to obtain a judgment on the merits. Pre-judgment attachment is appropriately denied in such circumstances.

[2] As noted in Defendants' prior opposition memorandum, such funds cannot be considered interest, because the interest rate stated in the "Temporary" notes is usurious, thus voiding all interest.

B. PLAINTIFF HAS FAILED TO COMPLY WITH THE CALIFORNIA FINANCE LENDERS LAW

Plaintiff is trying to eat her cake and have it to, arguing on the one hand that the funds paid to EPD Investment Co. were investments, and therefore she is not subject to the California Finance Lenders Law—while at the same time asserting that they were loans that had to be repaid, which clearly would subject her to the law. In truth, Plaintiff is caught squarely between a rock and a hard place. If the funds were investments, then they were at risk, and not subject to an unconditional repayment obligation. If they were promissory notes, then she is a lender, and subject to the California Finance Lenders Law. *See* Cal. Fin. Code § 22100. *Cf. Ury v. Jewlers Acceptance Corp.*, 227 Cal. App. 2d 11 (1964) (lack of compliance not timely raised).

The only exception under California law, as found by any California court, is for making less than one loan per year. *See* Cal. Fin. Code § 22050(e). If the notes were loans, not investments, then Plaintiff made multiple loans, and does not fall within the safe harbor. She cannot claim that this was merely a personal accommodation between friends, and the seek collection like a bank. Here position is entirely self-defeating. The internal inconsistency within her own position precludes a finding of probable validity, and the Court cannot find that plaintiff will likely obtain a judgment on such claims. See *Bank Nederland*, , 61 Cal. App. 4th at 1390.

Lastly, Plaintiff argues that there should be no consequence at all for her failure to be properly licensed. But the law does not give a right without a remedy. At a bare minimum, Plaintiff must become a properly licensed lender before bringing a collection action to enforce a series of loans made in violation of the law. Like a corporation that has been suspended, she cannot come before the Court seeking legal relief until she has complied with the mandatory licensing provisions of the law. As such, the motion should be denied.

VIII. CONCLUSION

Plaintiff improperly seeks a third bite at the apple against Mr. Pressman, apparently hoping that by once again denying him a full opportunity to defend himself, she will hoodwink the Court into changing its ruling. Despite having insufficient time to fully respond, Defendant has shown

once again that Plaintiff's claims are legally meritless. Plaintiff's motion should be denied again.

DATED: June 23, 2010 LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: ____________________
John C. Kirkland
Attorneys for Defendants

# EXHIBIT Z

[redacted]

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

09-7208082773
09/11/2009 10:03
FILED
CALIFORNIA SECRETARY OF STATE
SOS
22302680003 UCC 1 FILING

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

National Corporate Research, Ltd.
1107 9th Street, Suite 1025
Sacramento, CA 95814
P6-10034513

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME<br>EPD INVESTMENT CO., LLC | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS<br>520 BROADWAY STE 660 | CITY<br>SANTA MONICA | STATE<br>CA | POSTAL CODE<br>90401 | COUNTRY<br>USA |
| 1d. TAX ID #: SSN OR EIN<br>20-0150092 | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION<br>Limited Liability Co. | 1f. JURISDICTION OF ORGANIZATION<br>CALIFORNIA | 1g. ORGANIZATIONAL ID #, if any<br>200317910131 ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME<br>PRESSMAN | FIRST NAME<br>JERROLD | MIDDLE NAME<br>S. | | SUFFIX |
| 2c. MAILING ADDRESS<br>520 BROADWAY STE 660 | CITY<br>SANTA MONICA | STATE<br>CA | POSTAL CODE<br>90401 | COUNTRY<br>USA |
| 2d. TAX ID #: SSN OR EIN<br>[redacted] | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any<br>☑ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS<br>754 SWARTHMORE AVE | CITY<br>PACIFIC PALISADES | STATE<br>CA | POSTAL CODE<br>90272 | COUNTRY<br>USA |

4. This FINANCING STATEMENT covers the following collateral:

ALL ASSETS.

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

M42208

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# EXHIBIT AA

[redacted]

1072311222
05/05/2010 15:55
FILED
CALIFORNIA
SECRETARY OF STATE
SOS
24911640013 UCC 3 FILING

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

National Corporate Research, Ltd.
1107 9th Street, Suite 1025
Sacramento, CA 95814
P6-10034513
m045283-2

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
097208082773

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☒ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

This amendment is to clarify and confirm that the prior grant of security did not include the stock of North Hills Industrial Park, Inc., a California S-Corporation.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Bright Conscience Trust dated 9/9/09 | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) — CALIFORNIA (REV. 01/01/08)

24911640013

## UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

097208082773

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

| 12a. ORGANIZATION'S NAME | | |
|---|---|---|
| Bright Conscience Trust dated 9/9/09 | | |
| OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
| | | |

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

# EXHIBIT BB

# Delaware

PAGE 1

The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "HMB HOLDINGS, LLC" AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF FORMATION, FILED THE FOURTEENTH DAY OF SEPTEMBER, A.D. 2009, AT 8:22 O'CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "HMB HOLDINGS, LLC".

SECRETARY OF STATE · 1776 · DELAWARE · 1976

Jeffrey W. Bullock, Secretary of State

4730029 8100H

110451019

AUTHENTICATION: 8714883

DATE: 04-25-11

You may verify this certificate online
at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 08:32 AM 09/14/2009
FILED 08:22 AM 09/14/2009
SRV 090850759 - 4730029 FILE

# STATE *of* DELAWARE
# LIMITED LIABILITY COMPANY
# CERTIFICATE *of* FORMATION

**First:** The name of the limited liability company is

HMB HOLDINGS, LLC

**Second:** The address of its registered office in the State of Delaware is

615 S. DuPont Highway in the City of Dover.

Zip code 19901. The name of its Registered agent at such address is

National Corporate Research, Ltd.

**Third:** (Use this paragraph only if the company is to have a specific effective date of dissolution: "The latest date on which the limited liability company is to dissolve is __________.")

**Fourth:** (Insert any other matters the members determine to include herein.)

**In Witness Whereof,** the undersigned have executed this Certificate of Formation this 14th day of September, 2009.

By: /s/ John C. Kirkland
Authorized Person (s)

Name: John C. Kirkland, Authorized Person

# EXHIBIT CC

Case 2:10-bk-62208-ER Claim 209 Filed 12/12/11 Desc Main Document Page 1 of 4

B10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT Central District Of California | PROOF OF CLAIM |
|---|---|
| Name of Debtor: EPD Investment Co., LLC | Case Number: 2:10-62208-ER |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
HMB HOLDINGS LLC

Name and address where notices should be sent:
HMB HOLDINGS LLC
23448 MOON SHADOWS DRIVE
MALIBU CA 90265-3029

FILED
DEC 12 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY Deputy Clerk

Telephone number:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:________
(*If known*)

Filed on:________

Name and address where payment should be sent (if different from above):

Telephone number:

☒ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 12,750,000.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** ________
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** ________

**3a. Debtor may have scheduled account as:** ________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**

**Value of Property: $**________ **Annual Interest Rate**__%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $**________ **Basis for perfection:** ________

**Amount of Secured Claim: $** 12,750,000 — **Amount Unsecured: $**________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)( ).

**Amount entitled to priority:**

$________

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



004921

75304004925029

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "**redacted**".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor. ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.) ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:
Title:
Company:
Address and telephone number (if different from notice address above): [redacted] 2429

(Signature) 12-8-11 (Date)

Telephone number: email: THOM @ BROADWAYONTOPTAINMAIL.COM

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

Case 2:10-bk-62208-ER Claim 209 Filed 12/12/11 Desc Main Document Page 3 of 4

HMB Holdings recorded a collective UCC-1 on behalf of the following creditors of EPD Investment Co LLC to secure a portion of their debt in 2009

Each of the following Creditors has also claimed this debt on their personal Form 10 Section 4.

In order to perfect the claim and preserve HMB s Holdings rights this attached claim is designed to replace the claims of the attached creditors and in the amounts set forth by each of their names if it is determined that their claim should not be reflected in their Proof of claim form, but in this Proof of claim form.

Further it is understood that with both parties claiming the same amount this duplication of the total amount of claims will cause the total amount of creditor claims to be erroneously increased by one of the claims.

| | |
|---|---|
| Lawrence Cooper | $1,000.000.00 |
| Thomas Ferro | $2,000,000.00 |
| Ferro Trust | $500,000.00 |
| Melvin Glick | $250.000.00 |
| Ralph Grande | $750.000.00 |
| Norman Hanover | $750.000.00 |
| B Andrews estate | $1,250,000.00 |
| Miller Carbonic | $1,250,000.00 |
| Ron Sharrow | $200,000.00 |
| Kelly Watson | $200,000.00R |
| Raymond Brosio | $1,000,000.00 |
| Robert Browne | $1,500.000.00 |
| Mitch Carter | $600,000.00 |
| | ------------------------------ |
| Total | $12,750,000.00 |

## DOCUMENTATION IN SUPPORT OF PROOF OF CLAIM

The documentation in support of **HMB Holdings** proof of claim ("the Claim"), as it pertains to account number ***HMB filed in the bankruptcy case of EPD Investment Co., LLC (bearing case number 2:10-bl-62208-ER) is not attached hereto because such documentation is voluminous and may be protected from disclosure because of the attorney-client privilege and/or work-product doctrine.

In the event that a real party in interest seeks production of the documentation in support of this proof of claim, the documentation shall only be produced in such a manner, including, but not limited to, the documents being redacted, to maintain & insure the attorney-client privilege and/or work product doctrine.

On behalf of **HMB Holdings**, all rights and remedies are hereby reserved.

**Loan #1 $12,750,000.00**

# EXHIBIT DD

Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: sgubner@ebg-law.com
cweber@ebg-law.com

☐ *Individual appearing without attorney*
☒ *Attorney for:* Jason M. Rund, Chapter 7 Trustee

FOR COURT USE ONLY

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

In re:

EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN,

Debtor(s).

CASE NO.: 2:10-bk-62208-ER

CHAPTER: 7

## NOTICE OF MOTION FOR:

CHAPTER 7 TRUSTEE'S THIRD OMNIBUS MOTION FOR APPROVAL OF COMPROMISES WITH: (1) HMB HOLDINGS, LLC, THOMAS FERRO, INDIVIDUALLY AND DBA MOON SHADOWS LEASING, AND ROSA FERRO; (2) JERRY FERRO AND ANN FERRO, INDIVIDUALLY AND AS TRUSTEES OF THE FERRO FAMILY TRUST; (3) DR. MELVIN GLICK AKA MELVIN GLICK AND ELLEN GLICK; (4) RALPH GRANDE INDIVIDUALLY AND DBA GRANDE CANYON LEASING; (5) NORMAN HANOVER AND MARY LOU HANOVER; (6) RON SHARROW INDIVIDUALLY AND DBA SHARROW SPRINGS LEASING; (7) DR. LAWRENCE COOPER AND JANET COOPER; (8) MILLER CARBONIC, INC., MILLER INVESTMENT PLAN, JAMES ROSENBAUM AND TRACY ROSENBAUM, AND 4 R HORSE FARM; (9) KELLY WATSON AKA ELIZABETH KELLY WATSON; AND (10) RAYMOND BROSIO AKA RAY BROSIO INDIVIDUALLY AND DBA RAY BROSIO LEASING CO., RJ BROSIO FAMILY TRUST AND THE BROSIO FAMILY LIMITED PARTNERSHIP AKA BROSIO FAMILY LP

**(*Specify name of Motion*)**

DATE: 12/04/2013
TIME: 10:00 am
COURTROOM: 1568
PLACE: United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

1. TO (*specify name*): THE HONORABLE ERNEST M. ROBLES, ALL CREDITORS AND TO ALL INTERESTED PARTIES:

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date: October 30, 2013

EZRA BRUTZKUS GUBNER LLP
Printed name of law firm

/s/ Corey R. Weber
Signature

COREY R. WEBER
Printed name of attorney

STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: sgubner@ebg-law.com
cweber@ebg-law.com

Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN,<br><br>Consolidated Debtors. | Case No. 2:10-bk-62208-ER<br>[Lead Case]<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S THIRD OMNIBUS MOTION FOR APPROVAL OF COMPROMISES WITH: (1) HMB HOLDINGS, LLC, THOMAS FERRO, INDIVIDUALLY AND DBA MOON SHADOWS LEASING, AND ROSA FERRO; (2) JERRY FERRO AND ANN FERRO, INDIVIDUALLY AND AS TRUSTEES OF THE FERRO FAMILY TRUST; (3) DR. MELVIN GLICK AKA MELVIN GLICK AND ELLEN GLICK; (4) RALPH GRANDE INDIVIDUALLY AND DBA GRANDE CANYON LEASING; (5) NORMAN HANOVER AND MARY LOU HANOVER; (6) RON SHARROW INDIVIDUALLY AND DBA SHARROW SPRINGS LEASING; (7) DR. LAWRENCE COOPER AND JANET COOPER; (8) MILLER CARBONIC, INC., MILLER INVESTMENT PLAN, JAMES ROSENBAUM AND TRACY ROSENBAUM, AND 4 R HORSE FARM; (9) KELLY WATSON AKA ELIZABETH KELLY WATSON; AND (10) RAYMOND BROSIO AKA RAY BROSIO INDIVIDUALLY AND DBA RAY BROSIO LEASING CO., RJ BROSIO FAMILY TRUST AND THE BROSIO FAMILY LIMITED PARTNERSHIP AKA BROSIO FAMILY LP;** |

**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JASON M. RUND IN SUPPORT THEREOF [Fed. R. Bank. P. 9019; Loc. Bankr. R. 9013-1]**

**Hearing:**

**Date:** December 4, 2013
**Time:** 10:00 a.m.
**Place:** Courtroom 1568
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 5 of 53

