Dated: 4/30/13

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR
CONSOLIDATED DEBTORS EPD INVESTMENT CO.,
LLC. AND JERROLD S. PRESSMAN

By: ____________________
JASON M. RUND
Chapter 7 Trustee

Dated: [illegible]

DEFENDANT RALPH GRANDE, INDIVIDUALLY AND
DBA GRANDE CANYON LEASING

By: ____________________
RALPH GRANDE, individually and
dba Grande Canyon Leasing

Approved as to Form:

Dated: 4/30/13

EZRA BRUTZKUS GUBNER LLP

By: ____________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 4/30/13

KLEIN, DADAY, ARETOS & O'DONOGHUE, LLC

By: ____________________
JONATHAN N. ROGERS
Attorney for Defendant, Ralph Grande,
individually and dba Grande Canyon Leasing

Dated: ____________________

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR
CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ______________________________
JASON M. RUND
Chapter 7 Trustee

Dated: 4/29/13

DEFENDANT RALPH GRANDE, INDIVIDUALLY AND DBA GRANDE CANYON LEASING

By: ______________________________
RALPH GRANDE, individually and
dba Grande Canyon Leasing

Approved as to Form:

Dated: ____________________

EZRA BRUTZKUS GUBNER LLP

By: ______________________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 4/30/13

KLEIN, DADAY, ARETOS & O'DONOGHUE, LLC

By: ______________________________
JONATHAN N. ROGERS
Attorney for Defendant, Ralph Grande,
individually and dba Grande Canyon Leasing

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendants Norman Hanover and Mary Lou Hanover ("Defendants"), on the other hand. The Trustee and Defendants (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases *nunc pro tunc* to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. The Trustee alleges that EPD made transfers totaling approximately $572,404 to or for the benefit of Defendants ("Transfers"), in the seven years preceding the Petition Date. The Trustee has not yet filed an adversary complaint against Defendants. Pursuant to stipulations and tolling agreements, and Orders approving the stipulations and tolling agreements, the applicable statutes of limitations are currently tolled through May 6, 2013.

C. Defendants contend that the Transfers are not avoidable or recoverable by the Trustee. Defendants acknowledge that the Transfers were in fact received by Defendants. Defendants contend that they were "net losers" and invested or lent more funds than they withdrew from EPD. Defendants also contend that, prior to the Bankruptcy Case, they were not aware that either of them was a member of HMB Holdings, LLC.

D. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendants hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

### Terms of Agreement

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final and non-appealable order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Assignment of Interests in HMB Holdings, LLC and in Life Insurance Policies/Reservation re Proofs of Claim.** As of the Effective Date, and without executing any further agreement or document, Defendants assign and transfer any and all membership interests that they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate. In addition, as of the Effective Date, and without executing any further agreement or document, to the extent that either of the Defendants is a named beneficiary of any life insurance policy: (a) purchased by either of the Debtors; (b) owned by either of

the Debtors; (c) and/or (c) on the life of Jerrold S. Pressman, Defendants assign and transfer any and all rights held by Defendants to the Trustee on behalf of the bankruptcy estate, including but not limited to the right to receive all proceeds from such policies. Defendants agree to execute any documents requested by the Trustee to effectuate the assignment of such rights as to any such life insurance policies.

Defendants retain their previously-filed general unsecured proofs of claim, Claim Nos. 40, 41 and 42. The Trustee has not yet reviewed the proofs of claim filed in the Bankruptcy Case, including but not limited to Claim Nos. 40, 41 and 42, and the Trustee reserves the right to object to those claims on any basis if appropriate to do so.

Defendants also waive any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, LLC, or on any other basis.

3. Release of Claims. The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendants from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Transfers, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendants, on their behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Transfers, exclusive of Claim Nos. 40, 41 and 42.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

4. Defendants' Representations.

Defendants represent to the Trustee the following:

a. Defendants made investments in and/or loans to EPD of approximately $1,455,286.

b. Defendants received transfers from the Debtors in the amount of approximately $935,600 (Defendants received $572,404 of that amount within the seven-year period prior to the bankruptcy filing) (the "Transfers").

c. Defendants were "net losers" and invested more money in and/or lent more money to EPD than they withdrew. Other than the transfers listed in the Recitals, and a check from Broadway Entertainment Marketing, Inc. in the amount of $202,150.00 on or about December 14, 2007, Defendants are not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner.

d. Defendants did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendants received from the Debtors was received solely for the reasons stated in herein above.

e. At the time of the Transfers, Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

f. Claim Nos. 40, 41 and 42, general unsecured claims in the amounts of $1,631,336.60, $120,514.08, and $357,608.61, respectively, comprised of both principal and interest, were filed by Defendants in or about November 2011. Defendants filed no other proofs of claim in the Bankruptcy Case.

g. Defendants were not aware of, and had no knowledge that, either of them was a member of HMB Holdings, LLC until after the Bankruptcy Case was filed. Defendants had absolutely no involvement with HMB Holdings, LLC, never received any documents from HMB Holdings, LLC stating that they were members, and never agreed or consented to be members of HMB Holdings, LLC. Defendants never received any monies, property or other assets from HMB Holdings, LLC.

h. Concurrently with the execution of this Agreement, Defendants agree to execute a declaration under penalty of perjury affirming the representations made by the Defendants herein.

5. <u>Non-Admission</u>. By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:19 Desc Exhibit Page 6 of 112

6. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

7. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

8. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendants, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

9. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

10. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

11. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

12. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

13. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

14. **Counterparts and Facsimile and Pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 8-9-13

JASON M. RUND.
CHAPTER 7 BANKRUPTCY TRUSTEE FOR CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC. AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Dated: 4/24/13

NORMAN HANOVER

By: ______________________
NORMAN HANOVER, an individual

Dated: 4/24/13

MARY LOU HANOVER

By: ______________________
MARY LOU HANOVER, an individual

Approved as to Form:

Dated: 5/12/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: MAY 27 2013

LEVENE, NEALE, BENDER, YOO & BRILL LLP

By: ______________________
EDWARD M. WOLKOWITZ
Attorney for Defendants,
Norman Hanover and Mary Lou Hanover

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of the consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendant Lawrence Cooper aka Dr. Lawrence Cooper, an individual ("Mr. Cooper"), defendant Janet Cooper aka Jan Cooper, an individual ("Mrs. Cooper") on the other hand (Mr. and Mrs. Cooper together, the "Defendants"). The Trustee and Defendants (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about December 3, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Lawrence Cooper aka Dr. Lawrence Cooper, and Janet Cooper aka Jan Cooper,* Adv. No. 2:12-ap-02621-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendants. Defendants filed an answer to the Complaint on July 24, 2013.

C. The Trustee alleges that EPD made transfers totaling $3,338,704.60 to or for the benefit of Defendants ("Transfers"), in the seven years preceding the Petition Date.

D. Defendants contend that the Transfers are not avoidable or recoverable by the Trustee. Defendants acknowledge that the Transfers were in fact received by Defendants. Defendants contend that they were "net losers" and invested or lent more funds than they withdrew from EPD.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendants hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

## Terms of Agreement

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. <u>**Assignment of Interest in HMB Holdings, LLC and Disallowance of Proofs of Claim.**</u>

As of the Effective Date, and without executing any further agreement or document, Defendants assign and transfer any and all membership interests that they have in HMB Holdings, LLC to the Trustee on behalf of the Debtors' bankruptcy estate. Defendants represent and warrant that they have not previously transferred or assigned any membership interests in HMB Holdings, LLC.

Defendants represent that they filed the following proofs of claim in the Debtors' bankruptcy case:

a. On or about December 11, 2011 Mr. Cooper filed Claim No. 192-1 in the amount of $718,692.00 as a general unsecured claim in the Bankruptcy Case;

b. On or about December 12, 2011 Mr. Cooper filed Claim No. 193-1 in the amount of $365,763.00 as a general unsecured claim in the Bankruptcy Case;

c. On or about December 12, 2011 Mr. Cooper filed Claim No. 194-1 in the amount of $713,214.00 as a general unsecured claim in the Bankruptcy Case;

d. On or about December 12, 2011 Mr. Cooper filed Claim No. 195-1 in the amount of $3,456,339.00, with $1,000,000.00 as a secured claim and $2,456,339.00 as a general unsecured claim, in the Bankruptcy Case;

e. On or about December 12, 2011 Mr. Cooper filed Claim No. 196-1 in the amount of $1,761,295.00 as a general unsecured claim in the Bankruptcy Case;

f. On or about December 12, 2011 Mr. Cooper filed Claim No. 197-1 in the amount of $413,428.00 as a general unsecured claim in the Bankruptcy Case;

g. On or about December 12, 2011 Mr. Cooper filed Claim No. 198-1 in the amount of $733,627.00 as a general unsecured claim in the Bankruptcy Case;

h. On or about December 12, 2011 Mr. Cooper filed Claim No. 199-1 in the amount of $141,501.00 as a general unsecured claim in the Bankruptcy Case;

i. On or about December 12, 2011 Mr. Cooper filed Claim No. 200-1 in the amount of $11,000,000.00 as a general unsecured claim in the Bankruptcy Case; and,

j. On or about December 12, 2011 Mr. Cooper filed Claim No. 201-1 in the amount of $338,172.00 as a general unsecured claim in the Bankruptcy Case.

Except as set forth herein above, Defendants represent that they did not file any other proofs of claim in the Debtors' Bankruptcy Case. Defendants agree that Claim Nos. 192-1 through 201-1 filed in the Debtors' Bankruptcy Case, and any other potential claims against the Debtors, the Debtors' bankruptcy estate or the Debtors' assets, are disallowed in their entirety with the exception that Defendants shall receive an allowed general unsecured claim in the amount of $1,019,302.18. Defendants waive any secured or priority claims against the Debtors' bankruptcy estate based on membership interests in HMB Holdings, LLC or on any other basis.

3. <u>**Dismissal Of Adversary Proceeding.**</u> Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each

party bearing his own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. Defendants agrees that no stipulation shall be necessary unless required by the Court.

4. **Release of Claims.** The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendants from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendants, on their own behalves, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharges the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

5. **Defendant's Representations.**

Defendants represents to the Trustee the following:

a. Other than the Transfers, Defendants are not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

b. Defendants did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that Defendants received from the Debtors were received solely as repayment for monies loaned by Defendants to EPD and/or Pressman.

Case 2:10-bk-62263-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc
Exhibit A - G Page 39 of 42

c. At the time of the Transfers, Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

d. Concurrently with the execution of this Agreement, Defendants agree to execute declarations under penalty of perjury affirming the representations made by Defendants herein.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendants, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:19 Desc
Exhibit A Page 40 of 42

meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. Authority. Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. Terms Read and Understood. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. Counterparts and Facsimile and Pdf Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 10-23-13

JASON M. RUND, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Dated: ______________

DEFENDANT LAWRENCE COOPER AKA DR. LAWRENCE COOPER

By: ______________________
DEFENDANT LAWRENCE COOPER AKA DR. LAWRENCE COOPER

Dated: ______________

DEFENDANT JANET COOPER

By: ______________________
DEFENDANT JANET COOPER

meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and Pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: ____________________

JASON M. RUND, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ____________________
JASON M. RUND
Chapter 7 Trustee

Dated: 10/8/13

DEFENDANT LAWRENCE COOPER AKA DR. LAWRENCE COOPER

By: [signature]
DEFENDANT LAWRENCE COOPER AKA DR. LAWRENCE COOPER

Dated: 10/8/13

DEFENDANT JANET COOPER

By: [signature] for Janet Cooper
DEFENDANT JANET COOPER

Deceased 6/16/2009

Case 2:10-bk-62208-ER Doc 769-1 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Exhibit A - G Page 42 of 42

Approved as to Form:

Dated: 10/9/13

EZRA BRUTZKUS GUBNER LLP

By: [signature]
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 10/2/13

LAW OFFICES OF DAVID LALLY

By: [signature]
DAVID B. LALLY
Attorney for Defendants

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendants Tracy Rosenbaum ("T. Rosenbaum"), 4 R Horse Farm ("4RHF"), Miller Carbonic, Inc. ("MCI"), James Rosenbaum ("J. Rosenbaum") and the Miller Investment Plan (T. Rosenbaum, J. Rosenbaum, 4RHF, MCI and Miller Investment Plan each a "Defendant" and collectively the "Defendants"), on the other hand. The Trustee and Defendants (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, before the Honorable Ernest M. Robles.

B. On or about November 28, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "4R Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Tracy Rosenbaum, an individual, and 4 R Horse Farm, a business entity of uknown type*, Adv. No. 2:12-ap-02554-ER (the " 4R Adversary Proceeding"), currently pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"). The Complaint sought to avoid and recover transfers from EPD to, or for the benefit of, defendants T. Rosenbuam and 4RHF (the "4R Defendants"). The Trustee alleges that EPD made transfers totaling $213,000.00 to or for the benefit of the 4R Defendants (the foregoing transfers collectively referred to hereinafter as the "4R Transfers"), all of the 4R Transfers having been made in the seven years preceding the Petition Date.

C. On or about November 30, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "MCI Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Miller Carbonic, Inc., an Illinois corporation, and James Rosenbaum, an individual, et. al.*, Adv. No. 2:12-ap-02591-ER (the "MCI Adversary Proceeding"), currently pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"). The Complaint sought to avoid and recover transfers from EPD to, or for the benefit of, defendants J. Rosenbaum and MCI (the "MCI Defendants"). The Trustee alleges that EPD made transfers totaling $1,885,204.98 to or for the benefit of the MCI Defendants (the foregoing transfers collectively referred to hereinafter as the "MCI Transfers") (the 4R Transfers and the MCI Transfers are collectively referred to herein as the "Transfers"), all of the MCI Transfers having been made in the seven years preceding the Petition Date.

D. The Defendants contend that the Transfers are not avoidable or recoverable by the Trustee.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendants hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

**Terms of Agreement**

1. **Effective Date**. Within thirty (30) calendar days after his receipt of the fully executed Agreement, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Payment to the Trustee.** Defendants shall pay the total amount of Thirty-Two Thousand Five Hundred Dollars ($32,500.00) to the Trustee (the "Settlement Amount") on or before the Effective Date. The Settlement Amount shall be paid by cashier's check made payable to "Jason M. Rund, Chapter 7 Trustee for consolidated debtors EPD Investment Co., LLC, and Jerrold S. Pressman". The Settlement Amount shall be delivered to the attention of Corey R. Weber, Ezra Brutzkus Gubner LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.

3. **Dismissal Of Adversary Proceedings.** Within twenty (20) business days after the Effective Date, and after the Trustee has: (1) received the Settlement Amount; and (2) the Court has entered an order approving this Agreement, the Trustee shall file a requests for dismissal of both the 4R Adversary Proceeding and the MCI Adversary Proceeding (collectively, the "Adversary Proceedings"), with prejudice and with each party bearing their own respective attorney's fees and costs in connection with the Adversary Proceedings and this Agreement. Defendants agree that no stipulation shall be necessary unless required by the Court.

4. **Assignment of Interest in HMB Holdings, LLC.** As of the Effective Date, and without executing any further agreement or document, Defendants assign and transfer any and all membership interests that they have in HMB Holdings, LLC to the Trustee on behalf of the Debtors' bankruptcy estate. Defendants represent and warrant that they have not previously transferred or assigned any membership interests in HMB Holdings, LLC.

5. **Proofs of Claim in the Bankruptcy Case.** On or about December 9, 2011, MCI filed proof of claim no. 106-1 ("Claim 106-1") as a general unsecured claim in the bankruptcy case and in the amount of $714,034.70. On or about December 9, 2011, MCI filed proof of claim no. 107-1 ("Claim 107-1") as a secured claim in the bankruptcy case in the amount of $1,250,000.00. On or about December 9, 2011, Miller Investment Plan filed proof of claim no. 108-1 ("Claim 108-1") as a general unsecured claim in the amount of $908,374.00. On or about December 9, 2011, J. Rosenbaum filed proof of claim no. 109-1 ("Claim 109-1") as a general unsecured claim in the bankruptcy case in the amount of $1,221,770.10. On or about December 12, 2011, MCI filed proof of claim no. 148-1 ("Claim 148-1") in the bankruptcy case in the amount of $2,501,805.00, with $1,250,000.00 as a secured claim. Claim 106-1, Claim 107-1, Claim No. 108-1, Claim 109-1, and Claim 148-1 are hereinafter collectively referred to as the "Proofs of Claim."

Except as set forth herein above, Defendants represent that they did not file any other proofs of claim in the Debtors' Bankruptcy Case. Defendants waive any secured or priority claims against the Debtors' bankruptcy estate, the Debtors or the Debtors' assets based on membership interests in HMB Holdings, LLC or on any other basis.

The Defendants shall retain their Proofs of Claim in the Bankruptcy Case, with the exception of the secured portions of Claim No. 107-1, Claim 148-1 and any other proofs of claim listing a secured or priority claim which secured or priority portions are disallowed. The Trustee has not reviewed the Proofs of Claim, and the Trustee reserves the right to object to the Proofs of Claim on any basis, if appropriate to do so. If the Defendants provide to the Trustee documentation substatianting the Proofs of Claim (or any individual proof of claim), the Trustee shall (within sixty (60) days from receipt of said documentation) provide a

response to Defendants regarding any documents provided. Nothing herein shall be construed as a waiver of the Trustee's right to object to any proofs of claim at any time, notwithstanding the limted time for the Trustee to provide a response, as set forth herein.

