# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendants Robert Browne, individually and dba Browne Investments Company ("Mr. Browne"), and Joyce Browne, individually and dba Browne Investments Company ("Mrs. Browne"), on the other hand. Mr. and Mrs. Browne are referred to herein after collectively as the ("Defendants"). The Trustee and Defendants (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about December 4, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Robert Browne, individually and dba Browne Investments Company; Joyce Browne, individually and dba Browne Investments Company*, Adv. No. 2:12-ap-02632-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendants. Defendants filed an answer to the Complaint on August 2, 2013.

C. The Trustee alleges that EPD made transfers totaling $1,732,674.75 to or for the benefit of Defendants ("Transfers"), in the seven years preceding the Petition Date.

D. Defendants contend that the Transfers are not avoidable or recoverable by the Trustee. Defendants acknowledge that the Transfers were in fact received by Defendants. However, Defendants contend that they were "net losers" and invested or lent more funds than they withdrew from EPD.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

## Terms of Agreement

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. <u>**Assignment of Interest in HMB Holdings, LLC and Disallowance of Proofs of Claim.**</u>

As of the Effective Date, and without executing any further agreement or document, Defendants assign and transfer any and all membership interests that they have in HMB Holdings, LLC to the Trustee on behalf of the Debtors' bankruptcy estate. Defendants represent and warrant that they have not previously transferred or assigned any membership interests in HMB Holdings, LLC.

Defendants represent that they filed the following proofs of claim in the Debtors' bankruptcy case:

a. On or about December 12, 2011 Mr. Browne filed Claim No. 106 in the amount of $3,584,786.80, with $1,500,000.00 as a secured claim and $2,084,786.80 as a general unsecured claim, in the Bankruptcy Case; and,

b. On or about December 08, 2011 Mr. Browne filed Claim No. 254 in the amount of $2,073,815.00, with $1,500,000.00 as a secured claim and $573,815.00 as a general unsecured claim, in the Bankruptcy Case.

Except as set forth herein above, Defendants represent that they did not file any other proofs of claim in the Debtors' Bankruptcy Case. Defendants agree that Claim Nos. 106 and 254 filed in the Debtors' Bankruptcy Case, and any other claims or potential claims against the Debtors, the Debtors' bankruptcy estate or the Debtors' assets, are disallowed in their entirety with the exception that Defendants shall jointly receive an allowed general unsecured claim in the amount of One Million Dollars ($1,000,000.00). Defendants waive any secured or priority claims against the Debtors' bankruptcy estate based on membership interests in HMB Holdings, LLC or on any other basis.

3. <u>**Dismissal Of Adversary Proceeding.**</u> Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing their own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. Defendants agree that no stipulation shall be necessary unless required by the Court.

4. <u>**Release of Claims.**</u> The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge Defendants from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendants, on their own behalves, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about.

The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **<u>SECTION 1542</u>. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

5. <u>Defendants' Representations</u>.

Defendants represent to the Trustee the following:

a. Other than the Transfers, Defendants are not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

b. Defendants did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that Defendants received from the Debtors were received solely as repayment for monies loaned by Defendant to EPD and/or Pressman.

c. At the time of the Transfers, Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

d. Concurrently with the execution of this Agreement, Defendants agree to execute declarations under penalty of perjury affirming the representations made by Defendant herein.

6. <u>Non-Admission</u>. By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

///

///

///

///

///

15. Counterparts and Facsimile and Pdf Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 12-12-13

JASON M. RUND, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: [signature]
JASON M. RUND
Chapter 7 Trustee

Dated: ______________

DEFENDANT ROBERT BROWNE, INDIVIDUALLY AND DBA BROWNE INVESTMENTS COMPANY

By: ______________
DEFENDANT ROBERT BROWNE, INDIVIDUALLY AND DBA BROWNE INVESTMENTS COMPANY

Dated: ______________

DEFENDANT JOYCE BROWNE, INDIVIDUALLY AND DBA BROWNE INVESTMENTS COMPANY

By: ______________
DEFENDANT JOYCE BROWNE, INDIVIDUALLY AND DBA BROWNE INVESTMENTS COMPANY

[signatures continue]

NOV-19-2013 16:05 FROM:HILLCRESTE 13102228797 TO:19498619250 P.1/1

ATTENTION: DAVID LALLY ESQ. FAX 949 387 5559

or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: ____________

JASON M. RUND, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ____________
JASON M. RUND
Chapter 7 Trustee

Dated: 10/29/13

DEFENDANT ROBERT BROWNE, INDIVIDUALLY AND DBA BROWNE INVESTMENTS COMPANY

By: Robert Browne
DEFENDANT ROBERT BROWNE, INDIVIDUALLY AND DBA BROWNE INVESTMENTS COMPANY

Dated: 10/29/13

DEFENDANT JOYCE BROWNE, INDIVIDUALLY AND DBA BROWNE INVESTMENTS COMPANY

By: Joyce Browne
DEFENDANT JOYCE BROWNE, INDIVIDUALLY AND DBA BROWNE INVESTMENTS COMPANY

[signatures continue]

Approved as to Form:

Approved as to Form:

Dated: 12/12/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________________
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee for the bankruptcy estate of
Consolidated Debtors, EPD Investment Co., LLC,
and Jerrold S. Pressman

Dated: ______________________
LAW OFFICES OF DAVID LALLY

By: ______________________________
DAVID B. LALLY
Attorney for Defendants

Dated: ____________________

EZRA BRUTZKUS GUBNER LLP

By: ______________________________
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee for the bankrupicy estate of
Consolidated Debtors, EPD Investment Co., LLC,
and Jerrold S. Pressman

Dated: 10/30/13

LAW OFFICES OF DAVID LALLY

By: [signature]
DAVID B. LALLY
Attorney for Defendants

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of the consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and Defendant David J. Dunn, individually and as Trustee of the Dunn Family Trust ("Dunn" or "Defendant"), on the other hand. The Trustee and Defendant (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about December 2, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. David J.Dunn, individually and as Trustee of Dunn Family Trust,* Adv. No. 2:12-ap-02597-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendant. Defendant has not yet filed an answer to the Complaint.

C. The Trustee alleges that EPD made transfers totaling $204,246.57 to or for the benefit of Defendant ("Transfers"), in the seven years preceding the Petition Date.

D. Defendant contends that the Transfers are not avoidable or recoverable by the Trustee.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

### Terms of Agreement

1. **Effective Date.** Within ninety (90) calendar days after his receipt of the fully executed Agreement, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Waiver and Disallowance of Proofs of Claim.** Defendant represents that he did not file any proofs of claim in the Debtors' Bankruptcy Case. Defendant waives his right as an individual, and on behalf of the Dunn Family Trust, to file a proof of claim to obtain an allowed claim on any basis in the Bankruptcy Case. Defendant further waives and releases any and all security interests with regards to personal or real property of the Debtors or the Bankruptcy Estate, including but not limited to UCC-1 filings or recordings against any personal or real property of the Debtors or the Bankruptcy Estate.

3. **Dismissal Of Adversary Proceeding.** Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of Defendant in the Adversary Proceeding with prejudice and with each party bearing his or her own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. Defendant agrees that no stipulation shall be necessary unless required by the Court.

4. **Release of Claims.** The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendant from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendant, on his behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc
Main Document Page 31 of 117

between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and Pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A

///
///
///
///
///
///
///

facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: ____________________

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR
CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ______________________________
JASON M. RUND
Chapter 7 Trustee

Dated: 8/30/13

DEFENDANT DAVID J. DUNN

By: ______________________________
DAVID J. DUNN, an individual

By: ______________________________
DAVID J. DUNN, trustee of the Dunn Family Trust

Approved as to Form:

Dated: 9/10/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: September 6, 2013

PERELMAN AND FINK

By: ______________________________
BARET C. FINK
Attorney for Defendant, David J. Dunn, as an individual
and trustee of the Dunn Family Trust.

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc
Main Document Page 83 of 117

facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 9-12-13

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Dated: 8/30/13

DEFENDANT DAVID J. DUNN

By: ______________________
DAVID J. DUNN, an individual

By: ______________________
DAVID J. DUNN, trustee of the Dunn Family Trust

Approved as to Form:

Dated: 9/10/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: September 6, 2013
PERELMAN AND FINK

By: ______________________
BARET C. FINK
Attorney for Defendant, David J. Dunn, as an individual and trustee of the Dunn Family Trust.

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of the consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and Defendants Von Freeman and Amy Freeman ("Defendants"), on the other hand. The Trustee and Defendants (together referred to as the "Parties"), agree as follows:

### RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about November 27, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Von Freeman, an individual, and Amy Freeman, an individual,* Adv. No. 2:12-ap-02524-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendants. Defendants filed their answer to the Complaint on or about June 5, 2013.

C. The Trustee alleges that EPD made transfers totaling $1,511,854.97 to or for the benefit of Defendants ("Transfers"), in the seven years preceding the Petition Date.

D. Defendants contend that the Transfers are not avoidable or recoverable by the Trustee. Defendants have acknowledged that the Transfers were in fact received by Defendants.

E. Defendants have provided the Trustee with financial statements signed under penalty of perjury. Defendants represent and warrant that the financial statements provided to the Trustee are complete and accurate, and that they have not transferred any amounts in excess of $10,000 to their children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date upon which this Agreement is executed.

F. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendants hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

### Terms of Agreement

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 85 of 117

force or effect.

2. **Waiver and Disallowance of Proofs of Claim**. On December 12, 2011, Defendants filed proof of claim No. 183, in the amount of $523,927.64, in the Debtor's Bankruptcy Case. On December 12, 2011, Defendants filed proof of claim No. 205, in the amount of $523,927.64, in the Debtor's Bankruptcy Case. Defendants represent that they did not file any other proofs of claim in the Debtors' Bankruptcy Case. Defendants agree that Claim Nos. 183 and 205 are disallowed in their entirety, and that Defendants shall not receive an allowed claim in the basis of those claims, or any other claims, in the Bankruptcy Case. Defendants further waive their right to obtain an allowed allowed claim on any basis in the Bankruptcy Case.

3. **Dismissal Of Adversary Proceeding**. Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing his or her own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. Defendants agree that no stipulation shall be necessary unless required by the Court.

4. **Release of Claims**. The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendants from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendants, on their own behalves, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 36 of 117

5. **Defendants' Representations.**

Defendants represent to the Trustee the following:

a. Defendants have provided the Trustee with financial statements signed under penalty of perjury. Defendants represent and warrant that the financial statements provided to the Trustee are complete and accurate, and that they have not transferred any amounts in excess of $10,000 to their children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date upon which this Agreement is executed.

b. During the 7-year period prior to the filing of the Debtors' bankruptcy case, Defendants received transfers, or the benefit of tranfers, from the Debtors in the amount of approximately $1,511,854.97 (the "Transfers").

c. Other than the $1,511,854.97 in transfers listed in the Complaint, Defendants are not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

d. Defendants did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendants received from the Debtors were received solely for the reasons stated in herein above.

e. At the time of the Transfers, Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

f. Concurrently with the execution of this Agreement, Defendants agree to execute declarations under penalty of perjury affirming the representations made by the Defendants herein.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 87 of 117

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and Pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

[signatures follow]

Dated: 12-12-13

JASON M. RUND, CHAPTER 7 TRUSTEE
FOR THE BANKRUPTCY ESTATE OF CONSOLIDATED
DEBTORS EPD INVESTMENT CO., LLC,
AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Dated: 12/9/13

DEFENDANT VON FREEMAN

By: ______________________
DEFENDANT VON FREEMAN, AN INDIVIDUAL

Dated: 12/9/13

DEFENDANT AMY FREEMAN

By: ______________________
DEFENDANT AMY FREEMAN, AN INDIVIDUAL

Approved as to Form:

Dated: 12/12/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 12/9/13
LAW OFFICE OF DAVID B. LALLY

By: ______________________
DAVID B. LALLY
Attorney for Defendants

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of the consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendant Robert Parry, an individual ("Defendant"), on the other hand. The Trustee and Defendant (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about November 27, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Parry*, Adv. No. 2:12-ap-02521-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendant. Defendant filed an answer to the Complaint on March 21, 2013.

C. The Trustee alleges that EPD made transfers totaling $224,505.86 to or for the benefit of Defendant ("Transfers"), in the seven years preceding the Petition Date.

D. Defendant contends that the Transfers are not avoidable or recoverable by the Trustee.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

### Terms of Agreement

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Waiver and Disallowance of Proofs of Claim.** Claim No. 81 in the amount of $313,572.21 was originally filed by Defendant in EPD's bankruptcy case on December 7, 2011, and was thereafter amended on July 10, 2013. On July 10, 2013, Defendant filed Claim No. 30 in the amount of $147,825.86 in Pressman's bankruptcy case. Defendant represents that he did not file any other proofs of claim in the Debtors' Bankruptcy Case. Defendant agrees that Claim No. 81 (as amended) and Claim No. 30 filed in the EPD and Pressman bankruptcy cases, respectively, are waived and disallowed, and Defendant shall not

receive allowed claims on the basis of those claim or any other claim. Defendant waives his right to obtain an allowed claim on any basis in the Bankruptcy Case.

3. **Dismissal Of Adversary Proceeding.** Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing his own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. Defendant agrees that no stipulation shall be necessary unless required by the Court.

4. **Release of Claims.** The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendant from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendant, on his behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

5. **Defendant's Representations.**

Defendant represents to the Trustee the following:

a. During the 7-year period prior to the filing of the Debtors' bankruptcy case, Defendant received transfers from the Debtors in the amount of approximately $180,700 (the "Transfers").

b. Other than the $180,700 in transfers set forth in Paragraph 5(a) above, Defendant is not aware of having received any other monies or property from the Debtors or from any other entity for which Jerrold Pressman was an officer,

director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

c. Defendant did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendant received from the Debtors were received solely as repayment for monies loaned by Defendant to EPD and/or Pressman.

d. At the time of the Transfers, Defendant had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendant caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

e. Concurrently with the execution of this Agreement, Defendant agrees to execute declarations under penalty of perjury affirming the representations made by the Defendant herein.

**6.** **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

**7.** **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

**8.** **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

**9.** **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

**10.** **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc
Main Document Page 92 of 117

Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and Pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 9-18-13

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR
CONSOLIDATED DEBTORS EPD INVESTMENT CO.,
LLC, AND JERROLD S. PRESSMAN

By: [signature]
JASON M. RUND
Chapter 7 Trustee

Dated: ____________________

DEFENDANT ROBERT PARRY

By:____________________________
DEFENDANT ROBERT PARRY

Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and PDF Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: ____________________

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR
CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ____________________
JASON M. RUND
Chapter 7 Trustee

Dated: 9-18-13

DEFENDANT ROBERT PARRY

By: Robert Parry
DEFENDANT ROBERT PARRY

Approved as to Form:

Dated: 9/19/13
EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: ______________________
GRAHAM • VAAGE LLP

By: ______________________
SUSAN L. VAAGE
ANN G. LEE
Attorney for Defendant Robert Parry

Approved as to Form:

Dated: ____________________
EZRA BRUTZKUS GUBNER LLP

By: ____________________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 9/19/13
GRAHAM • VAAGE LLP

By: Ann G. Lee
SUSAN L. VAAGE
ANN G. LEE
Attorney for Defendant Robert Parry

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of the consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendant Robert Pressman, an individual ( "Defendant"), on the other hand. The Trustee and Defendant (together referred to as the "Parties") and Defendant's wife, Maureen Zeind ("Zeind"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about November 30, 2012, the Trustee filed a Complaint to Avoid and Recover Fraudulent Transfers, which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Robert Pressman,* Adv. No. 2:12-ap-02583-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. On or about December 7, 2012, the Trustee filed his First Amended Complaint in the Adversary Proceeding (the "Complaint"). The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendant. Defendant filed his answer to the Complaint on or about July 1, 2013 (the "Answer").

C. The Trustee alleges that EPD made fraudulent transfers totaling $611,163.30 in the seven years preceding the Petition Date, including preferential transfers totaling $20,011.61, within one year prior to the Petition Date, to or for the benefit of Defendant (the "Transfers").

D. Defendant contends that the Transfers are not avoidable or recoverable by the Trustee. Defendant has acknowledged that the Transfers were in fact received by Defendant.

E. Defendant is the son of debtor Pressman. Defendant has provided the Trustee with financial statements signed under penalty of perjury. Defendant represents and warrants that the financial statements provided to the Trustee are complete and accurate, and that he has not transferred any amounts in excess of $10,000 to any of his spouse, children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date upon which this Agreement is executed.

F. Robert Pressman and his wife, Maureen Zeind ("Zeind"), filed Claim No. 203 in the Bankruptcy Case on or about December 12, 2011 ("Claim No. 203"). By and through Claim No. 203, Robert Pressman and Zeind have asserted a general unsecured claim against the Estate in the amount of $1,284,863.44.

G. Zeind filed Claim No. 204 in the Bankruptcy Case on or about December 12, 2011 ("Claim No. 204"). By and through Claim No. 204, Zeind asserts an additional unsecured claim against the Estate in the amount of $287,342.09.

H. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

**Terms of Agreement**

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Waiver and Disallowance of Proofs of Claim.** Robert Pressman and Zeind represent that, other than Claims No. 203 and 204, they did not file any other proofs of claim in the Debtors' Bankruptcy Case. Robert Pressman and Zeind agree that Claims No. 203 and 204 are waived and disallowed in their entirety, and that Robert Pressman and Zeind shall not receive allowed claims on the basis of those claim or any other claims. Robert Pressman and Zeind waive their right to obtain an allowed claim on any basis in the Bankruptcy Case.

3. **Dismissal Of Adversary Proceeding.** Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing his or her own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. Defendant agrees that no stipulation shall be necessary unless required by the Court.

4. **Release of Claims.** The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendant from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendant, on his behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

**SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR**

**DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the right to enforce this Agreement.

5. **Defendant's Representations.**

Defendant represents to the Trustee the following:

a. Defendant is the son of debtor Jerrold S. Pressman. Defendant was never an employee, agent, independent contractor, officer, director, member or manager of debtor EPD. Defendant had no involvement in the management or operations of EPD or any of the other businesses with which debtor Jerrold S. Pressman was involved.

b. Defendant has provided the Trustee with financial statements signed under penalty of perjury. Defendant represents and warrants that the financial statements provided to the Trustee are complete and accurate, and that he has not transferred any amounts in excess of $10,000 to any of his spouse, children, family, friends or others that would be considered "insiders" pursuant to the definition in the Bankruptcy Code during the 7-year period prior to the date upon which this Agreement is executed.

c. During the 7-year period prior to the filing of the Debtors' bankruptcy case, Defendant received transfers from the Debtors in the amount of approximately $611,163.30, including the receipt of $20,011.61 in transfers within the year prior to the Petition Date (the "Transfers").

d. Other than the transfers listed in the Complaint, Defendant is not aware of having received any other monies, assets, property, or anything else of value from the Debtors or from any other entity for which Jerrold Pressman was an officer, director, member, manager, partner or limited partner during the 7-year period prior to the filing of the Debtors' bankruptcy case.

e. Defendant did not have any actual or inquiry notice of any kind that EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendant received from the Debtors was received solely for the reasons stated in herein.

f. At the time of the Transfers, Defendant had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendant caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

g. Concurrently with the execution of this Agreement, Defendant agrees to execute a declaration under penalty of perjury affirming the representations made by the Defendant herein.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 100 of 117

the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. Counterparts and Facsimile and Pdf Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 1-20-2013

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: [signature]
JASON M. RUND
Chapter 7 Trustee

Dated: ____________

DEFENDANT ROBERT PRESSMAN

By: ____________
ROBERT PRESSMAN, an individual

Dated: ____________

MAUREEN ZEIND

By: ____________
MAUREEN ZEIND, an individual

the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. <u>Counterparts and Facsimile and Pdf Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: ____________________

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR
CONSOLIDATED DEBTORS EPD INVESTMENT CO.,
LLC, AND JERROLD S. PRESSMAN

By: ____________________
JASON M. RUND
Chapter 7 Trustee

Dated: 2/5/14

DEFENDANT ROBERT PRESSMAN

By: Robert Pressman
ROBERT PRESSMAN, an individual

Dated: 2/5/14

MAUREEN ZEIND

By: Maureen Zeind
MAUREEN ZEIND, an individual

Approved as to Form:

Dated: 3/21/14

EZRA BRUTZKUS GUBNER LLP

By: [signature]
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 2/5/14
LAW OFFICES OF DAVID LALLY

By: [signature]
DAVID LALLY
Attorney for Defendant Robert Pressman, and
Maureen Zeind

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and Marie Carter ("Mrs. Carter"), wife and successor-in-interest of deceased defendant Mitchell Carter aka Mitch Carter aka David M. Carter aka D. Mitch Carter ("Mr. Carter"), individually and dba MCarter Leasing ("MCarter") (M.Carter and MCarter together, the "Defendant"), on the other hand. The Trustee and Mrs. Carter (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases *nunc pro tunc* to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"), before the Honorable Ernest M. Robles.

B. On or about December 3, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Mitchell Carter, individually and dba MCarter Leasing, et. al.*, Adv. No. 2:12-ap-02623-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover transfers from EPD to, or for the benefit of, Defendant. As of the execution hereof, no answer has been filed on behalf of Defendant. The Trustee alleges that EPD made transfers totaling $818,323.71 to or for the benefit of Defendant ("Transfers"), in the seven years preceding the Petition Date.

C. Mrs. Carter represents and warrants that Defendant is deceased and that she is the Defendant's successor-in-interest. Mrs. Carter further represents and warrants that no other person has a superior right to succeed Mr. Carter's interests. Mrs. Carter makes such further representations as stated in Paragraph 5 herein.

D. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Mrs. Carter hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

## Terms of Agreement

1. **Effective Date**. After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date"). If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

2. **Assignment of Interest in HMB Holdings, LLC/Reservation re Proofs of Claim**. As of the Effective Date, and without executing any further agreement or document, Mrs. Carter, on behalf of herself

and as successor-in-interest to Defendant, assigns and transfers any and all membership interests in the name Defendant or Mrs. Carter, or that Mrs. Carter controls by virtue of Defendant's death, or for any other reason, in HMB Holdings, LLC to the Trustee on behalf of the bankruptcy estate.

Mrs. Carter retains her previously-filed general unsecured proof of claim, Claim No. 128. The Trustee has not yet reviewed the proofs of claim filed in the Bankruptcy Case, including but not limited to Claim No. 128, and the Trustee reserves the right to object to those claims on any basis if appropriate to do so. Mrs. Carter, on behalf of herself and as the successor-in-interest to Defendant waives any secured or priority claim against the bankruptcy estate or the Debtors based on any interest in HMB Holdings, LLC, or on any other basis.

3. Dismissal Of Adversary Proceeding. Within twenty (20) business days after the Effective Date, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing his or her own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. Mrs. Carter agrees that no stipulation shall be necessary unless required by the Court.

4. Release of Claims. The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharge the Defendant and Mrs. Carter, individually and in her capacity as successor-in-interest to Defendant, from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Mrs. Carter, on her own behalf, and on the behalf of Defendant as his successor-in-interest, and without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee, both in his individual capacity and as chapter 7 trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to the Complaint or the Adversary Proceeding.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

5. **Mrs. Carter's Representations.**

Mrs. Carter represents to the Trustee the following:

a. Defendant is deceased.

b. As of the time of Defendant's passing, Mrs. Carter was Defendant's spouse.

c. Mrs. Carter represents and warrants that she is the Defendant's successor-in-interest. Defendant's assets and property were the community property of Mrs. Carter and Defendant.

d. Mrs. Carter further represents and warrants that no other person has a superior right to succeed Mr. Carter's interest in any of Defendant's assets, including any membership interests or rights in regard to HMB Holdings, LLC.

e. Concurrently with the execution of this Agreement, Mrs. Carter agrees to execute a declaration under penalty of perjury affirming the representations made herein.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc
Main Document Page 108 of 117

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and Pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 3-12-2014

JASON M. RUND, CHAPTER 7 TRUSTEE
FOR THE BANKRUPTCY ESTATE OF CONSOLIDATED
DEBTORS EPD INVESTMENT CO., LLC, AND
JERROLD S. PRESSMAN

By: [signature]
JASON M. RUND
Chapter 7 Trustee

Dated: 2/7/14

MARIE CARTER

By: Marie Carter
MARIE CARTER, an individual

Approved as to Form:

Dated: 3/13/14

EZRA BRUTZKUS GUBNER LLP

By: ______________________

COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: February 12, 2014

BERGKVIST, BERGKVIST & CARTER LLP

By: ______________________

PAUL CARTER
Counsel for Marie Carter

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, solely in his capacity as Chapter 7 bankruptcy trustee (the "Trustee") for the consolidated Chapter 7 bankruptcy estate (the "Consolidated Estate" or the "Estate") of debtors EPD Investment Company, LLC ("EPD") and Jerrold S. Pressman ("Pressman") (collectively the "Debtors") on the one hand and Denise Haala, Kathleen Adamson and Greg Adamson (collectively "Haala/Adamson") on the other hand. The Trustee and Haala/Adamson, the parties hereto (collectively referred to as the "Parties"), agree as follows:

## RECITALS

A. Petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee filed an involuntary bankruptcy petition against EPD Investment Co., LLC ("EPD") on December 7, 2010 (the "EPD Bankruptcy Case"). The Court entered an Order for Relief on February 9, 2011.

B. On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the "Pressman Bankruptcy Case."

C. On April 27, 2012, the Trustee filed a motion to substantively consolidate the EPD Bankruptcy Case and the Pressman Bankruptcy Case (the "Consolidated Estate"), which the Court approved by an Order entered on June 4, 2012. Jason Rund is now the Chapter 7 Trustee for the Consolidated Estate.

D. On or about November 30, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Haala*, Adv. No. 2:12-ap-02578-ER (the "Adversary Proceeding"), currently pending in the Bankruptcy Court. The Complaint seeks to avoid and recover $100,700.00 in transfers from EPD to or for the benefit of Haala. Haala denies the Trustee's assertions and contends that any transfers are not avoidable or recoverable.

