B. Judgment for the costs and expenses of this litigation, including attorney fees;

C. Interest from the date of filing through the date of judgment at the default rate; and

D. Such further relief as is equitable and just.

**COUNT III**

**STOCKBROKER / FINANCIAL ADVISER MISCONDUCT AGAINST JERROLD PRESSMAN BY PLAINTIFF LESLIE HUERTH**

122. Paragraphs 1-121 of this Complaint are re-stated and re-alleged here as this paragraph 122.

123. Pressman had a duty to share all material information about the investments with Leslie prior to her payment of any money.

124. Pressman had a duty to disclose all material information to Leslie, including basic information about EPD including its business plan, its management team, its proposed use of proceeds and the risks related to its business, and he was prohibited from disclosing materially false or misleading information.

125. Pressman had a duty to fully disclose all risks associated with the investments he recommended, and to disclose any conflicts of interest that might have an effect on his recommendations.

126. The investments sold to Leslie by Pressman were securities under the terms of the securities Act of 1933 in that they included evidence of indebtedness and a certificate of interest or participation in a profit-sharing agreement and/or an investment contract.

127. On Pressman's recommendation, Leslie made investments of money in a common enterprise with the expectation of profits solely from the efforts of others.

128. Pressman breached his duties to Leslie by employing devices, schemes, and artifices to defraud by making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, such as one or more of the following:

a. the guaranty that the investments were "safe" and "recession proof";

b. that the investments would give Leslie tax advantaged income;

c. that the funds would be used to purchase and lease equipment or fund various companies;

d. that the funds would be re-paid on demand;

e. that the investment was risk-free;

f. by omitting to state material facts about the risks and legality of the investments;

g. and otherwise misleading Leslie.

129. Leslie trusted Pressman and reasonably relied on his professional advice in her decision to make investments in EPD.

130. The actions of Defendant Pressman constitute securities fraud.

131. Leslie has suffered damages resulting from her reliance on Pressman's statements, including the loss of her initial $10,000.00 principal investment, the loss of the promised return which was rolled over into the investment, the lost opportunity to

invest in other investments, the costs associated with transferring accounts to EPD, and the costs and attorneys fees associated with her pursuit of the refund of her money, including the costs and fees associated with this lawsuit.

WHEREFORE, Leslie Huerth prays that this Court enter an order granting her:

A. Judgment in the amount of her investment of $18,000.00;

B. Judgment for the costs and expenses of this litigation, including attorney fees;

C. Interest from the date of filing through the date of judgment at the default rate; and

D. Such further relief as is equitable and just.

**COUNT IV**

**BREACH OF CONTRACT AGAINST EPD INVESTMENT COMPANY BY PLAINTIFFS ARTHUR HUERTH AND JOAN HUERTH**

132. Paragraphs 1-131 of this Complaint are re-stated and re-alleged here as this paragraph 132.

133. Under the terms of the Notes, there is no stated term no other restriction on the bearer's ability to demand repayment of principal .

134. The Note is designated as due "On Demand."

135. The Note provides that if the bearer commences collection proceedings, EPD promises to pay such additional sums as the Court may adjudge to be reasonable attorneys fees.

136. The amount due and owing to Art and Joan for principal and interest as of June 30, 2010 is $1,556,807.00.

Case 2:10-bk-62208-ER Doc 29-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit Page 27 of 185


137. Demand has been made for payment and no payment has been received. See Exhibit E.

138. Art and Joan have fully complied with all of the requirements of the contract. Under the terms of the Note, the Plaintiffs are entitled to attorneys fees and costs of collection.

WHEREFORE, Plaintiffs Arthur Huerth and Joan Huerth pray that this Court enter an order granting them:

A. Judgment in their favor and against Jerrold Pressman in the amount of $1,556,807.00;

B. Judgment for additional interest and fees through the date of judgment;

C. Judgment for all costs and attorneys fees; and

D. Such further relief as is equitable and just.

**COUNT V**

**BREACH OF CONTRACT AGAINST EPD INVESTMENT COMPANY BY PLAINTIFF LESLIE HUERTH**

139. Paragraphs 1-138 of this Complaint are re-stated and re-alleged here as this paragraph 139.

140. Under the terms of the Notes, there is no stated term no other restriction on the bearer's ability to demand repayment of principal .

141. The Note is designated as due "On Demand."

142. The Note provides that if the bearer commences collection proceedings, EPD promises to pay such additional sums as the Court may adjudge to be reasonable attorneys fees.

143. The amount due and owing to Leslie for principal and interest as of June 30, 2010 is $18,041.00

144. Demand has been made for payment and no payment has been received. See Exhibit E.

145. Leslie has fully complied with all of the requirements of the contract. Under the terms of this Note Leslie is entitled to attorneys fees and costs of collection.

WHEREFORE, Leslie Huerth prays that this Court enter an order granting her:

A. Judgment in their favor and against Jerrold Pressman in the amount of $18,041.00;

B. Judgment for additional interest and fees through the date of judgment;

C. Judgment for all costs and attorneys fees; and

D. Such further relief as is equitable and just.

**COUNT VI**

**BREACH OF LEASE AGAINST TRUE POSITION TECHNOLOGIES, INC. BY AJ PARTNERS AND ART AND JOAN HUERTH**

146. Paragraphs 1- 145 of this Complaint are re-stated and re-alleged here as this paragraph 146.

147. Defendant True Position Technologies, Inc. ("True Position") is a California corporation owned and controlled by Pressman.

148. True position executed an Equipment Lease Agreement known as Lease No. L040823-HFL, as lessee, with lessor Huerth Financial Leasing dated August 8, 2004. A copy of the lease is included in group Exhibit C.

149. Under the terms of the equipment lease, True Position agreed to pay to Huerth Financial Leasing $2,486.20 for 42 months.

150. The terms of the Continuing Guaranty executed by Jerrold S. Pressman on October 18, 2004 in consideration of the execution of Lease No. L040823-HFL included the following language:

> "As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. ..."

151. In view of Pressman's ownership of True Position and his continuation of lease payments until June 2009, the lease renewed and Pressman is estopped to claim that the lease did not renew for a second 42-month term.

152. True Position is in default under the terms of the lease.

153. Under the terms of the lease all rental for the remainder of the term is due and owing, including 37 months of rent or $91,989.40 plus late payment penalties, cost of collection and attorneys fees.

WHEREFORE, Arthur Huerth and Joan Huerth individually and dba Huerth Financial Leasing pray that this Court enter:

A. Judgment in their favor and against True Position Technologies, Inc. in the amount of $91,989.40 plus late payment penalties, costs of collection and attorneys fees.

B. such further relief as the court finds equitable and just.

## COUNT VII

## BREACH OF LEASE AGAINST S.C. CLUB, L.P. AND BY ART AND JOAN HUERTH D/B/A HUERTH FINANCIAL LEASING

154. Paragraphs 1-153 of this Complaint are re-stated and re-alleged here as this paragraph 154.

155. Defendant S.C. Club, L.P. ("S.C. Club") is a California limited partnership owned and controlled by Pressman.

156. S.C. Club executed an Equipment Lease Agreement known as Lease No. L040823-HFL-2, as lessee, with lessor Huerth Financial Leasing dated August 8, 2004. A copy of the lease is included in group Exhibit C.

157. Under the terms of the equipment lease, S.C. Club agreed to pay to Huerth Financial Leasing $248.50 for 42 months.

158. The terms of the Continuing Guaranty executed by Jerrold S. Pressman on October 18, 2004 in consideration of the execution of Lease No. L040823-HFL-2 included the following language:

> "As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. ..."

159. In view of Pressman's ownership of S.C. Club and his continuation of lease payments until June 2009, the lease renewed and Pressman is estopped to claim that the lease did not renew for a second 42-month term.

160. S.C. Club is in default under the terms of the lease.

161. Under the terms of the lease all rental for the remainder of the term is due and owing, including 37 months of rent or $9,194.50 plus late payment penalties, cost of collection and attorneys fees.

WHEREFORE, Arthur Huerth, Joan Huerth individually and dba Huerth Financial Leasing pray that this Court enter:

A. Judgment in their favor and against S.C. Club, L.P. in the amount of $9,194.50 plus late payment penalties, costs of collection and attorneys fees.

B. such further relief as the court finds equitable and just.

## COUNT VIII

## BREACH OF LEASE
## AGAINST ICE SKATING ENTERPRISES, INC.
## BY ART AND JOAN HUERTH DBA HUERTH FINANCIAL LEASING

162. Paragraphs 1-161 of this Complaint are re-stated and re-alleged here as this paragraph 162.

163. Defendant Ice Skating Enterprises, Inc. ("Ice Skating") is a California corporation owned and controlled by Pressman.

164. Ice Skating executed an Equipment Lease Agreement known as Lease No. L040823-HFL-3, as lessee, with lessor Huerth Financial Leasing dated August 8, 2004. A copy of the lease is included in group Exhibit C.

165. Under the terms of the equipment lease, Ice Skating agreed to pay to Huerth Financial Leasing $325.00 for 42 months.

166. The terms of the Continuing Guaranty executed by Jerrold S. Pressman on October 18, 2004 in consideration of the execution of Lease No. L040823-HFL-3 included the following language:

> "As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. ..."

167. In view of Pressman's ownership of Ice Skating and his continuation of lease payments until June 2009, the lease renewed and Pressman is estopped to claim that the lease did not renew for a second 42-month term.

168. Ice Skating is in default under the terms of the lease.

169. Under the terms of the lease all rental for the remainder of the term is due and owing, including 37 months of rent or $12,025.00 plus late payment penalties, cost of collection and attorneys fees.

WHEREFORE Arthur Huerth and Joan Huerth individually and dba Huerth Financial Leasing pray that this Court enter:

A. Judgment in their favor and against Ice Skating Enterprises, Inc. in the amount of $12,025.00 plus late payment penalties, costs of collection and attorneys fees.

B. such further relief as the court finds equitable and just.

**COUNT IX**

**BREACH OF LEASE AGAINST TRUE POSITION TECHNOLOGIES, INC. BY ART AND JOAN HUERTH DBA HUERTH FINANCIAL LEASING**

170. Paragraphs 1 through 169 of this Complaint are re-stated and re-alleged here as this paragraph 170.

171. True Position executed an Equipment Lease Agreement known as Lease No. L040823-HFL-4, as lessee, with lessor Huerth Financial Leasing dated August 8, 2004. A copy of the lease is included in group Exhibit C.

172. Under the terms of the equipment lease, True Position agreed to pay to Huerth Financial Leasing $940.30 for 42 months.

173. The terms of the Continuing Guaranty executed by Jerrold S. Pressman on October 18, 2004 in consideration of the execution of Lease No. L040823-HFL-4 included the following language:

> "As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the

same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. ..."

174. In view of Pressman's ownership of True Position and his continuation of lease payments until June 2009, the lease renewed and Pressman is estopped to claim that the lease did not renew for a second 42-month term.

175. True Position is in default under the terms of the lease.

176. Under the terms of the lease all rental for the remainder of the term is due and owing, including 37 months of rent or $34,791.10 plus late payment penalties, cost of collection and attorneys fees.

WHEREFORE, Arthur Huerth, Joan Huerth individually and dba Huerth Financial Leasing pray that this Court enter:

A. Judgment in their favor and against True Position Technologies, Inc. in the amount of $34,791.10 plus late payment penalties, costs of collection and attorneys fees.

B. such further relief as the court finds equitable and just..

**COUNT X**

**ENFORCEMENT OF GUARANTIES AGAINST JERROLD PRESSMAN BY ART AND JOAN HUERTH DBA HUERTH FINANCIAL LEASING AND AJ PARTNERS**

177. Paragraphs 1-176 of this Complaint are re-stated and re-alleged here as this paragraph 177.

178. The amounts now due and owing under each equipment lease are as follows:

Lease #L040823-HFL $91,989.40

Lease #L040823-HFL-2 $9,194.50

| | |
|---|---|
| Lease #L040823-HFL-3 | $12,025.00 |
| Lease #L040823-HFL-4 | $34,791.10 |
| Total | $148,000.00 |

179. Under the terms of the guaranties, Pressman is responsible for payment of all sums due under the leases including costs and attorneys fees.

180. Written notice of default has been served upon the lessees.

181. Under the terms of the guaranties Pressman has waived demand.

WHEREFORE, Arthur Huerth and Joan Huerth d/b/a/ Huerth Financial Leasing pray that this Court:

A. Grant judgment in their favor and against Jerrold Pressman under the terms of the guaranties in the amount of $148,000.00 plus costs and attorneys fees;

B. such further relief as this Court deems equitable and just.

**COUNT XI**

**COMMON LAW FRAUD AGAINST JERROLD PRESSMAN BY PLAINTIFFS ARTHUR HUERTH AND JOAN HUERTH AND AJ PARTNERS**

182. Paragraphs 1-181 of this Complaint are re-stated and re-alleged here as this paragraph 181.

183. Art and Joan met Defendant Pressman in 2000.

184. Pressman represented himself to be a financial consultant, advisor, and tax expert. Pressman is not a licensed attorney or certified public accountant.

185. Pressman made false statements of material fact to Art and Joan, including but not limited to statements:

a. That their investment would be a loan and would pay regular interest at higher than market rates;

b. That the demand feature of the loan would be honored because EPD had sufficient assets, and Art and Joan would receive back their principal invested at any time upon demand;

c. That their retirement assets would be safely invested in EPD or other Pressman investments;

d. That it was reasonable and customary for EPD to be owner of the leased equipment at the end of the lease.

186. Pressman's false statements included the following omissions:

a. Omission to give full and accurate information pertaining to the investment of the invested funds and the risks involved as required by state and federal securities laws;

b. Omission to explain the ramifications of registering the assumed name Huerth Financial Leasing in Florida;

c. Omission to request Art and Joan's authority and permission to form a partnership and to obtain an employer identification number for the entity;

187. Pressman knew that the statements were false, and that, in fact, he would use Art and Joan's investment of principal to pay them and other investors monthly sums, in effect, upon information and belief, a *Ponzi* scheme.

188. Pressman intended that the false statements and omissions would induce Art and Joan to invest large sums of money according to his direction.

189. Art and Joan reasonably relied upon the truth of Pressman's statements in their decision to invest as Pressman directed.

190. Pressman's conduct was willful and wanton, in that he extracted Art and Joan's life savings including their retirement savings for his fraudulent scheme.

191. As a direct and proximate cause of Art and Joan having suffered damages resulting from their reliance on Pressman's statements, including the loss of their $1,556,807.00 principal investment, the loss of the promised return, the lost opportunity to invest in other investments, the costs associated with transferring accounts to EPD, and the costs and attorneys fees associated with their pursuit of the refund of their money, including the costs and fees associated with this lawsuit.
plus late payment penalties, costs of collection and attorneys fees.

WHEREFORE, Arthur Huerth and Joan Huerth pray that this Court enter an order granting them:

A. judgment in their favor and against Jerrold Pressman in the amount of $1,556,807.00, plus punitive damages, costs and attorneys fees.

B. such further relief as this Court deems equitable and just.

**COUNT XI**

**COMMON LAW FRAUD AGAINST JERROLD PRESSMAN BY PLAINTIFF LESLIE HUERTH**

192. Paragraphs 1- 191 of this Complaint are re-stated and re-alleged here as this paragraph 192.

193. Pressman represented himself to be a financial consultant, advisor, and tax expert. Pressman is not a licensed attorney or certified public accountant.

194. Pressman made false statements of material fact to Art, Joan and Leslie including but not limited to statements:

a. That her investment would be a loan and would pay regular interest at higher than market rates;

b. That the demand feature of the loan would be honored because EPD had sufficient assets, and Leslie would receive back her principal invested at any time upon demand.

195. Pressman's false statements included the omission to give full and accurate information pertaining to the investment of the invested funds and the risks involved as required by state and federal securities laws.

196. Pressman knew that the statements were false, and that, in fact, he would use Leslie's investment of principal to pay her and other investors monthly sums, in effect, upon in formation and belief, a *Ponzi* scheme.

197. Pressman intended that the statements would induce Leslie to invest large sums of money according to his direction.

198. Leslie reasonably relied upon the truth of Pressman's statements in her decision to invest as Pressman directed.

199. Pressman's conduct was willful and wanton, in that he extracted significant funds from Leslie for his fraudulent scheme.

200. Leslie has suffered damages resulting from her reliance on Pressman's statements, including the loss of her $10,000.00 principal investment, the loss of the promised return, the lost opportunity to invest in other investments, and the costs and attorneys fees associated with her pursuit of the refund of her money, including the costs and fees associated with this lawsuit.

WHEREFORE, Leslie Huerth prays this honorable Court enter an order granting her:

A. judgment in her favor and against Jerrold Pressman in the amount of $18,000.00, plus punitive damages, costs and attorneys fees.

B. such further relief as this Court deems equitable and just.

**COUNT XII**

**NEGLIGENCE-ACCOUNTING MALPRACTICE AGAINST THEODORE JONAVIC**

201. Paragraphs 1-200 of this Complaint are re-stated and re-alleged here as this paragraph 201.

202. In 2004 and 2005 Pressman urged the use of accountant Theodore Jonavic to Art and Joan for the preparation of their tax returns.

203. Art and Joan, in reliance on the advice of Pressman, hired Jonavic to prepare their income tax returns from 2004 through 2008.

204. As a certified public accountant, Jonavic had certain duties to Art and Joan including:

a. A duty to use reasonable care in advising his clients in accounting matters;

b. A duty to use reasonable care in the preparation of tax returns for his clients, and to ascertain the clients' wishes regarding risky or uncertain tax positions;

c. A duty to prepare the tax returns of the client applying the standard of care for accountants and GAAP principles; and

d. A duty to use reasonable care in performing due diligence for the client with regard to their EPD investments.

205. Jonavic breached the duties owed to Art and Joan in at least the following ways:

a. Jonavic failed to advise Art and Joan that certain positions taken on their income tax returns were likely to be questioned or disallowed by the I.R.S.;

b. Jonavic prepared income tax returns for Art and Joan with errors, or with positions unlikely to be accepted by the I.R.S., such as claiming a home-office deduction, without prior consultation with Art and Joan, and with knowledge that certain positions were inaccurate;

c. Jonavic acted at the direction of Pressman, and not in the best interests of Art and Joan, which is a violation of his duty of independence and to avoid conflicts of interest;

d. Jonavic participated in the creation of phantom entities on behalf of Art and Joan;

e. Jonavic did not give Art and Joan any independent advice about the tax strategy of creating phantom entities to lease phantom or unidentified equipment, especially when there was no indicia of ownership by the Huerth Financial Leasing, AJ Partners or Art and Joan;

f. Jonavic ignored "red flags" in the EPD investments that obligated him to conduct further investigation and due diligence for his clients invested in EPD; and

g. Otherwise failing to accounting advice that meets the standard of care of a certified public accountant.

206. Had Jonavic not breached his duties to Art and Joan, their losses would not have occurred, or would have been minimized.

207. Art and Joan were injured by Jonavic in that they underwent an audit for their income tax returns for 2004 and 2005, which procedure was emotional, time-consuming and expensive, and which resulted in the imposition of $37,752.41 in additional taxes, interest and penalties.

208. Jonavic's breach was the proximate cause of the injury.

WHEREFORE, Art and Joan pray this honorable Court enter an order granting them:

A. judgment in her favor and against Jonavic in the amount of $80,000.00, plus punitive damages, costs and attorneys fees.

B. such further relief as this Court deems equitable and just.

**COUNT XIII**

**CONSUMER FRAUD AGAINST JERROLD PRESSMAN, THEODORE JONAVIC, KATHERINE WERNER AND RUBEN MORENO BY ALL PLAINTIFFS**

209. Paragraphs 1 through 208 of this Complaint are re-stated and re-alleged here as this paragraph 209.

210. At all relevant times herein there was in effect in Illinois a statute known as the Consumer Fraud and Deceptive Business Practices Act, which provides at section 2:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act. 815 ILCS 505/2) (from Ch. 121 1/2, par. 262.)"

211. The allegations set forth in Count I, Count II, Count III, Count XI, paragraph 98 herein constitute violations of the Illinois Consumer Fraud Act.

212. The conduct engaged in was willful or intentional and done with intent that Plaintiffs rely upon the misrepresentations, concealed facts, and the deceptive practices of the Defendants in making and continuing their investment in EPD. The Plaintiffs suffered actual damages due to Pressman's violations.

213. Based upon the conduct of Defendants, Plaintiffs are entitled to punitive damages, costs and attorneys fees.

WHEREFORE, Huerths pray that this honorable Court:

A. Grant judgment in their favor and against Defendants in the amount of $1,556,807.00 for Art and Joan, and $18,000.00 for Leslie, judgment for punitive damages three times actual damages, costs and attorneys fees,

B. plus such other and further relief as this Court deems equitable and just.

## COUNT XIV

## FRAUDULENT CONCEALMENT AGAINST JERROLD PRESSMAN, KATHERINE WERNER AND RUBEN MORENO BY ALL PLAINTIFFS

214. Paragraphs 1 through 213 of this Complaint are re-stated and re-alleged here as this paragraph 214.

215. At all times herein, Huerths reposed their trust and confidence in Defendant Pressman.

216. Since June of 2009, when monthly payments to Art, Joan and Leslie ended, Huerths have made diligent inquiry to Pressman about why they were not receiving payments.

217. As demonstrated by the emails attached in Group Exhibit F, Pressman and his staff have proffered a wide variety of excuses about why they are unable to make payments, and have done all things necessary to engender a sense of security in Art and Joan that payments would be forthcoming so that they would not take legal action.

218. The representations made by Pressman and his representatives in Exhibit F and paragraph 98 hereof were untrue.

219. The conduct of Pressman, Werner, Moreno and their staff is active fraudulent concealment. By their actions, Defendants have caused Art, Joan and Leslie to hold their positions; further, on information and belief, during the past twelve months or more, Pressman has dissipated his assets and the assets of EPD previously available to repay claims.

220. As a direct and proximate result of Defendants' actions Plaintiffs have been injured.

WHEREFORE Plaintiffs pray that the Court order:

A. Defendants to account for all assets dissipated since June of 2009

B. For judgment in the amount of $1,556,807.00 plus punitive damages, costs and attorneys fees,

C. And such other and further relief as this Court deems just.

**COUNT XV**

**BREACH OF FIDUCIARY DUTY AGAINST JERROLD PRESSMAN**

221. Paragraphs 1 through 220 of this Complaint are re-stated and re-alleged here as this paragraph 221.

222. At all times herein Pressman had a fiduciary duty to Huerths.

223. The Huerths reposed trust and confidence in Pressman.

224. Pressman has violated his fiduciary duties to the Huerths in one or more of the following ways:

a. Failure to fully disclose the investment risks for the funds solicited from the Huerths;

b. Acting to involve the Huerths unwittingly in asserting tax positions that were legally unsupported;

c. Holding himself out as a tax expert;

d. Persuading the Huerths that he had superior knowledge of the tax laws that would allow them to save money on tax liabilities;

e. Failure to account for the monies lent and why they cannot be re-paid;

f. Failure to account for the equipment purportedly purchased with the Huerths' money, or the related leases;

225. As a direct and proximate cause of Pressman's breach of fiduciary duty, the Huerths have been damaged in an undetermined amount exceeding $1,000,000.00

WHEREFORE, Arthur Huerth, Joan Huerth and Leslie Huerth pray that this honorable court enter an order granting:

A. judgment in their favor and against Pressman in an amount exceeding $1,000,000.000 plus punitive damages, plus costs and fees, and

B. such other and further relief as the court deems just.

**COUNT XVI**

**BREACH OF FIDUCIARY DUTY AGAINST THEODORE JONAVIC BY ART AND JOAN**

226. Paragraphs 1 through 225 of this Complaint are re-stated and re-alleged here as this paragraph 226.

227. At all times herein Jonavic, as a registered representative, securities broker and certified public accountant, had a fiduciary duty to Art and Joan.

228. Art and Joan reposed trust and confidence in Jonavic.

229. At Pressman's request, Jonavic was given a power of attorney from Art and Joan to handle all of their tax matters.

230. Jonavic has violated his fiduciary duties to Art and Joan in one or more of the following ways:

a. Acting to involve the Huerths unwittingly in asserting tax positions that were created by Pressman but were legally unsupported;

b. Repeatedly refusing to communicate with the Huerths regarding tax and accounting positions taken on their behalf;

c. Failure to disclose his relationship with Pressman and the conflict of interest resulting from that relationship;

d. Continuing failure to warn the Huerths that the investments in EPD were posing substantial risks to Huerth's financial health, especially the investment of their entire IRA account;

e. Failure to fully explain to Art and Joan that fictitious names and a partnership entity were created and used for them; and a failure to inform Art and Joan of the tax and legal consequences of operating in partnership form or under an assumed name;

f. Failure to keep Art and Joan fully informed about the progress of the audit;

g. Advising Art and Joan that the tax case was settled to avoid the possibility that the IRS would pursue claims against Art and Joan's children when, in fact, the case was not settled, it was decided in the tax court, and there was no real risk of the IRS pursuing the children of Art or Joan.

h. Generally failing to protect the financial interest of Art and Joan.

231. As a direct and proximate cause of Jonavic's breach of fiduciary duties, AJ Partners, Art and Joan have been damaged in an undetermined amount exceeding $1,000,000.00

WHEREFORE, Arthur Huerth and Joan Huerth pray that this Court enter an order granting:

A. judgment in their favor and against Jonavic in an amount exceeding $1,000,000.000 plus punitive damages, plus costs and attorneys fees,

B. plus such other and further relief as the court deems just.

**COUNT XVII**

**ALTER EGO AGAINST JERROLD PRESSMAN**

232. Paragraphs 1 through 231 of this Complaint are re-stated and re-alleged here as this paragraph 232.

233. Pressman has treated EPD as his "alter ego," rather than as a separate entity in the following ways:

a. Pressman acted in bad faith in fraudulently inducing the Huerths to invest money in EPD and then using that money for other enterprises;

b. Pressman has used a series of corporate and LLC entities as a shield against personal liability;

c. Pressman has diverted assets from entity to entity to the detriment of creditors and investors;

d. EPD is wholly owned by Pressman;

e. Pressman and EPD used the same office or business location;

f. Pressman and EPD have employed the same attorney and accountant;

g. Pressman used EPD to procure capital, labor, services and/or merchandise for himself and for other entities owned by him;

h. EPD was not adequately capitalized;

i. On information and belief, EPD failed to maintain minutes or adequate corporate records.

234. Upholding the EPD entity distinction and allowing for the owner/member to escape personal liability for entity debts to Plaintiffs would sanction a fraud or promote an injustice and would be inequitable in that Pressman would avoid the financial consequences of his wrongful actions.

WHEREFORE, Plaintiffs request that all judgments entered herein against EPD Leasing Co., LLC, EPD Group, True Positions Technologies, Ice Skating Enterprises and S.C. Club, L.P. be entered as personal judgments against Jerrold Pressman.

**COUNT XVIII**

**SUCCESSOR LIABILITY AGAINST EPD INVESTMENT LEASING CO LLC**

235. Paragraphs 1 through 234 of this Complaint are re-stated and re-alleged here as this paragraph 235.

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 48 of 485



236. Pressman was the owner and director, officer or managing member of EPD and is the owner and director, officer or managing partner of EPD Investment Leasing Co, LLC ("EILC").

237. On information and belief, EILC purchased some or all of the assets or membership interests of EPD.

238. On information and belief, inadequate consideration was paid by EILC for EPD assets.

239. EILC operates with the same personnel, management, physical location and general business operations as EPD.

240. Both EPD and EILC use the assumed name "EPD Group."

241. Pressman's formation of the EILC entity occurred in May, 2010, during the pendency of Plaintiffs' inquiries and demands for repayment under the notes, leases and guaranties of Pressman.

242. Pressman intended to hinder, delay or defraud Plaintiffs and EPD's other creditors with the formation of EILC and the sale of EPD assets to the new entity.

243. EPD is unable to pay its liabilities.

244. EILC is liable for all claims of Plaintiffs against EPD because EILC's formation was:

a) a de facto merger or consolidation with EPD;

b) a mere continuation of EPD; and / or

c) a violation of Cal. Civ. Code §3439.04 (The Uniform Fraudulent Transfer Act) in that the transfer made by EPD to EILC is fraudulent as to a

Plaintiffs as EPD made the transfer as with actual intent to hinder, delay, or defraud Plaintiffs.

WHEREFORE, Plaintiffs request that all judgments entered herein against EPD Investment Co., LLC or EPD Group, be entered as judgments against EPD Investment Leasing Co., LLC.

Respectfully submitted,

Plaintiffs, Arthur Huerth, Joan Huerth, individually and d/b/a/ Huerth Financial Leasing, AJ Partners, and Leslie Huerth

By: /s/ Sara E. Cook

Sara E. Cook
ARDC 03126995
scook@mckenna-law.com
Patricia C. Kraft
ARDC 6190990
pkraft@mckenna-law.com
McKenna Storer
666 Russel Ct., Ste 303
Woodstock, IL 60098(815) 334-9692

# EPD INVESTMENT COMPANY

May 11, 2000

CONFIDENTIAL

Mr. Art Huerth
VIA FACSIMILE: (262) 275-3337

Dear Art:

As promised, this is a review of the estimated scenario of the transaction we discussed on the phone. Effectively, I will purchase your home for one million, three hundred and thirty thousand dollars ($1,330,000.00) with a two hundred and fifty thousand dollar ($250,000) down payment (to pay off loan) and an installment note for the balance of one million, eighty thousand dollars ($1,080,000.00) at twelve percent (12%) payable interest only for a defined period of time with the principal being deferred until a particular time when we might create a situation to allow you to take the gain into your estate without being taxable. Then I will sell it for cash to the buyer for one million, three hundred and thirty four thousand dollars ($1,340,000), taking the ten thousand dollar ($10,000) profit to justify the economic requirement of the transaction. I intend to return the ten thousand to you at a later date.

Our company will then, in turn, loan you as bridge financing three hundred and forty thousand ($340,000.) dollars at twelve percent (12%) interest for you to purchase your new home while you obtain a conventional bank loan. Accomplishing that, you will generate a tax deduction for substantially all of the monthly payments to the bank during the first years, while using the three hundred and forty thousand dollar ($340,000) down payment, that you will be able to reinvest into leases, so that it can generate twelve percent (12%) interest and flow to your tax return substantial depreciation effectively allowing seventy percent (70%) of the investment to be deducted as soft tax losses in the first three years to be used to offset against regular income.

The above scenario is a win-win allowing you tax deferral for the sale of your home, high return, twelve percent (12%) or twelve point eight percent (12.8%) compounded annually, secured investment and the ability to diminish your tax liabilities completely over the next two years.

I will call Kim tomorrow and start the ball rolling to respond to the June 15th ,2000 closing.

If there is anything more that I can explain to you by phone, please feel free to give me a call at (310) 451-4832. Otherwise, I look forward to meeting you in person in the near future so that we can explore your tax goals in detail.

EXHIBIT A

# EPD INVESTMENT COMPANY

**$400,000.00**

**Santa Monica, California**
**Via Wire**
**Deposit Date: 08/23/04**

**For value received, EPD Investment Company promises to pay to the order of Art Huerth, at Santa Monica, California, Four Hundred Thousand Dollars and No/100 ($400,000.00) in lawful money of the United States of America, bearing an interest rate of twelve (12.0%) percent per annum.**

**Additional deposits submitted by the bearer will be acknowledged in writing and such documents will serve as an addendum to the note, adjusting the amount herewith. Withdrawals requested by the bearer affecting the principal amount of the note will be acknowledged by an account schedule and will decrease accordingly, without revision and re-issue of the original note.**

**Should collection commence to enforce payment of this Note, EPD Investment Company promises to pay such additional sum, as the Court may adjudge reasonable as attorneys' fees.**

**EPD INVESTMENT COMPANY**

**NO. 040823-AH**
**Art Huerth**

**DUE: **On Demand****

EXHIBIT B

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 10 Page 32 of 185


**EPD INVESTMENT COMPANY, LLC**
**Deposit Acknowledgement**

**$50,000.00**

**Via Check No. 3397**
**Deposit Date: 04-25-05**

A principal deposit in the amount of Fifty Thousand Dollars and No/100 ($50,000.00) in lawful money of the United States of America was credited to your EPD Investment Company, LLC account number listed below. Interest on this deposit will begin accumulating on the deposit date noted above at the current interest rate for this account.

This signed deposit acknowledgement serves as an addendum to your original note from EPD Investment Company, LLC. Please keep this with your records for future reference.

**EPD INVESTMENT COMPANY, LLC**

**Acct No. 040823-AH**
**Art Huerth**

**Note Addendum**

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 10 Page 33 of 135


**EPD INVESTMENT COMPANY, LLC**
**Deposit Acknowledgement**

**$15,000.00**

**Via Check No. 3494**
**Deposit Date: 07-26-05**

A principal deposit in the amount of Fifteen Thousand Dollars and No/100 ($15,000.00) in lawful money of the United States of America was credited to your EPD Investment Company, LLC account number listed below. Interest on this deposit will begin accumulating on the deposit date noted above at the current interest rate for this account.

This signed deposit acknowledgement serves as an addendum to your original note from EPD Investment Company, LLC. Please keep this with your records for future reference.

**EPD INVESTMENT COMPANY, LLC**

**Acct No. 040823-AH**
**Art Huerth**

**Note Addendum**

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 10 Page 54 of 185


**EPD INVESTMENT COMPANY, LLC**
**Deposit Acknowledgement**

**$10,000.00**

**Via Check No. 3505**
**Deposit Date: 08-08-05**

**A principal deposit in the amount of Ten Thousand Dollars and No/100 ($10,000.00) in lawful money of the United States of America was credited to your EPD Investment Company, LLC account number listed below. Interest on this deposit will begin accumulating on the deposit date noted above at the current interest rate for this account.**

**This signed deposit acknowledgement serves as an addendum to your original note from EPD Investment Company, LLC. Please keep this with your records for future reference.**

**EPD INVESTMENT COMPANY, LLC**

# EPD INVESTMENT COMPANY, LLC

$400,000.00

Santa Monica, California
Via Check nos.: 1015 & 1016
Deposit Date: 04/07/2006

For value received, EPD Investment Company, LLC promises to pay to the order of Art Huerth, at Santa Monica, California, Four Hundred Thousand Dollars and No/100 ($400,000.00) in lawful money of the United States of America, bearing an interest rate of twelve (12.0%) percent per annum.

Additional deposits submitted by the bearer will be acknowledged in writing and such documents will serve as an addendum to the note, adjusting the amount herewith. Withdrawals requested by the bearer affecting the principal amount of the note will be acknowledged by an account schedule and will decrease accordingly, without revision and re-issue of the original note.

Should collection commence to enforce payment of this Note, EPD Investment Company, LLC promises to pay such additional sum, as the Court may adjudge reasonable as attorneys' fees.

EPD INVESTMENT COMPANY, LLC

NO. 060407-AH
Art Huerth

DUE: **On Demand**

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 10 Page 56 of 185


**EPD INVESTMENT COMPANY, LLC**
**Deposit Acknowledgement**

**$40,000.00**

**Via Check Nos. 3795, 7044, 3269**
**Deposit Date: 10/10/06**

**A principal deposit in the amount of Forty Thousand Dollars and No/100 ($40,000.00) in lawful money of the United States of America was credited to your EPD Investment Company, LLC account number listed below. Interest on this deposit will begin accumulating on the deposit date noted above at the current interest rate for this account.**

**This signed deposit acknowledgement serves as an addendum to your original note from EPD Investment Company, LLC. Please keep this with your records for future reference.**

**EPD INVESTMENT COMPANY, LLC**

**Acct No. 040823-AH**
**Art Huerth**

**Note Addendum**

**EPD INVESTMENT COMPANY, LLC**
**Deposit Acknowledgement**

**$50,000.00**

**Via Check No. 3802**
**Deposit Date: 07/30/07**

A principal deposit in the amount of Fifty Thousand Dollars and No/100 ($50,000.00) in lawful money of the United States of America was credited to your EPD Investment Company, LLC account number listed below. Interest on this deposit will begin accumulating on the deposit date noted above at the current interest rate for this account.

This signed deposit acknowledgement serves as an addendum to your original note from EPD Investment Company, LLC. Please keep this with your records for future reference.

EPD INVESTMENT COMPANY, LLC

Acct No. 060407-AH
Art Huerth

Note Addendum

## CONTINUING GUARANTY

In consideration of the execution of Lease No. L040823-HFL between HUERTH FINANCIAL LEASING ("Lessor"), and TRUE POSITION TECHNOLOGIES, INC. ("Lessee"), and as a material inducement to enter into said lease, Pressman hereby unconditionally and irrevocably guarantees the prompt payment by Lessee of all amounts due and payable under the terms of Lease No. L040823-HFL ("the Lease").

It is specifically agreed that the terms of the foregoing lease may be modified only by agreement between Lessor and Lessee as to course of conduct, and said lease may be assigned by Lessor as to the Lease, or any assignee of Lessor or Lessee without consent or notice to Pressman, and that this Guaranty shall guarantee the performance of said lease so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Lessor as to the Lease to enforce any of the rights or remedies of the Lessor whether pursuant to the terms thereof or at law or in equity.

No notice of default need be given to Pressman, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Lessor may proceed immediately against Pressman following any breach or default by Lessee or for the enforcement of any rights which Lessor may have as against Lessee under the terms of the Lease at law or in equity. Lessor shall have the right to proceed against Pressman hereunder following any breach or default by Lessee of the Lease after 10 days written notice to Lessee.

Pressman hereby waives (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations relating to this Guaranty, (d) any right to require Lessor to proceed against Lessee, or any other person or entity liable to Lessor, (e) any right to require Lessor to apply to any default, any security deposit or other security it may hold under the Lease, (f) any right to require Lessor or Lessee to proceed under any other remedy Lessor or Lessee may have before proceeding against Pressman, and (g) any right of subrogation.

*As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. Upon the termination of the second Lease, Lessor agrees to pass title to the leased equipment to Pressman or his assignor upon receiving payment in full under the terms of the Lease.*

In the event any action be brought by said Lessor against Pressman hereunder to enforce this obligation of Pressman's hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee which shall be fixed by the Court.

Executed at Santa Monica, California, on 10 18, 2004.

[signature]

Jerrold S. Pressman

EXHIBIT D

# CONTINUING GUARANTY

In consideration of the execution of Lease No. L040823-HFL-2 between HUERTH FINANCIAL LEASING ("Lessor"), and S.C. CLUB, L.P. ("Lessee"), and as a material inducement to enter into said lease, Pressman hereby unconditionally and irrevocably guarantees the prompt payment by Lessee of all amounts due and payable under the terms of Lease No. L040823-HFL-2 ("the Lease").

It is specifically agreed that the terms of the foregoing lease may be modified only by agreement between Lessor and Lessee as to course of conduct, and said lease may be assigned by Lessor as to the Lease, or any assignee of Lessor or Lessee without consent or notice to Pressman, and that this Guaranty shall guarantee the performance of said lease so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Lessor as to the Lease to enforce any of the rights or remedies of the Lessor whether pursuant to the terms thereof or at law or in equity.

No notice of default need be given to Pressman, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Lessor may proceed immediately against Pressman following any breach or default by Lessee or for the enforcement of any rights which Lessor may have as against Lessee under the terms of the Lease at law or in equity. Lessor shall have the right to proceed against Pressman hereunder following any breach or default by Lessee of the Lease after 10 days written notice to Lessee.

Pressman hereby waives (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations relating to this Guaranty, (d) any right to require Lessor to proceed against Lessee, or any other person or entity liable to Lessor, (e) any right to require Lessor to apply to any default, any security deposit or other security it may hold under the Lease, (f) any right to require Lessor or Lessee to proceed under any other remedy Lessor or Lessee may have before proceeding against Pressman, and (g) any right of subrogation.

*As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. Upon the termination of the second Lease, Lessor agrees to pass title to the leased equipment to Pressman or his assignor upon receiving payment in full under the terms of the Lease.*

In the event any action be brought by said Lessor against Pressman hereunder to enforce this obligation of Pressman's hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee which shall be fixed by the Court.

Executed at Santa Monica, California, on 10-18-, 2004.

[signature]
Jerrold S. Pressman

## CONTINUING GUARANTY

In consideration of the execution of Lease No. L040823-HFL-3 between HUERTH FINANCIAL LEASING ("Lessor"), and ICE SKATING ENTERPRISES, INC. ("Lessee"), and as a material inducement to enter into said lease, Pressman hereby unconditionally and irrevocably guarantees the prompt payment by Lessee of all amounts due and payable under the terms of Lease No. L040823-HFL-3 ("the Lease").

It is specifically agreed that the terms of the foregoing lease may be modified only by agreement between Lessor and Lessee as to course of conduct, and said lease may be assigned by Lessor as to the Lease, or any assignee of Lessor or Lessee without consent or notice to Pressman, and that this Guaranty shall guarantee the performance of said lease so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Lessor as to the Lease to enforce any of the rights or remedies of the Lessor whether pursuant to the terms thereof or at law or in equity.

No notice of default need be given to Pressman, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Lessor may proceed immediately against Pressman following any breach or default by Lessee or for the enforcement of any rights which Lessor may have as against Lessee under the terms of the Lease at law or in equity. Lessor shall have the right to proceed against Pressman hereunder following any breach or default by Lessee of the Lease after 10 days written notice to Lessee.

Pressman hereby waives (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations relating to this Guaranty, (d) any right to require Lessor to proceed against Lessee, or any other person or entity liable to Lessor, (e) any right to require Lessor to apply to any default, any security deposit or other security it may hold under the Lease, (f) any right to require Lessor or Lessee to proceed under any other remedy Lessor or Lessee may have before proceeding against Pressman, and (g) any right of subrogation.

*As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. Upon the termination of the second Lease, Lessor agrees to pass title to the leased equipment to Pressman or his assignor upon receiving payment in full under the terms of the Lease.*

In the event any action be brought by said Lessor against Pressman hereunder to enforce this obligation of Pressman's hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee which shall be fixed by the Court.

Executed at Santa Monica CA, California, on 10.18., 2004.

[signature]
Jerrold S. Pressman

## CONTINUING GUARANTY

In consideration of the execution of Lease No. L040823-HFL-4 between HUERTH FINANCIAL LEASING ("Lessor"), and TRUE POSITION TECHNOLOGIES, INC. ("Lessee"), and as a material inducement to enter into said lease, Pressman hereby unconditionally and irrevocably guarantees the prompt payment by Lessee of all amounts due and payable under the terms of Lease No. L040823-HFL-4 ("the Lease").

It is specifically agreed that the terms of the foregoing lease may be modified only by agreement between Lessor and Lessee as to course of conduct, and said lease may be assigned by Lessor as to the Lease, or any assignee of Lessor or Lessee without consent or notice to Pressman, and that this Guaranty shall guarantee the performance of said lease so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Lessor as to the Lease to enforce any of the rights or remedies of the Lessor whether pursuant to the terms thereof or at law or in equity.

No notice of default need be given to Pressman, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Lessor may proceed immediately against Pressman following any breach or default by Lessee or for the enforcement of any rights which Lessor may have as against Lessee under the terms of the Lease at law or in equity. Lessor shall have the right to proceed against Pressman hereunder following any breach or default by Lessee of the Lease after 10 days written notice to Lessee.

Pressman hereby waives (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations relating to this Guaranty, (d) any right to require Lessor to proceed against Lessee, or any other person or entity liable to Lessor, (e) any right to require Lessor to apply to any default, any security deposit or other security it may hold under the Lease, (f) any right to require Lessor or Lessee to proceed under any other remedy Lessor or Lessee may have before proceeding against Pressman, and (g) any right of subrogation.

*As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. Upon the termination of the second Lease, Lessor agrees to pass title to the leased equipment to Pressman or his assignor upon receiving payment in full under the terms of the Lease.*

In the event any action be brought by said Lessor against Pressman hereunder to enforce this obligation of Pressman's hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee which shall be fixed by the Court.

Executed at SANTA MONICA, California, on 10-18, 2004.

[signature]
Jerrold S. Pressman

If the full amount due under the demand notes for Art, Joan and Leslie are not paid by cashier's check or by wire to my client trust account[1] on or before July 9, 2010, suit will be filed in the Federal District Court for the Northern District of Illinois against each of you and any other individuals we identify as participants in the misconduct against the Huerths. Most likely this will include, at a minimum, Thom Ferro. Theories of recovery will include RICO claims, Securities Fraud, Consumer Fraud and Deceptive Trade Practices, common law fraud, breach of fiduciary duty, breach of contract and professional negligence. These causes of action allow for treble damages, punitive damages, and the recovery of attorneys fees and costs. A draft of our pleading is enclosed.

The Huerths have very patiently attempted to find out what has happened to their investments. Your trail of communication over the past year has been confusing and often deliberate obfuscation. The abrupt end to payments suggests fundamental flaws in the program you were running for so called "investors". They have a right to payment in full upon demand, and such payment needs to be made immediately. Otherwise they have no choice but to aggressively pursue all legal remedies available to them.

If you are represented by counsel, please forward this letter to him or her and we will direct our future communications to your attorney. All of your communications to the Huerths should be directed to me. Thank you for your anticipated cooperation.

Very truly yours,

Sara E. Cook

cc: Arthur and Joan Huerth

[1] Please contact me at 815-334-9692 for wire instructions.

**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth[redacted]@embarqmail.com] |
| **Sent:** | Tuesday, June 01, 2010 11:02 AM |
| **To:** | jerry@broadwayentertainment.com |
| **Subject:** | Investor Information Requested |

June 1, 2010

Dear Jerry,

We have had no verbal conversation with you since November 2009. Our last interest payment on our invested money was post marked 7/01/09 and the check enclosed was dated 6/05/09. In four days, it will be one year without any income.

As a substantial investor in the EPD family investment company, you told us in an email on March 4th, 2009 that you instructed your staff to not discuss any issues with us until you have something to say and that emails, only, will be accepted. These instructions were issued because we were accused of harassment. We have tried to understand your position for a year. Now, we ask for you to understand our situation.

This email is being sent to obtain the following information:

- We asked Ruben in February to reconcile our yearend balance. We sent him our thoughts for his evaluations and are waiting for his reply.
- We sent Ted our 2009 tax information in early February. We were surprised he did not file on time. We would like to know why?
- We would like detailed assurances how our money is safe and protected and nothing is in jeopardy.
- What are EPD's assets and how have the value of these assets been established?

You told us last September that EPD was out of money. You said, to solve the problem, your house was for sale and you were working on other deals. The sale of your home and/or anyone of these deals would start money flowing again. We saw on the internet that your house has sold. This should qualify for a renewal of discussions between us.

Communication is the only way for us to regain confidence in our relationship. We hope you will accept this letter in the positive way that it is intended. We will look forward to your timely response.

Art and Joan Huerth



EXHIBIT F

**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth [ahuerth@embarqmail.com] |
| **Sent:** | Friday, May 21, 2010 1:29 PM |
| **To:** | jerry@broadwayentertainment.com |
| **Cc:** | Katy; thom@broadwayentertainment.com |
| **Subject:** | EPD |

Hi Jerry,

It has been some time since we have had any information. Can you, Thom or Katy please call us or send an email. Is there any possibility of funding soon?

Thanks and best regards

Art

**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth [[redacted]@embarqmail.com] |
| **Sent:** | Tuesday, May 11, 2010 1:58 PM |
| **To:** | Katy |
| **Cc:** | [redacted]@broadwayentertainment.com |
| **Subject:** | FW: Update |
| **Categories:** | Red Category |

Hi Katy

I must believe, since you did not reply that the loan is dead. What is next? Thom has told me of 30 lots being sold in Tenn. And they should start to return money to epd. . do you have any information? I see where Jerry was elected to the board of directors of U S Aerospace. I do hope in some way that might help us at EPD.

You said thing will improve, what do you mean? It is 11 months of waiting. We are within day now of receiving foreclosure papers, we are losing everything.

I hope you will reply

Thanks
Art

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Friday, May 07, 2010 10:42 AM
**To:** 'Katy Werner'
**Subject:** RE: Update

Hi Katy,

I hear that Thom is going to be out a few more weeks In his absence can you tell me if Jerry was able to answer the bank's latest question's ( per your e mail) and if the loan is on track or is it dead?

Thanks
Art

**From:** Katy Werner [mailto:Katy@broadwayentertainment.com]
**Sent:** Wednesday, April 28, 2010 3:39 PM
**To:** 'Arthur Huerth'
**Subject:** Update

Hi Art,

I don't know if Thom has gotten back to you yet but he asked me to write to you yesterday, and I completely forgot! I'm in the middle of moving and things are a little disorganized.

Anyway, he wanted me to write to you and let you know that he will be contacting you very soon. He is very busy with his newborns and has barely had a moment to sleep much less do anything else.

He just wanted me to assure you that your money is safe and all is fine here. Things are still progressing very well. As we've tried to explain, it's a VERY slow process. Just yesterday morning, the bank asked us for something else for the North Hills transaction even though we really thought we had given them absolutely everything.

I know this is all very stressful, but things will improve. Just hang in there.

Take care,

Katy

**Art Huerth**

---

**From:** Katy Werner[redacted]@broadwayentertainment.com]
**Sent:** Wednesday, April 28, 2010 3:39 PM
**To:** 'Arthur Huerth'
**Subject:** Update

**Categories:** Red Category

Hi Art,

I don't know if Thom has gotten back to you yet but he asked me to write to you yesterday, and I completely forgot! I'm in the middle of moving and things are a little disorganized.

Anyway, he wanted me to write to you and let you know that he will be contacting you very soon. He is very busy with his newborns and has barely had a moment to sleep much less do anything else.

He just wanted me to assure you that your money is safe and all is fine here. Things are still progressing very well. As we've tried to explain, it's a VERY slow process. Just yesterday morning, the bank asked us for something else for the North Hills transaction even though we really thought we had given them absolutely everything.

I know this is all very stressful, but things will improve. Just hang in there.

Take care,

Katy

**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth [[redacted]@embarqmail.com] |
| **Sent:** | Monday, April 26, 2010 10:53 AM |
| **To:** | thom@broadwayentertainment.com |
| **Subject:** | Loan info. |

Hi Thom,

With all of the delays should I consider the loan a dead issue? How is it that the loan was all done and there won't be any more delays just a matter of days and then we don't hear anything.

Can you tell me of any plans to get funding or are we sunk.
Please level with me.

Thanks
Art

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc
Exhibit 10 Page 69 of 185


**Art Huerth**

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Wednesday, April 21, 2010 6:27 PM
**To:** Wayne Huerth
**Subject:** FW: EPD

FYI

**From:** Art Huerth [mailto:ahuerth@embarqmail.com]
**Sent:** Wednesday, April 21, 2010 4:57 PM
**To:** jerry@broadwayentertainment.com
**Cc:** thom@broadwayentertainment.com
**Subject:** EPD

Jerry,

I am getting notices from the county tax collectors office on my past due real estate taxes, next month will be my third missed mortgage payment and according to what I have heard, that's when they start foreclosure proceedings. My credit of almost 50 years is now severely damaged.

Ten months have come and gone and we have been told for months now that funding would be coming soon, in a couple of weeks, within days, any day and on **March 30th** Thom answered my email… "per Jerry everything is fine no delays, and it should happen within days". **Friday, April 9th,** Thom sent an email saying, "If all goes as planned both should happen this coming week, the Bank loan and the baby's."

Apparently, things did not go as planned, the week of the 12th came a went. Sent Thom another email on the 20th asking of news regarding the loan. No response……assuming he is taking off time from his work because of the birth
of his twins??

Who do I contact to give me a more detailed answer as to why funding has not been received and when it will happen?

Regards,

Art

**Art Huerth**

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Tuesday, April 20, 2010 10:42 AM
**To:** thom@broadwayentertainment.com
**Subject:** EPD

Hi Thom,

Congratulations !! I hope mom and the twins are all doing fine.

Any news on the loan I guess it did not happen last week?

Regards
Art

**Art Huerth**

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Tuesday, March 30, 2010 4:34 PM
**To:** 'Thom Ferro'
**Subject:** RE: EPD

Thom
Thanks for the reply. I sure hope Jerry is correct.
Art

**From:** Thom Ferro [mailto:thom@broadwayentertainment.com]
**Sent:** Tuesday, March 30, 2010 3:57 PM
**To:** Art Huerth
**Subject:** RE: EPD

Per Jerry everything is fine no delays,and it should happen within days.......

-----Original Message-----
From: "Art Huerth" <ahuerth@embarqmail.com>
To: "'Thom Ferro'" <thom@broadwayentertainment.com>
Date: Tue, 30 Mar 2010 07:58:13 -0400
Subject: RE: EPD

Hi Thom

Are there delays or more bad news regarding the bank loan? I am concerned that you were not able to provide an update.

Let me know
Thanks
Art

**From:** Thom Ferro [mailto:thom@broadwayentertainment.com]
**Sent:** Monday, March 29, 2010 1:10 AM
**To:** Art Huerth
**Subject:** RE: EPD

Hi Art,

I will update you tomorrow, once I get an update. I do know that we are very close.

Best,

thom

-----Original Message-----
From: "Art Huerth" <ahuerth@embarqmail.com>
To: "'Thom Ferro'" <thom@broadwayentertainment.com>

Case 2:10-bk-02208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 10 Page 72 of 185


Date: Fri, 26 Mar 2010 11:50:53 -0400
Subject: RE: EPD

Hi Thom.
We should be getting close. is there anything new As you know we are going further and further in the hole

Thank You

Art

**From:** Thom Ferro [mailto:thom@broadwayentertainment.com]
**Sent:** Thursday, March 18, 2010 6:00 PM
**To:** Art Huerth
**Subject:** RE: EPD

Art...Robert said the bank told him to stop calling them that it would not help the loan close any quicker, but that it should be no later than 10 days. I'll keep you posted.

-----Original Message-----
From: "Art Huerth" <ahuerth@embarqmail.com>
To: "'Thom Ferro'" <thom@broadwayentertainment.com>
Date: Thu, 18 Mar 2010 15:20:03 -0400
Subject: RE: EPD

Thanks Thom.

Is "they" the bank? Has the bank issued a commitment letter? Since you were thinking it would be the end of February and we are now looking at the end of March. how strong do you feel about this? I hope you will be able to fill me in. I do not understand the delays

Kindest Regards
Art

**From:** Thom Ferro [mailto:thom@broadwayentertainment.com]
**Sent:** Thursday, March 18, 2010 3:01 PM
**To:** Art Huerth
**Subject:** RE: EPD

Hi Art,

They say sometime between 5 to 10 days. I'll keep you posted.

Best,

Thom

-----Original Message-----
From: "Art Huerth" <ahuerth@embarqmail.com>

To: "'Thom Ferro'" <thom@broadwayentertainment.com>
Date: Wed, 17 Mar 2010 15:42:00 -0400
Subject: RE: EPD

Hi Thom,
I hope it is not too soon to ask , but is there any news on when the bank will fund the loan?
Thanks
Art

**From:** Thom Ferro [mailto:thom@broadwayentertainment.com]
**Sent:** Thursday, March 11, 2010 3:22 PM
**To:** Art Huerth
**Subject:** Re: EPD

Hi Art,

The Loan on the North Hills property is done. We are just waiting for the Bank to fund. I will keep you posted, it should be soon.

The Builder in Tenn is posting the bond so that the lots can start selling. They will be paid back from the first lots sold, then in about 3 months they will start to push cash back to epd.

Talk soon ,Best

Thom

-----Original Message-----
From: "Art Huerth" <ahuerth@embarqmail.com>
To: <thom@broadwayentertainment.com>
Date: Wed, 10 Mar 2010 09:14:49 -0500
Subject: EPD

Hello Thom

Do you think you can share your best information on the stare of the bank loan and the lot sales in Tenn.

Thank You
Art

**Art Huerth**

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Tuesday, March 30, 2010 7:58 AM
**To:** 'Thom Ferro'
**Subject:** RE: EPD

Hi Thom

Are there delays or more bad news regarding the bank loan? I am concerned that you were not able to provide an update.

Let me know
Thanks
Art

**From:** Thom Ferro [mailto:thom@broadwayentertainment.com]
**Sent:** Monday, March 29, 2010 1:10 AM
**To:** Art Huerth
**Subject:** RE: EPD

Hi Art,

I will update you tomorrow, once I get an update. I do know that we are very close.

Best,

thom

-----Original Message-----
From: "Art Huerth" <ahuerth@embarqmail.com>
To: "'Thom Ferro'" <thom@broadwayentertainment.com>
Date: Fri, 26 Mar 2010 11:50:53 -0400
Subject: RE: EPD

Hi Thom,
We should be getting close, is there anything new. As you know we are going further and further in the hole.

Thank You

Art

**From:** Thom Ferro [mailto:thom@broadwayentertainment.com]
**Sent:** Thursday, March 18, 2010 6:00 PM
**To:** Art Huerth
**Subject:** RE: EPD

Art...Robert said the bank told him to stop calling them that it would not help the loan close any quicker, but that it should be no later than 10 days. I'll keep you posted.

-----Original Message-----
From: "Art Huerth" <ahuerth@embarqmail.com>
To: "'Thom Ferro'" <thom@broadwayentertainment.com>
Date: Thu, 18 Mar 2010 15:20:03 -0400
Subject: RE: EPD

Thanks Thom.

Is "they" the bank? Has the bank issued a commitment letter? Since you were thinking it would be the end of February and we are now looking at the end of March, how strong do you feel about this? I hope you will be able to fill me in. I do not understand the delays.

Kindest Regards
Art

**From:** Thom Ferro [mailto:thom@broadwayentertainment.com]
**Sent:** Thursday, March 18, 2010 3:01 PM
**To:** Art Huerth
**Subject:** RE: EPD

Hi Art,

They say sometime between 5 to 10 days. I'll keep you posted.

Best,

Thom

-----Original Message-----
From: "Art Huerth" <ahuerth@embarqmail.com>
To: "'Thom Ferro'" <thom@broadwayentertainment.com>
Date: Wed, 17 Mar 2010 15:42:00 -0400
Subject: RE: EPD

Hi Thom.
I hope it is not too soon to ask , but is there any news on when the bank will fund the loan?
Thanks
Art

**From:** Thom Ferro [mailto:thom@broadwayentertainment.com]
**Sent:** Thursday, March 11, 2010 3:22 PM
**To:** Art Huerth
**Subject:** Re: EPD

Hi Art,

The Loan on the North Hills property is done. We are just waiting for the Bank to fund. I will keep you posted, it should be soon.

The Builder in Tenn is posting the bond so that the lots can start selling. They will be paid back from the first lots sold, then in about 3 months they will start to push cash back to epd.

Talk soon ,Best

Thom

-----Original Message-----
From: "Art Huerth" <ahuerth@embarqmail.com>
To: <thom@broadwayentertainment.com>
Date: Wed, 10 Mar 2010 09:14:49 -0500
Subject: EPD

Hello Thom

Do you think you can share your best information on the stare of the bank loan and the lot sales in Tenn.

Thank You
Art

**Art Huerth**

**Subject:** FW: EPD

**From:** Art Huerth [mailto:ahuerth@embarqmail.com]
**Sent:** Friday, March 05, 2010 11:17 AM
**To:** 'Ralph Grande'
**Subject:** RE: EPD

You don't know how much I pray that is true Since my name is mud you may not want to admit to knowing me.

**From:** Ralph Grande [mailto:rgrande@craneconstruction.com]
**Sent:** Friday, March 05, 2010 11:14 AM
**To:** 'Art Huerth'
**Subject:** RE: EPD

Ps: In the voice mail tom DID leave me about the meeting, he again stated that they were hopeful this would be resolved by the time we met. [bs?]

Ralph Grande
Crane Construction Company LLC
(847) 564-7383 - office
(847) 274-6733 - mobile

**From:** Art Huerth [mailto:ahuerth@embarqmail.com]
**Sent:** Friday, March 05, 2010 10:12 AM
**To:** Ralph Grande
**Subject:** RE: EPD

Ralph,
Thanks for the quick response. I know you are going to be very direct with them and my hope is they will be able to convince you that we are not getting bs. I have heard the check is in the mail for so long that I start to feel that there is a sinister agenda. I wonder if EPD has any assets or is it all in Jerry's name or hidden trust. If he were to BK EPD we may all be sunk.

Have a safe and successful trip

Regards
Art

**From:** Ralph Grande [mailto:rgrande@craneconstruction.com]
**Sent:** Friday, March 05, 2010 10:19 AM
**To:** 'Art Huerth'
**Subject:** RE: EPD

Tom called back and said that Jerry most definitely wants to meet, as does Tom. I am trying to schedule around my flights, which conflicted with their schedule. Awaiting call backs. One way or another, they're going to see me.

Ralph Grande
Crane Construction Company LLC
(847) 564-7383 - office
(847) 274-6733 - mobile

Case 2:10-bk-02268-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc
Exhibit 10 Page 79 of 185


portions redacted

**From:** Jerry [r[redacted]@broadwayentertainment.com]
**Sent:** Thursday, March 04, 2010 6:44 PM
**To:** 'Art Huerth'
**Subject:** Follow Up

Dear Art,

I am very sorry for the position that you are in, but I hope you are aware of how diligently we are working to solve the problem. It is impossible for us to spend so much of our time talking to you and Leslie and/or having you speak to everyone in our office to tell you the same story. I am aware of the problems you are experiencing, but, as you know, the economy has changed dramatically in the last year.

While we are confident that we will be able to make you whole, we have reached the point where it has become impossible to communicate with Leslie and you since we can never seem to satisfy your needs even though we have tried time and again to explain the situation.

We have no problem with your choosing to go to other experts to review your tax returns. But, if the result of this is that we have to talk to them and/or answer their questions as well, we think you are better served having them do your tax returns from the start so they have the information needed to answer your questions satisfactorily.

During your IRS audit (which was the most extensive audit we have ever had), you called our office close to 60 times just for assurances and to find out how things were going. While I sympathize with your frustration, you have to understand ours -- we are not compensated for our services and have neither the time nor the energy to do our jobs and answer your questions before we have the answers. As hard as it may be, I suggest you let us do our jobs, and we will call you when we have something to say.

Again, we intend to honor all of our obligations to you and have protected all of the assets of the company so that nothing is in jeopardy.

This is all simply a matter of timing. Your phone calls and emails cannot change that. All they do is distract us from the important task of doing our job for you and for the rest of our EPD family.

We ask that you not knock us down and continue to harass us to give you information that is not new or relevant in order to satisfy you, a relative, or someone else that you've met. Please try to be patient and understand that we are all doing everything we can and are optimistic about the outcome.

I've instructed our staff not to discuss <u>any</u> issues with you until we have something to say. I compare your conduct to the child in the car who keeps asking "are we there yet?" We are close but not there. Emails only will be accepted from now on.

Jerry

**Art Huerth**

**From:** Art Huerth [ahuerth@embarqmail.com]
**Sent:** Friday, May 28, 2010 1:53 PM
**To:** Art Huerth (ahuerth@embarqmail.com)
**Subject:** FW: 2009 tax return

**Categories:** Red Category

**From:** Art Huerth [mailto:ahuerth@embarqmail.com]
**Sent:** Wednesday, March 03, 2010 3:58 PM
**To:** 'Jerry'
**Subject:** RE: 2009 tax return

Jerry we are going to fast here. A K1 was issued last year showing a loss. I thought the question was fair as we do not have any money to pay a tax liability. Since it is not easy to talk to Ted I was looking at the return and was concerned so I consulted with a person of some knowledge. This seems like a fair question and I do not understand the hostile response considering the situation we are in. Would you have called me to answer my question?
Art

**From:** Jerry [mailto:jerry@broadwayentertainment.com]
**Sent:** Wednesday, March 03, 2010 3:26 PM
**To:** 'Art Huerth'
**Cc:** 'THEODORE JONAVIC'
**Subject:** RE: 2009 tax return

As per Jerry-

We do not issue k1's to individuals, k1s are only issued to corporations or shareholders. Ted will not have a K1 for you. As far as your depreciation is concerned if you are having your tax return reviewed by someone else we would advise you to have them file your 2009 return and any further tax matters. They are more than welcome to contact Ted with any questions and when Ted has time he will respond. Ted will have no way of knowing if you have a tax liability off hand.

**From:** Art Huerth [mailto:ahuerth@embarqmail.com]
**Sent:** Wednesday, March 03, 2010 11:54 AM
**To:** Ted Jonavic
**Cc:** jerry@broadwayentertainment.com
**Subject:** 2009 tax return

Hi Ted,

I have had a review of my 2008 tax return and have been advised that the depreciation of the leased equipment has almost been written down. Do you have the K1 from Jerry and am I going to have a tax liability this year? Are you planning on filing the return by 4-15?

Thanks

Art Huerth

**Art Huerth**

| | |
|---|---|
| **From:** | Katy [[redacted]@broadwayentertainment.com] |
| **Sent:** | Tuesday, March 02, 2010 6:38 PM |
| **To:** | 'Art Huerth' |
| **Subject:** | Appraisals |
| **Attachments:** | image001.gif |
| **Categories:** | Red Category |

Hi Art,

I hope all is well with Joan and you. Thom asked me to write to you and explain in more detail what I told Leslie on Friday about the appraisals for our real estate investments. I think there has been some confusion.

First, the appraisals are all done by the banks who finance our deals and are given to us very sporadically. We do not provide them to investors on a regular basis, and, in fact, would breach confidentiality agreements with our banks if we did so. We have already breached those agreements in providing you the letter regarding the North Hills financing transaction (which is why we didn't provide the entire letter – instead, we sent only the first page, which contained the important approval language we thought might give you a little peace of mind).

We are all in the same boat, including Jerry, and live day to day waiting for information and confirmations from banks. As soon as we get any concrete information, either Thom or I will provide it. None of us here has much more information than the other, including Jerry, so we all really are telling you essentially everything we know in the utmost of good faith.

I hope this helps clear things up a little. I wish I could provide more of a resolution for you now, but we just cannot do that quite yet. As I have said before, I am very sympathetic to your situation and look forward to better days ahead.

Take care,

Katy Werner
broadway entertainment | director business affairs
520 broadway suite 550 | santa monica, ca 90401
t 310 451 7111 | f 310 394 6404 | m 310 736 6135
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE.

XXXX Please consider the environment before printing this email.

R

WACHOVIA SECURITIES

**Corporate & Investment Banking**
**Commercial Real Estate Services**
**201 South College Street**
**NC 1075, Ninth Floor**
**Charlotte, NC 28244-1075**

**Via Facsimile and US Mail**

February 3, 2010

North Hills Industrial Park, Inc.
9595 Wilshire Boulevard
Suite 1000
Beverly Hills, California 90212
Attention: Robert D. Geringer

Re: Proposed Transfer and Assumption
WB Loan No: 82-000022 (the "*Loan*")
Property: North Hills Industrial Park – Los Angeles, California (the "*Property*")

Dear Mr. Geringer:

Wachovia Bank, National Association ("*WB*") received your request on behalf of North Hills Industrial Park, Inc., a California corporation, ("*Borrower*"), for consent to a transfer of the Property from the Borrower to a newly formed special purpose entity ("*Assumptor*") indirectly owned by Robert Geringer, and the assumption (the "*Assumption*") of the Loan by the Assumptor in addition to a pledge by the non-managing member of Assumptor (which shall hold 99% of the direct ownership interests in Assumptor) of 100% of its ownership interest in Assumptor to NBS-NHIP HOLDCO, LLC, a Delaware limited liability company, to secure payment of a loan in the amount of $4,000,000.00 to the non-managing member (the "*Mezzanine Financing*", and together with the Assumption, referred to herein as the "*Transfer*"). In connection with the Assumption, Assumptor will purchase the Property and assume all obligations under the applicable loan documents, and Robert D. Geringer ("*Guarantor*") will assume the obligations of the current guarantors under the Loan. WB, on behalf of Bank of America, N.A., as successor to Wells Fargo Bank, N.A., as Trustee under that certain Pooling and Servicing Agreement dated as of July 11, 2007, for Registered Holders of TIAA Seasoned Commercial Mortgage Trust 2007-C4, Commercial Mortgage Pass-Through Certificates, Series 2007-C4 (the "*Lender*"), is pleased to inform you that the proposed Transfer has been approved subject to the following conditions:

1. Borrower, Jerrold Pressman ("*Original Guarantor*"), Robert Geringer ("*Guarantor*") and Lender shall execute an Assumption Agreement satisfactory in form and substance to WB.
2. Receipt and satisfactory review by WB of all documents required to evidence and complete the Transfer.
3. Confirmation by evidence satisfactory to WB, on behalf of Lender, that Borrower is in compliance with all of the documents evidencing and securing the Loan (the "*Loan Documents*"), including, without limitation, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing Statement dated September 29, 2004 (the "*Security Instrument*"), and that no Event of Default (as defined in the Loan Documents) has occurred under any of the Loan Documents.

US2008 1103848.2

**Art Huerth**

**From:** Art Huerth [a[redacted]@embarqmail.com]
**Sent:** Monday, March 01, 2010 11:20 AM
**To:** thom@broadwayentertainment.com
**Cc:** lhuerth@mc.net
**Subject:** EPD

Hi Thom,

Has Robert talked to the bank? Seems like he should be on top of this and that he should have talked to the bank by now. I hope we can get a closing or a funding date very soon.

My daughter talked to Katy, Friday evening. She mentioned that Jerry shares property appraisals annually on all of the properties that are owned by EPD or Jerry. I have never seen this, could you forward them to me?

Thanks
Regards
Art

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit Page 85 of 185


**Art Huerth**

| | |
|---|---|
| **From:** | Thom Ferro [[redacted]@broadwayentertainment.com] |
| **Sent:** | Wednesday, February 24, 2010 2:12 PM |
| **To:** | Art Huerth |
| **Subject:** | Re: EPD Funds Needed....... |

Thanks Art..I will call you later today,after I get an update.

-----Original Message-----
From: "Art Huerth" <a[redacted]@embarqmail.com>
To: [redacted]@broadwayentertainment.com>
Date: Wed, 24 Feb 2010 11:48:03 -0500
Subject: EPD Funds Needed.......

Thom,

We need the following by March 2nd, to catch up on paying our late bills, terminate our rental lease in Illinois, and pay our past due mortgage payments and real estate taxes: $90,000 past due interest, plus $10,500 per month.

If we get these funds, we will be able to catch up and hopefully restore our credit rating, stop foreclosure proceedings and negotiate out of our lease with legal help. We have no idea what the additional costs will be for attorneys.

Art

**Art Huerth**

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Monday, February 22, 2010 1:43 PM
**To:** [redacted]broadwayentertainment.com
**Subject:** up date

Hi Thom

Did you meet with Jerry Friday afternoon or this AM? Hoping for an update today. We did not discuss the funds we will need to get us out of the short term financial bind as well. I am trying to think of a way to negotiate a way out of our lease in IL. I may need to offer them 5-6 months' rent. I do not want to get sued if possible.

We will be in and out this afternoon, if we do not hear from you, I will call you later.

Thanks
Art

**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth [redacted]@embarqmail.com] |
| **Sent:** | Friday, February 19, 2010 3:30 PM |
| **To:** | t[redacted]broadwayentertainment.com |
| **Subject:** | Return call |

Hi Thom

I understand you were called away yesterday and could not call me back as you thought you would Wednesday evening. I am most anxious to continue our conversation. Please let me know if you are going to call today and approx what time.

Thanks
Art 239 652 9055

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 10 Page 88 of 185


## Art Huerth

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Thursday, February 18, 2010 6:35 PM
**To:** Katy
**Subject:** EPD

Hi Katy,

Thom was going to ask you to e mail some documentation to us, so far we have not seen anything. Can you tell me if he has mentioned this to you? He also, said he would call today.??? I had hopes for some direct communication.

Can you give me his e mail address?

Thanks Katy
Kindest Regards
Art

**Art Huerth**

| | |
|---|---|
| **From:** | Katy [[redacted]@broadwayentertainment.com] |
| **Sent:** | Tuesday, February 16, 2010 7:11 PM |
| **To:** | 'Art Huerth' |
| **Subject:** | RE: Update |
| **Attachments:** | image001.gif |

He is a long-term investor and will explain everything from that perspective. I think you will find it very helpful. All else still looks good.

Katy Werner
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE

Please consider the environment before printing this email.

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Tuesday, February 16, 2010 3:38 PM
**To:** 'Katy'
**Subject:** RE: Update

What!! Who is this guy? What does he have to do with EPD?

**From:** Katy [mailto[redacted]@broadwayentertainment.com]
**Sent:** Tuesday, February 16, 2010 6:31 PM
**To:** 'Art Huerth'
**Subject:** RE: Update

It's going to be our colleague, Thom, the President of Broadway Entertainment. He will be calling you this afternoon.

Katy Werner
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE

Please consider the environment before printing this email.

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Tuesday, February 16, 2010 2:57 PM
**To:** Katy
**Subject:** FW: Update

Hi Katy,

Can you tell me what time Jerry will call us today?
Thanks
Art

**From:** Art Huerth [mailto:[redacted]embarqmail.com]
**Sent:** Monday, February 15, 2010 12:01 PM
**To:** 'Katy'
**Subject:** RE: Update

Katy,

Broken promises are killing Joan and I. I am concerned that we will sit around all day only to hear he didn't come in again or some other excuse to stall for time. Can you tell me if Jerry is serious this time. As you know, we have ask time and time again for him to call, as well as sending letters pleading with him to call us. Month after month he keeps ignoring us.

Please, let me know your thoughts.

Thanks
Art

**From:** Katy [ma[redacted]@broadwayentertainment.com]
**Sent:** Friday, February 12, 2010 10:38 PM
**To:** 'Art Huerth'
**Subject:** Update

Hi Art,

Unfortunately, Jerry didn't come in again today so I didn't get to talk to him. I told him we had to make it a priority for Tuesday, and he agreed. We will be calling you on Tuesday. Everything else is still looking good, but I won't know anything more until Tuesday. Hope you can still have a nice weekend.

Take care,

**Katy Werner**
broadway entertainment | director, business affairs
520 broadway suite 660 | santa monica, ca 90401
t 310 451 2111 | f 310 394 6404 | m 310 [illegible]
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE.

XXXX Please consider the environment before printing this email.

**Art Huerth**

**From:** Katy [redacted]@broadwayentertainment.com]
**Sent:** Thursday, February 11, 2010 8:41 PM
**To:** 'Art Huerth'
**Subject:** RE: Update
**Attachments:** image001.gif

Hi Art,

I really do sympathize more than you know. I will share this with Jerry and come up with a plan of action. We will be in touch tomorrow so that you perhaps can have a nice long weekend.

Take care,

Katy Werner

katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE

XXXX Please consider the environment before printing this email.

**From:** Art Huerth [mailto:a[redacted]@embarqmail.com]
**Sent:** Thursday, February 11, 2010 10:34 AM
**To:** 'Katy'
**Subject:** RE: Update

Hi Katy,
Did you have the meeting with Jerry? Our current situation is this. Our daughter with the help of a couple of friends are packing the IL house. By the end of the month we will have to sneak all of our furniture out so they can't hold it. She is going to move in with her best friend. It appears like she has lost her only savings with Jerry as well. We are now behind on our Florida mortgage. When they evict us from here we will not have a place to live. I know that will be a few months but our credit cards will soon be cut off as well. We do not have the money to pay real-estate taxes. Are any of the deals Jerry is trying to put together still alive? Do you have a feel for this month or next? I have been talking with Ruben trying to get my year end summary complete (which by the way needs to be redone) and says there is a possible LOC but again the bank wants more information. It seems like that is where all of these deals fall apart. When you refer to the near future are you thinking days or months. If Jerry could just give us half of our past due interest and 9k a month it could get us through until he gets caught up. This is without expenses in IL. We would not have to start selling our personal possessions. We are very scared. We fear that we may have lost all of our savings. Jerry may have assets that have lost half or more of their value. Do you still think Jerry can get out of this mess soon? Is Jerry going to give us a letter to show that we have assets but for a time the interest is frozen? It would be helpful with the electric co. and phone co. as well as our lawn service. Maybe the mortgage company. Is he ever going to talk to us?

Thanks
Katy. We are grasping for any sort of information.

Art

**From:** Katy [mailto[redacted]broadwayentertainment.com]
**Sent:** Wednesday, February 10, 2010 4:59 PM
**To:** 'Art Huerth'
**Subject:** Update

Hi Art,

I haven't forgotten about you. Jerry and I just haven't had a chance to discuss all of the issues but plan to this afternoon. I will let you know as soon as we have. Things are still inching along toward a positive resolution to the financial issues in the near future.

Take care,

Katy Werner
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE.

XXXX Please consider the environment before printing this email.

**Art Huerth**

---

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Wednesday, February 10, 2010 3:04 PM
**To:** 'ruben'
**Subject:** RE: 2009 investment summary sheet

Thanks Ruben
I forgot to ask you, are you back to good health?
Art

**From:** ruben [mailt[redacted]@broadwayentertainment.com]
**Sent:** Wednesday, February 10, 2010 1:54 PM
**To:** 'Art Huerth'
**Subject:** RE: 2009 investment summary sheet

Art, I will just mail them to you, it's the fax that is not coming through and I will look into your questions asap.

**From:** Art Huerth [mailt[redacted]@embarqmail.com]
**Sent:** Wednesday, Febru[redacted]010 10:01 AM
**To:** ruben@broadwayentertainment.com
**Subject:** 2009 investment summary sheet

Ruben,

I did receive the summary sheets last night. The bad news is I think you must redo them.

The quality of many of the sheets are barely legible, can you please improve.

Sheet no. 5 on your fax shows a three year old address. Spring Grove IL. It was sold in 2006.

There wasn't a cover letter for my summary or Leslie's.

Why does Polycomp report an ending bal. of $259,241 and you show my IRA at $321,849. Since you provide this info. to Polycomp why is there a difference? How did this value increase anyway? A profit??? See Polycomp attached and your 09 summary also attached.

There is a 15K diff. in what I feel should be the 09 ending bal. and the bal. you are showing. You are showing $1,135,928.00 and I feel it should be $1,151,263.00. Please review sheet #2 attached. I am not an accountant but I must be closer that you are. See the 08 summary bal. attached. Take 08 minus $7K in principle reduction and add back interest to get to my figure. Please explain your bal. or make the correction. I may be off a little but not much.

Yes, in addition to a fax , if you still are having scanning problems. Please send original copies for Leslie and myself to my attention at 1837 Seafan Cir. North Fort Myers , Florida 33903

Thanks Ruben

Art

**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth [[redacted]@embarqmail.com] |
| **Sent:** | Tuesday, February 09, 2010 3:24 PM |
| **To:** | 'ruben' |
| **Subject:** | RE: Financial spread sheet |

We hear a lot about the banking problem. The loan that was approved on Friday, would it be enough to get half of our back interest? And could it come in the next week or two?
Thanks Ruben I will not bother you further I know you are busy. Sounds like Jerry has a long tough road ahead
Art

**From:** ruben [mailto:[redacted]@broadwayentertainment.com]
**Sent:** Tuesday, February 09, 2010 3:15 PM
**To:** 'Art Huerth'
**Subject:** RE: Financial spread sheet

Yes we have the assets but the banks are not lending money like they used to which is a big part of our problem. So Jerry is out looking for investors who can give us cash for the assets, and if you know anyone also please send them in our direction.

**From:** Art Huerth [mai[redacted]h@embarqmail.com]
**Sent:** Tuesday, Februa[redacted]10 11:53 AM
**To:** 'ruben'
**Subject:** RE: Financial spread sheet

Ruben. Thanks very much as every bit of information helps. Does EPD have the assets to get us out of this? As for hanging in there, I guess that is only emotionally speaking as there is nothing else we can do. After eight months of trying to hang in there, my wife and I are drained. I am sure others are in terrible shape also

Thanks
Art

**From:** ruben [mailto[redacted]broadwayentertainment.com]
**Sent:** Tuesday, February 09, 2010 2:44 PM
**To:** 'Art Huerth'
**Subject:** RE: Financial spread sheet

Art, I understand it is very hard to believe that we will ever get out of this when Jerry has not called you back. I am not making excuses for Jerry I am simply saying it is overwhelming to be in the position Jerry is in and effectively pursue the real issue which is to get cash out you investors asap. I am here everyday and all we are focused on is getting funding in the quickest way possible so please do not give up hope. On Friday we got loan approval on one of the credit lines but also asking for more information. That won't be enough to cover everyone but it will be something to send you guys to help ease this until we get through this. Besides that deal we are still working on other ways of getting more funding out to you guys as we are not taking this lightly. So please Art, hang in there and know that Jerry is not purposely ignoring you and neither am I but the quickest way to get through this is to have us working on getting funding rather than returning calls because as you can imagine they are coming in quickly. Just know Jerry is doing everything in his power to remedy this situation as quickly as possible.

**From:** Art Huerth [mailto:ahuerth@embarqmail.com]
**Sent:** Tuesday, February 09, 2010 11:28 AM
**To:** 'ruben'
**Subject:** RE: Financial spread sheet

Hi Ruben,
You can fax it to me at 239 656 5564. Thanks so much
Ruben can you tell me what you think the likelihood of receiving any funds in the next two or three months? Do you think eventually we will get our money back? We are sneaking out of the house we rent in Illinois and will shortly have a post office address for you. We have stopped paying our mortgage in Florida and have everything we own for sale. We are trying to just hold on to some cash for essentials. Jerry will not talk with us and we feel we have lost everything. We are underwater on our house and will lose it.
We are just looking for some hope.
Thanks Ruben

**From:** ruben [mailt[redacted]@broadwayentertainment.com]
**Sent:** Tuesday, February 09, 2010 2:08 PM
**To:** 'Art Huerth'
**Subject:** RE: Financial spread sheet

I'm in the middle of finishing your schedule, should be done by end of day today or early tomorrow. Do you have a fax number as I can no longer scan them as it is not reading them to clearly or I can just mail to you.

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Monday, February 08, 2010 10:57 AM
**To:** 'ruben'
**Subject:** RE: Financial spread sheet

Do you know when that will be?

**From:** ruben [mailto:[redacted]@broadwayentertainment.com]
**Sent:** Monday, February 08, 2010 1:55 PM
**To:** 'Art Huerth'
**Subject:** RE: Financial spread sheet

We are currently working on these schedules and when we finish I will send them to you.

**From:** Art Huerth [mailt[redacted]@embarqmail.com]
**Sent:** Sunday, February 07, 2010 6:09 AM
**To:** ruben@broadwayentertainment.com
**Subject:** FW: Financial spread sheet

Ruben working on taxes and want to get them out by Tuesday. Pls review and let me know if you agree
Thanks
Art

**From:** Leslie Huerth [mailto[redacted]@mc.net]
**Sent:** Saturday, February 06, 2010 1:47 PM
**To:** 'Art Huerth'; 'Joan Huerth'
**Subject:** Financial spread sheet

Here is the spread sheet if you want to make changes

Leslie Huerth
Phone:847-980-5881
Fax: 815-679-6544
Email: lhuerth@mc.net

*A true friend is someone who reaches for your hand and touches your heart.*

**Art Huerth**

---

**From:** Art Huerth [redacted]@embarqmail.com)
**Sent:** Friday, February 05, 2010 3:45 PM
**To:** [redacted]@broadwayentertainment.com
**Subject:** Year end statement

**Categories:** Red Category

Hi Ruben,

I hear you are back which I trust means you are feeling better. Sounds like you had a bad flu of some sort. I think someone said you might have had the swine flu, was that confirmed?

I know you are busy but was wondering when you might be able to send the year end statement.

Thanks

Art

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit Page 9 of 185


**Art Huerth**

**From:** Art Huerth [ah[redacted]@embarqmail.com]
**Sent:** Friday, February 05, 2010 3:45 PM
**To:** [redacted]@broadwayentertainment.com
**Subject:** Year end statement

Hi Ruben,

I hear you are back which I trust means you are feeling better. Sounds like you had a bad flu of some sort. I think someone said you might have had the swine flu, was that confirmed?

I know you are busy but was wondering when you might be able to send the year end statement.

Thanks

Art

**Art Huerth**

**From:** Joan Huert[redacted]@embarqmail.com]
**Sent:** Friday, February 05, 2010 1:59 PM
**To:** [redacted]@broadwayentertainment.com
**Cc:** Huerth Art
**Subject:** Letter For Creditors

Hi Katy,

When I talked to you a few days ago and asked for Corrin, you said that you could help us. We then asked you about the legal concerns we had in breaking our rental lease and told you our mortgage lender would not help us.

A few moments ago I called and talked to Corrin and asked her help with a letter of explanation from EPD, regarding our assets and lack of funding, that we can show our creditors; utilities, other services, etc. Hopefully, with this letter, they will work with us regarding late payments and our credit rating will not be severely damaged

I guess Corrin was offended that we did not wait to talk to her and took your offer of help. She said we have to work with one person at EPD because working with more than one is too confusing???? I wish we had known in advance what EPD's policy is for communicating/helping their investors
try to survive almost 8 months without funding.

Corrin said you are the one to work with from now on and to write this letter. I hope that is okay with
you?? Have you had any time to review the lease and how soon can be get this letter to show our creditors.
We would appreciate it, if you could call us today on Art's cell phone ….(847)-366-0862, before the weekend.

Thank you….

Joan

**Art Huerth**

---

| | |
|---|---|
| **From:** | Art Huerth[redacted]@embarqmail.com] |
| **Sent:** | Wednesday, February 03, 2010 3:19 PM |
| **To:** | 'Katy' |
| **Subject:** | RE: funds |
| **Attachments:** | image001.gif |

Hi Katy,

Thanks for the encouragement, right now everything helps. Corrin, gave Joan some help and advice yesterday that we appreciate. I am getting ready to call our bank, just having trouble trying to find the right words. We never thought we would be in this position. We try to focus on the positives from past experience with EPD and the positive vibes we get from you and Corrin. On the other hand we have shared our plight with a couple of close friends that believe we could be in a ponzie. Very hard to understand the number of wire transfer receipts, that EPD is waiting for, as our bank says there is usually only one. If there is one where are those funds. Or why does it take so long to get funds for an LOC if all of the paper is signed.
These are the things that keep us awake and unsure. I know you are telling us everything that you can I just hope the information you receive is factual. The stress and uncertainty of this is something that I wouldn't wish on anyone.

Sorry for all of that Katy I had to vent to someone. As usual thanks and please let us know if there is any positive news.

Kindest regards
Art

**From:** Katy [mailto[redacted]@broadwayentertainment.com]
**Sent:** Wednesday, February 03, 2010 12:22 AM
**To:** 'Art Huerth'
**Subject:** RE: funds

Hi Art,

Thanks for the apology. I really appreciate it. Things are still looking good. Please just try to hold tight a little longer....

Sorry for the delayed response but I left early Friday and was out sick yesterday.

Take care,

Katy Werner
broadway entertainment | director, business affairs
520 broadway suite 560 | santa monica, ca [illegible]
o-310 451 7111 | f-310 294 6404 | m-310 [illegible]
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE.

Please consider the environment before printing this email.

**From:** Art Huerth [mailto:ahuerth@embarqmail.com]
**Sent:** Friday, January 29, 2010 4:30 PM

**To:** Katy
**Subject:** funds

Katy

Any news today? Sorry . I was rude and picky yesterday. I guess you had my hopes up from you e mail Monday. I know you can only repeat what you are told . Week after week it is the same disappointing news, up one day down the next. Just wish Jerry would tell us the truth and let us die in peace. He just doesn't seem to know what he is putting us thru week after week.

# *ARTHUR AND JOAN HUERTH*

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Jerry Pressman | FROM: Joan Huerth |
| COMPANY: EPD Investment Company LLC | DATE: FEBRUARY 1, 2010 |
| FAX NUMBER: 310-394-6404 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| PHONE NUMBER: 310-452-7111 | [redacted] |
| RE: OUR EPD INVESTMENT | |

**URGENT !!!!!!!!!** FOR REVIEW PLEASE COMMENT

Jerry:

On August 13, 2004, Art and I sat across a desk from you in your office and looked you in the eyes and decided you were an honorable man with great integrity and we gave you our life savings to invest.

Funding stopped 7 and half months ago and we have not received any interest payments on our investment. You have not even spoken to us, since early **November, 2009.** You told us, at that time, "to do what we could to stay afloat financially. The funding was coming." **We cannot stay afloat any longer!!!**

**Below are the facts of our financial status as of 2/15/10:**

- You owe us $92,640.00 (incl. the 2/6/10 payment) in past due interest.
- We cannot borrow more money in good faith, with no assurance we can repay a loan.

1837 SEAFAN CIRCLE
N. FT. MYERS, FL 33903

- We are trying to sell everything we possibly can and will lose our home in Florida.
- We will have to default on the lease on our rental home in Illinois this month and probably be sued.
- We will lose our credit rating, credit cards and health insurance.
- The Social Security we receive will not help us.
- The word "destitute" does not even begin to describe our future.

Over the last four months, Art has become totally frustrated and upset with his ineffectual efforts to get answers from you by phone, email, fax or letter. The stress and anxiety is overwhelming!

**Jerry, we need answers to the following immediately:**

- Will funding be available ( in writing) within the remaining 19 business days of this month and on what day.
- Will we receive the amount owed us and will you be paying back our agreed monthly interest payment on a regular basis?
- Will you provide supporting written documentation that our principal (over
  $1 million) is secure?
- Funding will not be available this month and EPD has no idea when or if it will become available ( in writing).

**We are now relegated "to begging" for this information. I am not too proud to beg, Jerry.** You have a moral and ethical obligation to provide us with this information.

Joan Huerth

P.S. I have called and talked to Corrin on 29th of January and today asking her to ask you if funding will be available within the remaining 19 business days this month. She keeps telling me that she has not spoken to you, yet.

Case 2:10-bk-02208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 10 Page 103 of 185


**Art Huerth**

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Wednesday, January 27, 2010 2:29 PM
**To:** Katy
**Subject:** Your Monday E Mail

**Categories:** Red Category

Hi Katy,

We were very encouraged by your E mail Monday telling us that "all is good and looking better than ever". I am concerned that you were not able to give us the details yesterday , as you thought you could.

Does everything still look good? Can you tell me when you will be able to give us details?

I hope you can reply soon.

Thanks

Art

**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth [[redacted]@embarqmail.com] |
| **Sent:** | Tuesday, January 26, 2010 1:31 AM |
| **To:** | lhuerth@mc.net; Wayne Huerth |
| **Subject:** | FW: wire transfer |
| **Attachments:** | image001.gif |

This may be very good news. better than a receipt I talked to Katy for seconds about 7 pm last night Took me 45 mins to get through I kept getting their answering machine Katy answered directly was very rushed said she had very good and positive news would e mail me later. She did not know about a wire receipt. See her reply below I hope this means money is in and from what Corin said to Ray, there may be more coming soon. I don't think Corin knew what a wire receipt was and only heard wire transfer That I am hoping, what came in late last week was actually the money
I am guessing but we can only pray for good news

**From:** Art Huerth [mailt[redacted]@embarqmail.com]
**Sent:** Tuesday, January 26, 2010 12:21 AM
**To:** 'Katy'
**Subject:** RE: wire transfer

Thanks Katy

**From:** Katy [mailto:[redacted]@broadwayentertainment.com]
**Sent:** Monday, January 25, 2010 10:03 PM
**To:** 'Art Huerth'
**Subject:** RE: wire transfer

Yes, all is very good. Better than ever. More details tomorrow.

**Katy Werner**
broadway entertainment | director, business affairs
510 broadway suite 600 | santa monica, ca 90401
t-310 451 [illegible] | f-310 394 5404 | m-310 [illegible]
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE.

XXXX Please consider the environment before printing this email.

**From:** Art Huerth [mai[redacted]@embarqmail.com]
**Sent:** Monday, January [redacted] 25, 2010 7:00 PM
**To:** Katy
**Subject:** FW: wire transfer

Good news Katy?
Thanks Art

**From:** Art Huerth [mail[redacted]@embarqmail.com]
**Sent:** Monday, January 25, 2010 2:56 PM
**To:** Katy
**Subject:** wire transfer

Hi, Katy

I may be able to borrow some money from a friend of mine to buy me a little time. However, I can't in good conscious, if there isn't any hope to repay it.

If the money is in transit, EPD should have a wire transfer receipt or confirmation from the sender's bank. Can you confirm a wire transfer receipt?

Thanks very much
Art

**Art Huerth**

---

| | |
|---|---|
| **From:** | Katy [[redacted]@broadwayentertainment.com] |
| **Sent:** | Friday, January 22, 2010 7:02 PM |
| **To:** | 'Art Huerth' |
| **Subject:** | RE: funds |
| **Attachments:** | image001.gif |

As far as I know, it is.

Katy Werner
[illegible] entertainment | director, business affairs
[illegible] broadway suite 560 | santa monica, ca [illegible]
c-310 451 7111 | t-310 394 6404 | m-310 [illegible]
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE

Please consider the environment before printing this email.

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Friday, January 22, 2010 3:13 PM
**To:** 'Katy'
**Subject:** RE: funds

Do you think it is in transit? Hope the deal is still alive

**From:** Katy [mailto[redacted]@broadwayentertainment.com]
**Sent:** Friday, January [redacted], 2010 5:34 PM
**To:** 'Art Huerth'
**Subject:** RE: funds

Nope, but that's my understanding too.

Katy Werner
broadway entertainment | director, business affairs
520 broadway suite 560 | santa monica, ca 90401
c-310 451 7111 | t-310 394 6404 | m-310 739 5128
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE

Please consider the environment before printing this email.

**From:** Art Huerth [mailt[redacted]h@embarqmail.com]
**Sent:** Friday, January 22, 2010 11:25 AM
**To:** Katy
**Subject:** funds

Hi Katy

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit Page 107 of 185


A friend of mine told me that money coming from another country, over $250K can take a week or maybe a little longer depending on the country. This made me feel better. Since Jerry in touch with this guy I hope he still feels the money is in transit. Has he said anything?
Thanks
Art

**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth [[redacted]@embarqmail.com] |
| **Sent:** | Thursday, January 21, 2010 5:01 PM |
| **To:** | 'Katy' |
| **Subject:** | RE: funds |
| **Attachments:** | image001.gif |

I know you will and thanks Katy. I know he gets a lot of call s I was hoping after 2 month s my number might come up.
Are you still positive?

**From:** Katy [mail[redacted]@broadwayentertainment.com]
**Sent:** Thursday, January 21, 2010 4:22 PM
**To:** 'Art Huerth'
**Subject:** RE: funds

I will ask him but I doubt he will have time. We get 50-75 calls and emails a day, and there is no way he can get back to everyone. I promise, Art, when I know something, I will let you know.

Katy Werner
broadway entertainment | director business affairs
520 broadway suite ... | santa monica ca ...
o 310 451 7111 | f 310 394 6404 | m 310 ...
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE

XXXX Please consider the environment before printing this email.

**From:** Art Huerth [r[redacted]@embarqmail.com]
**Sent:** Thursday, January 21, 2010 1:11 PM
**To:** 'Katy'
**Subject:** RE: funds

Thanks Katy
Do you think you could ask Jerry to call us? I see you are really having some bad weather. I was thinking about Jerry's house as I saw 20 foot waves in Santa Monica.
Art

**From:** Katy [m[redacted]@broadwayentertainment.com]
**Sent:** Thursday, January 21, 2010 4:00 PM
**To:** 'Art Huerth'
**Subject:** RE: funds

I'm sorry, Art, I don't have an answer for you yet. I will let you know as soon as I do.

Katy Werner
broadway entertainment | director business affairs
520 broadway suite ... | santa monica ca ...
o 310 451 7111 | f 310 394 6404 | m 310 ...
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE

XXXX Please consider the environment before printing this email.

**From:** Art Huerth [m[redacted]h@embarqmail.com]
**Sent:** Thursday, January 21, 2010 9:20 AM
**To:** 'Katy'
**Subject:** RE: funds

Katy
Can you tell me where this money is? If it has been wired and it is not in your bank, where is it? It's supposed to be a lot of money surely someone knows.
Thanks
Art

**From:** Katy [ma[redacted]@broadwayentertainment.com]
**Sent:** Wednesday, [redacted]ary 20, 2010 4:53 PM
**To:** 'Art Huerth'
**Subject:** RE: funds

Nothing yet.... But still looking good.

**Katy Werner**
broadway entertainment | director, business affairs
1320 broadway suite 600 | santa monica, ca 9040
o-310 451 7111 | f-310 394 6404 | m-310 738 5138
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE.

XXXX Please consider the environment before printing this email.

**From:** Art Huerth [[redacted]@embarqmail.com]
**Sent:** Wednesday, January 20, 2010 12:05 PM
**To:** Katy
**Subject:** funds

Hi Katy
Is there any news?
Thanks
Art

## Art Huerth

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Friday, January 15, 2010 2:28 PM
**To:** 'Katy'
**Subject:** RE: Our Investment
**Attachments:** image001.gif

Hi Katy
Thank you very much. This sounds really good
Do you think I could request an overnight delivery when the check is ready to be sent to me?
I can set up a UPS at no cost to EPD
Thanks
Art

**From:** Katy [[redacted]@broadwayentertainment.com]
**Sent:** Thursday, January 14, 2010 10:18 PM
**To:** 'Art Huerth'
**Subject:** RE: Our Investment

Hi Art,

I gave Jerry the letter but he didn't have time to read it today. The good news is that the money is in transit and should be in the bank by Monday (or Tuesday since Monday is a holiday). I know you've heard that a lot, but this is the most positive I've ever heard Jerry. Now I'm 95% sure.

Take care,

**Katy Werner**
broadway entertainment | director business affairs
520 broadway suite 660 | santa monica, ca 904[illegible]
o-310.451.7111 | f-310.394.8404 | m-310.738.51[illegible]
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE

XXX Please consider the environment before printing this email.

**From:** Art Huerth [[redacted]@embarqmail.com]
**Sent:** Thursday, January 14, 2010 3:58 PM
**To:** jerry@broadwayentertainment.com
**Subject:** FW: Our Investment

Jerrold S. Pressman – President
EPD Investments LLC
Via U.S. Mail, Fax and Email
520 Broadway Suite 660
Santa Monica, CA 90401

Jerry:

We have been very, very patient, understanding investors. We have now waited for 7 months and still have not seen any money. It has been said, many times, that the money is coming any day now. Currently you owe us approximately $90,000.00 in late interest. We have over a million dollars invested with you.

Joan and I have used up all of our cash. We sold our car in Illinois and used the tax refund to get by until now. Jerry, we are out of money. We can't pay our mortgage or rent on the house in Illinois. Nor, can we pay our property taxes in Florida. Our credit cards are almost maxed out. We are 67 years old and our life is ruined. We have been prisoners in our home. The only time we go out is for groceries. We no longer socialize with friends and we don't sleep.

You have told us "our money is safe and there are substantial assets to cover all of the investors." What good is that to us now? What we need is $12,000 a month to stay out of bankruptcy. We are going to "try" and sell our home, our car and boat. We have nothing else. Jerry, as you know, you are our sole source of income other than Social Security.

You told us last March and April that there wasn't a cash flow problem with EPD. You told us all summer that everything would get back to normal after you filed our 2008 tax return. It wasn't until the end of September that you told us there wasn't any cash flow. However, you expected funding that could "come anytime". If we had known in "June" of the problems, we would have made the hard decisions that we are now forced to make. Now, we have run ourselves out of cash. As late as mid-November you told me that EPD will be fine and you are going to grow even bigger. Jerry, how are you going to do this??

Jerry, we need for you to call us. We need your advice on our taxes, bankruptcy filing, as well as our need for cash. We have tremendous confidence in you, not only as a businessman, but as a human being. The least, the very least, you can do for us, now, would be to call give us advice in this time of crisis.

Art and Joan Huerth

**Art Huerth**

---

| | |
|---|---|
| **From:** | Katy [redacted]@broadwayentertainment.com] |
| **Sent:** | Tuesday, January 12, 2010 4:32 PM |
| **To:** | 'Art Huerth' |
| **Subject:** | RE: funds |
| **Attachments:** | image001.gif |

No. No good or bad info. Just no info! Everything is still looking good for this week.... That's all I know. It's all still positive.

**Katy Werner**
broadway entertainment [illegible]
[illegible] santa monica [illegible]
[illegible]
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE.

XXXX Please consider the environment before printing this email.

**From:** Art Huerth [mailto[redacted]@embarqmail.com]
**Sent:** Tuesday, January 12, 2010 9:44 AM
**To:** Katy
**Subject:** funds

Hi Katy
Since you did not reply I guess the information is bad once again. I know you tried your best with the information that was given to you. Thank you for trying.
Art

**Art Huerth**

**From:** Art Huert[redacted]@embarqmail.com]
**Sent:** Saturday, January 09, 2010 8:49 AM
**To:** 'Katy'
**Subject:** RE: funds
**Attachments:** image001.gif

Katy
If I could I would give you a big hug and a kiss!!
Thank you so much for thinking of us and taking the time to keep us informed. You couldn't possibly know how much this has helped.
Art

**From:** Katy [ma[redacted]@broadwayentertainment.com]
**Sent:** Friday, January 08, 2010 10:43 PM
**To:** 'Art Huerth'
**Subject:** RE: funds

Good news. Things look very good for funding on Monday. Will keep you posted. Hope this helps you have a good weekend!

Katy Werner
broadway entertainment | director business affairs
520 broadway suite 650 | santa monica, ca 90401
o-310 451 7111 | f-310.394 6404 | m-310 [illegible]
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE

XXX Please consider the environment before printing this email.

**From:** Art Huerth [r[redacted]h@embarqmail.com]
**Sent:** Friday, January 08, 2010 4:27 PM
**To:** Katy
**Subject:** funds

Hi Katy
Was there any news? Good or Bad
Thanks
Art

**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth [redacted]@embarqmail.com] |
| **Sent:** | Friday, January 08, 2010 9:41 AM |
| **To:** | 'Katy' |
| **Subject:** | RE: funds |
| **Attachments:** | image001.gif |

Good Morning Katy
Congratulations I was happy to see that the Alabama won. it was far too late for me to finish the game but from what I read it got very interesting.

I sure hope funding comes by Monday. Not sure if we can deal with more delays. Do you really think it will happen?
It bothers me that the delays are not explainable. Is Jerry showing some real confidence that this will happen?
Are there any other options if this fails?

I know I am asking a lot but if you can help it would be greatly appreciated.
Thanks very much
Art

**From:** Katy [mailt[redacted]@broadwayentertainment.com]
**Sent:** Thursday, January 07, 2010 4:25 PM
**To:** 'Art Huerth'
**Subject:** RE: funds

Yes. All my friends from Bama are here for the BCS Championship game, and they are loving the weather. It's particularly warm and beautiful today. Roll Tide!

**Katy Werner**
broadway entertainment [illegible]
[illegible] broadway suite [illegible] santa monica ca [illegible]
[illegible]
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE.

XXXX Please consider the environment before printing this email.

**From:** Art Huerth [mailt[redacted]@embarqmail.com]
**Sent:** Thursday, January 07, 2010 1:03 PM
**To:** 'Katy'
**Subject:** RE: funds

Thanks Katy
I hear there may be snow in Birmingham!! It's been cold in South Florida as well. I think we are breaking records. May only be in the high 40's Sat. with a slight chance of snow flurries. So much for global warming. I hope Al Gore is going to be here for vacation. He can wear a ski hat and mittens to the beach. Ha

Art

**From:** Katy [mailto:[redacted]@broadwayentertainment.com]
**Sent:** Thursday, January 07, 2010 3:49 PM
**To:** 'Art Huerth'
**Subject:** RE: funds

They are the same funds, although there have always been several different sources. I know it's difficult to understand the delays. It's hard for us too! Thanks for being so patient, and I will definitely let you know if we learn anything more before the weekend. Also, thanks for your vote of confidence!

Best,
Katy

Katy Werner
[illegible]
[illegible]
[illegible]
katy@broadwayentertainment.com

PLEASE TAKE NOTE OF MY NEW EMAIL ADDRESS ABOVE

XXXX Please consider the environment before printing this email.

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Thursday, January 07, 2010 11:23 AM
**To:** 'Katy Werner'
**Subject:** RE: funds

Thanks Katy
Do you know if these are the same funds that were expected before Christmas? I guess I am having trouble trying to understand the delays. If you hear anything more before the weekend please let me know. Did you help to write this agreement? I think I would have more confidence if you did.
Thanks
Art

**From:** Katy Werner [mailto:[redacted]broadwayentertainment.com]
**Sent:** Thursday, January 07, 2010 1:35 PM
**To:** Art Huerth
**Subject:** Re: funds

Hi Art,

We will know the specifics today or tomorrow but we expect to have funds by Monday. All looks good. I will let you know as soon as we know anything more.

Katy

-----Original Message-----
From: "Art Huerth" <[redacted]@embarqmail.com>
To: "Katy" <[redacted]@broadwayentertainment.com>
Date: Thu, 7 Jan 2010 13:29:57 -0500
Subject: funds

Good Morning Katy

I was wondering if there was any news regarding the funding that is expected this week? Any information that you can forward would be greatly appreciated.

Thank You
Art

**Art Huerth**

**From:** Joan Huerth [[redacted]@embarqmail.com]
**Sent:** Tuesday, December 22, 2009 6:33 AM
**To:** Huerth Art; Huerth Wayne
**Subject:** Two More Articles.........
**Attachments:** image001.jpg

**Key Club Closes Temporarily**

Posted on Saturday December 5, 2009 at 12:01 PM www.pollstar.com

Los Angeles' Key Club, which had already cleared its calendar for December, quietly closed its doors Nov. 29.

Key Club CEO Keith Pressman told *Pollstar* the move is not permanent and investors are already looking into taking over ownership of the building.

The partners will be looking at renovations and the club could open as early as this month, but on a partial basis, Pressman said.

A more reasonable reopening would be as early as February, he said.

Other club owners and execs told the *Los Angeles Times* that live business is "worse than you can imagine" because of the economy and competition for nighttime entertainment.

The 500-capacity Key Club, which opened in West Hollywood nearly 15 years ago as Billboard Live, has been the recent Monday night home for heavy-metal jokesters Steel Panther and has hosted everyone from Less Than Jake in 2000 to a recent gig with Skid Row.

## Key Club Locks Doors

Monday, December 7, 2009 - By WeHo News Staff, West Hollywood

West Hollywood, California (December 7, 2009) - Saying the Sunset Strip live music venue seeks a new partner, the Key Club closed its doors last week Sunday.



*The Key Club closed its doors last week Sunday. Photo by WeHo News.*

The doors shuttered with no advance notice, although apparently the management had been clearing its December calendar, telling bands and bookers to find another location for those shows.

The club's failure to make its way in a rough economy raises questions about the local music scene's health, given the recent closure of the Knitting Factory in Hollywood.

Observers have noted that concert-goers see fewer acts and spend less money doing it.

Additionally, the closing sent tremors through the Sunset Strip and West Hollywood business communities

**Art Huerth**

---

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Thursday, December 17, 2009 1:44 PM
**To:** 'ruben'
**Subject:** RE: any news

Ruben
Is there a possibility for you to let me know approx when checks might go out?
Thanks
Art

**From:** ruben [[redacted]@broadwayentertainment.com]
**Sent:** Tuesday, December 15, 2009 2:37 PM
**To:** 'Art Huerth'
**Subject:** RE: any news

Art, waiting for Jerry to arrive so I can get a better update will contract you as soon as I can get him.

**From:** Art Huerth [[redacted]@embarqmail.com]
**Sent:** Tuesday, December 15, 2009 10:13 AM
**To:** ruben@broadwayentertainment.com
**Subject:** any news

Hi Ruben
Is there any news? Do you think there is a possibility to get any money before Christmas?
Thanks
Art

Call me if you can 239 652 9055

**Art Huerth**

**Subject:** FW: Check out this page at www.lfpress.com

-----Original Message-----[redacted]
From: Wayne Huerth [[redacted]@tuf-tite.com]
Sent: Monday, November 16, 2009 3:30 PM
To: Art Huerth; Joan Huerth
Subject: FW: Check out this page at www.lfpress.com

http://www.lfpress.com/news/london/2009/11/03/11619271.html

Saturday, June 5, 2010 Email Alerts Mobile Site RSS Feeds Subscriber Services
London22°Tomorrow »18°/12°Change city News London
Vanier's troubles worsen
ONCO: A US$27.5 million suit and sponsorship woes arise

By Hank Daniszewski

Last Updated: 3rd November 2009, 1:05pm
Email Story Print Size A A A Report Typo Share with:
Facebook Digg Del.icio.us Google Stumble Upon Newsvine Reddit Technorati Feed Me Yahoo Simpy Squidoo Spurl Blogmarks Netvouz Scuttle Sitejot + What are these? A "flim-flam man" who "took the money and ran all the way back to Canada" is how the head of a London energy company is described in a U.S. lawsuit.

Onco Petroleum and its chief executive Robert Vanier have been under a public microscope since Ontario's securities regulator halted trading in Onco shares by company officers for not filing financial statements for 2007.

The Free Press has learned Vanier is named in a US$27.5 million lawsuit filed by Broadway Entertainment, a Los Angeles entertainment company, over a 2006 sub-leasing agreement for office space in Santa Monica, Calif.

Contacted yesterday, Vanier told The Free Press he hadn't received the Broadway lawsuit and wouldn't comment.

Vanier refused a Free Press offer to bring the lawsuit documents to his office, saying he'd get the paperwork through his lawyer.

"I don't know where you people want to go," he said. "You're damaging my family. You're damaging everyone I know."

The suit says Vanier made "grandiose -- and ultimately false" promises to gain the trust of Broadway chairperson Jerrold Pressman and get a cheap deal on the office space.

The suit says Vanier used his contacts in professional hockey, including an alleged connection to Pat Brisson, agent of NHL superstar Sidney Crosby, to impress Pressman.

Vanier claimed he would steer US$800,000 in marketing and promotion business to Broadway if he got the cheap sublet, the suit contends.

The Broadway suit said Vanier requested and approved US$125,254 in renovations and improvements to the sublet office space, including new furniture and computer systems, and agreed to pay the full cost.

Now, more than two years after signing the agreement, Broadway says in its statement of claim Vanier has not paid even the first month's rent of US$20,000 or any of the renovation costs.

None of the allegations has been proven in court.

The lawsuit said Vanier represented himself as a principal "in a major oil company" who would "bring numerous wealthy contacts in from Canada as tenants and partners."

Vanier also used his "alleged" connections with Brisson, who has worked with Pressman on various projects, the suit contends.

In the same year, Vanier persuaded one of Brisson's friends, hockey great Luc Robitaille, to become a member of the Onco board.

Williams (Boots) Del Biaggio III, a California tycoon and hockey entrepreneur, also was a member of the Onco board.

Both men resigned from the Onco board last month, and Del Biaggio is facing a U.S. federal investigation for his financial dealings.

In April, Onco Petroleum, publicly traded on the CNQ Exchange, said it had discovered 1.6 trillion cubic feet of natural gas reserves in Chatham-Kent.

Reached in Los Angeles, John Kirkland, Broadway's lawyer, said his client had trouble locating Vanier to serve him the lawsuit.

He said the suit was sent by certified mail, which he said qualifies as legal service under U.S. law.

The suit, which also names as defendants Onco and RJV Capital, Vanier's company, seeks US$25 million in punitive damages and US$2.5 million in direct damages, including loss of rental income, renovation and equipment costs.

Email Story Print Size A A A Report Typo Share with:
Facebook Digg Del.icio.us Google Stumble Upon Newsvine Reddit Technorati Feed Me Yahoo Simpy Squidoo Spurl Blogmarks Netvouz Scuttle Sitejot + What are these?

**Art Huerth**

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Monday, N[redacted] 16, 2009 3:45 PM
**To:** 'Ruben Moreno'
**Subject:** RE: Funds

Hi Ruben
Thanks for your reply. I may be confused can you help me with the actual facts. I think Jerry told me at the end of Sept. that there were three contracts that could close at any time. One the LOC Two the FED X building and I believe the third was a piece of land in Missouri or Mississippi that would be used as an interchange for a major highway going through. Is there now a fourth possibility? Also, do you know what the delay was on FRD X and know if there is a new closing date targeted.
Thanks
Art

**From:** Ruben Moreno [[redacted]@keyclub.com]
**Sent:** Monday, November 16, 2009 2:06 PM
**To:** 'Art Huerth'
**Subject:** RE: Funds

Yes we are still working on that also.

**From:** Art Huerth [ma[redacted]@embarqmail.com]
**Sent:** Friday, November 13, 2009 2:49 PM
**To:** 'Ruben Moreno'; Jerry Pressman
**Subject:** RE: Funds

Ruben do you know if the LOC is still on the table?

**From:** Ruben Moreno [mailt[redacted]@keyclub.com]
**Sent:** Friday, November 13, 2009 4:40 PM
**To:** 'Art Huerth'
**Subject:** RE: Funds

No we have not received the check. Jerry is working on it and all looks good but as you know, nothing is "good" until it is in our bank accounts. We should know sometime next week if this deal will come through. I don't know what it's from, it is something Jerry has been working on on his own besides the Fed X deal.

**From:** Art Huerth [mail[redacted]@embarqmail.com]
**Sent:** Friday, November 13, 2009 12:36 PM
**To:** Ruben Moreno
**Subject:** Funds

Hi Ruben
Mr Brossio told me that you were expecting a sizeable check this week. This was from a different deal than FED X.

Can you tell me if this check came in. It is disappointing that FED X has been delayed again.

If you received the check can we get money next week.

Thanks Ruben
Art

**Art Huerth**

**From:** Art Huer[redacted]@embarqmail.com]
**Sent:** Friday, November 13, 2009 5:03 PM
**To:** 'Ruben Moreno'
**Subject:** RE: Funds

Thanks Ruben

**From:** Ruben Moreno [ma[redacted]@keyclub.com]
**Sent:** Friday, November 13, 2009 4:40 PM
**To:** 'Art Huerth'
**Subject:** RE: Funds

No we have not received the check. Jerry is working on it and all looks good but as you know, nothing is "good" until it is in our bank accounts. We should know sometime next week if this deal will come through. I don't know what it's from, it is something Jerry has been working on on his own besides the Fed X deal.

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Friday, November 13, 2009 12:36 PM
**To:** Ruben Moreno
**Subject:** Funds

Hi Ruben
Mr Brossio told me that you were expecting a sizeable check this week. This was from a different deal than FED X.

Can you tell me if this check came in. It is disappointing that FED X has been delayed again.

If you received the check can we get money next week.

Thanks Ruben
Art

**Art Huerth**

**From:** Ruben Moreno [redacted]@keyclub.com]
**Sent:** Tuesday, November 10, 2009 2:22 PM
**To:** 'Art Huerth'
**Subject:** RE: Fed X building

Not different from what he told you.

**From:** Art Huerth [mailto:a[redacted]@embarqmail.com]
**Sent:** Tuesday, November 10, 2009 6:31 AM
**To:** Ruben Moreno
**Subject:** Fed X building

Hi Ruben

Do you have an up- date on the Fed X close? Jerry felt it would be this week?
Thanks
Art

**Art Huerth**

**From:** Ruben Moren[redacted]@keyclub.com]
**Sent:** Wednesday, November 04, 2009 3:24 PM
**To:** Art Huerth
**Cc:** Jerry Pressman; Keith Pressman
**Subject:** Re: LOC

Art, I am going to refer you to Jerry and Keith. I understand the situation is dire and I don't know why you feel we are not communicating as I talk to you two or three times a week either by phone or by email. Again we are working on the situation to be remedied, don't lose faith in us. The reason I am referring you to Jerry & Keith is because they can advise you as to what to do in the meantime while we remedy the cash situation.

-----Original Message--[redacted]
From: "Art Huerth" <al[redacted]@embarqmail.com>
To: "Ruben Moreno" <[redacted]keyclub.com>
Cc: "Jerry Pressman" <[redacted]keyclub.com>
Date: Wed, 4 Nov 2009 12:42:30 -0500
Subject: LOC

Ruben
I had hoped you would call yesterday to give us your thoughts. Is there anything new on the LOC or the other contracts? A couple of weeks ago you said the LOC was in underwriting, is this still true. Jerry has said the other two sales of a commercial building and land were also close to closing. We are in extremely dire shape. Should we stop paying all of our bills? We can't sell our house as we are underwater. Do we call our mortgage company and tell them our situation and stop paying rent on our IL house? Or do we try to borrow more money from our family and try to buy time? What are the real facts with EPD? Are the three contracts still valid. Is there more bad news and that is why nobody will talk to us?

We don't know what to do going week to week with no updates. Can you help to get Jerry to call us? Hearing from him with some factual information would help. We need some support and a call from Jerry.
Please help
Art

**Art Huerth**

---

**From:** Ruben Moren[redacted]keyclub.com]
**Sent:** Monday, October 26, 2009 2:59 PM
**To:** 'Art Huerth'
**Subject:** RE: LOC

Yes it is

**From:** Art Huerth [mailto:ahuerth@embarqmail.com]
**Sent:** Monday, October 26, 2009 11:34 AM
**To:** 'Ruben Moreno'
**Subject:** RE: LOC

Ruben do you think the LOC is still active.
Thanks Art

**From:** Ruben Moreno [ma[redacted]@keyclub.com]
**Sent:** Monday, October 26, 2009 2:32 PM
**To:** 'Art Huerth'
**Subject:** RE: LOC

Nothing yet, I will have to wiat until Jerry arrives to see if he has any more news.

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Monday, October 26, 2009 11:18 AM
**To:** Ruben Moreno
**Subject:** LOC

Hi Ruben

Is there any progress on the LOC, is it still viable and active? Is there a possibility of getting some funds this week? I am desperately in need of cash.

Thank you
Art

**Art Huerth**

---

**From:** Ruben Moreno [redacted]@keyclub.com]
**Sent:** Thursday, October 15, 2009 3:08 PM
**To:** 'Art Huerth'
**Subject:** RE: up-date

As far as I know just shortage of staff to get the required paperwork in.

-----Original Message-----
From: Art Huerth [n[redacted]@embarqmail.com]
Sent: Thursday, October 15, 2009 10:21 AM
To: 'Ruben Moreno'
Subject: RE: up-date

Thanks Ruben
Do you know what has been causing all of the hold ups?

-----Original Message-----
From: Ruben Moreno [n[redacted]@keyclub.com]
Sent: Thursday, October 15, 2009 1:15 PM
To: 'Art Huerth'
Subject: RE: up-date

Art, I do not want to make you a promise that I don't have any control of.
I am just passing the information on to you as I hear it from Jerry so unfortunately we will have to both wait to see when this happens.
I am sorry I do not have a more concrete answer to give you but as soon as I get the funds in I will let you know.

-----Original Message-----
From: Art Huerth [redacted]h@embarqmail.com]
Sent: Thursday, October 15, 2009 3:53 AM
To: 'Ruben Moreno'
Subject: RE: up-date

Ruben thanks for the update. I have to make some very tough financial decisions. Do you feel I can make them with a strong degree of confidence that we will get funds in 10 to 15 days? This is critical for me right now.
Thanks so much
Art

-----Original Message[redacted]
From: Ruben Morenc[redacted]@keyclub.com]
Sent: Wednesday, October 14, 2009 9:01 PM
To: 'Art Huerth'
Subject: RE: up-date

Art, just spoke to jerry, he is saying the first of the funding we are waiting on not coming until 10-15 days before we can send anything out.

-----Original Message-----
From: Art Huerth [mailt[redacted]@embarqmail.com]
Sent: Monday, October 12, 2009 4:32 PM
To: 'Ruben Moreno'
Subject: RE: up-date

Thanks Ruben

Is there hope?

-----Original Message-----

From: Ruben Moreno [[redacted]@keyclub.com]
Sent: Monday, October 12, 2009 4:30 PM
To: Art Huerth
Subject: Re: up-date

Sorry to hear that. We are closed today for columbus day an I get back in the office on wed. I will call you then. Also I am forwarding your message to Jerry to keep him in the loop.

Sent from my iPhone

On Oct 12, 2009, at 11:19 AM, "Art Huert[redacted]embarqmail.com> wrote:

> Hello Ruben
>
> You told me to check with you today. I hope there is good news and a
> closing is going to happen this week.
>
>
>
> Ruben we need help we are in a desperate need for money. We can□ft pa
> y the mortgage or the rent on the IL house.
>
>
>
> Can you please call us. We will be home by 1:00 pm your time. We have
> to go to a wake, our neighbors father was killed in a head on, really
> sad.
>
>
>
> 239-652-9055 home phone
>
>
>
> Thanks so much
>
> Art

**Art Huerth**

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Wednesday, October 14, 2009 11:02 AM
**To:** 'Jerry Pressman'
**Subject:** RE: Per Jerry

Corrin
Thank you very much. I do hope Jerry can call us soon. In addition to truly needing an update from Jerry on the three closings I would like to discuss a new business I am learning and working hard at. I am working with a team of real professionals that buy foreclosed property. I have been at the auction and seeing people making amazing profits. I do hope Jerry can call us today. We truly need an update on the closings.
Thank you
Art

**From:** Jerry Pressman [mailto[redacted]@keyclub.com]
**Sent:** Tuesday, October 13, 2009 6:17 PM
**To:** 'Arthur Huerth'
**Subject:** Per Jerry

Art-

Jerry called in for messages and wanted me to let you know the following:

He received the IRS info and said that it was dated prior to filing the amended return and issues will be able to resolve as previously discussed. Please disregard those notices.

He will try and call you tomorrow if he is in the office.

Thanks,
Corrin

**Art Huerth**

**From:** Ruben Moreno [redacted]@keyclub.com]
**Sent:** Monday, Octob[redacted]2009 4:30 PM
**To:** Art Huerth
**Subject:** Re: up-date

Sorry to hear that. We are closed today for columbus day an I get back in the office on wed. I will call you then. Also I am forwarding your message to Jerry to keep him in the loop.

Sent from my iPhone

On Oct 12, 2009, at 11:19 AM, "Art Huerth" <[redacted]arqmail.com> wrote:

> Hello Ruben
>
> You told me to check with you today. I hope there is good news and a
> closing is going to happen this week.
>
>
>
> Ruben we need help we are in a desperate need for money. We can□ft pa
> y the mortgage or the rent on the IL house.
>
>
>
> Can you please call us. We will be home by 1:00 pm your time. We have
> to go to a wake, our neighbors father was killed in a head on, really
> sad.
>
>
>
> 239-652-9055 home phone
>
>
>
> Thanks so much
>
> Art

**Art Huerth**

**From:** Ruben Moreno [[redacted]@keyclub.com]
**Sent:** Wednesday, September 30, 2009 2:43 PM
**To:** Art Huerth
**Subject:** Re: were in trouble

Art I am working off site today. I can't make any promises but only can go on what they are telling me which is we should see some sort of cash source in the next two to three weeks. I will keep you pasted as it comes in

Sent from my iPhone

On Sep 30, 2009, at 7:00 AM, "Art Huerth" <[redacted]mbarqmail.com> wrote:

> Hi Ruben
>
>
>
> Hope you had a good vacation!
>
>
>
> Needless to say we are very scared with the EPD situation. We have run
> out of money and are leaving for Florida tomorrow. The plan is to put
> everything up for sale that we can. I doubt the house will sell we
> have too big a mortgage.
>
> The boat and cars may sell.
>
>
>
> I know Jerry is trying his best. I think you have all of your savings
> in EPD as well.
>
>
>
> Do you think Jerry can pull us out of this in the next 30 days?
>
>
>
> Your thoughts would be most helpful.
>
>
>
> Thanks
>
> Art

**Art Huerth**

---

| | |
|---|---|
| **From:** | Art Huerth [redacted]@embarqmail.com] |
| **Sent:** | Thursday, September 17, 2009 1:26 PM |
| **To:** | Jerry Pressman (Jerry@keyclub.com) |
| **Subject:** | FW: EPD |

Katie
This is the e mail I sent Corrin. We need some sort of direction from Jerry and would appreciate your help. I know Jerry is very busy but we are just about to run out of money we can only go to the end of this month. It is not like Jerry to just leave us in the dark. The fear of not being able to pay our bills is overwhelming us

Hopefully. Jerry can find just a couple of minutes for us

Thanks
Art

**From:** Art Huerth [ma[redacted]@embarqmail.com]
**Sent:** Wednesday, September 16, 2009 1:26 PM
**To:** Jerry Pressman (Jerry@keyclub.com)
**Subject:** EPD

Corrin

Were you able to catch up with Jerry and ask him if he would be able to talk with us at some point this week?

We would like to discuss our tax return, and our investment in EPD.

Could you ask Jerry if our personal letter, sent a couple of weeks ago, reached him?

Thanks
Art

**Art Huerth**

---

**From:** Art Huerth [[redacted]embarqmail.com]
**Sent:** Wednesday, [redacted]9, 2009 9:45 AM
**To:** Ted Jonavic ([redacted]@MSN.COM)
**Cc:** Jerry Pressman (Jerry@keyclub.com)
**Subject:** Application for a refund

Ted
Just an FYI the above was delivered to the IRS on 9-8-09 in Atlanta Ga.

Thanks
Art Huerth

**Art Huerth**

---

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Thursday, [redacted]ber 03, 2009 2:23 PM
**To:** 'Jerry Pressman'
**Subject:** RE: What's going on

Hi Corrin

I received a tracking from Fed X this am. I was able to get my neighbor to go over to the house. She found it intact and is forwarding it to me in Illinois. No harm done. I sure would like to know what the bottom line is. Maybe Ted could help us with that information or Jerry when he gets back. I hope this means Jerry will finally be able to talk to me

Did Ted actually file my return electronically? I had my neighbor read part of the cover letter and it sounded like we had to sign and send it in.
Please advise.

All we are seeing on the news here are the fires. Is everyone there ok?

Thanks
Art

**From:** Jerry Pressman [mailt[redacted]@keyclub.com]
**Sent:** Thursday, September 03, 2009 2:06 PM
**To:** Art Huerth
**Subject:** RE: What's going on

Art-

I spoke with Ted late yesterday afternoon and he informed me that he filed your return but he sent the copies to your Florida address. He is going to track the package and if is has not been delivered then he is going to reroute it to your Illinois home if not he is going to let me know what Fed Ex did with the package. Jerry has been in San Jose trying a case and will be back in the office later today or tomorrow. I will let him know what is going on.

Thanks,
Corrin

-----Original Message-----
From: "Art Huerth" <a[redacted]@embarqmail.com>
To: "'Jerry Pressman'" [redacted]@keyclub.com>
Date: Wed, 19 Aug 2009 09:32:56 -0400
Subject: RE: What's going on

Corrin
Can you find out if we have additional tax liabilities beyond the 69K we owe
from the audit? What I mean is, do we owe taxes for 2008 and will we have a
cash refund overall. If we do not owe taxes for 2008 I think we gain about 16K.

Is Jerry going to let us know when he can send past due interest checks? It
now amounts to five checks. It would be appreciated if he would call us today.

Can you have Ted send the return to our Ill. address?

This sure sounds like good news, we have so many problems right now this really helps. I was really starting to worry that we might have another unpleasant surprise.

Thank You
Art

-----Original Message-----
From: Jerry Pressman [mailto:Jerry@keyclub.com]
Sent: Tuesday, August 18, 2009 4:31 PM
To: Art Huerth
Subject: Re: What's going on

Art-

Ted has finished your return and has been able to get you a refund of 85,000 which will off set your current liability. Ted will be sending your return shortly.

Thanks,
Corrin
-----Original Message-----
From: "Art Huerth" <[redacted]embarqmail.com>
To: "Jerry Pressman" <Jerry@keyclub.com>
Date: Tue, 18 Aug 2009 12:46:36 -0400
Subject: What's going on

> Jerry
>
>
>
> What is going on with the completion of our Tax return? Ted has had
> over two
> months to complete it. Why can't you do something? We are week after
> week
> with promise after promise. You have all of our money and can't find
> the
> time to talk to us!
>
>
>

Case 2:10-bk-02208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 130 of 135


> The last check we received was the from June 5 th. How long do you
> think we
> can continue like this?? You are close to two and a half months behind.
>
>
>
> When will our tax return be complete and how soon can we get the money
> you
> owe us?
>
>
>
> I know Ted is busy I know you are busy I also know that I am not going
> to be
> able to pay my bills if this continues.
>
>
>
> Please jump over your firewall and let us know what's going on.
>
>
>
> Art
>
>
>
>
>

**Art Huerth**

| | |
|---|---|
| **From:** | Joan Huerth [redacted]@embarqmail.com] |
| **Sent:** | Thursday, Au[redacted], 2009 9:42 AM |
| **To:** | Huerth Art |
| **Subject:** | 8/28 09 Letter to Jerry Pressman |

Arthur and Joan Huerth
[redacted]
August 28, 2009

Mr. Jerry Pressman
EPD Investments
[redacted]

Dear Jerry,

I am not quite sure why you will not talk to us. Have we done something wrong? I know I have been persistent and probably irritated you, trying to get information. For this I apologize, as I truly feel you are doing everything you can to get us back on stream. It has been a long three years (October will be three years) since we received the letter from the IRS. This period of time has been very stressful for us. We have lived on our faith in you and Ted, however, when we don't know what is going on, we get anxious and scared.

Over a week ago, Corrin told us our 2008 return had been completed, and we have an 85K credit to apply to our liability. You can't imagine what a relief this information provided, although we are still waiting to see the return. We are so grateful to you for getting us through this audit and your diligence to find the IRS changes that made it possible to go back 5 years and use the taxes we had paid, to write off our current liability

We do not know how much time it will take for you to "get us back into the computer." As I mentioned earlier, we know you are trying and we understand that you have many priorities. Please try to understand our fears. We fear we may run out of money before you can get us current on our past due interest payments. We have invested all of our money with you. We kept about $40,000 which will be gone by the end of September. The fear of not being able to pay our bills is constantly on our minds. Is it possible for you to provide a loan to get us through until we get current? Do you think there are any other options that we could consider?

Needless to say, we need your help and advice regarding our tax return and interest payments. Please call us as soon as you can. Thank you.

Kindest personal regards,

Art

**Art Huerth**

---

**From:** Art Huerth [[redacted]@embarqmail.com]
**Sent:** Wednesday, August 19, 2009 9:33 AM
**To:** 'Jerry Pressman'
**Subject:** RE: What's going on

Corrin
Can you find out if we have additional tax liabilities beyond the 69K we owe from the audit? What I mean is, do we owe taxes for 2008 and will we have a cash refund overall. If we do not owe taxes for 2008 I think we gain about 16K.

Is Jerry going to let us know when he can send past due interest checks? It now amounts to five checks. It would be appreciated if he would call us today.

Can you have Ted send the return to our Ill. address?

This sure sounds like good news, we have so many problems right now this really helps. I was really starting to worry that we might have another unpleasant surprise.

Thank You
Art

-----Original Message-----
From: Jerry Pressman [mail[redacted]@keyclub.com]
Sent: Tuesday, August 18, 2009 4:31 PM
To: Art Huerth
Subject: Re: What's going on

Art-

Ted has finished your return and has been able to get you a refund of 85,000 which will off set your current liability. Ted will be sending your return shortly.

Thanks,
Corrin
-----Original Message-----
From: "Art Huerth" <[redacted]@embarqmail.com>
To: "Jerry Pressman" [redacted]@keyclub.com>
Date: Tue, 18 Aug 2009 12:46:36 -0400
Subject: What's going on

> Jerry
>
>
>
> What is going on with the completion of our Tax return? Ted has had
> over two
> months to complete it. Why can't you do something? We are week after
> week
> with promise after promise. You have all of our money and can't find
> the
> time to talk to us!
>
>
>

> The last check we received was the from June 5 th. How long do you
> think we
> can continue like this?? You are close to two and a half months behind.
>
>
>
> When will our tax return be complete and how soon can we get the money
> you
> owe us?
>
>
>
> I know Ted is busy I know you are busy I also know that I am not going
> to be
> able to pay my bills if this continues.
>
>
>
> Please jump over your firewall and let us know what's going on.
>
>
>
> Art
>
>
>
>
>

**Art Huerth**

**Subject:** FW: 2008 Tax Return.....

-----Original Message-----
From: Jerry Pressman [mailto:Jerry@keyclub.com]
Sent: Wednesday, August 12, 2009 12:41 PM
To: Art Huerth
Subject: Re: 2008 Tax Return.....

Art-

Ted was in a audit on Monday and Tuesday and he should be finalizing your return today or tomorrow. Once that is complete Jerry will call you to discuss.

Thanks,
Corrin

**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth [[redacted]@embarqmail.com] |
| **Sent:** | Wednesday[redacted] 05, 2009 1:16 PM |
| **To:** | 'Jerry Pressman' |
| **Subject:** | RE: 2008 Tax Return..... |
| **Categories:** | Red Category |

Corrin / Jerry

Thanks for the up-date, we are very anxious to finally get this over with. As of October it will be three, very long, years since we started with the IRS. Needless to say, we hope to get back to a normal schedule, regarding interest checks, a.s.a.p. We are starting to run short of funds.

Thanks very much. This helps a lot.
Art

-----Original Message-----
From: Jerry Pressman [mailto:[redacted]@keyclub.com]
Sent: Wednesday, August 05, 2009 1:50 PM
To: Art Huerth
Subject: Re: 2008 Tax Return.....

Art-

Jerry has asked me to tell you that he and Ted have finished your 2008 returns and are working on the roll back to 2003 and hope to have it finished by the early part of next week at which time Jerry will call you to discuss.

Thanks,
Corrin

-----Original Message-----
From: "Art Huerth" <[redacted]@embarqmail.com>
To: "Jerry Pressman" <[redacted]keyclub.com>
Date: Tue, 4 Aug 2009 13:33:10 -0400
Subject: 2008 Tax Return.....

\>
\>
\>
\>
\> Jerry,
\>
\>
\>
\> We know you are busy, but we would sure appreciate knowing the
\> progress regarding our tax return.
\>
\>
\>
\> We are now $23,160 behind on our interest payments. Can you please
\> try to find a way to at
\>
\> least send the June 20th check.
\>
\>
\>
\> Thank you very much,

>
>
>
>
>
> Art
>

**Art Huerth**

---

**From:** Jerry Pressman [Jerry@keyclub.com]
**Sent:** Tuesday, July 28, 2009 4:48 PM
**To:** Art Huerth
**Subject:** Your Taxes

Art-

Jerry wanted me to let you know that Ted has finished your preliminary tax return and will be in the office on Thursday to finalize it with Jerry.
After your return is finalized Jerry will contact you to go over it.

Thanks,
Corrin

**Art Huerth**

---

**From:** Art Huerth [[redacted]@embarqmail.com]
**Sent:** Sunday, July 26, 2009 11:40 AM
**To:** Jerry Pressman (Jerry@keyclub.com)
**Subject:** EPD

**Categories:** Red Category

Jerry

I am sending this e mail because you have not returned any of my calls since 7-21. Our last conversation was 7-8 where you felt we will be back to normal in a very short time. As soon as Ted filed our tax return and all he had left to do was put it on the computer.

Joan and I are deeply concerned that our problems with EPD are still not resolved. We are also concerned that our 2008 tax return has not been filed which may be part of the problem. If that is the case I must ask why, hasn't a priority been applied to the tax return. Your initial reaction was we need to get it done a.s.a.p. That was about seven weeks ago.

As of today we are past due $17,070.00 Jerry we need to pay our bills. We need to know when you will release at least the 6-20 and the 7-5 checks.

We feel you should return our calls and give us an up-date on the above concerns as well as providing us with a time line to resolve these issues.

We do hope you will understand our concerns.

Art & Joan

**Art Huerth**

---

| | |
|---|---|
| **From:** | Art Huerth [a[redacted]@embarqmail.com] |
| **Sent:** | Tuesday, June 30, 2009 10:08 AM |
| **To:** | 'Ruben Moreno' |
| **Subject:** | RE: your check sent priority mail friday |

Thanks Ruben
My hope is for Jerry to send the 6-20 check this week. We need to get current. Jerry was to call me yesterday to finish a conversation we started last Friday but he did not call.
Can you try to let me know about the 6-220 check?
Hope everything is well with you.

Kindest Regards
Art

**From:** Ruben Moreno [mailto:ruben@keyclub.com]
**Sent:** Monday, June 29, 2009 6:33 PM
**To:** 'Art Huerth'
**Subject:** your check sent priority mail friday

See attached.

ght from your home or office at usps.com/pickup

usps.com/postageonline

UNITED STATES POSTAGE
PITNEY BOWES
$ 004.95[0]
JUN 25 2009

PLEASE PR

# Flat Rate Mailing Envelope

**For Domestic and International Use**

**Visit us at usps.com**

From:/Expéditeur:

**EPD** INVESTMENT COMPANY, LLC
520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

ART HUERTH
1391 PRESCOTT Dr.
VOLO, IL
60020

EP14F

Recycled Paper

*This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law.*

Case 2:10-bk-02203-ER Doc 29-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc
Exhibit 10 Page 148 of 185


**Art Huerth**

| | |
|---|---|
| **From:** | Art Huerth [[redacted]@embarqmail.com] |
| **Sent:** | Wednesday, June 17, 2009 9:11 AM |
| **To:** | Jerry Pressman (Jerry@keyclub.com) |
| **Subject:** | EPD Invesment |

Jerry

I know you are busy but I have waited for you to return my calls from last Friday. I struggle with the best way to communicate with you.

A couple of weeks ago you told us EPD would now be back to normal. You also said the check from 5-20-09 would be sent last week.

Needless to say Joan and I are very concerned and feel a timely response from you is important.

You also told us that it was important to file our tax return very quickly.

Can you please provide the following information?

When will our tax return be filed?
When will the 5-20 check be sent?
When will the 6-5 check be sent?
When will EPD's cash flow return to normal and checks sent accordingly?

I hope we will here from you today.

Thank you
Art

I need to take Joan to the Dr. this afternoon to get stitches removed. I can be reached on my cell phone from about 2:00 PM to 6:00 EST. Hopefully, that will work for you. We should be home before or after this time.

**Art Huerth**

**From:** Jerry Pressman [Jerry@keyclub.com]
**Sent:** Wednesday, June 03, 2009 1:39 PM
**To:** Art Huerth
**Subject:** Re: May 5th check

Per Jerry-

The check has been sent.
-----Original Message-----
From: "Art Huerth" <al[redacted]@embarqmail.com>
To: "Jerry Pressman" <[redacted]keyclub.com>
Date: Wed, 3 Jun 2009 [redacted]10 -0400
Subject: May 5th check

> Jerry
>
> Still no check. This is not going well, can you give us a call to
> further discuss this problem? Is everyone going through this that is
> invested in EPD? The list that Corin keeps, is that for everyone?
>
>
>
> I hope there is a way for us to know when to expect a check. This
> check is almost a month late. Calling and not knowing when the checks
> are going out is stressful. There must be a better way.
>
>
>
> Give me a call
>
>
>
> Thanks
>

Case 2:10-bk-02208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 10 Page 150 of 185


**Art Huerth**

**From:** Ruben Moreno [redacted]@keyclub.com]
**Sent:** Friday, May 29, 2009 7:22 PM
**To:** 'Art Huerth'
**Subject:** RE: May 5th check

Art, just tracked Jerry down, scheduled to go out on Monday.

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Friday, May 29, 2009 11:00 AM
**To:** Ruben Moreno
**Subject:** May 5th check

Hi Ruben
Do you know if Jerry is going to get this check out today. He told me last week that he would and would overnight it.

Advise if possible

Thanks
Art

Case 2:10-bk-02208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc
Exhibit 10 Page 151 of 185


**Art Huerth**

---

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Thursday, May 21, 2009 4:03 PM
**To:** Jerry Pressman (Jerry@keyclub.com)
**Cc:** Ruben Moreno
**Subject:** checks

Jerry

I asked Reuben to let me know if the check cut on the 5th is in the mail. He has not answered this question. Corin told me there is a list of checks and my check has not gone out, and is waiting for your signature. Is this the check cut on the 5th? I am most concerned that I can't get an answer from anyone and the only one with the answers is you. Is EPD in trouble, should we set up a meeting. Our checks used to come like clock work, I know something is wrong.

I left a message yesterday asking for a call as I also did today. I tried your cell and there was no answer. I do hope you can understand my concern.

I have questions regarding the audit that I would like to talk about.

Jerry I know you are busy, but it is important for me to talk to you. Please call me at 239 652 9055

Thanks
Art

**Art Huerth**

---

**From:** Art Huerth [[redacted]@embarqmail.com]
**Sent:** Thursday, May 21, 2009 9:13 AM
**To:** 'Ruben Moreno'
**Subject:** RE: Check

Ruben
If the check is lost we need to overnight a replacement. This monthly concern is a problem. Can you suggest a way for us to know when to expect these checks? Also is it possible to get one check a month and reduce the problem?
Thanks

**From:** Ruben Moreno [mailto:[redacted]@keyclub.com]
**Sent:** Wednesday, May 20, 2009 5:38 PM
**To:** 'Art Huerth'
**Subject:** RE: Check

Art, got your message, just got back from some days off, let me research and get back to you this afternoon.

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Wednesday, May 20, [redacted] 11:26 AM
**To:** Ruben Moreno
**Subject:** Check

Hi Ruben
Hope all is well with you. Sounds like Calif. Is in big trouble.

We have not received the 1st May check. Do you know if it is in the mail?

Thanks
Art

**Joan Huerth**

**Subject:** New Address for Jonavic

New Address for Ted Jonavic below as of February 2010…that we are aware.

Prior, he was by himself in an office or his home at 5[redacted]o [redacted]..phone [redacted]

Ted Jonavic (EPD Tax Accountant – CPA)
Yoss Allen Jonavic.
[redacted]



**Art Huerth**

---

**From:** Art Huerth [[redacted]@embarqmail.com]
**Sent:** Tuesday, April 20, 2010 10:14 AM
**To:** 'THEODORE JONAVIC'
**Subject:** RE: 2009 tax return

**Categories:** Red Category

Hi Ted
Thanks for the information. I know you and Jerry are busy. When it comes to the IRS I still get nervous.

Regards
Art

**From:** THEODORE JONAVIC [[redacted]@msn.com]
**Sent:** Tuesday, April 20, 2010 1:37 AM
**To:** Art Huerth
**Subject:** RE: 2009 tax return

Hi,

Your return in on extension.

Ted

From: [redacted]@embarqmail.com
To: TP[redacted]@MSN.COM
Subject: FW: 2009 tax return
Date: Mon, 19 Apr 2010 19:12:36 -0400

Ted
Can you let me know the status of our 09 return?
Thanks
Art

**From:** Art Huerth [m[redacted]@embarqmail.com]
**Sent:** Thursday, April 15, 2010 9:19 AM
**To:** Ted Jonavic [redacted]MSN.COM)
**Subject:** 2009 tax return

Hi Ted

I know you must be extremely busy, but could you just give me a couple of lines on the status of our 2009 tax return.
Has it been filed or did you have to file for a extension.

Thanks very much
Kindest personal regards

Art

**Art Huerth**

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Wednesday, March 03, 2010 2:54 PM
**To:** Ted Jonavic [redacted]@MSN.COM)
**Cc:** jerry@broadwayentertainment.com
**Subject:** 2009 tax return

Hi Ted,

I have had a review of my 2008 tax return and have been advised that the depreciation of the leased equipment has almost been written down. Do you have the K1 from Jerry and am I going to have a tax liability this year? Are you planning on filing the return by 4-15?

Thanks

Art Huerth

Case 2:10-bk-62268-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 150 of 185


**Art Huerth**

**From:** Art Huerth[redacted]@embarqmail.com]
**Sent:** Tuesday, February 16, 2010 9:03 AM
**To:** 'THEODORE JONAVIC'
**Subject:** RE: new tax organizer

**Categories:** Red Category

Good Morning Ted.
The figures below are correct except for a math error for both of our Medicare cost which should be $ 2314.00 see yearend benefits statement from SS in our tax info which you should get today.

We do not have any additional medical cost other that what I reported on this e mail. Do you need full documentation for us individually? Our supplemental ins. and my monthly drug part D and is an automatic withdrawal. Joan pays AARP a monthly check for part D.

We would need to pull all of our bank records for the automatic withdrawals and checks for Joan's monthly drug part D payments if you need more . The $1403.00 is easy as we have a yearend summary.

We hope we do not need to pull everything as our daughter is in a rush to pack the house we rent in IL. Our records are packed but they are still accessible. Due to a lack of payments from Jerry we have to move quickly and break the lease.

We will need to know what to do very soon

Thanks Ted
Kindest Regards
Art

**From:** THEODORE JONAVIC [[redacted]@msn.com]
**Sent:** Friday, February 12, 2010 5:32 PM
**To:** Art Huerth
**Subject:** RE: new tax organizer

Hi Art,

Yes, it is possible to deduct your medical expenses including medications, doctor co-pays, hospital co-pays and the cost of medical insurance including the Medicare premiums for healthcare and Part D. These deductions are subject to a threshold of 7.5% of income. Since your income is down due to Jerry not paying you, it will be in your best interest to include all medical expenses so you can take advantage of the deduction.

Take care,

Ted

From: [redacted]h@embarqmail.com
To: tp[redacted]@msn.com
Subject: RE: new tax organizer
Date: Fri, 12 Feb 2010 13:48:04 -0500

Hi Ted

We are trying to complete and send our tax information to you. Since our income with Jerry was very limited for 09 is it possible to deduct premiums for Medicare and what we pay for the supplement ins. and drugs?

Total income $ 97,026.00 Interest paid $34,648.00

Medicare for both $2316.00
Supplemental $4684.00
Drugs part D $844.00

Additional drugs not covered $1403.00
Total cost $9247.00

Thanks
Art

**From:** THEODORE JONAVIC [mai[redacted]@msn.com]
**Sent:** Tuesday, January 19, 2010 2:44 PM
**To:** Art Huerth
**Subject:** RE: new tax organizer

Hi Art,

Don't worry about the EPD interest. Jerry will take care of that.

Fill in all of the rest of the form as best as you can. EPD will be done by Jerry. I assume that the $500 you refer to is the $250 per person amount from Social Security. Don't worry about that. It is not taxable.

Take care,

Ted

From [redacted]@embarqmail.com
To: T[redacted]@MSN.COM
Subje[redacted]x organizer
Date: Thu, 14 Jan 2010 15:25:35 -0500

Hello Ted
I have started to review your new on line organizer. I am afraid to make a mistake with it. I don't know what to put in for EPD interest income for example as Jerry always put this in. Do I only fill in the bank interest, social security income and nothing to do with EPD? What about the $500.00 that the government sent is there a place for that and is it taxable?
Are you and Jerry going to do all of the rest?
Thanks Ted

## Art Huerth

**From:** Art Huerth [ma[redacted]@embarqmail.com]
**Sent:** Wednesday, February 17, 2010 3:09 PM
**To:** 'ruben'
**Subject:** RE: late check

We started to discuss the 2008 but we never finished. You were not clear how we lost 7k from mid Dec. of 08 to the end of Dec 08
Have a good vacation
Thanks
Art

**From:** ruben [m[redacted]@broadwayentertainment.com]
**Sent:** Wednesday, February 17, 2010 2:53 PM
**To:** 'Art Huerth'
**Subject:** RE: late check

Tom Ferro will be calling you on this today and he will be your contact for that information from here going forward. Also, in regards to your schedules, I will need more time to go over them with you individually account by account so that you are clear on what the balance is as I seem to recall we did this before with the 2008 schedules and yet you still think there is discrepancies. Unfortunately, before I can do that I have to finish all our investor's schedules to get them out then we can go over yours together. I am only here a few more days this week and will be out of the office next week so I will call you when I get back the first week of march to go over these with you so we can both be on the same page.

**From:** Art Huerth [m[redacted]@embarqmail.com]
**Sent:** Tuesday, February 16, 2010 5:00 PM
**To:** 'ruben'
**Subject:** RE: late check

Ruben is there anything new in regards to the LOC
Thanks

**From:** ruben [[redacted]@broadwayentertainment.com]
**Sent:** Tuesday, February 16, 2010 7:56 PM
**To:** 'Art Huerth'
**Subject:** RE: late check

Ok this will help in my search, I willfinish this tomorrow.

**From:** Art Huerth [[redacted]@embarqmail.com]
**Sent:** Tuesday, February 16, 2010 4:51 PM
**To:** ruben@broadwayentertainment.com
**Subject:** FW: late check

Ruben this is the 7K at the end of 2008 I was talking about. With the audit last year and all for the problems since we never got to this.
Thanks
Art

**From:** Arthur Huert[redacted]@embarqmail.com]
**Sent:** Saturday, March 07, 2009 2:16 PM
**To:** Ruben Moreno
**Subject:** late check

Hello Ruben

The check arrived; I guess the mail service has me nervous.

I am still thinking about the remaining balance of our account. You sent me a summary as of Dec. 2008 showing $1,093,283.03

The year end summary shows $ 1,086,793.03.. what about a $7,000.00 diff. Could you have forgotten to add the approx $ 7,000.00 from Polycomp to my account balance?

Thank you in advance for looking into this.

Art

**Art Huerth**

**From:** Art Huerth [[redacted]@embarqmail.com]
**Sent:** Tuesday, March 09, 2010 11:48 AM
**To:** ruben@broadwayentertainment.com
**Cc:** Katy
**Subject:** year end summary

Hi Ruben,

I hope you had a good vacation and were able to get some much needed r and r.

Hopefully, you have been able to catch up and might have time to look at my year end summary. It would be great if we can resolve this in the near future.

As I think you know, we have broken our lease on the house in IL. The following should be removed from your records.

Address of 1391 Prescott Dr. Phone 815 679 6543 and fax # 815 679 6544
Please use our FL. Information at this time.

Thank you

Art

**Art Huerth**

---

**From:** ruben [[redacted]@broadwayentertainment.com]
**Sent:** Tuesday, February 16, 2010 7:03 PM
**To:** 'Art Huerth'
**Subject:** RE: 2009 investment summary sheet

Art look at your calculation sheet, you have a total of 93,630 in interest due to you AND you are including interest for Jan 2010 and February 2010 in that number. My schedules only reflect through Dec 2010 that is the difference. What was the problem with the $7000 in 2008?

**From:** Art Huerth [mailto[redacted]@embarqmail.com]
**Sent:** Tuesday, February 16, 2010 3:58 PM
**To:** 'ruben'
**Subject:** RE: 2009 investment summary sheet

Ruben did you get the e mail I just sent with attachments?? We are talking only the ending bal. for 2009
Also we never reconciled a $7000.00 diff. at the end of 08. I just do not want 09 to slide without we agree on the end bal. Do NOT send copies until we get this correct.
Please advise
Thanks
Art

**From:** ruben [ma[redacted]n@broadwayentertainment.com]
**Sent:** Tuesday, February 16, 2010 6:38 PM
**To:** 'Art Huerth'
**Subject:** RE: 2009 investment summary sheet

Art see my answers below in RED.

**From:** Art Huerth [mai[redacted]@embarqmail.com]
**Sent:** Friday, February 12, 2010 7:13 AM
**To:** ruben@broadwayentertainment.com
**Subject:** FW: 2009 investment summary sheet

Hi Ruben
I know how busy you are but I was wondering if you have had the time to look into the discrepancies I have outlined in my attached e mail. I am particularly concerned about the $15 diff. in our 09 ending bal.
Thanks very much
Art

**From:** Art Huerth [mailto[redacted]@embarqmail.com]
**Sent:** Wednesday, February 10, 2010 1:01 PM
**To:** ruben@broadwayentertainment.com
**Subject:** 2009 investment summary sheet

Ruben,

**I did receive the summary sheets last night. The bad news is I think you must redo them.** I am mailing clear copies with the cover letters to the address below.

**The quality of many of the sheets are barely legible, can you please improve.** See above.

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 10 Page 162 of 185


**Sheet no. 5 on your fax shows a three year old address. Spring Grove IL. It was sold in 2006.** Done

There wasn't a cover letter for my summary or Leslie's.see above

**Why docs Polycomp report an ending bal. of $259,241 and you show my IRA at $321,849. Since you provide this info. to Polycomp why is there a difference? How did this value increase anyway? A profit??? See Polycomp attached and your 09 summary also attached.** The original note was with the IRA was set up at 4% so that is what they are calculating but Jerry is actually paying out 12% on your IRA, this was set up between you guys for maximum tax strategy benefits, but the correct number is the number on our summary sheets.

**There is a 15K diff. in what I feel should be the 09 ending bal. and the bal. you are showing. You are showing $1,135,928.00 and I feel it should be $1,151,263.00. Please review sheet #2 attached. I am not an accountant but I must be closer that you are. See the 08 summary bal. attached. Take 08 minus $7K in principle reduction and add back interest to get to my figure. Please explain your bal. or make the correction. I may be off a little but not much.** You have calculated through February 2010 and the sheets are only done through December 2010 that is why you are showing more interest. We will not do the 2010 additions to the schedules until July 2010.

**Yes, in addition to a fax , if you still are having scanning problems. Please send original copies for Leslie and myself to my attention** at 1837 Seafan Cir. North Fort Myers , Florida 33903 Mailing clear copies to this address.

Thanks Ruben

Art

**Art Huerth**

---

| | |
|---|---|
| **From:** | Art Huerth [redacted]@embarqmail.com] |
| **Sent:** | Wednesday, February 10, 2010 1:01 PM |
| **To:** | ruben@broadwayentertainment.com |
| **Subject:** | 2009 investment summary sheet |
| **Attachments:** | scan0001.pdf |

Ruben,

I did receive the summary sheets last night. The bad news is I think you must redo them.

The quality of many of the sheets are barely legible, can you please improve.

Sheet no. 5 on your fax shows a three year old address. Spring Grove IL. It was sold in 2006.

There wasn't a cover letter for my summary or Leslie's.

Why does Polycomp report an ending bal. of $259,241 and you show my IRA at $321,849. Since you provide this info. to Polycomp why is there a difference? How did this value increase anyway? A profit??? See Polycomp attached and your 09 summary also attached.

There is a 15K diff. in what I feel should be the 09 ending bal. and the bal. you are showing. You are showing $1,135,928.00 and I feel it should be $1,151,263.00. Please review sheet #2 attached. I am not an accountant but I must be closer that you are. See the 08 summary bal. attached. Take 08 minus $7K in principle reduction and add back interest to get to my figure. Please explain your bal. or make the correction. I may be off a little but not much.

Yes, in addition to a fax , if you still are having scanning problems. Please send original copies for Leslie and myself to my attention at 1837 Seafan Cir. North Fort Myers , Florida 33903

Thanks Ruben

Art

Jan 24 10 03:25p The Huerth's [redacted] p.

polycomp
We Deliver Performance

Polycomp Trust Company Custodian
c/o Polycomp Admin. Svcs. Inc.
6400 Canoga Avenue
Suite 250
Woodland Hills, CA 91367-2446
(800) 736-7090
www.polycomp.net

## Account Statement

From 10/1/2009 To 12/31/2009

Account #: [redacted]

Arthur W Huerth

| | |
|---|---|
| Ownership Percentage | 100.00 |
| Type of Account: | Traditional IRA |
| Establishment Date: | 09/24/2007 |
| Your Designated Financial Advisor: | |

Arthur W Huerth
[redacted]

## Asset Allocation

| | | |
|---|---|---|
| Bank Deposits | $155.15 | 0.06 % |
| Other | $259,086.66 | 99.94 % |
| Value as of 12/31/2009 | $259,241.81 | 100.00 % |




## Asset Summary

| Symbol | Asset Description | Units | Unit Price | [illegible] | Market Value |
|---|---|---|---|---|---|
| BNK | Cash Account | | | | |
| | First Commerce Bank* | 155.1500 | $1.00 | $155.15 | $155.15 |
| | | | Total: | $155.15 | $155.15 |
| OTH | Other | | | | |
| | EPD Investments EPD Investment Company | 9,000.0000 | $1.00 | $9,000.00 | $9,000.00 |
| | EPD Investment Unsecured Note EPD Investments | 250,086.6600 | $1.00 | $209,000.00 | $250,086.66 |
| | | | Total: | $218,000.00 | $259,086.66 |
| Grand Total | | | | $218,155.15 | $259,241.81 |

| DATE OF CHECK | DEPOSIT DATE | PRINC. & INTEREST | CHECK # | REDUCT. OF PRINCIPLE |
|---|---|---|---|---|
| 12/20/2008 | 1/6/2009 | $6,490.00 | | $1,500.00 |
| 1/16/2009 | 1/20/2009 | $6,090.00 | 68203 | |
| 1/20/2009 | 1/30/2009 | $6,490.00 | 68180 | $1,500.00 |
| 2/5/2009 | 2/18/2009 | $6,090.00 | 68311 | |
| 2/20/2009 | 3/9/2009 | $6,490.00 | 68429 | $1,500.00 |
| 3/5/2009 | 3/31/2009 | $6,090.00 | 68565 | |
| 3/20/2009 | 4/8/2009 | $6,490.00 | 68691 | $1,500.00 |
| 4/5/2009 | 4/23/2009 | $6,090.00 | 68826 | |
| 4/20/2009 | 4/25/2009 | $5,490.00 | 68935 | $500.00 |
| 5/5/2009 | 6/15/2009 | $6,090.00 | 69056 | |
| 5/20/2009 | 6/24/2009 | $5,490.00 | 69172 | $500.00 |
| 6/5/2009 | 7/3/2009 | $6,090.00 | 69294 | |
| | | $73,480.00 | | $7,000.00 |

| DATE | | INTEREST PAST DUE |
|---|---|---|
| 6/9/2009 | | $4,990.00 |
| 7/9/2009 | | 60,798 $11,080.00 |
| 8/9/2009 | | $11,080.00 |
| 9/9/2009 | | $11,080.00 |
| 10/9/2009 | | $11,080.00 |
| 11/9/2009 | | $11,080.00 |
| 12/9/2009 | | $11,080.00 |
| 1/9/2010 | | $11,080.00 |
| 2/9/2010 | | $11,080.00 |
| | | $93,630.00 |

– NO PRINCIPLE

71,410.00

93,630
22,160
71,410

1,079,793.00
+71,410.00

END 12/09 → 1,151,263.00

| | |
|---|---|
| PRINCIPLE BAL 2008 | $1,086,793.03 |
| PRINIPLE REDUCTION 6-09 | -$7,000.00 |
| PRICIPLE | $1,079,793.03 |
| INTEREST DUE | $93,630.00 |
| BAL. AS OF 2/28/2010 | $1,173,423.03 |

RUBEN YOU SHOW 1,135,928.13
WE SHOULD NOT BE OFF BY
15K WHY

Feb 08 09 07:28a The Huerths

**Arthur Huerth Investment Summary Sheet 2008**

**Year to Date 2008**

| DESCRIPTION | ACCOUNT NUMBER | INTEREST RATE | CURRENT PRINCIPAL | TO DATE ACCRD. INT. | ENDING BALANCE | INTEREST 2008 |
|---|---|---|---|---|---|---|
| **Investment Accounts** | | | | | | |
| Arthur Huerth | Account No 040823-AH | 12% | $ 65,340.00 | $ 31,257.73 | $ 96,597.73 | $ - |
| Arthur Huerth IRA | Account No: 050613-Art Huerth IRA | 12% | $ 211,288.90 | $ 74,016.97 | $ 285,305.87 | $ - |
| Arthur Huerth | Account No 060407-AH | 12% | $ 207,156.74 | $ - | $ 207,156.74 | $ 30,476.24 |
| Arthur Huerth | Account No: 051205-AH | 12% | $ 26,479.00 | $ 7,704.08 | $ 34,183.08 | $ - |
| **Lease Accounts** | | | | | | |
| Huerth Leasing | *See Details Below* | | $ 463,549.60 | | $ 463,549.60 | |
| TOTAL | | | $ 973,814.25 | $ 112,978.79 | $ 1,086,793.03 | $ 30,476.24 |

| Lease Accounts | | INTEREST RATE | EQUIPMENT COST | LEASE BALANCE | YTD LEASE PAYMENTS | MO. LEASE PAYMENTS |
|---|---|---|---|---|---|---|
| HUERTH LEASING | ACCT # L040823 HFL | | $ 248,620.00 | $ 248,620.00 | $ 22,838.40 | $ 1,903.20 |
| HUERTH LEASING | ACCT # L040823-HFL-2 | | $ 24,850.00 | $ 24,850.00 | $ 2,982.00 | $ 248.50 |
| HUERTH LEASING | ACCT # L040823-HFL-3 | | $ 32,500.00 | $ 32,500.00 | $ 3,900.00 | $ 325.00 |
| HUERTH LEASING | ACCT # L040823-HFL-4 | | $ 94,030.00 | $ 94,030.00 | $ 11,283.60 | $ 940.30 |
| HUERTH LEASING | ACCT # L051205-AH | | $ 75,000.00 | $ 63,549.60 | $ 15,887.40 | $ 1,323.96 |
| Total | | | $ 475,000.00 | $ 463,549.60 | $ 56,891.40 | $ 4,740.96 |

**Arthur Huerth Investment Summary Sheet 2009**

**Year to Date 2009**

| DESCRIPTION | ACCOUNT NUMBER | INTEREST RATE | CURRENT PRINCIPAL | TO DATE ACCRD. INT. | ENDING BALANCE | INTEREST 2009 |
|---|---|---|---|---|---|---|
| **Investment Accounts** | | | | | | |
| Arthur Huerth | Account No: 040823-AH | 12% | $ 65,340.00 | $ 43,508.74 | $ 108,848.74 | $ - |
| Arthur Huerth IRA | Account No: 050613-Art Huerth IRA | 12% | $ 211,288.90 | $ 110,200.89 | $ 321,489.80 | $ - |
| Arthur Huerth | Account No: 060407-AH | 12% | $ 207,882.87 | $ 11,746.16 | $ 219,409.04 | $ 10,676.68 |
| Arthur Huerth | Account No: 051205-AH | 12% | $ 26,479.00 | $ 12,039.35 | $ 38,518.35 | $ - |
| **Lease Accounts** | | | | | | |
| Huerth Leasing | *See Details Below* | | $ 447,682.20 | | $ 447,682.20 | |
| **TOTAL** | | | $ 958,432.98 | $ 177,495.16 | $ 1,135,928.13 | $ 10,676.68 |

| Lease Accounts | | INTEREST RATE | EQUIPMENT COST | LEASE BALANCE | YTD LEASE PAYMENTS | MO. LEASE PAYMENTS |
|---|---|---|---|---|---|---|
| HUERTH LEASING | ACCT # L040823-HFL | | $ 248,620.00 | $ 248,620.00 | $ 22,838.40 | $ 1,903.20 |
| HUERTH LEASING | ACCT # L040823-HFL-2 | | $ 24,850.00 | $ 24,850.00 | $ 2,982.00 | $ 248.50 |
| HUERTH LEASING | ACCT # L040823-HFL-3 | | $ 32,500.00 | $ 32,500.00 | $ 3,900.00 | $ 325.00 |
| HUERTH LEASING | ACCT # L040823-HFL-4 | | $ 94,030.00 | $ 94,030.00 | $ 11,283.60 | $ 940.30 |
| HUERTH LEASING | ACCT # L051205-AH | | $ 75,000.00 | $ 47,662.20 | $ 15,687.40 | $ 1,323.95 |
| **Total** | | | $ 475,000.00 | $ 447,682.20 | $ 56,891.40 | $ 4,740.95 |

**Art Huerth**

**Subject:** FW: Financial spread sheet

**From:** Art Huerth [mailt[redacted]@embarqmail.com]
**Sent:** Tuesday, February 09, 2010 2:53 PM
**To:** 'ruben'
**Subject:** RE: Financial spread sheet

Ruben. Thanks very much as every bit of information helps. Does EPD have the assets to get us out of this? As for hanging in there, I guess that is only emotionally speaking as there is nothing else we can do. After eight months of trying to hang in there, my wife and I are drained. I am sure others are in terrible shape also.

Thanks
Art

**From:** ruben [mailto:ruben@broadwayentertainment.com]
**Sent:** Tuesday, February 09, 2010 2:44 PM
**To:** 'Art Huerth'
**Subject:** RE: Financial spread sheet

Art, I understand it is very hard to believe that we will ever get out of this when Jerry has not called you back. I am not making excuses for Jerry I am simply saying it is overwhelming to be in the position Jerry is in and effectively pursue the real issue which is to get cash out you investors asap. I am here everyday and all we are focused on is getting funding in the quickest way possible so please do not give up hope. On Friday we got loan approval on one of the credit lines but also asking for more information. That won't be enough to cover everyone but it will be something to send you guys to help ease this until we get through this. Besides that deal we are still working on other ways of getting more funding out to you guys as we are not taking this lightly. So please Art, hang in there and know that Jerry is not purposely ignoring you and neither am I but the quickest way to get through this is to have us working on getting funding rather than returning calls because as you can imagine they are coming in quickly. Just know Jerry is doing everything in his power to remedy this situation as quickly as possible.

## Art Huerth

**From:** Art Huerth [redacted]@embarqmail.com]
**Sent:** Tuesday, [redacted] 09, 2010 2:28 PM
**To:** 'ruben'
**Subject:** RE: Financial spread sheet

**Categories:** Red Category

Hi Ruben,
You can fax it to me at 239 656 5564 Thanks so much.
Ruben can you tell me what you think the likelihood of receiving any funds in the next two or three months? Do you think eventually we will get our money back? We are sneaking out of the house we rent in Illinois and will shortly have a post office address for you. We have stopped paying our mortgage in Florida and have everything we own for sale. We are trying to just hold on to some cash for essentials. Jerry will not talk with us and we feel we have lost everything. We are underwater on our house and will lose it.
We are just looking for some hope.
Thanks Ruben

**From:** ruben [mailto:ruben@broadwayentertainment.com]
**Sent:** Tuesday, February 09, 2010 2:08 PM
**To:** 'Art Huerth'
**Subject:** RE: Financial spread sheet

I'm in the middle of finishing your schedule, should be done by end of day today or early tomorrow. Do you have a fax number as I can no longer scan them as it is not reading them to clearly or I can just mail to you.

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Monday, February 08, 2010 10:57 AM
**To:** 'ruben'
**Subject:** RE: Financial spread sheet

Do you know when that will be?

**From:** ruben [mailto:ruben@broadwayentertainment.com]
**Sent:** Monday, February 08, 2010 1:55 PM
**To:** 'Art Huerth'
**Subject:** RE: Financial spread sheet

We are currently working on these schedules and when we finish I will send them to you.

**From:** Art Huerth [mailto:[redacted]@embarqmail.com]
**Sent:** Sunday, February 07, 2010 6:09 AM
**To:** ruben@broadwayentertainment.com
**Subject:** FW: Financial spread sheet

Ruben working on taxes and want to get them out by Tuesday. Pls review and let me know if you agree
Thanks
Art

**From:** Leslie Huerth [redacted]@mc.net]
**Sent:** Saturday, February 06, 2010 1:47 PM
**To:** 'Art Huerth'; 'Joan Huerth'
**Subject:** Financial spread sheet

| DATE OF CHECK | DEPOSIT DATE | PRINC. & INTEREST | CHECK # | REDUCT. OF PRINCIPLE |
|---|---|---|---|---|
| 12/20/2008 | 1/6/2009 | $6,490.00 | | $1,500.00 |
| 1/16/2009 | 1/20/2009 | $6,090.00 | 68203 | |
| 1/20/2009 | 1/30/2009 | $6,490.00 | 68180 | $1,500.00 |
| 2/5/2009 | 2/18/2009 | $6,090.00 | 68311 | |
| 2/20/2009 | 3/9/2009 | $6,490.00 | 68429 | $1,500.00 |
| 3/5/2009 | 3/31/2009 | $6,090.00 | 68565 | |
| 3/20/2009 | 4/8/2009 | $6,490.00 | 68691 | $1,500.00 |
| 4/5/2009 | 4/23/2009 | $6,090.00 | 68826 | |
| 4/20/2009 | 4/25/2009 | $5,490.00 | 68935 | $500.00 |
| 5/5/2009 | 6/15/2009 | $6,090.00 | 69056 | |
| 5/20/2009 | 6/24/2009 | $5,490.00 | 69172 | $500.00 |
| 6/5/2009 | 7/3/2009 | $6,090.00 | 69294 | |
| | | $73,480.00 | | $7,000.00 |

| DATE | | INTEREST PAST DUE |
|---|---|---|
| 6/9/2009 | | $4,990.00 |
| 7/9/2009 | | $11,080.00 |
| 8/9/2009 | | $11,080.00 |
| 9/9/2009 | | $11,080.00 |
| 10/9/2009 | | $11,080.00 |
| 11/9/2009 | | $11,080.00 |
| 12/9/2009 | | $11,080.00 |
| 1/9/2010 | | $11,080.00 |
| 2/9/2010 | | $11,080.00 |
| | | $93,630.00 |

| | |
|---|---|
| PRINCIPLE BAL 2008 | $1,086,793.03 |
| PRINIPLE REDUCTION 6-09 | -$7,000.00 |
| PRICIPLE | $1,079,793.03 |
| INTEREST DUE | $93,630.00 |
| BAL. AS OF 2/28/2010 | $1,173,423.03 |

**Art Huerth**

---

**From:** Art Huerth [[redacted]@embarqmail.com]
**Sent:** Saturday, February 06, 2010 2:06 PM
**To:** ruben@broadwayentertainment.com
**Subject:** Wear end statemenn

Ruben

You ignored my request for the year end statement which has always gone out in January. I need this statement to be sent and e mailed by the end of the business day Monday.

Thanks

Art Huerth

**Art Huerth**

---

**From:** Joan Huerth [redacted]@embarqmail.com]
**Sent:** Thursday, February 25, 2010 8:29 AM
**To:** Huerth Art
**Subject:** FW: Change in principal

**From:** Arthur Huerth [mailto[redacted]@embarqmail.com]
**Sent:** Wednesday, March 25, 2009 2:59 PM
**To:** Jerry Pressman
**Cc:** Ruben Moreno; lhuerth@mc.net; Joan Huerth
**Subject:** Change in principal

Hi Jerry

We would like you to reduce the principal we are currently taking from our investment account. We would like to reduce the amount monthly by $1,000.00 per month. Please make this change starting in April on the second check of the month. That would be the check usually cut on the 20th of the month . The new amount should be $5,490.00. The only reduction in principal would be interest due to the reduction of the principal that we have taken over the last couple of years.

Thanks You,

Kindest Regards

Art

**Art Huerth**

---

**From:** Rebecca Johnson [redacted]@keyclub.com]
**Sent:** Monday, December 15, 2008 4:28 PM
**To:** [redacted]@embarqmail.com
**Cc:** 'Ruben Moreno'
**Subject:** 2008 EPD Schedules
**Attachments:** SKMBT_C35208121512110.pdf

Hello Art,
Per Ruben's instructions please find your current 2008 EPD Schedules.

Thank You,
Rebecca Johnson

**From:** c352@broadwayentertainment.com [mailto:c352@broadwayentertainment.com]
**Sent:** Monday, December 15, 2008 4:12 AM
**To:** rebecca@keyclub.com
**Subject:** Message from KMBT_C352

**Arthur Huerth Investment Summary Sheet 2008**

**Year to Date 2008**

| DESCRIPTION | ACCOUNT NUMBER | INTEREST RATE | CURRENT PRINCIPAL | TO DATE ACCRD. INT. | ENDING BALANCE | INTEREST 2008 |
|---|---|---|---|---|---|---|
| **Investment Accounts** | | | | | | |
| Arthur Huerth | Account No: 040823-AH | 12% | $ 65,340.00 | $ 31,257.73 | $ 96,597.73 | $ - |
| Arthur Huerth IRA | Account No: 050613-Art Huerth IRA | 12% | $ 211,288.90 | $ 74,016.97 | $ 285,305.87 | $ - |
| Arthur Huerth | Account No: 060407-AH | 12% | $ 212,583.82 | $ 1,062.92 | $ 213,646.74 | $ 29,413.32 |
| Arthur Huerth | Account No: 051205-AH | 12% | $ 26,479.00 | $ 7,704.08 | $ 34,183.08 | $ - |
| **Lease Accounts** | | | | | | |
| Huerth Leasing | *See Details Below* | | $ 463,549.60 | | $ 463,549.60 | |
| TOTAL | | | $ 979,241.33 | $ 114,041.71 | $ 1,093,283.03 | $ 29,413.32 |

| Lease Accounts | | INTEREST RATE | EQUIPMENT COST | LEASE BALANCE | YTD LEASE PAYMENTS | MO. LEASE PAYMENTS |
|---|---|---|---|---|---|---|
| HUERTH LEASING | ACCT # L040823-HFL | | $ 248,620.00 | $ 248,620.00 | $ 22,838.40 | $ 1,803.20 |
| HUERTH LEASING | ACCT # L040823-HFL-2 | | $ 24,850.00 | $ 24,850.00 | $ 2,982.00 | $ 248.50 |
| HUERTH LEASING | ACCT # L040823-HFL-3 | | $ 32,500.00 | $ 32,500.00 | $ 3,900.00 | $ 325.00 |
| HUERTH LEASING | ACCT # L040823-HFL-4 | | $ 94,030.00 | $ 94,030.00 | $ 11,283.60 | $ 940.30 |
| HUERTH LEASING | ACCT # L051205-AH | | $ 75,000.00 | $ 63,549.60 | $ 15,887.40 | $ 1,323.95 |
| Total | | | $ 475,000.00 | $ 463,549.60 | $ 56,891.40 | $ 4,740.95 |

BEGINNING BALANCE AS OF 01/01/2008

| NAME | INTEREST RATE | BEGINNING PRINCIPAL | PREVIOUS INTEREST | BEGINNING BALANCE | DEPOSITS: DATE | DEPOSITS: DEPOSITS | DEPOSITS: MONTHLY INTEREST | WITHDRAWALS: DATE | WITHDRAWALS: WITHDRAWAL FROM PRINCIPAL | WITHDRAWALS: WITHDRAWAL FROM INTEREST | WITHDRAWALS: TOTAL THDRAWA | ENDING BALANCES: PRINCIPAL BALANCE | ENDING BALANCES: TO DATE ACCRD INT | ENDING BALANCES: ENDING BALANCE | ENDING BALANCES: Y.T.D PAID INTEREST (1000) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO 051205-AH<br>ARTHUR HUERTH<br>6401 APPALOOSA LANE<br>SPRING GROVE IL 60081 | 12 00% | 26,479.00 | 3,858 75 | 30,335 75 | | | | | | | | 26,479 00 | 3,858 75 | 30,335 75 | - |
| | | | | | 1/5/2008 | | 303 36 | 1/5/2008 | - | - | | 26,479.00 | 4,160.11 | 30,639 11 | - |
| | | | | | 2/5/2008 | | 306.39 | 2/5/2008 | - | - | | 26,479 00 | 4,466.50 | 30,945 50 | - |
| | | | | | 3/5/2008 | | 309 45 | 3/5/2008 | - | - | | 26,479.00 | 4,775.95 | 31,254 95 | - |
| | | | | | 4/5/2008 | | 312 55 | 4/5/2008 | - | - | | 26,479 00 | 5 088 50 | 31,567.50 | - |
| | | | | | 5/5/2008 | | 315.68 | 5/5/2008 | - | - | | 26,479.00 | 5,404.18 | 31,883.18 | - |
| | | | | | 6/5/2008 | | 318 83 | 6/5/2008 | - | - | | 26,479.00 | 5,723 01 | 32,202 01 | - |
| | | | | | 7/5/2008 | | 322 02 | 7/5/2008 | - | - | | 26,479.00 | 6,045.03 | 32,524 03 | - |
| | | | | | 8/5/2008 | | 325 24 | 8/5/2008 | - | - | | 26,479 00 | 6,370 27 | 32 849 27 | - |
| | | | | | 9/5/2008 | | 328 49 | 9/5/2008 | - | - | | 26,479 00 | 6,698.76 | 33,177 76 | - |
| | | | | | 10/5/2008 | | 331.70 | 10/5/2008 | - | - | | 26,479 00 | 7,030 54 | 33,509.54 | - |
| | | | | | 11/5/2008 | | 335 10 | 11/5/2008 | - | - | | 26,479 00 | 7,365 64 | 33,844 64 | - |
| | | | | | 12/5/2008 | | 338.45 | 12/5/2008 | - | - | | 26,479 00 | 7,704 08 | 34,183 08 | - |
| | | | | | | - | 3 847.33 | | - | - | - | 26,479 00 | 7 704.08 | 34,183 08 | - |

THE INTEREST RATE ON YOUR INVESTMENT IS PRESENTLY 12%, COMPOUNDED MONTHLY INTEREST MAY BE TAX DEFERRED AT YOUR REQUEST
ALL NEW INVESTMENTS ARE AT A "FLOATING" INTEREST RATE, ADJUSTED PERIODICALLY
THANK YOU FOR YOUR CONTINUED PARTICIPATION IN OUR COMPANY AS ALWAYS YOU WILL CONTINUE TO EARN THE HIGHEST INTEREST RATE CONSISTENT WITH PRUDENT BUSINESS PRACTICES

BEGINNING BALANCE AS OF 01/01/2008 | DEPOSITS | WITHDRAWALS | ENDING BALANCES

| NAME | INTEREST RATE | BEGINNING PRINCIPAL | PREVIOUS INTEREST | BEGINNING BALANCE | DATE | DEPOSITS | MONTHLY INTEREST | DATE | WITHDRAWAL FROM PRINCIPAL | WITHDRAWAL FROM INTEREST | TOTAL WITHDRAWALS | PRINCIPAL BALANCE | TO DATE ACCRD INT. | ENDING BALANCE | Y T.D. PAID INTEREST (1099) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO 040623-AH<br>ARTHUR HUERTH<br>1391 Prescott Drive<br>Volo, IL 60020 | 12 00% | 65 340 00 | 20,388.58 | 85,725.58 | | | | | | | | | | | |
| | | | | | 1/5/2008 | | 857 26 | 1/5/2008 | - | - | | 65,340 00 | 20,385 58 | 85,725 58 | - |
| | | | | | 2/5/2008 | | 865.83 | 2/5/2008 | - | - | | 65,340 00 | 21,242 84 | 86,582 84 | - |
| | | | | | 3/5/2008 | | 874 49 | 3/5/2008 | - | - | | 65,340 00 | 22,108 67 | 87,448 67 | - |
| | | | | | 4/5/2008 | | 883.23 | 4/5/2008 | - | - | | 65,340 00 | 22,983.16 | 88,323 16 | - |
| | | | | | 5/5/2008 | | 892.00 | 5/5/2008 | - | - | | 65,340 00 | 23,866 39 | 89,206.39 | - |
| | | | | | 6/5/2008 | | 900 98 | 6/5/2008 | - | - | | 65,340 00 | 24,758 45 | 90,098 45 | - |
| | | | | | 7/5/2008 | | 900.99 | 7/5/2008 | - | - | | 65,340 00 | 25,659 44 | 90,999 44 | - |
| | | | | | 8/5/2008 | | 910 09 | 8/5/2008 | - | - | | 65,340 00 | 26,569.43 | 91,909 43 | - |
| | | | | | 9/5/2008 | | 928.29 | 9/5/2008 | - | - | | 65,340 00 | 27,488 52 | 92,828 52 | - |
| | | | | | 10/5/2008 | | 937.67 | 10/5/2008 | - | - | | 65,340 00 | 28,416.81 | 93,756.81 | - |
| | | | | | 11/5/2008 | | 948 94 | 11/5/2008 | - | - | | 65 340 00 | 29,354 38 | 94 694 38 | - |
| | | | | | 12/5/2008 | | 950 41 | 12/5/2008 | - | - | | 65,340 00 | 30,301.32 | 95,641 32 | - |
| | | | | | | | | | | | | 65,340 00 | 31,257 73 | 96,597 73 | - |
| INTEREST ONLY | | | | | | | | | | | | | | | |
| | | | | | | - | 10,872.15 | | - | - | - | 65,340 00 | 31,257.73 | 96,597 73 | - |

THE INTEREST RATE ON YOUR INVESTMENT IS PRESENTLY 12% COMPOUNDED MONTHLY INTEREST MAY BE TAX DEFERRED AT YOUR REQUEST
ALL NEW INVESTMENTS ARE AT A "FLOATING" INTEREST RATE, ADJUSTED PERIODICALLY
THANK YOU FOR YOUR CONTINUED PARTICIPATION IN OUR COMPANY AS ALWAYS, YOU WILL CONTINUE TO EARN THE HIGHEST INTEREST RATE CONSISTENT WITH PRUDENT BUSINESS PRACTICES

Case 2:12-ap-02424-VZ Doc 263-7 Filed 09/05/17 Entered 09/05/17 18:59:26 Desc
Exhibit Page 154 of 321


BEGINNING BALANCE AS OF 01/01/2008 — DEPOSITS — WITHDRAWALS — ENDING BALANCES

| NAME | INTEREST RATE | BEGINNING PRINCIPAL | PREVIOUS INTEREST | BEGINNING BALANCE | DATE | DEPOSITS | MONTHLY INTEREST | DATE | WITHDRAWAL FROM PRINCIPAL | WITHDRAWAL FROM INTEREST | TOTAL WITHDRAWALS | PRINCIPAL BALANCE | TO DATE ACCRD. INT. | ENDING BALANCE | Y.T.D. PAID INTEREST (1099) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 050513-Art Huerth IRA<br>ARTHUR HUERTH<br>1391 Prescott Drive<br>Volo, IL 60020 | 12.00% | 202,288.90 | 42,098.13 | 244,387.04 | | | | | | | | 202,288.90 | 42,098.13 | 244,387.04 | - |
| | | Deposit via Wire | | | 1/15/2008 | | 2,443.87 | 1/15/2008 | - | - | | 202,288.90 | 44,542.00 | 246,830.91 | - |
| | | | | | 2/20/2008 | 9,000.00 | 2,879.69 | 2/20/2008 | - | - | | 211,288.90 | 47,421.70 | 250,710.60 | - |
| | | | | | 3/15/2008 | | 2,155.92 | 3/15/2008 | - | - | | 211,288.90 | 49,577.62 | 260,866.52 | - |
| | | | | | 4/15/2008 | | 2,608.67 | 4/15/2008 | - | - | | 211,288.90 | 52,186.28 | 263,475.19 | - |
| | | | | | 5/15/2008 | | 2,634.75 | 5/15/2008 | - | - | | 211,288.90 | 54,821.03 | 266,109.94 | - |
| | | | | | 6/15/2008 | | 2,661.10 | 6/15/2008 | - | - | | 211,288.90 | 57,482.13 | 268,771.04 | - |
| | | | | | 7/15/2008 | | 2,687.71 | 7/15/2008 | - | - | | 211,288.90 | 60,169.84 | 271,458.76 | - |
| IRA | | | | | 8/15/2008 | | 2,714.59 | 8/15/2008 | - | - | | 211,288.90 | 62,884.43 | 274,173.34 | - |
| | | | | | 9/15/2008 | | 2,741.73 | 9/15/2008 | - | - | | 211,288.90 | 65,626.17 | 276,915.07 | - |
| | | | | | 10/15/2008 | | 2,769.15 | 10/15/2008 | - | - | | 211,288.90 | 68,395.32 | 279,684.22 | - |
| | | | | | 11/15/2008 | | 2,796.84 | 11/15/2008 | - | - | | 211,288.90 | 71,192.16 | 282,481.06 | - |
| | | | | | 12/15/2008 | | 2,824.81 | 12/15/2008 | - | - | | 211,288.90 | 74,016.87 | 285,305.87 | - |
| | | | | | | 9,000.00 | 31,918.84 | | - | - | - | 211,288.90 | 74,016.87 | 285,305.87 | - |

THE INTEREST RATE ON YOUR INVESTMENT IS PRESENTLY 12%, COMPOUNDED MONTHLY. INTEREST MAY BE TAX DEFERRED AT YOUR REQUEST
ALL NEW INVESTMENTS ARE AT A "FLOATING" INTEREST RATE, ADJUSTED PERIODICALLY.
THANK YOU FOR YOUR CONTINUED PARTICIPATION IN OUR COMPANY. AS ALWAYS, YOU WILL CONTINUE TO EARN THE HIGHEST INTEREST RATE CONSISTENT WITH PRUDENT BUSINESS PRACTICES

BEGINNING BALANCE AS OF 01/01/2008 — DEPOSITS — WITHDRAWALS — ENDING BALANCES

| NAME | INTEREST RATE | BEGINNING PRINCIPAL | PREVIOUS INTEREST | BEGINNING BALANCE | DATE | DEPOSITS | MONTHLY INTEREST | DATE | WITHDRAWAL FROM PRINCIPAL | WITHDRAWAL FROM INTEREST | TOTAL WITHDRAWALS | PRINCIPAL BALANCE | TO DATE ACCRD. INT. | ENDING BALANCE | Y T D PAID INTEREST (1099) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO 000407-AH | | | | | | | | | | | | | | | |
| ARTHUR HUERTH | 12.00% | 270,388.11 | 1,335.56 | 271,724.67 | From 12/20/07 | | | | | | | 270,389.11 | 1,335.56 | 271,724.67 | - |
| 1391 Prescott Drive | | Check # 66468 | | | 1/5/2008 | | 1,358.62 | 1/5/2008 | - | 1,259.05 | 1,259.05 | 270,380.11 | 1,435.14 | 271,824.24 | 1,259.05 |
| Volo, IL 60020 | | Check # 66568 | | | 1/20/2008 | | 1,359.12 | 1/20/2008 | 3,695.74 | 2,794.26 | 6,490.00 | 266,893.38 | - | 266,893.36 | 2,704.28 |
| | | Check # 66681 | | | 2/5/2008 | | 1,333.47 | 2/5/2008 | - | 1,259.05 | 1,259.05 | 266,893.36 | 74.42 | 266,787.78 | 1,259.05 |
| | | Check # 66776 | | | 2/20/2008 | | 1,333.84 | 2/20/2008 | 5,081.74 | 1,408.26 | 6,490.00 | 261,811.62 | - | 261,811.82 | 1,408.26 |
| | | Check # 66878 | | | 3/5/2008 | | 1,309.08 | 3/5/2008 | - | 1,259.05 | 1,259.05 | 261,811.62 | 49.01 | 261,860.63 | 1,259.05 |
| | | Check # 66987 | | | 3/20/2008 | | 1,308.30 | 3/20/2008 | 5,132.69 | 1,357.31 | 6,490.00 | 256,476.93 | - | 256,478.93 | 1,357.31 |
| | | Check # 66099 | | | 4/5/2008 | | 1,282.39 | 4/5/2008 | - | 1,259.05 | 1,259.05 | 256,478.03 | 23.34 | 256,502.28 | 1,259.05 |
| | | Check # 66204 | | | 4/20/2008 | | 1,282.51 | 4/20/2008 | 5,184.14 | 1,305.86 | 6,490.00 | 251,294.79 | - | 251,294.79 | 1,305.86 |
| | | Check # 66321 | | | 5/5/2008 | | 1,256.47 | 5/5/2008 | 92.58 | 1,258.47 | 1,349.05 | 251,202.21 | - | 251,202.21 | 1,256.47 |
| | | Check # 66400 | | | 5/20/2008 | | 1,256.01 | 5/20/2008 | 5,233.99 | 1,256.01 | 6,490.00 | 245,968.22 | - | 245,968.22 | 1,256.01 |
| | | Check # 66623 | | | 6/5/2008 | | 1,229.84 | 6/5/2008 | 119.21 | 1,229.84 | 1,349.05 | 245,849.01 | - | 245,849.01 | 1,229.84 |
| | | Check # 66819 | | | 6/20/2008 | | 1,229.25 | 6/20/2008 | 5,260.75 | 1,229.25 | 6,490.00 | 240,588.26 | - | 240,588.26 | 1,229.25 |
| | | Check # 66744 | | | 7/5/2008 | | 1,202.94 | 7/5/2008 | 146.11 | 1,202.84 | 1,349.05 | 240,442.15 | - | 240,442.15 | 1,202.94 |
| | | Check # 66837 | | | 7/20/2008 | | 1,202.21 | 7/20/2008 | 5,287.79 | 1,202.21 | 6,490.00 | 235,154.36 | - | 235,154.36 | 1,202.21 |
| | | Check # 66946 | | | 8/5/2008 | | 1,175.77 | 8/5/2008 | 173.28 | 1,175.77 | 1,349.05 | 234,981.00 | - | 234,981.08 | 1,175.77 |
| | | Check # 67064 | | | 8/20/2008 | | 1,174.91 | 8/20/2008 | 5,315.09 | 1,174.91 | 6,490.00 | 229,665.99 | - | 229,685.99 | 1,174.91 |
| | | Check # 67198 | | | 9/5/2008 | | 1,148.33 | 9/5/2008 | 200.72 | 1,148.33 | 1,349.05 | 229,465.27 | - | 229,465.27 | 1,148.33 |
| | | Check # 67272 | | | 9/20/2008 | | 1,147.33 | 9/20/2008 | 5,342.67 | 1,147.33 | 6,490.00 | 224,122.59 | - | 224,122.59 | 1,147.33 |
| | | Check # 67382 | | | 10/5/2008 | | 1,120.61 | 10/5/2008 | 228.44 | 1,120.81 | 1,349.05 | 223,894.16 | - | 223,894.15 | 1,120.01 |
| | | Check # 67490 | | | 10/20/2008 | | 1,118.47 | 10/20/2008 | 5,370.53 | 1,119.47 | 6,490.00 | 218,623.63 | - | 218,523.63 | 1,119.47 |
| | | Check # 67606 | | | 11/5/2008 | | 1,092.62 | 11/5/2008 | 256.43 | 1,092.82 | 1,349.05 | 218,267.20 | - | 218,267.20 | 1,092.82 |
| | | Check # 67710 | | | 11/20/2008 | | 1,091.34 | 11/20/2008 | 5,398.66 | 1,091.34 | 6,490.00 | 212,868.53 | - | 212,868.53 | 1,091.34 |
| | | Check # 67837 | | | 12/5/2008 | | 1,064.34 | 12/5/2008 | 264.71 | 1,064.34 | 1,349.05 | 212,583.82 | - | 212,583.82 | 1,084.34 |
| | | | | | 12/20/2008 | | 1,062.92 | 12/20/2008 | - | - | | 212,583.82 | 1,062.92 | 213,646.74 | - |
| | | | | | | - | 32,140.67 | | 57,805.38 | 29,413.23 | 87,218.63 | 212,583.82 | 1,062.92 | 213,646.74 | 28,413.32 |

THE INTEREST RATE ON YOUR INVESTMENT IS PRESENTLY 12%, COMPOUNDED MONTHLY. INTEREST MAY BE TAX DEFERRED AT YOUR REQUEST
ALL NEW INVESTMENTS ARE AT A "FLOATING" INTEREST RATE, ADJUSTED PERIODICALLY.
THANK YOU FOR YOUR CONTINUED PARTICIPATION IN OUR COMPANY. AS ALWAYS, YOU WILL CONTINUE TO EARN THE HIGHEST INTEREST RATE CONSISTENT WITH PRUDENT BUSINESS PRACTICES

**BEGINNING BALANCE AS OF 01/01/2008**

**LEASE PAYMENTS**

| NAME | EQUIPMENT COST | Total Lease Payments | DATE | LEASE PAYMENTS | LEASE Balance |
|---|---|---|---|---|---|
| ACCOUNT #: L051205-AH | | | | | |
| ARTHUR HUERTH | 75,000.00 | 111,211.80 | | | 79,437.00 |
| 1391 Prescott Drive | **Check # 65466** | | 1/5/2008 | 1,323.95 | 78,113.05 |
| Volo, IL 60020 | **Check # 65681** | | 2/5/2008 | 1,323.95 | 76,789.10 |
| | **Check # 65878** | | 3/5/2008 | 1,323.95 | 75,465.15 |
| **LEASE WITH TPT** | **Check # 66099** | | 4/5/2008 | 1,323.95 | 74,141.20 |
| | **Check # 66321** | | 5/5/2008 | 1,323.95 | 72,817.25 |
| 1/5/06-12/5/2012 | **Check # 66523** | | 6/5/2008 | 1,323.95 | 71,493.30 |
| 84 Months | **Check # 66744** | | 7/5/2008 | 1,323.95 | 70,169.35 |
| | **Check # 66946** | | 8/5/2008 | 1,323.95 | 68,845.40 |
| | **Check # 67185** | | 9/5/2008 | 1,323.95 | 67,521.45 |
| | **Check # 67392** | | 10/5/2008 | 1,323.95 | 66,197.50 |
| | **Check # 67605** | | 11/5/2008 | 1,323.95 | 64,873.55 |
| | **Check # 67837** | | 12/5/2008 | 1,323.95 | 63,549.60 |
| | | | | 15,887.40 | 63,549.60 |

THE INFORMATION CONTAINED IN THIS SCHEDULE IS BASED ON THE LEASE AGREEMENT DATED December 5, 2005 WITH ARTHUR HUERTH AND IS FOR REFERENCE ONLY.

**BEGINNING BALANCE AS OF 01/01/2008**

**LEASE PAYMENTS**

| NAME | EQUIPMENT COST | | DATE | LEASE PAYMENTS |
|---|---|---|---|---|
| ACCOUNT #: L040823-HFL | | | | |
| ARTHUR HUERTH | 248,620.00 | | | |
| 1391 Prescott Drive | | **Check # 65466** | 1/5/2008 | 1,903.20 |
| Volo, IL 60020 | | **Check # 65681** | 2/5/2008 | 1,903.20 |
| | | **Check # 65878** | 3/5/2008 | 1,903.20 |
| **LEASE WITH TPT** | | **Check # 66099** | 4/5/2008 | 1,903.20 |
| | | **Check # 66321** | 5/5/2008 | 1,903.20 |
| 9/8/04-8/8/08 | | **Check # 66523** | 6/5/2008 | 1,903.20 |
| 42 Mos lease | | **Check # 66744** | 7/5/2008 | 1,903.20 |
| Interest only lease payments | | **Check # 66946** | 8/5/2008 | 1,903.20 |
| | | **Check # 67185** | 9/5/2008 | 1,903.20 |
| | | **Check # 67392** | 10/6/2008 | 1,903.20 |
| | | **Check # 67605** | 11/5/2008 | 1,903.20 |
| | | **Check # 67837** | 12/5/2008 | 1,903.20 |
| | | | | 22,838.40 |

THE INFORMATION CONTAINED IN THIS SCHEDULE IS BASED ON THE LEASE AGREEMENT DATED AUGUST 23, 2004 WITH ARTHUR HUERTH AND IS FOR REFERENCE ONLY.

**BEGINNING BALANCE AS OF 01/01/2008** | **LEASE PAYMENTS**

| NAME | EQUIPMENT COST | | DATE | LEASE PAYMENTS |
|---|---|---|---|---|
| ACCOUNT #: L040823-HFL-2 | | | | |
| ARTHUR HUERTH | 24,850.00 | | | |
| 1391 Prescott Drive | | **Check # 65466** | 1/5/2008 | 248.50 |
| Volo, IL 60020 | | **Check # 65681** | 2/5/2008 | 248.50 |
| | | **Check # 65878** | 3/5/2008 | 248.50 |
| **LEASE WITH TPT** | | **Check # 66099** | 4/5/2008 | 248.50 |
| | | **Check # 66321** | 5/5/2008 | 248.50 |
| 9/8/04-8/8/08 | | **Check # 66523** | 6/5/2008 | 248.50 |
| 42 Mos lease | | **Check # 66744** | 7/5/2008 | 248.50 |
| | | **Check # 66946** | 8/5/2008 | 248.50 |
| Interest only lease payments | | **Check # 67185** | 9/5/2008 | 248.50 |
| | | **Check # 67392** | 10/5/2008 | 248.50 |
| | | **Check # 67605** | 11/5/2008 | 248.50 |
| | | **Check # 67837** | 12/5/2008 | 248.50 |
| | | | | 2,982.00 |

THE INFORMATION CONTAINED IN THIS SCHEDULE IS BASED ON THE LEASE AGREEMENT DATED AUGUST 23, 2004 WITH ARTHUR HUERTH AND IS FOR REFERENCE ONLY.

**BEGINNING BALANCE AS OF 01/01/2008** — **LEASE PAYMENTS**

| NAME | EQUIPMENT COST | | DATE | LEASE PAYMENTS |
|---|---|---|---|---|
| ACCOUNT #: L040823-HFL-3 | | | | |
| ARTHUR HUERTH | 32,500.00 | | | |
| 1391 Prescott Drive | | Check # 65466 | 1/5/2008 | 325.00 |
| Volo, IL 60020 | | Check # 65681 | 2/5/2008 | 325.00 |
| | | Check # 65878 | 3/5/2008 | 325.00 |
| | | Check # 66099 | 4/5/2008 | 325.00 |
| **LEASE WITH TPT** | | Check # 66321 | 5/5/2008 | 325.00 |
| | | Check # 66523 | 6/5/2008 | 325.00 |
| 9/8/04-8/8/08 | | Check # 66744 | 7/5/2008 | 325.00 |
| 42 Mos lease | | Check # 66946 | 8/5/2008 | 325.00 |
| | | Check # 67185 | 9/5/2008 | 325.00 |
| Interest only lease payments | | Check # 67392 | 10/5/2008 | 325.00 |
| | | Check # 67605 | 11/5/2008 | 325.00 |
| | | Check # 67837 | 12/5/2008 | 325.00 |
| | | | | 3,900.00 |

THE INFORMATION CONTAINED IN THIS SCHEDULE IS BASED ON THE LEASE AGREEMENT DATED AUGUST 23, 2004 WITH ARTHUR HUERTH AND IS FOR REFERENCE ONLY.

**BEGINNING BALANCE AS OF 01/01/2008** | **LEASE PAYMENTS**

| NAME | EQUIPMENT COST | | DATE | LEASE PAYMENTS |
|---|---|---|---|---|
| ACCOUNT #: L040823-HFL-4 | | | | |
| ARTHUR HUERTH | 94,030.00 | | | |
| 1391 Prescott Drive | | **Check # 65466** | 1/5/2008 | 940.30 |
| Volo, IL 60020 | | **Check # 65681** | 2/5/2008 | 940.30 |
| | | **Check # 65878** | 3/5/2008 | 940.30 |
| | | **Check # 66099** | 4/5/2008 | 940.30 |
| **LEASE WITH TPT** | | **Check # 66321** | 5/5/2008 | 940.30 |
| | | **Check # 66523** | 6/5/2008 | 940.30 |
| 9/8/04-8/8/08 | | **Check # 66744** | 7/5/2008 | 940.30 |
| 42 Mos lease | | **Check # 66946** | 8/5/2008 | 940.30 |
| | | **Check # 67185** | 9/5/2008 | 940.30 |
| Interest only lease payments | | **Check # 67392** | 10/5/2008 | 940.30 |
| | | **Check # 67605** | 11/5/2008 | 940.30 |
| | | **Check # 67837** | 12/5/2008 | 940.30 |
| | | | | 11,283.60 |

THE INFORMATION CONTAINED IN THIS SCHEDULE IS BASED ON THE LEASE AGREEMENT DATED AUGUST 23, 2004 WITH ARTHUR HUERTH AND IS FOR REFERENCE ONLY.

Case 2:10-bk-62208-ER Doc 23-11 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 10 Page 184 of 185


| BEGINNING BALANCE AS OF 01/01/2008 | | | | | DEPOSITS | | | WITHDRAWALS | | | | ENDING BALANCES | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NAME | INTEREST RATE | BEGINNING PRINCIPAL | PREVIOUS INTEREST | BEGINNING BALANCE | DATE | DEPOSITS | MONTHLY INTEREST | DATE | WITHDRAWAL FROM PRINCIPAL | WITHDRAWAL FROM INTEREST | TOTAL WITHDRAWALS | PRINCIPAL BALANCE | TO DATE ACCRD INT | ENDING BALANCE | Y T D PAID INTEREST (1099) |
| ACCOUNT NO 050821-LH | | | | | | | | | | | | | | | |
| Leslie A Huerth | 12.00% | 10,000.00 | 3,385.07 | 13,385.07 | | | | | | | | | | | |
| 1391 Prescott Drive | | | | | 1/1/2008 | - | 133.85 | 1/1/2008 | - | - | | 10,000.00 | 3,385.07 | 13,385.07 | - |
| Volo, IL 60020 | | | | | 2/1/2008 | - | 135.19 | 2/1/2008 | - | - | | 10,000.80 | 3,518.02 | 13,518.92 | - |
| | | | | | 3/1/2008 | - | 136.54 | 3/1/2008 | - | - | | 10,000.00 | 3,654.11 | 13,654.11 | - |
| | | | | | 4/1/2008 | - | 137.91 | 4/1/2008 | - | - | | 10,000.00 | 3,790.06 | 13,700.88 | |
| | | | | | 5/1/2008 | - | 139.29 | 5/1/2008 | - | - | | 10,000.00 | 3,928.56 | 13,028.68 | - |
| | | | | | 6/1/2008 | - | 140.68 | 6/1/2008 | - | - | | 10,000.00 | 4,067.85 | 14,067.85 | - |
| | | | | | 7/1/2008 | - | 142.09 | 7/1/2008 | - | - | | 10,000.00 | 4,208.53 | 14,208.53 | - |
| | | | | | 8/1/2008 | - | 143.51 | 8/1/2008 | - | - | | 10,000.00 | 4,350.81 | 14,350.61 | - |
| | | | | | 9/1/2008 | - | 144.94 | 9/1/2008 | - | - | | 10,000.00 | 4,494.12 | 14,494.12 | - |
| | | | | | 10/1/2008 | - | 146.39 | 10/1/2008 | - | - | | 10,000.00 | 4,639.06 | 14,639.06 | - |
| | | | | | 11/1/2008 | - | 147.85 | 11/1/2008 | - | - | | 10,000.00 | 4,785.45 | 14,785.45 | |
| | | | | | 12/1/2008 | - | 140.33 | 12/1/2008 | - | - | | 10,000.00 | 4,933.30 | 14,933.30 | - |
| | | | | | | | | | | | | 10,000.00 | 5,082.04 | 15,082.54 | - |
| | | | | | | - | 1,697.56 | | - | - | - | 10,000.00 | 5,082.64 | 15,082.64 | - |

THE INTEREST RATE ON YOUR INVESTMENT IS PRESENTLY 12% COMPOUNDED MONTHLY. INTEREST MAY BE TAX DEFERRED AT YOUR REQUEST
ALL NEW INVESTMENTS ARE AT A "FLOATING" INTEREST RATE, ADJUSTED PERIODICALLY.
THANK YOU FOR YOUR CONTINUED PARTICIPATION IN OUR COMPANY. AS ALWAYS, YOU WILL CONTINUE TO EARN THE HIGHEST INTEREST RATE CONSISTENT WITH PRUDENT BUSINESS PRACTICES.

McKenna Storer
ESTABLISHED 1954
*Attorneys at Law*

McKENNA, STORER, ROWE, WHITE & FARRUG
A PARTNERSHIP INCLUDING LIMITED LIABILITY COMPANIES
666 RUSSEL COURT SUITE 303
WOODSTOCK, ILLINOIS 60098
(815) 334-9690 – FAX: (815) 334-9697
CHICAGO • WOODSTOCK
http://www.mckenna-law.com

SARA E. COOK, LLC – PARTNER
(815) 334-9692
scook@mckenna-law.com

IN REPLY REFER TO FILE NO.
57856

July 1, 2010

Personal and Confidential

**Via Federal Express**

Jerrold Pressman, individually
c/o U.S. Aerospace, Inc.
[redacted]

Ruben Moreno
c/o EPD Investment Company, LLC
[redacted]

Theodore Janovic
Yoss, Allen and Jonavic
[redacted]

S.C. Club, L.P.
9039 W. Sunset Blvd.
West Hollywood, CA 90069

EPD Investment Company, LLC
409 Santa Monica Blvd., Ste. E
Santa Monica, CA 90401

True Position Technologies, Inc.
24711 Avenue Rockefeller
Valencia, CA 91355

Katy Werner
c/o EPD Investment Company, LLC
[redacted]

Ice Skating Enterprises, Inc.
520 Broadway, Suite 660
Santa Monica, CA 90401

Re: Art and Joan Huerth
Leslie Huerth

Dear Defendants;

We represent Art and Joan Huerth and their daughter, Leslie Huerth. This letter is a formal demand for repayment on all of the demand notes held by the Huerths. (Copies enclosed.), which total $ 1,556,807.00 for Art and Joan and $18,041.00 for Leslie in principal and interest. These amounts should be paid in full in cashier's funds or by wire directed to my attention at the above address.

EXHIBIT E

# EXHIBIT 11

**DEFENDANTS' JOINT BRIEF IN SUPPORT OF THEIR OMNIBUS MOTION TO DISMISS UNDER RULE 12(b), OR ALTERNATIVELY, TO TRANSFER VENUE**

Defendants Jerrold Pressman, EPD Investment Co., LLC, EPD Investment Leasing Co., LLC, EPD Group, Theodore Janovic, Ruben Moreno, Katherine Werner, Ice Skating Enterprises, Inc., and S.C. Club (collectively, "Defendants"), by and through their undersigned counsel, for their Joint Brief in Support of Defendants' Omnibus Motion to Dismiss Under Rule 12(b), or Alternatively, to Transfer Venue, state as follows:

## I. PLAINTIFFS COMPLAINT FAILS TO ADDRESS JURISDICTION OVER DEFENDANTS OR VENUE

Plaintiffs fail to address or allege in any manner whatsoever how this Court has jurisdiction over Defendants or why the Northern District of Illinois venue is a proper venue to litigate this dispute. Personal jurisdiction cannot be established in Illinois with respect to any of Defendants and venue is proper only in the Central District of California. Plaintiffs' Complaint should therefore be dismissed at once.

## II. PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE THE NORTHERN DISTRICT OF ILLINOIS DOES NOT HAVE PERSONAL JURISDICTION OVER DEFENDANTS

There is no basis for either general or specific jurisdiction over any of the Defendants and, thus, the Complaint must be dismissed. Plaintiffs have asserted nothing and have provided no grounds whatsoever to support this Court's exercise of jurisdiction in Illinois over Defendants.

EPD Investment Co., LLC ("EPD") is the defendant whom Plaintiffs' Complaint primarily targets. EPD acts as an intermediary, investment placement company for private investors seeking to invest funds in third-party equipment leases in California. Said equipment leases purport to provide investors monthly lease payment income from third parties and certain tax deductions that are made available by the IRS to purchasers of equipment that is leased for use in a trade or business. In Plaintiffs' case, no Deposit Acknowledgments received by Plaintiffs, or Equipment Lease

Case 2:10-bk-62208-ER Doc 23-10 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 1 Page 3 of 22


Agreements entered in to by Plaintiffs, were made in Illinois or in any way make reference to Illinois. (Declaration of Keith Pressman, 5). To the contrary, Plaintiffs traveled to California to meet with EPD representatives before they invested in the equipment leases in California. All of the Equipment Lease Agreements Plaintiffs invested in call for the application of California law, not Illinois, and each of the Deposit Acknowledgments issued to Plaintiffs by EPD calls for payment to be made at Santa Monica, California, not Illinois. Under such circumstances, exercising jurisdiction over individual out-of-state defendants would not comport with traditional notions of fair play and substantial justice.

A district court may exercise personal jurisdiction over a nonresident defendant only if the defendant has had sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Watchworks, Inc. v. Total Time, Inc.*, No. 01 C 5711, 2002 WL 424631, *4 (N.D. Ill. March 19, 2002). There is no applicable body of law in the instant case that provides for national service of process; thus this Court must look to Illinois' long-arm statute to determine if each defendant is amenable to process. *Donmar, Inc. v. Swanky Partners, Inc.*, No. 02 C 1482, 2002 WL 1917258 (N.D. Ill. Aug. 20, 2002). Plaintiff has the burden of making a prima facie case for personal jurisdiction. *BAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). As indicated *infra*, Plaintiffs have failed entirely to address personal jurisdiction in their Complaint. Notwithstanding, Defendants address the issue hereinbelow.

**A. There Is No General Jurisdiction Over Any of the Named Defendants.**

General jurisdiction exists only if the defendant has intentional, substantial and continuous contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984). The contacts, as opposed to specific jurisdiction, need not give rise or even relate to the cause of action. The criteria for general jurisdiction is "considerably more stringent" than that

required for specific jurisdiction. *Griffith v. Wood Brothers,* No. 04 C 3118, 2004 WL 2418296 (N.D. Ill. Oct. 27, 2004). A defendant's contacts with the forum state "must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 787 (7th Cir. 2003) (emphasis added). The test for determining whether a corporate defendant is "doing business" within the meaning of the Illinois long arm statute (735 ILCS 5/2-209(b)(4)) is synonymous with the test for determining whether there is general jurisdiction.

Plaintiffs Complaint tends to clump the Defendants together as a group, and suggests that in every instance, personal jurisdiction exists. However, the different contacts with Illinois established by EPD and the other defendants dictates that a separate jurisdictional analysis be undertaken as to EPD.

**1. There is No General Jurisdiction Over EPD Investment Co., LLC.**

EPD makes no investment transactions available to the general public. (Pressman Decl., 6.) EPD does not have a public website. (Pressman Decl., 7.) EPD's members are all domiciled in Santa Monica, California. EPD's contacts with Illinois are not "intentional, substantial and systematic," and EPD could not reasonably expect to be hailed into court here.

General jurisdiction does not attach merely as a result of a non-Illinois company securing investments for private investors residing in Illinois, or in this case, residing part of the year in the state. In order for any such investments to have jurisdictional consequence, the investments must have been a product of purposeful and direct actions undertaken by EPD in Illinois. In other words, there must be evidence that EPD entered the state to solicit the investments, or engaged in activities specifically directed and targeted to Illinois investors. None of these factors exist here.

Case 2:10-bk-62208-ER Doc 23-10 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 11 Page 5 of 22


"[S]ince deriving revenue from Illinois may simply be a consequence of successful solicitation in the forum, even substantial earnings from [Illinois] have not been considered indicative of whether a corporation has established a permanent and continuing relationship with the forum." *Reimer v. KSL Recreation Corp.*, 807 N.E.2d 1004, 1013 (Ill. App. 2004) (citations omitted). "Notably, mere advertisement, even through the internet, participation in trade shows, or solicitation by an employee or agent who lacks authority to do more have not been enough to sustain personal jurisdiction in Illinois." *Id.* (citations omitted). "[R]ather than emphasizing the amount of financial benefit it derives from the consumers of Illinois, the cases seem to indicate that the key consideration is the corporation's temporal relationship with the State." *Hulsey v. Scheidt*, 630 N.E.2d 905, 909 (Ill. App. 1994).

EPD has not actively procured business in Illinois and has no temporal relationship with this state. EPD is not licensed to do business here, does not maintain an office in this state and does not engage in business activities in Illinois. (Pressman Decl., 8). EPD is based in California, and does not send its officers or employees to Illinois on company business. (Pressman Decl., 1, 16, 18). Any entrance in to Illinois by EPD has resulted from periodic interest payment checks being sent there on the request of Plaintiffs, rather than from EPD's own individual activities in Illinois. *Id.*

Not any person residing in Illinois can make investments with EPD. To the contrary, in order to do so, one must travel to Santa Monica, California and become affiliated personally with EPD and its officers in their offices in Santa Monica, California. EPD's investors are independent businesses and individuals, who are nothing more than prospective lessors of equipment to third parties. EPD exercises no control over them. Investors have no authority to negotiate equipment leases on behalf of EPD. They are under no obligation to purchase any of the equipment being leased, or to sell it downstream upon termination of the lease. *See Bundy-Howard*, 2001 WL 1569877 at * 2 (holding

that defendant's sales of $654,434.88 with 87 customers located in Illinois was insufficient to confer general jurisdiction over out-of-state defendant).

EPD's investors are not authorized to act on EPD's behalf and no agency is created by virtue of EPD's Deposit Acknowledgments or any Equipment Lease Agreement entered into by investors with third parties. Moreover, neither the Deposit Acknowledgments nor Equipment Lease Agreements can be deemed to create a partnership, franchise, join venture or agency, and neither party is the other's partner, franchisee, employee, agent or representative. Indeed, all EPD investors become entirely independent, non-exclusive lessors of equipment to third parties in California. (Pressman Decl., 10).

In addition, as indicated *infra*, EPD does not maintain an Internet website. (Pressman Aff, 7). But even if it did, the Northern District of Illinois has adopted the sliding scale approach to "Internet jurisdiction." Northern District of Illinois courts have held, in the context of general jurisdiction, that the maintenance of an Internet website, regardless of its level of interactivity, without more, is insufficient to confer general jurisdiction. *See Donmar*, 2002 WL 1917258 at * 2; *Euromarket*, 96 F.Supp.2d at 833 (declining to exercise general jurisdiction over the defendant stating that the "mere maintenance of an Internet website is not sufficient activity to exercise general jurisdiction over defendant" even though the defendant made several sales through its website to Illinois residents and had contacts with Illinois suppliers).

In light of the foregoing and basic concepts of fair play and substantial justice, EPD does not have intentional, continuous or systematic contacts with Illinois sufficient to give rise to general jurisdiction here.

**2. There Is No General Jurisdiction Over Any Of The Other Defendants**

All of the other defendants (Jerrold Pressman, EPD Investment Leasing Co., LLC, EPD Group, Theodore Janovic, Ruben Moreno, Katherine Werner, Ice Skating Enterprises, Inc., and S.C.

Club) are non-Illinois companies or residents, as the case may be, that, at one time or another, either performed services in California on an independent contractor basis with EPD, or entered in to lease transactions with Plaintiffs in California. Plaintiffs do not allege or cite to any evidence in their Complaint, or by way of affidavit, that these defendants have any contacts with Illinois. Plaintiffs do not allege that these defendants, or any of them, has an office here, maintain a registered agent in this state, or that any of their agents or employees spent any time in Illinois; and the defendants' supporting affidavit shows that they do not. (Pressman Decl.). Moreover, none of these defendants own real property in this state and none are a party to any contracts requiring acts to be performed here. (Pressman Decl., 12).

Like EPD, none of these defendants maintain an Internet website. But even if any of them did, without more, a website is insufficient to confer general jurisdiction over a foreign defendant. *See Aero Products*, 2002 WL 31109386 at * 7.

Plaintiffs must allege and cite to evidence indicating that each defendant specifically targeted Illinois. *Id.* Random and isolated investments from investors who occasionally spend time in Illinois is not a sufficient fact to premise a finding of general jurisdiction. Accordingly, this Court should decline to exercise general jurisdiction over these defendants.

**B. There is No Specific Jurisdiction Over Any of the Named Defendants.**

In the absence of general jurisdiction, specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant in a suit only where the contacts are one of the categories set out in the Illinois long arm statute, due process is satisfied, and the claims "arise out of or are related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414. The exercise of specific jurisdiction is appropriate and meets due process requirements when the Plaintiff establishes: 1) that the defendant has sufficient minimum contacts with the forum state, defined as some act by which the defendant purposefully avails itself of the privilege of conducting activities

within the forum state, thus invoking the benefits and protections of its laws; 2) the claim asserted is one which arises out of or results from the defendant's forum activities; and 3) the exercise of jurisdiction is reasonable. *Euromark,* 96 F.Supp.2d at 834.

The critical issue is whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 834-35 (citation omitted). A defendant cannot be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or due to 'the unilateral activity of another party or third person,' as opposed to defendant's *own* contacts that he deliberately pursued with the foreign jurisdiction." *Id.* at 839 (citation omitted).

In Illinois, the long arm statute sets forth the specific bases for establishing specific jurisdiction; the only pertinent one being the commission of a tortious act within the state, provided that such act gives rise to the claim and provided further that asserting specific jurisdiction is consistent with notions of due process. In this regard, Plaintiffs' Complaint fails because it has not demonstrated that any of Defendants committed a tortuous act within Illinois, nor intended to and did affect an Illinois interest.

Moreover, the exercise of specific jurisdiction over the Defendants would not comport with traditional notions of fair play and substantial justice because, among other things, Plaintiffs unilaterally and intentionally traveled to California to invest in equipment leases in California that call for performance to be made in California and to be governed by California law. Even if Plaintiffs could establish that Defendants, or any of them, committed a tortuous act, no commission of such occurred in Illinois or affected an Illinois interest.

**1. There is No Specific Jurisdiction Over EPD.**

EPD did not make any solicitation of Plaintiffs (or any investors) in Illinois (Pressman Decl., 13, 14.) As such, there is no basis for specific jurisdiction over EPD. The fact that Plaintiffs

purchased equipment leases through EPD or one of its affiliates located outside of Illinois does not provide any basis for specific jurisdiction over EPD in Illinois. EPD does no advertising in any state, including Illinois, and investment opportunities procured by EPD are not made available to the general public. None of EPD's business is targeted to Illinois. Even if EPD did advertise or solicit investors nationally, which it does not, these types of contacts are insufficient to subject a defendant to jurisdiction in Illinois. *See Aero Products,* 2002 WL 31109386 at * 7.

Plaintiffs' alleged economic harm, allegedly felt in Illinois and Florida, is of no jurisdictional consequence based on the "effects (or last act) doctrine." For the purposes of specific jurisdiction, the effects doctrine provides that jurisdiction over a defendant is proper when: 1) the defendant's intentional, tortious actions 2) expressly aimed at the forum state 3) cause harm to the Plaintiff in the forum state, which the defendant knows is likely to be suffered. *Euromarket,* 96 F.Supp.2d at 835 (citation omitted). The Seventh Circuit has "clearly drawn a line between the commission of a tort which affects interests in Illinois and the commission of a tort that merely inflicts economic injury in Illinois." *See Donmar,* 2002 WL 1917258, at *3 (citing *Turnock v. Cope,* 816 F.2d 332, 334-35 (7th Cir. 1987)). An Illinois court does not "acquire jurisdiction under the last act doctrine simply because an economic loss is felt in Illinois when all the conduct contributing to the injury occurred outside Illinois." *Id* (citation omitted). Plaintiff must establish an additional entrance into Illinois which indicates EPD's intent to affect Illinois interests. *Edelson,* 352 F.Supp.2d at 867.

Particularly instructive is *Donmar,* where the plaintiff alleged that jurisdiction was proper over the defendant because it had committed a tort that resulted in the plaintiff suffering an economic injury in Illinois. In declining to exercise specific jurisdiction, the *Donmar* court held that the defendant conducted all of its activity outside of Illinois and that, other than the maintenance of a website, which it noted cannot be said to have been "aimed at the forum state," the plaintiff failed to

provide evidence of any other contact with Illinois. The *Donmar* court recognized that a plaintiff must establish that the defendant, either through its Internet or non-Internet activities, intended to affect Illinois interests.

Plaintiff has failed to present any evidence that EPD's activities were purposefully directed to affect Illinois interests. EPD did not specifically target Illinois investors. (Pressman Decl., 14). None of EPD's investment activities evince an intent to affect Illinois interests. EPD conducts all of its activities in California. (Pressman Decl., 16). EPD does not employ anyone, including independent contractors, in Illinois. (Pressman. Decl., 17). It does not maintain an office in Illinois nor does it send employees to Illinois to conduct business on behalf of EPD. (Pressman Decl., 4, 8). For these reasons, there are no grounds for this Court to exercise specific jurisdiction over EPD.

2. **There is No Specific Jurisdiction Over Any Of The Other Defendants.**

In order for this Court to exercise specific jurisdiction over any of the other defendants, Plaintiffs must specifically allege and demonstrate that the defendant committed a tortious act within Illinois, and that the exercise of jurisdiction comports with traditional notions of due process. Plaintiffs maintain merely impliedly in their Complaint that the exercise of specific jurisdiction over the other defendants is proper because they aided and abetted EPD or were in some way entangled in EPD's fraudulent scheme.

As set forth above, Plaintiffs cannot establish that any of the Defendants intended to affect Illinois interests, however. *Euromark,* 96 F.Supp.2d at 836. Plaintiffs have failed to present any such evidence, other than the existence of transactions with Plaintiffs who, at one point or another, resided in Illinois. Moreover, neither EPD nor any of the other defendants offer or perform any services in or direct any of their business to Illinois. (Pressman Decl., 13, 14, 16).

Case 2:10-bk-62208-ER Doc 29-10 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 11 Page 11 of 22


In addition, the exercise of specific jurisdiction does not comport with due process because the other alleged tortious act, breach of contract, resulted from the unilateral activity of Plaintiff. "[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction." *Rohde v. Central R.R. of Indiana,* 930 F.Supp. 1269, 1272 (N.D. Ill. 1996) (citing *Helicopteros,* 44 U.S. at 417). Therefore, it is the defendant's conduct in relation to the forum state, not the unilateral actions of the plaintiff, that determines jurisdiction. *Dehmlow,* 963 F.2d at 946.

In the instant action, Plaintiffs initiated the equipment lease transactions between themselves and EPD. (Pressman Decl., 18). Plaintiffs traveled to Santa Monica for the purpose of meeting representatives from EPD, including Jerrold Pressman. (*Id.* at 19). None of Defendants traveled to Illinois or in any way made any effort to procure investments from Plaintiffs in Illinois. (*Id.* at 20). In fact, four years passed between the time Plaintiffs first contacted EPD about investment opportunities and the time Plaintiffs traveled to Santa Monica to meet with EPD and Jerrold Pressman. (*Id.* at 21). During the four year period, neither EPD nor any of Defendants made any attempt to contact Plaintiffs. (*Id*). When Plaintiffs finally invested with EPD, it was entirely due to their interest in EPD's investment plan – a unilateral decision to place money in EPD investments. There was, thus, no tortious act committed for purposes of the Illinois long-arm statute.

Of particular relevance to this issue is Judge Conlon's decision in *Native American Arts, Inc. v. Moon Raven Intl, Inc.,* No. 98 C 0434, 1998 WL 325245 (N.D. Ill. June 10, 1998), wherein Plaintiff alleged that the defendant, a Utah corporation, was subject to specific jurisdiction in Illinois, on the grounds that the defendant, in response to an order placed by Plaintiff, mailed the allegedly "falsely suggestive" products to Plaintiff's office in Chicago. Without addressing the question of whether the exercise of jurisdiction satisfied the requirements of the Illinois long-arm statute, Judge

Conlon held that subjecting the defendant to the jurisdiction of Illinois courts would be inconsistent with federal due process standards because the defendant did not purposefully avail itself of the privilege of conducting business activities in Illinois. *Id.* at *5. The Court noted that the transactions at issue were both initiated by Plaintiff and that the defendant's only contact with Illinois was the shipping of goods from Utah to Illinois. *Id.* Moreover, the fact that Plaintiff observed defendant's products at retail stores located in Illinois did not evince defendant's intent to target its business activities in Illinois. *Id.* Rather, such a fact only suggested that the defendant manufactured products that, through the stream of commerce, entered and ended up in Illinois. It did not permit a reasonable inference that the defendant targeted its business activities at Illinois. *Id.* Therefore, the Court held that the exercise of personal jurisdiction over the defendant on such a meager factual basis would offend the traditional notions of fair play and substantial justice. *Id.*

The investments and equipment leases in question here were made by Plaintiffs after traveling to meet with EPD in Santa Monica, California. The fact that some of the payments pursuant to the investments and equipment leases were to be sent to Illinois by EPD is a meager factual basis to exercise specific jurisdiction over any of Defendants and force them to Illinois to litigate. Doing so would be fundamentally unfair and unjust. Accordingly, this Court, like Judge Conlon, should decline to exercise specific jurisdiction over any of Defendants.

## III. VENUE IS IMPROPER IN THE NORTHERN DISTRICT OF ILLINOIS

Plaintiffs maintain no argument, position or factual or legal justification for filing this lawsuit in the Northern District of Illinois. Plaintiffs merely suggest by implication that their claims arose in Illinois, where some of the investment payments were sent by EPD. Even assuming Plaintiffs' claims arose in Illinois, which they certainly did not, a substantial part of the events *giving* rise to them did not.

Plaintiffs fail to allege in any capacity that the allegedly fraudulent scheme or contracts were designed or executed in Illinois. Nor do they allege that any decisions concerning the investments or equipment leases, including the creation and maintenance of each of them, were made in Illinois. Instead, Plaintiffs simply suggest—in a vague, broad-sweeping, indirect fashion—that their claims arose here in Illinois. *See generally*, Plaintiffs' Complaint.

Plaintiffs should direct their attention to the events giving rise to their claims. When this is done, it is evident that the substantial part of events giving rise to Plaintiffs' claims did not occur in Illinois, but in California. Plaintiffs' claims are based on Defendants' allegedly fraudulent investment scheme. Plaintiffs' Complaint, 1-10. All such investment opportunities were procured and made in California. (Pressman Decl., 8). All decisions regarding the investments, equipment, and accounting were handled in California. *Id.* In addition, all decisions regarding the management of Plaintiffs' investments, including when and where to invest their funds in equipment leases, were made in California. *Id.* Accordingly, the Court should dismiss the present lawsuit on the grounds that venue is improper in the Northern District of Illinois.

## IV. ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA FOR THE CONVENIENCE OF WITNESSES AND THE INTERESTS OF JUSTICE

The determination of whether to transfer a case, pursuant to 28 U.S.C. § 1404(a), "necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir. 1986). The decision of a district court to grant a transfer of venue motion is not subject to appeal. *In re Joint Eastern & Southern District Asbestos Litigation,* 22 F.3d 755, 762 n.14 (7th Cir. 1994). Pursuant to § 1404(a), the convenience to the parties and witnesses—the most important factor in a transfer of venue analysis—does not lie in the Northern District of Illinois but rather the Central District of California because that is where the majority of the relevant evidence is located and where the

Case 2:10-bk-62208-ER Doc 25-10 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 11 Page 14 of 22


majority of party and non-party witnesses reside. In addition, the interests of justice favors the transfer of the matter to the Central District of California.

**A. Convenience To Parties And Witnesses**

In evaluating the convenience to the parties and witnesses, courts consider five factors: 1) the Plaintiffs choice of forum; 2) the situs of material events; 3) the access of evidence, including the court's power to compel the appearance of unwilling witnesses at trial, 4) the convenience of the witnesses; and 5) the convenience of the parties to litigating in each forum. Plaintiffs don't touch on any of factors 2-5 in their Complaint but instead assume that the Northern District of Illinois, their choice of forum, is entitled to substantial deference. Their preference, however, is of minimal value when another forum bears a stronger relationship to the dispute. *Yuba Nursing Home, Inc. v. TLC of the Bay Area,* No. 01 C 3612, 2001 WL 1136140, *4 (N.D. Ill. Sept. 26, 2001). Here, the facts demonstrate that the Central District of California bears a stronger relationship to the dispute based on the other four factors.

Plaintiffs wrongly assume that the situs of all material events giving rise to their claims is Illinois. In fact, all material events took place in Santa Monica, California. Plaintiffs traveled to Santa Monica to meet with EPD, accepted temporary notes that required payment in Santa Monica, and entered into equipment leases in Santa Monica. Accordingly, this factor weighs in favor of transfer to the Central District of California where all Defendants have consented to jurisdiction and venue.

All records and documents are located in Santa Monica, California, as well. (Pressman Decl., 16). No records or documents are located in Illinois. *Id.* The relevant evidence in this lawsuit is the records, documents, and other fact discovery related to the alleged fraudulent investment scheme and not Plaintiffs' own materials. This evidence is not located in Illinois but rather in California, where all of Defendants' documents and all of their records are located, a fact

which Plaintiff cannot dispute. Moreover, none of Plaintiffs' records or documents are located in Illinois. Plaintiffs, or the majority of them, reside in North Fort Meyers, Florida. Plaintiffs' Complaint, Paragraphs 4-5. As such, this factor also weighs in favor of transferring this case to the Central District of California.

Convenience of both party and non-party witnesses is viewed as the most important factor in determining whether transfer is appropriate. *See Dean Foods Co. v. Eastman Chemical Co.*, No. 00 C 3675, 2000 WL 1559715, at *3 (N.D. Ill. July 31, 2002) (citation omitted). Plaintiffs fail to identify a single witness in Illinois, other than (presumably) Leslie Huerth, or the nature of their expected testimony. Moreover, Plaintiffs never mention how testimony of unidentified witnesses will be relevant to their lawsuit. The fact that Plaintiffs invested with EPD would require only a single witness, and is not disputed. As discussed above, because Plaintiffs' claims arise out of an allegedly fraudulent investment scheme, the relevant evidence and testimony concerns the Defendants themselves and their respective officers, employees, representatives, records and documents, all of which will be provided by Defendants themselves and their respective present and former personnel and representatives. Plaintiffs' unidentified witnesses are of no significance in the Court's determination of whether to transfer the case.

Conversely, the location of Defendants' witnesses expected to testify regarding EPD and its allegedly fraudulent investment scheme supports a transfer of this case to the Central District of California. Among those expected to testify are each of the named Defendants, as well as current and former employees of the same, all of whom reside in California. Most importantly, the former employees cannot be compelled to testify. Because the majority of witnesses with relevant testimony are located in California, in particular non-party witnesses, the convenience of witnesses factor weighs heavily in favor of transfer. *See Gen 17, Inc. v. Sun Microsystems, Inc.*, 953 F.Supp. 240, 243

(N.D. Ill. 1997) (holding that convenience of the parties and witnesses warranted transfer to California where defendants had substantially greater number of witnesses who would be inconvenienced by traveling to Illinois than Plaintiff had of witnesses who would be inconvenienced by traveling to California).

Last, Plaintiffs would not be greatly inconvenienced by being forced to litigate in California. Plaintiffs are sophisticated businesspeople who are accustomed to travel. For example, Plaintiffs traveled to Santa Monica to enter into the investments with EPD. And Plaintiffs are also small in terms of their numbers. Plaintiffs, therefore, would hardly be "greatly inconvenienced" by litigating in California. As such, the convenience to the parties factor does not weigh in favor of litigating in the Northern District of Illinois.

Based on the foregoing, the convenience to the parties and witnesses clearly favors the transfer of this matter to the Central District of California.

**B. Interests of Justice**

It is "generally more advantageous to have federal judges try a case who are familiar with the applicable law." *Stanley v. Marion,* No. 04 C 514, 2004 WL 1611074, *4 (N.D. Ill. July 16, 2004). Because the Deposit Acknowledgments and Equipment Lease Agreements at issue in this case call for the application of California law, the Central District of California is most competent to handle this lawsuit. *Gen 17, Inc.,* 953 F.Supp. at 243.

For this reason, this Court, were it to decide not to dismiss the lawsuit, should transfer the entire case to the Central District of California.

**V. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT VIOLATES THE PRIVATE SECURITIES LITIGATION RFFORM ACT, 18 U.S.C. § 1964(c).**

An additional grounds for dismissal of this action under FRCP 12(b) lies in the very statute Plaintiffs' pleaded. In their Complaint, Plaintiffs allege that Defendants have violated the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1962(c). However, Plaintiffs fail to address the application of the exception to the RICO standing provision, which provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U. S.C. § 1964(c). This exception requires dismissal of Plaintiffs' complaint in its entirety.

Section 107 of the Private Securities Litigation Reform Act ("PSLRA"), which was enacted in 1995, added this exception. Pub. L. No. 104-67, 109 Stat. 737 (1995). Crucially, "the amendment was intended not simply 'to eliminate securities fraud as a predicate offense in a civil RICO action,' but also to prevent a plaintiff from 'plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (quoting H.R. Conf. Rep. No. 104-369, at 47 (1995)); *see also Swartz v. KPMG, LLC*, 401 F. Supp. 2d 1146, 1151 (W.D. Wash. 2004) ("The rule that a plaintiff cannot assert a RICO claim based on predicate acts that sound in securities fraud is applicable even if . . . the claim is plead [sic] as a matter of mail fraud or wire fraud.") (citation omitted); *Seippel v Jenkins & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 372 (S.D.N.Y. 2004) ("In amending RICO, Congress was clear in stating that the PSLRA was meant to eliminate the possibility that litigants might frame their securities claims under a mail or wire fraud claim.") (citations and quotation marks omitted).

Since its enactment, courts have sought to clarify the scope of the Section 1964(c) bar. In *Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000), cert. denied, 531 U.S. 828 (2000), the Ninth Circuit rejected a claim that the PSLRA bar did not apply where the plaintiff had no standing to bring an independent securities fraud claim on the same factual allegations. *Id.* at 749-50. Noting that the plaintiffs did not dispute "that their securities fraud claims could be brought by a plaintiff

with proper standing," the court appeared to rest its decision on the notion that the Section 1964(c) bar operated solely on the "conduct" alleged, not the party bringing the RICO claim. *Id.* at 749; see also *Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045 (9th Cir. 2006) (holding Section 1964(c)'s prohibition applies to individual and class action suits alike). Other cases have extended Howard's reasoning to cover situations where there would be no independent private right of action under the securities laws. For instance, some plaintiffs trying to evade the Section 1964(c) bar have argued that there is no private right of action to sue for aiding-and-abetting liability under 15 U.S.C. § 78t(e), and that, therefore, a RICO claim against an alleged aider-and-abettor should be allowed to proceed. In *Pritikin v. Comerica Bank*, No. C 09-03 303 JF (RS), 2009 WL 3857455 (N.D. Cal. Nov. 17, 2009), the court rejected this argument, holding that § 1964(c) applies equally to RICO claims premised upon allegations of aiding and abetting securities fraud:

> The language of the statute simply does not require that, for a RICO claim to be barred, the plaintiff who sues under RICO must be able to sue under securities laws, or that the conduct 'actionable as securities fraud' on which the plaintiff relies to establish the RICO violation must be that of the defendant.

Id. at *4 (quoting *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 28 1-82 (S.D.N.Y. 2009)) (quotation marks omitted).

Courts have construed the PSLRA bar in Section 1964(c) to prohibit the dissection of said claims into their offending and non-offending components, as long as some component may be characterized as in furtherance of, or in connection with, actionable securities fraud. "In determining whether the PSLRA bars a civil RICO claim, courts view the complaint in its entirety and reject the invitation to parse the plaintiff's allegations." *Eagletech Commc'ns Inc. v. Citigroup, Inc.*, No. 07-60668-CIV, 2008 WL 3166533, at *9 (S.D. Fla. June 27, 2008) (citing *Bald Eagle*, 189 F.3d at 329) (holding that the PSLRA bars an action where some, but not all, of the predicate acts are actionable as securities fraud, because "[a]llowing such surgical presentation of the cause of action . . . would

undermine the congressional intent behind the RICO Amendment"). For example, in *Sell v. Zions First Nation Bank*, No. CV 05-684 PHX SRB, 2006 WL 322469 (D. Ariz. Feb. 9, 2006), the court dismissed a RICO claim that was predicated upon mail fraud, wire fraud, and also bank fraud, explaining that the alleged instances of bank fraud were "but tentacles of the same octopus, sufficiently connected to securities fraud to bar their use as predicate acts." *Id.* at 11; see also *Bald Eagle*, 189 F.3d at 330 ("Conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities").

The standard for applying the Section 1964(c) bar thus appears to be quite flexible. This is in accord with *SEC v. Zandford*, 535 U.S. 813 (2002), in which the Supreme Court held that: (1) Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 must be broadly construed "to effectuate [their] remedial purposes"; and (2) that fraud is "in connection with the purchase or sale of any security" provided that "the scheme to defraud and the sale of securities coincide." *Id.* at 820 (emphasis added); *see also Ling v. Deutsche Bank, AG*, No. 04 CV 4566(HB), 2005 WL 1244689, at *3 (S.D.N.Y. May 26, 2005) ("[T]he requirement is satisfied when the securities transactions and breaches complained of coincide and are not independent events.") (citation omitted). In *Levinson v. PSCC Services, Inc.*, No. 3:09-CV-00269 (PCD), 2009 WL 5184363 (D. Conn. Dec. 23, 2009), the court explained that even if the purchase or sale of securities was but one component in a larger fraudulent scheme, the scheme was still actionable as securities fraud. *Id.* at *7-8. The court explained that "[i]n determining whether misrepresentations coincided with the purchase or sale of securities, courts consider the allegedly fraudulent scheme as a whole." *Id.* at *7. Since the fraudulent scheme involved inducing plaintiffs to invest in a common fund and then permitting Ponzi scheme mastermind Bernie Madoff to use the funds to purchase securities, the integrated fraudulent scheme constituted actionable, indivisible securities fraud, which

Case 2:10-bk-02208-ER Doc 23-10 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 11 Page 20 of 22


could not support a RICO claim under Section 1964(c). *Id.* ("Defendants' alleged misrepresentations and omissions relate to Madoff's purported purchase and sale of securities with plaintiffs' funds. Defendants essentially induced Plaintiffs to invest their assets in the common investment fund (and induced them to keep their assets there in the long run) based on false reassurances that their assets would be safe.").

In summary, under Section 1964(c), Plaintiffs cannot in one lawsuit allege, as Plaintiffs have here, civil RICO and securities fraud violations, and in so doing use actionable securities fraud as the predicate act for their RICO claim. In this case, the promissory notes Plaintiffs received pursuant to the series of investment loans they made to EPD are securities. The Securities Exchange Act of 1934 defines "security" broadly to include:

> "any *note*, stock, treasury stock, security future, bond, debenture, . . . transferable share, *investment contract*, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, *certificate of deposit*, or group or index of securities (including any interest therein or based on the value thereof) . . . , or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or *interim certificate* for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."

15 U.S.C. § 78c(a)(10) (emphasis added). The entire thrust of Plaintiffs' complaint is that the temporary notes issued by EPD are fraudulent. This is, thus, a securities fraud allegation. (See Plaintiffs' Complaint Paragraph 105, in which they state that certain of defendants used interstate mails, electronic mails and wires to perpetrate their fraud against Plaintiffs). Moreover, in their RICO allegation, Count I of their Complaint, Plaintiffs allege, as RICO predicate acts, that defendant Pressman committed fraud, and defendants Jonavic, Moreno and Werner aided and abetted Pressman

in carrying out the fraud. Plaintiff's Complaint Paragraphs 107-109. This triggers the Section 1964(c) bar.

Plaintiffs' may nonetheless attempt to circumvent the Section 1964(c) bar by arguing that Count I of their Complaint can be disaggregated. This would be directly contrary to well-established law, however. Courts have consistently held that the PSLRA prohibits the dissection of RICO claims into actionable and non-actionable securities fraud. As long as some component of the alleged scheme can be characterized as securities fraud, the RICO claim will be barred by the PSLRA. *See Eagletech Communications*, 2008 WL 3166533, at *9; *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3rd Cir. 1999); *Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010); *Stephenson v. Deutsche Bank AG*, 282 F. Supp.2d 1032, 1071-72 n. 27 (D. Minn. 2003); *Burton v. Ken-Crest Servs.*, 127 F.Supp.2d 673, 677 (E.D. Pa. 2001); *Baron v. Chehab*, 2006 WL 156828, at *8 (C.D. Ill. Jan. 20, 2006).

## VI. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for lack of personal jurisdiction, improper venue, and violation of the Private Securities Litigation Reform Act; and in the alternative, the case should be transferred to the Central District of California.

Date: October 5, 2010

/s/ Matthew B. Gruenberg
Attorney for Defendants

Attorneys for Defendants
Mr. Matthew B. Gruenberg CA SBN 264210
LAW OFFICES OF MATTHEW B. GRUENBERG
942A Lincoln Blvd.
Santa Monica, CA 90403
Telephone: (310) 740-5105

/s/ Barney H. Balonick
Attorney for Defendants

Barney H. Balonick, Esq., ID 6238985
Local Counsel
33 North Dearborn Street
Suite 1930
Chicago, IL 60602
(312)368-0255

# EXHIBIT 12

Case 2:12-ap-02424-ER Doc 263-2 Filed 01/19/17 Entered 01/19/17 16:18:26 Desc
Exhibit 1 Page 186 of 321



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| Arthur Huerth, Joan Huerth, Individually and D/B/A Huerth Financial Leasing, AJ Partners and Leslie Huerth.<br><br>Plaintiffs,<br><br>Jerrold Pressman, EPD Investment Co., LLC, a California Limited Liability Company, EPD Investment Leasing Co., LLC, a California Limited Liability Company, EPD Group, Theodore Jonavic, Ruben Moreno, Katherine Werner, True Position Technologies, Inc., a California Corporation, Ice Skating Enterprises, Inc., a California Corporation, S.C. Club, L.P., a California Limited Partnership<br><br>Defendants. | CASE NO. 10 C 05049<br><br>ASSIGNED JUDGE:<br>HON. PHILIP G. REINHARD<br><br>DESIGNATED MAGISTRATE JUDGE:<br>HON. P. MICHAEL MAHONEY |

**DEFENDANTS' JOINT BRIEF IN SUPPORT OF THEIR OMNIBUS MOTION TO DISMISS UNDER RULE 12(b), OR ALTERNATIVELY, TO TRANSFER VENUE**

Defendants Jerrold Pressman, EPD Investment Co., LLC, EPD Investment Leasing Co., LLC, EPD Group, Theodore Janovic, Ruben Moreno, Katherine Werner, Ice Skating Enterprises, Inc., and S.C. Club (collectively, "Defendants"), by and through their undersigned counsel, for their Joint Brief in Support of Defendants' Omnibus Motion to Dismiss Under Rule 12(b), or Alternatively, to Transfer Venue, state as follows:

**I. <u>PLAINTIFFS COMPLAINT FAILS TO ADDRESS JURISDICTION OVER DEFENDANTS OR VENUE</u>**

Plaintiffs fail to address or allege in any manner whatsoever how this Court has jurisdiction over Defendants or why the Northern District of Illinois venue is a proper venue to litigate this dispute. Personal jurisdiction cannot be established in Illinois with respect to any of Defendants and

venue is proper only in the Central District of California. Plaintiffs' Complaint should therefore be dismissed at once.

## II. PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE THE NORTHERN DISTRICT OF ILLINOIS DOES NOT HAVE PERSONAL JURISDICTION OVER DEFENDANTS

There is no basis for either general or specific jurisdiction over any of the Defendants and, thus, the Complaint must be dismissed. Plaintiffs have asserted nothing and have provided no grounds whatsoever to support this Court's exercise of jurisdiction in Illinois over Defendants.

EPD Investment Co., LLC ("EPD") is the defendant whom Plaintiffs' Complaint primarily targets. EPD acts as an intermediary, investment placement company for private investors seeking to invest funds in third-party equipment leases in California. Said equipment leases purport to provide investors monthly lease payment income from third parties and certain tax deductions that are made available by the IRS to purchasers of equipment that is leased for use in a trade or business. In Plaintiffs' case, no Deposit Acknowledgments received by Plaintiffs, or Equipment Lease Agreements entered in to by Plaintiffs, were made in Illinois or in any way make reference to Illinois. (Declaration of Keith Pressman, 5). To the contrary, Plaintiffs traveled to California to meet with EPD representatives before they invested in the equipment leases in California. All of the Equipment Lease Agreements Plaintiffs invested in call for the application of California law, not Illinois, and each of the Deposit Acknowledgments issued to Plaintiffs by EPD calls for payment to be made at Santa Monica, California, not Illinois. Under such circumstances, exercising jurisdiction over individual out-of-state defendants would not comport with traditional notions of fair play and substantial justice.

A district court may exercise personal jurisdiction over a nonresident defendant only if the defendant has had sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Watchworks, Inc. v.*

Case 2:12-ap-02424-VZ Doc 283-12 Filed 09/05/17 Entered 09/05/17 16:52:26 Desc
Exhibit 12 Page 188 of 321



*Total Time, Inc.*, No. 01 C 5711, 2002 WL 424631, *4 (N.D. Ill. March 19, 2002). There is no applicable body of law in the instant case that provides for national service of process; thus this Court must look to Illinois' long-arm statute to determine if each defendant is amenable to process. *Donmar, Inc. v. Swanky Partners, Inc.*, No. 02 C 1482, 2002 WL 1917258 (N.D. Ill. Aug. 20, 2002). Plaintiff has the burden of making a prima facie case for personal jurisdiction. *BAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). As indicated *infra*, Plaintiffs have failed entirely to address personal jurisdiction in their Complaint. Notwithstanding, Defendants address the issue hereinbelow.

**A. There Is No General Jurisdiction Over Any of the Named Defendants.**

General jurisdiction exists only if the defendant has intentional, substantial and continuous contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984). The contacts, as opposed to specific jurisdiction, need not give rise or even relate to the cause of action. The criteria for general jurisdiction is "considerably more stringent" than that required for specific jurisdiction. *Griffith v. Wood Brothers*, No. 04 C 3118, 2004 WL 2418296 (N.D. Ill. Oct. 27, 2004). A defendant's contacts with the forum state "must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003) (emphasis added). The test for determining whether a corporate defendant is "doing business" within the meaning of the Illinois long arm statute (735 ILCS 5/2-209(b)(4)) is synonymous with the test for determining whether there is general jurisdiction.

Plaintiffs Complaint tends to clump the Defendants together as a group, and suggests that in every instance, personal jurisdiction exists. However, the different contacts with Illinois established

Case 2:12-ap-02424-VZR Doc 263-12 Filed 09/05/17 Entered 09/05/17 16:52:26 Desc
Exhibit 12 Page 189 of 321



by EPD and the other defendants dictates that a separate jurisdictional analysis be undertaken as to EPD.

**1. There is No General Jurisdiction Over EPD Investment Co., LLC.**

EPD makes no investment transactions available to the general public. (Pressman Decl., 6.) EPD does not have a public website. (Pressman Decl., 7.) EPD's members are all domiciled in Santa Monica, California. EPD's contacts with Illinois are not "intentional, substantial and systematic," and EPD could not reasonably expect to be hailed into court here.

General jurisdiction does not attach merely as a result of a non-Illinois company securing investments for private investors residing in Illinois, or in this case, residing part of the year in the state. In order for any such investments to have jurisdictional consequence, the investments must have been a product of purposeful and direct actions undertaken by EPD in Illinois. In other words, there must be evidence that EPD entered the state to solicit the investments, or engaged in activities specifically directed and targeted to Illinois investors. None of these factors exist here.

"[S]ince deriving revenue from Illinois may simply be a consequence of successful solicitation in the forum, even substantial earnings from [Illinois] have not been considered indicative of whether a corporation has established a permanent and continuing relationship with the forum." *Reimer v. KSL Recreation Corp.*, 807 N.E.2d 1004, 1013 (Ill. App. 2004) (citations omitted). "Notably, mere advertisement, even through the internet, participation in trade shows, or solicitation by an employee or agent who lacks authority to do more have not been enough to sustain personal jurisdiction in Illinois." *Id.* (citations omitted). "[R]ather than emphasizing the amount of financial benefit it derives from the consumers of Illinois, the cases seem to indicate that the key consideration is the corporation's temporal relationship with the State." *Hulsey v. Scheidt*, 630 N.E.2d 905, 909 (Ill. App. 1994).

Case 2:12-ap-02424-VZ Doc 283-2 Filed 01/15/17 Entered 01/15/17 18:59:26 Desc
Exhibit 1 Page 190 of 321



EPD has not actively procured business in Illinois and has no temporal relationship with this state. EPD is not licensed to do business here, does not maintain an office in this state and does not engage in business activities in Illinois. (Pressman Decl., 8). EPD is based in California, and does not send its officers or employees to Illinois on company business. (Pressman Decl., 1. 16, 18). Any entrance in to Illinois by EPD has resulted from periodic interest payment checks being sent there on the request of Plaintiffs, rather than from EPD's own individual activities in Illinois. *Id.*

Not any person residing in Illinois can make investments with EPD. To the contrary, in order to do so, one must travel to Santa Monica, California and become affiliated personally with EPD and its officers in their offices in Santa Monica, California. EPD's investors are independent businesses and individuals, who are nothing more than prospective lessors of equipment to third parties. EPD exercises no control over them. Investors have no authority to negotiate equipment leases on behalf of EPD. They are under no obligation to purchase any of the equipment being leased, or to sell it downstream upon termination of the lease. *See Bundy-Howard,* 2001 WL 1569877 at * 2 (holding that defendant's sales of $654,434.88 with 87 customers located in Illinois was insufficient to confer general jurisdiction over out-of-state defendant).

EPD's investors are not authorized to act on EPD's behalf and no agency is created by virtue of EPD's Deposit Acknowledgments or any Equipment Lease Agreement entered into by investors with third parties. Moreover, neither the Deposit Acknowledgments nor Equipment Lease Agreements can be deemed to create a partnership, franchise, join venture or agency, and neither party is the other's partner, franchisee, employee, agent or representative. Indeed, all EPD investors become entirely independent, non-exclusive lessors of equipment to third parties in California. (Pressman Decl., 10).

Case 2:12-ap-02424-VZ Doc 268-2 Filed 01/19/17 Entered 01/19/17 18:59:26 Desc
Exhibit 1 Page 197 of 321



In addition, as indicated *infra*, EPD does not maintain an Internet website. (Pressman Aff, 7). But even if it did, the Northern District of Illinois has adopted the sliding scale approach to "Internet jurisdiction." Northern District of Illinois courts have held, in the context of general jurisdiction, that the maintenance of an Internet website, regardless of its level of interactivity, without more, is insufficient to confer general jurisdiction. *See Donmar,* 2002 WL 1917258 at * 2; *Euromarket,* 96 F.Supp.2d at 833 (declining to exercise general jurisdiction over the defendant stating that the "mere maintenance of an Internet website is not sufficient activity to exercise general jurisdiction over defendant" even though the defendant made several sales through its website to Illinois residents and had contacts with Illinois suppliers).

In light of the foregoing and basic concepts of fair play and substantial justice, EPD does not have intentional, continuous or systematic contacts with Illinois sufficient to give rise to general jurisdiction here.

**2. There Is No General Jurisdiction Over Any Of The Other Defendants**

All of the other defendants (Jerrold Pressman, EPD Investment Leasing Co., LLC, EPD Group, Theodore Janovic, Ruben Moreno, Katherine Werner, Ice Skating Enterprises, Inc., and S.C. Club) are non-Illinois companies or residents, as the case may be, that, at one time or another, either performed services in California on an independent contractor basis with EPD, or entered in to lease transactions with Plaintiffs in California. Plaintiffs do not allege or cite to any evidence in their Complaint, or by way of affidavit, that these defendants have any contacts with Illinois. Plaintiffs do not allege that these defendants, or any of them, has an office here, maintain a registered agent in this state, or that any of their agents or employees spent any time in Illinois; and the defendants' supporting affidavit shows that they do not. (Pressman Decl.). Moreover, none of these defendants own real property in this state and none are a party to any contracts requiring acts to be performed here. (Pressman Decl., 12).

Like EPD, none of these defendants maintain an Internet website. But even if any of them did, without more, a website is insufficient to confer general jurisdiction over a foreign defendant. *See Aero Products,* 2002 WL 31109386 at * 7.

Plaintiffs must allege and cite to evidence indicating that each defendant specifically targeted Illinois. *Id.* Random and isolated investments from investors who occasionally spend time in Illinois is not a sufficient fact to premise a finding of general jurisdiction. Accordingly, this Court should decline to exercise general jurisdiction over these defendants.

**B. There is No Specific Jurisdiction Over Any of the Named Defendants.**

In the absence of general jurisdiction, specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant in a suit only where the contacts are one of the categories set out in the Illinois long arm statute, due process is satisfied, and the claims "arise out of or are related to the defendant's contacts with the forum." *Helicopteros,* 466 U.S. at 414. The exercise of specific jurisdiction is appropriate and meets due process requirements when the Plaintiff establishes: 1) that the defendant has sufficient minimum contacts with the forum state, defined as some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws; 2) the claim asserted is one which arises out of or results from the defendant's forum activities; and 3) the exercise of jurisdiction is reasonable. *Euromark,* 96 F.Supp.2d at 834.

The critical issue is whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 834-35 (citation omitted). A defendant cannot be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or due to 'the unilateral activity of another party or third person,' as opposed to defendant's *own* contacts that he deliberately pursued with the foreign jurisdiction." *Id.* at 839 (citation omitted).

In Illinois, the long arm statute sets forth the specific bases for establishing specific jurisdiction; the only pertinent one being the commission of a tortious act within the state, provided that such act gives rise to the claim and provided further that asserting specific jurisdiction is consistent with notions of due process. In this regard, Plaintiffs' Complaint fails because it has not demonstrated that any of Defendants committed a tortuous act within Illinois, nor intended to and did affect an Illinois interest.

Moreover, the exercise of specific jurisdiction over the Defendants would not comport with traditional notions of fair play and substantial justice because, among other things, Plaintiffs unilaterally and intentionally traveled to California to invest in equipment leases in California that call for performance to be made in California and to be governed by California law. Even if Plaintiffs could establish that Defendants, or any of them, committed a tortuous act, no commission of such occurred in Illinois or affected an Illinois interest.

**1. There is No Specific Jurisdiction Over EPD.**

EPD did not make any solicitation of Plaintiffs (or any investors) in Illinois (Pressman Decl., 13, 14.) As such, there is no basis for specific jurisdiction over EPD. The fact that Plaintiffs purchased equipment leases through EPD or one of its affiliates located outside of Illinois does not provide any basis for specific jurisdiction over EPD in Illinois. EPD does no advertising in any state, including Illinois, and investment opportunities procured by EPD are not made available to the general public. None of EPD's business is targeted to Illinois. Even if EPD did advertise or solicit investors nationally, which it does not, these types of contacts are insufficient to subject a defendant to jurisdiction in Illinois. *See Aero Products*, 2002 WL 31109386 at * 7.

Plaintiffs' alleged economic harm, allegedly felt in Illinois and Florida, is of no jurisdictional consequence based on the "effects (or last act) doctrine." For the purposes of specific jurisdiction, the effects doctrine provides that jurisdiction over a defendant is proper when: 1) the defendant's

Case 2:12-ap-02424-VZR Doc 263-12 Filed 09/05/17 Entered 09/05/17 16:52:26 Desc
Exhibit 12 Page 194 of 321



intentional, tortious actions 2) expressly aimed at the forum state 3) cause harm to the Plaintiff in the forum state, which the defendant knows is likely to be suffered. *Euromarket,* 96 F.Supp.2d at 835 (citation omitted). The Seventh Circuit has "clearly drawn a line between the commission of a tort which affects interests in Illinois and the commission of a tort that merely inflicts economic injury in Illinois." *See Donmar,* 2002 WL 1917258, at *3 (citing *Turnock v. Cope,* 816 F.2d 332, 334-35 (7th Cir. 1987)). An Illinois court does not "acquire jurisdiction under the last act doctrine simply because an economic loss is felt in Illinois when all the conduct contributing to the injury occurred outside Illinois." *Id* (citation omitted). Plaintiff must establish an additional entrance into Illinois which indicates EPD's intent to affect Illinois interests. *Edelson,* 352 F.Supp.2d at 867.

Particularly instructive is *Donmar,* where the plaintiff alleged that jurisdiction was proper over the defendant because it had committed a tort that resulted in the plaintiff suffering an economic injury in Illinois. In declining to exercise specific jurisdiction, the *Donmar* court held that the defendant conducted all of its activity outside of Illinois and that, other than the maintenance of a website, which it noted cannot be said to have been "aimed at the forum state," the plaintiff failed to provide evidence of any other contact with Illinois. The *Donmar* court recognized that a plaintiff must establish that the defendant, either through its Internet or non-Internet activities, intended to affect Illinois interests.

Plaintiff has failed to present any evidence that EPD's activities were purposefully directed to affect Illinois interests. EPD did not specifically target Illinois investors. (Pressman Decl., 14). None of EPD's investment activities evince an intent to affect Illinois interests. EPD conducts all of its activities in California. (Pressman Decl., 16). EPD does not employ anyone, including independent contractors, in Illinois. (Pressman. Decl., 17). It does not maintain an office in Illinois nor does it

Case 2:12-ap-02424-VZ Doc 283-2 Filed 09/05/17 Entered 09/05/17 16:18:59 Desc
Exhibit 1 Page 195 of 321



send employees to Illinois to conduct business on behalf of EPD. (Pressman Decl., 4, 8). For these reasons, there are no grounds for this Court to exercise specific jurisdiction over EPD.

1. **There is No Specific Jurisdiction Over Any Of The Other Defendants.**

In order for this Court to exercise specific jurisdiction over any of the other defendants, Plaintiffs must specifically allege and demonstrate that the defendant committed a tortious act within Illinois, and that the exercise of jurisdiction comports with traditional notions of due process. Plaintiffs maintain merely impliedly in their Complaint that the exercise of specific jurisdiction over the other defendants is proper because they aided and abetted EPD or were in some way entangled in EPD's fraudulent scheme.

As set forth above, Plaintiffs cannot establish that any of the Defendants intended to affect Illinois interests, however. *Euromark,* 96 F.Supp.2d at 836. Plaintiffs have failed to present any such evidence, other than the existence of transactions with Plaintiffs who, at one point or another, resided in Illinois. Moreover, neither EPD nor any of the other defendants offer or perform any services in or direct any of their business to Illinois. (Pressman Decl., 13, 14, 16).

In addition, the exercise of specific jurisdiction does not comport with due process because the other alleged tortious act, breach of contract, resulted from the unilateral activity of Plaintiff. "[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction." *Rohde v. Central R.R. of Indiana,* 930 F.Supp. 1269, 1272 (N.D. Ill. 1996) (citing *Helicopteros,* 44 U.S. at 417). Therefore, it is the defendant's conduct in relation to the forum state, not the unilateral actions of the plaintiff, that determines jurisdiction. *Dehmlow,* 963 F.2d at 946.

In the instant action, Plaintiffs initiated the equipment lease transactions between themselves and EPD. (Pressman Decl., 18). Plaintiffs traveled to Santa Monica for the purpose of meeting

Case 2:12-ap-02424-VZ Doc 28-12 Filed 01/25/17 Entered 01/25/17 16:52:26 Desc
Exhibit 12 Page 196 of 321



representatives from EPD, including Jerrold Pressman. (*Id.* at 19). None of Defendants traveled to Illinois or in any way made any effort to procure investments from Plaintiffs in Illinois. (*Id.* at 20). In fact, four years passed between the time Plaintiffs first contacted EPD about investment opportunities and the time Plaintiffs traveled to Santa Monica to meet with EPD and Jerrold Pressman. (*Id.* at 21). During the four year period, neither EPD nor any of Defendants made any attempt to contact Plaintiffs. (*Id*). When Plaintiffs finally invested with EPD, it was entirely due to their interest in EPD's investment plan – a unilateral decision to place money in EPD investments. There was, thus, no tortious act committed for purposes of the Illinois long-arm statute.

Of particular relevance to this issue is Judge Conlon's decision in *Native American Arts, Inc. v. Moon Raven Intl, Inc.*, No. 98 C 0434, 1998 WL 325245 (N.D. Ill. June 10, 1998), wherein Plaintiff alleged that the defendant, a Utah corporation, was subject to specific jurisdiction in Illinois, on the grounds that the defendant, in response to an order placed by Plaintiff, mailed the allegedly "falsely suggestive" products to Plaintiff's office in Chicago. Without addressing the question of whether the exercise of jurisdiction satisfied the requirements of the Illinois long-arm statute, Judge Conlon held that subjecting the defendant to the jurisdiction of Illinois courts would be inconsistent with federal due process standards because the defendant did not purposefully avail itself of the privilege of conducting business activities in Illinois. *Id.* at *5. The Court noted that the transactions at issue were both initiated by Plaintiff and that the defendant's only contact with Illinois was the shipping of goods from Utah to Illinois. *Id.* Moreover, the fact that Plaintiff observed defendant's products at retail stores located in Illinois did not evince defendant's intent to target its business activities in Illinois. *Id.* Rather, such a fact only suggested that the defendant manufactured products that, through the stream of commerce, entered and ended up in Illinois. It did not permit a reasonable inference that the defendant targeted its business activities at Illinois. *Id.* Therefore, the Court held

that the exercise of personal jurisdiction over the defendant on such a meager factual basis would offend the traditional notions of fair play and substantial justice. *Id.*

The investments and equipment leases in question here were made by Plaintiffs after traveling to meet with EPD in Santa Monica, California. The fact that some of the payments pursuant to the investments and equipment leases were to be sent to Illinois by EPD is a meager factual basis to exercise specific jurisdiction over any of Defendants and force them to Illinois to litigate. Doing so would be fundamentally unfair and unjust. Accordingly, this Court, like Judge Conlon, should decline to exercise specific jurisdiction over any of Defendants.

## III. VENUE IS IMPROPER IN THE NORTHERN DISTRICT OF ILLINOIS

Plaintiffs maintain no argument, position or factual or legal justification for filing this lawsuit in the Northern District of Illinois. Plaintiffs merely suggest by implication that their claims arose in Illinois, where some of the investment payments were sent by EPD. Even assuming Plaintiffs' claims arose in Illinois, which they certainly did not, a substantial part of the events *giving* rise to them did not.

Plaintiffs fail to allege in any capacity that the allegedly fraudulent scheme or contracts were designed or executed in Illinois. Nor do they allege that any decisions concerning the investments or equipment leases, including the creation and maintenance of each of them, were made in Illinois. Instead, Plaintiffs simply suggest—in a vague, broad-sweeping, indirect fashion—that their claims arose here in Illinois. *See generally,* Plaintiffs' Complaint.

Plaintiffs should direct their attention to the events giving rise to their claims. When this is done, it is evident that the substantial part of events giving rise to Plaintiffs' claims did not occur in Illinois, but in California. Plaintiffs' claims are based on Defendants' allegedly fraudulent investment scheme. Plaintiffs' Complaint, 1-10. All such investment opportunities were procured and made in California. (Pressman Decl., 8). All decisions regarding the investments, equipment,

and accounting were handled in California. *Id.* In addition, all decisions regarding the management of Plaintiffs' investments, including when and where to invest their funds in equipment leases, were made in California. *Id.* Accordingly, the Court should dismiss the present lawsuit on the grounds that venue is improper in the Northern District of Illinois.

## IV. ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA FOR THE CONVENIENCE OF WITNESSES AND THE INTERESTS OF JUSTICE

The determination of whether to transfer a case, pursuant to 28 U.S.C. § 1404(a), "necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir. 1986). The decision of a district court to grant a transfer of venue motion is not subject to appeal. *In re Joint Eastern & Southern District Asbestos Litigation,* 22 F.3d 755, 762 n.14 (7th Cir. 1994). Pursuant to § 1404(a), the convenience to the parties and witnesses—the most important factor in a transfer of venue analysis—does not lie in the Northern District of Illinois but rather the Central District of California because that is where the majority of the relevant evidence is located and where the majority of party and non-party witnesses reside. In addition, the interests of justice favors the transfer of the matter to the Central District of California.

### A. Convenience To Parties And Witnesses

In evaluating the convenience to the parties and witnesses, courts consider five factors: 1) the Plaintiffs choice of forum; 2) the situs of material events; 3) the access of evidence, including the court's power to compel the appearance of unwilling witnesses at trial, 4) the convenience of the witnesses; and 5) the convenience of the parties to litigating in each forum. Plaintiffs don't touch on any of factors 2-5 in their Complaint but instead assume that the Northern District of Illinois, their choice of forum, is entitled to substantial deference. Their preference, however, is of minimal value when another forum bears a stronger relationship to the dispute. *Yuba Nursing Home, Inc. v. TLC of*

Case 2:12-ap-02424-VZ Doc 263-2 Filed 02/13/17 Entered 02/13/17 18:59:26 Desc
Exhibit 1 Page 195 of 321



*the Bay Area,* No. 01 C 3612, 2001 WL 1136140, *4 (N.D. Ill. Sept. 26, 2001). Here, the facts demonstrate that the Central District of California bears a stronger relationship to the dispute based on the other four factors.

Plaintiffs wrongly assume that the situs of all material events giving rise to their claims is Illinois. In fact, all material events took place in Santa Monica, California. Plaintiffs traveled to Santa Monica to meet with EPD, accepted temporary notes that required payment in Santa Monica, and entered into equipment leases in Santa Monica. Accordingly, this factor weighs in favor of transfer to the Central District of California where all Defendants have consented to jurisdiction and venue.

All records and documents are located in Santa Monica, California, as well. (Pressman Decl., 16). No records or documents are located in Illinois. *Id.* The relevant evidence in this lawsuit is the records, documents, and other fact discovery related to the alleged fraudulent investment scheme and not Plaintiffs' own materials. This evidence is not located in Illinois but rather in California, where all of Defendants' documents and all of their records are located, a fact which Plaintiff cannot dispute. Moreover, none of Plaintiffs' records or documents are located in Illinois. Plaintiffs, or the majority of them, reside in North Fort Meyers, Florida. Plaintiffs' Complaint, Paragraphs 4-5. As such, this factor also weighs in favor of transferring this case to the Central District of California.

Convenience of both party and non-party witnesses is viewed as the most important factor in determining whether transfer is appropriate. *See Dean Foods Co. v. Eastman Chemical Co.*, No. 00 C 3675, 2000 WL 1559715, at *3 (N.D. Ill. July 31, 2002) (citation omitted). Plaintiffs fail to identify a single witness in Illinois, other than (presumably) Leslie Huerth, or the nature of their expected testimony. Moreover, Plaintiffs never mention how testimony of unidentified witnesses

Case 2:12-ap-02424-VZ Doc 283-17 Filed 01/19/17 Entered 01/19/17 16:18:59 Desc
Exhibit 12 Page 206 of 321



will be relevant to their lawsuit. The fact that Plaintiffs invested with EPD would require only a single witness, and is not disputed. As discussed above, because Plaintiffs' claims arise out of an allegedly fraudulent investment scheme, the relevant evidence and testimony concerns the Defendants themselves and their respective officers, employees, representatives, records and documents, all of which will be provided by Defendants themselves and their respective present and former personnel and representatives. Plaintiffs' unidentified witnesses are of no significance in the Court's determination of whether to transfer the case.

Conversely, the location of Defendants' witnesses expected to testify regarding EPD and its allegedly fraudulent investment scheme supports a transfer of this case to the Central District of California. Among those expected to testify are each of the named Defendants, as well as current and former employees of the same, all of whom reside in California. Most importantly, the former employees cannot be compelled to testify. Because the majority of witnesses with relevant testimony are located in California, in particular non-party witnesses, the convenience of witnesses factor weighs heavily in favor of transfer. *See Gen 17, Inc. v. Sun Microsystems, Inc.*, 953 F.Supp. 240, 243 (N.D. Ill. 1997) (holding that convenience of the parties and witnesses warranted transfer to California where defendants had substantially greater number of witnesses who would be inconvenienced by traveling to Illinois than Plaintiff had of witnesses who would be inconvenienced by traveling to California).

Last, Plaintiffs would not be greatly inconvenienced by being forced to litigate in California Plaintiffs are sophisticated businesspeople who are accustomed to travel. For example, Plaintiffs traveled to Santa Monica to enter into the investments with EPD. And Plaintiffs are also small in terms of their numbers. Plaintiffs, therefore, would hardly be "greatly inconvenienced" by litigating

in California. As such, the convenience to the parties factor does not weigh in favor of litigating in the Northern District of Illinois.

Based on the foregoing, the convenience to the parties and witnesses clearly favors the transfer of this matter to the Central District of California.

**B. Interests of Justice**

It is "generally more advantageous to have federal judges try a case who are familiar with the applicable law." *Stanley v. Marion,* No. 04 C 514, 2004 WL 1611074, *4 (N.D. Ill. July 16, 2004). Because the Deposit Acknowledgments and Equipment Lease Agreements at issue in this case call for the application of California law, the Central District of California is most competent to handle this lawsuit. *Gen 17, Inc.*, 953 F.Supp. at 243.

For this reason, this Court, were it to decide not to dismiss the lawsuit, should transfer the entire case to the Central District of California.

**V. <u>THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT VIOLATES THE PRIVATE SECURITIES LITIGATION RFFORM ACT, 18 U.S.C. § 1964(c).</u>**

An additional grounds for dismissal of this action under FRCP 12(b) lies in the very statute Plaintiffs' pleaded. In their Complaint, Plaintiffs allege that Defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1962(c). However, Plaintiffs fail to address the application of the exception to the RICO standing provision, which provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U. S.C. § 1964(c). This exception requires dismissal of Plaintiffs' complaint in its entirety.

Section 107 of the Private Securities Litigation Reform Act ("PSLRA"), which was enacted in 1995, added this exception. Pub. L. No. 104-67, 109 Stat. 737 (1995). Crucially, "the amendment was intended not simply 'to eliminate securities fraud as a predicate offense in a civil RICO action,'

but also to prevent a plaintiff from 'plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (quoting H.R. Conf. Rep. No. 104-369, at 47 (1995)); *see also Swartz v. KPMG, LLC*, 401 F. Supp. 2d 1146, 1151 (W.D. Wash. 2004) ("The rule that a plaintiff cannot assert a RICO claim based on predicate acts that sound in securities fraud is applicable even if . . . the claim is plead [sic] as a matter of mail fraud or wire fraud.") (citation omitted); *Seippel v Jenkins & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 372 (S.D.N.Y. 2004) ("In amending RICO, Congress was clear in stating that the PSLRA was meant to eliminate the possibility that litigants might frame their securities claims under a mail or wire fraud claim.") (citations and quotation marks omitted).

Since its enactment, courts have sought to clarify the scope of the Section 1964(c) bar. In *Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000), cert. denied, 531 U.S. 828 (2000), the Ninth Circuit rejected a claim that the PSLRA bar did not apply where the plaintiff had no standing to bring an independent securities fraud claim on the same factual allegations. *Id.* at 749-50. Noting that the plaintiffs did not dispute "that their securities fraud claims could be brought by a plaintiff with proper standing," the court appeared to rest its decision on the notion that the Section 1964(c) bar operated solely on the "conduct" alleged, not the party bringing the RICO claim. *Id.* at 749; see also *Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045 (9th Cir. 2006) (holding Section 1964(c)'s prohibition applies to individual and class action suits alike). Other cases have extended Howard's reasoning to cover situations where there would be no independent private right of action under the securities laws. For instance, some plaintiffs trying to evade the Section 1964(c) bar have argued that there is no private right of action to sue for aiding-and-abetting liability under 15 U.S.C. § 78t(e), and that, therefore, a RICO claim against an alleged aider-and-abettor should be allowed to

proceed. In *Pritikin v. Comerica Bank*, No. C 09-03 303 JF (RS), 2009 WL 3857455 (N.D. Cal. Nov. 17, 2009), the court rejected this argument, holding that § 1964(c) applies equally to RICO claims premised upon allegations of aiding and abetting securities fraud:

> The language of the statute simply does not require that, for a RICO claim to be barred, the plaintiff who sues under RICO must be able to sue under securities laws, or that the conduct 'actionable as securities fraud' on which the plaintiff relies to establish the RICO violation must be that of the defendant.

Id. at *4 (quoting *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 28 1-82 (S.D.N.Y. 2009)) (quotation marks omitted).

Courts have construed the PSLRA bar in Section 1964(c) to prohibit the dissection of said claims into their offending and non-offending components, as long as some component may be characterized as in furtherance of, or in connection with, actionable securities fraud. "In determining whether the PSLRA bars a civil RICO claim, courts view the complaint in its entirety and reject the invitation to parse the plaintiff's allegations." *Eagletech Commc'ns Inc. v. Citigroup, Inc.*, No. 07-60668-CIV, 2008 WL 3166533, at *9 (S.D. Fla. June 27, 2008) (citing *Bald Eagle*, 189 F.3d at 329) (holding that the PSLRA bars an action where some, but not all, of the predicate acts are actionable as securities fraud, because "[a]llowing such surgical presentation of the cause of action . . . would undermine the congressional intent behind the RICO Amendment"). For example, in *Sell v. Zions First Nation Bank*, No. CV 05-684 PHX SRB, 2006 WL 322469 (D. Ariz. Feb. 9, 2006), the court dismissed a RICO claim that was predicated upon mail fraud, wire fraud, and also bank fraud, explaining that the alleged instances of bank fraud were "but tentacles of the same octopus, sufficiently connected to securities fraud to bar their use as predicate acts." *Id.* at 11; see also *Bald Eagle*, 189 F.3d at 330 ("Conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities").

Case 2:12-ap-02424-VZ Doc 263-12 Filed 09/05/17 Entered 09/05/17 16:52:26 Desc
Exhibit 12 Page 204 of 321



The standard for applying the Section 1964(c) bar thus appears to be quite flexible. This is in accord with *SEC v. Zandford*, 535 U.S. 813 (2002), in which the Supreme Court held that: (1) Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 must be broadly construed "to effectuate [their] remedial purposes"; and (2) that fraud is "in connection with the purchase or sale of any security" provided that "the scheme to defraud and the sale of securities coincide." *Id.* at 820 (emphasis added); *see also Ling v. Deutsche Bank, AG*, No. 04 CV 4566(HB), 2005 WL 1244689, at *3 (S.D.N.Y. May 26, 2005) ("[T]he requirement is satisfied when the securities transactions and breaches complained of coincide and are not independent events.") (citation omitted). In *Levinson v. PSCC Services, Inc.*, No. 3:09-CV-00269 (PCD), 2009 WL 5184363 (D. Conn. Dec. 23, 2009), the court explained that even if the purchase or sale of securities was but one component in a larger fraudulent scheme, the scheme was still actionable as securities fraud. *Id.* at *7-8. The court explained that "[i]n determining whether misrepresentations coincided with the purchase or sale of securities, courts consider the allegedly fraudulent scheme as a whole." *Id.* at *7. Since the fraudulent scheme involved inducing plaintiffs to invest in a common fund and then permitting Ponzi scheme mastermind Bernie Madoff to use the funds to purchase securities, the integrated fraudulent scheme constituted actionable, indivisible securities fraud, which could not support a RICO claim under Section 1964(c). *Id.* ("Defendants' alleged misrepresentations and omissions relate to Madoff's purported purchase and sale of securities with plaintiffs' funds. Defendants essentially induced Plaintiffs to invest their assets in the common investment fund (and induced them to keep their assets there in the long run) based on false reassurances that their assets would be safe.").

In summary, under Section 1964(c), Plaintiffs cannot in one lawsuit allege, as Plaintiffs have here, civil RICO and securities fraud violations, and in so doing use actionable securities fraud as the

predicate act for their RICO claim. In this case, the promissory notes Plaintiffs received pursuant to the series of investment loans they made to EPD are securities. The Securities Exchange Act of 1934 defines "security" broadly to include:

> "any *note*, stock, treasury stock, security future, bond, debenture, . . . transferable share, *investment contract*, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, *certificate of deposit*, or group or index of securities (including any interest therein or based on the value thereof) . . . , or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or *interim certificate* for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."

15 U.S.C. § 78c(a)(10) (emphasis added). The entire thrust of Plaintiffs' complaint is that the temporary notes issued by EPD are fraudulent. This is, thus, a securities fraud allegation. (See Plaintiffs' Complaint Paragraph 105, in which they state that certain of defendants used interstate mails, electronic mails and wires to perpetrate their fraud against Plaintiffs). Moreover, in their RICO allegation, Count I of their Complaint, Plaintiffs allege, as RICO predicate acts, that defendant Pressman committed fraud, and defendants Jonavic, Moreno and Werner aided and abetted Pressman in carrying out the fraud. Plaintiff's Complaint Paragraphs 107-109. This triggers the Section 1964(c) bar.

Plaintiffs' may nonetheless attempt to circumvent the Section 1964(c) bar by arguing that Count I of their Complaint can be disaggregated. This would be directly contrary to well-established law, however. Courts have consistently held that the PSLRA prohibits the dissection of RICO claims into actionable and non-actionable securities fraud. As long as some component of the alleged scheme can be characterized as securities fraud, the RICO claim will be barred by the PSLRA. *See Eagletech Communications*, 2008 WL 3166533, at *9; *Bald Eagle Area Sch. Dist. v.*

*Keystone Fin., Inc.*, 189 F.3d 321, 330 (3rd Cir. 1999); *Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010); *Stephenson v. Deutsche Bank AG*, 282 F. Supp.2d 1032, 1071-72 n. 27 (D. Minn. 2003); *Burton v. Ken-Crest Servs.*, 127 F.Supp.2d 673, 677 (E.D. Pa. 2001); *Baron v. Chehab*, 2006 WL 156828, at *8 (C.D. Ill. Jan. 20, 2006).

## VI. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for lack of personal jurisdiction, improper venue, and violation of the Private Securities Litigation Reform Act; and in the alternative, the case should be transferred to the Central District of California.

Date: October 5, 2010

/s/ Matthew B. Gruenberg
Attorney for Defendants

Attorneys for Defendants
Mr. Matthew B. Gruenberg CA SBN 264210
LAW OFFICES OF MATTHEW B. GRUENBERG
942A Lincoln Blvd.
Santa Monica, CA 90403
Telephone: (310) 740-5105

/s/Barney H. Balonick
Co-Attorney for Defendants

Barney H. Balonick, Esq. - 6238985
Attorney at Law
33 North Dearborn Street
Suite 1930
Chicago, IL 60602
(312)368-0255

# EXHIBIT 13

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.1.1**
**Eastern Division**

Arthur Huerth, et al.
Plaintiff,
v.
Jerrold Pressman, et al.
Defendant.

Case No.: 1:10–cv–05049
Honorable Philip G. Reinhard

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, October 29, 2010:

MINUTE entry before Honorable P. Michael Mahoney: Discovery hearing held on 10/29/2010. Status hearing of 11/17/10 stricken. Plaintiff's Motion for entry of default [14] is withdrawn. Defendant's Motion for leave to file 20 page brief [24] is granted. Plaintiff's Motion for leave to file [28] and defendant's Motion to dismiss for lack of jurisdiction [33]are entered and continued to Telephonic Discovery Hearing set for 11/29/2010 at 10:00 AM. Plaintiff to place the call. (glg, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# EXHIBIT 14

# Case Summary

**Case Number:** SC106151
MICHELLE HANSEL VS EPD INVESTMENT CO., LLC, ET.AL.

**Filing Date:** 12/21/2009
**Case Type:** Othr Breach Contr/Warr-not Fraud (General Jurisdiction)
**Status:** Pending

---

**Future Hearings**

**02/15/2011** at 08:30 am in department WEB at 1725 Main Street, Santa Monica, CA 90401
Motion to Quash (-Subpoena for Consumer Records)

---

Documents Filed | Proceeding Information

**Parties**

DONIGER / BURROUGHS APC - Attorney for Plaintiff

EPD INVESTMENT CO. LLC - Defendant

FRIEDMAN RONALD M. ESQ. - Mediator

HANSEL MICHELLE - Plaintiff

JONAVIC THEODORE P. - Defendant

LUCE FORWARD HAMILTON & SCRIPPS LLP - Attorney for Defendant

PRESSMAN JERROLD - Defendant

---

Case Information | Party Information | Proceeding Information

**Documents Filed** (Filing dates listed in descending order)

Click on any of the below link(s) to see documents filed on or before the date indicated:
07/09/2010

**01/12/2011** Reply To Motion (plff's reply in support of plff's mtn compel deposition & req for Sanctions against Deft EPD Investment Co., LLC & its Attorney of Record; Declaration of Regina Y. Yeh in support thereof)
Filed by Attorney for Plaintiff

**01/06/2011** Opposition (TO MICHELLE HANSEL'S MOT TO COMPEL DEPOSITION & PRODUCTION OF DOCUMENTS & REQ FOR SANCTIONS; DECLARATION OF JOHN

KIRKLAND )
Filed by Attorney for Defendant

**12/14/2010** Motion to Quash (subpoena for consumer records )
Filed by Attorney for Defendant

**12/10/2010** Motion for an Order (FOR SERVICE OF 1ST AMENDED COMPLAINT TO RUBEN MORENO & KATY WERNER BY PUBLICATION UNDER CCP 415.50; DECL. OF REGINA Y. YEH )
Filed by Attorney for Plaintiff

**12/10/2010** Motion for an Order (COMPELLING DEPOSITION OF DEFT EPD INVESTMENT CO., LLC; REQ MONETARY SANCTIONS AGAINST DEFT EPD INVESTMENT CO., LLC & ITS ATTY OF RECORD )
Filed by Attorney for Plaintiff

**12/10/2010** Declaration (OF CAROL LEOPARD RE DUE DILIGENCE )
Filed by Attorney for Plaintiff

**12/10/2010** Motion for an Order (TO COMPEL DEPOSITION OF DEFT RUBEN MORENO FOR AWARD OF MONETARY SANCTIONS AGAINST DEFT PRESSMAN INVESTMENT CO., LLC & ITS ATTY OF RECORD )
Filed by Attorney for Plaintiff

**12/10/2010** Motion to Compel (COMPELLING DEPOSITION OF DEFT JERROLD PRESSMAN & REQ FOR MONETARY SANCTIONS AGAINST DEFT JERROLD PRESSMAN HIS ATTY OF RECORD )
Filed by Attorney for Plaintiff

**12/10/2010** Proof of Service
Filed by Attorney for Plaintiff

**11/10/2010** Declaration (OF CAROL LEOPARD RE: DUE DILIGENCE )
Filed by Attorney for Plaintiff

**11/10/2010** Ex-Parte Application (FOR ORDER FOR SERVICE OF FIRST AMENDED COMPLAINT TO RUBEN MORENO AND KATY WERNER BY PUBLICATION UNDER C.C.P. 415.50; DECLARATION OF REGINA Y. YEH IN SUPPORT THEREOF)
Filed by Attorney for Plaintiff

**11/10/2010** Ex-Parte Application (FOR ORDER SHORTENING TIME FOR HEARING FOR DEFENDANT EPD INVESTMENT CO. LLC'S MOTION TO QUASH AND/OR REQUEST FOR ORDER APPOINTING DISCOVERY REFEREE; DECLARATION OF REGINA Y. YEH ESQ.)
Filed by Attorney for Plaintiff

**11/09/2010** CCP 170.6 Application Filed
Filed by Attorney for Defendant

**11/05/2010** Motion to Quash (SUBPOENA FOR CONSUMER RECORDS; (PROPOSED) ORDER. )
Filed by Attorney for Defendant

**10/08/2010** Ex-Parte Application (TO CONTINUE TRIAL AND DISCOVERY CUT-OFF

DATES; )
Filed by Attorney for Plaintiff

**10/08/2010** Order ( ON EX PARTE (SIGNED BY JUDGE BIDERMAN) )
Filed by Attorney for Plaintiff

**10/04/2010** Proof-Service/Summons
Filed by Attorney for Plaintiff

**09/30/2010** NOTICE OF CONTINUANCE
Filed by Clerk

**09/15/2010** Summons Filed
Filed by Attorney for Plaintiff

**08/16/2010** Miscellaneous-Other (FIRST SANA FILED. MEDIATION DID NOT TAKE PLACE. )
Filed by Mediator

**08/12/2010** Notice Assign.-Med Hrg Date
Filed by Mediator

**08/09/2010** Amendment to Complaint (DOE 1 - THEODORE P. JONAVIC. )
Filed by Attorney for Plaintiff

**08/09/2010** Amendment to Complaint (DOE 3 - RUBEN MORENO. )
Filed by Attorney for Plaintiff

**08/09/2010** Amendment to Complaint (DOE 2 - KATHARINE WERNER. )
Filed by Attorney for Plaintiff

**07/30/2010** Statement - General (SEPARATE STATEMENT OF SPECIAL INTERROGS TO DEFT EPD INVESTMENT CO., LLC IN DISPUTE. )
Filed by Attorney for Plaintiff

**07/30/2010** Statement - General (SEPARATE STATEMENT OF REQUESTS FOR PROD TO DEFT EPD INVESTMENT CO., LLC IN DISPUTE. )
Filed by Attorney for Plaintiff

**07/30/2010** Motion to Compel (FURTHER RESPONSES FROM DEFT JERROLD S. PRESSMAN TO PLTF'S RE- QUESTS FOR PROD OF DOCS; REQUEST FOR SANCTIONS AGAINST DEFT AND ITS COUNSEL OF RECORD; DECL OF REGINA Y. YEH, ESQ.; (PROPOSED) ORDER.)
Filed by Attorney for Plaintiff

**07/30/2010** Motion to Compel (FURTHER RESPONSES TO REQUEST FOR SPECIAL INTERROGS; REQUEST FOR SANCTIONS AGAINST DEFT JERROLD S. PRESSMAN AND ITS COUNSEL OF RE- CORD; DECL OF REGINA Y. YEH, ESQ.; (PROPOSED) ORDER.)
Filed by Attorney for Plaintiff

**07/30/2010** Statement - General (SEPARATE STATEMENT OF REQUESTS FOR PROD IN DISPUTE. )

Filed by Attorney for Plaintiff

**07/30/2010** Motion to Compel (FURTHER RESPONSES FROM DEFT EPD INVESTMENT CO., LLC TO PLTF'S RE- QUEST FOR SANCTIONS AGAINST DEFT AND ITS COUNSEL OF RECORD; DECL OF REGINA Y. YEH, ESQ.; (PROPOSED) ORDER.)
Filed by Attorney for Plaintiff

**07/30/2010** Motion to Compel (FURTHER RESPONSES TO PLTF'S RE- QUESTS FOR FORM INTERROGS; RE- QUEST FOR SANCTIONS AGAINST DEFT JERROLD S. PRESSMAN AND ITS COUNSEL OF RECORD; DECL OF REGINA Y. YEH, ESQ.; (PROPOSED) ORDER.)
Filed by Attorney for Plaintiff

**07/27/2010** First Amended Complaint
Filed by Attorney for Plaintiff

**07/27/2010** Proof of Service (OF PLTF'S MOTION FOR LEAVE TO AMEND COMPLIANT )
Filed by Attorney for Plaintiff

**07/27/2010** Opposition (TO PLTFF'S EX PARTE APPLICATION FOR APPOINTMENT OF DISCOVERY REFEREE )
Filed by Attorney for Defendant

**07/27/2010** Ex-Parte Application (FOR ORDER ENFORCING STIPULATION TO A DISCOVERY REFEREE, OR IN THE ALTERNATIVE, FOR ORDER APPOINTING DISCOVERY REFEREE; )
Filed by Attorney for Plaintiff

**07/23/2010** Statement - General (of non-opposition to motion for leave to file first amended complaint )
Filed by Attorney for Defendant

**07/22/2010** Notice (OF ERRATA )
Filed by Attorney for Plaintiff

**07/22/2010** Opposition (TO MOTION FOR RECONSIDERATION & REQUEST FOR SANCTIONS; DECLA. OF REGINA Y. YEH, ESQ. & SAMANTHA KNAPTON IN SUPPORT THEREOF )
Filed by Attorney for Plaintiff

**07/22/2010** Objection (TO DECLARATION OF THEONA ZHORDANIA )
Filed by Attorney for Plaintiff

**07/13/2010** Proof of Service (OF NTC OF MOTION AND MOTION FOR RECONSIDERATION OF THIS COURT'S JUNE 30, 2010 RULING; DECL OF THEO NA ZHORDANIA )
Filed by Attorney for Defendant

**07/12/2010** Motion for Reconsideration (OF THIS COURT'S 6/30/10 RULING; DECL OF THEONA ZHORDANIA. )
Filed by Attorney for Defendant

Click on any of the below link(s) to see documents filed on or before the date

indicated:
TOP 07/09/2010

**07/09/2010** Notice-Assignment-Mediator
Filed by ADR Clerk

**07/09/2010** Declaration (OF JOHN C. KIRKLAND IN RESPONSE TO OSC. )
Filed by Attorney for Defendant

**07/02/2010** Notice (NOTICE OF PLTFS FILING OF UNDERTAKING )
Filed by Attorney for Plaintiff

**07/02/2010** Order (RIGHT TO ATTACH ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT AFTER HEARING; )
Filed by Attorney for Plaintiff

**07/02/2010** Order (RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT AFTER HEARING; )
Filed by Attorney for Plaintiff

**06/28/2010** Notice of Lien (OF SUPPLEMENTAL DECLARATION. )
Filed by Attorney for Plaintiff

**06/28/2010** Notice of Lodging (OF LODGING FIRST AMENDED COMPLAINT )
Filed by Attorney for Plaintiff

**06/28/2010** Order (GRANTING PLAINTIFF'S EX-PARTE APPLICATION FOR ORDER SHORTENING TIME FOR A HEARING ON ITS MOTION TO AMEND COMPLAINT )
Filed by Attorney for Plaintiff

**06/28/2010** Ex-Parte Application (FOR OREER SHORTENING TIME FOR HEARING ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT )
Filed by Attorney for Plaintiff

**06/28/2010** Motion for Leave (TO FILE FIRST AMENDED COMPLAINT; DECL OF REGINA Y. YEH, ESQ. IN SUPPORT THEREOF; (PROPOSED) ORDER. )
Filed by Attorney for Plaintiff

**06/23/2010** Ex-Parte Application (FOR RIGHT TO ATTACH ORDER; TEMPORARY RESTRAINING ORDER & ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT; )
Filed by Attorney for Plaintiff

**06/23/2010** Memo points & authorities (IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT FOR DEFENDANT JERROLD PRESSMAN; )
Filed by Attorney for Plaintiff

**06/23/2010** Declaration (OF RUBEN MORENO IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER & ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT; )
Filed by Attorney for Defendant

**06/23/2010** Opposition (TO PLAINTIFF'S EX PARTE ATTACHMENT MOTION )

Case 2:10-bk-02208-ER Doc 23-14 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc
Exhibit 14: Page 7 of 10


Filed by Attorney for Defendant

**06/03/2010** Notice (OF LODING OF EXECUTED DECL OF MICHELLE HANSEL. )
Filed by Attorney for Plaintiff

**06/01/2010** Brief (SUPPLEMENTAL BRIEF IN SUPPORT OF PLTF'S WRITS OF ATTACHMENT FOR EPD INVESTMENT CO., LLC AND JERROLD S. PRESSMAN. )
Filed by Attorney for Plaintiff

**05/17/2010** Reply To Motion (IN SUPPORT OF PLAINTIFF'S APPLIC. FOR RIGHT TO ATTACH ORDER AND ORD. FOR ISSUANCE OF WRIT OF ATTACH. DECLARATION OF REGINA Y. YEH IN SUPPORT THEREOF )
Filed by Attorney for Plaintiff

**04/27/2010** Statement-Case Management
Filed by Attorney for Defendant

**04/27/2010** Declaration (OF JOHN C. KIRKLAND IN RESPONSE TO ORDER TO SHOW CAUSE )
Filed by Attorney for Defendant

**04/23/2010** Declaration (of REGINA Y. YEH IN RESPONSE TO ORDER TO SHOW CAUSE )
Filed by Attorney for Plaintiff

**04/15/2010** Application - Miscellaneous (FOR RIGHT TO ATTACH TEMPORARY PRO- TECTIVE ORD AND ORD FOR ISSUANCE OF WRIT OF ATTACHMENT, AS TO EPD INVESTMENT CO., LLC. )
Filed by Attorney for Plaintiff

**04/15/2010** Application - Miscellaneous (FOR RIGHT TO ATTACH TEMPORARY PRO- TECTIVE ORD AND ORD FOR ISSUANCE OF WRIT OF ATTACHMENT, AS TO JERROLD PRESSMAN. )
Filed by Attorney for Plaintiff

**04/15/2010** Memo points & authorities (IN SUPPORT OF PLTF'S EX PARTE APPL FOR RIGHT TO ATTACH ORD AND ORD FOR ISSUANCE OF WRIT OF ATTACHMENT FOR DEFT JERROLD PRESSMAN; DECLS OF MICHELLE HANSEL AND REGINA YEH IN SUPPORT THEREOF.)
Filed by Attorney for Plaintiff

**04/15/2010** Memo points & authorities (IN SUPPORT OF PLTF'S RIGHT TO ATTACH ORD AND ORD FOR ISSUANCE OF WRIT OF ATTACHMENT FOR DEFT EPD INVESTMENT CO., LLC; DECLS OF MICHELLE HANSEL AND REGINA Y. YEH, ESQ. IN SUPPORT THEREOF.)
Filed by Attorney for Plaintiff

**03/24/2010** General Denial
Filed by Attorney for Defendant

**03/08/2010** Substitution of Attorney
Filed by Attorney for Defendant

**03/03/2010** Memo points & authorities (IN SUPPORT OF EXPARTE )

Case 2:10-bk-62208-ER Doc 23-14 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 14 Page 8 of 10


Filed by Attorney for Plaintiff

**03/03/2010** Notice of Hearing (ON RIGHT TO ATTACH ORDER, TRO, WRIT OF ATTACHMENT )
Filed by Attorney for Plaintiff

**03/03/2010** Opposition (TO PLAINTIFF'S EXPARTE ATTACHMENT MOTION )
Filed by Attorney for Defendant

**02/09/2010** Proof of Service of Summons & Com
Filed by Attorney for Plaintiff

**12/21/2009** Complaint Filed

Click on any of the below link(s) to see documents filed on or before the date indicated:
TOP 07/09/2010

Case Information | Party Information | Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)

Click on any of the below link(s) to see proceedings held on or before the date indicated:
3/3/2010

**01/18/2011** at 08:30 am in Department WEB, Norman P. Tarle, Presiding
Motion for an Order - **Motion Granted**

**01/11/2011** at 08:30 am in Department WEB, Norman P. Tarle, Presiding
Motion for an Order (-for Service of First Amended Complaint by Plaintiff) - **Denied**

**01/10/2011** at 08:35 am in Department WEB, Norman P. Tarle, Presiding
Trial Setting Conference (-Motion Order for Service of First Amended Complaint by Plaintiff: 1-11-11) - **Not Held-Continued**

**11/10/2010** at 10:00 am in Department WEB, Norman P. Tarle, Presiding
Ex-Parte Application - **Motion Denied**

**11/10/2010** at 08:30 am in Department WEK, Joseph S. Biderman, Presiding
Affidavit of Prejudice - **Motion Granted**

**10/08/2010** at 08:30 am in Department WEK, Joseph S. Biderman, Presiding
Ex-Parte Application - **Motion Granted**

**09/30/2010** at 08:31 am in Department WEK, Joseph S. Biderman, Presiding
Motion - Compel Further Responses (TO PLTF'S REQUESTS FOR FORMINTERROGS; REQUEST FOR SANCTIONS;) - **Motion Granted**

**09/28/2010** at 08:31 am in Department WEK, Joseph S. Biderman, Presiding
Motion - Compel Further Responses (TO REQUESTS FOR SPECIAL INTERROGS;TO REQUESTS FOR PROD OF DOCS; ANDREQUESTS FOR SANCTIONS;) - **Order**

**Issued**

**08/24/2010** at 10:00 am in Department WEK, Joseph S. Biderman, Presiding
Conference (RE: DISCOVERY DISPUTE;) - **Completed**

**08/16/2010** in Department ADRO, ADR Neutral, Presiding
Closed-ADR - **Not held-Rmvd ADR-Other**

**08/12/2010** at 03:30 pm in Department WEK, Joseph S. Biderman, Presiding
Court Order - **Order Issued**

**08/05/2010** at 08:45 am in Department WEK, Joseph S. Biderman, Presiding
Motion - Reconsideration - **Motion Denied**

**07/27/2010** at 08:45 am in Department WEK, Joseph S. Biderman, Presiding
Motion for Leave - **Motion Granted**

**07/12/2010** at 08:30 am in Department WEK, Joseph S. Biderman, Presiding
Order to Show Cause (RE: SANCTIONS VS. DEFENSE ATTY.FOR F.T.A. 7-2;2) DISCOVERY CONFERENCE;) - **OSC Discharged**

**07/02/2010** at 10:00 am in Department WEK, Joseph S. Biderman, Presiding
Hearing-Other (DISCOVERY CONFERENCE) - **Continued**

**06/30/2010** at 08:40 am in Department WEK, Joseph S. Biderman, Presiding
Court Order - **Order Issued**

**06/28/2010** at 08:31 am in Department WEK, Joseph S. Biderman, Presiding
Hearing-Other (APPLICATION FOR WRIT OFATTACHMENT;) - **Matter Heard-Under Submission**

**06/23/2010** at 08:30 am in Department WEK, Joseph S. Biderman, Presiding
Exparte proceeding - **Held-Continued**

**05/18/2010** at 08:31 am in Department WEK, Joseph S. Biderman, Presiding
Hearing-Other (APPLICATION(S) FOR RIGHT TO ATTACHTEMPORARY PROTECTIVE ORD AND ORDFOR ISSUANCE OF WRIT OF ATTACHMENTAS TO EPD INVESTMENT CO., LLC ANDJERROLD PRESSMAN;) - **Continued**

**04/30/2010** at 09:00 am in Department WEK, Joseph S. Biderman, Presiding
Order to Show Cause (RE: SANCTIONS VS. EACH SIDE FORF.T.A. 4-12;) - **Trial Set**

**04/12/2010** at 08:30 am in Department WEK, Joseph S. Biderman, Presiding
Conference-Case Management - **Conference not held,no appearances**

Click on any of the below link(s) to see proceedings held on or before the date indicated:
TOP 3/3/2010

**03/03/2010** at 08:31 am in Department WEK, Joseph S. Biderman, Presiding
Exparte proceeding (FOR A RIGHT TO ATTACH ORDER,TRO, WRIT OF ATTACHMENT) - **Motion Denied**

Case 2:10-bk-62208-ER Doc 29-14 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 14 Page 10 of 10


Click on any of the below link(s) to see proceedings held on or before the date indicated:
TOP 3/3/2010

---

Case Information | Party Information | Documents Filed | Proceeding Information

# EXHIBIT 15

Case 2:12-ap-02424-VZ Doc 23-15 Filed 01/19/11 Exhibit 15 Page 2 of 20

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

DEC 21 2009

John A. Clarke, Executive Officer/Clerk
By A. WILLIAMS DEPUTY

CASE MANAGEMENT CONFERENCE
APR 12 2010
Date
Judge Joseph S. Biderman
Dept. 1C 830 am

Stephen M. Doniger, Esq. (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs, Esq. (SBN 235718)
scott@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile: (310) 417-3538

Attorneys for Plaintiff

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES – WEST DISTRICT**

| | |
|---|---|
| MICHELLE HANSEL, an Individual;<br><br>Plaintiff,<br><br>vs.<br><br>EPD INVESTMENT CO., LLC, a California Limited Liability Company; JERROLD PRESSMAN, an Individual; and DOES 1-25, Defendants. | Case No.: SC106151<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. BREACH OF PROMISSORY NOTE<br>2. MONEY HAD AND RECEIVED<br>3. BREACH OF PERSONAL GUARANTY AGREEMENT<br>4. ALTER-EGO LIABILITY<br><br>**JURY TRIAL DEMANDED** |

Plaintiff MICHELLE HANSEL alleges on information and belief as follows:

**GENERAL ALLEGATIONS**

1. Plaintiff MICHELLE HANSEL ("HANSEL") is now, and at all times mentioned herein was, a California resident residing in Los Angeles County.

2. Plaintiff is informed and believes, and thereon alleges that, at all times herein mentioned, Defendant EPD INVESTMENT CO., LLC ("EPD"), was, and now is: (i) a limited liability company organized and existing under the laws of the State of California, having its principal place of business in Santa Monica, California, and (ii) doing business in Los Angeles County, California.

Case 2:12-ap-02424-VZ Doc 23-15 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 15 Page 3 of 20

3. Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, Defendant JERROLD PRESSMAN ("PRESSMAN") is an individual residing in and transacting business within Los Angeles County, California.

4. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1-25, inclusive and, therefore, sue these Defendants by fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of these fictitiously named Defendants is responsible in some manner for the acts or omissions alleged in this Complaint and that Plaintiff's injuries were proximately caused by acts or omissions of these Defendants. Plaintiffs will seek leave to amend the complaint when they have knowledge of facts indicating the true nature of their capacity and conduct in the events described in this Complaint.

5. Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, that, each of the Defendants was, and now is, acting as the employee, agent, principal, officer, partner, joint venturer, alter ego, co-conspirator, director or other representative of one or more of the remaining defendants and, in doing the things herein mentioned, was acting within the scope and course of such employment, agency, partnership, joint venture, conspiracy or other relationship, and with the permission, authorization, ratification and consent of the other defendants.

6. In or about January 2006, at Los Angeles, California, Defendant EPD made, executed and delivered to Plaintiff Hansel a promissory note ("January 2006 Note") in the principal amount of Three Hundred Fifty Thousand Dollars ($350,000.00). A true and complete copy of this note is attached hereto as Exhibit "A", and made a part hereof by this reference.

7. The January 2006 Note provides for payment monthly of interest in arrears on the unpaid balance at the rate of Twelve Percent (12%) per annum. The January 2006 Note further provides that upon request, withdrawals on the principal amount would prompt an "account schedule." By the terms of the January 2006 Note, EPD promises that if any action were commenced to enforce payment on the Note, Hansel would be entitled to "reasonable...attorneys' fees."

8. Between approximately May 2006 to September 2006, in Los Angeles, California, EPD made, executed and delivered to Hansel three additional and separate promissory notes ("Subsequent Notes"). These additional notes purported to act as "[addenda]" to the January 2006 Note, and to add to the principal amount under the January 2006 Note. These three additional promissory notes are in the principal amounts of One Hundred Fifty Thousand Dollars ($150,000.00), Fifty Thousand Dollars ($50,000.00), and One Hundred Five Thousand Dollars ($105,000.00), respectively. True and complete copies of the three Subsequent Notes executed in 2006 are attached hereto as Exhibits "B", "C", and "D", and made a part hereof by this reference.

9. In accordance with the Subsequent Notes, Hansel loaned to EPD the additional amounts of $150,000.00, $50,000.00, and $105,000.00 (totaling $305,000.00). In sum, the principal amount due under all four transactions (under the January 2006 Note and the Subsequent Notes) is $655,000.00.

10. Concurrently with the execution of one of the Subsequent Notes, Pressman executed his written personal guaranty of the obligations of EPD. The personal guaranty clause (the "Guaranty Clause") is contained on Exhibit "B," attached hereto.

11. From approximately January 2006 until May 2009, Hansel received the monthly interest payments due under the January 2006 Note, and following their execution, interest payments due under the Subsequent Notes. EPD disbursed the interest due each month in one sum, and into an account created for Hansel.

12. In or about June 2009, EPD stopped disbursing the monthly interest payments due under the four promissory notes.

13. Hansel has made numerous requests for payment on the notes culminating in a November 2009 written demand on EBT for payment in full of the four separate notes. A true and complete copy of said written demand is attached hereto as Exhibit "E" and made a part hereof by this reference. Hansel has not received any communication from the Defendants since said demand was made, and EBT has failed and refused, and continues to fail and refuse to pay the principal amount due under the promissory notes or the accrued interest.

Case 2:18-ap-02424-VZ Doc 25-15 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 15 Page 5 of 20

14. By the filing of this Complaint, Hansel does hereby reiterate said demand for payment in full of the entire principal balance pursuant to the January 2006 Note, the three Subsequent Notes adding to the principal under the January 2006 Note, and all accrued and unpaid interest. As to date, the outstanding principal balance in the amount of Six Hundred Fifty Five Thousand Dollars ($ 655,000.00) remains due owing and unpaid. No payment has been made for the interest due since June 2009, and the same remains due owing and unpaid.

**FIRST CAUSE OF ACTION**

(Breach of Promissory Note against EPD and Does 1 through 10, Inclusive)

15. Hansel incorporates herein by this reference paragraphs 1 through 14, inclusive, of this Complaint as if fully set forth again here.

16. On or about January 2006, EPD executed a promissory note with Hansel, where Hansel agreed to loan $350,000.00 to EPD in accordance with the terms of the January 2006 Note. In accordance with the terms of the note, Hansel loaned to EPD $350,000.00.

17. Between approximately May to September 2006, in Los Angeles, California, EPD made, executed and delivered to Hansel three additional and separate promissory notes. These Subsequent Notes purported to act as "[addenda]" to the January 2006 Note, and to add to the principal amount under the January 2006 Note. In accordance with these three additional transactions, Hansel loaned EPD an additional $305,000.00.

18. In sum, the principal amount due under all four transactions (under the January 2006 Note and the Subsequent Notes) is $655,000.00.

19. EPD failed to comply with the terms of the January 2006 Note and the Subsequent Notes, by refusing to make the payments required there under on a timely basis and having not paid off the principal sum yet.

20. Hansel has not breached any duty it owed to EPD under the terms of the January 2006 Note and the Subsequent Notes.

21. As a direct and proximate result of the breach of the promissory notes by EPD, Hansel has been damaged in an amount to be proven at trial but which amount is no less than $655,000.00, plus interest at the legal rate, attorneys' fees and costs.

Case 2:10-bk-02268-ER Doc 23-15 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 15 Page 6 of 20

## SECOND CAUSE OF ACTION

(Money Had and Received – Against All Defendants, inclusive of Does 1 through 25)

22. Hansel incorporates herein by this reference paragraphs 1 through 21, inclusive, of this Complaint as if fully set forth again here.

23. From or around January 2006, Defendants became indebted to Hansel for money had and received from Hansel in the sum of $655,000.00, subject to proof at trial.

24. As of the filing of this Complaint, there is due, owing and unpaid from the Defendants to Hansel the sum of at least $655,000.00, subject to proof at trial, plus interest thereon at the legal rate.

## THIRD CAUSE OF ACTION

(Breach of Personal Guaranty Agreement – Against Defendant Pressman)

25. Hansel incorporates herein by this reference paragraphs 1 through 24, inclusive, of this Complaint as if fully set forth again here.

26. On or about 2006, Pressman agreed to personally guarantee the payment and performance of all obligations under the January 2006 Note and the Subsequent Notes. The personal guaranty clause (the "Guaranty Clause") is contained on Exhibit "B," attached hereto.

27. But for Pressman's inclusion and execution of the Guaranty Clause, Hansel was unwilling to loan, and/or continue to loan, the amounts she provided under the January 2006 Note and the Subsequent Notes.

28. As a direct and proximate result of the facts and circumstances hereinabove alleged, Hansel is entitled to have and recover from Pressman, any and all amounts due pursuant to the January 2006 Note and the Subsequent Notes, including without limitation the principal amount of $655,000.00 plus interest thereon from June 1, 2009 until paid in full.

## FOURTH CAUSE OF ACTION

(For Alter Ego Liability against Defendants EPD, Pressman, and Does 1 through 15)

29. HANSEL incorporates herein by this reference paragraphs 1 through 28, inclusive, of this Complaint as if fully set forth again here.

30. There exists, and at all times herein mentioned there existed, a unity of interest and ownership between, by and among EPD, Pressman, and Does 1 through 15, such that any

Case 2:10-bk-02208-ER Doc 29-15 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 15 Page 7 of 20

individuality and separateness between these individuals and entities has ceased to exist. Pressman and Does 11 through 15 are the alter egos of EPD and Does 1 through 10. Pressman and Does 11 through 15, have used and continue to use corporate or other entity funds and assets belonging to EPD and Does 11 through 15 as if they were the same entities. Each of these defendants has failed to follow the legal formalities required to maintain entities distinct from each other, their shareholders, managers, employees, owners and partners.

31. Adherence to the fiction of the separate existence of EPD and Does 1 through 10 as entities distinct from each other and Pressman and Does 11 through 15 would permit an abuse of the corporate privileges and therefore promote injustice.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered in this action against Defendants as follows:

1. **ON THE FIRST CAUSE OF ACTION:**
   a. Against EPD, the total amount due pursuant to the January 2006 Note and the Subsequent Notes as of the date of Judgment, including principal in the sum of $655,000.00 plus interest at the legal rate from June 1, 2009 until paid in full;
2. **ON THE SECOND CAUSE OF ACTION:**
   a. Against EPD, for compensatory damages in at least $ 655,000.00, subject to proof at trial;
   b. Against EPD, for interest at the legal rate on these damages;
3. **ON THE THIRD CAUSE OF ACTION:**
   a. Against EPD, for compensatory damages in at least $ 655,000.00, subject to proof at trial;
   b. Against EPD, for interest at the legal rate on these damages;
4. **ON THE FOURTH CAUSE OF ACTION:**
   a. For an order so that the EPD is no longer treated as a separate and distinct entity from the other named defendants, their officers, directors and/or shareholders;
5. **ON ALL CAUSES OF ACTION:**
   a. For costs of suit incurred;

Case 2:10-bk-02208-ER Doc 23-15 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 15 Page 8 of 20

b. For attorney's fees in an amount that the court adjudges reasonable; and

c. For such other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Cal. Code of Civil Procedure and the Federal Rules of Civil Procedure should this case ever be removed to federal court, Plaintiff hereby demands trial by jury of all issues which may be tried to a jury.

Respectfully submitted,

DONIGER/BURROUGHS APC

Dated: December 18, 2009 By: ______________________

Stephen M. Doniger, Esq.
Attorneys for Plaintiff

# EXHIBIT A

# EPD INVESTMENT COMPANY, LLC

**$350,000.00**

**Santa Monica, California**
**Via Check No. 3237**
**Deposit Date: 01/17/06**

**For value received, EPD Investment Company, LLC promises to pay to the order of Michelle Hansel at Santa Monica, California, Three Hundred Fifty Thousand Dollars and No/100 ($350,000.00) in lawful money of the United States of America, bearing an interest rate of twelve (12.0%) percent per annum.**

**Additional deposits submitted by the bearer will be acknowledged in writing and such documents will serve as an addendum to the note, adjusting the amount herewith. Withdrawals requested by the bearer affecting the principal amount of the note will be acknowledged by an account schedule and will decrease accordingly, without revision and re-issue of the original note.**

**Should collection commence to enforce payment of this Note, EPD Investment Company, LLC promises to pay such additional sum, as the Court may adjudge reasonable as attorneys' fees.**

**EPD INVESTMENT COMPANY, LLC**

**NO. 060117-MH**
**Michelle Hansel**

**DUE: **On Demand****

# EXHIBIT B

**EPD INVESTMENT COMPANY, LLC**
**Deposit Acknowledgement**

**$150,000.00**

**Via Check No.** 3070+3071
**Deposit Date: 05/03/2006**

**A principal deposit in the amount of One Hundred Fifty Thousand Dollars and No/100 ($150,000.00) in lawful money of the United States of America was credited to your EPD Investment Company, LLC account number listed below. Interest on this deposit will begin accumulating on the deposit date noted above at the current interest rate for this account.**

**This signed deposit acknowledgement serves as an addendum to your original note from EPD Investment Company, LLC. Please keep this with your records for future reference.**

**EPD INVESTMENT COMPANY, LLC**

**Acct No. 060117-MH**
**Michelle Hansel**

**Note Addendum**

***Personally Guaranteed by Jerrold S. Pressman***

# EXHIBIT C

**EPD INVESTMENT COMPANY, LLC**
**Deposit Acknowledgement**

**$50,000.00**

**Via Check No. 3311**
**Deposit Date: 09/28/06**

**A principal deposit in the amount of Fifty Thousand Dollars and No/100 ($50,000.00) in lawful money of the United States of America was credited to your EPD Investment Company, LLC account number listed below. Interest on this deposit will begin accumulating on the deposit date noted above at the current interest rate for this account.**

**This signed deposit acknowledgement serves as an addendum to your original note from EPD Investment Company, LLC. Please keep this with your records for future reference.**

**EPD INVESTMENT COMPANY, LLC**

**Acct No. 060117-MH**
**Michelle M. Hansel**

**Note Addendum**

# EXHIBIT D

Case 2:10-bk-02268-ER Doc 29-15 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 15 Page 16 of 20

# EPD INVESTMENT COMPANY, LLC
## Temporary Note

**$105,000.00**

**Santa Monica, California**
**Via Check No. 3310**
**Deposit Date: 09/28/06**

For value received, EPD Investment Company, LLC promises to pay to the order of Michelle M. Hansel, at Santa Monica, California, One Hundred Five Thousand Dollars and No/100 ($105,000.00) in lawful money of the United States of America, bearing an interest rate of twelve (12.0%) percent per annum.

Additional deposits submitted by the bearer will be acknowledged in writing and such documents will serve as an addendum to the note, adjusting the amount herewith. Withdrawals requested by the bearer affecting the principal amount of the note will be acknowledged by an account schedule and will decrease accordingly, without revision and re-issue of the original note.

Should collection commence to enforce payment of this Note, EPD Investment Company, LLC promises to pay such additional sum, as the Court may adjudge reasonable as attorneys' fees.

EPD INVESTMENT COMPANY, LLC

NO. 060928-MH
Michelle M. Hansel

DUE: **On Demand**

Case 2:10-bk-62268-ER Doc 23-15 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc
Exhibit 15 Page 17 of 20

# EXHIBIT E

DONIGER LAW FIRM
A PROFESSIONAL CORPORATION
[illegible], Suite 355 • Culver City, California 90230
[illegible] F: [illegible]17-3533 www.donigerlawfirm.com

STEPHEN M. DONIGER*
SCOTT A. BURROUGHS
THOMAS GIORDANO-LASCARI
ANTHONY G. PATCHETT (of counsel)
*Also a Member of the Law Society of England

November 30, 2009

*Via United States Certified Mail*

Jerrold S. Pressman
EPD Investment Company, LLC
520 Broadway, Suite 660
Santa Monica, CA 90401

Re: **DEMAND BY MICHELLE HANSEL FOR RETURN OF FUNDS**

Dear Mr. Pressman:

This firm has been retained by Michelle Hansel to recover funds in the amount of $655,000 plus interest due on the following funds which she entrusted to EPD Investment Company, LLC ("EDP"):

1) $350,000 – Paid via checks 3070 & 3237, deposited 1/17/06 into Acct. 060117-MH
2) $150,000 – Paid via checks 3070 & 3071, deposited 5/03/06 into Acct. 060117-MH
3) $105,000 – Paid via Check No. 3310, deposited 9/28/06 into Acct. 060928-MH
4) $50,000 – Paid via Check No. 3311, deposited 9/28/06 into Acct. 060117-MH

Although I have reviewed certain correspondence between EPD and Ms. Hansel verifying her claim that she is to receive regular interest payments for as long as said funds remain deposited with EPD, I am informed that EPD has stopped making those interest payments. I am further informed that Ms. Hansel has attempted on numerous occasions to contact you and that you have not been either taking or returning her calls.

I have also reviewed the Deposit Acknowledgements EPD provided to Ms. Hansel, and the Note provided to her. While those documents are inconsistent and, quite frankly, appallingly unprofessional, they contain interesting provisions ranging from your personal guarantee to a statement that the funds are due "On Demand," to an attorney's fee provision "[s]hould litigation commence to enforce payment..."

Although I understand that Ms. Hansel has previously requested the return of her proceeds plus all interest due on those proceeds, please consider this as formal demand for the same. Please send to our office within the next five (5) days a statement of each and every account maintained by EPD or any affiliated company which are held in the name of or in trust for Ms. Hansel, and advise of when and how you propose to settle her account.

Given her past relationship with you, Ms. Hansel has expressed a strong preference in an amicable resolution, but has also authorized my firm to seek immediate legal redress if we do not receive a prompt and cooperative response from you. Accordingly, I request that you give this

letter your immediate attention. This letter in no way waives, limits, or rescinds any of our clients rights, remedies or claims, all of which are reserved to the fullest extent of law and equity.

Very truly yours,

By: ________________________
Stephen M. Doniger
DONIGER LAW FIRM APC

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JERROLD S. PRESSMAN
EPD INVESTMENT COMPANY, LLC
[redacted]

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☑ Agent ☐ Addressee

B. Received by ( *Printed Name)*

C. Date of Delivery
12-7-9

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)* [redacted] 4763 2872

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

# EXHIBIT 16

Case 2:10-bk-62208-ER Doc 23-16 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 16 Page 2 of 3

COPY

John C. Kirkland, State Bar No. 149453
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa St., Suite 3900
Los Angeles, California 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Defendants
EPD INVESTMENT CO., LLC and JERROLD PRESSMAN

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court
MAY 11 2010
John A. Clarke, Executive Officer/Clerk
By A. WILLIAMS, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| MICHELLE HANSEL,<br><br>Plaintiff,<br><br>v.<br><br>EPD INVESTMENT CO., LLC, a California limited liability company; JERROLD PRESSMAN, an individual; and DOES 1-15,<br><br>Defendants. | Case No. SC 106151<br><br>The Hon. Joseph S. Biderman<br>Dept. WEK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT**<br><br>Date: May 18, 2010<br>Time: 8:30 am<br>Dept.: WEK |

I. INTRODUCTION

The plaintiff in this case, Michelle Hansel ("Plaintiff"), asked Defendant Investment Company, LLC ("EPD"), a limited liability company to make investments for her and, afterwards, even took the appropriate "investment" tax deductions (*see infra*). In this lawsuit, she now seeks to prematurely recoup her investment -- for which there is no proof of any actual loss (as opposed to a temporary delay in payments) -- by claiming that she "loaned" EPD, together with Defendant Jerrold S. Pressman ("Pressman") (collectively "Defendants"), these funds rather than simply using EPD as a vehicle to make investments on her behalf. The preponderance of the evidence does not support her recast "collection" claims, nor does it in any way establish any individual liability by Mr. Pressman, who only signed some of the underlying documents as a member and

representative of EPD, a limited liability company.

Now, by this application, Plaintiff seeks to use the Court's attachment process in an improper attempt to extort a settlement out of Defendants in her otherwise baseless suit. As this Court agreed in the previous hearing on Plaintiff's ex parte application for a writ of attachment, and as set forth in detail below, attachment is inappropriate in this case because, *inter alia*, Plaintiff is extremely unlikely to prevail on the merits of her claims against either EPD or Pressman.[1] Thus, her after the fact "collection" efforts should not be enforced by this Court, especially at such a premature stage without the evidence necessary to support her claims.

## II. PLAINTIFF CANNOT FULFILL THE REQUIREMENTS FOR PREJUDGMENT ATTACHMENT AGAINST DEFENDANTS

### A. Plaintiff's Claims Against Mr. Pressman Are Not The Type Upon Which Attachment May Be Issued

As Plaintiff states in her application, because Mr. Pressman is a natural person, the attachment claim must arise out of conduct related to a "trade, business, or profession," see Cal. Civ. Pro. Code §483.10, which Plaintiff herself defines as "almost any activity engaged in *for profit* with any frequency or regularity (emphasis added)." *See also Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson*, 197 Cal. App. 3d 1, 4 (1987). Plaintiff has made no showing that Mr. Pressman engaged in any activity in connection with Plaintiff "for profit." Since Plaintiff has the burden of proving this by a preponderance of the evidence, and because this is an absolute requirement for attachment against a natural person, her claim fails because of complete lack of any relevant evidence on this required element.

As Plaintiff states, the principal purpose behind exempting the property of natural persons

[1] Defendants have ordered the transcript from the hearing on the ex parte application and will provide a copy to the Court at the Court's request.

unless related to a trade or profession is to limit writs to commercial transactions. (*See id.*) There is no evidence that either EPD or Mr. Pressman conducted any business for profit – and certainly not enough to attach Mr. Pressman's private residence or personal property. In fact, Mr. Pressman is an investor in EPD and minority member, who has no other personal or commercial connections with or obligations to Plaintiff except as a member of EPD, the limited liability company. Even if Plaintiff's claims against Defendants had merit – which they do not – Mr. Pressman cannot be subject to attachment in connection with those claims.

B. Even If Plaintiff's Claims Against Mr. Pressman Were Deemed Commercial Claims Subject To Attachment, Plaintiff Will Not Likely Prevail On Those Claims

**a. Plaintiff Has Provided No Evidence Supporting Alter Ego Liability**

In her case in chief, Plaintiff seeks to hold Mr. Pressman individually liable on Notes he signed only as a member of EPD, a California limited liability company. This is directly contrary to California law regarding limited liability companies, which provides that no individual may held liable solely by virtue of his or her membership in the company. *See* Cal. Corp. Code section 17101 ("no member of a limited liability company shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the limited liability company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a member of the limited liability company").

Plaintiff contends she can attach Mr. Pressman's personal property and home through alter ego liability, although she provides absolutely no evidence to support such a claim. Alter ego liability is extremely difficult to establish in connection with a limited liability company in California, *see e.g.*, Cal. Corp. Code section 17101 ("...the failure to hold meetings of members or managers or the failure to observe formalities pertaining to the calling or conduct of meetings shall not be considered a factor tending to establish that a member or the members have alter ego or personal liability for any debt,

obligation, or liability of the limited liability company…"). In fact, the California Corporations Code only allows a member to be held liable on a personal guarantee for the company if "the agreement to be so obligated is set forth in the articles of organization or in a written operating agreement that specifically references this subdivision." (*Id.*) Plaintiff has provided absolutely no evidence of any alter ego liability between Mr. Pressman and EPD. Thus, her claim for attachment against Mr. Pressman fails for complete lack of evidence on this required element.

**b. Plaintiff Is Not Likely To Prevail On Her Claims Against Mr. Pressman Because None Of The California Civil Code Requirements for Guarantees Have Been Met**

Plaintiff also alleges Mr. Pressman should be held liable individually because he purportedly personally guaranteed repayment of the alleged "loans" from Plaintiff. But this argument is also likely to fail. As explained below, no prejudgment attachment can issue against Mr. Pressman individually because the purported personal guarantee relied upon by Plaintiff as the sole basis for this theory contains none of the *Gradsky* waivers, meets none of the statutory requirements, including his signature in his individual capacity, and is not supported by the consideration necessary to create an enforceable continuing guarantee. *See* Cal. Civ. Code § 2787, et seq.; *Union Bank v. Gradsky,* 265 Cal. App. 2d 40, 71 Cal. Rptr. 64 (1968).

**1. <u>The Purported Guarantee Is Not Signed.</u>**

California Civil Code section 2793 provides that "a suretyship obligation must be in writing, and signed by the surety." Plaintiff has failed to produce any written guarantee signed by Mr. Pressman as an individual. Plaintiff's guarantee claims are based on the temporary promissory notes mentioned above issued by EPD, in which EPD allegedly promises to pay $350,000 and $105,000, respectively, to Plaintiff. (*See* Complaint, Exhs. A and D.) Plaintiff also attaches two "Deposit Acknowledgements" from EPD stating that they are addenda to the original notes from EPD -- **not** from Mr. Pressman. (*See* Complaint, Exhs. B and C.) Each of these four documents is signed by Mr. Pressman only in his capacity as a representative and minority member of EPD -- **not** in his individual

Case 2:12-ap-02424-VZ Doc 263-7 Filed 09/05/17 Entered 09/05/17 18:59:26 Desc Exhibit 1 Page 244 of 321

or personal capacity. (*Id.*)

Nonetheless, Plaintiff bases her claims against Mr. Pressman primarily on one of the deposit acknowledgements, which contains a statement at the bottom, "Personally Guaranteed by Jerrold S. Pressman." (*See* Complaint, Exh. B.) However, there is no signature of any kind below this statement, and no signature by Pressman anywhere on that document (or on any other document) in any capacity other than as a member of EPD. (*See* Complaint, Exh. B.) Plaintiff cannot rely on this single statement of guarantee as the sole basis for liability of Mr. Pressman individually. (*See* Complaint, 10.) Such an unsigned guarantee is unenforceable as a matter of law under Cal. Civ. Code § 2793 and the California Corporations Code.

**2. Plaintiff Must Exhaust Her Remedies Against EPD Before Seeking Any Relief From Mr. Pressman**

Even assuming, *arguendo,* that the guarantee were otherwise enforceable, Civil Code section 2845 requires that Plaintiff must first pursue and exhaust her remedies against EPD, before pursuing any claim against Mr. Pressman individually as guarantor. As the court clearly stated in *Gradsky,* "Civ. Code § ... 2845 . . . provide[s] that ... a surety has the right to require the creditor to exhaust his remedies against the debtor and any security **before** he pursues the surety or guarantor." *Gradsky,* 71 Cal. Rptr. at 67 (emphasis added). In the absence of a valid *Gradsky* waiver, Plaintiff cannot pursue her remedies concurrently against both EPD and Mr. Pressman—and certainly cannot seek prejudgment attachment against Mr. Pressman before first exhausting her remedies against the principal obligor. Even if she could obtain and seek to enforce a judgment against EPD (which she cannot), assuming the guarantee were otherwise enforceable (which it is not), she would only be entitled to seek relief from Mr. Pressman to the extent she could not collect from EPD the entire amount purportedly due.

**3. Plaintiff's Actions Have Exonerated Any Claims Against Mr. Pressman**

Under California Civil Code section 2819, "any act of the creditor" by which the principal obligation may be "in any way impaired or suspended" fully exonerates the guarantor. As noted on the face of the notes, the notes were temporary until a more permanent investment by Plaintiff could be entered into. The temporary loans were in fact converted to such investments, and one of

Plaintiff's own tax returns reveals her characterization of the amounts paid as "investments." Specifically, the $350,000 deposit (*see* Complaint, Exh. A) was reflected on line 36 of Plaintiff's 2005 federal income tax return as a $350,000 tax deduction.[2] Obviously a loan is not tax deductible, and the fact that Plaintiff took a deduction on a return filed in the year the note was issued is evidence that even Plaintiff considered these payments investments. As such, they potentially impair the primary obligation of EPD (a limited liability company), provide proof of Plaintiff's own characterization of the funds, and fully exonerate Mr. Pressman as an individual guarantor.

**4. <u>There Can Be No Continuing Guarantee Without Additional Consideration</u>**

Under California Civil Code section 2792, "there must be a consideration distinct from that of the original obligation" for a continuing guarantee to be enforceable. No such consideration is alleged as to Mr. Pressman individually. Accordingly, there can be no continuing guarantee as a matter of law.

**c. Plaintiff Is Unlikely To Prevail On The Merits Of Her Claims Against Defendants Because The Alleged Notes Are Unenforceable As Against Public Policy**

Even if the alleged notes on which Plaintiff sues are deemed to evidence actual "loans" made by Plaintiff to Defendants, these loans would violate the California Constitution and the California Finance Lenders Law and therefore should not be enforced by this Court against any of the Defendants.

First, the California Constitution provides that interest on any loan in California – whether consumer or commercial – may not exceed 10% percent per annum. Cal. Const. Art. 15, section 1. In

[2] In the interests of protecting Plaintiff's privacy, a copy of the tax return is not filed herewith. In the unlikely event that Plaintiff denies the contents of her own tax return, a copy of the as-filed return will be presented to the Court at the hearing.

Case 2:10-bk-02208-ER Doc 23-16 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 16-3 Page 8 of 9

this case, Plaintiff's alleged Notes require interest payments of 12%. They are therefore usurious and unenforceable.

In addition, to ensure the enforcement of the protections provided by Article 15 of the California Constitution, the Legislature enacted the California Finance Lenders Law. This law requires that, subject to some limitations, anyone who makes more than one loan over $10,000.00 in any 12 month period be a properly licensed broker or finance lender as provided by law. Plaintiff has provided no evidence that she has such a license or is otherwise exempt from this law, yet it is Plaintiff's burden to prove any exemption from these laws by a preponderance of the evidence. Because she cannot, the Court should not enforce usurious loans made by an unlicensed lender.

III. CONCLUSION

Plaintiff's claims against Defendants do not belong in Court in the first place, and there is certainly no basis to attach any of Defendants' property, especially Mr. Pressman's personal residence. Neither EPD nor Mr. Pressman has ever borrowed any money from Plaintiff. Plaintiff asked EPD to invest money on her behalf, and, as a minority member in EPD, Mr. Pressman merely represented the company in its dealings with Plaintiff on behalf of the company. He has never personally accepted any money from Plaintiff in his individual capacity, and has never received any profits or proceeds from her investment. Moreover, there is no evidence that there has been any loss of Plaintiff's money at all. Rather, there has only been a delay in income payments. For these reasons, Plaintiff is unlikely to prevail on the merits of her claims against EPD or Mr. Pressman, and there is absolutely no basis for attachment of any of Mr. Pressman's personal property, including his personal residence.

DATED: May 11, 2010 LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: ______________________
John C. Kirkland
Attorneys for Defendants EPD INVESTMENT CO., LLC and JERROLD PRESSMAN

**PROOF OF SERVICE**

Hansel v. EPD Investment Co., LLC, et al, Case No. SC106151

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 601 S. Figueroa, Suite 3900, Los Angeles, California 90017.

On May 11, 2010, I served true copies of the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT** on the interested parties in this action as follows:

Stephen M. Doniger, Esq.
DONIGER / BURROUGHS, APC
300 Corporate Pointe, Suite 355
Culver City, CA 90230
Facsimile: 310-417-3538
*Attorney for Michelle Hansel*

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & Scripps LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 11, 2010, at Los Angeles, California.

Lisa Underkoffler

# EXHIBIT 17

COPY

PLD-050

ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar number, and address*):
John C. Kirkland; SBN 149453
Luce, Forward, Hamilton & Scripps, LLP
601 S. Figueroa Street, Suite 3900
Los Angeles, CA 90017
TELEPHONE NO.: 213.892.4907 FAX NO. (*Optional*): 213.452.8035
E-MAIL ADDRESS (*Optional*): jkirkland@luce.com
ATTORNEY FOR (*Name*): Defendant EPD Investment Co., LLC

FOR COURT USE ONLY

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court
MAR 24 2010
John A. Clarke, Executive Officer/Clerk
By Jennifer Denham, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS: 1725 Main Street
CITY AND ZIP CODE: Santa Monica 90401
BRANCH NAME: Santa Monica Courthouse

PLAINTIFF/PETITIONER: Michelle Hansel
DEFENDANT/RESPONDENT: EPD Investment Co., LLP, et al

# GENERAL DENIAL

CASE NUMBER: SC106151

If you want to file a general denial, you MUST use this form if the amount asked for in the complaint or the value of the property involved is $1,000 or less.

You MAY use this form for a general denial if:

1. The complaint is not verified; ***or***
2. The complaint is verified and the case is a limited civil case (the amount in controversy is $25,000 or less), BUT NOT if the complaint involves a claim for more than $1,000 that has been assigned to a third party for collection.

(See Code of Civil Procedure sections 85–86, 90–100, 431.30, and 431.40.)

1. DEFENDANT (*name*): EPD Investment Co., LLC
generally denies each and every allegation of plaintiff's complaint.

2. ☒ DEFENDANT states the following FACTS as separate affirmative defenses to plaintiff's complaint (*attach additional pages if necessary*):
   1. The stated interest rate is usurious.
   2. The funds were an investment, rather than a loan that required repayment.

Date: March 24, 2010

John C. Kirkland
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF DEFENDANT OR ATTORNEY)

If you have a claim for damages or other relief against the plaintiff, the law may require you to state your claim in a special pleading called a cross-complaint or you may lose your right to bring the claim. (See Code of Civil Procedure sections 426.10–426.40.)

The original of this *General Denial* must be filed with the clerk of this court with proof that a copy was served on each plaintiff's attorney and on each plaintiff not represented by an attorney. There are two main ways to serve this *General Denial:* by personal delivery or by mail. It may be served by anyone at least 18 years of age EXCEPT you or any other party to this legal action. Be sure that whoever serves the *General Denial* fills out and signs a proof of service. You may use the applicable Judicial Council form (such as form POS-020, POS-030, or POS-040) for the proof of service.


American LegalNet, Inc.
www.FormsWorkflow.com

**PROOF OF SERVICE**

Hansel v. EPD Investment Co., LLC, et al, Case No. SC106151

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 601 S. Figueroa, Suite 3900, Los Angeles, California 90017.

On March 24, 2010, I served true copies of the following document(s) described as **GENERAL DENIAL** on the interested parties in this action as follows:

Stephen M. Doniger, Esq.
DONIGER / BURROUGHS, APC
300 Corporate Pointe, Suite 355
Culver City, CA 90230
Facsimile: 310-417-3538
*Attorney for Michelle Hansel*

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & Scripps LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY FAX TRANSMISSION:** I faxed a copy of the document(s) to the persons at the fax numbers listed in the Service List. The telephone number of the sending facsimile machine was 213.452.8035. No error was reported by the fax machine that I used.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 24, 2010, at Los Angeles, California.

Lisa Underkoffler

COPY

PLD-050

ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar number, and address*):
John C. Kirkland; SBN 149453
Luce, Forward, Hamilton & Scripps, LLP
601 S. Figueroa Street, Suite 3900
Los Angeles, CA 90017
TELEPHONE NO.: 213.892.4907 FAX NO. (*Optional*): 213.452.8035
E-MAIL ADDRESS (*Optional*): jkirkland@luce.com
ATTORNEY FOR (*Name*): Defendant Jerrold Pressman

FOR COURT USE ONLY

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

MAR 24 2010

John A. Clarke, Executive Officer/Clerk

By Jennifer Denham, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS: 1725 Main Street
CITY AND ZIP CODE: Santa Monica 90401
BRANCH NAME: Santa Monica Courthouse

PLAINTIFF/PETITIONER: Michelle Hansel
DEFENDANT/RESPONDENT: EPD Investment Co., LLP, et al

# GENERAL DENIAL

CASE NUMBER:
SC106151

If you want to file a general denial, you MUST use this form if the amount asked for in the complaint or the value of the property involved is $1,000 or less.

You MAY use this form for a general denial if:

1. The complaint is not verified; ***or***
2. The complaint is verified and the case is a limited civil case (the amount in controversy is $25,000 or less), BUT NOT if the complaint involves a claim for more than $1,000 that has been assigned to a third party for collection.

(See Code of Civil Procedure sections 85–86, 90–100, 431.30, and 431.40.)

1. DEFENDANT (*name*): Jerrold Pressman
generally denies each and every allegation of plaintiff's complaint.

2. ☒ DEFENDANT states the following FACTS as separate affirmative defenses to plaintiff's complaint (*attach additional pages if necessary*):
   1. The stated interest rate is usurious.
   2. The funds were an investment, rather than a loan that required repayment.
   3. The purported guarantees are unsigned.
   4. Plaintiff failed to first exhaust her remedies against the primary obligor, and has waived her claim.
   5. Plaintiff's actions have exonerated any guarantor.
   6. There was no separate consideration for the purported guarantee.
   7. All available surety defenses under Civil Code section 2787, et seq.

Date: March 24, 2010

John C. Kirkland
(TYPE OR PRINT NAME)

(SIGNATURE OF DEFENDANT OR ATTORNEY)

If you have a claim for damages or other relief against the plaintiff, the law may require you to state your claim in a special pleading called a cross-complaint or you may lose your right to bring the claim. (See Code of Civil Procedure sections 426.10–426.40.)

The original of this *General Denial* must be filed with the clerk of this court with proof that a copy was served on each plaintiff's attorney and on each plaintiff not represented by an attorney. There are two main ways to serve this *General Denial*: by personal delivery or by mail. It may be served by anyone at least 18 years of age EXCEPT you or any other party to this legal action. Be sure that whoever serves the *General Denial* fills out and signs a proof of service. You may use the applicable Judicial Council form (such as form POS-020, POS-030, or POS-040) for the proof of service.



Form Adopted for Mandatory Use
Judicial Council of California
PLD-050 [Rev. January 1, 2009]

**GENERAL DENIAL**

Code of Civil Procedure, §§ 431.30, 431.40
www.courtinfo.ca.gov



American LegalNet, Inc.
www.FormsWorkflow.com

Case 2:10-bk-62208-ER Doc 29-17 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 17 Page 5 of 5

# PROOF OF SERVICE

Hansel v. EPD Investment Co., LLC, et al, Case No. SC106151

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 601 S. Figueroa, Suite 3900, Los Angeles, California 90017.

On March 24, 2010, I served true copies of the following document(s) described as **GENERAL DENIAL** on the interested parties in this action as follows:

Stephen M. Doniger, Esq.
DONIGER / BURROUGHS, APC
300 Corporate Pointe, Suite 355
Culver City, CA 90230
Facsimile: 310-417-3538
*Attorney for Michelle Hansel*

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & Scripps LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY FAX TRANSMISSION:** I faxed a copy of the document(s) to the persons at the fax numbers listed in the Service List. The telephone number of the sending facsimile machine was 213.452.8035. No error was reported by the fax machine that I used.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 24, 2010, at Los Angeles, California.

Lisa Underkoffler

# EXHIBIT 18

Case 2:10-bk-62208-ER Doc 23-18 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 18 Page 2 of 12

John C. Kirkland, State Bar No. 149453
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa St., Suite 3900
Los Angeles, California 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Defendants
EPD INVESTMENT CO., LLC and JERROLD PRESSMAN

FILED
LOS ANGELES SUPERIOR COURT
JUN 25 2010
JOHN A. CLARKE, CLERK
BY KRISTEL SANDOVAL, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

MICHELLE HANSEL,

Plaintiff,

v.

EPD INVESTMENT CO., LLC, a California limited liability company; JERROLD PRESSMAN, an individual; and DOES 1-15,

Defendants.

Case No. SC 106151

The Hon. Hon Joseph S. Biderman
Dept. WEK

**DECLARATION OF RUBEN MORENO IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT**

Date: June 28, 2010
Time: 8:30 am
Dept.: WEK

I, Ruben Moreno, declare as follows:

1. I am the Controller for EPD Investment Co., LLC. I have personal knowledge of the facts as set forth below.

2. EPD Investment Co. is a California limited liability company, with its principal executive offices in Santa Monica, California. I have served as the company's Controller since its inception in 2003. As Controller, I have been custodian of books, records, and files related to EPD Investment Co.'s transactions on behalf of Michelle Hansel, who has filed this lawsuit against EPD Investment Co.

3. The declaration of Ms. Hansel dated March 22, 2010, and the additional declaration from her dated June 3, 2010, are more than misleading. They are simply wrong. Her claims are directly contrary to the ongoing conversations I have personally had with her over the years. I can

only assume that these declarations must have been written by her attorney and signed without reading them closely, because they do not accurately represent the truth of what really occurred.

4. Paragraph 1 of Ms. Hansel's June 3 declaration does belie the truth of what actually happened, which is that she "*invested*" through the "*investment* company EPD *Investment* Co.", because she believed it "would be a good long-term *investment*." The Financial Dictionary defines in investment as "an asset or item that is *purchased* with the *hope* that it will generate income or appreciate in the future." The distinguishing feature of an investment, as opposed to a loan, is that an investment is characterized by a "risk of loss." That is, as alluded to in the first paragraph of Ms. Hansel's second declaration, exactly what happened here.

5. In around December of 2005, Ms. Hansel temporarily gave $350,000.00 to EPD Investment Co. and requested that the company facilitate the transfer of her funds to third parties for long-term investment in leases. Because of year-end tax issues, Ms. Hansel wanted to transfer the funds immediately for her own financial planning reasons, so I created a "*temporary* promissory note" on behalf of EPD Investment Co., by adding express language to a standard form promissory note that the note was only temporary for these purposes. This was a unique situation, and I had to generate a special promissory note that was intended only to be a temporary document to acknowledge EPD Investment Co.'s receipt of funds for transfer to third parties for an investment in an equipment lease at Ms. Hansel's request.

6. This note was never intended to represent a "loan" to EPD Investment Co. that would have to be paid back to Ms. Hansel even after the funds were already transferred to the equipment lessors, and she knows it because I personally informed her of this in our conversations. That would mean that EPD Investment Co. would be paying back the same money twice, once to the lessors for the investment, and then again to Ms. Hansel. In other words, the temporary note has already been satisfied in full. There is no more money to pay her back, except, ultimately, through the long-term investment she chose to make.

7. I sent Ms. Hansel a letter in which I reiterated the temporary nature of the promissory note until such time as the transfer to third parties could be accomplished. A copy of this letter is attached to my declaration as Exhibit "A." In addition, I specifically informed Ms. Hansel on several

Case 2:10-bk-62208-ER Doc 29-3 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 18 Page 4 of 12

occasions that this was a temporary note and was not intended to create any long-term obligation for EPD Investment Co. with respect to the deposited funds since EPD Investment Co. would not have control over the funds once they were invested with third parties.

8. Ms. Hansel then claimed an investment deduction for the $350,000.00 on her Form 1040 tax return for 2005. A copy of her tax return (with personal information whited out) is attached to my declaration as Exhibit "B." It show a $350,000.00 claimed deduction from her adjusted gross income on line 36, along with the notation PPR.

9. IRS Publication 525, Business and Investment Income, Rents from Personal Property, states: "If you rent personal property for profit, include your rental expenses in the total amount you enter on Form 1040, line 36. Also, enter the amount and 'PPR' on the dotted line next to line 36. If you do not rent personal property for profit, your deductions are limited and you cannot report a loss to offset other income." **This is exactly what Ms. Hansel did, proving that the $350,000.00 was invested by her in an equipment** lease.

10. As explained, for example, in the official IRS instructions to Form 6198, the Tax Code specifically requires that the entire amount must be "at-risk" for any deduction to be taken. If the $350,000.00 were still a loan subject to repayment obligation by EPD Investment Co., then Ms. Hansel could not legally have taken any deduction. Since she did, that again proves that it was an investment at-risk of loss, and not a loan that still had to be repaid.

11. It must also be noted that EPD Investment Co. acted merely a conduit, EPD Investment Co. made no profit on the transaction and did not benefit financially in any way from her temporary deposit of the funds. It was really just a personal favor because Ms. Hansel is a family friend of EPD Investment Co.'s chairman. Now, Ms. Hansel basically wants to have EPD Investment Co. guarantee her entire investment. It is a true case of "no good deed goes unpunished."

12. Ms. Hansel was well aware that the promissory note was never intended to represent a permanent repayment obligation by EPD Investment Co., which is exactly why it says "temporary" on it. I also personally informed Ms. Hansel on numerous occasions that the note was not intended to represent a permanent "loan" to EPD Investment Co. by Ms. Hansel for any purpose, or create any

Case 2:12-ap-02424-VZ Doc 263-7 Filed 09/05/17 Entered 09/05/17 18:59:26 Desc
Exhibit Page 257 of 321

long-term obligation by EPD Investment Co. to make payments to her on an ongoing basis, no matter what happened with her investment.

13. Between May 2006 and September 2006, I generated three more promissory notes acknowledging receipt of funds from Ms. Hansel until such time as they were transferred to third parties for long-term investment. I handed some of those notes to her personally. Like the initial promissory note, these notes were temporary documents—and were clearly labeled as such—designed as place holders and temporary protection for Ms. Hansel's funds only until the third parties received and had control of the funds, that is, until the investments had been made as she requested.

14. Like the initial promissory note, these notes were intended to document only a temporary arrangement with EPD Investment Co. They were never intended to create any obligation for EPD Investment Co. to "pay back" the amounts she deposited after they had been given to third parties for long-term investment on her behalf.

15. Again, Ms. Hansel's declaration stating that these notes were intended to be "addenda" to some kind of loan to EPD Investment Co. is completely false. She knew that these were intended to document her temporary deposit of funds with EPD Investment Co. until such time as they could be transferred to third parties for investments in leases.

16. Moreover, Hansel specifically requested that EPD Investment Co. transfer her funds to third party equipment leases that she chose because they would provide her monthly payments over a long period of time, which she said she believed would be a good long-term investment.

17. For the initial three years of the investments, EPD Investment Co. received monthly payments from the lessors and sent them to Ms. Hansel at her request. Ms. Hansel's claim that EPD Investment Co. was generating monthly loan payments to her is simply false. She completely understood that EPD Investment Co. was just acting as a facilitator, receiving these payments from the equipment lessors and sending them on to Ms. Hansel. EPD Investment Co. has forwarded approximately $244,532.00 in payments from the lessors to Ms. Hansel.

18. Then, in 2009, due to the economy, most of the lessors stopped making monthly payments to Ms. Hansel. I spoke with Ms. Hansel several times by phone and in person and told her that she would not be receiving any payments until the lessors restarted their payments on the leases.



Jan 19 11 01:52p GARY LUGO 3105762369 p.13

Case 2:10-ap-02268-ER Doc 23-18 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 18 Page 6 of 12

EPD Investment Co. had no involvement with or control over the cessation of payments by the third-parties. It was merely the bearer of bad news.

19. Ms. Hansel's claim that EPD Investment Co. stopped making payments to her of funds it generated is untrue. She knew that the monthly payments were coming from the third party leases. She also knew, because I told her, that it was these third-party payments that had stopped, not any payments generated by EPD Investment Co. The equipment lessors were in default – EPD was not.

20. I was present when Ms. Hansel asked Jerrold Pressman if EPD Investment Co. could hold her funds until they could be put into third party investments, to help her out with her tax problems. I specifically remember Ms. Hansel asking Mr. Pressman to allow that her funds could be put in EPD Investment Co. and facilitate, as a conduit only, their transfer to the equipment lessors. Seeing the "temporary" terminology on the face of the notes, Ms. Hansel specifically asked what that language meant. I heard Mr. Pressman explain to Ms. Hansel that the promissory notes were temporary notes designed solely to acknowledge receipt of her funds by EPD Investment Co. until such time as the funds were transferred to the lessors.

21. One of the notes has language containing an alleged "personal guaranty" by Mr. Pressman. I inadvertently and mistakenly included that language in the note, and, consequently, Mr. Pressman never signed or otherwise endorsed the guaranty.

22. Nothing in any of the temporary notes was intended to create an obligation for EPD Investment Co. to be obligated to make payments over the long-term after they had been transferred to lease investmentss. Nor was there any language in any of the notes requiring Mr. Pressman to personally guaranty the performance and income payments on the third party leases throughout the life of the investments. EPD Investment Co. could not prevent the cessation of payments, and did not intend to guaranty payments for the investment Ms. Hansel chose to make.

23. In addition, I participated in a conversation where Mr. Pressman, on behalf of EPD Investment Co., specifically informed Ms. Hansel that these were long-term leases that had restrictions on the withdrawal of funds. Mr. Pressman explained the restrictions to Ms. Hansel, and she acknowledged her understanding and acceptance of these restrictions in exchange for the financial benefits she would and did receive via the investment.

24. It should be obvious that neither Mr. Pressman nor EPD Investment Co. would have any control over the return of her funds, which are still in the possession of third parties. To my knowledge, neither Mr. Pressman nor EPD Investment Co. received any kind of financial benefit in connection with the cessation of payments and refusal to return her investment in full on demand.

25. Ms. Hansel's declaration in which she states that Mr. Pressman specifically told her that he would "personally guarantee" all of the purported "loans" she allegedly made to EPD Investment Co. is untrue. Again, her entire declaration is false and misleading.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 22, 2010.

Ruben Moreno

EXHIBIT “A”

# EPD INVESTMENT COMPANY, LLC

January 11, 2006

Michelle Hansel
311 Ocean Avenue, #305
Santa Monica, CA 90402

Re: <u>EPD Investment Company, LLC Account No. 060117-MH</u>

Dear Michelle:

Enclosed is a temporary Note to cover your 12/25/05 deposit until we are able to formalize the paperwork on the lease you discussed with Jerry.

If you have any questions, please do not hesitate to call.

Sincerely yours,

EPD INVESTMENT COMPANY, LLC

Cherri Bell
Executive Assistant

/cb

Enclosure

Case 2:10-bk-62208-ER Doc 23-18 Filed 01/19/11 Entered 01/19/11 16:02:26 Desc Exhibit 18 Page 10 of 12

# EPD INVESTMENT COMPANY, LLC

October 5, 2006

Michelle Hansel
311 Ocean Avenue, #305
Santa Monica, CA 90402

Re: EPD Investment Company, LLC Account No. 060928-MH

Dear Michelle:

Enclosed is a temporary Note to cover your deposit until we are able to formalize the paperwork on the lease you discussed with Jerry.

If you have any questions, please do not hesitate to call.

Sincerely yours,

EPD INVESTMENT COMPANY, LLC

Cherri Bell
Executive Assistant

/cb

Enclosure

[illegible] • SANTA MONICA, CA [illegible] • TEL [illegible] • FAX (310) [illegible]

Jan 19 11 01:53p GARY LUGO 3105762369 p.17

EXHIBIT "B"

Department of the Treasury — Internal Revenue Service

# Form 1040 U.S. Individual Income Tax Return 2005

(99) IRS Use Only — Do not write or staple in this space.

For the year Jan 1 - Dec 31, 2005, or other tax year beginning , 2005, ending , 20 OMB No. 1545-0074

**Label** (See instructions.)

Your first name MI Last name: MICHELLE HANSEL [redacted]

If a joint return, spouse's first name MI Last name — Spouse's social security number

Use the IRS label. Otherwise, please print or type.

Home address (number and street). If you have a P.O. box, see instructions. Apartment no.: 310 OCEAN, UNIT 305

You must enter your social security number(s) above.

City, town or post office. If you have a foreign address, see instructions. State ZIP code: SANTA MONICA CA 90402

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund? (see instructions) ▶ [X] You [ ] Spouse

Checking a box below will not change your tax or refund.

**Filing Status**

Check only one box.

1 [ ] Single
2 [ ] Married filing jointly (even if only one had income)
3 [ ] Married filing separately. Enter spouse's SSN above & full name here. ▶
4 [X] Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here ▶
5 [ ] Qualifying widow(er) with dependent child (see instructions)

**Exemptions**

6a [X] Yourself. If someone can claim you as a dependent, do not check box 6a.
b [ ] Spouse

Boxes checked on 6a and 6b: 1
No. of children on 6c who: • lived with you: 1 • did not live with you due to divorce or separation (see instrs)
Dependents on 6c not entered above
Add numbers on lines above ▶ 2

c Dependents:

| (1) First name Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see instrs) |
|---|---|---|---|
| SARAH LABRIOLA | | Daughter | [X] |
| | | | [ ] |
| | | | [ ] |
| | | | [ ] |

If more than four dependents see instructions.

d Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| Line | Description | | Amount |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | |
| 8a | Taxable interest. Attach Schedule B if required | 8a | |
| b | Tax-exempt interest. Do not include on line 8a — 8b | | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | |
| b | Qualified divs (see instrs) — 9b | | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see instructions) | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here ▶ [ ] | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions 15a — b Taxable amount (see instrs) | 15b | |
| 16a | Pensions and annuities 16a — b Taxable amount (see instrs) | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits 20a — b Taxable amount (see instrs) | 20b | |
| 21 | Other income: OTHER INCOME FROM FORM 1099-MISC | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your total income ▶ | 22 | |

**Adjusted Gross Income**

| Line | Description | | Amount |
|---|---|---|---|
| 23 | Educator expenses (see instructions) | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction (see instructions) | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction (see instructions) | 32 | |
| 33 | Student loan interest deduction (see instructions) | 33 | |
| 34 | Tuition and fees deduction (see instructions) | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 - 31a and 32 - 35 .RPR. -350,000 | 36 | 350,000. |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income ▶ | 37 | |

BAA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions. FDIA0112 — Form 1040 (2005)

Jan 19 11 01:54p GARY LUGO 3105762369 p.18

# EXHIBIT 19

# Case Summary

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Case Number:** BC449287
JERROLD S PRESSMAN ET AL VS MICHELLE HANSEL

**Filing Date:** 11/10/2010
**Case Type:** Defamation (Slander/Libel) (General Jurisdiction)
**Status:** Pending

---

**Future Hearings**

**01/19/2011** at 08:30 am in department 49 at 111 North Hill Street, Los Angeles, CA 90012
OSC - No Return of Service (MICHELLE HANSEL)

**02/17/2011** at 08:30 am in department 49 at 111 North Hill Street, Los Angeles, CA 90012
Conference-Case Management

---

Documents Filed | Proceeding Information

**Parties**

DOE 1 THROUGH DOE 100 - Defendant/Respondent

EPD INVESTMENT CO. LLC - Plaintiff/Petitioner

HANSEL MICHELLE - Defendant/Respondent

KIRKLAND JOHN C. - Attorney for Plaintiff/Petitioner

PRESSMAN JEROLD S. - Plaintiff/Petitioner

---

Case Information | Party Information | Proceeding Information

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Documents Filed** (Filing dates listed in descending order)

**01/07/2011** Notice ( of CASE RE-ASSIGNMENT )
Filed by Attorney for Pltf/Petnr

**12/28/2010** Notice of Reassignment and Order
Filed by Clerk

**11/23/2010** OSC-Failure to File Proof of Serv
Filed by Clerk

**11/17/2010** Notice-Case Management Conference
Filed by Clerk

**11/10/2010** Complaint

---

Case Information | Party Information | Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)
None

---

Case Information | Party Information | Documents Filed | Proceeding Information

# EXHIBIT 20

Case 2:12-ap-02424-VZ Doc 263-7 Filed 09/05/17 Entered 09/05/17 18:59:26 Desc Exhibit Page 269 of 321

COPY

LUCE, FORWARD, HAMILTON & SCRIPPS LLP
John C. Kirkland, State Bar No. 149453
Theona Zhordania, State Bar No. 254428
601 South Figueroa Street, Suite 3900
Los Angeles, California 90017
Telephone: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Plaintiffs
JERROLD S. PRESSMAN and
EPD INVESTMENT CO., LLC

CONFORMED COPY
OF ORIGINAL FILED
Superior Court of California
NOV 10 2010
John A. Clarke, Executive Officer/Clerk
By RUGENA LOPEZ, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| JERROLD S. PRESSMAN, an individual; EPD INVESTMENT CO., LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MICHELLE HANSEL, an individual; and DOE 1 through DOE 100, inclusive,<br><br>Defendants. | Case No. BC449287<br><br>**COMPLAINT FOR MONEY DAMAGES AND PUNITIVE DAMAGES FOR DEFAMATION AND FRAUDULENT PRACTICES**<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiffs Jerrold S. Pressman and EPD Investment Co., LLC ("Plaintiffs"), for their complaint against Defendants, complain and allege as follows:

**NATURE OF THE CASE**

1. Utilizing a deliberate campaign of misinformation, lies and threats, defendant Michelle Hansel hatched a scheme to obtain an unjustified windfall for herself by damaging the reputation and goodwill of an established and reputable business person and business. Hansel and her cohorts sought to blackmail plaintiffs by threatening to assert and publicly disseminate patently false and baseless allegations against them if they refused to give her a payoff. When they refused to give in to her extortion, Hansel falsely told plaintiffs' investors and business contacts that they were somehow

engaged in improper and even criminal conduct. Hansel even went so far as to make the ludicrous accusation that entrepreneur Jerrold Pressman defrauded investors, a claim without the slightest hint of factual support that no rational person could ever assert in good faith. Hansel launched her whisper campaign of concocted innuendo in a tortious ploy to extort money for herself.

## GENERAL ALLEGATIONS

(Common to all Causes of Action)

2. Plaintiff Jerrold S. Pressman ("Pressman") is an individual who resides in Los Angeles County, in the State of California, and has resided there at all relevant times.

3. Plaintiff EPD Investment Co., LLC ("EPD") is a California limited liability company, organized and existing under and by virtue of the laws of the State of California, which, at all relevant times, has done business in Los Angeles County, with its principal place of business in Los Angeles County.

4. Plaintiffs are informed and believe, and thereon allege, that Defendant Michelle Hansel ("Hansel") is an individual who resides and at all relevant times has resided, in the County of Los Angeles, in the State of California.

5. Plaintiffs do not know the true names and capacities of the cross defendants sued as Doe 1 through Doe 100, inclusive, and therefore sue such cross defendants by such fictitious names. Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants sued as Doe 1 through Doe 100 is responsible, in some manner, for the wrongful conduct alleged below, and that Plaintiffs' injuries alleged below were proximately caused by such cross defendants' wrongful acts. Plaintiffs will amend this Complaint to allege such defendants' true names and capacities when such are ascertained.

6. Plaintiffs are informed and believe, and, based upon such information and belief, allege that at all times mentioned herein, each of the defendants were the agents, employees, assignees, and/or affiliates of each other and/or are or were the principals, shareholders, partners, joint venturers, co-conspirators, or alter egos of each other, and in committing the acts mentioned herein were acting within the scope of such agency, employment, assignment, affiliation, and/or principal, shareholder, or alter ego relation, or received distributions or proceeds which were improperly or illegally distributed

Case 2:10-bk-62208-ER Doc 23-20 Filed 01/19/11 Entered 01/19/11 18:02:26 Desc Exhibit 20 Page 4 of 6

following notice of the claim(s) described herein.

7. At all relevant times mentioned herein, a unity of interest existed between the aforementioned defendants; and any separateness between each of said defendants has ceased. At all time mentioned herein, each of these defendants is and was the alter ego or each remaining defendant, so that each was a mere shell, instrumentality, and conduit through which each of the remaining defendants carried on their personal business. Defendants exercised such complete control and dominance over one another that any individuality or separateness of any of these defendants from one another does not, and at all time mentioned herein, did not exist.

**FIRST CAUSE OF ACTION**

(For Defamation by All Plaintiffs Against All Defendants)

8. Plaintiffs incorporate by reference and re-allege as if fully stated herein the material allegations set out in the paragraphs above.

9. Plaintiffs are informed and believe, and based thereon allege, that defendants, and each of them, have contacted investors, regulators and business contacts of plaintiffs, and have made disparaging and defamatory remarks to them about plaintiffs, their business ethics and business practices. Hansel has falsely stated that plaintiffs are criminals, have engaged in fraud, and have stolen money. Hansel's completely baseless lies included, *inter alia,* that plaintiffs never invested investors' monies into legitimate investments, but instead converted the funds for their own use.

10. None of defendants' statements about plaintiffs were privileged, and none were true.

11. At the time she made the defamatory statements, defendants had actual knowledge of the falsity of her statements, yet made the statements with knowledge of their falsity and in reckless disregard of their truth or falsity. Specifically, Hansel knew that there was no reasonable factual or legal basis to assert that plaintiffs were engaged in unlawful or improper conduct.

12. Defendants knowingly and intentionally published multiple defamatory statements of fact to multiple persons. Defendants made and disseminated false statements to multiple third parties—including the general public through dissemination to investors and businesses—in an effort to impugn the reputation of plaintiffs, and to further Hansel's attempts to extort money from plaintiffs.

13. The false and defamatory statements made by defendants were made with malice, with personal animosity, hatred and ill will towards plaintiffs, and with knowledge that the statements were false and without any reasonable grounds for believing that the statements were true.

14. As a result of defendants' wrongful conduct, plaintiffs are entitled to recover presumed damages, in an amount in excess of $1,000,000.00, to be determined by the jury according to proof at trial.

15. Defendants made the foregoing publications with the intent to vex, injure and cheat plaintiffs so as to constitute oppression, fraud and malice justifying an award of exemplary and punitive damages sufficient to punish and make an example of defendants, in an amount in excess of $10,000,000.00, to be determined by the jury according to proof at trial.

**SECOND CAUSE OF ACTION**

(For Unlawful, Unfair and Fraudulent Business Practices

by All Plaintiffs Against All Defendants)

16. Plaintiffs incorporate by reference and re-allege as if fully stated herein the material allegations set out in the paragraphs above.

17. The acts and practices of defendants as set forth hereinabove constitute unlawful, unfair and fraudulent business acts and practices within the meaning of California Business and Professions Code section 17200, et seq.

18. Plaintiffs are entitled to statutory and equitable relief against Hansel and the other defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Jerrold S. Pressman and EPD Investment Co., LLC pray for judgment against defendants, and each of them, as follows:

1. For presumed compensatory damages in excess of $1,000,000.00, to be determined by the jury according to proof at trial;

2. For punitive and exemplary damages in excess of $10,000,000.00, to be determined by the jury according to proof at trial;

4. For temporary, preliminary and permanent injunctive relief, restraining and enjoining defendants from further wrongful conduct;

5. For attorney's fees and expenses;

6. For allowable expenses and costs of suit; and

7. For such other and further relief as the Court deems just and proper.

DATED: November 10, 2010 LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: ______________________
John C. Kirkland
Attorneys for Plaintiffs
Jerrold S. Pressman and EPD Investment Co., LLC

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for each claim set forth above.

DATED: November 10, 2010 LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: ______________________
John C. Kirkland
Attorneys for Plaintiffs
Jerrold S. Pressman and EPD Investment Co., LLC

# EXHIBIT MM

ORIGINAL

PLD-050

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Matthew B. Gruenberg (SBN 264210)
LAW OFFICES OF MATTHEW B. GRUENBERG
942A Lincoln Blvd.
Santa Monica, CA 90403
TELEPHONE NO.: 310-740-5105 FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): EPD Investment Co., LLC et al

To keep other people from seeing what you entered on your form, please press the Clear This Form button at the end of the form when finished.

FILED
Los Angeles Superior Court
JAN 04 2011
John A. Clarke, Executive Officer/Clerk
By DOROTHY SWAIN, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Betty Druckman et al
DEFENDANT/RESPONDENT: EPD Investment Co., LLC et al

## GENERAL DENIAL

CASE NUMBER: BC 450 557

If you want to file a general denial, you MUST use this form if the amount asked for in the complaint or the value of the property involved is $1,000 or less.

You MAY use this form for a general denial if:
1. The complaint is not verified; *or*
2. The complaint is verified and the case is a limited civil case (the amount in controversy is $25,000 or less), BUT NOT if the complaint involves a claim for more than $1,000 that has been assigned to a third party for collection.

(See Code of Civil Procedure sections 85–86, 90–100, 431.30, and 431.40.)

1. DEFENDANT (*name*): EPD Investment Co., LLC, EPD Investment Leasing Co., LLC
generally denies each and every allegation of plaintiff's complaint.

2. ☑ DEFENDANT states the following FACTS as separate affirmative defenses to plaintiff's complaint (*attach additional pages if necessary*):
   1. The stated interest rate is usurious.
   2. The funds were an investment, rather than a loan that required repayment.
   3. The funds were invested voluntarily, under no improper influence or representation.

Def(s) ______ Pl(s) 7 EXHIBIT for I.D.
MITCH A. GENSER, CSR#4239, NP
Date: 5/2/11
Witness: Matt. G.

Date: January 3, 2011

Matthew B. Gruenberg
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF DEFENDANT OR ATTORNEY)

CIT/CASE: BC450557 LEA/DEFN:
RECEIPT #: CCH118790000
DATE PAID: 01/04/11 11:15:
PAYMENT: $790.00
RECEIVED:

If you have a claim for damages or other relief against the plaintiff, the law may require you to state your claim in a special pleading called a cross-complaint or you may lose your right to bring the claim. (See Code of Civil Procedure sections 426.10–426.40.)

The original of this *General Denial* must be filed with the clerk of this court with proof that a copy was served on each plaintiff's attorney and on each plaintiff not represented by an attorney. There are two main ways to serve this *General Denial*: by personal delivery or by mail. It may be served by anyone at least 18 years of age EXCEPT you or any other party to this legal action. Be sure that whoever serves the *General Denial* fills out and signs a proof of service. You may use the applicable Judicial Council form (such as form POS-020, POS-030, or POS-040) for the proof of service.





For your protection and privacy, please press the Clear This Form button after you have printed the form.

Save This Form | Print This Form | Clear This Form

# EXHIBIT NN

CONFIDENTIAL

C C COPY

PLD-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Matthew B. Gruenberg (SBN 264210)<br>LAW OFFICES OF MATTHEW B. GRUENBERG<br>942-A Lincoln Blvd.<br>Santa Monica, CA 90403<br>TELEPHONE NO.: 310-740-5105 FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Jerrold S. Pressman | ORIGINAL FILED<br>LOS ANGELES SUPERIOR COURT<br>JOHN A. CLARKE, CLERK<br>MAR 16 2011<br>By: DEPUTY |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles<br>STREET ADDRESS: 1725 Main Street<br>MAILING ADDRESS: 1725 Main Street<br>CITY AND ZIP CODE: Santa Monica 90401<br>BRANCH NAME: Santa Monica Courthouse | |
| PLAINTIFF/PETITIONER: Alan C. Harvey<br>DEFENDANT/RESPONDENT: Jerrold S. Pressman et al | |
| **GENERAL DENIAL** | CASE NUMBER:<br>SC 108418 |

If you want to file a general denial, you MUST use this form if the amount asked for in the complaint or the value of the property involved is $1,000 or less.

You MAY use this form for a general denial if:
1. The complaint is not verified; *or*
2. The complaint is verified and the case is a limited civil case (the amount in controversy is $25,000 or less), BUT NOT if the complaint involves a claim for more than $1,000 that has been assigned to a third party for collection.

(See Code of Civil Procedure sections 85–86, 90–100, 431.30, and 431.40.)

1. DEFENDANT *(name):* Jerrold S. Pressman
generally denies each and every allegation of plaintiff's complaint.

2. [✓] DEFENDANT states the following FACTS as separate affirmative defenses to plaintiff's complaint *(attach additional pages if necessary):*

1. The stated interest rate is usurious.
2. The funds were an investment, rather than a loan that required repayment.
3. Remedies against primary obligor have not been exhausted.
4. There is no continuing guaranty.

Date: March 14, 2011

Matthew B. Gruenberg ▶ *[signature]*

(TYPE OR PRINT NAME) (SIGNATURE OF DEFENDANT OR ATTORNEY)

If you have a claim for damages or other relief against the plaintiff, the law may require you to state your claim in a special pleading called a cross-complaint or you may lose your right to bring the claim. (See Code of Civil Procedure sections 426.10–426.40.)

The original of this *General Denial* must be filed with the clerk of this court with proof that a copy was served on each plaintiff's attorney and on each plaintiff not represented by an attorney. There are two main ways to serve this *General Denial:* by personal delivery or by mail. It may be served by anyone at least 18 years of age EXCEPT you or any other party to this legal action. Be sure that whoever serves the *General Denial* fills out and signs a proof of service. You may use the applicable Judicial Council form (such as form POS-020, POS-030, or POS-040) for the proof of service.



Serial ___ File 14 EXHIBIT for I.D.
WITCH A. GENSER, CSR 4839, RP
Date 5/2/17
Witness Matt, G.

T-PR 070609



14

CONFIDENTIAL

## PROOF OF SERVICE

Harvey v. Pressman, et al, Case No. SC 108418

Judge: Hon. Norman P. Tarle

Dept: B

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 601 S. Figueroa, Suite 3900, Los Angeles, California 90017.

On March 16, 2011, I served true copies of the following document(s) described as **GENERAL DENIAL** on the interested parties in this action as follows:

Jeffrey W. Cowan, Esq.
The Cowan Law Firm
1541 Ocean Avenue, Suite 200
Santa Monica, CA 90401

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & Scripps LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 16, 2011, at Los Angeles, California.

Lisa Underkoffler

# EXHIBIT OO

[redacted]

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

National Corporate Research, Ltd.
1107 9th Street, Suite 1025
Sacramento, CA 95814
P6-10034513 m044454-1

9

10-7224658702
03/04/2010 15:55
FILED
CALIFORNIA
SECRETARY OF STATE
SOS
24188930004 UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| **OR** 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Pressman | Keith | E | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 724 19th Street | Santa Monica | CA | 90401 | USA |

| [redacted] ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|
| | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| **OR** 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| [redacted] ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|
| | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Bright Conscience Trust Dated September 9, 2009 | | | |
| **OR** 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 754 Swarthmore Ave | Pacific Palisades | CA | 90272 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All assets, including but not limited to all present and after acquired fixtures, accessions and personal property, all goods, inventory equipment, furniture, money, documents, instruments, ownership help in partnerships, corporations, LLC's or any other ownership of assets, notes promissory notes, drafts, checks, certificates of deposit, investment property, accounts, accounts receivable, chattel paper, general intangibles, leases, contracts, contract rights, goodwill, copyrights, trademarks, patents, rights to proceeds of letters of credit and rights to payment of money and all future advances and proceeds of any of the foregoing

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) – CALIFORNIA (REV. 01/01/08)

# EXHIBIT PP

201013910145

LLC-1 File #

State of California
Secretary of State

**FILED**
In the Office of the Secretary of State
of the State of California

MAY 1 8 2010

# LIMITED LIABILITY COMPANY ARTICLES OF ORGANIZATION

**A $70.00 filing fee must accompany this form.**

**IMPORTANT – Read instructions before completing this form.**

This Space For Filing Use Only

**ENTITY NAME** (End the name with the words "Limited Liability Company," or the abbreviations "LLC" or "L.L.C." The words "Limited" and "Company" may be abbreviated to "Ltd." and "Co.," respectively.)

1. NAME OF LIMITED LIABILITY COMPANY

EPD INVESTMENT LEASING CO., LLC

**PURPOSE** (The following statement is required by statute and should not be altered.)

2. THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE IN ANY LAWFUL ACT OR ACTIVITY FOR WHICH A LIMITED LIABILITY COMPANY MAY BE ORGANIZED UNDER THE BEVERLY-KILLEA LIMITED LIABILITY COMPANY ACT.

**INITIAL AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and both Items 3 and 4 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 3 must be completed (leave Item 4 blank).

3. NAME OF INITIAL AGENT FOR SERVICE OF PROCESS

John C. Kirkland, Esq.

| 4. IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA | CITY | STATE | ZIP CODE |
|---|---|---|---|
| Luce Forward, 601 S. Figueroa St., Suite 3900 | Los Angeles | CA | 90017 |

**MANAGEMENT** (Check only one)

5. THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY:

- [x] ONE MANAGER
- [ ] MORE THAN ONE MANAGER
- [ ] ALL LIMITED LIABILITY COMPANY MEMBER(S)

**ADDITIONAL INFORMATION**

6. ADDITIONAL INFORMATION SET FORTH ON THE ATTACHED PAGES, IF ANY, IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS CERTIFICATE.

**EXECUTION**

7. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

May 17, 2010
DATE

[signature]
SIGNATURE OF ORGANIZER

John C. Kirkland
TYPE OR PRINT NAME OF ORGANIZER

LLC-1 (REV 04/2007) APPROVED BY SECRETARY OF STATE

# EXHIBIT QQ

STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: 818.827.9000
Facsimile: 818.827.9099
Email: sgubner@ebg-law.com
cweber@ebg-law.com

Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee

RICHARD K. DIAMOND (State Bar No. 070634)
rdiamond@dgdk.com
ROBERT A. HESSLING (State Bar No. 096466)
rhessling@dgdk.com
DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067-2904
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

General Counsel for Jason M. Rund, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC,

Debtor.

EIN No. xxx-0994

Case No. 2:10-bk-62208-ER

Chapter 7

**NOTICE OF MOTION AND MOTION BY CHAPTER 7 TRUSTEE FOR EXAMINATION OF, AND PRODUCTION OF DOCUMENTS AND THINGS BY: (1) THE PERSON(S) MOST QUALIFIED FOR DEBTOR EPD INVESTMENT CO., LLC; (2) JERROLD PRESSMAN; (3) KEITH PRESSMAN; (4) RUBEN MORENO; (5) JOHN C. KIRKLAND, ESQ.; (6) THE PERSON(S) MOST QUALIFIED FOR BROADWAY ENTERTAINMENT MARKETING, INC.; (7) THE PERSON(S) MOST QUALIFIED FOR S.C. CLUB, L.P.; (8) THE PERSON(S) MOST QUALIFIED FOR S.C. CLUB, INC.; (9) THE PERSON(S) MOST QUALIFIED FOR THE BRIGHT CONSCIENCE TRUST; (10) THE PERSON MOST QUALIFIED FOR HMB HOLDINGS, LLC; AND (11) TED JONAVIC PURSUANT TO FED. R. BANKR. P. 2004**

[No hearing required per LBR 2004-1]

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........ 6

I. INTRODUCTION ........ 6

II. PROCEDURAL HISTORY ........ 9

III. THE EXAMINATIONS ARE NECESSARY AND APPROPRIATE ........ 12

IV. DATES AND TIMES PROPOSED FOR THE RULE 2004 EXAMINATIONS AND ADDRESSES FOR THE EXAMINEES OR THEIR COUNSEL ........ 16

A. Dates, Times and Locations ........ 16

B. Addresses for the Examinees or Their Counsel ........ 18

V. MEET AND CONFER ........ 19

VI. CONCLUSION ........ 23

DECLARATION OF JASON RUND ........ 24

DECLARATION OF COREY R. WEBER ........ 26

# TABLE OF AUTHORITIES

**Page**

**CASES**

In re Table Talk,
51 B.R. 143, 145 (Bankr. D. Mass. 1985) .......... 12

**TREATISES**

8 Collier on Bankruptcy, ¶2004.04[1],
pp. 2004-9 - 2004-10 (L. King ed., 15th ed. 1994) .......... 12

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTOR EPD INVESTMENT CO., LLC, JERROLD PRESSMAN, KEITH PRESSMAN, RUBEN MORENO, JOHN C. KIRKLAND, ESQ., BROADWAY ENTERTAINMENT MARKETING, INC., S.C. CLUB, L.P., S.C. CLUB, INC., THE BRIGHT CONSCIENCE TRUST, HMB HOLDINGS, LLC, TED JONAVIC AND TO ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Company, LLC (the "Debtor"), respectfully moves (the "Motion") this Court for an order requiring:

a. The person(s) most qualified for the Debtor;

b. Jerrold Pressman;

c. Keith Pressman;

d. Ruben Moreno;

e. John C. Kirkland, Esq. ("Kirkland") of Luce Forward Hamilton & Scripps LLP ("Luce Forward");

f. The person(s) most qualified for Broadway Entertainment Marketing, Inc. ("Broadway Entertainment");

g. The person(s) most qualified for S.C. Club, L.P.;

h. The person(s) most qualified for S.C. Club, Inc.;

i. The person(s) most qualified for the Bright Conscience Trust;

j. The person(s) most qualified for HMB Holdings, LLC; and

k. Ted Jonavic (the foregoing proposed examinees are collectively referred to as the "Examinees")

to appear for examinations and to produce and make available for copying the documents and things described in **Exhibits A-K**[1] attached to the Motion. The proposed dates, times and locations

[1] As to the entity examinees, the exhibits include both a list of anticipated areas of inquiry for which the entity must designate person(s) most qualified, as well as the request for production of documents and things.

of the examinations and productions of documents are as follows, subject to Court approval of the Motion:

| Examination | Date and Time of Examination | Date and Time of Production of Documents and Things | Location of Examination and Production of Documents and Things |
|---|---|---|---|
| The person(s) most qualified for the Debtor | May 17, 2011 at 10:00 a.m.[2] | May 12, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| Jerrold Pressman | May 17, 2011 at 10:00 a.m.[3] | May 12, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| Keith Pressman | May 31, 2011 at 10:00 a.m. | May 24, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| Ruben Moreno | June 1, 2011 at 10:00 a.m. | May 24, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |

[2] This date is prior to the 21 days referenced in Loc. Bankr. R. 2004-1(c) but is a date provided by the examinee or their counsel to the Trustee.

[3] This date is prior to the 21 days referenced in Loc. Bankr. R. 2004-1(c) but is a date provided by the examinee or their counsel to the Trustee.

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Main Document Page 3 of 53

| | | | |
|---|---|---|---|
| John C. Kirkland, Esq. | May 9, 2011 at 10:00 a.m.[4] | May 9, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| The person(s) most qualified for Broadway Entertainment Marketing, Inc. | May 17, 2011 at 10:00 a.m.[5] | May 10, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| The person(s) most qualified for S.C. Club, L.P. | May 17, 2011 at 10:00 a.m.[6] | May 10, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| The person(s) most qualified for S.C. Club, Inc. | May 17, 2011 at 10:00 a.m.[7] | May 10, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| The person(s) most qualified for the Bright Conscience Trust | June 10, 2011 at 10:00 a.m. | June 3, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |

[4] This date is prior to the 21 days referenced in Loc. Bankr. R. 2004-1(c) but is a date provided by the examinee or their counsel to the Trustee.

[5] This date is prior to the 21 days referenced in Loc. Bankr. R. 2004-1(c) but is a date provided by the examinee or their counsel to the Trustee.

[6] This date is prior to the 21 days referenced in Loc. Bankr. R. 2004-1(c) but is a date provided by the examinee or their counsel to the Trustee.

[7] This date is prior to the 21 days referenced in Loc. Bankr. R. 2004-1(c) but is a date provided by the examinee or their counsel to the Trustee.

| | | | |
|---|---|---|---|
| The person(s) most qualified for HMB Holdings, LLC | June 13, 2011 at 10:00 a.m. | June 6, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| Ted Jonavic | June 9, 2011 at 10:00 a.m. | June 2, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |

The examinations will take place before a notary public or other authorized officer, may be videotaped, and will continue from day to day thereafter (weekends and holidays excluded) until completed or adjourned, but subject to the time limitations set forth in the Federal Rules of Civil Procedure.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based this Notice of Motion, the Memorandum of Points and Authorities, the attached Declarations of Jason Rund (the "Rund Declaration") and Corey R. Weber (the "Weber Declaration"), the Request for Judicial Notice (the "RJN") and the pleadings and records on file in the above-captioned bankruptcy case.

**PLEASE TAKE FURTHER NOTICE** that if you do not object to the Motion, you need take no further action. However, if you object to the Motion, pursuant to Local Bankruptcy Rule 2004-1, any motions for protective orders must be filed and served in accordance with Local Bankruptcy Rule 2004-1 and set for hearing. Any such motion for a protective order must be filed with the Clerk of the United States Bankruptcy Court, and must be served upon counsel for the Trustee at the mailing address indicated in the upper left-hand corner of the first page of this Motion, and the Office of the United States Trustee. Failure to timely file and serve any motion for protective order may result in any such opposition to the examination and production of documents and things being waived.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in the Motion and the Weber Declaration, pursuant to Local Bankruptcy Rule 2004-1(a) and (b), Special Litigation Counsel for the Trustee certifies as part of the Motion and attached declaration, that good faith efforts were used to meet and confer with each of the examinees to arrange for an agreeable date, time, place and scope of an examination and production.

**WHEREFORE**, the Trustee respectfully requests that the Court grant the Motion and enter an Order thereon, which is lodged with the Court under separate cover and concurrently herewith in compliance with Local Bankruptcy Rules.

Dated: April 27, 2011

**EZRA BRUTZKUS GUBNER LLP**

By: /s/ Corey R. Weber
COREY R. WEBER
Special Litigation Counsel for Jason Rund, Chapter 7 Trustee

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Main Document Page 9 of 53

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Federal Rule of Bankruptcy Procedure 2004 provides that the Court may order examinations relating to "… the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge…" The Trustee seeks the examinations of the following individuals and the designated person(s) most qualified as to the entities—an overview regarding each of the Examinees other than the Debtor follows the names of each of the Examinees[8]:

1. **The person(s) most qualified for the Debtor**;
2. **Jerrold Pressman**—listed in the Debtor's Statement of Financial Affairs ("SOFA"), Item No. 19a, as having kept or supervised the keeping of books of account and records of the Debtor[9], in Item No. 19c as in possession of the books of account and records of the Debtor as of the petition date[10] and in Item No. 21 as a current 80% member of the Debtor[11]. Also listed in the Debtor's Attachment to Schedule B as having executed a promissory note payable to the Debtor in the amount of over $24.2 million.[12]
3. **Keith Pressman**—listed in the Debtor's SOFA, Item No. 21, as a current 20% member of the Debtor. [13] Keith Pressman is listed in the Debtor's filings with the California Secretary of State as the President of the Debtor.[14] Keith Pressman is also listed in California Secretary of State records as the Chief Executive Officer, Chief Financial Officer and registered agent for service of process for Broadway

---

[8] The overview is for informational purposes only and should not be considered as a limitation of the areas of inquiry for the Rule 2004 examinations.
[9] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 8, No. 19a.
[10] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 9, No. 19c.
[11] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 9, No. 21a.
[12] *See* Debtor's Attachment to Schedule B filed on April 14, 2011 (Docket No. 104-1).
[13] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 9, No. 21a.
[14] RJN, Exhibit 1.

Entertainment Marketing, Inc.[15] Keith Pressman is also listed as the Chief Executive Officer/President, Chief Financial Officer, Director and agent for service of process for S.C. Club, Inc.[16] S.C., Inc. is listed as the general partner of S.C. Club, L.P.[17] The Debtor's Attachment to Schedule B lists Broadway Entertainment and S.C. Club L.P. as having executed promissory notes payable to the Debtor in the amount of over $8.7 million (over $4.4 million as to Broadway Entertainment and nearly $4.3 million as to S.C. Club, L.P.).[18] The California Secretary of State website shows Keith Pressman as the registered agent for service of process for both Broadway Entertainment and S.C. Club, L.P.[19];

4. **Ruben Moreno**—listed in the Debtor's SOFA, Item No. 19a, as having kept or supervised the keeping of books of account and records of the Debtor.[20] Listed in the Debtor's filings with the California Secretary of State as the Secretary of the Debtor.[21] Ruben Moreno is also listed in Broadway Entertainment's filings with the California Secretary of State as the Secretary and a Director of Broadway Entertainment.[22] In addition, Ruben Moreno is listed in S.C. Club, Inc.'s filings with the California Secretary of State as the Secretary of S.C. Club, Inc.[23];

5. **John C. Kirkland, Esq.** ("Kirkland") of Luce Forward Hamilton & Scripps LLP ("Luce Forward")—pre-petition and post-petition counsel for the Debtor.[24] Kirkland was agent for service of process of the Debtor[25] and Kirkland and Luce Forward were counsel of record for the Debtor in regard to various liens that were recorded against the property of the Debtor (including a lien in favor of a trust with the same address as Kirkland's personal residence). Further, Kirkland made

---

[15] RJN, Exhibit 2.
[16] RJN, Exhibit 3.
[17] RJN, Exhibit 4.
[18] *See* Debtor's Attachment to Schedule B filed on April 14, 2011 (Docket No. 104-1).
[19] RJN, Exhibit 2.
[20] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 8, No. 19a.
[21] RJN, Exhibit 1.
[22] RJN, Exhibit 2.
[23] RJN, Exhibit 3.
[24] A substitution of attorney was filed on April 25, 2011 (Docket No. 117) whereby Luce Forward is no longer counsel for the Debtor.
[25] RJN, Exhibit 1.

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Main Document Page 11 of 53

various representations to this Court, both in person and in pleadings, regarding the status of the Debtor's business[26];

6. **The person(s) most qualified for Broadway Entertainment Marketing, Inc.—** listed on the Debtor's Attachment to Schedule B as having executed a promissory note payable to the Debtor in the amount of over $4.4 million.[27] Keith Pressman is also listed in California Secretary of State records as the Chief Executive Officer, Chief Financial Officer and registered agent for service of process for Broadway Entertainment Marketing, Inc.[28];

7. **The person(s) most qualified for S.C. Club, L.P.** listed on the Debtor's Attachment to Schedule B as having executed a promissory note payable to the Debtor in the amount of over $4.2 million.[29] Keith Pressman is also listed as the Chief Executive Officer/President, Chief Financial Officer, Director and agent for service of process for S.C. Club, Inc.[30] S.C., Inc. is listed as the general partner of S.C. Club, L.P.[31];

8. **The person(s) most qualified for S.C. Club, Inc.—** Keith Pressman is also listed as the Chief Executive Officer/President, Chief Financial Officer, Director and agent for service of process for S.C. Club, Inc.[32] S.C., Inc. is listed as the general partner of S.C. Club, L.P.[33];

9. **The person(s) most qualified for the Bright Conscience Trust—**listed on the Debtor's Schedule D as having a secured claim against the Debtor, with a UCC-1 as to all assets of the Debtor, in the amount of $2 million[34];

---

[26] *See, e.g.,* Declaration of John C. Kirkland in Support of Alleged Debtor's Notice of Motion and Motion for Reconsideration of Court's Order for Relief in an Involuntary Case filed on February 9, 2011, ¶ 3 (Docket No. 33)(where Kirkland declared under penalty of perjury that the Order for Relief if not set aside "would effectively cause an Alleged Debtor to cease its ability to operate as a going concern, the damage caused by such an order could not be undone, and would effectively result in the destruction of the company's business, or diminution in value of the estate, to the detriment of all creditors.").

[27] *See* Debtor's Attachment to Schedule B filed on April 14, 2011 (Docket No. 104-1).

[28] RJN, Exhibit 2.

[29] *See* Debtor's Attachment to Schedule B filed on April 14, 2011 (Docket No. 104-1).

[30] RJN, Exhibit 3.

[31] RJN, Exhibit 4.

[32] RJN, Exhibit 3.

[33] RJN, Exhibit 4.

[34] *See* Debtor's Schedule D filed on April 15, 2011 (Docket No. 108).

10. **The person(s) most qualified for HMB Holdings, LLC**—listed on the Debtor's Schedule D as having a secured claim against the Debtor, with a UCC-1 as to all assets of the Debtor, in the amount of $11.25 million[35]; and

11. **Ted Jonavic**—listed in the Debtor's SOFA, Item No. 19b as having audited the books of account and records, or prepared a financial statement of the Debtor.[36]

The Trustee files this Motion pursuant to Fed. R. Bankr. P. 2004. The above-listed examinations cannot proceed under Fed. R. Bankr. P. 7030 because no adversary proceeding has been commenced, and cannot proceed under Fed. R. Bankr. P. 9014 because the examinations are not being taken as part of a contested matter.[37]

Based on the grounds stated herein and in Rund Declaration, the Weber Declaration and the RJN, the Trustee believes that each of the Examinees has knowledge of the acts, conduct, or property or to the liabilities and financial condition of the Debtor, or to matters which may affect the administration of the Debtor's estate, and that it is necessary to take the oral examination of the Examinees and to obtain the production of documents and things from the Examinees. The Trustee therefore respectfully requests that this Court enter an order granting this Motion and ordering the Examinees to appear for their examinations and to produce the documents and things requested by the Trustee.

## II.

## PROCEDURAL HISTORY

Petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively, the "Petitioning Creditors") filed the Involuntary Petition on December 7, 2010. The summons on the Involuntary Petition was issued by the Court on December 28, 2010. The Petitioning Creditors and Hansel filed and served a motion for the appointment of an interim Chapter 7 Trustee on January 11, 2011, together with an *ex parte* application for an order

[35] *See* Debtor's Schedule D filed on April 15, 2011 (Docket No. 108).
[36] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 8, No. 19b.
[37] Rund Declaration, ¶ 7.

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Main Document Page 13 of 53

shortening time, declarations and a request for judicial notice in support thereof (the "Motion for Interim Trustee"). The Court granted the order shortening time and set the hearing on the Motion for Interim Trustee for January 20, 2011. Also on January 11, 2011, the Petitioning Creditors filed a proof of service in regard to the summons and Involuntary Petition. EPD filed an opposition to the Motion for Interim Trustee on January 19, 2011. The hearing on the Motion for Interim Trustee was held on January 20, 2011. The Court denied the Motion for Interim Trustee.

On February 2, 2011, EPD filed a motion to quash service of the summons and Involuntary Petition (the "Motion to Quash"). EPD's Motion to Quash set a hearing date of March 29, 2011. A Status Conference took place on February 9, 2011. The Petitioning Creditors and creditor Michelle Hansel filed a unilateral status report for the Status Conference. EPD did not attend the Status Conference and did not file a status report for the Status Conference. At the Status Conference, the Court signed an Order for Relief, which was entered on February 9, 2011. Also on February 9, 2011, as part of the Order for Relief, the Clerk of Court entered an Order to File Schedules, Statements and List(s). The same day the Order for Relief was entered, EPD filed a motion for reconsideration as to the Court's entry of the Order for Relief. On February 10, 2011, the Court entered an Order denying EPD's motion for reconsideration and determining that the Motion to Quash was moot. On February 12, 2011, the Office of the United States Trustee filed a notice of appointment of trustee and fixing of bond, which appointed Jason Rund as the Chapter 7 Trustee for the Debtor.

On February 24, 2011, the Debtor filed the Motion to Convert. Also on February 24, 2011, the Debtor filed a motion to alter or amend order for relief in an involuntary case, on in the alternative for relief from default (the "Motion to Alter or Amend"). The Motion to Convert and the Motion to Alter or Amend were filed within minutes of each other. The Motion to Convert states under Paragraph 1 that "This Motion is without prejudice to Alleged Debtor's Motion To Set Aside Order for Relief." The Court denied the Motion to Alter or Amend at the hearing on March 29, 2011. The Court denied the Motion to Convert without prejudice at the hearing on April 12, 2011.

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Main Document Page 14 of 53

On March 17, 2011, the Trustee filed his Motion to Compel the Debtor to File Statements and Schedules and a Creditors Matrix, to Turn Over Books and Records and Property of the Estate and to Cooperate with the Trustee (the "Motion to Compel the Debtor") together with an ex parte application for an order shortening time. The Court granted the ex parte application and set the hearing on the Motion to Compel the Debtor for April 12, 2011. The Court granted the Trustee's Motion to Compel the Debtor at the hearing on April 12, 2011, and set April 14, 2011 as the deadline for the Debtor to file Statements, Schedules and a Creditor's Matrix and April 20, 2011 as the deadline for the Debtor to turn over books, records and property of the Debtor to the Trustee. The Debtor filed Statements, Schedules and a Creditors Matrix over two days, on April 14 and 15, 2011, but did not file signed or verified versions of the Statements, Schedules and a Creditors Matrix. On April 20, 2011, following numerous e-mails from counsel for the Trustee, the Debtor filed an amended Statement of Financial Affairs that was signed by Jerrold Pressman as member of the Debtor (Docket No. 116).

On March 31, 2001, the Trustee filed his Motion to Compel John C. Kirkland, Esq. and Luce Forward Hamilton & Scripps LLP to: (1) turn over any books, records and property of the Debtor to the Trustee; (2) turn over case files and other documents relating to the Debtor to the Trustee; and (3) cooperate with the Trustee (the "Motion to Compel Kirkland and Luce Forward"). The Motion to Compel Kirkland and Luce Forward is set for hearing on April 27, 2011. No opposition to the Motion to Compel Kirkland and Luce Forward was timely filed.

The Debtor failed to attend the 341a meeting of creditors on March 18, 2011, or the continued meeting of creditors on April 6, 2011. The meeting of creditors has been continued to May 13, 2011.

///

///

///

///

///

///

## III.

## THE EXAMINATIONS ARE NECESSARY AND APPROPRIATE

Federal Rule of Bankruptcy Procedure 2004(a) authorizes the Court to order the examination of any entity upon motion by a party in interest. Rule 2004(a), in pertinent part, states:

> The examination of an entity under this rule . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate. . . .

Fed. R. Bankr. P. 2004(a).

The scope of examination under Rule 2004 extends to "any matter which may affect administration of the debtor's estate." As Collier states, quoting In re Table Talk, 51 B.R. 143, 145 (Bankr. D. Mass. 1985):

> The scope of Rule 2004 examination is 'unfettered and broad' and the rule itself is 'peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure does.' [Citations Omitted] Examinations under Rule 2004 . . . have been compared to 'a fishing expedition.'

8 Collier on Bankruptcy, ¶2004.04[1], pp. 2004-9 - 2004-10 (L. King ed., 15th ed. 1994).

Measured against this broad standard, the request for examinations is proper and appropriate. The examinees are as follows:

1. **The person(s) most qualified for the Debtor**;
2. **Jerrold Pressman**—listed in the Debtor's Statement of Financial Affairs ("SOFA"), Item No. 19a, as having kept or supervised the keeping of books of account and records of the Debtor[38], in Item No. 19c as in possession of the books of account and records of the Debtor as of the petition date[39] and in Item No. 21 as a current 80% member of the Debtor[40]. Also listed in the Debtor's Attachment to Schedule B as having executed a promissory note payable to the Debtor in the amount of over $24.2 million.[41]

---

[38] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 8, No. 19a.
[39] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 9, No. 19c.
[40] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 9, No. 21a.
[41] *See* Debtor's Attachment to Schedule B filed on April 14, 2011 (Docket No. 104-1).

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Main Document Page 18 of 53

3. **Keith Pressman**—listed in the Debtor's SOFA, Item No. 21, as a current 20% member of the Debtor.[42] Keith Pressman is listed in the Debtor's filings with the California Secretary of State as the President of the Debtor.[43] Keith Pressman is also listed in California Secretary of State records as the Chief Executive Officer, Chief Financial Officer and registered agent for service of process for Broadway Entertainment Marketing, Inc.[44] Keith Pressman is also listed as the Chief Executive Officer/President, Chief Financial Officer, Director and agent for service of process for S.C. Club, Inc.[45] S.C., Inc. is listed as the general partner of S.C. Club, L.P.[46] The Debtor's Attachment to Schedule B lists Broadway Entertainment and S.C. Club L.P. as having executed promissory notes payable to the Debtor in the amount of over $8.7 million (over $4.4 million as to Broadway Entertainment and nearly $4.3 million as to S.C. Club, L.P.).[47] The California Secretary of State website shows Keith Pressman as the registered agent for service of process for both Broadway Entertainment and S.C. Club, L.P.[48];

4. **Ruben Moreno**—listed in the Debtor's SOFA, Item No. 19a, as having kept or supervised the keeping of books of account and records of the Debtor.[49] Listed in the Debtor's filings with the California Secretary of State as the Secretary of the Debtor.[50] Ruben Moreno is also listed in Broadway Entertainment's filings with the California Secretary of State as the Secretary and a Director of Broadway Entertainment.[51] In addition, Ruben Moreno is listed in S.C. Club, Inc.'s filings with the California Secretary of State as the Secretary of S.C. Club, Inc.[52];

[42] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 9, No. 21a.
[43] RJN, Exhibit 1.
[44] RJN, Exhibit 2.
[45] RJN, Exhibit 3.
[46] RJN, Exhibit 4.
[47] *See* Debtor's Attachment to Schedule B filed on April 14, 2011 (Docket No. 104-1).
[48] RJN, Exhibit 2.
[49] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 8, No. 19a.
[50] RJN, Exhibit 1.
[51] RJN, Exhibit 2.
[52] RJN, Exhibit 3.

5. **John C. Kirkland, Esq.** ("Kirkland") of Luce Forward Hamilton & Scripps LLP ("Luce Forward")—pre-petition and post-petition counsel for the Debtor.[53] Kirkland was agent for service of process of the Debtor[54] and Kirkland and Luce Forward were counsel of record for the Debtor in regard to various liens that were recorded against the property of the Debtor (including a lien in favor of a trust with the same address as Kirkland's personal residence). Further, Kirkland made various representations to this Court, both in person and in pleadings, regarding the status of the Debtor's business[55];

6. **The person(s) most qualified for Broadway Entertainment Marketing, Inc.**— listed on the Debtor's Attachment to Schedule B as having executed a promissory note payable to the Debtor in the amount of over $4.4 million.[56] Keith Pressman is also listed in California Secretary of State records as the Chief Executive Officer, Chief Financial Officer and registered agent for service of process for Broadway Entertainment Marketing, Inc.[57];

7. **The person(s) most qualified for S.C. Club, L.P.** listed on the Debtor's Attachment to Schedule B as having executed a promissory note payable to the Debtor in the amount of over $4.2 million.[58] Keith Pressman is also listed as the Chief Executive Officer/President, Chief Financial Officer, Director and agent for service of process for S.C. Club, Inc.[59] S.C., Inc. is listed as the general partner of S.C. Club, L.P.[60];

---

[53] A substitution of attorney was filed on April 25, 2011 (Docket No. 117) whereby Luce Forward is no longer counsel for the Debtor.

[54] RJN, Exhibit 1.

[55] *See, e.g.,* Declaration of John C. Kirkland in Support of Alleged Debtor's Notice of Motion and Motion for Reconsideration of Court's Order for Relief in an Involuntary Case filed on February 9, 2011, ¶ 3 (Docket No. 33)(where Kirkland declared under penalty of perjury that the Order for Relief if not set aside "would effectively cause an Alleged Debtor to cease its ability to operate as a going concern, the damage caused by such an order could not be undone, and would effectively result in the destruction of the company's business, or diminution in value of the estate, to the detriment of all creditors.").

[56] *See* Debtor's Attachment to Schedule B filed on April 14, 2011 (Docket No. 104-1).

[57] RJN, Exhibit 2.

[58] *See* Debtor's Attachment to Schedule B filed on April 14, 2011 (Docket No. 104-1).

[59] RJN, Exhibit 3.

[60] RJN, Exhibit 4.

8. **The person(s) most qualified for S.C. Club, Inc.**— Keith Pressman is also listed as the Chief Executive Officer/President, Chief Financial Officer, Director and agent for service of process for S.C. Club, Inc.[61] S.C., Inc. is listed as the general partner of S.C. Club, L.P.[62];

9. **The person(s) most qualified for the Bright Conscience Trust**—listed on the Debtor's Schedule D as having a secured claim against the Debtor, with a UCC-1 as to all assets of the Debtor, in the amount of $2 million[63];

10. **The person(s) most qualified for HMB Holdings, LLC**—listed on the Debtor's Schedule D as having a secured claim against the Debtor, with a UCC-1 as to all assets of the Debtor, in the amount of $11.25 million[64]; and

11. **Ted Jonavic**—listed in the Debtor's SOFA, Item No. 19b as having audited the books of account and records, or prepared a financial statement of the Debtor.[65]

The Trustee believes that each of the foregoing Examinees have knowledge regarding "… the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate…" as provided for in Fed. R. Bankr. P. 9019.[66]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[61] RJN, Exhibit 3.
[62] RJN, Exhibit 4.
[63] *See* Debtor's Schedule D filed on April 15, 2011 (Docket No. 108).
[64] *See* Debtor's Schedule D filed on April 15, 2011 (Docket No. 108).
[65] *See* Debtor's Statement of Financial Affairs filed on April 15, 2011 (Docket No. 109), p. 8, No. 19b.
[66] Rund Declaration, ¶ 6.

## IV.

## DATES AND TIMES PROPOSED FOR THE RULE 2004 EXAMINATIONS AND ADDRESSES FOR THE EXAMINEES OR THEIR COUNSEL

### A. Dates, Times and Locations

| Examination | Date and Time of Examination | Date and Time of Production of Documents and Things | Location of Examination and Production of Documents and Things |
|---|---|---|---|
| The person(s) most qualified for the Debtor | May 17, 2011 at 10:00 a.m. | May 12, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| Jerrold Pressman | May 17, 2011 at 10:00 a.m. | May 12, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| Keith Pressman | May 31, 2011 at 10:00 a.m. | May 24, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| Ruben Moreno | June 1, 2011 at 10:00 a.m. | May 24, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |

| | | | |
|---|---|---|---|
| John C. Kirkland, Esq. | May 9, 2011 at 10:00 a.m. | May 9, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| The person(s) most qualified for Broadway Entertainment Marketing, Inc. | May 17, 2011 at 10:00 a.m. | May 10, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| The person(s) most qualified for S.C. Club, L.P. | May 17, 2011 at 10:00 a.m. | May 10, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| The person(s) most qualified for S.C. Club, Inc. | May 17, 2011 at 10:00 a.m. | May 10, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| The person(s) most qualified for the Bright Conscience Trust | June 10, 2011 at 10:00 a.m. | June 3, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |

| | | | |
|---|---|---|---|
| The person(s) most qualified for HMB Holdings, LLC | June 13, 2011 at 10:00 a.m. | June 6, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |
| Ted Jonavic | June 9, 2011 at 10:00 a.m. | June 2, 2011, at 10:00 a.m. | The office of Special Litigation Counsel for the Trustee, Ezra Brutzkus Gubner LLP, located at 21650 Oxnard Street, Suite 500, Woodland Hills, California 91367. |

**B. <u>Addresses for the Examinees or Their Counsel</u>**

Pursuant to Loc. Bankr. R. 2004-1(b), the names and addresses of the Examinees that are known to the Trustee are as follows:

Jerrold Pressman's business address, according to the unverified Statement of Financial Affairs filed by the Debtor (Docket No. 109), is 1507 7th Street # 189, Santa Monica, CA 90401. Kirkland represents the Debtor and stated in e-mail correspondence that he represents Jerrold Pressman.

Keith Pressman's business address according to the State Bar of California website is 409 Santa Monica Boulevard, Suite E, Santa Monica, CA 90401. The Trustee is not aware of an attorney representing Keith Pressman, although the Trustee notes that Keith Pressman appears to be a practicing attorney licensed by the State Bar of California.

Ruben Moreno's address, according to the unverified Statement of Financial Affairs filed by the Debtor (Docket No. 109), is 409 Santa Monica Boulevard, Suite E, Santa Monica, CA 90401, the same address as for Keith Pressman.

Kirkland's business address is Luce Forward, 601 South Figueroa Street, Suite 3900, Los Angeles, CA 90017. The Trustee is not aware of an attorney representing Kirkland. The Trustee notes that Kirkland is an attorney and has appeared before this Court in this bankruptcy case.

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Main Document Page 22 of 53

The business address for Broadway Entertainment Marketing, Inc., according to the California Secretary of State Website, is 520 Broadway, Suite 660, Santa Monica, CA 90401. Keith Pressman is listed as the agent for service of process. Keith Pressman's current business address, according to the State Bar of California website, is 409 Santa Monica Boulevard, Suite E, Santa Monica, CA 90401.

The address for S.C. Club, L.P. and for S.C. Club, Inc., according to the California Secretary of State website, is 520 Broadway, Suite 660, Santa Monica, CA 90401. Keith Pressman is listed as the agent for service of process for both S.C. Club, L.P. and S.C. Club, Inc. Keith Pressman's current business address, according to the State Bar of California website, is 409 Santa Monica Boulevard, Suite E, Santa Monica, CA 90401.

The address for the Bright Conscience Trust, according to the unverified Statement of Financial Affairs filed by the Debtor (Docket No. 109), is 754 Swarthmore Avenue, Pacific Palisades, CA 90272.

The address for HMB Holdings, according to the unverified Statement of Financial Affairs filed by the Debtor (Docket No. 109), is 23448 Moon Shadows Drive, Malibu, CA 90265.

Ted Jonavic's address, according to the unverified Statement of Financial Affairs filed by the Debtor (Docket No. 109), is 5724 Shire Court, Rancho Cucamonga, CA.

## V.

## MEET AND CONFER

Pursuant to Loc. Bankr. R. 2004-1(a) and (b), Special Litigation Counsel for the Trustee hereby certifies that good faith efforts were used to meet and confer with each of the Examinees, or their counsel, to arrange for an agreeable date, time, place and scope of an examination and production pursuant to Rule 2004 as follows:

- **Person(s) Most Qualified for the Debtor.** Counsel for the Trustee sent several e-mails to Kirkland requesting to meet and confer. Kirkland initially did not respond as to who the person(s) most qualified for the Debtor would be, or with

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Main Document Page 23 of 53

dates and times for the examination.[67] Kirkland did not agree to meet-and-confer telephonically or in person.[68] Kirkland later stated that the person most qualified is Jerrold Pressman.[69]

- **Jerrold Pressman.** Kirkland did not agree to meet-and-confer telephonically or in person. However, Kirkland provided available dates for the examinations of Jerrold Pressman. One of the dates provided by Kirkland is May 17, 2011, the date that is set herein for the examination of Jerrold Pressman.[70]
- **Keith Pressman.** Kirkland stated that he does not represent Keith Pressman and that counsel for the Trustee should contact Keith Pressman directly.[71] Counsel for the Trustee sent a meet-and-confer letter to Keith Pressman on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer.[72] Counsel for the Trustee received no response from Keith Pressman.[73]
- **Ruben Moreno.** Kirkland stated that he does not represent Ruben Moreno and that counsel for the Trustee should contact Ruben Moreno directly.[74] Counsel for the Trustee sent a meet-and-confer letter to Ruben Moreno on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer.[75] Counsel for the Trustee received no response from Ruben Moreno.[76]
- **John Kirkland.** Kirkland did not agree to meet-and-confer telephonically or in person. However, Kirkland provided available dates for his examinations. One of the dates provided by Kirkland is May 9, 2011, the date that is set herein for the examination of Kirkland.[77]

[67] Weber Declaration, ¶ 3.
[68] Weber Declaration, ¶ 3.
[69] Weber Declaration, ¶ 3.
[70] Weber Declaration, ¶ 3.
[71] Weber Declaration, ¶ 3.
[72] Weber Declaration, ¶ 3.
[73] Weber Declaration, ¶ 3.
[74] Weber Declaration, ¶ 3.
[75] Weber Declaration, ¶ 3.
[76] Weber Declaration, ¶ 3.
[77] Weber Declaration, ¶ 3.

- **Broadway Entertainment Marketing, Inc.** Counsel for the Trustee sent a meet-and-confer letter to Broadway Entertainment Marketing, Inc. on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer.[78] Counsel for the Trustee received no response from Broadway Entertainment.[79] On April 25, 2011, counsel for the Trustee received an e-mail from Matt Gruenberg, Esq. stating that Jerrold Pressman is the person most qualified for Broadway Entertainment and that Pressman would attend the examination on May 17, 2011.[80]
- **S.C. Club, L.P.** Counsel for the Trustee sent a meet-and-confer letter to S.C. Club, L.P. on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer.[81] Counsel for the Trustee received no response from S.C. Club, L.P.[82] On April 25, 2011, counsel for the Trustee received an e-mail from Matt Gruenberg, Esq. stating that Jerrold Pressman is the person most qualified for "SC Club" and that Pressman would attend the examination on May 17, 2011.[83]
- **S.C. Club, Inc.** Counsel for the Trustee sent a meet-and-confer letter to S.C. Club, Inc. on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer.[84] Counsel for the Trustee received no response from S.C. Club, Inc.[85] On April 25, 2011, counsel for the Trustee received an e-mail from Matt Gruenberg, Esq. stating that Jerrold Pressman is the person most qualified for "SC Club" and that Pressman would attend the examination on May 17, 2011.[86]

---

78 Weber Declaration, ¶ 3.
79 Weber Declaration, ¶ 3.
80 Weber Declaration, ¶ 3.
81 Weber Declaration, ¶ 3.
82 Weber Declaration, ¶ 3.
83 Weber Declaration, ¶ 3.
84 Weber Declaration, ¶ 3.
85 Weber Declaration, ¶ 3.
86 Weber Declaration, ¶ 3.

- **The Bright Conscience Trust.** Counsel for the Trustee sent a meet-and-confer letter to The Bright Conscience Trust on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer.[87] Counsel for the Trustee received no response from The Bright Conscience Trust.[88]
- **HMB Holdings, LLC.** Counsel for the Trustee sent a meet-and-confer letter to HMB Holdings, LLC on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer.[89] Counsel for the Trustee received no response from HMB Holdings, LLC by the deadline stated in the letter.[90] Subsequently, counsel for the Trustee received two voicemail messages from Thom Ferro on behalf of HMB Holdings, LLC. Counsel for the Trustee has also left voicemail messages for Mr. Ferro but has not been able to reach him. Based on the amount of time since counsel sent the meet-and-confer letter (approximately 11 days now), the Trustee is proceeding with this Motion as to HMB Holdings, LLC. However, the Trustee will attempt to accommodate HMB Holdings, LLC's schedule should Mr. Ferro contact counsel again.[91]
- **Ted Jonavic.** Counsel for the Trustee sent a meet-and-confer letter to Ted Jonavic on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer.[92] Counsel for the Trustee received a call from Ted Jonavic stating that he is represented by Randall Dean, Esq. of Chapman, Glucksman & Dean but that Mr. Dean was on vacation.[93] Counsel for the Trustee left a voicemail for Mr. Dean, sent an e-mail to Mr. Dean and spoke with a person at his firm during the week of April 18, 2011. Counsel for the Trustee spoke with Mr. Dean on April 26, 2011. Mr. Dean stated that Mr. Jonavic would not be represented by him but would instead be represented by Steve Tully

---

[87] Weber Declaration, ¶ 3.
[88] Weber Declaration, ¶ 3.
[89] Weber Declaration, ¶ 3.
[90] Weber Declaration, ¶ 3.
[91] Weber Declaration, ¶ 3.
[92] Weber Declaration, ¶ 3.
[93] Weber Declaration, ¶ 3.

of Garrett & Tully LLP. Counsel for the Trustee left a message for Mr. Tully on April 26, 2011 and spoke with Mr. Tully on April 27, 2011. Although the Trustee is proceeding with this Motion as to Mr. Jonavic given that approximately 11 days have elapsed since the meet-and-confer letter was sent, as discussed with Mr. Tully, the Trustee will attempt to accommodate both Mr. Jonavic and Mr. Tully's schedules.[94]

## VI.

## CONCLUSION

Based on the grounds stated herein and in Rund Declaration and the Weber Declaration, the Trustee respectfully requests that this Court enter an order granting this Motion and ordering the Examinees to appear for their examinations and to produce the documents and things requested by the Trustee.

Dated: April 27, 2011

**EZRA BRUTZKUS GUBNER LLP**

By: /s/ Corey R. Weber
COREY R. WEBER
Special Litigation Counsel for Jason Rund, Chapter 7 Trustee

[94] Weber Declaration, ¶ 3.

**DECLARATION OF JASON RUND**

I, Jason Rund, declare as follows:

1. I am the duly appointed and acting Chapter 7 Trustee ("Trustee") for the bankruptcy estate the ("Estate") of EPD Investment Company, LLC (the "Debtor").

2. I have personal knowledge of the facts in this declaration and, if called as a witness, could testify competently to these facts. This declaration is in support of the Motion. All capitalized terms used herein are as defined in the Motion.

3. On December 7, 2010, the petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively, the "Petitioning Creditors") filed the involuntary Chapter 7 petition against the Debtor.

4. On February 9, 2011, the Order for Relief was entered in this case.

5. On or about February 12, 2011, I was appointed as the Chapter 7 Trustee in this case.

6. I am currently investigating the Debtor's assets, liabilities, financial affairs, transfers and transactions. In connection with my investigation, I believe that it is necessary that I obtain the testimony of the following persons and person(s) most qualified as to the following entities in regard to the acts, conduct, property, liabilities and financial condition of the Debtor, or as to matters which may affect the administration of the Debtor's estate:

a. The person(s) most qualified for the Debtor;

b. Jerrold Pressman;

c. Keith Pressman;

d. Ruben Moreno;

e. John C. Kirkland, Esq. ("Kirkland") of Luce Forward Hamilton & Scripps LLP ("Luce Forward");

f. The person(s) most qualified for Broadway Entertainment Marketing, Inc.;

g. The person(s) most qualified for S.C. Club, L.P.;

h. The person(s) most qualified for S.C. Club, Inc.;

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Main Document Page 28 of 53

i. The person(s) most qualified for the Bright Conscience Trust;

j. The person(s) most qualified for HMB Holdings, LLC; and

k. Ted Jonavic.

7. The above-listed examinations must proceed pursuant to Fed. R. Bankr. P. 2004 and cannot proceed under Fed. R. Bankr. P. 7030 because no adversary proceeding has been commenced, and cannot proceed under Fed. R. Bankr. P. 9014 because the examinations are not being taken as part of a contested matter.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26 day of April, 2011 at El Segundo, California.

JASON RUND

**DECLARATION OF COREY R. WEBER**

I, Corey R. Weber, declare as follows:

1. I am an attorney licensed to practice before this Court and am an attorney with the law firm of Ezra Brutzkus Gubner LLP, the special litigation counsel for Jason M. Rund, the duly appointed and acting Chapter 7 Trustee for the within bankruptcy estate (the "Trustee"). I make this declaration in support of the Trustee's Motion. All capitalized terms used herein are as defined in the Motion.

2. I have personal knowledge of the facts in this declaration and, if called as a witness, could testify competently to the facts set forth herein.

3. Pursuant to Local Bankruptcy Rule 2004-1(a) and (b), I used good faith efforts to meet and confer with each of the examinees, or their counsel, to arrange for an agreeable date, time, place and scope of an examination and production pursuant to Rule 2004 as follows:

- **Person(s) Most Qualified for the Debtor.** I sent several e-mails to Kirkland requesting to meet and confer. Kirkland did not respond as to who the person(s) most qualified for the Debtor would be, or with dates and times for the examination. Kirkland did not agree to meet-and-confer telephonically or in person. Kirkland later stated that Jerrold Pressman would be the person most qualified. True and correct copies of the e-mails are attached hereto as **Exhibit L**.
- **Jerrold Pressman.** I sent several e-mails to Kirkland requesting to meet and confer. Kirkland did not agree to meet-and-confer telephonically or in person. However, Kirkland provided available dates for the examinations of Jerrold Pressman. True and correct copies of the e-mails are attached hereto as **Exhibit L**. One of the dates provided by Kirkland is May 17, 2011, the date that is set herein for the examination of Jerrold Pressman.
- **Keith Pressman.** Kirkland stated that he does not represent Keith Pressman and that counsel for the Trustee should contact Keith Pressman directly. True and correct copies of the e-mails are attached hereto as **Exhibit L**. I sent a meet-and-confer letter to Keith Pressman on April 15, 2011 via overnight delivery and

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Main Document Page 30 of 53

providing until 12:00 p.m. on April 20, 2011 to meet-and-confer. A true and correct copy of the letter is attached hereto as **Exhibit M**. I received no response from Keith Pressman.

- **Ruben Moreno.** Kirkland stated that he does not represent Ruben Moreno and that I should contact Ruben Moreno directly. True and correct copies of the e-mails are attached hereto as **Exhibit L**. I sent a meet-and-confer letter to Ruben Moreno on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer. A true and correct copy of the letter is attached hereto as **Exhibit N**. I received no response from Ruben Moreno.
- **John Kirkland.** Kirkland did not agree to meet-and-confer telephonically or in person. However, Kirkland provided available dates for his examinations. True and correct copies of the e-mails are attached hereto as **Exhibit L**. One of the dates provided by Kirkland is May 9, 2011, the date that is set herein for the examination of Kirkland.
- **Broadway Entertainment Marketing, Inc.** I sent a meet-and-confer letter to Broadway Entertainment Marketing, Inc. on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer. A true and correct copy of the letter is attached hereto as **Exhibit O**. I received no response from Broadway Entertainment. On April 25, 2011, I received an e-mail from Matt Gruenberg, Esq. stating that Jerrold Pressman is the person most qualified for Broadway Entertainment and that Pressman would attend the examination on May 17, 2011.
- **S.C. Club, L.P.** I sent a meet-and-confer letter to S.C. Club, L.P. on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer. A true and correct copy of the letter is attached hereto as **Exhibit P**. I received no response from S.C. Club, L.P. On April 25, 2011, I received an e-mail from Matt Gruenberg, Esq. stating that Jerrold Pressman is the

person most qualified for "SC Club" and that Pressman would attend the examination on May 17, 2011.

- **S.C. Club, Inc.** I sent a meet-and-confer letter to S.C. Club, Inc. on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer. A true and correct copy of the letter is attached hereto as **Exhibit Q**. I received no response from S.C. Club, Inc. On April 25, 2011, I received an e-mail from Matt Gruenberg, Esq. stating that Jerrold Pressman is the person most qualified for "SC Club" and that Pressman would attend the examination on May 17, 2011.
- **The Bright Conscience Trust.** I sent a meet-and-confer letter to The Bright Conscience Trust on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer. A true and correct copy of the letter is attached hereto as **Exhibit R**. I received no response from The Bright Conscience Trust.
- **HMB Holdings, LLC.** I sent a meet-and-confer letter to HMB Holdings, LLC on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer. A true and correct copy of the letter is attached hereto as **Exhibit S**. I received no response from HMB Holdings, LLC by the deadline stated in the letter. Subsequently, I received two voicemail messages from Thom Ferro on behalf of HMB Holdings, LLC. I left voicemail messages for Mr. Ferro but have not been able to reach him. Based on the amount of time since I sent the meet-and-confer letter (approximately 11 days now), the Trustee is proceeding with the Motion as to HMB Holdings, LLC but I will attempt to accommodate HMB Holdings, LLC/Mr. Ferro's schedule should Mr. Ferro contact me again.
- **Ted Jonavic.** I sent a meet-and-confer letter to Ted Jonavic on April 15, 2011 via overnight delivery and providing until 12:00 p.m. on April 20, 2011 to meet-and-confer. A true and correct copy of the letter is attached hereto as **Exhibit T**. I received a call from Ted Jonavic stating that he is represented by Randall Dean,

Esq. of Chapman, Glucksman & Dean but that Mr. Dean was on vacation. I left a voicemail for Mr. Dean, sent an e-mail to Mr. Dean and spoke with a person at his firm during the week of April 18, 2011. I spoke with Mr. Dean on April 26, 2011. Mr. Dean stated that Mr. Jonavic would not be represented by him but would instead be represented by Steve Tully of Garrett & Tully LLP. I left a message for Mr. Tully on April 26, 2011 and spoke with Mr. Tully on April 27, 2011. Although the Trustee is proceeding with this Motion as to Mr. Jonavic given that approximately 11 days have elapsed since the meet-and-confer letter was sent, as I discussed with Mr. Tully, I will attempt to accommodate Mr. Jonavic and Mr. Tully's schedule in the event that there is an issue and will attempt to work with them as to any issues as to the scope of the examination or production of documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed this 27th day of April, 2011 at Woodland Hills, California.

COREY R. WEBER

**EXHIBIT "A"**

Jason Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "DEBTOR") hereby requests and requires that the DEBTOR designate and produce the person or persons most qualified to testify on behalf of the DEBTOR on the following matters:

1. The business conducted by the DEBTOR.
2. The business model of the DEBTOR.
3. Whether the DEBTOR is currently operating.
4. Whether the DEBTOR is a going concern business.
5. The current business location(s) of DEBTOR's business.
6. The location of the DEBTOR's books and records.
7. The contents of the DEBTOR's books and records.
8. The DEBTOR's management team.
9. The DEBTOR's directors, officers, managers and members.
10. Whether the DEBTOR is generally paying debts as they become due.
11. Whether the DEBTOR has any past due bills or late payments at present.
12. Whether the DEBTOR is paying its debts in the ordinary course of business.
13. The DEBTOR's lenders.
14. The DEBTOR's customers.
15. The DEBTOR's business partners.
16. The DEBTOR's employees.
17. The DEBTOR's agents.
18. The DEBTOR's independent contractors.
19. The DEBTOR's filings with the California Secretary of State.
20. The DEBTOR's filings with the California Department of Corporations.

21. The DEBTOR's filings with the United States Securities & Exchange Commission.

22. Corporate (limited liability company) minutes for the DEBTOR.

23. Corporate (limited liability company) resolutions of the DEBTOR.

24. Bylaws of the DEBTOR.

25. Meetings of the managers of the DEBTOR.

26. Meetings of the members of the DEBTOR.

27. Meetings of the board of directors of the DEBTOR.

28. Meetings of the owners of the DEBTOR regarding the DEBTOR.

29. The ownership of the DEBTOR.

30. Demands sent to the DEBTOR for repayment of loans during the two years prior to December 2010.

31. Demands sent to the DEBTOR for repayment of promissory notes during the two years prior to December 2010.

32. Demands sent to the DEBTOR for repayment of demand notes during the two years prior to December 2010.

33. Demands to the DEBTOR for repayment of investments during the two years prior to December 2010.

34. Promissory notes executed by the DEBTOR.

35. Demand notes executed by the DEBTOR.

36. Security agreements executed by the DEBTOR.

37. Holders of notes executed by the DEBTOR.

38. Investments made by the DEBTOR.

39. Promissory notes in favor of the DEBTOR.

40. Security agreements in favor of the DEBTOR.

41. UCC-1 filings in favor of the DEBTOR.

42. Judgments in favor of the DEBTOR.

43. Investors in the DEBTOR.

44. Tax returns for the DEBTOR.

45. Bank records for the DEBTOR.

46. Records for securities accounts for the DEBTOR.

47. Records for investment accounts for the DEBTOR.

48. The DEBTOR's inventory.

49. The DEBTOR's accounts receivable.

50. The DEBTOR's accounts payable.

51. Audited financial statements for the DEBTOR.

52. Unaudited financial statements for the DEBTOR.

53. The DEBTOR's assets.

54. The DEBTOR's liabilities.

55. The DEBTOR's equity.

56. The DEBTOR's computers, hard drives, back-up drives and other media for storing electronic records.

57. The DEBTOR's e-mail accounts and e-mail records.

58. Agreements entered into by the DEBTOR.

59. Transfers from the DEBTOR to, or for the benefit of, Luce Forward Hamilton & Scripps LLP.

60. Transfers from the DEBTOR to, or for the benefit of, Jerrold Pressman.

61. Transfers from the DEBTOR to, or for the benefit of, Katy Werner.

62. Transfers from the DEBTOR to, or for the benefit of, John C. Kirkland.

63. Transfers from the DEBTOR to, or for the benefit of, Keith Pressman.

64. Transfers from the DEBTOR to, or for the benefit of, Ruben Moreno.

65. Transfers from the DEBTOR to, or for the benefit of, Theodore Jonavic.

66. Theodore Jonavic's role in regard to the DEBTOR.

67. Transfers from the DEBTOR to, or for the benefit of, Thom Ferro.

68. Thom Ferro role in regard to the DEBTOR.

69. Transfers from the DEBTOR to, or for the benefit of, EPD Investment Leasing Co., LLC.

70. Transfers from the DEBTOR to, or for the benefit of, the Bright Conscience Trust Dated September 9, 2009.

71. The Bright Conscience Trust Dated September 9, 2009.

72. Transfers from the DEBTOR to, or for the benefit of, HMB Holdings, LLC.

73. HMB Holdings, LLC.

74. Transfers from the DEBTOR to, or for the benefit of, Robert Gerringer.

75. Robert Gerringer.

76. Transfers from the DEBTOR to, or for the benefit of, Broadway Entertainment Marketing, Inc.

77. Broadway Entertainment Marketing, Inc.'s relation to, and transactions with, the DEBTOR.

78. Promissory notes by Broadway Entertainment Marketing, Inc. in favor of the Debtor.

79. Promissory notes by Jerrold Pressman in favor of the Debtor.

80. Transfers from the DEBTOR to, or for the benefit of, S.C. Club, L.P.

81. S.C. Club L.P.'s relation to, and transactions with, the DEBTOR.

82. Promissory notes by S.C. Club L.P. in favor of the Debtor.

83. S.C. Club Inc.'s relation to, and transactions with, the DEBTOR.

84. Promissory notes by S.C. Club Inc. in favor of the Debtor.

85. Transfers from the DEBTOR to, or for the benefit of, S.C. Club, Inc.

86. Transfers from the DEBTOR to, or for the benefit of, any entity partially owned or controlled by Jerrold Pressman.

87. Transfers from the DEBTOR to, or for the benefit of, any entity partially owned or controlled by Keith Pressman.

88. Transfers from the DEBTOR to, or for the benefit of, any entity partially owned or controlled by Robert Gerringer.

89. Transfers from the DEBTOR to, or for the benefit of, any entity partially owned or controlled by Ruben Moreno.

90. Transfers from the DEBTOR to, or for the benefit of, any entity partially owned or controlled by John Kirkland.

91. Transfers from the DEBTOR to any person or entity from December 2003 to the present.

92. Engagement agreements between the DEBTOR and Greenberg Traurig LLP.

93. The scope of engagements by the DEBTOR of Greenberg Traurig LLP.

94. The subject matter of engagements by the DEBTOR of Greenberg Traurig LLP.

95. Engagement agreements between the DEBTOR and Dreier Stein & Kahan.

96. The scope of engagements by the DEBTOR of Dreier Stein & Kahan.

97. The subject matter of engagements by the DEBTOR of Dreier Stein & Kahan.

98. Engagement agreements between the DEBTOR and Luce Forward Hamilton & Scripps LLP.

99. The scope of engagements by the DEBTOR of Luce Forward Hamilton & Scripps LLP.

100. The subject matter of engagements by the DEBTOR of Luce Forward Hamilton & Scripps LLP.

101. The scope of engagements by the DEBTOR of John C. Kirkland.

102. The subject matter of engagements by the DEBTOR of John C. Kirkland.

103. Discussions between the DEBTOR and Luce Forward Hamilton & Scripps LLP.

104. Discussions between the DEBTOR and Greenberg Traurig LLP.

105. Discussions between the DEBTOR and Dreier Stein & Kahan.

106. Discussions between the DEBTOR and John C. Kirkland.

107. Discussions between Jerrold Pressman and Luce Forward Hamilton & Scripps LLP.

108. Discussions between Jerrold Pressman and Greenberg Traurig LLP.

109. Discussions between Jerrold Pressman and Dreier Stein & Kahan.

110. Discussions between Jerrold Pressman and John C. Kirkland.

111. Discussions between Keith Pressman and Luce Forward Hamilton & Scripps LLP.

112. Discussions between Keith Pressman and Greenberg Traurig LLP.

113. Discussions between Keith Pressman and Dreier Stein & Kahan.

114. Discussions between Keith Pressman and John C. Kirkland.

115. Discussions between Ruben Moreno and Luce Forward Hamilton & Scripps LLP.

116. Discussions between Ruben Moreno and Greenberg Traurig LLP.

117. Discussions between Ruben Moreno and Dreier Stein & Kahan.

118. Discussions between Ruben Moreno and John C. Kirkland.

119. Discussions between Christine Kamps and Luce Forward Hamilton & Scripps LLP.

120. Discussions between Christine Kamps and Greenberg Traurig LLP.

121. Discussions between Christine Kamps and Dreier Stein & Kahan.

122. Discussions between Christine Kamps and John C. Kirkland.