123. Invoices that the DEBTOR received from Luce Forward Hamilton & Scripps LLP.

124. Invoices that the DEBTOR received from Greenberg Traurig LLP.

125. Invoices that the DEBTOR received from Dreier Stein & Kahan.

126. Invoices that the DEBTOR received from John C. Kirkland.

127. Memoranda from Luce Forward Hamilton & Scripps LLP to the DEBTOR.

128. Memoranda from Greenberg Traurig LLP to the DEBTOR.

129. Memoranda from Dreier Stein & Kahan to the DEBTOR.

130. Memoranda from John C. Kirkland to the DEBTOR.

131. Memoranda from Luce Forward Hamilton & Scripps LLP to Jerrold Pressman.

132. Memoranda from Greenberg Traurig LLP to Jerrold Pressman.

133. Memoranda from Dreier Stein & Kahan to Jerrold Pressman.

134. Any and all memoranda from Luce Forward Hamilton & Scripps LLP to Keith Pressman.

135. Any and all memoranda from Greenberg Traurig LLP to Keith Pressman.

136. Any and all memoranda from Dreier Stein & Kahan to Keith Pressman.

137. Memoranda from Luce Forward Hamilton & Scripps LLP to Ruben Moreno.

138. Any and all memoranda from Greenberg Traurig LLP to Ruben Moreno.

139. Any and all memoranda from Dreier Stein & Kahan to Ruben Moreno.

140. Memoranda from Luce Forward Hamilton & Scripps LLP to Christine Kamps.

141. Any and all memoranda from Greenberg Traurig LLP to Christine Kamps.

142. Any and all memoranda from Dreier Stein & Kahan to Christine Kamps.

143. Memoranda from John C. Kirkland to Jerrold Pressman.

144. Memoranda from John C. Kirkland to Keith Pressman.

145. Memoranda from John C. Kirkland to Ruben Moreno.

146. Memoranda from John C. Kirkland to Christine Kamps.

147. Correspondence between the DEBTOR and Luce Forward Hamilton & Scripps LLP.

148. Correspondence between the DEBTOR and Greenberg Traurig LLP.

149. Correspondence between the DEBTOR and Dreier Stein & Kahan.

150. Correspondence between the DEBTOR and John C. Kirkland.

151. Correspondence between Jerrold Pressman and John C. Kirkland.

152. Correspondence between Keith Pressman and John C. Kirkland.

153. Correspondence between Ruben Moreno and John C. Kirkland.

154. Correspondence between Christine Kamps and John C. Kirkland.

155. Other areas of inquiry based on information obtained by the Trustee subsequent to the notice of deposition.

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Main Document Page 41 of 53

**EXHIBIT "B"**

Request for Production of Documents and Things
For the Person(s) Most Qualified for the Debtor
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

**I.**

**DEFINITIONS**

1. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "KIRKLAND" shall mean JOHN C. KIRKLAND, an individual.

6. The term "LUCE FORWARD" shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

7. The term "MORENO" shall mean RUBEN MORENO, an individual.

8. The term "PETITION DATE" shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

9. The term "PRESSMAN" shall mean JERROLD PRESSMAN, an individual.

10. The term "KEITH PRESSMAN" shall mean KEITH PRESSMAN, an individual.

11. The term "TRANSFER" shall refer to and mean all checks, cashier's checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

12. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

**II.**

**REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

1. Any and all DOCUMENTS REGARDING the business model of the DEBTOR.

2. Any and all offering circulars prepared by the DEBTOR.

3. Any and all investment materials prepared by the DEBTOR.

4. Any and all DOCUMENTS REGARDING whether the DEBTOR is currently operating.

5. Any and all DOCUMENTS REGARDING whether the DEBTOR is a going concern business.

6. Any and all DOCUMENTS REGARDING the current business location(s) of DEBTOR's business.

7. All of the DEBTOR's books and records to the extent not previously produced to the Trustee.

8. Any and all DOCUMENTS listing the DEBTOR's management team.

9. Any and all DOCUMENTS listing the DEBTOR's directors, officers, managers and members.

10. Any and all DOCUMENTS REGARDING whether the DEBTOR generally pays debts as they become due.

11. Any and all DOCUMENTS REGARDING whether the DEBTOR has any past due bills or late payments at present.

12. Any and all DOCUMENTS REGARDING whether the DEBTOR pays its debts in the ordinary course of business.

13. Any and all DOCUMENTS REGARDING the DEBTOR's lenders.

14. Any and all DOCUMENTS REGARDING the DEBTOR's customers.

15. Any and all DOCUMENTS REGARDING the DEBTOR's business partners.

16. Any and all DOCUMENTS REGARDING the DEBTOR's joint venture partners.

17. Any and all DOCUMENTS REGARDING the DEBTOR's affiliates.

18. Any and all DOCUMENTS REGARDING the DEBTOR's investors.

19. Any and all DOCUMENTS REGARDING the DEBTOR's employees.

20. Any and all DOCUMENTS REGARDING the DEBTOR's agents.

21. Any and all DOCUMENTS REGARDING the DEBTOR's independent contractors.

22. Any and all DOCUMENTS that the DEBTOR has filed with the California Secretary of State.

23. Any and all DOCUMENTS that the DEBTOR has filed with the California Department of Corporations.

24. Any and all DOCUMENTS that the DEBTOR has filed with the United States Securities & Exchange Commission.

25. Any and all corporate (limited liability company) minutes for the DEBTOR.

26. Any and all corporate (limited liability company) resolutions of the DEBTOR.

27. Any and all bylaws of the DEBTOR.

28. Any and all notes from meetings of the managers of the DEBTOR.

29. Any and all notes from meetings of the members of the DEBTOR.

30. Any and all notes from meetings of the board of directors of the DEBTOR.

31. Any and all notes from meetings of the owners of the DEBTOR REGARDING the DEBTOR.

32. Any and all DOCUMENTS REGARDING the ownership of the DEBTOR.

33. Any and all demands sent to the DEBTOR for repayment of loans during the two years prior to the PETITION DATE.

34. Any and all demands sent to the DEBTOR for repayment of promissory notes during the two years prior to the PETITION DATE.

35. Any and all demands sent to the DEBTOR for repayment of demand notes during the two years prior to the PETITION DATE.

36. Any and all demands to the DEBTOR for repayment of investments during the two years prior to the PETITION DATE.

37. All promissory notes executed by the DEBTOR.

38. All demand notes executed by the DEBTOR.

39. All security agreements executed by the DEBTOR.

40. All UCC-1 filings authorized by the DEBTOR.

41. All DOCUMENTS listing the holders of notes executed by the DEBTOR.

42. All investments made by the DEBTOR.

43. All DOCUMENTS REGARDING investments made by the DEBTOR.

44. All promissory notes in favor of the DEBTOR.

45. All demand notes in favor of the DEBTOR.

46. All security agreements in favor of the DEBTOR.

47. All UCC-1 filings in favor of the DEBTOR.

48. All judgments in favor of the DEBTOR.

49. All DOCUMENTS listing the investors in the DEBTOR.

50. Any and all tax returns for the DEBTOR.

51. Any and all bank records for the DEBTOR.

52. Any and all records for securities accounts for the DEBTOR.

53. Any and all records for investment accounts for the DEBTOR.

54. Any and all DOCUMENTS regarding the DEBTOR's current assets.

55. Any and all DOCUMENTS regarding the DEBTOR's fixed assets.

56. Any and all DOCUMENTS regarding the DEBTOR's inventory.

57. Any and all DOCUMENTS regarding the DEBTOR's accounts receivable.

58. Any and all DOCUMENTS regarding the DEBTOR's accounts payable.

59. Any and all audited financial statements for the DEBTOR.

60. Any and all unaudited financial statements for the DEBTOR.

61. Any and all Quick Books records for the DEBTOR.

62. Any and all DOCUMENTS listing the DEBTOR's assets.

63. Any and all DOCUMENTS listing the DEBTOR's liabilities.

64. Any and all DOCUMENTS listing the DEBTOR's equity.

65. All of the DEBTOR's computers, hard drives, back-up drives and other media for storing electronic records.

66. All of the DEBTOR's e-mail records.

67. Any and all agreements entered into by the DEBTOR.

68. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to LUCE FORWARD.

69. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Greenberg Traurig LLP.

70. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Dreier Stein & Kahan.

71. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KIRKLAND.

72. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KIRKLAND.

73. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to PRESSMAN.

74. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by PRESSMAN.

75. All promissory notes executed by PRESSMAN in favor of the DEBTOR.

76. All DOCUMENTS REGARDING promissory notes executed by PRESSMAN in favor of the DEBTOR.

77. All demand notes executed by PRESSMAN in favor of the DEBTOR.

78. All DOCUMENTS REGARDING demand notes executed by PRESSMAN in favor of the DEBTOR.

79. All security agreements executed by PRESSMAN in favor of the DEBTOR.

80. All DOCUMENTS REGARDING security agreements executed by PRESSMAN in favor of the DEBTOR.

81. All UCC-1 filings authorized by PRESSMAN in favor of the DEBTOR.

82. All DOCUMENTS REGARDING UCC-1 filings authorized by PRESSMAN in favor of the DEBTOR.

83. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KEITH PRESSMAN.

84. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KEITH PRESSMAN.

85. All promissory notes executed by KEITH PRESSMAN in favor of the DEBTOR.

86. All DOCUMENTS REGARDING promissory notes executed by KEITH PRESSMAN in favor of the DEBTOR.

87. All demand notes executed by KEITH PRESSMAN in favor of the DEBTOR.

88. All DOCUMENTS REGARDING demand notes executed by KEITH PRESSMAN in favor of the DEBTOR.

89. All security agreements executed by KEITH PRESSMAN in favor of the DEBTOR.

90. All DOCUMENTS REGARDING security agreements executed by KEITH PRESSMAN in favor of the DEBTOR.

91. All UCC-1 filings authorized by KEITH PRESSMAN in favor of the DEBTOR.

92. All DOCUMENTS REGARDING UCC-1 filings authorized by KEITH PRESSMAN in favor of the DEBTOR.

93. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, L.P.

94. All promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

95. All DOCUMENTS REGARDING promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

96. All demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

97. All DOCUMENTS REGARDING demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

98. All security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

99. All DOCUMENTS REGARDING security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

100. All UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

101. All DOCUMENTS REGARDING UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

102. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, Inc.

103. All promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

104. All DOCUMENTS REGARDING promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

105. All demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

106. All DOCUMENTS REGARDING demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

107. All security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

108. All DOCUMENTS REGARDING security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

109. All UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

110. All DOCUMENTS REGARDING UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

111. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to MORENO.

112. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by MORENO.

113. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Broadway Entertainment Marketing, Inc.

114. All promissory notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

115. All DOCUMENTS REGARDING promissory notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

116. All demand notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

117. All DOCUMENTS REGARDING demand notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

118. All security agreements executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

119. All DOCUMENTS REGARDING security agreements executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

120. All UCC-1 filings authorized by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

121. All DOCUMENTS REGARDING UCC-1 filings authorized by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

122. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Robert Gerringer.

123. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

124. All promissory notes executed by Robert Gerringer in favor of the DEBTOR.

125. All DOCUMENTS REGARDING promissory notes executed by Robert Gerringer in favor of the DEBTOR.

126. All demand notes executed by Robert Gerringer in favor of the DEBTOR.

127. All DOCUMENTS REGARDING demand notes executed by Robert Gerringer in favor of the DEBTOR.

128. All security agreements executed by Robert Gerringer in favor of the DEBTOR.

129. All DOCUMENTS REGARDING security agreements executed by Robert Gerringer in favor of the DEBTOR.

130. All UCC-1 filings authorized by Robert Gerringer in favor of the DEBTOR.

131. All DOCUMENTS REGARDING UCC-1 filings authorized by Robert Gerringer in favor of the DEBTOR.

132. All promissory notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

133. All DOCUMENTS REGARDING promissory notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

134. All demand notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

135. All DOCUMENTS REGARDING demand notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

136. All security agreements executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

137. All DOCUMENTS REGARDING security agreements executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

138. All UCC-1 filings authorized by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

139. All DOCUMENTS REGARDING UCC-1 filings authorized by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

140. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Katy Werner.

141. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Katy Werner.

142. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Theodore Jonavic.

143. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

144. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to EPD Investment Leasing Co., LLC.

145. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

146. Any and all DOCUMENTS REGARDING the Bright Conscience Trust Dated September 9, 2009.

147. Any and all agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

148. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to HMB Holdings, LLC.

149. Any and all agreements between the DEBTOR and HMB Holdings, LLC.

150. Any and all DOCUMENTS REGARDING HMB Holdings, LLC.

151. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR from December 2003 to the present.

152. Any and all engagement agreements between the DEBTOR and Greenberg Traurig LLP.

153. Any and all agreements between the DEBTOR and Greenberg Traurig LLP.

154. Any and all invoices that the DEBTOR received from Greenberg Traurig LLP.

155. Any and all memoranda from Greenberg Traurig LLP to the DEBTOR.

156. Any and all engagement agreements between the DEBTOR and Dreier Stein & Kahan.

157. Any and all agreements between the DEBTOR and Dreier Stein & Kahan.

158. Any and all invoices that the DEBTOR received from Dreier Stein & Kahan.

159. Any and all memoranda from Dreier Stein & Kahan to the DEBTOR.

160. Any and all engagement agreements between the DEBTOR and LUCE FORWARD.

161. Any and all agreements between the DEBTOR and LUCE FORWARD.

162. Any and all agreements between the DEBTOR and KIRKLAND.

163. Any and all invoices that the DEBTOR received from LUCE FORWARD.

164. Any and all invoices that the DEBTOR received from KIRKLAND.

165. Any and all memoranda from LUCE FORWARD to the DEBTOR.

166. Any and all memoranda from KIRKLAND to the DEBTOR.

167. Any and all memoranda from LUCE FORWARD to PRESSMAN.

168. Any and all memoranda from LUCE FORWARD to KEITH PRESSMAN.

169. Any and all memoranda from LUCE FORWARD to MORENO.

170. Any and all memoranda from LUCE FORWARD to Christine Kamps.

171. Any and all memoranda from KIRKLAND to PRESSMAN.

172. Any and all memoranda from KIRKLAND to KEITH PRESSMAN.

173. Any and all memoranda from KIRKLAND to MORENO.

174. Any and all memoranda from KIRKLAND to Christine Kamps.

175. Any and all memoranda from Theodore Jonavic to the DEBTOR.

176. Any and all memoranda from Theodore Jonavic to PRESSMAN.

177. Any and all memoranda from Theodore Jonavic to KEITH PRESSMAN.

178. Any and all memoranda from Theodore Jonavic to MORENO.

179. Any and all memoranda from Theodore Jonavic to Christine Kamps.

180. Any and all CORRESPONDENCE between the DEBTOR and LUCE FORWARD.

181. Any and all CORRESPONDENCE between the DEBTOR and Greenberg Traurig LLP.

182. Any and all CORRESPONDENCE between the DEBTOR and Dreier Stein & Kahan.

183. Any and all CORRESPONDENCE between the DEBTOR and KIRKLAND.

184. Any and all CORRESPONDENCE between PRESSMAN and KIRKLAND.

185. Any and all CORRESPONDENCE between KEITH PRESSMAN and KIRKLAND.

186. Any and all CORRESPONDENCE between MORENO and KIRKLAND.

187. Any and all CORRESPONDENCE between Christine Kamps and KIRKLAND.

Case 2:10-bk-62208-ER Doc 123 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Main Document Page 53 of 53

188. All CORRESPONDENCE between LUCE FORWARD and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

189. All CORRESPONDENCE between KIRKLAND and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

190. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

191. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

192. All CORRESPONDENCE between Katy Werner and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

193. All CORRESPONDENCE between MORENO and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

194. All CORRESPONDENCE between PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

195. All CORRESPONDENCE between KEITH PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

# EXHIBIT "A"

Request for Production of Documents and Things for Jerrold Pressman
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

## I.

## DEFINITIONS

1. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "KIRKLAND" shall mean JOHN C. KIRKLAND, an individual.

6. The term "LUCE FORWARD" shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

7. The term "MORENO" shall mean RUBEN MORENO, an individual.

8. The term "PETITION DATE" shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

9. The term "PRESSMAN" shall mean JERROLD PRESSMAN, an individual.

10. The term "KEITH PRESSMAN" shall mean KEITH PRESSMAN, an individual.

11. The term "TRANSFER" shall refer to and mean all checks, cashier's checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

12. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

**II.**

**REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

1. Any and all DOCUMENTS REGARDING the business model of the DEBTOR.

2. Any and all offering circulars prepared by the DEBTOR.

3. Any and all investment materials prepared by the DEBTOR.

4. Any and all DOCUMENTS REGARDING whether the DEBTOR is currently operating.

5. Any and all DOCUMENTS REGARDING whether the DEBTOR is a going concern business.

6. Any and all DOCUMENTS REGARDING the current business location(s) of DEBTOR's business.

Case 2:10-bk-62208-ER Doc 123-1 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Exhibit Part 1 Page 3 of 66

7. All of the DEBTOR's books and records to the extent not previously produced to the Trustee.

8. Any and all DOCUMENTS listing the DEBTOR's management team.

9. Any and all DOCUMENTS listing the DEBTOR's directors, officers, managers and members.

10. Any and all DOCUMENTS REGARDING whether the DEBTOR generally pays debts as they become due.

11. Any and all DOCUMENTS REGARDING whether the DEBTOR has any past due bills or late payments at present.

12. Any and all DOCUMENTS REGARDING whether the DEBTOR pays its debts in the ordinary course of business.

13. Any and all DOCUMENTS REGARDING the DEBTOR's lenders.

14. Any and all DOCUMENTS REGARDING the DEBTOR's customers.

15. Any and all DOCUMENTS REGARDING the DEBTOR's business partners.

16. Any and all DOCUMENTS REGARDING the DEBTOR's joint venture partners.

17. Any and all DOCUMENTS REGARDING the DEBTOR's affiliates.

18. Any and all DOCUMENTS REGARDING the DEBTOR's investors.

19. Any and all DOCUMENTS REGARDING the DEBTOR's employees.

20. Any and all DOCUMENTS REGARDING the DEBTOR's agents.

21. Any and all DOCUMENTS REGARDING the DEBTOR's independent contractors.

22. Any and all DOCUMENTS that the DEBTOR has filed with the California Secretary of State.

23. Any and all DOCUMENTS that the DEBTOR has filed with the California Department of Corporations.

24. Any and all DOCUMENTS that the DEBTOR has filed with the United States Securities & Exchange Commission.

25. Any and all corporate (limited liability company) minutes for the DEBTOR.

26. Any and all corporate (limited liability company) resolutions of the DEBTOR.

27. Any and all bylaws of the DEBTOR.

28. Any and all notes from meetings of the managers of the DEBTOR.

29. Any and all notes from meetings of the members of the DEBTOR.

30. Any and all notes from meetings of the board of directors of the DEBTOR.

31. Any and all notes from meetings of the owners of the DEBTOR REGARDING the DEBTOR.

32. Any and all DOCUMENTS REGARDING the ownership of the DEBTOR.

33. Any and all demands sent to the DEBTOR for repayment of loans during the two years prior to the PETITION DATE.

34. Any and all demands sent to the DEBTOR for repayment of promissory notes during the two years prior to the PETITION DATE.

35. Any and all demands sent to the DEBTOR for repayment of demand notes during the two years prior to the PETITION DATE.

36. Any and all demands to the DEBTOR for repayment of investments during the two years prior to the PETITION DATE.

37. All promissory notes executed by the DEBTOR.

38. All demand notes executed by the DEBTOR.

39. All security agreements executed by the DEBTOR.

40. All UCC-1 filings authorized by the DEBTOR.

41. All DOCUMENTS listing the holders of notes executed by the DEBTOR.

42. All investments made by the DEBTOR.

43. All DOCUMENTS REGARDING investments made by the DEBTOR.

44. All promissory notes in favor of the DEBTOR.

45. All demand notes in favor of the DEBTOR.

46. All security agreements in favor of the DEBTOR.

47. All UCC-1 filings in favor of the DEBTOR.

48. All judgments in favor of the DEBTOR.

49. All DOCUMENTS listing the investors in the DEBTOR.

50. Any and all tax returns for the DEBTOR.

51. Any and all bank records for the DEBTOR.

52. Any and all records for securities accounts for the DEBTOR.

53. Any and all records for investment accounts for the DEBTOR.

54. Any and all DOCUMENTS regarding the DEBTOR's current assets.

55. Any and all DOCUMENTS regarding the DEBTOR's fixed assets.

56. Any and all DOCUMENTS regarding the DEBTOR's inventory.

57. Any and all DOCUMENTS regarding the DEBTOR's accounts receivable.

58. Any and all DOCUMENTS regarding the DEBTOR's accounts payable.

59. Any and all audited financial statements for the DEBTOR.

60. Any and all unaudited financial statements for the DEBTOR.

61. Any and all Quick Books records for the DEBTOR.

62. Any and all DOCUMENTS listing the DEBTOR's assets.

63. Any and all DOCUMENTS listing the DEBTOR's liabilities.

64. Any and all DOCUMENTS listing the DEBTOR's equity.

65. All of the DEBTOR's computers, hard drives, back-up drives and other media for storing electronic records.

66. All of the DEBTOR's e-mail records.

67. Any and all agreements entered into by the DEBTOR.

68. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to LUCE FORWARD.

69. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Greenberg Traurig LLP.

70. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Dreier Stein & Kahan.

71. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KIRKLAND.

72. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KIRKLAND.

73. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to PRESSMAN.

74. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by PRESSMAN.

75. All promissory notes executed by PRESSMAN in favor of the DEBTOR.

76. All DOCUMENTS REGARDING promissory notes executed by PRESSMAN in favor of the DEBTOR.

77. All demand notes executed by PRESSMAN in favor of the DEBTOR.

78. All DOCUMENTS REGARDING demand notes executed by PRESSMAN in favor of the DEBTOR.

79. All security agreements executed by PRESSMAN in favor of the DEBTOR.

80. All DOCUMENTS REGARDING security agreements executed by PRESSMAN in favor of the DEBTOR.

81. All UCC-1 filings authorized by PRESSMAN in favor of the DEBTOR.

82. All DOCUMENTS REGARDING UCC-1 filings authorized by PRESSMAN in favor of the DEBTOR.

83. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KEITH PRESSMAN.

84. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KEITH PRESSMAN.

85. All promissory notes executed by KEITH PRESSMAN in favor of the DEBTOR.

86. All DOCUMENTS REGARDING promissory notes executed by KEITH PRESSMAN in favor of the DEBTOR.

87. All demand notes executed by KEITH PRESSMAN in favor of the DEBTOR.

88. All DOCUMENTS REGARDING demand notes executed by KEITH PRESSMAN in favor of the DEBTOR.

89. All security agreements executed by KEITH PRESSMAN in favor of the DEBTOR.

90. All DOCUMENTS REGARDING security agreements executed by KEITH PRESSMAN in favor of the DEBTOR.

91. All UCC-1 filings authorized by KEITH PRESSMAN in favor of the DEBTOR.

92. All DOCUMENTS REGARDING UCC-1 filings authorized by KEITH PRESSMAN in favor of the DEBTOR.

93. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, L.P.

94. All promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

95. All DOCUMENTS REGARDING promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

96. All demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

97. All DOCUMENTS REGARDING demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

98. All security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

99. All DOCUMENTS REGARDING security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

100. All UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

101. All DOCUMENTS REGARDING UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

102. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, Inc.

103. All promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

104. All DOCUMENTS REGARDING promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

105. All demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

106. All DOCUMENTS REGARDING demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

107. All security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

108. All DOCUMENTS REGARDING security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

109. All UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

110. All DOCUMENTS REGARDING UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

111. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to MORENO.

112. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by MORENO.

113. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Broadway Entertainment Marketing, Inc.

114. All promissory notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

115. All DOCUMENTS REGARDING promissory notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

116. All demand notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

117. All DOCUMENTS REGARDING demand notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

118. All security agreements executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

119. All DOCUMENTS REGARDING security agreements executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

120. All UCC-1 filings authorized by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

121. All DOCUMENTS REGARDING UCC-1 filings authorized by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

122. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Robert Gerringer.

123. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

124. All promissory notes executed by Robert Gerringer in favor of the DEBTOR.

125. All DOCUMENTS REGARDING promissory notes executed by Robert Gerringer in favor of the DEBTOR.

126. All demand notes executed by Robert Gerringer in favor of the DEBTOR.

127. All DOCUMENTS REGARDING demand notes executed by Robert Gerringer in favor of the DEBTOR.

128. All security agreements executed by Robert Gerringer in favor of the DEBTOR.

129. All DOCUMENTS REGARDING security agreements executed by Robert Gerringer in favor of the DEBTOR.

130. All UCC-1 filings authorized by Robert Gerringer in favor of the DEBTOR.

131. All DOCUMENTS REGARDING UCC-1 filings authorized by Robert Gerringer in favor of the DEBTOR.

132. All promissory notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

133. All DOCUMENTS REGARDING promissory notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

134. All demand notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

135. All DOCUMENTS REGARDING demand notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

136. All security agreements executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

137. All DOCUMENTS REGARDING security agreements executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

138. All UCC-1 filings authorized by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

139. All DOCUMENTS REGARDING UCC-1 filings authorized by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

140. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Katy Werner.

141. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Katy Werner.

142. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Theodore Jonavic.

143. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

144. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to EPD Investment Leasing Co., LLC.

145. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

146. Any and all DOCUMENTS REGARDING the Bright Conscience Trust Dated September 9, 2009.

147. Any and all agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

148. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to HMB Holdings, LLC.

149. Any and all agreements between the DEBTOR and HMB Holdings, LLC.

150. Any and all DOCUMENTS REGARDING HMB Holdings, LLC.

151. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR from December 2003 to the present.

152. Any and all engagement agreements between the DEBTOR and Greenberg Traurig LLP.

153. Any and all agreements between the DEBTOR and Greenberg Traurig LLP.

154. Any and all invoices that the DEBTOR received from Greenberg Traurig LLP.

155. Any and all memoranda from Greenberg Traurig LLP to the DEBTOR.

156. Any and all engagement agreements between the DEBTOR and Dreier Stein & Kahan.

157. Any and all agreements between the DEBTOR and Dreier Stein & Kahan.

158. Any and all invoices that the DEBTOR received from Dreier Stein & Kahan.

159. Any and all memoranda from Dreier Stein & Kahan to the DEBTOR.

160. Any and all engagement agreements between the DEBTOR and LUCE FORWARD.

161. Any and all agreements between the DEBTOR and LUCE FORWARD.

162. Any and all agreements between the DEBTOR and KIRKLAND.

163. Any and all invoices that the DEBTOR received from LUCE FORWARD.

164. Any and all invoices that the DEBTOR received from KIRKLAND.

165. Any and all memoranda from LUCE FORWARD to the DEBTOR.

166. Any and all memoranda from KIRKLAND to the DEBTOR.

167. Any and all memoranda from LUCE FORWARD to PRESSMAN.

168. Any and all memoranda from LUCE FORWARD to KEITH PRESSMAN.

169. Any and all memoranda from LUCE FORWARD to MORENO.

170. Any and all memoranda from LUCE FORWARD to Christine Kamps.

171. Any and all memoranda from KIRKLAND to PRESSMAN.

172. Any and all memoranda from KIRKLAND to KEITH PRESSMAN.

173. Any and all memoranda from KIRKLAND to MORENO.

174. Any and all memoranda from KIRKLAND to Christine Kamps.

175. Any and all memoranda from Theodore Jonavic to the DEBTOR.

176. Any and all memoranda from Theodore Jonavic to PRESSMAN.

177. Any and all memoranda from Theodore Jonavic to KEITH PRESSMAN.

178. Any and all memoranda from Theodore Jonavic to MORENO.

179. Any and all memoranda from Theodore Jonavic to Christine Kamps.

180. Any and all CORRESPONDENCE between the DEBTOR and LUCE FORWARD.

181. Any and all CORRESPONDENCE between the DEBTOR and Greenberg Traurig LLP.

182. Any and all CORRESPONDENCE between the DEBTOR and Dreier Stein & Kahan.

183. Any and all CORRESPONDENCE between the DEBTOR and KIRKLAND.

184. Any and all CORRESPONDENCE between PRESSMAN and KIRKLAND.

185. Any and all CORRESPONDENCE between KEITH PRESSMAN and KIRKLAND.

186. Any and all CORRESPONDENCE between MORENO and KIRKLAND.

187. Any and all CORRESPONDENCE between Christine Kamps and KIRKLAND.

188. All CORRESPONDENCE between LUCE FORWARD and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

189. All CORRESPONDENCE between KIRKLAND and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

190. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

191. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

192. All CORRESPONDENCE between Katy Werner and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

193. All CORRESPONDENCE between MORENO and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

194. All CORRESPONDENCE between PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

195. All CORRESPONDENCE between KEITH PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

**EXHIBIT "A"**

Request for Production of Documents and Things For Keith Pressman
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

**I.**

**DEFINITIONS**

1. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "KIRKLAND" shall mean JOHN C. KIRKLAND, an individual.

6. The term "LUCE FORWARD" shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

7. The term "MORENO" shall mean RUBEN MORENO, an individual.

8. The term "PETITION DATE" shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

9. The term "PRESSMAN" shall mean JERROLD PRESSMAN, an individual.

10. The term "KEITH PRESSMAN" shall mean KEITH PRESSMAN, an individual.

11. The term "TRANSFER" shall refer to and mean all checks, cashier's checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

12. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

## II.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1. Any and all DOCUMENTS REGARDING the business model of the DEBTOR.

2. Any and all offering circulars prepared by the DEBTOR.

3. Any and all investment materials prepared by the DEBTOR.

4. Any and all DOCUMENTS REGARDING whether the DEBTOR is currently operating.

5. Any and all DOCUMENTS REGARDING whether the DEBTOR is a going concern business.

6. Any and all DOCUMENTS REGARDING the current business location(s) of DEBTOR's business.

7. All of the DEBTOR's books and records to the extent not previously produced to the Trustee.

8. Any and all DOCUMENTS listing the DEBTOR's management team.

9. Any and all DOCUMENTS listing the DEBTOR's directors, officers, managers and members.

10. Any and all DOCUMENTS REGARDING whether the DEBTOR generally pays debts as they become due.

11. Any and all DOCUMENTS REGARDING whether the DEBTOR has any past due bills or late payments at present.

12. Any and all DOCUMENTS REGARDING whether the DEBTOR pays its debts in the ordinary course of business.

13. Any and all DOCUMENTS REGARDING the DEBTOR's lenders.

14. Any and all DOCUMENTS REGARDING the DEBTOR's customers.

15. Any and all DOCUMENTS REGARDING the DEBTOR's business partners.

16. Any and all DOCUMENTS REGARDING the DEBTOR's joint venture partners.

17. Any and all DOCUMENTS REGARDING the DEBTOR's affiliates.

18. Any and all DOCUMENTS REGARDING the DEBTOR's investors.

19. Any and all DOCUMENTS REGARDING the DEBTOR's employees.

20. Any and all DOCUMENTS REGARDING the DEBTOR's agents.

21. Any and all DOCUMENTS REGARDING the DEBTOR's independent contractors.

22. Any and all DOCUMENTS that the DEBTOR has filed with the California Secretary of State.

23. Any and all DOCUMENTS that the DEBTOR has filed with the California Department of Corporations.

24. Any and all DOCUMENTS that the DEBTOR has filed with the United States Securities & Exchange Commission.

25. Any and all corporate (limited liability company) minutes for the DEBTOR.

26. Any and all corporate (limited liability company) resolutions of the DEBTOR.

27. Any and all bylaws of the DEBTOR.

28. Any and all notes from meetings of the managers of the DEBTOR.

29. Any and all notes from meetings of the members of the DEBTOR.

30. Any and all notes from meetings of the board of directors of the DEBTOR.

31. Any and all notes from meetings of the owners of the DEBTOR REGARDING the DEBTOR.

32. Any and all DOCUMENTS REGARDING the ownership of the DEBTOR.

33. Any and all demands sent to the DEBTOR for repayment of loans during the two years prior to the PETITION DATE.

34. Any and all demands sent to the DEBTOR for repayment of promissory notes during the two years prior to the PETITION DATE.

35. Any and all demands sent to the DEBTOR for repayment of demand notes during the two years prior to the PETITION DATE.

36. Any and all demands to the DEBTOR for repayment of investments during the two years prior to the PETITION DATE.

37. All promissory notes executed by the DEBTOR.

38. All demand notes executed by the DEBTOR.

39. All security agreements executed by the DEBTOR.

40. All UCC-1 filings authorized by the DEBTOR.

41. All DOCUMENTS listing the holders of notes executed by the DEBTOR.

42. All investments made by the DEBTOR.

43. All DOCUMENTS REGARDING investments made by the DEBTOR.

44. All promissory notes in favor of the DEBTOR.

45. All demand notes in favor of the DEBTOR.

46. All security agreements in favor of the DEBTOR.

47. All UCC-1 filings in favor of the DEBTOR.

48. All judgments in favor of the DEBTOR.

49. All DOCUMENTS listing the investors in the DEBTOR.

50. Any and all tax returns for the DEBTOR.

51. Any and all bank records for the DEBTOR.

52. Any and all records for securities accounts for the DEBTOR.

53. Any and all records for investment accounts for the DEBTOR.

54. Any and all DOCUMENTS regarding the DEBTOR's current assets.

55. Any and all DOCUMENTS regarding the DEBTOR's fixed assets.

56. Any and all DOCUMENTS regarding the DEBTOR's inventory.

57. Any and all DOCUMENTS regarding the DEBTOR's accounts receivable.

58. Any and all DOCUMENTS regarding the DEBTOR's accounts payable.

59. Any and all audited financial statements for the DEBTOR.

60. Any and all unaudited financial statements for the DEBTOR.

61. Any and all Quick Books records for the DEBTOR.

62. Any and all DOCUMENTS listing the DEBTOR's assets.

63. Any and all DOCUMENTS listing the DEBTOR's liabilities.

64. Any and all DOCUMENTS listing the DEBTOR's equity.

65. All of the DEBTOR's computers, hard drives, back-up drives and other media for storing electronic records.

66. All of the DEBTOR's e-mail records.

67. Any and all agreements entered into by the DEBTOR.

68. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to LUCE FORWARD.

69. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Greenberg Traurig LLP.

70. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Dreier Stein & Kahan.

71. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KIRKLAND.

72. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KIRKLAND.

73. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to PRESSMAN.

74. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by PRESSMAN.

75. All promissory notes executed by PRESSMAN in favor of the DEBTOR.

76. All DOCUMENTS REGARDING promissory notes executed by PRESSMAN in favor of the DEBTOR.

77. All demand notes executed by PRESSMAN in favor of the DEBTOR.

78. All DOCUMENTS REGARDING demand notes executed by PRESSMAN in favor of the DEBTOR.

79. All security agreements executed by PRESSMAN in favor of the DEBTOR.

80. All DOCUMENTS REGARDING security agreements executed by PRESSMAN in favor of the DEBTOR.

81. All UCC-1 filings authorized by PRESSMAN in favor of the DEBTOR.

82. All DOCUMENTS REGARDING UCC-1 filings authorized by PRESSMAN in favor of the DEBTOR.

83. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KEITH PRESSMAN.

84. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KEITH PRESSMAN.

85. All promissory notes executed by KEITH PRESSMAN in favor of the DEBTOR.

86. All DOCUMENTS REGARDING promissory notes executed by KEITH PRESSMAN in favor of the DEBTOR.

87. All demand notes executed by KEITH PRESSMAN in favor of the DEBTOR.

88. All DOCUMENTS REGARDING demand notes executed by KEITH PRESSMAN in favor of the DEBTOR.

89. All security agreements executed by KEITH PRESSMAN in favor of the DEBTOR.

90. All DOCUMENTS REGARDING security agreements executed by KEITH PRESSMAN in favor of the DEBTOR.

91. All UCC-1 filings authorized by KEITH PRESSMAN in favor of the DEBTOR.

92. All DOCUMENTS REGARDING UCC-1 filings authorized by KEITH PRESSMAN in favor of the DEBTOR.

93. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, L.P.

94. All promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

95. All DOCUMENTS REGARDING promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

96. All demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

97. All DOCUMENTS REGARDING demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

98. All security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

99. All DOCUMENTS REGARDING security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

100. All UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

101. All DOCUMENTS REGARDING UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

102. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, Inc.

103. All promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

104. All DOCUMENTS REGARDING promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

105. All demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

106. All DOCUMENTS REGARDING demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

107. All security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

108. All DOCUMENTS REGARDING security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

109. All UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

110. All DOCUMENTS REGARDING UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

111. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to MORENO.

112. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by MORENO.

113. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Broadway Entertainment Marketing, Inc.

114. All promissory notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

115. All DOCUMENTS REGARDING promissory notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

116. All demand notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

117. All DOCUMENTS REGARDING demand notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

118. All security agreements executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

119. All DOCUMENTS REGARDING security agreements executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

120. All UCC-1 filings authorized by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

121. All DOCUMENTS REGARDING UCC-1 filings authorized by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

122. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Robert Gerringer.

123. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

124. All promissory notes executed by Robert Gerringer in favor of the DEBTOR.

125. All DOCUMENTS REGARDING promissory notes executed by Robert Gerringer in favor of the DEBTOR.

126. All demand notes executed by Robert Gerringer in favor of the DEBTOR.

127. All DOCUMENTS REGARDING demand notes executed by Robert Gerringer in favor of the DEBTOR.

128. All security agreements executed by Robert Gerringer in favor of the DEBTOR.

129. All DOCUMENTS REGARDING security agreements executed by Robert Gerringer in favor of the DEBTOR.

130. All UCC-1 filings authorized by Robert Gerringer in favor of the DEBTOR.

131. All DOCUMENTS REGARDING UCC-1 filings authorized by Robert Gerringer in favor of the DEBTOR.

132. All promissory notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

133. All DOCUMENTS REGARDING promissory notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

134. All demand notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

135. All DOCUMENTS REGARDING demand notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

136. All security agreements executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

137. All DOCUMENTS REGARDING security agreements executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

138. All UCC-1 filings authorized by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

139. All DOCUMENTS REGARDING UCC-1 filings authorized by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

140. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Katy Werner.

141. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Katy Werner.

142. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Theodore Jonavic.

143. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

144. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to EPD Investment Leasing Co., LLC.

145. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

146. Any and all DOCUMENTS REGARDING the Bright Conscience Trust Dated September 9, 2009.

147. Any and all agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

148. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to HMB Holdings, LLC.

149. Any and all agreements between the DEBTOR and HMB Holdings, LLC.

Case 2:10-bk-62208-ER Doc 123-1 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Exhibit Part 1 Page 24 of 66

150. Any and all DOCUMENTS REGARDING HMB Holdings, LLC.

151. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR from December 2003 to the present.

152. Any and all engagement agreements between the DEBTOR and Greenberg Traurig LLP.

153. Any and all agreements between the DEBTOR and Greenberg Traurig LLP.

154. Any and all invoices that the DEBTOR received from Greenberg Traurig LLP.

155. Any and all memoranda from Greenberg Traurig LLP to the DEBTOR.

156. Any and all engagement agreements between the DEBTOR and Dreier Stein & Kahan.

157. Any and all agreements between the DEBTOR and Dreier Stein & Kahan.

158. Any and all invoices that the DEBTOR received from Dreier Stein & Kahan.

159. Any and all memoranda from Dreier Stein & Kahan to the DEBTOR.

160. Any and all engagement agreements between the DEBTOR and LUCE FORWARD.

161. Any and all agreements between the DEBTOR and LUCE FORWARD.

162. Any and all agreements between the DEBTOR and KIRKLAND.

163. Any and all invoices that the DEBTOR received from LUCE FORWARD.

164. Any and all invoices that the DEBTOR received from KIRKLAND.

165. Any and all memoranda from LUCE FORWARD to the DEBTOR.

166. Any and all memoranda from KIRKLAND to the DEBTOR.

167. Any and all memoranda from LUCE FORWARD to PRESSMAN.

168. Any and all memoranda from LUCE FORWARD to KEITH PRESSMAN.

169. Any and all memoranda from LUCE FORWARD to MORENO.

170. Any and all memoranda from LUCE FORWARD to Christine Kamps.

171. Any and all memoranda from KIRKLAND to PRESSMAN.

172. Any and all memoranda from KIRKLAND to KEITH PRESSMAN.

173. Any and all memoranda from KIRKLAND to MORENO.

174. Any and all memoranda from KIRKLAND to Christine Kamps.

175. Any and all memoranda from Theodore Jonavic to the DEBTOR.

176. Any and all memoranda from Theodore Jonavic to PRESSMAN.

177. Any and all memoranda from Theodore Jonavic to KEITH PRESSMAN.

178. Any and all memoranda from Theodore Jonavic to MORENO.

179. Any and all memoranda from Theodore Jonavic to Christine Kamps.

180. Any and all CORRESPONDENCE between the DEBTOR and LUCE FORWARD.

181. Any and all CORRESPONDENCE between the DEBTOR and Greenberg Traurig LLP.

182. Any and all CORRESPONDENCE between the DEBTOR and Dreier Stein & Kahan.

183. Any and all CORRESPONDENCE between the DEBTOR and KIRKLAND.

184. Any and all CORRESPONDENCE between PRESSMAN and KIRKLAND.

185. Any and all CORRESPONDENCE between KEITH PRESSMAN and KIRKLAND.

186. Any and all CORRESPONDENCE between MORENO and KIRKLAND.

187. Any and all CORRESPONDENCE between Christine Kamps and KIRKLAND.

188. All CORRESPONDENCE between LUCE FORWARD and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

189. All CORRESPONDENCE between KIRKLAND and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

190. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

191. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

192. All CORRESPONDENCE between Katy Werner and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

193. All CORRESPONDENCE between MORENO and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

194. All CORRESPONDENCE between PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

195. All CORRESPONDENCE between KEITH PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

**EXHIBIT "A"**

Request for Production of Documents and Things For Ruben Moreno
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

**I.**

**DEFINITIONS**

1. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

Case 2:10-bk-62208-ER Doc 123-1 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Exhibit Part 1 Page 28 of 66

5. The term "KIRKLAND" shall mean JOHN C. KIRKLAND, an individual.

6. The term "LUCE FORWARD" shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

7. The term "MORENO" shall mean RUBEN MORENO, an individual.

8. The term "PETITION DATE" shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

9. The term "PRESSMAN" shall mean JERROLD PRESSMAN, an individual.

10. The term "KEITH PRESSMAN" shall mean KEITH PRESSMAN, an individual.

11. The term "TRANSFER" shall refer to and mean all checks, cashier's checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

12. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

## II.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1. Any and all DOCUMENTS REGARDING the business model of the DEBTOR.

2. Any and all offering circulars prepared by the DEBTOR.

3. Any and all investment materials prepared by the DEBTOR.

4. Any and all DOCUMENTS REGARDING whether the DEBTOR is currently operating.

5. Any and all DOCUMENTS REGARDING whether the DEBTOR is a going concern business.

6. Any and all DOCUMENTS REGARDING the current business location(s) of DEBTOR's business.

7. All of the DEBTOR's books and records to the extent not previously produced to the Trustee.

8. Any and all DOCUMENTS listing the DEBTOR's management team.

9. Any and all DOCUMENTS listing the DEBTOR's directors, officers, managers and members.

10. Any and all DOCUMENTS REGARDING whether the DEBTOR generally pays debts as they become due.

11. Any and all DOCUMENTS REGARDING whether the DEBTOR has any past due bills or late payments at present.

12. Any and all DOCUMENTS REGARDING whether the DEBTOR pays its debts in the ordinary course of business.

13. Any and all DOCUMENTS REGARDING the DEBTOR's lenders.

14. Any and all DOCUMENTS REGARDING the DEBTOR's customers.

15. Any and all DOCUMENTS REGARDING the DEBTOR's business partners.

16. Any and all DOCUMENTS REGARDING the DEBTOR's joint venture partners.

17. Any and all DOCUMENTS REGARDING the DEBTOR's affiliates.

18. Any and all DOCUMENTS REGARDING the DEBTOR's investors.

19. Any and all DOCUMENTS REGARDING the DEBTOR's employees.

20. Any and all DOCUMENTS REGARDING the DEBTOR's agents.

21. Any and all DOCUMENTS REGARDING the DEBTOR's independent contractors.

22. Any and all DOCUMENTS that the DEBTOR has filed with the California Secretary of State.

23. Any and all DOCUMENTS that the DEBTOR has filed with the California Department of Corporations.

24. Any and all DOCUMENTS that the DEBTOR has filed with the United States Securities & Exchange Commission.

25. Any and all corporate (limited liability company) minutes for the DEBTOR.

26. Any and all corporate (limited liability company) resolutions of the DEBTOR.

27. Any and all bylaws of the DEBTOR.

28. Any and all notes from meetings of the managers of the DEBTOR.

29. Any and all notes from meetings of the members of the DEBTOR.

30. Any and all notes from meetings of the board of directors of the DEBTOR.

31. Any and all notes from meetings of the owners of the DEBTOR REGARDING the DEBTOR.

32. Any and all DOCUMENTS REGARDING the ownership of the DEBTOR.

33. Any and all demands sent to the DEBTOR for repayment of loans during the two years prior to the PETITION DATE.

34. Any and all demands sent to the DEBTOR for repayment of promissory notes during the two years prior to the PETITION DATE.

35. Any and all demands sent to the DEBTOR for repayment of demand notes during the two years prior to the PETITION DATE.

36. Any and all demands to the DEBTOR for repayment of investments during the two years prior to the PETITION DATE.

37. All promissory notes executed by the DEBTOR.

38. All demand notes executed by the DEBTOR.

39. All security agreements executed by the DEBTOR.

40. All UCC-1 filings authorized by the DEBTOR.

41. All DOCUMENTS listing the holders of notes executed by the DEBTOR.

42. All investments made by the DEBTOR.

43. All DOCUMENTS REGARDING investments made by the DEBTOR.

44. All promissory notes in favor of the DEBTOR.

45. All demand notes in favor of the DEBTOR.

Case 2:10-bk-62208-ER Doc 123-1 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Exhibit Part 1 Page 31 of 66

46. All security agreements in favor of the DEBTOR.

47. All UCC-1 filings in favor of the DEBTOR.

48. All judgments in favor of the DEBTOR.

49. All DOCUMENTS listing the investors in the DEBTOR.

50. Any and all tax returns for the DEBTOR.

51. Any and all bank records for the DEBTOR.

52. Any and all records for securities accounts for the DEBTOR.

53. Any and all records for investment accounts for the DEBTOR.

54. Any and all DOCUMENTS regarding the DEBTOR's current assets.

55. Any and all DOCUMENTS regarding the DEBTOR's fixed assets.

56. Any and all DOCUMENTS regarding the DEBTOR's inventory.

57. Any and all DOCUMENTS regarding the DEBTOR's accounts receivable.

58. Any and all DOCUMENTS regarding the DEBTOR's accounts payable.

59. Any and all audited financial statements for the DEBTOR.

60. Any and all unaudited financial statements for the DEBTOR.

61. Any and all Quick Books records for the DEBTOR.

62. Any and all DOCUMENTS listing the DEBTOR's assets.

63. Any and all DOCUMENTS listing the DEBTOR's liabilities.

64. Any and all DOCUMENTS listing the DEBTOR's equity.

65. All of the DEBTOR's computers, hard drives, back-up drives and other media for storing electronic records.

66. All of the DEBTOR's e-mail records.

67. Any and all agreements entered into by the DEBTOR.

68. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to LUCE FORWARD.

69. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Greenberg Traurig LLP.

70. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Dreier Stein & Kahan.

71. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KIRKLAND.

72. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KIRKLAND.

73. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to PRESSMAN.

74. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by PRESSMAN.

75. All promissory notes executed by PRESSMAN in favor of the DEBTOR.

76. All DOCUMENTS REGARDING promissory notes executed by PRESSMAN in favor of the DEBTOR.

77. All demand notes executed by PRESSMAN in favor of the DEBTOR.

78. All DOCUMENTS REGARDING demand notes executed by PRESSMAN in favor of the DEBTOR.

79. All security agreements executed by PRESSMAN in favor of the DEBTOR.

80. All DOCUMENTS REGARDING security agreements executed by PRESSMAN in favor of the DEBTOR.

81. All UCC-1 filings authorized by PRESSMAN in favor of the DEBTOR.

82. All DOCUMENTS REGARDING UCC-1 filings authorized by PRESSMAN in favor of the DEBTOR.

83. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KEITH PRESSMAN.

84. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KEITH PRESSMAN.

85. All promissory notes executed by KEITH PRESSMAN in favor of the DEBTOR.

86. All DOCUMENTS REGARDING promissory notes executed by KEITH PRESSMAN in favor of the DEBTOR.

87. All demand notes executed by KEITH PRESSMAN in favor of the DEBTOR.

88. All DOCUMENTS REGARDING demand notes executed by KEITH PRESSMAN in favor of the DEBTOR.

89. All security agreements executed by KEITH PRESSMAN in favor of the DEBTOR.

90. All DOCUMENTS REGARDING security agreements executed by KEITH PRESSMAN in favor of the DEBTOR.

91. All UCC-1 filings authorized by KEITH PRESSMAN in favor of the DEBTOR.

92. All DOCUMENTS REGARDING UCC-1 filings authorized by KEITH PRESSMAN in favor of the DEBTOR.

93. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, L.P.

94. All promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

95. All DOCUMENTS REGARDING promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

96. All demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

97. All DOCUMENTS REGARDING demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

98. All security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

99. All DOCUMENTS REGARDING security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

100. All UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

101. All DOCUMENTS REGARDING UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

Case 2:10-bk-62208-ER Doc 123-1 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 1 Page 34 of 66

102. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, Inc.

103. All promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

104. All DOCUMENTS REGARDING promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

105. All demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

106. All DOCUMENTS REGARDING demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

107. All security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

108. All DOCUMENTS REGARDING security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

109. All UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

110. All DOCUMENTS REGARDING UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

111. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to MORENO.

112. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by MORENO.

113. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Broadway Entertainment Marketing, Inc.

114. All promissory notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

115. All DOCUMENTS REGARDING promissory notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

116. All demand notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

117. All DOCUMENTS REGARDING demand notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

118. All security agreements executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

119. All DOCUMENTS REGARDING security agreements executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

120. All UCC-1 filings authorized by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

121. All DOCUMENTS REGARDING UCC-1 filings authorized by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

122. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Robert Gerringer.

123. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

124. All promissory notes executed by Robert Gerringer in favor of the DEBTOR.

125. All DOCUMENTS REGARDING promissory notes executed by Robert Gerringer in favor of the DEBTOR.

126. All demand notes executed by Robert Gerringer in favor of the DEBTOR.

127. All DOCUMENTS REGARDING demand notes executed by Robert Gerringer in favor of the DEBTOR.

128. All security agreements executed by Robert Gerringer in favor of the DEBTOR.

129. All DOCUMENTS REGARDING security agreements executed by Robert Gerringer in favor of the DEBTOR.

130. All UCC-1 filings authorized by Robert Gerringer in favor of the DEBTOR.

131. All DOCUMENTS REGARDING UCC-1 filings authorized by Robert Gerringer in favor of the DEBTOR.

132. All promissory notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

133. All DOCUMENTS REGARDING promissory notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

134. All demand notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

135. All DOCUMENTS REGARDING demand notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

136. All security agreements executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

137. All DOCUMENTS REGARDING security agreements executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

138. All UCC-1 filings authorized by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

139. All DOCUMENTS REGARDING UCC-1 filings authorized by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

140. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Katy Werner.

141. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Katy Werner.

142. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Theodore Jonavic.

143. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

144. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to EPD Investment Leasing Co., LLC.

145. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

146. Any and all DOCUMENTS REGARDING the Bright Conscience Trust Dated September 9, 2009.

147. Any and all agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

148. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to HMB Holdings, LLC.

149. Any and all agreements between the DEBTOR and HMB Holdings, LLC.

150. Any and all DOCUMENTS REGARDING HMB Holdings, LLC.

151. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR from December 2003 to the present.

152. Any and all engagement agreements between the DEBTOR and Greenberg Traurig LLP.

153. Any and all agreements between the DEBTOR and Greenberg Traurig LLP.

154. Any and all invoices that the DEBTOR received from Greenberg Traurig LLP.

155. Any and all memoranda from Greenberg Traurig LLP to the DEBTOR.

156. Any and all engagement agreements between the DEBTOR and Dreier Stein & Kahan.

157. Any and all agreements between the DEBTOR and Dreier Stein & Kahan.

158. Any and all invoices that the DEBTOR received from Dreier Stein & Kahan.

159. Any and all memoranda from Dreier Stein & Kahan to the DEBTOR.

160. Any and all engagement agreements between the DEBTOR and LUCE FORWARD.

161. Any and all agreements between the DEBTOR and LUCE FORWARD.

162. Any and all agreements between the DEBTOR and KIRKLAND.

163. Any and all invoices that the DEBTOR received from LUCE FORWARD.

164. Any and all invoices that the DEBTOR received from KIRKLAND.

165. Any and all memoranda from LUCE FORWARD to the DEBTOR.

166. Any and all memoranda from KIRKLAND to the DEBTOR.

167. Any and all memoranda from LUCE FORWARD to PRESSMAN.

168. Any and all memoranda from LUCE FORWARD to KEITH PRESSMAN.

169. Any and all memoranda from LUCE FORWARD to MORENO.

170. Any and all memoranda from LUCE FORWARD to Christine Kamps.

171. Any and all memoranda from KIRKLAND to PRESSMAN.

172. Any and all memoranda from KIRKLAND to KEITH PRESSMAN.

173. Any and all memoranda from KIRKLAND to MORENO.

174. Any and all memoranda from KIRKLAND to Christine Kamps.

175. Any and all memoranda from Theodore Jonavic to the DEBTOR.

176. Any and all memoranda from Theodore Jonavic to PRESSMAN.

177. Any and all memoranda from Theodore Jonavic to KEITH PRESSMAN.

178. Any and all memoranda from Theodore Jonavic to MORENO.

179. Any and all memoranda from Theodore Jonavic to Christine Kamps.

180. Any and all CORRESPONDENCE between the DEBTOR and LUCE FORWARD.

181. Any and all CORRESPONDENCE between the DEBTOR and Greenberg Traurig LLP.

182. Any and all CORRESPONDENCE between the DEBTOR and Dreier Stein & Kahan.

183. Any and all CORRESPONDENCE between the DEBTOR and KIRKLAND.

184. Any and all CORRESPONDENCE between PRESSMAN and KIRKLAND.

185. Any and all CORRESPONDENCE between KEITH PRESSMAN and KIRKLAND.

186. Any and all CORRESPONDENCE between MORENO and KIRKLAND.

187. Any and all CORRESPONDENCE between Christine Kamps and KIRKLAND.

188. All CORRESPONDENCE between LUCE FORWARD and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

Case 2:10-bk-62208-ER Doc 123-1 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 1 Page 39 of 66

189. All CORRESPONDENCE between KIRKLAND and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

190. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

191. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

192. All CORRESPONDENCE between Katy Werner and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

193. All CORRESPONDENCE between MORENO and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

194. All CORRESPONDENCE between PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

195. All CORRESPONDENCE between KEITH PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

**EXHIBIT "A"**

Deposition Subpoena for Personal Appearance and Production of Documents and Things for John C. Kirkland
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

**I.**

**DEFINITIONS**

1. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "KIRKLAND" shall mean JOHN C. KIRKLAND, an individual.

6. The term "LUCE FORWARD" shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

7. The term "MORENO" shall mean RUBEN MORENO, an individual.

8. The term "PETITION DATE" shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

9. The term "PRESSMAN" shall mean JERROLD PRESSMAN, an individual.

10. The term "KEITH PRESSMAN" shall mean KEITH PRESSMAN, an individual.

11. The term "TRANSFER" shall refer to and mean all checks, cashier's checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

12. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

## II.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1. Any and all DOCUMENTS REGARDING the business model of the DEBTOR.

2. Any and all offering circulars prepared by the DEBTOR.

3. Any and all investment materials prepared by the DEBTOR.

4. Any and all DOCUMENTS REGARDING whether the DEBTOR is currently operating.

5. Any and all DOCUMENTS REGARDING whether the DEBTOR is a going concern business.

6. Any and all DOCUMENTS REGARDING the current business location(s) of DEBTOR's business.

7. All of the DEBTOR's books and records to the extent not previously produced to the Trustee.

8. Any and all DOCUMENTS listing the DEBTOR's management team.

9. Any and all DOCUMENTS listing the DEBTOR's directors, officers, managers and members.

10. Any and all DOCUMENTS REGARDING whether the DEBTOR generally pays debts as they become due.

11. Any and all DOCUMENTS REGARDING whether the DEBTOR has any past due bills or late payments at present.

12. Any and all DOCUMENTS REGARDING whether the DEBTOR pays its debts in the ordinary course of business.

13. Any and all DOCUMENTS REGARDING the DEBTOR's lenders.

14. Any and all DOCUMENTS REGARDING the DEBTOR's customers.

15. Any and all DOCUMENTS REGARDING the DEBTOR's business partners.

16. Any and all DOCUMENTS REGARDING the DEBTOR's joint venture partners.

17. Any and all DOCUMENTS REGARDING the DEBTOR's affiliates.

18. Any and all DOCUMENTS REGARDING the DEBTOR's investors.

19. Any and all DOCUMENTS REGARDING the DEBTOR's employees.

20. Any and all DOCUMENTS REGARDING the DEBTOR's agents.

21. Any and all DOCUMENTS REGARDING the DEBTOR's independent contractors.

22. Any and all DOCUMENTS that the DEBTOR has filed with the California Secretary of State.

23. Any and all DOCUMENTS that the DEBTOR has filed with the California Department of Corporations.

24. Any and all DOCUMENTS that the DEBTOR has filed with the United States Securities & Exchange Commission.

25. Any and all corporate (limited liability company) minutes for the DEBTOR.

26. Any and all corporate (limited liability company) resolutions of the DEBTOR.

27. Any and all bylaws of the DEBTOR.

28. Any and all notes from meetings of the managers of the DEBTOR.

29. Any and all notes from meetings of the members of the DEBTOR.

30. Any and all notes from meetings of the board of directors of the DEBTOR.

31. Any and all notes from meetings of the owners of the DEBTOR REGARDING the DEBTOR.

32. Any and all DOCUMENTS REGARDING the ownership of the DEBTOR.

33. Any and all demands sent to the DEBTOR for repayment of loans during the two years prior to the PETITION DATE.

34. Any and all demands sent to the DEBTOR for repayment of promissory notes during the two years prior to the PETITION DATE.

35. Any and all demands sent to the DEBTOR for repayment of demand notes during the two years prior to the PETITION DATE.

36. Any and all demands to the DEBTOR for repayment of investments during the two years prior to the PETITION DATE.

37. All promissory notes executed by the DEBTOR.

38. All demand notes executed by the DEBTOR.

39. All security agreements executed by the DEBTOR.

40. All UCC-1 filings authorized by the DEBTOR.

41. All DOCUMENTS listing the holders of notes executed by the DEBTOR.

42. All investments made by the DEBTOR.

43. All DOCUMENTS REGARDING investments made by the DEBTOR.

44. All promissory notes in favor of the DEBTOR.

45. All demand notes in favor of the DEBTOR.

46. All security agreements in favor of the DEBTOR.

47. All UCC-1 filings in favor of the DEBTOR.

48. All judgments in favor of the DEBTOR.

49. All DOCUMENTS listing the investors in the DEBTOR.

50. Any and all tax returns for the DEBTOR.

51. Any and all bank records for the DEBTOR.

52. Any and all records for securities accounts for the DEBTOR.

53. Any and all records for investment accounts for the DEBTOR.

54. Any and all DOCUMENTS regarding the DEBTOR's current assets.

55. Any and all DOCUMENTS regarding the DEBTOR's fixed assets.

56. Any and all DOCUMENTS regarding the DEBTOR's inventory.

57. Any and all DOCUMENTS regarding the DEBTOR's accounts receivable.

58. Any and all DOCUMENTS regarding the DEBTOR's accounts payable.

59. Any and all audited financial statements for the DEBTOR.

60. Any and all unaudited financial statements for the DEBTOR.

61. Any and all Quick Books records for the DEBTOR.

62. Any and all DOCUMENTS listing the DEBTOR's assets.

63. Any and all DOCUMENTS listing the DEBTOR's liabilities.

64. Any and all DOCUMENTS listing the DEBTOR's equity.

65. All of the DEBTOR's computers, hard drives, back-up drives and other media for storing electronic records.

66. All of the DEBTOR's e-mail records.

67. Any and all agreements entered into by the DEBTOR.

68. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to LUCE FORWARD.

69. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Greenberg Traurig LLP.

70. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Dreier Stein & Kahan.

71. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KIRKLAND.

72. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KIRKLAND.

73. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to PRESSMAN.

74. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by PRESSMAN.

75. All security agreements executed by PRESSMAN in favor of the DEBTOR.

76. All DOCUMENTS REGARDING security agreements executed by PRESSMAN in favor of the DEBTOR.

77. All UCC-1 filings authorized by PRESSMAN in favor of the DEBTOR.

78. All DOCUMENTS REGARDING UCC-1 filings authorized by PRESSMAN in favor of the DEBTOR.

79. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KEITH PRESSMAN.

80. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KEITH PRESSMAN.

81. All promissory notes executed by KEITH PRESSMAN in favor of the DEBTOR.

82. All DOCUMENTS REGARDING promissory notes executed by KEITH PRESSMAN in favor of the DEBTOR.

83. All demand notes executed by KEITH PRESSMAN in favor of the DEBTOR.

84. All DOCUMENTS REGARDING demand notes executed by KEITH PRESSMAN in favor of the DEBTOR.

85. All security agreements executed by KEITH PRESSMAN in favor of the DEBTOR.

86. All DOCUMENTS REGARDING security agreements executed by KEITH PRESSMAN in favor of the DEBTOR.

87. All UCC-1 filings authorized by KEITH PRESSMAN in favor of the DEBTOR.

88. All DOCUMENTS REGARDING UCC-1 filings authorized by KEITH PRESSMAN in favor of the DEBTOR.

89. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, L.P.

90. All promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

91. All DOCUMENTS REGARDING promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

92. All demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

93. All DOCUMENTS REGARDING demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

94. All security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

95. All DOCUMENTS REGARDING security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

96. All UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

97. All DOCUMENTS REGARDING UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

98. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, Inc.

99. All promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

100. All DOCUMENTS REGARDING promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

101. All demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

102. All DOCUMENTS REGARDING demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

103. All security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

104. All DOCUMENTS REGARDING security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

105. All UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

106. All DOCUMENTS REGARDING UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

107. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to MORENO.

108. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by MORENO.

109. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Broadway Entertainment Marketing, Inc.

110. All promissory notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

111. All DOCUMENTS REGARDING promissory notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

112. All demand notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

113. All DOCUMENTS REGARDING demand notes executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

114. All security agreements executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

115. All DOCUMENTS REGARDING security agreements executed by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

116. All UCC-1 filings authorized by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

117. All DOCUMENTS REGARDING UCC-1 filings authorized by Broadway Entertainment Marketing, Inc. in favor of the DEBTOR.

118. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Robert Gerringer.

119. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

120. All promissory notes executed by Robert Gerringer in favor of the DEBTOR.

121. All DOCUMENTS REGARDING promissory notes executed by Robert Gerringer in favor of the DEBTOR.

122. All demand notes executed by Robert Gerringer in favor of the DEBTOR.

123. All DOCUMENTS REGARDING demand notes executed by Robert Gerringer in favor of the DEBTOR.

124. All security agreements executed by Robert Gerringer in favor of the DEBTOR.

125. All DOCUMENTS REGARDING security agreements executed by Robert Gerringer in favor of the DEBTOR.

126. All UCC-1 filings authorized by Robert Gerringer in favor of the DEBTOR.

127. All DOCUMENTS REGARDING UCC-1 filings authorized by Robert Gerringer in favor of the DEBTOR.

128. All promissory notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

129. All DOCUMENTS REGARDING promissory notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

130. All demand notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

131. All DOCUMENTS REGARDING demand notes executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

132. All security agreements executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

133. All DOCUMENTS REGARDING security agreements executed by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

134. All UCC-1 filings authorized by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

135. All DOCUMENTS REGARDING UCC-1 filings authorized by any entity partially owned or controlled by Robert Gerringer in favor of the DEBTOR.

136. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Katy Werner.

137. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Katy Werner.

138. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Theodore Jonavic.

139. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

140. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to EPD Investment Leasing Co., LLC.

141. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

142. Any and all DOCUMENTS REGARDING the Bright Conscience Trust Dated September 9, 2009.

143. Any and all agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

144. All investments made by KIRKLAND in the DEBTOR.

145. All agreements entered into between KIKRLAND and the DEBTOR in regard to investments.

146. All investments made by KIRKLAND's family trust(s) in the DEBTOR.

147. All agreements entered into between KIRKLAND's family trust(s) and the DEBTOR in regard to investments.

148. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to HMB Holdings, LLC.

149. Any and all agreements between the DEBTOR and HMB Holdings, LLC.

150. Any and all DOCUMENTS REGARDING HMB Holdings, LLC.

151. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR from December 2003 to the present.

152. Any and all engagement agreements between the DEBTOR and Greenberg Traurig LLP.

153. Any and all agreements between the DEBTOR and Greenberg Traurig LLP.

154. Any and all invoices that the DEBTOR received from Greenberg Traurig LLP.

155. Any and all memoranda from Greenberg Traurig LLP to the DEBTOR.

156. Any and all engagement agreements between the DEBTOR and Dreier Stein & Kahan.

157. Any and all agreements between the DEBTOR and Dreier Stein & Kahan.

158. Any and all invoices that the DEBTOR received from Dreier Stein & Kahan.

159. Any and all memoranda from Dreier Stein & Kahan to the DEBTOR.

160. Any and all engagement agreements between the DEBTOR and LUCE FORWARD.

161. Any and all agreements between the DEBTOR and LUCE FORWARD.

162. Any and all agreements between the DEBTOR and KIRKLAND.

163. Any and all invoices that the DEBTOR received from LUCE FORWARD.

164. Any and all invoices that the DEBTOR received from KIRKLAND.

165. Any and all memoranda from LUCE FORWARD to the DEBTOR.

166. Any and all memoranda from KIRKLAND to the DEBTOR.

167. Any and all memoranda from LUCE FORWARD to PRESSMAN.

168. Any and all memoranda from LUCE FORWARD to KEITH PRESSMAN.

169. Any and all memoranda from LUCE FORWARD to MORENO.

170. Any and all memoranda from LUCE FORWARD to Christine Kamps.

171. Any and all memoranda from KIRKLAND to PRESSMAN.

172. Any and all memoranda from KIRKLAND to KEITH PRESSMAN.

173. Any and all memoranda from KIRKLAND to MORENO.

174. Any and all memoranda from KIRKLAND to Christine Kamps.

175. Any and all memoranda from Theodore Jonavic to the DEBTOR.

176. Any and all memoranda from Theodore Jonavic to PRESSMAN.

177. Any and all memoranda from Theodore Jonavic to KEITH PRESSMAN.

178. Any and all memoranda from Theodore Jonavic to MORENO.

179. Any and all memoranda from Theodore Jonavic to Christine Kamps.

180. Any and all CORRESPONDENCE between the DEBTOR and LUCE FORWARD.

181. Any and all CORRESPONDENCE between the DEBTOR and Greenberg Traurig LLP.

182. Any and all CORRESPONDENCE between the DEBTOR and Dreier Stein & Kahan.

183. Any and all CORRESPONDENCE between the DEBTOR and KIRKLAND.

184. Any and all CORRESPONDENCE between PRESSMAN and KIRKLAND.

185. Any and all CORRESPONDENCE between KEITH PRESSMAN and KIRKLAND.

186. Any and all CORRESPONDENCE between MORENO and KIRKLAND.

187. Any and all CORRESPONDENCE between Christine Kamps and KIRKLAND.

Case 2:10-bk-62208-ER Doc 123-1 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 1 Page 52 of 66

188. All CORRESPONDENCE between LUCE FORWARD and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

189. All CORRESPONDENCE between KIRKLAND and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

190. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

191. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

192. All CORRESPONDENCE between Katy Werner and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

193. All CORRESPONDENCE between MORENO and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

194. All CORRESPONDENCE between PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

195. All CORRESPONDENCE between KEITH PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

196. The entire LUCE FORWARD case file(s) RELATING to the DEBTOR.

197. All CORRESPONDENCE between LUCE FORWARD and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

198. All CORRESPONDENCE between Greenberg Traurig LLP and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

199. All CORRESPONDENCE between Dreier Stein & Kahan and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

200. All CORRESPONDENCE between KIRKLAND and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

201. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

202. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

203. All CORRESPONDENCE between Katy Werner and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

204. All CORRESPONDENCE between MORENO and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

205. All CORRESPONDENCE between PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

206. All CORRESPONDENCE between KEITH PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

**EXHIBIT "A"**

Jason Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "DEBTOR") hereby requests and requires that Broadway Entertainment Marketing, Inc. ("BROADWAY ENTERTAINMENT") designate and produce the person or persons most qualified to testify on behalf of BROADWAY ENTERTAINMENT on the following matters:

1. Whether BROADWAY ENTERTAINMENT is currently operating.
2. Whether BROADWAY ENTERTAINMENT is a going concern business.
3. BROADWAY ENTERTAINMENT's management team.
4. BROADWAY ENTERTAINMENT's directors and officers.
5. BROADWAY ENTERTAINMENT's lenders.
6. BROADWAY ENTERTAINMENT's customers.
7. BROADWAY ENTERTAINMENT's business partners.
8. BROADWAY ENTERTAINMENT's joint venture partners.
9. BROADWAY ENTERTAINMENT's affiliates.
10. BROADWAY ENTERTAINMENT's investors.
11. BROADWAY ENTERTAINMENT's employees.
12. BROADWAY ENTERTAINMENT's agents.
13. BROADWAY ENTERTAINMENT's independent contractors.
14. Documents that BROADWAY ENTERTAINMENT has filed with the California Secretary of State.
15. DOCUMENTS that BROADWAY ENTERTAINMENT has filed with the California Department of Corporations.
16. DOCUMENTS that BROADWAY ENTERTAINMENT has filed with the United States Securities & Exchange Commission.
17. Corporate minutes for BROADWAY ENTERTAINMENT.

18. Corporate resolutions of BROADWAY ENTERTAINMENT.

19. Articles of incorporation of BROADWAY ENTERTAINMENT.

20. The bylaws of BROADWAY ENTERTAINMENT.

21. Meetings of the board of directors of BROADWAY ENTERTAINMENT REGARDING the DEBTOR.

22. Meetings of the owners of BROADWAY ENTERTAINMENT REGARDING the DEBTOR.

23. The ownership of BROADWAY ENTERTAINMENT.

24. Promissory notes executed by the DEBTOR in favor of BROADWAY ENTERTAINMENT.

25. Demand notes executed by the DEBTOR in favor of BROADWAY ENTERTAINMENT.

26. Security agreements executed by the DEBTOR in favor of BROADWAY ENTERTAINMENT.

27. UCC-1 filings authorized by the DEBTOR in favor of BROADWAY ENTERTAINMENT.

28. Investments made by the DEBTOR in BROADWAY ENTERTAINMENT.

29. Investments made by the DEBTOR in BROADWAY ENTERTAINMENT.

30. Investments made by BROADWAY ENTERTAINMENT in the DEBTOR.

31. Investments made by BROADWAY ENTERTAINMENT in the DEBTOR.

32. Promissory notes executed by BROADWAY ENTERTAINMENT in favor of the DEBTOR.

33. Demand notes executed by BROADWAY ENTERTAINMENT in favor of the DEBTOR.

34. Security agreements executed by BROADWAY ENTERTAINMENT in favor of the DEBTOR.

35. UCC-1 filings authorized by BROADWAY ENTERTAINMENT in favor of the DEBTOR.

36. Judgments against BROADWAY ENTERTAINMENT in favor of the DEBTOR.

37. The investors in BROADWAY ENTERTAINMENT.

38. Tax returns for BROADWAY ENTERTAINMENT that include information REGARDING the DEBTOR.

39. Audited financial statements for BROADWAY ENTERTAINMENT.

40. Unaudited financial statements for BROADWAY ENTERTAINMENT.

41. BROADWAY ENTERTAINMENT's assets.

42. BROADWAY ENTERTAINMENT's liabilities.

43. BROADWAY ENTERTAINMENT's equity.

44. Agreements entered into between the DEBTOR and BROADWAY ENTERTAINMENT.

45. Transfers from the DEBTOR to BROADWAY ENTERTAINMENT.

46. Transfers from BROADWAY ENTERTAINMENT to the DEBTOR.

47. Transfers from the DEBTOR to Jerrold Pressman.

48. Transfers from the DEBTOR to any entity partially owned or controlled by Jerrold Pressman.

49. Transfers from the DEBTOR to Keith Pressman.

50. Transfers from the DEBTOR to any entity partially owned or controlled by Keith Pressman.

51. Transfers from the DEBTOR to S.C. Club, L.P.

52. Transfers from the DEBTOR to S.C. Club, Inc.

53. Transfers from the DEBTOR to Ruben Moreno.

54. Transfers from the DEBTOR to any entity partially owned or controlled by Ruben Moreno.

55. Transfers from the DEBTOR to Robert Gerringer.

56. Transfers from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

57. Transfers from the DEBTOR to Katy Werner.

58. Transfers from the DEBTOR to any entity partially owned or controlled by Katy Werner.

59. Transfers from the DEBTOR to Theodore Jonavic.

60. Transfers from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

61. Transfers from the DEBTOR to EPD Investment Leasing Co., LLC.

62. Transfers from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

63. The Bright Conscience Trust Dated September 9, 2009.

64. Agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

65. Transfers from the DEBTOR to HMB Holdings, LLC.

66. Agreements between the DEBTOR and HMB Holdings, LLC.

67. HMB Holdings, LLC.

68. Communications between John C. Kirkland, Esq. and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

69. Communications between Luce Forward Hamilton & Scripps LLP and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

70. Communications between Greenberg Traurig LLP and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

71. Communications between Dreier Stein & Kahan and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

72. Communications between the DEBTOR and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

73. Communications between Jerrold Pressman and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

74. Communications between Keith Pressman and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

75. Communications between Ruben Moreno and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

76. Communications between Katy Werner and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

77. Communications between Thom Ferro and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

78. Communications between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

79. Communications between BROADWAY ENTERTAINMENT and investors in the DEBTOR.

80. Communications between BROADWAY ENTERTAINMENT and creditors of the DEBTOR.

81. Communications between any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT and investors in the DEBTOR.

82. Communications between any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT and creditors of the DEBTOR.

83. Other areas of inquiry based on information obtained by the Trustee subsequent to notice of the examination.

**EXHIBIT "B"**

Request for Production of Documents and Things for the Person(s) Most Qualified for Broadway Entertainment Marketing, Inc.
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

**I.**

**DEFINITIONS**

1. The term "BROADWAY ENTERTAINMENT" shall mean and refer to Broadway Entertainment Marketing, Inc.

2. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

3. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

4. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

5. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles,

telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

6. The term "KIRKLAND" shall mean JOHN C. KIRKLAND, an individual.

7. The term "LUCE FORWARD" shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

8. The term "MORENO" shall mean RUBEN MORENO, an individual.

9. The term "PETITION DATE" shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

10. The term "PRESSMAN" shall mean JERROLD PRESSMAN, an individual.

11. The term "KEITH PRESSMAN" shall mean KEITH PRESSMAN, an individual.

12. The term "TRANSFER" shall refer to and mean all checks, cashier's checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

13. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

## II.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1. Any and all DOCUMENTS REGARDING whether BROADWAY ENTERTAINMENT is currently operating.