## TABLE OF CONTENTS

Page


MEMORANDUM OF POINTS AND AUTHORITIES ..... 16

I. INTRODUCTION ..... 16

II. BACKGROUND ..... 18

A. HMB Holdings. ..... 18

B. The EPD Bankruptcy Case. ..... 19

1. The Involuntary Petition and the Order for Relief ..... 19

2. The Motion to Compel and the Debtor's Filings of Statements, Schedules and a Creditor's Matirx ..... 19

3. EPD's Motion to Convert the Case to Chapter 11, and Motion to Alter or Amend ..... 19

4. The Rule 2004 Examinations ..... 20

C. The Pressman Bankruptcy Case ..... 20

D. Substantive Consolidation ..... 20

E. The Adversary Proceedings and Tolling Stipulations ..... 21

1. The HMB Adversary Proceeding. ..... 21

2. The Ferro Adversary Proceeding. ..... 21

3. The Glick Adversary Proceeding. ..... 21

4. The Sharrow Adversary Proceeding. ..... 21

5. The Tolling Stipulations with Grande ..... 21

6. The Tolling Stipulations with the Hanovers ..... 22

7. The Cooper Adversary Proceeding. ..... 22

8. The Miller Carbonic Adversary Proceeding and the 4 R Horse Farm Adversary Proceeding. ..... 22

9. The Watson Adversary Proceeding. ..... 23

10. The Brosio Adversary Proceeding. ..... 23

F. The Salient Terms of the Agreements ..... 23

The HMB Agreement. ..... 23

The Ferro Agreement. ..... 26

The Glick Agreement. ..... 26

The Grande Agreement. ..... 28

The Hanover Agreement. ..... 28

The Sharrow Agreement. ..... 29

The Cooper Agreement. ..... 30

The Miller Carbonic Agreement. ..... 31

**TABLE OF CONTENTS - Continued**

Page

The Watson Agreement. .....32
The Brosio Agreement.....33
III. THE AGREEMENTS ARE PROPERLY APPROVED.....35
A. Legal Standards for Approval.....35
B. Application of the *A&C Properties* Factors Demonstrates That the Agreements Should Be Approved. .....36
1. The A & C Properties Factors As to the Agreements.....36
a. Probability of Success on the Merits.....36
b. The Difficulty, If Any, In Collection.....38
c. The Complexity, Expense and Inconvenience of Litigation.....38
d. The Paramount Interests of Creditors.....39
IV. CONCLUSION.....40
DECLARATION OF JASON M. RUND.....41
EXHIBIT A – HMB SETTLEMENT AGREEMENT.....47
EXHIBIT B – FERRO SETTLEMENT AGREEMENT.....54
EXHIBIT C – GLICK SETTLEMENT AGREEMENT.....60
EXHIBIT D – SHARROW SETTLEMENT AGREEMENT.....66
EXHIBIT E – GRANDE SETTLEMENT AGREEMENT.....71
EXHIBIT F – HANOVER SETTLEMENT AGREEMENT.....77
EXHIBIT G – COOPER SETTLEMENT AGREEMENT.....82
EXHIBIT H – MILLER CARBONIC SETTLEMENT AGREEMENT.....89
EXHIBIT I – WATSON SETTLEMENT AGREEMENT.....96
EXHIBIT J – BROSIO SETTLEMENT AGREEMENT.....101

## TABLE OF AUTHORITIES

Page

**CASES**

In re A&C Properties,
784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854, 107 S. Ct. 189 (1986)...35, 36

In re Morrison,
69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) ....35

In re W.T. Grant Co.,
699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1984)
(quoting Newman v. Stein, 464 F.2d 689, 698 (2d Cir.), cert. denied,
409 U.S. 1039 (1972)) ....35

In re Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982) ....35

In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988) ....35

**STATUTES**

11 U.S.C. § 706(a) ....19
California Civil Code § 1542....5, 6, 7, 9, 10, 11, 12, 14, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34
Fed. R. Bankr. P. 9019(a) ....1, 35

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 8 of 53

**TO THE HONORABLE ERNEST M. ROBLES, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTOR EPD INVESTMENT CO., LLC, DEBTOR JERROLD PRESSMAN, HMB HOLDINGS, LLC, THOMAS FERRO INDIVIDUALLY AND DBA MOON SHADOWS LEASING, ROSA FERRO, JERRY FERRO AND ANN FERRO INDIVIDUALLY AND AS TRUSTEES OF THE FERRO FAMILY TRUST, DR. MELVIN GLICK AKA MELVIN GLICK, ELLEN GLICK, RALPH GRANDE INDIVIDUALLY AND DBA GRANDE CANYON LEASING, NORMAN HANOVER, MARY LOU HANOVER, RON SHARROW INDIVIDUALLY AND DBA SHARROW SPRINGS LEASING, DR. LAWRENCE COOPER AND JANET COOPER, MILLER CARBONIC, INC., MILLER INVESTMENT PLAN, JAMES ROSENBAUM, TRACY ROSENBAUM, 4 R HORSE FARM, KELLY WATSON AKA ELIZABETH KELLY WATSON, RAYMOND BROSIO AKA RAY BROSIO INDIVIDUALLY AND DBA RAY BROSIO LEASING CO., RJ BROSIO FAMILY LP, THE BROSIO FAMILY LIMITED PARTNERSHIP AKA BROSIO FAMILY LP AND ALL OTHER INTERESTED PARTIES:**

Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the consolidated bankruptcy estate of debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (the "Consolidated Estate"), hereby moves this Court (the "Motion") for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving a compromise of controversies by way of settlement agreements (the "Agreements") with the following parties:

1. HMB Holdings, LLC ("HMB"), Thomas Ferro individually and dba Moon Shadows Leasing ("Thom Ferro") and Rosa Ferro (the "HMB Agreement");
2. Jerry Ferro and Ann Ferro, individually and as trustees of The Ferro Family Trust (the "Ferros") (the "Ferro Agreement");
3. Dr. Melvin Glick and Ellen Glick (the "Glicks") (the "Glick Agreement");
4. Ralph Grande, individually and dba Grande Canyon Leasing ("Grande") (the "Grande Agreement");

5. Norman Hanover and Mary Lou Hanover (the "Hanovers") (the "Hanover Agreement"); and

6. Ron Sharrow, individually and dba Sharrow Springs Leasing ("Sharrow") (the "Sharrow Agreement");

7. Dr. Lawrence Cooper and Janet Cooper (the "Coopers") (the "Cooper Agreement");

8. Miller Carbonic, Inc. ("Miller Carbonic"), Miller Investment Plan, James Rosenbaum, Tracy Rosenbaum and 4 R Horse Farm (collectively, the "Rosenbaums") (the "Miller Carbonic Agreement");

9. Kelly Watson ("Watson") (the "Watson Agreement"); and

10. Raymond Brosio aka Ray Brosio individually and dba Ray Brosio Leasing Co.; RJ Brosio Family LP; The Brosio Family Limited Partnership aka Brosio Family LP (collectively, "Brosio") (the "Brosio Agreement") (the HMB Agreement, Ferro Agreement, Glick Agreement, Grande Agreement, Hanover Agreement, Sharrow Agreement, Cooper Agreement, Miller Carbonic Agreement, Watson Agreement and Brosio Agreement are collectively referred to herein as the "Agreements").

The Agreements resolve the Trustee's claims and potential claims against HMB Holdings, LLC, Thom Ferro, Rosa Ferro, the Ferros, the Glicks, Grande, the Hanovers, Sharrow the Coopers, Miller Carbonic, the Rosenbaums, Watson and Brosio (collectively, the "Settling Parties" or the "Settling Defendants"). EPD's Schedule B lists a secured claim in the amount of $11.25 million in favor of HMB Holdings based on a UCC-1 financing statement. The HMB Agreement resolves that purported secured claim of HMB Holdings by disallowing that claim in its entirety and by HMB agreeing that any and all proofs of claim filed by HMB (or on its behalf) and any other claims of HMB are disallowed in their entirety. The terms of the Agreements, including the HMB Agreement, are discussed below. All of the claims are subject to dispute between the Trustee and the Settling Parties (collectively, the "Parties").

**The hearing will take place on December 4, 2013 at 10:00 a.m. in Courtroom 1568 of the United States Bankruptcy Court for the Central District of California, Los Angeles Division, located at 255 East Temple Street, Los Angeles, California.**

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 10 of 53

**The HMB Agreement contains the following essential terms:**

1. Thom Ferro filed proofs of claim nos. 135-1 and 136-1. Thom Ferro agrees that Claim 136-1 is disallowed in its entirety. Thom Ferro and the Trustee agree that Claim 135-1 shall be reclassified as an allowed general unsecured claim in the total amount of $4,246,592.65, and that the remainder of the claim shall be disallowed. The Trustee and Thom Ferro further agree that, except as set forth herein, any other proofs of claim filed by Thom Ferro in the Bankruptcy Case, and any other claims of Thom Ferro including but not limited to any secured or priority claims, are disallowed. Thom Ferro waives the right as to any secured or priority claims against the Debtors, the Estate, or assets of the Debtors and the Estate.
2. Rosa Ferro filed proofs of claim nos. 139-1 and 140-1. Rosa Ferro agrees that Claim 139-1 is disallowed in its entirety. Rosa Ferro and the Trustee agree that Claim 140-1 shall be an allowed general unsecured claim in the total amount of $219,879.13. The Trustee and Rosa Ferro further agree that, except as set forth herein, any other proofs of claim filed by Rosa Ferro in the Bankruptcy Case, and any other claims of Rosa Ferro including but not limited to any secured or priority claims, are disallowed. Rosa Ferro waives the right as to any secured or priority claims against the Debtors, the Estate, or assets of the Debtors and the Estate
3. The Ferros filed proofs of claim no. 137-1. The Trustee agrees that Claim No. 137-1 shall be allowed as a general unsecured claim in the total amount of $850,736.34 only. The Trustee reserves the right to object to the remainder of the claim, and intends to do so at the appropriate time.
4. HMB filed proof of claim 209-1, asserting a secured claim against the Estate in the amount of $12,750,000.00. HMB and Thom Ferro agree that Claim 209-1 is disallowed in its entirety. HMB and Thom Ferro (on behalf of HMB) further agree that any and all proofs of claim filed by HMB (or on its behalf) in the Bankruptcy Case, and any other claims of HMB, are disallowed in their entirety, including but not limited to any secured or priority claims. HMB waives the right as to any

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 11 of 53

secured or priority claims against the Debtors, the Estate, or assets of the Debtors and the Estate

5. Thom Ferro and Rosa Ferro may amend their general unsecured proofs of claims. The Trustee shall have sixty (60) days from receipt of an amended proof of claim to provide a response to their counsel. Nothing shall be construed as a waiver of the Trustee's right to object to any amended proofs of claim at any time, notwithstanding the limited time for the Trustee to provide a response, as set forth herein. Any amendment to the claims shall be supported by adequate documentation and shall solely be general unsecured claims.

6. HMB, Thom Ferro and Rosa Ferro agree that any and all liens and/or secured claims filed and/or recorded in favor of HMB, Thom Ferro or Rosa Ferro, and against the assets of the Debtors, including but not limited to UCC-1 financing statements, are avoided and recovered by the Trustee on behalf of the Estate. This includes but is not limited to any UCC-1 financing statements filed and/or recorded in favor of HMB and against the Debtors or assets of the Debtors in or about September 2009. HMB shall not retain any lien or other security interest against the Debtors or any assets of the Debtors or the Debtors' bankruptcy estate.

7. Representations and warranties by HMB, Thom Ferro and Rosa Ferro, including that:

   a. They did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and any funds that the Settling Defendants received from the Debtors were received solely for the reasons stated in herein above.

   b. At the time of the transfers that they had no information, knowledge or belief that the Debtors were insolvent, that any transfers to them caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business

or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct. They further represent that they are not aware of having received any transfers from the Debtors or any person or entity affiliated with the Debors, other than the transfers listed in the Complaints.

8. The Trustee, HMB, Thom Ferro and Rosa Ferro shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

9. The HMB Agreement is subject to Court approval.

**The Ferro Agreement contains the following essential terms:**

1. As of the Effective Date, and without executing any further agreement or document, Defendants assign and transfer any and all membership interests that they have, either individually or as trustees or beneficiaries of a trust, including but not limited to the Ferro Family Trust, in HMB Holdings, LLC, to the Trustee on behalf of the bankruptcy estate.

2. Defendants retain their previously-filed general proof of claim, Claim No. 137, solely as to the unsecured portion of that proof of claim. Defendants waive the secured portion of that proof of claim and agree that the secured portion is disallowed. The Trustee has not yet reviewed the proofs of claim filed in the Bankruptcy Case, and the Trustee reserves the right to object to the unsecured portion of that claim on any basis if appropriate to do so.

3. Defendants also waive any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, LLC, or on any other basis.

4. The Ferros will provide representations and warranties including that:

   a. They were "net losers" and invested more money in and/or lent more money to EPD than they withdrew.

///

///

b. They had no knowledge that either one of them was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. They had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that either of them was a member, and never agreed or consented to be a member of HMB Holdings. The Ferros never received any monies, property or other assets from HMB Holdings.

5. The Trustee and the Ferros shall provide general and mutual releases, including a California <u>Civil Code</u> § 1542 waiver.

6. The Ferro Agreement is subject to Court approval.

**<u>The Glick Agreement contains the following essential terms:</u>**

1. The Glicks assign and transfer any and all membership interests they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. The Glicks will provide representations, and declarations under penalty of perjury, including that:

a. They were "net losers" and invested more money in and/or lent more money to EPD than they withdrew.

b. They had no knowledge that either one of them was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. The Glicks had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that either of them was a member, and never agreed or consented to be a member of HMB Holdings. The Glicks never received any monies, property or other assets from HMB Holdings.

3. The Glicks retain their previously-filed general unsecured proof of claim, Claim No. 50-1. The Trustee reserves the right to object to that claim on any basis if appropriate to do so.

4. An additional proof of claim purportedly filed by the Glicks, Claim No. 152-1, was filed on December 12, 2011, and asserted a claim totaling $1,754,599 comprised of a secured claim in the amount of $250,000 and an unsecured claim in the amount of $1,504,599. The Glicks represent that Claim No. 152-1 was not authorized, signed or filed by the Glicks, has a forged signature on it and that the Glicks have no knowledge of who signed and filed that Claim. Claim No. 152-1 is waived and disallowed and the Glicks shall not receive an allowed claim on the basis of that claim.