6. **Release of Claims.** The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges Defendants from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the 4R Complaint, the MCI Complaint (collectively, the "Complaints"), and the Adversary Proceedings, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendants, on their behalves, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Trustee, both in his capacity as Chapter 7 Trustee and as an individual, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaints and the Adversary Proceedings.

The Parties understand that the release(s) of claims set forth in this Agreement cover claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Trustee's right to enforce this Agreement, including but not limited to the payment of the Settlement Amount.

7. **Defendants' Representations.**

Defendants represents to the Trustee the following:

a. The 4R Defendants received transfers totaling $213,000.00 to or for the benefit of the 4R Defendants having been made in the seven years preceding the Petition Date. The 4R Defendants are not aware of any other transfers from the Debtors to them, or for their benefit.

b. The MCI Defendants received transfers totaling $1,885,204.98 to or for the benefit of the MCI Defendants having been made in the seven years preceding the Petition Date. The MCI Defendants are not aware of any other transfers

from the Debtors to them, or for their benefit.

c. Defendants did not have any actual or inquiry notice of any kind that the Debtors were engaged in a Ponzi scheme or any other improper activity.

d. That at the time of the 4R Transfers, the 4R Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to 4R Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

e. That at the time of the MCI Transfers, the MCI Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to MCI Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

8. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

9. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

10. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

12. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

13. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

14. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

15. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

16. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

17. **Counterparts and Facsimile and Pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 10-8-13

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Dated: ______________________

DEFENDANT JAMES ROSENBAUM

By: ______________________
James Rosenbaum, an individual

Case 2:10-bk-62208-ER Doc 769-2 Filed 10/31/13 Entered 10/31/13 14:33:15 Desc Exhibit H Page 6 of 21

12. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

13. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

14. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

15. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

16. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

17. **Counterparts and Facsimile and Pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: ____________

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR
CONSOLIDATED DEBTORS EPD INVESTMENT CO.,
LLC, AND JERROLD S. PRESSMAN

By: ____________
JASON M. RUND
Chapter 7 Trustee

Dated: 10/2013

DEFENDANT JAMES ROSENBAUM

By: [signature]
James Rosenbaum, an individual

Dated: 10/2013

DEFENDANT TRACY ROSENBAUM

By: ______________________
Tracy Rosenbaum, an individual

Dated: 10/2013

DEFENDANT 4 R HORSE FARM

By: ______________________

Its: owner/dba

Dated: 10/2013

DEFENDANT MILLER CARBONIC, INC.

By: ______________________

Its: ______________________

Dated: 10/2013

MILLER INVESTMENT PLAN

By: ______________________

Its: ______________________

**Approved as to Form:**

Dated: 10/18/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 10/18/13

LAW OFFICES OF DAVID LALLY

By: ______________________
DAVID B. LALLY
Attorney for Defendants

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendant Kelly Watson aka Elizabeth Kelly Watson, an individual ("Watson" or "Defendant"), on the other hand. Trustee and Defendant (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about December 3, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Kelly Watson aka Elizabeth Kelly Watson,* Adv. No. 2:12-ap-02625-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendant. Defendant filed an answer to the Complaint on July 5, 2013.

C. The Trustee alleges that EPD made transfers totaling $267,001.08 to or for the benefit of Defendant ("Transfers"), in the seven years preceding the Petition Date.

D. Defendant contends that the Transfers are not avoidable or recoverable by the Trustee. Defendant acknowledges that the Transfers were in fact received by Defendant. However, Defendant contends that she was a "net loser" and invested or lent more funds than she withdrew from EPD.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

### Terms of Agreement

**1. Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. <u>**Assignment of Interest in HMB Holdings, LLC and Disallowance of Proofs of Claim.**</u>

As of the Effective Date, and without executing any further agreement or document, Defendant assigns and transfers any and all membership interests that she has in HMB Holdings, LLC to the Trustee on behalf of the Debtors' bankruptcy estate. Defendant represents and warrants that she has not previously transferred or assigned any membership interests in HMB Holdings, LLC.

Defendant represents that she filed the following proofs of claim in the Debtors' bankruptcy case:

a. On or about December 10, 2012 Watson filed Claim No. 257-1 in the amount of $233,321.65, with $200,000.00 as a secured claim and $33,321.65 as a general unsecured claim, in the Bankruptcy Case;

b. On or about December 10, 2012 Watson filed Claim No. 258-1 in the amount of $168,593.44 as a general unsecured claim in the Bankruptcy Case; and,

c. On or about December 10, 2012 Watson filed Claim No. 259-1 in the amount of $107,224.46 as a general unsecured claim in the Bankruptcy Case.

Except as set forth herein above, Defendant represents that she did not file any other proofs of claim in the Debtors' Bankruptcy Case. Defendant agrees that Claim Nos. 257-1, 258-1 and 259-1 filed in the Debtors' Bankruptcy Case, and any other claims or potential claims against the Debtors, the Debtors' bankruptcy estate or the Debtors' assets, are disallowed in their entirety with the exception that Defendant shall receive an allowed general unsecured claim in the amount of $431,961.09. Defendant waives any secured or priority claims against the Debtors' bankruptcy estate based on membership interests in HMB Holdings, LLC or on any other basis.

3. <u>**Dismissal Of Adversary Proceeding**</u>. Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing their own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. Defendant agrees that no stipulation shall be necessary unless required by the Court.

4. <u>**Release of Claims**</u>. The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges Defendant from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq*.

Defendant, on her own behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **<u>SECTION 1542</u>. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

**5. <u>Defendant's Representations</u>.**

Defendant represents to the Trustee the following:

a. Other than the Transfers, Defendant is not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

b. Defendant did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that Defendant received from the Debtors were received solely as repayment for monies loaned by Defendant to EPD and/or Pressman.

c. At the time of the Transfers, Defendant had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendant caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

d. Concurrently with the execution of this Agreement, Defendant agrees to execute declarations under penalty of perjury affirming the representations made by Defendant herein.

**6. <u>Non-Admission</u>.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and Pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Case 2:10-bk-62208-ER Doc 769-2 Filed 10/31/13 Entered 10/31/13 14:33:15 Desc Exhibit H Page 12 of 21

Dated: ____________________

JASON M. RUND, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ________________________________
JASON M. RUND
Chapter 7 Trustee

Dated: ____________________

DEFENDANT KELLY WATSON AKA ELIZABETH KELLY WATSON

By: ________________________________
DEFENDANT KELLY WATSON AKA ELIZABETH KELLY WATSON

Approved as to Form:

Dated: ________________________

EZRA BRUTZKUS GUBNER LLP

By: ________________________________
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee for the bankruptcy estate of
Consolidated Debtors, EPD Investment Co., LLC,
and Jerrold S. Pressman

Dated: ________________________
LAW OFFICES OF DAVID LALLY

By: ________________________________
DAVID B. LALLY
Attorney for Defendant, Kelly Watson aka
Elizabeth Kelly Watson

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendants Raymond Brosio aka Ray Brosio individually and dba Ray Brosio Leasing Co.; RJ Brosio Family LP; The Brosio Family Limited Partnership aka Brosio Family LP (collectively, "Defendants"), on the other hand. The Trustee and Defendants (together referred to as the "Parties"), agree as follows:

### RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases *nunc pro tunc* to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about December 3, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Brosio,* Adv. No. 2:12-ap-02615-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendants. Defendants have not yet filed their answers to the Complaint.

C. The Trustee alleges that EPD made transfers totaling $3,293,982.37 to or for the benefit of Defendants ("Transfers"), in the seven years preceding the Petition Date, as follows: $532,789.49 to Brosio Family LP, $113,345.57 to Countrywide (for the benefit of Defendants), $404,931.97 to Ray Brosio Leasing Co., and $2,231,275.71 to Raymond Brosio.

D. Defendants contend that the Transfers are not avoidable or recoverable by the Trustee. Defendants have acknowledged that the Transfers were in fact received by Defendants. Defendants contend that they were collectively "net losers" and invested or lent more funds than they withdrew from EPD. Defendants also contend that, prior to the Bankruptcy Case, they were not aware that any of them was a member of HMB Holdings, LLC.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendants hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

### Terms of Agreement

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the

fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Assignment of Interest in HMB Holdings, LLC/Reservation re Proofs of Claim.** As of the Effective Date, and without executing any further agreement or document, Defendants assign and transfer any and all membership interests that they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate. Defendants represent that they have not previously transferred such membership interests. Defendants waive any secured or priority claims against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, LLC, or on any other basis.

Defendant Raymond Brosio filed Claim No. 87 on December 8, 2011, a general unsecured claim in the amount of $1,975,024. Defendant Raymond Brosio filed Claim No. 88 also on December 8, 2011, a claim in the amount of $2,191,698, made up of a purported secured claim in the amount of $1,000,000 and a general unsecured claim in the amount of $1,191,698. Defendant Raymond Brosio filed Claim No. 89 on December 8, 2011, a general unsecured claim in the amount of $215,701.11. Defendants represent that they have not filed any other proofs of claim in the Debtors' Bankruptcy Case.

Defendants retain only the general unsecured portions of their previously-filed proofs of claim, Claim Nos. 87, 88 and 89. Defendants waive any secured or priority claims that are part of Claim Nos. 87, 88 and 89, or any other claims. Any secured or priority claims based on membership interests in HMB Holdings, LLC, or on any other basis, are disallowed. The Trustee has not yet begun the process of reviewing the proofs of claim filed in the Bankruptcy Case, including but not limited to Claim Nos. 87, 88 and 89, and the Trustee reserves the right to object to those claims on any basis if appropriate to do so.

3. **Dismissal Of Adversary Proceeding.** Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing his, her or its own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. The Defendants agree that no stipulation shall be necessary unless required by the Court.

4. **Release of Claims.** The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendants from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint and the Adversary Proceeding, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendants, on their behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint and the Adversary Proceeding.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **<u>SECTION 1542</u>. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

5. **<u>Defendants' Representations</u>.**

Defendants represent to the Trustee the following:

a. Defendants made investments in and/or loans to EPD of approximately $5,803,898 as follows: $5,363,420 by Raymond Brosio, $340,000 by Brosio Family LP and $100,478 by Ray Brosio Leasing Co.

b. Defendants received transfers from the Debtors in the amount of approximately $3,293,982.37 during the seven-year period prior to the bankruptcy filing (the "Transfers").

c. Defendants were collectively "net losers" and invested more money in and/or lent more money to EPD than they withdrew. Other than the transfers listed in the Complaint, Defendants are not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner.

d. Defendants did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendants received from the Debtors was received solely for the reasons stated in herein above.

e. At the time of the Transfers, Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

f. Defendant Raymond Brosio filed Claim No. 87 on December 8, 2011, a general unsecured claim in the amount of $1,975,024. Defendant Raymond Brosio filed Claim No. 88 also on December 8, 2011, a claim in the amount of $2,191,698, made up of a purported secured claim in the amount of $1,000,000 and a general unsecured claim in the amount of $1,191,698. Defendant Raymond Brosio filed Claim No. 89 on December 8, 2011, a general unsecured claim in the amount of $215,701.11. Defendants represent that they have not filed any other proofs of claim in the Debtors' Bankruptcy Case.

g. Defendants were not aware of, and had no knowledge that, any of them were members of HMB Holdings, LLC until after the Bankruptcy Case was filed. Defendants had absolutely no involvement with HMB Holdings, LLC, never received any documents from HMB Holdings, LLC stating that any of them was a member, and never agreed or consented to be a member of HMB Holdings, LLC. Defendants never received any monies, property or other assets from HMB Holdings, LLC, and have never transferred any membership interests in HMB Holdinngs, LLC.

h. Concurrently with the execution of this Agreement, Defendants agree to execute a declaration under penalty of perjury affirming the representations made by the Defendants herein.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendants, and each of them, and their respective heirs, executors, administrators,

Case 2:10-bk-62208-ER Doc 769-2 Filed 10/31/13 Entered 10/31/13 14:33:13 Desc Exhibit H Page 17 of 21

assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. Construction. This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. Jurisdiction. The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. Miscellaneous. As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. Authority. Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. Terms Read and Understood. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. Counterparts and Facsimile and Pdf Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: ~~Oct. 20, 1913~~ 10-29-2013

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: [signature]
JASON M. RUND
Chapter 7 Trustee

Dated: 10/20/13 [signature: Raymond Brosio]

DEFENDANT RAYMOND BROSIO AKA RAY BROSIO, INDIVIDUALLY AND DBA RAY BROSIO LEASING CO.

By: *[signature]*
RAYMOND BROSIO AKA RAY BROSIO, INDIVIDUALLY AND DBA RAY BROSIO LEASING CO.

Dated: *10/20/13*

DEFENDANT RJ BROSIO FAMILY LP

By: *[signature]*
RAYMOND BROSIO, AUTHORIZED SIGNATORY FOR RJ BROSIO FAMILY LP

Dated: *10/20/13*

DEFENDANT THE BROSIO FAMILY LIMITED PARTNERSHIP AKA BROSIO FAMILY LP

By: *[signature]*
RAYMOND BROSIO, AUTHORIZED SIGNATORY FOR THE BROSIO FAMILY LIMITED PARTNERSHIP AKA BROSIO FAMILY LP

Approved as to Form:

Dated: ~~*10/20/13*~~ *10/29/13*

EZRA BRUTZKUS GUBNER LLP

By: *[signature]*
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: *[signature]*
FLAMM, TEIBLOOM & STANKO, LTD.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.**

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S THIRD OMNIBUS MOTION FOR APPROVAL OF COMPROMISES WITH: (1) HMB HOLDINGS, LLC, THOMAS FERRO, INDIVIDUALLY AND DBA MOON SHADOWS LEASING, AND ROSA FERRO; (2) JERRY FERRO AND ANN FERRO, INDIVIDUALLY AND AS TRUSTEES OF THE FERRO FAMILY TRUST; (3) DR. MELVIN GLICK AKA MELVIN GLICK AND ELLEN GLICK; (4) RALPH GRANDE INDIVIDUALLY AND DBA GRANDE CANYON LEASING; (5) NORMAN HANOVER AND MARY LOU HANOVER; (6) RON SHARROW INDIVIDUALLY AND DBA SHARROW SPRINGS LEASING; (7) DR. LAWRENCE COOPER AND JANET COOPER; (8) MILLER CARBONIC, INC., MILLER INVESTMENT PLAN, JAMES ROSENBAUM AND TRACY ROSENBAUM, AND 4 R HORSE FARM; (9) KELLY WATSON AKA ELIZABETH KELLY WATSON; AND (10) RAYMOND BROSIO AKA RAY BROSIO INDIVIDUALLY AND DBA RAY BROSIO LEASING CO., RJ BROSIO FAMILY TRUST AND THE BROSIO FAMILY LIMITED PARTNERSHIP AKA BROSIO FAMILY LP; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JASON M. RUND IN SUPPORT THEREOF [Fed. R. Bank. P. 9019; Loc. Bankr. R. 9013-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 31, 2013**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **October 31, 2013**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor In Pro Se
Jerrold S. Pressman
1201 Idaho Ave., Apt 10
Santa Monica, CA 90403

Debtor In Pro Se (returned)
~~EPD Investment Co., LLC~~
~~601 S. Figueroa Street, Suite 3900~~
~~Los Angeles, CA 90017~~

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 31, 2013**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**BY OVERNIGHT MAIL**

Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg.
255 East Temple Street, Suite 1560
Los Angeles, CA 90012-3332

**BY EMAIL**

Attorneys for Settling Parties
David B. Lally davidlallylaw@gmail.com
M. Erik Clark borowitzclark1@gmail.com
Michael St. James michael@stjames-law.com
Edward M. Wolkowitz emw@lnbyb.com
Jonathan N. Rogers jrogers@skdaglaw.com
Matthew A. Flamm mflamm@flamm.com

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 31, 2013 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