E. Haala represents and warrants the following:

(i) Haala had no information, knowledge or belief that the Debtors were insolvent, that any transfers to or for the benefit of Haala caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

(ii) Haala is not aware of any transfers received from the Debtors, or from insiders of the Debtors or other related entities, other than the transfers referred to in Recital D above.

F. In order to fully and finally resolve the disputes described herein and to avoid the

Case 2:10-bk-62208-ER Doc 995 Filed 04/11/14 Entered 04/11/14 17:23:31 Desc Main Document Page 109 of 117

risks and expense of litigation, the Trustee, on the one hand, Haala/Adamson, on the other hand, hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each of the Parties, and incorporating the Recitals set forth hereinabove, the Parties hereby agree as follows:

**Terms of Agreement**

1. **Effective Date**. After his receipt of the fully executed Agreement, and at such time is economical to the estate as part of an omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date").

2. **Representations and Warranties**. Haala/Adamson represent and warrant that the representations made in Recital E are true and correct, and Recital E is specifically incorporated herein by reference.

3. **Disallowance of Claims**. Haala/Adamson agree that they shall not receive an allowed claim on any basis in the Bankruptcy Case. Haala/Adamson agree that Claim Nos. 144, 146 and 157,, and any other proofs of claim filed by Haala/Adamson in the Bankruptcy Case are disallowed in their entirety.

4. **Dismissal Of Adversary Proceeding.** Within twenty (20) business days after the Effective Date, and after the Court has entered an order approving this Agreement, the Trustee shall file a proposed order dismissing the Adversary Proceeding with prejudice and with each party bearing his or her own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. The Parties agree that no stipulation shall be necessary unless required by the Court.

5. **Release of Claims.**

(a) The Trustee, on behalf of the Consolidated Estate, and on behalf of its successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges Haala/Adamson from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any potential avoidance action, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

(b) Haala/Adamson, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Trustee in his individual and representative capacities, the Estate, the

Debtors and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any potential action or claim against the Trustee, the Estate, the Debtors and the Trustee's attorneys and other professionals.

(c) The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estates, and Haala/Adamson, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neutral gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile or pdf signature shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

JASON M. RUND, CHAPTER 7 TRUSTEE

Dated: 4/7/2014

Jason M. Rund
Chapter 7 Trustee for the bankruptcy estate of consolidated debtors EPD Investment Co., LLC, and Jerrold S. Pressman

DENISE HAALA

Dated: 4/3/2014

Denise Haala

KATHLEEN ADAMSON

Dated: __________

Kathleen Adamson

GREG ADAMSON

Dated: 4/6/2014

Greg Adamson

Approved as to Form:

Dated: 4/7/14

EZRA BRUTZKUS GUBNER LLP

By:
Corey R. Weber
Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee for the Consolidated Estate of EPD Investment Co., LLC and Jerrold S. Pressman

JASON M. RUND, CHAPTER 7 TRUSTEE

Dated: ____________ ____________________
Jason M. Rund
Chapter 7 Trustee for the bankruptcy estate of consolidated debtors EPD Investment Co., LLC, and Jerrold S. Pressman

DENISE HAALA

Dated: ____________ ____________________
Denise Haala

KATHLEEN ADAMSON

Dated: 4-2-14 Kathleen Adamson
Kathleen Adamson

GREG ADAMSON

Dated: ____________ ____________________
Greg Adamson

Approved as to Form:

Dated: ____________

EZRA BRUTZKUS GUBNER LLP

By: ____________________
Corey R. Weber
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee for the Consolidated Estate of EPD Investment Co., LLC and Jerrold S. Pressman

Dated: 11/6/11

LAW OFFICES OF DAVID LALLY

By: David B. Lally
David Lally
Attorneys for Denise Haala, Patricia Adamson,
Kathleen Adamson and Greg Adamson

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.**

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND CHAPTER 7 TRUSTEE'S EIGHTH OMNIBUS MOTION FOR APPROVAL OF COMPROMISES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JASON M. RUND IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 11, 2014**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Attorneys for Settling Parties:
David B Lally davidlallylaw@gmail.com
Susan L Vaage svaage@grahamvaagelaw.com

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On **April 11, 2014**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor In Pro Se
Jerrold S. Pressman
1201 Idaho Ave., Apt 10
Santa Monica, CA 90403

Debtor In Pro Se (returned)
~~EPD Investment Co., LLC~~
~~601 S. Figueroa Street, Suite 3900~~
~~Los Angeles, CA 90017~~

Attorneys for Settling Parties
Merak Eskigian, Esq.
Goshgarian & Marshall, PLC
23901 Calabasas Road, Suite 2073
Calabasas, CA 91302

Attorneys for Settling Parties
Baret C. Fink, Esq.
Perelman & Fink
1880 Century Park E., Suite 315
Los Angeles, CA 90067

Attorneys for Settling Parties
Paul Carter, Esq.
Bergkvist, Bergkvist & Carter LLP
400 Oceangate, Suite 800
Long Beach, CA 90801

Settling Party
Jeff Greene
725 Cool Springs Blvd., #600
Franklin, TN 37067-2702

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 11, 2014**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**BY OVERNIGHT MAIL**

Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg.
255 East Temple Street, Suite 1560
Los Angeles, CA 90012-3332

**BY EMAIL**

Attorneys for Settling Parties:
Merak Eskigian – meskigian@gmlawplc.net
David B Lally davidlallylaw@gmail.com
Baret C. Fink – bcfinklaw@gmail.com
Susan L Vaage – svaage@grahamvaagelaw.com
Paul Carter – pc@lawbbc.com
Jeff Greene – jeff@jgreene.us

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 11, 2014 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

Michael W Aiken MAiken@NBSDefaultServices.com
Justin D Balser justin.balser@akerman.com, toni.domres@akerman.com; kristine.elliott@akerman.com; victoria.edwards@akerman.com; elizabeth.streible@akerman.com; courtney.linney@akerman.com; chris.carrington@akerman.com; ian.hicks@akerman.com
Adam N Barasch anb@severson.com
Colin M Bernardino cbernardino@kilpatricktownsend.com
Craig R Bockman crbockman@jonesbell.com, yleandro@jonesbell.com
Rebecca A Caley rcaley@caleylaw.com
Michael E Clark notices@blclaw.com, ecf@blclaw.com;borowitzclark1@gmail.com
Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
Sara E Cook lpalma@mckenna-law.com, scook@mckenna-law.com;bankruptcy@mckenna-law.com
Christopher D Crowell ccrowell@frandzel.com, efiling@frandzel.com;shom@frandzel.com
Ana Damonte ana.damonte@pillsburylaw.com
Aaron De Leest aed@dgdk.com, DanningGill@gmail.com
Richard K Diamond rdiamond@dgdk.com, DanningGill@gmail.com
Claire Y Dossier claire.dossier@akerman.com, toni.domres@akerman.com; amy.rock@akerman.com; melissa.cizmorris@akerman.com; lisa.blaylock@akerman.com; courtney.linney@akerman.com
Lei Lei Wang Ekvall lekvall@wgllp.com
David K Eldan malvarado@pmcos.com, rpinal@pmcos.com;efilings@pmcos.com
Russ W Ercolani russ@ercolanilawgroup.com
Debra Fogelman DEBRAFOGELMAN@LIVE.COM
Anthony A Friedman aaf@lnbyb.com
Jeffrey I Golden jgolden@wgllp.com, kadele@wgllp.com
Michael J Gomez mjg@lrplaw.net, rebecca@lrplaw.net
Michael I Gottfried mgottfried@lgbfirm.com, ncereseto@lgbfirm.com;rmartin-patterson@lgbfirm.com
Regis Guerin efilings@amlegalgroup.com
Alan S Gutman alangutman@gutmanlaw.com
David S Hagen go4broq@earthlink.net
Robert A Hessling rhessling@gmail.com
Richard B Hopkins rhopkins@bargerwolen.com
Lon B Isaacson - INACTIVE - ecfnotices@lbilaw.com
John P Jacobs jpjacobs@steptoe.com, mmartinez@steptoe.com;tsosa@steptoe.com
James N Knight james@jnk-law.com
Michael S Kogan mkogan@koganlawfirm.com
Alan R Kossoff akossoff@kwikalaw.com, bdipalma@kwikalaw.com
John P Kreis jkreis@attglobal.net
David B Lally davidlallylaw@gmail.com
Lewis R Landau LLandau@HorganRosen.com
Ian Landsberg ilandsberg@landsberg-law.com, bgomelsky@landsberg-law.com; ssaad@landsberg-law.com; dzuniga@landsberg-law.com
Mary D Lane mal@msk.com, mec@msk.com
Ann G Lee alee@grahamvaagelaw.com
Jennifer Leland jleland@peitzmanweg.com
Kenderton S Lynch kenlynchlaw@aol.com
Howard N Madris hmadris@madrislaw.com
Aaron J Malo amalo@sheppardmullin.com
Ashley M McDow amcdow@mbnlawyers.com, aacosta@mbnlawyers.com
Neeta Menon nmenon@btlaw.com
Reed M Mercado rmercado@sheppardmullin.com
Stacey A Miller smiller@tharpe-howell.com
John A Moe jmoe@mckennalong.com
Susan I Montgomery susan@simontgomerylaw.com
Randall P Mroczynski randym@cookseylaw.com
Alan I Nahmias anahmias@mbnlawyers.com, jdale@mirmanbubman.com
David L. Neale dln@lnbrb.com
Warren N Nemiroff wnemiroff@yahoo.com
Brian A Paino ecfcacb@piteduncan.com
Kathy Bazoian Phelps kphelps@dgdk.com, DanningGill@gmail.com
Jason S Pomerantz jspomerantz@pszjlaw.com, jspomerantz@pszjlaw.com
Christopher O Rivas crivas@reedsmith.com
Jason M Rund (TR) trustee@srlawyers.com, jrund@ecf.epiqsystems.com
Deborah L Schrier-Rape DSchrierRape@goodwinprocter.com, smpearce@goodwinprocter.com
Benjamin Seigel bseigel@buchalter.com, IFS_filing@buchalter.com
Steven J Shapero sshapero@shaperohurst.com
David B Shemano dshemano@peitzmanweg.com
Autumn D Spaeth aspaeth@wgllp.com, tjones@wgllp.com
Daniel B Spitzer dspitzer@spitzeresq.com
Michael St James ecf@stjames-law.com
Alberta P Stahl (TR) trusteestahl@earthlink.net, astahl@ecf.epiqsystems.com; trusteestahl\;\;.net@cacbapp.cacb.circ9.dcn
Adam M Starr starra@gtlaw.com, laik@gtlaw.com

Tina M Starr tstarr@caleylaw.com
David A Tilem davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com; dianachau@tilemlaw.com; joanfidelson@tilemlaw.com
Scott C Timpe stimpe@mbnlawyers.com, scott.timpe@gmail.com
John C Torjesen Torjesen@LAinjurylaw.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Susan L Vaage svaage@grahamvaagelaw.com
Gilbert B Weisman notices@becket-lee.com
Johnny White JWhite@wrslawyers.com
Aleksandra Zimonjic azimonjic@lgbfirm.com, marizaga@lgbfirm.com; scolen@lgbfirm.com; ncereseto@lgbfirm.com

# EXHIBIT GG

STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
MICHAEL W. DAVIS - Bar No. 274126
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000, Facsimile: (818) 827-9099
Email: sgubner@ebg-law.com
cweber@ebg-law.com
mdavis@ebg-law.com

FILED & ENTERED

MAY 08 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY evangeli DEPUTY CLERK

Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee for the Consolidated Bankruptcy Estate of Debtors EPD Investment Company, LLC and Jerrold S. Pressman

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,<br><br>Consolidated Debtors. | Case No. 2:10-bk-62208-ER<br>[Lead Case]<br><br>Chapter 7<br><br>**ORDER APPROVING CHAPTER 7 TRUSTEE'S EIGHTH OMNIBUS MOTION FOR APPROVAL OF COMPROMISES**<br><br><u>Hearing</u>:<br>Date: May 7, 2014<br>Time: 10:00 a.m.<br>Place: Courtroom 1568<br>United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

The Chapter 7 Trustee's Eighth Omnibus Motion for Approval of Compromises (the "Motion," Docket No. 995), came on for hearing before the Honorable Ernest M. Robles, United States Bankruptcy Judge, in Courtroom 1568 at 10:00 a.m. on May 7, 2014. The Court reviewed the Motion and the Notice of the Motion, and received no oppositions to the Motion. The Trustee submitted on the Court's Tentative Ruling posted on May 6, 2014. For the reasons set forth in the Tentative Ruling,

///

and good cause appearing therefor,

**IT IS HEREBY ORDERED** that the Motion is granted.

# # #

Date: May 8, 2014

Ernest M. Robles
United States Bankruptcy Judge

# EXHIBIT HH

FILED
MAY 22 2006
STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

**05-C-02150**

**REVIEW DEPARTMENT OF THE STATE BAR COURT**
**IN BANK**

---

IN THE MATTER OF **KATHARINE SABICH-ROBISON, State Bar number 183234,**
A MEMBER OF THE STATE BAR OF CALIFORNIA

---

Since respondent **Katharine Sabich-Robison, State Bar number 183234,** has been convicted of violating Penal Code sections 487, subdivision (a); 470, subdivision (a); and 506, felonies involving moral turpitude, and Penal Code section 368, subdivision (d), a felony, under the authority of rule 951(a) of the California Rules of Court, it is ordered pursuant to Business and Professions Code section 6102 that respondent be suspended from the practice of law, effective June 24, 2006, pending final disposition of this proceeding. The review department reserves the moral turpitude classification of Penal Code section 368, subdivision (d). It is further ordered that respondent comply with rule 955 of the California Rules of Court and perform the acts specified in paragraphs (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this suspension.

Stovitz
Presiding Judge

kwiktag® 035 130 281

# CERTIFICATE OF SERVICE
**[Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]**

I am a Case Administrator of the State Bar Court. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on May 22, 2006, I deposited a true copy of the following document(s):

**ORDER, FILED MAY 22, 2006.**

in a sealed envelope for collection and mailing on that date as follows:

[X] by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

**Katharine Sabich-Robison**
**6255 W. Sunset Blvd., 21st Flr.**
**Los Angeles, CA 90028-7403**

[X] by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

**Dane C. Dauphine, Enforcement, Los Angeles**

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on **May 22, 2006**.

Shemainee Carranza

**Shemainee Carranza**
Case Administrator
State Bar Court

FILED
MDS
AUG - 5 2010

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

**REVIEW DEPARTMENT OF THE STATE BAR COURT**
**IN BANK**

| | |
|---|---|
| In the Matter of | Case No.: **05-C-02150** |
| KATHERINE JEAN SABICH-ROBISON | **RECOMMENDATION OF SUMMARY DISBARMENT** |
| A Member of the State Bar. | |

On June 4, 2010, the State Bar filed a request for recommendation of summary disbarment based on Katherine Jean Sabich-Robison's felony convictions. Sabich-Robison did not file a response. We grant the request and recommend that she be summarily disbarred.

On May 10, 2006, a jury found Sabich-Robison guilty of felony violations of Penal Code sections 506 (grand theft by fiduciary), 487, subdivision (a) (grand theft), 470, subdivision (a) (forgery), and 368, subdivision (d) (grand theft by fiduciary from elder). Effective June 24, 2006, we placed her on interim suspension. Sabich-Robison unsuccessfully appealed her judgment of conviction, and on June 4, 2010, the State Bar transmitted evidence that Sabich-Robison's conviction was final.

The record of conviction establishes that Sabich-Robison's criminal violations meet the criteria for summary disbarment under Business and Professions Code section 6102, subdivision (c). The offenses are felonies involving moral turpitude. (*In re Lyons* (1975) 15 Cal.3d 322,324, fn. 3 [violation of Penal Code § 506 requires intent to defraud and necessarily involves moral turpitude]; *In re Basinger* (1988) 45 Cal.3d 1348, 1358 [grand theft is a crime



kwiktag ® 018 039 772
797

that necessarily involves moral turpitude]; *In re Prantil* (1989) 48 Cal.3d 227, 234 [forgery is a serious crime involving moral turpitude].)

When an attorney's conviction meets the requirements of Business and Professions Code section 6102, subdivision (c), "the attorney is not entitled to a State Bar Court hearing to determine whether lesser discipline is called for." (*In re Paguirigan* (2001) 25 Cal.4th 1, 7.) Disbarment is mandatory. (*Id.* at p. 9.)

We therefore recommend that Katharine Jean Sabish-Robison, State Bar number 183234, be disbarred from the practice of law in this state. We also recommend that Sabish-Robison be ordered to comply with rule 9.20 of the California Rules of Court and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of the Supreme Court's order. Finally, we recommend that the costs be awarded to the State Bar in accordance with section 6086.10 of the Business and Professions Code and that such costs be enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment.

Presiding Judge

# CERTIFICATE OF SERVICE

[Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on August 5, 2010, I deposited a true copy of the following document(s):

RECOMMENDATION OF SUMMARY DISBARMENT FILED AUGUST 5, 2010

in a sealed envelope for collection and mailing on that date as follows:

☒ by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

KATHARINE SABICH-ROBISON
1732 AVIATION BLVD # 104
REDONDO BEACH, CA 90278

FREDERICK PHILIP COZENS
LAW OFC PHILIP COZENS
1007 7TH ST #500
SACRAMENTO, CA 95814
(courtesy copy)

☐ by certified mail, No. , with return receipt requested, through the United States Postal Service at , California, addressed as follows:

☐ by overnight mail at , California, addressed as follows:

☐ by fax transmission, at fax number . No error was reported by the fax machine that I used.

☐ By personal service by leaving the documents in a sealed envelope or package clearly labeled to identify the attorney being served with a receptionist or a person having charge of the attorney's office, addressed as follows:

☒ by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

Kristin L. Ritsema, Enforcement, Los Angeles

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on August 5, 2010.

[signature]

Milagro del R. Salmeron
Case Administrator
State Bar Court

# EXHIBIT II

**IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

| | | |
|---|---|---|
| Arthur Huerth, Joan Huerth, individually And d/b/a Huerth Financial Leasing, AJ Partners, and Leslie Huerth, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: 10-05049 |
| Jerrold Pressman, Thom Ferro, EPD Investment Co., LLC., a California limited Liability company, EPD Investment Leasing Co., LLC, a California limited Liability company, EPD Group, Theodore Jonavic, Ruben Moreno, Katharine Werner, True Position Technologies, Inc., A California corporation, Ice Skating Enterprises, Inc., a California corporation, S.C. Club, L.P., a California limited Partnership, | ) | |
| Defendants. | ) | |

**DECLARATION OF KATHARINE WERNER**

Katharine Werner, being duly sworn, states and deposes as follows under penalty of perjury:

1. I am over the age of 21 and have personal knowledge of the facts contained in this declaration.

2. I have never been an employee of Jerrold Pressman or a shareholder, member, officer, director of any Pressman owned/controlled entity ("Pressman Entities"), with the exception of EPD Investment Co., LLC ("EPD"). While I was an employee of EPD, I occasionally gave miscellaneous assistance to other Pressman Entities from time to time.

3. My only connection to EPD Investment Co., LLC was as an employee. I never invested or had any ownership or equity interest in EPD Investment Co., LLC.

Case: 1:10-cv-05649 Document #: 114-9 Filed: 08/05/13 Page 2 of 11 PageID #:2191

4. I have never participated in the management of any Pressman Entity or made decisions of any kind with respect to any Pressman Entity, including EPD.

5. In about September 2010, I became aware that the plaintiffs in this case had named me as a defendant and were asserting claims against me personally, including a RICO claim.

6. Shortly after learning about this lawsuit, I spoke with Pressman about defending myself against all of the plaintiffs' claims and we discussed the fact that the claims against me were frivolous. Sometime prior to October 1, 2010, Pressman told me that would hire an attorney to represent all the defendants, including me, and that the attorney would vigorously defend me and protect my interests in this case.

7. Pressman hired attorney Barney Balonick to defend me in October 2010. I had numerous conversations with Mr. Balonick from October 2010 until June 2011 and we discussed defense of the plaintiffs' claims against me and my litigation strategy.

8. In about June 2011, Mr. Balonick advised me that he had moved his home and law practice to California and could no longer represent me in this case. At about the same time, Pressman told me that he had hired Chicago attorney Thomas Faraci to replace Mr. Balonick and to act as new counsel to represent me in this case.

9. Between June 2011 and May 2013, I believed that Mr. Faraci had taken over the case from Mr. Balonick and that he was representing me in this case and defending against all of the allegations against me. My belief was based on repeated assurances Pressman gave me to that effect. Pressman always said that he would make sure that this matter was taken care of for me. He knew that I had no knowledge of any of the allegations and had no connection to any of it. I never knew anything about any of the investments or any of the other financial matters

Case: 1:10-cv-03649 Document #: 114-9 Filed: 08/05/13 Page 3 of 11 PageID #:2192

related to EPD or any of his other businesses. He also knew that I did not have the financial ability to defend against an expensive lawsuit in a distant state, about which I knew nothing. Pressman apologized that I had been named in a lawsuit in another state and repeatedly promised that he would pay for it and stay on top of it to make sure that it was taken care of it completely. He said that he and the attorneys representing us agreed that the plaintiffs had no legitimate claims and could not proceed in Illinois under these circumstances and would make sure that the case was dismissed.

10. In on May 18, 2013, I discovered for the first time that a default judgment had been entered against me in this case when I learned my only bank account was frozen due to plaintiffs' attempts to enforce the default judgment in California. I never received any notice of the default judgment or any attempts to enforce it either from Illinois or California.

11. The existence of the citation proceedings were a complete shock to me because I had been under the mistaken belief that Mr. Faraci was defending this case and that no adverse rulings had been made against me.

12. On May 27, 2013, I retained Barney Balonick to represent my interests in the California proceeding.

13. On June 20, 2013, I retained attorney John Grady to represent my interests in this case.

14. The plaintiffs' allegations against me in the First Amended Complaint are baseless and untrue. I have meritorious defenses to all of the plaintiffs' claims. Specifically:

a. Paragraph 55 alleges that "Katharine Werner, ('Werner") an attorney and director of business affairs for Broadway Entertainment, a Pressman-owned, related business of EPD, has repeatedly assured Art, Joan and Leslie that their money

Case: 1:10-cv-05049 Document #: 114-9 Filed: 08/05/13 Page 4 of 11 PageID #:2193

was safe. Werner represented herself as a spokesperson for Jerry and as having knowledge of the EPD situation and assured Art and Joan in January, 2010 that she was 95% sure of a payout of funds in mid-January." This paragraph is false to the extent it alleges that I ever acted as an attorney for EPD Investments, LLC or any Pressman Entity. I have a law degree but have not practiced law since 2006 and I never held myself out to the Huerths as an attorney. Further, this paragraph is false to the extent that it alleges I knowingly made false or misleading statements to the Huerths. I had no personal knowledge of the financial condition of EPD Investments, LLC or whether the Huerths money was "safe." All of the information I provided to the Huerths about their investment and the condition of EPD Investments, LLC came from Pressman and I believed all of it to be true and accurate at the time I provided it to the Huerths. I only repeated to them exactly what was told to me by Pressman to tell them.

b. Paragraph 106 alleges that "In response to the request for the appraisals, Werner e-mailed Art on Tuesday, March 2, 2010 that it would breach confidentiality agreements with their banks if they provided appraisals of EPD properties. Further, Werner provided Art one page of a purported letter from Wachovia Bank committing to a loan on the "North Hills" property. See Exhibit F, March 2, 2010, email from Werner. This paragraph is false to the extent it alleges that I knew the described statements were false or misleading when I made them. At the time of the communications, I believed my statements to be true and accurate because I had received the information from Pressman and I had no reason to doubt its

accuracy. I only communicated and provided this information at the direct request of Mr. Pressman and only exactly word for word as he told me to.

c. Paragraph 109 alleges that "[o]n April 28, 2010, after multiple inquiries from Art, Werner wrote Art and stated "he (Thom) wanted me to assure you that your money is safe and all is fine here. Things are still progressing very well. As we've tried to explain, it's a very slow process...." Exhibit F, April 28, 2010 email from Werner." This paragraph is false to the extent it alleges that I knew the described statements were false or misleading when I made them. At the time of the communications, I believed my statements to be true and accurate because I had received the information from Thom Ferro, who had received it from Pressman, and I had no reason to doubt its accuracy. All information I provided to the Huerths was a verbatim repetition of information that had been given to me.

d. Paragraph 111(c) alleges that "In January, 2010, Werner relayed information to Art from Pressman that the foreign investor's money was being transferred to their bank and it should be received within days." This paragraph is false to the extent it alleges that I knew the described statement was false or misleading when I made it. At the time of the communication, I believed my statement to be true and accurate because I had received the information from Pressman and I had no reason to doubt its accuracy. This information was provided to me verbatim by Pressman to be communicated to the Huerths.

e. Paragraph 111 alleges that "Pressman and his employees, and Ferro, his authorized spokesperson, have made misrepresentations to divert the Huerths and other investors from taking any legal action to recover their loaned funds by

Case: 1:15-cv-03649 Document #: 114-9 Filed: 08/05/15 Page 8 of 11 PageID #:2195

promising them payments from a variety of ventures, including: a. Since about June, 2009 Pressman has promised that a certain bank loan would allow him to make payments to investors; b. Since about October, 2009 and as recently as August, 2010 Pressman described a foreign investor, from Sweden, then later from Switzerland, who was going to invest millions in EPD to avoid the payment of income taxes; c. In January, 2010, Werner relayed information to Art from Pressman that the foreign investor's money was being transferred to their bank and it should be received within days. d. In 2010, Art was told that it was a "done deal" that EPD would have the necessary bond to build infrastructure on lots it owned, and then such lots could be sold to satisfy investors. e. Pressman told Art and other investors about a pending lawsuit, Plush Lounge Las Vegas LLC v. Lalji, et al, Case No: CVO8-8394 in the US District Court for the Central District of California, Western Division, which he claims will result in a multimillion dollar recovery, perhaps $100,000,000.00 for Plush Lounge. Pressman is not the owner of Plush Lounge, he was the contracted manager of the business. He has stated he expects to recover millions and will use the proceeds to pay investors. f. Pressman sold his residence during Summer, 2010 for approximately $7,000,000.00 He promised to use the proceeds to pay investors beginning around June 26, 2010. No payments have been made." Plaintiffs do not specifically allege that I made any of the identified statements or representations to them. To the extent that Paragraph 111 attributes these statements to me, I deny that I made any of the alleged statements with the knowledge that they were false or