2. Any and all DOCUMENTS REGARDING whether BROADWAY ENTERTAINMENT is a going concern business.

3. Any and all DOCUMENTS listing BROADWAY ENTERTAINMENT's management team.

4. Any and all DOCUMENTS listing BROADWAY ENTERTAINMENT's directors and officers.

5. Any and all DOCUMENTS REGARDING BROADWAY ENTERTAINMENT's lenders.

6. Any and all DOCUMENTS REGARDING BROADWAY ENTERTAINMENT's customers.

7. Any and all DOCUMENTS REGARDING BROADWAY ENTERTAINMENT's business partners.

8. Any and all DOCUMENTS REGARDING BROADWAY ENTERTAINMENT's joint venture partners.

9. Any and all DOCUMENTS REGARDING BROADWAY ENTERTAINMENT's affiliates.

10. Any and all DOCUMENTS REGARDING BROADWAY ENTERTAINMENT's investors.

11. Any and all DOCUMENTS REGARDING BROADWAY ENTERTAINMENT's employees.

12. Any and all DOCUMENTS REGARDING BROADWAY ENTERTAINMENT's agents.

13. Any and all DOCUMENTS REGARDING BROADWAY ENTERTAINMENT's independent contractors.

14. Any and all DOCUMENTS that BROADWAY ENTERTAINMENT has filed with the California Secretary of State.

15. Any and all DOCUMENTS that BROADWAY ENTERTAINMENT has filed with the California Department of Corporations.

16. Any and all DOCUMENTS that BROADWAY ENTERTAINMENT has filed with the United States Securities & Exchange Commission.

17. Any and all corporate minutes for BROADWAY ENTERTAINMENT.

18. Any and all corporate resolutions of BROADWAY ENTERTAINMENT.

19. Any and all articles of incorporation of BROADWAY ENTERTAINMENT.

20. Any and all bylaws of BROADWAY ENTERTAINMENT.

21. Any and all notes from meetings of the board of directors of BROADWAY ENTERTAINMENT REGARDING the DEBTOR.

22. Any and all notes from meetings of the owners of BROADWAY ENTERTAINMENT REGARDING the DEBTOR.

23. Any and all DOCUMENTS REGARDING the ownership of BROADWAY ENTERTAINMENT.

24. All promissory notes executed by the DEBTOR in favor of BROADWAY ENTERTAINMENT.

25. All demand notes executed by the DEBTOR in favor of BROADWAY ENTERTAINMENT.

26. All security agreements executed by the DEBTOR in favor of BROADWAY ENTERTAINMENT.

27. All UCC-1 filings authorized by the DEBTOR in favor of BROADWAY ENTERTAINMENT.

28. All investments made by the DEBTOR in BROADWAY ENTERTAINMENT.

29. All DOCUMENTS REGARDING investments made by the DEBTOR in BROADWAY ENTERTAINMENT.

30. All investments made by BROADWAY ENTERTAINMENT in the DEBTOR.

31. All DOCUMENTS REGARDING investments made by BROADWAY ENTERTAINMENT in the DEBTOR.

32. All promissory notes executed by BROADWAY ENTERTAINMENT in favor of the DEBTOR.

33. All demand notes executed by BROADWAY ENTERTAINMENT in favor of the DEBTOR.

34. All security agreements executed by BROADWAY ENTERTAINMENT in favor of the DEBTOR.

35. All UCC-1 filings authorized by BROADWAY ENTERTAINMENT in favor of the DEBTOR.

36. All judgments against BROADWAY ENTERTAINMENT in favor of the DEBTOR.

37. All DOCUMENTS listing the investors in BROADWAY ENTERTAINMENT.

38. Any and all tax returns for BROADWAY ENTERTAINMENT that include information REGARDING the DEBTOR.

39. Any and all audited financial statements for BROADWAY ENTERTAINMENT.

40. Any and all unaudited financial statements for BROADWAY ENTERTAINMENT.

41. Any and all DOCUMENTS listing BROADWAY ENTERTAINMENT's assets.

42. Any and all DOCUMENTS listing BROADWAY ENTERTAINMENT's liabilities.

43. Any and all DOCUMENTS listing BROADWAY ENTERTAINMENT's equity.

44. Any and all agreements entered into between the DEBTOR and BROADWAY ENTERTAINMENT.

45. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to BROADWAY ENTERTAINMENT.

46. Any and all DOCUMENTS REGARDING any and all TRANSFERS from BROADWAY ENTERTAINMENT to the DEBTOR.

47. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to PRESSMAN.

48. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by PRESSMAN.

49. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KEITH PRESSMAN.

50. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KEITH PRESSMAN.

51. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, L.P.

Case 2:10-bk-62208-ER Doc 123-1 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Exhibit Part 1 Page 64 of 66

52. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, Inc.

53. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to MORENO.

54. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by MORENO.

55. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Robert Gerringer.

56. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

57. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Katy Werner.

58. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Katy Werner.

59. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Theodore Jonavic.

60. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

61. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to EPD Investment Leasing Co., LLC.

62. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

63. Any and all DOCUMENTS REGARDING the Bright Conscience Trust Dated September 9, 2009.

64. Any and all agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

65. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to HMB Holdings, LLC.

66. Any and all agreements between the DEBTOR and HMB Holdings, LLC.

67. Any and all DOCUMENTS REGARDING HMB Holdings, LLC.

68. All CORRESPONDENCE between KIRKLAND and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

69. All CORRESPONDENCE between LUCE FORWARD and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

70. All CORRESPONDENCE between Greenberg Traurig LLP and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

71. All CORRESPONDENCE between Dreier Stein & Kahan and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

72. All CORRESPONDENCE between the DEBTOR and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

73. All CORRESPONDENCE between PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

74. All CORRESPONDENCE between KEITH PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

75. All CORRESPONDENCE between RUBEN MORENO and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

76. All CORRESPONDENCE between KATY WERNER and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

77. All CORRESPONDENCE between THOM FERRO and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

78. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT.

79. All CORRESPONDENCE between BROADWAY ENTERTAINMENT and investors in the DEBTOR.

80. All CORRESPONDENCE between BROADWAY ENTERTAINMENT and creditors of the DEBTOR.

81. All CORRESPONDENCE between any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT and investors in the DEBTOR.

82. All CORRESPONDENCE between any officer, director, manager, member, employee, agent or independent contractor of BROADWAY ENTERTAINMENT and creditors of the DEBTOR.

**EXHIBIT "A"**

Jason Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "DEBTOR") hereby requests and requires that S.C. Club, L.P. designate and produce the person or persons most qualified to testify on behalf of S.C. Club, L.P. on the following matters:

1. Whether S.C. Club, L.P. is currently operating.
2. Whether S.C. Club, L.P. is a going concern business.
3. S.C. Club, L.P.'s management team.
4. S.C. Club, L.P.'s directors, officers and partners.
5. S.C. Club, L.P.'s lenders.
6. S.C. Club, L.P.'s customers.
7. S.C. Club, L.P.'s business partners.
8. S.C. Club, L.P.'s joint venture partners.
9. S.C. Club, L.P.'s affiliates.
10. S.C. Club, L.P.'s investors.
11. S.C. Club, L.P.'s employees.
12. S.C. Club, L.P.'s agents.
13. S.C. Club, L.P.'s independent contractors.
14. Documents that S.C. Club, L.P. has filed with the California Secretary of State.
15. Documents that S.C. Club, L.P. has filed with the California Department of Corporations.
16. Documents that S.C. Club, L.P. has filed with the United States Securities & Exchange Commission.
17. Corporate minutes for S.C. Club, L.P.
18. Corporate resolutions of S.C. Club, L.P.

19. Articles of incorporation of S.C. Club, L.P.

20. Bylaws of S.C. Club, L.P.

21. Meetings of the partners of S.C. Club, L.P. REGARDING the DEBTOR.

22. The ownership of S.C. Club, L.P.

23. Promissory notes executed by the DEBTOR in favor of S.C. Club, L.P.

24. Demand notes executed by the DEBTOR in favor of S.C. Club, L.P.

25. Security agreements executed by the DEBTOR in favor of S.C. Club, L.P.

26. UCC-1 filings authorized by the DEBTOR in favor of S.C. Club, L.P.

27. Investments made by the DEBTOR in S.C. Club, L.P.

28. Investments made by the DEBTOR in S.C. Club, L.P.

29. Investments made by S.C. Club, L.P. in the DEBTOR.

30. Investments made by S.C. Club, L.P. in the DEBTOR.

31. Promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

32. Demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

33. Security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

34. UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

35. Judgments against S.C. Club, L.P. in favor of the DEBTOR.

36. The investors in S.C. Club, L.P.

37. Tax returns for S.C. Club, L.P. that include information REGARDING the DEBTOR.

38. Audited financial statements for S.C. Club, L.P.

39. Unaudited financial statements for S.C. Club, L.P.

40. S.C. Club, L.P.'s assets.

41. S.C. Club, L.P.'s liabilities.

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Exhibit Part 2 Page 3 of 59

42. S.C. Club, L.P.'s equity.

43. Agreements entered into between the DEBTOR and S.C. Club, L.P.

44. Transfers from the DEBTOR to S.C. Club, L.P.

45. Transfers from the DEBTOR to S.C. Club, Inc.

46. Transfers from S.C. Club, L.P. to the DEBTOR.

47. Transfers from S.C. Club, Inc. to the DEBTOR.

48. Transfers from the DEBTOR to Jerrold Pressman.

49. Transfers from the DEBTOR to any entity partially owned or controlled by Jerrold Pressman.

50. Transfers from the DEBTOR to Keith Pressman.

51. Transfers from the DEBTOR to any entity partially owned or controlled by Keith Pressman.

52. Transfers from the DEBTOR to Ruben Moreno.

53. Transfers from the DEBTOR to any entity partially owned or controlled by Ruben Moreno.

54. Transfers from the DEBTOR to Robert Gerringer.

55. Transfers from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

56. Transfers from the DEBTOR to Katy Werner.

57. Transfers from the DEBTOR to any entity partially owned or controlled by Katy Werner.

58. Transfers from the DEBTOR to Theodore Jonavic.

59. Transfers from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

60. Transfers from the DEBTOR to EPD Investment Leasing Co., LLC.

61. Transfers from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

62. The Bright Conscience Trust Dated September 9, 2009.

63. Agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

64. Transfers from the DEBTOR to HMB Holdings, LLC.

65. Agreements between the DEBTOR and HMB Holdings, LLC.

66. HMB Holdings, LLC.

67. Communications between John C. Kirkland, Esq. and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

68. Communications between Luce Forward Hamilton & Scripps LLP and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

69. Communications between Greenberg Traurig LLP and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

70. Communications between Dreier Stein & Kahan and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

71. Communications between the DEBTOR and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

72. Communications between Jerrold Pressman and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

73. Communications between Keith Pressman and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

74. Communications between Ruben Moreno and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

75. Communications between Katy Werner and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

76. Communications between Thom Ferro and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

77. Communications between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

78. Communications between S.C. Club, L.P. and investors in the DEBTOR.

79. Communications between S.C. Club, L.P. and creditors of the DEBTOR.

80. Communications between any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P. and investors in the DEBTOR.

81. Communications between any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P. and creditors of the DEBTOR.

82. Other areas of inquiry based on information obtained by the Trustee subsequent to notice of the examination.

**EXHIBIT "B"**

Request for Production of Documents and Things for the Person(s) Most Qualified for S.C. Club, L.P.
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

**I.**

**DEFINITIONS**

1. The term "BROADWAY ENTERTAINMENT" shall mean and refer to Broadway Entertainment Marketing, Inc.

2. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

3. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

4. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

5. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles,

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 2 Page 7 of 59

telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

6. The term "KIRKLAND" shall mean JOHN C. KIRKLAND, an individual.

7. The term "LUCE FORWARD" shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

8. The term "MORENO" shall mean RUBEN MORENO, an individual.

9. The term "PETITION DATE" shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

10. The term "PRESSMAN" shall mean JERROLD PRESSMAN, an individual.

11. The term "KEITH PRESSMAN" shall mean KEITH PRESSMAN, an individual.

12. The term "TRANSFER" shall refer to and mean all checks, cashier's checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

13. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

**II.**

**<u>REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS</u>**

1. Any and all DOCUMENTS REGARDING whether S.C. Club, L.P. is currently operating.

2. Any and all DOCUMENTS REGARDING whether S.C. Club, L.P. is a going concern business.

3. Any and all DOCUMENTS listing S.C. Club, L.P.'s management team.

4. Any and all DOCUMENTS listing S.C. Club, L.P.'s directors, officers and partners.

5. Any and all DOCUMENTS REGARDING S.C. Club, L.P.'s lenders.

6. Any and all DOCUMENTS REGARDING S.C. Club, L.P.'s customers.

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 2 Page 8 of 59

7. Any and all DOCUMENTS REGARDING S.C. Club, L.P.'s business partners.

8. Any and all DOCUMENTS REGARDING S.C. Club, L.P.'s joint venture partners.

9. Any and all DOCUMENTS REGARDING S.C. Club, L.P.'s affiliates.

10. Any and all DOCUMENTS REGARDING S.C. Club, L.P.'s investors.

11. Any and all DOCUMENTS REGARDING S.C. Club, L.P.'s employees.

12. Any and all DOCUMENTS REGARDING S.C. Club, L.P.'s agents.

13. Any and all DOCUMENTS REGARDING S.C. Club, L.P.'s independent contractors.

14. Any and all DOCUMENTS that S.C. Club, L.P. has filed with the California Secretary of State.

15. Any and all DOCUMENTS that S.C. Club, L.P. has filed with the California Department of Corporations.

16. Any and all DOCUMENTS that S.C. Club, L.P. has filed with the United States Securities & Exchange Commission.

17. Any and all corporate minutes for S.C. Club, L.P.

18. Any and all corporate resolutions of S.C. Club, L.P.

19. Any and all articles of incorporation of S.C. Club, L.P.

20. Any and all bylaws of S.C. Club, L.P.

21. Any and all notes from meetings of the board of directors of S.C. Club, L.P. REGARDING the DEBTOR.

22. Any and all notes from meetings of the owners of S.C. Club, L.P. REGARDING the DEBTOR.

23. Any and all DOCUMENTS REGARDING the ownership of S.C. Club, L.P.

24. All promissory notes executed by the DEBTOR in favor of S.C. Club, L.P.

25. All demand notes executed by the DEBTOR in favor of S.C. Club, L.P.

26. All security agreements executed by the DEBTOR in favor of S.C. Club, L.P.

27. All UCC-1 filings authorized by the DEBTOR in favor of S.C. Club, L.P.

28. All investments made by the DEBTOR in S.C. Club, L.P.

29. All DOCUMENTS REGARDING investments made by the DEBTOR in S.C. Club, L.P.

30. All investments made by S.C. Club, L.P. in the DEBTOR.

31. All DOCUMENTS REGARDING investments made by S.C. Club, L.P. in the DEBTOR.

32. All promissory notes executed by S.C. Club, L.P. in favor of the DEBTOR.

33. All demand notes executed by S.C. Club, L.P. in favor of the DEBTOR.

34. All security agreements executed by S.C. Club, L.P. in favor of the DEBTOR.

35. All UCC-1 filings authorized by S.C. Club, L.P. in favor of the DEBTOR.

36. All judgments against S.C. Club, L.P. in favor of the DEBTOR.

37. All DOCUMENTS listing the investors in S.C. Club, L.P.

38. Any and all tax returns for S.C. Club, L.P. that include information REGARDING the DEBTOR.

39. Any and all audited financial statements for S.C. Club, L.P.

40. Any and all unaudited financial statements for S.C. Club, L.P.

41. Any and all DOCUMENTS listing S.C. Club, L.P.'s assets.

42. Any and all DOCUMENTS listing S.C. Club, L.P.'s liabilities.

43. Any and all DOCUMENTS listing S.C. Club, L.P.'s equity.

44. Any and all agreements entered into between the DEBTOR and S.C. Club, L.P.

45. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, L.P.

46. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, Inc.

47. Any and all DOCUMENTS REGARDING any and all TRANSFERS from S.C. Club, L.P. to the DEBTOR.

48. Any and all DOCUMENTS REGARDING any and all TRANSFERS from S.C. Club, Inc. to the DEBTOR.

49. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to PRESSMAN.

50. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by PRESSMAN.

51. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KEITH PRESSMAN.

52. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KEITH PRESSMAN.

53. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to MORENO.

54. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by MORENO.

55. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Robert Gerringer.

56. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

57. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Katy Werner.

58. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Katy Werner.

59. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Theodore Jonavic.

60. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

61. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to EPD Investment Leasing Co., LLC.

62. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

63. Any and all DOCUMENTS REGARDING the Bright Conscience Trust Dated September 9, 2009.

64. Any and all agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

65. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to HMB Holdings, LLC.

66. Any and all agreements between the DEBTOR and HMB Holdings, LLC.

67. Any and all DOCUMENTS REGARDING HMB Holdings, LLC.

68. All CORRESPONDENCE between KIRKLAND and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

69. All CORRESPONDENCE between LUCE FORWARD and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

70. All CORRESPONDENCE between Greenberg Traurig LLP and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

71. All CORRESPONDENCE between Dreier Stein & Kahan and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

72. All CORRESPONDENCE between the DEBTOR and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

73. All CORRESPONDENCE between PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

74. All CORRESPONDENCE between KEITH PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

75. All CORRESPONDENCE between RUBEN MORENO and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

76. All CORRESPONDENCE between KATY WERNER and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

77. All CORRESPONDENCE between THOM FERRO and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

78. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P.

79. All CORRESPONDENCE between S.C. Club, L.P. and investors in the DEBTOR.

80. All CORRESPONDENCE between S.C. Club, L.P. and creditors of the DEBTOR.

81. All CORRESPONDENCE between any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P. and investors in the DEBTOR.

82. All CORRESPONDENCE between any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, L.P. and creditors of the DEBTOR.

**EXHIBIT "A"**

Jason Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "DEBTOR") hereby requests and requires that S.C. Club, Inc. designate and produce the person or persons most qualified to testify on behalf of S.C. Club, Inc. on the following matters:

1. Whether S.C. Club, Inc. is currently operating.

2. Whether S.C. Club, Inc. is a going concern business.

3. S.C. Club, Inc.'s management team.

4. S.C. Club, Inc.'s directors and officers.

5. S.C. Club, Inc.'s lenders.

6. S.C. Club, Inc.'s customers.

7. S.C. Club, Inc.'s business partners.

8. S.C. Club, Inc.'s joint venture partners.

9. S.C. Club, Inc.'s affiliates.

10. S.C. Club, Inc.'s investors.

11. S.C. Club, Inc.'s employees.

12. S.C. Club, Inc.'s agents.

13. S.C. Club, Inc.'s independent contractors.

14. Documents that S.C. Club, Inc. has filed with the California Secretary of State.

15. Documents that S.C. Club, Inc. has filed with the California Department of Corporations.

16. Documents that S.C. Club, Inc. has filed with the United States Securities & Exchange Commission.

17. Corporate minutes for S.C. Club, Inc.

18. Corporate resolutions of S.C. Club, Inc.

19. Articles of incorporation of S.C. Club, Inc.

20. Bylaws of S.C. Club, Inc.

21. Meetings of the board of directors of S.C. Club, Inc. REGARDING the DEBTOR.

22. The ownership of S.C. Club, Inc.

23. Promissory notes executed by the DEBTOR in favor of S.C. Club, Inc.

24. Demand notes executed by the DEBTOR in favor of S.C. Club, Inc.

25. Security agreements executed by the DEBTOR in favor of S.C. Club, Inc.

26. UCC-1 filings authorized by the DEBTOR in favor of S.C. Club, Inc.

27. Investments made by the DEBTOR in S.C. Club, Inc.

28. Investments made by the DEBTOR in S.C. Club, Inc.

29. Investments made by S.C. Club, Inc. in the DEBTOR.

30. Investments made by S.C. Club, Inc. in the DEBTOR.

31. Promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

32. Demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

33. Security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

34. UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

35. Judgments against S.C. Club, Inc. in favor of the DEBTOR.

36. The investors in S.C. Club, Inc.

37. Tax returns for S.C. Club, Inc. that include information REGARDING the DEBTOR.

38. Audited financial statements for S.C. Club, Inc.

39. Unaudited financial statements for S.C. Club, Inc.

40. S.C. Club, Inc.'s assets.

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Exhibit Part 2 Page 13 of 59

41. S.C. Club, Inc.'s liabilities.

42. S.C. Club, Inc.'s equity.

43. Agreements entered into between the DEBTOR and S.C. Club, Inc.

44. Transfers from the DEBTOR to S.C. Club, Inc.

45. Transfers from the DEBTOR to S.C. Club, Inc.

46. Transfers from S.C. Club, Inc. to the DEBTOR.

47. Transfers from S.C. Club, Inc. to the DEBTOR.

48. Transfers from the DEBTOR to Jerrold Pressman.

49. Transfers from the DEBTOR to any entity partially owned or controlled by Jerrold Pressman.

50. Transfers from the DEBTOR to Keith Pressman.

51. Transfers from the DEBTOR to any entity partially owned or controlled by Keith Pressman.

52. Transfers from the DEBTOR to Ruben Moreno.

53. Transfers from the DEBTOR to any entity partially owned or controlled by Ruben Moreno.

54. Transfers from the DEBTOR to Robert Gerringer.

55. Transfers from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

56. Transfers from the DEBTOR to Katy Werner.

57. Transfers from the DEBTOR to any entity partially owned or controlled by Katy Werner.

58. Transfers from the DEBTOR to Theodore Jonavic.

59. Transfers from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

60. Transfers from the DEBTOR to EPD Investment Leasing Co., LLC.

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Exhibit Part 2 Page 16 of 59

61. Transfers from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

62. The Bright Conscience Trust Dated September 9, 2009.

63. Agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

64. Transfers from the DEBTOR to HMB Holdings, LLC.

65. Agreements between the DEBTOR and HMB Holdings, LLC.

66. HMB Holdings, LLC.

67. Communications between John C. Kirkland, Esq. and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

68. Communications between Luce Forward Hamilton & Scripps LLP and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

69. Communications between Greenberg Traurig LLP and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

70. Communications between Dreier Stein & Kahan and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

71. Communications between the DEBTOR and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

72. Communications between Jerrold Pressman and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

73. Communications between Keith Pressman and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

74. Communications between Ruben Moreno and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

75. Communications between Katy Werner and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

76. Communications between Thom Ferro and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

77. Communications between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

78. Communications between S.C. Club, Inc. and investors in the DEBTOR.

79. Communications between S.C. Club, Inc. and creditors of the DEBTOR.

80. Communications between any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc. and investors in the DEBTOR.

81. Communications between any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc. and creditors of the DEBTOR.

82. Other areas of inquiry based on information obtained by the Trustee subsequent to notice of the examination.

**EXHIBIT "B"**

Request for Production of Documents and Things for the Person(s) Most Qualified for S.C. Club, Inc.
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

**I.**

**DEFINITIONS**

1. The term "BROADWAY ENTERTAINMENT" shall mean and refer to Broadway Entertainment Marketing, Inc.

2. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

3. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

4. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

5. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles,

telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

6. The term "KIRKLAND" shall mean JOHN C. KIRKLAND, an individual.

7. The term "LUCE FORWARD" shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

8. The term "MORENO" shall mean RUBEN MORENO, an individual.

9. The term "PETITION DATE" shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

10. The term "PRESSMAN" shall mean JERROLD PRESSMAN, an individual.

11. The term "KEITH PRESSMAN" shall mean KEITH PRESSMAN, an individual.

12. The term "TRANSFER" shall refer to and mean all checks, cashier's checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

13. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

## II.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1. Any and all DOCUMENTS REGARDING whether S.C. Club, Inc. is currently operating.

2. Any and all DOCUMENTS REGARDING whether S.C. Club, Inc. is a going concern business.

3. Any and all DOCUMENTS listing S.C. Club, Inc.'s management team.

4. Any and all DOCUMENTS listing S.C. Club, Inc.'s directors and officers.

5. Any and all DOCUMENTS REGARDING S.C. Club, Inc.'s lenders.

6. Any and all DOCUMENTS REGARDING S.C. Club, Inc.'s customers.

7. Any and all DOCUMENTS REGARDING S.C. Club, Inc.'s business partners.

8. Any and all DOCUMENTS REGARDING S.C. Club, Inc.'s joint venture partners.

9. Any and all DOCUMENTS REGARDING S.C. Club, Inc.'s affiliates.

10. Any and all DOCUMENTS REGARDING S.C. Club, Inc.'s investors.

11. Any and all DOCUMENTS REGARDING S.C. Club, Inc.'s employees.

12. Any and all DOCUMENTS REGARDING S.C. Club, Inc.'s agents.

13. Any and all DOCUMENTS REGARDING S.C. Club, Inc.'s independent contractors.

14. Any and all DOCUMENTS that S.C. Club, Inc. has filed with the California Secretary of State.

15. Any and all DOCUMENTS that S.C. Club, Inc. has filed with the California Department of Corporations.

16. Any and all DOCUMENTS that S.C. Club, Inc. has filed with the United States Securities & Exchange Commission.

17. Any and all corporate minutes for S.C. Club, Inc..

18. Any and all corporate resolutions of S.C. Club, Inc..

19. Any and all articles of incorporation of S.C. Club, Inc..

20. Any and all bylaws of S.C. Club, Inc..

21. Any and all notes from meetings of the board of directors of S.C. Club, Inc. REGARDING the DEBTOR.

22. Any and all notes from meetings of the owners of S.C. Club, Inc. REGARDING the DEBTOR.

23. Any and all DOCUMENTS REGARDING the ownership of S.C. Club, Inc.

24. All promissory notes executed by the DEBTOR in favor of S.C. Club, Inc.

25. All demand notes executed by the DEBTOR in favor of S.C. Club, Inc.

26. All security agreements executed by the DEBTOR in favor of S.C. Club, Inc.

27. All UCC-1 filings authorized by the DEBTOR in favor of S.C. Club, Inc.

28. All investments made by the DEBTOR in S.C. Club, Inc.

29. All DOCUMENTS REGARDING investments made by the DEBTOR in S.C. Club, Inc.

30. All investments made by S.C. Club, Inc. in the DEBTOR.

31. All DOCUMENTS REGARDING investments made by S.C. Club, Inc. in the DEBTOR.

32. All promissory notes executed by S.C. Club, Inc. in favor of the DEBTOR.

33. All demand notes executed by S.C. Club, Inc. in favor of the DEBTOR.

34. All security agreements executed by S.C. Club, Inc. in favor of the DEBTOR.

35. All UCC-1 filings authorized by S.C. Club, Inc. in favor of the DEBTOR.

36. All judgments against S.C. Club, Inc. in favor of the DEBTOR.

37. All DOCUMENTS listing the investors in S.C. Club, Inc..

38. Any and all tax returns for S.C. Club, Inc. that include information REGARDING the DEBTOR.

39. Any and all audited financial statements for S.C. Club, Inc.

40. Any and all unaudited financial statements for S.C. Club, Inc.

41. Any and all DOCUMENTS listing S.C. Club, Inc.'s assets.

42. Any and all DOCUMENTS listing S.C. Club, Inc.'s liabilities.

43. Any and all DOCUMENTS listing S.C. Club, Inc.'s equity.

44. Any and all agreements entered into between the DEBTOR and S.C. Club, Inc.

45. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, Inc.

46. Any and all DOCUMENTS REGARDING any and all TRANSFERS from S.C. Club, Inc. to the DEBTOR.

47. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to PRESSMAN.

48. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by PRESSMAN.

49. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KEITH PRESSMAN.

50. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KEITH PRESSMAN.

51. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, L.P.

52. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to MORENO.

53. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by MORENO.

54. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Robert Gerringer.

55. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

56. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Katy Werner.

57. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Katy Werner.

58. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Theodore Jonavic.

59. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

60. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to EPD Investment Leasing Co., LLC.

61. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

62. Any and all DOCUMENTS REGARDING the Bright Conscience Trust Dated September 9, 2009.

63. Any and all agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

64. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to HMB Holdings, LLC.

65. Any and all agreements between the DEBTOR and HMB Holdings, LLC.

66. Any and all DOCUMENTS REGARDING HMB Holdings, LLC.

67. All CORRESPONDENCE between KIRKLAND and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

68. All CORRESPONDENCE between LUCE FORWARD and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

69. All CORRESPONDENCE between Greenberg Traurig LLP and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

70. All CORRESPONDENCE between Dreier Stein & Kahan and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

71. All CORRESPONDENCE between the DEBTOR and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

72. All CORRESPONDENCE between PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

73. All CORRESPONDENCE between KEITH PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

74. All CORRESPONDENCE between RUBEN MORENO and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

75. All CORRESPONDENCE between KATY WERNER and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

76. All CORRESPONDENCE between THOM FERRO and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

77. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc.

78. All CORRESPONDENCE between S.C. Club, Inc.and investors in the DEBTOR.

79. All CORRESPONDENCE between S.C. Club, Inc.and creditors of the DEBTOR.

80. All CORRESPONDENCE between any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc. and investors in the DEBTOR.

81. All CORRESPONDENCE between any officer, director, manager, member, employee, agent or independent contractor of S.C. Club, Inc. and creditors of the DEBTOR.

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 2 Page 25 of 59

# EXHIBIT "A"

Jason Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "DEBTOR") hereby requests and requires that The Bright Conscience Trust Dated September 9, 2009 aka The Bright Conscience Trust designate and produce the person or persons most qualified to testify on behalf of The Bright Conscience Trust on the following matters:

1. The business model of the DEBTOR.

2. Offering circulars prepared by the DEBTOR.

3. Investment materials prepared by the DEBTOR.

4. Promissory notes executed by the DEBTOR in favor of the Bright Conscience Trust.

5. Demand notes executed by the DEBTOR in favor of the Bright Conscience Trust.

6. Security agreements executed by the DEBTOR in favor of the Bright Conscience Trust.

7. UCC-1 filings authorized by the DEBTOR in favor of the Bright Conscience Trust.

8. Agreements between the DEBTOR and the Bright Conscience Trust.

9. Investments made by John C. Kirkland in the DEBTOR.

10. Agreements entered into between John C. Kirkland and the DEBTOR in regard to investments.

11. Investments made by John C. Kirkland's family trust(s) in the DEBTOR.

12. Agreements entered into between John C. Kirkland's family trust(s) and the DEBTOR in regard to investments.

13. The Bright Conscience Trust's investments in the DEBTOR.

14. John C. Kirkland's investments in the DEBTOR.

15. John C. Kirkland's family trust(s) investments in the DEBTOR.

16. Communications between the DEBTOR and the Bright Conscience Trust regarding the DEBTOR.

17. Communications between the DEBTOR and KIRKLAND regarding the DEBTOR.

18. Communications between the DEBTOR and John C. Kirkland's family trust(s) regarding the DEBTOR.

19. Tax returns listing the Bright Conscience Trust's investments in the DEBTOR.

20. Tax returns listing John C. Kirkland's investments in the DEBTOR.

21. Tax returns listing John C. Kirkland's family trust(s) investments in the DEBTOR.

22. Audited financial statements for the DEBTOR.

23. Unaudited financial statements for the DEBTOR.

24. Quick Books records for the DEBTOR.

25. Transfers from the DEBTOR to John C. Kirkland.

26. Transfers from the DEBTOR to John C. Kirkland's family trust(s).

27. Transfers from the DEBTOR to any entity partially owned or controlled by John C. Kirkland.

28. Transfers from the DEBTOR to any law firm where John C. Kirkland was employed as an attorney.

29. Transfers from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

30. The Bright Conscience Trust Dated September 9, 2009.

31. Other areas of inquiry based on information obtained by the Trustee subsequent to notice of the examination.

# EXHIBIT "B"

Request for Production of Documents and Things
for The Person(s) Most Qualified for The Bright Conscience Trust
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

## I.

## DEFINITIONS

1. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc Exhibit Part 2 Page 28 of 59

5. The term "KIRKLAND" shall mean JOHN C. KIRKLAND, an individual.

6. The term "LUCE FORWARD" shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

7. The term "MORENO" shall mean RUBEN MORENO, an individual.

8. The term "PETITION DATE" shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

9. The term "PRESSMAN" shall mean JERROLD PRESSMAN, an individual.

10. The term "KEITH PRESSMAN" shall mean KEITH PRESSMAN, an individual.

11. The term "TRANSFER" shall refer to and mean all checks, cashier's checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

12. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

## II.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1. All DOCUMENTS REGARDING the Bright Conscience Trust.

2. Any and all DOCUMENTS REGARDING the business model of the DEBTOR.

3. Any and all offering circulars prepared by the DEBTOR.

4. Any and all investment materials prepared by the DEBTOR.

5. All promissory notes executed by the DEBTOR in favor of the Bright Conscience Trust.

6. All demand notes executed by the DEBTOR in favor of the Bright Conscience Trust.

7. All security agreements executed by the DEBTOR in favor of the Bright Conscience Trust.

8. All UCC-1 filings authorized by the DEBTOR in favor of the Bright Conscience Trust.

9. Any and all agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

10. All investments made by KIRKLAND in the DEBTOR.

11. All agreements entered into between KIKRLAND and the DEBTOR in regard to investments.

12. All investments made by KIRKLAND's family trust(s) in the DEBTOR.

13. All agreements entered into between KIRKLAND's family trust(s) and the DEBTOR in regard to investments.

14. Any and all DOCUMENTS REGARDING the Bright Conscience Trust's investments in the DEBTOR.

15. Any and all DOCUMENTS REGARDING KIRKLAND's investments in the DEBTOR.

16. Any and all DOCUMENTS REGARDING KIRKLAND's family trust(s) investments in the DEBTOR.

17. All CORRESPONDENCE BETWEEN THE DEBTOR and the Bright Conscience Trust REGARDING the DEBTOR.

18. All CORRESPONDENCE BETWEEN THE DEBTOR and KIRKLAND REGARDING the DEBTOR.

19. All CORRESPONDENCE BETWEEN THE DEBTOR and KIRKLAND's family trust(s) REGARDING the DEBTOR.

20. Any and all tax returns listing the Bright Conscience Trust's investments in the DEBTOR.

21. Any and all tax returns listing KIRKLAND's investments in the DEBTOR.

22. Any and all tax returns listing KIRKLAND's family trust(s) investments in the DEBTOR.

23. Any and all audited financial statements for the DEBTOR.

24. Any and all unaudited financial statements for the DEBTOR.

25. Any and all Quick Books records for the DEBTOR.

26. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KIRKLAND.

27. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KIRKLAND's family trust(s).

28. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KIRKLAND.

29. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any law firm where KIRKLAND was employed as an attorney.

30. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

31. Any and all DOCUMENTS REGARDING the Bright Conscience Trust Dated September 9, 2009.

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 2-9 Page 31 of 59

**EXHIBIT "A"**

Jason Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "DEBTOR") hereby requests and requires that HMB Holdings, LLC ("HMB") designate and produce the person or persons most qualified to testify on behalf of HMB on the following matters:

1. The business model of the DEBTOR.
2. Offering circulars prepared by the DEBTOR.
3. Investment materials prepared by the DEBTOR.
4. Promissory notes executed by the DEBTOR in favor of HMB.
5. Demand notes executed by the DEBTOR in favor of HMB.
6. Security agreements executed by the DEBTOR in favor of HMB.
7. UCC-1 filings authorized by the DEBTOR in favor of HMB.
8. Agreements between the DEBTOR and HMB.
9. Agreements entered into between members of HMB and the DEBTOR.
10. Agreements entered into between managers of HMB and the DEBTOR.
11. Investments made by HMB in the DEBTOR.
12. Investments made by members of HMB in the DEBTOR.
13. Investments made by managers of HMB in the DEBTOR.
14. Communications between the DEBTOR and HMB.
15. Communications between the DEBTOR and members of HMB.
16. Communications between the DEBTOR and managers of HMB.
17. Communications between the DEBTOR and attorneys for HMB.
18. Communications between attorneys for THE DEBTOR and attorneys for HMB.
19. Communications between attorneys for the DEBTOR and HMB.

20. Communications between the DEBTOR and John C. Kirkland, Esq. REGARDING HMB.

21. Communications between the DEBTOR and Luce Forward Hamilton & Scripps LLP regarding HMB.

22. Tax returns listing HMB's investments in the DEBTOR.

23. Audited financial statements for the DEBTOR.

24. Unaudited financial statements for the DEBTOR.

25. Quick Books records for the DEBTOR.

26. Audited financial statements for HMB.

27. Unaudited financial statements for HMB.

28. Transfers from the DEBTOR to HMB.

29. Transfers from the DEBTOR to members of HMB.

30. Transfers from the DEBTOR to managers of HMB.

31. Transfers from the DEBTOR to any entity partially owned or controlled by HMB.

32. Transfers from the DEBTOR to any entity partially owned or controlled by HMB's members.

33. Transfers from the DEBTOR to any entity partially owned or controlled by HMB's managers.

34. Documents filed by HMB with the Delaware Department of Corporations.

35. Documents filed by HMB with the Delaware Secretary of State.

36. Documents filed by HMB with the California Secretary of State.

37. The members of HMB.

38. The managers of HMB.

39. HMB limited liability company (corporate) resolutions REGARDING the DEBTOR.

40. Meetings of HMB members REGARDING the DEBTOR.

41. Meetings of HMB managers REGARDING the DEBTOR.

42. Other areas of inquiry based on information obtained by the Trustee subsequent to notice of the examination.

**EXHIBIT "B"**

Request for Production of Documents and Things
for The Person(s) Most Qualified for HMB Holdings, LLC
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

**I.**

**DEFINITIONS**

1. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term "HMB" shall mean and refer to HMB Holdings, LLC.

6. The term "KIRKLAND" shall mean JOHN C. KIRKLAND, an individual.

7. The term "LUCE FORWARD" shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

8. The term "MORENO" shall mean RUBEN MORENO, an individual.

9. The term "PETITION DATE" shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

10. The term "PRESSMAN" shall mean JERROLD PRESSMAN, an individual.

11. The term "KEITH PRESSMAN" shall mean KEITH PRESSMAN, an individual.

12. The term "TRANSFER" shall refer to and mean all checks, cashier's checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

13. The terms "and" and "or" are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

## II.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1. Any and all DOCUMENTS REGARDING the business model of the DEBTOR.