5. The Glicks waive any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, or on any other basis.

6. The Trustee and the Glicks shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

7. The Glick Agreement is subject to Court approval.

**The Grande Agreement contains the following essential terms:**

1. Grande assigns and transfers any and all membership interests he has in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. Grande will provide representations, and declarations under penalty of perjury, including that:

   a. He was a "net loser" and invested more money in and/or lent more money to EPD than he withdrew.

   b. He had no knowledge that he was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. Grande had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that he was a member, and never agreed or consented to be a member of HMB Holdings. Grande never received any monies, property or other assets from HMB Holdings.

///

///

3. Grande retains his previously-filed general unsecured proof of claim, Claim No. 48. The Trustee reserves the right to object to that claim on any basis if appropriate to do so.

4. Grande waives any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, or on any other basis.

5. The Trustee and Grande shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

6. The Grande Agreement is subject to Court approval.

**The Hanover Agreement contains the following essential terms:**

1. The Hanovers assign and transfer any and all membership interests they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. To the extent that either of the Hanovers is a named beneficiary of any life insurance policy: (a) purchased by either of the Debtors; (b) owned by either of the Debtors; (c) and/or on the life of Jerrold S. Pressman, the Hanovers assign and transfer any and all rights held by the Hanovers to the Trustee on behalf of the bankruptcy estate, including but not limited to the right to receive all proceeds from such policies.

3. The Hanovers will provide representations, and declarations under penalty of perjury, including that:

   a. They were "net losers" and invested more money in and/or lent more money to EPD than they withdrew.

   b. They had no knowledge that either of them was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. The Hanovers had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that either of them was a member, and never agreed or consented to be a member of HMB Holdings. The Hanovers never received any monies, property or other assets from HMB Holdings.

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 16 of 53

4. The Hanovers retain their previously-filed general unsecured proofs of claim, Claim Nos. 40, 41 and 42. The Trustee reserves the right to object to those claims on any basis if appropriate to do so.

5. The Hanovers waive any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, or on any other basis.

6. The Trustee and the Hanovers shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

7. The Hanover Agreement is subject to Court approval.

**The Sharrow Agreement contains the following essential terms:**

1. Sharrow assigns and transfers any and all membership interests he has in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. Sharrow will provide representations, and declarations under penalty of perjury, including that:

   a. He was a "net loser" and invested more money in and/or lent more money to EPD than he withdrew.

   b. He had no knowledge that he was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. Sharrow had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that he was a member, and never agreed or consented to be a member of HMB Holdings. Sharrow never received any monies, property or other assets from HMB Holdings.

3. Sharrow retains his previously-filed general unsecured proofs of claim, Claim Nos. 19-1 and 20-1. The Trustee reserves the right to object to those claims on any basis if appropriate to do so.

4. Sharrow waives any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, or on any other basis.

5. The Trustee and Sharrow shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

6. The Sharrow Agreement is subject to Court approval.

**<u>The Cooper Agreement contains the following essential terms:</u>**

1. The Coopers assign and transfer any and all membership interests they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. The Coopers will provide representations, and declarations under penalty of perjury, including that:

    a. They were "net losers" and invested more money in and/or lent more money to EPD than he withdrew.

    b. They had no knowledge that they were members of HMB Holdings, LLC until after the Bankruptcy Case was filed. The Coopers had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that they were members, and never agreed or consented to be members of HMB Holdings. The Coopers never received any monies, property or other assets from HMB Holdings.

3. The Coopers agree that Claim Nos. 192-1 through 201-1 filed in the Debtors' Bankruptcy Case, and any other potential claims against the Debtors, the Debtors' bankruptcy estate or the Debtors' assets, are disallowed in their entirety with the exception that the Coopers shall receive an allowed general unsecured claim in the amount of $1,019,302.18. The Coopers waive any secured or priority claims against the Debtors' bankruptcy estate based on membership interests in HMB Holdings, LLC or on any other basis.

4. The Trustee and the Coopers shall provide general and mutual releases, including a California <u>Civil Code</u> § 1542 waiver.

5. The Cooper Agreement is subject to Court approval.

**<u>The Miller Carbonic Agreement contains the following essential terms:</u>**

1. Miller Carbonic and the Rosenbaums assign and transfer any and all membership interests they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. Miller Carbonic and the Rosenbaums shall pay $32,500 to the Trustee on or before the Effective Date (as defined in the Miller Carbonic Agreement).

3. Miller Carbonic and the Rosenbaums shall retain their proofs of claim filed in the Bankruptcy Case, Claim Nos. 106-1, 107-1, 108-1, 109-1 and 148-1, with the exception of the secured portions of claim No. 107-1, Claim 148-1 and any other proofs of claim listing a secured or priority claim which secured or priority portions are disallowed. The Trustee has not reviewed the Proofs of Claim, and the Trustee reserves the right to object to the proofs of claim on any basis, if appropriate to do so. If Miller Carbonic or the Rosenbaums provide to the Trustee documentation substantiating the Proofs of Claim (or any individual proof of claim), the Trustee shall (within sixty (60) days from receipt of said documentation) provide a response regarding any documents provided. Nothing shall be construed as a waiver of the Trustee's right to object to any proofs of claim at any time, notwithstanding the limited time for the Trustee to provide a response.

4. Miller Carbonic, the Rosenbaums and 4 R Horse Farm will provide representations and warranties including that:

   a. They had no information, knowledge or belief that the Debtors were insolvent, that any transfers caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

5. The Trustee, Miller Carbonic and the Rosenbaums shall provide general and mutual releases, including a California <u>Civil Code</u> § 1542 waiver.

6. The Miller Carbonic Agreement is subject to Court approval.

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 19 of 53

**The Watson Agreement contains the following essential terms:**

1. Watson assigns and transfers any and all membership interests she has in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.
2. Watson will provide representations including that:
   a. Other than the transfers alleged in the complaint, Watson is not aware of having received any other transfers from the Debtors or entities affiliated with the Debtors.
   b. She had no information, knowledge or belief that the Debtors were insolvent, that any transfers caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.
3. Watson agrees that Claim Nos. 257 through 259 filed in the Debtors' Bankruptcy Case, and any other potential claims against the Debtors, the Debtors' bankruptcy estate or the Debtors' assets, are disallowed in their entirety with the exception that Watson shall receive an allowed general unsecured claim in the amount of $431,961.09. Watson waives any secured or priority claims against the Debtors' bankruptcy estate based on membership interests in HMB Holdings, LLC or on any other basis.
4. The Trustee and Watson shall provide general and mutual releases, including a California Civil Code § 1542 waiver.
5. The Watson Agreement is subject to Court approval.

**The Brosio Agreement contains the following essential terms:**

1. Brosio assigns and transfers any and all membership interests he has in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.
2. Brosio will provide representations including that:

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 20 of 53

a. Defendants were collectively "net losers" and invested more money in and/or lent more money to EPD than they withdrew. Other than the transfers listed in the Complaint, Defendants are not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner.

b. Defendants did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendants received from the Debtors was received solely for the reasons stated in herein above.

c. At the time of the Transfers, Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

d. Defendants were not aware of, and had no knowledge that, any of them were members of HMB Holdings, LLC until after the Bankruptcy Case was filed. Defendants had absolutely no involvement with HMB Holdings, LLC, never received any documents from HMB Holdings, LLC stating that any of them was a member, and never agreed or consented to be a member of HMB Holdings, LLC. Defendants never received any monies, property or other assets from HMB Holdings, LLC, and have never transferred any membership interests in HMB Holdings, LLC.

///

///

3. Defendants retain only the general unsecured portions of their previously-filed proofs of claim, Claim Nos. 87, 88 and 89. Defendants waive any secured or priority claims that are part of Claim Nos. 87, 88 and 89, or any other claims. Any secured or priority claims based on membership interests in HMB Holdings, LLC, or on any other basis, are disallowed. The Trustee has not yet begun the process of reviewing the proofs of claim filed in the Bankruptcy Case, including but not limited to Claim Nos. 87, 88 and 89, and the Trustee reserves the right to object to those claims on any basis if appropriate to do so.

4. The Trustee and Brosio shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

5. The Brosio Agreement is subject to Court approval.

**PLEASE TAKE FURTHER NOTICE** that the Trustee requests that the Court grant the Motion and enter an order:

1. Approving the Agreements;

2. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreements; and

3. Granting such other and further relief as this Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 9013-1(f) of the Local Bankruptcy Rules, each interested party opposing, joining or responding to the Motion shall file with the Clerk of the Bankruptcy Court and serve upon: (1) special litigation counsel for the Trustee at the addresses in the upper left hand corner of this pleading; (2) the United States Trustee; (3) David Lally, Law Offices of David Lally, 8001 Irvine Center Drive, Suite 1090, Irvine, CA 92618 (counsel for HMB, Thom Ferro, Rosa Ferro, the Coopers, Miller Carbonic, the Rosenbaums and Watson); (4) Erik Clark, Borowitz & Clark LLP, 100 N. Barranca Avenue, Suite 250, West Covina, CA 91791 (counsel for the Ferros); (5) Michael St. James, St. James Law, P.C. (counsel for Glick) at 155 Montgomery Street, Suite 1004, San Francisco, CA 94104; (6) Edward M. Wolkowitz, Levene Neale, Bender, Yoo & Brill LLP (counsel for the Hanovers and Sharrow); and (7) Jonathan Rogers, Klein Daday Aretos & O'Donoghue LLC (counsel for Grande); and (8)

Matthew A. Flamm, Flamm Teibloom & Stanko Ltd. (counsel for Brosio), not later than fourteen (14) calendar days before the date designated for the hearing either (A) a brief but complete written statement of all reasons in opposition thereto or in support or joinder thereof, an answering memorandum of points and authorities, declarations and copies of all photographs and documentary evidence on which the opposing party intends to rely; or (B) a written statement that the Motion will not be opposed. The opposing papers shall advise the adverse party that any reply to the opposition shall be filed with the Court and served on the opposing party not later than seven (7) calendar days (not excluding Saturdays, Sundays and legal holidays) prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 9013-1(h) of the Local Bankruptcy Rules, failure to timely file and serve a response in accordance with the Local Bankruptcy Rules may be deemed to constitute consent to the relief requested by the Trustee in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of Motion, the Motion and the Memorandum of Points and Authorities, the Agreements and the Declaration of Jason M. Rund attached to the Motion, all papers and records in the above-referenced bankruptcy case, all matters of which this Court may take judicial notice, and such further evidence and argument that may be presented to the Court at the hearing on the Motion.

Dated: October 30, 2013

**EZRA BRUTZKUS GUBNER LLP**

By: ______________________
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 23 of 53

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Settling Parties (HMB, Thom Ferro, Rosa Ferro, the Ferros, the Glicks, Grande, Hanovers, Sharrow, the Coopers, Miller Carbonic, the Rosenbaums and Watson) are investors in and/or lenders to EPD. Each of the Settling Parties, with the exception of Tracy Rosenbaum and 4 R Horse Farms, appears to have been a "net loser," having invested more money in and/or lent more money to EPD than they received from EPD. However, the Settling Parties[1] are listed as a member of HMB Holdings, LLC, a Delaware limited liability company ("HMB Holdings" or "HMB") in HMB's corporate documents (the documents list 13 members of HMB Holdings). In September 2009, months after EPD generally ceased making payments to creditors, HMB was formed as a Delaware limited liability company and then filed and/or recorded a UCC-1 financing statement purportedly encumbering assets of the Debtors with a lien in the amount of $11.25 million. EPD's Schedule D lists a secured claim in favor of HMB Holdings in the amount of $11.25 million. According to testimony by Pressman during his Rule 2004 examination, HMB Holdings obtained the purported lien against the Debtors' assets because some or all of the members of HMB Holdings threatened lawsuits against the Debtors and/or threatened an involuntary bankruptcy proceeding against the Debtors. Also according to Pressman's testimony, the purported lien in favor of HMB Holdings was provided to creditors of EPD in response to those threats. The Trustee filed an adversary proceeding against HMB Holdings (Adv. No. 2:12-ap-02612-ER) to avoid and recover the purported lien. In addition, the Trustee filed adversary proceedings against, or entered tolling stipulations with respect to, each of the members of HMB Holdings, including but not limited to the Settling Parties, seeking to avoid and recover transfers to them during the seven-year period prior to the Petition Date.

[1] As to Settling Defendants that are married, and/or are owners of companies, only one of the individuals or the company is generally a member of HMB. For example, as to settling defendants Dr. Lawrence Cooper and Janet Cooper, only Dr. Lawrence Cooper is listed as a member of HMB.

The Trustee and the Settling Parties have engaged in settlement discussions in regard to the Trustee's claims and potential claims. The Agreements, if approved by the Court, will result in HMB Holdings' purported secured claim in the amount of $11.25 million being disallowed in its entirety, and will further result in each of the Settling Parties assigning their membership interests in HMB Holdings to the Trustee on behalf of the Consolidated Estate. The Settling Defendants comprise 74% of the membership of HMB Holdings listed in HMB's operating agreement. Further, the Settling Parties will waive any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, or on any other basis. As part of the Agreements, with the exception of the HMB Agreement, each of the Settling Parties generally represents, among other things, that: (1) they were not aware that they were members of HMB Holdings until after the Petition Date; (2) they had absolutely no involvement with HMB Holdings; (3) they never received any documents from HMB Holdings stating that they were members; (4) they never agreed or consented to be members of HMB Holdings; and (5) they never received any monies, property or other assets from HMB Holdings. The Trustee believes, in his business judgment, that the settlements reflected in the Agreements presents the Consolidated Estate with an outcome that is superior to the alternative of potentially costly litigation with the Settling Parties given that the Settling Parties appear to be "net losers."