Michael W Aiken MAiken@NBSDefaultServices.com
Justin D Balser justin.balser@akerman.com, toni.domres@akerman.com; kristine.elliott@akerman.com; victoria.edwards@akerman.com; elizabeth.streible@akerman.com; courtney.linney@akerman.com; chris.carrington@akerman.com; ian.hicks@akerman.com
Adam N Barasch anb@severson.com
Colin M Bernardino cbernardino@kilpatricktownsend.com
Craig R Bockman crbockman@jonesbell.com, yleandro@jonesbell.com
Rebecca A Caley rcaley@caleylaw.com
Michael E Clark notices@blclaw.com, ecf@blclaw.com;borowitzclark1@gmail.com
Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
Sara E Cook lpalma@mckenna-law.com, scook@mckenna-law.com;bankruptcy@mckenna-law.com
Christopher D Crowell ccrowell@frandzel.com, efiling@frandzel.com;shom@frandzel.com
Ana Damonte ana.damonte@pillsburylaw.com
Aaron De Leest aed@dgdk.com, DanningGill@gmail.com
Richard K Diamond rdiamond@dgdk.com, DanningGill@gmail.com
Claire Y Dossier claire.dossier@akerman.com, toni.domres@akerman.com; amy.rock@akerman.com; melissa.cizmorris@akerman.com; lisa.blaylock@akerman.com; courtney.linney@akerman.com
Lei Lei Wang Ekvall lekvall@wgllp.com
David K Eldan malvarado@pmcos.com, rpinal@pmcos.com;efilings@pmcos.com
Russ W Ercolani russ@ercolanilawgroup.com
Debra Fogelman DEBRAFOGELMAN@LIVE.COM
Anthony A Friedman aaf@lnbyb.com
Michael J Gomez mjg@lrplaw.net, rebecca@lrplaw.net
Michael I Gottfried mgottfried@lgbfirm.com, ncereseto@lgbfirm.com;rmartin-patterson@lgbfirm.com
Michelle S Grimberg msg@lnbrb.com, angela@lnbrb.com
Regis Guerin efilings@amlegalgroup.com
Alan S Gutman alangutman@gutmanlaw.com
David S Hagen go4broq@earthlink.net
Robert A Hessling rhessling@gmail.com
Richard B Hopkins rhopkins@bargerwolen.com
Lon B Isaacson - DISBARRED - ecfnotices@lbilaw.com
John P Jacobs jpjacobs@steptoe.com, mmartinez@steptoe.com;tsosa@steptoe.com
James N Knight james@jnk-law.com
Michael S Kogan mkogan@koganlawfirm.com
Alan R Kossoff akossoff@kwikalaw.com, bdipalma@kwikalaw.com
John P Kreis jkreis@attglobal.net
David B Lally davidlallylaw@gmail.com
Lewis R Landau LLandau@HorganRosen.com
Ian Landsberg ilandsberg@landsberg-law.com, bgomelsky@landsberg-law.com; ssaad@landsberg-law.com; dzuniga@landsberg-law.com
Mary D Lane mal@msk.com, mec@msk.com
Ann G Lee alee@grahamvaagelaw.com
Jennifer Leland jleland@peitzmanweg.com
Kenderton S Lynch kenlynchlaw@aol.com
Howard N Madris hmadris@madrislaw.com
Aaron J Malo amalo@sheppardmullin.com
Ashley M McDow amcdow@mbnlawyers.com, aacosta@mbnlawyers.com
Neeta Menon nmenon@btlaw.com
Reed M Mercado rmercado@sheppardmullin.com
Stacey A Miller smiller@tharpe-howell.com
John A Moe jmoe@mckennalong.com
Susan I Montgomery susan@simontgomerylaw.com
Randall P Mroczynski randym@cookseylaw.com
Alan I Nahmias anahmias@mbnlawyers.com, jdale@mirmanbubman.com
David L. Neale dln@lnbrb.com
Warren N Nemiroff wnemiroff@yahoo.com
Brian A Paino ecfcacb@piteduncan.com
Kathy Bazoian Phelps kphelps@dgdk.com, DanningGill@gmail.com
Christopher O Rivas crivas@reedsmith.com

Jason M Rund (TR) trustee@srlawyers.com, jrund@ecf.epiqsystems.com
Deborah L Schrier-Rape DSchrierRape@goodwinprocter.com, smpearce@goodwinprocter.com
Benjamin Seigel bseigel@buchalter.com, IFS_filing@buchalter.com
Steven J Shapero sshapero@shaperohurst.com
David B Shemano dshemano@peitzmanweg.com
Michael St James ecf@stjames-law.com
Alberta P Stahl (TR) trusteestahl@earthlink.net, astahl@ecf.epiqsystems.com; trusteestahl\;\;\;.net@cacbapp.cacb.circ9.dcn
Adam M Starr starra@gtlaw.com, laik@gtlaw.com
Tina M Starr tstarr@caleylaw.com
David A Tilem davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com; dianachau@tilemlaw.com; joanfidelson@tilemlaw.com
Scott C Timpe stimpe@mbnlawyers.com, scott.timpe@gmail.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Susan L Vaage svaage@grahamvaagelaw.com
Gilbert B Weisman notices@becket-lee.com
Robert G Wilson rwilson@lgbfirm.com, kalandy@lgbfirm.com
Aleksandra Zimonjic azimonjic@lgbfirm.com, marizaga@lgbfirm.com; scolen@lgbfirm.com; ncereseto@lgbfirm.com

**BY OVERNIGHT MAIL**

Attorneys for Settling Parties
Edward M. Wolkowitz, Esq.
Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067

Attorneys for Settling Parties
Matthew A. Flamm, Esq.
Flamm, Teibloom & Stanko, Ltd.
20 N. Clark Street, Suite 2200
Chicago, IL 60602

Attorneys for Settling Parties
Jonathan N. Rogers, Esq.
Klein, Daday, Aretos & O'Donoghue, LLC
2550 W. Golf Road., Suite 250
Rolling Meadows, IL 60008

# EXHIBIT EE

Case 2:10-bk-62208-ER Doc 840 Filed 12/11/13 Entered 12/11/13 11:47:58 Desc Main Document Page 1 of 5

STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
MICHAEL W. DAVIS - Bar No. 274126
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000, Facsimile: (818) 827-9099
Email: sgubner@ebg-law.com, cweber@ebg-law.com

Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee for the Consolidated Bankruptcy Estate of Debtors EPD Investment Company, LLC and Jerrold S. Pressman

FILED & ENTERED

DEC 11 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,<br><br>Consolidated Debtors. | Case No. 2:10-bk-62208-ER<br>[Lead Case]<br><br>Chapter 7<br><br>**ORDER APPROVING CHAPTER 7 TRUSTEE'S THIRD OMNIBUS MOTION FOR APPROVAL OF COMPROMISES**<br><br>**<u>Hearing</u>:**<br>**Date:** December 4, 2013<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 1568<br>United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

The Chapter 7 Trustee's Third Omnibus Motion for Approval of Compromises (the "Motion," Docket No. 769), came on for hearing before the Honorable Ernest M. Robles, United States Bankruptcy Judge, in Courtroom 1568 at 10:00 a.m. on December 4, 2013. The Court reviewed the Motion, the Notice of the Motion and received no oppositions to the Motion. The Trustee submitted on the Court's Tentative Ruling posted on December 3, 2013. For the reasons set forth in the Tentative Ruling, and good cause appearing therefor,

/ / /

**IT IS HEREBY ORDERED** that the Motion is granted.

# # #

Date: December 11, 2013

Ernest M. Robles
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled: **ORDER APPROVING CHAPTER 7 TRUSTEE'S THIRD OMNIBUS MOTION FOR APPROVAL OF COMPROMISES** was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner stated below:

**1. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>** Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of **December 10, 2013**, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Jason M Rund (TR) trustee@srlawyers.com, jrund@ecf.epiqsystems.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Corey R Weber cweber@ebg-law.com, ecf@ebg-law.com

☒ Service information continued on attached page

**2. <u>SERVED BY THE COURT VIA UNITED STATES MAIL:</u>** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐ Service information continued on attached page

**3. <u>TO BE SERVED BY THE LODGING PARTY</u>**: Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

**1. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**

- Ronald P Abrams rabrams@ebg-law.com, ecf@ebg-law.com
- Michael W Aiken MAiken@NBSDefaultServices.com
- Justin D Balser justin.balser@akerman.com, toni.domres@akerman.com;kristine.elliott@akerman.com;victoria.edwards@akerman.com;elizabeth.streible@akerman.com;courtney.linney@akerman.com;brooke.nicholson@akerman.com
- Adam N Barasch anb@severson.com
- Colin M Bernardino cbernardino@kilpatricktownsend.com
- Craig R Bockman crbockman@jonesbell.com, yleandro@jonesbell.com
- Rebecca A Caley rcaley@caleylaw.com, kana@caleylaw.com;carolyn@caleylaw.com
- Michael E Clark notices@blclaw.com, ecf@blclaw.com;borowitzclark1@gmail.com
- Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
- Sara E Cook lpalma@mckenna-law.com, scook@mckenna-law.com;bankruptcy@mckenna-law.com
- Christopher D Crowell ccrowell@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Ana Damonte ana.damonte@pillsburylaw.com
- Michael W Davis mdavis@ebg-law.com, ecf@ebg-law.com
- Aaron De Leest aed@dgdk.com, DanningGill@gmail.com
- Richard K Diamond rdiamond@dgdk.com, DanningGill@gmail.com
- Claire Y Dossier claire.dossier@akerman.com, toni.domres@akerman.com;amy.rock@akerman.com;melissa.cizmorris@akerman.com;lisa.blaylock@akerman.com;courtney.linney@akerman.com
- Lei Lei Wang Ekvall lekvall@wgllp.com, tjones@wgllp.com
- David K Eldan malvarado@pmcos.com, rpinal@pmcos.com;efilings@pmcos.com
- Russ W Ercolani ercolaniecfmail@gmail.com
- Merak E Eskigian , jmarshall@gmlawplc.net
- Debra Fogelman DEBRAFOGELMAN@LIVE.COM
- Anthony A Friedman aaf@lnbyb.com
- Larry W Gabriel lgabriel@ebg-law.com
- Daniel H Gill ecf@ebg-law.com, dgill@ebg-law.com
- Michael J Gomez mjg@lrplaw.net, jdrudge@lrplaw.net
- Michael I Gottfried mgottfried@lgbfirm.com, ncereseto@lgbfirm.com;rmartin-patterson@lgbfirm.com;kalandy@lgbfirm.com
- Michelle S Grimberg msg@lnbrb.com, angela@lnbrb.com
- Steven T Gubner sgubner@ebg-law.com, ecf@ebg-law.com
- Regis Guerin efilings@amlegalgroup.com
- Alan S Gutman alangutman@gutmanlaw.com
- David S Hagen go4broq@earthlink.net
- Robert A Hessling rhessling@gmail.com
- Richard B Hopkins rhopkins@bargerwolen.com, gvalles@bargerwolen.com
- Lon B Isaacson - DISBARRED - ecfnotices@lbilaw.com
- John P Jacobs jpjacobs@steptoe.com, mmartinez@steptoe.com;tsosa@steptoe.com
- Michael S Kogan mkogan@koganlawfirm.com
- Alan R Kossoff akossoff@kwikalaw.com, bdipalma@kwikalaw.com
- John P Kreis jkreis@kreislaw.com, j.kreis@ca.rr.com
- David B Lally davidlallylaw@gmail.com
- Lewis R Landau LLandau@HorganRosen.com
- Ian Landsberg ilandsberg@landsberg-law.com, bgomelsky@landsberg-law.com;ssaad@landsberg-law.com;dzuniga@landsberg-law.com
- Mary D Lane mal@msk.com, mec@msk.com
- Ann G Lee alee@grahamvaagelaw.com
- Jennifer Leland jleland@peitzmanweg.com
- Kenderton S Lynch kenlynchlaw@aol.com
- Howard N Madris hmadris@madrislaw.com
- Aaron J Malo amalo@sheppardmullin.com

- Ashley M McDow amcdow@bakerlaw.com, jbelton@bakerlaw.com;rojeda@bakerlaw.com;amcdow@ecf.inforuptcy.com
- Neeta Menon nmenon@btlaw.com
- Reed M Mercado rmercado@sheppardmullin.com
- Stacey A Miller smiller@tharpe-howell.com
- John A Moe jmoe@mckennalong.com
- Susan I Montgomery susan@simontgomerylaw.com
- Randall P Mroczynski randym@cookseylaw.com
- Alan I Nahmias anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- David L. Neale dln@lnbrb.com
- Warren N Nemiroff wnemiroff@yahoo.com
- Brian A Paino ecfcacb@piteduncan.com
- Kathy Bazoian Phelps kphelps@diamondmccarthy.com
- Jason S Pomerantz jspomerantz@pszjlaw.com, jspomerantz@pszjlaw.com
- Christopher O Rivas crivas@reedsmith.com
- Deborah L Schrier-Rape DSchrierRape@goodwinprocter.com, smpearce@goodwinprocter.com
- Deborah L Schrier-Rape DSchrierRape@goodwinprocter.com, smpearce@goodwinprocter.com
- Benjamin Seigel bseigel@buchalter.com, IFS_filing@buchalter.com
- Steven J Shapero sshapero@shaperohurst.com
- David B Shemano dshemano@peitzmanweg.com
- Daniel B Spitzer dspitzer@spitzeresq.com
- Michael St James ecf@stjames-law.com
- Alberta P Stahl (TR) trusteestahl@earthlink.net, astahl@ecf.epiqsystems.com;trusteestahl\;\;\;.net@cacbapp.cacb.circ9.dcn
- Adam M Starr starra@gtlaw.com, laik@gtlaw.com
- Tina M Starr tstarr@caleylaw.com
- David A Tilem davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;joanfidelson@tilemlaw.com
- Scott C Timpe stimpe@mbnlawyers.com, scott.timpe@gmail.com;aacosta@mbnlawyers.com
- Susan L Vaage svaage@grahamvaagelaw.com
- Gilbert B Weisman notices@becket-lee.com
- Robert G Wilson rwilson@lgbfirm.com, kalandy@lgbfirm.com
- Aleksandra Zimonjic azimonjic@lgbfirm.com, marizaga@lgbfirm.com;scolen@lgbfirm.com;ncereseto@lgbfirm.com;vedwards@lgbfirm.com

# EXHIBIT FF

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER – Bar No. 156593<br>COREY R. WEBER – Bar No. 205912<br>MICHAEL W. DAVIS – Bar No. 274126<br>EZRA BRUTZKUS GUBNER LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Telephone: (818) 827-9000<br>Facsimile: (818) 827-9099<br>Email: sgubner@ebg-law.com<br>cweber@ebg-law.com<br>mdavis@ebg-law.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Jason M. Rund, Chapter 7 Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re: | CASE NO.: 2:10-bk-62208-ER<br>CHAPTER: 7 |
|---|---|
| EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN,<br><br>Consolidated Debtor(s). | **NOTICE OF MOTION FOR:**<br>**CHAPTER 7 TRUSTEE'S EIGHTH OMNIBUS MOTION FOR APPROVAL OF COMPROMISES**<br><br>**(*Specify name of Motion*)** |
| | DATE: 05/07/2014<br>TIME: 10:00 am<br>COURTROOM: 1568<br>PLACE: United States Bankruptcy Court<br>255 East Temple Street<br>Los Angeles, CA 90012 |

1. TO (*specify name*): THE HONORABLE ERNEST M. ROBLES, ALL CREDITORS AND TO ALL INTERESTED PARTIES:

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date: April 11, 2014

EZRA BRUTZKUS GUBNER LLP
Printed name of law firm

/s/ Corey R. Weber
Signature

COREY R. WEBER
Printed name of attorney

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc
Main Document Page 3 of 117

STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
MICHAEL W. DAVIS – Bar No. 274126
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: sgubner@ebg-law.com
cweber@ebg-law.com
mdavis@ebg-law.com

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN,

Consolidated Debtors.

Case No. 2:10-bk-62208-ER
[Lead Case]

Chapter 7

**CHAPTER 7 TRUSTEE'S EIGHTH OMNIBUS MOTION FOR APPROVAL OF COMPROMISES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JASON M. RUND IN SUPPORT THEREOF**

**[Fed. R. Bank. P. 9019; Loc. Bankr. R. 9013-1]**

**Hearing:**
**Date:** May 7, 2014
**Time:** 10:00 a.m.
**Place:** Courtroom 1568
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .......... 12

I. INTRODUCTION .......... 12

II. BACKGROUND .......... 12

A. The EPD Bankruptcy Case. .......... 12

1. The Involuntary Petition and the Order for Relief .......... 12

2. The Motion to Compel and the Debtor's Filings of Statements, Schedules and a Creditor's Matrix .......... 13

3. EPD's Motion to Convert the Case to Chapter 11, and Motion to Alter or Amend .......... 13

4. The Rule 2004 Examinations .......... 13

B. The Pressman Bankruptcy Case. .......... 14

C. Substantive Consolidation .......... 14

D. The Adversary Proceedings .......... 14

1. The Green Adversary Proceeding .......... 14

2. The Browne Adversary Proceeding .......... 15

3. The Dunn Adversary Proceedings .......... 15

4. The Freeman Adversary Proceeding .......... 16

5. The Parry Adversary Proceeding .......... 16

6. The Pressman Adversary Proceedings .......... 16

7. The Carter Adversary Proceedings .......... 17

8. The Haala Adversary Proceedings .......... 17

E. The Salient Terms of the Agreements .......... 17

The Brett Greene Agreement .......... 2, 18

The Jeff Greene Agreement .......... 2, 18

The Browne Agreement .......... 3, 19

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc
Main Document Page 5 of 117