Case: 1:15-cv-03049 Document #: 114-9 Filed: 08/05/15 Page 7 of 11 PageID #:2196

misleading. Further, I deny that I ever acted with the intent to prevent or delay the Huerths from taking legal action.

f. Paragraph 143(d) alleges that I "repeatedly misled the Huerths about EPD's ability to repay loans, to pay interest, or to fund investments, about the safety of the investments, and about the status of Pressman investments which were held out as assets that would be used to secure or pay EPD investors." This allegation is false. I never knowingly made false or misleading statement to the Huerths about EPD's financial abilities or investments of Pressman. All information I communicated to the Huerths on these matters was told to me by Pressman and I believed that it was true and accurate at the time I shared it with the Huerths.

g. Paragraph 143(e) alleges that I "employed schemes and artifices to delay or prevent the Huerths from taking legal action against them or EPD, by describing various circumstances which would allow EPD to re-pay the Huerths without legal action, or creating situations where the Huerths would not complain of the Defendants for fear of creating additional tax liabilities to the IRS." This allegation is false. I never acted with the intent to deceive, delay or prevent the Huerths from taking legal action against EPD or anyone else, and I never designed or participated in any plan to create that result. Further, I never knowingly participated in any communication to the Huerths that falsely stated or implied that the Huerths would incur additional tax liabilities if they complained of the defendants.

h. Paragraph 148 alleges that I "aided and abetted Pressman in carrying out this fraud on the investors by, after the initial investment, holding themselves out as

Case: 1:15-cv-03649 Document #: 114-9 Filed: 08/05/15 Page 8 of 11 PageID #:2197

having information about the financial condition of EPD and the likelihood of future payments to investors, and communicating such information to the Huerths and other investors." These allegations are false. I never communicated any information to the Huerths which I believed was false or misleading, and I never intended to aid fraud or any other misconduct by Pressman or anyone else. Plaintiffs do not specifically allege that I made any of the identified statements or representations to them. To the extent that Paragraph 111 attributes these statements to me, I deny that I made any of the alleged statements with the knowledge that they were false or misleading. Any information I gave the Huerths came directly from Mr. Pressman. I only communicated information which Mr. Pressman told me about a credit line. This information all came from Mr. Pressman. I deny that I acted with the intent to prevent or delay the Huerths from taking legal action.

i. Paragraph 143(a) alleges that I was "employed by or associated with an enterprise, EPD, which engaged in interstate commerce and conducted its affairs through a pattern of racketeering activity designed to prevent their current investors from liquidating their demand loan instruments through, inter alia, the use of fraudulent tax returns and fraudulent reports of leased and purchased assets such that investors would be unwilling to transfer their investments from the control of the Defendants." This paragraph is false. I did not knowingly participate in any fraudulent activity or engage in any racketeering activity, knowingly file any false tax return, make fraudulent reports of leased and

Case: 1:15-cv-03649 Document #: 114-9 Filed: 08/05/15 Page 9 of 11 PageID #:2198

purchased assets, or take any actions with the intent to deter investors from transferring their investments.

j. Paragraph 143(d) alleges that I "repeatedly misled the Huerths about EPD's ability to repay loans, to pay interest, or to fund investments, about the safety of the investments, and about the status of Pressman investments which were held out as assets that would be used to secure or pay EPD investors." This allegation is false. I never knowingly made any false or misleading statement to the Huerths about EPD's financial abilities or investments of Pressman. All information I communicated to the Huerths, including in emails sent in response to their inquiries (attached to the complaint in this case) where I specifically noted that the only information I had was relayed to me by Mr. Pressman, that I had no firsthand knowledge of the facts on these matters unless I was told to me by Pressman, were things that I believed to be true and accurate at the time I shared it with the Huerths. At various times Mr. Huerth acknowledged that he knew that only Mr. Pressman had the answers to his questions, but Mr. Huerth asked me if would obtain the information from Mr. Pressman.

k. Paragraph 143(e) alleges that I "employed schemes and artifices to delay or prevent the Huerths from taking legal action against them or EPD, by describing various circumstances which would allow EPD to re-pay the Huerths without legal action, or creating situations where the Huerths would not complain of the Defendants for fear of creating additional tax liabilities to the IRS." This allegation is false. I never acted with the intent to deceive, delay or prevent the Huerths from taking legal action against EPD or anyone else, and I never

Case: 1:10-cv-03649 Document #: 114-5 Filed: 08/05/13 Page 10 of 11 PageID #:2159

designed or participated in any plan to create that result. I did not solicit or advise the Huerths to invest in EPD nor did I have any control over any funds they invested in to EPD. In fact, I was not employed by EPD at the time the Heurths invested. I never called or emailed Mr. Huerth unless I was responding to his incessant calls or emails. Further, I never knowingly participated in any communication to the Huerths falsely stated or implied that the Huerths would incur additional tax liabilities if they complained of the defendants since I had no knowledge of Huerths tax status or issues, if any.

l. Paragraph 145 alleges that I "sent or caused to be sent periodic written financial reports to the Huerths, which, on information and belief, did not reflect the true status of the invested money, and thereby lulled Art and Joan into a false sense of security that their investments were sound and did not need to be moved." This paragraph is false to the extent it alleges that I knowingly created or sent inaccurate information to the Huerths. All of the information that I provided to the Huerths, including the information contained in financial reports, came from Pressman and was true and accurate to the best of my knowledge at the time I provided it.

m. Paragraph 148 alleges that I "aided and abetted Pressman in carrying out this fraud on the investors by, after the initial investment, holding themselves out as having information about the financial condition of EPD and the likelihood of future payments to investors, and communicating such information to the Huerths and other investors." These allegations are false. I never communicated any information to the Huerths which I believed was false or misleading, and I never

intended to aid fraud or any other misconduct by Pressman or anyone else. I only communicated information that I obtained from Pressman at Mr. Huerth's request.

This concludes my declaration.

KATHARINE WERNER

Dated: 8/2/13

# EXHIBIT JJ

# United States District Court
## Northern District of Illinois
### Western Division

Arthur Huerth and Joan Huerth, individually and d/b/a Huerth Financial Leasing, AJ Partners, and Leslie Huerth

v.

Theodore Jonavic, Ruben Moreno, Katherine Werner, Ice Skating Enterprises, Inc., S.C. Club, L.P., and Thom Ferro

**JUDGMENT IN A CIVIL CASE**

Case Number: 10 C 5049

Judge: Philip G. Reinhard

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED: (1) that Defendants Moreno, Werner, and Ferro be held liable for compensatory damages in the amounts of $924,000.00 as to the Huerths, and $10,000.00 as to Leslie Huerth, with the amounts being included within, and not cumulative of, the judgment as to the other defaulted defendants; (2) that Defendant Jonavic be held liable for trebled damages under RICO in the amounts of $2,772,000.00 ($924,000.00 x 3) as to the Huerths and $30,000.00 ($10,000.00 x 3) as to Leslie Huerth; (3) that Defendant S.C. Club, L.P. be held liable for $9,194.50; (4) that Defendant Ice Skating Enterprises, Inc. be held liable for $12,025.00; and (5) that all of the defaulted defendants be held jointly and severally liable for Plaintiffs' attorneys fees and costs in the amount of $66,432.32.

Thomas G. Bruton, Clerk of Court

Date: 12/12/2012

/s/ Jennifer Titak, Deputy Clerk

# EXHIBIT KK

EXHIBIT for I.D. MITCH A. GENSER, CSR#4239, NP Date: Witness: KIRKLAND

EXHIBIT for I.D. MITCH A. GENSER, CSR#4239, NP

John C. Kirkland, State Bar No. 149453
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa St., Suite 3900
Los Angeles, California 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Defendants
EPD INVESTMENT CO., LLC and JERROLD PRESSMAN

FILED
LOS ANGELES SUPERIOR COURT
JUN 23 2010
JOHN A. CLARKE, CLERK
BY KRISTEL SANDOVAL, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| MICHELLE HANSEL,<br><br>Plaintiff,<br><br>v.<br><br>EPD INVESTMENT CO., LLC, a California limited liability company; JERROLD PRESSMAN, an individual; and DOES 1-15,<br><br>Defendants. | Case No. SC 106151<br><br>The Hon. Hon Joseph S. Biderman<br>Dept. WEK<br><br>**DECLARATION OF RUBEN MORENO IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT**<br><br>Date: June 28, 2010<br>Time: 8:30 am<br>Dept.: WEK |

I, Ruben Moreno, declare as follows:

1. I am the Controller for EPD Investment Co., LLC. I have personal knowledge of the facts as set forth below.

2. EPD Investment Co. is a California limited liability company, with its principal executive offices in Santa Monica, California. I have served as the company's Controller since its inception in 2003. As Controller, I have been custodian of books, records, and files related to EPD Investment Co.'s transactions on behalf of Michelle Hansel, who has filed this lawsuit against EPD Investment Co.

3. The declaration of Ms. Hansel dated March 22, 2010, and the additional declaration from her dated June 3, 2010, are more than misleading. They are simply wrong. Her claims are directly contrary to the ongoing conversations I have personally had with her over the years. I can

84

only assume that these declarations must have been written by her attorney and signed without reading them closely, because they do not accurately represent the truth of what really occurred.

4. Paragraph 1 of Ms. Hansel's June 3 declaration does belie the truth of what actually happened, which is that she "*invested*" through the "*investment* company EPD *Investment* Co.", because she believed it "would be a good long-term *investment*." The Financial Dictionary defines in investment as "an asset or item that is *purchased* with the *hope* that it will generate income or appreciate in the future." The distinguishing feature of an investment, as opposed to a loan, is that an investment is characterized by a "risk of loss." That is, as alluded to in the first paragraph of Ms. Hansel's second declaration, exactly what happened here.

5. In around December of 2005, Ms. Hansel temporarily gave $350,000.00 to EPD Investment Co. and requested that the company facilitate the transfer of her funds to third parties for long-term investment in leases. Because of year-end tax issues, Ms. Hansel wanted to transfer the funds immediately for her own financial planning reasons, so I created a "*temporary* promissory note" on behalf of EPD Investment Co., by adding express language to a standard form promissory note that the note was only temporary for these purposes. This was a unique situation, and I had to generate a special promissory note that was intended only to be a temporary document to acknowledge EPD Investment Co.'s receipt of funds for transfer to third parties for an investment in an equipment lease at Ms. Hansel's request.

6. This note was never intended to represent a "loan" to EPD Investment Co. that would have to be paid back to Ms. Hansel even after the funds were already transferred to the equipment lessors, and she knows it because I personally informed her of this in our conversations. That would mean that EPD Investment Co. would be paying back the same money twice, once to the lessors for the investment, and then again to Ms. Hansel. In other words, the temporary note has already been satisfied in full. There is no more money to pay her back, except, ultimately, through the long-term investment she chose to make.

7. I sent Ms. Hansel a letter in which I reiterated the temporary nature of the promissory note until such time as the transfer to third parties could be accomplished. A copy of this letter is attached to my declaration as Exhibit "A." In addition, I specifically informed Ms. Hansel on several

occasions that this was a temporary note and was not intended to create any long-term obligation for EPD Investment Co. with respect to the deposited funds since EPD Investment Co. would not have control over the funds once they were invested with third parties.

8. Ms. Hansel then claimed an investment deduction for the $350,000.00 on her Form 1040 tax return for 2005. A copy of her tax return (with personal information whited out) is attached to my declaration as Exhibit "B." It show a $350,000.00 claimed deduction from her adjusted gross income on line 36, along with the notation PPR.

9. IRS Publication 525, Business and Investment Income, Rents from Personal Property, states: "If you rent personal property for profit, include your rental expenses in the total amount you enter on Form 1040, line 36. Also, enter the amount and 'PPR' on the dotted line next to line 36. If you do not rent personal property for profit, your deductions are limited and you cannot report a loss to offset other income." **This is exactly what Ms. Hansel did, proving that the $350,000.00 was invested by her in an equipment lease.**

10. As explained, for example, in the official IRS instructions to Form 6198, the Tax Code specifically requires that the entire amount must be "at-risk" for any deduction to be taken. If the $350,000.00 were still a loan subject to repayment obligation by EPD Investment Co., then Ms. Hansel could not legally have taken any deduction. Since she did, that again proves that it was an investment at-risk of loss, and not a loan that still had to be repaid.

11. It must also be noted that EPD Investment Co. acted merely a conduit, EPD Investment Co. made no profit on the transaction and did not benefit financially in any way from her temporary deposit of the funds. It was really just a personal favor because Ms. Hansel is a family friend of EPD Investment Co.'s chairman. Now, Ms. Hansel basically wants to have EPD Investment Co. guarantee her entire investment. It is a true case of "no good deed goes unpunished."

12. Ms. Hansel was well aware that the promissory note was never intended to represent a permanent repayment obligation by EPD Investment Co., which is exactly why it says "temporary" on it. I also personally informed Ms. Hansel on numerous occasions that the note was not intended to represent a permanent "loan" to EPD Investment Co. by Ms. Hansel for any purpose, or create any

long-term obligation by EPD Investment Co. to make payments to her on an ongoing basis, no matter what happened with her investment.

13. Between May 2006 and September 2006, I generated three more promissory notes acknowledging receipt of funds from Ms. Hansel until such time as they were transferred to third parties for long-term investment. I handed some of those notes to her personally. Like the initial promissory note, these notes were temporary documents—and were clearly labeled as such—designed as place holders and temporary protection for Ms. Hansel's funds only until the third parties received and had control of the funds, that is, until the investments had been made as she requested.

14. Like the initial promissory note, these notes were intended to document only a temporary arrangement with EPD Investment Co. They were never intended to create any obligation for EPD Investment Co. to "pay back" the amounts she deposited after they had been given to third parties for long-term investment on her behalf.

15. Again, Ms. Hansel's declaration stating that these notes were intended to be "addenda" to some kind of loan to EPD Investment Co. is completely false. She knew that these were intended to document her temporary deposit of funds with EPD Investment Co. until such time as they could be transferred to third parties for investments in leases.

16. Moreover, Hansel specifically requested that EPD Investment Co. transfer her funds to third party equipment leases that she chose because they would provide her monthly payments over a long period of time, which she said she believed would be a good long-term investment.

17. For the initial three years of the investments, EPD Investment Co. received monthly payments from the lessors and sent them to Ms. Hansel at her request. Ms. Hansel's claim that EPD Investment Co. was generating monthly loan payments to her is simply false. She completely understood that EPD Investment Co. was just acting as a facilitator, receiving these payments from the equipment lessors and sending them on to Ms. Hansel. EPD Investment Co. has forwarded approximately $244,532.00 in payments from the lessors to Ms. Hansel.

18. Then, in 2009, due to the economy, most of the lessors stopped making monthly payments to Ms. Hansel. I spoke with Ms. Hansel several times by phone and in person and told her that she would not be receiving any payments until the lessors restarted their payments on the leases.

EPD Investment Co. had no involvement with or control over the cessation of payments by the third-parties. It was merely the bearer of bad news.

19. Ms. Hansel's claim that EPD Investment Co. stopped making payments to her of funds it generated is untrue. She knew that the monthly payments were coming from the third party leases. She also knew, because I told her, that it was these third-party payments that had stopped, not any payments generated by EPD Investment Co. The equipment lessors were in default – EPD was not.

20. I was present when Ms. Hansel asked Jerrold Pressman if EPD Investment Co. could hold her funds until they could be put into third party investments, to help her out with her tax problems. I specifically remember Ms. Hansel asking Mr. Pressman to allow that her funds could be put in EPD Investment Co. and facilitate, as a conduit only, their transfer to the equipment lessors. Seeing the "temporary" terminology on the face of the notes, Ms. Hansel specifically asked what that language meant. I heard Mr. Pressman explain to Ms. Hansel that the promissory notes were temporary notes designed solely to acknowledge receipt of her funds by EPD Investment Co. until such time as the funds were transferred to the lessors.

21. One of the notes has language containing an alleged "personal guaranty" by Mr. Pressman. I inadvertently and mistakenly included that language in the note, and, consequently, Mr. Pressman never signed or otherwise endorsed the guaranty.

22. Nothing in any of the temporary notes was intended to create an obligation for EPD Investment Co. to be obligated to make payments over the long-term after they had been transferred to lease investmentss. Nor was there any language in any of the notes requiring Mr. Pressman to personally guaranty the performance and income payments on the third party leases throughout the life of the investments. EPD Investment Co. could not prevent the cessation of payments, and did not intend to guaranty payments for the investment Ms. Hansel chose to make.

23. In addition, I participated in a conversation where Mr. Pressman, on behalf of EPD Investment Co., specifically informed Ms. Hansel that these were long-term leases that had restrictions on the withdrawal of funds. Mr. Pressman explained the restrictions to Ms. Hansel, and she acknowledged her understanding and acceptance of these restrictions in exchange for the financial benefits she would and did receive via the investment.

24. It should be obvious that neither Mr. Pressman nor EPD Investment Co. would have any control over the return of her funds, which are still in the possession of third parties. To my knowledge, neither Mr. Pressman nor EPD Investment Co. received any kind of financial benefit in connection with the cessation of payments and refusal to return her investment in full on demand.

25. Ms. Hansel's declaration in which she states that Mr. Pressman specifically told her that he would "personally guarantee" all of the purported "loans" she allegedly made to EPD Investment Co. is untrue. Again, her entire declaration is false and misleading.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 22, 2010.

Ruben Moreno

**EPD INVESTMENT COMPANY, LLC**

January 11, 2006

Michelle Hansel
311 Ocean Avenue, #305
Santa Monica, CA 90402

Re: EPD Investment Company, LLC Account No. 060117-MH

Dear Michelle:

Enclosed is a temporary Note to cover your 12/25/05 deposit until we are able to formalize the paperwork on the lease you discussed with Jerry.

If you have any questions, please do not hesitate to call.

Sincerely yours,

EPD INVESTMENT COMPANY, LLC

Cherri Bell
Executive Assistant

/cb

Enclosure

520 BROADWAY, SUITE 660 • SANTA MONICA, CA 90401 • TEL: (310) 451-4532 • FAX: (310) 394-6404

# EPD INVESTMENT COMPANY, LLC

October 5, 2006

Michelle Hansel
311 Ocean Avenue, #305
Santa Monica, CA 90402

Re: <u>EPD Investment Company, LLC Account No. 060928-MH</u>

Dear Michelle:

Enclosed is a temporary Note to cover your deposit until we are able to formalize the paperwork on the lease you discussed with Jerry.

If you have any questions, please do not hesitate to call.

Sincerely yours,

EPD INVESTMENT COMPANY, LLC

Cherri Bell
Executive Assistant

/cb

Enclosure

[illegible] BROADWAY, SUITE 830 • SANTA MONICA, CA 90401 • TEL: (310) [illegible] • FAX: (310) [illegible]

Department of the Treasury — Internal Revenue Service

# Form 1040 U.S. Individual Income Tax Return 2005 (99)

IRS Use Only — Do not write or staple in this space

For the year Jan 1 - Dec 31, 2005, or other tax year beginning , 2005, ending , 20 [redacted]

**Label** (See instructions.)

| Your first name | MI | Last name | Your social security number |
|---|---|---|---|
| MICHELLE | | HANSEL | |
| If a joint return, spouse's first name | MI | Last name | Spouse's social security number |
| | | | |

Use the IRS label. Otherwise, please print or type.

Home address (number and street). If you have a P.O. box, see instructions. Apartment no.
310 OCEAN, UNIT 305

You must enter your social security number(s) above.

City, town or post office. If you have a foreign address, see instructions. State ZIP code
SANTA MONICA CA 90402

Checking a box below will not change your tax or refund.

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund? (see instructions) ▶ [X] You [ ] Spouse

**Filing Status**

1 [ ] Single
2 [ ] Married filing jointly (even if only one had income)
3 [ ] Married filing separately. Enter spouse's SSN above & full name here ▶
4 [X] Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here ▶
5 [ ] Qualifying widow(er) with dependent child (see instructions)

Check only one box.

**Exemptions**

6a [X] Yourself. If someone can claim you as a dependent, do not check box 6a
b [ ] Spouse

Boxes checked on 6a and 6b: 1

c Dependents:

| (1) First name Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see instrs) |
|---|---|---|---|
| [redacted] | | Daughter | [X] |
| | | | [ ] |
| | | | [ ] |
| | | | [ ] |

If more than four dependents, see instructions.

No. of children on 6c who: • lived with you: 1
• did not live with you due to divorce or separation (see instrs):
Dependents on 6c not entered above:
Add numbers on lines above ▶ 2

d Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| Line | Description | Amount |
|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | |
| 8a | Taxable interest. Attach Schedule B if required | |
| b | Tax-exempt interest. Do not include on line 8a — 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | |
| b | Qualified divs (see instrs) — 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see instructions) | |
| 11 | Alimony received | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | |
| 13 | Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here ▶ [ ] | |
| 14 | Other gains or (losses). Attach Form 4797 | |
| 15a | IRA distributions — 15a — b Taxable amount (see instrs) 15b | |
| 16a | Pensions and annuities — 16a — b Taxable amount (see instrs) 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | |
| 18 | Farm income or (loss). Attach Schedule F | |
| 19 | Unemployment compensation | |
| 20a | Social security benefits — 20a — b Taxable amount (see instrs) 20b | |
| 21 | Other income OTHER INCOME FROM FORM 1099-MISC | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your total income ▶ | |

**Adjusted Gross Income**

| Line | Description | Amount |
|---|---|---|
| 23 | Educator expenses (see instructions) | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | |
| 25 | Health savings account deduction. Attach Form 8889 | |
| 26 | Moving expenses. Attach Form 3903 | |
| 27 | One-half of self-employment tax. Attach Schedule SE | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | |
| 29 | Self-employed health insurance deduction (see instructions) | |
| 30 | Penalty on early withdrawal of savings | |
| 31a | Alimony paid b Recipient's SSN ▶ | |
| 32 | IRA deduction (see instructions) | |
| 33 | Student loan interest deduction (see instructions) | |
| 34 | Tuition and fees deduction (see instructions) | |
| 35 | Domestic production activities deduction. Attach Form 8903 | |
| 36 | Add lines 23 - 31a and 32 - 35 .BPR. 350,000 | 350,000. |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income ▶ | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 505 | 11:53 | 401 | 1/19/11 | | | | AF/ 018 RES/035/ |
| | | | 1/19/11 | 13:44 | 13:44 | | pdf |

Cntrl#

| | | | |
|---|---|---|---|
| 2281 LUCE FORWARD | ASPRSCH | 4831322 | 166 |
| Lisa Underkoffle 37998.1 | 1/ 1 | 1/19/11 | |

pu info:

| | | |
|---|---|---|
| LASC-SANTA MONICA<br>1725 MAIN STREET<br>SANTA MONICA CA 90401<br>310 260-3766 Ext:3626 Zns: 28/5<br>8:30AM-4:30PM Rm:DEPTS A-E,G-Q | OBTAIN REG COPIES<br>OF OPPOEITION AND<br>DECLARATION FILED<br>JUNE 23,2010<br>IF POSSIBLE TODAY!! | 1/19/11<br><br>** RE-PRINT ** |

del info:

| | | | |
|---|---|---|---|
| LUCE FORWARD<br>601 S. FIGUEROA STREET<br>LOS ANGELES CA 90017<br>213 892-4992 Zns: 1/1<br>Rm:3900 | SC106151<br>HANSEL V EPD<br>JUNE 23.2010 OPPOSI<br>ION,DECLARATION OF R<br><br>1/19/11 11:37 | 1/19/11<br><br><br>To:11:37<br><br>Yes | <br>401<br><br><br><br>??? |

# EXHIBIT LL

Case 2:10-bk-62208-ER Doc 23 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Main Document Page 1 of 3

John C. Kirkland, State Bar No. 149453
John Moe, State Bar No. 66893
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Alleged Debtor
EPD INVESTMENT CO., LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>EPD INVESTMENT CO., LLC,<br><br>Alleged Debtor.<br><br>EIN No. xxx-0994 | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br>*Assigned to the Hon. Ernest M. Robles*<br><br>**ALLEGED DEBTOR'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OBJECTION TO PETITIONING CREDITORS' MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE**<br><br>Date: January 20, 2011<br>Time: 11:00 a.m.<br>Crtrm.: 1568<br>255 East Temple Street<br>Los Angeles, CA 90012 |

Alleged Debtor EPD Investment Co., LLC, a California limited liability company ("EPD"), herby requests, pursuant to Federal Rule of Evidence 201, that the Court take judicial notice of the court filings referenced herein as Exhibits 1 through 20, in support of EPD's Objection To Petitioning Creditors Motion For Appointment Of Interim Chapter 7 Trustee.

| Exhibit | Document | File Date |
|---|---|---|
| | **Jenny Lee Bridal LLC v. EPD Investment Co., LLC** | |
| 1 | Docket for Case No. BC427112 | |
| 2 | Complaint | 12/1/09 |
| 3 | Defendants' Motion To Set Aside Default and Default Judgments | 9/15/10 |
| 4 | General Denial | 11/22/10 |
| 5 | Entry of Order | 11/1/10 |
| | **John Dittmar v. Jerrold S. Pressman, et al** | |
| 6 | Docket for Case No. BC446372 | |
| 7 | Complaint filed by John Dittmar | 10/1/10 |
| 8 | General Denial | 11/22/10 |
| | **Huerth et al. v. Pressman, et al** | |
| 9 | Docket for Case No 1:10-cv-05049 | |
| 10 | Complaint | 8/11/10 |
| 11 | Defendants' Brief In Support Of Their Motion To Dismiss Under Rule 12(b) | 10/6/10 |
| 12 | Defendants' Motion To Dismiss For Lack of Jurisdiction | 10/15/10 |
| 13 | Minutes | 10/29/10 |
| | **Michelle Hansel v. EPD Investment Co., LLC, et al** | |
| 14 | Docket for Case No. SC106151 | |
| 15 | Complaint | 12/21/09 |
| 16 | Memorandum of Points And Authorities In Opposition To Plaintiff's Application For Right To Attached Order and Order For Issuance Of Attachment | 5/11/10 |
| 17 | General Denial | 3/24/10 |
| 18 | Declaration of Rubin Moreno In Support of Opposition To Plaintiff's Application For Right To Attached Order and Order For Issuance Of Attachment | 6/23/10 |

**Pressman, et al v. Hansel**

| | | |
|---|---|---|
| 19 | Docket for Case No. BC449287 | |
| 20 | Complaint | 11/10/10 |

DATED: January 19, 2011

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: /s/ John C. Kirkland
John C. Kirkland
Attorneys for Alleged Debtor
EPD INVESTMENT CO., LLC

# EXHIBIT 1

# Case Summary

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Case Number:** BC427112
JENNY LEE BRIDAL LLC ET AL VS EPD INVESTMENT COMPANY LLC ET1

**Filing Date:** 12/01/2009
**Case Type:** Contractual Fraud (General Jurisdiction)
**Status:** Pending

---

### Future Hearings

**03/10/2011** at 09:00 am in department 16 at 111 North Hill Street, Los Angeles, CA 90012
MOTION - ATTORNEY FEES

**03/11/2011** at 09:00 am in department 16 at 111 North Hill Street, Los Angeles, CA 90012
Final Status Conference (2) POST MEDIATION STATUS CONF.)