2. Any and all offering circulars prepared by the DEBTOR.

3. Any and all investment materials prepared by the DEBTOR.

4. All promissory notes executed by the DEBTOR in favor of HMB.

5. All demand notes executed by the DEBTOR in favor of HMB.

6. All security agreements executed by the DEBTOR in favor of HMB.

7. All UCC-1 filings authorized by the DEBTOR in favor of HMB.

8. Any and all agreements between the DEBTOR and HMB.

9. All agreements entered into between members of HMB and the DEBTOR.

10. All agreements entered into between managers of HMB and the DEBTOR.

11. All investments made by HMB in the DEBTOR.

12. All investments made by members of HMB in the DEBTOR.

13. All investments made by managers of HMB in the DEBTOR.

14. Any and all DOCUMENTS REGARDING HMB's investments in the DEBTOR.

15. Any and all DOCUMENTS REGARDING investments by HMB's members in the DEBTOR.

16. Any and all DOCUMENTS REGARDING investments by HMB's managers in the DEBTOR.

17. All CORRESPONDENCE BETWEEN THE DEBTOR and HMB.

18. All CORRESPONDENCE BETWEEN THE DEBTOR and members of HMB.

19. All CORRESPONDENCE BETWEEN THE DEBTOR and managers of HMB.

20. All CORRESPONDENCE BETWEEN THE DEBTOR and attorneys for HMB.

21. All CORRESPONDENCE BETWEEN attorneys for THE DEBTOR and attorneys for HMB.

22. All CORRESPONDENCE BETWEEN attorneys for THE DEBTOR and HMB.

23. All CORRESPONDENCE BETWEEN THE DEBTOR and KIRKLAND REGARDING HMB.

24. All CORRESPONDENCE BETWEEN THE DEBTOR and LUCE FORWARD REGARDING HMB.

25. Any and all tax returns listing HMB's investments in the DEBTOR.

26. Any and all audited financial statements for the DEBTOR.

27. Any and all unaudited financial statements for the DEBTOR.

28. Any and all Quick Books records for the DEBTOR.

29. Any and all audited financial statements for HMB.

30. Any and all unaudited financial statements for HMB.

31. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to HMB.

32. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to members of HMB.

33. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to managers of HMB.

34. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by HMB.

35. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by HMB's members.

36. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by HMB's managers.

37. Any and all DOCUMENTS filed by HMB with the Delaware Department of Corporations.

38. Any and all DOCUMENTS filed by HMB with the Delaware Secretary of State.

39. Any and all DOCUMENTS filed by HMB with the California Secretary of State.

40. Any and all DOCUMENTS listing the members of HMB.

41. Any and all DOCUMENTS listing the managers of HMB.

42. All HMB limited liability company (corporate) resolutions REGARDING the DEBTOR.

43. All notes from meetings of HMB members REGARDING the DEBTOR.

44. All notes from meetings of HMB managers REGARDING the DEBTOR.

**EXHIBIT "A"**

Request for Production of Documents and Things for Theodore Jonavic aka Ted Jonavic
In re EPD Investment Co., LLC; Bankruptcy Case No. 2:10-bk-62208-ER

**I.**

**DEFINITIONS**

1. The term "EPD" or the "DEBTOR" shall mean and refer to debtor EPD Investment Co., LLC, a California limited liability company.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean all writings, including originals, drafts, and duplicates (including, without limitation, duplicates containing notations, insertions, corrections, marginal notes, or any other variations) as those terms are defined in Fed.R.Evid. 1001(1) and shall include, without limitation, all communications, including any letter, correspondence, note book, pamphlet, article, bulletin, directive, review publication, memorandum, diary, log, test, analysis, study, production, check, invoice, receipt, bill, purchase order, shipping order, contract, lease, agreement, work paper, calendar, envelope, paper, telephone message, tape, computer tape, computer disk, computer card, e-mail, recording, videotape, film, microfilm, microfiche, drawing, account, ledger, statement, financial data, and all other writing or communications, including all identical copies, drafts, and preliminary sketches no matter how produced or maintained in your actual possession, custody or control or of which you have knowledge of the existence, and whether prepared, published, or released by you or any other person or entity. Without limitation on the foregoing, the term "DOCUMENT" shall include any copy that differs in any respect from the original or other version of the document.

3. The terms "CONCERN", "REFER", "REFER TO", "RELATE", "RELATE TO", and "REGARDING", including any and all grammatical derivations thereof, shall mean directly or indirectly referring to, alluding to, responding to, pertaining to, connected with, commencing on, in respect of, about, regarding, discussing, showing, describing, mentioning, memorializing, reflecting, analyzing, constituting, evidencing, modifying or pertaining to the matters at issue.

4. The term "CORRESPONDENCE' means any oral, written, or electronic transmission of information, including, but not limited to letters, conversations, meetings, discussions, telephone calls, telegrams, facsimiles, telecopies, telexes, seminars, conferences, messages, notes, emails, memorandum and electronic data.

5. The term “KIRKLAND” shall mean JOHN C. KIRKLAND, an individual.

6. The term “LUCE FORWARD” shall refer to and mean Luce Forward Hamilton & Scripps, LLC.

7. The term “MORENO” shall mean RUBEN MORENO, an individual.

8. The term “PETITION DATE” shall refer to and mean December 7, 2010, the date the involuntary bankruptcy petition was filed against debtor EPD Investment Co., LLC.

9. The term “PRESSMAN” shall mean JERROLD PRESSMAN, an individual.

10. The term “KEITH PRESSMAN” shall mean KEITH PRESSMAN, an individual.

11. The term “TRANSFER” shall refer to and mean all checks, cashier’s checks, wire transfers or other means of transferring funds or any other real or personal property or assets of any kind for any purpose.

12. The terms “and” and “or” are to be construed both conjunctively and disjunctively as necessary to make these Requests inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

## II.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1. Any and all DOCUMENTS REGARDING the business model of the DEBTOR.

2. Any and all offering circulars prepared by the DEBTOR.

3. Any and all investment materials prepared by the DEBTOR.

4. Any and all DOCUMENTS REGARDING whether the DEBTOR is currently operating.

5. Any and all DOCUMENTS REGARDING whether the DEBTOR is a going concern business.

6. Any and all DOCUMENTS REGARDING the current business location(s) of DEBTOR’s business.

7. All of the DEBTOR's books and records to the extent not previously produced to the Trustee.

8. Any and all DOCUMENTS listing the DEBTOR's management team.

9. Any and all DOCUMENTS listing the DEBTOR's directors, officers, managers and members.

10. Any and all DOCUMENTS REGARDING whether the DEBTOR generally pays debts as they become due.

11. Any and all DOCUMENTS REGARDING whether the DEBTOR has any past due bills or late payments at present.

12. Any and all DOCUMENTS REGARDING whether the DEBTOR pays its debts in the ordinary course of business.

13. Any and all DOCUMENTS REGARDING the DEBTOR's lenders.

14. Any and all DOCUMENTS REGARDING the DEBTOR's customers.

15. Any and all DOCUMENTS REGARDING the DEBTOR's business partners.

16. Any and all DOCUMENTS REGARDING the DEBTOR's joint venture partners.

17. Any and all DOCUMENTS REGARDING the DEBTOR's affiliates.

18. Any and all DOCUMENTS REGARDING the DEBTOR's investors.

19. Any and all DOCUMENTS REGARDING the DEBTOR's employees.

20. Any and all DOCUMENTS REGARDING the DEBTOR's agents.

21. Any and all DOCUMENTS REGARDING the DEBTOR's independent contractors.

22. Any and all DOCUMENTS that the DEBTOR has filed with the California Secretary of State.

23. Any and all DOCUMENTS that the DEBTOR has filed with the California Department of Corporations.

24. Any and all DOCUMENTS that the DEBTOR has filed with the United States Securities & Exchange Commission.

25. Any and all corporate (limited liability company) minutes for the DEBTOR.

26. Any and all corporate (limited liability company) resolutions of the DEBTOR.

27. Any and all bylaws of the DEBTOR.

28. Any and all notes from meetings of the managers of the DEBTOR.

29. Any and all notes from meetings of the members of the DEBTOR.

30. Any and all notes from meetings of the board of directors of the DEBTOR.

31. Any and all notes from meetings of the owners of the DEBTOR REGARDING the DEBTOR.

32. Any and all DOCUMENTS REGARDING the ownership of the DEBTOR.

33. Any and all demands sent to the DEBTOR for repayment of loans during the two years prior to the PETITION DATE.

34. Any and all demands sent to the DEBTOR for repayment of promissory notes during the two years prior to the PETITION DATE.

35. Any and all demands sent to the DEBTOR for repayment of demand notes during the two years prior to the PETITION DATE.

36. Any and all demands to the DEBTOR for repayment of investments during the two years prior to the PETITION DATE.

37. All promissory notes executed by the DEBTOR.

38. All demand notes executed by the DEBTOR.

39. All security agreements executed by the DEBTOR.

40. All UCC-1 filings authorized by the DEBTOR.

41. All DOCUMENTS listing the holders of notes executed by the DEBTOR.

42. All investments made by the DEBTOR.

43. All DOCUMENTS REGARDING investments made by the DEBTOR.

44. All promissory notes in favor of the DEBTOR.

45. All demand notes in favor of the DEBTOR.

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 2 Page 43 of 59

46. All security agreements in favor of the DEBTOR.

47. All UCC-1 filings in favor of the DEBTOR.

48. All judgments in favor of the DEBTOR.

49. All DOCUMENTS listing the investors in the DEBTOR.

50. Any and all tax returns for the DEBTOR.

51. Any and all bank records for the DEBTOR.

52. Any and all records for securities accounts for the DEBTOR.

53. Any and all records for investment accounts for the DEBTOR.

54. Any and all DOCUMENTS regarding the DEBTOR's current assets.

55. Any and all DOCUMENTS regarding the DEBTOR's fixed assets.

56. Any and all DOCUMENTS regarding the DEBTOR's inventory.

57. Any and all DOCUMENTS regarding the DEBTOR's accounts receivable.

58. Any and all DOCUMENTS regarding the DEBTOR's accounts payable.

59. Any and all audited financial statements for the DEBTOR.

60. Any and all unaudited financial statements for the DEBTOR.

61. Any and all Quick Books records for the DEBTOR.

62. Any and all DOCUMENTS listing the DEBTOR's assets.

63. Any and all DOCUMENTS listing the DEBTOR's liabilities.

64. Any and all DOCUMENTS listing the DEBTOR's equity.

65. All of the DEBTOR's computers, hard drives, back-up drives and other media for storing electronic records.

66. All of the DEBTOR's e-mail records.

67. Any and all agreements entered into by the DEBTOR.

68. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to LUCE FORWARD.

69. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Greenberg Traurig LLP.

70. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Dreier Stein & Kahan.

71. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KIRKLAND.

72. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KIRKLAND.

73. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to PRESSMAN.

74. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by PRESSMAN.

75. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to KEITH PRESSMAN.

76. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by KEITH PRESSMAN.

77. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, L.P.

78. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to S.C. Club, Inc.

79. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to MORENO.

80. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by MORENO.

81. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Broadway Entertainment Marketing, Inc.

82. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Robert Gerringer.

83. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Robert Gerringer.

84. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Katy Werner.

85. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Katy Werner.

86. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to Theodore Jonavic.

87. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to any entity partially owned or controlled by Theodore Jonavic.

88. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to EPD Investment Leasing Co., LLC.

89. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to the Bright Conscience Trust Dated September 9, 2009.

90. Any and all DOCUMENTS REGARDING the Bright Conscience Trust Dated September 9, 2009.

91. Any and all agreements between the DEBTOR and the Bright Conscience Trust Dated September 9, 2009.

92. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR to HMB Holdings, LLC.

93. Any and all agreements between the DEBTOR and HMB Holdings, LLC.

94. Any and all DOCUMENTS REGARDING HMB Holdings, LLC.

95. Any and all DOCUMENTS REGARDING any and all TRANSFERS from the DEBTOR from December 2003 to the present.

96. Any and all engagement agreements between the DEBTOR and Greenberg Traurig LLP.

97. Any and all agreements between the DEBTOR and Greenberg Traurig LLP.

98. Any and all invoices that the DEBTOR received from Greenberg Traurig LLP.

99. Any and all memoranda from Greenberg Traurig LLP to the DEBTOR.

100. Any and all engagement agreements between the DEBTOR and Dreier Stein & Kahan.

101. Any and all agreements between the DEBTOR and Dreier Stein & Kahan.

102. Any and all invoices that the DEBTOR received from Dreier Stein & Kahan.

103. Any and all memoranda from Dreier Stein & Kahan to the DEBTOR.

104. Any and all engagement agreements between the DEBTOR and LUCE FORWARD.

105. Any and all agreements between the DEBTOR and LUCE FORWARD.

106. Any and all agreements between the DEBTOR and KIRKLAND.

107. Any and all invoices that the DEBTOR received from LUCE FORWARD.

108. Any and all invoices that the DEBTOR received from KIRKLAND.

109. Any and all memoranda from LUCE FORWARD to the DEBTOR.

110. Any and all memoranda from KIRKLAND to the DEBTOR.

111. Any and all memoranda from LUCE FORWARD to PRESSMAN.

112. Any and all memoranda from LUCE FORWARD to KEITH PRESSMAN.

113. Any and all memoranda from LUCE FORWARD to MORENO.

114. Any and all memoranda from LUCE FORWARD to Christine Kamps.

115. Any and all memoranda from KIRKLAND to PRESSMAN.

116. Any and all memoranda from KIRKLAND to KEITH PRESSMAN.

117. Any and all memoranda from KIRKLAND to MORENO.

118. Any and all memoranda from KIRKLAND to Christine Kamps.

119. Any and all memoranda from Theodore Jonavic to the DEBTOR.

120. Any and all memoranda from Theodore Jonavic to PRESSMAN.

121. Any and all memoranda from Theodore Jonavic to KEITH PRESSMAN.

122. Any and all memoranda from Theodore Jonavic to MORENO.

123. Any and all memoranda from Theodore Jonavic to Christine Kamps.

124. Any and all CORRESPONDENCE between the DEBTOR and LUCE FORWARD.

125. Any and all CORRESPONDENCE between the DEBTOR and Greenberg Traurig LLP.

126. Any and all CORRESPONDENCE between the DEBTOR and Dreier Stein & Kahan.

127. Any and all CORRESPONDENCE between the DEBTOR and KIRKLAND.

128. Any and all CORRESPONDENCE between PRESSMAN and KIRKLAND.

129. Any and all CORRESPONDENCE between KEITH PRESSMAN and KIRKLAND.

130. Any and all CORRESPONDENCE between MORENO and KIRKLAND.

131. Any and all CORRESPONDENCE between Christine Kamps and KIRKLAND.

132. All CORRESPONDENCE between LUCE FORWARD and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

133. All CORRESPONDENCE between KIRKLAND and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

134. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

135. All CORRESPONDENCE between Theodore Jonavic and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

136. All CORRESPONDENCE between Katy Werner and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

137. All CORRESPONDENCE between MORENO and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

138. All CORRESPONDENCE between PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

139. All CORRESPONDENCE between KEITH PRESSMAN and any officer, director, manager, member, employee, agent or independent contractor of the DEBTOR.

**Corey Weber**

**From:** Kirkland, John [JKirkland@LUCE.com]
**Sent:** Thursday, April 14, 2011 3:13 PM
**To:** Corey Weber
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

Jerrold Pressman is available May 5, 6 and 13.

I can be available the week of May 9.

We do not represent Keith Pressman or Ruben Moreno in this matter, nor are they employed by the debtor. You should contact them directly re scheduling.

---

**From:** Corey Weber [mailto:cweber@ebg-law.com]
**Sent:** Thursday, April 14, 2011 2:25 PM
**To:** Kirkland, John
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner; Moe, John
**Subject:** RE: In re EPD Investment Co., LLC

John,

I received no response from you to my e-mail from Tuesday. If you do not make yourself available to meet and confer by the close of business tomorrow, the Trustee will proceed to file the motion for Rule 2004 examinations without your input as to the deposition dates and times.

*Corey Weber, Esq.*
EB+G
**Ezra Brutzkus Gubner LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
cweber@ebg-law.com
www.ebg-law.com
818-827-9122 Direct
818-827-9000 Phone
818-827-9099 Fax

The preceeding E-mail message is subject to Ezra Brutzkus Gubner LLP's e-mail policies which can be found at http://mail.ebg-law.com/disclaimer.htm

---

**From:** Corey Weber
**Sent:** Tuesday, April 12, 2011 1:41 PM
**To:** 'jkirkland@luce.com'
**Cc:** 'Richard K. Diamond'; rhessling@dgdk.com; Steven T. Gubner; 'jmoe@luce.com'
**Subject:** In re EPD Investment Co., LLC

John,

Based on the Court's ruling today denying the Debtor's motion to convert, the depositions previously set in relation to that contested matter will go off calendar. However, the Trustee still requires the testimony of:

1. The Person(s) Most Qualified for the Debtor;
2. Jerrold Pressman;
3. Keith Pressman;
4. Ruben Moreno; and
5. John Kirkland.

The Trustee intends to proceed by Rule 2004 examinations as to the foregoing witnesses. This e-mail is sent pursuant to Local Bankruptcy Rule 2004-1(a) to meet and confer with you regarding the Rule 2004 examinations. Please let me know by no later than the close of business tomorrow as to when you are available to discuss by telephone: (1) the Rule 2004 examinations; (2) when you and the other witnesses are available for the examinations; and (3) the scope of the examinations.

**************

CONFIDENTIAL

Luce, Forward, Hamilton & Scripps LLP
This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments without reading, printing, copying or forwarding it, and please notify us.

http://www.luce.com

Please consider the environment before printing this email.

**Corey Weber**

**From:** Kirkland, John [JKirkland@LUCE.com]
**Sent:** Friday, April 15, 2011 2:14 PM
**To:** Corey Weber
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

Jerrold Pressman is also available May 17-20

**From:** Corey Weber [mailto:cweber@ebg-law.com]
**Sent:** Friday, April 15, 2011 10:57 AM
**To:** Kirkland, John
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

John,

Please let us know re the additional dates for the Rule 2004 examination of Jerrold Pressman and as to contact information for Keith Pressman and Ruben Moreno. Also let us know whether Jerrold Pressman will be the person most qualified for the Debtor.

In addition, based on the Statements and Schedules filed by the Debtor thus far, the Trustee intends to take the Rule 2004 examinations of the person(s) most qualified for the Bright Conscience Trust, HMB Holdings, LLC and Ted Jonavic. Let us know if you represent either of those entities and/or Jonavic. Also let us know when you are available today or Monday to meet and confer on the date, time and scope of the examinations.

In addition, the Statements and Scheduled filed thus far were not signed. Will you be filing signed copies today?

*Corey Weber, Esq.*
EB+G
**Ezra Brutzkus Gubner LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
cweber@ebg-law.com
www.ebg-law.com
818-827-9122 Direct
818-827-9000 Phone
818-827-9099 Fax

The preceeding E-mail message is subject to Ezra Brutzkus Gubner LLP's e-mail policies which can be found at http://mail.ebg-law.com/disclaimer.htm

**From:** Kirkland, John [mailto:JKirkland@LUCE.com]
**Sent:** Thursday, April 14, 2011 5:40 PM
**To:** Corey Weber
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:30 Desc Exhibit Part 2-9 Page 92 of 59


They were formerly with the company, but no longer are.

**From:** Corey Weber [mailto:cweber@ebg-law.com]
**Sent:** Thursday, April 14, 2011 5:38 PM
**To:** Kirkland, John
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

John,

Please plan on May 9 at 10:00 a.m. at my office for your examination. That date may have to change if you and Luce Forward have not turned over the case files relating to the Debtors prior to the examination and if the Trustee has not had the opportunity to review the files.

Let me know other dates on which Jerrold Pressman is available. Also, will Jerrold Pressman be the PMK/PMQ for the Debtor?

Regarding Keith Pressman and Ruben Moreno, both are listed as officers of the Debtor on documents filed with the California Secretary of State. If it is the position of the Debtor/Luce Forward that Keith Pressman and Ruben Moreno are not represented by you as officers of the Debtor, please let me know their contact information.

*Corey Weber, Esq.*
EB+G
**Ezra Brutzkus Gubner LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
cweber@ebg-law.com
www.ebg-law.com
818-827-9122 Direct
818-827-9000 Phone
818-827-9099 Fax

The preceeding E-mail message is subject to Ezra Brutzkus Gubner LLP's e-mail policies which can be found at http://mail.ebg-law.com/disclaimer.htm

**From:** Kirkland, John [mailto:JKirkland@LUCE.com]
**Sent:** Thursday, April 14, 2011 3:13 PM
**To:** Corey Weber
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

Jerrold Pressman is available May 5, 6 and 13.

I can be available the week of May 9.

We do not represent Keith Pressman or Ruben Moreno in this matter, nor are they employed by the debtor. You should contact them directly re scheduling.

**From:** Corey Weber [mailto:cweber@ebg-law.com]
**Sent:** Thursday, April 14, 2011 2:25 PM
**To:** Kirkland, John
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner; Moe, John
**Subject:** RE: In re EPD Investment Co., LLC

John,

I received no response from you to my e-mail from Tuesday. If you do not make yourself available to meet and confer by the close of business tomorrow, the Trustee will proceed to file the motion for Rule 2004 examinations without your input as to the deposition dates and times.

*Corey Weber, Esq.*
EB+G
**Ezra Brutzkus Gubner LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
cweber@ebg-law.com
www.ebg-law.com
818-827-9122 Direct
818-827-9000 Phone
818-827-9099 Fax

The preceeding E-mail message is subject to Ezra Brutzkus Gubner LLP's e-mail policies which can be found at http://mail.ebg-law.com/disclaimer.htm

**From:** Corey Weber
**Sent:** Tuesday, April 12, 2011 1:41 PM
**To:** 'jkirkland@luce.com'
**Cc:** 'Richard K. Diamond'; rhessling@dgdk.com; Steven T. Gubner; 'jmoe@luce.com'
**Subject:** In re EPD Investment Co., LLC

John,

Based on the Court's ruling today denying the Debtor's motion to convert, the depositions previously set in relation to that contested matter will go off calendar. However, the Trustee still requires the testimony of:

1. The Person(s) Most Qualified for the Debtor;
2. Jerrold Pressman;
3. Keith Pressman;
4. Ruben Moreno; and
5. John Kirkland.

The Trustee intends to proceed by Rule 2004 examinations as to the foregoing witnesses. This e-mail is sent pursuant to Local Bankruptcy Rule 2004-1(a) to meet and confer with you regarding the Rule 2004 examinations. Please let me know by no later than the close of business tomorrow as to when you are available to discuss by telephone: (1) the Rule 2004 examinations; (2) when you and the other witnesses are available for the examinations; and (3) the scope of the examinations.

**************

CONFIDENTIAL

Luce, Forward, Hamilton & Scripps LLP
This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments without reading, printing, copying or forwarding it, and please notify us.

http://www.luce.com

Please consider the environment before printing this email.

**Corey Weber**

**From:** Kirkland, John [JKirkland@LUCE.com]
**Sent:** Wednesday, April 20, 2011 2:00 PM
**To:** Corey Weber
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

The files are being delivered to us today. Please let me know if you would like to come review them, pick them up, or how you would like to arrange for delivery.

They are their originals and they have no copies, so you will need to arrange for copies, or they will need them back as soon as possible.

As I previously advised, the only possible PMK for the debtor would be Jerrold Pressman.

---

**From:** Corey Weber [mailto:cweber@ebg-law.com]
**Sent:** Wednesday, April 20, 2011 9:03 AM
**To:** Kirkland, John
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner; Moe, John
**Subject:** RE: In re EPD Investment Co., LLC

John,

You did not respond to my previous e-mails in regard to coordinating regarding the turnover of the books, records and property of the Debtor, which must occur by today. Please let me know what time today I can expect that the books, records and property will be delivered to my office.

Additionally, you did not respond to my e-mails in regard to why the Debtor has failed to file signed and verified versions of the Statements, Schedules and Creditor's Matrix. You also did not respond as to who the designated person(s) most qualified for the Debtor will be. Based on your failure to respond on those issues, the Trustee reserves all rights and privileges and will bring these issues to the attention of the Court.

*Corey Weber, Esq.*
EB+G
**Ezra Brutzkus Gubner LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
cweber@ebg-law.com
www.ebg-law.com
818-827-9122 Direct
818-827-9000 Phone
818-827-9099 Fax

The preceeding E-mail message is subject to Ezra Brutzkus Gubner LLP's e-mail policies which can be found at http://mail.ebg-law.com/disclaimer.htm

---

**From:** Corey Weber
**Sent:** Monday, April 18, 2011 9:45 AM

Case 2:10-bk-62208-ER Doc 123-2 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 2-9 Page 56 of 59


**To:** 'Kirkland, John'
**Cc:** 'Richard K. Diamond'; 'rhessling@dgdk.com'; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

John,

This e-mail is to follow up with you regarding:

1. Coordinating regarding the turnover of the property and books and records of the Debtor, which must take place by Wednesday;
2. Whether the Debtor will file signed versions of the Statements and Schedules. The Statements and Schedules that you have filed thus far are unsigned; and
3. Whether Jerrold Pressman is the designated person most qualified for the Debtor.

---

**From:** Corey Weber
**Sent:** Friday, April 15, 2011 11:07 AM
**To:** 'Kirkland, John'
**Cc:** 'Richard K. Diamond'; 'rhessling@dgdk.com'; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

John,

Following on my last e-mail, I would also like to coordinate with you regarding the turnover of property and books and records of the Debtor, which must occur by next Wednesday.

---

**From:** Corey Weber
**Sent:** Friday, April 15, 2011 10:57 AM
**To:** 'Kirkland, John'
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

John,

Please let us know re the additional dates for the Rule 2004 examination of Jerrold Pressman and as to contact information for Keith Pressman and Ruben Moreno. Also let us know whether Jerrold Pressman will be the person most qualified for the Debtor.

In addition, based on the Statements and Schedules filed by the Debtor thus far, the Trustee intends to take the Rule 2004 examinations of the person(s) most qualified for the Bright Conscience Trust, HMB Holdings, LLC and Ted Jonavic. Let us know if you represent either of those entities and/or Jonavic. Also let us know when you are available today or Monday to meet and confer on the date, time and scope of the examinations.

In addition, the Statements and Scheduled filed thus far were not signed. Will you be filing signed copies today?

---

**From:** Kirkland, John [mailto:JKirkland@LUCE.com]
**Sent:** Thursday, April 14, 2011 5:40 PM
**To:** Corey Weber
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

They were formerly with the company, but no longer are.

---

**From:** Corey Weber [mailto:cweber@ebg-law.com]
**Sent:** Thursday, April 14, 2011 5:38 PM

**To:** Kirkland, John
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

John,

Please plan on May 9 at 10:00 a.m. at my office for your examination. That date may have to change if you and Luce Forward have not turned over the case files relating to the Debtors prior to the examination and if the Trustee has not had the opportunity to review the files.

Let me know other dates on which Jerrold Pressman is available. Also, will Jerrold Pressman be the PMK/PMQ for the Debtor?

Regarding Keith Pressman and Ruben Moreno, both are listed as officers of the Debtor on documents filed with the California Secretary of State. If it is the position of the Debtor/Luce Forward that Keith Pressman and Ruben Moreno are not represented by you as officers of the Debtor, please let me know their contact information.

*Corey Weber, Esq.*
EB+G
**Ezra Brutzkus Gubner LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
cweber@ebg-law.com
www.ebg-law.com
818-827-9122 Direct
818-827-9000 Phone
818-827-9099 Fax

The preceeding E-mail message is subject to Ezra Brutzkus Gubner LLP's e-mail policies which can be found at http://mail.ebg-law.com/disclaimer.htm

**From:** Kirkland, John [mailto:JKirkland@LUCE.com]
**Sent:** Thursday, April 14, 2011 3:13 PM
**To:** Corey Weber
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner
**Subject:** RE: In re EPD Investment Co., LLC

Jerrold Pressman is available May 5, 6 and 13.

I can be available the week of May 9.

We do not represent Keith Pressman or Ruben Moreno in this matter, nor are they employed by the debtor. You should contact them directly re scheduling.

**From:** Corey Weber [mailto:cweber@ebg-law.com]
**Sent:** Thursday, April 14, 2011 2:25 PM
**To:** Kirkland, John
**Cc:** Richard K. Diamond; rhessling@dgdk.com; Steven T. Gubner; Moe, John
**Subject:** RE: In re EPD Investment Co., LLC

John,

I received no response from you to my e-mail from Tuesday. If you do not make yourself available to meet and confer by the close of business tomorrow, the Trustee will proceed to file the motion for Rule 2004 examinations without your input as to the deposition dates and times.

*Corey Weber, Esq.*

**Ezra Brutzkus Gubner LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
cweber@ebg-law.com
www.ebg-law.com
818-827-9122 Direct
818-827-9000 Phone
818-827-9099 Fax

The preceeding E-mail message is subject to Ezra Brutzkus Gubner LLP's e-mail policies which can be found at http://mail.ebg-law.com/disclaimer.htm

**From:** Corey Weber
**Sent:** Tuesday, April 12, 2011 1:41 PM
**To:** 'jkirkland@luce.com'
**Cc:** 'Richard K. Diamond'; rhessling@dgdk.com; Steven T. Gubner; 'jmoe@luce.com'
**Subject:** In re EPD Investment Co., LLC

John,

Based on the Court's ruling today denying the Debtor's motion to convert, the depositions previously set in relation to that contested matter will go off calendar. However, the Trustee still requires the testimony of:

1. The Person(s) Most Qualified for the Debtor;
2. Jerrold Pressman;
3. Keith Pressman;
4. Ruben Moreno; and
5. John Kirkland.

The Trustee intends to proceed by Rule 2004 examinations as to the foregoing witnesses. This e-mail is sent pursuant to Local Bankruptcy Rule 2004-1(a) to meet and confer with you regarding the Rule 2004 examinations. Please let me know by no later than the close of business tomorrow as to when you are available to discuss by telephone: (1) the Rule 2004 examinations; (2) when you and the other witnesses are available for the examinations; and (3) the scope of the examinations.

**************

CONFIDENTIAL

Luce, Forward, Hamilton & Scripps LLP
This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient,

please delete the e-mail and any attachments without reading, printing, copying or forwarding it, and please notify us.

http://www.luce.com

Please consider the environment before printing this email.

Case 2:10-bk-62208-ER Doc 123-9 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 39 Page 1 of 33

EB+G

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Warner Center
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367

T 818.827.9000
F 818.827.9099
www.ebg-law.com

Corey R. Weber
T (818) 827-9122
F (818) 827-9099
cweber@ebg-law.com

April 15, 2011

**VIA OVERNIGHT DELIVERY**

Keith Pressman
[redacted]

**Re: In re EPD Investment Co., LLC (Case No. 2:10-bk-62208-ER)**
**Our File No. 3271.001**

Dear Mr. Pressman:

I am one of the attorneys representing Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "Debtor") (Case No. 2:10-bk-62208-ER), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, the Honorable Ernest M. Robles presiding.

The Trustee would like to schedule a date and time for your examination and production of documents and things related to the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Rule 2004 requires that we must first attempt to meet and confer, either in person or by phone, to obtain a mutually agreeable date, time and scope of the examination and production of documents.

Therefore, the Trustee requests that you contact me by telephone as soon as possible to discuss the foregoing. Unless we hear back from you by **12:00 p.m. on Wednesday April 20, 2011**, to meet and confer, the Trustee will proceed to file a motion for a court order directing you to appear for the examination and produce the requested documents.

Case 2:10-bk-62208-ER Doc 123-3 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 39 Page 2 of 33

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Keith Pressman
April 15, 2011
Page 2

Thank you for your anticipated courtesy and cooperation in this matter. My contact information is listed at the top of the first page of this letter.

Sincerely,

COREY R. WEBER

CRW:kb
cc: John Kirkland, Esq.
Jason Rund, Chapter 7 Trustee
Richard K. Diamond, Esq.
Robert A. Hessling, Esq.
Steven T. Gubner, Esq. (i.o.)

*393922*

[ Contact Us ]

Overnite Express | Attorney Services | On Demand Messenger | Routed Courier | Mail Process & Distribution

Drop Box Locator | Service Availability | Supplies | Customer Service | FAQ

## Login Portal

Log me into :
Legal Services

Go

New Customer? Start here.

Tracking Number:

Track

## Tracking

**Shipment Number:** 65016-300007-712
**Billed To Account Number:** 65016
**Shipper's Billing Reference:** 3271.001
**Shipper Name:** JESSICA ROEL
**Special Instructions:**

**Data Input Scan:** IRVINE 4/16/2011 3:10:34 AM

**Hub Scan:** SANTA MONICA 4/18/2011 7:21:00 AM
**Delivery Scan:** SANTA MONICA 4/18/2011 8:49:00 AM

Attention: KEITH PRESSMAN
Company / Residence: N/A
Destination Address: 409 SANTA MONICA BLVD. Ste/Flr: Suite
City: SANTA MONICA ZIP: 90401
**Delivery Service: Next Day Overnite**

Recipient Signature: **Desk (OK to leave)**
Delivery Time: 8:49:00 AM Date: 4/18/2



### New Customer Center

Open an Account
Norco Brochure
Norco Overnite Info Pack
Norco Legal Info Pack

### Announcements

Branding FAQ's
Holiday Schedule
Visual Proof of Delivery is the Hottest Craze

### Additional Links

Rate Calculator
Multi Shipment Tracking
Service Guide
Loyalty Rewards
Optical Network (OpticalShip)

© 2010 Norco all rights reserved. Terms & Conditions Careers Corporate History Contact Us

EB+G

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Warner Center
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367

T 818.827.9000
F 818.827.9099
www.ebg-law.com

Corey R. Weber
T (818) 827-9122
F (818) 827-9099
cweber@ebg-law.com

April 15, 2011

**VIA OVERNIGHT DELIVERY**

Ruben Moreno
[redacted]

**Re: In re EPD Investment Co., LLC (Case No. 2:10-bk-62208-ER)**
**Our File No. 3271.001**

Dear Mr. Moreno:

I am one of the attorneys representing Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "Debtor") (Case No. 2:10-bk-62208-ER), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, the Honorable Ernest M. Robles presiding.

The Trustee would like to schedule a date and time for your examination and production of documents and things related to the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Rule 2004 requires that we must first attempt to meet and confer, either in person or by phone, to obtain a mutually agreeable date, time and scope of the examination and production of documents.

Therefore, the Trustee requests that you contact me by telephone as soon as possible to discuss the foregoing. Unless we hear back from you by **12:00 p.m. on Wednesday April 20, 2011** to meet and confer, the Trustee will proceed to file a motion for a court order directing you to appear for the examination and produce the requested documents.

Thank you for your anticipated courtesy and cooperation in this matter. My contact information is listed at the top of the first page of this letter.

Sincerely,

COREY R. WEBER
Partner

CRW:jf
cc: John Kirkland, Esq.
Jason Rund, Ch. 7 Trustee
Richard K. Diamond, Esq.
Steven T. Gubner, Esq.
Robert A. Hessling, Esq.
*393984*

**From:** customercare@overniteexpress.com
**Sent:** Monday, April 18, 2011 9:23 AM
**To:** Jessica Roel
**Subject:** Overnite Express Delivery Confirmation

Overnite Express
A Division of NORCO

**Shipment Number:** 65016-300009-712
**Billed To Account Number:** 65016
**Shipper's Billing Reference:** 3271.001
**Shipper Name:** Jessica Roel

Attention: Ruben Moreno
Company / Residence: NA
Destination Address: 409 Santa Monica Boulevard Ste/Flr: Suite E
City: Santa Monica ZIP: 90401
**Delivery Service: P**

**Delivery Scan:** Santa Monica 8:49 AM 4/18/2011

Recipient Signature: **Desk (OK to leave)**
Delivery Time: 8:49 AM Date: 4/18/2011



If you are having trouble viewing this email please click here

**OVERNITE EXPRESS delivers to California, Arizona, Nevada and Mexico.**

EB+G

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Warner Center
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367

T 818.827.9000
F 818.827.9099
www.ebg-law.com

Corey R. Weber
T (818) 827-9122
F (818) 827-9099
cweber@ebg-law.com

**VIA OVERNIGHT DELIVERY**

Broadway Entertainment Marketing, Inc.
520 Broadway
Suite 660
Santa Monica, CA 90401

Keith Pressman
Agent for Service of Process for
Broadway Entertainment Marketing, Inc.
[redacted]

**Re: In re EPD Investment Co., LLC (Case No. 2:10-bk-62208-ER)**
**Our File No. 3271.001**

Dear Broadway Entertainment Marketing Inc:

I am one of the attorneys representing Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "Debtor") (Case No. 2:10-bk-62208-ER), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, the Honorable Ernest M. Robles presiding.

The Trustee would like to schedule a date and time for the examination of the person most knowledgeable at Broadway Entertainment Marketing, Inc. with respect to the Debtor, and production of documents and things related to the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Rule 2004 requires that we must first attempt to meet and confer, either in person or by phone, to obtain a mutually agreeable date, time and scope of the examination and production of documents.

Therefore, the Trustee requests that you contact me by telephone as soon as possible to discuss the foregoing. Unless we hear back from you by **12:00 p.m. on Wednesday, April 20, 2011** to meet and confer, the Trustee will proceed to file a motion for a court order directing Broadway Entertainment Marketing, Inc. to appear for the examination and produce the requested documents.

Case 2:10-bk-62208-ER Doc 123-3 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 39 Page 8 of 33

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Broadway Entertainment Marketing, Inc.
April 15, 2011
Page 2

Thank you for your anticipated courtesy and cooperation in this matter. My contact information is listed at the top of the first page of this letter.

Sincerely,

COREY R. WEBER

CRW:jf
cc: John Kirkland, Esq.
Jason Rund, Chapter 7 Trustee
Richard K. Diamond, Esq.
Robert A. Hessling, Esq.
Steven T. Gubner, Esq. (i.o.)