In addition, given that the Trustee determined that Tracy Rosenbaum and/or 4 R Horse Farms were not investors in or lenders to EPD, the Rosenbaums will pay the estate $32,500 in addition to the other terms relating to HMB members. Further, as part of the Glick Agreement and a separate declaration, the Glicks have represented that a proof of claim purportedly filed by the Glicks, Claim No. 152-1, was not authorized, signed or filed by the Glicks, has a forged signature on it and that the Glicks have no knowledge of who signed and filed that Claim. Claim No. 152-1 is waived and disallowed and the Glicks shall not receive an allowed claim on the basis of that claim.

///

///

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc
Main Document Page 25 of 53

Based on the grounds stated herein and in the Rund Declaration, the Trustee respectfully requests that the Court grant this Motion and enter an order:

1. Approving the Agreements;
2. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreements; and
3. Granting such other and further relief as this Court may deem just and proper.

## II.

## BACKGROUND

### A. HMB Holdings.

HMB Holdings was formed as a Delaware limited liability company on September 14, 2009. John C. Kirkland, the Debtors' outside counsel, signed the Limited Liability Company Certificate of Formation as the "Authorized Person." The HMB Holdings Limited Liability Company Operating Agreement lists Thom Ferro as the manager of HMB Holdings. Pressman testified during his Rule 2004 examination in regard to HMB Holdings that: (1) certain creditors of EPD were threatening to file suit against the Debtors and/or threatening an involuntary bankruptcy case against one or both of the Debtors; and (2) HMB Holdings was formed and a UCC-1 lien was provided to HMB Holdings in response to those threats.

The Debtor's Schedule D lists HMB Holdings as a purportedly secured creditor in the amount of $11.25 million (Docket No. 138). The attachment to Schedule D lists 13 persons or entities with membership interests in HMB Holdings as follows: (1) Raymond Brosio—$1 million; (2) Robert Browne—$1.5 million; (3) Mitch Carter—$600,000; (4) Lawrence Cooper—$1 million; (5) Thom Ferro—$2 million; (6) Ferro Trust—$500,000; (7) Dr. Melvin Glick—$250,000; (8) Ralph Grande—$750,000; (9) Norman Hanover—$750,000; (10) Bridgett Hansel Andrews Estate—$1.25 million; (11) Miller Carbonic—$1.25 million; (12) Ron M. Sharrow—$200,000; and (13) Kelly Watson—$200,000. Those same members are listed in the HMB Holdings Limited Liability Company Operating Agreement. The Settling Defendants comprise all but two of the listed HMB members.

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 26 of 53

B. **The EPD Bankruptcy Case.**

**1. The Involuntary Petition and the Order for Relief.**

Petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively, the "Petitioning Creditors") filed the Involuntary Petition on December 7, 2010 [Docket No. 1]. The Court entered an Order for Relief on February 9, 2011. [Docket Nos. 28 and 29].

**2. The Motion to Compel and the Debtor's Filings of Statements, Schedules and a Creditor's Matrix.**

On March 17, 2011, the Trustee filed his motion to compel EPD to: (1) file statements, schedules and a creditor's matrix; (2) turn over the books, records and property of EPD; and (3) cooperate with the Trustee [Docket No. 68]. On April 28, 2011, the Court entered an Order granting the Trustee's motion to compel [Docket No. 125]. The Order stated that EPD must file its statements, schedules and creditor matrix by no later than April 14, 2011 and that EPD must turn over its books, records and property by no later than April 20, 2011.

The Debtor filed Statements and Schedules on April 14, 2011 (the "EPD Statements and Schedules") and filed Amended Statements and Schedules on June 8, 2011 (the "Amended EPD Statements and Schedules"). The 341a meeting of creditors took place on September 8, 2011. Pressman appeared on behalf of the Debtor at the meeting of creditors.

**3. EPD's Motion to Convert the Case to Chapter 11, and Motion to Alter or Amend.**

On February 24, 2011, EPD filed a motion to convert the case under 11 U.S.C. § 706(a) [Docket No. 51]. On the same day, EPD filed a motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 50]. On March 25, 2011, EPD filed declarations in support of its reply memorandum regarding the motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 83]. On April 11, 2011, EPD filed additional declarations in support of its conversion motion [Docket No. 101]. On April 27, 2011, the Court entered an Order denying

EPD's motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 122]. On April 28, 2011, the Court entered an Order denying without prejudice EPD's conversion motion [Docket No. 126].

**4. The Rule 2004 Examinations.**

On April 27, 2011, the Trustee filed a motion for the examinations of, and the production of documents and things by: (1) the person(s) most qualified for debtor EPD; (2) Jerrold Pressman; (3) Keith Pressman, Esq.; (4) Ruben Moreno; (5) John C. Kirkland, Esq.; (6) the person(s) most qualified for Broadway Entertainment Marketing, Inc.; (7) the person(s) most qualified for S.C. Club, L.P.; (8) the person(s) most qualified for S.C. Club, Inc.; (9) the person(s) most qualified for the Bright Conscience Trust; (10) the person most qualified for HMB Holdings, LLC; and (11) Ted Jonavic pursuant to Fed. R. Bankr. P. 2004 [Docket No. 123]. The Court entered an Order granting the Trustee's motion on June 21, 2011 [Docket No. 147]. The Rule 2004 examinations took place as follows: Jerrold Pressman in his capacity as an individual and as the designated person most qualified for EPD, Broadway Entertainment, S.C. Club, L.P. and S.C. Club, Inc. on May 17, 2011, May 31, 2011 and July 8, 2011; John C. Kirkland on May 27, 2011; Ruben Moreno on June 1, 2011; Keith Pressman on June 24, 2011; Ted Jonavic on June 29, 2011; and Thom Ferro as the designated person most qualified for HMB Holdings, LLC on June 30, 2011.

**C. <u>The Pressman Bankruptcy Case</u>.**

On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the Pressman Bankruptcy Case [Docket No. 1]. On February 29, 2012, Jerrold Pressman filed his statements and schedules (the "Pressman Statements and Schedules") in the Pressman Bankruptcy Case [Docket No. 26]. On March 1, 2012, Jerrold Pressman filed an amended creditor's matrix [Docket No. 29].

**D. <u>Substantive Consolidation</u>.**

On April 27, 2012, the Trustee filed a motion to substantively consolidate the bankruptcy estates of EPD and Pressman [Docket No. 200]. The Court entered an Order granting the substantive consolidation motion on June 4, 2012 [Docket No. 227]. Jason Rund is now the Chapter 7 Trustee for the Consolidated Estate.

**E. <u>The Adversary Proceedings and Tolling Stipulations.</u>**

**1. The HMB Adversary Proceeding**

On December 3, 2012, the Trustee filed an adversary proceeding against HMB, Adv. No. 2:12-ap-02612-ER. The complaint sought to avoid and recover transfers from EPD to HMB in the form of UCC-1 financing statements and/or other liens filed and/or recorded against the assets of the Debtors. The status conference is set for December 5, 2013.

**2. The Ferro Adversary Proceeding**

On December 6, 2012, the Trustee filed an adversary proceeding against Thom Ferro, Rosa Ferro and Jerry and Ann Ferro, individually and as trustees of the Ferro Family Trust, Adv. No. 2:12-ap-02664-ER. The complaint sought to avoid and recover transfers from EPD to Thom Ferro and Rosa Ferro during the seven-year period prior to the Petition Date totaling $1,023,180.58. The complaint also seeks the disallowance of proofs of claim filed by Thom Ferro, Rosa Ferro and Jerry and Ann Ferro.

**3. The Glick Adversary Proceeding**

On or about December 2, 2012, the Trustee filed an adversary complaint against the Glicks, Adv. No. 2:12-ap-02594-ER. The complaint sought to avoid and recover transfers from EPD to the Glicks during the seven-year period prior to the Petition Date totaling $623,910.80. The continued status conference (holding date pending a motion to approve the settlement between the Trustee and the Glicks) is set for November 7, 2013.

**4. The Sharrow Adversary Proceeding**

On or about December 3, 2012, the Trustee filed an adversary complaint against Sharrow, Adv. No. 2:12-ap-02611-ER. The complaint sought to avoid and recover transfers from EPD to Sharrow during the seven-year period prior to the Petition Date totaling $699,903.67. The continued status conference is set for January 9, 2014. All other dates and deadlines previously set, have been vacated.

**5. The Tolling Stipulations with Grande**

The Trustee and Grande entered into a tolling stipulation, and amendments to the tolling stipulation, and the Court has entered Orders approving the tolling stipulations and amendments.

Pursuant to an Order entered on September 25, 2013, the tolling period has been extended through December 2, 2013.

**6. The Tolling Stipulations with the Hanovers**

The Trustee and the Hanovers entered into a tolling stipulation, and amendments to the tolling stipulation, and the Court has entered Orders approving the tolling stipulations and amendments. Pursuant to an Order entered on September 18, 2013, the tolling period has been extended through December 2, 2013.

**7. The Cooper Adversary Proceeding**

On or about December 3, 2012, the Trustee filed an adversary complaint against the Coopers, Adv. No. 2:12-ap-02621-ER. The complaint sought to avoid and recover transfers from EPD to the Coopers during the seven-year period prior to the Petition Date totaling $3,338,704.60. The Coopers filed an answer to the complaint on July 24, 2013. The continued status conference is set for December 5, 2013. And all other dates and deadlines previously set have been vacated.

**8. The Miller Carbonic Adversary Proceeding and the 4 R Horse Farm Adversary Proceeding**

On or about November 30, 2012, the Trustee filed an adversary complaint against Miller Carbonic and James Rosenbaum, Adv. No. 2:12-ap-02591-ER. The complaint sought to avoid and recover transfers from EPD to Miller Carbonic and James Rosenbaum during the seven-year period prior to the Petition Date totaling $1,885,204.98. The continued status conference is set for December 5, 2013. All other dates and deadlines previously set have been vacated.

On or about November 28, 2012, the Trustee filed an adversary complaint against Tracy Rosenbaum and 4 R Horse Farm, Adv. No. 2:12-ap-02554-ER. The complaint sought to avoid and recover transfers from EPD to Tracy Rosenbaum and 4 R Horse Farm during the seven-year period prior to the Petition Date totaling $213,000.00. Tracy Rosenbaum and 4 R Horse Farm filed an answer to the complaint on June 4, 2013. The continued status conference is set for January 9, 2014. All other dates and deadlines previously set have been vacated.

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 30 of 53

**9. The Watson Adversary Proceeding**

On or about December 3, 2012, the Trustee filed an adversary complaint against Watson, Adv. No. 2:12-ap-02625-ER. The complaint sought to avoid and recover transfers from EPD to Watson during the seven-year period prior to the Petition Date totaling $267,001.08. Watson filed an answer to the complaint on July 5, 2013. The continued status conference is set for December 5, 2013. All other dates and deadlines previously set have been vacated.

**10. The Brosio Adversary Proceeding**

On or about December 3, 2012, the Trustee filed an adversary complaint against Brosio, Adv. No. 2:12-ap-20615-ER. The complaint sought to avoid and recover transfers from EPD to Brosio during the seven-year period prior to the Petition Date totaling $3,293,982.37. The continued status conference is set for January 23, 2014. All other dates and deadlines previously set, have been vacated.

**F. <u>The Salient Terms of the Agreements</u>.**

Recognizing the litigation risks, and desiring to eliminate the costs of further and protracted litigation, the Parties agreed to the following general terms of the Agreements (the following is only a summary of the Agreements; all parties in interest are respectfully directed to the Agreements themselves, attached hereto as **Exhibits A through J** to the Rund Declaration, for the specific terms of the Agreements; to the extent any terms listed below are inconsistent with the Agreements, the terms of the Agreements shall govern):

**<u>The HMB Agreement contains the following essential terms:</u>**

1. Thom Ferro filed proofs of claim nos. 135-1 and 136-1. Thom Ferro agrees that Claim 136-1 is disallowed in its entirety. Thom Ferro and the Trustee agree that Claim 135-1 shall be reclassified as an allowed general unsecured claim in the total amount of $4,246,592.65, and that the remainder of the claim shall be disallowed. The Trustee and Thom Ferro further agree that, except as set forth herein, any other proofs of claim filed by Thom Ferro in the Bankruptcy Case, and any other claims of Thom Ferro including but not limited to any secured or priority claims, are disallowed. Thom Ferro waives the right as to any secured or priority claims

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 31 of 53

against the Debtors, the Estate, or assets of the Debtors and the Estate.

2. Rosa Ferro filed proofs of claim nos. 139-1 and 140-1. Rosa Ferro agrees that Claim 139-1 is disallowed in its entirety. Rosa Ferro and the Trustee agree that Claim 140-1 shall be an allowed general unsecured claim in the total amount of $219,879.13. The Trustee and Rosa Ferro further agree that, except as set forth herein, any other proofs of claim filed by Rosa Ferro in the Bankruptcy Case, and any other claims of Rosa Ferro including but not limited to any secured or priority claims, are disallowed. Rosa Ferro waives the right as to any secured or priority claims against the Debtors, the Estate, or assets of the Debtors and the Estate

3. The Ferros filed proofs of claim no. 137-1. The Trustee agrees that Claim No. 137-1 shall be allowed as a general unsecured claim in the total amount of $850,736.34 only. The Trustee reserves the right to object to the remainder of the claim, and intends to do so at the appropriate time.

4. HMB filed proof of claim 209-1, asserting a secured claim against the Estate in the amount of $12,750,000.00. HMB and Thom Ferro agree that Claim 209-1 is disallowed in its entirety. HMB and Thom Ferro (on behalf of HMB) further agree that any and all proofs of claim filed by HMB (or on its behalf) in the Bankruptcy Case, and any other claims of HMB, are disallowed in their entirety, including but not limited to any secured or priority claims. HMB waives the right as to any secured or priority claims against the Debtors, the Estate, or assets of the Debtors and the Estate

5. Thom Ferro and Rosa Ferro may amend their general unsecured proofs of claims. The Trustee shall have sixty (60) days from receipt of an amended proof of claim to provide a response to their counsel. Nothing shall be construed as a waiver of the Trustee's right to object to any amended proofs of claim at any time, notwithstanding the limited time for the Trustee to provide a response, as set forth herein. Any amendment to the claims shall be supported by adequate documentation and shall solely be general unsecured claims.