## TABLE OF CONTENTS – Continued

Page

The Dunn Agreement .......... 5, 20

The Freeman Agreement .......... 7, 21

The Parry Agreement .......... 8, 22

The Pressman/Zeind Agreement .......... 8, 23

The Carter Agreement .......... 8, 24

The Haala Agreement .......... 8, 25

III. THE AGREEMENTS ARE PROPERLY APPROVED .......... 25

A. Legal Standards for Approval .......... 25

B. Application of the A&C Properties Factors Demonstrates That the Agreements Should Be Approved .......... 27

1. The A&C Properties Factors As to the Brett Greene Agreement .......... 27

a. Probability of Success on the Merits .......... 27

b. The Difficulty, If Any, In Collection .......... 28

c. The Complexity, Expense and Inconvenience of Litigation .......... 28

d. The Paramount Interests of Creditors .......... 28

2. The A&C Properties Factors As to the Jeff Greene Agreement .......... 28

a. Probability of Success on the Merits .......... 28

b. The Difficulty, If Any, In Collection .......... 29

c. The Complexity, Expense and Inconvenience of Litigation .......... 29

d. The Paramount Interests of Creditors .......... 29

3. The A&C Properties Factors As to the Browne Agreement .......... 29

a. Probability of Success on the Merits .......... 29

**TABLE OF CONTENTS – Continued**

Page


b. The Difficulty, If Any, In Collection ..... 30

c. The Complexity, Expense and Inconvenience of Litigation ..... 30

d. The Paramount Interests of Creditors ..... 31

4. The A&C Properties Factors As to the Dunn Agreement ..... 31

a. Probability of Success on the Merits ..... 31

b. The Difficulty, If Any, In Collection ..... 32

c. The Complexity, Expense and Inconvenience of Litigation ..... 32

d. The Paramount Interests of Creditors ..... 32

5. The A&C Properties Factors As to the Freeman Agreement ..... 32

a. Probability of Success on the Merits ..... 32

b. The Difficulty, If Any, In Collection ..... 33

c. The Complexity, Expense and Inconvenience of Litigation ..... 33

d. The Paramount Interests of Creditors ..... 33

6. The A&C Properties Factors As to the Parry Agreement ..... 33

a. Probability of Success on the Merits ..... 33

b. The Difficulty, If Any, In Collection ..... 34

c. The Complexity, Expense and Inconvenience of Litigation ..... 34

d. The Paramount Interests of Creditors ..... 34

7. The A&C Properties Factors As to the Pressman/Zeind Agreement ..... 34

a. Probability of Success on the Merits ..... 34

b. The Difficulty, If Any, In Collection ..... 35

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc
Main Document Page 7 of 117

**TABLE OF CONTENTS – Continued**

Page

c. The Complexity, Expense and Inconvenience of Litigation ........ 35

d. The Paramount Interests of Creditors ........ 35

8. The A&C Properties Factors As to the Carter Agreement ........ 36

a. Probability of Success on the Merits ........ 36

b. The Difficulty, If Any, In Collection ........ 36

c. The Complexity, Expense and Inconvenience of Litigation ........ 37

d. The Paramount Interests of Creditors ........ 37

9. The A&C Properties Factors As to the Haala Agreement ........ 37

a. Probability of Success on the Merits ........ 37

b. The Difficulty, If Any, In Collection ........ 38

c. The Complexity, Expense and Inconvenience of Litigation ........ 38

d. The Paramount Interests of Creditors ........ 38

IV. CONCLUSION ........ 32

DECLARATION OF JASON M. RUND ........ 40

EXHIBIT A – BRETT GREENE AGREEMENT ........ 53

EXHIBIT B – JEFF GREENE AGREEMENT ........ 58

EXHIBIT C – BROWNE AGREEMENT ........ 63

EXHIBIT D – DUNN AGREEMENT ........ 71

EXHIBIT E – FREEMAN AGREEMENT ........ 76

EXHIBIT F – PARRY AGREEMENT ........ 81

EXHIBIT G – PRESSMAN/ZEIND AGREEMENT ........ 88

EXHIBIT H – CARTER AGREEMENT ........ 95

EXHIBIT I – HAALA AGREEMENT ........ 100

## TABLE OF AUTHORITIES

Page

### CASES

In re A&C Properties,
784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*,
479 U.S. 854, 107 S. Ct. 189 (1986) ........ 26

In re Morrison,
69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) ........ 26

In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*,
464 U.S. 822 (1984) (quoting Newman v. Stein,
464 F.2d 689, 698 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972)) ........ 26

In re Walsh Construction, Inc.,
669 F.2d 1325, 1328 (9th Cir. 1982) ........ 26

In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988) ........ 26

### FEDERAL STATUTES

11 U.S.C. § 706(a) ........ 13

Fed. R. Bankr. P. 9019(a) ........ 25

**TO THE HONORABLE ERNEST M. ROBLES, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTOR EPD INVESTMENT CO., LLC, DEBTOR JERROLD PRESSMAN, BRETT GREENE, JEFF GREENE AKA JEFFREY A. GREENE INDIVIDUALLY AND AS TRUSTEE OF THE JEFFREY A. GREENE TRUST ACCOUNT, ROBERT BROWNE, INDIVIDUALLY AND DBA BROWNE INVESTMENTS COMPANY, AND JOYCE BROWNE, INDIVIDUALLY AND DBA BROWNE INVESTMENTS COMPANY, DAVID J. DUNN, INDIVIDUALLY AND AS TRUSTEE OF THE DUNN FAMILY TRUST, VON AND AMY FREEMAN, ROBERT PARRY, ROBERT PRESSMAN, MAUREEN ZEIND, MARIE CARTER, WIFE AND SUCCESSOR-IN INTEREST TO DECEASED DEFENDANT MITCHELL CARTER AKA MITCH CARTER AKA DAVID M. CARTER AKA D. MITCH CARTER, INDIVIDUALLY AND DBA MCARTER LEASING, DENISE HAALA, KATHLEEN ADAMSON AND GREG ADAMSON, AND TO ALL PARTIES' COUNSEL OF RECORD, AND ALL OTHER INTERESTED PARTIES:**

Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the consolidated bankruptcy estate of debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (the "Consolidated Estate"), hereby moves this Court for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving a compromise of controversies by way of settlement agreements (the "Agreements") with the following parties:

1. Brett Greene ("Brett Greene") (the "Brett Greene Agreement");
2. Jeff Greene aka Jeffrey A. Greene, individually and as trustee of the Jeffrey A. Greene Trust Account ("Jeff Greene") (the "Jeff Greene Agreement");
3. Robert Browne, individually and dba Browne Investments Company, and Joyce Browne, individually and dba Browne Investments Company (the "Brownes") (the "Browne Agreement");
4. David J. Dunn, individually and as Trustee of the Dunn Family Trust ("Dunn") (the "Dunn Agreement");
5. Von and Amy Freeman (the "Freemans") (the "Freeman Agreement");

6. Robert Parry ("Parry") (the "Parry Agreement");

7. Robert "Bo" Pressman and Maureen Zeind (collectively "Pressman/Zeind") (the "Pressman/Zeind Agreement");

8. Marie Carter, wife and successor-in interest to deceased defendant Mitchell Carter aka Mitch Carter aka David M. Carter aka D. Mitch Carter, individually and dba MCarter Leasing ("Carter") (the "Carter Agreement");

9. Denise Haala ("Haala"), Kathleen Adamson and Greg Adamson (collectively, "Haala/Adamson") (the "Haala Agreement").

The Agreements, attached to the Trustee's declaration as **Exhibits A through I**, resolve the Trustee's claims and potential claims against Brett Greene, Jeff Greene, the Brownes, Dunn, the Freemans, Parry, Pressman/Zeind, Carter and Haala/Adamson (collectively, the "Settling Parties"). All of the claims are subject to dispute between the Trustee and the Settling Parties (collectively, the "Parties"). **The Agreements, if approved by the Court, will collectively result in the disallowance of over $3 million in purportedly secured proofs of claims and over $8 million in general unsecured proofs of claim filed in the bankruptcy case.**

**The hearing will take place on May 7, 2014 at 10:00 a.m. in Courtroom 1568 of the United States Bankruptcy Court for the Central District of California, Los Angeles Division, located at 255 East Temple Street, Los Angeles, California.**

The Agreements provide the following terms (the following is only a summary of the Agreements. All parties in interest are respectfully directed to the Agreements themselves, attached to the Rund Declaration, as **Exhibits A through I**. To the extent any terms listed below are inconsistent with the terms in the Agreements, the terms of the Agreements shall govern.):

**The Brett Greene Agreement contains the following essential terms:**

1. Claim No. 261 filed by Greene in the Debtors' bankruptcy case shall be disallowed in its entirety. Greene agrees that he shall not receive an allowed claim on the basis of that claim, or any other claim(s), in the bankruptcy case. Greene waives his right to obtain an allowed claim on any basis in the bankruptcy case.

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 11 of 117

2. Greene further represents that:

a. Other than the transfers alleged in the complaint, Greene was not aware of having received any other transfers from the Debtors or entities affiliated with the Debtors.

b. Greene did not have any actual or inquiry notice of any kind that the EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that he received from the Debtors were received solely for the reasons stated.

c. That at the time of the transfers to Greene, he had no information, knowledge or belief that the Debtors were insolvent, that any transfers to them caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

3. The Trustee and Greene shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

4. The Greene Agreement is subject to Court approval.

**The Jeff Greene Agreement contains the following essential terms:**

1. Greene agrees to waive his right to file a proof of claim, or to obtain an allowed claim on any basis, in the bankruptcy case. To the extent that Greene previously filed a proof of claims(s), such claims are disallowed and Greene shall not receive an allowed claim.

2. Greene agrees that any and all liens and/or secured claims filed and/or recorded in favor of Greene, and against the Debtors and/or assets of the Debtors, including but not limited to UCC-1 financing statements, are avoided and recovered by the Trustee.

3. Greene represents and warrants that a UCC-1 financing statement filed with the

California Secretary of State on or about September 8, 2009 against the assets of Robert Geringer has been fully terminated and that there are no claims or liens in favor of Greene against Robert Geringer.

4. Greene makes representations and warranties, including that he has provided the Trustee with financial statements signed under penalty of perjury. Greene represents and warrants that the financial statements are complete and accurate, and that he has not transferred any amounts in excess of $10,000 to his spouse, children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date of the settlement agreement.

5. The Trustee and Greene shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

6. The Jeff Greene Agreement is subject to Court approval.

**The Browne Agreement contains the following essential terms:**

1. The Brownes assign and transfer any and all membership interests they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy Estate. The Brownes represent and warrant that they have not previously transferred or assigned any membership interests in HMB Holdings, LLC.

2. The Brownes agree that Claim Nos. 106 and 254 filed in the Debtors' Bankruptcy Case, and any other claims or potential claims against the Debtors, the Debtors' bankruptcy Estate or the Debtors' assets, are disallowed in their entirety with the exception that the Brownes shall jointly receive an allowed general unsecured claim in the amount of $1,000,000. The Brownes waive any secured or priority claims against the Debtors' bankruptcy Estate based on membership interests in HMB Holdings, LLC or on any other basis.

3. The Brownes will provide representations including that:

   a. Other than the transfers alleged in the complaint, the Brownes are not aware of having received any other transfers from the Debtors or entities affiliated

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 13 of 117

with the Debtors.

b. The Brownes did not have any actual or inquiry notice of any kind that the Debtors were engaged in a Ponzi scheme or any other improper activity, and the funds that the Brownes received from the Debtors were received solely as repayment for monies loaned by the Brownes to the Debtors.

c. The Brownes had no information, knowledge or belief that the Debtors were insolvent, that any transfers caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

4. The Trustee and the Brownes shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

5. The Browne Agreement is subject to Court approval.

**The Dunn Agreement contains the following essential terms:**

1. Dunn represents that he did not file any proofs of claim in the Debtors' bankruptcy case. Dunn agrees to waive the right to file a proof of claim, or to obtain an allowed claim on any basis in the Bankruptcy Case. Dunn further waives and releases any and all security interests with regard to personal or real property of the Debtors or the bankruptcy Estate, including but not limited to UCC-1 filings or recordings against any personal or real property of the Debtors or the bankruptcy Estate.

2. The Trustee and Dunn shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

3. The Dunn Agreement is subject to Court approval.

**The Freeman Agreement contains the following essential terms:**

1. The Freemans represent that, other than Proof of Claim Nos. 182 and 205, they did not file any other proofs of claim in the Debtors' Bankruptcy Case. The Freemans

agree that Claim Nos. 183 and 205 are disallowed in their entirety, and that they shall not receive an allowed claim in the basis of those claims, or any other claims, in the Bankruptcy Case. The Freemans further waive their right to obtain an allowed claim on any basis in the Bankruptcy Case.

2. The Freemans have provided the Trustee with financial statements signed under penalty of perjury. The Freemans represent and warrant that the financial statements provided to the Trustee are complete and accurate, and that they have not transferred any amounts in excess of $10,000 to their children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date upon which this Agreement is executed.

3. The Freemans further represent that:

a. Other than the transfers alleged in the complaint, the Freemans are not aware of having received any other transfers from the Debtors or entities affiliated with the Debtors.

b. They did not have any actual or inquiry notice of any kind that the Debtors were engaged in a Ponzi scheme or any other improper activity, and the funds that they received from the Debtors were received solely for the reasons stated.

c. That at the time of the transfers, the Freemans had no information, knowledge or belief that the Debtors were insolvent, that any transfers to them caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

4. The Trustee and the Freemans shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

5. The Freeman Agreement is subject to Court approval.

**The Parry Agreement contains the following essential terms:**

1. Parry represents that, other than Proof of Claim Nos. 81 (as amended) and 30, Parry did not file any other proofs of claim in the Debtors' bankruptcy case. Parry agrees that Claim Nos. 30 and 81 (as amended) filed in the Debtors' Bankruptcy Case are waived and disallowed and Parry shall not receive an allowed claim in the basis of those claims, or any other claims, in the Bankruptcy Case. Parry waives his right to obtain an allowed claim on any basis in the bankruptcy case.

2. Parry further represents that:

   a. Other than the transfers alleged in the complaint, Parry is not aware of having received any other transfers from the Debtors or entities affiliated with the Debtors.

   b. He did not have any actual or inquiry notice of any kind that the EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that he received from the Debtors were received solely for the reasons stated.

   c. That at the time of the transfers, that he had no information, knowledge or belief that the Debtors were insolvent, that any transfers to them caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

3. The Trustee and Parry shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

4. The Parry Agreement is subject to Court approval.

**<u>The Pressman/Zeind Agreement contains the following essential terms</u>:**

1. Pressman/Zeind represent that, other than claim nos. 203 and 204, they did not file any other claims in the Debtors' bankruptcy case. Pressman/Zeind agree that claim nos. 203 and 204 are waived and disallowed in their entirety, and that Pressman/Zeind shall not receive allowed claims on the basis of those claims or any other claims. Pressman/Zeind waive their right to obtain an allowed claim on any basis in the bankruptcy case.

2. Pressman/Zeind shall represent and warrant that:

   a. Robert Pressman is the son of debtor Jerrold S. Pressman. Robert Pressman has provided the Trustee with financial statements signed under penalty of perjury and represents and warrants that the financial statements provided to the Trustee are complete and accurate, and that he has not transferred any amounts in excess of $10,000 to any of his spouse, children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date upon which the settlement agreement was executed.

   b. Robert Pressman was never an employee, agent, independent contractor, officer, director, member or manager of debtor EPD. Defendant had no involvement in the management or operations of EPD or any of the other businesses with which debtor Jerrold S. Pressman was involved.

   c. During the 7-year period prior to the filing of the Debtors' bankruptcy case, Robert Pressman received transfers from the Debtors in the amount of approximately $611,163.30, including the receipt of $20,011.61 in transfers within the one year prior to the petition date.

   d. Other than the transfers listed in the Complaint, Robert Pressman is not aware of having received any other monies, assets, property, or

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 17 of 117

anything else of value from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

e. Robert Pressman did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendant received from the Debtors was received solely for the reasons stated in herein.

f. At the time of the Transfers, Robert Pressman had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendant caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

3. The Trustee and Pressman/Zeind shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

4. The Pressman/Zeind Agreement is subject to Court approval.

**The Carter Agreement contains the following essential terms:**

1. Carter, on behalf of herself and as successor-in-interest to deceased defendant Mitchell Carter aka Mitch Carter aka David M. Carter aka D. Mitch Carter individually and dba MCarter Leasing, assigns and transfers any and all membership interests in the name of Carter or her deceased husband, or that Carter controls by virtue of her husband's death, or for any other reason, in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy Estate. Carter, on behalf of herself and as successor-in-interest to her husband, waives any secured or priority claims against the

bankruptcy Estate or the Debtors based on any interest in HMB Holdings, LLC or on any other basis.

2. Carter retains her previously-filed general unsecured proof of claim, claim no. 128. The Trustee reserves the right to object to the claim if appropriate to do so.

3. Carter represents to the Trustee the following:

a. Carter is her husband's successor-in-interest. Her husband's assets and property were community property of Carter and her husband.

b. No other person has a superior right to succeed to Carter's interest in any of her husband's assets, including any membership interests or rights in regard to HMB Holdings, LLC.

4. The Trustee and Carter shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

5. The Carter Agreement is subject to Court approval.

**The Haala Agreement contains the following essential terms:**

1. Claim Nos. 144, 146 and 157, and any other proofs of claim filed by Haala/Adamson in the Debtors' bankruptcy case shall be disallowed in its entirety. Haala/Adamson agree that they shall not receive an allowed claim on any basis in the Bankruptcy Case.