**03/22/2011** at 09:30 am in department 16 at 111 North Hill Street, Los Angeles, CA 90012
Jury Trial

---

Documents Filed | Proceeding Information

### Parties

BROADWAY ENTERTAINMENT MARKETING INC. - Defendant/Respondent

DOES 1 THROUGH 10 - Defendant/Respondent

EPD INVESTMENT COMPANY LLC - Defendant/Respondent

JENNY LEE BRIDAL LLC - Plaintiff/Petitioner

JUNG HAROLD ESQ. - Attorney for Plaintiff/Petitioner

LEE JENNY J. - Plaintiff/Petitioner

MATTHEW B. GRUENBERG ESQ. - Attorney for Deft/Respnt

PRESSMAN JERROLD S. - Defendant/Respondent

Case Information | Party Information | Proceeding Information

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Documents Filed** (Filing dates listed in descending order)

**11/23/2010** Motion (FOR ATTY FEES AND COSTS )
Filed by Attorney for Plaintiff/Petitioner

**11/22/2010** General Denial
Filed by Attorney for Defendant/Respondent

**11/22/2010** Ex-parte Request for Order
Filed by Attorney for Pltf/Petnr

**09/15/2010** Motion (TO SET ASIDE DEFAULTS & DEFAULT JUDGMENTS. )
Filed by Attorney for Defendant/Respondent

**08/03/2010** Order (ORDER ON PLAINTIFF'S REQUEST TO SET ASIDE DISMISSAL )
Filed by Court

**07/22/2010** Ex-parte Request for Order
Filed by Attorney for Pltf/Petnr

**05/11/2010** Writ issued (Los Angeles county )
Filed by Clerk

**05/11/2010** Abstract of Judgment
Filed by Attorney for Creditor

**04/01/2010** Miscellaneous-Other (SUMMARY OF CASE UNDER CRC 3.1800 )
Filed by Attorney for Pltf/Petnr

**04/01/2010** Judgment
Filed by Court

**04/01/2010** Request to Enter Judgment
Filed by Attorney for Pltf/Petnr

**02/24/2010** Notice-Case Management Conference
Filed by Clerk

**02/11/2010** Partial Dismissal (w/o Prejudice) (DOES 1 - 10. )
Filed by Attorney for Plaintiff/Petitioner

**01/22/2010** Default Entered (AS EPD INVESTMENT COMPANY, LLC, A CALIF LIMITED LIABILITY COMPANY AS BROADWAY ENTERTAINMENT MARKETING, INC.,

A CALIF CORP AS JERROLD S. PRESSMAN )
Filed by Attorney for Pltf/Petnr

**12/21/2009** Proof of Service (DEFT BROADWAY ENTERTAINMENT MARKETING )
Filed by Attorney for Pltf/Petnr

**12/01/2009** Complaint

---

Case Information | Party Information | Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)

**01/13/2011** at 08:45 am in Department 16, Rita Miller, Presiding
Conference-Case Management (2) OSC RE FURTHER SANCTIONSAGAINST DEFENDANTS FOR FAILURE TOAPPEAR ON 12/6/10 AND 12/17/10 ANDFAILURE TO FILE CMS(CONT. FR. 01/07/11 AT REQUEST OFMR. GRUENBERG - HE IS TO GIVE NOT)) - **Trial Date Set**

**12/17/2010** at 08:45 am in Department 16, Rita Miller, Presiding
Conference-Case Management (2) OSC RE SANCTIONS AGAINST DEFTSFOR FAILURE TO APPEAR ON 12/6/10AND FAILURE TO FILE CASE MANAGE-MENT STATEMENTS) - **Matter is heard, matter continued**

**12/06/2010** at 08:45 am in Department 16, Rita Miller, Presiding
Conference-Case Management - **Matter is heard, matter continued**

**11/22/2010** at 08:30 am in Department 16, Rita Miller, Presiding
Exparte proceeding - **Motion Denied**

**11/17/2010** in Department 16, Rita Miller, Presiding
Further Proceedings - **Court makes order**

**11/01/2010** in Department 16, Rita Miller, Presiding
Further Proceedings - **Court makes order**

**09/07/2010** at 09:01 am in Department 16, Rita Miller, Presiding
Exparte proceeding (TRAILED FROM 9/1/10) - **Motion Denied**

**09/01/2010** at 08:30 am in Department 16, Rita Miller, Presiding
Exparte proceeding - **Granted**

**07/22/2010** at 08:30 am in Department 16, Rita Miller, Presiding
Exparte proceeding - **Submitted**

**04/01/2010** at 08:45 am in Department 16, Rita Miller, Presiding
Conference-Case Management (/OSC) - **Court makes order**

---

Case Information | Party Information | Documents Filed | Proceeding Information

Case 2:10-bk-62208-ER Doc 23-2 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 1 of 8

# EXHIBIT 2

RAISIN & KAVCIOGLU
Harold Jung, Bar Number 227740
16055 Ventura Boulevard, Suite 601
Encino, California 91436
Tel (818) 728-4569; Fax (818) 728-4997

Attorney for Plaintiffs

A6009
90011

**FILED**
LOS ANGELES SUPERIOR COURT
DEC 01 2009
JOHN A. CLARKE, CLERK
BY AMBER LA FLEUR-CLAYTON, DEPUTY

D14 Rita Miller

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES - CENTRAL DISTRICT

| | |
|---|---|
| JENNY LEE BRIDAL, LLC, a California limited liability company; JENNY J. LEE, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>EPD INVESTMENT COMPANY, LLC, a California limited liability company; BROADWAY ENTERTAINMENT MARKETING, INC., a California corporation; JERROLD S. PRESSMAN, an individual; Does 1 through 10,<br><br>Defendants. | Case No. BC427112<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT 1**<br>2. **BREACH OF CONTRACT 2**<br>3. **FRAUD – FALSE PROMISE** |

Plaintiffs Jenny Lee Bridal, LLC ("JLB") and Jenny J. Lee ("Lee") (collectively "Plaintiffs") for their complaint against Defendants EPD Investment Company, LLC ("EPD"), Broadway Entertainment Marketing, Inc. ("BEM"), and Jerrold S. Pressman ("Pressman") allege as follows:

1. Plaintiff Lee is, and at all times alleged herein was, an individual residing within the County of Los Angeles, State of California.

2. Plaintiff JLB is a limited liability company organized and existing under the laws of State

Case 2:10-bk-62208-ER Doc 23-2 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 3 of 8

of California.

3. Plaintiffs are informed and believes, and based thereon alleges, that at all times herein mentioned, EPD is a limited liability company, organized and existing under the laws of the state of California.

4. Plaintiffs are informed and believes, and based thereon alleges, that at all times herein mentioned, BEM is a corporation, organized and existing under the laws of the state of California.

5. Plaintiffs are informed and believe, and based thereon allege, at all times herein mentioned, Pressman is an individual residing at 705 Palisades Beach Road, Santa Monica, California. Plaintiffs are informed and believe, and based thereon allege, that Pressman, at all times herein mentioned, was the Manager of EPD and the President and/or Chairman of BEM.

6. Other persons or entities may be responsible for the damages suffered by Plaintiffs. But Plaintiffs are not currently aware of their names or their precise relationship to or their involvement in the circumstances alleged herein. Plaintiffs have therefore named these persons as DOES 1-10. If and when Plaintiffs discover their true identities or other facts which put them on notice of their right to sue these persons or entities, Plaintiffs will amend this complaint to add their names.

7. Plaintiffs are informed and believe, and based thereon allege, that at all times herein mentioned, Defendants EPD and BEM were owned, dominated and controlled by Pressman and by fictitious Defendants, Does 1 through 5, inclusive, and that there existed a unity of ownership by and between said Defendants, and each of them, and EPD and BEM. Plaintiffs are informed and believe, and based thereon allege, that Defendants so dominated and controlled EPD and BEM that they utilized EPD and BEM to suit their

Case 2:10-bk-62208-ER Doc 23-2 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 4 of 8

own individual and/or collective convenience and commingled their individual and/or other business affairs in and with the affairs of EPD and BEM. Plaintiffs are otherwise informed and believe, and based thereon allege, that the Defendants utilized EPD and BEM as their mere instrumentalities and otherwise inadequately capitalized EPD and BEM and failed to cause EPD and BEM to conduct their affairs in accord with the requisite corporate or limited liability company formalities therefore. Plaintiffs are informed and believe, and based thereon allege, Defendants so dominated and controlled EPD and BEM and otherwise operated them as mere instrumentalities to suit their own convenience such that they are the alter egos of EPD and BEM and each other, and that to adhere to the fiction of EPD and BEM as entities separate and distinct from such Defendant would result in an injustice and/or perpetrate a misrepresentation alleged in the Complaint. Plaintiffs therefore seek a decree piercing the corporate veil, if any, of EPD and BEM and declaring and decreeing that Defendant Pressman and Does 1 to 5, inclusive, are alter egos of each other and of Defendants EPD and BEM and legally responsible for the wrongs and damages herein alleged.

8. In or about January 2008, Plaintiff Lee met Pressman to discuss an investment opportunity. Pressman represented to Lee that he could generate a large return on an investment for Lee if Lee were to invest money with Pressman. Pressman also represented to Lee that he is a savvy business person with connections to many wealthy clients. Pressman stated that with Jenny's investment, Jenny could be a part of the "club" and he could refer Jenny to many of his wealthy clients. Based on Pressman's representations, Lee agreed to invest $210,000. Pressman then instructed Lee to pay the money payable to EPD and Pressman executed a written promissory note ("Note") in Lee's favor. A true and correct copy of the Note is attached as Exhibit A.

Case 2:10-bk-62208-ER Doc 23-2 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 5 of 8

FIRST CAUSE OF ACTION

[Breach of Written Contract against EPD]

9. Plaintiffs re-allege and incorporate by this reference each of the preceding paragraphs in this Complaint.

10. Under the terms of the Note, Lee was entitled to withdraw the money she invested with EPD at any time with a Thirty days notice. Despite Lee's repeated demands for withdrawal according to the terms of the Note, EPD failed to make repayments to Lee.

11. Plaintiffs have performed all covenants and conditions required on their part, under the agreement, including investing $210,000 in lawful of money of the United States to EPD.

12. Due to EPD's breach of the agreement, Plaintiffs suffered damages in excess of $210,000.

SECOND CAUSE OF ACTION

[Breach of Written Agreement against BEM and Pressman]

13. Plaintiffs re-allege and incorporate by this reference each of the preceding paragraphs in this Complaint.

14. In response to Lee's complaint to Pressman regarding EPD's default on the terms of the Note, Pressman requested Jenny to give him five months extension to secure EPD's financing for repayment. In return for the extension, Pressman agreed to produce written personal guaranty of EPD's performance under the terms of the Note, if EPD was unable to perform.

15. In reflecting the personal guaranty for the EPD, Pressman concocted a consulting agreement on behalf of BEM, another legal entity under Pressman's control, wherein Lee was to be paid $239,474.78 for consulting fee from BEM and BEM's performance was guaranteed by Pressman. Pressman explained to Lee that such arrangement was necessary

Case 2:10-bk-62208-ER Doc 23-2 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 6 of 8

for himself in order to take advantage of tax deductions. On March 2, 2009, Pressman executed the Consulting Agreement and provided to Lee. Attached is Exhibit B is true and correct copy of the Consulting Agreement.

16. In consideration for the personal guaranty, Lee and JLB granted the extension by making the due date of the payment August 15, 2009.

17. On August 15, 2009, after not being paid the money as promised by BEM and Pressman, Lee made another demand. Pressman and BEM did not comply. At no times, BEM or Pressman made any payments to Lee under the terms of the Consulting Agreement.

18. Plaintiffs have performed all covenants and conditions required on their part, under the agreement by giving Pressman and EPD an additional time for repayment.

19. Due to BEM and Pressman's breach, Lee suffered damages in the amount of $210,000.

THIRD CAUSE OF ACTION

[Fraud – False Promise against EPD BEM and Pressman]

20. Plaintiffs are informed and believe, and based thereon allege that Defendants EPD and Pressman made the following representations and/or promises to Plaintiffs, which representations and promises were made both orally and, in part, in writing;

(a) That Pressman was a savvy business person with connections to wealthy clients;

(b) That Pressman was to invest Lee and JLB's money in safe investment;

(c) That Pressman was to repay the investment plus interest to Plaintiffs upon demand;

21. Plaintiffs are informed and believe, and based thereon allege that Defendants BEM and Pressman made the following additional representations and/or promises to Plaintiffs in order to induce Plaintiffs to grant an extension of the investment, which representations and promises were made both orally and, in part, in writing;

Case 2:10-bk-62208-ER Doc 23-2 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 7 of 8

(a) That Pressman and BEM to repay Lee and JLB $239,474.78 by August 15, 2009;

(b) That Pressman and BEM to secure a loan against one of Pressman's properties to pay back to money;

(c) That Pressman was to personally guarantee the performance of EPD and BEM;

22. Plaintiffs are informed and believe, and based thereon allege, that all of the foregoing promises and/or representations made by the Defendants were false and known to be false when made and/or made in reckless disregard of the truth and/or without any intention to perform the same with the intent and for the purpose of creating a false impression in the mind of Plaintiffs.

23. All such promises, representations, and non-disclosures related to material facts sufficient to induce a reasonable person to rely thereon because Defendants held themselves out as a reputable business entities or persons whose specialty is in investment.

24. Plaintiffs, in reliance upon such promises, representations, did in fact enter into the Contracts and made a substantial investment with Defendants EPD and Pressman. .

25. As a proximate result of such misrepresentations, Plaintiffs have sustained damages in the sum of $210,000 and such other and further sums as may be established in accordance with proof. The damages are continuing.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For the principal sum of $210,000 or according to proof a trial,
2. Interest;
3. Costs of suit incurred herein;
4. Attorneys Fees;
5. For such other and further relief as the Court may deem just and proper.

Case 2:10-bk-62208-ER Doc 23-2 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 8 of 8

DATED: November 30, 2009

RAISIN & KAVCIOGLU

By: ______________________
Harold Jung

# EXHIBIT 3

Case 2:10-bk-62208-ER Doc 28-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 2 of 29

ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES
SEP 15 2010
John A. Clarke, Executive Officer/Clerk
By [signature] Deputy HUGENA LOPEZ

Matthew B. Gruenberg, State Bar No. 264210
LAW OFFICE OF MATTHEW B. GRUENBERG
942A Lincoln Blvd.
Santa Monica, California 90403
Telephone No.: 303.641.6295
Fax No.: 310.405.7605
E-Mail: mattgruenberg@gmail.com

Attorney for Defendants
EPD INVESTMENT CO., LLC,
BROADWAY ENTERTAINMENT MARKETING, INC.,
and JERROLD S. PRESSMAN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| JENNY LEE BRIDAL, LLC, a California limited liability company; JENNY J. LEE, an individual,,<br><br>Plaintiffs,<br><br>v.<br><br>EPD INVESTMENT CO., LLC, a California limited liability company; BROADWAY ENTERTAINMENT MARKETING, INC., a California corporation; JERROLD S. PRESSMAN, an individual; and DOES 1-10,<br><br>Defendants. | Case No BC427112<br><br>The Hon. Rita Miller<br>Dept. 16<br><br>**NOTICE OF MOTION AND MOTION TO SET ASIDE DEFAULTS AND DEFAULT JUDGMENTS; RECALL AND QUASH ALL WRITS OF EXECUTION; FOR RETURN OF PROPERTY; FOR LEAVE TO FILE AN ANSWER TO PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KEITH PRESSMAN; DECLARATION OF JERROLD PRESSMAN; DECLARATION OF MATTHEW B. GRUENBERG**<br><br>**[PROPOSED] ORDER AND DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT LODGED CONCURRENTLY HEREWITH]**<br><br>Date: October 7, 2010<br>Time: 8:30 am<br>Dept.: 16 |

CIT/CASE: BC427112 LEA/DEFH:
RECEIPT #: CCH477728046
DATE PAID: 09/15/10 03:26:45 PM
PAYMENT: $40.00
RECEIVED:
CHECK:
CASH: 40.00
CHANGE:
CARD:

**TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on October 7, 2010 at 8:30 a.m., in Department 16 of this Court, located at 111 North Hill Street, Los Angeles, California 90012, defendants EPD Investment

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/13/11 Entered 01/13/11 16:02:26 Desc Exhibit 2 Page 3 of 29

Co., LLC, Broadway Entertainment Marketing, Inc., and Jerrold S. Pressman will, and hereby do, move this Court for an order setting aside the defaults and default judgments, recalling and quashing all writs of execution obtained by Plaintiffs in this action, requiring Plaintiffs to return to Defendants all property obtained pursuant to writs of execution in this matter, and leave to file an answer to Plaintiffs' Complaint.

Defendants move pursuant to both the mandatory and discretionary provisions of California Code of Civil Procedure Section 473(b), as well as this Court's inherent equitable powers. The grounds on which the motion is based include Defendants' former counsel's affidavit of fault, the fact that Defendants did not receive actual notice of defaults or default judgments until May 27, 2010, and Defendants have not had a fair opportunity to present their defenses to the merits of allegations made by Plaintiffs.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the attached Declarations of Keith Pressman, Jerrold Pressman, and Matthew B. Gruenberg, all pleadings and other documents on file in this lawsuit, and upon such other and further arguments as may be presented by Defendants.

DATED: September 14, 2010

Respectfully submitted,

LAW OFFICES OF MATTHEW B. GRUENBERG

By: ______________________________

Matthew B. Gruenberg
Attorneys for Defendants

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 4 of 29

I. INTRODUCTION

This Court should set aside the defaults and default judgments against Defendants because (1) this Motion is being made within six months after entry of judgment; (2) Defendants' former counsel submits herewith an affidavit of fault pursuant to California Code of Civil Procedure Section 473(b); (3) Defendants are entitled to discretionary relief based upon their former counsel's mistake; (4) Defendants fundamental rights will be violated if not afforded the opportunity to defend the merits of Plaintiffs' allegations.

As a guiding principle, it is "well established that it is the policy of the law to bring about a trial on the merits whenever possible ...." *See Rosenthal v. Garner*, 142 Cal. App. 3d 891, 898 (1983) (directing trial court to set aside default judgment and noting that doubt should be resolved in favor of trial on merits). In this case, Defendants are entitled to mandatory relief pursuant to section 473(b) because their failure to respond to the Complaint was due to their former counsel's "mistake, inadvertence, surprise, or excusable neglect," as described in the "attorney affidavit of fault" filed with this Motion. *See Carmel, Ltd. v. Tavoussi*, 175 Cal. App. 4th 393, 399-400 (2009) (for mandatory 473(b) relief, neglect need not even be "excusable"). If for some reason the Court determines that mandatory 473(b) relief is not available to Defendants, the Court should exercise its discretion under section 473(b) to set aside the default judgments on the grounds that Defendants' former counsel's admitted errors were reasonable and excusable under the circumstances.

In addition to providing statutory relief, the Court has the inherent equitable power to set the judgments aside based on "extrinsic fraud or mistake." Fundamental fairness would not be served by allowing enforcement of the default judgments when Defendants and their former counsel honestly believed they had filed a timely Answer to the Complaint and did not learn of this "extrinsic mistake" until they received a copy of the Abstract of Judgment on or about May 27, 2010. After vacating the judgments, this Court should recall and/or quash all post-judgment writs and other documents that may have been issued for purposes of enforcing the judgments. Otherwise, its order vacating the judgments will have no practical effect. The Court should also

order Plaintiffs to return to Defendants all property obtained pursuant to writs of execution entered after judgment.

II. FACTUAL AND PROCEDURAL BACKGROUND

On or about December 2009, Defendants' former counsel received copies of the Complaint filed by the Plaintiffs. He promptly informed his clients and, after discussing the case with them, made plans to file an answer to the Complaint on behalf of all of Defendants. Later in December of 2009, before the thirty-day period in which to respond had expired, Defendants' former counsel drafted an Answer to the complaint and gave it to his legal assistant for filing. (*See* Keith Pressman Decl., Exh. "A")

To file the Answer, Defendants' former counsel's legal assistant used a courier service she had successfully used several times in the past for Superior Court filings, including other answers to complaints. In the past, the courier service had always paid the substantial initial appearance fee on behalf of the law offices at the time of filing the documents – before it had collected the funds from the law office. This facilitated the process of getting responses to the Court on time because the document could be transmitted from the law office to the courier via email and filed immediately. Based on this history, the assistant assumed that the courier service would do the same in this case -- that is, after receiving the Answer by email, file it, pay the appearance fee at the time of filing, and bill the law offices thereafter.

Unfortunately, because of some unresolved billing issues between the law office and the courier service, the courier service had decided it would not provide any services to the law offices until the outstanding issues were resolved. As a result, the Answer was never filed on its behalf.

It is unclear whether the courier service ever informed anyone at the law office that it did not file the Answer. It was the assistant's duty to follow up and obtain confirmation of the filing, including a conformed copy of the filed document, which she normally did. She failed to do so on this occasion because the entire law office, including all of the client files, was being boxed up and moved to a new location. In addition, the office's email addresses changed, and she had communicated with the courier service almost exclusively via email. It has been confirmed since then that, during the transition, many emails were lost and never received by anyone in the office.

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 8 of 29

Neither Defendants nor Defendants' counsel's office received anything else from either the Court or Plaintiffs regarding the case. They never received any notice of a status conference, and no notice of any default proceedings. Defendants' counsel knew that the parties had previously been considering settlement, and because he was distracted by the chaos of the office move and involved with numerous other urgent business matters, several months went by without his taking any action in the case.

On or about May 27, 2010, Defendants' counsel's office received an abstract of judgment in the mail that had been forwarded from the former address to the new office. At that time, it had been taking approximately 3-4 weeks for the mail to be forwarded to the new offices. The abstract of judgment was based on a default that had been entered against Defendants on January 22, 2010 and a default judgment entered on April 1, 2010. As soon as Defendants' counsel received the abstract of judgment, his legal assistant searched her files and emails for a conformed copy of the Answer they all thought had been filed. When she could not locate one, she called the courier service and an employee informed her that the company had decided, and employees were instructed, not to complete any orders from her office until certain outstanding accounting issues were resolved. Upon discovering this, Defendants' counsel immediately informed Defendants and they promptly began making plans to seek to set aside the defaults and default judgments.

Defendants at all times contended that there were legitimate disputes in this case, including meritorious defenses on their side, and always intended to fully defend themselves against Plaintiffs' claims. If the Court does not set aside the default and default judgment, they will never be able to do so even though they were denied the opportunity only because of their former counsel's errors.

On September 2, 2010, Defendants appeared *ex parte* through their undersigned counsel. Defendants sought an order setting aside the defaults and default judgments against Defendants on much the same grounds that are presented to the Court in this Motion. Defendants argued that their former counsel's mistake was the cause of their failure to respond to Plaintiffs' Complaint and that under California Code of Civil Procedure Section 473(b), Defendants are entitled to mandatory relief from the defaults. The Court cited California Code of Civil Procedure Section

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 7 of 29

473.5 and asked the parties whether Defendants had actual notice of the judgment, to which the parties disagreed.

The Court set this matter for a noticed motion on October 7, 2010 and ordered the parties to appear again on September 7, 2010 to consider whether a stay on the execution of judgments should be issued until order of the noticed motion is entered. On September 7, 2010, the Court declined to stay execution of the judgments but required Plaintiffs to preserve whatever monies they obtain when executing on the judgments.

III. APPLICABLE STANDARDS OF LAW

California Code of Civil Procedure provides that whenever an application for relief is made within six months after entry of *judgment*, is in proper form, and is accompanied by an attorney's sworn affidavit attesting his or her mistake, inadvertence, surprise or neglect, (the court shall) vacate any (1) resulting *default* entered by the clerk…or (2) resulting *default judgment*…entered against his or her client. §CCP 473(b) (emphasis and parenthesis added).

The court is empowered to relieve a party "upon such terms as may be just…from a judgment, dismissal, order or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect." §CCP 473(b). The reference to "judgment…order or other proceedings allows relief *both from default judgments and from the entry of default that preceded it.* It also includes any step taken in a case, whether by the court or by one of the parties." Weil & Brown, CAL. PRAC. GUIDE: CIV. PRO. BEFORE TRIAL 5:282 (The Rutter Group 2009) (citing *Zellerino v. Brown*(1991) 235 CA3d 1097, 1105 (emphasis added).

The purpose of relief from default in these circumstances is to alleviate the hardship on parties who lose their day in court due solely to an inexcusable failure to act on the part of their attorneys. *Id.* (citing *Zamora v. Clarborn Contracting Group, Inc.* (2002) 28 C4th 249, 257). The only limitation is that the court may deny relief if it finds the default…was not in fact caused by the attorney's mistake, inadvertence, surprise or neglect. *Id.*

//

//

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 8 of 29

## IV. ARGUMENT

### a. This Motion Is Timely Under California Code of Civil Procedure Section 473(b) Because It Is Brought Within Six Months After Entry of Judgment

California Code of Civil Procedure Section 473(b) unequivocally provides Defendants with six months from the date *Default Judgment* was entered to move the Court for relief based upon their former counsel's mistake. Again, Section 473(b) provides, in pertinent part, "the court shall, whenever an application for relief is made no more than six months after entry of *judgment*, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any…default…or default judgment… §CCP 473(b) (emphasis added).