*394190*

**From:** customercare@overniteexpress.com
**Sent:** Monday, April 18, 2011 9:23 AM
**To:** Jessica Roel
**Subject:** Overnite Express Delivery Confirmation

Overnite Express
A Division of NORCO

**Shipment Number:** 65016-300015-712
**Billed To Account Number:** 65016
**Shipper's Billing Reference:** 3271.001
**Shipper Name:** Jessica Roel

Attention: Keithe Pressman
Company / Residence: Broadway Entertainment Marketing, Inc.
Destination Address: 409 Santa Monica Boulevard Ste/Flr: Suite E
City: Santa Monica ZIP: 90401
**Delivery Service: P**

**Delivery Scan:** Santa Monica 8:49 AM 4/18/2011

Recipient Signature: **Desk (OK to leave)**
Delivery Time: 8:49 AM Date: 4/18/2011



If you are having trouble viewing this email please click here

**OVERNITE EXPRESS delivers to California, Arizona, Nevada and Mexico.**

**From:** customercare@overniteexpress.com
**Sent:** Tuesday, April 19, 2011 3:02 AM
**To:** Jessica Roel
**Subject:** Overnite Express Assistance Request

Overnite Express requires your assistance to make a delivery. The shipment number is 65016-300014-712 and is addressed to N A at Broadway Entertainment Marketing, Inc..

The issue encountered is "Bad Address - Moved".

Please contact us at (800)683-7648 Option 4 so that we may resolve this issue.

For more information about this shipment, click here

PLEASE NOTE: Responses to this e-mail address are not monitored.

Overnite Express and ASAP Legal are now Norco Delivery Services. Read More›

Norco Overnite | Norco Legal | Norco Messenger | Norco Courier | Norco Mail

Drop Box Locator | Service Availability | Supplies | Rewards | Customer Service | FAQ

| | | | | | |
|---|---|---|---|---|---|
| Shipment Number: | 65016-300014-712 | Attention: | JESSICA ROEL | | |
| Billed To Account Number: | 65016 | Company / Residence: | EZRA BRUTZKUS GUBNER LLP | | |
| Shipper's Billing Reference: | 3271.001 | Destination Address: | 21650 OXNARD STREET | Ste/Flr: | |
| Shipper Name: | JESSICA ROEL | City: | WOODLAND HILLS | ZIP: | 91367 |
| Special Instructions: | | Delivery Service: | Return To Sender | | |
| Data Input Scan: | IRVINE 4/19/2011 7:35:37 AM | | | | |
| Hub Scan: | WOODLAND HILLS 4/17/2011 3:24:00 AM | Recipient Signature: | **mlton** | | |
| Delivery Scan: | WOODLAND HILLS4/20/2011 12:49:00 PM | Delivery Time: | 12:49:00 PM | Date: | 4/20/2011 |

Milton

Track Another Shipment GO

EB+G

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Warner Center
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367

T 818.827.9000
F 818.827.9099
www.ebg-law.com

Corey R. Weber
T (818) 827-9122
F (818) 827-9099
cweber@ebg-law.com

**VIA OVERNIGHT DELIVERY**

S.C. Club, L.P.
520 Broadway Blvd.
Suite 660
Santa Monica, CA 90401

Keith Pressman
Agent for Service of Process for
S.C. Club, L.P.
409 Santa Monica Boulevard, Suite E
Santa Monica, CA 90401

**Re: In re EPD Investment Co., LLC (Case No. 2:10-bk-62208-ER)**
**Our File No. 3271.001**

Dear S.C. Club, L.P.,

I am one of the attorneys representing Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "Debtor") (Case No. 2:10-bk-62208-ER), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, the Honorable Ernest M. Robles presiding.

The Trustee would like to schedule a date and time for the examination of the person most knowledgeable at S.C. Club, L.P. with respect to the Debtor, and production of documents and things related to the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Rule 2004 requires that we must first attempt to meet and confer, either in person or by phone, to obtain a mutually agreeable date, time and scope of the examination and production of documents.

Therefore, the Trustee requests that you contact me by telephone as soon as possible to discuss the foregoing. Unless we hear back from you by **12:00 p.m. on Wednesday, April 20, 2011** to meet and confer, the Trustee will proceed to file a motion for a court order directing S.C. Club, L.P. to appear for the examination and produce the requested documents.

Thank you for your anticipated courtesy and cooperation in this matter. My contact information is listed at the top of the first page of this letter.

Sincerely,

COREY R. WEBER

CRW:jf
cc: John Kirkland, Esq.
Jason Rund, Chapter 7 Trustee
Richard K. Diamond, Esq.
Robert A. Hessling, Esq.
Steven T. Gubner, Esq. (i.o.)

*394201*

**From:** customercare@overniteexpress.com
**Sent:** Monday, April 18, 2011 9:23 AM
**To:** Jessica Roel
**Subject:** Overnite Express Delivery Confirmation

Overnite Express
A Division of NORCO

**Shipment Number:** 65016-300011-712
**Billed To Account Number:** 65016
**Shipper's Billing Reference:** 3271.001
**Shipper Name:** Jessica Roel

Attention: Keith Pressman
Company / Residence: S.C. Club, L.P.
Destination Address: 409 Santa Monica Boulevard Ste/Flr: Suite E
City: Santa Monica ZIP: 90401
**Delivery Service: P**

**Delivery Scan:** Santa Monica 8:49 AM 4/18/2011

Recipient Signature: **Desk (OK to leave)**
Delivery Time: 8:49 AM Date: 4/18/2011



If you are having trouble viewing this email please click here

**OVERNITE EXPRESS delivers to California, Arizona, Nevada and Mexico.**

Case 2:10-bk-62208-ER Doc 123-3 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 3-3 Page 15 of 33


**From:** customercare@overniteexpress.com
**Sent:** Tuesday, April 19, 2011 3:05 AM
**To:** Jessica Roel
**Subject:** Overnite Express Assistance Request
Overnite Express requires your assistance to make a delivery. The shipment number is 65016-300010-712 and is addressed to N/A at S.C. Club, L.P..

The issue encountered is "Bad Address - Moved".

Please contact us at (800)683-7648 Option 4 so that we may resolve this issue.

For more information about this shipment, click here

PLEASE NOTE: Responses to this e-mail address are not monitored.

Case 2:10-bk-62263-ER Doc 263-9 Filed 09/05/17 Entered 09/05/17 18:59:26 Desc
Exhibit Part 3-9 Page 16 of 33

Overnite Express and ASAP Legal are now Norco Delivery Services. Read More ›

Norco Overnite | Norco Legal | Norco Messenger | Norco Courier | Norco Mail

Drop Box Locator | Service Availability | Supplies | Rewards | Customer Service

| | | | |
|---|---|---|---|
| Shipment Number: | 65016-300010-712 | Attention: | JESSICA ROEL |
| Billed To Account Number: | 65016 | Company / Residence: | EZRA BRUTZKUS GUBNER LLP |
| Shipper's Billing Reference: | 3271.001 | Destination Address: | 21650 OXNARD STREET Ste/Flr: |
| Shipper Name: | JESSICA ROEL | City: | WOODLAND HILLS ZIP: 91367 |
| Special Instructions: | | Delivery Service: | Return To Sender |
| Data Input Scan: | IRVINE 4/19/2011 7:40:14 AM | | |
| Hub Scan: | WOODLAND HILLS 4/17/2011 3:24:00 AM | Recipient Signature: | mlton |
| Delivery Scan: | WOODLAND HILLS4/20/2011 12:49:00 PM | Delivery Time: | 12:49:00 PM Date: 4/20/2011 |

Milton

Track Another Shipment GO

EB+G

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Warner Center
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367

T 818.827.9000
F 818.827.9099
www.ebg-law.com

Corey R. Weber
T (818) 827-9122
F (818) 827-9099
cweber@ebg-law.com

**VIA OVERNIGHT DELIVERY**

S.C. Club, Inc.
520 Broadway
Suite 660
Santa Monica, CA 90401

Keith Pressman
Agent for Service of Process for
S.C. Club, Inc.
409 Santa Monica Boulevard, Suite E
Santa Monica, CA 90401

Re: **In re EPD Investment Co., LLC (Case No. 2:10-bk-62208-ER)**
**Our File No. 3271.001**

Dear S.C. Club, Inc.,

I am one of the attorneys representing Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "Debtor") (Case No. 2:10-bk-62208-ER), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, the Honorable Ernest M. Robles presiding.

The Trustee would like to schedule a date and time for the examination of the person most knowledgeable at S.C. Club, Inc. with respect to the Debtor, and production of documents and things related to the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Rule 2004 requires that we must first attempt to meet and confer, either in person or by phone, to obtain a mutually agreeable date, time and scope of the examination and production of documents.

Therefore, the Trustee requests that you contact me by telephone as soon as possible to discuss the foregoing. Unless we hear back from you by **12:00 p.m. on Wednesday, April 20, 2011** to meet and confer, the Trustee will proceed to file a motion for a court order directing S.C. Club, Inc. to appear for the examination and produce the requested documents.

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

S.C. Club, Inc.
April 15, 2011
Page 2

Thank you for your anticipated courtesy and cooperation in this matter. My contact information is listed at the top of the first page of this letter.

Sincerely,

COREY R. WEBER

CRW:jf
cc: John Kirkland, Esq.
Jason Rund, Chapter 7 Trustee
Richard K. Diamond, Esq.
Robert A. Hessling, Esq.
Steven T. Gubner, Esq. (i.o.)

*394134*

**From:** customercare@overniteexpress.com
**Sent:** Monday, April 18, 2011 1:07 PM
**To:** Jessica Roel
**Subject:** Overnite Express Delivery Confirmation

**OverniteExpress™**
A Division of NORCO

**Shipment Number:** 65016-300013-712
**Billed To Account Number:** 65016
**Shipper's Billing Reference:** 3271.001
**Shipper Name:** Jessica Roel

Attention: Keith Pressman
Company / Residence: S.C. Club, Inc.
Destination Address: 409 Santa Monica Boulevard Ste/Flr: Suite E
City: Santa Monica ZIP: 90401
**Delivery Service: P**

**Delivery Scan:** Santa Monica 12:52 PM 4/18/2011

Recipient Signature: **michelle**
Delivery Time: 12:52 PM Date: 4/18/2011



If you are having trouble viewing this email please click here

**OVERNITE EXPRESS delivers to California, Arizona, Nevada and Mexico.**

Case 2:12-ap-02424-VZ Doc 263-8 Filed 09/05/17 Entered 09/05/17 18:59:26 Page 1 of 1 Exhibit Page 160 of 267

**From:** customercare@overniteexpress.com
**Sent:** Tuesday, April 19, 2011 3:03 AM
**To:** Jessica Roel
**Subject:** Overnite Express Assistance Request
Overnite Express requires your assistance to make a delivery. The shipment number is 65016-300012-712 and is addressed to N/A at S.C. Club, Inc..

The issue encountered is "Bad Address - Moved".

Please contact us at (800)683-7648 Option 4 so that we may resolve this issue.

For more information about this shipment, click here

PLEASE NOTE: Responses to this e-mail address are not monitored.

Overnite Express and ASAP Legal are now Norco Delivery Services. Read More ›

Norco Overnite | Norco Legal | Norco Messenger | Norco Courier | Norco Mail

Drop Box Locator | Service Availability | Supplies | Rewards

| | | | | | |
|---|---|---|---|---|---|
| Shipment Number: | 65016-300012-712 | Attention: | JESSICA ROEL | | |
| Billed To Account Number: | 65016 | Company / Residence: | EZRA BRUTZKUS GUBNER LLP | | |
| Shipper's Billing Reference: | 3271.001 | Destination Address: | 21650 OXNARD STREET | Ste/Flr: | |
| Shipper Name: | JESSICA ROEL | City: | WOODLAND HILLS | ZIP: | 91367 |
| Special Instructions: | | Delivery Service: | Return To Sender | | |
| Data Input Scan: | IRVINE 4/19/2011 7:38:10 AM | | | | |
| Hub Scan: | WOODLAND HILLS 4/17/2011 3:24:00 AM | Recipient Signature: | **mlton** | | |
| Delivery Scan: | WOODLAND HILLS4/20/2011 12:49:00 PM | Delivery Time: | 12:49:00 PM | Date: | 4/20/2011 |

Milton

Track Another Shipment GO

EB+G

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Warner Center
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367

T 818.827.9000
F 818.827.9099
www.ebg-law.com

Corey R. Weber
T (818) 827-9122
F (818) 827-9099
cweber@ebg-law.com

April 15, 2011

**VIA OVERNIGHT DELIVERY**

Trustee of Bright Conscience Trust
Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades, CA 90272

**Re: In re EPD Investment Co., LLC (Case No. 2:10-bk-62208-ER)**
**Our File No. 3271.001**

Dear Trustee of Bright Conscience Trust:

I am one of the attorneys representing Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "Debtor") (Case No. 2:10-bk-62208-ER), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, the Honorable Ernest M. Robles presiding.

The Trustee would like to schedule a date and time for the examination of the person most knowledgeable at Bright Conscience Trust with respect to the Debtor, and production of documents and things related to the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Rule 2004 requires that we must first attempt to meet and confer, either in person or by phone, to obtain a mutually agreeable date, time and scope of the examination and production of documents.

Therefore, the Trustee requests that you contact me by telephone as soon as possible to discuss the foregoing. Unless we hear back from you by **12:00 p.m. on Wednesday, April 20, 2011** to meet and confer, the Trustee will proceed to file a motion for a court order directing Bright Conscience Trust to appear for the examination and produce the requested documents.

Case 2:10-bk-62208-ER Doc 123-3 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 3-3 Page 23 of 33



Thank you for your anticipated courtesy and cooperation in this matter. My contact information is listed at the top of the first page of this letter.

Sincerely,

COREY R. WEBER

CRW:jf
cc: John Kirkland, Esq.
Jason Rund, Chapter 7 Trustee
Richard K. Diamond, Esq.
Robert A. Hessling, Esq.
Steven T. Gubner, Esq. (i.o.)

*394015*

**From:** customercare@overniteexpress.com
**Sent:** Monday, April 18, 2011 9:52 AM
**To:** Jessica Roel
**Subject:** Overnite Express Delivery Confirmation

**Overnite**Express™
A Division of NORCO

**Shipment Number:** 65016-300005-712
**Billed To Account Number:** 65016
**Shipper's Billing Reference:** 3271.001
**Shipper Name:** Jessica Roel

Attention: Trustee of Bright Conscience T
Company / Residence: Bright Conscience Trust
Destination Address: 754 Swarthmore Avenue Ste/Flr:
City: Pacific Palisades ZIP: 90272
**Delivery Service:** P

Recipient Signature: **LAD @ Residence**
**Delivery Scan:** Pacific Palisades 9:48 AM 4/18/2011
Delivery Time: 9:48 AM Date: 4/18/2011



If you are having trouble viewing this email please click here

**OVERNITE EXPRESS delivers to California, Arizona, Nevada and Mexico.**

Case 2:10-bk-62208-ER Doc 123-3 Filed 04/27/11 Entered 04/27/11 17:28:36 Desc
Exhibit Part 3-9 Page 25 of 33

EB+G

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Warner Center
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367

T 818.827.9000
F 818.827.9099
www.ebg-law.com

Corey R. Weber
T (818) 827-9122
F (818) 827-9099
cweber@ebg-law.com

April 15, 2011

**VIA OVERNIGHT DELIVERY**

HMB Holdings, LLC
23448 Moon Shadows Dr.
Malibu, CA 90265

**Re: In re EPD Investment Co., LLC (Case No. 2:10-bk-62208-ER)**
**Our File No. 3271.001**

Dear HMB Holdings, LLC:

I am one of the attorneys representing Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "Debtor") (Case No. 2:10-bk-62208-ER), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, the Honorable Ernest M. Robles presiding.

The Trustee would like to schedule a date and time for the examination of the person most knowledgeable at HMB Holdings, LLC with respect to the Debtor, and production of documents and things related to the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Rule 2004 requires that we must first attempt to meet and confer, either in person or by phone, to obtain a mutually agreeable date, time and scope of the examination and production of documents.

Therefore, the Trustee requests that you contact me by telephone as soon as possible to discuss the foregoing. Unless we hear back from you by **12:00 p.m. on Wednesday April 20, 2011** to meet and confer, the Trustee will proceed to file a motion for a court order directing HMB Holdings, LLC to appear for the examination and produce the requested documents.

Thank you for your anticipated courtesy and cooperation in this matter. My contact information is listed at the top of the first page of this letter.

Sincerely,

COREY R. WEBER
Partner

CRW:jf
cc: John Kirkland, Esq.
Jason Rund, Ch. 7 Trustee
Richard K. Diamond, Esq.
Steven T. Gubner, Esq.
Robert A. Hessling, Esq.
*394022*

**From:** customercare@overniteexpress.com
**Sent:** Monday, April 18, 2011 3:07 PM
**To:** Jessica Roel
**Subject:** Overnite Express Delivery Confirmation

OverniteExpress™
A Division of NORCO

| | | | |
|---|---|---|---|
| **Shipment Number:** 65016-300006-712 | Attention: N/A | | |
| **Billed To Account Number:** 65016 | Company / Residence: HMB Holdings, LLC | | |
| **Shipper's Billing Reference:** 3271.001 | Destination Address: 23448 Moon Shadows Dr. | Ste/Flr: | |
| **Shipper Name:** Jessica Roel | City: Malibu | ZIP: 90265 | |
| | **Delivery Service:** P | | |
| | Recipient Signature: **stefany** | | |
| **Delivery Scan:** Malibu 2:47 PM 4/18/2011 | Delivery Time: 2:47 PM | Date: 4/18/2011 | |

If you are having trouble viewing this email please click here

**OVERNITE EXPRESS delivers to California, Arizona, Nevada and Mexico.**

EB+G

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Warner Center
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367

T 818.827.9000
F 818.827.9099
www.ebg-law.com

Corey R. Weber
T (818) 827-9122
F (818) 827-9099
cweber@ebg-law.com

April 15, 2011

**VIA OVERNIGHT DELIVERY**

Ted Jonavic
5724 Shire Court
Rancho Cucamonga, CA 91701-1935

**Re: In re EPD Investment Co., LLC (Case No. 2:10-bk-62208-ER)**
**Our File No. 3271.001**

Dear Mr. Jonavic:

I am one of the attorneys representing Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC (the "Debtor") (Case No. 2:10-bk-62208-ER), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, the Honorable Ernest M. Robles presiding.

The Trustee would like to schedule a date and time for your examination and production of documents and things related to the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Rule 2004 requires that we must first attempt to meet and confer, either in person or by phone, to obtain a mutually agreeable date, time and scope of the examination and production of documents.

Therefore, the Trustee requests that you contact me by telephone as soon as possible to discuss the foregoing. Unless we hear back from you by **12:00 p.m. Wednesday, April 20, 2011** to meet and confer, the Trustee will proceed to file a motion for a court order directing you to appear for the examination and produce the requested documents.

Thank you for your anticipated courtesy and cooperation in this matter. My contact information is listed at the top of the first page of this letter.

Sincerely,

COREY R. WEBER

CRW:jf
cc: John Kirkland, Esq.
Jason Rund, Chapter 7 Trustee
Richard K. Diamond, Esq.
Robert A. Hessling, Esq.
Steven T. Gubner, Esq. (i.o.)

*393991*

[ Contact Us ]

Overnite Express | Attorney Services | On Demand Messenger | Routed Courier | Mail Process & Distribution

Drop Box Locator | Service Availability | Supplies | Customer Service | FAQ

Login Portal

Log me into :
Legal Services

Go

New Customer? Start here.

Tracking Number:

Track

## Tracking

**Shipment Number:** 65016-300008-712
**Billed To Account Number:** 65016
**Shipper's Billing Reference:** 3271.001
**Shipper Name:** JESSICA ROEL
**Special Instructions:**

Attention: TED JONAVIC
Company / Residence: N/A
Destination Address: 5724 SHIRE COURT Ste/Flr:
City: ALTA LOMA/RCH CUC ZIP: 91701
**Delivery Service: Next Day Overnite**

**Data Input Scan:** IRVINE 4/16/2011 3:10:34 AM

**Hub Scan:** ALTA LOMA/RCH CUC 4/18/2011 7:04:00 AM
**Delivery Scan:** ALTA LOMA/RCH CUC 4/18/2011 10:27:00 AM

Recipient Signature: **LAD @ Residence**
Delivery Time: 10:27:00 AM Date: 4/18/2



## New Customer Center

Open an Account
Norco Brochure
Norco Overnite Info Pack
Norco Legal Info Pack

## Announcements

Branding FAQ's
Holiday Schedule
Visual Proof of Delivery is the Hottest Craze

## Additional Links

Rate Calculator
Multi Shipment Tracking
Service Guide
Loyalty Rewards
Optical Network (OpticalShip)

© 2010 Norco all rights reserved. Terms & Conditions | Careers | Corporate History | Contact Us

| In re: EPD INVESTMENT COMPANY, LLC, Debtor(s). | CHAPTER 7<br>CASE NUMBER 2:10-bk-62208-ER |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing document described **NOTICE OF MOTION AND MOTION BY CHAPTER 7 TRUSTEE FOR EXAMINATION OF, AND PRODUCTION OF DOCUMENTS AND THINGS BY: (1) THE PERSON(S) MOST QUALIFIED FOR DEBTOR EPD INVESTMENT CO., LLC; (2) JERROLD PRESSMAN; (3) KEITH PRESSMAN; (4) RUBEN MORENO; (5) JOHN C. KIRKLAND, ESQ.; (6) THE PERSON(S) MOST QUALIFIED FOR BROADWAY ENTERTAINMENT MARKETING, INC.; (7) THE PERSON(S) MOST QUALIFIED FOR S.C. CLUB, L.P.; (8) THE PERSON(S) MOST QUALIFIED FOR S.C. CLUB, INC.; (9) THE PERSON(S) MOST QUALIFIED FOR THE BRIGHT CONSCIENCE TRUST; (10) THE PERSON MOST QUALIFIED FOR HMB HOLDINGS, LLC; AND (11) TED JONAVIC PURSUANT TO FED. R. BANKR. P. 2004** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 27, 2011,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**Sara E Cook** – lpalma@mckenna-law.com, scook@mckenna-law.com, bankruptcy@mckenna-law.com
**Richard K Diamond** – rdiamond@dgdk.com
**Alan S Gutman** – alangutman@gutmanlaw.com
**Robert A Hessling** – rhessling@dgdk.com
**Lewis R Landau** - lew@landaunet.com
**Howard N Madris** – hmadris@madrislaw.com
**John A Moe** – jmoe@luce.com
**Jason M Rund (TR)** – trustee@srlawyers.com, jrund@ecf.epiqsystems.com
**United States Trustee (LA)** – ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **April 27, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**BY OVERNIGHT MAIL**

Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg.
255 East Temple Street, Suite 1560
Los Angeles, CA 90012-3332

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 27, 2011,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 27, 2011 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| In re: EPD INVESTMENT COMPANY, LLC, Debtor(s). | CHAPTER 7<br>CASE NUMBER 2:10-bk-62208-ER |
|---|---|

## BY OVERNIGHT MAIL

Debtor
EPD Investment Co., LLC
601 South Figueroa St., Suite 3900
Los Angeles, CA 90017
**(Per USBC Docket Report)**

Debtor
EPD Investment Co., LLC
520 Broadway Blvd., Suite 660
Santa Monica, CA 90401
**(Previous mailings to this address have been returned undeliverable.)**

Attorneys for Debtor
Matthew B. Gruenberg, Esq.
Law Offices of Matthew B. Gruenberg
942A Lincoln Blvd.
Santa Monica, CA 90403

Joe A. Moe, Esq.
John C. Kirkland, Esq.
Luce Forward
601 South Figueroa Street, Suite 3900
Los Angeles, CA 90017

Kathy A. Jorrie, Esq.
Partner-in-Charge – Los Angeles Office
Luce Forward
601 South Figueroa Street, Suite 3900
Los Angeles, CA 90017

Attorneys for Ted Jonavic
Stephen J. Tully, Esq.
Garrett & Tully
4165 E Thousand Oaks Blvd #201
Westlake Village, CA 91362-3839

Jerrold Pressman
c/o Matthew B. Gruenberg, Esq.
Law Offices of Matthew B. Gruenberg
942A Lincoln Blvd.
Santa Monica, CA 90403

Keith Pressman
409 Santa Monica Blvd., Suite E
Santa Monica, CA 90401

Broadway Entertainment Marketing, Inc.
520 Broadway Blvd., Suite 660
Santa Monica, CA 90401
**(The meet and confer letter previously sent to this address was returned undeliverable.)**

Broadway Entertainment Marketing, Inc.
Keith Pressman, Agent for Service of Process
409 Santa Monica Blvd., Suite E
Santa Monica, CA 90401

S.C. Club, Inc.
520 Broadway Blvd., Suite 660
Santa Monica, CA 90401
**(The meet and confer letter previously sent to this address was returned undeliverable.)**

S.C. Club, Inc.
Keith Pressman, Agent for Service of Process
409 Santa Monica Blvd., Suite E
Santa Monica, CA 90401

S.C. Club, L.P.
520 Broadway Blvd., Suite 660
Santa Monica, CA 90401
**(The meet and confer letter previously sent to this address was returned undeliverable.)**

S.C. Club, L.P.
Keith Pressman, Agent for Service of Process
409 Santa Monica Blvd., Suite E
Santa Monica, CA 90401

HMB Holdings, LLC
23448 Moon Shadows Dr.
Malibu, CA 90265

Trustee of Bright Conscience Trust
Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades, CA 90272

Ted Jonavic
5724 Shire Court
Rancho Cucamonga, CA 91701-1935

Ruben Moreno
409 Santa Monica Boulevard, Suite E
Santa Monica, CA 90401

| In re: EPD INVESTMENT COMPANY, LLC, Debtor(s). | CHAPTER 7<br>CASE NUMBER 2:10-bk-62208-ER |
|---|---|

**BY U.S. MAIL**

Attorneys for Petitioning Creditors
Sara E. Cook, Esq.
McKenna Storer
666 Russel Court, Suite 303
Woodstock, IL 60098

Attorneys for Petitioning Creditors
Anthony C. Duffy, Esq.
Law Offices of Anthony C. Duffy
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660

State Court Litigation Counsel for Alan C. Harvey
Jeffrey W. Cowan, Esq.
Tammy Nguyen
The Cowan Law Firm
1541 Ocean Avenue, Suite 200
Santa Monica, CA 90401-2104

**BY EMAIL**

Joe A. Moe, Esq.
John C. Kirkland, Esq.
Luce Forward
jmoe@luce.com
jkirkland@luce.com

Kathy A. Jorrie, Esq.
Partner-in-Charge-Los Angeles Office
Luce Forward
kjorrie@luce.com

Sara E. Cook, Esq.
McKenna Storer
scook@mckenna-law.com

Anthony C. Duffy, Esq.
Law Offices of Anthony C. Duffy
aduffy@aduffylaw.com

Richard K. Diamond, Esq.
Danning, Gill, Diamond & Kollitz LLP
rdiamond@dgdk.com

Jason M. Rund, Esq.
Danning, Gill, Diamond & Kollitz, LLP
jrund@srlawyers.com

Robert A. Hessling, Esq.
Danning, Gill, Diamond & Kollitz, LLP
rhessling@dgdk.com

Alan S. Gutman, Esq.
Law Offices of Alan S. Gutman
alangutman@gutmanlaw.com

Howard N. Madris, Esq.
Law Office of Howard N. Madris, APC
hmadris@madrislaw.com

Jeffrey W. Cowan, Esq.
cowanlaw@verizon.net
assistant_cowanlaw@yahoo.com

Matthew B. Gruenberg, Esq.
Law Offices of Matthew B. Gruenberg
mattgruenberg@gmail.com

Stephen J. Tully, Esq.
Garrett & Tully
stully@garrett-tully.com

# EXHIBIT RR

John C. Kirkland, State Bar No. 149453
John A. Moe, II, State Bar No. 66893
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Alleged Debtor
EPD INVESTMENT CO., LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>EPD INVESTMENT CO., LLC,<br><br>Alleged Debtor.<br><br>EIN No. xxx-0994 | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br>*Assigned to the Hon. Ernest M. Robles*<br><br>**DECLARATION OF JOHN C. KIRKLAND IN SUPPORT OF ALLEGED DEBTOR'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF COURT'S ORDER FOR RELIEF IN AN INVOLUNTARY CASE**<br><br>**[Application For Order Setting Hearing On Shortened Notice Filed Concurrently Herewith]**<br><br>Hearing:<br><br>Date: TO BE SET<br>Time: TO BE SET<br>Crtrm.: 1568<br>255 East Temple Street<br>Los Angeles, CA 90012 |

Case 2:10-bk-62208-ER Doc 33 Filed 02/09/11 Entered 02/09/11 22:15:46 Desc Main Document Page 2 of 2

**DECLARATION OF JOHN C. KIRKLAND**

I, John C. Kirkland, declare as follows:

1. I am an attorney at law, duly licensed to practice before the courts in the State of California, and counsel of record for alleged debtor EPD Investment Co., LLC ("EPD"). I have personal knowledge of the facts set forth herein and, if called to testify as a witness, could and would testify truthfully and competently thereto.

2. This Declaration is submitted in support of EPD's motion for reconsideration of the Court's Order for Relief that was entered today. The Motion is filed today, the same day the order was received, and is thus filed as soon as possible after the order was received.

3. The motion should be granted ex parte or set for hearing on shortened notice, because if not immediately set aside the entry of an Order for Relief would have devastating consequences on an Alleged Debtor. Because it would effectively cause an Alleged Debtor to cease its ability to operate as a going concern, the damage caused by such an order could not be undone, and would effectively result in the destruction of the company's business, or diminution in value of the estate, to the detriment of all creditors. Accordingly, immediate relief is necessary.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed in Los Angeles, California, on February 9, 2011.

/s/ John C. Kirkland
John C. Kirkland

# EXHIBIT SS

John C. Kirkland, State Bar No. 149453
John A. Moe II, State Bar No. 066893
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017
Telephone: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Debtor
EPD INVESTMENT CO., LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:10-bk-62208-ER |
| EPD INVESTMENT CO., LLC | Chapter 7 |
| Debtor. | *Assigned to Hon. Ernest M. Robles* |
| | **SUBSTITUTION OF ATTORNEY** |

Debtor EPD Investment CO., LLC hereby makes the following substitution of attorney:

Former legal representative:

John C. Kirkland, Esq. (SBN 149453)
Luce, Forward, Hamilton & Scripps, LLP
601 South Figueroa Street, Suite 3900
Los Angeles, CA 90017
Tel: 213.892.4907
Fax: 213.452.8035
Email: jkirkland@luce.com

New legal representative:

Matthew B. Gruenberg (SBN 264210)
Law Offices of Matthew B. Gruenberg
942A Lincoln Boulevard
Santa Monica, CA 90403
Tel: 310.740.5105
Email: mattgruenberg@gmail.com

DATED: April 25, 2011 LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: /s/ John C. Kirkland
John C. Kirkland

DATED: April 25, 2011 LAW OFFICES OF MATTHEW B. GRUENBERG

By: /s/ Matthew B. Gruenberg
Matthew B. Gruenberg

DATED: April 25, 2011 EPD Investment Co., LLC

By: /s/ Jerrold S. Pressman
Jerrold S. Pressman

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document described as **Substitution of Attorney** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 25, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
Cory Weber – cweber@ebg-law.com
Sara E. Cook – lpalma@mckenna-law.com; scook@mckenna-law.com, bankruptcy@mckenna-law.com
Richard K. Diamond – rdiamond@dgdk.com
Alan S. Gutman – alangutman@gutmanlaw.com
Robert A. Hessling – rhessling@dgdk.com
Howard N. Madris – hmadris@madrislaw.com
Jason M. Rund (TR) – trustee@srlawyers.com, jrund@ecf.epiqsystems.com
United States Trustee (LA) – ustpregion16.la.ecf@usdoj.gov
Steven T. Gubner – sgubner@ebg-law.com ☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***April 25, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**Served by U.S. Mail**
**VIA U.S. MAIL**
Jeffrey W. Cowan
The Cowan Law Firm
1541 Ocean Avenue, Suite 200
Santa Monica, CA 90401
☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***April 25, 2011,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
PERSONAL SERVICE
Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg
255 East Temple Street, Room 1568
Los Angeles, CA 90012-3332
☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 25, 2011 | Lisa Underkoffler | /s/Lisa M. Underkoffler |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

# EXHIBIT TT

John C. Kirkland, State Bar No. 149453
John A. Moe II, State Bar No. 066893
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017
Telephone: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorneys for Debtor
EPD INVESTMENT CO., LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>EPD INVESTMENT CO., LLC<br><br>Debtor. | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br><br>*Assigned to Hon. Ernest M. Robles*<br><br>**SUBSTITUTION OF ATTORNEY** |

Debtor EPD Investment CO., LLC hereby makes the following substitution of attorney:

Former legal representative:

John C. Kirkland, Esq. (SBN 149453)
John A. Moe, Esq. (SBN 66893)
Luce, Forward, Hamilton & Scripps, LLP
601 South Figueroa Street, Suite 3900
Los Angeles, CA 90017
Tel: 213.892.4907
Fax: 213.452.8035
Email: jkirkland@luce.com

New legal representative:

Matthew B. Gruenberg (SBN 264210)
Law Offices of Matthew B. Gruenberg
942A Lincoln Boulevard
Santa Monica, CA 90403
Tel: 310.740.5105
Email: mattgruenberg@gmail.com

DATED: April 26, 2011 LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: /s/ John C. Kirkland
John C. Kirkland

DATED: April 26, 2011 LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: /s/ John A. Moe
John A. Moe

DATED: April 26, 2011 LAW OFFICES OF MATTHEW B. GRUENBERG

By: /s/ Matthew B. Gruenberg
Matthew B. Gruenberg

DATED: April 26, 2011 EPD Investment Co., LLC

By: /s/ Jerrold S. Pressman
Jerrold S. Pressman

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document described as **Substitution of Attorney** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 26, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
Cory Weber – cweber@ebg-law.com
Sara E. Cook – lpalma@mckenna-law.com; scook@mckenna-law.com, bankruptcy@mckenna-law.com
Richard K. Diamond – rdiamond@dgdk.com
Alan S. Gutman – alangutman@gutmanlaw.com
Robert A. Hessling – rhessling@dgdk.com
Howard N. Madris – hmadris@madrislaw.com
Jason M. Rund (TR) – trustee@srlawyers.com, jrund@ecf.epiqsystems.com
United States Trustee (LA) – ustpregion16.la.ecf@usdoj.gov
Steven T. Gubner – sgubner@ebg-law.com ☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***April 26, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**Served by U.S. Mail**
**VIA U.S. MAIL**
Jeffrey W. Cowan
The Cowan Law Firm
1541 Ocean Avenue, Suite 200
Santa Monica, CA 90401
☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***April 26, 2011,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
PERSONAL SERVICE
Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg
255 East Temple Street, Room 1568
Los Angeles, CA 90012-3332
☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| April 26, 2011 | Lisa Underkoffler | /s/Lisa M. Underkoffler |
| *Date* | *Type Name* | *Signature* |

# EXHIBIT UU

LARRY W. GABRIEL – Bar No. 68329
STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@ebg-law.com
sgubner@ebg-law.com
cweber@ebg-law.com

Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,

Consolidated Debtors.

EIN No. xxx-0994

---

JASON M. RUND, CHAPTER 7 TRUSTEE, Estate of EPD INVESTMENT COMPANY, LLC,

Plaintiff,

v.

JOHN C. KIRKLAND, individually, and as TRUSTEE of the BRIGHT CONSCIENCE TRUST, and POSHOW ANN KIRKLAND, as TRUSTEE of the BRIGHT CONSCIENCE TRUST,

Defendants.

Case No. 2:10-bk-62208-ER

Chapter 7

Adv. No.

**COMPLAINT AGAINST JOHN C. KIRKLAND, INDIVIDUALLY AND AGAINST JOHN C. KIRKLAND AND POSHOW ANN KIRKLAND AS TRUSTEES OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 FOR:**

1. **Aiding and Abetting Breach of Fiduciary Duty**
2. **Post-Petition and Post-Order for Relief Fraudulent Concealment**
3. **Post-Petition and Post-Order for Relief Breach of Fiduciary Duty**
4. **Post-Petition and Post-Order for Relief Fraud Upon the Court**
5. **Disallowance of Proofs of Claim**
6. **Avoidance of Fraudulent Transfers (Actual Intent)**
7. **Avoidance of Fraudulent Transfers (Actual Intent)**
8. **Avoidance of Fraudulent Transfers (Constructive Fraud)**
9. **Avoidance of Fraudulent Transfers (Constructive Fraud)**
10. **Recovery of Avoided Transfers**

**Status Conference:**
**Date:** To Be Set
**Time:** To Be Set
**Place:** Courtroom 1568
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

**JURY DEMAND**

Plaintiff, JASON M. RUND, the duly appointed and acting Chapter 7 Trustee of the consolidated bankruptcy estate of debtors EPD INVESTMENT CO., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (EPD and Pressman are collectively referred to herein as the "Debtors"), for claims of relief against defendants JOHN KIRKLAND, individually, and as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 (the "BC TRUST"), and against POSHOW ANN KIRKLAND, as TRUSTEE of the BC TRUST, alleges as follows:

**I.**

**THE PARTIES**

1. Plaintiff, JASON M. RUND, is the duly appointed and acting Chapter 7 Trustee (the "Trustee") of the Debtors. The Trustee was appointed after the Order for Relief was entered and each of the allegations herein are based on the Trustee's information and belief.

2. Defendant JOHN C. KIRKLAND ("KIRKLAND") is a resident of California, and is an attorney admitted to practice law in the State of California. KIRKLAND is also the Trustee or Co-Trustee of the BC TRUST, and is sued herein, individually and as the Trustee of the BC TRUST.

3. Defendant POSHOW ANN KIRKLAND ("POSHOW KIRKLAND") is a resident of California, and is the wife of defendant KIRKLAND. POSHOW KIRKLAND is Trustee or Co-Trustee of THE BC TRUST and is sued herein in such capacity.