6. HMB, Thom Ferro and Rosa Ferro agree that any and all liens and/or secured claims filed and/or recorded in favor of HMB, Thom Ferro or Rosa Ferro, and against the assets of the Debtors, including but not limited to UCC-1 financing statements, are avoided and recovered by the Trustee on behalf of the Estate. This includes but is not limited to any UCC-1 financing statements filed and/or recorded in favor of HMB and against the Debtors or assets of the Debtors in or about September 2009. HMB shall not retain any lien or other security interest against the Debtors or any assets of the Debtors or the Debtors' bankruptcy estate.

7. Representations and warranties by HMB, Thom Ferro and Rosa Ferro, including that:

   a. They did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and any funds that the Settling Defendants received from the Debtors were received solely for the reasons stated in herein above.

   b. At the time of the transfers that they had no information, knowledge or belief that the Debtors were insolvent, that any transfers to them caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct. They further represent that they are not aware of having received any transfers from the Debtors or any person or entity affiliated with the Debors, other than the transfers listed in the Complaints.

8. The Trustee, HMB, Thom Ferro and Rosa Ferro shall provide general and mutual releases, including a California <u>Civil Code</u> § 1542 waiver.

9. The HMB Agreement is subject to Court approval.

**The Ferro Agreement contains the following essential terms:**

1. As of the Effective Date, and without executing any further agreement or document, Defendants assign and transfer any and all membership interests that they have, either individually or as trustees or beneficiaries of a trust, including but not limited to the Ferro Family Trust, in HMB Holdings, LLC, to the Trustee on behalf of the bankruptcy estate.

2. Defendants retain their previously-filed general proof of claim, Claim No. 137, solely as to the unsecured portion of that proof of claim. Defendants waive the secured portion of that proof of claim and agree that the secured portion is disallowed. The Trustee has not yet reviewed the proofs of claim filed in the Bankruptcy Case, and the Trustee reserves the right to object to the unsecured portion of that claim on any basis if appropriate to do so.

3. Defendants also waive any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, LLC, or on any other basis.

4. The Ferros will provide representations and warranties including that:

   a. They were "net losers" and invested more money in and/or lent more money to EPD than they withdrew.

   b. They had no knowledge that either one of them was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. They had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that either of them was a member, and never agreed or consented to be a member of HMB Holdings. The Ferros never received any monies, property or other assets from HMB Holdings.

5. The Trustee and the Ferros shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

6. The Ferro Agreement is subject to Court approval.

**The Glick Agreement contains the following essential terms:**

1. The Glicks assign and transfer any and all membership interests they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. The Glicks will provide representations, and declarations under penalty of perjury, including that:

   a. They were "net losers" and invested more money in and/or lent more money to EPD than they withdrew.

   b. They had no knowledge that either one of them was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. The Glicks had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that either of them was a member, and never agreed or consented to be a member of HMB Holdings. The Glicks never received any monies, property or other assets from HMB Holdings.

3. The Glicks retain their previously-filed general unsecured proof of claim, Claim No. 50-1. The Trustee reserves the right to object to that claim on any basis if appropriate to do so.

4. An additional proof of claim purportedly filed by the Glicks, Claim No. 152-1, was filed on December 12, 2011, and asserted a claim totaling $1,754,599 comprised of a secured claim in the amount of $250,000 and an unsecured claim in the amount of $1,504,599. The Glicks represent that Claim No. 152-1 was not authorized, signed or filed by the Glicks, has a forged signature on it and that the Glicks have no knowledge of who signed and filed that Claim. Claim No. 152-1 is waived and disallowed and the Glicks shall not receive an allowed claim on the basis of that claim.

5. The Glicks waive any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, or on any other basis.

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 35 of 53

6. The Trustee and the Glicks shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

7. The Glick Agreement is subject to Court approval.

**The Grande Agreement contains the following essential terms:**

1. Grande assigns and transfers any and all membership interests he has in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. Grande will provide representations, and declarations under penalty of perjury, including that:

   a. He was a "net loser" and invested more money in and/or lent more money to EPD than he withdrew.

   b. He had no knowledge that he was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. Grande had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that he was a member, and never agreed or consented to be a member of HMB Holdings. Grande never received any monies, property or other assets from HMB Holdings.

3. Grande retains his previously-filed general unsecured proof of claim, Claim No. 48. The Trustee reserves the right to object to that claim on any basis if appropriate to do so.

4. Grande waives any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, or on any other basis.

5. The Trustee and Grande shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

6. The Grande Agreement is subject to Court approval.

**The Hanover Agreement contains the following essential terms:**

1. The Hanovers assign and transfer any and all membership interests they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 36 of 53

2. To the extent that either of the Hanovers is a named beneficiary of any life insurance policy: (a) purchased by either of the Debtors; (b) owned by either of the Debtors; (c) and/or on the life of Jerrold S. Pressman, the Hanovers assign and transfer any and all rights held by the Hanovers to the Trustee on behalf of the bankruptcy estate, including but not limited to the right to receive all proceeds from such policies.

3. The Hanovers will provide representations, and declarations under penalty of perjury, including that:

   a. They were "net losers" and invested more money in and/or lent more money to EPD than they withdrew.

   b. They had no knowledge that either of them was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. The Hanovers had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that either of them was a member, and never agreed or consented to be a member of HMB Holdings. The Hanovers never received any monies, property or other assets from HMB Holdings.

4. The Hanovers retain their previously-filed general unsecured proofs of claim, Claim Nos. 40, 41 and 42. The Trustee reserves the right to object to those claims on any basis if appropriate to do so.

5. The Hanovers waive any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, or on any other basis.

6. The Trustee and the Hanovers shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

7. The Hanover Agreement is subject to Court approval.

**The Sharrow Agreement contains the following essential terms:**

1. Sharrow assigns and transfers any and all membership interests he has in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. Sharrow will provide representations, and declarations under penalty of perjury, including that:

   a. He was a "net loser" and invested more money in and/or lent more money to EPD than he withdrew.

   b. He had no knowledge that he was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. Sharrow had absolutely no involvement with HMB Holdings, never received any documents from HMB Holdings stating that he was a member, and never agreed or consented to be a member of HMB Holdings. Sharrow never received any monies, property or other assets from HMB Holdings.

3. Sharrow retains his previously-filed general unsecured proofs of claim, Claim Nos. 19-1 and 20-1. The Trustee reserves the right to object to those claims on any basis if appropriate to do so.

4. Sharrow waives any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, or on any other basis.

5. The Trustee and Sharrow shall provide general and mutual releases, including a California <u>Civil Code</u> § 1542 waiver.

6. The Sharrow Agreement is subject to Court approval.

**<u>The Cooper Agreement contains the following essential terms:</u>**

1. The Coopers assign and transfer any and all membership interests they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. The Coopers will provide representations, and declarations under penalty of perjury, including that:

   a. They were "net losers" and invested more money in and/or lent more money to EPD than he withdrew.

   b. They had no knowledge that they were members of HMB Holdings, LLC until after the Bankruptcy Case was filed. The Coopers had absolutely no involvement with HMB Holdings, never received any documents from

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 38 of 53

HMB Holdings stating that they were members, and never agreed or consented to be members of HMB Holdings. The Coopers never received any monies, property or other assets from HMB Holdings.

6. The Coopers agree that Claim Nos. 192-1 through 201-1 filed in the Debtors' Bankruptcy Case, and any other potential claims against the Debtors, the Debtors' bankruptcy estate or the Debtors' assets, are disallowed in their entirety with the exception that the Coopers shall receive an allowed general unsecured claim in the amount of $1,019,302.18. The Coopers waive any secured or priority claims against the Debtors' bankruptcy estate based on membership interests in HMB Holdings, LLC or on any other basis.

7. The Trustee and the Coopers shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

8. The Cooper Agreement is subject to Court approval.

**The Miller Carbonic Agreement contains the following essential terms:**

1. Miller Carbonic and the Rosenbaums assign and transfer any and all membership interests they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. Miller Carbonic and the Rosenbaums shall pay $32,500 to the Trustee on or before the Effective Date (as defined in the Miller Carbonic Agreement).

3. Miller Carbonic and the Rosenbaums shall retain their proofs of claim filed in the Bankruptcy Case, Claim Nos. 106-1, 107-1, 108-1, 109-1 and 148-1, with the exception of the secured portions of claim No. 107-1, Claim 148-1 and any other proofs of claim listing a secured or priority claim which secured or priority portions are disallowed. The Trustee has not reviewed the Proofs of Claim, and the Trustee reserves the right to object to the proofs of claim on any basis, if appropriate to do so. If Miller Carbonic or the Rosenbaums provide to the Trustee documentation substantiating the Proofs of Claim (or any individual proof of claim), the Trustee shall (within sixty (60) days from receipt of said documentation) provide a response

regarding any documents provided. Nothing shall be construed as a waiver of the Trustee's right to object to any proofs of claim at any time, notwithstanding the limited time for the Trustee to provide a response.

4. Miller Carbonic, the Rosenbaums and 4 R Horse Farm will provide representations and warranties including that:

   a. They had no information, knowledge or belief that the Debtors were insolvent, that any transfers caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

5. The Trustee, Miller Carbonic and the Rosenbaums shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

6. The Miller Carbonic Agreement is subject to Court approval.

**The Watson Agreement contains the following essential terms:**[2]

1. Watson assigns and transfers any and all membership interests she has in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. Watson will provide representations including that:

   a. Other than the transfers alleged in the complaint, Watson is not aware of having received any other transfers from the Debtors or entities affiliated with the Debtors.

   b. She had no information, knowledge or belief that the Debtors were insolvent, that any transfers caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts

[2] The Watson Agreement has not yet been executed. The Trustee is informed that Watson has approved the Watson Agreement and the Trustee is awaiting signatures on the Watson Agreement. The request for approval of the Watson Agreement is subject to the Trustee receiving signatures on the Watson Agreement in the form attached to the Rund Declaration.

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 40 of 53

became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

3. Watson agrees that Claim Nos. 257 through 259 filed in the Debtors' Bankruptcy Case, and any other potential claims against the Debtors, the Debtors' bankruptcy estate or the Debtors' assets, are disallowed in their entirety with the exception that Watson shall receive an allowed general unsecured claim in the amount of $431,961.09. Watson waives any secured or priority claims against the Debtors' bankruptcy estate based on membership interests in HMB Holdings, LLC or on any other basis.

4. The Trustee and Watson shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

5. The Watson Agreement is subject to Court approval.

**The Brosio Agreement contains the following essential terms:**

1. Brosio assigns and transfers any and all membership interests she has in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

2. Brosio will provide representations including that:

   a. Defendants were collectively "net losers" and invested more money in and/or lent more money to EPD than they withdrew. Other than the transfers listed in the Complaint, Defendants are not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner.

   b. Defendants did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendants received from the Debtors was received solely for the reasons stated in herein above.

c. At the time of the Transfers, Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

d. Defendants were not aware of, and had no knowledge that, any of them were members of HMB Holdings, LLC until after the Bankruptcy Case was filed. Defendants had absolutely no involvement with HMB Holdings, LLC, never received any documents from HMB Holdings, LLC stating that any of them was a member, and never agreed or consented to be a member of HMB Holdings, LLC. Defendants never received any monies, property or other assets from HMB Holdings, LLC, and have never transferred any membership interests in HMB Holdings, LLC.

3. Defendants retain only the general unsecured portions of their previously-filed proofs of claim, Claim Nos. 87, 88 and 89. Defendants waive any secured or priority claims that are part of Claim Nos. 87, 88 and 89, or any other claims. Any secured or priority claims based on membership interests in HMB Holdings, LLC, or on any other basis, are disallowed. The Trustee has not yet begun the process of reviewing the proofs of claim filed in the Bankruptcy Case, including but not limited to Claim Nos. 87, 88 and 89, and the Trustee reserves the right to object to those claims on any basis if appropriate to do so.

4. The Trustee and Brosio shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

5. The Brosio Agreement is subject to Court approval.

///

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 42 of 53

## III.

## THE AGREEMENTS ARE PROPERLY APPROVED

**A. Legal Standards for Approval.**

Federal Rule of Bankruptcy Procedure 9019 provides that on motion by a Trustee, the Court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a).

The decision of whether to approve or reject a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case. In re Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982); In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986).

More specifically, a Court should review the following factors in considering whether to approve a proposed settlement:

> (a) The probability of success in the litigation; (b) the difficulty, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises.

Woodson, *supra*, 839 F.2d at 620 (quoting A&C Properties, *supra*, 784 F.2d at 1381). A settlement negotiated by a trustee, as a representative of the Consolidated Estate, is entitled to deference. In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987).

The Court need not conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised. In re Walsh Construction, Inc., *supra*, 669 F.2d at 1328. In fact, the Court need not decide the questions of law and fact raised in the controversies sought to be settled, and need not determine whether the settlement presented is the best one that could possibly have been achieved. Instead, the Court's responsibility is only to "canvass the issues to see 'whether the settlement falls below the lowest point in the zone of reasonableness.'" In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S.

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 43 of 53

822 (1984) (quoting Newman v. Stein, 464 F.2d 689, 698 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972)).

The Trustee has the right to exercise reasonable business judgment in an effort to maximize the value of the assets of the Consolidated Estate. So long as a proposed compromise results in a recovery above the lowest point in the range of reasonable compromises, the Trustee should be authorized to proceed with such compromise. In light of the facts and circumstances in this case, application of the A&C Properties factors shows that the compromises set forth in the Agreements are fair and equitable, are in the best interests of the Consolidated Estate, and are well above the lowest point in the range of reasonableness.