2. The Trustee and Haala/Adamson shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

3. The Haala Agreement is subject to Court approval.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 9013-1(f) of the Local Bankruptcy Rules, each interested party opposing, joining or responding to the Motion shall file with the Clerk of the Bankruptcy Court and serve upon: (1) special litigation counsel for the Trustee at the address in the upper left hand corner of this pleading; (2) the United States Trustee; (3) Merak Eskigian, Goshgoarian & Marshall, PLC, 23901 Calabasas Road, Suite 2073, Calabasas, CA 91302 (counsel for Brett Greene); (4) David Brian Lally, Law Offices of David Lally, 8001 Irvine Center Drive, Suite 1090, Irvine, CA 92618 (counsel for the Brownes, Freeman, Pressman and Zeind); (5)

Baret C. Fink, Perelman & Fink, 1880 Century Park E., Suite 315, Los Angeles, CA 90067 (counsel for Dunn); (6) Susan Vaage, Graham Vaage LLP, 500 N. Brand Blvd., Suite 1030, Glendale, CA 91203 (counsel for Parry); (7) Paul Carter, Bergkvist, Bergkvist & Carter LLP, 400 Oceangate, Suite 800, Long Beach, CA 90802 (counsel for Carter); (8) Jeff Greene, 725 Cool Springs Bl., #600, Franklin, TN 37067-2702, not later than fourteen (14) calendar days before the date designated for the hearing either (A) a brief but complete written statement of all reasons in opposition thereto or in support or joinder thereof, an answering memorandum of points and authorities, declarations and copies of all photographs and documentary evidence on which the opposing party intends to rely; or (B) a written statement that the Motion will not be opposed. The opposing papers shall advise the adverse party that any reply to the opposition shall be filed with the Court and served on the opposing party not later than seven (7) calendar days (not excluding Saturdays, Sundays and legal holidays) prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 9013-1(h) of the Local Bankruptcy Rules, failure to timely file and serve a response in accordance with the Local Bankruptcy Rules may be deemed to constitute consent to the relief requested by the Trustee in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of Motion, the Motion and the Memorandum of Points and Authorities, the Agreements and the Declaration of Jason M. Rund attached to the Motion, all papers and records in the above- referenced bankruptcy case, all matters of which this Court may take judicial notice, and such further evidence and argument that may be presented to the Court at the hearing on the Motion.

Dated: April 11, 2014

**EZRA BRUTZKUS GUBNER LLP**

By: ______________________
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Trustee and the Settling Parties (Brett Greene, Jeff Greene, the Brownes, Dunn, the Freemans, Parry, Pressman/Zeind, Carter and Haala/Adamson) have engaged in settlement discussions in regard to the Trustee's claims and potential claims against the Settling Parties, as well as defenses presented by the Settling Parties. **The Agreements, if approved by the Court, will collectively result in the disallowance of over $3 million in purportedly secured proofs of claims and over $8 million in general unsecured proofs of claim filed in the bankruptcy case.** The Trustee believes, in his business judgment, that the settlements reflected in the Agreements present the Consolidated Estate with an outcome that is superior to the alternative of potentially costly litigation with the Settling Parties.

Based on the grounds stated herein and in the Rund Declaration, the Trustee respectfully requests that the Court grant this Motion and enter an order:

1. Approving the Agreements;

2. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreements; and

3. Granting such other and further relief as this Court may deem just and proper.

## II.

## BACKGROUND

### A. The EPD Bankruptcy Case.

#### 1. The Involuntary Petition and the Order for Relief.

Petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively, the "Petitioning Creditors") filed the Involuntary Petition on December 7, 2010 [Docket No. 1]. The Court entered an Order for Relief on February 9, 2011. [Docket Nos. 28 and 29].

**2. The Motion to Compel and the Debtor's Filings of Statements, Schedules and a Creditor's Matrix.**

On March 17, 2011, the Trustee filed his motion to compel EPD to: (1) file statements, schedules and a creditor's matrix; (2) turn over the books, records and property of EPD; and (3) cooperate with the Trustee [Docket No. 68]. On April 28, 2011, the Court entered an Order granting the Trustee's motion to compel [Docket No. 125]. The Order stated that EPD must file its statements, schedules and creditor matrix by no later than April 14, 2011 and that EPD must turn over its books, records and property by no later than April 20, 2011.

The Debtor filed Statements and Schedules on April 14, 2011 (the "EPD Statements and Schedules") and filed Amended Statements and Schedules on June 8, 2011 (the "Amended EPD Statements and Schedules"). The 341a meeting of creditors took place on September 8, 2011. Pressman appeared on behalf of the Debtor at the meeting of creditors.

**3. EPD's Motion to Convert the Case to Chapter 11, and Motion to Alter or Amend.**

On February 24, 2011, EPD filed a motion to convert the case under 11 U.S.C. § 706(a) [Docket No. 51]. On the same day, EPD filed a motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 50]. On March 25, 2011, EPD filed declarations in support of its reply memorandum regarding the motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 83]. On April 11, 2011, EPD filed additional declarations in support of its conversion motion [Docket No. 101]. On April 27, 2011, the Court entered an Order denying EPD's motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 122]. On April 28, 2011, the Court entered an Order denying without prejudice EPD's conversion motion [Docket No. 126].

**4. The Rule 2004 Examinations.**

On April 27, 2011, the Trustee filed a motion for the examinations of, and the production of documents and things by: (1) the person(s) most qualified for debtor EPD; (2) Jerrold Pressman; (3) Keith Pressman, Esq.; (4) Ruben Moreno; (5) John C. Kirkland, Esq.; (6) the person(s) most

qualified for Broadway Entertainment Marketing, Inc.; (7) the person(s) most qualified for S.C. Club, L.P.; (8) the person(s) most qualified for S.C. Club, Inc.; (9) the person(s) most qualified for the Bright Conscience Trust; (10) the person most qualified for HMB Holdings, LLC; and (11) Ted Jonavic pursuant to Fed. R. Bankr. P. 2004 [Docket No. 123]. The Court entered an Order granting the Trustee's motion on June 21, 2011 [Docket No. 147]. The Rule 2004 examinations took place as follows: Jerrold Pressman in his capacity as an individual and as the designated person most qualified for EPD, Broadway Entertainment, S.C. Club, L.P. and S.C. Club, Inc. on May 17, 2011, May 31, 2011 and July 8, 2011; John C. Kirkland on May 27, 2011; Ruben Moreno on June 1, 2011; Keith Pressman on June 24, 2011; Ted Jonavic on June 29, 2011; and Thom Ferro as the designated person most qualified for HMB Holdings, LLC on June 30, 2011.

**B. <u>The Pressman Bankruptcy Case</u>.**

On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the Pressman Bankruptcy Case [Docket No. 1]. On February 29, 2012, Jerrold Pressman filed his statements and schedules (the "Pressman Statements and Schedules") in the Pressman Bankruptcy Case [Docket No. 26]. On March 1, 2012, Jerrold Pressman filed an amended creditor's matrix [Docket No. 29].

**C. <u>Substantive Consolidation</u>.**

On April 27, 2012, the Trustee filed a motion to substantively consolidate the bankruptcy estates of EPD and Pressman [Docket No. 200]. The Court entered an Order granting the substantive consolidation motion on June 4, 2012 [Docket No. 227]. Jason Rund is now the Chapter 7 Trustee for the Consolidated Estate.

**D. <u>The Adversary Proceedings</u>.**

**1. The Greene Adversary Proceeding.**

On or about November 27, 2012, the Trustee filed his complaint against Brett Greene, Jeff Greene, Stanton Greene, and Kelly Greene, Adv. No. 2:12-ap-02517-ER. The complaint sought to recover transfers from EPD to or for the benefit of Greene during the seven-year period prior to the Petition Date totaling $106,650.00. On or about January 29, 2013, Greene filed an answer to the complaint. On or about December 26, 2013 [Adv. Docket No. 43], the Court entered an Order

approving a stipulation between the parties and continued the pre-trial conference to June 5, 2014, set a discovery cut-off date of May 1, 2014, and continued trial to the week of July 28, 2014. On August 13, 2013 [Docket No. 39], the Court entered an Order requiring the Trustee and Brett Greene to mediate the claims against Brett Greene. However, the Trustee and Greene were able to resolve the Trustee's claims against Greene prior to that mediation, resulting in the Greene Agreement.

On July 7, 2013, the Trustee unilaterally dismissed the claims against Kelly Greene [Adv. Docket No. 33]. On December 11, 2013, the Court entered an Order [Main Case Docket No. 841] approving the Chapter 7, Trustee's Fourth Omnibus Motion for Approval of Compromises [Main Case Docket No. 779]. Pursuant to that approved Motion, the Trustee's claims against Stanton Greene were resolved. The Trustee's claims against Jeff Greene and Brett Greene were resolved informally through the settlement agreements subject to this Motion.

**2. The Browne Adversary Proceeding.**

On or about December 4, 2012, the Trustee filed an adversary complaint against the Brownes, Adv. No. 2:12-ap-02632-ER. The complaint sought to recover transfers from EPD to or for the benefit of the Brownes during the seven-year period prior to the Petition Date totaling $1,732,674.75. On or about August 2, 2013, the Brownes filed an answer to the complaint after a number of Court-approved stipulations between the parties extending the time for the Brownes to respond. On or about August 20, 2013 [Adv. Docket No. 26], the Court approved a stipulation between the parties and referred the matter to mediation. On or about October 14, 2013, the parties mediated the matter, resulting in the Browne Agreement [Adv. Docket No. 35].

**3. The Dunn Adversary Proceeding.**

On or about December 2, 2012, the Trustee filed his complaint against Dunn, Adv. No. 2:12-ap-02597-ER. The complaint sought to recover transfers from EPD to or for the benefit of Dunn during the seven-year period prior to the Petition Date totaling $204,246.57. On or about June 17, 2013, the Court issued an alias summons [Adv. Docket No. 18]. The Trustee filed an executed service of that alias summons on July 1, 2013 [Adv. Docket No. 26]. Dunn has not yet filed a formal answer to the complaint. However, pursuant to settlement discussions between Dunn and the Trustee, the Dunn Agreement was fully executed on September 10, 2013.

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 24 of 117

**4. The Freeman Adversary Proceeding.**

On or about November 27, 2012, the Trustee filed an adversary complaint against the Freemans, Adv. No. 2:12-ap-02524-ER. The complaint sought to recover transfers from EPD to or for the benefit of the Freemans uring the seven-year period prior to the Petition Date totaling $1,511,854.97. On or about August 2, 2013, the Freemans filed an answer to the complaint after a number of Court-approved stipulations between the parties extending the time for the Freemans to respond. On or about August 15, 2013 [Adv. Docket No. 27], the Court approved a stipulation between the parties and referred the matter to mediation. On or about October 1, 2013, the parties mediated the matter, resulting in the Freeman Agreement [Adv. Docket No. 36].

**5. The Parry Adversary Proceeding.**

On or about November 27, 2012, the Trustee filed his complaint against Parry, Adv. No. 2:12-ap-02521-ER. The complaint sought to recover transfers from EPD to or for the benefit of Parry during the seven-year period prior to the Petition Date totaling $224,505.86. On or about March 21, 2013, Parry filed an answer to the complaint [Adv. Docket No. 17]. On July 8, 2013 [Docket No. 28], the Court entered an Order assigning the matter to mediation. However, the Trustee and Parry were able to resolve the Trustee's claims against Parry prior to that mediation, resulting in the Parry Agreement. On or about November 18, 2013 [Adv. Docket No. 34], the Court entered an Order approving a stipulation between the parties, and vacated the discovery cut-off date, the pretrial conference date, and the trial dates, pending Court approval of the Parry Agreement.

**6. The Pressman Adversary Proceeding.**

On or about November 30, 2012, the Trustee filed his complaint against Robert Pressman, Adv. No. 2:12-ap-02583-ER. The complaint sought to recover transfers from EPD to or for the benefit of Robert Pressman during the seven-year period prior to the Petition Date totaling $170,900. On or about December 6, 2012, the Trustee filed his first amended complaint, which sought to recover transfers from EPD to or for the benefit of Robert Pressman during the seven-year period prior to the Petition Date totaling $611,163.30 [Adv. Docket No. 2]. On or about July 1, 2013, Robert Pressman filed an answer to the first amended complaint [Adv. Docket No. 23]. On or about August 15, 2013, the Court entered an Order approving a stipulation regarding mediation and

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 25 of 117

appointment of mediator [Adv. Docket No. 26]. The parties participated in a private mediation. The matter did not settle at the mediation, but settled during settlement discussions following the mediation.

**7. The Carter Adversary Proceeding.**

On or about December 3, 2012, the Trustee filed his complaint against Carter's husband. The Trustee learned after filing of the complaint from Carter's son (a California attorney) that Carter's husband had passed away. The complaint sought to recover transfers from EPD to or for the benefit of Carter during the seven-year period prior to the Petition Date totaling $818,323.71. The Trustee subsequently filed requests to extend time for Carter to respond to the complaint and to continue the status conference, and the Court entered Orders thereon, based on Carter's death and discussions with Carter's son regarding resolution of the claims. The Trustee and Carter subsequently settled the claims as part of the discussions.

**8. The Haala Adversary Proceeding.**

On or about November 30, 2012, the Trustee filed his complaint against Haala. The complaint sought to recover transfers from EPD to or for the benefit of Haala during the seven-year period prior to the Petition Date totaling $100,700.00. On or about July 30, 2013, Haala filed an answer to the complaint. The Trustee and Haala entered into stipulations to continue the states conference and to vacate dates and deadlines based on informal settlement discussions, and the Court entered orders approving the stipulations. On or about March 17, 2014, David Lally, counsel for Haala, filed a motion to withdraw as attorney of record, and the Court entered an Order approving the motion on or about April 9, 2014. After the filing of the motion and prior to entry of the Order, the Trustee and Haala settled the claims as part of informal settlement discussions.

**E. <u>The Salient Terms of the Agreements.</u>**

Recognizing the litigation risks, and desiring to eliminate the costs of further and protracted litigation, the Parties agreed to the following general terms of the Agreements (the following is only a summary of the Agreements; all parties in interest are respectfully directed to the Agreements themselves, attached hereto as **Exhibits A through I** to the Rund Declaration, for the specific terms of the Agreements; to the extent any terms listed below are inconsistent with the Agreements, the

terms of the Agreements shall govern):

**The Brett Greene Agreement contains the following essential terms:**

1. Claim No. 261 filed by Greene in the Debtors' bankruptcy case shall be disallowed in its entirety. Greene agrees that he shall not receive an allowed claim on the basis of that claim, or any other claim(s), in the bankruptcy case. Greene waives his right to obtain an allowed claim on any basis in the bankruptcy case.

2. Greene further represents that:

   a. Other than the transfers alleged in the complaint, Greene was not aware of having received any other transfers from the Debtors or entities affiliated with the Debtors.

   b. Greene did not have any actual or inquiry notice of any kind that the EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that he received from the Debtors were received solely for the reasons stated.

   c. That at the time of the transfers to Greene, he had no information, knowledge or belief that the Debtors were insolvent, that any transfers to them caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

3. The Trustee and Greene shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

4. The Greene Agreement is subject to Court approval.

**The Jeff Greene Agreement contains the following essential terms:**

1. Greene agrees to waive his right to file a proof of claim, or to obtain an allowed claim on any basis, in the bankruptcy case. To the extent that Greene previously filed a

proof of claims(s), such claims are disallowed and Greene shall not receive an allowed claim.

2. Greene agrees that any and all liens and/or secured claims filed and/or recorded in favor of Greene, and against the Debtors and/or assets of the Debtors, including but not limited to UCC-1 financing statements, are avoided and recovered by the Trustee.

3. Greene represents and warrants that a UCC-1 financing statement filed with the California Secretary of State on or about September 8, 2009 against the assets of Robert Geringer has been fully terminated and that there are no claims or liens in favor of Greene against Robert Geringer.

4. Greene makes representations and warranties, including that he has provided the Trustee with financial statements signed under penalty of perjury. Greene represents and warrants that the financial statements are complete and accurate, and that he has not transferred any amounts in excess of $10,000 to his spouse, children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date of the settlement agreement.

5. The Trustee and Greene shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

6. The Jeff Greene Agreement is subject to Court approval.

**The Browne Agreement contains the following essential terms:**

1. The Brownes assign and transfer any and all membership interests they have in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy Estate. The Brownes represent and warrant that they have not previously transferred or assigned any membership interests in HMB Holdings, LLC.

2. The Brownes agree that Claim Nos. 106 and 254 filed in the Debtors' Bankruptcy Case, and any other claims or potential claims against the Debtors, the Debtors' bankruptcy Estate or the Debtors' assets, are disallowed in their entirety with the exception that the Brownes shall jointly receive an allowed general unsecured claim

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 28 of 117

in the amount of $1,000,000. The Brownes waive any secured or priority claims against the Debtors' bankruptcy Estate based on membership interests in HMB Holdings, LLC or on any other basis.

3. The Brownes will provide representations including that:

a. Other than the transfers alleged in the complaint, the Brownes are not aware of having received any other transfers from the Debtors or entities affiliated with the Debtors.

b. The Brownes did not have any actual or inquiry notice of any kind that the Debtors were engaged in a Ponzi scheme or any other improper activity, and the funds that the Brownes received from the Debtors were received solely as repayment for monies loaned by the Brownes to the Debtors.

c. The Brownes had no information, knowledge or belief that the Debtors were insolvent, that any transfers caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

4. The Trustee and the Brownes shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

5. The Browne Agreement is subject to Court approval.

**The Dunn Agreement contains the following essential terms:**

1. Dunn represents that he did not file any proofs of claim in the Debtors' bankruptcy case. Dunn agrees to waive the right to file a proof of claim, or to obtain an allowed claim on any basis in the Bankruptcy Case. Dunn further waives and releases any and all security interests with regard to personal or real property of the Debtors or the bankruptcy Estate, including but not limited to UCC-1 filings or recordings against any personal or real property of the Debtors or the bankruptcy Estate.