In this case, Default Judgment was entered against Defendants on April 1, 2010. *See* Gruenberg Decl. To be timely, this Motion must be filed before September 30, 2010, which it has been. Because this Motion is timely, brought in proper form and supported by Defendants' former counsel's Affidavit of Fault, this Court should vacate the defaults and default judgments against Defendants.

### b. The Defaults And Default Judgments Should Be Vacated Pursuant to California Code of Civil Procedure Section 473(b)

A court may relieve a party from "a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." CCP §473(b). Relief from a default entered by the clerk or a resulting default judgment or dismissal is *mandatory* if a timely application for relief is accompanied by an attorney's affidavit of fault. (*Id.*) (emphasis added); *see also Orange Empire Nat'l Bank v. Kirk*, 259 Cal App 2d 347 (1968).

The accompanying Affidavit of Fault from Keith E. Pressman outlines in detail how his office's errors caused Defendants' failure to respond to Plaintiffs' Complaint. Defendants' Motion for relief is timely since it is being made within six months of the default judgments. Thus, Defendants are entitled to relief under the mandatory provisions of section 473(b). *Carmel, Ltd. v.*

09/20/10

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 9 of 29

*Tavoussi*, 175 Cal. App. 4th 393, 399-400 (2009) (473(b) relief mandated even when attorney's neglect deemed unreasonable and inexcusable).

Even without an attorney affidavit of fault, the Court may grant relief under section 473(b) on a discretionary basis. (*Id.*) Because of the policy favoring the adjudication of disputes on the merits, courts liberally construe the statute in favor of granting relief. *Zamora v. Clayborn Contracting Group, Inc.*, 28 Cal. 4th 249, 255-56 (2002). In particular, courts grant discretionary relief in cases like this one, where an attorney reasonably relies on a third person to assist him or her in fulfilling a duty to appear or respond. *See Elston v. City of Turlock*, 38 Cal.3d 227, 234 (Cal. 1985) ("Where an attorney states that he was unaware of his duty to appear or answer because his employees misplaced papers or misinformed him as to a relevant date, relief is routinely granted.").

In this case, Defendants' former counsel reasonably relied on his legal assistant to file documents on his behalf since she had done so successfully in the past. Moreover, it was reasonable for that assistant to rely on a courier service that had previously filed numerous documents for the office without any problems. It also was reasonable for the assistant to fail to get confirmation of the filing under the circumstances. She had successfully used the service numerous times in the past without issue and therefore had no reason to suspect the Answer would not be filed in this case. In addition, the entire law office moved locations and changed its email domain just a few weeks later causing the assistant to lose track of the case (and case file) in the confusion of the move. Similarly, Defendants' counsel failed to follow up with his assistant based on the firm's generally positive history with the courier service, as well as the confusion of the move and other business matters, which, at the time, appeared more urgent.

Because Defendants' failure to respond was caused by their attorney's office's errors, this is precisely the type of case for which relief under 473(b) was designed, and the Court should set aside the defaults and default judgments.

//

//

//

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 10 of 29

c. <u>This Court Should Set Aside The Default Judgments Using Its Inherent Equitable Powers Because Defendants Failed To Timely Respond To The Complaint Only Because Of Extrinsic Circumstances That Unfairly Denied Them Their Day In Court</u>

In addition to its statutory authority, this Court has the inherent equitable power to set aside a judgment on the ground of "extrinsic fraud or mistake." *Olivera v. Grace*, 19 Cal. 2d 570, 576 (1942). Extrinsic fraud is a broad concept that "tends to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing." *Estate of Sanders v. Sutton*, 40 Cal. 3d 607, 614 (1985). Similarly, courts have described extrinsic mistake as "a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." *See, e.g., Orange Empire Nat'l Bank v. Kirk*, 259 Cal App 2d 347 (1968).

Courts should exercise their inherent powers to set aside default judgments if the defendant identifies (1) a meritorious defense; (2) a satisfactory excuse for not presenting the defense in the original action; and (3) diligence in seeking to set aside the default once it was discovered. *See Rappleyea v. Campbell*, 8 Cal. 4th 975, 982 (1994) (applying formula to extrinsic mistake case); *In re Marriage of Stevenot*, 154 Cal. App 3d 1051, 1071 (1984) (applying formula to extrinsic fraud case).

All of these elements exist in this case. First, Defendants have meritorious defenses to this action. As set forth in the Answer to the Complaint accompanying this Motion, among other things, Defendants contend that in exchange for the funds Plaintiffs seek to recover from them Defendants furnished services to Plaintiffs and were paid for those services.

Second, Defendants did not defend themselves in the action because they assumed they had answered the Complaint on time and were never given notice of any subsequent proceedings. It was reasonable for Defendants to assume that no judgments would be entered against them without notice to them. Defendants would have vigorously defended their interests if the Answer had been filed as they assumed it was and/or they had been given notice of the default proceedings.

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 11 of 29

Third, Defendants acted promptly to bring this matter to the Court's attention. Defendants learned of the extrinsic circumstances only after the Abstract of Judgment was discovered in a stack of forwarded mail on approximately May 27, 2010. See Jerrold Pressman Decl. Defendants acted promptly to find new counsel and move to have the judgments set aside. *Id.* This Motion was filed a little over three months after Defendants first learned of the defaults and default judgments. Courts have deemed this a reasonable amount of time. *See Northridge Financial Corp. v. Hamblin*, 48 Cal App 3d 819 (1975). Accordingly, the Court should use its equitable powers to set aside the default judgments.

d. <u>All Writs Of Execution And Other Documents Relating To Enforcement Of The Default Judgments Should Be Recalled And Quashed</u>

In order to award complete relief, this Court also should issue an order recalling and quashing all writs of execution and other enforcement documents issued as a result of the default judgments. It is well-settled that once a judgment is vacated or set aside, writs of execution and other such documents based on that judgment are no longer effective. *See Stegge v. Wilkerson*, 189 Cal. App. 2d 1, 5 (1961). In *Stegge*, the defendant was served with a complaint seeking money damages. *Id.* at 2-3. Rather than responding to the complaint, the defendant contacted the plaintiff to negotiate a settlement. *Id.* at 3. While negotiations between the parties were ongoing, plaintiff's counsel obtained a default judgment against the defendant and had writs of execution issued to satisfy the amount sought in the complaint. *Id.* Upon motion by the defendant, the Court ordered that the default judgments be set aside and further ordered that the writs of execution be recalled and quashed. *Id.* The court of appeal affirmed both orders finding that setting aside the default judgment was proper and holding that, under California law, "[a] judgment, when vacated [or set aside], cannot be effective for any purpose." *Id.* at 5.

Good cause exists for a similar order in this case. At the parties' September 7, 2010 hearing on whether to stay execution of the judgments pending resolution of this Motion, Plaintiffs argued vehemently that they intended to execute on the judgments. Without an order from the Court recalling and quashing all writs of execution and ordering Plaintiff's to withdraw any and all

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 12 of 29

levies they have made upon Defendants' property, Defendants would suffer severe and irreparable harm.

Simply put, if this Motion is not granted, Defendants will suffer the inequity of having judgments entered against each of them without prior notice, as well as the injustice of being deprived of any fair hearing on the merits of Plaintiffs' claims against them. Pursuant to the appropriate statute and/or the Court's inherent equitable powers, Defendants request that the Court restrain Plaintiffs from proceeding on the enforcement of any writs of execution pending further order of this Court.

e. <u>The Court Should Order Plaintiffs To Return All Property of Defendants Obtained Pursuant to Writs of Execution Entered After Judgments and Grant Defendants Leave to File Their Answer to Plaintiffs' Complaint</u>

In conjunction with the foregoing relief requested, Defendants respectfully further request that the Court order Plaintiffs to return to Defendants all property obtained pursuant to writs of execution entered after the default judgments in this matter and allow Defendants to file their Answer to Plaintiffs' Complaint.

## V. CONCLUSION

For the foregoing reasons, good cause having been demonstrated and the applicable procedural requirements having been met, Defendants respectfully request that the Court grant this Motion in its entirety.

DATED: September 14, 2010

Respectfully submitted:

Matthew B. Gruenberg,
Attorney for Defendants EPD INVESTMENT CO., LLC, BROADWAY ENTERTAINMENT MARKETING, INC., and JERROLD S. PRESSMAN

09/29/10

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 13 of 29

**PROOF OF SERVICE**

I am employed in the **County of Los Angeles, State of California**. I am over the age of 18 and not a party to this action; my current business address is: Elite Attorney Service 1800 S. Robertson Blvd #110 Los Angeles CA. 90035

On **September 15, 2010,** I served the foregoing document(s) described as:

**Notice Of Motion And Motion To Set Aside Defaults And Default Judgments; Recall And Quash All Writs Of Execution; For Return of Property; For Leave To File An Answer To Plaintiffs' Complaint; Memorandum of Points and Authorities; Declaration of Keith Pressman; Declaration of Jerrold Pressman; Declaration of Matthew B. Gruenberg**

on the interested parties in this action as follows:

___ BY ELECTRONIC SERVICE was accomplished through the Notice of Electronic Filing for parties and counsel who are registered ECF Users.

All other interested parties in this action were served as follows:

X BY THE FOLLOWING MEANS:

I placed an original enclosed in sealed envelope(s) addressed as follows:

___ BY MAIL

___ I placed the envelope(s) with postage thereon fully prepaid in the United States mail, at **Los Angeles, California**.

___ I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service; the firm deposits the collected correspondence with the United States Postal Service that same day, in the ordinary course of business, with postage thereon fully prepaid, at **Los Angeles, California**. I placed the envelope(s) for collection and mailing on the above date following ordinary business practices.

___ BY E-MAIL

___ I served the foregoing document via e-mail to the addressees above at the e-mail addresses listed therein.

___ BY FACSIMILE

___ I transmitted the document(s) by facsimile transmission from a facsimile transmission machine, at **Los Angeles, California**, with the telephone number, **310.405.7605,** to Click and Type Name whose facsimile transmission telephone number is Click and Type Number .

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 14 of 29

___ I am readily familiar with the firm's practice for delivery by facsimile transmission: the firm transmits the document(s) from a facsimile transmission machine to the person to be served. I placed the document(s) in the place designated by the firm, at **Los Angeles, California**, for facsimile transmission to Click and Type Name whose facsimile transmission telephone number is Click and Type Number on the above date following ordinary business practices. The document(s) was transmitted from a facsimile transmission machine with the telephone number of **310.405.7605**.

The facsimile transmission was reported as complete without error by a transmission report, issued by the facsimile transmission machine upon which the transmission was made, immediately following the transmission.

X BY HAND DELIVERY. I delivered the envelope(s) **by hand** to addressee(s) at

**Harold Jung, Esq.**
**RAISIN & KAVCIOGLU**
**16055 Ventura Boulevard # 830**
**Encino, CA 91436-2610**

___ BY EXPRESS MAIL (**Via United States Postal Service**)

___ I deposited the envelope(s) in a facility regularly maintained by the United States Postal Service for receipt of Express Mail, with Express postage fully prepaid.

___ I am readily familiar with the firm's practice for collection and processing of correspondence for Express Mail; the firm deposits the collected correspondence with a facility regularly maintained by the United States Postal Service for receipt of Express Mail that same day, in the ordinary course of business, with Express Mail postage thereon fully prepaid, at **Los Angeles, California**. I placed the envelope(s) for collection and Express Mailing on the above date following ordinary business practices.

___ BY EXPRESS SERVICE CARRIER (**Via Overnight Courier Service**)

___ I placed the envelope(s) in a box or other facility regularly maintained by Click and Type Name of Courier , or delivered the document(s) to a courier or driver authorized by the express service carrier to receive document(s), in an envelope(s) or package designated by the express service carrier, with delivery fees paid or provided for, at **Los Angeles, California**.

___ I am readily familiar with the firm's practice for collection and processing of correspondence for delivery by Click and Type Name of Courier : collected packages are picked up by an express carrier representative on the same day, with the Airbill listing the account number for billing to sender, at **Los Angeles, California**, in the ordinary course of business. I placed the envelope(s) in an envelope or package designated by the express service carrier for collection and processing for express service delivery on the above date following ordinary business practices.

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/13/11 Entered 01/13/11 16:02:26 Desc
Exhibit 2 Page 15 of 29

_X_ Executed on **September 15, 2010**, at **Los Angeles, California**.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Sean Smith

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 16 of 29

Matthew B. Gruenberg, State Bar No. 264210
LAW OFFICE OF MATTHEW B. GRUENBERG
942A Lincoln Blvd.
Santa Monica, California 90403
Telephone No.: 310.405.7604
Fax No.: 310.405.7605
E-Mail: mattgruenberg@gmail.com

Attorneys for Defendants
EPD INVESTMENT CO., LLC,
BROADWAY ENTERTAINMENT MARKETING, INC.,
and JERROLD PRESSMAN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| JENNY LEE BRIDAL, LLC, a California limited liability company; JENNY LEE, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>EPD INVESTMENT CO., LLC, a California limited liability company; BROADWAY ENTERTAINMENT MARKETING, INC., a California corporation; JERROLD PRESSMAN, an individual; and DOES 1-10,<br><br>Defendants. | Case No. BC 427112<br><br>The Hon. Rita Miller<br>Dept. 16<br><br>**ATTORNEY AFFIDAVIT OF FAULT FOR KEITH E. PRESSMAN IN SUPPORT OF DEEFENDANTS' MOTION TO SET ASIDE DEFAULT AND DEFAULT JUDGMENT**<br><br>Date: October 7, 2010<br>Time: 8:30 am<br>Dept.: 16 |

I, Keith Pressman, declare as follows:

1. I am an attorney licensed to practice in California. I have personal knowledge of the matters set forth herein, and if called as a witness in this case, I could and would competently testify to the following facts:

2. In or around December of 2009, I was informed that EPD had received a copy of a complaint filed by the Plaintiffs in this action.

3. Based on discussions with my clients, we decided we would answer the complaint. I was aware that our response was due approximately thirty (30) days after service of the complaint.

Case 2:10-bk-02208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 17 of 29

4. In January 2010, before the thirty day period had expired, I drafted an answer to the complaint and gave it to my assistant for filing. Attached hereto as Exhibit "A" is true and correct copy of the Answer we thought we had filed in this case.

5. In order to file the Answer on our behalf, my assistant used a courier service she had successfully used several times in the past. In the past, the courier service had paid our initial appearance fee on our behalf at the time of filing the documents – before it had collected the funds from our office.

6. Based on this history, my assistant assumed that the courier service would do the same in this case -- that is, file the answer, pay the appearance fee, and bill us sometime thereafter. In the meantime, because of some outstanding accounting issues with the courier service, without my assistant's knowledge, they had decided not to do any more work for us until the outstanding issues were resolved. As a result, without any notice to us, the Answer was never filed.

7. Although my assistant normally would have followed up and obtained confirmation of the filing, she failed to do so on this occasion as we were in the process of moving our offices and files to a new location. In addition, our email addresses changed and she had communicated with the courier service almost exclusively via email. During the transition, many emails were lost and never received by anyone in our office.

8. My office received nothing else from either the Court or the Plaintiffs regarding the case. There was never any notice of a status conference, and no notice of any default proceedings. Several months passed. I started to think it was strange that we had not heard anything, but I knew that my clients had a personal relationship with the Plaintiffs and had believed the case would settle.

9. On or about May 27, 2010, we received an abstract of judgment in the mail that had been forwarded from my former address to my new office. It was based on a default that had been entered against my clients on January 22, 2010 and a default judgment apparently entered on April 1, 2010. Again, my office never received any notice of either of these matters.

10. As soon as we received the abstract of judgment, my assistant searched her files and emails for a conformed copy of the Answer we had thought we filed. When she could not

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/13/11 Entered 01/13/11 16:02:26 Desc
Exhibit 2 Page 18 of 29

locate one she called the courier service who informed her that sometime last fall they had decided, and employees were instructed, not to complete any orders from our office until we resolved our accounting issues.

11. Upon discovering this, we immediately made plans to seek to set aside the default and default judgment. There are legitimate disputes in this case, and, if the Court does not set aside the default and default judgment, my clients will be forced to face a judgment entered against them because of my own error and fault.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on September 14, 2010 in Santa Monica, California.

Keith E. Pressman

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 19 of 29

Case 2:10-bk-02208-ER Doc 23-3 Filed 01/13/11 Entered 01/13/11 16:02:26 Desc Exhibit 2 Page 20 of 29

PLD-050

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Keith Pressman, State Bar No. 150939
LAW OFFICES OF KEITH E. PRESSMAN
520 Broadway, Suite 660
Santa Monica, CA 90401
TELEPHONE NO.: (310) 780-7067 FAX NO. (Optional):
E-MAIL ADDRESS (Optional): keith@kpressmanlaw.com
ATTORNEY FOR (Name): EPD Investment Co., LLC et al

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Jenny Lee Bridal, LLC et al
DEFENDANT/RESPONDENT: EPD Investment Co., LLC et al

# GENERAL DENIAL

CASE NUMBER: BC 427112

If you want to file a general denial, you MUST use this form if the amount asked for in the complaint or the value of the property involved is $1,000 or less.

You MAY use this form for a general denial if:
1. The complaint is not verified; *or*
2. The complaint is verified and the case is a limited civil case (the amount in controversy is $25,000 or less), BUT NOT if the complaint involves a claim for more than $1,000 that has been assigned to a third party for collection.

(See Code of Civil Procedure sections 85–86, 90–100, 431.30, and 431.40.)

1. DEFENDANT (*name*): EPD Investment Co., LLC, Broadway Entertainment Marketing, Inc., Jerrold Pressman generally denies each and every allegation of plaintiff's complaint.

2. ☑ DEFENDANT states the following FACTS as separate affirmative defenses to plaintiff's complaint (*attach additional pages if necessary*):

1. The stated interest rate is usurious.
2. The funds were an investment, rather than a loan that required repayment.
3. In exchange for funds Plaintiffs seek to recover Defendants furnished services to Plaintiffs and were paid for those services.

Date: January 7, 2010

Keith E. Pressman
(TYPE OR PRINT NAME)

(SIGNATURE OF DEFENDANT OR ATTORNEY)

If you have a claim for damages or other relief against the plaintiff, the law may require you to state your claim in a special pleading called a cross-complaint or you may lose your right to bring the claim. (See Code of Civil Procedure sections 426.10–426.40.)

The original of this *General Denial* must be filed with the clerk of this court with proof that a copy was served on each plaintiff's attorney and on each plaintiff not represented by an attorney. There are two main ways to serve this *General Denial*: by personal delivery or by mail. It may be served by anyone at least 18 years of age EXCEPT you or any other party to this legal action. Be sure that whoever serves the *General Denial* fills out and signs a proof of service. You may use the applicable Judicial Council form (such as form POS-020, POS-030, or POS-040) for the proof of service.

Case 2:10-bk-02208-ER Doc 23-3 Filed 01/15/11 Entered 01/15/11 16:02:26 Desc Exhibit 2 Page 22 of 29

Matthew B. Gruenberg, State Bar No. 264210
LAW OFFICE OF MATTHEW B. GRUENBERG
942A Lincoln Blvd.
Santa Monica, California 90403
Telephone No.: 310.405.7604
Fax No.: 310.405.7605
E-Mail: mattgruenberg@gmail.com

Attorneys for Defendants
EPD INVESTMENT CO., LLC,
BROADWAY ENTERTAINMENT MARKETING, INC.,
and JERROLD PRESSMAN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| JENNY LEE BRIDAL, LLC, a California limited liability company; JENNY LEE, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>EPD INVESTMENT CO., LLC, a California limited liability company; BROADWAY ENTERTAINMENT MARKETING, INC., a California corporation; JERROLD PRESSMAN, an individual; and DOES 1-10,<br><br>Defendants. | Case No. BC 427112<br><br>The Hon. Rita Miller<br>Dept. 16<br><br>**DECLARATION OF JERROLD PRESSMAN IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE DEFAULTS AND DEFAULT JUDGMENTS**<br><br>Date: October 7, 2010<br>Time: 8:30 am<br>Dept.: 16 |

**DECLARATION OF JERROLD PRESSMAN**

I, Jerrold Pressman, hereby declare:

1. I am member of EPD Investment Co., LLC authorized to represent its interest in this matter, a shareholder of Broadway Entertainment Marketing, Inc. authorized to represent its interest in this matter, and the individual named as Jerrold Pressman (collectively, "Defendants" or "we" or "our"). I have personal knowledge of the facts set forth herein and, if called to testify as a witness, could and would testify truthfully and competently thereto.

2. I submit this declaration in support of Defendants' Motion To Set Aside Defaults And Default Judgments (the "Motion").

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 23 of 29

3. In or around December of 2009, I was informed that Defendants had received a copy of a complaint filed by the Plaintiffs in this action.

4. Based on discussions with Defendants' attorney, I decided we would answer the complaint. I was aware that our response was due approximately thirty (30) days after service of the complaint and it was my understanding that our attorney would handle the response and file it in a timely manner.

5. Between December 2009 and May 27, 2010, neither I nor Defendants received anything in the mail or otherwise regarding this lawsuit.

6. On or about May 27, 2010, I received a copy of an abstract of judgment that had been forwarded from my attorney's former address to his new office. It was based on a default that had been entered against Defendants on January 22, 2010 and a default judgment apparently entered on April 1, 2010. Again, neither I nor Defendants received any notice of either of these matters.

7. Upon discovering that Defendants' attorney never actually filed a response to the Plaintiffs' complaint, I immediately made plans to seek to set aside the defaults and default judgments. There are legitimate disputes in this case, and, if the Court does not set aside the defaults and default judgments, Defendants will be forced to face a judgment entered against them because of their attorney's error and fault.

I declare under the penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct and that this declaration was executed this 14th day of September, 2010 at Los Angeles, California.

JERROLD PRESSMAN

Matthew B. Gruenberg, State Bar No. 264210
LAW OFFICE OF MATTHEW B. GRUENBERG
942A Lincoln Blvd.
Santa Monica, California 90403
Telephone No.: 310.405.7604
Fax No.: 310.405.7605
E-Mail: mattgruenberg@gmail.com

Attorneys for Defendants
EPD INVESTMENT CO., LLC,
BROADWAY ENTERTAINMENT MARKETING, INC.,
and JERROLD PRESSMAN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

JENNY LEE BRIDAL, LLC, a California limited liability company; JENNY LEE, an individual,

Plaintiffs,

v.

EPD INVESTMENT CO., LLC, a California limited liability company; BROADWAY ENTERTAINMENT MARKETING, INC., a California corporation; JERROLD PRESSMAN, an individual; and DOES 1-10,

Defendants.

Case No. BC 427112

The Hon. Rita Miller
Dept. 16

**DECLARATION OF MATTHEW B. GRUENBERG IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE DEFAULTS AND DEFAULT JUDGMENTS**

Date: October 7, 2010
Time: 8:30 am
Dept.: 16

**DECLARATION OF MATTHEW B. GRUENBERG**

I, Matthew B. Gruenberg, hereby declare:

1. I am the sole proprietor of the Law Office of Matthew B. Gruenberg, attorney of record for EPD Investment Co., LLC, Broadway Entertainment Marketing, Inc. and Jerrold Pressman (collectively, "Defendants"), the Defendants in this action. I have personal knowledge of the facts set forth herein and, if called to testify as a witness, could and would testify truthfully and competently thereto.

2. I submit this declaration in support of Defendants' Motion To Set Aside Defaults And Default Judgments (the "Motion").

3. I have reviewed all records and notices received by Defendants' former counsel, Keith Pressman.

4. Plaintiffs' abstract of judgment issued May 11, 2010 indicates that Plaintiffs obtained a default judgment against Defendants on April 1, 2010.

5. Other than this abstract of judgment, which was received by Defendants on May 27, 2010, Defendants' former counsel's files for Defendants do not contain any notices of entry of default or entry of default judgment or any other materials that would indicate that default or default judgment was entered against Defendants.

I declare under the penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct and that this declaration was executed this 14th day of September, 2010 at Los Angeles, California.

MATTHEW B. GRUENBERG

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 2 Page 27 of 29

PLD-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Matthew Gruenberg (SBN 264210)<br>LAW OFFICE OF MATTHEW B. GRUENBERG<br>942A Lincoln Blvd.<br>Santa Monica, CA 90403<br>TELEPHONE NO.: (310) 405-7604 FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional): mattgruenberg@gmail.com<br>ATTORNEY FOR (Name): EPD Investment Co., LLC et al | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles<br>STREET ADDRESS: 111 North Hill Street<br>MAILING ADDRESS: 111 North Hill Street<br>CITY AND ZIP CODE: Los Angeles 90012<br>BRANCH NAME: Stanley Mosk Courthouse | |
| PLAINTIFF/PETITIONER: Jenny Lee Bridal, LLC et al<br>DEFENDANT/RESPONDENT: EPD Investment Co., LLC et al | |
| **GENERAL DENIAL** | CASE NUMBER:<br>BC 427112 |

If you want to file a general denial, you MUST use this form if the amount asked for in the complaint or the value of the property involved is $1,000 or less.

You MAY use this form for a general denial if:

1. The complaint is not verified; *or*
2. The complaint is verified and the case is a limited civil case (the amount in controversy is $25,000 or less), BUT NOT if the complaint involves a claim for more than $1,000 that has been assigned to a third party for collection.

(See Code of Civil Procedure sections 85–86, 90–100, 431.30, and 431.40.)

1. DEFENDANT (*name*): EPD Investment Co., LLC, Broadway Entertainment Marketing, Inc., Jerrold Pressman generally denies each and every allegation of plaintiff's complaint.
2. [✓] DEFENDANT states the following FACTS as separate affirmative defenses to plaintiff's complaint (*attach additional pages if necessary*):
   1. The stated interest rate is usurious.
   2. The funds were an investment, rather than a loan that required repayment.
   3. In exchange for funds Plaintiffs seek to recover Defendants furnished services to Plaintiffs and were paid for those services.