**II.**

**REQUIRED PLEADING DISCLOSURE**

4. In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Trustee hereby alleges that at least some of the claims for relief asserted in this Complaint constitute core proceedings under 28 U.S.C. § 157(b). The other claims for relief asserted herein are related to this

Case 2:12-ap-02424-ER Doc 1 Filed 10/31/12 Entered 10/31/12 16:28:07 Desc Main Document Page 3 of 28

bankruptcy case as the outcome on those claims could have an effect on the Estate. Regardless, consent is hereby given to the entry of final orders and judgment by the Bankruptcy Court, except to the extent inconsistent with the Trustee's demand for a jury trial on all issues properly triable by a jury under applicable law.

## III.

## JURISDICTION AND VENUE

5. This action is a civil proceeding related to a case under Title 11 of the United States Code. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, as well as the Local Bankruptcy Rules of the United States Bankruptcy Court and the United States District Court for the Central District of California.

6. Venue is proper in this Court, including venue pursuant to 28 U.S.C. §§1408 and 1409, because, among other things, this is the district in which the bankruptcy action is pending. Pursuant to 28 U.S.C. § 1391, venue is also appropriate as Defendants are authorized to and regularly carry out substantial business in this district and the acts and conduct complained of herein took place within this district. Accordingly, this Court also has personal jurisdiction over the Defendants.

7. Jurisdiction and venue is also conferred upon this Court pursuant to 28 U.S.C. § 959 (a) in that the claims presented are based upon the acts and conduct of JOHN KIRKLAND during the time JOHN KIRKLAND was representing EPD, including but not limited to his acts and conduct post-petition and post-Order for Relief, which acts and conduct, among other things, constitute violations of JOHN KIRKLAND's fiduciary duty to EPD.

## IV.

## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

### A. EPD'S Background, Formation and Overview of the Relationship Between the Debtors and Kirkland.

8. Between the 1970's and June 27, 2003, "EPD Investment Co." was an unincorporated sole proprietorship run by Pressman. EPD Investment Co. was used by Pressman to funnel funds from investors/lenders to various other entities partially owned and/or controlled by Pressman,

Case 2:12-ap-02424-ER Doc 1 Filed 10/31/12 Entered 10/31/12 16:28:07 Desc Main Document Page 4 of 28

including but not limited to entities which eventually became known as Broadway Entertainment Marketing, Inc. ("Broadway Entertainment"), Plush Lounge Las Vegas, LLC ("Plush Lounge"), S.C. Club, Inc. and S.C. Club, L.P. Pressman's son, Keith Pressman, (collectively with Jerrold Pressman, the "Pressmans") is a licensed attorney, was also involved in Pressman's business enterprises.

9. KIRKLAND went to UCLA School of Law with Keith Pressman and was his roommate, graduating in 1990. Thereafter, KIRKLAND became outside counsel for the Pressmans, and their various business entities, which relationships continued (a) while KIRKLAND was at a number of law firms, and (b) through the filing of the involuntary bankruptcy against EPD in December 2010, at which time KIRKLAND was a partner at the then law firm of Luce Forward Hamilton & Scripps LLP ("Luce Forward"). During this period of time, KIRKLAND, individually and through his various law firms, represented the Pressmans, EPD, Broadway Entertainment, Plush Lounge S.C. Club, Inc. and S.C. Club, L.P., among other Pressman related business entities and operations.

10. In addition to serving as outside counsel for EPD and for the Pressmans, KIRKLAND invested and/or lent an amount in excess of $150,000 of his personal funds to EPD (Kirkland's "EPD Interests"). KIRKLAND later transferred his EPD Interests to the BC TRUST.

B. **Jerrold Pressman's Notes, Security Agreements and UCC-1 Financing Statements in Favor of EPD**

11. In order to fund his business operations, Pressman, through EPD, generally obtained funds from the various individual investors/lenders/creditors ("Creditors), and generally in exchange for promissory notes or demand notes that were due on demand or within 30 days after demand and bore mostly double-digit interest rates annually. EPD would, in turn, loan or invest the funds to other companies in which Pressman held ownership interests. Although EPD would loan money to companies in which Pressman held ownership interests, EPD's books often reflected that the amounts were owed by Pressman to EPD, rather than directly from the companies to EPD, because Pressman was borrowing the money and directing it as a loan to the companies in which he held ownership interests.

Case 2:12-ap-02424-ER Doc 1 Filed 10/31/12 Entered 10/31/12 16:28:07 Desc Main Document Page 5 of 28

12. On or about June 27, 2003, KIRKLAND, on behalf of the Pressmans, formed EPD Investment Co., LLC, at which time, the assets and liabilities of the EPD Investment Co. sole proprietorship were transferred to EPD Investment Co., LLC.

13. On or about July 3, 2003, Pressman executed a $25 million revolving promissory note in favor of EPD (the "2003 Note"). At the same time, Pressman entered into a security agreement with EPD, encumbering all of his assets in favor of EPD. The security agreement was perfected by the filing of a UCC-1 recorded on or about July 3, 2003 (the "2003 UCC-1").

14. On or about July 31, 2009, Pressman executed a second $25 million "revolving" promissory note (the "2009 Note") (the 2003 Note and the 2009 Note are collectively referred to as the "Notes") and a security agreement with EPD (the "2009 Security Agreement") again granting EPD a security interest in all of Pressman's assets including but not limited to his accounts receivable, shares of stock, partnership interests and membership interests. (The 2003 Security Agreement and the 2009 Security Agreement are collectively referred to as the "Security Agreements"). The 2009 Security Agreement was perfected by the recording of an UCC-1 financing statement (the "2009 UCC-1")(the 2003 UCC-1 and the 2009 UCC-1 are collectively referred to as the "UCC-1s").

15. At the time of the filing of the involuntary bankruptcy proceeding, most of the EPD's Creditors were of the belief that EPD owned significant positions in real property in Tennessee and Mississippi. This was not true. In fact, EPD did not own any real property as of the Petition Date, and instead had only the Notes, which were purportedly secured by the Security Agreements and UCC-1's, as to all of Pressman's assets. Pressman in turn, had ownership interests in entities that owned and/or managed properties in Tennessee and Mississippi, one of which is now in a bankruptcy of its own. EPD also had amounts owing it from other entities partially owned and/or controlled by Pressman, including Broadway Entertainment, S.C. Club, Inc. and S.C. Club, L.P., all of which are now defunct. The stock and other ownership interests held by Pressman were in closely held entities, and the stock and other ownership interests were not liquid or readily convertible to cash proceeds.

Case 2:12-ap-02424-ER Doc 1 Filed 10/31/12 Entered 10/31/12 16:28:07 Desc Main Document Page 6 of 28

**C. EPD'S Insolvency and the Pressmans' Breaches of their Fiduciary Obligations Owed to EPD and its Creditors**

16. EPD was insolvent on a balance sheet basis from, at least December 31, 2003, according to EPD's tax returns filed with the Internal Revenue Service. EPD's capital account/partners' equity (EPD's assets less liabilities) started at -$1,191,312 as of December 31, 2003, and by December 31, 2008 was -$21,521,893. The negative equity increased to -$38,209,405 as of the date of the involuntary bankruptcy petition against EPD (based on EPD's Statements and Schedules showing $32,278,078 in assets and $70,487,483 in liabilities). According to its tax returns, EPD had a cumulative net loss of ($12,859,313) during fiscal years 2003-2008. EPD did not file any tax returns for fiscal years 2009-2011. As such, from at least December 31, 2003, the Pressmans, as the sole managers and members of EPD, owed EPD and its Creditors a fiduciary duty to conserve assets and act in the best interests of EPD and the Creditors, including but not limited to a duty not to commit corporate waste.

17. Between 2003 and mid-2009, EPD funded its repayment, interest and other obligations to Creditors by: (a) using the operating cash flow and/or lines of credit of other businesses partially owned and/or controlled by Pressman; and (b) using the new funds deposited by other Creditors into EPD.

18. Beginning at least in mid-2009, EPD was unable to pay its obligations to Creditors because the companies that Pressman partially owned and/or controlled did not have sufficient operating cash flow and/or available lines of credit, and because EPD was no longer receiving an influx of new monies from the Creditors that were previously used to pay obligations to earlier Creditors. In mid-2009, EPD stopped making payments to the Creditors, save and except as to certain favored creditors, including but not limited to the BC Trust, and payments to or for the benefit of the Pressmans, as hereinafter alleged.

19. There are, at all times mentioned herein with respect to transfers from EPD to Defendants, creditors holding unsecured claims that are allowable under 11 U.S.C. § 502.

///

///

Case 2:12-ap-02424-ER Doc 1 Filed 10/31/12 Entered 10/31/12 16:28:07 Desc Main Document Page 7 of 28

**D. The Pressmans' Breaches of Fiduciary Duty to EPD and EPD's Creditors.**

20. The Pressmans, as the managers and members of EPD, owed a fiduciary obligation to EPD and its Creditors, to serve EPD in good faith, and in the best interests of EPD, with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. This duty generally is to act with honesty, loyalty, and good faith, including a duty not to commit corporate waste.

21. The Pressmans, as the managers and members of EPD, breached their fiduciary obligations owed to EPD and its Creditors and failed to act as reasonably prudent and careful managers would have acted in a like position under the same or similar circumstances in engaging in the acts and conduct as which failed to preserve the assets of EPD for the benefit of EPD and its Creditors, at the time EPD was insolvent, by, among other things:

a. Failing to preserve the assets of Pressman, using the same to leverage additional borrowings so that Pressman could repay other Creditors to avoid the disclosure that EPD was insolvent;

b. Engaging in needless and wasteful litigation as between EPD and Plush Lounge;

c. Failing to collect on a judgment in favor of EPD against Plush Lounge in the amount in excess of $ 3 million;

d. Engaging in fraudulent conveyances of assets that were encumbered by the EPD Security Agreements and UCC-1s;

e. Making preference payments and fraudulent transfers to certain EPD Creditors, to the disadvantage of other EPD Creditors to avoid detection of EPD's financial condition, business model and operations;

f. Allowing liens to be filed and recorded against EPD and Pressman's assets, including but not limited to a lien in favor of BC Trust;

g. Paying mortgage payments of KIRKLAND, in preference to other Creditors, as repayment of his EPD Investment;

h. Continuing to withdraw money from EPD at the time EPD was insolvent and unable to pay its debts as they became due, in order to pay for the personal living expenses of the Pressmans, which payments were in excess of any reasonable compensation that could be due them for services rendered.

22. As a direct and proximate result of the Pressmans' breach of their fiduciary obligations owed to EPD and its Creditors, as heretofore set forth, and by failing to preserve the assets of EPD during the time EPD was insolvent as set forth above, EPD has been damaged in an amount to be proved at the time of trial of this matter but believed to be in excess of $3 million.

23. The Trustee has resolved his claims against Jerrold Pressman by obtaining a stipulated "non-dischargeable" judgment against Jerrold Pressman for $5 million. The Trustee reserves his rights to assert claims against Keith Pressman that he deems prudent and appropriate.

## FIRST CLAIM FOR RELIEF

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AGAINST JOHN KIRKLAND

24. The Trustee realleges and incorporates herein by reference paragraphs 1 through 22 as though fully set forth herein and brings the following claim in his representative capacity standing in the shoes of EPD and to the extent applicable, on behalf of the Creditors of the estate as a whole, that is, for acts and conduct taken during the time EPD was insolvent.

25. At all times relevant prior to 2003 and continuing through the appointment of the Trustee, KIRLAND, as the outside counsel for EPD and the Pressmans had actual knowledge that the Pressmans were the managers and members of EPD and of Jerrold Pressman's various business entities, and had actual knowledge that the Pressmans had a fiduciary obligation to EPD and its Creditors to act in the best interests of EPD and its Creditors, including a fiduciary duty not to commit corporate waste, and not to act in their own self-interests to the detriment of of EPD and its Creditors.

26. As set forth in paragraphs 1 through 22 above, Defendant KIRKLAND, had actual knowledge that the Pressmans, as the managers and members of EPD and of Jerrold Pressman's

Case 2:12-ap-02424-ER Doc 1 Filed 10/31/12 Entered 10/31/12 16:28:07 Desc Main Document Page 9 of 28

various business entities were breaching their fiduciary obligations to EPD and its Creditors by failing to act in the best interests of EPD and its Creditors, including committing corporate waste, and by acting in their own self-interests to the detriment of EPD and its Creditors all as set forth in paragraph 20 above.

27. Notwithstanding that Defendant KIRKLAND had actual knowledge of the Pressmans' fiduciary obligations and their breach of the same as heretofore set forth, KIRKLAND, aided and abetted the Pressmans breach of their fiduciary obligations by, among other things:

a. Orchestrating between October 17, 2008 and December 17, 2009, to have the Pressmans, through EPD, arrange to make monthly payments to Union Bank of California on behalf of KIRKLAND and the BC Trust to satisfy KIRKLAND's mortgage loan payment obligations to Union Bank of California;

b. Forming a holding company, HMB Holdings, LLC ("HMB Holdings"), which was owned by 13 creditors of EPD, that had threatened litigation and an involuntary bankruptcy proceeding against EPD and/or Pressman, for the purpose of filing and recording a lien againstthe assets of EPD and Pressman and in favor of HMB Holdings all while knowing that other creditors of EPD and Pressman remained unsecured;

c. Causing the recordation and filing of a UCC-1 financing statement in favor of the BC Trust, against the assets of EPD and Pressman, at the direction and with the consent of Pressman, knowing that such recording was a fraudulent conveyance in violation of §§544 and 548 et seq. of the Bankruptcy Code, and California Civil Code § 3439, et seq., while other creditors of EPD and Pressman remained unsecured.

d. Knowing of EPD's financial condition and business practices, yet representing EPD in the involuntary bankruptcy proceeding and by representing EPD in state and federal court cases brought by other Creditors, and through those representations, knowing and willfully filing false and misleading pleadings and declarations in those actions contesting that EPD had amounts outstanding to Creditors in violation of Rule 11 of the Federal Rules of Civil Procedure. At the same time, KIRKLAND was accepting payments from EPD for the BC TRUST,

and permitted the filing and recordation of UCC-1 financing statements in favor of the BC TRUST and HMB Holdings;

e. Causing to have prepared and recorded a UCC-1 financing statement on behalf of HMB Holdings against all of the assets of EPD and Jerrold Pressman in the sum of $11.25 million.

f. Causing to have recorded a UCC-1 financing statement against the assets of EPD and Pressman in the amount of approximately $2 million in September 2009, in favor of the BC TRUST.

g. Demanding and receiving broad release and indemnification agreements from EPD in favor of KIRKLAND as to any and claims, including but not limited to claims for malpractice, breach of fiduciary duty, negligent misrepresentation, intentional misrepresentation and fraud, notwithstanding that EPD received no consideration, or wholly inadequate consideration, for entering into the release and indemnification agreements.

h. Representing Plush Lounge, an entity that received significant transfers from EPD, and owed those sums to EPD, as well as being an entity that was a judgment debtor to EPD, in litigation that severally depleted the assets of Plush Lounge at same time KIRKLAND was the outside general counsel for both EPD and Plush Lounge and had represented both since their formation.

i. Knowingly accepting payments from Plush Lounge and/or related companies that owed sums to EPD for legal services notwithstanding his knowledge that Plush Lounge owed EPD in excess of $3 million from a judgment on a promissory note.

j. Failing to properly advise EPD as to its duties and obligations to collect on its promissory notes and other assets due to KIRKLAND's conflict of interest in his representation of EPD, Pressman, Plush Lounge and the various entities partially owned and/or controlled by Pressman.

k. Starting in 2010, forming and serving as the agent for service of process for EPD Investment Leasing Co., LLC, an entity that was owned by Keith Pressman, and orchestrating a $40,000 transfer from EPD to EPD Investment Leasing Co., LLC, which KIRKLAND knew would

be used to make payments to certain preferred Creditors of EPD. The transfer from EPD to EPD Investment Leasing Co., LLC was made after the Creditors of EPD had stopped receiving any payments from EPD, and was made in violation of §§544 and 548 et seq. of the Bankruptcy Code, and California Civil Code § 3439, et seq.

l. contesting the involuntary bankruptcy against EPD without a good faith basis to do so, and by attempting to convert the bankruptcy case to Chapter 11 without a good faith basis to do so; and further by failing to turn over the books, records and property of EPD until after the Court entered an Order compelling EPD to do so, and by advising EPD to not file statements, schedules and a creditors' matrix, or to turn over books, records and property of EPD ; and further advising EPD and Pressman not to cooperate with the Trustee, notwithstanding their obligation to do so. KIRKLAND also filed pleadings and declarations that were knowingly false and misleading in violation of Rule 11 of the Federal Rules of Civil Procedure.

28. As a direct and proximate result of KIRKLAND's aiding and abetting the Pressman's breach of their fiduciary duties to EPD and its Creditors, EPD and its Creditors have been damaged in an amount to be proved at the time of trial but believed to be in excess of $3 million.

**POST-PETITION AND POST-ORDER FOR CLAIMS FOR RELIF**

The following Claims for Relief are based upon KIRKLAND's post-petition and post-Order for Relief conduct as counsel for the Debtors, and seek to recover damages caused to the property of the Debtors' Estate under 11 USC §541(a)(7)—an "interest in property that the estate acquires after the commencement of the case".

**SECOND CLAIM FOR RELIEF**

**POST-PETITION AND POST-ORDER FOR RELIEF FOR FRAUDULENT CONCEALMENT AGAINST JOHN KIRKLAND**

29. The Trustee realleges and incorporates herein by reference paragraphs 1 through 23, as though fully set forth herein.

30. KIRKLAND and his then current law firm, Luce Forward, represented EPD in the EPD bankruptcy case from the filing of the involuntary bankruptcy petition against EPD in

December 2010, until the Court entered an Order on October 31, 2011 permitting KIRKLAND and Luce Forward to withdraw as counsel for EPD.

31. During the period that KIRKLAND represented EPD in the bankruptcy case, KIRKLAND filed pleadings and declarations, among other things, opposing the involuntary bankruptcy petition, and then seeking to convert the case to Chapter 11. The pleadings and declarations filed by KIRKLAND were filed under a different attorney's ECF number and account in violation of local bankruptcy rules, and the contents of the pleadings and declarations were false and misleading, which KIRKLAND knew to be false and misleading and violated KIRKLAND's duties and obligations as counsel for EPD, and Rule 11 of the Federal Rules of Civil Procedure. Among the false and misleading assertions KIRKLAND either made or caused to be made in the pleadings and declarations were that:

a. EPD was a going concern business.

b. EPD was paying its debts as they became due.

c. Entry of an Order for Relief would cause irreparable damage to EPD as a going concern business.

d. Entry of an Order for Relief would cause EPD to cease its ability to operate as a going concern.

e. Entry of an Order for Relief would result in the destruction of EPD's business.

f. In referring to the declaration that KIRKLAND signed on behalf of the Debtors, that harm would be caused to EPD if an Order for Relief was entered in the bankruptcy case, KIRKLAND has since testified that he was referring to a generic debtor, rather than EPD.

g. EPD's creditors were investors that were subject to risk of loss and that creditors of EPD did not act as lenders to EPD, notwithstanding his knowledge that he was a lender to EPD and had received payments from EPD in violation of §§544 and 548 et seq. of the Bankruptcy Code, and California Civil Code § 3439, et seq.

h. There was nothing unusual or improper in regard to the liens recorded and filed by BC TRUST against the assets of EPD and Pressman notwithstanding his knowledge that the

transfers were in violation of §§544 and 548 et seq. of the Bankruptcy Code, and California Civil Code § 3439, et seq..

32. During testimony at his Rule 2004 examination, KIRKLAND claimed that the statements made in pleadings and declarations filed by him were "legal argument" rather than facts or statements, which he knew to be false and misleading and which he knew the Court would rely upon in making its determinations regarding the viability of EPD.

33. KIRKLAND also electronically filed (under another attorney's ECF number, in violation of local rules of court) two substitutions of attorney replacing KIRKLAND and Luce Forward as counsel for EPD, with Matthew B. Gruenberg of The Law Offices of Matthew B. Gruenberg in the bankruptcy case. The substitutions contained Matthew Gruenberg's electronic /s/ signature, notwithstanding that Gruenberg never reviewed the substitutions, never authorized KIRKLAND or any other attorney at Luce Forward to place his electronic signatures on the substitutions and was not even admitted to practice law in the United States District Court or United States Bankruptcy Court for the Central District of California.

34. KIRKLAND's filing of the pleadings and declarations constituted affirmations that the pleadings and declarations were filed in good faith. The pleadings and declarations filed by KIRKLAND in the bankruptcy case violated Rule 11, among other rules and statutes.

35. KIRKLAND's actions were taken to intentionally conceal the true financial condition of EPD and actions by EPD, its members and managers, and by KIRKLAND and the BC TRUST all in violation of Rule 11 of the Federal Rules of Civil Procedure.

36. KIRKLAND's actions were the direct and proximate cause of, and a substantial factor in, the Trustee and the Estate incurring significant attorney's fees and costs, in relation to opposing motions filed by KIRKLAND, in obtaining testimony from KIRKLAND, the Pressmans and others to determine the true facts regarding EPD, and to compel EPD to file statements, schedules and a creditors' matrix, turn over books, records and property of EPD and cooperate with the Trustee, all of which as counsel to the Debtor, KIRKLAND had an obligation to do, without being compelled to do so, and in causing the estate to incur administrative expenses potentially owed

Case 2:12-ap-02424-ER Doc 1 Filed 10/31/12 Entered 10/31/12 16:28:07 Desc Main Document Page 14 of 28

to the petitioning creditors, all of which damaged the Estate in an amount to be proven at trial but believed to be in excess of $500,000 .

**THIRD CLAIM FOR RELIEF**

**POST-PETITION AND POST-ORDER FOR RELIEF**

**BREACH OF FIDUCIARY DUTY AGAINST JOHN KIRKLAND**

37. The Trustee realleges and incorporates herein by reference paragraphs 1 through 23 and 24 through 36 as though fully set forth herein.

38. KIRKLAND as counsel to the Debtor, EPD, owed a fiduciary obligation to EPD and the estate to act with diligence, in the best interests of the estate, and to be disinterested in EPD's assets, among other duties and obligations owed to the Estate, without a conflict of interest as to EPD.

39. KIRKLAND, in conducting himself as set forth above, and specifically in paragraphs 29 through 36, breached his fiduciary obligations owed to EPD and to the estate, including being a creditor of EPD, at the time KIRKLAND was representing EPD in these bankruptcy proceedings, and in acting in the manner as set forth above.

40. KIRKLAND's conduct, as heretofore set forth, was a direct and proximate cause of, and a substantial factor of the acts, omissions and conduct that resulted in EPD and the estate being damaged in a sum that will be determined by proof at trial. That sum includes but is not limited to the attorney's fees and costs incurred by the Trustee on behalf of the estate as a result of KIRKLAND's conduct, as well as the diminution in value of the assets of the estate during such time as KIRKLAND breached his fiduciary duty to the estate and its creditors post-petition and Post-Order for Relief.

41. KIRKLAND's conduct as heretofore set forth, was willful and wanton, and malicious, intending to harm EPD and the estate all of KIRKLAND's own self interests, all of which entitles the Trustee to punitive damages as against KIRKLAND, in a sum according to proof at the time of trial.

///

**FOURTH CLAIM FOR RELIEF**

**POST-PETITION AND POST-ORDER FOR RELIEF FOR FRAUD UPON THE COURT AGAINST JOHN KIRKLAND**

42. The Trustee realleges and incorporates herein by reference paragraphs 1 through 23, and 24 through 41, as though fully set forth herein.

43. In undertaking the representation of EPD, and the estate, KIRKLAND owed a fiduciary duty to the Court as an officer of the Court, including among other things, not to violate Bankruptcy Rule 9011, which requires that the signature of an attorney on every "petition, pleading motion or other paper served or filed in a case under the Code" constitutes a certification that the attorney has reviewed the document and "that to the best of the attorney's or part's knowledge, information, and belief after reasonable inquiry it is well- grounded in fact and is warranted by existing law…and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or the administration of the case." Fed. R. Bankr. P. 9011. In addition, KIRKLAND owed a fiduciary duty to the Court:

a. Not to represent the interests of the DIP or its management in a manner adverse to the estate or the creditors;

b. Inform the Bankruptcy Court of EPD's violation of its fiduciary duty to the estate and its Creditors;

c. Disclose undisclosed conflict of interests of another professional;

d. Disclose unauthorized use of estate funds by EPD or its managers;

e. Disclose conversion of estate property by EPD;

f. Disclose concealment of estate assets.

44. In doing the conduct describe in paragraphs 1 through 41 above, KIRKLAND violated each and every obligation as described in paragraph 43 above, and in so doing breached his fiduciary obligations owed to the Court (and the Trustee).

45. KIRKLAND's conduct, as heretofore set forth, was a direct and proximate cause of, and a substantial factor of the acts, and was a fraud on the Court, and upon all parties to this bankruptcy case, with the Estate being damaged in a sum that will be determined by proof at trial.

That sum includes but is not limited to the attorney's fees and costs incurred by the Trustee on behalf of the Estate as a result of KIRKLAND's conduct, as well as the diminution in value of the assets of the Estate during such time as JOHN KIRKLAND engaged in a fraud upon the Court post-petition and Post-Order for Relief.

46. KIRKLAND's conduct as heretofore set forth, was willful and wanton, and malicious, intending to harm EPD and the estate all of KIRKLAND's own self-interests, all of which entitles the Trustee to damages according to proof at the time of trial, and to punitive damages, as against KIRKLAND.

**FIFTH CLAIM FOR RELIEF**

**DISALLOWANCE OF PROOFS OF CLAIM AGAINST THE BC TRUST**

47. The Trustee realleges and incorporates herein by reference paragraphs 1 through 46, as though fully set forth herein.

48. On December 12, 2011, the BC TRUST filed two proofs of claim in the bankruptcy case (Claim Nos. 171 and 235), both in the amount of $2.672 million (collectively, the "Proofs of Claim"). The proofs of claim state that the claims of the BC TRUST are secured claims. The proofs of claim appear to be executed by POSHOW ANN KIRKLAND as TRUSTEE of the BC TRUST.

49. Based on KIRKLAND's conduct as set forth in paragraphs 1 through 45, the Proofs of Claim are appropriately disallowed or, at the very least, equitably subordinated to all allowed unsecured claims.

**FRAUDULENT TRANSFER CLAIMS**

**SIXTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFER**

**AGAINST DEFENDANTS (ACTUAL INTENT)**

**[11 U.S.C. § 544 and California Civil Code §§ 3439.04(a) and 3439.07]**

50. The Trustee repeats and realleges the allegations in above paragraphs 1 through 49, inclusive, as though fully set forth herein.

Case 2:12-ap-02424-ER Doc 1 Filed 10/31/12 Entered 10/31/12 16:28:07 Desc
Main Document Page 17 of 28

51. The Trustee is informed and believes and thereon alleges that during the seven-year period immediately preceding the Petition Date, EPD made transfers of the lien in favor of the BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of the BC TRUST and against the assets of EPD and Pressman), and the property listed in **Exhibit "A"** attached hereto and incorporated herein by this reference (the "7-Year Transfers") to Union Bank for the benefit of KIRKLAND and the BC TRUST on the dates and in the amounts set forth therein with the actual intent to delay, hinder or defraud the Debtor's creditors.

52. By reason of the foregoing, the 7-Year Transfers are avoidable pursuant to 11 U.S.C. § 544 and Civil Code § 3439.04(a) and 3439.07.

**SEVENTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFER**

**AGAINST DEFENDANTS (ACTUAL INTENT)**

**[11 U.S.C. § 548(a)(1)(A)]**

53. The Trustee repeats and realleges the allegations in above paragraphs 1 through 52, inclusive, as though fully set forth herein.

54. The Trustee is informed and believes and thereon alleges that during the two year period immediately preceding the Petition Date, EPD made transfers of the lien in favor of the BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of the BC TRUST and against the assets of EPD and Jerrold Pressman), and the property listed in **Exhibit "B"** attached hereto and incorporated herein by this reference (the "2-Year Transfers") to KIRKLAND and the BC TRUST on the dates and in the amounts set forth therein with the actual intent to delay, hinder or defraud the Debtor's creditors.

55. By reason of the foregoing, the 2-Year Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

///

///

///

///

**EIGHTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. § 544 and California Civil Code §§ 3439.04(b) or 3439.05 and 3439.07]**

56. The Trustee realleges each and every allegation contained in paragraphs 1 through 55 of this Complaint and by this reference, incorporates said allegations as though set forth fully herein.

57. The Trustee is informed and believes and thereon alleges that during the four-year period immediately preceding the Petition Date, EPD made transfers of the lien in favor of BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of BC TRUST and against the assets of EPD and Pressman), and the property listed in **Exhibit "C"** attached hereto and incorporated herein by this reference (the "4-Year Transfers"). Each of the 4-Year Transfers (*see* **Exhibit "C"**) was made (a) without EPD receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when EPD was insolvent or as a result of which EPD became insolvent; or (ii) at a time that EPD was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with EPD was an unreasonably small capital; or (iii) at a time when EPD intended to incur, or believed or should reasonably have believed that EPD would incur, debts that would be beyond EPD's ability to pay as such debts matured.

58. By virtue of the foregoing, the 4-Year Transfers constituted fraudulent transfers pursuant to 11 U.S.C. § 544 and Civil Code §§ 3439.04(b) or 3439.05 and 3439.07.

**NINTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. § 548(a)(1)(B)]**

59. The Trustee realleges each and every allegation contained in paragraphs 1 through 58 of this Complaint and by this reference, incorporates said allegations as though set forth fully herein.

60. The Trustee is informed and believes and thereon alleges that each of the 2-Year Transfers (*see* Exhibit "B") was made (a) without EPD receiving a reasonably equivalent value in

exchange for such transfer; and (i) at a time when EPD was insolvent or as a result of which EPD became insolvent; or (ii), at a time that EPD was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with EPD was an unreasonably small capital; or (iii) at a time when EPD intended to incur, or believed or should reasonably have believed that EPD would incur, debts that would be beyond EPD's ability to pay as such debts matured.

61. By virtue of the foregoing, the transfers constituted fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**TENTH CLAIM FOR RELIEF**

**RECOVERY OF AVOIDED TRANSFERS AGAINST DEFENDANTS**

**[11 U.S.C. §§ 544, 547(b), 550(a)(1) and (2) and/or California Civil Code § 3439.07]**

62. The Trustee realleges each and every allegation contained in paragraphs 1 through 61 of this Complaint and by this reference, incorporates said allegations as though set forth fully herein.

63. By reason of the foregoing, the Trustee is entitled to recover for the benefit of the Estate the 7-Year Transfers, the 2-Year transfers, and the 4-Year Transfers pursuant to 11 U.S.C. §§ 544, 550(a)(1); and/or (2) Civil Code § 3439.07.

**PRAYER FOR RELIEF**

WHEREFORE, the Trustee prays for judgment against Defendants as follows:

**FIRST CLAIM FOR RELIEF**

**(For Aiding and Abetting Breach of Fiduciary Duty Defendant KIRKLAND)**

1. For damages according to proof;

**SECOND CLAIM FOR RELIEF**

**(For Post-Petition and Post-Order for Relief Fraudulent Concealment Against KIRKLAND)**

2. For damages according to proof;

///

///

///

**THIRD CLAIM FOR RELIEF**

**(For Post-Petition and Post-Order for Relief Breach of Fiduciary Duty Against KIRKLAND)**

3. For damages according to proof;

4. For punitive damages.

**FOURTH CLAIM FOR RELIEF**

**(For Post-Petition and Post-Order for Relief Fraud Upon the Court Against KIRKLAND)**

5. For damages according to proof;

6. For punitive damages.

**FIFTH CLAIM FOR RELIEF**

**(For Disallowance of Proofs of Claim Against the BC Trust)**

7. For an Order disallowing the Proofs of Claim as secured claims, and disallowing the Proofs of Claim in their entirety, or, in the alternative, equitably subordinating the Proofs of Claim to all allowed unsecured claims.

**SIXTH CLAIM FOR RELIEF**

8. That the 7-Year Transfers be avoided for the benefit of the estate.

**SEVENTH CLAIM FOR RELIEF**

9. That the 2-Year Transfers be avoided for the benefit of the estate.

**EIGTH CLAIM FOR RELIEF**

10. That the 4-Year Transfers be avoided for the benefit of the estate.

**NINTH CLAIM FOR RELIEF**

11. That the 2-Year Transfers be avoided for the benefit of the estate.

**TENTH CLAIM FOR RELIEF**

1. For relief as follows:

- to recover the value of the 2-Year Transfers from Defendants, for the benefit of the estate, plus interest at the maximum legal rate from the date of the 2-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein;

2. On the sixth claim for relief, for relief as follows:

- to recover the value of the 7-Year Transfers from Defendants, for the benefit of the Estate, plus interest at the maximum legal rate from the date of the 7-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein;
- to recover the value of the 4-Year Transfers from Defendants, for the benefit of the Estate, plus interest at the maximum legal rate from the date of the 4-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein; and,

3. On all claims for relief; that the Trustee be awarded fees and costs incurred in connection with this action;

4. For such other and further relief as this Court deems just and proper.

DATED: October 31, 2012 EZRA BRUTZKUS GUBNER LLP

By: /s/ Larry W. Gabriel
LARRY W. GABRIEL
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee

## 7 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 10/05/08 | 10/17/08 | 14001 | $ 7,437.50 |
| 11/05/08 | 11/17/08 | 14226 | 7,437.50 |
| 12/05/08 | 12/17/08 | 14531 | 7,437.50 |
| 01/05/09 | 01/20/09 | 14771 | 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | **Total** | | **$ 104,852.82** |

## 2 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 01/05/09 | 01/20/09 | 14771 | $ 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | **Total** | | **$82,540.32** |
| | | | |

## 4 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 10/05/08 | 10/17/08 | 14001 | $ 7,437.50 |
| 11/05/08 | 11/17/08 | 14226 | 7,437.50 |
| 12/05/08 | 12/17/08 | 14531 | 7,437.50 |
| 01/05/09 | 01/20/09 | 14771 | 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | **Total** | | **$ 104,852.82** |

**EXHIBIT "C"**

Case 2:12-ap-02424-ER Doc 1 Filed 10/31/12 Entered 10/31/12 16:28:07 Desc
Main Document Page 25 of 28

FORM B104 (08/07) 2007 USBC, Central District of California

**ADVERSARY PROCEEDING COVER SHEET**
(Instructions on Page 2)

**ADVERSARY PROCEEDING NUMBER**
(Court Use Only)

| PLAINTIFFS | DEFENDANTS |
|---|---|
| JASON M. RUND, CHAPTER 7 TRUSTEE, Estate of EPD INVESTMENT COMPANY, LLC, | JOHN C. KIRKLAND, individually, and as TRUSTEE of the BRIGHT CONSCIENCE TRUST, and POSHOW ANN KIRKLAND, as TRUSTEE of the BRIGHT CONSCIENCE TRUST |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>LARRY W. GABRIEL (68329) / COREY R. WEBER (205912)<br>EZRA BRUTZKUS GUBNER LLP<br>21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☑ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☑ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
COMPLAINT AGAINST JOHN C. KIRKLAND, INDIVIDUALLY AND AGAINST JOHN C. KIRKLAND AND POSHOW ANN KIRKLAND AS TRUSTEES OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 FOR: 1. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; 2. POST-PETITION AND POST-ORDER FOR RELIEF FRAUDULENT CONCEALMENT; 3. POST-PETITION AND POST-ORDER FOR RELIEF BREACH OF FIDUCIARY DUTY, ETC.

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- [1] 13-Recovery of money/property - §548 fraudulent transfer
- [2] 14-Recovery of money/property - other § 544, 547(b) 550(a)(1)(2)

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- [3] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☒ Check if a jury trial is demanded in complaint | Demand $ According to Proof |

Other Relief Sought
Aiding and Abetting Breach of Fiduciary Duty; Post-Petition and Post-Order for Relief Fraudulent Concealment; Post-Petition and Post-Order for Relief Breach of Fiduciary Duty; Post-Petition and Post-Order for Relief Fraud Upon the Court; Disallowance of Proofs of Claim; On all claims for relief; that the Trustee be awarded fees and costs incurred in connection with this action; and For such other and further relief as this Court Deems just and proper.

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN | | BANKRUPTCY CASE NO.<br>2:10-bk-62208-ER |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISIONAL OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>ERNEST M. ROBLES |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Larry W. Gabriel | | |
| DATE<br>October 31, 2012 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>LARRY W. GABRIEL | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

Case 2:12-ap-02424-ER Doc 1 Filed 10/31/12 Entered 10/31/12 16:28:07 Desc Main Document Page 27 of 28

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| LARRY W. GABRIEL - Bar No. 68329<br>STEVEN T. GUBNER - Bar No. 156593<br>COREY R. WEBER - Bar No. 205912<br>EZRA BRUTZKUS GUBNER LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Telephone: (818) 827-9000<br>Facsimile: (818) 827-9099<br>Email: lgabriel@ebg-law.com; sgubner@ebg-law.com; cweber@ebg-law.com<br><br>*Attorney for Plaintiff* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br>EPD INVESTMENT COMPANY, LLC, and<br>JERROLD S. PRESSMAN,<br><br>Consolidated Debtor(s). | CASE NO.: 2:10-bk-62208-ER<br><br>CHAPTER: 7<br><br>ADVERSARY NUMBER: |
| JASON M. RUND, CHAPTER 7 TRUSTEE, Estate of EPD INVESTMENT COMPANY, LLC,<br>Plaintiff(s)<br>Versus<br>JOHN C. KIRKLAND, individually, and as TRUSTEE of the BRIGHT CONSCIENCE TRUST, and POSHOW ANN KIRKLAND, as TRUSTEE of the BRIGHT CONSCIENCE TRUST,<br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is ____________. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Hearing Date:** ____________<br>**Time:** ________<br>**Courtroom:** ________ | **Place:**<br>☐ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.1) with an attachment for additional parties if necessary (LBR form F 7016-1.1a). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: ____________

By: ____________________________________
Deputy Clerk

# EXHIBIT VV

LARRY W. GABRIEL – Bar No. 68329
STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@ebg-law.com
sgubner@ebg-law.com
cweber@ebg-law.com

Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,

Consolidated Debtors.