**B. Application of the *A&C Properties* Factors Demonstrates That the Agreements Should Be Approved.**

The Trustee has sufficiently evaluated the Agreements and has compared the benefits of entering into the Agreements as opposed to litigation against the Settling Parties. In evaluating the Agreements, the Trustee has reviewed documents provided by the Debtors, EPD's bank records and Quick Books records, and other documents provided by the Settling Defendants and third parties, and has considered the testimony obtained in several examinations authorized by the Court and conducted pursuant to Fed. R. Bankr. P. 2004, including but not limited to the examinations of Pressman and Thom Ferro, the designated person most knowledgeable for HMB Holdings. The Trustee also met with, spoke with or mediated with the Settling Defendants.

Based on this evaluation, the Trustee has determined that entering into the Agreements is in the best interests of the Consolidated Estate because the Agreements are fair and equitable, are a reasonable and appropriate exercise of the Trustee's business judgment, and will avoid the time, expense and risk inherent in litigation with the Settling Parties. The Trustee has evaluated the A&C Properties factors in exercising his business judgment as to whether to enter into the Agreements, and has concluded that under these factors, the Agreements should be approved.

///

///

///

**1. The A & C Properties Factors As to the Agreements**

Given that the issues in regard to the Settling Parties are largely identical, the following is the Trustee's analysis of the A & C Properties factors as to each of the Settling Parties. To the extent that any of the four factors differ for any one of the Settling Parties, those issues will also be discussed.

**a. Probability of Success on the Merits.**

HMB Holdings was not an investor in EPD, and appears to have been a company made up of creditors of EPD. HMB appears to be a company formed solely to hold the purported secured lien against the Debtors and their assets. Based on testimony from Pressman during his Rule 2004 examination, it appears that HMB was formed and received a lien against the assets of the Debtors based on threats of litigation and/or an involuntary bankruptcy proceeding. The Trustee believes that if his claims against HMB Holdings were to be litigated, he would avoid and recover the purported secured liens against the Debtors' assets. The Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that HMB has agreed as part of the HMB Agreement that its proof of claim is disallowed and that HMB waives any and all claims, including purported secured or priority claims against the Debtors and their assets.

The other Settling Parties were investors in, and/or lenders to, the Debtors, and appear to have been "net losers." The Settling Parties are listed on the limited liability company records of HMB Holdings as members of HMB Holdings. The Trustee filed complaints against all members of HMB Holdings, LLC who received transfers from the Debtors during the 7-year period prior to the Petition Date because the membership in HMB Holdings, among other things, raised significant issues as to whether the members could prove a good faith defense (in regard to knowledge of, or "red flags" as to the Debtors' insolvency, fraud, Ponzi scheme and other issues) to claims for the avoidance and recovery of fraudulent transfers. The Trustee had substantive meetings and/or calls with each of the Settling Parties and is generally satisfied by the explanations to his inquiries provided by the Settling Parties as to involvement with HMB Holdings and other issues in relation to their good faith, for the purpose of settlement.

The Trustee recognizes that the results of potential litigation against the Settling Parties are uncertain. The Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that the Settling Parties have agreed to assign any and all membership interests in HMB Holdings, LLC to the Trustee without the need for litigation, given that the Settling Parties have agreed to waive any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis, and given that the Settling Parties all appear to be "net losers" other than HMB (which was not an investor), Tracy Rosenbaum and 4 R Horse Farm. James Rosenbaum, Tracy Rosenbaum's husband, was an investor and a "net loser." Depending on whether the Court were to determine that the Rosenbaums and 4 R Horse Farms were viewed independently or collectively, the outcome would change as to whether Tracy Rosenbaum and 4 R Horse Farms were "net losers" together with James Rosenbaum, or were recipients of avoidable transfers. The Rosenbaums have agreed to pay $32,500 to the Trustee. The Trustee believes, in his business judgment, a settlement with the Settling Parties is more beneficial than proceeding to litigate the claims.

**b. The Difficulty, If Any, In Collection.**

The Trustee did not receive financial statements from the Settling Parties, but did informally discuss financial issues with the Settling Parties. The Trustee understands that certain of the Settling Parties have had significant health issues and/or there may be issues in collecting on judgments against the Settling Parties. However, the Agreements were not based on difficulty in collection.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to a suit by the Trustee against the Settling Parties, primarily whether the Settling Parties have a good faith defense, may be heavily litigated and the outcome of litigation against the Settling Parties is uncertain. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Main Document Page 46 of 53

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in a potential action against the Settling Parties will lessen the amount to potentially distribute to creditors of the Consolidated Estate. The Trustee does not believe, in his business judgment, that litigation with the Settling Parties is in the best interests of the Consolidated Estate or its creditors given that: (1) HMB's proof of claim is disallowed, HMB shall not receive an allowed claim in the Bankruptcy Case and HMB waives any and all purported secured or priority claims against the Debtors and their assets; (2) the Settling Parties (other than HMB) have agreed to assign any and all membership interests in HMB Holdings, LLC to the Trustee without the need for litigation; (3) the Settling Parties have agreed to waive any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis; (4) the Hanovers have agreed to assign and transfer any rights to life insurance policies purchased by the Debtors, owned by the Debtors, and/or on the life of Pressman, including but not limited to the right to receive proceeds from any such policies; and (5) the Settling Parties all appear to be "net losers" with the exception of HMB (which was not an investor) and Tracy Rosenbaum and 4 R Horse Farms, who have agreed to pay $32,500 to the Trustee.

Based on the foregoing factors, the Trustee has concluded that entering into the Agreements is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and has exercised his reasonable business judgment in concluding that it is better to proceed with the Agreements than to litigate the herein-described issues/claims with the Settling Parties.

///

///

///

///

///

///

///

## IV.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant this Motion and enter an order:

1. Approving the Agreements;
2. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreements; and
3. Granting such other and further relief as this Court may deem just and proper.

Dated: October 30, 2013

Respectfully submitted,

**EZRA BRUTZKUS GUBNER LLP**

By: /s/ Corey R. Weber
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

Case 2:10-bk-62208-ER Doc 769 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc
Main Document Page 48 of 53

## DECLARATION OF JASON M. RUND

I, Jason M. Rund declare:

1. I am an attorney at law duly admitted to practice before this Court and am the duly appointed, qualified and acting Chapter 7 trustee of the bankruptcy estate of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (the "Consolidated Estate"). Other than as specifically identified herein, each of the facts contained in this declaration is based on personal knowledge and, if called as a witness, I could and would competently testify competently as to these facts.

2. Any capitalized terms used but not defined herein, shall have the same meaning as is affixed to them in the Motion.

3. The involuntary petition filed with the Court reflects that on December 7, 2010, the petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Sager, Jayne Sager as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively, the "Petitioning Creditors") filed the involuntary Chapter 7 petition against EPD.

4. On February 9, 2011, the Order for Relief was entered in this case as to EPD.

5. On or about February 12, 2011, I was appointed as the Chapter 7 Trustee in this case.

6. EPD filed Statements and Schedules on April 14, 2011 and filed Amended Statements and Schedules on June 8, 2011. The 341a meeting of creditors took place on September 8, 2011. Pressman appeared on behalf of EPD at the meeting of creditors.

7. My special litigation counsel conducted several examinations of Pressman and other witnesses pursuant to Fed. R. Bankr. P. 2004 (the "Rule 2004 Examinations"). I attended almost all of the Rule 2004 Examinations and received copies of the examination transcripts and the documents produced by Pressman, Thom Ferro as person most knowledgeable for HMB Holdings, and the other witnesses pursuant to the Rule 2004 Examinations.

8. On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the Pressman Bankruptcy Case. On February 29, 2012, Pressman filed his statements and

schedules in the Pressman Bankruptcy Case. I am now the Chapter 7 Trustee for the Consolidated Estate.

9. On April 27, 2012, through my counsel, I filed a motion to substantively consolidate the bankruptcy estates of EPD and Pressman. The Court entered an Order granting the substantive consolidation motion on June 4, 2012.

10. Through my special litigation counsel, I commenced settlement negotiations with the Settling Parties.

11. On or about October 23, 2013, I executed the HMB Agreement. A true and correct copy of the HMB Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference.

12. On or about June 25, 2013, I executed the Ferro Agreement. A true and correct copy of the Ferro Agreement is attached hereto as **Exhibit B** and is incorporated herein by reference.

13. On or about March 11, 2013, I executed the Glick Agreement. A true and correct copy of the Glick Agreement is attached hereto as **Exhibit C** and is incorporated herein by reference.

14. On or about May 6, 2013, I executed the Sharrow Agreement. A true and correct copy of the Sharrow Agreement is attached hereto as **Exhibit D** and is incorporated herein by reference.

15. On or about April 30, 2013, I executed the Grande Agreement. A true and correct copy of the Grande Agreement is attached hereto as **Exhibit E** and is incorporated herein by reference.

16. On or about August 9, 2013, I executed the Hanover Agreement. A true and correct copy of the Hanover Agreement is attached hereto as **Exhibit F** and is incorporated herein by reference.

17. On or about October 8, 2013, I executed the Cooper Agreement. A true and correct copy of the Cooper Agreement is attached hereto as **Exhibit G** and is incorporated herein by reference.

18. On or about October 8, 2013, I executed the Miller Carbonic Agreement. A true and correct copy of the Miller Carbonic Agreement is attached hereto as **Exhibit H** and is incorporated herein by reference.

19. A true and correct copy of the unsigned Watson Agreement is attached hereto as **Exhibit I** and is incorporated herein by reference. My understanding is that Watson has approved the form of the Watson Agreement and I am just awaiting signatures on the Watson Agreement. The request for approval of the Watson Agreement is subject to receiving signatures on the Watson Agreement in the form attached hereto.

20. On or about October 29, 2013, I executed the Brosio Agreement. A true and correct copy of the Brosio Agreement is attached hereto as **Exhibit J** and is incorporated herein by reference.

21. In analyzing the reasonableness of the Agreements, I considered the four factors established by the Ninth Circuit in the A & C Properties case, including: (1) probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation and the expense, inconvenience and delay attending it; and (4) the paramount interests of creditors. My analysis in this regard follows in the paragraphs below.

22. Probability of Success on the Merits. HMB Holdings does not appear to have been an investor in EPD, and appears to have been a company made up of creditors of EPD. HMB appears to be a company formed solely to hold the purported secured lien against the Debtors and their assets. Based on testimony from Pressman during his Rule 2004 examination, it appears that HMB was formed and received a lien against the assets of the Debtors based on threats of litigation and/or an involuntary bankruptcy proceeding. I believe that if my claims against HMB were to be litigated, I would avoid and recover the purported secured liens against the Debtors' assets. I do not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that HMB has agreed as part of the HMB Agreement that its proof of claim is disallowed and that HMB waives any and all claims, including purported secured or priority claims against the Debtors and their assets. The other Settling Parties were investors in, and/or lenders to, the Debtors, and appear to have been "net losers." The Settling Parties are listed on the limited

liability company records of HMB Holdings as members of HMB Holdings. I filed complaints against all members of HMB Holdings, LLC who received transfers from the Debtors during the 7-year period prior to the Petition Date because the membership in HMB Holdings, among other things, raised significant issues as to whether the members could prove a good faith defense (in regard to knowledge of, or "red flags" as to the Debtors' insolvency, fraud, Ponzi scheme and other issues) to claims for the avoidance and recovery of fraudulent transfers. I had substantive meetings and/or calls with each of the Settling Parties and am generally satisfied (for the purpose of settlement) by the explanations to inquiries provided by the Settling Parties as to involvement with HMB Holdings and other issues in relation to their good faith. I recognize that the results of potential litigation against the Settling Parties are uncertain. I do not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that the Settling Parties have agreed to assign any and all membership interests in HMB Holdings, LLC to the Trustee without the need for litigation, given that the Settling Parties have agreed to waive any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis, and given that the Settling Parties all appear to be "net losers" other than HMB (which does not appear to have been an investor), Tracy Rosenbaum and 4 R Horse Farm. James Rosenbaum, Tracy Rosenbaum's husband, was an investor and a "net loser." Depending on whether the Court were to determine that the Rosenbaums and 4 R Horse Farms were viewed independently or collectively, the outcome would change as to whether Tracy Rosenbaum and 4 R Horse Farms were "net losers" together with James Rosenbaum, or were recipients of avoidable transfers. The Rosenbaums have agreed to pay $32,500. I believe, in my business judgment, that a settlement with the Settling Parties is more beneficial than proceeding to litigate the claims.

23. Collection Risk. I did not receive financial statements from the Settling Parties, but did informally discuss financial issues with the Settling Parties. I understand that certain of the Settling Parties have had significant health issues and/or there may be issues in collecting on judgments against the Settling Parties. However, the Agreements were not based on difficulty in collection.

24. Complexity of the Litigation and the Expense, Inconvenience and Delay Necessarily Attending It. The issues in regard to litigation against the Settling Parties, primarily whether the Settling Parties have a good faith defense, may be heavily litigated and the outcome of litigation against the Settling Parties is uncertain. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

25. Paramount Interest of Creditors. Any attorney's fees and costs incurred by the Consolidated Estate in a potential action against the Settling Parties will lessen the amount to potentially distribute to creditors of the Consolidated Estate. I do not believe, in my business judgment, that litigation with the Settling Parties is in the best interests of the Consolidated Estate or its creditors given that: (1) HMB's proof of claim is disallowed, HMB shall not receive an allowed claim in the Bankruptcy Case and HMB waives any and all purported secured or priority claims against the Debtors and their assets; (2) the Settling Parties (other than HMB) have agreed to assign any and all membership interests in HMB Holdings to me on behalf of the Consolidated Estate without the need for litigation; (3) the Settling Parties have agreed to waive any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis; (4) the Hanovers have agreed to assign and transfer any rights to life insurance policies purchased by the Debtors, owned by the Debtors, and/or on the life of Pressman, including but not limited to the right to receive proceeds from any such policies; and (5) the Settling Parties all appear to be "net losers" with the exception of HMB (which does not appear to have been an investor) and Tracy Rosenbaum and 4 R Horse Farms, who have agreed to pay $32,500.

26. In addition to the foregoing analysis, as part of the Glick Agreement and a separate declaration, the Glicks have represented that a proof of claim purportedly filed by the Glicks, Claim No. 152-1, was not authorized, signed or filed by the Glicks, has a forged signature on it and that the Glicks have no knowledge of who signed and filed that Claim. Claim No. 152-1 is waived and disallowed and the Glicks shall not receive an allowed claim on the basis of that claim.