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 29 of 117

2. The Trustee and Dunn shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

3. The Dunn Agreement is subject to Court approval.

**The Freeman Agreement contains the following essential terms:**

1. The Freemans represent that, other than Proof of Claim Nos. 182 and 205, they did not file any other proofs of claim in the Debtors' Bankruptcy Case. The Freemans agree that Claim Nos. 183 and 205 are disallowed in their entirety, and that they shall not receive an allowed claim in the basis of those claims, or any other claims, in the Bankruptcy Case. The Freemans further waive their right to obtain an allowed claim on any basis in the Bankruptcy Case.

2. The Freemans have provided the Trustee with financial statements signed under penalty of perjury. The Freemans represent and warrant that the financial statements provided to the Trustee are complete and accurate, and that they have not transferred any amounts in excess of $10,000 to their children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date upon which this Agreement is executed.

3. The Freemans further represent that:

   a. Other than the transfers alleged in the complaint, the Freemans are not aware of having received any other transfers from the Debtors or entities affiliated with the Debtors.

   b. They did not have any actual or inquiry notice of any kind that the Debtors were engaged in a Ponzi scheme or any other improper activity, and the funds that they received from the Debtors were received solely for the reasons stated.

   c. That at the time of the transfers, the Freemans had no information, knowledge or belief that the Debtors were insolvent, that any transfers to them caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 30 of 117

business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

4. The Trustee and the Freemans shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

5. The Freeman Agreement is subject to Court approval.

**The Parry Agreement contains the following essential terms:**

1. Parry represents that, other than Proof of Claim Nos. 81 (as amended) and 30, Parry did not file any other proofs of claim in the Debtors' bankruptcy case. Parry agrees that Claim Nos. 30 and 81 (as amended) filed in the Debtors' Bankruptcy Case are waived and disallowed and Parry shall not receive an allowed claim in the basis of those claims, or any other claims, in the Bankruptcy Case. Parry waives his right to obtain an allowed claim on any basis in the bankruptcy case.

2. Parry further represents that:

   a. Other than the transfers alleged in the complaint, Parry is not aware of having received any other transfers from the Debtors or entities affiliated with the Debtors.

   b. He did not have any actual or inquiry notice of any kind that the EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that he received from the Debtors were received solely for the reasons stated.

   c. That at the time of the transfers, that he had no information, knowledge or belief that the Debtors were insolvent, that any transfers to them caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small

capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

3. The Trustee and Parry shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

4. The Parry Agreement is subject to Court approval.

**The Pressman/Zeind Agreement contains the following essential terms:**

1. Pressman/Zeind represent that, other than claim nos. 203 and 204, they did not file any other claims in the Debtors' bankruptcy case. Pressman/Zeind agree that claim nos. 203 and 204 are waived and disallowed in their entirety, and that Pressman/Zeind shall not receive allowed claims on the basis of those claims or any other claims. Pressman/Zeind waive their right to obtain an allowed claim on any basis in the bankruptcy case.

2. Pressman/Zeind shall represent and warrant that:

   a. Robert Pressman is the son of debtor Jerrold S. Pressman. Robert Pressman has provided the Trustee with financial statements signed under penalty of perjury and represents and warrants that the financial statements provided to the Trustee are complete and accurate, and that he has not transferred any amounts in excess of $10,000 to any of his spouse, children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date upon which the settlement agreement was executed.

   b. Robert Pressman was never an employee, agent, independent contractor, officer, director, member or manager of debtor EPD. Defendant had no involvement in the management or operations of EPD or any of the other businesses with which debtor Jerrold S. Pressman was involved.

   c. During the 7-year period prior to the filing of the Debtors' bankruptcy case, Robert Pressman received transfers from the Debtors in the amount of approximately $611,163.30, including the receipt of $20,011.61 in transfers

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 32 of 117

within the one year prior to the petition date.

d. Other than the transfers listed in the Complaint, Robert Pressman is not aware of having received any other monies, assets, property, or anything else of value from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

e. Robert Pressman did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendant received from the Debtors was received solely for the reasons stated in herein.

f. At the time of the Transfers, Robert Pressman had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendant caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

3. The Trustee and Pressman/Zeind shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

4. The Pressman/Zeind Agreement is subject to Court approval.

**The Carter Agreement contains the following essential terms:**

1. Carter, on behalf of herself and as successor-in-interest to deceased defendant Mitchell Carter aka Mitch Carter aka David M. Carter aka D. Mitch Carter individually and dba MCarter Leasing, assigns and transfers any and all membership interests in the name of Carter or her deceased husband, or that Carter controls by virtue of her husband's death, or for any other reason, in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy Estate. Carter, on behalf of herself and as

successor-in-interest to her husband, waives any secured or priority claims against the bankruptcy Estate or the Debtors based on any interest in HMB Holdings, LLC or on any other basis.

2. Carter retains her previously-filed general unsecured proof of claim, claim no. 128. The Trustee reserves the right to object to the claim if appropriate to do so.

3. Carter represents to the Trustee the following:

   a. Carter is her husband's successor-in-interest. Her husband's assets and property were community property of Carter and her husband.

   b. No other person has a superior right to succeed to Carter's interest in any of her husband's assets, including any membership interests or rights in regard to HMB Holdings, LLC.

4. The Trustee and Carter shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

5. The Carter Agreement is subject to Court approval.

**The Haala Agreement contains the following essential terms:**

1. Claim Nos. 144, 146 and 157, and any other proofs of claim filed by Haala/Adamson in the Debtors' bankruptcy case shall be disallowed in their entirety. Haala/Adamson agree that they shall not receive an allowed claim on any basis in the Bankruptcy Case.

2. The Trustee and Haala/Adamson shall provide general and mutual releases, including a California Civil Code § 1542 waiver.

3. The Haala Agreement is subject to Court approval.

## III.

## THE AGREEMENTS ARE PROPERLY APPROVED

### A. Legal Standards for Approval.

Federal Rule of Bankruptcy Procedure 9019 provides that on motion by a trustee, the Court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a).

The decision of whether to approve or reject a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case. In re Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982); In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986).

More specifically, a Court should review the following factors in considering whether to approve a proposed settlement:

> (a) The probability of success in the litigation; (b) the difficulty, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises.

Woodson, *supra*, 839 F.2d at 620 (quoting A&C Properties, *supra*, 784 F.2d at 1381). A settlement negotiated by a trustee, as a representative of the Consolidated Estate, is entitled to deference. In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987).

The Court need not conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised. In re Walsh Construction, Inc., *supra*, 669 F.2d at 1328. In fact, the Court need not decide the questions of law and fact raised in the controversies sought to be settled, and need not determine whether the settlement presented is the best one that could possibly have been achieved. Instead, the Court's responsibility is only to "canvass the issues to see 'whether the settlement falls below the lowest point in the zone of reasonableness.'" In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1984) (quoting Newman v. Stein, 464 F.2d 689, 698 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972)).

The Trustee has the right to exercise reasonable business judgment in an effort to maximize the value of the assets of the Consolidated Estate. So long as a proposed compromise results in a recovery above the lowest point in the range of reasonable compromises, the Trustee should be authorized to proceed with such compromise. In light of the facts and circumstances in this case, application of the A&C Properties factors shows that the compromises set forth in the Agreements

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 35 of 117

are fair and equitable, are in the best interests of the Consolidated Estate, and are well above the lowest point in the range of reasonableness.

**B. <u>Application of the *A&C Properties* Factors Demonstrates That the Agreements Should Be Approved</u>.**

The Trustee has sufficiently evaluated the Agreements and has compared the benefits of entering into the Agreements as opposed to litigation against the Settling Parties. In evaluating the Agreements, the Trustee has reviewed documents provided by the Debtors, EPD's bank records and Quick Books records, and other documents provided by third parties, and has considered the testimony obtained in several examinations authorized by the Court and conducted pursuant to Fed. R. Bankr. P. 2004, including but not limited to the examination of Pressman.

Based on this evaluation, the Trustee has determined that entering into the Agreements is in the best interests of the Consolidated Estate because the Agreements are fair and equitable, are a reasonable and appropriate exercise of the Trustee's business judgment, and will avoid the time, expense and risk inherent in litigation with the Settling Parties. The Trustee has evaluated the <u>A&C Properties</u> factors in exercising his business judgment as to whether to enter into the Agreements, and has concluded that under these factors, the Agreements should be approved. The <u>A&C Properties</u> factors, as they relate to each of the Agreements, are applied in the sections below.

**1. The <u>A & C Properties</u> Factors As to the Brett Greene Agreement.**

**a. Probability of Success on the Merits.**

Greene appears to have been an investor in, and/or lender to, the Debtors. Pursuant to settlement discussions between the Parties, Greene provided additional documents demonstrating that a company which Greene asserts is wholly owned and controlled by him renders Greene a "net loser." Greene filed a proof of claim in the Bankruptcy Estate, asserting an unsecured claim in the amount of $1,660,019.80. The Trustee has reviewed all the documents provided by Greene and his counsel, and is generally satisfied by the accounting.

The Trustee recognizes that the results of potential litigation against Green are uncertain, especially in light of the fact that Greene may be able to demonstrate that he is a "net loser." The Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with

the potential litigation given that Greene has agreed to waive any purported, secured, unsecured, and/or priority claims against the Estate on any other basis. The Trustee believes, in his business judgment, that a settlement with Greene is more beneficial than proceeding to litigate the claims against him.

**b. The Difficulty, If Any, In Collection.**

The Trustee is not aware of any issues in regard to difficulty in collection of a potential judgment against Greene.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to the suit by the Trustee against Greene, primarily whether or not Greene is a "net winner," and whether or not Greene has a good faith defense, may be heavily litigated and the outcome of litigation against Greene is uncertain. Further, the Trustee has reviewed the documents and analysis provided to him by Greene and is aware that Greene may have an applicable defense as a "net loser" who received the transfers in good faith. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in the action against Greene will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In the Trustee's business judgment, he believes that the settlement, including the waiver of claim(s) against the Estate, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Greene.

**2. The <u>A & C Properties</u> Factors As to the Jeff Greene Agreement.**

**a. Probability of Success on the Merits.**

Pursuant to settlement discussions between the Parties, Greene provided documents demonstrating that he was an attorney for the debtors. Greene further represents that his receipt of funds from EPD was for payments for amounts due for legal services. Based on the transfers as for legal services rendered and based on Greene's financial condition as set forth below, the Trustee

does not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that Greene has agreed to waive his right to an allowed claim on any basis. The Trustee believes, in his business judgment, a settlement with Greene is more beneficial than proceeding to litigate the claims against him.

**b. The Difficulty, If Any, In Collection.**

The Trustee has reviewed Greene's financial statements and a declaration of Greene under penalty of perjury and believes that he would have difficulty in collecting on a potential judgment against Greene.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to the suit by the Trustee against Greene may be heavily litigated and the outcome of litigation against Greene is uncertain. Further, since the amounts received by Greene appear to be on account of legal fees paid for representation of the Debtors, the Trustee may not have a colorable claim as to the transfers. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in the action against Greene will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In the Trustee's business judgment, he believes that the settlement, including the waiver of claim(s) against the Estate, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Greene.

**3. The A & C Properties Factors As to the Browne Agreement.**

**a. Probability of Success on the Merits.**

The Brownes appear to have been investors in, and/or lenders to, the Debtors, and appear to have been "net losers." The Brownes filed two proofs of claim in the Bankruptcy Estate, asserting a combined secured claim in the amount of $3,000,000.00, and a combined unsecured claim in the amount of $2,658,601.80. The Brownes are listed on the limited liability company records of HMB

Holdings as members of HMB Holdings. The Trustee filed complaints against all members of HMB Holdings, LLC who received transfers from the Debtors during the 7-year period prior to the Petition Date because the membership in HMB Holdings, among other things, raised significant issues as to whether the members could prove a good faith defense (in regard to knowledge of, or "red flags" as to the Debtors' insolvency, fraud, Ponzi scheme and other issues) to claims for the avoidance and recovery of fraudulent transfers. The Trustee attended the mediation with the Brownes and he is generally satisfied by the explanations to his inquiries provided by the Brownes as to involvement with HMB Holdings and other issues in relation to their good faith, for the purpose of settlement.

The Trustee recognizes that the results of potential litigation against the Brownes are uncertain. The Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that the Brownes have agreed to assign any and all membership interests in HMB Holdings, LLC to the Trustee without the need for litigation, given that the Brownes have agreed to waive any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis, and given that the Brownes appear to be "net losers". The Trustee believes, in his business judgment, a settlement with the Brownes is more beneficial than proceeding to litigate the claims.

**b. The Difficulty, If Any, In Collection.**

The Trustee is not aware of any issues in regard to difficulty in collection of a potential judgment against the Brownes.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to the suit by the Trustee against the Brownes, primarily whether the Brownes have a good faith defense, may be heavily litigated and the outcome of litigation against the Brownes is uncertain. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

///

///

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 39 of 117

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in the action against the Brownes will lessen the amount to potentially distribute to creditors of the Consolidated Estate. The Trustee does not believe, in his business judgment, that litigation with the Brownes is in the best interests of the Consolidated Estate or its creditors given that: (1) the Brownes have agreed to assign any and all membership interests in HMB Holdings, LLC to the Trustee without the need for litigation; (2) the Brownes have agreed to waive any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis; and, (3) the Brownes appear to be "net losers".

Based on the foregoing factors, the Trustee has concluded that entering into the Browne Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and has exercised his reasonable business judgment in concluding that it is better to proceed with the Brownes than to litigate the claims against them.

**4. The <u>A & C Properties</u> Factors As to the Dunn Agreement.**

**a. Probability of Success on the Merits.**

The Trustee's complaint against Dunn seeks to recover transfers from EPD to or for the benefit of Dunn during the seven-year period prior to the Petition Date totaling $204,246.57. Pursuant to settlement discussions between the Parties, it appears that Dunn and Pressmen entered into a loan agreement in July of 2003, whereby Dunn agreed to lend Pressman $1.5 million dollars. The at-issue transfers appear to have been interest payments on that loan. It further appears that the loan principal was paid off in full sometime in September of 2004. This transaction appears to have been related to the Debtors' pre-petition interest in the stock of North Hills Industrial Park, Inc. The Dunn agreement provides for Dunn's waiver of any claims against the bankruptcy Estate, including but not limited to any claims with respect to the North Hills Industrial Park, Inc. and related stock.

The Trustee has reviewed all the documents provided by Dunn and his counsel, and is generally satisfied by the accounting provided by Dunn. Further, the Trustee is not aware of any other issues that may weigh against Dunn's good-faith defense. Additionally, Dunn has made a number of representations regarding his lack of knowledge regarding the Debtors' operation as a

Ponzi scheme.

**b. The Difficulty, If Any, In Collection.**

The Trustee is not aware of any issues in regard to difficulty in collection of a potential judgment against Dunn.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to the suit by the Trustee against Dunn, primarily the reasons for the transfers and whether Dunn can establish a good faith defense, may be heavily litigated and the outcome of litigation against Dunn is uncertain. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in the action against Dunn will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In the Trustee's business judgment, he believes that the settlement, including the waiver of claim(s) against the Estate (including the potential claims regarding the stock of North Hills Industrial Park, Inc.), is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Dunn.

**5. The A & C Properties Factors As to the Freeman Agreement.**

**a. Probability of Success on the Merits.**

It appears that the Freemans were investors in and/or lenders to EPD and received transfers from EPD in an approximate amount of $1,511,854.97 during the seven years prior to the Petition Date. The Trustee believes that he would prevail on his fraudulent transfer claims, at least to the extent of the Freeman's receipt of "false profits" in the amount of $1,074,378.60. However, the Freeman Agreement was entered into based on the financial statements provided by the Freemans, and the likelihood that the Trustee would encounter substantial difficulty in collecting on the potential judgment, rather than the probability of success on the merits. If approved, the Freeman Agreement

claim filed in the Bankruptcy Case by the Freemans, without any further litigation or motions needed.

**b. The Difficulty, If Any, In Collection.**

The Freemans have provided the Trustee with financial statements signed under penalty of perjury. Based on his review of these documents, the Trustee has determined that it would likely be difficult to collect upon judgments against the Freemans. The Freeman Agreement is based on the difficulty in collecting on a potential judgment against the Freemans.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The Consolidated Estate would bear attorney's fees and costs associated with continued litigation with the Freemans, and with objections to the proofs of claim filed by them. In addition, the Trustee would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation. Based on the financial statements provided by the Freemans, the Trustee does not believe that the expenditure of further fees and costs would be prudent given the Freeman Agreement.

**d. The Paramount Interests of Creditors.**

The Freeman Agreement resolves $1,047,855.28 in disputed claims, resulting in the disallowance of those claims. The Trustee does not believe in his business judgment that continued litigation with the Freemans is in the best interests of the Consolidated Estate or its creditors given such a significant reduction in claims without the need for litigation, and given the financial statements provided by the Freemans.

**6. The A & C Properties Factors As to the Parry Agreement.**

**a. Probability of Success on the Merits.**

The complaint against Parry seeks to recover transfers from EPD to or for the benefit of Parry during the seven-year period prior to the Petition Date totaling $224,505.86. Parry claims that he is a "net loser," receiving from the Debtors less than the total amount invested and or lent. Parry represents that a number of the transfers alleged in the complaint were not properly attributed to him, and that they were actually payments to his mother, "Pat Parry", who held a separate at EPD. Accordingly, Parry argues that the accounting which establishes that he is a "net winner"

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 42 of 117

inappropriately includes distributions made for the benefit of a separate EPD account holder. The Trustee has reviewed the documents and analysis provided to him by Parry and believes that Parry may have an applicable defense.