Date: September 14, 2010

Matthew B. Gruenberg
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF DEFENDANT OR ATTORNEY)

If you have a claim for damages or other relief against the plaintiff, the law may require you to state your claim in a special pleading called a cross-complaint or you may lose your right to bring the claim. (See Code of Civil Procedure sections 426.10–426.40.)

The original of this *General Denial* must be filed with the clerk of this court with proof that a copy was served on each plaintiff's attorney and on each plaintiff not represented by an attorney. There are two main ways to serve this *General Denial*: by personal delivery or by mail. It may be served by anyone at least 18 years of age EXCEPT you or any other party to this legal action. Be sure that whoever serves the *General Denial* fills out and signs a proof of service. You may use the applicable Judicial Council form (such as form POS-020, POS-030, or POS-040) for the proof of service.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| JENNY LEE BRIDAL, LLC, a California limited liability company; JENNY J. LEE, an individual,,<br><br>Plaintiffs,<br><br>v.<br><br>EPD INVESTMENT CO., LLC, a California limited liability company; BROADWAY ENTERTAINMENT MARKETING, INC., a California corporation; JERROLD S. PRESSMAN, an individual; and DOES 1-10,<br><br>Defendants. | Case No. BC427112<br><br>Hon. Rita Miller<br>Dept. 16<br><br>**[PROPOSED] ORDER SETTING ASIDE DEFAULTS AND DEFAULT JUDGMENTS AND RECALLING AND QUASHING ALL WRITS OF EXECUTION**<br><br>Date: October 7, 2010<br>Time: 8:30 a.m.<br>Dept.: 16 |

The Motion For Court Order To Set Aside Defaults and Default Judgments and Recall and Quash All Writs of Execution ("Motion"), filed by Defendants EPD Investment Co., LLC, Broadway Entertainment Marketing, Inc., and Jerrold Pressman (collectively, "Defendants") came on for hearing on October 7, 2010 at 8:30 a.m. in Department 16 of the above-entitled court, the Honorable Rita Miller, Judge presiding.

The Court, having reviewed the moving papers, and having been presented with an Affidavit of Fault from Defendants' former counsel (the "Affidavit"), a copy of which is attached as Exhibit A to the Motion, and after a hearing upon the fairness and reasonableness of the defaults and default

Case 2:10-bk-62208-ER Doc 23-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 2 Page 29 of 29

judgments obtained against Defendants (the "Defaults") and the timeliness of Defendants' Motion, **IT IS THEREFORE ORDERED AS FOLLOWS:**

1. The Motion is granted in its entirety;

2. Pursuant to California Code of Civil Procedure Section 473(b) the Defaults entered against Defendants are hereby set aside and all writs of execution for enforcement of the Defaults are hereby recalled and quashed accordingly.

3. This Order may be enforced by any party to the Application under California Code of Civil Procedure Section 664.6, or by any procedure permitted by law in the Superior Court of Los Angeles County. Each party has waived a statement of decision, and the right to appeal from this Order after entry. Each party shall bear its own attorney's fees, expenses and costs with regard to the Application and this Order.

**IT IS SO ORDERED.**

DATED:__________

______________________________
JUDGE OF THE SUPERIOR COURT

# EXHIBIT 4

Case 2:10-bk-62208-ER Doc 23-4 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 4 Page 2 of 3

PLD-050

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Matthew B. Gruenberg (SBN 264210)
LAW OFFICES OF MATTHEW B. GRUENBERG
942A Lincoln Boulevard
Santa Monica, CA 90403
TELEPHONE NO.: 310.740.5105 FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: EPD Investment Co., LLC et al

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

NOV 22 2010

John A. Clarke, Executive Officer/Clerk
BY ________, Deputy
Shaunya Wesley

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Jenny Lee Bridal, LLC et al

DEFENDANT/RESPONDENT: EPD Investment Co., LLC et al.

## GENERAL DENIAL

CASE NUMBER:
BC 427112

If you want to file a general denial, you MUST use this form if the amount asked for in the complaint or the value of the property involved is $1,000 or less.

You MAY use this form for a general denial if:

1. The complaint is not verified; ***or***
2. The complaint is verified and the case is a limited civil case (the amount in controversy is $25,000 or less), BUT NOT if the complaint involves a claim for more than $1,000 that has been assigned to a third party for collection.

(See Code of Civil Procedure sections 85–86, 90–100, 431.30, and 431.40.)

1. DEFENDANT *(name)*: EPD Investment Co;, LLC, Broadway Entertainment Marketing, Inc., Jerrold Pressman generally denies each and every allegation of plaintiff's complaint.

2. ☒ DEFENDANT states the following FACTS as separate affirmative defenses to plaintiff's complaint *(attach additional pages if necessary)*:
   1. The stated interest rate is usurious.
   2. The funds were an investment, rather than a loan that required repayment.
   3. In exchange for funds, Plaintiffs seek to recover Defendants' furnished services to Plaintiffs and were not paid for those services.

Date: November 22, 2010

Matthew B. Gruenberg
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF DEFENDANT OR ATTORNEY)

If you have a claim for damages or other relief against the plaintiff, the law may require you to state your claim in a special pleading called a cross-complaint or you may lose your right to bring the claim. (See Code of Civil Procedure sections 426.10–426.40.)

The original of this *General Denial* must be filed with the clerk of this court with proof that a copy was served on each plaintiff's attorney and on each plaintiff not represented by an attorney. There are two main ways to serve this *General Denial*: by personal delivery or by mail. It may be served by anyone at least 18 years of age EXCEPT you or any other party to this legal action. Be sure that whoever serves the *General Denial* fills out and signs a proof of service. You may use the applicable Judicial Council form (such as form POS-020, POS-030, or POS-040) for the proof of service.





American LegalNet, Inc.
www.FormsWorkflow.com

Case 2:10-bk-62208-ER Doc 23-4 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 4 Page 3 of 3

**PROOF OF SERVICE**

Jenny Lee Bridal v. EPD Investment Co., LLC, Case No. BC 427112

Judge: Hon. Rita Miller

Dept: 16

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 601 S. Figueroa, Suite 3900, Los Angeles, California 90017.

On November 22, 2010, I served true copies of the following document(s) described as **GENERAL DENIAL** on the interested parties in this action as follows:

Harold Jung
Raisin & Kavcioglu
16055 Ventura Blvd Ste 601
Encino, CA 91436-2609

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & Scripps LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 22, 2010, at Los Angeles, California.

Lisa Underkoffler

# EXHIBIT 5

Case 2:10-bk-62208-ER Doc 23-5 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 5 Page 2 of 3

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 11/01/10 | DEPT. 16

HONORABLE Rita Miller JUDGE | S. SWITZER DEPUTY CLERK

HONORABLE JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR

D. GILLETTE C.A. Deputy Sheriff | NONE Reporter

BC427112

JENNY LEE BRIDAL LLC ET AL
VS
EPD INVESTMENT COMPANY LLC ET1

Plaintiff Counsel
Defendant Counsel
No Appearances

**NATURE OF PROCEEDINGS:**

COURT ISSUES RULING ON MATTER UNDER SUBMISSION.

Having heard argument and taken this matter under submission on 10/8/10, the Court issues the following ruling:

The Court grants defendants' motion to set aside default and default judgment. The California Code of Civil Procedure, as amended in 1991, provides that the six-month period runs from the date of judgment in cases of attorney mistake, inadvertance, surprise or neglect. It further provides that both the default and default judgment are to be set aside. Subsequent appellate decisions and legislative history confirm the defendants' position. (E.G. Sugasawara v. Newland (1994) 27 Cal. App. 4th 294, 297; Cisneros v. Vueve (1995) 37 Cal. App. 4th 906, 910 n.z.)

Defendants are ordered to file an answer no later than 14 days from the date of this order.

The Court sets a CASE MANAGEMENT CONFERENCE on 12/6/10 at 8:45 a.m. in this department.

Clerk to give notice.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER



MINUTES ENTERED
11/01/10
COUNTY CLERK

11/03/10

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 11/01/10 — DEPT. 16

HONORABLE Rita Miller, JUDGE — S. SWITZER, DEPUTY CLERK

HONORABLE, JUDGE PRO TEM — ELECTRONIC RECORDING MONITOR

D. GILLETTE C.A., Deputy Sheriff — NONE, Reporter

BC427112

JENNY LEE BRIDAL LLC ET AL
VS
EPD INVESTMENT COMPANY LLC ET1

Plaintiff Counsel / Defendant Counsel: No Appearances

**NATURE OF PROCEEDINGS:**

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of 11/1/10 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Date: 11/3/10

John A. Clarke, Executive Officer/Clerk

By: [signature]
S. Switzer, Deputy

Harold Jung, Esq.
RAISIN & KAVCIOGLU
501 N. Brookhurst Street, Suite 130
Anaheim, CA 92801

Matthew B. Gruenberg, Esq.
942A Lincoln Blvd.
Santa Monica, CA 90403



MINUTES ENTERED
11/01/10
COUNTY CLERK

11/05/10

# EXHIBIT 6

# Case Summary

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Case Number:** BC446372
JOHN DITTMAR VS JERROLD S PRESSMAN ET AL

**Filing Date:** 10/01/2010
**Case Type:** Contractual Fraud (General Jurisdiction)
**Status:** Pending

**Future Hearings**

**02/08/2011** at 09:00 am in department 39 at 111 North Hill Street, Los Angeles, CA 90012
Conference-Case Management

Documents Filed | Proceeding Information

**Parties**

DITTMAR JOHN - Plaintiff/Petitioner

DOES 1 - 10 - Defendant/Respondent

EPD INVESTMENT COMPANY LLC - Defendant/Respondent

GUTMAN ALAN S. ESQ. - Attorney for Plaintiff/Petitioner

PRESSMAN JERROLD S. - Defendant/Respondent

PRESSMAN KEITH - Defendant/Respondent

Case Information | Party Information | Proceeding Information

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Documents Filed** (Filing dates listed in descending order)

**11/22/2010** General Denial (FILED )

Filed by Attorney for Defendant/Respondent

**10/19/2010** Proof-Service/Summons
Filed by Attorney for Plaintiff/Petitioner

**10/12/2010** Notice-Case Management Conference
Filed by Attorney for Plaintiff/Petitioner

**10/07/2010** Notice-Case Management Conference
Filed by Clerk

**10/07/2010** OSC-Failure to File Proof of Serv
Filed by Clerk

**10/01/2010** Complaint

Case Information | Party Information | Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)

**12/08/2010** at 09:00 am in Department 39, Michael C. Solner, Presiding
OSC-Failure to File Proof of Serv ( *@ issue*) - **OSC Discharged**

**12/07/2010** in Department 39, Michael C. Solner, Presiding
Court Order - **OSC Discharged**

Case Information | Party Information | Documents Filed | Proceeding Information

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 7 Page 1 of 15

# EXHIBIT 7

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 7 Page 2 of 15

Alan S. Gutman, SBN 128514
John Juenger, SBN 225201
LAW OFFICES OF ALAN S. GUTMAN
9401 Wilshire Boulevard, Suite 575
Beverly Hills, CA 90212-2918
Telephone: 310-385-0700
Facsimile: 310-385-0710
email: alangutman@gutmanlaw.com
jjuenger@gutmanlaw.com

Attorneys for Plaintiff JOHN DITTMAR

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 01 2010

John A. Clarke, Executive Officer/Clerk
By ______, Deputy
GINA GRIDER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JOHN DITTMAR,<br><br>Plaintiff,<br><br>vs.<br><br>JERROLD S. PRESSMAN, KEITH PRESSMAN, EPD INVESTMENT COMPANY, LLC, and DOES 1-10, Inclusive,<br><br>Defendants. | Case Number BC 446372<br><br>**COMPLAINT**<br><br>**(1) INTENTIONAL MISREPRESENTATION**<br>**(2) PROMISSORY FRAUD**<br>**(3) FRAUDULENT CONCEALMENT**<br>**(4) NEGLIGENT MISREPRESENTATION**<br>**(5) BREACH OF FIDUCIARY DUTY**<br>**(6) BREACH OF WRITTEN CONTRACT**<br>**(7) BREACH OF WRITTEN CONTRACT**<br>**(8) CONVERSION**<br>**(9) UNFAIR BUSINESS PRACTICES**<br>**(10) MONEY HAD AND RECEIVED**<br>**(11) UNJUST ENRICHMENT**<br>**(12) RESCISSION AND RESTITUTION** |

Plaintiff John Dittmar alleges as follows:

Summary of the Allegations

1. Simply stated, this is a case in which the Defendants defrauded Plaintiff out of the sum of $450,000.

2. Plaintiff was induced by Defendants Jerrold "Jerry" Pressman and his son Keith Pressman in August of 2007 to invest $450,000 in an equipment leasing deal administered by the Defendants.

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 7 Page 3 of 15

3. Plaintiff was initially and repeatedly assured that his investment would be returned within thirty days of requesting repayment. Despite repeated and numerous requests for repayment, Defendants have failed and refused to repay Plaintiff's monies. It has now become eminently clear that the Defendants have engaged in a massive financial fraud.

4. Plaintiff seeks and is entitled to the immediate return of his entire $450,000 investment plus interest, consequential and punitive damages, as well as attomey's fees and costs.

<u>Parties</u>

5. Plaintiff John Dittmar ("Dittmar") is and was at all times relevant herein a resident of the County of Los Angeles, State of California.

6. Plaintiff is informed and believes and thereon alleges that Defendant Jerrold S. Pressman (sometimes hereinafter referred to as "Jerrold") is and was at all times relevant herein a resident of the County of Los Angeles, State of California.

7. Plaintiff is informed and believes and thereon alleges that Defendant Keith Pressman (sometimes hereinafter referred to as "Keith") is and was at all times relevant herein a resident of the County of Los Angeles, State of California. Jerrold and Keith are sometimes collectively referred to as the "Pressmans" throughout this complaint.

8. Plaintiff is informed and believes and thereon alleges that Defendant EPD Investment Company, LLC ("EPD Investment"), is a California limited liability company with its principal place of business in the County of Los Angeles, State of California.

9. Plaintiff is informed and believes and thereon alleges that the true names and capacities, whether individual, corporate, associate or otherwise, of defendants herein named as Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will seek to amend this complaint to state the true names and capacities of these Doe defendants when they have been ascertained. For convenience, any reference throughout this Complaint to a named Defendant shall also refer to a Doe defendant.

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 7 Page 4 of 15

10. At all times mentioned in this complaint, each of the defendants were the agents and employees of the other defendants, and in doing the things alleged in this complaint, defendants were acting within the course and scope of their agency and employment.

11. Plaintiff is informed and believes and on that basis alleges that Defendants Jerrold A. Pressman and Keith Pressman are and at all times herein mentioned were the alter egos of Defendant EPD Investment, and that there exists, and at all times herein mentioned there did exist, a unity of interest and ownership between such Defendants such that any separateness has ceased to exist, and that Jerrold A. Pressman and Keith Pressman exercised complete control and dominance over EPD Investment such that the business was nothing more than a shell, instrumentality or conduit through which Jerrold A. Pressman and Keith Pressman carried on their business.

12. Plaintiff is informed and believes and on that basis alleges that EPD Investment has limited assets and was never adequately capitalized. Plaintiff is further informed and believes and thereon alleges that Jerrold A. Pressman and Keith Pressman own all company assets and exercises complete control and dominance of such business and assets.

13. Based upon the lack of separateness between these Defendants, it would only serve to promote injustice and sanction fraud to allow the legal fiction of limited liability companies to exist and to insulate Defendants Jerrold A. Pressman and Keith Pressman from personal liability for actions undertaken by them through the charade of EPD Investment.

## Facts in Common to All Causes of Action

14. Dittmar has been friends with Keith Pressman, Jerrold A. Pressman's son, since 2003. The subject of investing with Jerrold first came up in the summer of 2007. Keith had always touted his father as a financial and tax "wizard," explaining that he had made significant money over the previous two decades without "a single issue with the IRS."

15. In July or August of 2007, Jerrold encouraged Dittmar to invest $450,000 with him. Jerrold explained that a deal for equipment leasing had enormous tax benefits in addition to providing a steady source of revenue through interest payments. Jerrold described fully guaranteed and collateralized leases, a 12% return and various tax benefits and deductions. Beyond that, Dittmar is not an accountant or tax lawyer, nor does he have any special understanding of the tax consequences or ramifications associated with a contemplated investment for leased equipment. Nor did Jerrold or Keith ever advise Dittmar what specific equipment would ultimately be purchased, the subject of any lease agreements or how the leasing process worked. Dittmar relied solely on the representations made by Jerrold and Keith regarding the benefit of making such an investment. To allay any concerns Dittmar had about securing repayment, Jerrold repeatedly assured Dittmar that any money he invested would be would be returned within thirty (30) days following a request for repayment. Jerrold also provided Dittmar with his personal guaranty for repayment.

16. Dittmar invested $450,000 with the Defendants in August of 2007. Specifically, on August 7, 2007, Dittmar caused two wire transfers in the amount of $81,000 and $67,000 to be sent to EPD Investment, Jerrold and Keith's company. Additionally, on August 28, 2007, Dittmar caused a $302,000 wire transfer to be sent to EPD Investment. The wire transfers are memorialized by promissory notes issued by EPD Investment and executed by Jerrold. The investment was initially structured as a loan, however, the Defendants created several different legal instruments to document the investment. Specifically, Dittmar received two separate documents entitled "Equipment Lease Agreement" approximately two months after he tendered his $450,000. Both of the Equipment Lease Agreements included personal guarantees executed by Jerrold guaranteeing prompt payment of all amounts due by the Lessees to Dittmar Equipment. Despite the reference to "Dittmar Equipment," a non-existent entity concocted by Defendants, the personal guarantees were clearly intended to benefit Dittmar. Also, despite the fact that Dittmar had invested $450,000, the lease documents only referenced

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 7 Page 6 of 15

a total investment of $430,000.

17. From the outset, Dittmar was advised that he could receive monthly payments or he could allow the monthly payments on his invested monies to "compound." Initially, Dittmar chose the latter option. Accordingly, for the first year or so, Dittmar did not request monthly payments based on the representation that the monies owed were being compounded.

18. In or around December 2008, Dittmar informed the Pressmans that he wanted to receive the monthly payments starting in January of 2009, rather than allowing the payments to "compound."

19. Commencing on or about February 5, 2009, Defendants tendered monthly payments of $4,000 for nine (9) months, however, the amount was not correct. Dittmar contacted Defendants about the deficiency, but was never given an intelligible explanation why the full amount had not been tendered. In November and December of 2009, Defendants made two payments in the amount of $4,300, as well as one payment in the amount of $2,700 in December of 2009 (to pay the outstanding $300 deficiency owed on the nine (9) monthly payments of $4,000).

20. Notwithstanding the payments in 2009, Dittmar informed Jerrold that he wanted all of the outstanding monies returned on or around July 22, 2009. After all, Defendants had always stated that Dittmar could get his money back within thirty (30) days of his request. In response, Jerrold stated that the leases that Plaintiff "chose" were "locked in" and that the monies therefore could not be returned unless another person or entity took over the "leases." This was contrary to anything that had ever been previously been represented.

21. Dittmar subsequently had numerous conversations with Jerrold and Keith during which time they continually reassured him that they were working on the return of Dittmar's monies. Various excuses and explanations were offered, but to date, the monies have not been repaid. Furthermore, Defendants failed to make six (6) of the $4,300 monthly payments in 2010, although $4,300 payments were made in July and August of

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 7 Page 7 of 15

2010. In September 2010, Keith sent Dittmar a personal check in the amount of $4,000.

**FIRST CAUSE OF ACTION**

**INTENTIONAL MISREPRESENTATION**

**AGAINST ALL DEFENDANTS**

22. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

23. Defendants Jerrold and Keith told Dittmar in or about July and August of 2007:

a. that his investment would be used to purchase equipment;

b. that Dittmar could elect to receive monthly payments; and,

c. that Dittmar would be repaid within thirty (30) days of demand.

24. The aforementioned representations by Defendants were false.

25. Defendants, and each of them, knew the aforementioned representations were false and/or made them reckless without regard for their truth at the time they made them.

26. Defendants, and each of them, intended Dittmar to rely on the aforementioned representations.

27. Dittmar reasonably relied on the aforementioned misrepresentations.

28. Dittmar was harmed as a result of his reliance on the aforementioned misrepresentations.

29. Dittmar's reasonable reliance of Defendants' misrepresentations was a substantial factor in causing Dittmar's harm.

30. As a direct and proximate result of Defendants' fraudulent representations as herein alleged, Dittmar has been damaged in an amount to be proved at trial, which Dittmar alleges is in excess of the jurisdiction of this court.

31. In addition, the conduct of Defendants, and each of them, was willful and intentional and fraudulently done with oppression and malice and with a conscious disregard of the rights of Dittmar. Defendants' conduct under the circumstances is

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 7 Page 8 of 15

despicable and such conduct warrants the imposition of punitive damages in a sum appropriate to punish Defendants and deter similar misconduct in the future.

**SECOND CAUSE OF ACTION**

**PROMISSORY FRAUD**

**AGAINST ALL DEFENDANTS**

32. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

33. Defendants Jerrold and Keith told Dittmar in or about July and August of 2007:

a. that his investment would be used to purchase equipment;

b. that Dittmar could elect to receive monthly payments; and,

c. that Dittmar would be repaid within thirty (30) days of demand.

34. The aforementioned promises were important to Dittmar's transactions with Defendants.

35. Defendants, and each of them, did not intend to perform the aforementioned promises at the time they were made.

36. Defendants, and each of them, intended Dittmar to rely on the aforementioned promises.

37. Dittmar reasonably relied on Defendants' promises.

38. Defendants, and each of them, did not perform the aforementioned promises.

39. Dittmar was harmed as a result of his reliance on the aforementioned misrepresentations.

40. Dittmar's reasonable reliance on the aforementioned promises was a substantial factor in causing his harm.

41. As a direct and proximate result of Defendants' false promises as herein alleged, Dittmar has been damaged in an amount to be proved at trial, which Dittmar alleges is in excess of the jurisdiction of this court.

42. In addition, the conduct of Defendants, and each of them, was willful and

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 7 Page 9 of 15

intentional and fraudulently done with oppression and malice and with a conscious disregard of the rights of Dittmar. Defendants' conduct under the circumstances is despicable and such conduct warrants the imposition of punitive damages in a sum appropriate to punish Defendants and deter similar misconduct in the future.

**THIRD CAUSE OF ACTION**

**FRAUDULENT CONCEALMENT**

**AGAINST ALL DEFENDANTS**

43. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

44. Beginning in or around 2007, Defendants, and each of them, made various representations to Dittmar regarding the monies he would and did invest with Defendants. In light of these representations and Defendants' attendant fiduciary duties, Defendants were obligated not to conceal any material facts concerning their transactions.

45. Defendants, and each of them, concealed various material facts from Dittmar, including how the invested funds were actually used, whether appropriate monthly payments would be made, whether the funds would be returned on demand.

46. Dittmar did not know of the concealed facts.

47. Defendants, and each of them, intended to deceive Dittmar by concealing the aforementioned facts.

48. Dittmar reasonably relied on Defendants' concealment.

49. Dittmar was harmed as a result of his reliance on the aforementioned concealment of facts.

50. Dittmar's reasonable reliance on the aforementioned concealment was a substantial factor in causing his harm.

51. As a direct and proximate result of Defendants' concealment as herein alleged, Dittmar has been damaged in an amount to be proved at trial, which Dittmar alleges is in excess of the jurisdiction of this court.

52. In addition, the conduct of Defendants, and each of them, was willful and

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 7 Page 10 of 15

intentional and fraudulently done with oppression and malice and with a conscious disregard of the rights of Dittmar. Defendants' conduct under the circumstances is despicable and such conduct warrants the imposition of punitive damages in a sum appropriate to punish Defendants and deter similar misconduct in the future.

**FOURTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**AGAINST ALL DEFENDANTS**

53. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

54. Defendants Jerrold and Keith told Dittmar in or about July and August of 2007:

a. that his investment would be used to purchase equipment;

b. that Dittmar could elect to receive monthly payments; and,

c. that Dittmar would be repaid within thirty (30) days of demand.

55. The aforementioned representations were not true.

56. Although Defendants, and each of them, may have honestly believed the representations to be true, Defendants had no reasonable grounds for believing the representations to be true at the time they made them.

57. Defendants, and each of them, intended Dittmar to rely on the aforementioned representations.

58. Dittmar reasonably relied on Defendants' representations.

59. Dittmar was harmed as a result of his reliance on the aforementioned misrepresentation of facts.

60. Dittmar's reasonable reliance on the aforementioned representations was a substantial factor in causing his harm.

61. As a direct and proximate result of Defendants' negligent misrepresentations, as herein alleged, Dittmar has been damaged in an amount to be proved at trial, which Dittmar alleges is in excess of the jurisdiction of this court.

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 7 Page 11 of 15

**FIFTH CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**AGAINST ALL DEFENDANTS**

62. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

63. Defendants, and each of them, held themselves out as savvy investment advisors.

64. Dittmar provided Defendants $450,000 and was assured by Defendants, and each of them, that Dittmar's investment would be safe and secure.

65. Defendants, in acting as Dittmar's investment advisors, owed Dittmar a fiduciary duty.

66. Dittmar is informed and believes and thereon alleges that Defendants, and each of them, mismanaged Dittmar's investment and thereby breached their fiduciary duty to Dittmar.

67. As a direct and proximate result of the breach of fiduciary duty by Defendants, and each of them, Plaintiff has been damaged in an amount to be determined at trial.

68. In addition, the conduct of Defendants, and each of them, was willful and intentional and fraudulently done with oppression and malice and with a conscious disregard of the rights of Dittmar. Defendants' conduct under the circumstances is despicable and such conduct warrants the imposition of punitive damages in a sum appropriate to punish Defendants and deter similar misconduct in the future.

**SIXTH CAUSE OF ACTION**

**BREACH OF WRITTEN CONTRACT**

**AGAINST JERROLD A. PRESSMAN**

69. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

70. Pursuant to the Equipment Lease Agreements and the written personal

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 7 Page 12 of 15

guarantees, Jerrold is personally liable for the repayment of all monies owed to Dittmar.