EIN No. xxx-0994

---

JASON M. RUND, CHAPTER 7 TRUSTEE,

Plaintiff,

v.

JOHN C. KIRKLAND, individually, and as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMER 9, 2009, and POSHOW ANN KIRKLAND, as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,

Defendants.

Case No. 2:10-bk-62208-ER

Chapter 7

Adv. No. 2:12-ap-02424-ER

**FIRST AMENDED COMPLAINT AGAINST JOHN C. KIRKLAND, INDIVIDUALLY AND AGAINST JOHN C. KIRKLAND AND POSHOW ANN KIRKLAND AS TRUSTEES OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 FOR:**

1. **Aiding and Abetting Breach of Fiduciary Duty**
2. **Post-Petition and Post-Order for Relief Fraudulent Concealment**
3. **Post-Petition and Post-Order for Relief Breach of Fiduciary Duty**
4. **Post-Petition and Post-Order for Relief Fraud Upon the Court**
5. **Disallowance of Proofs of Claim**
6. **Avoidance of Fraudulent Transfers (Actual Intent)**
7. **Avoidance of Fraudulent Transfers (Actual Intent)**
8. **Avoidance of Fraudulent Transfers (Constructive Fraud)**
9. **Avoidance of Fraudulent Transfers (Constructive Fraud)**
10. **Recovery of Avoided Transfers**

**Status Conference:**
**Date:** February 7, 2013
**Time:** 10:00 a.m.
**Place:** Courtroom 1568
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

**JURY DEMAND**

Plaintiff, JASON M. RUND, the duly appointed and acting Chapter 7 Trustee of the consolidated bankruptcy estate of debtors EPD Investment Company, LLC ("EPD") and Jerrold S. Pressman ("Pressman") (EPD and Pressman are collectively referred to herein as the "Debtors"), for claims of relief against defendants JOHN C. KIRKLAND, Individually, and as Trustee of the Bright Conscience Trust Dated September 9, 2009 (the "BC TRUST"), and against POSHOW ANN KIRKLAND, as Trustee of the BC TRUST, alleges as follows:

**I.**

**THE PARTIES**

1. Plaintiff, JASON M. RUND, is the duly appointed and acting Chapter 7 Trustee (the "Trustee") of the Debtors. The Trustee was appointed after the Order for Relief was entered and each of the allegations herein are based on the Trustee's information and belief.

2. Defendant JOHN C. KIRKLAND ("KIRKLAND") is a resident of California, and is an attorney admitted to practice law in the State of California. KIRKLAND is also the Trustee or Co-Trustee of the BC TRUST, and is sued herein individually and as the Trustee of the BC TRUST.

3. Defendant POSHOW ANN KIRKLAND ("POSHOW KIRKLAND") is a resident of California, and is the wife of defendant KIRKLAND. POSHOW KIRKLAND is Trustee or Co-Trustee of THE BC TRUST and is sued herein in such capacity.

**II.**

**REQUIRED PLEADING DISCLOSURE**

4. In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Trustee hereby alleges that at least some of the claims for relief asserted in this Complaint constitute core proceedings under 28 U.S.C. § 157(b). The other claims for relief asserted herein are related to this

bankruptcy case as the outcome on those claims could have an effect on the Estate. Regardless, consent is hereby given to the entry of final orders and judgment by the Bankruptcy Court, except to the extent inconsistent with the Trustee's demand for a jury trial on all issues properly triable by a jury under applicable law.

**III.**

**JURISDICTION AND VENUE**

5. This action is a civil proceeding related to a case under Title 11 of the United States Code. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, as well as the Local Bankruptcy Rules of the United States Bankruptcy Court and the United States District Court for the Central District of California.

6. Venue is proper in this Court, including venue pursuant to 28 U.S.C. §§1408 and 1409, because, among other things, this is the district in which the bankruptcy action is pending. Pursuant to 28 U.S.C. § 1391, venue is also appropriate as Defendants are authorized to and regularly carry out substantial business in this district and the acts and conduct complained of herein took place within this district. Accordingly, this Court also has personal jurisdiction over the Defendants.

7. Jurisdiction and venue is also conferred upon this Court pursuant to 28 U.S.C. § 959 (a) in that the claims presented are based upon the acts and conduct of KIRKLAND during the time KIRKLAND was representing EPD, including but not limited to his acts and conduct post-petition and post-Order for Relief, which acts and conduct, among other things, constitute violations of KIRKLAND's fiduciary duty to EPD.

**IV.**

**STATEMENT OF FACTS RELEVANT TO ALL CLAIMS FOR RELIEF**

**A. EPD'S Background, Formation and Overview of the Relationship Between the Debtors and Kirkland.**

8. Between the 1970's and June 27, 2003, "EPD Investment Co." was an unincorporated sole proprietorship run by Pressman. EPD Investment Co. was used by Pressman to funnel funds from investors/lenders to various other entities partially owned and/or controlled by Pressman,

including but not limited to entities which eventually became known as Broadway Entertainment Marketing, Inc. ("Broadway Entertainment"), Plush Lounge Las Vegas, LLC ("Plush Lounge"), S.C. Club, Inc. and S.C. Club, L.P. Pressman's son, Keith Pressman, (collectively with Jerrold Pressman, the "Pressmans") is a licensed attorney, was also involved in Pressman's business enterprises.

9. KIRKLAND went to UCLA School of Law with Keith Pressman and was his roommate, graduating in 1990. Thereafter, KIRKLAND became outside counsel for the Pressmans, and their various business entities, which relationships continued (a) while KIRKLAND was at a number of law firms, and (b) through the filing of the involuntary bankruptcy against EPD in December 2010, at which time KIRKLAND was a partner at the then law firm of Luce Forward Hamilton & Scripps LLP ("Luce Forward"). During this period of time, KIRKLAND, individually and through his various law firms, represented the Pressmans, EPD, Broadway Entertainment, Plush Lounge S.C. Club, Inc. and S.C. Club, L.P., among other Pressman related business entities and operations.

10. In addition to serving as outside counsel for EPD and for the Pressmans, KIRKLAND invested and/or lent an amount in excess of $150,000 of his personal funds to EPD (Kirkland's "EPD Interests"). KIRKLAND later transferred his EPD Interests to the BC TRUST.

B. **Jerrold Pressman's Notes, Security Agreements and UCC-1 Financing Statements in Favor of EPD**

11. In order to fund his business operations, Pressman, through EPD, generally obtained funds from the various individual investors/lenders/creditors ("Creditors), and generally in exchange for promissory notes or demand notes that were due on demand or within 30 days after demand and bore mostly double-digit interest rates annually. EPD would, in turn, loan or invest the funds to other companies in which Pressman held ownership interests. Although EPD would loan money to companies in which Pressman held ownership interests, EPD's books often reflected that the amounts were owed by Pressman to EPD, rather than directly from the companies to EPD, because Pressman was borrowing the money and directing it as a loan to the companies in which he held ownership interests.

12. On or about June 27, 2003, KIRKLAND, on behalf of the Pressmans, formed EPD Investment Co., LLC, at which time, the assets and liabilities of the EPD Investment Co. sole proprietorship were transferred to EPD Investment Co., LLC.

13. On or about July 3, 2003, Pressman executed a $25 million revolving promissory note in favor of EPD (the "2003 Note"). At the same time, Pressman entered into a security agreement with EPD, encumbering all of his assets in favor of EPD. The security agreement was perfected by the filing of a UCC-1 recorded on or about July 3, 2003 (the "2003 UCC-1").

14. On or about July 31, 2009, Pressman executed a second $25 million "revolving" promissory note (the "2009 Note") (the 2003 Note and the 2009 Note are collectively referred to as the "Notes") and a security agreement with EPD (the "2009 Security Agreement") again granting EPD a security interest in all of Pressman's assets including but not limited to his accounts receivable, shares of stock, partnership interests and membership interests. (The 2003 Security Agreement and the 2009 Security Agreement are collectively referred to as the "Security Agreements"). The 2009 Security Agreement was perfected by the recording of an UCC-1 financing statement (the "2009 UCC-1")(the 2003 UCC-1 and the 2009 UCC-1 are collectively referred to as the "UCC-1s").

15. At the time of the filing of the involuntary bankruptcy proceeding, most of the EPD's Creditors were of the belief that EPD owned significant positions in real property in Tennessee and Mississippi. This was not true. In fact, EPD did not own any real property as of the Petition Date, and instead had only the Notes, which were purportedly secured by the Security Agreements and UCC-1's, as to all of Pressman's assets. Pressman in turn, had ownership interests in entities that owned and/or managed properties in Tennessee and Mississippi, one of which is now in a bankruptcy of its own. EPD also had amounts owing it from other entities partially owned and/or controlled by Pressman, including Broadway Entertainment, S.C. Club, Inc. and S.C. Club, L.P., all of which are now defunct. The stock and other ownership interests held by Pressman were in closely held entities, and the stock and other ownership interests were not liquid or readily convertible to cash proceeds.

**C. EPD'S Insolvency and the Pressmans' Breaches of their Fiduciary Obligations Owed to EPD and its Creditors**

16. EPD was insolvent on a balance sheet basis from, at least December 31, 2003, according to EPD's tax returns filed with the Internal Revenue Service. EPD's capital account/partners' equity (EPD's assets less liabilities) started at -$1,191,312 as of December 31, 2003, and by December 31, 2008 was -$21,521,893. The negative equity increased to -$38,209,405 as of the date of the involuntary bankruptcy petition against EPD (based on EPD's Statements and Schedules showing $32,278,078 in assets and $70,487,483 in liabilities). According to its tax returns, EPD had a cumulative net loss of ($12,859,313) during fiscal years 2003-2008. EPD did not file any tax returns for fiscal years 2009-2011. As such, from at least December 31, 2003, the Pressmans, as the sole managers and members of EPD, owed EPD and its Creditors a fiduciary duty to conserve assets and act in the best interests of EPD and the Creditors, including but not limited to a duty not to commit corporate waste.

17. Between 2003 and mid-2009, EPD funded its repayment, interest and other obligations to Creditors by: (a) using the operating cash flow and/or lines of credit of other businesses partially owned and/or controlled by Pressman; and (b) using the new funds deposited by other Creditors into EPD.

18. Beginning at least in mid-2009, EPD was unable to pay its obligations to Creditors because the companies that Pressman partially owned and/or controlled did not have sufficient operating cash flow and/or available lines of credit, and because EPD was no longer receiving an influx of new monies from the Creditors that were previously used to pay obligations to earlier Creditors. In mid-2009, EPD stopped making payments to the Creditors, save and except as to certain favored creditors, including but not limited to the BC Trust, and payments to or for the benefit of the Pressmans, as hereinafter alleged.

19. There are, at all times mentioned herein with respect to transfers from the Debtors to Defendants, creditors holding unsecured claims that are allowable under 11 U.S.C. § 502.

/ / /

/ / /

**D. The Pressmans' Breaches of Fiduciary Duty to EPD and EPD's Creditors.**

20. The Pressmans, as the managers and members of EPD, owed a fiduciary obligation to EPD and its Creditors, to serve EPD in good faith, and in the best interests of EPD, with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. This duty generally is to act with honesty, loyalty, and good faith, including a duty not to commit corporate waste.

21. The Pressmans, as the managers and members of EPD, breached their fiduciary obligations owed to EPD and its Creditors and failed to act as reasonably prudent and careful managers would have acted in a like position under the same or similar circumstances in engaging in the acts and conduct as which failed to preserve the assets of EPD for the benefit of EPD and its Creditors, at the time EPD was insolvent, by, among other things:

a. Failing to preserve the assets of Pressman, using the same to leverage additional borrowings so that Pressman could repay other Creditors to avoid the disclosure that EPD was insolvent;

b. Engaging in needless and wasteful litigation as between EPD and Plush Lounge;

c. Failing to collect on a judgment in favor of EPD against Plush Lounge in the amount in excess of $ 3 million;

d. Engaging in fraudulent conveyances of assets that were encumbered by the EPD Security Agreements and UCC-1s;

e. Making preference payments and fraudulent transfers to certain EPD Creditors, to the disadvantage of other EPD Creditors to avoid detection of EPD's financial condition, business model and operations;

f. Allowing liens to be filed and recorded against EPD and Pressman's assets, including but not limited to a lien in favor of BC Trust;

g. Paying mortgage payments of KIRKLAND, in preference to other Creditors, as repayment of his EPD Investment;

h. Continuing to withdraw money from EPD at the time EPD was insolvent and unable to pay its debts as they became due, in order to pay for the personal living expenses of the Pressmans, which payments were in excess of any reasonable compensation that could be due them for services rendered.

22. As a direct and proximate result of the Pressmans' breach of their fiduciary obligations owed to EPD and its Creditors, as heretofore set forth, and by failing to preserve the assets of EPD during the time EPD was insolvent as set forth above, EPD has been damaged in an amount to be proved at the time of trial of this matter but believed to be in excess of $3 million.

23. The Trustee has resolved his claims against Jerrold Pressman by obtaining a stipulated "non-dischargeable" judgment against Jerrold Pressman for $5 million. The Trustee reserves his rights to assert claims against Keith Pressman that he deems prudent and appropriate.

**FIRST CLAIM FOR RELIEF**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

**AGAINST KIRKLAND**

24. The Trustee realleges and incorporates herein by reference paragraphs 1 through 23 of this First Amended Complaint as though fully set forth herein, and brings the following claim in his representative capacity standing in the shoes of EPD and to the extent applicable, on behalf of the Creditors of the estate as a whole, that is, for acts and conduct taken during the time EPD was insolvent.

25. At all times relevant prior to 2003 and continuing through the appointment of the Trustee, KIRLAND, as the outside counsel for EPD and the Pressmans had actual knowledge that the Pressmans were the managers and members of EPD and of Jerrold Pressman's various business entities, and had actual knowledge that the Pressmans had a fiduciary obligation to EPD and its Creditors to act in the best interests of EPD and its Creditors, including a fiduciary duty not to commit corporate waste, and not to act in their own self-interests to the detriment of of EPD and its Creditors.

26. As set forth in paragraphs 1 through 23 above, Defendant KIRKLAND, had actual knowledge that the Pressmans, as the managers and members of EPD and of Jerrold Pressman's

Case 2:12-ap-02424-ER Doc 14 Filed 12/07/12 Entered 12/07/12 16:42:08 Desc Main Document Page 9 of 28

various business entities were breaching their fiduciary obligations to EPD and its Creditors by failing to act in the best interests of EPD and its Creditors, including committing corporate waste, and by acting in their own self-interests to the detriment of EPD and its Creditors all as set forth in paragraph 20 above.

27. Notwithstanding that Defendant KIRKLAND had actual knowledge of the Pressmans' fiduciary obligations and their breach of the same as heretofore set forth, KIRKLAND, aided and abetted the Pressmans breach of their fiduciary obligations by, among other things:

a. Orchestrating between October 17, 2008 and December 17, 2009, to have the Pressmans, through EPD, arrange to make monthly payments to Union Bank of California on behalf of KIRKLAND and the BC Trust to satisfy KIRKLAND's mortgage loan payment obligations to Union Bank of California;

b. Forming a holding company, HMB Holdings, LLC ("HMB Holdings"), which was owned by 13 creditors of EPD, that had threatened litigation and an involuntary bankruptcy proceeding against EPD and/or Pressman, for the purpose of filing and recording a lien against the assets of EPD and Pressman and in favor of HMB Holdings all while knowing that other creditors of EPD and Pressman remained unsecured;

c. Causing the recordation and filing of a UCC-1 financing statement in favor of the BC Trust, against the assets of EPD and Pressman, at the direction and with the consent of Pressman, knowing that such recording was a fraudulent conveyance in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq.*, while other creditors of EPD and Pressman remained unsecured.

d. Knowing of EPD's financial condition and business practices, yet representing EPD in the involuntary bankruptcy proceeding and by representing EPD in state and federal court cases brought by other Creditors, and through those representations, knowing and willfully filing false and misleading pleadings and declarations in those actions contesting that EPD had amounts outstanding to Creditors in violation of Rule 11 of the Federal Rules of Civil Procedure. At the same time, KIRKLAND was accepting payments from EPD for the BC TRUST, and permitted the filing and recordation of UCC-1 financing statements in favor of the BC TRUST and HMB Holdings;

e. Causing to have prepared and recorded a UCC-1 financing statement on behalf of HMB Holdings against all of the assets of EPD and Jerrold Pressman in the sum of $11.25 million.

f. Causing to have recorded a UCC-1 financing statement against the assets of EPD and Pressman in the amount of approximately $2 million in September 2009, in favor of the BC TRUST.

g. Demanding and receiving broad release and indemnification agreements from EPD in favor of KIRKLAND as to any and claims, including but not limited to claims for malpractice, breach of fiduciary duty, negligent misrepresentation, intentional misrepresentation and fraud, notwithstanding that EPD received no consideration, or wholly inadequate consideration, for entering into the release and indemnification agreements.

h. Representing Plush Lounge, an entity that received significant transfers from EPD, and owed those sums to EPD, as well as being an entity that was a judgment debtor to EPD, in litigation that severally depleted the assets of Plush Lounge at same time KIRKLAND was the outside general counsel for both EPD and Plush Lounge and had represented both since their formation.

i. Knowingly accepting payments from Plush Lounge and/or related companies that owed sums to EPD for legal services notwithstanding his knowledge that Plush Lounge owed EPD in excess of $3 million from a judgment on a promissory note.

j. Failing to properly advise EPD as to its duties and obligations to collect on its promissory notes and other assets due to KIRKLAND's conflict of interest in his representation of EPD, Pressman, Plush Lounge and the various entities partially owned and/or controlled by Pressman.

k. Starting in 2010, forming and serving as the agent for service of process for EPD Investment Leasing Co., LLC, an entity that was owned by Keith Pressman, and orchestrating a $40,000 transfer from EPD to EPD Investment Leasing Co., LLC, which KIRKLAND knew would be used to make payments to certain preferred Creditors of EPD. The transfer from EPD to EPD Investment Leasing Co., LLC was made after the Creditors of EPD had stopped receiving any

payments from EPD, and was made in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq*.

l. contesting the involuntary bankruptcy against EPD without a good faith basis to do so, and by attempting to convert the bankruptcy case to Chapter 11 without a good faith basis to do so; and further by failing to turn over the books, records and property of EPD until after the Court entered an Order compelling EPD to do so, and by advising EPD to not file statements, schedules and a creditors' matrix, or to turn over books, records and property of EPD ; and further advising EPD and Pressman not to cooperate with the Trustee, notwithstanding their obligation to do so. KIRKLAND also filed pleadings and declarations that were knowingly false and misleading in violation of Rule 11 of the Federal Rules of Civil Procedure.

28. As a direct and proximate result of KIRKLAND's aiding and abetting the Pressmans' breach of their fiduciary duties to EPD and its Creditors, EPD and its Creditors have been damaged in an amount to be proved at the time of trial but believed to be in excess of $3 million.

**POST-PETITION AND POST-ORDER FOR CLAIMS FOR RELIEF**

The following Claims for Relief are based upon KIRKLAND's post-petition and post-Order for Relief conduct as counsel for the Debtors, and seek to recover damages caused to the property of the Debtors' Estate, pursuant to, among other statutes and common law, 11 USC §541(a)(7)—an "interest in property that the estate acquires after the commencement of the case".

**SECOND CLAIM FOR RELIEF**

**POST-PETITION AND POST-ORDER FOR RELIEF FOR FRAUDULENT CONCEALMENT AGAINST KIRKLAND**

29. The Trustee realleges and incorporates herein by reference paragraphs 1 through 28 of this First Amended Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

30. KIRKLAND and his then current law firm, Luce Forward, represented EPD in the EPD bankruptcy case from the filing of the involuntary bankruptcy petition against EPD in December 2010, until the Court entered an Order on October 31, 2011 permitting KIRKLAND and Luce Forward to withdraw as counsel for EPD.

31. During the period that KIRKLAND represented EPD in the bankruptcy case, KIRKLAND filed pleadings and declarations, among other things, opposing the involuntary bankruptcy petition, and then seeking to convert the case to Chapter 11. The pleadings and declarations filed by KIRKLAND were filed under a different attorney's ECF number and account in violation of local bankruptcy rules, and the contents of the pleadings and declarations were false and misleading, which KIRKLAND knew to be false and misleading and violated KIRKLAND's duties and obligations as counsel for EPD, and Rule 11 of the Federal Rules of Civil Procedure. Among the false and misleading assertions KIRKLAND either made or caused to be made in the pleadings and declarations were that:

a. EPD was a going concern business.

b. EPD was paying its debts as they became due.

c. Entry of an Order for Relief would cause irreparable damage to EPD as a going concern business.

d. Entry of an Order for Relief would cause EPD to cease its ability to operate as a going concern.

e. Entry of an Order for Relief would result in the destruction of EPD's business.

f. In referring to the declaration that KIRKLAND signed on behalf of the Debtors, that harm would be caused to EPD if an Order for Relief was entered in the bankruptcy case, KIRKLAND has since testified that he was referring to a generic debtor, rather than EPD.

g. EPD's creditors were investors that were subject to risk of loss and that creditors of EPD did not act as lenders to EPD, notwithstanding his knowledge that he was a lender to EPD and had received payments from EPD in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq*.

h. There was nothing unusual or improper in regard to the liens recorded and filed by BC TRUST against the assets of EPD and Pressman notwithstanding his knowledge that the transfers were in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq*.

32. During testimony at his Rule 2004 examination, KIRKLAND claimed that the statements made in pleadings and declarations filed by him were "legal argument" rather than facts or statements, which he knew to be false and misleading and which he knew the Court would rely upon in making its determinations regarding the viability of EPD.

33. KIRKLAND also electronically filed (under another attorney's ECF number, in violation of local rules of court) two substitutions of attorney replacing KIRKLAND and Luce Forward as counsel for EPD, with Matthew B. Gruenberg of The Law Offices of Matthew B. Gruenberg in the bankruptcy case. The substitutions contained Matthew Gruenberg's electronic /s/ signature, notwithstanding that Gruenberg never reviewed the substitutions, never authorized KIRKLAND or any other attorney at Luce Forward to place his electronic signatures on the substitutions and was not even admitted to practice law in the United States District Court or United States Bankruptcy Court for the Central District of California.

34. KIRKLAND's filing of the pleadings and declarations constituted affirmations that the pleadings and declarations were filed in good faith. The pleadings and declarations filed by KIRKLAND in the bankruptcy case violated Rule 11, among other rules and statutes.

35. KIRKLAND's actions were taken to intentionally conceal the true financial condition of EPD and actions by EPD, its members and managers, and by KIRKLAND and the BC TRUST all in violation of Rule 11 of the Federal Rules of Civil Procedure.

36. KIRKLAND's actions were the direct and proximate cause of, and a substantial factor in, the Trustee and the Estate incurring significant attorney's fees and costs, in relation to opposing motions filed by KIRKLAND, in obtaining testimony from KIRKLAND, the Pressmans and others to determine the true facts regarding EPD, and to compel EPD to file statements, schedules and a creditors' matrix, turn over books, records and property of EPD and cooperate with the Trustee, all of which as counsel to the Debtor, KIRKLAND had an obligation to do, without being compelled to do so, and in causing the estate to incur administrative expenses potentially owed to the petitioning creditors, all of which damaged the Estate in an amount to be proven at trial but believed to be in excess of $500,000.

///

**<u>THIRD CLAIM FOR RELIEF</u>**

**POST-PETITION AND POST-ORDER FOR RELIEF**

**BREACH OF FIDUCIARY DUTY AGAINST KIRKLAND**

37. The Trustee realleges and incorporates herein by reference paragraphs 1 through 23 and 24 through 36 of this First Amended Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

38. KIRKLAND as counsel to the Debtor, EPD, owed a fiduciary obligation to EPD and the estate to act with diligence, in the best interests of the estate, and to be disinterested in EPD's assets, among other duties and obligations owed to the Estate, without a conflict of interest as to EPD.

39. KIRKLAND, in conducting himself as set forth above, and specifically in paragraphs 29 through 36, breached his fiduciary obligations owed to EPD and to the estate, including being a creditor of EPD, at the time KIRKLAND was representing EPD in these bankruptcy proceedings, and in acting in the manner as set forth above.

40. KIRKLAND's conduct, as heretofore set forth, was a direct and proximate cause of, and a substantial factor of the acts, omissions and conduct that resulted in EPD and the estate being damaged in a sum that will be determined by proof at trial. That sum includes but is not limited to the attorney's fees and costs incurred by the Trustee on behalf of the estate as a result of KIRKLAND's conduct, as well as the diminution in value of the assets of the estate during such time as KIRKLAND breached his fiduciary duty to the estate and its creditors post-petition and Post-Order for Relief.

41. KIRKLAND's conduct as heretofore set forth, was willful and wanton, and malicious, intending to harm EPD and the estate all of KIRKLAND's own self interests, all of which entitles the Trustee to punitive damages as against KIRKLAND, in a sum according to proof at the time of trial.

/ / /

/ / /

/ / /

**FOURTH CLAIM FOR RELIEF**

**POST-PETITION AND POST-ORDER FOR RELIEF FOR FRAUD UPON THE COURT AGAINST KIRKLAND**

42. The Trustee realleges and incorporates herein by reference paragraphs 1 through 23, and 24 through 41 of this First Amended Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

43. In undertaking the representation of EPD, and the estate, KIRKLAND owed a fiduciary duty to the Court as an officer of the Court, including among other things, not to violate Bankruptcy Rule 9011, which requires that the signature of an attorney on every "petition, pleading motion or other paper served or filed in a case under the Code" constitutes a certification that the attorney has reviewed the document and "that to the best of the attorney's or part's knowledge, information, and belief after reasonable inquiry it is well- grounded in fact and is warranted by existing law…and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or the administration of the case." Fed. R. Bankr. P. 9011. In addition, KIRKLAND owed a fiduciary duty to the Court:

a. Not to represent the interests of EPD or its management in a manner adverse to the estate or the creditors;

b. Inform the Bankruptcy Court of EPD's violation of its fiduciary duty to the estate and its Creditors;

c. Disclose undisclosed conflict of interests of another professional;

d. Disclose unauthorized use of estate funds by EPD or its managers;

e. Disclose conversion of estate property by EPD;

f. Disclose concealment of estate assets.

44. In doing the conduct describe in paragraphs 1 through 41 above, KIRKLAND violated each and every obligation as described in paragraph 43 above, and in so doing breached his fiduciary obligations owed to the Court (and the Trustee).

45. KIRKLAND's conduct, as heretofore set forth, was a direct and proximate cause of, and a substantial factor of the acts, and was a fraud on the Court, and upon all parties to this

Case 2:12-ap-02424-ER Doc 14 Filed 12/07/12 Entered 12/07/12 16:42:08 Desc
Main Document Page 16 of 28

bankruptcy case, with the Estate being damaged in a sum that will be determined by proof at trial. That sum includes but is not limited to the attorney's fees and costs incurred by the Trustee on behalf of the Estate as a result of KIRKLAND's conduct, as well as the diminution in value of the assets of the Estate during such time as KIRKLAND engaged in a fraud upon the Court post-petition and Post-Order for Relief.

46. KIRKLAND's conduct as heretofore set forth, was willful and wanton, and malicious, intending to harm EPD and the estate all of KIRKLAND's own self-interests, all of which entitles the Trustee to damages according to proof at the time of trial, and to punitive damages, as against KIRKLAND.

**FIFTH CLAIM FOR RELIEF**

**DISALLOWANCE OF PROOFS OF CLAIM**

**AGAINST THE BC TRUST**

47. The Trustee realleges and incorporates herein by reference paragraphs 1 through 46 of this First Amended Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

48. On December 12, 2011, the BC TRUST filed two proofs of claim in the bankruptcy case (Claim Nos. 171 and 235), both in the amount of $2.672 million (collectively, the "Proofs of Claim"). The proofs of claim state that the claims of the BC TRUST are secured claims. The proofs of claim appear to be executed by POSHOW ANN KIRKLAND as TRUSTEE of the BC TRUST.

49. Based on KIRKLAND's conduct as set forth in paragraphs 1 through 46, the Proofs of Claim are appropriately disallowed or, at the very least, equitably subordinated to all allowed unsecured claims.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**FRAUDULENT TRANSFER CLAIMS**

**SIXTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (ACTUAL INTENT)**

**[11 U.S.C. § 544 and California Civil Code §§ 3439.04(a) and 3439.07]**

50. The Trustee repeats and realleges the allegations in above paragraphs 1 through 49, inclusive, of this First Amended Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

51. The Trustee is informed and believes and thereon alleges that during the seven-year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the liens in favor of the BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of the BC TRUST and against the assets of EPD and Pressman), and the property listed in **Exhibit "A"** attached hereto and incorporated herein by this reference (the "7-Year Transfers") to Union Bank for the benefit of KIRKLAND and the BC TRUST on the dates and in the amounts set forth therein with the actual intent to delay, hinder or defraud the Debtor's creditors.

52. By reason of the foregoing, the 7-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 544 and Civil Code § 3439.04(a) and 3439.07.

**SEVENTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (ACTUAL INTENT)**

**[11 U.S.C. § 548(a)(1)(A)]**

53. The Trustee repeats and realleges the allegations in above paragraphs 1 through 52, inclusive, of this First Amended Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

54. The Trustee is informed and believes and thereon alleges that during the two year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the liens in favor of the BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of the BC TRUST and against the assets of EPD and Jerrold Pressman), and the property listed in **Exhibit "B"**

attached hereto and incorporated herein by this reference (the "2-Year Transfers") to KIRKLAND and the BC TRUST on the dates and in the amounts set forth therein with the actual intent to delay, hinder or defraud the Debtor's creditors.

55. By reason of the foregoing, the 2-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

**EIGHTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. § 544 and California Civil Code §§ 3439.04(b) or 3439.05 and 3439.07]**

56. The Trustee realleges each and every allegation contained in paragraphs 1 through 49 of this First Amended Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

57. The Trustee is informed and believes and thereon alleges that during the four-year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the lien in favor of BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of BC TRUST and against the assets of EPD and Pressman), and the property listed in **Exhibit "C"** attached hereto and incorporated herein by this reference (the "4-Year Transfers"). Each of the 4-Year Transfers (*see* **Exhibit "C"**) was made (a) without the Debtors receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtors were insolvent or as a result of which the Debtors became insolvent; or (ii) at a time that the Debtors were engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining was an unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

58. By virtue of the foregoing, the 4-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 544 and Civil Code §§ 3439.04(b) or 3439.05 and 3439.07.

**NINTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. § 548(a)(1)(B)]**

59. The Trustee realleges each and every allegation contained in paragraphs 1 through 49 of this First Amended Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

60. The Trustee is informed and believes and thereon alleges that each of the 2-Year Transfers (*see* Exhibit "B") and each lien was made (a) without the Debtors receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtors were insolvent or as a result of which the Debtors became insolvent; or (ii), at a time that the Debtors were engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining was an unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

61. By virtue of the foregoing, the 2-Year Transfers and the liens are avoidable transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**TENTH CLAIM FOR RELIEF**

**RECOVERY OF AVOIDED TRANSFERS AGAINST DEFENDANTS**

**[11 U.S.C. §§ 544, 547(b), 550(a)(1) and (2) and/or California Civil Code § 3439.07]**

62. The Trustee realleges each and every allegation contained in paragraphs 1 through 61 of this First Amended Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

63. By reason of the foregoing, the Trustee is entitled to recover for the benefit of the Estate the 7-Year Transfers, the 2-Year transfers, and the 4-Year Transfers and the liens pursuant to 11 U.S.C. §§ 544, 548, 550(a)(1) and/or Civil Code § 3439.07.

/ / /

**PRAYER FOR RELIEF**

WHEREFORE, the Trustee prays for judgment against Defendants as follows:

**FIRST CLAIM FOR RELIEF**

**(For Aiding and Abetting Breach of Fiduciary Duty Defendant KIRKLAND)**

1. For damages according to proof;

**SECOND CLAIM FOR RELIEF**

**(For Post-Petition and Post-Order for Relief Fraudulent Concealment Against KIRKLAND)**

2. For damages according to proof;

**THIRD CLAIM FOR RELIEF**

**(For Post-Petition and Post-Order for Relief Breach of Fiduciary Duty Against KIRKLAND)**

3. For damages according to proof;

4. For punitive damages.

**FOURTH CLAIM FOR RELIEF**

**(For Post-Petition and Post-Order for Relief Fraud Upon the Court Against KIRKLAND)**

5. For damages according to proof;

6. For punitive damages.

**FIFTH CLAIM FOR RELIEF**

**(For Disallowance of Proofs of Claim Against the BC Trust)**

7. For an Order disallowing the Proofs of Claim as secured claims, and disallowing the Proofs of Claim in their entirety, or, in the alternative, equitably subordinating the Proofs of Claim to all allowed unsecured claims.

**SIXTH CLAIM FOR RELIEF**

8. That the 7-Year Transfers and the liens be avoided for the benefit of the estate.

**SEVENTH CLAIM FOR RELIEF**

9. That the 2-Year Transfers and the liens be avoided for the benefit of the estate.

**EIGTH CLAIM FOR RELIEF**

10. That the 4-Year Transfers and the liens be avoided for the benefit of the estate.

Case 2:12-ap-02424-ER Doc 14 Filed 12/07/12 Entered 12/07/12 16:42:08 Desc
Main Document Page 21 of 28

**NINTH CLAIM FOR RELIEF**

11. That the 2-Year Transfers be avoided for the benefit of the estate.

**TENTH CLAIM FOR RELIEF**

12. For relief as follows:

- to recover the liens and/or the value of the 2-Year Transfers from Defendants, for the benefit of the estate, plus interest at the maximum legal rate from the date of the 2-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein;

13. On the sixth claim for relief, for relief as follows:

- to recover the liens and/or value of the 7-Year Transfers from Defendants, for the benefit of the Estate, plus interest at the maximum legal rate from the date of the 7-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein;
- to recover the liens and/or value of the 4-Year Transfers from Defendants, for the benefit of the Estate, plus interest at the maximum legal rate from the date of the 4-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein; and,

14. On all claims for relief; that the Trustee be awarded fees and costs incurred in connection with this action;

15. For such other and further relief as this Court deems just and proper.

DATED: December 7, 2012 EZRA BRUTZKUS GUBNER LLP

By: /s/ Larry W. Gabriel
LARRY W. GABRIEL
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee



*701386*

## 7 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 10/05/08 | 10/17/08 | 14001 | $ 7,437.50 |
| 11/05/08 | 11/17/08 | 14226 | 7,437.50 |
| 12/05/08 | 12/17/08 | 14531 | 7,437.50 |
| 01/05/09 | 01/20/09 | 14771 | 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | **Total** | | **$ 104,852.82** |

## 2 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 01/05/09 | 01/20/09 | 14771 | $ 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | **Total** | | **$82,540.32** |
| | | | |

## 4 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 10/05/08 | 10/17/08 | 14001 | $ 7,437.50 |
| 11/05/08 | 11/17/08 | 14226 | 7,437.50 |
| 12/05/08 | 12/17/08 | 14531 | 7,437.50 |
| 01/05/09 | 01/20/09 | 14771 | 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | **Total** | | **$ 104,852.82** |

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER, SBN 156593<br>COREY R. WEBER, SBN 205912<br>EZRA BRUTZKUS GUBNER LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Tel: 818-827-9000<br>Fax: 818-827-9099<br>Email: sgubner@ebg-law.com; cweber@ebg-law.com<br><br>*Attorney for Plaintiff* Jason M. Rund, Chapter 7 Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br>EPD INVESTMENT COMPANY, LLC; JERROLD S. PRESSMAN<br><br>Debtor(s). | CASE NO.: 2:10-BK-62208-ER<br>CHAPTER: 7<br><br>ADVERSARY NUMBER: 2:12-ap-02424-ER |
| JASON M. RUND, CHAPTER 7 TRUSTEE<br><br>Plaintiff(s)<br>Versus<br>JOHN C. KIRKLAND, individually, and as Trustee of the Bright Conscience Trust Dated September 9, 2009, and POWHO ANN KIRKLAND, as Trustee of the Bright Conscience Trust Dated September 9, 2009, Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** RE FIRST AMENDED COMPLAINT |

TO THE DEFENDANT: A ~~Complaint~~ First Amended Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is 01/31/2013. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Hearing Date:** 02/07/2013<br>**Time:** 10:00 am<br>**Courtroom:** 1568 | **Place:**<br>☑ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.1) with an attachment for additional parties if necessary (LBR form F 7016-1.1a). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____________

By: ________________________________________
Deputy Clerk

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing documents entitled: **FIRST AMENDED COMPLAINT AGAINST JOHN C. KIRKLAND, INDIVIDUALLY AND AGAINST JOHN C. KIRKLAND AND POSHOW ANN KIRKLAND AS TRUSTEES OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 FOR: 1. Aiding and Abetting Breach of Fiduciary Duty 2. Post-Petition and Post-Order for Relief Fraudulent Concealment 3. Post-Petition and Post-Order for Relief Breach of Fiduciary Duty 4. Post-Petition and Post-Order for Relief Fraud Upon the Court 5. Disallowance of Proofs of Claim 6. Avoidance of Fraudulent Transfers (Actual Intent) 7. Avoidance of Fraudulent (Actual Intent) 8. Avoidance of Fraudulent Transfers (Constructive Fraud) 9. Avoidance of Fraudulent Transfers (Constructive Fraud) 10. Recovery of Avoided Transfers** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 7, 2012**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jason M Rund (TR) trustee@srlawyers.com, jrund@ecf.epiqsystems.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **December 7, 2012**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg.
255 East Temple Street, Suite 1560
Los Angeles, CA 90012-3332

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on __________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 7, 2012 | JESSICA ROEL | /s/ Jessica Roel |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**BY UNITED STATES MAIL**

John C. Kirkland
Ironridge Global Partners, LLC
881 Alma Real Drive, Suite 305
Pacific Palisades, CA 90272

John C. Kirkland
754 Swarthmore Avenue
Pacific Palisades, CA 90272

John C. Kirkland, as Trustee for the
Bright Conscience Trust
Ironridge Global Partners, LLC
881 Alma Real Drive, Suite 305
Pacific Palisades, CA 90272

John C. Kirkland, as Trustee for the
Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades CA 90272

Poshow Ann Kirkland, as Trustee for the
Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades CA 90272

Courtesy Copy
Victor A. Sahn, Esq.
SulmeyerKupetz
333 South Hope Street, 35th Floor
Los Angeles, CA 90071

# EXHIBIT WW

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc
Main Document Page 1 of 28

LARRY W. GABRIEL – Bar No. 68329
STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@ebg-law.com
sgubner@ebg-law.com
cweber@ebg-law.com

Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,

Consolidated Debtors.