27. Based on the foregoing factors, I have concluded that entering into the Agreements is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and have exercised my reasonable business judgment in concluding that it is better to proceed with the Agreements than to litigate with the Settling Parties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed October 31, 2013 at El Segundo, California.

JASON M. RUND



783179

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendants Thomas Ferro, individually and dba Moon Shadow Leasing ("T. Ferro"), Rosa Ferro, an individual ("R. Ferro"), and HMB Holdings, LLC ("HMB") (T. Ferro, R. Ferro, and HMB are each referred to herein as a "Defendant" and collectively as the "Settling Defendants"), on the other hand. The Trustee and Settling Defendants (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about December 6, 2012, the Trustee filed a Complaint to Avoid and Recover Fraudulent Transfers (the "Ferro Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Thomas Ferro, et. al.*, Adv. No. 2:12-ap-02664-ER (the "Ferro Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, defendants T. Ferro and R. Ferro, among others. In the Ferro Complaint, the Trustee alleges that EPD made transfers totaling $1,023,180.58 to or for the benefit of the defendants thereto the ("Ferro Transfers"), in the seven years preceding the Petition Date. The defendants in the Ferro Adversary Proceeding filed an answer to the Ferro Complaint on July 2, 2013.

C. On or about March 25, 2013, a settlement agreement between the Trustee and Jerry Ferro and Ann Ferro, individually and as Trustees of the Ferro Family Trust, defendants in the Ferro Adversary Proceeding, was fully executed. That settlement agreement resolved all claims the Trustee asserted against those defendants in the Ferro Adversary Proceeding, subject to Court approval. The Trustee shall seek Court approval of the settlement agreement with Jerry Ferro and Ann Ferro, individually and as Trustees of the Ferro Family Trust, concurrently with this Agreement.

D. On or about December 3, 2012, the Trustee filed a Complaint to Avoid and Recover Fraudulent Transfers (the "HMB Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. HMB HOLDINGS, LLC*, Adv. No. 2:12-ap-02612-ER (the "HMB Adversary Proceeding"), currently pending in the Bankruptcy Court. The HMB Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, HMB, including but not limited to, UCC-1 financing statements recorded for the benefit of HMB against the Debtors' assets (the "HMB Transfers"), in the seven years preceding the Petition Date. As of the date hereof, no answer has been filed in the HMB Adversary Proceeding.

E. The Ferro Adversary Proceeding and the HMB Adversary Proceeding are herein after referred to collectively as the "Adversary Proceedings." The Ferro Complaint and the HMB Complaint are herein after referred to collectively as the "Complaints."

F. T. Ferro represents and warrants that he is the managing member and Chief Executive Manger of HMB and that he has the authority to enter into this agreement on HMB's behalf.

G. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and the Settling Defendants hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

<u>Terms of Agreement</u>

1. <u>Effective Date</u>. No later than thirty (30) calendar days after his receipt of a fully executed Settlement Agreement, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "<u>Effective Date</u>"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. <u>Proofs of Claim in the Bankruptcy Case</u>.

a. On or about December 9, 2011, T. Ferro filed proof of claim 135-1 in the Bankruptcy Case, in the amount of $4,977,372.18 ("<u>Claim 135-1</u>"). Claim 135-1 asserts that $2,000,000.00 of the claimed amount is secured, and that $2,977,372.18 is unsecured. On or about December 9, 2011, T. Ferro filed proof of claim 136-1 ("<u>Claim 136-1</u>), asserting an unsecured claim against the Estate in the amount of $1,287,910.98. T. Ferro agrees that Claim 136-1 is disallowed in its entirety. T. Ferro and the Trustee agree that Claim 135-1 shall be reclassified as an allowed general unsecured claim in the total amount of $4,246,592.65, and that the remainder of the claim shall be disallowed. The Trustee and T. Ferro further agree that, except as set forth herein, any other proofs of claim filed by T. Ferro in the Bankruptcy Case, and any other claims of T. Ferro including but not limited to any secured or priority claims, are disallowed. T. Ferro waives the right as to any secured or priority claims against the Debtors, the Estate, or assets of the Debtors and the Estate.

b. On or about December 9, 2011, R. Ferro filed proof of claim 139-1 in the Bankruptcy Case, asserting an unsecured claim against the Estate in the amount of $102,152.02 ("<u>Claim 139-1</u>"). On or about December 9, 2011, R. Ferro filed proof of claim 140-1 in the Bankruptcy Case, asserting an unsecured claim against the Estate in the amount of $211,830.17 ("<u>Claim 140-1</u>"). R. Ferro agrees that Claim 139-1 is disallowed in its entirety. R. Ferro and the Trustee agree that Claim 140-1 shall be an allowed general unsecured claim in the total amount of $219,879.13. The Trustee and R. Ferro further agree that, except as set forth herein, any other proofs of claim filed by R. Ferro in the Bankruptcy Case, and any other claims of R. Ferro including but not limited to any secured or priority claims, are disallowed. R. Ferro waives the right as to any secured or priority claims against the Debtors, the Estate, or assets of the Debtors and the Estate

c. On or about December 9, 2011, Jerry Ferro and Ann Ferro, individually and as Trustees of the Ferro Family Trust ("<u>Ferro Trust Parties</u>") filed proof of claim 137-1 in the Bankruptcy Case, in the amount of $1,207,690.36 ("<u>Claim 137-1</u>"). Claim 137-1 asserts that $500,000.00 of the claimed amount is secured, and that $757,690.00 is unsecured. The Trustee agrees that Claim No. 137-1 shall be allowed as a general unsecured claim in the total amount of $850,736.34 only. The Trustee reserves the right to object to the remainder of the claim, and intends to do so at the appropriate time.

d. On or about December 12, 2011, HMB filed proof of claim 209-1 ("<u>Claim 209-1</u>") in the Bankruptcy Case, asserting a secured claim against the Estate in the amount of $12,750,000.00. HMB and T. Ferro agree that Claim 209-1 is disallowed in its entirety. HMB and T. Ferro (on behalf of HMB)

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc
Exhibit A - G Page 3 of 42

further agree that any and all proofs of claim filed by HMB (or on its behalf) in the Bankruptcy Case, and any other claims of HMB, are disallowed in their entirety, including but not limited to any secured or priority claims. HMB waives the right as to any secured or priority claims against the Debtors, the Estate, or assets of the Debtors and the Estate

c. T. Ferro and R. Ferro may amend their general unsecured proofs of claims (as set forth above). The Trustee shall have sixty (60) days from receipt of an amended proof of claim to provide a response to T. Ferro's and R. Ferro's counsel. Nothing herein shall be construed as a waiver of the Trustee's right to object to any amended proofs of claim at any time, notwithstanding the limted time for the Trustee to provide a response, as set forth herein. Any amendmdent to the claims of T. Ferro and R. Ferro shall be supported by adequate documentation and shall solely be general unsecured claims.

3. <u>Avoidance and Recovery of HMB Liens and/or Claims</u>. The Settling Defendants hereto, including but not limited to HMB and T. Ferro on behalf of HMB, agree that any and all liens and/or secured claims filed and/or recorded in favor of HMB, T. Ferro, or R. Ferro, and against the asets of the Debtors, including but not limited to UCC-1 financing statements, are avoided and recovered by the Trustee on behalf of the Estate. This includes but is not limited to any UCC-1 financing statements filed and/or recorded in favor of HMB and against the Debtors or assets of the Debtors in or about September 2009. HMB shall not retain any lien or other security interest against the Debtors or any assets of the Debtors or the Debtors' bankruptcy estate.

4. <u>Dismissal Of the Adversary Proceedings</u>. Within twenty (20) business days after the Effective Date, the Trustee shall file requests for dismissal of the Adversary Proceedings with prejudice and with each party bearing their own respective attorney's fees and costs in connection with the Adversary Proceedings and this Agreement. The Settling Defendants agrees that no stipulation shall be necessary unless required by the Court.

5. <u>Release of Claims</u>. The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges Settling Defendants from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaints or the Adversary Proceedings, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq*.

Settling Defendants, on their behalves, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

**<u>SECTION 1542</u>. A GENERAL RELEASE DOES NOT**

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Exhibit A - G Page 4 of 42

EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

6. Settling Defendants' Representations.

Settling Defendants represent to the Trustee the following:

a. Other than the $1,023,180.58 in transfers listed in the Ferro Complaint, T. Ferro and R. Ferro are not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

b. Settling Defendants did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and any funds that the Settling Defendants received from the Debtors were received solely for the reasons stated in herein above.

c. At the time of the Ferro Transfers, T. Ferro and R. Ferro had no information, knowledge or belief that the Debtors were insolvent, that any transfers to T. Ferro and/or R. Ferro caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

d. T. Ferro specifically represents and warrants that, at the time of the transfers to him individually and to HMB (as alleged in the Complaints) that he had no information, knowledge or belief that the Debtors were insolvent, that any transfers to T. Ferro and/or HMB caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct. T. Ferro further specifically represents that he is not aware of having received any transfers (to him personally, to R. Ferro, or to HMB) from the Debtors or any person or entity affiliated with the Debors, other than the transfers listed in the Complaints.

e. Concurrently with the execution of this Agreement, Settling Defendants agree to execute declarations under penalty of perjury affirming the representations made by the Settling Defendants herein.

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc
Exhibit A - G Page 5 of 42

7. Non-Admission. By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

8. Integration. This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

9. Severability. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10. Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Settling Defendants, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

11. Construction. This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

12. Jurisdiction. The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

13. Miscellaneous. As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

14. Authority. Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

15. Terms Read and Understood. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

16. Counterparts and Facsimile and Pdf Signatures. This Agreement may be executed in one

or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 10-23-13

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Dated: 10/22/13

DEFENDANT THOMAS FERRO, INDIVIDUALLY AND dba MOON SHADOWS LEASING

By: ______________________
DEFENDANT THOMAS FERRO, INDIVIDUALLY AND DBA MOON SHADOWS LEASING

Dated: 10/22/13

DEFENDANT ROSA FERRO

By: ______________________
DEFENDANT ROSA FERRO

Dated: 10/22/13

DEFENDANT HMB HOLDINGS, LLC

By: ______________________
THOMAS FERRO
Its Managing Member, Chief Executive Manger and Authorized Signatory

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:15 Desc Exhibit A - G Page 7 of 42

Approved as to Form:

Dated: 10/27/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________

COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 10/27/13

LAW OFFICES OF DAVID LALLY

By: ______________________

DAVID B. LALLY
Attorney for Settling Defendants

**SETTLEMENT AGREEMENT**

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendants Jerry Ferro and Ann Ferro, individually and as Trustees of the Ferro Family Trust (collectively, "Defendants"), on the other hand. The Trustee and Defendants (together referred to as the "Parties"), agree as follows:

**RECITALS**

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases *nunc pro tunc* to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about December 6, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Ferro, et al.*, Adv. No. 2:12-ap-02664-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to disallow or equitably subordinate the proof of claim filed by Defendants in the Bankruptcy Case. Defendants have not yet filed their answers to the Complaint.

C. Defendants contend that they were "net losers" and invested or lent more funds than they withdrew from EPD. Defendants also contend that, prior to the Bankruptcy Case, they were not aware that they were members of HMB Holdings, LLC, either individually or as trustees or beneficiaries of a trust, including but not limited to the Ferro Family Trust.

D. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendants hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

**Terms of Agreement**

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final and non-appealable order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Assignment of Interest in HMB Holdings, LLC/Reservation re Proofs of Claim.** As of the Effective Date, and without executing any further agreement or document, Defendants assign and transfer any and all membership interests that they have, either individually or as trustees or beneficiaries of a trust, including but not limited to the Ferro Family Trust, in HMB Holdings, LLC, to the Trustee on behalf of the

bankruptcy estate.

Defendants retain their previously-filed general proof of claim, Claim No. 137, solely as to the unsecured portion of that proof of claim. Defendants waive the secured portion of that proof of claim and agree that the secured portion is disallowed. The Trustee has not yet reviewed the proofs of claim filed in the Bankruptcy Case, and the Trustee reserves the right to object to the unsecured portion of that claim on any basis if appropriate to do so.

Defendants also waive any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, LLC, or on any other basis.

3. **Dismissal Of Defendants in the Adversary Proceeding.** Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Defendants in the Adversary Proceeding with prejudice and with each party bearing his or her own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. The Defendants agree that no stipulation shall be necessary unless required by the Court. The Adversary Proceeding shall proceed against the other defendants in the Adversary Proceeding.