**b. The Difficulty, If Any, In Collection.**

The Trustee is not aware of any issues in regard to difficulty in collection of a potential judgment against Parry.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to the suit by the Trustee against Parry, primarily whether Parry can establish a good faith defense, and the calculation of Parry's "net winnings" may be heavily litigated, and based upon documents provided to him by Parry, Parry may be able to establish a viable defense. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in the action against Parry will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In the Trustee's business judgment, he believes that the settlement, including the waiver of claim(s) against the Estate, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Parry – as fully set forth above.

**7. The A & C Properties Factors As to the Pressman/Zeind Agreement.**

**a. Probability of Success on the Merits.**

The Trustee's complaint against Robert Pressman seeks the avoidance and recovery of $611,163.33 in transfers from EPD to Pressman during the 7-year period prior to the bankruptcy filing. It appears that Robert Pressman was a "net winner" in the amount of $42,994.40, having received the benefit of transfers from EPD in excess of the amount he invested in and/or lent to EPD. The Trustee believes that it is likely that he would prevail as to claims relating to Robert Pressman up to the amount of his "false profits." To the extent that Robert Pressman is unable to establish a

good faith defense, the Trustee would potentially be able to avoid and recover all transfers from the Debtors to, or for the benefit of Pressman, during the 7-year period prior to the Bankruptcy. There may be issues regarding the good faith defense given that, among other things, Robert Pressman is the son of debtor Jerrold Pressman.

Given that, as set forth below, the Trustee believes that he may have difficulty in collecting on the full amount of a potential judgment, the Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with litigation given Pressman/Zeind's agreement that Claim Nos. 203 and 204 filed by Pressman Zeind in the total amount of $1,572,205.53 are disallowed in their entirety, and that Pressman/Zeind shall not receive allowed claims on any basis, all without the need for continued litigation. The Trustee believes, in his business judgment, that a settlement with Pressman/Zeind is more beneficial than proceeding to litigate the claims.

**b. The Difficulty, If Any, In Collection.**

Robert Pressman has provided the Trustee with financial statements signed under penalty of perjury. Based on the financial statements and Robert Pressman's representations and warranties that the financial statements are accurate, the Trustee believes that he may have difficulty in collecting on a potential judgment against Robert Pressman.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to the suit by the Trustee against Robert Pressman, primarily whether Pressman has a good faith defense, may be heavily litigated and the outcome of litigation against Pressman is uncertain. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in the action against Pressman/Zeind will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In the Trustee's business judgment, he believes that the settlement, including the waiver of claim(s) against the Estate and based on the likely difficulty in collecting on a potential judgment, is in the best

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 44 of 117

interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Pressman/Zeind.

**8. The A & C Properties Factors As to the Carter Agreement.**

**a. Probability of Success on the Merits.**

Carter appears to have been an investor in, and/or lender to, the Debtors, and appears to have been a "net loser." Carter is listed on the limited liability company records of HMB Holdings as member of HMB Holdings. The Trustee filed complaints against all members of HMB Holdings, LLC who received transfers from the Debtors during the 7-year period prior to the Petition Date because the membership in HMB Holdings, among other things, raised significant issues as to whether the members could prove a good faith defense (in regard to knowledge of, or "red flags" as to the Debtors' insolvency, fraud, Ponzi scheme and other issues) to claims for the avoidance and recovery of fraudulent transfers. The Trustee participated in settlement discussions with Carter's son, who represents Carter and is generally satisfied by the explanation to his inquiries provided by as to involvement with HMB Holdings and other issues in relation to their good faith, for the purpose of settlement.

The Trustee recognizes that the results of potential litigation against Carter are uncertain. The Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that Carter has agreed to assign any and all membership interests in HMB Holdings, LLC to the Trustee without the need for litigation, given that Carter has agreed to waive any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis, and given that Carter appears to be a "net loser". The Trustee believes, in his business judgment, a settlement with Carter is more beneficial than proceeding to litigate the claims.

**b. The Difficulty, If Any, In Collection.**

Based on the death of Carter's husband, and issues regarding the administration of Carter's estate, collection of a potential judgment is uncertain.

///

///

**c. The Complexity, Expense and Inconvenience of Litigation.**

Any attorney's fees and costs incurred by the Trustee in the adversary proceeding against Carter will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In the Trustee's business judgment, he believes that the settlement, comprised of the assignment of any and all membership interests in HMB Holdings, LLC to the Trustee without the need for litigation, and the waiver of any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Carter.

**d. The Paramount Interests of Creditors.**

The Trustee does not believe in his business judgment that continued litigation with Carter or his wife and successor-in-interest is in the best interests of the Consolidated Estate or its creditors given the assignment of any and all membership interests in HMB Holdings, LLC to the Trustee without the need for litigation, and the waiver of any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis.

**9. The <u>A & C Properties</u> Factors As to the Haala Agreement.**

**a. Probability of Success on the Merits.**

The Trustee's complaint against Haala seeks the avoidance and recovery of $100,700.00 in transfers from EPD to Haala during the 7-year period prior to the bankruptcy filing. It does not appear that Haala was an investor in or lender to EPD, but rather is a relative of Rosemary Adamson and received transfers from the "account" of Rosemary Adamson. Since Haala was not an investor or lender, her "net win" amount is the transfer amount of $100,700.00. However, if the investments by Rosemary Adamson are taken into account, Haala would only be a "net winner" in the amount of $6,905.00. The Trustee believes that it is likely that he would prevail as to claims relating to Haala in the amount of $6,905.00 to $100,700.00, depending on whether the Court applied Rosemary Adamson's investments as investments by Haala.

///

///

///

Given the relatively small amount of the false profit amount and Haala/Adamson's agreement as to the disallowance of filed claims the Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with litigation. The Trustee believes, in his business judgment, that a settlement with Haala/Adamson is more beneficial than proceeding to litigate the claims.

**b. The Difficulty, If Any, In Collection.**

The Trustee is not aware of any issues in regard to difficulty in collection of a potential judgment against Haala.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to the suit by the Trustee against Haala, primarily whether Haala provided value to the Debtors and in what amount, and whether she has a good faith defense, may be heavily litigated and the outcome of litigation against Haala is uncertain. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in the action against Haala will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In the Trustee's business judgment, he believes that the settlement, including the disallowance of claims, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Haala.

## IV.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant this Motion and enter an order:

1. Approving the Agreements;

///

///

2. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreements; and

3. Granting such other and further relief as this Court may deem just and proper.

Dated: April 11, 2014

Respectfully submitted,

**EZRA BRUTZKUS GUBNER LLP**

By: ______________________________
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 48 of 117

**DECLARATION OF JASON M. RUND**

I, Jason M. Rund declare:

1. I am an attorney at law duly admitted to practice before this Court and am the duly appointed, qualified and acting Chapter 7 trustee of the bankruptcy estate of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (the "Consolidated Estate"). Other than as specifically identified herein, each of the facts contained in this declaration is based on personal knowledge and, if called as a witness, I could and would competently testify competently as to these facts.

2. Any capitalized terms used but not defined herein, shall have the same meaning as is affixed to them in the Motion.

3. The involuntary petition filed with the Court reflects that on December 7, 2010, the petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Sager, Jayne Sager as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively, the "Petitioning Creditors") filed the involuntary Chapter 7 petition against EPD.

4. On February 9, 2011, the Order for Relief was entered in this case as to EPD.

5. On or about February 12, 2011, I was appointed as the Chapter 7 Trustee in this case.

6. EPD filed Statements and Schedules on April 14, 2011 and filed Amended Statements and Schedules on June 8, 2011. The 341a meeting of creditors took place on September 8, 2011. Pressman appeared on behalf of EPD at the meeting of creditors.

7. My special litigation counsel conducted several examinations of Pressman and other witnesses pursuant to Fed. R. Bankr. P. 2004 (the "Rule 2004 Examinations"). I attended almost all of the Rule 2004 Examinations and received copies of the examination transcripts and the documents produced by Pressman and the other witnesses pursuant to the Rule 2004 Examinations.

8. On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the Pressman Bankruptcy Case. On February 29, 2012, Pressman filed his statements and schedules in the Pressman Bankruptcy Case. I am now the Chapter 7 Trustee for the Consolidated Estate.

9. On April 27, 2012, through my counsel, I filed a motion to substantively consolidate the bankruptcy estates of EPD and Pressman. The Court entered an Order granting the substantive

consolidation motion on June 4, 2012.

10. On or about December 12, 2013, I executed the Brett Greene Agreement. A true and correct copy of the Brett Greene Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference.

11. On or about March 13, 2014, I executed the Jeff Greene Agreement. A true and correct copy of the Jeff Greene Agreement is attached hereto as **Exhibit B** and is incorporated herein by reference.

12. On or about December 12, 2013, I executed the Browne Agreement. A true and correct copy of the Browne Agreement is attached hereto as **Exhibit C** and is incorporated herein by reference.

13. On or about September 12, 2013, I executed the Dunn Agreement. A true and correct copy of the Dunn Agreement is attached hereto as **Exhibit D** and is incorporated herein by reference.

14. On or about December 12, 2013, I executed the Freeman Agreement. A true and correct copy of the Freeman Agreement is attached hereto as **Exhibit E** and is incorporated herein by reference.

15. On or about September 13, 2013, I executed the Parry Agreement. A true and correct copy of the Parry Agreement is attached hereto as **Exhibit F** and is incorporated herein by reference.

16. On or about January 20, 2014, I executed the Pressman/Zeind Agreement. A true and correct copy of the Pressman/Zeind Agreement is attached hereto as **Exhibit G** and is incorporated herein by reference.

17. On or about March 12, 2014, I executed the Carter Agreement. A true and correct copy of the Carter Agreement is attached hereto as **Exhibit H** and is incorporated herein by reference.

18. On or about April 7, 2014, I executed the Haala Agreement. A true and correct copy of the Haala Agreement is attached hereto as **Exhibit I** and is incorporated herein by reference.

19. I have evaluated the Agreements and have compared the benefits of entering into the Agreements as opposed to litigation against the Settling Parties. In evaluating the Agreements, I

reviewed documents provided by the Debtors, EPD's bank records and Quick Books records, and other documents provided by the Settling Parties and third parties, and considered the testimony obtained in several examinations authorized by the Court and conducted pursuant to Fed. R. Bankr. P. 2004, including but not limited to the examination of Pressman. Based on this evaluation, I have determined that entering into the Agreements is in the best interests of the Consolidated Estate because the Agreements are fair and equitable, are a reasonable and appropriate exercise of my business judgment, and will avoid the time, expense and risk inherent in litigation with the Settling Parties. I have evaluated the A&C Properties factors in exercising my business judgment as to whether to enter into the Agreements, and have concluded that under these factors, the Agreements should be approved. My analysis as to the A&C Properties factors, as they relate to each of the Agreements, is applied in the sections below.

**The A & C Properties Factors As to the Brett Greene Agreement.**

20. **Probability of Success on the Merits.** It appears that Greene was an investor in, and/or lender to, the Debtors. Pursuant to settlement discussions between the Parties, Greene provided additional documents demonstrating that a company which Greene asserts is wholly owned and controlled by him renders Greene a "net loser." Greene filed a proof of claim in the Bankruptcy Estate, asserting an unsecured claim in the amount of $1,660,019.80. I have reviewed all the documents provided by Greene and his counsel, and am generally satisfied by the accounting. I recognize that the results of potential litigation against Green are uncertain, especially in light of the fact that Greene may be able to demonstrate that he is a "net loser." I do not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that Greene has agreed to waive any purported, secured, unsecured, and/or priority claims against the Estate on any other basis. I believe, in my business judgment, that a settlement with Greene is more beneficial than proceeding to litigate the claims against him.

21. **The Difficulty, If Any, In Collection.** I am not aware of any issues in regard to difficulty in collection of a potential judgment against Greene.

22. **The Complexity, Expense and Inconvenience of Litigation.** The issues in regard to the suit against Greene, primarily whether or not Greene is a "net winner," and whether or not

Greene has a good faith defense, may be heavily litigated and the outcome of litigation against Greene is uncertain. Further, I have reviewed the documents and analysis provided to me by Greene and am aware that Greene may have an applicable defense as a "net loser" who potentially received the transfers in good faith. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

23. **The Paramount Interests of Creditors.** Any attorney's fees and costs incurred by the Trustee in the action against Greene will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In my business judgment, I believe that the settlement, including the waiver of claim(s) against the Estate, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Greene.

**The <u>A & C Properties</u> Factors As to the Jeff Greene Agreement.**

24. **Probability of Success on the Merits.** Pursuant to settlement discussions between the parties, Greene provided documents that he was an attorney for the Debtors. Greene further represents that his receipt of funds from EPD was for payments for amounts due for legal services for the Debtors. Based on the transfers as for legal services rendered and based on Greene's financial condition as set forth below, I do not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that Greene has agreed to waive his right to an allowed claim on any basis. I believe, in my business judgment, that a settlement with Greene is more beneficial than proceeding to litigate the claims against him.

25. **The Difficulty, If Any, In Collection.** I have reviewed Greene's financial statements and a declaration of Greene under penalty of perjury and believe that I would have difficulty in collecting on a potential judgment against Greene.

26. **The Complexity, Expense and Inconvenience of Litigation.** The issues in regard to the suit against Greene may be heavily litigated and the outcome of litigation against Greene is uncertain. Further, since the amounts received by Greene appear to be on account of legal fees paid for representation of the Debtors, I may not have a colorable claim as to the transfers. Litigation

involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

27. **The Paramount Interests of Creditors.** Any attorney's fees and costs incurred by the Estate in the action against Greene will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In my business judgment, I believe that the settlement, including the waiver of claim(s) against the Estate, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Greene.

**The <u>A & C Properties</u> Factors As to the Browne Agreement.**

28. **Probability of Success on the Merits.** The Brownes appear to have been investors in, and/or lenders to, the Debtors, and appear to have been "net losers." The Brownes filed two proofs of claim in the Bankruptcy Estate, asserting a combined secured claim in the amount of $3,000,000.00, and a combined unsecured claim in the amount of $2,658,601.80. The Brownes are listed on the limited liability company records of HMB Holdings as members of HMB Holdings. I filed complaints against all members of HMB Holdings, LLC who received transfers from the Debtors during the 7-year period prior to the Petition Date because the membership in HMB Holdings, among other things, raised significant issues as to whether the members could prove a good faith defense (in regard to knowledge of, or "red flags" as to the Debtors' insolvency, fraud, Ponzi scheme and other issues) to claims for the avoidance and recovery of fraudulent transfers. I attended the mediation with the Brownes and am generally satisfied by the explanations to my inquiries provided by the Brownes as to involvement with HMB Holdings and other issues in relation to their good faith, for the purpose of settlement. I recognize that the results of potential litigation against the Brownes are uncertain. I do not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that the Brownes have agreed to assign any and all membership interests in HMB Holdings, LLC to the Estate without the need for litigation, given that the Brownes have agreed to waive any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis, and

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 53 of 117

given that the Brownes appear to be "net losers". I believe, in my business judgment, that a settlement with the Brownes is more beneficial than proceeding to litigate the claims.

29. **The Difficulty, If Any, In Collection.** I am not aware of any issues in regard to difficulty in collection of a potential judgment against the Brownes.

30. **The Complexity, Expense and Inconvenience of Litigation.** The issues in regard to the suit against the Brownes, primarily whether the Brownes have a good faith defense, may be heavily litigated and the outcome of litigation against the Brownes is uncertain. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

31. **The Paramount Interests of Creditors.** Any attorney's fees and costs incurred by the Estate in the action against the Brownes will lessen the amount to potentially distribute to creditors of the Consolidated Estate. I do not believe, in my business judgment, that litigation with the Brownes is in the best interests of the Consolidated Estate or its creditors given that: (1) the Brownes have agreed to assign any and all membership interests in HMB Holdings, LLC to the Estate without the need for litigation; (2) the Brownes have agreed to waive any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis; and, (3) the Brownes appear to be "net losers". Based on the foregoing factors, I have concluded that entering into the Browne Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and have exercised my reasonable business judgment in concluding that it is better to proceed with the settlement with the Brownes rather than to litigate the claims against them.

**The A & C Properties Factors As to the Dunn Agreement.**

32. **Probability of Success on the Merits.** The complaint against Dunn seeks to recover transfers from EPD to or for the benefit of Dunn during the seven-year period prior to the Petition Date totaling $204,246.57. It appears that Dunn and Pressmen entered into a loan agreement in July of 2003, whereby Dunn agreed to lend Pressman $1.5 million dollars. The at-issue transfers appear to have been interest payments on that loan. It further appears that the loan principal was paid off in

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 54 of 117

full sometime in September of 2004. This transaction appears to have been related to the Debtors' pre-petition interest in the stock of North Hills Industrial Park, Inc. The Dunn agreement provides for Dunn's waiver of any claims against the bankruptcy Estate, including but not limited to any claims with respect to the North Hills Industrial Park, Inc. and related stock. I have reviewed all the documents provided by Dunn and his counsel, and am generally satisfied by the accounting provided by Dunn. Further, I am not aware of any other issues that may weigh against Dunn's good-faith defense. Additionally, Dunn has made a number of representations regarding his lack of knowledge regarding the Debtors' operation as a Ponzi scheme.

33. **The Difficulty, If Any, In Collection.** I am not aware of any issues in regard to difficulty in collection of a potential judgment against Dunn.