71. Despite Dittmar's request for said payments, Jerrold has failed and refused to make said payments to Dittmar.

72. Plaintiff has at all times performed all of his obligations under the contracts, except as excused or prevented by the actions or conduct of Defendants.

73. As a direct and proximate cause of the breach of contract by Jerrold, Dittmar has suffered and continues to suffer damages in an amount to be proven at trial, which Dittmar alleges is in excess of the jurisdiction of this court.

74. Additionally, Dittmar has and will continue to incur attorney's fees as a result of the breach of contract. Plaintiff is entitled to recover reasonable attorney's fees incurred in enforcing the contract.

**SEVENTH CAUSE OF ACTION**

**BREACH OF WRITTEN CONTRACT**

**AGAINST ALL DEFENDANTS**

75. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

76. In August 2007, Dittmar wired $450,000 to EPD Investment. The promissory notes memorializing the agreement specifically state that the principal amounts and interest thereon are due within thirty (30) days of demand.

77. Dittmar has repeatedly demanded payment and Defendants have refused tender payment in breach of the written contract.

78. Dittmar has at all times performed all of his obligations under the contract, except as excused or prevented by the actions or conduct of Defendants.

79. Jerrold and Keith as the alter egos of EPD Investment, are directly liable under the contract.

80. As a direct and proximate cause of the breach of contract by Defendants, Dittmar has suffered damages in the amount to be proven at trial, which Dittmar alleges is in excess of the jurisdiction of this court.

**EIGHTH CAUSE OF ACTION**

**CONVERSION**

**AGAINST ALL DEFENDANTS**

81. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

82. Defendants, and each of them, refused to return Dittmar's monies after Dittmar demanded their return.

83. Dittmar did not consent to Defendant's failure to return Plaintiff's monies.

84. Dittmar was harmed.

85. Defendants' conduct in refusing to return Plaintiff's monies was a substantial factor in causing Dittmar's harm.

86. As a direct and proximate result of Defendants' conduct, as herein alleged, Dittmar has been damaged in an amount to be proved at trial, which Dittmar allege is in excess of the jurisdiction of this court.

**NINTH CAUSE OF ACTION**

**UNFAIR BUSINESS PRACTICES**

**AGAINST ALL DEFENDANTS**

87. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

88. California Business & Professions Code § 17200, *et seq*. prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice . . ."

89. As set forth above, Defendants, and each of them, engaged in unfair competition.

90. Dittmar has been harmed as a result of Defendants' unfair competition and Defendants have profited from their unfair competition.

91. As a direct and proximate cause of Defendants' unfair competition, Defendants have unlawfully obtained funds in an amount to be proven at trial.

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 7 Page 14 of 15

92. Dittmar is entitled to an order requiring Defendants to disgorge all unlawfully obtained from Dittmar.

**TENTH CAUSE OF ACTION**

**MONEY HAD AND RECEIVED**

**AGAINST ALL DEFENDANTS**

93. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

94. Defendants, and each of them, received money that belongs to Dittmar.

95. Dittmar is entitled to an award of damages in an amount to be determined at the time of trial for the money that was received by Defendants.

**ELEVENTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**AGAINST ALL DEFENDANTS**

96. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

97. Defendants, and each of them, have been unjustly enriched by the above alleged conduct to Dittmar's detriment.

98. Dittmar is entitled to the disgorgement to all monies realized from said unjust enrichment, in an amount to be proven at trial.

**TWELFTH CAUSE OF ACTION**

**RESCISSION AND RESTITUTION**

**AGAINST ALL DEFENDANTS**

99. Dittmar repeats and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein.

100. Service of the summons and pleading in this action constitutes notice of rescission of all agreements between Dittmar and Defendants and an offer to restore benefits received, as provided in section 1691 of the Code of Civil Procedure.

101. Due to Defendants' fraudulent conduct, Dittmar has sustained consequential

Case 2:10-bk-62208-ER Doc 23-7 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 7 Page 15 of 15

damages in the amount of to be proven at the time of trial.

WHEREFORE, Plaintiff prays for the following relief:

1. For compensatory damages according to proof to be determined at the time of trial;
2. For punitive damages;
3. For consequential damages;
4. For prejudgment interest;
5. For rescission and restitution;
6. For attorney's fees;
7. For disgorgement of unlawfully obtained funds; and,
8. For such other and further relief as may be deemed just and proper.

Dated: September 30, 2010

LAW OFFICES OF ALAN S. GUTMAN

By: ______________________
Alan S. Gutman
Attorneys for Plaintiff
JOHN DITTMAR

# EXHIBIT 8

Case 2:10-bk-62208-ER Doc 23-8 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 8 Page 2 of 3

PLD-050

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Matthew B. Gruenberg (SBN 264210)
LAW OFFICES OF MATTHEW B. GRUENBERG
942A Lincoln Boulevard
Santa Monica, CA 90403
TELEPHONE NO.: 310.740.5105 FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Jerrold Pressman, Keith Pressman, EPD Investment

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

NOV 22 2010

John A. Clarke, Executive Officer/Clerk
BY ____________, Deputy
Shaunya Wesley

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: John Dittmar

DEFENDANT/RESPONDENT: Jerrold S. Pressman, et al.

# GENERAL DENIAL

CASE NUMBER: BC 446372

If you want to file a general denial, you MUST use this form if the amount asked for in the complaint or the value of the property involved is $1,000 or less.

You MAY use this form for a general denial if:

1. The complaint is not verified; ***or***
2. The complaint is verified and the case is a limited civil case (the amount in controversy is $25,000 or less), BUT NOT if the complaint involves a claim for more than $1,000 that has been assigned to a third party for collection.

(See Code of Civil Procedure sections 85–86, 90–100, 431.30, and 431.40.)

1. DEFENDANT *(name):* Jerrold S. Pressman, Keith Pressman, EPD Investment Co., LLC generally denies each and every allegation of plaintiff's complaint.

2. ☒ DEFENDANT states the following FACTS as separate affirmative defenses to plaintiff's complaint *(attach additional pages if necessary):*
   1. The stated interest rate is usurious.
   2. The funds were an investment, rather than a loan that required repayment.

Date: November 22, 2010

Matthew B. Gruenberg ▶ [signature]

(TYPE OR PRINT NAME) (SIGNATURE OF DEFENDANT OR ATTORNEY)

If you have a claim for damages or other relief against the plaintiff, the law may require you to state your claim in a special pleading called a cross-complaint or you may lose your right to bring the claim. (See Code of Civil Procedure sections 426.10–426.40.)

The original of this *General Denial* must be filed with the clerk of this court with proof that a copy was served on each plaintiff's attorney and on each plaintiff not represented by an attorney. There are two main ways to serve this *General Denial:* by personal delivery or by mail. It may be served by anyone at least 18 years of age EXCEPT you or any other party to this legal action. Be sure that whoever serves the *General Denial* fills out and signs a proof of service. You may use the applicable Judicial Council form (such as form POS-020, POS-030, or POS-040) for the proof of service.

Case 2:10-bk-62208-ER Doc 23-8 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 8 Page 3 of 3

**PROOF OF SERVICE**

Dittmar v. Pressman, et al, Case No. BC 446372

Judge: Hon. Michael C. Solnar

Dept: 39

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 601 S. Figueroa, Suite 3900, Los Angeles, California 90017.

On November 22, 2010, I served true copies of the following document(s) described as **GENERAL DENIAL** on the interested parties in this action as follows:

Alan Gutman
John Juenger
Law Offices of Alan S. Gutman
9401 Wilshire Blvd., Suite 575
Beverly Hills, CA 90212-2918

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & Scripps LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 22, 2010, at Los Angeles, California.

Lisa Underkoffler

# EXHIBIT 9

MAHONEY

**United States District Court**
**Northern District of Illinois - CM/ECF LIVE, Ver 4.2 (Chicago)**
**CIVIL DOCKET FOR CASE #: 1:10-cv-05049**

| | |
|---|---|
| Huerth et al v. Pressman, et al<br>Assigned to: Honorable Philip G. Reinhard<br>Referred to: Honorable P. Michael Mahoney<br>Cause: 18:1961 Racketeering (RICO) Act | Date Filed: 08/11/2010<br>Jury Demand: None<br>Nature of Suit: 470 Racketeer/Corrupt Organization<br>Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Arthur Huerth** | represented by | **Sara Elwood Cook**<br>McKenna, Storer<br>666 Russel Court<br>Suite 303<br>Woodstock, IL 60098<br>(815) 334-9692<br>Fax: 8153349697<br>Email: scook@mckenna-law.com<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Joan Huerth**<br>*individually*<br>*doing business as*<br>Huerth Financial Leasing | represented by | **Sara Elwood Cook**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **AJ Partners** | represented by | **Sara Elwood Cook**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Leslie Huerth** | represented by | **Sara Elwood Cook**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **Jerrold Pressman** | represented by | **Barney H. Balonick**<br>Goldberg & Goldberg<br>33 North Dearborn Street<br>Suite 1930<br>Chicago, IL 60602<br>(312) 368-0255 |

Email: barneyb@bgoldberglaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**EPD Investment Co. LLC**
*a California limited liability company*

represented by **Barney H. Balonick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**EPD Investment Leasing Co. LLC**
*a California limited liability company*

represented by **Barney H. Balonick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**EPD Group**

represented by **Barney H. Balonick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Theodore Jonavic**

represented by **Barney H. Balonick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ruben Moreno**

represented by **Barney H. Balonick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Katherine Werner**

represented by **Barney H. Balonick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**True Position Technologies, Inc.**
*a California corporation*

**Defendant**

**Ice Skating Enterprises, Inc.**
*a California corporation*

represented by **Barney H. Balonick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**S.C. Club, L.P.**
*a California limited partnership*

represented by **Barney H. Balonick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thom Ferro**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/11/2010 | 1 | COMPLAINT filed by Arthur Huerth, AJ Partners, Huerth Financial Leasing, Joan Huerth, Leslie Huerth; Filing fee $ 350, receipt number 0752-5109057. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F-1, # 7 Exhibit F-2)(Cook, Sara) (Entered: 08/11/2010) |
| 08/11/2010 | | CASE ASSIGNED to the Honorable Milton I. Shadur. Designated as Magistrate Judge the Honorable Jeffrey T. Gilbert. (daj, ) (Entered: 08/12/2010) |
| 08/12/2010 | 2 | CIVIL Cover Sheet (Cook, Sara) (Entered: 08/12/2010) |
| 08/12/2010 | 3 | MINUTE entry before Honorable Milton I. Shadur: This action is ordered transferred to the Western Division of the Northern District of Illinois as it was mistakenly filed in the Eastern Division. Mailed notice (tlm) (Entered: 08/12/2010) |
| 08/12/2010 | 4 | TRANSFERRED the electronic case record to the Western Division. (tlm) (Entered: 08/12/2010) |
| 08/12/2010 | 5 | INTRA district transfer from the Eastern Division. Case assigned to District Judge Honorable Philip G. Reinhard and referred to Magistrate Judge Honorable P. Michael Mahoney for all further proceedings. (jat, ) (Entered: 08/12/2010) |
| 08/13/2010 | | SUMMONS Issued as to Defendants EPD Investment Co. LLC, Ice Skating Enterprises, Inc., Theodore Jonavic, Ruben Moreno, Jerrold Pressman, S.C. Club, L.P., True Position Technologies, Inc., and Katherine Werner at 2 different addresses. (ef, ) (Entered: 08/13/2010) |
| 09/09/2010 | | ALIAS Summons Issued as to Ice Skating Enterprises, Inc. (vcf, ) (Entered: 09/09/2010) |
| 09/09/2010 | 6 | SUMMONS Returned Executed by Huerth Financial Leasing, Joan Huerth, AJ Partners, Arthur Huerth, Leslie Huerth as to Jerrold Pressman on 8/18/2010, answer due 9/8/2010. (Cook, Sara) (Entered: 09/09/2010) |
| 09/09/2010 | 7 | SUMMONS Returned Executed by Huerth Financial Leasing, Joan Huerth, AJ Partners, Arthur Huerth, Leslie Huerth as to EPD Investment Co. LLC on 8/18/2010, answer due 9/8/2010. (Cook, Sara) (Entered: 09/09/2010) |
| 09/09/2010 | 8 | SUMMONS Returned Executed by Huerth Financial Leasing, Joan Huerth, AJ Partners, Arthur Huerth, Leslie Huerth as to Theodore Jonavic on 8/18/2010, answer due 9/8/2010. (Cook, Sara) (Entered: 09/09/2010) |
| 09/09/2010 | 9 | SUMMONS Returned Executed by Huerth Financial Leasing, Joan Huerth, AJ Partners, Arthur Huerth, Leslie Huerth as to Ruben Moreno on 8/18/2010, answer due 9/8/2010. (Cook, Sara) (Entered: 09/09/2010) |
| 09/09/2010 | 10 | SUMMONS Returned Executed by Huerth Financial Leasing, Joan Huerth, AJ Partners, Arthur Huerth, Leslie Huerth as to Katherine Werner on 8/18/2010, answer due 9/8/2010. (Cook, Sara) (Entered: 09/09/2010) |

| | | |
|---|---|---|
| 09/09/2010 | 11 | SUMMONS Returned Executed by Huerth Financial Leasing, Joan Huerth, AJ Partners, Arthur Huerth, Leslie Huerth as to True Position Technologies, Inc. on 8/18/2010, answer due 9/8/2010. (Cook, Sara) (Entered: 09/09/2010) |
| 09/09/2010 | 12 | SUMMONS Returned Executed by Huerth Financial Leasing, Joan Huerth, AJ Partners, Arthur Huerth, Leslie Huerth as to S.C. Club, L.P. on 8/18/2010, answer due 9/8/2010. (Cook, Sara) (Entered: 09/09/2010) |
| 09/14/2010 | 13 | MINUTE entry before Honorable P. Michael Mahoney: Status hearing set for 9/22/2010 at 01:30 PM. Plaintiff is directed to notify any party filing an appearance subsequent to the entry of this order, of the status hearing. Mailed notice (glg, ) (Entered: 09/14/2010) |
| 09/17/2010 | 14 | MOTION by Plaintiffs AJ Partners, Arthur Huerth, Joan Huerth, Leslie Huerth, Huerth Financial Leasing for entry of default *judgment* (Cook, Sara) (Entered: 09/17/2010) |
| 09/17/2010 | 15 | NOTICE of Motion by Sara Elwood Cook for presentment of motion for entry of default 14 before Honorable P. Michael Mahoney on 9/22/2010 at 01:30 PM. (Cook, Sara) (Entered: 09/17/2010) |
| 09/17/2010 | | SUMMONS Issued as to Defendant EPD Investment Leasing Co. LLC (emd, ) (Entered: 09/17/2010) |
| 09/22/2010 | 16 | MINUTE entry before Honorable P. Michael Mahoney: Status hearing held on 9/22/2010. It is the Report and Recommendation of the Magistrate Judge to the District Court that Plaintiff's Motion for entry of default against J. Pressman, EPD Investment Co., T. Jonavic, R. Moreno, K. Werner and S C Club 14 be granted and a prove-up set or returned to the Magistrate Judge for setting of a prove-up. Parties are given fourteen days from service of this order, as calculated under Rule 6 to file objections with Judge Reinhard pursuant to FRCP 72. Objections need not be presented as stated in LR.5.3. Status hearing set for 11/17/2010 at 01:30 PM. Mailed notice (glg, ) (Entered: 09/22/2010) |
| 10/01/2010 | 17 | ATTORNEY Appearance for Defendants EPD Group, EPD Investment Co. LLC, EPD Investment Leasing Co. LLC, Ice Skating Enterprises, Inc., Theodore Jonavic, Ruben Moreno, Jerrold Pressman, S.C. Club, L.P., True Position Technologies, Inc., Katherine Werner by Barney H. Balonick (Balonick, Barney) (Entered: 10/01/2010) |
| 10/04/2010 | 18 | ATTORNEY Appearance for Defendants EPD Group, EPD Investment Co. LLC, EPD Investment Leasing Co. LLC, Ice Skating Enterprises, Inc., Theodore Jonavic, Ruben Moreno, Jerrold Pressman, S.C. Club, L.P., True Position Technologies, Inc., Katherine Werner by Barney H. Balonick *Amended Appearance as Attorney Balonick is not representing Defendant True Position Technologies, Inc.* (Balonick, Barney) (Entered: 10/04/2010) |
| 10/05/2010 | 19 | Objection by EPD Group , *et al* (Attachments: # 1 Declaration, # 2 Supplement)(Balonick, Barney) Modified on 10/6/2010 (jat, ). [efiled incorrectly, attorney instructed to refile] (Entered: 10/05/2010) |
| 10/05/2010 | 20 | NOTICE of Motion by Barney H. Balonick for presentment of (Balonick, Barney) Modified on 10/6/2010 (jat, ). [efiled incorrectly, attorney instructed |

| | | |
|---|---|---|
| | | to refile] (Entered: 10/05/2010) |
| 10/06/2010 | 21 | SUMMONS Returned Executed by Huerth Financial Leasing, Joan Huerth, AJ Partners, Arthur Huerth, Leslie Huerth as to EPD Investment Leasing Co. LLC on 9/20/2010, answer due 10/12/2010. (Cook, Sara) (Entered: 10/06/2010) |
| 10/06/2010 | 22 | OBJECTIONS by EPD Group, EPD Investment Co. LLC, EPD Investment Leasing Co. LLC, Joan Huerth, Ice Skating Enterprises, Inc., Theodore Jonavic, Ruben Moreno, Jerrold Pressman, S.C. Club, L.P., Katherine Werner to order on motion for entry of default,,, magistrate judge status hearing,,, motion hearing,,, set/reset hearings,, 16 (Attachments: # 1 Exhibit Declarations/Affidavits of Certain Defendants, # 2 Exhibit Plaintiffs' Motion for Entry of Default)(Balonick, Barney) (Entered: 10/06/2010) |
| 10/06/2010 | 23 | NOTICE by EPD Group, EPD Investment Co. LLC, EPD Investment Leasing Co. LLC, Ice Skating Enterprises, Inc., Theodore Jonavic, Ruben Moreno, Jerrold Pressman, S.C. Club, L.P., Katherine Werner re objections, 22 (Balonick, Barney) (Entered: 10/06/2010) |
| 10/06/2010 | 24 | MOTION by Defendants EPD Group, EPD Investment Co. LLC, EPD Investment Leasing Co. LLC, Ice Skating Enterprises, Inc., Theodore Jonavic, Ruben Moreno, Jerrold Pressman, S.C. Club, L.P., Katherine Werner for leave to file *its joint brief in support of their omnibus motion to dismiss under Rule 12(b)* (Balonick, Barney) (Entered: 10/06/2010) |
| 10/06/2010 | 25 | BRIEF by EPD Group, EPD Investment Co. LLC, EPD Investment Leasing Co. LLC, Ice Skating Enterprises, Inc., Theodore Jonavic, Ruben Moreno, Jerrold Pressman, S.C. Club, L.P., Katherine Werner *in support of their omnibus motion to dismiss under Rule 12(b)* (Balonick, Barney)[document does not contain heading.] (Entered: 10/06/2010) |
| 10/06/2010 | 26 | NOTICE of Motion by Barney H. Balonick for presentment of motion for leave to file, 24 before Honorable Philip G. Reinhard on 10/20/2010 at 09:00 AM. (Balonick, Barney)[refile, does not contain date and time on document.] Modified on 10/7/2010 (pg, ). (Entered: 10/06/2010) |
| 10/07/2010 | 27 | MINUTE entry before Honorable Philip G. Reinhard: Pursuant to Rule 72(b)(3) the court returns this matter to the magistrate judge to consider the evidence and argument presented by these defendants in order to make a report and recommendation as to the issue of default. On September 22, 2010, the magistrate judge entered a report and recommendation that the court grant plaintiffs' motion for entry of default against defendants Jerrold Pressman, EPD Investment Co., LLC ("EPD"), Theodore Jonavic, Ruben Moreno,Katherine Werner, and S.C. Club, L.P. ("SC"). On October 5, 2010, these defendants filed a timely objection to the report and recommendation. Pressman, EPD, Moreno, Werner and SC contest service of process. These defendants agree to waive service on certain conditions. Jonavic asks the court to find his failure to timely answer or otherwise plead to be excusable neglect. Pursuant to Rule 72(b)(3) the court returns this matter to the magistrate judge to consider the evidence and argument presented by these defendants in order to make a report and recommendation as tothe issue of default.[For further details see text below.]Electronic notice(pg, ) (pg, ).[For further details see text |

| | | |
|---|---|---|
| | | below.] Modified on 10/7/2010 (pg, ). (Entered: 10/07/2010) |
| 10/07/2010 | 28 | MOTION by Plaintiffs AJ Partners, Arthur Huerth, Joan Huerth, Leslie Huerth, Huerth Financial Leasing for leave to file *Response to Defendant's Motion to Dismiss* (Cook, Sara) (Entered: 10/07/2010) |
| 10/07/2010 | 29 | NOTICE of Motion by Sara Elwood Cook for presentment of motion for leave to file 28 before Honorable P. Michael Mahoney on 10/13/2010 at 01:30 PM. (Cook, Sara) (Entered: 10/07/2010) |
| 10/13/2010 | 30 | MINUTE entry before Honorable P. Michael Mahoney: Plaintiff's motion for leave to file 28 is enter and continued to an in court hearing set for 10/29/2010 at 02:00 PM. Trial counsel are ordered to appear. Mailed notice (glg, ) (Entered: 10/13/2010) |
| 10/14/2010 | 31 | *Amended* NOTICE of Motion by Barney H. Balonick for presentment of Motion 24 before Honorable P. Michael Mahoney on 10/22/2010 at 01:30 PM. (Balonick, Barney) Motion linked/ Judge Association Modified on 10/14/2010 (jat, ). (Entered: 10/14/2010) |
| 10/14/2010 | 32 | MOTION by Defendants EPD Group, EPD Investment Co. LLC, EPD Investment Leasing Co. LLC, Ice Skating Enterprises, Inc., Theodore Jonavic, Ruben Moreno, Jerrold Pressman, S.C. Club, L.P., Katherine Werner for leave to file *ITS JOINT BRIEF IN SUPPORT OF THEIR OMNIBUS MOTION TO DISMISS UNDER RULE 12(b), OR ALTERNATIVELY, TO TRANSFER VENUE IN EXCESS OF 15 PAGES* (Balonick, Barney) Modified on 10/14/2010 (jat, ). (duplicate motion, see 24 ) (Entered: 10/14/2010) |
| 10/15/2010 | 33 | MOTION by Defendants S.C. Club, L.P., Jerrold Pressman, Ruben Moreno, Ice Skating Enterprises, Inc., EPD Investment Leasing Co. LLC, EPD Group, Katherine Werner, EPD Investment Co. LLC, Theodore Jonavic to dismiss for lack of jurisdiction (Balonick, Barney) (Entered: 10/15/2010) |
| 10/21/2010 | 34 | *AMENDED* NOTICE of Motion by Barney H. Balonick for presentment of before Honorable P. Michael Mahoney on 10/29/2010 at 02:00 PM. (Balonick, Barney) (Entered: 10/21/2010) |
| 10/29/2010 | 35 | MINUTE entry before Honorable P. Michael Mahoney: Discovery hearing held on 10/29/2010. Status hearing of 11/17/10 stricken. Plaintiff's Motion for entry of default 14 is withdrawn. Defendant's Motion for leave to file 20 page brief 24 is granted. Plaintiff's Motion for leave to file 28 and defendant's Motion to dismiss for lack of jurisdiction 33 are entered and continued to Telephonic Discovery Hearing set for 11/29/2010 at 10:00 AM. Plaintiff to place the call. (glg, ) (Entered: 10/29/2010) |
| 11/29/2010 | 36 | MINUTE entry before Honorable P. Michael Mahoney: Telephonic Discovery hearing held on 11/29/2010. Amended Complaint due by 12/20/2010. Hearing as to motion to dismiss/lack of jurisdiction, 33 , motion for leave to file 28 continued to Discovery Hearing set for 12/22/2010 at 01:30 PM. Telephoned notice (glg, ) (Entered: 11/29/2010) |
| 12/20/2010 | 37 | *FIRST* AMENDED complaint by Huerth Financial Leasing, Joan Huerth, AJ Partners, Arthur Huerth, Leslie Huerth against EPD Group, EPD Investment |

| | | |
|---|---|---|
| | | Co. LLC, EPD Investment Leasing Co. LLC, Ice Skating Enterprises, Inc., Theodore Jonavic, Ruben Moreno, Jerrold Pressman, S.C. Club, L.P., True Position Technologies, Inc., Katherine Werner (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F-1, # 7 Exhibit F-2)(Cook, Sara) (Entered: 12/20/2010) |
| 12/22/2010 | 38 | MINUTE entry before Honorable P. Michael Mahoney: Discovery conference held and continued to 1/26/11 at 1:30 p.m. Plaintiff's motion for leave 28 and defendant's motion to dismiss 33 are moot as an amended complaint has now been filed. Defendants have until 1/18/11 to file a response to the amended complaint. Electronic notices. (jmm-r, ) (Entered: 12/22/2010) |
| 01/12/2011 | 39 | SUMMONS Issued as to Defendant Thom Ferro (pg, ) (Entered: 01/12/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 01/18/2011 15:24:53 | | | |
| **PACER Login:** | lf0174 | **Client Code:** | 80249-37998-00001 |
| **Description:** | Docket Report | **Search Criteria:** | 1:10-cv-05049 |
| **Billable Pages:** | 6 | **Cost:** | 0.48 |

# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Arthur Huerth, Joan Huerth, individually and d/b/a/ Huerth Financial Leasing, AJ Partners, and Leslie Huerth,<br>Plaintiffs, | |
| v. | Case No. |
| Jerrold Pressman, EPD Investment Co., LLC, a California limited liability company, EPD Investment Leasing Co., LLC, a California limited liability company, EPD Group, Theodore Jonavic, Ruben Moreno, Katherine Werner, True Position Technologies, Inc., a California corporation, Ice Skating Enterprises, Inc., a California corporation, S.C. Club, L.P., a California limited partnership.<br><br>Defendants. | |

## COMPLAINT

Plaintiffs, Arthur Huerth and Joan Huerth, individually and d/b/a/ Huerth Financial Leasing, AJ Partners, and Leslie Huerth, through their attorneys McKenna Storer, allege the following cause of action against Defendants, Jerrold Pressman, EPD Investment Co., LLC, a California limited liability company, ("EPD"), EPD Investment Leasing Co., LLC, a California limited liability company, EPD Group, Theodore Jonavic, Ruben Moreno, Katy Werner, True Position Technologies, Inc., a California corporation, Ice Skating Enterprises, Inc., a California corporation, and S.C. Club, L.P., a California limited partnership.