EIN No. xxx-0994

---

JASON M. RUND, CHAPTER 7 TRUSTEE,

Plaintiff,

v.

JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND, individually and as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,

Defendants.

Case No. 2:10-bk-62208-ER

Chapter 7

Adv. No. 2:12-ap-02424-ER

**SECOND AMENDED COMPLAINT AGAINST: (1) JOHN C. KIRKLAND; AND (2) POSHOW ANN KIRKLAND, INDIVIDUALLY AND AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 FOR:**

1. **Disallowance of Proofs of Claim, or in the alternative, Equitable Subordination of Proofs of Claim**
2. **Avoidance of Fraudulent Transfers (Actual Intent)**
3. **Avoidance of Fraudulent Transfers (Actual Intent)**
4. **Avoidance of Fraudulent Transfers (Constructive Fraud)**
5. **Avoidance of Fraudulent Transfers (Constructive Fraud)**
6. **Recovery of Avoided Transfers**

**<u>Status Conference</u>:**
**Date:** September 5, 2013
**Time:** 11:00 a.m.
**Place:** Courtroom 1568
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc
Main Document Page 2 of 28

Plaintiff, JASON M. RUND, the duly appointed and acting Chapter 7 Trustee of the consolidated bankruptcy estate of debtors EPD Investment Company, LLC ("EPD") and Jerrold S. Pressman ("Pressman") (EPD and Pressman are collectively referred to herein as the "Debtors"), for claims of relief against defendants JOHN C. KIRKLAND, an individual, and against POSHOW ANN KIRKLAND, individually and as Trustee of the Bright Conscience Trust Dated September 9, 2009 (the "BC TRUST"), alleges as follows:

**CONSENT TO ENTRY OF FINAL ORDERS**

**AND JUDGMENT BY THE BANKRUPTCY COURT**

1. The Trustee hereby alleges that the claims for relief asserted in this Complaint constitute core proceedings pursuant to 28 U.S.C. § 157(b). To the extent that certain of the claims are determined to be non-core proceedings pursuant to case law, the Bankruptcy Court may enter proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c). The Trustee consents to the entry of final orders and judgment by the Bankruptcy Court as to all claims for relief contained in this Complaint.

**THE PARTIES**

2. Plaintiff, JASON M. RUND, is the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the consolidated bankruptcy estate of the Debtors. The Trustee was appointed after the Order for Relief was entered and each of the allegations contained herein is based on the Trustee's information and belief. The Trustee has standing to bring this adversary proceeding on behalf of the Estate.

3. Defendant JOHN C. KIRKLAND ("KIRKLAND") is a resident of the State of California, and is an attorney admitted to practice law in the State of California. At all times material herein, KIRKLAND transacted business in the Central District of California, including but not limited to transactions with EPD, and/or at all material times herein was and is subject to the jurisdiction of this Court.

4. Defendant POSHOW ANN KIRKLAND ("POSHOW KIRKLAND") is a resident of California, and is the wife of defendant KIRKLAND. POSHOW KIRKLAND is Trustee of THE BC TRUST and is sued herein individually and in in such capacity as Trustee of the BC TRUST. At

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc Main Document Page 3 of 28

all times material herein, THE BC TRUST transacted business in the Central District of California, including but not limited to transactions with EPD, and/or at all material times herein was and is subject to the jurisdiction of this Court. As alleged herein, the BC TRUST is the assignee of certain interests of KIRKLAND in relation to the Debtors.

**JURISDICTION AND VENUE**

5. This action is a civil proceeding related to a case under Title 11 of the United States Code.

6. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and General Order No. 242-A of the District Court for the Central District of California, as this is a core proceeding under 28 U.S.C. § 157(b)(1), (2)(A), (B), (C), (H) and (K). Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a), in that the instant proceeding is related to the Debtors' pending case under Title 11, Chapter 7 of the United States Code. The Trustee consents to final orders or judgment by the Bankruptcy Court.

7. Venue is proper in this Court, including venue pursuant to 28 U.S.C. §§1408 and 1409, because, among other things, this is the district in which the bankruptcy action is pending. Pursuant to 28 U.S.C. § 1391, venue is also appropriate as Defendants are authorized to and regularly carry out substantial business in this district and the acts and conduct complained of herein took place within this district. This Court has personal jurisdiction over the Defendants.

**THE BANKRUPTCY CASE**

8. The EPD bankruptcy case was commenced by the filing of an involuntary petition against EPD on December 7, 2010 (the "Petition Date"). The Court entered an Order for Relief on February 9, 2011 (the "Order for Relief"). The Trustee was appointed on or about February 12, 2011.

9. On February 1, 2012, Pressman filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

10. On April 27, 2012, the Trustee filed a motion for substantive consolidation of the EPD bankruptcy estate and the Pressman bankruptcy estate (the "Substantive Consolidation

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc
Main Document Page 4 of 28

Motion"). The hearing on the Substantive Consolidation Motion took place on May 23, 2012, and the Court entered an Order granting the Substantive Consolidation Motion on June 4, 2012.

11. Pursuant to the Order granting the Substantive Consolidation Motion, the Trustee is the Chapter 7 Trustee for the consolidated bankruptcy estate of the Debtors.

## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

12. The Trustee is informed and believes and based thereon alleges that between the 1970s and June 27, 2003, "EPD Investment Co." was an unincorporated sole proprietorship run by Pressman. On June 27, 2003, EPD was formed as a California limited liability company in order to provide corporate protection and satisfy Pressman's goal of retirement. Upon EPD's formation in 2003, the EPD sole proprietorship's assets and liabilities were transferred from Pressman to EPD. The members and managers of EPD at all times were Pressman and his son, Keith Pressman.

13. The Trustee is informed and believes and based thereon alleges that Pressman used EPD to bring in funds from lenders, investors and others, which funds were used to pay amounts due to earlier lenders, creditors and investors and/or were transferred to various other business entities partially owned and/or controlled by Pressman to fund their business operations.

14. The Trustee is informed and believes and based thereon alleges that EPD generally obtained such funds from the individual investors/lenders/creditors (collectively, the "Creditors") generally in exchange for promissory notes or demand notes that were due on demand or within 30 days after demand and bore mostly double-digit interest rates annually. EPD would, in turn, loan or invest the funds to other companies in which Pressman held ownership interests. Although EPD would loan money to companies in which Pressman held ownership interests, EPD's books often reflected that the amounts were owed by Pressman to EPD, rather than directly from the companies to EPD, because Pressman was borrowing the money from EPD and then directing it as a loan to the companies in which he held ownership interests.

15. The Trustee is informed and believes and based thereon alleges that EPD did not maintain segregated investment accounts, deposit accounts, loan accounts or other separate

accounts for the Creditors. Any sums loaned, deposited, invested or transferred by Creditors in EPD were deposited into EPD's general operating account at City National Bank, comingled with EPD's operating funds and, according to Pressman, were "fungible" at that point. The sums deposited by the Creditors, and any interest accrued on the sums, were reflected solely in ledger entries and on statements prepared by EPD for Creditors. Notwithstanding interest and other obligations on amounts loaned by Creditors, EPD generally did not maintain sufficient sums in its bank accounts to pay the amounts outstanding to Creditors, or amounts due on demand to Creditors, without obtaining the funds from additional loans or investments from existing Creditors, loans or investments from new Creditors, or sums transferred from other entities partially owned and/or controlled by Pressman.

16. The Trustee is informed and believes and based thereon alleges that although many of EPD's Creditors were of the belief that EPD owned significant positions in real property in Tennessee, Mississippi and elsewhere, EPD did not own any real property as of the date of the involuntary bankruptcy petition against EPD. Instead, EPD had promissory notes from Pressman, which were secured by security agreements and UCC-1 financing statements as to all of Pressman's assets. Pressman in turn, had ownership interests in entities that owned and/or managed properties in Tennessee and Mississippi, one of which is now in a bankruptcy case of its own, and ownership interests in ice rinks and night clubs, most of which are now defunct with no remaining assets. EPD also had amounts owing to it from other entities partially owned and/or controlled by Pressman, including Broadway Entertainment and S.C. Club, L.P., both of which are now defunct. Some of these entities executed promissory notes and others did not. The promissory notes that did exist were not secured. The stock and other ownership interests held by Pressman were in closely held entities, and the stock and other ownership interests were not liquid or readily convertible to cash proceeds if necessary to satisfy the obligations owed to Creditors, or due on demand to Creditors.

17. The Trustee is informed and believes and based thereon alleges that EPD also engaged in providing tax advice to certain of the Creditors, and in particular, advising the Creditors in regard to the creation of leasing companies to create tax benefits for the Creditors.

Creditors often created corporations, limited liability companies or DBAs to purportedly own equipment, such as equipment at ice rinks or night clubs, but all of which equipment was already owned by entities in which Pressman had an ownership interest. The Creditors would then transfer sums to EPD purportedly to purchase equipment, and the Creditors would then enter into a leasing agreement with the ice rink or night club to lease the equipment in exchange for lease payments. The lease payments were guaranteed by EPD and would often be paid by EPD to the Creditors, even though EPD was not an owner of the subject equipment, or a lessor or a lessee of such equipment. At the end of the lease period, which was typically 4 years, the equipment would then purportedly revert in ownership back to the ice rink or night club. By the leasing transactions, the Creditors taking part in the transactions would obtain depreciation and other tax benefits. Most of the Creditors who took part in such leasing transactions never saw the equipment that they purportedly owned, and often never had a copy of a document evidencing ownership of a particular piece of equipment with a specific serial number.

18. The Trustee is informed and believes and based thereon alleges that EPD did not distribute offering circulars, prospectuses, audited financial statements or other formal investment information other than monthly or quarterly statements. EPD also did not file any documents with the California Department of Corporations, and did not obtain California Department of Corporations approvals, or exemptions. EPD also did not receive licenses, permits or approvals by the California Department of Corporations or the United States Securities & Exchange Commission.

**EPD WAS INSOLVENT SINCE 2003 AND HAS NEVER BEEN PROFITABLE**

19. The Trustee is informed and believes and based thereon alleges that between 2003 and the Order for Relief in this bankruptcy case, EPD never sought or obtained audited financial statements because Pressman did not believe that audited financial statements were necessary.

20. The Trustee is informed and believes and based thereon alleges that EPD was insolvent on a balance sheet basis from at least December 31, 2003, according to EPD's tax returns filed with the Internal Revenue Service. EPD's capital account/partners' equity (EPD's assets less liabilities) started at ($1,191,312) as of December 31, 2003, and by December 31,

2008 was ($21,521,893). The negative equity increased to ($38,209,405) as of the date of the involuntary bankruptcy petition against EPD (based on EPD's Statements and Schedules showing $32,278,078 in assets and $70,487,483 in liabilities).

21. The Trustee is informed and believes and based thereon alleges that EPD's tax returns also show that since its formation in mid-2003, EPD has never been profitable. The tax returns show net losses as follows: ($1,356,192) for 2003 (between its formation and the end of 2003), ($3,223,395) for 2004, ($1,990,744) for 2005, ($5,131,269) for 2006, ($584,301) for 2007 and ($573,412) for 2008. According to its tax returns, EPD had a cumulative net loss of ($12,859,313) during fiscal years 2003-2008. EPD did not file any tax returns for fiscal years 2009-2011.

22. EPD's summary of schedules filed in the bankruptcy case states that EPD has $32,278,078 in assets. The schedules state that EPD owns no real property and that the company's only assets consist of unsecured promissory notes from Jerrold Pressman in the amount of $24.268 million, Broadway Entertainment Marketing, Inc. in the amount of $4.413 million, S.C. Club L.P. in the amount of $4.285 million and Orland McCarthy in the amount of $312,000. Jerrold Pressman is a consolidated debtor in this bankruptcy case, is in his seventies, and is unemployed. Pressman's ownership interests in the companies are now property of the Estate. The Trustee has obtained a $5 million stipulated non-dischargeable judgment against Pressman. Broadway Entertainment Marketing, Inc. and S.C. Club, L.P. are defunct entities which appear to have no remaining assets.

23. The claims register in the EPD bankruptcy case reflects over $173 million in claims filed in the EPD bankruptcy case.

## EPD OPERATED AS A PONZI SCHEME SINCE 2003

24. The Trustee is informed and believes and based thereon alleges that EPD operated as a Ponzi scheme since its formation as a California limited liability company. Between 2003 and mid-2009, EPD funded repayment, interest and other obligations to Creditors by using additional funds transferred by existing Creditors to EPD, and by using funds from new Creditors which transferred funds to EPD. EPD also used the operating cash flow and/or lines of

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc Main Document Page 8 of 28

credit of other businesses partially owned and/or controlled by Pressman when such cash flow and/or lines of credit were available. The Trustee is informed and believes and based thereon alleges that if new monies did not continue to flow into EPD from new and existing Creditors, EPD would not have been able to continue to operate.

25. The Trustee is informed and believes and based thereon alleges that beginning at latest in mid-2009, EPD was unable to pay its obligations to Creditors because the companies which Pressman partially owned and/or controlled did not have sufficient operating cash flow and/or available lines of credit that Pressman could obtain and direct to EPD, and because EPD was no longer receiving an influx of new monies from Creditors which was previously used to pay obligations to other Creditors. In mid-2009, EPD stopped making payments to the Creditors, save and except to certain favored creditors.

26. There are, at all times mentioned herein with respect to transfers from the Debtors to Defendants, creditors holding unsecured claims that are allowable under 11 U.S.C. § 502.

**KIRKLAND AND THE BRIGHT CONSCIENCE TRUST**

27. The Trustee is informed and believes and based thereon alleges that EPD was used by Pressman to funnel funds from Creditors to various other entities partially owned and/or controlled by Pressman, including but not limited to entities which eventually became known as Broadway Entertainment Marketing, Inc. ("Broadway Entertainment"), Plush Lounge Las Vegas, LLC ("Plush Lounge"), S.C. Club, Inc. and S.C. Club, L.P. Pressman's son, Keith Pressman, (collectively with Jerrold Pressman, the "Pressmans") a licensed attorney, was also involved in Pressman's business enterprises.

28. The Trustee is informed and believes and based thereon alleges that KIRKLAND went to UCLA School of Law with Keith Pressman and was his roommate, graduating in 1990. Thereafter, KIRKLAND became outside counsel for the Pressmans, and their various business entities, which relationships continued (a) while KIRKLAND was at a number of law firms, and (b) through the filing of the involuntary bankruptcy against EPD in December 2010, at which time KIRKLAND was a partner at the then law firm of Luce Forward Hamilton & Scripps LLP ("Luce Forward"). During this period of time, KIRKLAND, individually and through his

various law firms, represented the Pressmans, EPD, Broadway Entertainment, Plush Lounge, S.C. Club, Inc. and S.C. Club, L.P., among other Pressman related business entities and operations. During the period from 2003 through the filing of the Debtors' bankruptcy case, KIRKLAND was a lawyer practicing in the areas of securities law, corporate transactions and business litigation.

29. The Trustee is informed and believes and based thereon alleges that in addition to serving as outside counsel for EPD and for the Pressmans, KIRKLAND invested and/or lent an amount in excess of $150,000 of his personal funds to EPD (KIRKLAND's "EPD Interests"). In or about September 2009, after EPD had ceased making payments to most Creditors, KIRKLAND assigned his EPD Interests to the BC TRUST, his family trust, and/or to POSHOW ANN KIKRLAND as the Trustee of the BC TRUST, through a "Notice of Assignment." The Notice of Assignment states in pertinent part that "[n]otice is hereby given that all rights of John C. Kirkland under all such Loan Documents have been sold transferred and assigned to the Bright Conscience Trust Dated September 9, 2009." POSHOW ANN KIRKLAND, as Trustee of the BC TRUST, took the assignment subject to all claims and defenses of KIRKLAND. POSHOW ANN KIRKLAND, as Trustee of the BC TRUST, did not take the assignment in good faith, or for adequate consideration. On or about September 11, 2009, the BC TRUST filed and/or recorded a UCC-1 financing statement as to all assets of the Debtors. On or about May 5, 2010, the BC TRUST filed and/or recorded an amendment to the UCC-1 financing statement, which amendment stated that "[t]his amendment is to clarify and confirm that the prior grant of security did not include the stock of North Hills Industrial Park, Inc., a California S-Corporation."

30. The Trustee is informed and believes and based thereon alleges that KIRKLAND's pre-petition actions in regard to EPD, and as outside counsel for the Pressmans and EPD, include but are not limited to:

a. Having concurrent knowledge of the Debtors' insolvency, continuous net losses and/or Ponzi scheme since 2005 at latest while continuing to serve

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc Main Document Page 10 of 28

as outside counsel for the Pressmans and EPD and continuing to represent the Debtors in litigation;

b. In draft letters prepared by KIRKLAND, from KIRKLAND to the Franchise Tax Board in 2005, KIRKLAND had knowledge of EPD and Pressman's insolvency, net losses and need to obtain new investments or loans to continue operating. In the letters KIRKLAND stated:

i. "EPD has a total liabilities [sic] of over $47 million, including over $36 million in promissory notes for funds received from third-parties, most of which are personally guaranteed by Mr. Pressman…. EPD estimates a $3.4 million loss for last year. The company received approximately $9 million in 2004, mostly through third-party loans, including approximately $1.5 million from IRA accounts. Because of the company's high interest expense, over the past three years of economic downturn, it has been unable to earn income in excess of outgoing funds, thereby creating a large negative cash flow. Currently, the interest requirement exceeds $3 million per year and has averaged approximately $1.5 million per year in demand principal repayments, requiring at least $4.5 million of new loans, investment or income per year just to break even cash flow wise."

ii. "…Mr. Pressman has borrowed substantially and is heavily in debt. The enclosed sampling of promissory notes give an indication of the depth of his financial distress. His borrowings over the years through EPD Investment Co. (originally operated by Mr. Pressman as a sole proprietorship for thirty years, and now operated as an LLC managed and controlled by his son, attorney Keith Pressman, on behalf of investors) are now tens of millions of dollars…"

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc Main Document Page 11 of 28

c. In July 2009, KIRKLAND entered into a "Funding Agreement" with EPD and Pressman stating, among other things, that "EPD has advised Investor that, due to temporary cash flow constraints, EPD has an immediate need for $100,000…" and whereby KIRKLAND agreed to provide $100,000 to EPD. KIRKLAND affirmed his knowledge of EPD's financial condition as reflected in the "Funding Agreement."

d. Orchestrating between October 17, 2008 and December 17, 2009, to have the Pressmans, through EPD, arrange to make monthly payments to Union Bank of California on behalf of KIRKLAND and the BC TRUST to satisfy KIRKLAND's mortgage loan payment obligations to Union Bank of California, all while KIRKLAND was aware of the Debtors' insolvency, continuous net losses and/or Ponzi scheme;

e. During 2009 and 2010, Luce Forward and KIRKLAND defended suits on behalf of EPD and Pressman brought by other creditors of EPD in state and federal court. The defense of suits continued after KIRKLAND's family trust, the BC TRUST, filed and/or recorded its UCC-1 financing statement. KIRKLAND defended suits brought by creditors of EPD who brought the suits in regard to EPD's non-payment of amounts owed to them. KIRKLAND not only defended these suits without a good faith basis to do so since EPD did owe the amounts to creditors, but did so while the BC TRUST had obtained a purported secured lien encumbering EPD's assets, while KIRKLAND was receiving the benefit of payments by EPD to his lender. KIRKLAND orchestrated the defense of the suits using the work product of Katherine Werner aka Katherine Jean Sabich-Robison, an EPD employee and then-suspended attorney who was disbarred in 2010 based on a felony criminal conviction in 2006 for grand theft by fiduciary, grand theft, forgery and grand theft by fiduciary from

elder). KIRKLAND was aware of Werner's suspension and legal issues at the time that he instructed her to prepare pleadings and oversaw her work.

f. At the direction and with the consent of Pressman, forming a holding company, HMB Holdings, LLC ("HMB Holdings"), whose members were 13 Creditors of EPD, at least some of which had threatened litigation and an involuntary bankruptcy proceeding against EPD and/or Pressman, for the purpose of filing and recording a lien against the assets of EPD and Pressman and in favor of HMB Holdings all while knowing that other creditors of EPD and Pressman remained unsecured and knowing that such recording was a fraudulent conveyance in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq.*, while other creditors of EPD and Pressman remained unsecured;

g. KIRKLAND formed HMB, the entity comprised of EPD Creditors that had threatened lawsuits against EPD and Pressman and had threatened to file an involuntary bankruptcy against EPD. On September 14, 2009, HMB filed its Limited Liability Company Certificate of Formation with the Delaware Secretary of State, Division of Corporations. KIRKLAND's electronic signature is on the Certificate of Formation as "Authorized Person." On September 15, 2009, a UCC-1 financing statement was recorded in favor of HMB and purportedly encumbering all of the Debtor and Pressman's assets.

h. Causing the recordation and filing of a UCC-1 financing statement in favor of the BC TRUST, against the assets of EPD and Pressman, at the direction and with the consent of Pressman, knowing that such recording was a fraudulent conveyance in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq.*, while other creditors of EPD and Pressman remained unsecured.

i. Knowing of EPD's financial condition and business practices, yet representing EPD in the involuntary bankruptcy proceeding and by representing EPD in state and federal court cases brought by other Creditors, and through those representations, knowing and willfully filing false and misleading pleadings and declarations in those actions contesting that EPD had amounts outstanding to Creditors in violation of Rule 11 of the Federal Rules of Civil Procedure. At the same time, KIRKLAND was accepting payments from EPD, and permitted the filing and recordation of UCC-1 financing statements in favor of the BC TRUST and HMB Holdings;

j. Causing to have prepared and recorded a UCC-1 financing statement on behalf of HMB Holdings purportedly against all of the assets of EPD and Jerrold Pressman in the sum of $11.25 million.

k. Causing to have recorded a UCC-1 financing statement purportedly against the assets of EPD and Pressman in the amount of approximately $2 million in September 2009, in favor of the BC TRUST.

l. Demanding and receiving broad release and indemnification agreements from EPD in favor of KIRKLAND as to any and claims, including but not limited to claims for malpractice, breach of fiduciary duty, negligent misrepresentation, intentional misrepresentation and fraud, notwithstanding that EPD received no consideration, or wholly inadequate consideration, for entering into the release and indemnification agreements.

m. Representing Plush Lounge, an entity that received significant transfers from EPD, and owed those sums to EPD, as well as being an entity that was a judgment debtor to EPD, in litigation that severally depleted the assets of Plush Lounge at same time KIRKLAND was the outside general

counsel for both EPD and Plush Lounge and had represented both since their formation.

n. Knowingly accepting payments from Plush Lounge and/or related companies that owed sums to EPD for legal services notwithstanding his knowledge that Plush Lounge owed EPD in excess of $3 million from a judgment on a promissory note.

o. Failing to properly advise EPD as to its duties and obligations to collect on its promissory notes and other assets due to KIRKLAND's conflict of interest in his representation of EPD, Pressman, Plush Lounge and the various entities partially owned and/or controlled by Pressman.

p. Starting in 2010, forming and serving as the agent for service of process for EPD Investment Leasing Co., LLC, an entity owned by Keith Pressman, and which orchestrated a $40,000 transfer from EPD to EPD Investment Leasing Co., LLC, which was used to make payments to certain preferred Creditors of EPD. The transfer from EPD to EPD Investment Leasing Co., LLC was made after the Creditors of EPD had stopped receiving any payments from EPD, and was made in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq*.

31. KIRKLAND and his then current law firm, Luce Forward, represented EPD in the EPD bankruptcy case from the filing of the involuntary bankruptcy petition against EPD in December 2010, until the Court entered an Order on October 31, 2011 permitting KIRKLAND to withdraw as counsel for EPD.

32. During the period that KIRKLAND represented EPD in the bankruptcy case, KIRKLAND filed pleadings and declarations, among other things, opposing the involuntary bankruptcy petition, and then seeking to convert the case to Chapter 11. The pleadings and declarations filed by KIRKLAND were filed under a different attorney's ECF number and account in violation of local bankruptcy rules, and the contents of the pleadings and declarations

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc Main Document Page 15 of 28

were false and misleading, which KIRKLAND knew to be false and misleading and violated KIRKLAND's duties and obligations as counsel for EPD, and Rule 11 of the Federal Rules of Civil Procedure. Among the false and misleading assertions KIRKLAND either made or caused to be made in the pleadings and declarations were that:

a. EPD was a going concern business.

b. EPD was paying its debts as they became due.

c. Entry of an Order for Relief would cause irreparable damage to EPD as a going concern business.

d. Entry of an Order for Relief would cause EPD to cease its ability to operate as a going concern.

e. Entry of an Order for Relief would result in the destruction of EPD's business.

f. In referring to the declaration that KIRKLAND signed on behalf of the Debtors, that harm would be caused to EPD if an Order for Relief was entered in the bankruptcy case, KIRKLAND has since testified that he was referring to a generic debtor, rather than EPD.

g. There was nothing unusual or improper in regard to the liens recorded and filed by BC TRUST against the assets of EPD and Pressman.

33. During testimony at his Rule 2004 examination, KIRKLAND claimed that the statements made in pleadings and declarations filed by him were "legal argument" rather than facts or statements. KIRKLAND knew the pleadings and declarations to be false and misleading and knew the Court would rely upon in making its determinations regarding the viability of EPD.

34. KIRKLAND also electronically filed (under another attorney's ECF number, in violation of local rules of court) two substitutions of attorney replacing KIRKLAND and Luce Forward as counsel for EPD, with Matthew B. Gruenberg of The Law Offices of Matthew B. Gruenberg in the bankruptcy case. The substitutions contained Matthew Gruenberg's electronic /s/ signature, notwithstanding that Gruenberg never reviewed the substitutions, never authorized KIRKLAND or any other attorney at Luce Forward to place his electronic signatures on the

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc Main Document Page 16 of 28

substitutions and was not even admitted to practice law in the United States District Court or United States Bankruptcy Court for the Central District of California.

35. KIRKLAND's filing of the pleadings and declarations constituted affirmations that the pleadings and declarations were filed in good faith. The pleadings and declarations filed by KIRKLAND in the bankruptcy case violated Rule 11, among other rules and statutes.

36. The Trustee is informed and believes and based thereon alleges that KIRKLAND's actions were taken to intentionally conceal the true financial condition of EPD and actions by EPD and Pressman, and to protect KIRKLAND and the BC TRUST, all in violation of Rule 11 of the Federal Rules of Civil Procedure.

37. The Trustee is informed and believes and based thereon alleges that KIRKLAND contested the involuntary bankruptcy against EPD without a good faith basis to do so, and by attempting to convert the bankruptcy case to Chapter 11 without a good faith basis to do so; and further by failing to turn over the books, records and property of EPD until after the Court entered an Order compelling EPD to do so, and by advising EPD to not file statements, schedules and a creditors' matrix, or to turn over books, records and property of EPD ; and further advising EPD and Pressman not to cooperate with the Trustee, notwithstanding their obligation to do so. KIRKLAND also filed pleadings and declarations that were knowingly false and misleading in violation of Rule 11 of the Federal Rules of Civil Procedure.

**<u>FIRST CLAIM FOR RELIEF</u>**

**DISALLOWANCE OF PROOFS OF CLAIM, OR, IN THE ALTERNATIVE, EQUITABLE SUBORDINATION OF CLAIMS AND PROOFS OF CLAIM AGAINST THE BC TRUST AND KIRKLAND**

38. The Trustee realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

39. On or about December 12, 2011, the BC TRUST filed three proofs of claim in the bankruptcy case (Claim Nos. 171, 235 and 236), all in the amount of $2.672 million. Claim Nos. 171, 235 and 236 state that EPD used the identifier number 0710 for the BC TRUST. Claim



785815

1507

Nos. 171, 235 and 236 also seek interest at the rate of 12% per annum. On or about February 15, 2013, the BC TRUST filed another proof of claim (Claim No. 13) in the Jerrold S. Pressman bankruptcy case (Case No. 2:12-bk-13760-ER) in the amount of $3.529 million. Claim No. 13 also seeks interest at the rate of 24% per annum. The proofs of claim filed by the BC TRUST, Claim Nos. 171, 235 and 236, and Claim No. 13, are collectively referred to as the "Proofs of Claim". The Proofs of Claim state that the claims of the BC TRUST are secured claims. The Proofs of Claim appear to be executed by POSHOW ANN KIRKLAND as TRUSTEE of the BC TRUST.

40. THE BC TRUST is the assignee of KIRKLAND's EPD INTERESTS and the BC TRUST's Proofs of Claim are based on an assignment of KIRKLAND's EPD INTERESTS. THE BC TRUST did not separately invest or loan funds to the Debtors. The BC TRUST's rights in regard to any proceeds of the Debtors is based on the assignment of interests from KIRKLAND to the BC TRUST, and the BC TRUST's attempt to obtain security for that assignment, all orchestrated by KIRKLAND while he was outside counsel for Pressman and EPD.

41. At all times since the formation of EPD as a limited liability company, KIRKLAND has served as outside counsel for EPD, Pressman and certain of Pressman's other business entities, and has been a fiduciary and insider of the Debtors. KIRKLAND was an insider of the Debtors at all times as outside counsel, and had specific knowledge of the Debtors' financial condition, as set forth herein above.

42. KIRKLAND, and the BC TRUST as KIRKLAND's assignee, engaged in inequitable conduct, as set forth in paragraphs 1 through 37 herein.

43. KIRKLAND's, and the BC TRUST as KIRKLAND's assignee, inequitable conduct has resulted in an unfair advantage to KIRKLAND and the BC TRUST, and has resulted in an injury to creditors of the Debtors in that KIRKLAND placed his interests and the interests of his family trust, the BC TRUST, above his fiduciary duties to the Debtors and their creditors.

44. KIRKLAND and the BC TRUST's inequitable conduct has also resulted in injury to creditors in that KIRKLAND engaged in breaches of fiduciary duty to EPD while serving as

outside counsel to the Debtors, as set forth in paragraphs 1 through 43 herein, both pre-petition and post-petition, all while knowing of the Debtors' financial condition, including but not limited to: (a) placing his interests and his family trust's interests above EPD and its creditors by, among other things, filing and/or recording a UCC-1 financing statement in favor of the BC TRUST and against the assets of the Debtors; (b) representing companies that were judgment debtors to EPD and obtaining funds for that representation while knowing that amounts were owed to EPD; (c) defending lawsuits brought by EPD creditors without a good faith basis to do so while failing to counsel the preservation of the Debtors' assets for the benefit of its creditors; and (d) filing false and misleading pleadings and declarations with the Bankruptcy Court in an attempt to maintain control over EPD for the benefit of EPD's principals, KIRKLAND and the BC TRUST, and to protect the BC's TRUSTS purported lien for the benefit of KIRKLAND, POSHOW ANN KIRKLAND and their children. In addition to the conduct breaching KIRKLAND's fiduciary duties, the conduct also constituted a fraud upon the creditors of the Debtors and upon the Court.

45. Equitable subordination of the BC TRUST and KIRKLAND's claims, including but not limited to their purported secured claims against the assets of the Debtors, is consistent with the provisions of the Bankruptcy Code.

46. Based on KIRKLAND and the BC TRUST's conduct, as set forth in paragraphs 1 through 45, the Proofs of Claim, and any other proofs of claim filed by the BC TRUST or KIRKLAND, and any other claims of the BC TRUST and KIRKLAND are appropriately disallowed.

47. In the alternative to disallowance, based on KIRKLAND and the BC TRUST's conduct, as set forth in paragraphs 1 through 46, the Proofs of Claim, and any other proofs of claim filed by the BC TRUST or KIRKLAND , and any other claims of the BC TRUST and KIRKLAND, are appropriately equitably subordinated to all allowed unsecured claims, pursuant to, among other things, 11 U.S.C. § 510(c) and applicable case law.

///

///

///

**<u>SECOND CLAIM FOR RELIEF</u>**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (ACTUAL INTENT)**

**[11 U.S.C. § 544 and California Civil Code §§ 3439.04(a) and 3439.07]**

48. The Trustee repeats and realleges the allegations in above paragraphs 1 through 37, inclusive, of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

49. The Trustee is informed and believes and thereon alleges that during the seven-year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the liens in favor of the BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of the BC TRUST and against the assets of EPD and Pressman), and the property listed in **Exhibit "A"** attached hereto and incorporated herein by this reference (the "7-Year Transfers") to Union Bank for the benefit of KIRKLAND and the BC TRUST on the dates and in the amounts set forth therein with the actual intent to delay, hinder or defraud the Debtors' creditors.

50. By reason of the foregoing, the 7-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 544 and Civil Code § 3439.04(a) and 3439.07.

**<u>THIRD CLAIM FOR RELIEF</u>**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (ACTUAL INTENT)**

**[11 U.S.C. § 548(a)(1)(A)]**

51. The Trustee repeats and realleges the allegations in above paragraphs 1 through 37, inclusive, of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

52. The Trustee is informed and believes and thereon alleges that during the two year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the liens in favor of the BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of the BC TRUST and against the assets of EPD and Jerrold Pressman), and the property listed in

**Exhibit "B"** attached hereto and incorporated herein by this reference (the "2-Year Transfers") to KIRKLAND and the BC TRUST on the dates and in the amounts set forth therein with the actual intent to delay, hinder or defraud the Debtors' creditors.

53. By reason of the foregoing, the 2-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

**FOURTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. § 544 and California Civil Code §§ 3439.04(b) or 3439.05 and 3439.07]**

54. The Trustee realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

55. The Trustee is informed and believes and thereon alleges that during the four-year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the lien in favor of BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of BC TRUST and against the assets of EPD and Pressman), and the property listed in **Exhibit "C"** attached hereto and incorporated herein by this reference (the "4-Year Transfers"). Each of the 4-Year Transfers (*see* **Exhibit "C"**) was made (a) without the Debtors receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtors were insolvent or as a result of which the Debtors became insolvent; or (ii) at a time that the Debtors were engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining was an unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

56. By virtue of the foregoing, the 4-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 544 and Civil Code §§ 3439.04(b) or 3439.05 and 3439.07.

///

///

**FIFTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. § 548(a)(1)(B)]**

57. The Trustee realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

58. The Trustee is informed and believes and thereon alleges that each of the 2-Year Transfers (*see* Exhibit "B") and each lien was made (a) without the Debtors receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtors were insolvent or as a result of which the Debtors became insolvent; or (ii), at a time that the Debtors were engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining was an unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

59. By virtue of the foregoing, the 2-Year Transfers and the liens are avoidable transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**SIXTH CLAIM FOR RELIEF**

**RECOVERY OF AVOIDED TRANSFERS AGAINST DEFENDANTS**

**[11 U.S.C. §§ 544, 547(b), 550(a)(1) and (2) and/or California Civil Code § 3439.07]**

60. The Trustee realleges each and every allegation contained in paragraphs 1 through 59 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

61. By reason of the foregoing, the Trustee is entitled to recover for the benefit of the Estate the 7-Year Transfers, the 2-Year transfers, and the 4-Year Transfers and the liens pursuant to 11 U.S.C. §§ 544, 548, 550(a)(1) and/or Civil Code § 3439.07.

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc Main Document Page 22 of 28

**PRAYER FOR RELIEF**

WHEREFORE, the Trustee prays for judgment against Defendants as follows:

**FIRST CLAIM FOR RELIEF**

1. For an Order disallowing the Proofs of Claim, and any further proofs of claim, amended proofs of claim or other claims filed by the BC TRUST or KIRKLAND, as secured claims.

2. For an Order disallowing the Proofs of Claim, and any further proofs of claim or amended proofs of claim filed by the BC TRUST or KIRKLAND, in their entirety.

3. In the alternative, equitably subordinating the Proofs of Claim, and any further proofs of claim, amended proofs of claim or other claims filed by the BC TRUST or KIRKLAND, to all allowed unsecured claims.

**SECOND CLAIM FOR RELIEF**

4. That the 7-Year Transfers and the liens be avoided for the benefit of the estate.

**THIRD CLAIM FOR RELIEF**

5. That the 2-Year Transfers and the liens be avoided for the benefit of the estate.

**FOURTH CLAIM FOR RELIEF**

6. That the 4-Year Transfers and the liens be avoided for the benefit of the estate.

**FIFTH CLAIM FOR RELIEF**

7. That the 2-Year Transfers and the liens be avoided for the benefit of the estate.

**SIXTH CLAIM FOR RELIEF**

8. For relief as follows:

- to recover the liens and/or the value of the 2-Year Transfers from Defendants, for the benefit of the estate, plus interest at the maximum legal rate from the date of the 2-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein;

9. On the sixth claim for relief, for relief as follows:

- to recover the liens and/or value of the 7-Year Transfers from Defendants, for the benefit of the Estate, plus interest at the maximum legal rate from the date of the 7-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein;

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc Main Document Page 23 of 28

- to recover the liens and/or value of the 4-Year Transfers from Defendants, for the benefit of the Estate, plus interest at the maximum legal rate from the date of the 4-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein; and,

10. On all claims for relief; that the Trustee be awarded fees and costs incurred in connection with this action;

11. For such other and further relief as this Court deems just and proper.

DATED: May 24, 2013

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee

## 7 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 10/05/08 | 10/17/08 | 14001 | $ 7,437.50 |
| 11/05/08 | 11/17/08 | 14226 | 7,437.50 |
| 12/05/08 | 12/17/08 | 14531 | 7,437.50 |
| 01/05/09 | 01/20/09 | 14771 | 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | **Total** | | **$ 104,852.82** |