4. **Release of Claims.** The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendants from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendants, on their behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

5. **Defendant's Representations.**

Defendant represents to the Trustee the following:

a. Defendants were "net losers" and invested more money in and/or lent more money to EPD than they withdrew. Defendants are not aware of having received any monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner during the seven years prior to the Petition Date.

b. Defendants did not have any actual or inquiry notice of any kind that EPD or Pressman were: (1) engaged in a Ponzi scheme or any other improper activity; (2) insolvent; (3) unable to pay their debts as such debts became due; (4) engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital; or (5) engaged in any acts of fraud or other improper conduct.

c. Claim No. 137, in the amount of $1,207,690.36, of which $500,000.00 is identified as a secured claim, was filed by Defendants on or about December 9, 2011. Defendants filed no other proofs of claim in the Bankruptcy Case.

d. Defendants were not aware of, and had no knowledge that, they were members of HMB Holdings, LLC (either individually or as trustee or beneficiary of a trust including but not limited to the Ferro Family Trust) until after the Bankruptcy Case was filed. Defendants had absolutely no involvement with HMB Holdings, LLC (either individually or as trustee or beneficiary of a trust including but not limited to the Ferro Family Trust), never received any documents from HMB Holdings, LLC stating that they were members (either individually or as trustee or beneficiary of a trust including but not limited to the Ferro Family Trust), and never agreed or consented to be members of HMB Holdings, LLC (either individually or as trustee or beneficiary of a trust including but not limited to the Ferro Family Trust). Defendants (either individually or as trustee or beneficiary of a trust including but not limited to the Ferro Family Trust) never received any monies, property or other assets from HMB Holdings, LLC.

e. Defendants are the sole trustees of the Ferro Family Trust and are authorized to enter into this Agreement.

f. Concurrently with the execution of this Agreement, Defendants agree to execute a declaration under penalty of perjury affirming the representations made by the Defendants herein.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:15 Desc
Exhibit A - G Page 11 of 42

considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration**. This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability**. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendants, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous**. As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority**. Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood**. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and Pdf Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:19 Desc
Exhibit A - C Page 12 of 42

Dated: 6-25-13

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Dated: 6-21-13

DEFENDANT JERRY FERRO, INDIVIDUALLY AND AS TRUSTEE OF THE FERRO FAMILY TRUST

By: ______________________
JERRY FERRO, individually and as Trustee of The Ferro Family Trust

Dated: 6-21-13

DEFENDANT ANN FERRO, INDIVIDUALLY AND AS TRUSTEE OF THE FERRO FAMILY TRUST

By: ______________________
ANN FERRO, individually and as Trustee of The Ferro Family Trust

Approved as to Form:

Dated: 10/28/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: ______________________

BOROWITZ & CLARK LLP

By: ______________________
M. ERIK CLARK

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:15 Desc
Exhibit A - G Page 13 of 42

Attorney for Defendants, Jerry Ferro and Ann Ferro,
Individually and as Trustees of the Ferro Family Trust

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of the consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendants Melvin Glick aka Dr. Melvin Glick, an individual and Ellen Glick, an individual (collectively, "Defendants"), on the other hand. The Trustee and Defendants (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about December 2, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Melvin Glick aka Dr. Melvin Glick and Ellen Glick*, Adv. No. 2:12-ap-02594-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendants. Defendants have not yet filed their answer to the Complaint.

C. The Trustee alleges that EPD made transfers totaling $623,910.80 to or for the benefit of Defendants ("Transfers"), in the seven years preceding the Petition Date.

D. Defendants contend that the Transfers are not avoidable or recoverable by the Trustee. Defendants have acknowledged that the Transfers were in fact received by Defendants. Defendants contend that they were "net losers" and invested or lent more funds than they withdrew from EPD. Defendants also contend that, prior to the Bankruptcy Case, they were not aware that Melvin Glick was a member of HMB Holdings, LLC.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendants hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

## Terms of Agreement

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of the first omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final and non-appealable order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date").

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:19 Desc
Exhibit A - G Page 15 of 42

2. **Assignment of Interest in HMB Holdings, LLC/Reservation and Waiver re Proofs of Claim.** As of the Effective Date, and without executing any further agreement or document, Defendants assign and transfer any and all membership interests that they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

Defendants retains their previously-filed general unsecured proof of claim, Claim No. 50-1. The Trustee has not yet reviewed the proofs of claim filed in the Bankruptcy Case, including but not limited to Claim No. 50-1, and the Trustee reserves the right to object to that claim on any basis if appropriate to do so.

An additional proof of claim purportedly filed by Defendant Melvin Glick, Claim No. 152-1, was filed on December 12, 2011, and asserted a claim totaling $1,754,599, comprised of a secured claim in the amount of $250,000 and an unsecured claim in the amount of $1,504,559. Defendants represents that Claim No. 152-1 was not authorized, signed or filed by Defendant Melvin Glick, has a forged signature on it and Defendants have no knowledge as to who signed and filed that claim. Claim No. 152-1 is therefore waived and disallowed, and Defendants shall not receive an allowed claim on the basis of that claim.

Defendants also waive any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, LLC, or on any other basis.

If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

3. **Dismissal Of Adversary Proceeding.** Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing his or her own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. The Defendants agree that no stipulation shall be necessary unless required by the Court.

4. **Release of Claims.** The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendants from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendants, on their behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint, exclusive of Claim 50-1.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

**SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR**

**DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

5. **Defendants' Representations.**

Defendant represents to the Trustee the following:

a. Defendants made investments in and/or loans to EPD of approximately $1,858,420.

b. Defendants received transfers from the Debtors in the amount of approximately $623,911 (the "Transfers").

c. Defendants were "net losers" and invested more money in and/or lent more money to EPD than they withdrew. Other than the transfers listed in the Complaint, Defendants are not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner.

d. Defendants did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendants received from the Debtors were received solely for the reasons stated in herein above.

e. At the time of the Transfers, Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

f. Claim No. 50-1, a general unsecured claim in the amount of $2,808,518.13, comprised of both principal and interest, was filed by Defendants' counsel on or about November 23, 2011.

g. An additional proof of claim purportedly filed by Defendant Melvin Glick, Claim No. 152-1, was filed on December 12, 2011, and asserted a claim totaling $1,754,599, comprised of a secured claim in the amount of $250,000 and an unsecured claim in the amount of $1,504,559. Claim No. 152-1 was not authorized, signed or filed by Defendant Melvin Glick, has a forged signature on it and Defendants have no knowledge as to who signed and filed that claim. Claim No. 152-1 is therefore waived and disallowed, and Defendants agrees

that they shall not receive an allowed claim on the basis of that claim.

h. Defendants were not aware of, and had no knowledge that, either of them was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. Defendants had absolutely no involvement with HMB Holdings, LLC, never received any documents from HMB Holdings, LLC stating that either of them was a member, and never agreed or consented to be a member of HMB Holdings, LLC. Defendants never received any monies, property or other assets from HMB Holdings, LLC.

i. Concurrently with the execution of this Agreement, Defendants agree to execute a declaration under penalty of perjury affirming the representations made by the Defendants herein.

6. **Non-Admission**. By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration**. This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability**. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendants, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous**. As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and

paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties

13. Authority. Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. Terms Read and Understood. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. Counterparts and Facsimile and Pdf Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 3/11/13

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: [signature]
JASON M. RUND
Chapter 7 Trustee

Dated: 3/10/13

DEFENDANT MELVIN GLICK aka DR. MELVIN GLICK

By: [signature]
MELVIN GLICK aka DR. MELVIN GLICK, an individual

Dated: 3-10-13

DEFENDANT ELLEN GLICK

By: [signature]
ELLEN GLICK, an individual

Approved as to Form:

Dated: March 12, 2013

EZRA BRUTZKUS GUBNER LLP

By: ______________________

COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 3-8-13

ST. JAMES LAW, P.C.

By: ______________________

MICHAEL ST. JAMES
Attorney for Defendants, Melvin Glick aka
Dr. Melvin Glick, an individual, and Ellen Glick,
an individual

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendant Ronald Sharrow, individually and dba Sharrow Springs Leasing ("Defendant"), on the other hand. The Trustee and Defendant (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases *nunc pro tunc* to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about December 3, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Ron Sharrow, individually and dba Sharrow Springs Leasing,* Adv. No. 2:12-ap-02611-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendant. Defendant has not yet filed his answer to the Complaint.

C. The Trustee alleges that EPD made transfers totaling $699,903.67 to or for the benefit of Defendant ("Transfers"), in the seven years preceding the Petition Date.

D. Defendant contends that the Transfers are not avoidable or recoverable by the Trustee. Defendant has acknowledged that the Transfers were in fact received by Defendant. Defendant contends that he was a "net loser" and invested or lent more funds than he withdrew from EPD. Defendant also contends that, prior to the Bankruptcy Case, he was not aware that he was a member of HMB Holdings, LLC.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

## Terms of Agreement

1. Effective Date. After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final and non-appealable order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Exhibit A - G Page 21 of 42

2. <u>Assignment of Interest in HMB Holdings, LLC/Reservation and Waiver re Proofs of Claim</u>. As of the Effective Date, and without executing any further agreement or document, Defendant assigns and transfers any and all membership interests that he has in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

Defendant retains his previously-filed general unsecured proofs of claim, Claim Nos. 19-1 and 20-1. The Trustee has not yet reviewed the proofs of claim filed in the Bankruptcy Case, including but not limited to Claim Nos. 19-1 and 20-1, and the Trustee reserves the right to object to those claims on any basis if appropriate to do so.

Defendant also waives any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, LLC, or on any other basis.

3. <u>Dismissal Of Adversary Proceeding</u>. Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing his or her own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. The Defendant agrees that no stipulation shall be necessary unless required by the Court.

4. <u>Release of Claims</u>. The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendant from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendant, on his behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint, exclusive of Claim Nos. 19-1 and 20-1.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **<u>SECTION 1542</u>. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc
Exhibit A - G Page 22 of 42

5. <u>Defendant's Representations.</u>

Defendant represents to the Trustee the following:

a. Defendant made investments in and/or loans to EPD of approximately $1,000,000.

b. Defendant received transfers from the Debtors in the amount of approximately $870,423 (Defendant received $699,903.67 of that amount within the seven-year period prior to the bankruptcy filing) (the "Transfers").

c. Defendant was a "net loser" and invested more money in and/or lent more money to EPD than he withdrew. Other than the transfers listed in the Complaint, Defendant is not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner.

d. Defendant did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendant received from the Debtors was received solely for the reasons stated in herein above.

e. At the time of the Transfers, Defendant had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendant caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

f. Claim Nos. 19-1 and 20-1, general unsecured claims in the amounts of $486,642.79 and $184,932.00, comprised of both principal and interest, were filed by Defendant on or about October 31, 2011. Defendant filed no other proofs of claim in the Bankruptcy Case.

g. Defendant was not aware of, and had no knowledge that, he was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. Defendant had absolutely no involvement with HMB Holdings, LLC, never received any documents from HMB Holdings, LLC stating that he was a member, and never agreed or consented to be a member of HMB Holdings, LLC. Defendant never received any monies, property or other assets from HMB Holdings, LLC.

h. Concurrently with the execution of this Agreement, Defendant agrees to execute a declaration under penalty of perjury affirming the representations made by the Defendant herein.

Case 2:12-ap-02424-VZ Doc 263-4 Filed 09/05/17 Entered 09/05/17 18:59:26 Desc Exhibit Page 155 of 160

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:19 Desc
Exhibit A - G Page 24 of 42

15. **Counterparts and Facsimile and Pdf Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 5/6/2013

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR
CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Dated: 4/25/13

DEFENDANT RON SHARROW, INDIVIDUALLY AND DBA SHARROW SPRINGS LEASING

By: ______________________
RON SHARROW, individually and
dba Sharrow Springs Leasing

Approved as to Form:

Dated: 5/6/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC and Jerrold S. Pressman

Dated: ______________________

LEVENE, NEALE, BENDER, YOO & BRILL LLP

By: ______________________
EDWARD M. WOLKOWITZ
Attorney for Defendant, Ron Sharrow,
individually and dba Sharrow Springs Leasing

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Exhibit A - C Page 25 of 42

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendant Ralph Grande, individually and dba Grande Canyon Leasing ("Defendant"), on the other hand. The Trustee and Defendant (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases *nunc pro tunc* to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. The Trustee alleges that EPD made transfers totaling approximately $1,807,359 to or for the benefit of Defendant ("Transfers"), in the seven years preceding the Petition Date. The Trustee has not yet filed an adversary complaint against Defendant. Pursuant to stipulations and tolling agreements, and Orders approving the stipulations and tolling agreements, the applicable statutes of limitations are currently tolled through May 6, 2013.

C. Defendant contends that the Transfers are not avoidable or recoverable by the Trustee. Defendant acknowledges that the Transfers were in fact received by Defendant. Defendant contends that he was a "net loser" and invested or lent more funds than he withdrew from EPD. Defendant also contends that, prior to the Bankruptcy Case, he was not aware that he was a member of HMB Holdings, LLC.

D. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

## Terms of Agreement

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final and non-appealable order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Assignment of Interest in HMB Holdings, LLC/Reservation re Proofs of Claim.** As of the Effective Date, and without executing any further agreement or document, Defendant assigns and transfers any and all membership interests that he has in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.



EXHIBIT "E"

Defendant retains his previously-filed general unsecured proof of claim, Claim No. 48. The Trustee has not yet reviewed the proofs of claim filed in the Bankruptcy Case, including but not limited to Claim No. 48, and the Trustee reserves the right to object to that claim on any basis if appropriate to do so.

Defendant also waives any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, LLC, or on any other basis.

3. Release of Claims. The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendant from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Transfers, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendant, on his behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Transfers, exclusive of Claim No. 48.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

4. **Defendant's Representations.**

Defendant represents to the Trustee the following:

a. Defendant made investments in and/or loans to EPD of approximately $3,076,000.

b. Defendant received transfers from the Debtors in the amount of approximately $2,364,158 (Defendant received $1,807,359 of that amount within the seven-year period prior to the bankruptcy filing) (the "Transfers").

c. Defendant was a "net loser" and invested more money in and/or lent more

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:19 Desc
Exhibit A - G Page 27 of 42

money to EPD than he withdrew. Other than the transfers listed in the Complaint, Defendant is not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner.

d. Defendant did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendant received from the Debtors was received solely for the reasons stated in herein above.

e. At the time of the Transfers, Defendant had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendant caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

f. Claim No. 48, a general unsecured claim in the amounts of $2,193,346.26, comprised of both principal and interest, was filed by Defendant on or about November 23, 2011. Defendant filed no other proofs of claim in the Bankruptcy Case.

g. Defendant was not aware of, and had no knowledge that, he was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. Defendant had absolutely no involvement with HMB Holdings, LLC, never received any documents from HMB Holdings, LLC stating that he was a member, and never agreed or consented to be a member of HMB Holdings, LLC. Defendant never received any monies, property or other assets from HMB Holdings, LLC.

h. Concurrently with the execution of this Agreement, Defendant agrees to execute a declaration under penalty of perjury affirming the representations made by the Defendant herein.

5. <u>Non-Admission</u>. By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

///

///

///

6. **Integration**. This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

7. **Severability**. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

8. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

9. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

10. **Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

11. **Miscellaneous**. As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

12. **Authority**. Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

13. **Terms Read and Understood**. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

14. **Counterparts and Facsimile and Pdf Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.