34. **The Complexity, Expense and Inconvenience of Litigation.** The issues in regard to the suit against Dunn, primarily the reasons for the transfers and whether Dunn can establish a good faith defense, may be heavily litigated and the outcome of litigation against Dunn is uncertain. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

35. **The Paramount Interests of Creditors.** Any attorney's fees and costs incurred by the Estate in the action against Dunn will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In my business judgment, I believe that the settlement, including the waiver of claim(s) against the Estate (including the potential claims regarding the stock of North Hills Industrial Park, Inc.), is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Dunn.

**The A & C Properties Factors As to the Freeman Agreement.**

36. **Probability of Success on the Merits.** It appears that the Freemans were investors in and/or lenders to EPD and received transfers from EPD in an approximate amount of $1,511,854.97 during the seven years prior to the Petition Date. I believe that I would prevail on the fraudulent transfer claims, at least to the extent of the Freeman's receipt of "false profits" in the amount of

$1,074,378.60. However, the Freeman Agreement was entered into based on the financial statements provided by the Freemans, and the likelihood that I would encounter substantial difficulty in collecting on the potential judgment, rather than the probability of success on the merits. If approved, the Freeman Agreement will result in the disallowance of $1,047,855.28 in proofs of claim filed in the Bankruptcy Case by the Freemans, without any further litigation or motions needed.

37. **The Difficulty, If Any, In Collection.** The Freemans have provided me with financial statements signed under penalty of perjury. Based on my review of these documents, I have determined that it would likely be difficult to collect upon judgments against the Freemans. The Freeman Agreement is based on the difficulty in collecting on a potential judgment against the Freemans.

38. **The Complexity, Expense and Inconvenience of Litigation.** The Consolidated Estate would bear attorney's fees and costs associated with continued litigation with the Freemans. In addition, I would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

39. **The Paramount Interests of Creditors.** The Freeman Agreement resolves $1,047,855.28 in disputed claims, resulting in the disallowance of those claims. I do not believe in my business judgment that continued litigation with the Freemans is in the best interests of the Consolidated Estate or its creditors given the agreement for the disallowance of proofs of claim without the need for litigation, and given the financial statements provided by the Freemans.

**The <u>A & C Properties</u> Factors As to the Parry Agreement.**

40. **Probability of Success on the Merits.** The complaint against Parry seeks to recover transfers from EPD to or for the benefit of Parry during the seven-year period prior to the Petition Date totaling $224,505.86. Parry claims that he is a "net loser," receiving from the Debtors less than the total amount invested and or lent. Parry represents that a number of the transfers alleged in the complaint were not properly attributed to him, and that they were actually payments to his mother, "Pat Parry", who held a separate at EPD. Accordingly, Parry argues that the accounting which establishes that he is a "net winner" inappropriately includes distributions made for the benefit of a

separate EPD account holder. I have reviewed the documents and analysis provided by Parry and believe that Parry may have an applicable defense.

41. **The Difficulty, If Any, In Collection.** I am not aware of any issues in regard to difficulty in collection of a potential judgment against Parry.

42. **The Complexity, Expense and Inconvenience of Litigation.** The issues in regard to the suit against Parry, primarily whether Parry can establish a good faith defense, and the calculation of Parry's "net winnings" may be heavily litigated, and based upon documents provided by Parry, Parry may be able to establish a viable defense. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

43. **The Paramount Interests of Creditors.** Any attorney's fees and costs incurred by the Estate in the action against Parry will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In my business judgment, I believe that the settlement, including the waiver of claim(s) against the Estate, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Parry – as fully set forth above.

**The <u>A & C Properties</u> Factors As to the Pressman/Zeind Agreement.**

44. **Probability of Success on the Merits.** The complaint against Robert Pressman seeks the avoidance and recovery of $611,163.33 in transfers from EPD to Pressman during the 7-year period prior to the bankruptcy filing. It appears that Robert Pressman was a "net winner" in the amount of $42,994.40, having received the benefit of transfers from EPD in excess of the amount he invested in and/or lent to EPD. I believe that it is likely that he would prevail as to claims relating to Robert Pressman up to the amount of his "false profits." To the extent that Robert Pressman is unable to establish a good faith defense, I would potentially be able to avoid and recover all transfers from the Debtors to, or for the benefit of Pressman, during the 7-year period prior to the Bankruptcy. There may be issues regarding the good faith defense given that, among other things, Robert Pressman is the son of debtor Jerrold Pressman. Given that, as set forth below, I believe that I may have difficulty in collecting on the full amount of a potential judgment, I do not believe that it is

prudent to subject the Estate to the risks and costs associated with litigation given Pressman/Zeind's agreement that Claim Nos. 203 and 204 filed by Pressman Zeind in the total amount of $1,572,205.53 are disallowed in their entirety, and that Pressman/Zeind shall not receive allowed claims on any basis, all without the need for continued litigation. I believe, in my business judgment, that a settlement with Pressman/Zeind is more beneficial than proceeding to litigate the claims.

45. **The Difficulty, If Any, In Collection.** Robert Pressman has provided financial statements signed under penalty of perjury. Based on the financial statements and Robert Pressman's representations and warranties that the financial statements are accurate, I believe that I may have difficulty in collecting on a potential judgment against Robert Pressman.

46. **The Complexity, Expense and Inconvenience of Litigation.** The issues in regard to the suit against Robert Pressman, primarily whether Pressman has a good faith defense, may be heavily litigated and the outcome of litigation against Pressman is uncertain. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

47. **The Paramount Interests of Creditors.** Any attorney's fees and costs incurred by the Estate in the action against Pressman/Zeind will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In my business judgment, I believe that the settlement, including the waiver of claim(s) against the Estate and based on the likely difficulty in collecting on a potential judgment, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Pressman/Zeind.

**The A & C Properties Factors As to the Carter Agreement.**

48. **Probability of Success on the Merits.** Carter was an investor in, and/or lender to, the Debtors, and appears to have been a "net loser." Carter is listed on the limited liability company records of HMB Holdings as member of HMB Holdings. I filed complaints against all members of HMB Holdings, LLC who received transfers from the Debtors during the 7-year period prior to the Petition Date because the membership in HMB Holdings, among other things, raised significant

issues as to whether the members could prove a good faith defense (in regard to knowledge of, or "red flags" as to the Debtors' insolvency, fraud, Ponzi scheme and other issues) to claims for the avoidance and recovery of fraudulent transfers. Through my counsel, I participated in settlement discussions with Carter's son, who represents Carter's and I am generally satisfied by the explanation to inquiries provided as to involvement with HMB Holdings and other issues in relation to their good faith, for the purpose of settlement. I recognize that the results of potential litigation against Carter are uncertain. I do not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given that Carter has agreed to assign any and all membership interests in HMB Holdings, LLC to the Estate without the need for litigation, given that Carter has agreed to waive any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis, and given that Carter appears to be a "net loser". I believe, in my business judgment, that a settlement with Carter is more beneficial than proceeding to litigate the claims.

49. **The Difficulty, If Any, In Collection.** Based on the death of Carter's husband, and issues regarding the administration of Carter's estate, collection of a potential judgment is uncertain.

50. **The Complexity, Expense and Inconvenience of Litigation.** Any attorney's fees and costs incurred by the Estate in the adversary proceeding against Carter will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In my business judgment, I believe that the settlement, comprised of the assignment of any and all membership interests in HMB Holdings, LLC to the Estate without the need for litigation, and the waiver of any purported secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Carter.

51. **The Paramount Interests of Creditors.** I do not believe in my business judgment that continued litigation with Carter or his wife and successor-in-interest is in the best interests of the Consolidated Estate or its creditors given the assignment of any and all membership interests in HMB Holdings, LLC to the Estate without the need for litigation, and the waiver of any purported

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 59 of 117

secured or priority claims against the Estate or the Debtors based on any interest in HMB Holdings or on any other basis.

**The A & C Properties Factors As to the Haala Agreement.**

52. **Probability of Success on the Merits.** The complaint against Haala seeks the avoidance and recovery of $100,700.00 in transfers from EPD to Haala during the 7-year period prior to the bankruptcy filing. It does not appear that Haala was an investor in or lender to EPD, but rather is a relative of Rosemary Adamson and received transfers from the "account" of Rosemary Adamson. Since Haala was not an investor or lender, her "net win" amount is the transfer amount of $100,700.00. However, if the investments by Rosemary Adamson are taken into account, Haala would only be a "net winner" in the amount of $6,905.00. I believe that it is likely that I would prevail as to claims relating to Haala in the amount of $6,905.00 to $100,700.00, depending on whether the Court applied Rosemary Adamson's investments as investments by Haala. Given the relatively small amount of the false profit amount and Haala/Adamson's agreement as to the disallowance of filed claims I do not believe that it is prudent to subject the Estate to the risks and costs associated with litigation. I believe, in my business judgment, that a settlement with Haala/Adamson is more beneficial than proceeding to litigate the claims.

53. **The Difficulty, If Any, In Collection.** I am not aware of any issues in regard to difficulty in collection of a potential judgment against Haala.

54. **The Complexity, Expense and Inconvenience of Litigation.** The issues in regard to the suit by the Trustee against Haala, primarily whether Haala provided value to the Debtors and in what amount, and whether she has a good faith defense, may be heavily litigated and the outcome of litigation against Haala is uncertain. Litigation involving the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I may require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

55. **The Paramount Interests of Creditors.** Any attorney's fees and costs incurred by the Estate in the action against Haala will lessen the amount to potentially distribute to creditors of the Consolidated Estate. In my business judgment, I believe that the settlement, including the

disallowance of claims, is in the best interests of the Estate, when compared to the potential risks and costs attendant to further litigation with Haala.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 11th, 2014 at El Segundo, California.

JASON M. RUND

**SETTLEMENT AGREEMENT**

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of the consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendant Brett Greene ( "Defendant"), on the other hand. The Trustee and Defendant (together referred to as the "Parties"), agree as follows:

**RECITALS**

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about November 27, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Brett Greene, et. al.*, Adv. No. 2:12-ap-02517-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendant. Defendant filed his answer to the Complaint on or about January 30, 2013.

C. The Trustee alleges that EPD made transfers totaling $106,650.00 to or for the benefit of Defendant ("Transfers"), in the seven years preceding the Petition Date.

D. Defendant contends that the Transfers are not avoidable or recoverable by the Trustee.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

**Terms of Agreement**

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Waiver and Disallowance of Proofs of Claim.** On January 29, 2013, Defendant filed proof of claim no. 261-1, in the amount of $1,660,019.80, in the Debtor's Bankruptcy Case. Defendant represents that he did not file any other proofs of claim in the Debtors' Bankruptcy Case. Defendant agrees that, upon the approval of this Agreement by the Bankruptcy Court, Claim No. 261-1 shall be disallowed in its entirety, and that Defendant shall not receive an allowed claim on the basis of that claim, or any other claim(s), in the Bankruptcy Case. Defendant further waives his right to obtain any allowed claim on any basis in the

Bankruptcy Case.

3. Dismissal Of Adversary Proceeding. Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding as to Defendant, only, with prejudice and with each party bearing his own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. Defendant agrees that no stipulation shall be necessary unless required by the Court.

4. Release of Claims. The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendant Brett Greene from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendant, on his behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

5. Defendant's Representations.

Defendant represents to the Trustee the following:

a. During the 7-year period prior to the filing of the Debtors' bankruptcy case, Defendant received repayments from the Debtors in the amount of approximately $106,650.00 (the " "Repayments").

b. Other than the approximately $106,650.00 in repayments set forth in Paragraph 5(a) above, Defendant is not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc
Main Document Page 63 of 117

Pressman was an officer, director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

c. Defendant did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendant received from the Debtors were received solely as repayment for monies loaned by Defendant to EPD and/or Pressman.

d. At the time of the repayments, Defendant had no information, knowledge or belief that the Debtors were insolvent, that any repayments to Defendant caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

e. Concurrently with the execution of this Agreement, Defendant agrees to execute a declaration under penalty of perjury affirming the representations made by the Defendant herein.

6. Non-Admission. By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. Integration. This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. Severability. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. Construction. This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States

Bankruptcy Code.

11. Jurisdiction. The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. Miscellaneous. As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. Authority. Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. Terms Read and Understood. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. Counterparts and Facsimile and Pdf Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 12-12-13

JASON M. RUND, CHAPTER 7 TRUSTEE
FOR THE BANKRUPTCY ESTATE OF CONSOLIDATED
DEBTORS EPD INVESTMENT CO., LLC,
AND JERROLD S. PRESSMAN

By: [signature]
JASON M. RUND
Chapter 7 Trustee

Dated: 12-12-13

DEFENDANT BRETT GREENE

By: [signature]
DEFENDANT BRETT GREENE, AN INDIVIDUAL

[SIGNATURES FOLLOW]

Approved as to Form:

Dated: 12/12/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 12-12-13

GOSHGARIAN & MARSHALL, PLC

By: ______________________
MERAK ESKIGIAN
Attorneys for Defendant Brett Greene

**SETTLEMENT AGREEMENT**

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of the consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendant Jeff Greene aka Jeffrey A. Greene, individually and as Trustee of the Jeffrey A. Greene Trust Account ( "Defendant"), on the other hand. The Trustee and Defendant (together referred to as the "Parties"), agree as follows:

**RECITALS**

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about November 27, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Jeff Greene et. al.*, Adv. No. 2:12-ap-02517-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendant, among others. Defendant filed his answer to the Complaint on or about February 13, 2013.

C. The Trustee alleges that EPD made transfers totaling $167,865.14 to or for the benefit of Defendant ("Transfers"), in the seven years preceding the Petition Date.

D. Defendant contends that the Transfers are not avoidable or recoverable by the Trustee. Defendant has acknowledged that the Transfers were in fact received by Defendant.

E. Defendant has provided the Trustee with financial statements signed under penalty of perjury. Defendant represents and warrants that the financial statements provided to the Trustee are complete and accurate, and that he has not transferred any amounts in excess of $10,000 to any of his spouse(s), children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date upon which this Agreement is executed.

F. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

**Terms of Agreement**

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the

"Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Waiver and Disallowance of Proofs of Claim.** Defendant agrees to waive his right to file a proof of claim, or to obtain an allowed claim on any basis, in the Bankruptcy Case. To the extent that Defendant previously filed a proof of claim(s), such claims are dissallowed and Defendant shall not received an allowed claim.

3. **Avoidance, Recovery, and Assignment of Liens and/or Claims.** Defendant agrees that any and all liens and/or secured claims filed and/or recorded in favor of Defendant, and against the Debtors' and/or assets of the Debtors, including but not limited to UCC-1 financing statements, are avoided and recovered by the Trustee on behalf of the Estate.

Defendant represents and warrants that, as of the date of the execution hereof, the UCC-1 financing statement recorded with the California Secretary of State on or about September 8, 2009, filing no. 09-7207742866, for Defendant's benefit against the assets of Robert Dean Geringer ("Geringer") (the "Geringer UCC-1") has been formally terminated. Further, that the UCC Financing Statement Amendment, which terminated the Geringer UCC-1, was filed with the California Secretary of State on or about October 11, 2013, bearing document number 39888180002 and filing number 13-73819131(the "Termination"). Defendant further represents that as of the date of the execution hereof, there are no claims or liens existing in favor of Defendant against the assets of Geringer.

4. **Dismissal Of Adversary Proceeding as to Defendant.** Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding, with respect to the Defendant, only, with prejudice, and with each party bearing his own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. Defendant agrees that no stipulation shall be necessary unless required by the Court.

5. **Release of Claims.** The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendant from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendant, on his behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

**SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

6. **Defendant's Representations.**

Defendant represents to the Trustee the following:

a. Defendant has provided the Trustee with financial statements signed under penalty of perjury. Defendant represents and warrants that the financial statements provided to the Trustee are complete and accurate, and that he has not transferred any amounts in excess of $10,000 to his spouse, children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date upon which this Agreement is executed.

b. During the 7-year period prior to the filing of the Debtors' bankruptcy case, Defendant received transfers, or the benefit of tranfers, from the Debtors in the amount of approximately $167,865.14 (the "Transfers").

c. Other than the $167,865.14 in transfers listed in the Complaint, Defendant is not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

d. Defendant did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendant received from the Debtors were received solely for the reasons stated in herein above.

e. At the time of the Transfers, Defendant had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendant caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

f. Concurrently with the execution of this Agreement, Defendant agrees to execute declarations under penalty of perjury affirming the representations made by the Defendant herein.

7. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

8. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

9. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

11. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

12. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

13. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

14. **Authority.** Each of the signatories to this Agreement warrants that he has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

15. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

16. <u>Counterparts and Facsimile and Pdf Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 3-13-2014

JASON M. RUND, CHAPTER 7 TRUSTEE
FOR THE BANKRUPTCY ESTATE OF CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Dated: 3/13/14

DEFENDANT JEFF GREENE AKA JEFFREY A. GREENE, INDIVIDUALLY AND AS TRUSTEE OF THE JEFFREY A. GREENE TRUST ACCOUNT

By: ______________________
DEFENDANT JEFF GREENE AKA JEFFREY A. GREENE, INDIVIDUALLY AND AS TRUSTEE OF THE JEFFREY A. GREENE TRUST ACCOUNT

<u>Approved as to Form:</u>

Dated: 3/13/14

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for the Bankruptcy Estate of Consolidated Debtors,
EPD Investment Co., LLC, and Jerrold S. Pressman