## JURISDICTION

1. Jurisdiction for this Complaint is based upon federal question (28 U.S.C. Sec. 1331) and diversity of citizenship (28 U.S.C. Sec. 1332.)

2. Count I arises under the federal civil R.I.C.O. statute, 18 U.S.C. §1961-68; and Counts II and III arise under the federal securities laws, 15 U.S.C. sec. 78a et seq.

3. In the alternative, jurisdiction is based upon diversity of citizenship. Plaintiffs Arthur and Joan Huerth are citizens of Florida; Plaintiff Leslie Huerth is a citizen of Illinois; Plaintiff AJ Partners is a partnership with all partners citizens of Florida; all individual Defendants are citizens of California; all Defendant entities have their principal place of business in California, all parties in S.C. Club, L.P. have their principal place of business in and/or are citizens of California. The amount in controversy, without interest or costs, exceeds the sum or value specified by 28 U.S.C. Section 1332.

4. Supplemental jurisdiction extends to all state claims.

## PARTIES

5. Plaintiff Arthur Huerth ("Art") is an individual who, at relevant times when the contract for a loan arose, resided in Spring Grove, McHenry County, Illinois. Currently, Arthur resides in North Fort Myers, Florida.

6. Plaintiff Joan Huerth ("Joan") is an individual who, at relevant times when the contract for a loan arose, resided in Spring Grove, McHenry County, Illinois. Currently, Joan resides in North Fort Myers, Florida.

7. Arthur and Joan Huerth are married to one another and are the parents of Wayne Huerth and Leslie Huerth.

8. "Huerth Financial Leasing" is an assumed name registered to Arthur Huerth and Joan Huerth in Florida.

9. Plaintiff, "AJ Partners" is a partnership with Art and Joan as its general partners.

10. Plaintiff, Leslie Huerth ("Leslie"), is an individual residing in McHenry County, Illinois.

11. Defendant, Jerrold Pressman ("Pressman"), is an individual residing in California.

12. Defendant, EPD Investment Co., LLC, ("EPD") is a California limited liability company.

13. EPD Investment Leasing Co., LLC, is a California limited liability company and a successor to EPD Investment Co., LLC.

14. EPD Group, on information and belief, is an assumed name used by EPD and EPD Investment Leasing Co., LLC.

15. Defendant, Theodore Jonavic ("Jonavic") is an individual residing in California and a putative licensed certified public accountant and registered securities broker and representative.

16. Defendant True Position Technologies, Inc., is a California corporation with its principal place of business in California.

17. Defendant Ice Skating Enterprises, Inc., is a California corporation with its principal place of business in California.

Case 2:10-bk-02268-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 10 Page 5 of 185



18. Defendant S.C. Club, L.P., is a California limited partnership with its principal place of business in California. All partners of S.C. Club, L.P. have their principal place of business in and/or are citizens of California.

19. Defendant Ruben Moreno is an individual residing in California.

20. Defendant Katherine Werner is an individual residing in California and upon information and belief is a licensed attorney.

## FACTS COMMON TO ALL COUNTS

### a. The Solicitation

21. During the years 2000 through 2007, Defendant Pressman, on behalf of EPD, solicited Art and Joan Huerth, and their daughter Leslie Huerth (collectively "Huerths") to loan monies to entities owned or controlled by Pressman, including EPD, in return for a promised stream of interest payments.

22. Pressman represented that he was a taxation expert, that he had a keen interest in finding ways to legally avoid the payment of federal income tax, and that he would provide expert tax accounting advice and services to the Huerths if they participated in his program of loans and investments.

23. Specifically, Pressman told Art and Joan that they could use their own accountant, or if they agreed, he would have his accountant prepare all their tax returns at Pressman's own expense. He also agreed to pay the accountant's fees for any audit.

24. Pressman's original solicitation of Art and Joan occurred in the year 2000 when he offered to buy their home in Wisconsin. See Exhibit A. Art and Joan declined to sell their home to Pressman.

Case 2:10-bk-62208-ER Doc 25-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 10 Page 6 of 185


25. Pressman continued regularly, sometimes weekly, to place telephone calls to Art and Joan in Illinois between 2000 and 2004 to solicit Art and Joan's financial participation in various deals through EPD.

26. Art, Joan and Leslie were brought into this lending program through the solicitation and advice of financial advisor Jerrold Pressman.

27. Prior to making their initial investment in the form of a loan of money, and continuing through the final investment, Pressman gave Art, Joan and Leslie no written materials describing the investment or its risks.

28. Pressman promised above-market returns on the investments of at least 12%, and repeatedly assured Art and Joan that the principal amounts invested were safe, could easily be repaid upon demand, and were not at risk.

29. Pressman assured Art and Joan that loans to EPD as an investment were "recession proof."

30. Pressman encouraged a trusting relationship between himself and the Huerths. He called the group of investors a "small investment family."

31. On more than one occasion, Pressman encouraged Art and Joan to take out home equity loans on properties they owned in Illinois and Florida and invest the loan proceeds in EPD.

32. Pressman represented that the interest EPD would pay would exceed the mortgage rate of interest on a home equity loan.

33. Pressman encouraged Art and Joan to invest their entire savings, their home equity, and, after Art's retirement, their IRA funds, with EPD.

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 67 of 185



**b. The Investment.**

34. Beginning in August, 2004, Art and Joan Huerth invested by loaning $1,181,291.00 to EPD by both wires of funds and by checks sent through the mails. The money came from Art and Joan's savings, their IRA account, and several home equity loans. Promissory Demand Notes executed by Pressman were sent through the mail.

35. In 2006, Leslie loaned $10,000.00 to EPD by a check sent through the mails. A Promissory Demand Note executed by Pressman was sent to her through the mail.

36. According to Pressman, the investments would be used to fund private and public companies, and to finance aerospace and other equipment leasing and acquisition operations.

37. In return for the investments of money, Art , Joan and Leslie received demand promissory notes from EPD Investments signed by Jerrold Pressman, which were delivered by mail from EPD in the state of Illinois. (Copies of the notes are attached as group Exhibit B)

38. There are about 50 other investors in EPD including at least six other Illinois residents at the time of investing who made similar investments.

39. Pressman induced Art and Joan to move their IRA retirement account to Fiserv, a self-directed retirement account. Pressman instructed Art and Joan to direct Fiserv to invest the retirement funds in demand notes with EPD. The Fiserv account was later transferred to Polycomp, another self-directed retirement account.

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 8 of 185


40. The loans to EPD paid to Art and Joan monthly interest income, by EPD checks sent to Illinois, approximating a ten to twelve percent return between 2004 and May, 2009. No interest on the loans has been received by them since June 2009.

41. The EPD loan from the funds on deposit in IRA accounts for Art and Joan with Fiserv, later Polycomp, paid cash returns to Art and Joan, by EPD checks sent to Illinois, approximating a ten to twelve percent return between 2004 and June 2009.

42. In June, 2005 Theodore P. Jonavic signed the Fiserv Unsecured Promissory Note Investment Authorization as Loan Servicing Agent for Art and Joan's Fiserv account.

43. In or about spring, 2010 a Polycomp representative informed Art that EPD should not be paying cash returns directly to Art on the EPD note held by the IRA. Rather, he indicated those returns should be paid to the IRA account. In response, Ruben Moreno ("Moreno"), financial officer for EPD, told Art that EPD would "do whatever it wanted."

44. The loan to EPD earned Leslie interest income approximating a ten to twelve percent return between 2004 and June, 2010. All interest earned by Leslie was to be reinvested in the EPD loan account and added to her balance on deposit with EPD.

45. On information and belief, EPD and Pressman represented to Leslie that she was rolling over accrued earnings by sending her periodic financial reports when the earnings did not exist.

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 10 Page 9 of 185


**c. The Safety of the Funds.**

46. At all times and as recently as June 2010, Art, Joan and Leslie have been assured by Pressman and other EPD employees on dozens of occasions that their money was safe.

47. Moreno has repeatedly assured Art, Joan and Leslie that their money was safe.

48. Moreno has prepared periodic accountings and reconciliations for investors including Huerths on their EPD accounts from 2004 through the present.

49. Huerths reasonably relied upon the assurances given to them by Moreno because of his hands-on involvement with the financial details of EPD.

50. Katherine Werner, ("Werner") director of business affairs for Broadway Entertainment, a Pressman owned, related business of EPD, has repeatedly assured Art, Joan and Leslie that their money was safe. Katherine represented herself as a spokesperson for Jerry and as having knowledge of the EPD situation and assured Art and Joan in January, 2010 that she was 95% sure of a payout of funds in mid-January.

51. Huerths reasonably relied upon the assurances given to them by Warner because of her position at EPD, her status as an attorney and her purported access to pertinent information on EPD.

**d. The Entities and the Leases.**

52. Without Art and Joan's informed consent, Pressman used Art and Joan's names to register for an assumed name in Florida – "Huerth Financial Leasing."

53. Without Art and Joan's informed consent, Pressman created a partnership called "AJ Partners" with Art and Joan as general partners in April 2007.

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit Page 10 of 185



The application for tax identification number was submitted to the IRS by Jonavic without Art or Joan's prior knowledge or consent.

54. The Florida "dba" Huerth Financial Leasing was used as the lessor on equipment leases in California, to lessees unknown to the Huerths. The equipment leases are attached hereto as Exhibit C.

55. Four equipment leases dated August 8, 2004 were signed by Art Huerth at Pressman's direction on November 13, 2004 for terms of 42 months.

56. In Lease #L040823-HFL, the Lessor is Huerth Financial Leasing and the lessee is True Position Technologies, Inc. which is owned, in whole or in part, on information and belief, by Pressman or Pressman controlled entities.

57. In Lease #L040823-HFL-2, the Lessor is Huerth Financial Leasing and the lessee is Ice Skating Enterprises, Inc. which is owned, in whole or in part, on information and belief, by Pressman or Pressman controlled entities.

58. In Lease #L040823-HFL-3, the Lessor is Huerth Financial Leasing and the lessee is S.C. Club, L.P. which is owned, in whole or in part, on information and belief, by Pressman or Pressman controlled entities.

59. In Lease #L040823-HFL-4, the Lessor is Huerth Financial Leasing and the lessee is True Position Technologies, Inc. which is owned, in whole or in part, on information and belief, by Pressman or Pressman controlled entities.

60. Each of the four leases was unconditionally guaranteed in writing by Pressman. The guaranties are attached hereto as Exhibit D.

61. The Guaranties each contain an option to renew the equipment lease term for an additional 42 months.

62. According to the original terms of the equipment leases and guaranties, at the end of a lease, the equipment was or would be owned by Pressman, not the Huerths.

63. Despite repeated requests, the Huerths have not seen the equipment, nor its list of serial numbers, nor photographs, nor any bills of sale or other title evidence. Huerths have received no evidence that their equipment ownership interests have been protected or perfected.

64. Pressman, aided by Jonavic, used Art and Joan to create sham businesses so they could purchase equipment with Art and Joan's funds.

65. At all times, and despite Art and Joan's requests for return of the equipment, Pressman retained the equipment.

**e. The Tax Returns.**

66. Jonavic, the accountant recommended and paid for by Pressman and EPD, prepared income tax returns for Art and Joan since Art and Joan's first investment of funds, for tax years 2004 to 2008.

67. Jonavic never spoke telephonically with Art and Joan, his clients, about the preparation of their tax returns.

68. Jonavic electronically filed all of Art and Joan's tax returns without giving them an opportunity to review them in advance of filing.

69. Jonavic claimed incorrectly that Art and Joan had a "home office" for Huerth Financial Leasing on one or more of Art and Joan's income tax returns.

Case 2:10-bk-62208-ER Doc 29-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 10 Page 12 of 185


70. The IRS has disputed or re-characterized certain items of income and deductions taken by Jonavic on Art and Joan's tax returns concerning Huerth Financial Leasing.

71. To date, Art and Joan have no evidence that equipment was ever in fact purchased.

72. The equipment leases were executed in 2004, but were presented again in a modified form to Art and Joan by Pressman and Jonavic in 2009 for signature. The key modification was that ownership of the equipment would remain in Huerth Financial Leasing at the end of the leases. On information and belief this modification was made to create a true lease which would be treated more favorably by the IRS in a pending audit. The lease guaranties were not similarly amended.

73. Pressman told Art and Joan in 2004 that they could use any tax preparer they chose, but if they agreed to use Pressman's accountant, there would never be any charge for the accounting services.

74. On information and belief, Jonavic prepared the tax returns for all EPD investors (numbering approximately 50) except for Leslie.

75. During 2005 through 2010, Art and Joan posed numerous questions about their tax returns and the audit to Jonavic, but Jonavic did not return their phone calls, emails or letters.

76. Art, Joan and Leslie never received any direct tax reporting documents, such as K-1s or 1099s until after their returns were prepared and filed by Janovic, until 2010 when a 2009 K-1 was received.

77. When Jonavic annually mailed the completed tax returns to Art and Joan, he did not explain anything abut the preparation of the return, nor any positions taken on them.

78. Jonavic never discussed taking deductions for a home office with Art and Joan prior to taking those deductions on their tax returns.

79. In 2007 Art and Joan's tax returns for years 2004, 2005, and 2006 were audited. Among other things, the IRS objected to home office deductions and the characterization of passive investment losses as active.

80. In 2009 at the conclusion of the audit, losses originally shown as active were re-characterized as passive; certain deductions for depreciation were taken off of Schedule C "Business Use of Home" and were moved to Schedule E "Rental Income." This resulted in the imposition of additional taxes, penalties and interest on Art and Joan.

81. Art and Joan were not informed that their tax returns as originally filed contained any aggressive or risky tax positions.

82. Art and Joan did not take any active part in the defense of the audit. At Pressman's direction, Jonavic handled all communications with the IRS. Art and Joan provided all documentation requested by Jonavic but had no role in the defense, and have no knowledge of what representations were made on their behalf to the IRS. When they inquired about the progress of the audit, they were told by Pressman's staff that they had done nothing wrong and that everything was being taken care of.

83. The audit ended in November 2009 with the IRS agreeing to offset a large, unrelated investment loss against the taxes and penalties resulting from the audit.

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 10 Page 14 of 185


Instead of receiving a $45,629.00 refund for the unrelated loss, the Huerths received an $7,876.59 refund.

84. In a letter to Art and Joan, Jonavic said the taxpayers conceded to the IRS' position for part of the '04 and '05 matters to divert the IRS from issues pertaining to loans to their children, Wayne Huerth and Leslie Huerth.

85. There never was a true IRS issue regarding any transactions of Wayne or Leslie. The supposed threat was created by Jonavic to play on the emotions of Art and Joan, and to give a rationale for why they should pay $37,752.41 to the IRS.

86. Art and Joan suffered harm as a direct and proximate result of Pressman's and Jonavic's advice that their investment income would be offset by substantial depreciation and would be tax advantaged; and they lost the financial benefit of the refund from the unrelated investment loss.

87. Art and Joan would have pursued alternative investments with valid investment income and tax saving strategies with these monies.

88. Art, Joan and Leslie have made demands for return of the principal under the terms of the demand notes, and for interest due, and for payments due under the equipment leases, but they have not received any payments under these documents or from EPD or Jerrold Pressman since June, 2009.

89. Art and Joan have also demanded turnover of the equipment.

90. In connection with the acts, transactions and conduct alleged herein, Defendants used the means and instrumentalities of interstate commerce, including the United States mails, electronic mail and interstate telephone communications.

91. The Huerths are among many investors (on information and belief, approximately 50 investors) who also have received demand notes for their investments, and have stopped receiving any promised return on their investment.

92. At all times, Pressman, individually and as an agent of EPD, stood in a fiduciary relationship to Art, Joan and Leslie, with Art, Joan and Leslie reasonably reposing trust and confidence in Pressman.

93. At all times Jonavic stood in a fiduciary relationship to Art and Joan, with Art and Joan reasonably reposing trust and confidence in Jonavic.

94. At all times, Moreno and Werner were the agents of EPD and/or Pressman.

95. At all times, EPD stood in a fiduciary relationship with Art, Joan and Leslie who reposed trust and confidence in EPD and its personnel.

96. EPD Investment Leasing Co., LLC was formed by Pressman on May 18, 2010, which is the same date as a hearing was being held in the California state court in the case of Hansel v. EPD Investment Co and Jerrold Pressman, Case No. SC106151, pertaining to the Plaintiff's application for a temporary restraining order and writ of prejudgment attachment on the assets of EPD and Pressman. The Writ of Attachment was granted.

97. The Hansel complaint alleges: her investment in EPD at Pressman's recommendation; her loss of the investment; her legal proceedings with the IRS alleging tax fraud due to unsupported positions taken by Jonavic; and EPD and Pressman's wrongful actions in creating assumed names and preparing possibly phantom equipment leases.

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 16 of 185


98. Upon information and belief, the formation of EPD Investment Leasing Co., LLC was part of a scheme by Pressman to transfer assets and liabilities between entities and avoid creditors.

99. Pressman and his employees have fraudulently schemed to divert the Huerths and other investors from taking any legal action by promising them payments from a variety of ventures, including:

a) Since about June, 2009 Pressman has promised that a certain bank loan would allow him to make payments to investors;

b) Since about October, 2009 and as recently as August, 2010 Pressman described a foreign investor, from Sweden, then later from Switzerland, who was going to invest millions in EPD to avoid the payment of income taxes;

c) In January, 2010, Katherine Werner relayed information to Art from Pressman that the foreign investor's money was being transferred to their bank and it should be received within days.

d) In 2010, Art was told that it was a "done deal" that EPD would have the necessary bond to build infrastructure on lots it owned, and then such lots could be sold to satisfy investors.

e) Pressman told Art and other investors about a pending lawsuit, *Plush Lounge Las Vegas LLC v. Lalji, et al*, Case No: CV08-8394 in the US District Court for the Central District of California, Western Division, which he claims will result in a multimillion dollar recovery, perhaps 100 million dollars for Plush Lounge. Pressman is the owner of Plush Lounge. He

has stated he expects to recover millions and will use the proceeds to pay investors.

f) Pressman sold his residence in summer, 2010 for 7 million dollars. He promised to use the proceeds to pay investors beginning around June 26, 2010.

None of these assurances has resulted in any payment to the Huerths or, on information and belief, to any other investors.

**COUNT I**

**RICO – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT AGAINST EPD, JERROLD PRESSMAN, THEODORE JONAVIC, RUBEN MORENO AND KATHERINE WERNER BY ALL PLAINTIFFS**

100. Paragraphs 1-99 of this Complaint are re-stated and re-alleged here as this paragraph 100.

101. At all relevant times there was in full force and effect a statute known as The Racketeer Influenced and Corrupt Organizations Act (RICO) which provides for a civil cause of action for acts performed as part of an ongoing criminal organization. 18 U.S.C. §1961-68. Section 1962( c) states:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

102. The Defendants EPD, Pressman, Jonavic, Moreno and Werner have engaged in conduct violating the 18 U.S.C § 1962( c) in one or more of the following ways:

Case 2:10-bk-62208-ER Doc 29-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 18 of 185



a. Pressman, Jonavic, Moreno and Werner and EPD staff and employees were employed by or associated with an enterprise, EPD, which engaged in interstate commerce and conducted its affairs through a pattern of racketeering activity designed to solicit funds from individuals, preying upon them and urging them to take high-risk actions to invest, with promises of higher than market rates of return;

b. Pressman and Jonavic created and operated businesses in the name of Art and Joan, without explaining the existence or purpose of the business or its legal or tax consequences, to allegedly purchase equipment, but taking no steps to protect Art and Joan's ownership interest in the equipment, and in fact attempting to retain ownership of the equipment at the lease's end for their own or EPD's benefit;

c. In the alternative, if no equipment was purchased, Pressman and Jonavic misled Art and Joan about the use of the funds obtained from them, and the existence of equipment;

d. Pressman and Jonavic represented that they could provide unique tax strategies to Art and Joan that would limit their tax liability when in fact they had no legal means of doing so;

e. Pressman enticed Art, Joan and Leslie, directly or indirectly, to loan all of their savings, including retirement funds, to EPD, claiming that the funds were safe when in fact the

Case 2:10-bk-62208-ER Doc 29-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 19 of 185


funds were not safe, and the interests of Pressman and Jonavic were not as represented;

f. Pressman, Werner and Moreno repeatedly misled the Huerths about EPD's ability to repay loans, to pay interest, or to fund investments, and about the status of investments;

g. Pressman had conflicts of interest in the business transactions undertaken on behalf of Art and Joan which were undisclosed, and he engaged in conduct calculated to defraud the Huerths of their money.

h. Pressman, Jonavic, Moreno and Werner employed schemes and artifices to delay or prevent the Huerths from taking legal action against them or EPD, by describing various circumstances which would allow EPD to re-pay the Huerths without legal action.

103. The funds received from the Huerths and other investors were, on information and belief, used to support periodic payments to earlier investors, and were never used and invested as had been represented to the new investors.

104. The enterprise engaged in or affected interstate commerce in that EPD through Pressman solicited Art, Joan and Leslie in Illinois and Art and Joan in Florida, and on information and belief, solicited other investors in other states as well.

105. Pressman, Jonavic, Moreno and Werner also communicated repeatedly with the Huerths throughout the years 2004 through 2009 using interstate mails, electronic mail and wires.

Case 2:10-bk-62208-ER Doc 29-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 10 Page 20 of 185



106. Pressman, Moreno and EPD sent periodic written financial reports to the Huerths, which, on information and belief, did not reflect the true status of the invested money.

107. Pressman's activities show a pattern of racketeering activity to commit fraud, including the assurance of above-market returns on investments with no disclosure of risks; the creation of assumed names and partnerships for mere investors; the recommendation of unfounded income tax positions; creating and sending to the Huerths false financial reports; and repeated assurances in 2009 and 2010 that payments to investors would resume upon the occurrence of various expectancies.

108. Jonavic, an associate of, and advisor to, Pressman and the accountant to the Huerths, and upon information and belief, many other similarly situated EPD investors, aided and abetted Pressman in carrying out his fraud on the investors by preparing tax returns based on the fraudulent transactions carried out by Pressman and otherwise assisting him in the execution of this fraud on the noteholders who entrusted their life savings to Pressman and EPD.

109. Moreno and Werner aided and abetted Pressman in carrying out his fraud on the investors by holding themselves out as having information about the financial condition of EPD and the likelihood of future payments to investors, and communicating such information to the Huerths and other investors.

WHEREFORE, Arthur Huerth, Joan Huerth and Leslie Huerth pray that this Court enter:

A. Judgment in their favor and against Pressman, Jonavic, Moreno and Werner for damages exceeding $1,556,807.00;

B. trebled damages;

C. judgment for costs and attorneys fees; and

D. such further relief as the court finds equitable and just..

**COUNT II**

**STOCKBROKER / FINANCIAL ADVISER MISCONDUCT AGAINST JERROLD PRESSMAN BY PLAINTIFFS ARTHUR AND JOAN HUERTH**

110. Paragraphs 1 through 109 of this Complaint are re-stated and re-alleged here as this paragraph 110.

111. At all times herein there was in full force and effect a statute known as The Securities Act of 1933. Section 12 of the Act states:

> (a) IN GENERAL.—Any person who—
> (1) offers or sells a security in violation of section 5, or
> (2) offers or sells a security (whether or not exempted by the provisions of section 3, other than paragraphs (2) and (14) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

112. The investments sold to Art and Joan by Pressman were securities under the terms of the securities Act of 1933 in that they included evidence of indebtedness and a certificate of interest or participation in a profit-sharing agreement and/or an investment contract.

Case 2:10-bk-02268-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 22 of 185


113. Pressman had a duty to share all material information about the investments with Art and Joan prior to their payment of any money.

114. Pressman had a duty to disclose all material information to the Huerths, including basic information about EPD including its business plan, its management team, its proposed use of proceeds and the risks related to its business, and he was prohibited from disclosing materially false or misleading information.

115. Pressman had a duty to fully disclose all risks associated with the investments he recommended, and to disclose any conflicts of interest that might have an effect on his recommendations.

116. On Pressman's recommendation, Art and Joan made investments of money in a common enterprise with the expectation of profits solely from the efforts of others.

117. On Pressman's recommendation, Art and Joan loaned money to EPD or Pressman and received demand promissory notes. These notes are securities and subject to the regulations governing the sale of securities.

118. Pressman breached his duties to Art and Joan by employing devices, schemes, and artifices to defraud by inducing Art and Joan to move their IRA accounts to a brokerage house where the monies could be invested in EPD; by making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, such as one or more of the following:

a. the guaranty that the investments were "safe" and "recession proof";

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 23 of 185


b. that the investments would give Art and Joan tax advantaged income;

c. that the investments would pay a higher rate of interest than the interest paid on a home equity loan;

d. that the funds would be used to purchase and lease equipment or fund various companies;

e. that the funds would be re-paid on demand;

f. that the investment was risk-free;

g. by omitting to state material facts about the risks and legality of the investments;

h. and otherwise misleading Art and Joan.

119. Art and Joan trusted Pressman and reasonably relied on his professional advice in their decision to make investments in EPD.

120. The actions of Defendant Pressman constitute securities fraud.

121. Art and Joan have suffered damages as a direct and proximate result of their reliance on Pressman's statements and omissions, including the loss of their $1,181,291.00 principal investment, the loss of the promised return, the lost opportunity to invest in other investments, the costs associated with transferring accounts to EPD, and the costs and attorneys fees associated with their pursuit of the refund of their money, including the costs and fees associated with this lawsuit.

WHEREFORE, Arthur Huerth and Joan Huerth pray that this Court enter an order granting them:

A. Judgment in an amount in excess of $1, 556,807.00;