## 2 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 01/05/09 | 01/20/09 | 14771 | $ 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | **Total** | | **$82,540.32** |
| | | | |

**EXHIBIT "B"**

Case 2:12-ap-02424-ER Doc 45 Filed 05/24/13 Entered 05/24/13 14:43:08 Desc
Main Document Page 26 of 28

## 4 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 10/05/08 | 10/17/08 | 14001 | $ 7,437.50 |
| 11/05/08 | 11/17/08 | 14226 | 7,437.50 |
| 12/05/08 | 12/17/08 | 14531 | 7,437.50 |
| 01/05/09 | 01/20/09 | 14771 | 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | **Total** | | **$ 104,852.82** |

**EXHIBIT "C"**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing documents entitled: **SECOND AMENDED COMPLAINT AGAINST: (1) JOHN C. KIRKLAND; AND (2) POSHOW ANN KIRKLAND. INDIVIDUALLY AND AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 FOR: 1. Disallowance of Proofs of Claim, or in the alternative, Equitable Subordination of Proofs of Claim; 2. Avoidance of Fraudulent Transfers (Actual Intent); 3. Avoidance of Fraudulent Transfers (Actual Intent); 4. Avoidance of Fraudulent Transfers (Constructive Fraud); 5. Avoidance of Fraudulent Transfers (Constructive Fraud); 6. Recovery of Avoided Transfers** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 24, 2013**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael I Gottfried mgottfried@lgbfirm.com, ncereseto@lgbfirm.com;rmartin-patterson@lgbfirm.com
Ashley M McDow amcdow@mbnlawyers.com, aacosta@mbnlawyers.com;jajani@mbnlawyers.com
Jason M Rund (TR) trustee@srlawyers.com, jrund@ecf.epiqsystems.com
Scott C Timpe stimpe@mbnlawyers.com, scott.timpe@gmail.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On **May 24, 2013**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed:

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 24, 2013**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed:

**BY OVERNIGHT DELIVERY**

Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg.
255 East Temple Street, Suite 1560
Los Angeles, CA 90012-3332

**BY EMAIL**

Ashley M. McDow – amcdow@mbnlawyers.com
Aleksandra Zimonjic – azimonjic@lgbfirm.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| May 24, 2013 | MELA ZEPEDA | /s/ Mela Zepeda |
| *Date* | *Printed Name* | *Signature* |

**SERVED BY UNITED STATES MAIL**

John C. Kirkland
Ironridge Global Partners, LLC
881 Alma Real Drive, Suite 305
Pacific Palisades, CA 90272

John C. Kirkland, as Trustee for the
Bright Conscience Trust
Ironridge Global Partners, LLC
881 Alma Real Drive, Suite 305
Pacific Palisades, CA 90272

Poshow Ann Kirkland, as Trustee for the
Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades CA 90272

John C. Kirkland
754 Swarthmore Avenue
Pacific Palisades, CA 90272

John C. Kirkland, as Trustee for the
Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades CA 90272

Attorneys for John C. Kirkland
Aleksandra Zimonjic, Esq.
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067

# EXHIBIT XX

LARRY W. GABRIEL – Bar No. 68329
STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
MICHAEL W. DAVIS – Bar No. 274126
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@brutzkusgubner.com
cweber@brutzkusgubner.com
mdavis@brutzkusgubner.com

Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,

Consolidated Debtors.

EIN No. xxx-0994

---

JASON M. RUND, CHAPTER 7 TRUSTEE,

Plaintiff,

v.

JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND, individually and as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,

Defendants.

Case No. 2:10-bk-62208-ER

Chapter 7

Adv. No. 2:12-ap-02424-ER

**THIRD AMENDED COMPLAINT AGAINST: (1) JOHN C. KIRKLAND; AND (2) POSHOW ANN KIRKLAND, INDIVIDUALLY AND AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 FOR:**

1. **Disallowance of Proofs of Claim, or in the alternative, Equitable Subordination of Proofs of Claim**
2. **Avoidance of Fraudulent Transfers (Actual Intent)**
3. **Avoidance of Fraudulent Transfers (Actual Intent)**
4. **Avoidance of Fraudulent Transfers (Constructive Fraud)**
5. **Avoidance of Fraudulent Transfers (Constructive Fraud)**
6. **Recovery of Avoided Transfers**

**Pretrial Conference:**
**Date:** February 14, 2017
**Time:** 11:00 a.m.
**Place:** Courtroom 1568
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

Plaintiff, JASON M. RUND, the duly appointed and acting Chapter 7 Trustee of the consolidated bankruptcy estate of debtors EPD Investment Company, LLC ("EPD") and Jerrold S. Pressman ("Pressman") (EPD and Pressman are collectively referred to herein as the "Debtors"), for claims of relief against defendants JOHN C. KIRKLAND, an individual, and against POSHOW ANN KIRKLAND, individually and as Trustee of the Bright Conscience Trust Dated September 9, 2009 (the "BC TRUST"), alleges as follows:

**CONSENT TO ENTRY OF FINAL ORDERS**

**AND JUDGMENT BY THE BANKRUPTCY COURT**

1. The Trustee hereby alleges that the claims for relief asserted in this Complaint constitute core proceedings pursuant to 28 U.S.C. § 157(b). To the extent that certain of the claims are determined to be non-core proceedings pursuant to case law, the Bankruptcy Court may enter proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c). The Trustee consents to the entry of final orders and judgment by the Bankruptcy Court as to all claims for relief contained in this Complaint.

**THE PARTIES**

2. Plaintiff, JASON M. RUND, is the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the consolidated bankruptcy estate of the Debtors. The Trustee was appointed after the Order for Relief was entered and each of the allegations contained herein is based on the Trustee's information and belief. The Trustee has standing to bring this adversary proceeding on behalf of the Estate.

3. Defendant JOHN C. KIRKLAND ("KIRKLAND") is a resident of the State of California, and is an attorney admitted to practice law in the State of California. At all times material herein, KIRKLAND transacted business in the Central District of California, including but not limited to transactions with EPD, and/or at all material times herein was and is subject to the jurisdiction of this Court.

4. Defendant POSHOW ANN KIRKLAND ("POSHOW KIRKLAND") is a resident of California, and is the wife of defendant KIRKLAND. POSHOW KIRKLAND is Trustee of THE BC TRUST and is sued herein individually and in in such capacity as Trustee of the BC TRUST. At

all times material herein, THE BC TRUST transacted business in the Central District of California, including but not limited to transactions with EPD, and/or at all material times herein was and is subject to the jurisdiction of this Court. As alleged herein, the BC TRUST is the assignee of certain interests of KIRKLAND in relation to the Debtors. POSHOW KIRKLAND as an individual received the benefit of transfers made by EPD, including but not limited to transfers from EPD to Union Bank to pay the mortgage on the house in which KIRKLAND and POSHOW KIRKLAND resided.

**JURISDICTION AND VENUE**

5. This action is a civil proceeding related to a case under Title 11 of the United States Code.

6. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and General Order No. 242-A of the District Court for the Central District of California, as this is a core proceeding under 28 U.S.C. § 157(b)(1), (2)(A), (B), (C), (H) and (K). Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a), in that the instant proceeding is related to the Debtors' pending case under Title 11, Chapter 7 of the United States Code. The Trustee consents to final orders or judgment by the Bankruptcy Court.

7. Venue is proper in this Court, including venue pursuant to 28 U.S.C. §§1408 and 1409, because, among other things, this is the district in which the bankruptcy action is pending. Pursuant to 28 U.S.C. § 1391, venue is also appropriate as Defendants are authorized to and regularly carry out substantial business in this district and the acts and conduct complained of herein took place within this district. This Court has personal jurisdiction over the Defendants.

**THE BANKRUPTCY CASE**

8. The EPD bankruptcy case was commenced by the filing of an involuntary petition against EPD on December 7, 2010 (the "Petition Date"). The Court entered an Order for Relief on February 9, 2011 (the "Order for Relief"). The Trustee was appointed on or about February 12, 2011.

9. On February 1, 2012, Pressman filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

10. On April 27, 2012, the Trustee filed a motion for substantive consolidation of the EPD bankruptcy estate and the Pressman bankruptcy estate (the "Substantive Consolidation Motion"). The hearing on the Substantive Consolidation Motion took place on May 23, 2012, and the Court entered an Order granting the Substantive Consolidation Motion on June 4, 2012.

11. Pursuant to the Order granting the Substantive Consolidation Motion, the Trustee is the Chapter 7 Trustee for the consolidated bankruptcy estate of the Debtors.

**STATEMENT OF FACTS RELEVANT TO ALL CLAIMS FOR RELIEF**

12. The Trustee is informed and believes and based thereon alleges that between the 1970s and June 27, 2003, "EPD Investment Co." was an unincorporated sole proprietorship run by Pressman. On June 27, 2003, EPD was formed as a California limited liability company in order to provide corporate protection and satisfy Pressman's goal of retirement. Upon EPD's formation in 2003, the EPD sole proprietorship's assets and liabilities were transferred from Pressman to EPD. The members and managers of EPD at all times were Pressman and his son, Keith Pressman.

13. The Trustee is informed and believes and based thereon alleges that Pressman used EPD to bring in funds from lenders, investors and others, which funds were used to pay amounts due to earlier lenders, creditors and investors and/or were transferred to various other business entities partially owned and/or controlled by Pressman to fund their business operations.

14. The Trustee is informed and believes and based thereon alleges that EPD generally obtained such funds from the individual investors/lenders/creditors (collectively, the "Creditors") generally in exchange for promissory notes or demand notes that were due on demand or within 30 days after demand and bore mostly double-digit interest rates annually. EPD would, in turn, loan or invest the funds to other companies in which Pressman held ownership interests. Although EPD would loan money to companies in which Pressman held ownership interests, EPD's books often reflected that the amounts were owed by Pressman to EPD, rather than directly from the companies to EPD, because Pressman was borrowing the money from EPD and then directing it as a loan to the companies in which he held ownership interests.

15. The Trustee is informed and believes and based thereon alleges that EPD did not maintain segregated investment accounts, deposit accounts, loan accounts or other separate

accounts for the Creditors. Any sums loaned, deposited, invested or transferred by Creditors in EPD were deposited into EPD's general operating account at City National Bank, comingled with EPD's operating funds and, according to Pressman, were "fungible" at that point. The sums deposited by the Creditors, and any interest accrued on the sums, were reflected solely in ledger entries and on statements prepared by EPD for Creditors. Notwithstanding interest and other obligations on amounts loaned by Creditors, EPD generally did not maintain sufficient sums in its bank accounts to pay the amounts outstanding to Creditors, or amounts due on demand to Creditors, without obtaining the funds from additional loans or investments from existing Creditors, loans or investments from new Creditors, or sums transferred from other entities partially owned and/or controlled by Pressman.

16. The Trustee is informed and believes and based thereon alleges that although many of EPD's Creditors were of the belief that EPD owned significant positions in real property in Tennessee, Mississippi and elsewhere, EPD did not own any real property as of the date of the involuntary bankruptcy petition against EPD. Instead, EPD had promissory notes from Pressman, which were secured by security agreements and UCC-1 financing statements as to all of Pressman's assets. Pressman in turn, had ownership interests in entities that owned and/or managed properties in Tennessee and Mississippi, one of which is now in a bankruptcy case of its own, and ownership interests in ice rinks and night clubs, most of which are now defunct with no remaining assets. EPD also had amounts owing to it from other entities partially owned and/or controlled by Pressman, including Broadway Entertainment and S.C. Club, L.P., both of which are now defunct. Some of these entities executed promissory notes and others did not. The promissory notes that did exist were not secured. The stock and other ownership interests held by Pressman were in closely held entities, and the stock and other ownership interests were not liquid or readily convertible to cash proceeds if necessary to satisfy the obligations owed to Creditors, or due on demand to Creditors.

17. The Trustee is informed and believes and based thereon alleges that EPD also engaged in providing tax advice to certain of the Creditors, and in particular, advising the Creditors in regard to the creation of leasing companies to create tax benefits for the Creditors. Creditors often

created corporations, limited liability companies or DBAs to purportedly own equipment, such as equipment at ice rinks or night clubs, but all of which equipment was already owned by entities in which Pressman had an ownership interest. The Creditors would then transfer sums to EPD purportedly to purchase equipment, and the Creditors would then enter into a leasing agreement with the ice rink or night club to lease the equipment in exchange for lease payments. The lease payments were guaranteed by EPD and would often be paid by EPD to the Creditors, even though EPD was not an owner of the subject equipment, or a lessor or a lessee of such equipment. At the end of the lease period, which was typically 4 years, the equipment would then purportedly revert in ownership back to the ice rink or night club. By the leasing transactions, the Creditors taking part in the transactions would obtain depreciation and other tax benefits. Most of the Creditors who took part in such leasing transactions never saw the equipment that they purportedly owned, and often never had a copy of a document evidencing ownership of a particular piece of equipment with a specific serial number.

18. The Trustee is informed and believes and based thereon alleges that EPD did not distribute offering circulars, prospectuses, audited financial statements or other formal investment information other than monthly or quarterly statements. EPD also did not file any documents with the California Department of Corporations, and did not obtain California Department of Corporations approvals, or exemptions. EPD also did not receive licenses, permits or approvals by the California Department of Corporations or the United States Securities & Exchange Commission.

**EPD WAS INSOLVENT SINCE 2003 AND HAS NEVER BEEN PROFITABLE**

19. The Trustee is informed and believes and based thereon alleges that between 2003 and the Order for Relief in this bankruptcy case, EPD never sought or obtained audited financial statements because Pressman did not believe that audited financial statements were necessary.

20. The Trustee is informed and believes and based thereon alleges that EPD was insolvent on a balance sheet basis from at least December 31, 2003, according to EPD's tax returns filed with the Internal Revenue Service. EPD's capital account/partners' equity (EPD's assets less liabilities) started at ($1,191,312) as of December 31, 2003, and by December 31, 2008 was ($21,521,893). The negative equity increased to ($38,209,405) as of the date of the involuntary

bankruptcy petition against EPD (based on EPD's Statements and Schedules showing $32,278,078 in assets and $70,487,483 in liabilities).

21. The Trustee is informed and believes and based thereon alleges that EPD's tax returns also show that since its formation in mid-2003, EPD has never been profitable. The tax returns show net losses as follows: ($1,356,192) for 2003 (between its formation and the end of 2003), ($3,223,395) for 2004, ($1,990,744) for 2005, ($5,131,269) for 2006, ($584,301) for 2007 and ($573,412) for 2008. According to its tax returns, EPD had a cumulative net loss of ($12,859,313) during fiscal years 2003-2008. EPD did not file any tax returns for fiscal years 2009-2011.

22. EPD's summary of schedules filed in the bankruptcy case states that EPD has $32,278,078 in assets. The schedules state that EPD owns no real property and that the company's only assets consist of unsecured promissory notes from Jerrold Pressman in the amount of $24.268 million, Broadway Entertainment Marketing, Inc. in the amount of $4.413 million, S.C. Club L.P. in the amount of $4.285 million and Orland McCarthy in the amount of $312,000. Jerrold Pressman is a consolidated debtor in this bankruptcy case, is in his seventies, and is unemployed. Pressman's ownership interests in the companies are now property of the Estate. The Trustee has obtained a $5 million stipulated non-dischargeable judgment against Pressman. Broadway Entertainment Marketing, Inc. and S.C. Club, L.P. are defunct entities which appear to have no remaining assets.

23. The claims register in the EPD bankruptcy case reflects over $173 million in claims filed in the EPD bankruptcy case.

**<u>EPD OPERATED AS A PONZI SCHEME SINCE 2003</u>**

24. The Trustee is informed and believes and based thereon alleges that EPD operated as a Ponzi scheme since its formation as a California limited liability company. Between 2003 and mid-2009, EPD funded repayment, interest and other obligations to Creditors by using additional funds transferred by existing Creditors to EPD, and by using funds from new Creditors which transferred funds to EPD. EPD also used the operating cash flow and/or lines of credit of other businesses partially owned and/or controlled by Pressman when such cash flow and/or lines of credit were available. The Trustee is informed and believes and based thereon alleges that if new monies

did not continue to flow into EPD from new and existing Creditors, EPD would not have been able to continue to operate.

25. The Trustee is informed and believes and based thereon alleges that beginning at latest in mid-2009, EPD was unable to pay its obligations to Creditors because the companies which Pressman partially owned and/or controlled did not have sufficient operating cash flow and/or available lines of credit that Pressman could obtain and direct to EPD, and because EPD was no longer receiving an influx of new monies from Creditors which was previously used to pay obligations to other Creditors. In mid-2009, EPD stopped making payments to the Creditors, save and except to certain favored creditors.

26. There are, at all times mentioned herein with respect to transfers from the Debtors to Defendants, creditors holding unsecured claims that are allowable under 11 U.S.C. § 502.

**KIRKLAND AND THE BRIGHT CONSCIENCE TRUST**

27. The Trustee is informed and believes and based thereon alleges that EPD was used by Pressman to funnel funds from Creditors to various other entities partially owned and/or controlled by Pressman, including but not limited to entities which eventually became known as Broadway Entertainment Marketing, Inc. ("Broadway Entertainment"), Plush Lounge Las Vegas, LLC ("Plush Lounge"), S.C. Club, Inc. and S.C. Club, L.P. Pressman's son, Keith Pressman, (collectively with Jerrold Pressman, the "Pressmans") a licensed attorney, was also involved in Pressman's business enterprises.

28. The Trustee is informed and believes and based thereon alleges that KIRKLAND went to UCLA School of Law with Keith Pressman and was his roommate, graduating in 1990. Thereafter, KIRKLAND became outside counsel for the Pressmans, and their various business entities, which relationships continued (a) while KIRKLAND was at a number of law firms, and (b) through the filing of the involuntary bankruptcy against EPD in December 2010, at which time KIRKLAND was a partner at the then law firm of Luce Forward Hamilton & Scripps LLP ("Luce Forward"). During this period of time, KIRKLAND, individually and through his various law firms, represented the Pressmans, EPD, Broadway Entertainment, Plush Lounge, S.C. Club, Inc. and S.C. Club, L.P., among other Pressman related business entities and operations. During the period

from 2003 through the filing of the Debtors' bankruptcy case, KIRKLAND was a lawyer practicing in the areas of securities law, corporate transactions and business litigation.

29. The Trustee is informed and believes and based thereon alleges that in addition to serving as outside counsel for EPD and for the Pressmans, KIRKLAND invested and/or lent an amount in excess of $150,000 of his personal funds to EPD (KIRKLAND's "EPD Interests"). In or about September 2009, after EPD had ceased making payments to most Creditors, KIRKLAND assigned his EPD Interests to the BC TRUST, his family trust, and/or to POSHOW ANN KIKRLAND as the Trustee of the BC TRUST, through a "Notice of Assignment." The Notice of Assignment states in pertinent part that "[n]otice is hereby given that all rights of John C. Kirkland under all such Loan Documents have been sold transferred and assigned to the Bright Conscience Trust Dated September 9, 2009." POSHOW ANN KIRKLAND, as Trustee of the BC TRUST, took the assignment subject to all claims and defenses of KIRKLAND. POSHOW ANN KIRKLAND, as Trustee of the BC TRUST, did not take the assignment in good faith, or for adequate consideration. On or about September 11, 2009, the BC TRUST filed and/or recorded a UCC-1 financing statement as to all assets of the Debtors. On or about May 5, 2010, the BC TRUST filed and/or recorded an amendment to the UCC-1 financing statement, which amendment stated that "[t]his amendment is to clarify and confirm that the prior grant of security did not include the stock of North Hills Industrial Park, Inc., a California S-Corporation."

30. The Trustee is informed and believes and based thereon alleges that KIRKLAND's pre-petition actions in regard to EPD, and as outside counsel for the Pressmans and EPD, include but are not limited to:

a. Having concurrent knowledge of the Debtors' insolvency, continuous net losses and/or Ponzi scheme since 2005 at latest while continuing to serve as outside counsel for the Pressmans and EPD and continuing to represent the Debtors in litigation;

b. In draft letters prepared by KIRKLAND, from KIRKLAND to the Franchise Tax Board in 2005, KIRKLAND had knowledge of EPD and

Pressman's insolvency, net losses and need to obtain new investments or loans to continue operating. In the letters KIRKLAND stated:

i. "EPD has a total liabilities [sic] of over $47 million, including over $36 million in promissory notes for funds received from third-parties, most of which are personally guaranteed by Mr. Pressman…. EPD estimates a $3.4 million loss for last year. The company received approximately $9 million in 2004, mostly through third-party loans, including approximately $1.5 million from IRA accounts. Because of the company's high interest expense, over the past three years of economic downturn, it has been unable to earn income in excess of outgoing funds, thereby creating a large negative cash flow. Currently, the interest requirement exceeds $3 million per year and has averaged approximately $1.5 million per year in demand principal repayments, requiring at least $4.5 million of new loans, investment or income per year just to break even cash flow wise."

ii. "…Mr. Pressman has borrowed substantially and is heavily in debt. The enclosed sampling of promissory notes give an indication of the depth of his financial distress. His borrowings over the years through EPD Investment Co. (originally operated by Mr. Pressman as a sole proprietorship for thirty years, and now operated as an LLC managed and controlled by his son, attorney Keith Pressman, on behalf of investors) are now tens of millions of dollars…"

c. In July 2009, KIRKLAND entered into a "Funding Agreement" with EPD and Pressman stating, among other things, that "EPD has advised Investor that, due to temporary cash flow constraints, EPD has an immediate need for $100,000…" and whereby KIRKLAND agreed to provide $100,000 to

EPD. KIRKLAND affirmed his knowledge of EPD's financial condition as reflected in the "Funding Agreement."

d. Orchestrating between October 17, 2008 and December 17, 2009, to have the Pressmans, through EPD, arrange to make monthly payments to Union Bank of California on behalf of, and for the benefit of, KIRKLAND, POSHOW KIRKLAND (Kirkland's wife) and the BC TRUST to satisfy KIRKLAND's mortgage loan payment obligations to Union Bank of California on the house resided in by KIRKLAND and POSHOW KIRKLAND, all while KIRKLAND was aware of the Debtors' insolvency, continuous net losses and/or Ponzi scheme;

e. During 2009 and 2010, Luce Forward and KIRKLAND defended suits on behalf of EPD and Pressman brought by other creditors of EPD in state and federal court. The defense of suits continued after KIRKLAND's family trust, the BC TRUST, filed and/or recorded its UCC-1 financing statement. KIRKLAND defended suits brought by creditors of EPD who brought the suits in regard to EPD's non-payment of amounts owed to them. KIRKLAND not only defended these suits without a good faith basis to do so since EPD did owe the amounts to creditors, but did so while the BC TRUST had obtained a purported secured lien encumbering EPD's assets, while KIRKLAND was receiving the benefit of payments by EPD to his lender. KIRKLAND orchestrated the defense of the suits using the work product of Katherine Werner aka Katherine Jean Sabich-Robison, an EPD employee and then-suspended attorney who was disbarred in 2010 based on a felony criminal conviction in 2006 for grand theft by fiduciary, grand theft, forgery and grand theft by fiduciary from elder). KIRKLAND was aware of Werner's suspension and legal issues at the time that he instructed her to prepare pleadings and oversaw her work.

f. At the direction and with the consent of Pressman, forming a holding company, HMB Holdings, LLC ("HMB Holdings"), whose members were 13 Creditors of EPD, at least some of which had threatened litigation and an involuntary bankruptcy proceeding against EPD and/or Pressman, for the purpose of filing and recording a lien against the assets of EPD and Pressman and in favor of HMB Holdings all while knowing that other creditors of EPD and Pressman remained unsecured and knowing that such recording was a fraudulent conveyance in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq.*, while other creditors of EPD and Pressman remained unsecured;

g. KIRKLAND formed HMB, the entity comprised of EPD Creditors that had threatened lawsuits against EPD and Pressman and had threatened to file an involuntary bankruptcy against EPD. On September 14, 2009, HMB filed its Limited Liability Company Certificate of Formation with the Delaware Secretary of State, Division of Corporations. KIRKLAND's electronic signature is on the Certificate of Formation as "Authorized Person." On September 15, 2009, a UCC-1 financing statement was recorded in favor of HMB and purportedly encumbering all of the Debtor and Pressman's assets.

h. Causing the recordation and filing of a UCC-1 financing statement in favor of the BC TRUST, against the assets of EPD and Pressman, at the direction and with the consent of Pressman, knowing that such recording was a fraudulent conveyance in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq.*, while other creditors of EPD and Pressman remained unsecured.

i. Knowing of EPD's financial condition and business practices, yet representing EPD in the involuntary bankruptcy proceeding and by representing EPD in state and federal court cases brought by other

Creditors, and through those representations, knowing and willfully filing false and misleading pleadings and declarations in those actions contesting that EPD had amounts outstanding to Creditors in violation of Rule 11 of the Federal Rules of Civil Procedure. At the same time, KIRKLAND was accepting payments from EPD, and permitted the filing and recordation of UCC-1 financing statements in favor of the BC TRUST and HMB Holdings;

j. Causing to have prepared and recorded a UCC-1 financing statement on behalf of HMB Holdings purportedly against all of the assets of EPD and Jerrold Pressman in the sum of $11.25 million.

k. Causing to have recorded a UCC-1 financing statement purportedly against the assets of EPD and Pressman in the amount of approximately $2 million in September 2009, in favor of the BC TRUST.

l. Demanding and receiving broad release and indemnification agreements from EPD in favor of KIRKLAND as to any and claims, including but not limited to claims for malpractice, breach of fiduciary duty, negligent misrepresentation, intentional misrepresentation and fraud, notwithstanding that EPD received no consideration, or wholly inadequate consideration, for entering into the release and indemnification agreements.

m. Representing Plush Lounge, an entity that received significant transfers from EPD, and owed those sums to EPD, as well as being an entity that was a judgment debtor to EPD, in litigation that severally depleted the assets of Plush Lounge at same time KIRKLAND was the outside general counsel for both EPD and Plush Lounge and had represented both since their formation.

n. Knowingly accepting payments from Plush Lounge and/or related companies that owed sums to EPD for legal services notwithstanding his

knowledge that Plush Lounge owed EPD in excess of $3 million from a judgment on a promissory note.

o. Failing to properly advise EPD as to its duties and obligations to collect on its promissory notes and other assets due to KIRKLAND's conflict of interest in his representation of EPD, Pressman, Plush Lounge and the various entities partially owned and/or controlled by Pressman.

p. Starting in 2010, forming and serving as the agent for service of process for EPD Investment Leasing Co., LLC, an entity owned by Keith Pressman, and which orchestrated a $40,000 transfer from EPD to EPD Investment Leasing Co., LLC, which was used to make payments to certain preferred Creditors of EPD. The transfer from EPD to EPD Investment Leasing Co., LLC was made after the Creditors of EPD had stopped receiving any payments from EPD, and was made in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq*.

31. KIRKLAND and his then current law firm, Luce Forward, represented EPD in the EPD bankruptcy case from the filing of the involuntary bankruptcy petition against EPD in December 2010, until the Court entered an Order on October 31, 2011 permitting KIRKLAND to withdraw as counsel for EPD.

32. During the period that KIRKLAND represented EPD in the bankruptcy case, KIRKLAND filed pleadings and declarations, among other things, opposing the involuntary bankruptcy petition, and then seeking to convert the case to Chapter 11. The pleadings and declarations filed by KIRKLAND were filed under a different attorney's ECF number and account in violation of local bankruptcy rules, and the contents of the pleadings and declarations were false and misleading, which KIRKLAND knew to be false and misleading and violated KIRKLAND's duties and obligations as counsel for EPD, and Rule 11 of the Federal Rules of Civil Procedure. Among the false and misleading assertions KIRKLAND either made or caused to be made in the pleadings and declarations were that:

a. EPD was a going concern business.

b. EPD was paying its debts as they became due.

c. Entry of an Order for Relief would cause irreparable damage to EPD as a going concern business.

d. Entry of an Order for Relief would cause EPD to cease its ability to operate as a going concern.

e. Entry of an Order for Relief would result in the destruction of EPD's business.

f. In referring to the declaration that KIRKLAND signed on behalf of the Debtors, that harm would be caused to EPD if an Order for Relief was entered in the bankruptcy case, KIRKLAND has since testified that he was referring to a generic debtor, rather than EPD.

g. There was nothing unusual or improper in regard to the liens recorded and filed by BC TRUST against the assets of EPD and Pressman.

33. During testimony at his Rule 2004 examination, KIRKLAND claimed that the statements made in pleadings and declarations filed by him were "legal argument" rather than facts or statements. KIRKLAND knew the pleadings and declarations to be false and misleading and knew the Court would rely upon in making its determinations regarding the viability of EPD.

34. KIRKLAND also electronically filed (under another attorney's ECF number, in violation of local rules of court) two substitutions of attorney replacing KIRKLAND and Luce Forward as counsel for EPD, with Matthew B. Gruenberg of The Law Offices of Matthew B. Gruenberg in the bankruptcy case. The substitutions contained Matthew Gruenberg's electronic /s/ signature, notwithstanding that Gruenberg never reviewed the substitutions, never authorized KIRKLAND or any other attorney at Luce Forward to place his electronic signatures on the substitutions and was not even admitted to practice law in the United States District Court or United States Bankruptcy Court for the Central District of California.

35. KIRKLAND's filing of the pleadings and declarations constituted affirmations that the pleadings and declarations were filed in good faith. The pleadings and declarations filed by KIRKLAND in the bankruptcy case violated Rule 11, among other rules and statutes.

36. The Trustee is informed and believes and based thereon alleges that KIRKLAND's actions were taken to intentionally conceal the true financial condition of EPD and actions by EPD and Pressman, and to protect KIRKLAND, POSHOW KIRKLAND and the BC TRUST, all in violation of Rule 11 of the Federal Rules of Civil Procedure.

37. The Trustee is informed and believes and based thereon alleges that KIRKLAND contested the involuntary bankruptcy against EPD without a good faith basis to do so, and by attempting to convert the bankruptcy case to Chapter 11 without a good faith basis to do so; and further by failing to turn over the books, records and property of EPD until after the Court entered an Order compelling EPD to do so, and by advising EPD to not file statements, schedules and a creditors' matrix, or to turn over books, records and property of EPD ; and further advising EPD and Pressman not to cooperate with the Trustee, notwithstanding their obligation to do so. KIRKLAND also filed pleadings and declarations that were knowingly false and misleading in violation of Rule 11 of the Federal Rules of Civil Procedure.

**FIRST CLAIM FOR RELIEF**

**DISALLOWANCE OF PROOFS OF CLAIM, OR, IN THE ALTERNATIVE, EQUITABLE SUBORDINATION OF CLAIMS AND PROOFS OF CLAIM AGAINST THE BC TRUST AND KIRKLAND**

38. The Trustee realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

39. On or about December 12, 2011, the BC TRUST filed three proofs of claim in the bankruptcy case (Claim Nos. 171, 235 and 236), all in the amount of $2.672 million. Claim Nos. 171, 235 and 236 state that EPD used the identifier number 0710 for the BC TRUST. Claim Nos. 171, 235 and 236 also seek interest at the rate of 12% per annum. On or about February 15, 2013, the BC TRUST filed another proof of claim (Claim No. 13) in the Jerrold S. Pressman bankruptcy

case (Case No. 2:12-bk-13760-ER) in the amount of $3.529 million. Claim No. 13 also seeks interest at the rate of 24% per annum. The proofs of claim filed by the BC TRUST, Claim Nos. 171, 235 and 236, and Claim No. 13, are collectively referred to as the "Proofs of Claim". The Proofs of Claim state that the claims of the BC TRUST are secured claims. The Proofs of Claim appear to be executed by POSHOW ANN KIRKLAND as TRUSTEE of the BC TRUST.

40. THE BC TRUST is the assignee of KIRKLAND's EPD INTERESTS and the BC TRUST's Proofs of Claim are based on an assignment of KIRKLAND's EPD INTERESTS. THE BC TRUST did not separately invest or loan funds to the Debtors. The BC TRUST's rights in regard to any proceeds of the Debtors is based on the assignment of interests from KIRKLAND to the BC TRUST, and the BC TRUST's attempt to obtain security for that assignment, all orchestrated by KIRKLAND while he was outside counsel for Pressman and EPD.

41. At all times since the formation of EPD as a limited liability company, KIRKLAND has served as outside counsel for EPD, Pressman and certain of Pressman's other business entities, and has been a fiduciary and insider of the Debtors. KIRKLAND was an insider of the Debtors at all times as outside counsel, and had specific knowledge of the Debtors' financial condition, as set forth herein above.

42. KIRKLAND, and the BC TRUST as KIRKLAND's assignee, engaged in inequitable conduct, as set forth in paragraphs 1 through 37 herein.

43. KIRKLAND's, and the BC TRUST as KIRKLAND's assignee, inequitable conduct has resulted in an unfair advantage to KIRKLAND and the BC TRUST, and has resulted in an injury to creditors of the Debtors in that KIRKLAND placed his interests and the interests of his family trust, the BC TRUST, above his fiduciary duties to the Debtors and their creditors.

44. KIRKLAND and the BC TRUST's inequitable conduct has also resulted in injury to creditors in that KIRKLAND engaged in breaches of fiduciary duty to EPD while serving as outside counsel to the Debtors, as set forth in paragraphs 1 through 43 herein, both pre-petition and post-petition, all while knowing of the Debtors' financial condition, including but not limited to: (a) placing his interests and his family trust's interests above EPD and its creditors by, among other things, filing and/or recording a UCC-1 financing statement in favor of the BC TRUST and against

the assets of the Debtors; (b) representing companies that were judgment debtors to EPD and obtaining funds for that representation while knowing that amounts were owed to EPD; (c) defending lawsuits brought by EPD creditors without a good faith basis to do so while failing to counsel the preservation of the Debtors' assets for the benefit of its creditors; and (d) filing false and misleading pleadings and declarations with the Bankruptcy Court in an attempt to maintain control over EPD for the benefit of EPD's principals, KIRKLAND and the BC TRUST, and to protect the BC's TRUSTS purported lien for the benefit of KIRKLAND, POSHOW ANN KIRKLAND and their children. In addition to the conduct breaching KIRKLAND's fiduciary duties, the conduct also constituted a fraud upon the creditors of the Debtors and upon the Court.

45. Equitable subordination of the BC TRUST and KIRKLAND's claims, including but not limited to their purported secured claims against the assets of the Debtors, is consistent with the provisions of the Bankruptcy Code.

46. Based on KIRKLAND and the BC TRUST's conduct, as set forth in paragraphs 1 through 45, the Proofs of Claim, and any other proofs of claim filed by the BC TRUST or KIRKLAND, and any other claims of the BC TRUST and KIRKLAND are appropriately disallowed.

47. In the alternative to disallowance, based on KIRKLAND and the BC TRUST's conduct, as set forth in paragraphs 1 through 46, the Proofs of Claim, and any other proofs of claim filed by the BC TRUST or KIRKLAND, and any other claims of the BC TRUST and KIRKLAND, are appropriately equitably subordinated to all allowed unsecured claims, pursuant to, among other things, 11 U.S.C. § 510(c) and applicable case law.

## SECOND CLAIM FOR RELIEF

## AVOIDANCE OF FRAUDULENT TRANSFERS AGAINST DEFENDANTS (ACTUAL INTENT)

**[11 U.S.C. § 544 and California Civil Code §§ 3439.04(a) and 3439.07]**

48. The Trustee repeats and realleges the allegations in above paragraphs 1 through 37, inclusive, of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

49. The Trustee is informed and believes and thereon alleges that during the seven-year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the liens in favor of the BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of the BC TRUST and against the assets of EPD and Pressman), and the property listed in **Exhibit "A"** attached hereto and incorporated herein by this reference (the "7-Year Transfers") to Union Bank for the benefit of KIRKLAND, POSHOW KIRKLAND (KIRKLAND's wife) and the BC TRUST on the dates and in the amounts set forth therein with the actual intent to delay, hinder or defraud the Debtors' creditors.

50. By reason of the foregoing, the 7-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 544 and Civil Code § 3439.04(a) and 3439.07.

**THIRD CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (ACTUAL INTENT)**

**[11 U.S.C. § 548(a)(1)(A)]**

51. The Trustee repeats and realleges the allegations in above paragraphs 1 through 37, inclusive, of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

52. The Trustee is informed and believes and thereon alleges that during the two year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the liens in favor of the BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of the BC TRUST and against the assets of EPD and Jerrold Pressman), and the property listed in **Exhibit "B"** attached hereto and incorporated herein by this reference (the "2-Year Transfers") to Union Bank for the benefit of KIRKLAND, POSHOW KIRKLAND (KIRKLAND's wife) and the BC TRUST on the dates and in the amounts set forth therein with the actual intent to delay, hinder or defraud the Debtors' creditors.

53. By reason of the foregoing, the 2-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

Case 2:12-ap-02424-ER Doc 215 Filed 08/12/16 Entered 08/12/16 14:48:31 Desc
Main Document Page 20 of 27

## FOURTH CLAIM FOR RELIEF

## AVOIDANCE OF FRAUDULENT TRANSFERS

## AGAINST DEFENDANTS (CONSTRUCTIVE FRAUD)

**[11 U.S.C. § 544 and California Civil Code §§ 3439.04(b) or 3439.05 and 3439.07]**

54. The Trustee realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

55. The Trustee is informed and believes and thereon alleges that during the four-year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the lien in favor of BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of BC TRUST and against the assets of EPD and Pressman), and the property listed in **Exhibit "C"** attached hereto and incorporated herein by this reference (the "4-Year Transfers") to Union Bank for the benefit of KIRKLAND, POSHOW KIRKLAND (KIRKLAND's wife) and the BC TRUST. Each of the 4-Year Transfers (*see* **Exhibit "C"**) was made (a) without the Debtors receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtors were insolvent or as a result of which the Debtors became insolvent; or (ii) at a time that the Debtors were engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining was an unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

56. By virtue of the foregoing, the 4-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 544 and Civil Code §§ 3439.04(b) or 3439.05 and 3439.07.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**FIFTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. § 548(a)(1)(B)]**

57. The Trustee realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

58. The Trustee is informed and believes and thereon alleges that each of the 2-Year Transfers (*see* Exhibit "B") to Union Bank for the benefit of KIRKLAND, POSHOW KIRKLAND (KIRKLAND's wife) and the BC TRUST, and each lien in favor of BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of BC TRUST and against the assets of EPD and Pressman), was made (a) without the Debtors receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtors were insolvent or as a result of which the Debtors became insolvent; or (ii), at a time that the Debtors were engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining was an unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

59. By virtue of the foregoing, the 2-Year Transfers and the liens are avoidable transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**SIXTH CLAIM FOR RELIEF**

**RECOVERY OF AVOIDED TRANSFERS AGAINST DEFENDANTS**

**[11 U.S.C. §§ 544, 547(b), 550(a)(1) and (2) and/or California Civil Code § 3439.07]**

60. The Trustee realleges each and every allegation contained in paragraphs 1 through 59 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

61. By reason of the foregoing, the Trustee is entitled to recover for the benefit of the Estate the 7-Year Transfers, the 2-Year transfers, and the 4-Year Transfers and the liens pursuant to 11 U.S.C. §§ 544, 548, 550(a)(1) and/or Civil Code § 3439.07.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee prays for judgment against Defendants as follows:

### FIRST CLAIM FOR RELIEF

1. For an Order disallowing the Proofs of Claim, and any further proofs of claim, amended proofs of claim or other claims filed by the BC TRUST or KIRKLAND, as secured claims.

2. For an Order disallowing the Proofs of Claim, and any further proofs of claim or amended proofs of claim filed by the BC TRUST or KIRKLAND, in their entirety.

3. In the alternative, equitably subordinating the Proofs of Claim, and any further proofs of claim, amended proofs of claim or other claims filed by the BC TRUST or KIRKLAND, to all allowed unsecured claims.

### SECOND CLAIM FOR RELIEF

4. That the 7-Year Transfers and the liens be avoided for the benefit of the estate.

### THIRD CLAIM FOR RELIEF

5. That the 2-Year Transfers and the liens be avoided for the benefit of the estate.

### FOURTH CLAIM FOR RELIEF

6. That the 4-Year Transfers and the liens be avoided for the benefit of the estate.

### FIFTH CLAIM FOR RELIEF

7. That the 2-Year Transfers and the liens be avoided for the benefit of the estate.

### SIXTH CLAIM FOR RELIEF

8. For relief as follows:

- to recover the liens and/or the value of the 2-Year Transfers from Defendants, for the benefit of the estate, plus interest at the maximum legal rate from the date of the 2-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein;

Case 2:12-ap-02424-ER Doc 215 Filed 08/12/16 Entered 08/12/16 14:48:31 Desc
Main Document Page 23 of 27

9. On the sixth claim for relief, for relief as follows:

- to recover the liens and/or value of the 7-Year Transfers from Defendants, for the benefit of the Estate, plus interest at the maximum legal rate from the date of the 7-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein;
- to recover the liens and/or value of the 4-Year Transfers from Defendants, for the benefit of the Estate, plus interest at the maximum legal rate from the date of the 4-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein; and,

10. On all claims for relief; that the Trustee be awarded fees and costs incurred in connection with this action;

11. For such other and further relief as this Court deems just and proper.

DATED: August 12, 2016 BRUTZKUS GUBNER

By: /s/ Corey R. Weber
COREY R. WEBER
Special Litigation Counsel for Plaintiff,
Jason M. Rund, Chapter 7 Trustee

## 7 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 10/05/08 | 10/17/08 | 14001 | $ 7,437.50 |
| 11/05/08 | 11/17/08 | 14226 | 7,437.50 |
| 12/05/08 | 12/17/08 | 14531 | 7,437.50 |
| 01/05/09 | 01/20/09 | 14771 | 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | Total | | $ 104,852.82 |

## 2 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 01/05/09 | 01/20/09 | 14771 | $ 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | Total | | $82,540.32 |
| | | | |

## 4 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 10/05/08 | 10/17/08 | 14001 | $ 7,437.50 |
| 11/05/08 | 11/17/08 | 14226 | 7,437.50 |
| 12/05/08 | 12/17/08 | 14531 | 7,437.50 |
| 01/05/09 | 01/20/09 | 14771 | 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
|  | Total |  | $ 104,852.82 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing documents entitled: **THIRD AMENDED COMPLAINT AGAINST: (1) JOHN C. KIRKLAND; AND (2) POSHOW ANN KIRKLAND, INDIVIDUALLY AND AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 FOR: 1. Disallowance of Proofs of Claim, or in the alternative, Equitable Subordination of Proofs of Claim; 2. Avoidance of Fraudulent Transfers (Actual Intent); 3. Avoidance of Fraudulent Transfers (Actual Intent); 4. Avoidance of Fraudulent Transfers (Constructive Fraud); 5. Avoidance of Fraudulent Transfers (Constructive Fraud); 6. Recovery of Avoided Transfers** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 12, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael W Davis mdavis@brutzkusgubner.com, ecf@brutzkusgubner.com
Larry W Gabriel lgabriel@brutzkusgubner.com, nfields@brutzkusgubner.com
Lewis R Landau Lew@Landaunet.com
Jason M Rund (TR) trustee@srlawyers.com, jrund@ecf.epiqsystems.com
Autumn D Spaeth aspaeth@swelawfirm.com, gcruz@swelawfirm.com; csheets@swelawfirm.com; hdavis@swelawfirm.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Corey R Weber ecf@brutzkusgubner.com, cweber@brutzkusgubner.com

☐ Service information continued on attached page

**2.** **SERVED BY UNITED STATES MAIL**: On _________________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed:

☐ Service information continued on attached page

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 12, 2016**, I served the following persons and/or entities by personal delivery, **overnight mail service**, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed:

**BY OVERNIGHT MAIL**

Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg.
255 East Temple Street, Suite 1560
Los Angeles, CA 90012-3332

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 12, 2016 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# EXHIBIT YY

LARRY W. GABRIEL – Bar No. 68329
STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
MICHAEL W. DAVIS – Bar No. 274126
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@brutzkusgubner.com
cweber@brutzkusgubner.com
mdavis@brutzkusgubner.com

Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC, and JERROLD S. PRESSMAN,<br><br>Consolidated Debtors.<br><br>EIN No. xxx-0994 | Case No. 2:10-bk-62208-ER<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-02424-ER |
| JASON M. RUND, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>JOHN C. KIRKLAND, an individual, and POSHOW ANN KIRKLAND as TRUSTEE of the BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009,<br><br>Defendants. | **FOURTH AMENDED COMPLAINT AGAINST: (1) JOHN C. KIRKLAND; AND (2) POSHOW ANN KIRKLAND AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 FOR:**<br><br>**1. Disallowance of Proofs of Claim, or in the alternative, Equitable Subordination of Proofs of Claim**<br>**2. Avoidance of Fraudulent Transfers (Actual Intent)**<br>**3. Avoidance of Fraudulent Transfers (Actual Intent)**<br>**4. Avoidance of Fraudulent Transfers (Constructive Fraud)**<br>**5. Avoidance of Fraudulent Transfers (Constructive Fraud)**<br>**6. Recovery of Avoided Transfers**<br><br>**<u>Pretrial Conference:</u>**<br>**Date:** February 14, 2017<br>**Time:** 11:00 a.m.<br>**Place:** Courtroom 1568<br>United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

Plaintiff, JASON M. RUND, the duly appointed and acting Chapter 7 Trustee of the consolidated bankruptcy estate of debtors EPD Investment Company, LLC ("EPD") and Jerrold S. Pressman ("Pressman") (EPD and Pressman are collectively referred to herein as the "Debtors"), for claims of relief against defendants JOHN C. KIRKLAND, an individual, and against POSHOW ANN KIRKLAND as Trustee of the Bright Conscience Trust Dated September 9, 2009 (the "BC TRUST"), alleges as follows:

**CONSENT TO ENTRY OF FINAL ORDERS**

**AND JUDGMENT BY THE BANKRUPTCY COURT**

1. The Trustee hereby alleges that the claims for relief asserted in this Complaint constitute core proceedings pursuant to 28 U.S.C. § 157(b). To the extent that certain of the claims are determined to be non-core proceedings pursuant to case law, the Bankruptcy Court may enter proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c). The Trustee consents to the entry of final orders and judgment by the Bankruptcy Court as to all claims for relief contained in this Complaint.

**THE PARTIES**

2. Plaintiff, JASON M. RUND, is the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the consolidated bankruptcy estate of the Debtors. The Trustee was appointed after the Order for Relief was entered and each of the allegations contained herein is based on the Trustee's information and belief. The Trustee has standing to bring this adversary proceeding on behalf of the Estate.

3. Defendant JOHN C. KIRKLAND ("KIRKLAND") is a resident of the State of California, and is an attorney admitted to practice law in the State of California. At all times material herein, KIRKLAND transacted business in the Central District of California, including but not limited to transactions with EPD, and/or at all material times herein was and is subject to the jurisdiction of this Court.

4. Defendant POSHOW ANN KIRKLAND ("POSHOW KIRKLAND") (KIRKLAND and POSHOW KIRKLAND are collectively referred to herein as the "KIRKLANDS") is a resident of California, and is the wife of defendant KIRKLAND. POSHOW KIRKLAND is Trustee of THE

BC TRUST and is sued herein in her capacity as Trustee of the BC TRUST. At all times material herein, THE BC TRUST transacted business in the Central District of California, including but not limited to transactions with EPD, and/or at all material times herein was and is subject to the jurisdiction of this Court. As alleged herein, the BC TRUST is the assignee of certain interests of KIRKLAND in relation to the Debtors. The KIRKLANDS received the benefit of transfers made by EPD, including but not limited to transfers from EPD to Union Bank to pay the mortgage on the house in which the KIRKLANDS resided.

**JURISDICTION AND VENUE**

5. This action is a civil proceeding related to a case under Title 11 of the United States Code.

6. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and General Order No. 242-A of the District Court for the Central District of California, as this is a core proceeding under 28 U.S.C. § 157(b)(1), (2)(A), (B), (C), (H) and (K). Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a), in that the instant proceeding is related to the Debtors' pending case under Title 11, Chapter 7 of the United States Code. The Trustee consents to final orders or judgment by the Bankruptcy Court.

7. Venue is proper in this Court, including venue pursuant to 28 U.S.C. §§1408 and 1409, because, among other things, this is the district in which the bankruptcy action is pending. Pursuant to 28 U.S.C. § 1391, venue is also appropriate as Defendants are authorized to and regularly carry out substantial business in this district and the acts and conduct complained of herein took place within this district. This Court has personal jurisdiction over the Defendants.

**THE BANKRUPTCY CASE**

8. The EPD bankruptcy case was commenced by the filing of an involuntary petition against EPD on December 7, 2010 (the "Petition Date"). The Court entered an Order for Relief on February 9, 2011 (the "Order for Relief"). The Trustee was appointed on or about February 12, 2011.

9. On February 1, 2012, Pressman filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

Case 2:12-ap-02424-ER Doc 234 Filed 10/14/16 Entered 10/14/16 14:35:54 Desc Main Document Page 4 of 27

10. On April 27, 2012, the Trustee filed a motion for substantive consolidation of the EPD bankruptcy estate and the Pressman bankruptcy estate (the "Substantive Consolidation Motion"). The hearing on the Substantive Consolidation Motion took place on May 23, 2012, and the Court entered an Order granting the Substantive Consolidation Motion on June 4, 2012.

11. Pursuant to the Order granting the Substantive Consolidation Motion, the Trustee is the Chapter 7 Trustee for the consolidated bankruptcy estate of the Debtors.

## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

12. The Trustee is informed and believes and based thereon alleges that between the 1970s and June 27, 2003, "EPD Investment Co." was an unincorporated sole proprietorship run by Pressman. On June 27, 2003, EPD was formed as a California limited liability company in order to provide corporate protection and satisfy Pressman's goal of retirement. Upon EPD's formation in 2003, the EPD sole proprietorship's assets and liabilities were transferred from Pressman to EPD. The members and managers of EPD at all times were Pressman and his son, Keith Pressman.

13. The Trustee is informed and believes and based thereon alleges that Pressman used EPD to bring in funds from lenders, investors and others, which funds were used to pay amounts due to earlier lenders, creditors and investors and/or were transferred to various other business entities partially owned and/or controlled by Pressman to fund their business operations.

14. The Trustee is informed and believes and based thereon alleges that EPD generally obtained such funds from the individual investors/lenders/creditors (collectively, the "Creditors") generally in exchange for promissory notes or demand notes that were due on demand or within 30 days after demand and bore mostly double-digit interest rates annually. EPD would, in turn, loan or invest the funds to other companies in which Pressman held ownership interests. Although EPD would loan money to companies in which Pressman held ownership interests, EPD's books often reflected that the amounts were owed by Pressman to EPD, rather than directly from the companies to EPD, because Pressman was borrowing the money from EPD and then directing it as a loan to the companies in which he held ownership interests.

15. The Trustee is informed and believes and based thereon alleges that EPD did not maintain segregated investment accounts, deposit accounts, loan accounts or other separate

accounts for the Creditors. Any sums loaned, deposited, invested or transferred by Creditors in EPD were deposited into EPD's general operating account at City National Bank, comingled with EPD's operating funds and, according to Pressman, were "fungible" at that point. The sums deposited by the Creditors, and any interest accrued on the sums, were reflected solely in ledger entries and on statements prepared by EPD for Creditors. Notwithstanding interest and other obligations on amounts loaned by Creditors, EPD generally did not maintain sufficient sums in its bank accounts to pay the amounts outstanding to Creditors, or amounts due on demand to Creditors, without obtaining the funds from additional loans or investments from existing Creditors, loans or investments from new Creditors, or sums transferred from other entities partially owned and/or controlled by Pressman.

16. The Trustee is informed and believes and based thereon alleges that although many of EPD's Creditors were of the belief that EPD owned significant positions in real property in Tennessee, Mississippi and elsewhere, EPD did not own any real property as of the date of the involuntary bankruptcy petition against EPD. Instead, EPD had promissory notes from Pressman, which were secured by security agreements and UCC-1 financing statements as to all of Pressman's assets. Pressman in turn, had ownership interests in entities that owned and/or managed properties in Tennessee and Mississippi, one of which is now in a bankruptcy case of its own, and ownership interests in ice rinks and night clubs, most of which are now defunct with no remaining assets. EPD also had amounts owing to it from other entities partially owned and/or controlled by Pressman, including Broadway Entertainment and S.C. Club, L.P., both of which are now defunct. Some of these entities executed promissory notes and others did not. The promissory notes that did exist were not secured. The stock and other ownership interests held by Pressman were in closely held entities, and the stock and other ownership interests were not liquid or readily convertible to cash proceeds if necessary to satisfy the obligations owed to Creditors, or due on demand to Creditors.

17. The Trustee is informed and believes and based thereon alleges that EPD also engaged in providing tax advice to certain of the Creditors, and in particular, advising the Creditors in regard to the creation of leasing companies to create tax benefits for the Creditors. Creditors often

created corporations, limited liability companies or DBAs to purportedly own equipment, such as equipment at ice rinks or night clubs, but all of which equipment was already owned by entities in which Pressman had an ownership interest. The Creditors would then transfer sums to EPD purportedly to purchase equipment, and the Creditors would then enter into a leasing agreement with the ice rink or night club to lease the equipment in exchange for lease payments. The lease payments were guaranteed by EPD and would often be paid by EPD to the Creditors, even though EPD was not an owner of the subject equipment, or a lessor or a lessee of such equipment. At the end of the lease period, which was typically 4 years, the equipment would then purportedly revert in ownership back to the ice rink or night club. By the leasing transactions, the Creditors taking part in the transactions would obtain depreciation and other tax benefits. Most of the Creditors who took part in such leasing transactions never saw the equipment that they purportedly owned, and often never had a copy of a document evidencing ownership of a particular piece of equipment with a specific serial number.

18. The Trustee is informed and believes and based thereon alleges that EPD did not distribute offering circulars, prospectuses, audited financial statements or other formal investment information other than monthly or quarterly statements. EPD also did not file any documents with the California Department of Corporations, and did not obtain California Department of Corporations approvals, or exemptions. EPD also did not receive licenses, permits or approvals by the California Department of Corporations or the United States Securities & Exchange Commission.

**EPD WAS INSOLVENT SINCE 2003 AND HAS NEVER BEEN PROFITABLE**

19. The Trustee is informed and believes and based thereon alleges that between 2003 and the Order for Relief in this bankruptcy case, EPD never sought or obtained audited financial statements because Pressman did not believe that audited financial statements were necessary.

20. The Trustee is informed and believes and based thereon alleges that EPD was insolvent on a balance sheet basis from at least December 31, 2003, according to EPD's tax returns filed with the Internal Revenue Service. EPD's capital account/partners' equity (EPD's assets less liabilities) started at ($1,191,312) as of December 31, 2003, and by December 31, 2008 was ($21,521,893). The negative equity increased to ($38,209,405) as of the date of the involuntary

bankruptcy petition against EPD (based on EPD's Statements and Schedules showing $32,278,078 in assets and $70,487,483 in liabilities).

21. The Trustee is informed and believes and based thereon alleges that EPD's tax returns also show that since its formation in mid-2003, EPD has never been profitable. The tax returns show net losses as follows: ($1,356,192) for 2003 (between its formation and the end of 2003), ($3,223,395) for 2004, ($1,990,744) for 2005, ($5,131,269) for 2006, ($584,301) for 2007 and ($573,412) for 2008. According to its tax returns, EPD had a cumulative net loss of ($12,859,313) during fiscal years 2003-2008. EPD did not file any tax returns for fiscal years 2009-2011.

22. EPD's summary of schedules filed in the bankruptcy case states that EPD has $32,278,078 in assets. The schedules state that EPD owns no real property and that the company's only assets consist of unsecured promissory notes from Jerrold Pressman in the amount of $24.268 million, Broadway Entertainment Marketing, Inc. in the amount of $4.413 million, S.C. Club L.P. in the amount of $4.285 million and Orland McCarthy in the amount of $312,000. Jerrold Pressman is a consolidated debtor in this bankruptcy case, is in his seventies, and is unemployed. Pressman's ownership interests in the companies are now property of the Estate. The Trustee has obtained a $5 million stipulated non-dischargeable judgment against Pressman. Broadway Entertainment Marketing, Inc. and S.C. Club, L.P. are defunct entities which appear to have no remaining assets.

23. The claims register in the EPD bankruptcy case reflects over $173 million in claims filed in the EPD bankruptcy case.

**<u>EPD OPERATED AS A PONZI SCHEME SINCE 2003</u>**

24. The Trustee is informed and believes and based thereon alleges that EPD operated as a Ponzi scheme since its formation as a California limited liability company. Between 2003 and mid-2009, EPD funded repayment, interest and other obligations to Creditors by using additional funds transferred by existing Creditors to EPD, and by using funds from new Creditors which transferred funds to EPD. EPD also used the operating cash flow and/or lines of credit of other businesses partially owned and/or controlled by Pressman when such cash flow and/or lines of credit were available. The Trustee is informed and believes and based thereon alleges that if new monies

did not continue to flow into EPD from new and existing Creditors, EPD would not have been able to continue to operate.

25. The Trustee is informed and believes and based thereon alleges that beginning at latest in mid-2009, EPD was unable to pay its obligations to Creditors because the companies which Pressman partially owned and/or controlled did not have sufficient operating cash flow and/or available lines of credit that Pressman could obtain and direct to EPD, and because EPD was no longer receiving an influx of new monies from Creditors which was previously used to pay obligations to other Creditors. In mid-2009, EPD stopped making payments to the Creditors, save and except to certain favored creditors.

26. There are, at all times mentioned herein with respect to transfers from the Debtors to Defendants, creditors holding unsecured claims that are allowable under 11 U.S.C. § 502.

## KIRKLAND AND THE BRIGHT CONSCIENCE TRUST

27. The Trustee is informed and believes and based thereon alleges that EPD was used by Pressman to funnel funds from Creditors to various other entities partially owned and/or controlled by Pressman, including but not limited to entities which eventually became known as Broadway Entertainment Marketing, Inc. ("Broadway Entertainment"), Plush Lounge Las Vegas, LLC ("Plush Lounge"), S.C. Club, Inc. and S.C. Club, L.P. Pressman's son, Keith Pressman, (collectively with Jerrold Pressman, the "Pressmans") a licensed attorney, was also involved in Pressman's business enterprises.

28. The Trustee is informed and believes and based thereon alleges that KIRKLAND went to UCLA School of Law with Keith Pressman and was his roommate, graduating in 1990. Thereafter, KIRKLAND became outside counsel for the Pressmans, and their various business entities, which relationships continued (a) while KIRKLAND was at a number of law firms, and (b) through the filing of the involuntary bankruptcy against EPD in December 2010, at which time KIRKLAND was a partner at the then law firm of Luce Forward Hamilton & Scripps LLP ("Luce Forward"). During this period of time, KIRKLAND, individually and through his various law firms, represented the Pressmans, EPD, Broadway Entertainment, Plush Lounge, S.C. Club, Inc. and S.C. Club, L.P., among other Pressman related business entities and operations. During the period

from 2003 through the filing of the Debtors' bankruptcy case, KIRKLAND was a lawyer practicing in the areas of securities law, corporate transactions and business litigation.

29. The Trustee is informed and believes and based thereon alleges that in addition to serving as outside counsel for EPD and for the Pressmans, KIRKLAND invested and/or lent an amount in excess of $150,000 of his personal funds to EPD (KIRKLAND's "EPD Interests"). In or about September 2009, after EPD had ceased making payments to most Creditors, KIRKLAND assigned his EPD Interests to the BC TRUST, his family trust, and/or to POSHOW ANN KIRKLAND as the Trustee of the BC TRUST, through a "Notice of Assignment." The Notice of Assignment states in pertinent part that "[n]otice is hereby given that all rights of John C. Kirkland under all such Loan Documents have been sold transferred and assigned to the Bright Conscience Trust Dated September 9, 2009." POSHOW ANN KIRKLAND, as Trustee of the BC TRUST, took the assignment subject to all claims and defenses of KIRKLAND. POSHOW ANN KIRKLAND, as Trustee of the BC TRUST, did not take the assignment in good faith, or for adequate consideration. On or about September 11, 2009, the BC TRUST filed and/or recorded a UCC-1 financing statement as to all assets of the Debtors. On or about May 5, 2010, the BC TRUST filed and/or recorded an amendment to the UCC-1 financing statement, which amendment stated that "[t]his amendment is to clarify and confirm that the prior grant of security did not include the stock of North Hills Industrial Park, Inc., a California S-Corporation."

30. The Trustee is informed and believes and based thereon alleges that KIRKLAND's pre-petition actions in regard to EPD, and as outside counsel for the Pressmans and EPD, include but are not limited to:

a. Having concurrent knowledge of the Debtors' insolvency, continuous net losses and/or Ponzi scheme since 2005 at latest while continuing to serve as outside counsel for the Pressmans and EPD and continuing to represent the Debtors in litigation;

b. In draft letters prepared by KIRKLAND, from KIRKLAND to the Franchise Tax Board in 2005, KIRKLAND had knowledge of EPD and

Pressman's insolvency, net losses and need to obtain new investments or loans to continue operating. In the letters KIRKLAND stated:

i. "EPD has a total liabilities [sic] of over $47 million, including over $36 million in promissory notes for funds received from third-parties, most of which are personally guaranteed by Mr. Pressman.... EPD estimates a $3.4 million loss for last year. The company received approximately $9 million in 2004, mostly through third-party loans, including approximately $1.5 million from IRA accounts. Because of the company's high interest expense, over the past three years of economic downturn, it has been unable to earn income in excess of outgoing funds, thereby creating a large negative cash flow. Currently, the interest requirement exceeds $3 million per year and has averaged approximately $1.5 million per year in demand principal repayments, requiring at least $4.5 million of new loans, investment or income per year just to break even cash flow wise."

ii. "...Mr. Pressman has borrowed substantially and is heavily in debt. The enclosed sampling of promissory notes give an indication of the depth of his financial distress. His borrowings over the years through EPD Investment Co. (originally operated by Mr. Pressman as a sole proprietorship for thirty years, and now operated as an LLC managed and controlled by his son, attorney Keith Pressman, on behalf of investors) are now tens of millions of dollars..."

c. In July 2009, KIRKLAND entered into a "Funding Agreement" with EPD and Pressman stating, among other things, that "EPD has advised Investor that, due to temporary cash flow constraints, EPD has an immediate need for $100,000..." and whereby KIRKLAND agreed to provide $100,000 to

EPD. KIRKLAND affirmed his knowledge of EPD's financial condition as reflected in the "Funding Agreement."

d. Orchestrating between October 17, 2008 and December 17, 2009, to have the Pressmans, through EPD, arrange to make monthly payments to Union Bank of California on behalf of, and for the benefit of, KIRKLAND, POSHOW KIRKLAND (Kirkland's wife) and the BC TRUST to satisfy KIRKLAND's mortgage loan payment obligations to Union Bank of California on the house resided in by KIRKLAND and POSHOW KIRKLAND, all while KIRKLAND was aware of the Debtors' insolvency, continuous net losses and/or Ponzi scheme;

e. During 2009 and 2010, Luce Forward and KIRKLAND defended suits on behalf of EPD and Pressman brought by other creditors of EPD in state and federal court. The defense of suits continued after KIRKLAND's family trust, the BC TRUST, filed and/or recorded its UCC-1 financing statement. KIRKLAND defended suits brought by creditors of EPD who brought the suits in regard to EPD's non-payment of amounts owed to them. KIRKLAND not only defended these suits without a good faith basis to do so since EPD did owe the amounts to creditors, but did so while the BC TRUST had obtained a purported secured lien encumbering EPD's assets, while KIRKLAND was receiving the benefit of payments by EPD to his lender. KIRKLAND orchestrated the defense of the suits using the work product of Katherine Werner aka Katherine Jean Sabich-Robison, an EPD employee and then-suspended attorney who was disbarred in 2010 based on a felony criminal conviction in 2006 for grand theft by fiduciary, grand theft, forgery and grand theft by fiduciary from elder). KIRKLAND was aware of Werner's suspension and legal issues at the time that he instructed her to prepare pleadings and oversaw her work.

f. At the direction and with the consent of Pressman, forming a holding company, HMB Holdings, LLC ("HMB Holdings"), whose members were 13 Creditors of EPD, at least some of which had threatened litigation and an involuntary bankruptcy proceeding against EPD and/or Pressman, for the purpose of filing and recording a lien against the assets of EPD and Pressman and in favor of HMB Holdings all while knowing that other creditors of EPD and Pressman remained unsecured and knowing that such recording was a fraudulent conveyance in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq.*, while other creditors of EPD and Pressman remained unsecured;

g. KIRKLAND formed HMB, the entity comprised of EPD Creditors that had threatened lawsuits against EPD and Pressman and had threatened to file an involuntary bankruptcy against EPD. On September 14, 2009, HMB filed its Limited Liability Company Certificate of Formation with the Delaware Secretary of State, Division of Corporations. KIRKLAND's electronic signature is on the Certificate of Formation as "Authorized Person." On September 15, 2009, a UCC-1 financing statement was recorded in favor of HMB and purportedly encumbering all of the Debtor and Pressman's assets.

h. Causing the recordation and filing of a UCC-1 financing statement in favor of the BC TRUST, against the assets of EPD and Pressman, at the direction and with the consent of Pressman, knowing that such recording was a fraudulent conveyance in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq.*, while other creditors of EPD and Pressman remained unsecured.

i. Knowing of EPD's financial condition and business practices, yet representing EPD in the involuntary bankruptcy proceeding and by representing EPD in state and federal court cases brought by other

Creditors, and through those representations, knowing and willfully filing false and misleading pleadings and declarations in those actions contesting that EPD had amounts outstanding to Creditors in violation of Rule 11 of the Federal Rules of Civil Procedure. At the same time, KIRKLAND was accepting payments from EPD, and permitted the filing and recordation of UCC-1 financing statements in favor of the BC TRUST and HMB Holdings;

j. Causing to have prepared and recorded a UCC-1 financing statement on behalf of HMB Holdings purportedly against all of the assets of EPD and Jerrold Pressman in the sum of $11.25 million.

k. Causing to have recorded a UCC-1 financing statement purportedly against the assets of EPD and Pressman in the amount of approximately $2 million in September 2009, in favor of the BC TRUST.

l. Demanding and receiving broad release and indemnification agreements from EPD in favor of KIRKLAND as to any and claims, including but not limited to claims for malpractice, breach of fiduciary duty, negligent misrepresentation, intentional misrepresentation and fraud, notwithstanding that EPD received no consideration, or wholly inadequate consideration, for entering into the release and indemnification agreements.

m. Representing Plush Lounge, an entity that received significant transfers from EPD, and owed those sums to EPD, as well as being an entity that was a judgment debtor to EPD, in litigation that severally depleted the assets of Plush Lounge at same time KIRKLAND was the outside general counsel for both EPD and Plush Lounge and had represented both since their formation.

n. Knowingly accepting payments from Plush Lounge and/or related companies that owed sums to EPD for legal services notwithstanding his

knowledge that Plush Lounge owed EPD in excess of $3 million from a judgment on a promissory note.

o. Failing to properly advise EPD as to its duties and obligations to collect on its promissory notes and other assets due to KIRKLAND's conflict of interest in his representation of EPD, Pressman, Plush Lounge and the various entities partially owned and/or controlled by Pressman.

p. Starting in 2010, forming and serving as the agent for service of process for EPD Investment Leasing Co., LLC, an entity owned by Keith Pressman, and which orchestrated a $40,000 transfer from EPD to EPD Investment Leasing Co., LLC, which was used to make payments to certain preferred Creditors of EPD. The transfer from EPD to EPD Investment Leasing Co., LLC was made after the Creditors of EPD had stopped receiving any payments from EPD, and was made in violation of §§544 and 548 *et seq*. of the Bankruptcy Code, and California Civil Code § 3439, *et seq*.

31. KIRKLAND and his then current law firm, Luce Forward, represented EPD in the EPD bankruptcy case from the filing of the involuntary bankruptcy petition against EPD in December 2010, until the Court entered an Order on October 31, 2011 permitting KIRKLAND to withdraw as counsel for EPD.

32. During the period that KIRKLAND represented EPD in the bankruptcy case, KIRKLAND filed pleadings and declarations, among other things, opposing the involuntary bankruptcy petition, and then seeking to convert the case to Chapter 11. The pleadings and declarations filed by KIRKLAND were filed under a different attorney's ECF number and account in violation of local bankruptcy rules, and the contents of the pleadings and declarations were false and misleading, which KIRKLAND knew to be false and misleading and violated KIRKLAND's duties and obligations as counsel for EPD, and Rule 11 of the Federal Rules of Civil Procedure. Among the false and misleading assertions KIRKLAND either made or caused to be made in the pleadings and declarations were that:

a. EPD was a going concern business.

b. EPD was paying its debts as they became due.

c. Entry of an Order for Relief would cause irreparable damage to EPD as a going concern business.

d. Entry of an Order for Relief would cause EPD to cease its ability to operate as a going concern.

e. Entry of an Order for Relief would result in the destruction of EPD's business.

f. In referring to the declaration that KIRKLAND signed on behalf of the Debtors, that harm would be caused to EPD if an Order for Relief was entered in the bankruptcy case, KIRKLAND has since testified that he was referring to a generic debtor, rather than EPD.

g. There was nothing unusual or improper in regard to the liens recorded and filed by BC TRUST against the assets of EPD and Pressman.

33. During testimony at his Rule 2004 examination, KIRKLAND claimed that the statements made in pleadings and declarations filed by him were "legal argument" rather than facts or statements. KIRKLAND knew the pleadings and declarations to be false and misleading and knew the Court would rely upon in making its determinations regarding the viability of EPD.

34. KIRKLAND also electronically filed (under another attorney's ECF number, in violation of local rules of court) two substitutions of attorney replacing KIRKLAND and Luce Forward as counsel for EPD, with Matthew B. Gruenberg of The Law Offices of Matthew B. Gruenberg in the bankruptcy case. The substitutions contained Matthew Gruenberg's electronic /s/ signature, notwithstanding that Gruenberg never reviewed the substitutions, never authorized KIRKLAND or any other attorney at Luce Forward to place his electronic signatures on the substitutions and was not even admitted to practice law in the United States District Court or United States Bankruptcy Court for the Central District of California.

///

///

35. KIRKLAND's filing of the pleadings and declarations constituted affirmations that the pleadings and declarations were filed in good faith. The pleadings and declarations filed by KIRKLAND in the bankruptcy case violated Rule 11, among other rules and statutes.

36. The Trustee is informed and believes and based thereon alleges that KIRKLAND's actions were taken to intentionally conceal the true financial condition of EPD and actions by EPD and Pressman, and to protect KIRKLAND, POSHOW KIRKLAND and the BC TRUST, all in violation of Rule 11 of the Federal Rules of Civil Procedure.

37. The Trustee is informed and believes and based thereon alleges that KIRKLAND contested the involuntary bankruptcy against EPD without a good faith basis to do so, and by attempting to convert the bankruptcy case to Chapter 11 without a good faith basis to do so; and further by failing to turn over the books, records and property of EPD until after the Court entered an Order compelling EPD to do so, and by advising EPD to not file statements, schedules and a creditors' matrix, or to turn over books, records and property of EPD ; and further advising EPD and Pressman not to cooperate with the Trustee, notwithstanding their obligation to do so. KIRKLAND also filed pleadings and declarations that were knowingly false and misleading in violation of Rule 11 of the Federal Rules of Civil Procedure.

**<u>FIRST CLAIM FOR RELIEF</u>**

**DISALLOWANCE OF PROOFS OF CLAIM, OR, IN THE ALTERNATIVE, EQUITABLE SUBORDINATION OF CLAIMS AND PROOFS OF CLAIM AGAINST DEFENDANTS**

38. The Trustee realleges and incorporates herein by reference paragraphs 1 through 37 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

39. On or about December 12, 2011, the BC TRUST filed three proofs of claim in the bankruptcy case (Claim Nos. 171, 235 and 236), all in the amount of $2.672 million. Claim Nos. 171, 235 and 236 state that EPD used the identifier number 0710 for the BC TRUST. Claim Nos. 171, 235 and 236 also seek interest at the rate of 12% per annum. On or about February 15, 2013, the BC TRUST filed another proof of claim (Claim No. 13) in the Jerrold S. Pressman bankruptcy

case (Case No. 2:12-bk-13760-ER) in the amount of $3.529 million. Claim No. 13 also seeks interest at the rate of 24% per annum. The proofs of claim filed by the BC TRUST, Claim Nos. 171, 235 and 236, and Claim No. 13, are collectively referred to as the "Proofs of Claim". The Proofs of Claim state that the claims of the BC TRUST are secured claims. The Proofs of Claim appear to be executed by POSHOW ANN KIRKLAND as TRUSTEE of the BC TRUST.

40. THE BC TRUST is the assignee of KIRKLAND's EPD INTERESTS and the BC TRUST's Proofs of Claim are based on an assignment of KIRKLAND's EPD INTERESTS. THE BC TRUST did not separately invest or loan funds to the Debtors. The BC TRUST's rights in regard to any proceeds of the Debtors is based on the assignment of interests from KIRKLAND to the BC TRUST, and the BC TRUST's attempt to obtain security for that assignment, all orchestrated by KIRKLAND while he was outside counsel for Pressman and EPD.

41. At all times since the formation of EPD as a limited liability company, KIRKLAND has served as outside counsel for EPD, Pressman and certain of Pressman's other business entities, and has been a fiduciary and insider of the Debtors. KIRKLAND was an insider of the Debtors at all times as outside counsel, and had specific knowledge of the Debtors' financial condition, as set forth herein above.

42. KIRKLAND, and the BC TRUST as KIRKLAND's assignee, engaged in inequitable conduct, as set forth in paragraphs 1 through 37 herein.

43. KIRKLAND's, and the BC TRUST as KIRKLAND's assignee, inequitable conduct has resulted in an unfair advantage to KIRKLAND and the BC TRUST, and has resulted in an injury to creditors of the Debtors in that KIRKLAND placed his interests and the interests of his family trust, the BC TRUST, above his fiduciary duties to the Debtors and their creditors.

44. KIRKLAND and the BC TRUST's inequitable conduct has also resulted in injury to creditors in that KIRKLAND engaged in breaches of fiduciary duty to EPD while serving as outside counsel to the Debtors, as set forth in paragraphs 1 through 43 herein, both pre-petition and post-petition, all while knowing of the Debtors' financial condition, including but not limited to: (a) placing his interests and his family trust's interests above EPD and its creditors by, among other things, filing and/or recording a UCC-1 financing statement in favor of the BC TRUST and against

the assets of the Debtors; (b) representing companies that were judgment debtors to EPD and obtaining funds for that representation while knowing that amounts were owed to EPD; (c) defending lawsuits brought by EPD creditors without a good faith basis to do so while failing to counsel the preservation of the Debtors' assets for the benefit of its creditors; and (d) filing false and misleading pleadings and declarations with the Bankruptcy Court in an attempt to maintain control over EPD for the benefit of EPD's principals, KIRKLAND and the BC TRUST, and to protect the BC's TRUSTS purported lien for the benefit of KIRKLAND, POSHOW ANN KIRKLAND and their children. In addition to the conduct breaching KIRKLAND's fiduciary duties, the conduct also constituted a fraud upon the creditors of the Debtors and upon the Court.

45. Equitable subordination of the BC TRUST and KIRKLAND's claims, including but not limited to their purported secured claims against the assets of the Debtors, is consistent with the provisions of the Bankruptcy Code.

46. Based on KIRKLAND and the BC TRUST's conduct, as set forth in paragraphs 1 through 45, the Proofs of Claim, and any other proofs of claim filed by the BC TRUST or KIRKLAND, and any other claims of the BC TRUST and KIRKLAND are appropriately disallowed.

47. In the alternative to disallowance, based on KIRKLAND and the BC TRUST's conduct, as set forth in paragraphs 1 through 46, the Proofs of Claim, and any other proofs of claim filed by the BC TRUST or KIRKLAND, and any other claims of the BC TRUST and KIRKLAND, are appropriately equitably subordinated to all allowed unsecured claims, pursuant to, among other things, 11 U.S.C. § 510(c) and applicable case law.

**<u>SECOND CLAIM FOR RELIEF</u>**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (ACTUAL INTENT)**

**[11 U.S.C. § 544 and California Civil Code §§ 3439.04(a) and 3439.07]**

48. The Trustee repeats and realleges the allegations in above paragraphs 1 through 37, inclusive, of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

49. The Trustee is informed and believes and thereon alleges that during the seven-year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the liens in favor of the BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of the BC TRUST and against the assets of EPD and Pressman), and the property listed in **Exhibit "A"** attached hereto and incorporated herein by this reference (the "7-Year Transfers") to Union Bank for the benefit of KIRKLAND and the BC TRUST on the dates and in the amounts set forth therein with the actual intent to delay, hinder or defraud the Debtors' creditors.

50. By reason of the foregoing, the 7-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 544 and Civil Code § 3439.04(a) and 3439.07.

**<u>THIRD CLAIM FOR RELIEF</u>**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (ACTUAL INTENT)**

**[11 U.S.C. § 548(a)(1)(A)]**

51. The Trustee repeats and realleges the allegations in above paragraphs 1 through 37, inclusive, of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

52. The Trustee is informed and believes and thereon alleges that during the two year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the liens in favor of the BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of the BC TRUST and against the assets of EPD and Jerrold Pressman), and the property listed in **Exhibit "B"** attached hereto and incorporated herein by this reference (the "2-Year Transfers") to Union Bank for the benefit of KIRKLAND and the BC TRUST on the dates and in the amounts set forth therein with the actual intent to delay, hinder or defraud the Debtors' creditors.

53. By reason of the foregoing, the 2-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

/ / /

/ / /

/ / /

Case 2:12-ap-02424-ER Doc 234 Filed 10/14/16 Entered 10/14/16 14:35:54 Desc
Main Document Page 20 of 27

**FOURTH CLAIM FOR RELIEF**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. § 544 and California Civil Code §§ 3439.04(b) or 3439.05 and 3439.07]**

54. The Trustee realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

55. The Trustee is informed and believes and thereon alleges that during the four-year period immediately preceding the Petition Date, the Debtors made transfers evidenced by the liens in favor of BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of BC TRUST and against the assets of EPD and Pressman), and the property listed in **Exhibit "C"** attached hereto and incorporated herein by this reference (the "4-Year Transfers") to Union Bank for the benefit of KIRKLAND and the BC TRUST. Each of the 4-Year Transfers (*see* **Exhibit "C"**) was made (a) without the Debtors receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtors were insolvent or as a result of which the Debtors became insolvent; or (ii) at a time that the Debtors were engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining was an unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

56. By virtue of the foregoing, the 4-Year Transfers and the liens are avoidable pursuant to 11 U.S.C. § 544 and Civil Code §§ 3439.04(b) or 3439.05 and 3439.07.

///

///

///

///

///

///

**<u>FIFTH CLAIM FOR RELIEF</u>**

**AVOIDANCE OF FRAUDULENT TRANSFERS**

**AGAINST DEFENDANTS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. § 548(a)(1)(B)]**

57. The Trustee realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

58. The Trustee is informed and believes and thereon alleges that each of the 2-Year Transfers (*see* Exhibit "B") to Union Bank for the benefit of KIRKLAND and the BC TRUST, and each lien in favor of BC TRUST (the UCC-1 financing statement filed and/or recorded in favor of BC TRUST and against the assets of EPD and Pressman), was made (a) without the Debtors receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtors were insolvent or as a result of which the Debtors became insolvent; or (ii), at a time that the Debtors were engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining was an unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

59. By virtue of the foregoing, the 2-Year Transfers and the liens are avoidable transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**<u>SIXTH CLAIM FOR RELIEF</u>**

**RECOVERY OF AVOIDED TRANSFERS AGAINST DEFENDANTS**

**[11 U.S.C. §§ 544, 547(b), 550(a)(1) and (2) and/or California Civil Code § 3439.07]**

60. The Trustee realleges each and every allegation contained in paragraphs 1 through 59 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

61. By reason of the foregoing, the Trustee is entitled to recover for the benefit of the Estate the 7-Year Transfers, the 2-Year transfers, and the 4-Year Transfers and the liens pursuant to 11 U.S.C. §§ 544, 548, 550(a)(1) and/or Civil Code § 3439.07.

**PRAYER FOR RELIEF**

WHEREFORE, the Trustee prays for judgment against Defendants as follows:

**FIRST CLAIM FOR RELIEF**

1. For an Order disallowing the Proofs of Claim, and any further proofs of claim, amended proofs of claim or other claims filed by the BC TRUST or KIRKLAND, as secured claims.

2. For an Order disallowing the Proofs of Claim, and any further proofs of claim or amended proofs of claim filed by the BC TRUST or KIRKLAND, in their entirety.

3. In the alternative, equitably subordinating the Proofs of Claim, and any further proofs of claim, amended proofs of claim or other claims filed by the BC TRUST or KIRKLAND, to all allowed unsecured claims.

**SECOND CLAIM FOR RELIEF**

4. That the 7-Year Transfers and the liens be avoided for the benefit of the estate.

**THIRD CLAIM FOR RELIEF**

5. That the 2-Year Transfers and the liens be avoided for the benefit of the estate.

**FOURTH CLAIM FOR RELIEF**

6. That the 4-Year Transfers and the liens be avoided for the benefit of the estate.

**FIFTH CLAIM FOR RELIEF**

7. That the 2-Year Transfers and the liens be avoided for the benefit of the estate.

**SIXTH CLAIM FOR RELIEF**

8. For relief as follows:

- to recover the liens and/or the value of the 2-Year Transfers from Defendants, for the benefit of the estate, plus interest at the maximum legal rate from the date of the 2-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein;

9. On the sixth claim for relief, for relief as follows:

- to recover the liens and/or value of the 7-Year Transfers from Defendants, for the benefit of the Estate, plus interest at the maximum legal rate from the date of the 7-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein;

- to recover the liens and/or value of the 4-Year Transfers from Defendants, for the benefit of the Estate, plus interest at the maximum legal rate from the date of the 4-Year Transfers, or such other amount as shall be shown by proof prior to judgment herein; and,

10. On all claims for relief; that the Trustee be awarded fees and costs incurred in connection with this action;

11. For such other and further relief as this Court deems just and proper.

DATED: October 14, 2016 BRUTZKUS GUBNER

By: /s/ Corey R. Weber
COREY R. WEBER
Special Litigation Counsel for Plaintiff,
Jason M. Rund, Chapter 7 Trustee

## 7 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 10/05/08 | 10/17/08 | 14001 | $ 7,437.50 |
| 11/05/08 | 11/17/08 | 14226 | 7,437.50 |
| 12/05/08 | 12/17/08 | 14531 | 7,437.50 |
| 01/05/09 | 01/20/09 | 14771 | 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | Total | | $ 104,852.82 |

## 2 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 01/05/09 | 01/20/09 | 14771 | $ 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | Total | | $82,540.32 |
| | | | |

## 4 YEAR TRANSFERS

| Transaction Date | Clear Date | Check No. | Check Amount |
|---|---|---|---|
| 10/05/08 | 10/17/08 | 14001 | $ 7,437.50 |
| 11/05/08 | 11/17/08 | 14226 | 7,437.50 |
| 12/05/08 | 12/17/08 | 14531 | 7,437.50 |
| 01/05/09 | 01/20/09 | 14771 | 7,437.50 |
| 02/05/09 | 02/18/09 | 15093 | 7,437.50 |
| 03/05/09 | 03/17/09 | 15338 | 7,809.38 |
| 04/05/09 | 04/17/09 | 15658 | 7,435.52 |
| 05/05/09 | 05/18/09 | 15905 | 7,435.52 |
| 06/05/09 | 06/17/09 | 16126 | 7,435.52 |
| 07/05/09 | 07/17/09 | 16350 | 7,435.52 |
| 08/05/09 | 08/17/09 | 16518 | 7,435.52 |
| 09/05/09 | 09/17/09 | 16691 | 7,435.52 |
| 10/05/09 | 10/19/09 | 16880 | 7,435.52 |
| 12/14/09 | 12/17/09 | 17152 | 7,807.30 |
| | Total | | $ 104,852.82 |

EXHIBIT C

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing documents entitled: **FOURTH AMENDED COMPLAINT AGAINST: (1) JOHN C. KIRKLAND; AND (2) POSHOW ANN KIRKLAND AS TRUSTEE OF THE BRIGHT CONSCIENCE TRUST DATED SEPTEMBER 9, 2009 FOR: 1. Disallowance of Proofs of Claim, or in the alternative, Equitable Subordination of Proofs of Claim; 2. Avoidance of Fraudulent Transfers (Actual Intent); 3. Avoidance of Fraudulent Transfers (Actual Intent); 4. Avoidance of Fraudulent Transfers (Constructive Fraud); 5. Avoidance of Fraudulent Transfers (Constructive Fraud); 6. Recovery of Avoided Transfers** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 14, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Michael W Davis mdavis@brutzkusgubner.com, ecf@brutzkusgubner.com
- Larry W Gabriel lgabriel@brutzkusgubner.com, nfields@brutzkusgubner.com
- Lewis R Landau Lew@Landaunet.com
- Jason M Rund (TR) trustee@srlawyers.com, jrund@ecf.epiqsystems.com
- Autumn D Spaeth aspaeth@swelawfirm.com, gcruz@swelawfirm.com;csheets@swelawfirm.com;hdavis@swelawfirm.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Corey R Weber ecf@brutzkusgubner.com, cweber@brutzkusgubner.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On ________________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed:

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 14, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed:

**BY OVERNIGHT MAIL**

Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg.
255 East Temple Street, Suite 1560
Los Angeles, CA 90012-3332

**BY EMAIL**

Lewis R. Landau, Esq. – Lew@Landaunet.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 14, 2016 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# EXHIBIT ZZ

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court

Central District of California

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER

Chapter 7

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | $ | | |
| B - Personal Property | Yes | 4 | $ 32,278,078.39 | | |
| C - Property Claimed as Exempt | No | - | | | |
| D - Creditors Holding Secured Claims | Yes | 2 | | $ 13,250,000.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | No | - | | $ - | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 37 | | $ 57237483.35 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | - | | | $ |
| J - Current Expenditures of Individual Debtors(s) | No | - | | | $ |
| TOTAL | | | $ 32,278,978.39 | $ 70,487,483.35 | |

B6A (Official Form 6A) (12/07)

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (If known)

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| None | | | | |
| | | Total➤ | 0 | |

(Report also on Summary of Schedules.)

B 6B (Official Form 6B) (12/07)

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (If known)

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | | Bank Account - City National Bank | | 78.39 |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | X | | | |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |

In re EPD Investments LLC,
Debtor

Case No. 2:10-bk-62208-ER
(If known)

# SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | | See Attached | | 32,278,000 |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A – Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |

B 6B (Official Form 6B) (12/07) -- Cont.

In re EPD Investments LLC, Debtor — Case No. 2:10-bk-62208-ER (If known)

# SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

0 continuation sheets attached Total ➤ $ 32,278,078.39

(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

Attachment to Schedule B – Personal Property

Promissory Notes Payable

| | |
|---|---|
| Broadway Entertainment Marketing, Inc. | $4,413,000 |
| Orland McCarthy | 312,000 |
| Jerrold Pressman | 24,268,000 |
| S.C. Club, L.P. | 4,285,000 |

B 6D (Official Form 6D) (12/07)

**In re** EPD Investments LLC, **Case No.** 2:10-bk-62208-ER
**Debtor** **(If known)**

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (*See Instructions Above.*) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Bright Conscience Trust<br>754 Swarthmore Avenue<br>Pacific Palisades, CA<br>90272 | | | 9/11/09<br>UCC-1<br>All Assets<br>VALUE $ | | | | 2,000,000 | |
| ACCOUNT NO.<br>HMB Holdings, LLC*<br>23448 Moon Shadows Dr.<br>Malibu, CA 90265 | | | 9/15/09<br>UCC-1<br>All Assets<br>VALUE $ | | | | 11,250,000 | |
| ACCOUNT NO. | | | VALUE $ | | | | | |
| ____continuation sheets attached | | | Subtotal ► (Total of this page) | | | | $ 13,250,000 | $ |
| | | | Total ► (Use only on last page) | | | | $ 13,250,000 | $ |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

Attachment to Schedule D – Creditors Holding Secured Claims

* claims in HMB Holdings, LLC

| | |
|---|---|
| Raymond Brosio<br>7340 Eldora<br>Las Vegas, NV 89117 | $1,000,000.00 |
| Robert Browne<br>1420b Ambassador<br>Bldg 2, #303<br>Los Angeles, CA 90035 | 1,500,000.00 |
| Mitch Carter<br>2067 Palos Verdes North<br>Lomita, CA 90717 | 600,000.00 |
| Lawrence Cooper<br>76-464 Via Firenze<br>Indian Wells, CA 92210 | 1,000,000.00 |
| Thomas Ferro<br>23448 Moon Shadows Drive<br>Malibu, CA 90265 | 2,000,000.00 |
| Ferro Trust<br>23448 Moon Shadows Drive<br>Malibu, CA 90265 | 500,000.00 |
| Dr. Melvin Glick<br>951 Mesa Grande Dr.<br>Palm Desert, CA 92211 | 250,000.00 |
| Ralph Grande<br>31 West Robertson Street<br>Palatine, IL 60067 | 750,000.00 |
| Norman Hanover<br>141 White Horse Trail<br>Palm Desert, CA 92211 | 750,000.00 |
| Brigett Hansel Andrews Estate<br>643 Palisades Beach Rd.<br>Santa Monica, CA 90402 | 1,250,000.00 |
| Miller Carbonic<br>530 West Root Street<br>Chicago, IL 60609 | 1,250,000.00 |
| Ron M. Sharrow<br>111 Desert Holly Drive<br>Palm Desert, CA 92211 | 200,000.00 |
| Kelly Watson<br>3003 2nd Street, #4<br>Santa Monica, CA 90405 | 200,000.00 |

**B6F (Official Form 6F) (12/07)**

**In re** EPD Investments LLC, **Debtor**

**Case No.** 2:10-bk-62208-ER **(If known)**

# SCHEDULE F- CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Rosemary Adamson<br>c/o Greg Adamson<br>3710 E. Goldfinch Gate Lane<br>Phoenix, AZ 85044 | | | 06/18/012 | | | | 29,068.00 |
| ACCOUNT NO.<br>Greg Adamson<br>3710 E. Goldfinch Gate Lane<br>Phoenix, AZ 8504 | | | 01/01/01<br>05/20/99 | | | | 180,540.23<br>51,171.36 |
| ACCOUNT NO.<br>Kathleen Adamson Trust<br>9609 Mountain View Terrace<br>Salinas, CA 93907 | | | 02/28/07<br>04/16/08 | | | | 54,555.23<br>25,000.00 |
| ACCOUNT NO.<br>Patricia Adamson<br>2457 E. Desert Flower<br>Phoenix, AZ 85048 | | | 06/01/03<br>05/10/00 | | | | 693,767.20<br>609,116.12 |

Subtotal➤ $

15 continuation sheets attached

Total ➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)

In re EPD Investments LLC, Debtor — Case No. 2:10-bk-62208-ER (If known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Jerry Alba<br>3910 Emerald St., #213<br>Torrance, CA 90503 | | | 10/03/80 | | | | 11,455.46 |
| ACCOUNT NO.<br>Bridgett Hansel Andrews Est.<br>643 Palisades Beach Road<br>Santa Monica, CA 90402 | | | 07/21/04<br>09/04/02 | | | | 1,080,600.70<br>121,258.87 |
| ACCOUNT NO.<br>Dan Aronovsky<br>108 Howard Drive<br>Tiburon, CA 94920 | | | 01/27/07 | | | | 30,724.87 |
| ACCOUNT NO.<br>Varoujan & Nora Aslanian<br>18781 Dylan Street<br>Northridge, CA 91326 | | | 11/01/07 | | | | 175,000.00 |
| ACCOUNT NO.<br>Barch Family<br>4933 S. Dorchester #1<br>Chicago, IL 60615 | | | 11/01/94 | | | | 211,448.40 |

Sheet no. 2 of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total ➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)



American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investmets LLC, **Debtor**

**Case No.** 2:10-bk-62208-ER **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Dave Bazenky<br>8211 22nd Street<br>Westminster, CA 92683 | | | 01/22/91 | | | | 1,000.00 |
| ACCOUNT NO.<br>Susan Bazzo<br>52 Oak Tree Drive<br>Rancho Mirage, CA 92207 | | | 11/01/06 | | | | 50,000.00 |
| ACCOUNT NO.<br>Julie Becnel<br>1905 North Avenue 52<br>Los Angeles, CA 90042 | | | 05/17/90 | | | | 5,787.11 |
| ACCOUNT NO.<br>John Belt<br>2457 E. Deser Flower Lane<br>Phoenix, AZ 85048 | | | 10/06/06<br>02/17/09 | | | | 330,000.00<br>59,000.00 |
| ACCOUNT NO.<br>Donald & Barbara Benefiel<br>811 E. Glencrest Drive<br>Spokane, WA 99208 | | | 05/01/09 | | | | 40,000.00 |

Sheet no 3 of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal ➤ $

Total ➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Marvin & Betty Blum<br>24688 Toledo Lane<br>Lake Forest, CA 92630 | | | 05/15/03 | | | | 136,845.10 |
| ACCOUNT NO.<br>Carol J. Bochner<br>2162 Gunnison Place<br>Henderson, NV 89044 | | | 06/09/08 | | | | 30,000.00 |
| ACCOUNT NO.<br>Agostino Brama<br>13738 La Jara Circle<br>Cerritos, CA 90703 | | | 12/05/88<br>12/18/07<br>09/05/02 | | | | 17,891.71<br>19,771.60<br>111,704.42 |
| ACCOUNT NO.<br>Raymond Brosio<br>7340 Eldora<br>Las Vegas, NV 89117 | | | 09/13/04 | | | | 959,149.98 |
| ACCOUNT NO.<br>Brosio Family<br>7340 Eldora<br>Las Vegas, NV 89117 | | | 09/23/99 | | | | 221,803.96 |

Sheet no 4 of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC, **Debtor**

**Case No.** 2:10-bk-62208-ER **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Steve & Cynthia Brosio<br>771 S. Buffalo Grove Rd.<br>Buffalo Grove, IL 60089 | | | 10/01/99 | | | | 94,133.96 |
| ACCOUNT NO.<br>Robert Browne<br>1420 Ambassador Bld 2 #303<br>Los Angeles, CA 90035 | | | 01/29/96 | | | | 573,815.00 |
| ACCOUNT NO.<br>Rick Browne<br>17341 Clark Street<br>Encino, CA 91316 | | | 1/13/04 | | | | 268,506.42 |
| ACCOUNT NO.<br>Suzanne Browne<br>231 Mullen Avenue<br>San Francisco, CA 94110 | | | 08/20/09 | | | | 191,457.44 |
| ACCOUNT NO.<br>Maximillian A. Mead<br>231 Mullen Avenue<br>San Francisco, CA 94110 | | | 04/1706 | | | | 74,949.98 |

Sheet no 5 of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>William Browne<br>4919 Noeline avenue<br>Encino, CA 91436 | | | 03/02/02 | | | | 251,435.35 |
| ACCOUNT NO.<br>Mitch Carter/McCarter Lsng<br>2067 Palos Verdes Dr. North<br>Lomita, CA 90717 | | | 02/15/02 | | | | 649,881.62 |
| ACCOUNT NO.<br>Alan & Gail Charap<br>517 Arrowhead Drive<br>Palm Desert, CA 92211 | | | 03/29/06 | | | | 648,413.80 |
| ACCOUNT NO.<br>Janet Cooper<br>10430 Wilshire Boulevard, #103<br>Los Angeles, CA 90024 | | | 04/07/99 | | | | 200,061.16 |
| ACCOUNT NO.<br>Larry Cooper<br>76-464 Via FIrenze<br>Indian Wells, CA 92210 | | | 01/07/99<br>04/07/00 | | | | 559,555.78<br>969,428.50 |

Sheet no 6 of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC, **Case No.** 2:10-bk-62208-ER
**Debtor** **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Brian Danielewicz<br>740 Florsheim Drive<br>Libertyville, IL 60048 | | | 12/16/08 | | | | 140,000.00 |
| ACCOUNT NO.<br>John Dittmar<br>2177 Fern Dell Place<br>Los Angeles, CA 90068 | | | 08/07/07 | | | | 534,500.00 |
| ACCOUNT NO.<br>Dorian Films<br>P.O. Box 770001<br>Cincinnati, OH 45277-0003 | | | 04/20/87 | | | | 76,720.70 |
| ACCOUNT NO.<br>Betty Druckman<br>10560 Wilshire Boulevard, #1204<br>Los Angeles, CA 90024 | | | 09/13/89 | | | | 2,078,684.00 |
| ACCOUNT NO.<br>Valerie Druckman<br>12026 Hoffman Street, #103<br>Studio City, CA 91604 | | | 04/26/05<br>08/14/06 | | | | 7,000.00<br>13,741.00 |

Sheet no 7 of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC,
**Debtor**

**Case No.** 2:10-bk-62208-ER
**(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Marilyn J. Emigh<br>84 Pepperidge Drive<br>Geneva, OH 44041 | | | 03/14/05<br>03/14/05 | | | | 82,400.00<br>35,867.79 |
| ACCOUNT NO.<br>Andrew Inkeles<br>7839 Naylor Avenue<br>Los Angeles, CA 90045 | | | 05/08/08<br>05/08/08 | | | | 221,000.00<br>210,749.44 |
| ACCOUNT NO.<br>Raymond Emigh<br>84 Pepperiidge Drive<br>Geneva, OH 44041 | | | 01/03/05<br>06/13/06<br>03/12/04 | | | | 3,690.14<br>51,347.00<br>222,106.20 |
| ACCOUNT NO.<br>Engdahi Family<br>1834 Pandora Avenue<br>Los Angeles, CA 90025 | | | 06/30/05 | | | | 44,390.13 |
| ACCOUNT NO.<br>Helen Engle<br>445 Riverfront Drive<br>Bullhead City, AZ 86442 | | | 08/01/88 | | | | 18,450.63 |

Sheet no 8_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC,
**Debtor**

**Case No.** 2:10-bk-62208-ER
**(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Kate Enggren<br>10 26th Avenue<br>Venice, CA 90291 | | | 05/14/02 | | | | 59,010.19 |
| ACCOUNT NO.<br>Erika Enggren<br>10 26th Avenue<br>Venice, CA 90291 | | | 07/07/10 | | | | 16,000.00 |
| ACCOUNT NO.<br>Brit Enggren<br>7013 Willoughby Avenue<br>Los Angeles, CA 90038 | | | 04/22/04 | | | | 47,287.41 |
| ACCOUNT NO.<br>Rick Fall<br>11569 ½ Riverside Drive<br>Valley Village, CA 93001 | | | 11/26/03 | | | | 230,982.94 |
| ACCOUNT NO.<br>Ferro Family Trust<br>1738 Vista Del Mar Avenue<br>Ventura, CA 93001 | | | 03/28/06 | | | | 350,736.34 |

Sheet no 9_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC,
**Debtor**

**Case No.** 2:10-bk-62208-ER
**(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>John & Susan Ferro<br>1738 Vista Del Mar Avenue<br>Ventura, CA 93001 | | | 02/11/08 | | | | 30,000.00 |
| ACCOUNT NO.<br>Rosa Ferro<br>23448 Mooshadows Drive<br>Malibu, CA 90265 | | | 06/04/07<br>06/04/07 | | | | 155,737.32<br>67,427.00 |
| ACCOUNT NO.<br>Thomas Ferro<br>23448 Mooshadows Drive<br>Malibu, CA 90265 | | | 02/15/01<br>07/02/04 | | | | 978,090.91<br>599,000.00 |
| ACCOUNT NO.<br>Moon Shadows<br>23448 Mooshadows Drive<br>Malibu, CA 90265 | | | 12/15/01 | | | | 396,040.00 |
| ACCOUNT NO.<br>Adam & Stacy Glick<br>14 El Quanito Way<br>Burlingame, CA 94010 | | | 02/09/07 | | | | 50,000.00 |

Sheet no 10_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC,
**Debtor**

**Case No.** 2:10-bk-62208-ER
**(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Dr. Melvin & Elen Glick<br>951 Mesa Grande Drive<br>Palm Desert, CA 92211 | | | 01/31/07 | | | | 1,395,301.66 |
| ACCOUNT NO.<br>Susan & Howard Gordon<br>1225 Idaho Avenue<br>Santa Monica, CA 90403 | | | 02/22/06 | | | | 66,227.90 |
| ACCOUNT NO.<br>Howard Gordon<br>833 Ocean Avenue #306<br>Santa Monica, CA 90403 | | | 02/25/08 | | | | 527,413.06 |
| ACCOUNT NO.<br>Susan Gordon<br>1225 Idaho Avenue<br>Santa Monica, CA 90403 | | | 03/26/07<br>12/17/03 | | | | 1,081,149.59 |
| ACCOUNT NO.<br>Ralph Grande<br>31 West Robertson Street<br>Palatine, IL 60067 | | | 10/10/07<br>02/03/09<br>02/17/02 | | | | 491,881.32<br>88,000.00<br>99,000.00 |

Sheet no 11 of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal ➤ $

Total ➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No.2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Beverlee Greene<br>34969 Mission Hills Dr.<br>Rancho Mirage, CA 92270 | | | 01/01/94 | | | | 26,435.14 |
| ACCOUNT NO.<br>RIck Gutierrez<br>1286 N. Sweetzer Avenue<br>West Hollywood, CA 90069 | | | 06/04/04 | | | | 53,280.00 |
| ACCOUNT NO.<br>Donald & Joann Hagans<br>5 Sunset Way<br>Henderson, NV 89014 | | | 04/24/06<br>07/20/06 | | | | 518,522.45<br>353,800.00 |
| ACCOUNT NO.<br>Todd & Cindy Hagans<br>7573 Javelina Ct.<br>Las Vegas, NV 89113 | | | 05/22/07 | | | | 85,000.00 |
| ACCOUNT NO.<br>Norman Hanover<br>141 White Horse Trail<br>Palm Desert, CA 92211 | | | 05/01/02<br>09/15/07 | | | | 575,663.91<br>687,568.11 |

Sheet no 12_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)



American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC, **Debtor**

**Case No.** 2:10-bk-62208-ER **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Mary Lou Hanover<br>141 White Horse Trail<br>Palm Desert, CA 92211 | | | 12/06/05 | | | | 38,944.32 |
| ACCOUNT NO.<br>Michelle Hansel<br>213 El Camino Drive<br>Beverly Hills, CA 90211 | | | 11/07/06 | | | | 529,000.00 |
| ACCOUNT NO.<br>Alan & Joyce Harvey<br>8229 Thoroughbred Street<br>Alta Loma, CA 91701 | | | 12/31/01 | | | | 593,972.94 |
| ACCOUNT NO.<br>Linda & Stephen Hirsch<br>4459 Terracemeadow Court<br>Moorpark, CA 93021 | | | 05/21/08 | | | | 50,000.00 |
| ACCOUNT NO.<br>Fred Hooper<br>19007 Prescott Drive<br>Woodinville, WA 98072 | | | 12/31/05 | | | | 8,793.72 |

Sheet no 13_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

Case 2:10-bk-62208-ER Doc 105 Filed 04/15/11 Entered 04/15/11 02:32:29 Desc Main Document Page 14 of 37
B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Arthur Heurth<br>1391 Prescott Drive<br>Volo, IL 60020 | | | 12/15/05<br>6/13/05 | | | | 238,593.42<br>211,288.90 |
| ACCOUNT NO.<br>Leslie Huerth<br>P.O. Box 372<br>Lake Zurich, IL 60047 | | | 06/13/05 | | | | 10,000.00 |
| ACCOUNT NO.<br>IPX Properties<br>address unknown | | | unknown | | | | 35,000.00 |
| ACCOUNT NO.<br>David Jenison<br>1555 Vine Street, #583V<br>Los Angeles, CA 90028 | | | 02/23/09 | | | | 141,616.52 |
| ACCOUNT NO.<br>Richard Joy<br>29500 Heather Cliff Road, #228<br>Malibu, CA 90265 | | | 01/15/09<br>01/15/09 | | | | 1,365,317.30<br>56,997.00 |

Sheet no 14_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

Case 2:10-bk-62208-ER Doc 105 Filed 04/15/11 Entered 04/15/11 02:32:29 Desc Main Document Page 15 of 37
B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Deanne Joy<br>29500 Heather Cliff Road, #228<br>Malibu, CA 90265 | | | 01/15/09 | | | | 20,000.00 |
| ACCOUNT NO.<br>Kamisher Family<br>31012 Canterbury Place<br>Laguna Niguel, CA 92677 | | | 09/12/95 | | | | 286,897.35 |
| ACCOUNT NO.<br>Kamps Family<br>3137 Hartford Court<br>Greenbay, WI 54313 | | | 10/05/99 | | | | 108,135.54 |
| ACCOUNT NO.<br>Roland Katavic<br>9904 Cozy Glen Court<br>Las Vegas, NV 89117 | | | 01/10/08 | | | | 91,242.38 |
| ACCOUNT NO.<br>Richard & Anita Keech<br>16878 Charmel Lane<br>Pacific Palisades, CA 90272 | | | 10/09/07 | | | | 963,498.00 |

Sheet no 15_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)



American LegalNet, Inc.
www.FormsWorkflow.com

Case 2:10-bk-62208-ER Doc 105 Filed 04/15/11 Entered 04/15/11 02:32:29 Desc Main Document Page 16 of 37
B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC, **Case No.** 2:10-bk-62208-ER
**Debtor** **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Sylvia Klainman<br>18210 Andrea Circle S #4<br>Northridge, CA 91325 | | | 05/20/02 | | | | 100,000.00 |
| ACCOUNT NO.<br>Edward Knowles<br>4212 Saint Clair Avenue<br>Studio City, CA 91604 | | | 03/31/97 | | | | 15,000.00 |
| ACCOUNT NO.<br>Janet Knowles<br>14 Summer Hill<br>Harbeldon, Canterbury<br>Kent, England CT28NH | | | 04/20/06 | | | | 9,000.00 |
| ACCOUNT NO.<br>Donna Kraft<br>3928 Windansea Street<br>Las Vegas, CA 89147 | | | 05/08/00<br>09/10/99 | | | | 47,086.94<br>553,223.26 |
| ACCOUNT NO.<br>Richard Kraft<br>9550 W. Sahara #2071<br>Las Vegas, NV 8917 | | | 09/10/99 | | | | 368,85.50 |

Sheet no 16_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC,
**Debtor**

**Case No.** 2:10-bk-62208-ER
**(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Cynda Lancaster<br>2208 Colony Plaza<br>Newport Beach, CA 92660 | | | 04/23/04 | | | | 315,189.7 |
| ACCOUNT NO.<br>Donna Leff<br>7165 Rockridge Terrace<br>West Hills, CA 91038 | | | 08/08/12 | | | | 172,993 |
| ACCOUNT NO.<br>Jack Leff<br>7165 Rockridge Terrace<br>West Hills, CA 91038 | | | 07/16/08<br>08/17/05 | | | | 293,853.13<br>496,616.68 |
| ACCOUNT NO.<br>Donna & Jack Leff<br>7165 Rockridge Terrace<br>West Hills, CA 91038 | | | 08/17/05 | | | | 74,187.73 |
| ACCOUNT NO.<br>Richard Lefkovits<br>5196 Hillridge Drive<br>Camarillo, CA 93012 | | | 12/27/88<br>08/05/08 | | | | 8,393,68<br>40,838.00 |

Sheet no 17_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>William Lefkowits<br>2986 Edmonton Road<br>Glendale, CA 91206-1319 | | | 01/18/05 | | | | 25,376.81 |
| ACCOUNT NO.<br>Gloria Levan<br>37-05 88th Street, Apt 5-D<br>Jackson Heights, NY 11372 | | | 12/31/95 | | | | 25,000.00 |
| ACCOUNT NO.<br>Michael Levan<br>1815 ½ Pandora Avenue<br>Los Angeles, CA 90025 | | | 12/31/95 | | | | 60,000.00 |
| ACCOUNT NO.<br>Eugene & Laura Lim<br>2202 San Vicente Blvd.<br>Santa Monica, CA 90402 | | | 11/01/03 | | | | 791,777.63 |
| ACCOUNT NO.<br>Stephen E. Lim<br>16133 Sunnyview<br>Hacienda Heights, CA 91745 | | | 10/09/07 | | | | 346,534.96 |

Sheet no 18_ of ___ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)



American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC, **Debtor**

**Case No.** 2:10-bk-62208-ER **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Brett Limdskog<br>627 N. Rossmore, #106<br>Los Angeles, CA 90004 | | | 03/21/06 | | | | 40,425.72 |
| ACCOUNT NO.<br>Orland & Vicki McCarthy<br>4616 W. Main Street<br>West Dundee, IL 60118 | | | 03/24/00 | | | | 586,705.64 |
| ACCOUNT NO.<br>Lindsie McKeon/Jane Jackson<br>735 N. Niagra Street<br>Burbank, CA 91505 | | | 10/10/07 | | | | 85,020.77 |
| ACCOUNT NO.<br>Miller Carbonic<br>530 West Root Street<br>Chicago, IL 60609 | | | 01/01/86 | | | | 867,476.80 |
| ACCOUNT NO.<br>Miller Investment Plan<br>530 West Root Street<br>Chicago, IL 60609 | | | Unknown | | | | 908,530.80 |

Sheet no 19_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)



American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC, **Debtor** **Case No.** 2:10-bk-62208-ER **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Barbara Mintz<br>333 Norwich Court<br>Munster, IN 46321 | | | 10/31/07 | | | | 198,273.05 |
| ACCOUNT NO.<br>Robert & Helen Moore<br>3475 Berry Drive<br>Studio City, CA 91604 | | | 01/09/09 | | | | 200,882.05 |
| ACCOUNT NO.<br>Robert Nardi<br>52 Oak Tree Drive<br>Rancho Mirage, CA 9227 | | | 11/01/06<br>03/05/09 | | | | 172,270.00<br>100,629.21 |
| ACCOUNT NO.<br>Robert Perry<br>4212 Saint Clair Avenue<br>Studio City, CA 9160 | | | 03/27/97 | | | | 66,190.23 |
| ACCOUNT NO.<br>Isis Burkholder<br>1834 Preston Avenue<br>Los Angeles, CA 90026 | | | 02/27/08 | | | | 293,758.65 |

Sheet no 20_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor — Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Forrest Penner/Maria Herbst<br>1834 Preston Avenue<br>Los Angeles, CA 90026 | | | 03/28/08 | | | | 727,732.21 |
| ACCOUNT NO.<br>Janice Petrook<br>25/3 Pinkas Street<br>Tel Aviv, ISRAEL 62662 | | | 12/29/03 | | | | 309,001.07 |
| ACCOUNT NO.<br>John S. Bently<br>118 Ivy Drive, #8<br>Charlottsville, VA 22903 | | | 03/01/04 | | | | 10,000.00 |
| ACCOUNT NO.<br>Ronald Pokres<br>5216 Yarmouth #302<br>Encino, CA 91316 | | | 10/01/04<br>02/02/95 | | | | 85,358.00<br>40,000.00 |
| ACCOUNT NO.<br>Lucas Pols<br>437 Sycamore Road<br>Santa Monica, CA 90402 | | | 12/31/05 | | | | 1,300.00 |

Sheet no 21_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC, **Case No.** 2:10-bk-62208-ER
**Debtor** **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>R.Pressman/M.Zeind<br>217 Centennial Street<br>Santa Cruz, CA 95060 | | | 12/31/95 | | | | 546,391.63 |
| ACCOUNT NO.<br>Jerrold Pressman<br>10 26th Street<br>Venice, CA 90291 | | | 12/31/95 | | | | 2,311,325.84 |
| ACCOUNT NO.<br>Keith Pressman<br>724 19th Street<br>Santa Monica, CA 90402 | | | 12/31/95 | | | | 2,311,325.84 |
| ACCOUNT NO.<br>Pressman Trust<br>10 26th Street<br>Venice, CA 90291 | | | 12/31/95 | | | | 101,300.00 |
| ACCOUNT NO.<br>Lynn Levine<br>Avigur 7/21, 69379 Israel,<br>Azorei Chen ISRAEL | | | 12/3/05 | | | | 419,179.91 |

Sheet no 22_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC,
**Debtor**

**Case No.** 2:10-bk-62208-ER
**(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Jeff Rappaport<br>8911 Independence Ave<br>Canoga Park, CA 91304 | | | 06/27/96 | | | | 371,511.00 |
| ACCOUNT NO.<br>Rogert Reiinhart<br>4905 Van Noord Avenue<br>Sherman Oaks, CA 91432 | | | 01/01/91<br>01/01/87 | | | | 332,667.19<br>165,178.42 |
| ACCOUNT NO.<br>John Richardson<br>9917 Robin Oaks Drive<br>Las Vegas, NV 89117 | | | 10/09/07<br>05/29/01 | | | | 336,184.14<br>498,000.00 |
| ACCOUNT NO.<br>Juan Rincon<br>4728 N. Racinee Avenue #1E<br>Chicago, IL 60640 | | | 06/12/03 | | | | 9,558.44 |
| ACCOUNT NO.<br>Michael Robins<br>190 Figone Lane<br>Ben Lomond, CA 95005 | | | 12/12/05 | | | | 182,446.71 |

Sheet no 23_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Cristina & Pon Robles<br>1448 Robles Drive<br>Chula Vista, CA 91911 | | | 01/14/04 | | | | 2,350.30 |
| ACCOUNT NO.<br>Jim Rosenbaum trust<br>21 W. 741 Beemis Road<br>Glen Ellyn, IL 60137 | | | 05/11/89 | | | | 429,812.79 |
| ACCOUNT NO.<br>Dale Saeger<br>551 E. Edwards Avenue<br>East Dundee, IL 60118 | | | 09/07/04<br>05/10/04 | | | | 81,963.47<br>160,828.31 |
| ACCOUNT NO.<br>Jayne Saeger<br>551 E. Edwards Avenue<br>East Dundee, IL 60118 | | | 07/26/02<br>04/08/03 | | | | 390,238.73<br>319,872.12 |
| ACCOUNT NO.<br>Dr. David Sauber<br>118 Ivy Drive, #8<br>Charlottesville, VA 22903 | | | 11/19/0 | | | | 60,476.27 |

Sheet no 24_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal ➤ $

Total ➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC,
**Debtor**

**Case No.** 2:10-bk-62208-ER
**(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Wilton Schiller<br>11756-D Moorepark Street<br>Studio City, CA 91604 | | | 11/24/03 | | | | 374,761.93 |
| ACCOUNT NO.<br>Shyrlee Schor<br>5216 Yarmouth, #302<br>Encino, CA 91316 | | | 02/13/95 | | | | 148,476.00 |
| ACCOUNT NO.<br>Chelsea Seltzer<br>251 Washington Avenue, #5<br>Brooklyn, NY 11205 | | | 05/24/02 | | | | 71,889.60 |
| ACCOUNT NO.<br>Jill Seltzer<br>910 N. Lake Shore Drive, #2519<br>Chicago, IL 60611 | | | 12/27/02 | | | | 117,635.00 |
| ACCOUNT NO.<br>Scott Seltzer<br>910 N. Lake Shore Drive, #2519<br>Chicago, IL 6011 | | | 10/09/07 | | | | 898,675.12 |

Sheet no 25_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Seymour Seltzer<br>1655 Lake Cook Road, #141<br>Highland Park, IL 60035 | | | 06/26/03 | | | | 473,942.51 |
| ACCOUNT NO.<br>Sheryl Seltzer<br>3152 Egan Road<br>Laguna Beach, CA 92651 | | | 12/26/01 | | | | 483,487.05 |
| ACCOUNT NO.<br>Stacey Seltzer<br>910 N. Lake Shore Drive, #2519<br>Chicago, IL 60611 | | | 06/19/00 | | | | 85,000.00 |
| ACCOUNT NO.<br>Ron M. Sharrow2211<br>111 Desert Holly drive<br>Palm Desert, CA | | | 11/09/07<br>06/18/08 | | | | 235,847.80<br>288,904.00 |
| ACCOUNT NO.<br>June B. Shayne<br>2496 Santa Ynez Way<br>Palm Springs, CA 92264 | | | 04/29/08 | | | | 299,703.05 |

Sheet no 26_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC, **Debtor**

**Case No.** 2:10-bk-62208-ER **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Scott Sherman<br>1844 Heather Court<br>Salon, IA 52333 | | | 07/23/08 | | | | 101,000.00 |
| ACCOUNT NO.<br>Fred Silver<br>2610 Gold Mine Road<br>Brookville, MD 20833 | | | 01/12/99 | | | | 290,000.00 |
| ACCOUNT NO.<br>Bobbi Sloan<br>6041 Fenwood<br>Woodland Hills, CA 91367 | | | 09/02/0 | | | | 977,563.59 |
| ACCOUNT NO.<br>Paul Sloan<br>6041 Fenwood<br>Woodland Hills, CA 91367 | | | 01/11/07 | | | | 163,70.78 |
| ACCOUNT NO.<br>Paul & Bobbi Sloan<br>6041 Fenwood<br>Woodland Hills, CA 91367 | | | 11/01/07 | | | | 130,630.35 |

Sheet no 27_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Sporting Image<br>Unknown | | | 09/30/96 | | | | 10,000.00 |
| ACCOUNT NO.<br>Cynthia Spritzer<br>263 Congressional Ave #111<br>Rockville, MD 20852 | | | 02/19/02 | | | | 291,129.12 |
| ACCOUNT NO.<br>Mark & Laura Stern<br>2422 N. Burling Street<br>Chicago, IL 60614 | | | 11/18/09 | | | | 40,000.00 |
| ACCOUNT NO.<br>Brett Strong<br>3100 Donald Douglas Loop N<br>Santa Monica, CA 90405 | | | 09/30/01 | | | | 5,876.54 |
| ACCOUNT NO.<br>Lori Sugarman<br>6321 Pine Ridge Court #3B<br>Tinley Park, IL 60477 | | | 02/98/84<br>11/03/98 | | | | 594,815.00<br>138,179.00 |

Sheet no 28 of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal ➤ $

Total ➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

Case 2:10-bk-62208-ER Doc 105 Filed 04/15/11 Entered 04/15/11 02:32:29 Desc Main Document Page 29 of 37
B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Steve Tannen<br>735 N. Niagara Street<br>Burbank, CA 91505 | | | 10/08/07 | | | | 57,738.26 |
| ACCOUNT NO.<br>Cassondra Todd<br>2208 Colony Plaza<br>Newport Beach, CA 91505 | | | 06/26/09 | | | | 90,298.63 |
| ACCOUNT NO.<br>True Position Technologies<br>24900 Avenue Stanford<br>Valencia, CA 91355 | | | 03/20/98 | | | | 5,000.00 |
| ACCOUNT NO.<br>Lynne Trecroci<br>3822-45th Avenue<br>Kenosha, WI 53144 | | | 06/29/04 | | | | 7,316.52 |
| ACCOUNT NO.<br>Susan Urban<br>699 Country Road, #216<br>Durango, CO 53144 | | | 06/23/95 | | | | 100,000.00 |

Sheet no 29_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Marietta Vise<br>2140 Bastia<br>Newport Beach, CA 92660 | | | 12/31/95 | | | | 148,414.42 |
| ACCOUNT NO.<br>Christopher Watson<br>245 Reading Road<br>East Earl, PA 17519-0158 | | | 10/09/07 | | | | 235,836.46 |
| ACCOUNT NO.<br>Elizabeth Kelly Watson<br>3003 2nd Street, #4<br>Santa Monica, CA 90405 | | | 10/03/05<br>10/25/04 | | | | 184,858.46<br>91,336.00 |
| ACCOUNT NO.<br>Wayne Weissman<br>125 White Horse Trail<br>Palm Desert, CA 92211 | | | 10/30/06 | | | | 52,000.00 |
| ACCOUNT NO.<br>Jim Wheeler<br>401 California Street<br>El Segundo, CA 90245 | | | 08/28/01<br>11/07/02 | | | | 8,230.07<br>9,500.00 |

Sheet no 30_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal ➤ $

Total ➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO.<br>Richard Joy<br>29500 Heather Cliff Road, #228<br>Malibu, CA 90265 | | | | | | | |

Sheet no 14_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal ➤ $

Total ➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Daniel Weiner<br>55 Cottage Lane<br>Aliso Viejo, CA 92656 | | | 03/11/96 | | | | 541,171.17 |
| ACCOUNT NO.<br>Robert & Jayne Wiles<br>10065 Gulf Blvd.<br>Treasure Island, FL 33796 | | | 12/03/01 | | | | 119,555.14 |
| ACCOUNT NO.<br>Lenora Zanon<br>2140 Bastia<br>Newport Beach, CA 92660 | | | 12/31/05 | | | | 73,133.01 |
| ACCOUNT NO.<br>Jackie Zeman<br>21613 Rambla Vista<br>Malibu, CA 90265 | | | 04/15/07<br>04/02/08 | | | | 1,712,148.30<br>99,373.02 |
| ACCOUNT NO.<br>Jaclyn Zeman Productions<br>21613 Rambla Vista<br>Malibu, CA 90265 | | | 02/11/08 | | | | 1,604,058.60 |

Sheet no 32_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.


In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Steve Brusio<br>771 S. Buffalo Grove Road<br>Buffalo Grove, IL 60089 | | | 01/11/01 | | | | 21,000.00 |
| ACCOUNT NO.<br>Cynthia Brosio<br>771 S. Buffalo Grove Road<br>Buffalo Grove, IL 60089 | | | 01/30/01 | | | | 61,249.76 |
| ACCOUNT NO.<br>John Richardson<br>9917 Robin Oaks Drive<br>Las Vegas, NV 89117 | | | 10/09/07 | | | | 195,168.81 |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |

Sheet no 33_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC, **Debtor**

**Case No.** 2:10-bk-62208-ER **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>John Dittmar<br>2177 Fern Dell Place<br>Los Angeles, CA 90068 | | | UNKNOWN | X | | | 318,200.00 |
| ACCOUNT NO.<br>Pat Adamson<br>2457 E. Desert Flower<br>Phoenix, AZ 85048 | | | UNKNOWN | X | | | 172,736.68 |
| ACCOUNT NO.<br>Mitch Carter<br>2067 Palos Verdes Dr. North<br>Lomita, CA 90717 | | | UNKNOWN | X | | | 186,508.15 |
| ACCOUNT NO.<br>Raymond Emigh<br>84 Pepperidge Dr.<br>Geneva, OH 44041-9106 | | | UNKNOWN | X | | | 60,000.00 |
| ACCOUNT NO.<br>Fall Leasing<br>11569 ½ Riverside Drive<br>Valley Village, CA 91602 | | | UNKNOWN | X | | | 31,774.92 |

Sheet no 34_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Grande Canyon Leasing<br>31 West Robertson Street<br>Palatine, IL 60067 | | | UNKNOWN | X | | | 32,000.00 |
| ACCOUNT NO.<br>Stanton Greene<br>34969 Mission Hills Drive<br>Rancho Mirage, CA 92270 | | | UNKNOWN | X | | | 39,408.32 |
| ACCOUNT NO.<br>Arthur Huerth<br>1391 Prescott Drive<br>Volo, IL 60020 | | | UNKNOWN | X | | | 380,770.80 |
| ACCOUNT NO.<br>William Jetter<br>209 Oakfield Estates Drive<br>Plainfield, IL 60586 | | | UNKNOWN | X | | | 128,326.08 |
| ACCOUNT NO.<br>Kraft Leasing<br>3928 Windansea Street<br>Las Vegas, NV 89147 | | | UNKNOWN | X | | | 200,951.93 |

Sheet no 35_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal ➤ $

Total ➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

**In re** EPD Investments LLC,
**Debtor**

**Case No.** 2:10-bk-62208-ER
**(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Moon Shadows Leasing<br>23448 Moon Shadows Drive<br>Malibu, CA 90265 | | | UNKNOWN | X | | | 7,062.65 |
| ACCOUNT NO.<br>Roger Reinhart<br>4905 Van Noord Avenue<br>Sherman Oaks, CA 91423 | | | UNKNOWN | X | | | 33,465.32 |
| ACCOUNT NO.<br>Wilton Schiller<br>11756-D Moorepark Street<br>Studio City, CA 91604 | | | UNKNOWN | X | | | 114,742.64 |
| ACCOUNT NO.<br>Shadow Springs<br>111 Desert Holly Drive<br>Palm Desert, CA 92211 | | | UNKNOWN | X | | | 9,973.16 |
| ACCOUNT NO.<br>Bobbi Sloan<br>6041 Fenwood<br>Woodland Hills, CA 9 | | | UNKNOWN | X | | | 51,898.98 |

Sheet no 36_ of __ continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B6F (Official Form 6F) (12/07) - Cont.

In re EPD Investments LLC, Debtor

Case No. 2:10-bk-62208-ER (if known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Paul & Bobbi Sloan<br>6041 Fenwood<br>Woodland Hills, CA 91367 | | | UNKNOWN | X | | | 125,038.25 |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |

Sheet no 37_ of 37 continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal➤ $

Total➤ $ 57,237,483.35
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)


American LegalNet, Inc.
www.FormsWorkflow.com

B 6G (Official Form 6G) (12/07)

**In re** EPD Investments LLC , **Debtor** **Case No.** 2:10-bk-62208-ER **(if known)**

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☑ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

B 6H (Official Form 6H) (12/07)

**In re** EPD Investments LLC ,
**Debtor**

**Case No.** 2:10-bk-62208-ER
**(if known)**

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by the debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☑ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| | |

# EXHIBIT AAA

B201 - Notice of Available Chapters (Rev. 11/11) USBC, Central District of California

Name: **Ian S. Landsberg, Esq.**
Address: **16030 Ventura Blvd., Suite 470**
**Encino, CA 91436**
Telephone: **(818) 855-5900** Fax: **(818) 855-5910**

■ Attorney for Debtor
☐ Debtor in Pro Per

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| List all names including trade names, used by Debtor(s) within last 8 years: | Case No.: **2:12-bk-13760** |
|---|---|
| **Jerrold S. Pressman** | **NOTICE OF AVAILABLE CHAPTERS**<br>(Notice to Individual Consumer Debtor Under § 342(b) of the Bankruptcy Code) |

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition. In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address. If you are filing a **joint case** (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

## 1. Services Available from Credit Counseling Agencies

**With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis**. The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies. Each debtor in a joint case must complete the briefing.

**In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge**. The clerk also has a list of approved financial management instructional courses. Each debtor in a joint case must complete the course.

## 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

### Chapter 7: Liquidation ($245 filing fee, $46 administrative fee, $15 trustee surcharge: Total Fee $306)

1. Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.
2. Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.
3. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.

4. Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $46 administrative fee: Total fee $281)**

1. Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.
2. Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.
3. After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

**Chapter 11: Reorganization ($1000 filing fee, $46 administrative fee: Total fee $1046)**

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

**Chapter 12: Family Farmer or Fisherman ($200 filing fee, $46 administrative fee: Total fee $246)**

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

**3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials**

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

## Certificate of the Debtor

I (We), the debtor(s), affirm that I (we) have received and read this notice.

| | | | |
|---|---|---|---|
| **Jerrold S. Pressman** | X | **/s/ Jerrold S. Pressman** | **February 29, 2012** |
| Printed Name(s) of Debtor(s) | | Signature of Debtor | Date |
| Case No. (if known) **2:12-bk-13760** | X | | |
| | | Signature of Joint Debtor (if any) | Date |

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## Central District of California - Los Angeles Division

In re **Jerrold S. Pressman**, Debtor

Case No. **2:12-bk-13760**

Chapter **7**

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 6 | 27,158.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 25,509,579.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 3 | | 90,000.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 32 | | 119,268,054.71 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 1,724.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 1,715.00 |
| Total Number of Sheets of ALL Schedules | | 48 | | | |
| | | Total Assets | 27,158.00 | | |
| | | | Total Liabilities | 144,867,633.71 | |



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Form 6 - Statistical Summary (12/07)

# United States Bankruptcy Court
## Central District of California - Los Angeles Division

In re **Jerrold S. Pressman**, Debtor

Case No. **2:12-bk-13760**

Chapter **7**

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

■ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | |
| Student Loan Obligations (from Schedule F) | |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | |
| TOTAL | |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | |
| Average Expenses (from Schedule J, Line 18) | |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | |
| 4. Total from Schedule F | | |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | |



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6A (Official Form 6A) (12/07)

In re **Jerrold S. Pressman**, Debtor

Case No. **2:12-bk-13760**

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **None** | | | | |

Sub-Total > **0.00** (Total of this page)

Total > **0.00**

**0** continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

1629

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com 

B6B (Official Form 6B) (12/07)

In re **Jerrold S. Pressman**, Debtor — Case No. **2:12-bk-13760**

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | NONE | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Checking Account<br>J S Pressman<br>City National Bank<br>Account No. xx8507** | - | **1,658.00** |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | **Miscellanous clothes and shoes** | - | **500.00** |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

Sub-Total > **2,158.00**
(Total of this page)

**5** continuation sheets attached to the Schedule of Personal Property



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re **Jerrold S. Pressman**, Debtor

Case No. **2:12-bk-13760**

# SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | **Fallbrook Investments, LLC**<br><br>**The Debtor is a 43.5% interest holder of Fallbrook Investments, LLC ("Fallbrook"), a Mississippi limited liability company. Fallbrook was formed in 2004 and originally owned 747 acres of vacant land in Mississippi. Thereafter Fallbrook transferred the land to the bank in exchange for an agreement to manage the land in Mississippi and 80% profit participation. Other than a bank account with nominal funds and the management agreement, Fallbrook has no assets. Fallbrook's liabilities include approximately $11.5 million owed to the bank, approximately $899,000 to the Debtor and approximately $1.8 million to Lamsall, LLC (see below). Fallbrook has not generated any revenue since its formation.** | - | **0.00** |
| | | **EPD Investment Co., LLC**<br><br>**The Debtor is an 80% interest holder of EPD Investments Co., LLC ("EPD"). EPD is currently in an involuntary chapter 7 bankruptcy case, pending in the Central Disrict of California, Los Angeles Division, assigned case number 2:10-bk-62208-ER.** | - | **0.00** |
| | | **Broadway Entertainment Marketing, Inc.**<br><br>**The Debtor is a 49% shareholder of Broadway Entertainment Marketing, Inc. ("Broadway"). The company was formed in 1992 to provide marketing services in the entertainment industry. The company has no assets or liabilities. Broadway ceased operations in December 2009.** | - | **0.00** |

Sub-Total > **0.00**
(Total of this page)

Sheet **1** of **5** continuation sheets attached to the Schedule of Personal Property



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc Main Document Page 8 of 101

B6B (Official Form 6B) (12/07) - Cont.

In re **Jerrold S. Pressman**, Debtor    Case No. **2:12-bk-13760**

# SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| Type of Property | NONE | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | **Ice Specialty Entertainment, Inc.**<br><br>**The Debtor is 43% shareholder in Ice Specialty Entertainment, Inc. ("Ice Specialty"). Ice Specialty was formed in Delaware in 1994 to manage multiple ice skating rinks. The company did not have any assets or liabilities. The company ceased operations in approximately 2004.** | **-** | **0.00** |
| | | **SC Club L.P. d/b/a Key Club**<br><br>**The Debtor is a limited partner of SC Club L.P. SC Club was formed in 1997 and operated as a music and nightclub venue on Sunset Boulevard in Los Angeles. SC, Inc. (see below) is general partner for this company. Assets include leasehold improvements in the building. The company subleased the space and the "Key Club" name to the current tenant, and also pledged a security interest in the leasehold improvements and the name to the landlord. Liabilities exceed the assets by approximately $3 million. The company ceased operations in 2009. The company and the Debtor are currently defendants in a lawsuit filed by the landlord for unpaid rent.** | **-** | **0.00** |
| | | **SC, Inc.**<br><br>**The Debtor is a 49% shareholder of SC, Inc. ("SC"). As set forth above, SC is a general partner of SC Club L.P. SC was formed in 1993 to manage the nightclub in Morongo Casino. Other than its general partnership interest in SC Club L.P., the company has no assets. The company also has no liabilities and ceased doing business in 2009.** | **-** | **0.00** |
| | | **Sidecreek Development, Inc. f/k/a Creekside Development, Inc.**<br><br>**The Debtor has a 50% interest in Sidecreek Development Inc. ("Sidecreek"). Sidecreek is a Tennessee corporation formed in October 2004 as "Creekside Development, Inc.". The company's sole asset is approximately 250 acres of vacant hillside in Brentwood and Franklin, TN valued at approximately $8 million as undeveloped land. The liabilities are approximately $4.5 million.** | **-** | **0.00** |

Sub-Total > **0.00**
(Total of this page)

Sheet **2** of **5** continuation sheets attached to the Schedule of Personal Property



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com    Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 9 of 101

B6B (Official Form 6B) (12/07) - Cont.

In re **Jerrold S. Pressman**, Debtor

Case No. **2:12-bk-13760**

# SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| Type of Property | NONE | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | **Lamsall, LLC**<br><br>**The Debtor has a 43% membership interest in Lamsall, LLC. Lamsall was originally formed to acquire the property located in Mississippi. The company has no assets and its liabilities include approximately $1.8 million owed to Fallbrook Investments, LLC.** | - | 0.00 |
| | | **JSP Properties Inc.**<br><br>**The Debtor is 50% shareholder of JSP Properties Inc. ("JSP"). JSP was formed in or around 1994 to develop, acquire and sell land in Tennessee. The company has no liabilities.**<br>**Debtor's shares valued at approximately $25,000.** | - | 25,000.00 |
| | | **RBT LLC**<br><br>**The Debtor has a 50% interest in this company. RBT was formed in about 1997 to finance the construction of an ice skating rink in Addison, Texas. Assets include a note and 2nd priority security interest against the building. The company has no liabilities. The company has not generated any revenue since 2006.** | - | 0.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Accounts receivable for shareholder loan to Fallbrook Investments, LLC for $899,000.** | - | 0.00 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |

Sub-Total > **25,000.00**
(Total of this page)

Sheet **3** of **5** continuation sheets attached to the Schedule of Personal Property



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 16 of 101

B6B (Official Form 6B) (12/07) - Cont.

In re **Jerrold S. Pressman**, Debtor

Case No. **2:12-bk-13760**

# SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |

Sub-Total > **0.00**
(Total of this page)

Sheet **4** of **5** continuation sheets attached to the Schedule of Personal Property



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com
Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re **Jerrold S. Pressman**, Debtor

Case No. **2:12-bk-13760**

# SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Sub-Total > **0.00**
(Total of this page)

Total > **27,158.00**

Sheet **5** of **5** continuation sheets attached to the Schedule of Personal Property

(Report also on Summary of Schedules)



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com
Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 12 of 101

B6C (Official Form 6C) (4/10)

In re **Jerrold S. Pressman**, Debtor    Case No. **2:12-bk-13760**

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)
☐ 11 U.S.C. §522(b)(2)
■ 11 U.S.C. §522(b)(3)

☐ Check if debtor claims a homestead exemption that exceeds $146,450. *(Amount subject to adjustment on 4/1/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.)*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| **Checking Account<br>J S Pressman<br>City National Bank<br>Account No. xx8507** | **C.C.P. § 703.140(b)(5)** | **1,658.00** | **1,658.00** |
| **Wearing Apparel** | | | |
| **Miscellanous clothes and shoes** | **C.C.P. § 703.140(b)(3)** | **500.00** | **500.00** |
| **Stock and Interests in Businesses** | | | |
| **JSP Properties Inc.<br><br>The Debtor is 50% shareholder of JSP Properties Inc. ("JSP"). JSP was formed in or around 1994 to develop, acquire and sell land in Tennessee. The company has no liabilities. Debtor's shares valued at approximately $25,000.** | **C.C.P. § 703.140(b)(5)** | **21,592.00** | **25,000.00** |
| | Total: | **23,750.00** | **27,158.00** |

**0** continuation sheets attached to Schedule of Property Claimed as Exempt


Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com    Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re **Jerrold S. Pressman**, Debtor

Case No. **2:12-bk-13760**

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **0039061338**<br>**Aurora Bank**<br>**2617 College Park**<br>**Scottsbluff, NE 69363** | | - | **12/17/2004**<br>**1st Trust Deed**<br>**Single family residence**<br>Value $ **Unknown** | | | | **494,946.00** | **Unknown** |
| Account No. **N/A**<br>**EPD Investment Co. LLC**<br>**601 S. Figueroa St. Ste. 3900**<br>**Los Angeles, CA 90017** | | - | **Security Agreement and UCC-1**<br>**EPD Investment Co., LLC**<br>Value $ **0.00** | | | | **25,000,000.00** | **Unknown** |
| Account No. **0000-0511-957-650**<br>**U.S. Bank**<br>**P.O. Box 790179**<br>**Saint Louis, MO 63179** | | - | **12/2008**<br>**Auto Loan**<br>**Chevrolet Pickup Truck**<br>Value $ **Unknown** | | | | **14,633.00** | **Unknown** |
| Account No. | | | Value $ | | | | | |
| | | | | | | Subtotal (Total of this page) | **25,509,579.00** | **0.00** |
| | | | | | | Total (Report on Summary of Schedules) | **25,509,579.00** | **0.00** |

**0** continuation sheets attached



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com
Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 14 of 101

B6E (Official Form 6E) (4/10)

.

In re **Jerrold S. Pressman**, Debtor

Case No. **2:12-bk-13760**

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

■ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,600* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* *Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

**2** continuation sheets attached

1638

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 15 of 101

B6E (Official Form 6E) (4/10) - Cont.

In re **Jerrold S. Pressman**, Debtor

Case No. **2:12-bk-13760**

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

(Continuation Sheet)

**Domestic Support Obligations**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY / AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br>**Sharin Bowers**<br>**4906 W. 131st Street**<br>**Hawthorne, CA 90250** | | - | **Domestic Support** | | | | **90,000.00** | **Unknown**<br>**Unknown** |
| Account No. | | | | | | | | |
| Account No. | | | | | | | | |
| Account No. | | | | | | | | |
| Account No. | | | | | | | | |

Sheet **1** of **2** continuation sheets attached to Schedule of Creditors Holding Unsecured Priority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | **90,000.00** | **0.00**<br>**0.00** |



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc Main Document Page 16 of 101

B6E (Official Form 6E) (4/10) - Cont.

In re **Jerrold S. Pressman**, Debtor    Case No. **2:12-bk-13760**

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

(Continuation Sheet)

**Taxes and Certain Other Debts Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|
| Account No.<br>**Franchise Tax Board**<br>**Bankruptcy Section, MS: A-340**<br>**P.O. Box 2952**<br>**Sacramento, CA 95812** | | - | **For Notice Purposes Only** | | | | 0.00 | 0.00 | 0.00 |
| Account No.<br>**Internal Revenue Service**<br>**P.O. Box 7346**<br>**Philadelphia, PA 19101** | | - | **For Notice Purposes Only** | | | | 0.00 | 0.00 | 0.00 |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Subtotal (Total of this page) | | | | | | | 0.00 | 0.00 | 0.00 |
| Total (Report on Summary of Schedules) | | | | | | | 90,000.00 | 0.00 | 0.00 |

Sheet 2 of 2 continuation sheets attached to Schedule of Creditors Holding Unsecured Priority Claims

1640

B6F (Official Form 6F) (12/07)

In re **Jerrold S. Pressman** Case No. **2:12-bk-13760**
Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding unsecured claims without priority against the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns).

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Adam & Stacy Glick**<br>**14 El Quanito Way**<br>**Burlingame, CA 94010** | | **N A** | **02/09/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **50,000.00** |
| ACCOUNT NO.<br>**Agostino Brama**<br>**13738 La Jara Circle**<br>**Cerritos, CA 90703** | | **N A** | **12/05/88- 12/18/07- 06/05/02**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **149,367.73** |
| ACCOUNT NO.<br>**Alan & Gail Charap**<br>**517 Arrowhead Drive**<br>**Palm Desert, CA 92211** | | **N A** | **03/29/06**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **648,413.80** |

Sheet 1 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **SC108418**<br>**Alan C. Harvey**<br>**c/o The Cowan Law Firm**<br>**1541 Ocean Ave. Ste. 200**<br>**Santa Monica, CA 90401** | | **NA** | **6/15/2010**<br>**Lawsuit** | | **X** | **X** | **593,972.94** |
| ACCOUNT NO.<br>**Alfonso Ribero**<br>**10639 Blix St.**<br>**North Hollywood, CA 91602** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **168,000.00** |
| ACCOUNT NO. **YC066010**<br>**American Express Centurion Bank**<br>**c/o Zwicker & Associates**<br>**199 South Robles Avenue**<br>**Pasadena, CA 91101** | | **NA** | **11/29/11**<br>**Lawsuit** | | **X** | **X** | **0.00** |
| ACCOUNT NO. **3746-319084-97266**<br>**AMEX**<br>**P.O. Box 301200**<br>**Los Angeles, CA 90030** | | **NA** | **Business Debt** | | **X** | **X** | **4,457.76** |
| ACCOUNT NO. **3713-825034-38007**<br>**AMEX**<br>**P.O. Box 0001**<br>**Los Angeles, CA 90096** | | **NA** | **Business Debt** | | **X** | **X** | **130,595.32** |
| ACCOUNT NO.<br>**Andrew Inkeles**<br>**7839 Naylor Avenue**<br>**Los Angeles, CA 90045** | | **NA** | **05/08/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **431,749.44** |

Sheet 2 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 19 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Arthur Heurth**<br>**1391 Prescott Drive**<br>**Volo, IL 60020** | | **N A** | **2005**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **449,882.32** |
| ACCOUNT NO. **1:2010cv05049**<br>**Arthur Huerth**<br>**c/o Sara Elcood Cook**<br>**33 N. LaSalle St. Suite 1400**<br>**Woodstock, IL 60098** | | **N A** | **8/11/10**<br>**Lawsuit** | | **X** | **X** | **380,770.80** |
| ACCOUNT NO. **4800120698742836**<br>**Bank of America Visa**<br>**P.O. Box 301200**<br>**Los Angeles, CA 90030** | | **N A** | | | **X** | **X** | **105,073.30** |
| ACCOUNT NO.<br>**Barbara Mintz**<br>**333 Norwich COurt**<br>**Munster, IN 46321** | | **N A** | **10/31/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **198,273.05** |
| ACCOUNT NO.<br>**Barch Family**<br>**4933 S. Dorchester #1**<br>**Chicago, IL 60615** | | **N A** | **11/01/94**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **211,448.40** |

Sheet 3 of 32 total sheets in Schedule of Creditors
Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re Jerrold S. Pressman Case No 2:12-bk-13760

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. BC450557<br>Betty Druckman<br>c/o John C. Torjesen & Associates<br>612 N. Sepulveda Blvd. 2nd Fl<br>Los Angeles, CA 90049 | | N A | 12/2/10<br>Lawsuit | | X | X | 2,078,684.00 |
| ACCOUNT NO.<br>Beverlee Greene<br>34969 Mission Hills Drive<br>Rancho Mirage, CA 92270 | | N A | 01/01/94<br>Business Debt (EPD Investment Co., LLC) | | X | X | 26,435.14 |
| ACCOUNT NO.<br>Bobbi Sloan<br>6041 Fenwood<br>Woodland Hills, CA 91367 | | N A | 9/2/07<br>Business Debt (EPD Investment Co., LLC) | | X | X | 1,029,462.57 |
| ACCOUNT NO.<br>Brent Limdskog<br>627 N. Rossmore #106<br>Los Angeles, CA 90004 | | N A | 03/21/06<br>Business Debt (EPD Investment Co., LLC) | | X | X | 40,425.72 |
| ACCOUNT NO.<br>Brett Strong<br>3100 Donald Douglas Loop N<br>Santa Monica, CA 90405 | | N A | 9/30/01<br>Business Debt (EPD Investment Co., LLC) | | X | X | 5,879.54 |

Sheet 4 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Brian Danielewicz**<br>**740 Florsheim Drive**<br>**Libertyville, IL 60048** | | **NA** | **12/16/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **140,000.00** |
| ACCOUNT NO.<br>**Bridgett Hansel Andrews Est.**<br>**643 Palisades Beach Road**<br>**Santa Monica, CA 90402** | | **NA** | **9/04/02- 7/21/04**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,201,859.57** |
| ACCOUNT NO.<br>**Bright Conscience Trust**<br>**754 Swarthmore Avenue**<br>**Pacific Palisades, CA 90272** | | **NA** | **9/11/09**<br>**Business Debt (EPD Investment Co., LLC - relating to UCC-1 of All Assets)** | | **X** | **X** | **2,000,000.00** |
| ACCOUNT NO.<br>**Brit Enggren**<br>**7013 Willoughby Avenue**<br>**Los Angeles, CA 90038** | | **NA** | **04/22/04**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **47,287.41** |
| ACCOUNT NO. **2:11-cv-04574**<br>**CAMOFI Master LDC.**<br>**c/o Bracewell & Guiliani**<br>**111 Congress Avenue Suite 2300**<br>**Austin, TX 78701** | | **NA** | **5/26/11**<br>**Lawsuit** | | **X** | **X** | **0.00** |

Sheet 5 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 22 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community HWJC | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Carol J. Bochner**<br>**2162 Gunnison Place**<br>**Henderson, NV 89044** | | **NA** | **06/09/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **30,000.00** |
| ACCOUNT NO.<br>**Cassondra Todd**<br>**2208 Colony Plaza**<br>**Newport Beach, CA 92660** | | **NA** | **6/26/09**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **90,298.63** |
| ACCOUNT NO. **4366-1730-0184-7784**<br>**Chase Visa**<br>**P.O. Box 94014**<br>**Palatine, IL 60094** | | **NA** | **Business Debt** | | **X** | **X** | **26,557.00** |
| ACCOUNT NO.<br>**Chelsea Seltzer**<br>**251 Washington Avenue #5**<br>**Brooklyn, NY 11205** | | **NA** | **05/24/02**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **71,889.60** |
| ACCOUNT NO.<br>**Christopher Watson**<br>**245 Reading Road**<br>**East Earl, PA 17519** | | **NA** | **10/9/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **235,836.46** |
| ACCOUNT NO.<br>**Creditors Trade Ass.**<br>**3785 Brickway Blvd. Suite 210**<br>**Santa Rosa, CA 95403** | | **NA** | **Consumer Debt** | | **X** | **X** | **24,148.00** |



Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Cristina & Pon Robles**<br>**1448 Robles Dr**<br>**Chula Vista, CA 91911** | | **N A** | **01/14/04**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **2,350.30** |
| ACCOUNT NO.<br>**Cynda Lancaster**<br>**2208 Colony Plaza**<br>**Newport Beach, CA 92660** | | **N A** | **04/23/04**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **315,189.70** |
| ACCOUNT NO.<br>**Cynthia Brosio**<br>**771 S Buffalo Grove Road**<br>**Buffalo Grove, IL 60089** | | **N A** | **1/30/01**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **61,249.76** |
| ACCOUNT NO.<br>**Cynthia Spirtzer**<br>**263 Congressional Ave #111**<br>**Rockville, MD 20852** | | **N A** | **2/19/02**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **291,129.12** |
| ACCOUNT NO.<br>**Dale Saeger**<br>**551 E. Edwards Avenue**<br>**East Dundee, IL 60118** | | **N A** | **2004**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **242,791.78** |
| ACCOUNT NO.<br>**Dan Aronovsky**<br>**108 Howard Drive**<br>**Belvedere Tiburon, CA 94920** | | **N A** | **01/27/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **30,724.87** |

Sheet 7 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Dave Bazenky**<br>**8211 22nd Street**<br>**Westminster, CA 92683** | | **NA** | **01/22/91**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,000.00** |
| ACCOUNT NO.<br>**David Jenison**<br>**1555 Vine Street, #583V**<br>**Los Angeles, CA 90028** | | **NA** | **02/23/09**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **141,616.52** |
| ACCOUNT NO.<br>**David Weiner**<br>**55 Cottage Lane**<br>**Aliso Viejo, CA 92656** | | **NA** | **3/11/96**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **541,171.17** |
| ACCOUNT NO.<br>**Deanne Joy**<br>**29500 Heather Cliff Road, #228**<br>**Malibu, CA 90265** | | **NA** | **01/15/09**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **20,000.00** |
| ACCOUNT NO.<br>**Donald & Barbara Benefiel**<br>**811 E. Glencrest Drive**<br>**Spokane, WA 99208** | | **NA** | **05/01/09**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **40,000.00** |
| ACCOUNT NO.<br>**Donald & Joann Hagans**<br>**5 Sunset Way**<br>**Henderson, NV 89014** | | **NA** | **2006**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **872,322.45** |

Sheet 8 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 25 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | H W J C (Husband, Wife, Joint, or Community) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Donna & Jack Leff**<br>**7165 Rockridge Terrace**<br>**West Hills, CA 91038** | | **NA** | **08/17/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **74,187.73** |
| ACCOUNT NO.<br>**Donna Kraft**<br>**3928 Windansea Street**<br>**Las Vegas, NV 89147** | | **NA** | **09/10/99- 5/8/00**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **600,310.20** |
| ACCOUNT NO.<br>**Donna Leff**<br>**7165 Rockridge Terrace**<br>**West Hills, CA 91038** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **172,993.00** |
| ACCOUNT NO.<br>**Dorian Films**<br>**P.O. Box 770001**<br>**Los Angeles, CA 90068** | | **NA** | **04/20/87**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **76,720.70** |
| ACCOUNT NO.<br>**Dr. David Sauber**<br>**118 Ivy Drive #8**<br>**Charlottesville, VA 22903** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **60,476.27** |
| ACCOUNT NO.<br>**Dr. Melvin & Elen Glick**<br>**951 Mesa Grande Drive**<br>**Palm Desert, CA 92211** | | **NA** | **01/31/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,395,301.66** |

Sheet 9 of 32 total sheets in Schedule of Creditors
Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Edward Knowles**<br>**4212 Saint Clair Avenue**<br>**Studio City, CA 91604** | | **N A** | **03/31/97**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **15,000.00** |
| ACCOUNT NO.<br>**Elizabeth Kelly Watson**<br>**3003 2nd Street #4**<br>**Santa Monica, CA 90405** | | **N A** | **10/25/04- 10/3/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **276,194.46** |
| ACCOUNT NO.<br>**Engdahi Family**<br>**1834 Pandora Ave**<br>**Los Angeles, CA 90025** | | **N A** | **06/30/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **44,390.13** |
| ACCOUNT NO.<br>**Erika Enggren**<br>**10 26th Avenue**<br>**Venice, CA 90291** | | **N A** | **07/07/10**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **16,000.00** |
| ACCOUNT NO.<br>**Eugene & Laura Lim**<br>**2202 San Vincente Blvd**<br>**Santa Monica, CA 90402** | | **N A** | **11/01/03**<br>**Business Debt (EPD Investment Co, LLC)** | | **X** | **X** | **791,777.63** |
| ACCOUNT NO.<br>**Fall Leasing**<br>**11569 1/2 Riverside Dr**<br>**North Hollywood, CA 91602** | | **N A** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **21,774.92** |

Sheet 10 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc Main Document Page 27 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Ferro Family Trust<br>1738 Vista Del Mar Avenue<br>Ventura, CA 93001** | | **N A** | **03/28/06<br>Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **350,736.34** |
| ACCOUNT NO.<br>**Forrest Penner/Maria Herbst<br>1834 Preston Avenue<br>Los Angeles, CA 90026** | | **N A** | **03/28/08<br>Business Debt (EPD Investment Co, LLC)** | | **X** | **X** | **727,732.21** |
| ACCOUNT NO.<br>**Fraft Leasing<br>3928 Windansea Street<br>Las Vegas, NV 89147** | | **N A** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **200,951.93** |
| ACCOUNT NO.<br>**Fred Hooper<br>19007 Prescott Drive<br>Woodinville, WA 98072** | | **N A** | **12/31/05<br>Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **8,793.72** |
| ACCOUNT NO.<br>**Fred Silver<br>2610 Gold Mine Rd<br>Brookeville, MD 20833** | | **N A** | **1/12/99<br>Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **290,000.00** |
| ACCOUNT NO.<br>**Gloria Levan<br>37-05 88th St Apt. 5-D<br>Jackson Heights, NY 11372** | | **N A** | **12/31/1995<br>Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **25,000.00** |

Sheet 11 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com 

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc Main Document Page 28 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Grande Canyon Leasing**<br>**31 West Robertson St**<br>**Los Angeles, CA 90067** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **32,000.00** |
| ACCOUNT NO.<br>**Greg Adamson**<br>**3710 E. Goldfinch Gate Lane**<br>**Phoenix, AZ 85044** | | **NA** | **05/20/99- 01/01/01**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **231,711.59** |
| ACCOUNT NO.<br>**Helen Engle**<br>**445 Riverfront Drive**<br>**Bullhead City, AZ 86442** | | **NA** | **08/01/88**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **18,450.63** |
| ACCOUNT NO.<br>**HMB Holdings, LLC**<br>**23448 Moon Shadows Drive**<br>**Malibu, CA 90265** | | **NA** | **9/15/09**<br>**Business Debt (EPD Investment Co., LLC - relating to UCC-1 of All Assets)** | | **X** | **X** | **11,250,000.00** |
| ACCOUNT NO.<br>**Howard Gordon**<br>**833 Ocean Avenue #306**<br>**Santa Monica, CA 90403** | | **NA** | **02/25/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **527,413.06** |

Sheet 12 of 32 total sheets in Schedule of Creditors
Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 25 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Jack Leff**<br>**7165 Rockridge Terrace**<br>**West Hills, CA 91038** | | **N A** | **08/17/05- 07/16/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **790,469.81** |
| ACCOUNT NO.<br>**Jaclyn Zeman Productions**<br>**21613 Rambla Vista**<br>**Malibu, CA 90265** | | **N A** | **2/11/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **3,415,579.92** |
| ACCOUNT NO.<br>**Janet Cooper**<br>**10430 Wilshire Blvd. #103**<br>**Los Angeles, CA 90024** | | **N A** | **04/07/99**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **200,061.16** |
| ACCOUNT NO.<br>**Janet Knowles**<br>**14 Summer Hill**<br>**Harbeldon Canterbury**<br>**Kent England CT28NH** | | **N A** | **04/20/06**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **9,000.00** |
| ACCOUNT NO.<br>**Janice Petrook**<br>**25/3 Pinkas Street**<br>**Tel Avia, Israel 62662** | | **N A** | **12/29/03**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **309,001.07** |
| ACCOUNT NO.<br>**Jayne Saeger**<br>**551 E. Edwards Avenue**<br>**East Dundee, IL 60118** | | **N A** | **7/26/02-04/08/03**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **710,110.85** |

Sheet 13 of 32 total sheets in Schedule of Creditors
Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 30 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Jeff Rappaport**<br>**8911 Independence Ave**<br>**Canoga Park, CA 91304** | | **NA** | **06/27/96**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **371,511.00** |
| ACCOUNT NO. **BC427112**<br>**Jenny Lee LLC.**<br>**c/o Jung Harold Attorney at Law**<br>**16055 Ventura Blvd.**<br>**Encino, CA 91436** | | **NA** | **12/1/09**<br>**Lawsuit** | | **X** | **X** | **200,000.00** |
| ACCOUNT NO.<br>**Jery Alba**<br>**3910 Emerald St., #213**<br>**Torrance, CA 90503** | | **NA** | **10/03/80**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **11,455.46** |
| ACCOUNT NO.<br>**Jill Seltzer**<br>**910 N. Lake Shore Drive, # 2519**<br>**Chicago, IL 60611** | | **NA** | **12/27/02**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **117,635.00** |
| ACCOUNT NO.<br>**Jim Rosenbaum Trust**<br>**21 W 741 Beemis Road**<br>**Glen Ellyn, IL 60137** | | **NA** | **05/11/89**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **429,812.79** |
| ACCOUNT NO.<br>**Jim Wheeler**<br>**401 California St**<br>**El Segundo, CA 90245** | | **NA** | **8/28/01- 11/07/02**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **17,730.07** |

Sheet 14 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc Main Document Page 31 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Debtor(s) Case No **2:12-bk-13760**

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**John & Susan Ferro**<br>**1738 Vista Del Mar Avenue**<br>**Ventura, CA 93001** | | **NA** | **02/11/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **30,000.00** |
| ACCOUNT NO.<br>**John Belt**<br>**2457 E. Deser Flower Lane**<br>**Phoenix, AZ 85048** | | **NA** | **10/06/06- 02/17/09**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **389,000.00** |
| ACCOUNT NO. **BC446372**<br>**John Dittmar**<br>**c/o Alan S. Gutman Esq.**<br>**9401 Wilshire Blvd. #575**<br>**Beverly Hills, CA 90212** | | **NA** | **10/1/10**<br>**Lawsuit** | | **X** | **X** | **852,700.00** |
| ACCOUNT NO.<br>**John Richardson**<br>**9917 Robin Oaks Drive**<br>**Las Vegas, NV 89117** | | **NA** | **10/9/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,029,352.95** |
| ACCOUNT NO.<br>**John S. Bently**<br>**118 Ivy Drive #8**<br>**Charlottesville, VA 22903** | | **NA** | **03/01/04**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **10,000.00** |
| ACCOUNT NO.<br>**Juan Rincon**<br>**4728 N. Racinee Avbenue #1E**<br>**Chicago, IL 60640** | | **NA** | **06/12/03**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **9,558.44** |

Sheet 15 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc Main Document Page 32 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Julie Becnel**<br>**1905 North Avenue 52**<br>**Los Angeles, CA 90042** | | **NA** | **05/17/90**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **5,787.11** |
| ACCOUNT NO.<br>**June B Shayne**<br>**2496 Santa Ynuz Way**<br>**Palm Springs, CA 92264** | | **NA** | **4/29/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **299,703.05** |
| ACCOUNT NO.<br>**Kamisher Family**<br>**31012 Canterbury Place**<br>**Laguna Niguel, CA 92677** | | **NA** | **09/12/95**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **286,897.35** |
| ACCOUNT NO.<br>**Kamps Family**<br>**3137 Hartford Court**<br>**Green Bay, WI 54313** | | **NA** | **10/05/99**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **108,135.54** |
| ACCOUNT NO.<br>**Kate Enggren**<br>**10 26th Avenue**<br>**Venice, CA 90291** | | **NA** | **05/14/02**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **59,010.19** |
| ACCOUNT NO.<br>**Kathleen Adamson Trust**<br>**9609 Montain View Terrace**<br>**Salinas, CA 93907** | | **NA** | **02/28/07- 04/16/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **79,555.23** |

Sheet 16 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Keith Pressman**<br>**c/o 1201 Idaho Avenue Apt. 10**<br>**Santa Monica, CA 90401** | | **NA** | **12/31/1995**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **2,391,325.84** |
| ACCOUNT NO.<br>**Larry Cooper**<br>**76-464 Via Flrenze**<br>**Indian Wells, CA 92210** | | **NA** | **01/07/99- 04/07/00**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,528,984.28** |
| ACCOUNT NO.<br>**Laurie Zabollis**<br>**10576 Lindbrook Drive**<br>**Los Angeles, CA 90024** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **4,500,000.00** |
| ACCOUNT NO.<br>**Lenora Zeman**<br>**2140 Bastia**<br>**Newport Beach, CA 92660** | | **NA** | **12/31/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **73,133.01** |
| ACCOUNT NO.<br>**Leslie Huerth**<br>**P.O. Box 372**<br>**Lake Zurich, IL 60047** | | **NA** | **06/13/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **10,000.00** |
| ACCOUNT NO.<br>**Linda & Stephen Hirsch**<br>**4459 Terracemeadow Court**<br>**Moorpark, CA 93021** | | **NA** | **05/21/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **50,000.00** |

Sheet 17 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 34 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Lindsie McKeon/Jane Jackson**<br>**735 N. Niagra St**<br>**Burbank, CA 91505** | | **N A** | **10/10/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **85,020.77** |
| ACCOUNT NO.<br>**Lori Sugarman**<br>**6321 Pine Ridge Court # 3B**<br>**Tinley Park, IL 60477** | | **N A** | **2/98/84- 11/3/98**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **732,994.00** |
| ACCOUNT NO.<br>**Lucas Pols**<br>**437 Sycamore Rd**<br>**Santa Monica, CA 90402** | | **N A** | **12/31/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,300.00** |
| ACCOUNT NO.<br>**Lynn Levine**<br>**Avigur 7/21, 69379, Israel**<br>**Azorei Chen ISRAEL** | | **N A** | **12/03/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **419,179.91** |
| ACCOUNT NO.<br>**Lynne Trecroci**<br>**3822- 45th Avenue**<br>**Kenosha, WI 53144** | | **N A** | **6/29/04**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **7,316.52** |
| ACCOUNT NO.<br>**Marietta Vise**<br>**2140 Bastia**<br>**Newport Beach, CA 92660** | | **N A** | **12/31/95**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **148,414.42** |

Sheet 18 of 32 total sheets in Schedule of Creditors
Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Marilyn J. Emigh**<br>**84 Pepperidge Drive**<br>**Geneva, OH 44041** | | **N A** | **03/14/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **118,267.79** |
| ACCOUNT NO.<br>**Mark & Laura Stern**<br>**2422 N Burling Street**<br>**Chicago, IL 60614** | | **N A** | **11/18/09**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **40,000.00** |
| ACCOUNT NO.<br>**Marvin & Betty Blum**<br>**24688 Toledo Lane**<br>**Lake Forest, CA 92630** | | **N A** | **05/15/03**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **136,845.10** |
| ACCOUNT NO.<br>**Mary Lou Hanover**<br>**141 White Horse Trail**<br>**Palm Desert, CA 92211** | | **N A** | **12/06/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **38,944.32** |
| ACCOUNT NO.<br>**Maximillian A. Mead**<br>**231 Mullen Avenue**<br>**San Francisco, CA 94110** | | **N A** | **04/17/06**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **74,949.98** |
| ACCOUNT NO.<br>**Michael Levan**<br>**1815 1/2 Pandora Ave**<br>**Los Angeles, CA 90025** | | **N A** | **12/31/95**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **60,000.00** |

Sheet 19 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Debtor(s) Case No **2:12-bk-13760**

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community: H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Michael Robins**<br>**190 Figone Lane**<br>**Ben Lomond, CA 95005** | | **NA** | **12/12/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **182,446.71** |
| ACCOUNT NO. **SC106151**<br>**Michelle Hansel**<br>**c/o Doniger/Burroughs**<br>**A Professional Law Corporation**<br>**300 Corporate Pointe Suite 355**<br>**Culver City, CA 90230** | | **NA** | **12/21/09**<br>**Lawsuit** | | **X** | **X** | **5,296,000.00** |
| ACCOUNT NO.<br>**Miller Carbonic**<br>**530 West Root Street**<br>**Chicago, IL 60609** | | **NA** | **01/01/86**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **867,476.80** |
| ACCOUNT NO.<br>**Miller Investment Plan**<br>**530 West Root Street**<br>**Chicago, IL 60609** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **9,085,230.80** |
| ACCOUNT NO.<br>**Mitch Carter**<br>**2067 Palos Verdes Dr. North**<br>**Lomita, CA 90717** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **186,508.15** |

Sheet 20 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

**B6F (Official Form 6F) (12/07) - Cont.**

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Mitch Carter/McCarter Lsng**<br>**2067 Palos Verdes Dr. North**<br>**Lomita, CA 90717** | | **NA** | **02/15/02**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **649,881.62** |
| ACCOUNT NO.<br>**Moon Shadows Leasing**<br>**23448 Moon Shadows Drive**<br>**Malibu, CA 90265** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **403,102.65** |
| ACCOUNT NO.<br>**National Mortgage**<br>**595 S. Burlingame Ave.**<br>**Los Angeles, CA 90049** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **250,000.00** |
| ACCOUNT NO.<br>**Norman Hanover**<br>**141 White Horse Trail**<br>**Palm Desert, CA 92211** | | **NA** | **05/01/02- 09/15/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,263,232.02** |
| ACCOUNT NO.<br>**Orland & Vicki McCarthy**<br>**4616 W Main St**<br>**West Dundee, IL 60118** | | **NA** | **03/24/00**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **586,705.64** |
| ACCOUNT NO.<br>**Pat Adamson**<br>**2457 E. Desert Flower**<br>**Phoenix, AZ 85048** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **172,736.68** |

Sheet 21 of 32 total sheets in Schedule of Creditors
Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Patricia Adamson**<br>**2457 E. Desert Flower**<br>**Phoenix, AZ 85048** | | **N A** | **05/10/00- 06/01/03**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,302,883.32** |
| ACCOUNT NO.<br>**Paul & Bobbi Sloan**<br>**6041 Fenwood**<br>**Woodland Hills, CA 91367** | | **N A** | **1/11/2007**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **272,038.78** |
| ACCOUNT NO.<br>**Pressman Trust**<br>**10 26th Street**<br>**Venice, CA 90291** | | **N A** | **12/31/95**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **11,300.00** |
| ACCOUNT NO.<br>**R. Pressman/M. Zeind**<br>**217 Centennial Street**<br>**Santa Cruz, CA 95060** | | **N A** | **12/31/95**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **546,391.63** |
| ACCOUNT NO.<br>**Ralph Grande**<br>**31 West Robertson Street**<br>**Palatine, IL 60067** | | **N A** | **02/17/02- 10/10/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **678,881.32** |
| ACCOUNT NO.<br>**Raymond Brosio**<br>**7340 Eldora**<br>**Las Vegas, NV 89117** | | **N A** | **09/23/99**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **221,803.96** |

Sheet 22 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Raymond Emigh**<br>**84 Pepperidge Drive**<br>**Geneva, OH 44041** | | **NA** | **03/12/04- 06/13/06**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **337,143.34** |
| ACCOUNT NO.<br>**Richard & Anita Keech**<br>**16878 Charmel Lane**<br>**Pacific Palisades, CA 90272** | | **NA** | **10/09/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **963,498.00** |
| ACCOUNT NO.<br>**Richard Joy**<br>**29500 Heather Cliff Road # 228**<br>**Malibu, CA 90265** | | **NA** | **01/15/09**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,422,314.30** |
| ACCOUNT NO.<br>**Richard Kraft**<br>**9550 W. Sahara #2071**<br>**Las Vegas, NV 89147** | | **NA** | **09/10/99**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **368,850.50** |
| ACCOUNT NO.<br>**Richard Lefkovits**<br>**5196 Hillridge Drive**<br>**Camarillo, CA 93012** | | **NA** | **12/27/88-08/05/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **49,231.68** |
| ACCOUNT NO.<br>**Rick Fall**<br>**11569 1/2 Riverside Drive**<br>**Ventura, CA 93001** | | **NA** | **11/26/03**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **230,982.94** |

Sheet 23 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Rick Gutierrez<br>1286 N. Sweetzer Ave.<br>West Hollywood, CA 90069** | | **N A** | **06/04/04<br>Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **53,280.00** |
| ACCOUNT NO.<br>**Robert & Helen Moore<br>3475 Berry Drive<br>Studio City, CA 91604** | | **N A** | **01/09/09<br>Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **200,882.05** |
| ACCOUNT NO.<br>**Robert & Jayne Wiles<br>10065 Gulf Blvd<br>Treasure Island, FL 33796** | | **N A** | **12/3/01<br>Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **119,555.14** |
| ACCOUNT NO.<br>**Robert Browne<br>1420 Ambassador Blvd. 2 #303<br>Los Angeles, CA 90035** | | **N A** | **01/13/04<br>Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **6,000,000.00** |
| ACCOUNT NO.<br>**Robert Nardi<br>52 Oak Tree Drive<br>Rancho Mirage, CA** | | **N A** | **11/01/06- 03/05/09<br>Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **272,899.21** |
| ACCOUNT NO.<br>**Robert Perry<br>4212 Saint Clair Ave<br>Studio City, CA 91604** | | **N A** | **03/27/97<br>Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **66,190.23** |

Sheet 24 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Rogert Reinhart**<br>**4905 Van Noord Avenue**<br>**Sherman Oaks, CA 91432** | | **N A** | **01/01/91- 01/01/87**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **531,310.93** |
| ACCOUNT NO.<br>**Roland Katavic**<br>**9904 Cozy Glen Court**<br>**Las Vegas, NV 89117** | | **N A** | **01/10/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **91,242.38** |
| ACCOUNT NO.<br>**Ron M Sharrow**<br>**111 Desert Holly Dr**<br>**Palm Desert, CA 92211** | | **N A** | **11/09/07- 6/18/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **524,751.80** |
| ACCOUNT NO.<br>**Ronald Pokres**<br>**5216 Yarmouth #302**<br>**Encino, CA 91316** | | **N A** | **02/02/95- 10/01/04**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **125,358.00** |
| ACCOUNT NO.<br>**Rosa Ferro**<br>**23448 Moon Shadows Drive**<br>**Malibu, CA 90265** | | **N A** | **06/04/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **223,164.32** |
| ACCOUNT NO.<br>**Rosemary Adamson**<br>**c/o Greg Adamson**<br>**3710 E. Goldfinch Gate Lane**<br>**Phoenix, AZ 85044** | | **N A** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **29,068.00** |

Sheet 25 of 32 total sheets in Schedule of Creditors
Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc Main Document Page 42 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Scott Seltzer**<br>**910 N. Lake Shore Drive #2519**<br>**Chicago, IL 60611** | | **NA** | **10/09/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **898,675.12** |
| ACCOUNT NO.<br>**Scott Sherman**<br>**1844 Heather Court**<br>**Solon, IA 52333** | | **NA** | **7/23/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **101,000.00** |
| ACCOUNT NO.<br>**Seymour Seltzer**<br>**1655 Lake Cook Road, #141**<br>**Highland Park, IL 60035** | | **NA** | **6/26/03**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **473,942.51** |
| ACCOUNT NO.<br>**Shadow Springs**<br>**111 Desert Holly Drive**<br>**Palm Desert, CA 92211** | | **NA** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **9,973.16** |
| ACCOUNT NO.<br>**Sheryl Seltzer**<br>**3152 Egan Road**<br>**Laguna Beach, CA 92651** | | **NA** | **12/26/01**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **483,487.05** |
| ACCOUNT NO.<br>**Shyrlee Schor**<br>**8300 Concord Drive #604**<br>**Morton Grove, IL 60053** | | **NA** | **02/13/95**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **148,476.00** |

Sheet 26 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 43 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Sporting Image**<br>**8 Eiffel Court**<br>**Rancho Mirage, CA 92270** | | **N A** | **9/30/96**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **10,000.00** |
| ACCOUNT NO.<br>**Stacy Seltzer**<br>**910 N Lake Shore Dr**<br>**Chicago, IL 60611** | | **N A** | **6/19/00**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **85,000.00** |
| ACCOUNT NO.<br>**Stanton Green**<br>**234969 MIssion Hills Drive**<br>**Rancho Mirage, CA 92270** | | **N A** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **39,408.32** |
| ACCOUNT NO.<br>**Stanton Greene**<br>**34969 Mission Hills Dr**<br>**Rancho Mirage, CA 92270** | | **N A** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **39,408.32** |
| ACCOUNT NO.<br>**Stephen E. Lim**<br>**16133 Sunnyview**<br>**Hacienda Heights, CA 91745** | | **N A** | **10/09/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **346,534.96** |
| ACCOUNT NO.<br>**Steve Brusio**<br>**771 S Buffalo Grove Road**<br>**Buffalo Grove, IL 60089** | | **N A** | **1/11/01**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **21,000.00** |

Sheet 27 of 32 total sheets in Schedule of Creditors
Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 44 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Steve Tannen**<br>**735 N Niagara Street**<br>**Burbank, CA 91505** | | **NA** | **10/8/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **57,738.26** |
| ACCOUNT NO.<br>**Steven & Cynthia Brosio**<br>**771 S. Buffalo Grove Rd.**<br>**Buffalo Grove, IL 60089** | | **NA** | **10/01/99**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **94,133.96** |
| ACCOUNT NO. **3:11-cv-00542**<br>**Sun Trust Bank**<br>**c/o David K. Eldan Esq**<br>**Parker, Milliken, Clark, O'hara &**<br>**555 S. Flower St. 30th Floor**<br>**Los Angeles, CA 90071** | | **NA** | **7/28/11**<br>**Judgment** | | **X** | **X** | **4,751,250.57** |
| ACCOUNT NO. **BC471739**<br>**Sunset Key LLC**<br>**c/o Armen G. Mitilian**<br>**Freeman Freeman & Smiley LLP**<br>**1888 Century Park E. Ste. 1900**<br>**Los Angeles, CA 90067** | | **NA** | **11/4/2011**<br>**Lawsuit** | | **X** | **X** | **2,000,000.00** |
| ACCOUNT NO.<br>**Susan & Howard Gordon**<br>**1225 Idaho Avenue**<br>**Santa Monica, CA 90403** | | **NA** | **02/22/06**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **66,227.90** |

Sheet 28 of 32 total sheets in Schedule of Creditors
Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 43 of 101

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Debtor(s) Case No **2:12-bk-13760**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Susan Bazzo**<br>**52 Oak Tree Drive**<br>**Rancho Mirage, CA 92207** | | **N A** | **11/01/06**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **50,000.00** |
| ACCOUNT NO.<br>**Susan Gordon**<br>**1225 Idaho Avenue**<br>**Santa Monica, CA 90403** | | **N A** | **12/17/03- 03/26/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,081,149.59** |
| ACCOUNT NO.<br>**Susan Urban**<br>**699 Country Road, # 216**<br>**Durango, CO 81301** | | **N A** | **6/23/95**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **100,000.00** |
| ACCOUNT NO.<br>**Suzanne Browne**<br>**231 Mullen Avenue**<br>**San Francisco, CA 94110** | | **N A** | **08/20/09**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **191,457.44** |
| ACCOUNT NO.<br>**Sylvia Klainman**<br>**18210 Andrea Circle S #4**<br>**Northridge, CA 91325** | | **N A** | **05/20/02**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **100,000.00** |
| ACCOUNT NO.<br>**TD Finance**<br>**P.O. Box 4271 Station A**<br>**Toronto ON, M5W 5V4** | | **N A** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **32,000.00** |

Sheet 29 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Thomas Ferro**<br>**23448 Moon Shadows Drive**<br>**Malibu, CA 90265** | | **N A** | **02/15/01- 07/02/04**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **1,577,090.91** |
| ACCOUNT NO.<br>**Todd and Cindy Hagans**<br>**7573 Javelina Ct.**<br>**Las Vegas, NV 89113** | | **N A** | **05/22/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **85,000.00** |
| ACCOUNT NO.<br>**True Position Technologies**<br>**24900 Avenue Stanford**<br>**Valencia, CA 91355** | | **N A** | **3/20/98**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **5,000.00** |
| ACCOUNT NO.<br>**Tsis Burkholder**<br>**1834 Preston Avenue**<br>**Los Angeles, CA 90026** | | **N A** | **02/27/08**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **293,758.65** |
| ACCOUNT NO.<br>**Valerie Druckman**<br>**12026 Hoffman Street #103**<br>**Studio City, CA 91604** | | **N A** | **04/26/05- 08/14/06**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **20,741.00** |
| ACCOUNT NO.<br>**Varoujan & Nora Aslanian**<br>**18781 Dylan Street**<br>**Porter Ranch, CA 91326** | | **N A** | **11/01/07**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **175,000.00** |

Sheet 30 of 32 total sheets in Schedule of Creditors
Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com 

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**Wayne Weissman**<br>**125 White Horse Trail**<br>**Palm Desert, CA 92211** | | **N A** | **10/30/06**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **52,000.00** |
| ACCOUNT NO.<br>**Wayne Weissman**<br>**37 Green Turtle Road**<br>**Coronado, CA 92118** | | **N A** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **50,000.00** |
| ACCOUNT NO.<br>**William Browne**<br>**4919 Noeline Ave**<br>**Encino, CA 91436** | | **N A** | **03/02/02**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **251,435.35** |
| ACCOUNT NO.<br>**William Jetter**<br>**209 Oakfield Estates Drive**<br>**Plainfield, IL 60586** | | **N A** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **128,326.08** |
| ACCOUNT NO.<br>**William Lefkowits**<br>**2986 Edmonton Road**<br>**Glendale, CA 91206-1319** | | **N A** | **01/18/05**<br>**Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **25,376.81** |
| ACCOUNT NO.<br>**Wilton Schiller**<br>**11756-D Moorpark Street**<br>**Studio City, CA 91604** | | **N A** | **Business Debt (EPD Investment Co., LLC)** | | **X** | **X** | **489,504.57** |

Sheet 31 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Jerrold S. Pressman** Case No **2:12-bk-13760**

Debtor(s)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | Husband, Wife, Joint, or Community HWJC | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| | | | Total (Use only on last page of the completed Schedule F.) (Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | | | | **119,268,054.71** |

****Creditors identified herein does not constitute an admission by the Debtor that any of the foregoing are creditors of the Debtor.**

Sheet 32 of 32 total sheets in Schedule of Creditors Holding Unsecured Nonpriority Claims

Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6G (Official Form 6G) (12/07)

In re **Jerrold S. Pressman**, Debtor Case No. **2:12-bk-13760**

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|

**0** continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases



Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6H (Official Form 6H) (12/07)

In re **Jerrold S. Pressman** Case No. **2:12-bk-13760**
Debtor(s)

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by the debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight years immediately preceding the commencement of this case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| EPD Investment Co., LLC* | |

*** Listed as a precautionary measure in that EPD Investment Co., LLC may be a co-debtor on some or all of the obligations and is not intended to constitute an admission by the Debtor.**



Software Copyright (c) 1996-2009 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

B6I (Official Form 6I) (12/07)

In re **Jerrold S. Pressman** Case No. **2:12-bk-13760**

Debtor(s)

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| | RELATIONSHIP(S): | AGE(S): |
| **Divorced** | **None.** | |

| **Employment:** | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | | |
| Name of Employer | **Retired** | |
| How long employed | | |
| Address of Employer | | |

| INCOME: (Estimate of average or projected monthly income at time case filed) | DEBTOR | SPOUSE |
|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ 0.00 | $ N/A |
| 2. Estimate monthly overtime | $ 0.00 | $ N/A |
| 3. SUBTOTAL | $ 0.00 | $ N/A |
| 4. LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security | $ 0.00 | $ N/A |
| b. Insurance | $ 0.00 | $ N/A |
| c. Union dues | $ 0.00 | $ N/A |
| d. Other (Specify): | $ 0.00 | $ N/A |
| | $ 0.00 | $ N/A |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ 0.00 | $ N/A |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ 0.00 | $ N/A |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ 0.00 | $ N/A |
| 8. Income from real property | $ 0.00 | $ N/A |
| 9. Interest and dividends | $ 0.00 | $ N/A |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ 0.00 | $ N/A |
| 11. Social security or government assistance | | |
| (Specify): **Social Security** | $ 1,724.00 | $ N/A |
| | $ 0.00 | $ N/A |
| 12. Pension or retirement income | $ 0.00 | $ N/A |
| 13. Other monthly income | | |
| (Specify): | $ 0.00 | $ N/A |
| | $ 0.00 | $ N/A |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ 1,724.00 | $ N/A |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ 1,724.00 | $ N/A |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | $ 1,724.00 | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

**None.**

**B6J (Official Form 6J) (12/07)**

In re **Jerrold S. Pressman** Case No. **2:12-bk-13760**

Debtor(s)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | |
|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ **650.00** |
| a. Are real estate taxes included? Yes ___ No **X** | |
| b. Is property insurance included? Yes ___ No **X** | |
| 2. Utilities: a. Electricity and heating fuel | $ **0.00** |
| b. Water and sewer | $ **0.00** |
| c. Telephone | $ **0.00** |
| d. Other | $ **0.00** |
| 3. Home maintenance (repairs and upkeep) | $ **30.00** |
| 4. Food | $ **550.00** |
| 5. Clothing | $ **35.00** |
| 6. Laundry and dry cleaning | $ **35.00** |
| 7. Medical and dental expenses | $ **115.00** |
| 8. Transportation (not including car payments) | $ **150.00** |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ **50.00** |
| 10. Charitable contributions | $ **0.00** |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | |
| a. Homeowner's or renter's | $ **0.00** |
| b. Life | $ **0.00** |
| c. Health | $ **0.00** |
| d. Auto | $ **0.00** |
| e. Other **Medicare Deduction** | $ **100.00** |
| 12. Taxes (not deducted from wages or included in home mortgage payments) (Specify) | $ **0.00** |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | |
| a. Auto | $ **0.00** |
| b. Other | $ **0.00** |
| c. Other | $ **0.00** |
| 14. Alimony, maintenance, and support paid to others | $ **0.00** |
| 15. Payments for support of additional dependents not living at your home | $ **0.00** |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ **0.00** |
| 17. Other | $ **0.00** |
| Other | $ **0.00** |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ **1,715.00** |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

**None.**

20. STATEMENT OF MONTHLY NET INCOME

| | |
|---|---|
| a. Average monthly income from Line 15 of Schedule I | $ **1,724.00** |
| b. Average monthly expenses from Line 18 above | $ **1,715.00** |
| c. Monthly net income (a. minus b.) | $ **9.00** |

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
## Central District of California - Los Angeles Division

In re **Jerrold S. Pressman**, Debtor(s) — Case No. **2:12-bk-13760**, Chapter **7**

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of **50** sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date **February 29, 2012**

Signature **/s/ Jerrold S. Pressman**
**Jerrold S. Pressman**
Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

B7 (Official Form 7) (04/10)

# United States Bankruptcy Court
## Central District of California - Los Angeles Division

In re **Jerrold S. Pressman** Debtor(s)

Case No. **2:12-bk-13760**
Chapter **7**

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None ■

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|

---

**2. Income other than from employment or operation of business**

None ☐

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$3,448.00** | **2012 YTD Income from Social Security** |
| **$19,968.00** | **2011 (Estimated) Income from Social Security** |
| **$19,968.00** | **2010 (Estimated) Income from Social Security** |

**3. Payments to creditors**

None ■

***Complete a. or b., as appropriate, and c.***

a. *Individual or joint debtor(s) with primarily consumer debts.* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None ■

b. *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

None ■

c. *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None ☐

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **John Dittmar vs. Jerrold S. Pressman Et. al Case #BC446372** | **Civil** | **Los Angeles Superior Court- Dept 39 111 North Hill Street Los Angeles, CA. 90012** | **Pending** |
| **Betty Druckman Et Al. vs. EPD Investment Co. LLC Case #BC450557** | **Civil** | **Los Angeles Superior Court- Dept 32 111 North Hill Street Los Angeles, CA. 90012** | **Pending** |
| **Alan C. Harvey vs. Jerrold S. Pressman Et. Al Case No. SC108418** | **Civil** | **Los Angeles Superior Court- Santa Monica Dept. WEB 1725 Main Street Santa Monica CA. 90401** | **Pending** |
| **Michelle Hansel vs. EPD Investment Co., LLC, Et, AL. Case #SC106151** | **Civil** | **Los Angeles Superior Court- Santa Monica Dept. WEB 1725 Main Street Santa Monica CA. 90401** | **Pending** |

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **Jenny Lee Bridal LLC. Et Al. vs. EPD Investment Company LLC Et. al Case # BC427112** | **Civil** | **Los Angeles Superior Court- Dept. 16 111 North Hill Street Los Angeles, CA. 90012** | **Pending** |
| **Arthur Huerth, Joan Huerth, Huerth Financial Leasing, AJ Parners and Leslie Huerth vs. Jerrold Pressman, EDP Investment Co. lLC, EPD Investment Leasing Co. LLC, EDP Group, Theodore Jonavic, Ruben Moreno, Katherine Werner, True Position Technologies, Inc., Ice Skating Enterprises, Inc., and S.C. Club, L.P. Case # 1:2010-cv-05049** | **Civil** | **Illinois Northern District Court 219 S. Dearborn St. #2302B Chicago, IL. 60604** | **Pending** |
| **CAMOFI Master LDC et al vs. Jerrold Pressman et al Case #2:11-cv-04574** | **Civil** | **California Central District Court 411 W. 4th St. #1-053 Santa Ana, CA. 92701** | **Pending** |
| **American Express Centurion Bank vs. Jerrold Pressman Case #YC066010** | **Civil** | **Los Angeles Superior Court- Torrance Courthouse 825 Maple Ave Torrance CA. 90503** | **Pending** |
| **Sunset Key, LLC vs. SC Club Inc. et al Case #BC471739** | **Civil** | **Los Angeles Superior Court- Dept 71 111 North Hill Street Los Angeles, CA. 90012** | **Pending** |
| **Sun Trust Bank vs. Jerrold Pressman Case #3:11-cv-00542** | **Civil** | **Middle District of Tennessee (Nashville) 801 Broadway Nashville, TN. 37203** | **Default Judgment** |

None ■ b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**5. Repossessions, foreclosures and returns**

None ■ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None ■ a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com 

None ■ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

**7. Gifts**

None ■ List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

**8. Losses**

None ■ List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

**9. Payments related to debt counseling or bankruptcy**

None ■ List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**10. Other transfers**

None □ a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| **Buyer**<br><br>**None** | **6/23/2010** | **Single family residence located at:**<br><br>**705 Palisades Beach Road**<br>**Santa Monica, CA 90402**<br><br>**$6,862,000** |

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| **Buyer**<br><br>**Buyer was majority shareholder (53%)** | **10/2011** | **North Hills Industrial Park, Inc.**<br><br>**In or around approximately October 2011, the Debtor sold his 47% interest in North Hills Industrial Park, Inc. ("North Hills").**<br><br>**Debtor sold his interest in North Hills for $3.5million. The Debtor took back a note for $3.5million and assigned the note to the Chapter 7 Trustee in the EPD Investments Co., LLC bankruptcy case.** |

None ■ b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None ■ List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12. Safe deposit boxes**

None ■ List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None ■ List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None ■ List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None ☐

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|
| **705 Palisades Beach Rd.<br>Santa Monica CA. 90402** | **Jerrold S. Pressman** | **1994-2010** |

**16. Spouses and Former Spouses**

None ■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None ■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

Case 2:12-bk-13760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc Main Document Page 60 of 101



**18 . Nature, location and name of business**

None ☐

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **EPD Investments Co., LLC** | **20-0150092** | **520 Broadway Ste. 660 Santa Monica, CA 90401** | **Consulting** | **EPD Investments, LLC is currently in a chapter 11 bankruptcy.** |
| **Broadway Entertainment Marketing, Inc.** | **95-4376584** | **520 Broadway Ste. 660 Santa Monica, CA 90401** | **Marketing services in entertainment industry** | **1992 - 12/2009** |
| **Ice Skating Enterprises, Inc.** | **48-1289405** | **131 W. Easy St. Simi Valley, CA 93065** | **Ice Skating Rink d/b/a Easy Street** | **2002 - 2010** |
| **Ice Group Escondido, Inc.** | **95-4501572** | **555 N. Tulip St. Escondido, CA 92025** | **Management company for Ice Skating Enterprises, Inc. d/b/a Easy Street** | **1994 - 2007** |
| **Ice Specialty Entertainment, Inc.** | **95-4765578** | **409 Santa Monica Blvd. Ste. E Santa Monica, CA 90401** | **Management of multiple ice skating rinks** | **1994 - 2003** |
| **SC Club L.P. d/b/a Key Club** | **95-4568569** | **9039 Sunset Blvd. West Hollywood, CA 90069** | **Operated music and nightclub venue, "Key Club"** | **1997 - 12/2009** |
| **SC, Inc.** | **95-2389644** | **9039 Sunset Blvd. West Hollywood, CA 90069** | **Management of nightclub in Morongo Casino** | **1997 - 12/2009** |
| **North Hills Industrial Park, Inc.** | **95-4689306** | **9595 Wilshire Blvd. Suite 214 Beverly Hills, CA 90212** | **Real estate holding company of 3 industrial buildings in North Hills, CA** | **1998 - 10/2011** |
| **Fallbrook Investments, LLC** | **41-2210658** | **9595 Wilshire Blvd. Suite 214 Beverly Hills, CA 90212** | **Management of 747 acres of vacant land in Mississippi** | **2004 - Present** |
| **Sidecreek Development, Inc.** | **37-1497812** | **9595 Wilshire Blvd. Suite 214 Beverly Hills, CA 90212** | **Real estate holding company for approimately 250 acres of vacant hillside in Brentwood and Franklin, TN** | **10/2004 - Present** |
| **JSP Properties Inc.** | **95-4735697** | **9595 Wilshire Blvd. Suite 214 Beverly Hills, CA 90212** | **Development, acquisition and sale of land in Tennessee** | **1994 - Present** |

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com 

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **RBT LLC** | **75-2614578** | **9595 Wilshire Blvd. Suite 214<br>Beverly Hills, CA 90212** | **Investment in construction of ice skating rink** | **1997 - 2006** |
| **Lamsall, LLC** | **14-1923438** | **9595 Wilshire Blvd. Suite 214<br>Beverly Hills, CA 90212** | **Predecessor to Fallbrook Investments, LLC** | |

None ■ b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME ADDRESS

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement* ***only*** *if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

---

**19. Books, records and financial statements**

None ■ a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS DATES SERVICES RENDERED

None ■ b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME ADDRESS DATES SERVICES RENDERED

None ■ c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME ADDRESS

None ■ d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS DATE ISSUED

---

**20. Inventories**

None ■ a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY INVENTORY SUPERVISOR DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis)

None ■ b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
|---|---|

**21 . Current Partners, Officers, Directors and Shareholders**

None ■ a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|---|---|---|

None ■ b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|

**22 . Former partners, officers, directors and shareholders**

None ■ a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|---|---|---|

None ■ b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|

**23 . Withdrawals from a partnership or distributions by a corporation**

None ■ If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**24. Tax Consolidation Group.**

None ■ If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|---|---|

**25. Pension Funds.**

None ■ If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PENSION FUND | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|---|---|

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com 

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date **February 29, 2012**

Signature **/s/ Jerrold S. Pressman**
**Jerrold S. Pressman**
Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com

B8 (Form 8) (12/08)

# United States Bankruptcy Court
## Central District of California - Los Angeles Division

In re **Jerrold S. Pressman** Debtor(s)

Case No. **2:12-bk-13760**
Chapter **7**

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A -** Debts secured by property of the estate. (Part A must be fully completed for **EACH** debt which is secured by property of the estate. Attach additional pages if necessary.)

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>**-NONE-** | **Describe Property Securing Debt:** |

Property will be (check one):
☐ Surrendered ☐ Retained

If retaining the property, I intend to (check at least one):
☐ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain ____________________ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
☐ Claimed as Exempt ☐ Not claimed as exempt

**PART B** - Personal property subject to unexpired leases. (All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:**<br>**-NONE-** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ YES ☐ NO |

**I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.**

Date **February 29, 2012**

Signature **/s/ Jerrold S. Pressman**
**Jerrold S. Pressman**
Debtor

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

**Form B203 - Disclosure of Compensation of Attorney for Debtor - (1/88)** **1998 USBC, Central District of California**

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

In re

**Jerrold S. Pressman**

Debtor.

Case No.: **2:12-bk-13760**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | |
|---|---|
| For legal services, I have agreed to accept | $ **4,000.00** |
| Prior to the filing of this statement I have received | $ **0.00** |
| Balance Due | $ **4,000.00** |

2. The source of the compensation paid to me was:

   ■ Debtor ☐ Other (specify):

3. The source of compensation to be paid to me is:

   ☐ Debtor ■ Other (specify):

4. ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]

6. By agreement with the debtor(s), the above-disclosed fee does not include the following services
   **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

**CERTIFICATION**

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**February 29, 2012**
*Date*

**/s/ Ian S. Landsberg, Esq.**
**Ian S. Landsberg, Esq.**
*Signature of Attorney*
**LANDSBERG & ASSOCIATES, A Professional Law Corporation**
*Name of Law Firm*
**16030 Ventura Blvd., Suite 470**
**Encino, CA 91436**
**(818) 855-5900 Fax: (818) 855-5910**

| Attorney or Party Name, Address, Telephone & FAX Number, and California State Bar No.<br><br>**Ian S. Landsberg, Esq.**<br>**16030 Ventura Blvd., Suite 470**<br>**Encino, CA 91436**<br>**(818) 855-5900 Fax: (818) 855-5910**<br>California State Bar No.: **137431**<br><br>*Attorney for Debtor* | FOR COURT USE ONLY |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | |
| In re:<br><br>**Jerrold S. Pressman**<br><br>Debtor. | CHAPTER **7**<br>CASE NUMBER **2:12-bk-13760**<br><br>(No Hearing Required) |

## DECLARATION RE: LIMITED SCOPE OF APPEARANCE PURSUANT TO LOCAL BANKRUPTCY RULE 2090-1

TO THE COURT, THE DEBTOR, THE TRUSTEE (if any), AND THE UNITED STATES TRUSTEE:

1. I am the attorney for the Debtor in the above-captioned bankruptcy case.

2. On *(specify date)* __, I agreed with the Debtor that for a fee of $**4,000.00**, I would provide only the following services:

   a. ■ Prepare and file the Petition and Schedules

   b. ■ Represent the Debtor at the 341(a) Hearing

   c. ☐ Represent the Debtor in any relief from stay actions

   d. ☐ Represent the Debtor in any proceeding involving an objection to Debtor's discharge pursuant to 11 U.S.C. § 727

   e. ☐ Represent the Debtor in any proceeding to determine whether a specific debt is nondischargeable under 11 U.S.C. § 523

   f. ☐ Other *(specify)*:

3. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on the following date at the city set forth in the upper left-hand corner of this page.

Dated: **February 29, 2012**

**LANDSBERG & ASSOCIATES, A Professional Law Corporation**
*Law Firm Name*

I HEREBY APPROVE THE ABOVE:

By: ***/s/* Ian S. Landsberg, Esq.**

***/s/* Jerrold S. Pressman**
*Signature of Debtor*

Name: **Ian S. Landsberg, Esq.**
*Attorney for Debtor*

**United States Bankruptcy Court**
**Central District of California - Los Angeles Division**

In re **Jerrold S. Pressman** Debtor(s)

Case No. **2:12-bk-13760**
Chapter **7**

# DEBTOR'S CERTIFICATION OF EMPLOYMENT INCOME PURSUANT TO 11 U.S.C. § 521 (a)(1)(B)(iv)

Please fill out the following blank(s) and check the box next to one of the following statements:

I, **Jerrold S. Pressman**, the debtor in this case, declare under penalty of perjury under the laws of the United States of America that:

☐ I have attached to this certificate copies of my pay stubs, pay advices and/or other proof of employment income for the 60-day period prior to the date of the filing of my bankruptcy petition.
(*NOTE: the filer is responsible for blacking out the Social Security number on pay stubs prior to filing them.*)

☐ I was self-employed for the entire 60-day period prior to the date of the filing of my bankruptcy petition, and received no payment from any other employer.

☐ I was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition.

I, __, the debtor in this case, declare under penalty of perjury under the laws of the United States of America that:

☐ I have attached to this certificate copies of my pay stubs, pay advices and/or other proof of employment income for the 60-day period prior to the date of the filing of my bankruptcy petition.
(*NOTE: the filer is responsible for blacking out the Social Security number on pay stubs prior to filing them.*)

☐ I was self-employed for the entire 60-day period prior to the date of the filing of my bankruptcy petition, and received no payment from any other employer.

☐ I was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition.

Date **February 29, 2012**

Signature **/s/ Jerrold S. Pressman**
**Jerrold S. Pressman**
Debtor

B22A (Official Form 22A) (Chapter 7) (12/10)

In re **Jerrold S. Pressman**
Debtor(s)
Case Number: **2:12-bk-13760**
(If known)

According to the information required to be entered on this statement (check one box as directed in Part I, III, or VI of this statement):

☐ **The presumption arises.**

■ **The presumption does not arise.**

☐ **The presumption is temporarily inapplicable.**

# CHAPTER 7 STATEMENT OF CURRENT MONTHLY INCOME AND MEANS-TEST CALCULATION

In addition to Schedules I and J, this statement must be completed by every individual chapter 7 debtor. If none of the exclusions in Part I applies, joint debtors may complete one statement only. If any of the exclusions in Part I applies, joint debtors should complete separate statements if they believe this is required by § 707(b)(2)(C).

## Part I. MILITARY AND NON-CONSUMER DEBTORS

| | |
|---|---|
| 1A | **Disabled Veterans.** If you are a disabled veteran described in the Declaration in this Part IA, (1) check the box at the beginning of the Declaration, (2) check the box for "The presumption does not arise" at the top of this statement, and (3) complete the verification in Part VIII. Do not complete any of the remaining parts of this statement.<br><br>☐ **Declaration of Disabled Veteran.** By checking this box, I declare under penalty of perjury that I am a disabled veteran (as defined in 38 U.S.C. § 3741(1)) whose indebtedness occurred primarily during a period in which I was on active duty (as defined in 10 U.S.C. § 101(d)(1)) or while I was performing a homeland defense activity (as defined in 32 U.S.C. §901(1)). |
| 1B | **Non-consumer Debtors.** If your debts are not primarily consumer debts, check the box below and complete the verification in Part VIII. Do not complete any of the remaining parts of this statement.<br><br>■ **Declaration of non-consumer debts.** By checking this box, I declare that my debts are not primarily consumer debts. |
| 1C | **Reservists and National Guard Members; active duty or homeland defense activity.** Members of a reserve component of the Armed Forces and members of the National Guard who were called to active duty (as defined in 10 U.S.C. § 101(d)(1)) after September 11, 2001, for a period of at least 90 days, or who have performed homeland defense activity (as defined in 32 U.S.C. § 901(1)) for a period of at least 90 days, are excluded from all forms of means testing during the time of active duty or homeland defense activity and for 540 days thereafter (the "exclusion period"). If you qualify for this temporary exclusion, (1) check the appropriate boxes and complete any required information in the Declaration of Reservists and National Guard Members below, (2) check the box for "The presumption is temporarily inapplicable" at the top of this statement, and (3) complete the verification in Part VIII. **During your exclusion period you are not required to complete the balance of this form, but you must complete the form no later than 14 days after the date on which your exclusion period ends, unless the time for filing a motion raising the means test presumption expires in your case before your exclusion period ends**.<br><br>☐ **Declaration of Reservists and National Guard Members.** By checking this box and making the appropriate entries below, I declare that I am eligible for a temporary exclusion from means testing because, as a member of a reserve component of the Armed Forces or the National Guard<br><br>a. ☐ I was called to active duty after September 11, 2001, for a period of at least 90 days and<br>☐ I remain on active duty /or/<br>☐ I was released from active duty on _____, which is less than 540 days before this bankruptcy case was filed;<br><br>OR<br><br>b. ☐ I am performing homeland defense activity for a period of at least 90 days /or/<br>☐ I performed homeland defense activity for a period of at least 90 days, terminating on _____, which is less than 540 days before this bankruptcy case was filed. |

## Part II. CALCULATION OF MONTHLY INCOME FOR § 707(b)(7) EXCLUSION

**2** **Marital/filing status.** Check the box that applies and complete the balance of this part of this statement as directed.

a. ☐ Unmarried. **Complete only Column A ("Debtor's Income") for Lines 3-11.**

b. ☐ Married, not filing jointly, with declaration of separate households. By checking this box, debtor declares under penalty of perjury: "My spouse and I are legally separated under applicable non-bankruptcy law or my spouse and I are living apart other than for the purpose of evading the requirements of § 707(b)(2)(A) of the Bankruptcy Code." **Complete only column A ("Debtor's Income") for Lines 3-11.**

c. ☐ Married, not filing jointly, without the declaration of separate households set out in Line 2.b above. **Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 3-11.**

d. ☐ Married, filing jointly. **Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 3-11.**

| Line | Description | Column A Debtor's Income | Column B Spouse's Income |
|---|---|---|---|
| | All figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line. | | |
| 3 | **Gross wages, salary, tips, bonuses, overtime, commissions.** | $ | $ |
| 4 | **Income from the operation of a business, profession or farm.** Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 4. If you operate more than one business, profession or farm, enter aggregate numbers and provide details on an attachment. Do not enter a number less than zero. **Do not include any part of the business expenses entered on Line b as a deduction in Part V.** | $ | $ |
| 5 | **Rents and other real property income.** Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 5. Do not enter a number less than zero. **Do not include any part of the operating expenses entered on Line b as a deduction in Part V.** | $ | $ |
| 6 | **Interest, dividends, and royalties.** | $ | $ |
| 7 | **Pension and retirement income.** | $ | $ |
| 8 | **Any amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose.** Do not include alimony or separate maintenance payments or amounts paid by your spouse if Column B is completed. Each regular payment should be reported in only one column; if a payment is listed in Column A, do not report that payment in Column B. | $ | $ |
| 9 | **Unemployment compensation.** Enter the amount in the appropriate column(s) of Line 9. However, if you contend that unemployment compensation received by you or your spouse was a benefit under the Social Security Act, do not list the amount of such compensation in Column A or B, but instead state the amount in the space below: | $ | $ |
| 10 | **Income from all other sources.** Specify source and amount. If necessary, list additional sources on a separate page. **Do not include alimony or separate maintenance payments paid by your spouse if Column B is completed, but include all other payments of alimony or separate maintenance.** Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, crime against humanity, or as a victim of international or domestic terrorism. Total and enter on Line 10 | $ | $ |
| 11 | **Subtotal of Current Monthly Income for § 707(b)(7).** Add Lines 3 thru 10 in Column A, and, if Column B is completed, add Lines 3 through 10 in Column B. Enter the total(s). | $ | $ |

Line 4 detail:

| | | Debtor | Spouse |
|---|---|---|---|
| a. | Gross receipts | $ | $ |
| b. | Ordinary and necessary business expenses | $ | $ |
| c. | Business income | Subtract Line b from Line a | |

Line 5 detail:

| | | Debtor | Spouse |
|---|---|---|---|
| a. | Gross receipts | $ | $ |
| b. | Ordinary and necessary operating expenses | $ | $ |
| c. | Rent and other real property income | Subtract Line b from Line a | |

Line 9 detail:

| | | |
|---|---|---|
| Unemployment compensation claimed to be a benefit under the Social Security Act | Debtor $ | Spouse $ |

Line 10 detail:

| | | Debtor | Spouse |
|---|---|---|---|
| a. | | $ | $ |
| b. | | $ | $ |

| | | |
|---|---|---|
| 12 | **Total Current Monthly Income for § 707(b)(7).** If Column B has been completed, add Line 11, Column A to Line 11, Column B, and enter the total. If Column B has not been completed, enter the amount from Line 11, Column A. | $ |

## Part III. APPLICATION OF § 707(b)(7) EXCLUSION

| | | |
|---|---|---|
| 13 | **Annualized Current Monthly Income for § 707(b)(7).** Multiply the amount from Line 12 by the number 12 and enter the result. | $ |
| 14 | **Applicable median family income.** Enter the median family income for the applicable state and household size. (This information is available by family size at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.)<br>a. Enter debtor's state of residence: ______ b. Enter debtor's household size: ______ | $ |
| 15 | **Application of Section 707(b)(7).** Check the applicable box and proceed as directed.<br>☐ **The amount on Line 13 is less than or equal to the amount on Line 14.** Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete Part VIII; do not complete Parts IV, V, VI or VII.<br>☐ **The amount on Line 13 is more than the amount on Line 14.** Complete the remaining parts of this statement. | |

**Complete Parts IV, V, VI, and VII of this statement only if required. (See Line 15.)**

## Part IV. CALCULATION OF CURRENT MONTHLY INCOME FOR § 707(b)(2)

| | | |
|---|---|---|
| 16 | **Enter the amount from Line 12.** | $ |
| 17 | **Marital adjustment.** If you checked the box at Line 2.c, enter on Line 17 the total of any income listed in Line 11, Column B that was NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents. Specify in the lines below the basis for excluding the Column B income (such as payment of the spouse's tax liability or the spouse's support of persons other than the debtor or the debtor's dependents) and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page. If you did not check box at Line 2.c, enter zero.<br>a. ___ $<br>b. ___ $<br>c. ___ $<br>d. ___ $<br>Total and enter on Line 17 | $ |
| 18 | **Current monthly income for § 707(b)(2).** Subtract Line 17 from Line 16 and enter the result. | $ |

## Part V. CALCULATION OF DEDUCTIONS FROM INCOME

### Subpart A: Deductions under Standards of the Internal Revenue Service (IRS)

| | | |
|---|---|---|
| 19A | **National Standards: food, clothing and other items.** Enter in Line 19A the "Total" amount from IRS National Standards for Food, Clothing and Other Items for the applicable number of persons. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) The applicable number of persons is the number that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support. | $ |
| 19B | **National Standards: health care.** Enter in Line a1 below the amount from IRS National Standards for Out-of-Pocket Health Care for persons under 65 years of age, and in Line a2 the IRS National Standards for Out-of-Pocket Health Care for persons 65 years of age or older. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) Enter in Line b1 the applicable number of persons who are under 65 years of age, and enter in Line b2 the applicable number of persons who are 65 years of age or older. (The applicable number of persons in each age category is the number in that category that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support.) Multiply Line a1 by Line b1 to obtain a total amount for persons under 65, and enter the result in Line c1. Multiply Line a2 by Line b2 to obtain a total amount for persons 65 and older, and enter the result in Line c2. Add Lines c1 and c2 to obtain a total health care amount, and enter the result in Line 19B. | $ |

| Persons under 65 years of age | | | Persons 65 years of age or older | | |
|---|---|---|---|---|---|
| a1. | Allowance per person | | a2. | Allowance per person | |
| b1. | Number of persons | | b2. | Number of persons | |
| c1. | Subtotal | | c2. | Subtotal | |

| | | |
|---|---|---|
| 20A | **Local Standards: housing and utilities; non-mortgage expenses.** Enter the amount of the IRS Housing and Utilities Standards; non-mortgage expenses for the applicable county and family size. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court). The applicable family size consists of the number that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support. | $ |

| | | |
|---|---|---|
| 20B | **Local Standards: housing and utilities; mortgage/rent expense.** Enter, in Line a below, the amount of the IRS Housing and Utilities Standards; mortgage/rent expense for your county and family size (this information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court) (the applicable family size consists of the number that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support); enter on Line b the total of the Average Monthly Payments for any debts secured by your home, as stated in Line 42; subtract Line b from Line a and enter the result in Line 20B. **Do not enter an amount less than zero.**<br>a. IRS Housing and Utilities Standards; mortgage/rental expense — $<br>b. Average Monthly Payment for any debts secured by your home, if any, as stated in Line 42 — $<br>c. Net mortgage/rental expense — Subtract Line b from Line a. | $ |
| 21 | **Local Standards: housing and utilities; adjustment.** If you contend that the process set out in Lines 20A and 20B does not accurately compute the allowance to which you are entitled under the IRS Housing and Utilities Standards, enter any additional amount to which you contend you are entitled, and state the basis for your contention in the space below: | $ |
| 22A | **Local Standards: transportation; vehicle operation/public transportation expense.**<br>You are entitled to an expense allowance in this category regardless of whether you pay the expenses of operating a vehicle and regardless of whether you use public transportation.<br>Check the number of vehicles for which you pay the operating expenses or for which the operating expenses are included as a contribution to your household expenses in Line 8.<br>☐ 0 ☐ 1 ☐ 2 or more.<br>If you checked 0, enter on Line 22A the "Public Transportation" amount from IRS Local Standards: Transportation. If you checked 1 or 2 or more, enter on Line 22A the "Operating Costs" amount from IRS Local Standards: Transportation for the applicable number of vehicles in the applicable Metropolitan Statistical Area or Census Region. (These amounts are available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | $ |
| 22B | **Local Standards: transportation; additional public transportation expense.** If you pay the operating expenses for a vehicle and also use public transportation, and you contend that you are entitled to an additional deduction for you public transportation expenses, enter on Line 22B the "Public Transportation" amount from IRS Local Standards: Transportation. (This amount is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | $ |
| 23 | **Local Standards: transportation ownership/lease expense; Vehicle 1.** Check the number of vehicles for which you claim an ownership/lease expense. (You may not claim an ownership/lease expense for more than two vehicles.)<br>☐ 1 ☐ 2 or more.<br>Enter, in Line a below, the "Ownership Costs" for "One Car" from the IRS Local Standards: Transportation (available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court); enter in Line b the total of the Average Monthly Payments for any debts secured by Vehicle 1, as stated in Line 42; subtract Line b from Line a and enter the result in Line 23. **Do not enter an amount less than zero.**<br>a. IRS Transportation Standards, Ownership Costs — $<br>b. Average Monthly Payment for any debts secured by Vehicle 1, as stated in Line 42 — $<br>c. Net ownership/lease expense for Vehicle 1 — Subtract Line b from Line a. | $ |
| 24 | **Local Standards: transportation ownership/lease expense; Vehicle 2.** Complete this Line only if you checked the "2 or more" Box in Line 23.<br>Enter, in Line a below, the "Ownership Costs" for "One Car" from the IRS Local Standards: Transportation (available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court); enter in Line b the total of the Average Monthly Payments for any debts secured by Vehicle 2, as stated in Line 42; subtract Line b from Line a and enter the result in Line 24. **Do not enter an amount less than zero.**<br>a. IRS Transportation Standards, Ownership Costs — $<br>b. Average Monthly Payment for any debts secured by Vehicle 2, as stated in Line 42 — $<br>c. Net ownership/lease expense for Vehicle 2 — Subtract Line b from Line a. | $ |
| 25 | **Other Necessary Expenses: taxes.** Enter the total average monthly expense that you actually incur for all federal, state and local taxes, other than real estate and sales taxes, such as income taxes, self employment taxes, social security taxes, and Medicare taxes. **Do not include real estate or sales taxes.** | $ |

| | | |
|---|---|---|
| 26 | **Other Necessary Expenses: involuntary deductions for employment.** Enter the total average monthly payroll deductions that are required for your employment, such as retirement contributions, union dues, and uniform costs. **Do not include discretionary amounts, such as voluntary 401(k) contributions.** | $ |
| 27 | **Other Necessary Expenses: life insurance.** Enter total average monthly premiums that you actually pay for term life insurance for yourself. **Do not include premiums for insurance on your dependents, for whole life or for any other form of insurance.** | $ |
| 28 | **Other Necessary Expenses: court-ordered payments.** Enter the total monthly amount that you are required to pay pursuant to the order of a court or administrative agency, such as spousal or child support payments. **Do not include payments on past due obligations included in Line 44.** | $ |
| 29 | **Other Necessary Expenses: education for employment or for a physically or mentally challenged child.** Enter the total average monthly amount that you actually expend for education that is a condition of employment and for education that is required for a physically or mentally challenged dependent child for whom no public education providing similar services is available. | $ |
| 30 | **Other Necessary Expenses: childcare.** Enter the total average monthly amount that you actually expend on childcare - such as baby-sitting, day care, nursery and preschool. **Do not include other educational payments.** | $ |
| 31 | **Other Necessary Expenses: health care.** Enter the total average monthly amount that you actually expend on health care that is required for the health and welfare of yourself or your dependents, that is not reimbursed by insurance or paid by a health savings account, and that is in excess of the amount entered in Line 19B. **Do not include payments for health insurance or health savings accounts listed in Line 34.** | $ |
| 32 | **Other Necessary Expenses: telecommunication services.** Enter the total average monthly amount that you actually pay for telecommunication services other than your basic home telephone and cell phone service - such as pagers, call waiting, caller id, special long distance, or internet service - to the extent necessary for your health and welfare or that of your dependents. **Do not include any amount previously deducted.** | $ |
| 33 | **Total Expenses Allowed under IRS Standards.** Enter the total of Lines 19 through 32. | $ |

## Subpart B: Additional Living Expense Deductions

## Note: Do not include any expenses that you have listed in Lines 19-32

| | | |
|---|---|---|
| 34 | **Health Insurance, Disability Insurance, and Health Savings Account Expenses.** List the monthly expenses in the categories set out in lines a-c below that are reasonably necessary for yourself, your spouse, or your dependents.<br>a. Health Insurance $<br>b. Disability Insurance $<br>c. Health Savings Account $<br>Total and enter on Line 34.<br>**If you do not actually expend this total amount,** state your actual total average monthly expenditures in the space below:<br>$ | $ |
| 35 | **Continued contributions to the care of household or family members.** Enter the total average actual monthly expenses that you will continue to pay for the reasonable and necessary care and support of an elderly, chronically ill, or disabled member of your household or member of your immediate family who is unable to pay for such expenses. | $ |
| 36 | **Protection against family violence.** Enter the total average reasonably necessary monthly expenses that you actually incurred to maintain the safety of your family under the Family Violence Prevention and Services Act or other applicable federal law. The nature of these expenses is required to be kept confidential by the court. | $ |
| 37 | **Home energy costs.** Enter the total average monthly amount, in excess of the allowance specified by IRS Local Standards for Housing and Utilities, that you actually expend for home energy costs. **You must provide your case trustee with documentation of your actual expenses, and you must demonstrate that the additional amount claimed is reasonable and necessary.** | $ |
| 38 | **Education expenses for dependent children less than 18.** Enter the total average monthly expenses that you actually incur, not to exceed $147.92* per child, for attendance at a private or public elementary or secondary school by your dependent children less than 18 years of age. **You must provide your case trustee with documentation of your actual expenses, and you must explain why the amount claimed is reasonable and necessary and not already accounted for in the IRS Standards.** | $ |

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

| | | |
|---|---|---|
| 39 | **Additional food and clothing expense.** Enter the total average monthly amount by which your food and clothing expenses exceed the combined allowances for food and clothing (apparel and services) in the IRS National Standards, not to exceed 5% of those combined allowances. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) **You must demonstrate that the additional amount claimed is reasonable and necessary.** | $ |
| 40 | **Continued charitable contributions.** Enter the amount that you will continue to contribute in the form of cash or financial instruments to a charitable organization as defined in 26 U.S.C. § 170(c)(1)-(2). | $ |
| 41 | **Total Additional Expense Deductions under § 707(b).** Enter the total of Lines 34 through 40 | $ |

## Subpart C: Deductions for Debt Payment

| | | |
|---|---|---|
| 42 | **Future payments on secured claims.** For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, and state the Average Monthly Payment, and check whether the payment includes taxes or insurance. The Average Monthly Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60. If necessary, list additional entries on a separate page. Enter the total of the Average Monthly Payments on Line 42. | |

| | Name of Creditor | Property Securing the Debt | Average Monthly Payment | Does payment include taxes or insurance? |
|---|---|---|---|---|
| a. | | | $ | ☐yes ☐no |
| | | | Total: Add Lines | |

Line 42: $

| | | |
|---|---|---|
| 43 | **Other payments on secured claims.** If any of debts listed in Line 42 are secured by your primary residence, a motor vehicle, or other property necessary for your support or the support of your dependents, you may include in your deduction 1/60th of any amount (the "cure amount") that you must pay the creditor in addition to the payments listed in Line 42, in order to maintain possession of the property. The cure amount would include any sums in default that must be paid in order to avoid repossession or foreclosure. List and total any such amounts in the following chart. If necessary, list additional entries on a separate page. | |

| | Name of Creditor | Property Securing the Debt | 1/60th of the Cure Amount |
|---|---|---|---|
| a. | | | $ |
| | | | Total: Add Lines |

Line 43: $

| | | |
|---|---|---|
| 44 | **Payments on prepetition priority claims.** Enter the total amount, divided by 60, of all priority claims, such as priority tax, child support and alimony claims, for which you were liable at the time of your bankruptcy filing. **Do not include current obligations, such as those set out in Line 28.** | $ |
| 45 | **Chapter 13 administrative expenses.** If you are eligible to file a case under Chapter 13, complete the following chart, multiply the amount in line a by the amount in line b, and enter the resulting administrative expense. | |

| | | |
|---|---|---|
| a. | Projected average monthly Chapter 13 plan payment. | $ |
| b. | Current multiplier for your district as determined under schedules issued by the Executive Office for United States Trustees. (This information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court.) | x |
| c. | Average monthly administrative expense of Chapter 13 case | Total: Multiply Lines a and b |

Line 45: $

| | | |
|---|---|---|
| 46 | **Total Deductions for Debt Payment.** Enter the total of Lines 42 through 45. | $ |

## Subpart D: Total Deductions from Income

| | | |
|---|---|---|
| 47 | **Total of all deductions allowed under § 707(b)(2).** Enter the total of Lines 33, 41, and 46. | $ |

## Part VI. DETERMINATION OF § 707(b)(2) PRESUMPTION

| | | |
|---|---|---|
| 48 | **Enter the amount from Line 18 (Current monthly income for § 707(b)(2))** | $ |
| 49 | **Enter the amount from Line 47 (Total of all deductions allowed under § 707(b)(2))** | $ |
| 50 | **Monthly disposable income under § 707(b)(2).** Subtract Line 49 from Line 48 and enter the result. | $ |
| 51 | **60-month disposable income under § 707(b)(2).** Multiply the amount in Line 50 by the number 60 and enter the result. | $ |

| | | |
|---|---|---|
| 52 | **Initial presumption determination.** Check the applicable box and proceed as directed.<br>☐ **The amount on Line 51 is less than $7,025*.** Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete the verification in Part VIII. Do not complete the remainder of Part VI.<br>☐ **The amount set forth on Line 51 is more than $11,725*** Check the box for "The presumption arises" at the top of page 1 of this statement, and complete the verification in Part VIII. You may also complete Part VII. Do not complete the remainder of Part VI.<br>☐ **The amount on Line 51 is at least $7,025*, but not more than $11,725*.** Complete the remainder of Part VI (Lines 53 through 55). | |
| 53 | **Enter the amount of your total non-priority unsecured debt** | $ |
| 54 | **Threshold debt payment amount.** Multiply the amount in Line 53 by the number 0.25 and enter the result. | $ |
| 55 | **Secondary presumption determination.** Check the applicable box and proceed as directed.<br>☐ **The amount on Line 51 is less than the amount on Line 54.** Check the box for "The presumption does not arise" at the top of page 1 of this statement, and complete the verification in Part VIII.<br>☐ **The amount on Line 51 is equal to or greater than the amount on Line 54.** Check the box for "The presumption arises" at the top of page 1 of this statement, and complete the verification in Part VIII. You may also complete Part VII. | |

## Part VII. ADDITIONAL EXPENSE CLAIMS

56 **Other Expenses.** List and describe any monthly expenses, not otherwise stated in this form, that are required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I). If necessary, list additional sources on a separate page. All figures should reflect your average monthly expense for each item. Total the expenses.

| | Expense Description | Monthly Amount |
|---|---|---|
| a. | | $ |
| b. | | $ |
| c. | | $ |
| d. | | $ |
| | Total: Add Lines a, b, c, and d | $ |

## Part VIII. VERIFICATION

57 I declare under penalty of perjury that the information provided in this statement is true and correct. *(If this is a joint case, both debtors must sign.)*

Date: **February 29, 2012** Signature: **/s/ Jerrold S. Pressman**

**Jerrold S. Pressman**

*(Debtor)*

* Amounts are subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com Best Case Bankruptcy

## Current Monthly Income Details for the Debtor

**Debtor Income Details:**
Income for the Period **08/01/2011** to **01/31/2012**.

## MASTER MAILING LIST
## Verification Pursuant to Local Bankruptcy Rule 1007-2(d)

Name **Ian S. Landsberg, Esq.**

Address **16030 Ventura Blvd., Suite 470 Encino, CA 91436**

Telephone **(818) 855-5900 Fax: (818) 855-5910**

■ Attorney for Debtor(s)
☐ Debtor in Pro Per

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| List all names including trade names used by Debtor(s) within last 8 years:<br>**Jerrold S. Pressman** | Case No.: **2:12-bk-13760**<br>Chapter: **7** |

## VERIFICATION OF CREDITOR MAILING LIST

The above named debtor(s), or debtor's attorney if applicable, do hereby certify under penalty of perjury that the attached Master Mailing List of creditors, consisting of **25** sheet(s) is complete, correct, and consistent with the debtor's schedules pursuant to Local Rule 1007-2(d) and I/we assume all responsibility for errors and omissions.

Date: **February 29, 2012**

**/s/ Jerrold S. Pressman**
**Jerrold S. Pressman**
Signature of Debtor

Date: **February 29, 2012**

**/s/ Ian S. Landsberg, Esq.**
Signature of Attorney
**Ian S. Landsberg, Esq.**
**LANDSBERG & ASSOCIATES, A Professional Law Corporation**
**16030 Ventura Blvd., Suite 470**
**Encino, CA 91436**
**(818) 855-5900 Fax: (818) 855-5910**

Jerrold S. Pressman
1201 Idaho Avenue Apt. 10
Santa Monica, CA 90403

Ian S. Landsberg, Esq.
LANDSBERG & ASSOCIATES, A Professional Law Corporation
16030 Ventura Blvd., Suite 470
Encino, CA 91436

Adam & Stacy Glick
14 El Quanito Way
Burlingame, CA 94010

Agostino Brama
13738 La Jara Circle
Cerritos, CA 90703

Alan & Gail Charap
517 Arrowhead Drive
Palm Desert, CA 92211

Alan & Joyce Harvey
8229 Thoroughbread Street
Rancho Cucamonga, CA 91701

Alan C. Harvey
c/o The Cowan Law Firm
1541 Ocean Ave. Ste. 200
Santa Monica, CA 90401

Alfonso Ribero
10639 Blix St.
North Hollywood, CA 91602

American Express Centurion Bank
c/o Zwicker & Associates
199 South Robles Avenue
Pasadena, CA 91101

AMEX
P.O. Box 0001
Los Angeles, CA 90096

AMEX
P.O. Box 301200
Los Angeles, CA 90030

Andrew Inkeles
7839 Naylor Avenue
Los Angeles, CA 90045

Arthur Heurth
1391 Prescott Drive
Volo, IL 60020

Arthur Huerth
c/o Sara Elcood Cook
33 N. LaSalle St. Suite 1400
Woodstock, IL 60098

Arthur Huerth
1391 Prescott Drive
Fox Lake, IL 60020

Aurora Bank
2617 College Park
Scottsbluff, NE 69363

Bank of America Visa
P.O. Box 301200
Los Angeles, CA 90030

Barbara Mintz
333 Norwich COurt
Munster, IN 46321

Barch Family
4933 S. Dorchester #1
Chicago, IL 60615

Betty Druckman
c/o John C. Torjesen & Associates
612 N. Sepulveda Blvd. 2nd Fl
Los Angeles, CA 90049

Betty Druckman
10560 Wilshire Blvd. #1204
Los Angeles, CA 90024

Beverlee Greene
34969 Mission Hills Drive
Rancho Mirage, CA 92270

Bobbi Sloan
6041 Fenwood
Woodland Hills, CA 91367

Brent Limdskog
627 N. Rossmore #106
Los Angeles, CA 90004

Brett Strong
3100 Donald Douglas Loop N
Santa Monica, CA 90405

Brian Danielewicz
740 Florsheim Drive
Libertyville, IL 60048

Bridgett Hansel Andrews Est.
643 Palisades Beach Road
Santa Monica, CA 90402

Bright Conscience Trust
754 Swarthmore Avenue
Pacific Palisades, CA 90272

Brit Enggren
7013 Willoughby Avenue
Los Angeles, CA 90038

CAMOFI Master LDC.
c/o Bracewell & Guiliani
111 Congress Avenue Suite 2300
Austin, TX 78701

Carol J. Bochner
2162 Gunnison Place
Henderson, NV 89044

Cassondra Todd
2208 Colony Plaza
Newport Beach, CA 92660

Chase Visa
P.O. Box 94014
Palatine, IL 60094

Chelsea Seltzer
251 Washington Avenue #5
Brooklyn, NY 11205

Christopher Watson
245 Reading Road
East Earl, PA 17519

Corey R. Weber
21650 Oxnard Street Ste.500
Woodland Hills, CA 91367

Creditors Trade Ass.
3785 Brickway Blvd. Suite 210
Santa Rosa, CA 95403

Cristina & Pon Robles
1448 Robles Dr
Chula Vista, CA 91911

Cynda Lancaster
2208 Colony Plaza
Newport Beach, CA 92660

Cynthia Brosio
771 S Buffalo Grove Road
Buffalo Grove, IL 60089

Cynthia Spirtzer
263 Congressional Ave #111
Rockville, MD 20852

Dale Saeger
551 E. Edwards Avenue
East Dundee, IL 60118

Dan Aronovsky
108 Howard Drive
Belvedere Tiburon, CA 94920

Dave Bazenky
8211 22nd Street
Westminster, CA 92683

David Jenison
1555 Vine Street, #583V
Los Angeles, CA 90028

David Weiner
55 Cottage Lane
Aliso Viejo, CA 92656

Deanne Joy
29500 Heather Cliff Road, #228
Malibu, CA 90265

Donald & Barbara Benefiel
811 E. Glencrest Drive
Spokane, WA 99208

Donald & Joann Hagans
5 Sunset Way
Henderson, NV 89014

Donna & Jack Leff
7165 Rockridge Terrace
West Hills, CA 91038

Donna Kraft
3928 Windansea Street
Las Vegas, NV 89147

Donna Leff
7165 Rockridge Terrace
West Hills, CA 91038

Dorian Films
P.O. Box 770001
Los Angeles, CA 90068

Dr. David Sauber
118 Ivy Drive #8
Charlottesville, VA 22903

Dr. Melvin & Elen Glick
951 Mesa Grande Drive
Palm Desert, CA 92211

Edward Knowles
4212 Saint Clair Avenue
Studio City, CA 91604

Elizabeth Kelly Watson
3003 2nd Street #4
Santa Monica, CA 90405

Engdahi Family
1834 Pandora Ave
Los Angeles, CA 90025

EPD Investment Co. LLC
601 S. Figueroa St. Ste. 3900
Los Angeles, CA 90017

EPD Investment Co., LLC

Erika Enggren
10 26th Avenue
Venice, CA 90291

Eugene & Laura Lim
2202 San Vincente Blvd
Santa Monica, CA 90402

Fall Leasing
11569 1/2 Riverside Dr
North Hollywood, CA 91602

Ferro Family Trust
1738 Vista Del Mar Avenue
Ventura, CA 93001

Case 2:12-bk-15760-ER Doc 26 Filed 02/29/12 Entered 02/29/12 19:16:01 Desc
Main Document Page 85 of 101

Forrest Penner/Maria Herbst
1834 Preston Avenue
Los Angeles, CA 90026

Fraft Leasing
3928 Windansea Street
Las Vegas, NV 89147

Franchise Tax Board
Bankruptcy Section, MS: A-340
P.O. Box 2952
Sacramento, CA 95812

Fred Hooper
19007 Prescott Drive
Woodinville, WA 98072

Fred Silver
2610 Gold Mine Rd
Brookeville, MD 20833

Gloria Levan
37-05 88th St Apt. 5-D
Jackson Heights, NY 11372

Grande Canyon Leasing
31 West Robertson St
Los Angeles, CA 90067

Greg Adamson
3710 E. Goldfinch Gate Lane
Phoenix, AZ 85044

Helen Engle
445 Riverfront Drive
Bullhead City, AZ 86442

HMB Holdings, LLC
23448 Moon Shadows Drive
Malibu, CA 90265

Howard Gordon
833 Ocean Avenue #306
Santa Monica, CA 90403

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

Jack Leff
7165 Rockridge Terrace
West Hills, CA 91038

Jaclyn Zeman Productions
21613 Rambla Vista
Malibu, CA 90265

Janet Cooper
10430 Wilshire Blvd. #103
Los Angeles, CA 90024

Janet Knowles
14 Summer Hill
Harbeldon Canterbury
Kent England CT28NH

Janice Petrook
25/3 Pinkas Street
Tel Avia, Israel 62662

Jayne Saeger
551 E. Edwards Avenue
East Dundee, IL 60118

Jeff Rappaport
8911 Independence Ave
Canoga Park, CA 91304

Jenny Lee LLC.
c/o Jung Harold Attorney at Law
16055 Ventura Blvd.
Encino, CA 91436

Jery Alba
3910 Emerald St., #213
Torrance, CA 90503

Jill Seltzer
910 N. Lake Shore Drive, # 2519
Chicago, IL 60611

Jim Rosenbaum Trust
21 W 741 Beemis Road
Glen Ellyn, IL 60137

Jim Wheeler
401 California St
El Segundo, CA 90245

John & Susan Ferro
1738 Vista Del Mar Avenue
Ventura, CA 93001

John Belt
2457 E. Deser Flower Lane
Phoenix, AZ 85048

John Dittmar
c/o Alan S. Gutman Esq.
9401 Wilshire Blvd. #575
Beverly Hills, CA 90212

John Dittmar
2177 Fern Dell Place
Los Angeles, CA 90068

John Richardson
9917 Robin Oaks Drive
Las Vegas, NV 89117

John S. Bently
118 Ivy Drive #8
Charlottesville, VA 22903

Juan Rincon
4728 N. Racinee Avbenue #1E
Chicago, IL 60640

Julie Becnel
1905 North Avenue 52
Los Angeles, CA 90042

June B Shayne
2496 Santa Ynuz Way
Palm Springs, CA 92264

Kamisher Family
31012 Canterbury Place
Laguna Niguel, CA 92677

Kamps Family
3137 Hartford Court
Green Bay, WI 54313

Kate Enggren
10 26th Avenue
Venice, CA 90291

Kathleen Adamson Trust
9609 Montain View Terrace
Salinas, CA 93907

Keith Pressman
c/o 1201 Idaho Avenue Apt. 10
Santa Monica, CA 90401

Kinsella Weitzman Iser Kump &
Aldisert LLP
808 Wilshire Blvd. 3rd Floor
Santa Monica, CA 90401

Larry Cooper
76-464 Via Flrenze
Indian Wells, CA 92210

Laurie Zabollis
10576 Lindbrook Drive
Los Angeles, CA 90024

Lenora Zeman
2140 Bastia
Newport Beach, CA 92660

Leslie Huerth
P.O. Box 372
Lake Zurich, IL 60047

Linda & Stephen Hirsch
4459 Terracemeadow Court
Moorpark, CA 93021

Lindsie McKeon/Jane Jackson
735 N. Niagra St
Burbank, CA 91505

Loeb & Loeb LLP.
10100 Santa Monica Blvd.
Los Angeles, CA 90067

Lori Sugarman
6321 Pine Ridge Court # 3B
Tinley Park, IL 60477

Lucas Pols
437 Sycamore Rd
Santa Monica, CA 90402

Lynn Levine
Avigur 7/21, 69379, Israel
Azorei Chen ISRAEL

Lynne Trecroci
3822- 45th Avenue
Kenosha, WI 53144

Madison Lisa Martin
401 Commerce Street
Nashville, TN 37219

Marietta Vise
2140 Bastia
Newport Beach, CA 92660

Marilyn J. Emigh
84 Pepperidge Drive
Geneva, OH 44041

Mark & Laura Stern
2422 N Burling Street
Chicago, IL 60614

Marvin & Betty Blum
24688 Toledo Lane
Lake Forest, CA 92630

Mary Lou Hanover
141 White Horse Trail
Palm Desert, CA 92211

Maximillian A. Mead
231 Mullen Avenue
San Francisco, CA 94110

Michael Levan
1815 1/2 Pandora Ave
Los Angeles, CA 90025

Michael Robins
190 Figone Lane
Ben Lomond, CA 95005

Michelle Hansel
c/o Doniger/Burroughs
A Professional Law Corporation
300 Corporate Pointe Suite 355
Culver City, CA 90230

Michelle Hansel
213 El Camino Drive
Beverly Hills, CA 90211

Miller Carbonic
530 West Root Street
Chicago, IL 60609

Miller Investment Plan
530 West Root Street
Chicago, IL 60609

Mitch Carter
2067 Palos Verdes Dr. North
Lomita, CA 90717

Mitch Carter/McCarter Lsng
2067 Palos Verdes Dr. North
Lomita, CA 90717

Moon Shadows Leasing
23448 Moon Shadows Drive
Malibu, CA 90265

National Mortgage
595 S. Burlingame Ave.
Los Angeles, CA 90049

Norman Hanover
141 White Horse Trail
Palm Desert, CA 92211

Orland & Vicki McCarthy
4616 W Main St
West Dundee, IL 60118

Pat Adamson
2457 E. Desert Flower
Phoenix, AZ 85048

Patricia Adamson
2457 E. Desert Flower
Phoenix, AZ 85048

Paul & Bobbi Sloan
6041 Fenwood
Woodland Hills, CA 91367

Pressman Trust
10 26th Street
Venice, CA 90291

R. Pressman/M. Zeind
217 Centennial Street
Santa Cruz, CA 95060

Ralph Grande
31 West Robertson Street
Palatine, IL 60067

Raymond Brosio
7340 Eldora
Las Vegas, NV 89117

Raymond Emigh
84 Pepperidge Drive
Geneva, OH 44041

Richard & Anita Keech
16878 Charmel Lane
Pacific Palisades, CA 90272

Richard Joy
29500 Heather Cliff Road # 228
Malibu, CA 90265

Richard K. Diamond
2029 Century PK. E. 3rd Fl.
Los Angeles, CA 90067

Richard Kraft
9550 W. Sahara #2071
Las Vegas, NV 89147

Richard Lefkovits
5196 Hillridge Drive
Camarillo, CA 93012

Rick Fall
11569 1/2 Riverside Drive
Ventura, CA 93001

Rick Gutierrez
1286 N. Sweetzer Ave.
West Hollywood, CA 90069

Robert & Helen Moore
3475 Berry Drive
Studio City, CA 91604

Robert & Jayne Wiles
10065 Gulf Blvd
Treasure Island, FL 33796

Robert A. Hessling
2029 Century Park East, 3rd Floor
Los Angeles, CA 90067

Robert Browne
1420 Ambassador Blvd. 2 #303
Los Angeles, CA 90035

Robert Nardi
52 Oak Tree Drive
Rancho Mirage, CA

Robert Perry
4212 Saint Clair Ave
Studio City, CA 91604

Rogert Reinhart
4905 Van Noord Avenue
Sherman Oaks, CA 91432

Roland Katavic
9904 Cozy Glen Court
Las Vegas, NV 89117

Ron M Sharrow
111 Desert Holly Dr
Palm Desert, CA 92211

Ronald Pokres
5216 Yarmouth #302
Encino, CA 91316

Rosa Ferro
23448 Moon Shadows Drive
Malibu, CA 90265

Rosemary Adamson
c/o Greg Adamson
3710 E. Goldfinch Gate Lane
Phoenix, AZ 85044

Scott Seltzer
910 N. Lake Shore Drive #2519
Chicago, IL 60611

Scott Sherman
1844 Heather Court
Solon, IA 52333

Seymour Seltzer
1655 Lake Cook Road, #141
Highland Park, IL 60035

Shadow Springs
111 Desert Holly Drive
Palm Desert, CA 92211

Sharin Bowers
4906 W. 131st Street
Hawthorne, CA 90250

Sheryl Seltzer
3152 Egan Road
Laguna Beach, CA 92651

Shyrlee Schor
8300 Concord Drive #604
Morton Grove, IL 60053

Sporting Image
8 Eiffel Court
Rancho Mirage, CA 92270

Stacy Seltzer
910 N Lake Shore Dr
Chicago, IL 60611

Stanton Green
234969 MIssion Hills Drive
Rancho Mirage, CA 92270

Stanton Greene
34969 Mission Hills Dr
Rancho Mirage, CA 92270

Stephen E. Lim
16133 Sunnyview
Hacienda Heights, CA 91745

Steve Brusio
771 S Buffalo Grove Road
Buffalo Grove, IL 60089

Steve Tannen
735 N Niagara Street
Burbank, CA 91505

Steven & Cynthia Brosio
771 S. Buffalo Grove Rd.
Buffalo Grove, IL 60089

Sun Trust Bank
c/o David K. Eldan Esq
Parker, Milliken, Clark, O'hara &
555 S. Flower St. 30th Floor
Los Angeles, CA 90071

Sun Trust Bank
303 Peach Treet Street
N.E. 9th Floor
Atlanta, GA 30308

Sunset Key LLC
c/o Armen G. Mitilian
Freeman Freeman & Smiley LLP
1888 Century Park E. Ste. 1900
Los Angeles, CA 90067

Susan & Howard Gordon
1225 Idaho Avenue
Santa Monica, CA 90403

Susan Bazzo
52 Oak Tree Drive
Rancho Mirage, CA 92207

Susan Gordon
1225 Idaho Avenue
Santa Monica, CA 90403

Susan Urban
699 Country Road, # 216
Durango, CO 81301

Suzanne Browne
231 Mullen Avenue
San Francisco, CA 94110

Sylvia Klainman
18210 Andrea Circle S #4
Northridge, CA 91325

TD Finance
P.O. Box 4271 Station A
Toronto ON, M5W 5V4

Thomas Ferro
23448 Moon Shadows Drive
Malibu, CA 90265

Todd and Cindy Hagans
7573 Javelina Ct.
Las Vegas, NV 89113

True Position Technologies
24900 Avenue Stanford
Valencia, CA 91355

Trustee: Jason M. Rund
840 Apollo Street Suite 351
El Segundo, CA 90245

Tsis Burkholder
1834 Preston Avenue
Los Angeles, CA 90026

U.S. Bank
P.O. Box 790179
Saint Louis, MO 63179

Valerie Druckman
12026 Hoffman Street #103
Studio City, CA 91604

Varoujan & Nora Aslanian
18781 Dylan Street
Porter Ranch, CA 91326

Wayne Weissman
125 White Horse Trail
Palm Desert, CA 92211

Wayne Weissman
37 Green Turtle Road
Coronado, CA 92118

William Browne
4919 Noeline Ave
Encino, CA 91436

William Jetter
209 Oakfield Estates Drive
Plainfield, IL 60586

William Lefkowits
2986 Edmonton Road
Glendale, CA 91206-1319

Wilton Schiller
11756-D Moorpark Street
Studio City, CA 91604

# EXHIBIT BBB

D-36

**SHERRY ANNE LEAR**
**Attorney at Law**
Bar No. 149878
609 Deep Valley Drive, Suite 200
Rolling Hills Estates, CA 90274
Telephone: (310) 265-9010
Facsimile: (310) 265-9011

FILED
LOS ANGELES SUPERIOR COURT
SEP 08 2006
John A. Clarke, Executive Officer/Clerk
Deputy

Case assigned to Judge Gregory Alarcon

Attorney for Plaintiff EPD INVESTMENT COMPANY, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| EPD INVESTMENT COMPANY, LLC, A CA LLC,<br>Plaintiff,<br>vs.<br>PLUSH LOUNGE LAS VEGAS, LLC, A CA LLC, Does 1 to 35, inclusive,<br>Defendants. | CASE NO. BC358166<br><br>COMPLAINT FOR:<br>1. BREACH OF CONTRACT<br>2. MONEY DUE ON NOTE<br>3. COMMON COUNT |

**FIRST CAUSE OF ACTION**

**Breach of Contract**

**Against All Named and Doe Defendants**

1. Defendant PLUSH LOUNGE LAS VEGAS, LLC is, at and all times herein mentioned was, a California Limited Liability Company with its principal place of business in Los Angeles County.

2. Plaintiff EDP INVESTMENT COMPANY, LLC is, at and all times herein mentioned was, a California Limited Liability Company with its principal place of business in Los Angeles County.

3. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1 through 35, inclusive, and therefore sues these Defendants by fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes that the Doe Defendants, and each of them, is responsible in some manner for the occurrences herein alleged.

4. Plaintiff is informed and believes and herein alleges that, at all times herein mentioned, each of the named and fictitious defendants was acting as the agent, employee or on behalf of the remaining Defendants and with the permission and consent of such Defendants, and each of them.

5. Whenever appearing in this Complaint, each and every reference to "Defendants" or to any of them, is intended to and shall be a reference to all named and fictitious Defendants.

6. On or about April 15, 2003, Plaintiff and Defendants entered into an agreement whereby Plaintiff agreed to invest a sum of not less than $2,500,000.00 with Defendants, who in turn, would utilize this money to own, operate and promote a nightclub in Las Vegas and provide Plaintiff with a due return on its investment. A true and correct copy of the documentation which confirms this agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

7. Plaintiff has performed all of its duties under the agreement, including investing the principal sum of $2,500,000 with Defendants and other monies as may have been requested by Defendants.

8. On or about March 15, 2006, Defendants breached the agreement by failing to repay the investment made by Plaintiff, in full, as required under the agreement.

9. As a result of Defendants breach of contract, Plaintiff has been damaged in the sum of not less than $2,397,370.77 plus interest from and after April 15, 2003.

10. By terms of the contract, in the event legal action is taken to enforce collection, the Defendant is required to pay Plaintiff reasonable attorneys' fees. Plaintiff has employed Sherry Anne Lear, an active member of the State Bar of California, to file and prosecute this action and has become obligated to pay this attorney a reasonable fee for her services, all to its general damage in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**Money Due on Note**

**Against All Named and Doe Defendants**

11. Plaintiff incorporates paragraphs 1 through 7 as though full set forth herein.

12. On or about April 15, 2003, in Santa Monica, California, Defendants, for valuable consideration, made, executed and delivered to Plaintiff a Multiple Advance Promissory Note in the amount of $2,500,000.00 plus any sums that Plaintiff would thereafter advance to Defendants together with interest thereon from and after April 15, 2003, to be paid in full upon maturity on or before March 15, 2006. A true and correct copy of this note is attached as Exhibit "A" and incorporated herein by reference.

13. The note became due on March 16, 2006. At that time of such maturity, the note had a principal balance of $2,397,370.77, not inclusive of interest. Although Plaintiff has made a demand for payment on the note, Defendants have failed and refused and continue to fail and refuse to pay on the note, and there is now due, owing, and unpaid from Defendants to Plaintiff the principal sum of $2,397,370.77, together with interest thereon at the rate of ten percent (10%) per

annum which as of August 17, 2006 amounts to $453,023.12 and which continues to accumulate.

14. By terms of the principal note, in the event legal action is taken to enforce collection, the maker promises to pay Plaintiff reasonable attorneys' fees. Plaintiff has employed Sherry Anne Lear, an active member of the State Bar of California, to file and prosecute this action and has become obligated to pay this attorney a reasonable fee for her services, all to its general damage in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### Common Count

### Against All Named and Doe Defendants

15. Plaintiff incorporates paragraphs 1 through 7 as though fully set forth herein.

16. Within the last four years at Santa Monica, California, Defendants became indebted to Plaintiff in the principal sum of $2,397,370.77 for money lent by Plaintiff to Defendants at their request.

17. Plaintiff has repeatedly demanded payment from Defendants.

18. Full payment has not been made by Defendants to Plaintiff and there is now due and owing the sum of $2,397,370.77 together with interest thereon at the maximum interest rate allowed by law from and after April 15, 2003.

**WHEREFORE**, Plaintiff EDP INVESTMENT COMPANY, LLC prays judgment against Defendants as follows:

1. For general and compensatory damages as proven at trial and not less than $2,397,370.77;
2. For interest at the legal rate prescribed;
3. For attorneys' fees as provided by law or contract;

4. For costs of suit herein incurred;

5. For such other and further relief as the Court may deem proper.

Dated: September 7, 2006

SHERRY ANNE LEAR, Esq.
Attorney for Plaintiff EDP INVESTMENTS COMPANY, LLC

# MULTIPLE ADVANCE PROMISSORY NOTE

**$2,500,000.00**

**Santa Monica, California**
**April 15, 2003**

FOR VALUE RECEIVED, Plush Lounge Las Vegas, LLC, ("Maker"), with offices at 221 N. Rampart Blvd., Las Vegas, NV 89145, promises to pay to EPD Investment Company, LLC ("Holder"), at 520 Broadway, Suite 660, Santa Monica, California 90401, or such place as may be designated by Holder in writing, Two Million Five Hundred Thousand Dollars ($2,500,000.00) that have been advanced or which are hereafter advanced, from time to time, by Holder to or for the benefit of Maker, as reflected on the books and records of Maker. Interest on such amounts will be charged at the rate of ten percent (10.0%) per annum.

It is anticipated that sums may continue to be advanced to Maker by Holder. Interest will run on any sum advanced hereunder from the date of such advance and Maker may pay interest or reduce principal from time to time as they desire, provided that all principal and unpaid interest shall become due and payable no later than March 15, 2006.

If any amounts due hereunder, including both principal and interest then accrued and unpaid, are not paid when due, thereafter the unpaid portion of such entire amount shall bear simple interest at the maximum rate permitted by law until such unpaid portion of such entire amount is fully paid.

If this Note or any portion thereof is not paid when due, Maker promises to pay all costs of collection and reasonable attorneys fees incurred by the Holder hereof on account of such collection, whether or not suit is filed hereon, if the Holder prevails in such collection efforts.

All payments due hereunder shall be paid in the lawful money of the United States of America. This note is negotiable.

Upon any default hereunder, the entire principal amount outstanding and all accrued interest thereon shall become due and payable at the option of the Holder. Holder may exercise this option to accelerate during any default by Maker regardless of any prior forbearance. Maker hereby waives demand, presentment for payment, notice of non-payment, protest and notice of protest and notice of dishonor.

Each payment due under this Note shall be applied first to any penalties, late charges, or additional costs owed by Maker hereunder, then to the payment of accrued interest then due, and thereafter to the reduction of the unpaid principal balance of this Note.

This Note may not be modified or amended orally, but only by modification or amendment in writing signed by Holder and Maker. This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be binding upon and shall inure to the benefit of Maker and Holder, and their successors and assigns. Every provision of this Note is intended to be severable. If any term of provision hereof is declared by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable. Time is of the essence of this Note and the performance of each of the covenants and agreements contained herein.

EXH A

All agreements in this Note are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of advancement or acceleration of the maturity of the indebtedness, evidenced hereby, or otherwise, shall the amount paid or agreed to be paid hereunder for the use, forbearance or detention of money, exceed the highest lawful rate permitted under applicable usury laws. If, from any circumstance whatsoever, fulfillment of any provisions of this Note, at any time performance of such provisions shall be due, shall involve exceeding the legal interest rate, then the obligation to be fulfilled shall be reduced to the limit of legal validity, and if, from any circumstance whatsoever, Holder or any holder of this Note shall ever receive as interest an amount which would exceed the highest lawful rate, the receipt of such excess shall be credited against the principal amount of the indebtedness evidenced hereby to which the same may lawfully be credited, and any portion of such excess not capable of being so credited shall be rebated to Maker.

Notices shall be given under this Note in writing and shall be given at the address set forth herein for the Holder and Maker. Notice shall be sent by hand delivery, by overnight delivery service or by U.S. Mail, registered or certified mail.

IN WITNESS WHEREOF, Maker has executed this Note as of the date first written above.

MAKER:

By ____________________ 4/15/03
Plush Lounge Las Vegas, LLC Date

HOLDER:

By Robin J. Moreno 4/15/03
EPD Investment Company, LLC Date

| SHORT TITLE ERD INVESTMENT VS. PLUSH LOUNGE | CASE NUMBER BC358166 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ___ YES CLASS ACTION? ___ YES LIMITED CASE? ___ YES TIME ESTIMATED FOR TRIAL 2 ___ HOURS/ [X] DAYS.

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check <u>one</u> Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (See Column C below)**

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Auto Tort | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4 |
| Non-Personal Injury/Property | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Intellectual Property (19) | ☐ A6016 Intellectual Property | 2., 3. |

| SHORT TITLE: EPD INVESTMENT VS. PLUSH LOUNGE | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|---|
| Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.) | Professional Negligence (25) | | A6017 Legal Malpractice | 1., 2., 3. |
| | | | A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | | A6025 Other Non-Personal Injury/Property Damage tort | 2., 3 |
| Employment | Wrongful Termination (36) | | A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | | A6024 Other Employment Complaint Case | 1., 2., 3. |
| | | | A6109 Labor Commissioner Appeals | 10. |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | | A6004 Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | | A6008 Contract/Warranty Breach-Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | | A6019 Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | | A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | | A6002 Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | X | A6012 Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | | A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | | A6009 Contractual Fraud | 1., 2., 3., 5. |
| | | | A6031 Tortious Interference | 1., 2., 3., 5. |
| | | | A6027 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Real Property | Eminent Domain/Inverse Condemnation (14) | | A7300 Eminent Domain/Condemnation Number of parcels _______ | 2. |
| | Wrongful Eviction (33) | | A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | | A6018 Mortgage Foreclosure | 2., 6. |
| | | | A6032 Quiet Title | 2., 6. |
| | | | A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6 |
| Unlawful Detainer | Unlawful Detainer - Commercial (31) | | A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6 |
| | Unlawful Detainer - Residential (32) | | A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer - Drugs (38) | | A6022 Unlawful Detainer-Drugs | 2., 6. |
| Judicial Review | Asset Forfeiture (05) | | A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | | A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

| SHORT TITLE: EPD INVESTMENT VS. PLUSH LOUNGE | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review (Cont'd.) | Writ of Mandate (02) | A6151 Writ - Administrative Mandamus | 2., 8. |
| | | A6152 Writ - Mandamus on Limited Court Case Matter | 2. |
| | | A6153 Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | A6150 Other Writ / Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | A6007 Construction defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement of Judgment (20) | A6141 Sister State Judgment | 2., 9. |
| | | A6160 Abstract of Judgment | 2., 6. |
| | | A6107 Confession of Judgment (non-domestic relations) | 2., 9. |
| | | A6140 Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | A6112 Other Enforcement of Judgment Case | 2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | A6030 Declaratory Relief Only | 1., 2., 8. |
| | | A6040 Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | A6121 Civil Harassment | 2., 3., 9. |
| | | A6123 Workplace Harassment | 2., 3., 9. |
| | | A6124 Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | A6190 Election Contest | 2. |
| | | A6110 Petition for Change of Name | 2., 7. |
| | | A6170 Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | A6100 Other Civil Petition | 2., 9. |

| SHORT TITLE: EPD INVESTMENT VS. PLUSH LOUNGE | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE 1. X 2. 3. 4. 5. 6. 7. 8. 9. 10. | | | ADDRESS: 520 BROADWAY, SUITE 660 |
|---|---|---|---|
| CITY: SANTA MONICA | STATE: CA | ZIP CODE: 90401 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: SEPTEMBER 7, 2006

(SIGNATURE OF ATTORNEY/FILING PARTY)
Sherry Anne Lear, Esq.

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet form CM-010.
4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 03-04 (Rev. 03/06).
5. Payment in full of the filing fee, unless fees have been waived.
6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
SHERRY ANNE LEAR
SHERRY ANNE LEAR Bar # 149878
ATTORNEY AT LAW
609 Deep Valley Drive, Suite 200
Rolling Hills Estates, CA 90274
TELEPHONE NO.: (310) 265-9010 FAX NO.: (310) 265-9011
ATTORNEY FOR (Name): Plaintiff EPD INVESTMENT CO

FOR COURT USE ONLY

**FILED**
LOS ANGELES SUPERIOR COURT
SEP 08 2006
John A. Clarke, Executive Officer/Clerk
By ________ Deputy
D. Giles

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. HILL STREET
MAILING ADDRESS: Same
CITY AND ZIP CODE: LOS ANGELES, CA 90012-3014
BRANCH NAME: STANLEY MOSK COURTHOUSE

CASE NAME: EPD INVESTMENT VS. PLUSH LOUNGE

## CIVIL CASE COVER SHEET

[X] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 1811)

CASE NUMBER: BC358166
JUDGE:
DEPT:

*Items 1-5 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[X] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

2. This case [ ] is [X] is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Type of remedies sought (*check all that apply*):
   a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (*specify*): THREE
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015*).

Date: SEPTEMBER 7, 2006
SHERRY ANNE LEAR
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 201.8, 1800–1812, Standards of Judicial Administration, § 19

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

## To Plaintiffs and Others Filing First Papers

If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 201.8(c) and 227 of the California Rules of Court.

## To Parties in Complex Cases

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 1800 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)-Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach-Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case-Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential.)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rule 1800-1812)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief from Late Claim
  - Other Civil Petition

# EXHIBIT CCC

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number
STEVEN T. GUBNER - Bar No. 156593
COREY R. WEBER - Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367
Telephone: (818) 827-9000, Facsimile: (818) 827-9099
Email: sgubner@ebg-law.com, cweber@ebg-law.com

*Attorney for* Jason M. Rund, Chapter 7 Trustee

FOR COURT USE ONLY

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re: EPD INVESTMENT COMPANY, LLC,

Debtor.

In re

JERROLD S. PRESSMAN,

Debtor.

Case No. 2:10-bk-62208-ER Chapter 7

Case No. 2:12-bk-13760-ER Chapter 7

DATE: May 23, 2012

TIME: 10:00 a.m.

COURTROOM: 1568

## NOTICE OF MOTION FOR:

CHAPTER 7 TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE BANKRUPTCY ESTATES OF DEBTORS EPD INVESTMENT CO., LLC AND JERROLD S. PRESSMAN

*(Specify name of Motion)*

1. TO: ALL CREDITORS AND INTERESTED PARTIES:

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

**Hearing Date:** May 23, 2012 **Time:** 10:00 a.m. **Courtroom:** 1568 **Floor:** 15

☒ **255 East Temple Street, Los Angeles**
☐ **21041 Burbank Boulevard, Woodland Hills**
☐ **3420 Twelfth Street, Riverside**
☐ **411 West Fourth Street, Santa Ana**
☐ **1415 State Street, Santa Barbara**

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response with the Bankruptcy Court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the Judge's self-calendaring procedures.

Dated: April 26, 2012

EZRA BRUTZKUS GUBNER LLP
*Law Firm Name*

By: ______________________

Name: COREY R. WEBER
*Attorney for Movant*

STEVEN T. GUBNER - Bar No. 156593
COREY R. WEBER - Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000, Facsimile: (818) 827-9099
sgubner@ebg-law.com, cweber@ebg-law.com

Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee for the Bankruptcy Estate of
EPD Investment Company, LLC

RICHARD K. DIAMOND (State Bar No. 070634)
rdiamond@dgdk.com
ROBERT A. HESSLING (State Bar No. 096466)
rhessling@dgdk.com
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles CA 90067
Telephone: (310) 277-0070, Facsimile: (310) 277-5735

General Bankruptcy Counsel for Jason M. Rund,
Chapter 7 Trustee for the Bankruptcy Estate of
EPD Investment Company, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC,

Debtor.

EIN No. xxx-0994

In re

JERROLD S. PRESSMAN,

Debtor.

Case No. 2:10-bk-62208-ER
Chapter 7

Case No. 2:12-bk-13760-ER
Chapter 7

**CHAPTER 7 TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE BANKRUPTCY ESTATES OF DEBTORS EPD INVESTMENT CO., LLC AND JERROLD S. PRESSMAN; AND DECLARATIONS OF JERROLD S. PRESSMAN, JASON M. RUND AND COREY R. WEBER IN SUPPORT THEREOF**

[Notice of Motion and Request for Judicial Notice filed concurrently herewith]

**Hearing:**
**Date:** May 23, 2012
**Time:** 10:00 a.m.
**Place:** Courtroom 1568
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

Case 2:10-bk-62208-ER Doc 200 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc
Main Document Page 3 of 55

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 4

A. The EPD Sole Proprietorship and EPD. ..... 4

1. History and Management ..... 4

2. The Business of The Sole Proprietorship and EPD—An Accounting Entity That Acted as a Conduit to Flow Funds to Entities Partially Owned by Jerrold Pressman. ..... 5

B. UCC-1 Financing Statements in Favor of EPD and Against Pressman's Assets ..... 7

C. EPD's Tax Returns Show That EPD Was Never Profitable and Suffered Large Net Losses. ..... 10

D. EPD Did Not Have Sufficient Cash On Hand to Pay Creditors Beginning in 2009. ..... 11

E. EPD and Jerrold Pressman's Remaining Assets ..... 11

III. PROCEDURAL HISTORY ..... 13

A. The EPD Bankruptcy Case. ..... 13

1. The Involuntary Petition and the Order for Relief. ..... 13

2. Employment of Professionals ..... 14

3. The Motion to Compel and the Debtor's Filings of Statements, Schedules and a Creditor's Matrix. ..... 14

4. EPD's Motion to Convert the Case to Chapter 11, and Motion to Alter or Amend. ..... 14

5. The Rule 2004 Examinations ..... 15

6. The 9019 Motion re the North Hills Stock. ..... 15

B. The EPD Bankruptcy Case. ..... 16

1. The Petition ..... 16

2. Statements and Schedules ..... 16

**TABLE OF CONTENTS – Continued**

Page


C. The Sidecreek Bankruptcy Case. 16

1. The Petition. 16

2. Statements and Schedules. 16

IV. SUBSTANTIVE CONSOLIDATION IS APPROPRIATE. 17

A. The Purpose and Effect of Substantive Consolidation. 17

B. The Test for Substantive Consolidation 18

C. Substantive Consolidation of EPD and Pressman's Bankruptcy Estates Is Appropriate Based on the Ninth Circuit Test and Based on the Purpose of Substantive Consolidation 18

1. The Creditors Dealt With the Sole Proprietorship, EPD and Jerrold Pressman As a Single Economic Unit. 18

a. No Distinction Between the Sole Proprietorship and EPD. 18

b. Creditors Understood That the Assets of Companies in Which Pressman Had an Ownership Interest Were Available to Pay Amounts Owed to Them 19

2. The Affairs of EPD and Pressman Are So Entangled That Consolidation Will Benefit All Creditors. 23

a. Disregard of Corporate Formalities. 23

1. Secretary of State Filings Were Not Accurate. 23

2. EPD Did Not Generally Observe Corporate Formalities—It Acted as a Conduit for Jerrold Pressman. 25

b. Commingling of Assets and Liabilities. 25

1. Jerrold Pressman's Personal Account at EPD 25

2. SunTrust Bank 27

3. Sunset Key 28

c. Secured Liens Were Recorded Against Both EPD and Jerrold Pressman by Creditors of EPD That Threatened Lawsuits and an Involuntary Bankruptcy Proceeding, and by the Family Trust of EPD's Former Bankruptcy Counsel. 29




570979

Case 2:10-bk-62208-ER Doc 200 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Main Document Page 5 of 55

**TABLE OF CONTENTS – Continued**

Page

3. The Benefits Strongly Outweigh the Harms of Substantive Consolidation. 31

a. EPD Is By Far the Largest, and is the First Priority, Secured Creditor in the Pressman Bankruptcy Case, and There Will Likely Be No Funds To Distribute To General Unsecured Creditors in the Pressman Bankruptcy Case. 31

b. The Vast Majority of the General Unsecured Creditors in the EPD Bankruptcy Case and Pressman Bankruptcy Case Are the Same 32

c. Substantive Consolidation Would Substantially Reduce Administrative Expenses, Leaving More Funds Available for Distribution to Unsecured Creditors 33

IV. CONCLUSION 34

APPENDIX I 35

APPENDIX II 39

DECLARATION OF JASON M. RUND 40

DECLARATION OF COREY R. WEBER 42

DECLARATION OF JERROLD S. PRESSMAN 45

# TABLE OF AUTHORITIES

Page

## CASES

In re Augie/Restivo,
860 F.2d at 518-19 .......... 1, 17, 18

In re Bonham,
229 F.3d 750, 764 (9th Cir. 2000) .......... 1, 17, 18

In re Lahijani,
2005 WL 46584900, 8 (Bankr. C.D. Cal. 2005 .......... 18

In re Parkway Calabasas Ltd.,
89 B.R. 832, 836-837 (Bankr. C.D. Cal. 1988). .......... 17

In re Reider,
31 F.3d at 1108 (citing In re Augie/Restivo, 860 F.2d at 518) .......... 18

In re Wade Cook Financial Corp.,
375 B.R. 580, 598 (9th Cir. BAP 2007). .......... 18

Sampsell v. Imperial Paper & Color Corp.,
313 U.S. 215, 61 S.Ct. 904 (U.S. S.Ct. 1941) .......... 17

## FEDERAL STATUTES

11 U.S.C. § 706(a) .......... 14

11 U.S.C. §§ 544, 547, 548, 550 .......... 12, 13, 31

## STATE STATUTES

California Civil Code § 3439, *et seq.* .......... 12, 13, 31

California Code of Civil Procedure § 493.030(b).. .......... 28

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTOR EPD INVESTMENT CO., LLC, CHAPTER 7 TRUSTEE JOHN J. MENCHACA, DEBTOR JERROLD S. PRESSMAN AND HIS ATTORNEYS OF RECORD, ALL CREDITORS AND OTHER INTERESTED PARTIES:**

Jason M. Rund, the duly appointed and acting Chapter 7 trustee (the "Trustee") for the bankruptcy estate of debtor EPD Investment Co., LLC ("EPD"), hereby moves to substantively consolidate (the "Motion") the bankruptcy estates of EPD [Case No. 2:10-bk-62208-ER] (the "EPD Bankruptcy Case") and Jerrold S. Pressman ("Jerrold Pressman") [Case No. 2:12-bk-13760-ER] (the "Pressman Bankruptcy Case").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

"The primary purpose of substantive consolidation "is to ensure the equitable treatment of all creditors." In re Bonham, 229 F.3d 750, 764 (9th Cir. 2000)(citing In re Augie/Restivo, 860 F.2d at 518). The Trustee filed this Motion to ensure the equitable treatment of the creditors of the bankruptcy estates of a limited liability company and its principal. As described by Jerrold Pressman, EPD "was only an accounting entity that acted as a conduit to flow funds to entities held by me…"[1]

Jerrold Pressman operated a sole proprietorship called EPD Investment Co. (the "EPD Sole Proprietorship") beginning in the 1970's. EPD Investment Co., LLC ("EPD") was formed as a California limited liability company in 2003 and seamlessly continued the business of the EPD Sole Proprietorship, with substantially the same assets and same liabilities. According to a letter from Jerrold Pressman to EPD's accountant in 2004, "[i]n order to gain some level of legal corporate protection for the on-going business of EPD, I effectively created on July 1, 2003, a new LLC… In

[1] Pressman Declaration, ¶ 6, and Exhibit J to the Pressman Declaration, e-mail from Pressman to Kirkland dated March 21, 2011 (emphasis added).

order to meet the above needs and satisfy my goals of personal retirement, I transferred all of the assets, debt and goodwill of EPD sole proprietorship to EPD LLC on that date."[2] As part of EPD's formation as a limited liability company in 2003 (and Jerrold Pressman's transfer of liabilities from the Sole Proprietorship to EPD), and again in 2009, Jerrold Pressman executed promissory notes and security agreements, and recorded UCC-1 financing statements, encumbering all of Jerrold Pressman's personal assets in favor of EPD.[3] EPD's lien, which was perfected on July 31, 2009, is a first priority lien in the amount of at least $24 million[4] and far exceeds the likely aggregate value of the assets in the Pressman Bankruptcy Case. As a result, in the event that this Motion is not granted, EPD's lien nevertheless affects all of the assets in the Pressman Bankruptcy Case (except avoidance claims and causes of action, if any), and those creditors that hold claims against Jerrold Pressman's bankruptcy estate ("Pressman Bankruptcy Estate") only will not receive any distribution absent any recoveries with respect to the avoidance claims and causes of action, if any.

The EPD Sole Proprietorship and later EPD (beginning in mid-2003) borrowed money from people whom Pressman has characterized as mostly friends and family and has referred to as investors (the "Creditors"). The Creditors received promissory notes from EPD that were due on demand, or within 30 days after demand. The EPD Sole Proprietorship and EPD then used the funds borrowed from the Creditors to loan money: (1) to Jerrold Pressman for him to invest and/or loan to companies in which he held ownership interests (most of the companies were land management companies, land development companies, night clubs and ice rinks); or (2) directly to the companies in which Jerrold Pressman held ownership interests. Monies loaned to the EPD Sole Proprietorship and EPD therefore flowed from EPD to Jerrold Pressman or to companies partially owned by Jerrold Pressman, and from Jerrold Pressman or the companies partially owned by Jerrold Pressman back to

---

[2] Pressman Declaration, ¶ 5, and Exhibit I to the Pressman Declaration, letter from Pressman to Jonavic dated December 10, 2004.

[3] Although a UCC-1 Amendment was recorded on April 27, 2010 to remove the stock in North Hills Industrial Park, Inc. as collateral (see RJN, Exhibit 7), the Trustee asserted that the transfer is avoidable and recoverable as a fraudulent transfer. This and other disputes have been resolved pursuant to a settlement agreement whereby, subject to Court approval, Robert Geringer will pay $3.5 million in installments to the Trustee on behalf of the EPD bankruptcy estate rather than to Pressman.

[4] EPD's Statement and Schedules show an amount of $24.268 million owed by Jerrold Pressman to EPD. *See* Attachment to Schedule B [Docket No. 104-1].

EPD (when the companies had cash flow to make repayments on the loans), and through the same cycle many times. At the end of the cycle, many of the companies in which Jerrold Pressman held ownership interests, and which still owed significant amounts of money to Jerrold Pressman and EPD, had stopped operating and had no remaining assets. As a result, many of the accounts receivable held by EPD, some in the millions of dollars, became worthless.

The Creditors that began loaning money to the EPD Sole Proprietorship, and then continued loaning money to EPD after its formation in 2003, were unaware of any distinction between the EPD Sole Proprietorship and EPD, and believed that these entities were one continuing company. Both before and after EPD's formation in 2003, Pressman and Creditors discussed assets that combined, without distinction, the assets of EPD and other companies in which Pressman held ownership interests. When EPD stopped making payments to Creditors in mid-2009, Creditors and Pressman engaged in a continuing dialogue by e-mail and telephone regarding the status of obtaining loans on, or refinancing, real property, which was owned by companies in which Pressman held ownership interests, in order to provide liquidity to pay the Creditors. Creditors dealt with the EPD Sole Proprietorship, EPD and Jerrold Pressman as a single economic unit and enterprise with one pool of assets and liabilities.

Further, the affairs of EPD are so entangled with the Sole Proprietorship and Jerrold Pressman that consolidation will benefit the creditors of both Estates. This is one continuing business—the business of Jerrold Pressman as a sole proprietor and continued as EPD. Without substantive consolidation, there is no equitable way to determine whether the Creditors' claims are against the Pressman Bankruptcy Estate, EPD's bankruptcy estate (the "EPD Bankruptcy Estate"), or both. The Trustee seeks to substantively consolidate the Estates to ensure the equitable treatment of the Creditors of both Estates.

Based on this Motion and the supporting papers, including the declarations of Jerrold Pressman (the "Pressman Declaration"), Jason M. Rund (the "Rund Declaration") and Corey R. Weber (the "Weber Declaration"), and the request for judicial notice filed concurrently herewith (the "RJN"), the Trustee respectfully requests that the Court enter an order providing for the following relief:

1. Granting this Motion;

2. Ordering that the bankruptcy estates for EPD and Jerrold Pressman be substantively consolidated *nunc pro tunc* to December 7, 2010, that all assets of the individual estates constitute the assets of the resulting consolidated estate (the "Consolidated Estate"); and that all liabilities of the individual estates shall constitute the liabilities of the Consolidated Estate;

3. The EPD Bankruptcy Case shall be deemed the "lead" case;

4. All claims filed in the Pressman Bankruptcy Case shall be deemed to have been filed in the EPD Bankruptcy Case against the Consolidated Estate, without the need for claimants to file additional proofs of claim in the EPD Bankruptcy Case;

5. Jason M. Rund shall serve as the sole trustee for the Consolidated Estate;

6. Danning, Gill, Diamond & Kollitz, LLP ("DGDK") is authorized to serve as the general bankruptcy counsel, and Ezra Brutzkus Gubner LLP ("EBG") is authorized to serve as the special litigation counsel, of the Trustee for the Consolidated Estate without further order of the Court;

7. The consolidation of the estates shall not have any effect upon the amount, validity, priority or extent of liens against property of the estates; and

8. For such other and further relief as the Court deems appropriate.

## II.

## STATEMENT OF FACTS

### A. The EPD Sole Proprietorship and EPD

#### 1. History and Management

Between the 1970s and June 27, 2003, "EPD Investment Co." was an unincorporated sole proprietorship run by Pressman.[5] On June 27, 2003, EPD was formed as a California limited liability company.[6] Upon EPD's formation in 2003, the EPD Sole Proprietorship's assets and

---

[5] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. I, pp. 36-37, lines 22-25 and 1-5; Pressman Declaration, ¶ 2.

[6] RJN, Exhibit 1, EPD Limited Liability Company Articles of Organization; Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. I, p. 35, lines 16-22.

liabilities were transferred from Jerrold Pressman to EPD. In December 2004, Pressman wrote to EPD's accountant that:

> "[i]n order to gain some level of legal corporate protection for the on-going business of EPD, I effectively created on July 1, 2003, a new LLC… In order to meet the above needs and satisfy my goals of personal retirement, I transferred all of the assets, debt and goodwill of EPD sole proprietorship to EPD LLC on that date."[7]

**2. The Business of The Sole Proprietorship and EPD—An Accounting Entity That Acted as a Conduit to Flow Funds to Entities Partially Owned by Jerrold Pressman**

Jerrold Pressman described the Sole Proprietorship and EPD as follows: "…I confirmed EPD never had an office (paid rent) or a computer of its own, or even a desk. It was started in the 1970s before it became an LLC in 2003. It was only an accounting entity that acted as a conduit to flow funds to entities held by me…"[8] Jerrold Pressman testified in his capacity as an individual and as the designated person most qualified for EPD that EPD was managed solely by him and operated in his "back pocket":

> "[w]ell, the debtor was in my back pocket. The debtor never had an office, never had a computer, never had an over—it never had a business, as such. It did have some employees back in 2009, who were doing administrative work, but it never really had a place, and so when the offices were closed down, Broadway was evicted from its location because it couldn't pay the rent. At the time, Broadway was renting a space that was subleased by a bunch of arm's length companies, and I maintained an office there, and when the company was shut down, everybody left, and so theoretically, EPD has no employees, nor has it for more than a year, year and a half, and that doesn't mean it's closed down in terms of a business. We're just waiting—I mean, any—it's still recorded through Secretary of State, it's still an active business, it's just in my back pocket."[9]

Jerrold Pressman told Creditors that Sole Proprietorship and EPD funds were used to purchase long-term land development projects:

> "… We are not an investment company. 95% of our group consists of ONLY family and extended family members. We have never had clients from the business world. For 35 years our family has pooled its resources and used the funds to purchase long

---

[7] Pressman Declaration, ¶ 5, and Exhibit I to the Pressman Declaration, letter from Pressman to Jonavic dated December 10, 2004.

[8] Pressman Declaration, ¶ 6, and Exhibit J to the Pressman Declaration, e-mail from Pressman to Kirkland dated March 21, 2011.

[9] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. I, p. 57, lines 1-16.

term Land Development Projects. Most are located in prime areas such as Brentwood Tenn. a suburb of Nashville where we purchased and developed more than 2,000 acres in the past two decades. We currently control 250 acres of the remaining lots that have been appraised by the bank last year for more than $25,000,000 with only $4,000,000 of bank debt. All of the properties are highly valued and subject to very low loan to values."[10]

The Sole Proprietorship and EPD obtained funds from the Creditors in exchange for promissory notes or demand notes that were due on demand or within 30 days after demand and bore mostly double-digit interest rates annually.[11] Jerrold Pressman testified that the Creditors loaned their funds to EPD rather than invested the funds in EPD:

"… Just for the record, because we're using the word investment" and "loan" intermittently, no one invested in EPD. When we say "investment" I mean—I'm thinking you mean loan. No one ever invested in EPD.
Q. So any person that put money into EPD loaned the money to EPD?
A. Either loaned the money to EPD or put it in temporarily to be spent on their behalf somewhere else, but it was not an investment in EPD.
Q. They were all loans and they're all evidenced by promissory notes?
A. Correct."[12]

The Sole Proprietorship would, in turn, loan the funds to other companies in which Pressman held ownership interests. As to the real property, Jerrold Pressman testified that money was lent by EPD to various companies and some of the money was paid back in a "gigantic active business that was rotating that money":

"Over the years, we, to these entities, and this sounds like I'm really knowledgeable, but I just got this information yesterday so you'll be really impressed; I was. We put 73 million in and we got 48 million back, or 32 million back, you know, on the revolving notes, so we have a gigantic active business that was rotating that money, but every single cent that came out of any of those entities went directly into EPD, so just the fact that it was collateral, that's extra, but in terms of the flow of the cash, every cent went in. Never took a penny out of any of those entities."[13]

"… It's probably easier to tell you that, as I mentioned before, there was a total of $74 million loaned to these entities, these real estate entities, and there was about $43 million that was paid back on the revolving note, and it all came back in the form of principal so there's no accrual for interest—excuse me, there was no interest paid.

---

[10] Pressman Declaration, ¶ 14, and Exhibit T to the Pressman Declaration, e-mail from Pressman to Michael Kabik dated December 8, 2010.
[11] Declarations of the Petitioning Creditors, EPD Bankruptcy Case, Docket Nos. 9-15. *See also* Exhibit C to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. III, pp. 499-500, lines 21-25 and 1-6.
[12] Exhibit B to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. II, p 278, lines 9-21.
[13] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. I, pp. 45-46, lines 24-25 and 1-10.

Case 2:10-bk-62208-ER Doc 200 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Main Document Page 13 of 55

> There is an accrual for interest, because these were interest-bearing notes and so to this day, probably on these properties alone, there's probably $28 million but again, the money came through me, most of the money came through me, so there's a portion of the money would come on the books that they'd give me the money and I would give them the money, but there's about, on these properties, there's probably, at this point, 28 to $32 million of debt owed back to me, indirectly owed back to EPD, and I was not counting interest."[14]

Although EPD would loan money to the companies in which Jerrold Pressman held ownership interests, EPD's books often reflected that the amounts were owed by Jerrold Pressman to EPD, rather than directly from the companies to EPD, because Jerrold Pressman was borrowing the money and directing it as a loan to the companies in which he held ownership interests. For example, Jerrold Pressman testified that:

> "... As I told you, they loaned it—the books will demonstrate that the money was sent from EPD to JSP Properties, but it was probably allocated on the book as a loan to me. I have a $25 million dollar revolving note, so the money was loaned through me to the entity. Now, there might be some portion that was lent to them as well, because there was also a revolving note from the company, from JSP Property, back to the company, but I can't tell what you the breakdown was, but generally speaking, in my mind, I owe the money to EPD."[15]

**B. <u>UCC-1 Financing Statements in Favor of EPD and Against Pressman's Assets</u>**

As stated in a memorandum prepared by Jerrold Pressman, EPD:

> "was the successor Company to EPD Investment Co., a Sole Proprietorship with a properly filed DBA for the Sole Proprietor Jerrold Pressman. At the time it became a LLC, JSP as the former sole proprietor pledged through a security agreement and UCC 1 all of his assets and ownership to EPD LLC since as a sole proprietor the ownership in the assets acquired by EPD was held in his name to facilitate bank financing personal guarantees and flexibility. Particularly related to real property and stock or membership ownership in acquired LLCs or Sub s Corporations."[16]

On or about July 3, 2003, Jerrold Pressman executed a $25 million revolving promissory note in favor of EPD (the "2003 Note").[17] On or about July 3, 2003, Jerrold Pressman entered into a

---

[14] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination Transcript, Vol. I, pp. 53-54, lines 14-25 and 1-5.
[15] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination Transcript, Vol. I, p. 54, lines 15-25.
[16] Pressman Declaration, ¶ 8, and Exhibit K to the Pressman Declaration.
[17] Pressman Declaration, ¶ 9, and Exhibit L to the Pressman Declaration, 2003 Note.

security agreement with EPD.[18] On or about July 3, 2003, Jerrold Pressman recorded a UCC-1 financing statement encumbering all of his assets in favor of EPD (the "2003 UCC-1").[19]

On or about July 31, 2009, Jerrold Pressman entered into a second $25 million revolving promissory note (the "2009 Note")(the 2003 Note and the 2009 Note are collectively referred to as the "Notes") and a security agreement with EPD (the "2009 Security Agreement")(the 2003 Security Agreement and the 2009 Security Agreement are collectively referred to as the "Security Agreements").[20] On or about July 31, 2009, Jerrold Pressman recorded a UCC-1 financing statement encumbering all of his assets in favor of EPD[21] (the "2009 UCC-1")(the 2003 UCC-1 and the 2009 UCC-1 are collectively referred to as the "UCC-1s"). The 2009 UCC-1 states that it covers the following all-encompassing set of assets of Jerrold Pressman as collateral:

> "All present and after-acquired fixtures, accessions and personal property, including without limitation all goods, consumer goods, inventory, equipment, furniture, money, documents, instruments, ownership held in partnerships, corporations, LLC's or any other ownership of assets, notes, promissory notes, drafts, checks, certificates of deposit, investment property, accounts, accounts receivable, chattel paper, general intangibles, leases, contracts, contract rights, goodwill, copyrights, trademarks, patents, rights to proceeds of letters of credit and rights to payment of money, and all future advances and proceeds of any of the foregoing."[22]

To secure the obligations evidenced by the Notes, the Security Agreements granted EPD security interests in all of Pressman's assets, including but not limited to his accounts receivable, shares of stock, partnership interests and membership interests.

Jerrold Pressman testified that:

> "Well, the debtors,—some of them invested—actually, none of them invested in the properties direct. As a sole proprietor, the properties were all in my name, at least my ownership of those properties were in my name, because obviously, a bank isn't going to take a sole proprietorship entity. They have to take an individual who's going to personally guarantee the note. In 2003 when I became an LLC, I created a security agreement and filed a UCC-1 against me on behalf of the debtor, securing a hundred percent of everything I owned to secure the money that I had borrowed to pay—to purchase and develop those properties, and then in 2009, when the UCC-1

---

[18] Pressman Declaration, ¶ 9, and Exhibit M to the Pressman Declaration, 2003 Security Agreement.
[19] Pressman Declaration, ¶ 9, and Exhibit N to the Pressman Declaration, 2003 UCC-1; RJN, Exhibit 5, 2003 UCC-1.
[20] Pressman Declaration, ¶ 10, and Exhibits O and P to the Pressman Declaration, 2009 Note and 2009 Security Agreement.
[21] Pressman Declaration, ¶ 10, and Exhibit Q to the Pressman Declaration, 2009 UCC-1; RJN, Exhibit 6, 2009 UCC-1.
[22] Id.

> expired, I re-filed again, so indirectly at that time, the investors—or the creditors, or what do you—yeah, the creditors, they had a promissory note from the company, the company loaned the money to me, theoretically, I invested the money in the properties, and then I pledged back my properties to the company via security agreement and a UCC-1 over the last—from the time I became a sole proprietor—from the time I became an LLC…"[23]

On April 27, 2010, an Amendment to the 2009 UCC-1 was filed, removing the stock in North Hills Industrial Park, Inc. as collateral. The Trustee asserts that the transfer evidenced by the Amendment is avoidable and recoverable as a fraudulent transfer because there was no consideration for the Amendment. This and other disputes between the Trustee and Jerrold Pressman have been resolved pursuant to a settlement agreement whereby, subject to Court approval, Robert Gerringer will pay $3.5 million in installments to the Trustee on behalf of the EPD bankruptcy estate rather than to Pressman.

In regard to the amount owed to Creditors of approximately $67 million versus the assets of approximately $32 million listed in the EPD Statements and Schedules, Jerrold Pressman testified that his ownership interests in outside companies backed up the amounts owed:

> "The rest of the money, you know, I'm not an accountant, it's there. The ownership that I have in these outside entities are backing up these securities, so if I get profit from these other entities, which I hopefully will, that money belongs to this company as collateral against my notes, and so my intentions were to take any monies that I generated from these properties that I hold separately to cover this, and I believe that there's enough money in there to do that."[24]

> "Well, at the time that some of this debt was entered into, when I, as you remember, I was a sole proprietor, and so as a sole proprietor, I also accepted responsibility of having a personal guarantee on the differential of what you're talking about, and so that's why those other assets, at the time I gave those—that personal guarantee, it was my intention to cover the difference between the two of these, and that really would be the net effect, assuming that the people would collect $32 million, assuming it was all paid, and then the balance would be paid by me. And those assets do, can get that amount of money, even in these terrible times, unless we start to lose the property, which I'm close to doing but it's—providing we can survive, going forward, when those last lots are sol, my personal guarantee will click in for the difference and these people will get their money."[25]

Jerrold Pressman further testified that he recorded the financing statements against his assets in favor

---

[23] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. I, p. 42, lines 4-25.
[24] Exhibit C to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. III, p. 507, lines 4-19.
[25] Exhibit C to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. III, p. 509, lines 9-25.

of EPD, rather than transfer the ownership interests in companies to EPD, because:

> "You can't. It was already at the bank, and the bank isn't going to do that, you know. It's like calling the bank and say: Hey, I've got a new creditor, would you let me off the hook? There's no way they're going to let you off the hook. But I did the next best thing by assigning my rights to it, but by assigning my stuff, that's the same thing as doing it, and I don't have to tell you, but the terms of the UCC-1, while it's collateral, it also is very clear that every single penny that comes in that's distributed from that asset, whether it's in the form of a loan or whether it's in the form of a, in this case, a salary, I've never drawn a salary from any company in my whole life, not one of these companies, or has my son or any of my family members. We've never had a car, never taken an expense, we've never travelled, never taken a cookie from one of these companies, because the essence of a UCC-1 says anything you get in the interim goes directly into EPD, and that's just what happened."[26]

Pressman further testified that EPD had not conducted business since 2009, "[b]ut obviously, quite interested in the assets that are securing the debtor that I am a shareholder of, 'cause that's going to be our sources of repayment and income in the future."[27]

### C. EPD's Tax Returns Show That EPD Was Never Profitable and Suffered Large Net Losses

EPD's tax returns show that since its formation in mid-2003, EPD has never been profitable. The tax returns show net losses as follows: ($1,356,192) for 2003 (between its formation and the end of 2003)[28], ($3,223,395) for 2004[29], ($1,990,744) for 2005[30], ($5,131,269) for 2006[31], ($584,301) for 2007[32] and ($573,412) for 2008[33]. According to its tax returns, EPD had a cumulative net loss of ($12,859,313) during fiscal years 2003-2008. EPD did not file any tax returns for fiscal years 2009-2011because "[j]ust don't have the money or the paperwork to put together, and we don't owe any taxes because there's a $10 million loss carry forward, so there's no taxes owed, so there's no penalty, and unless we're doing business, we may never file another tax return.[34]

---

[26] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. I, p. 45, lines 5-23.
[27] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. I, p. 57, lines 19-22.
[28] Pressman Declaration, ¶ 15, and Exhibit U to the Pressman Declaration, EPD 2003 tax return.
[29] Pressman Declaration, ¶ 15, and Exhibit V to the Pressman Declaration, EPD 2004 tax return.
[30] Pressman Declaration, ¶ 15, and Exhibit W to the Pressman Declaration, EPD 2005 tax return.
[31] Pressman Declaration, ¶ 15, and Exhibit X to the Pressman Declaration, EPD 2006 tax return.
[32] Pressman Declaration, ¶ 15, and Exhibit Y to the Pressman Declaration, EPD 2007 tax return.
[33] Pressman Declaration, ¶ 15, and Exhibit Z to the Pressman Declaration, EPD 2008 tax return.
[34] Exhibit B to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. II, pp. 411-412, lines 24-25 and 1-9.

### D. EPD Did Not Have Sufficient Cash On Hand to Pay Creditors Beginning in 2009

Jerrold Pressman testified that beginning in late 2008 or early 2009, EPD did not have sufficient funds on hand to pay its obligations[35] because the companies in which he held ownership interests were unable to continue making payments to EPD:

> "It's called the economy. The companies that were selling the properties lost their credit line, and the credit line was required in order to post the bonds to sell the property and to pay for the construction, particularly the one in Tennessee had a $4 million credit line that had been paid down. It was an original $8 million one, $4 million had been paid down and, like, on Monday they just cut everybody in the bank, every single person in the bank who had a credit line connected to real estate was cut off, and it just dried up the ability to sell the properties. In addition to that, the cash flow that was generated, Broadway Entertainment, particularly, was doing five, six, seven million dollars a year in revenue, in income, and was making, you know, amazing profits, and its customers stopped paying their bills, and its customers were CBS and NBC, they stopped paying their bills, which made it impossible for the company to continue to operate. The music venue on Sunset Boulevard just got caught in this—after thirteen years, got caught in the economy, and people were buying one drink instead of two, and coming at midnight instead of ten, and just, like, in one year it wiped out fifty years of history."[36]

> "Well, the debtor had revolving notes, and so as the other companies would make profit or income, they would pay it into EPD…"[37]

### E. EPD and Jerrold Pressman's Remaining Assets

EPD's remaining assets[38] consist of:

1. Promissory notes and security agreements executed by Jerrold Pressman in favor of EPD, and the financing statements in favor of EPD against Jerrold Pressman's assets[39];

2. Promissory notes in the principal amounts of $4.413 million by Broadway Entertainment Marketing, Inc. and $4.285 million by S.C. Club, L.P., entities in which Jerrold Pressman holds ownerships interest but which are not operating, have been suspended by the California Secretary of State and appear to have no assets.[40]

---

[35] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. I, p. 61, lines 2-6.
[36] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. I, pp. 61-62, lines 8-25 and 1-7.
[37] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. I, p. 62, lines 13-15.
[38] The assets listed are assets in excess of $5,000. The Trustee has not listed *de minimis* assets. In addition to the assets listed below, EPD also has a claim in the bankruptcy case titled *In re Sidecreek Development, Inc.* (*See* Section III.C., infra.). The Trustee's investigation is continuing as to other potential assets.
[39] RJN, Exhibits 5 and 6; Exhibits L-Q to the Pressman Declaration*; See also* EPD Statements and Schedules and Amended Statements and Schedules.
[40] EPD Bankruptcy Case, Docket No. 104-1.

3. Promissory note in the principal amount of $312,000 by Orland McCarthy.[41]

4. Prior to his bankruptcy filing, Jerrold Pressman entered into an agreement to sell his shares of stock in North Hills Industrial Park, Inc. ("NHIP") to Robert Geringer ("Geringer") for $3.5 million payable in installments over time.[42] Jerrold Pressman concurrently entered into a settlement agreement with the Trustee and Geringer whereby, subject to Court approval, Geringer will pay the $3.5 million in installments to the Trustee on behalf of the EPD bankruptcy estate rather than to Pressman.[43]

5. Litigation rights, including but not limited to avoidance powers actions pursuant to 11 U.S.C. §§ 544, 547, 548, 549 and 550 and California Civil Code § 3439, *et seq.*

In turn, excluding the $3.5 million in installments that were assigned to the Trustee pursuant to the settlement, subject to Court approval, Jerrold Pressman's remaining assets consist mostly of ownership interests in companies, most of which are not operating and have no assets, or are in bankruptcy, as follows:

1. 80% ownership interest in EPD (EPD is in bankruptcy and the ownership interest likely has no value)[44];

2. 43.5% ownership of Fallbrook Investments, LLC (company appears to have no assets other than a bank account with minimal funds and an interest in a management agreement, and stock has a scheduled value of $0)[45];

3. 49% ownership interest in Broadway Entertainment Marketing, Inc. (company is not operating and appears to have no assets, and stock has a scheduled value of $0)[46];

4. 43% ownership interest in Ice Specialty Entertainment, Inc. (company is not operating and appears to have no assets, and stock has a scheduled value of $0)[47];

5. 49% ownership interest in S.C. Club, Inc. (company is not operating and appears to have assets consisting merely of leasehold improvements and liabilities that exceed assets by $3 million, and stock has a scheduled value of $0)[48];

6. 50% ownership of Sidecreek Development, Inc. f/k/a Creekside Development, Inc. (company is in a Chapter 11 bankruptcy, Case No. 2:12-bk-17787-ER, pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, the Honorable Ernest M. Robles presiding, and according to Jerrold Pressman's schedules, company's sole asset is vacant Tennessee land with a total

---

[41] Id.
[42] EPD Bankruptcy Case, Docket No. 183, at Exhibit "A."
[43] EPD Bankruptcy Case, Docket No. 183.
[44] Pressman Bankruptcy Case, Docket No. 26, Pressman's Schedule B, Item No. 13.
[45] Id.
[46] Id.
[47] Id.
[48] Id.

Case 2:10-bk-62208-ER Doc 200 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Main Document Page 19 of 55

value of $6 million and company's total liabilities are about $4.5 million)[49];

7. 43% ownership interest in Lamsall, LLC (company appears to have no assets, and stock has a scheduled value of $0)[50];

8. 50% ownership interest in JSP Properties, Inc. (stock has a scheduled value of $25,000, and Jerrold Pressman claims an exemption of $21,592 in the stock)[51];

9. 50% ownership interest in RBT, LLC (stock has a scheduled value of $0)[52];

10. Accounts receivable for shareholder loan to Fallbrook Investments, LLC for $899,000[53] (this asset appears to have little to no value in light of the apparent minimal assets of Fallbrook Investments, LLC); and

11. Litigation rights, including but not limited to avoidance powers actions pursuant to 11 U.S.C. §§ 544, 547, 548, 549 and 550 and California Civil Code § 3439, *et seq.*

EPD has a first priority UCC-1 financing statement encumbering the above-described ownership interests in the companies and accounts receivable.[54]

## III.

## PROCEDURAL HISTORY

### A. The EPD Bankruptcy Case.

#### 1. The Involuntary Petition and the Order for Relief

Petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively, the "Petitioning Creditors") filed the Involuntary Petition on December 7, 2010 [Docket No. 1]. The Court entered an Order for Relief on February 9, 2011. [Docket Nos. 28 and 29].

---

[49] Id. The statements and schedules in the Sidecreek Bankruptcy Case list a higher value for the land. At this point, the actual value is uncertain.
[50] Id.
[51] Id.
[52] Id.
[53] Id.
[54] UCC-1s; RJN, Exhibits 5 and 6, UCC-1s; Pressman Declaration, ¶¶ 9-11, and Exhibits N and Q to the Pressman Declaration.



570979

**2. Employment of Professionals**

On February 24, 2011, the Trustee filed an application to employ DGDK as his general bankruptcy counsel [Docket No. 53]. On March 10, 2011, the Trustee filed an application to employ EBG as his special litigation counsel [Docket No. 57]. On March 23, 2012, the Court entered an Order granting the Trustee's application to employ DGDK as his general bankruptcy counsel [Docket No. 80]. On April 26, 2011, the Court entered an Order granting the Trustee's application to employ EBG as his special litigation counsel [Docket No. 120].

**3. The Motion to Compel and the Debtor's Filings of Statements, Schedules and a Creditor's Matrix**

On March 17, 2011, the Trustee filed his motion to compel EPD to: (1) file statements, schedules and a creditor's matrix; (2) turn over the books, records and property of EPD; and (3) cooperate with the Trustee [Docket No. 68]. On April 28, 2011, the Court entered an Order granting the Trustee's motion to compel [Docket No. 125]. The Order stated that EPD must file its statements, schedules and creditor matrix by no later than April 14, 2011 and that EPD must turn over its books, records and property by no later than April 20, 2011.

The Debtor filed Statements and Schedules on April 14, 2011 (the "EPD Statements and Schedules") and filed Amended Statements and Schedules on June 8, 2011 (the "Amended EPD Statements and Schedules"). The 341a meeting of creditors took place on September 8, 2011. Pressman appeared on behalf of the Debtor at the meeting of creditors.

**4. EPD's Motion to Convert the Case to Chapter 11, and Motion to Alter or Amend**

On February 24, 2011, EPD filed a motion to convert the case under 11 U.S.C. § 706(a) [Docket No. 51]. On the same day, EPD filed a motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 50]. On March 25, 2011, EPD filed declarations in support of its reply memorandum regarding the motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 83]. On April 11, 2011, EPD filed additional declarations in support of its conversion motion [Docket No. 101]. On April 27, 2011, the Court entered an Order denying EPD's motion to alter or amend the

order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 122]. On April 28, 2011, the Court entered an Order denying without prejudice EPD's conversion motion [Docket No. 126].

**5. The Rule 2004 Examinations**

On April 27, 2011, the Trustee filed a motion for the examinations of, and the production of documents and things by: (1) the person(s) most qualified for debtor EPD; (2) Jerrold Pressman; (3) Keith Pressman; (4) Ruben Moreno; (5) John C. Kirkland, Esq.; (6) the person(s) most qualified for Broadway Entertainment Marketing, Inc.; (7) the person(s) most qualified for S.C. Club, L.P.; (8) the person(s) most qualified for S.C. Club, Inc.; (9) the person(s) most qualified for the Bright Conscience Trust; (10) the person most qualified for HMB Holdings, LLC; and (11) Ted Jonavic pursuant to Fed. R. Bankr. P. 2004 [Docket No. 123]. The Court entered an Order granting the Trustee's motion on June 21, 2011 [Docket No. 147]. The Rule 2004 examinations took place as follows: Jerrold Pressman in his capacity as an individual and as the designated person most qualified for EPD, Broadway Entertainment, S.C. Club, L.P. and S.C. Club, Inc. on May 17, 2011, May 31, 2011 and July 8, 2011; John C. Kirkland on May 27, 2011; Ruben Moreno on June 1, 2011; Keith Pressman on June 24, 2011; Ted Jonavic on June 29, 2011; and Thom Ferro as the designated person most qualified for HMB Holdings, LLC on June 30, 2011.

**6. The 9019 Motion re the North Hills Stock.**

On November 3, 2011, Jerrold Pressman entered into an agreement with Geringer to sell his shares of stock in NHIP for $3.5 million over time. On or about November 3, 2011, the Trustee entered into a settlement agreement with Jerrold Pressman and Geringer. Pursuant to the settlement agreement between the Trustee, Jerrold Pressman and Geringer, and subject to Court approval, Geringer is to pay the EPD Bankruptcy Estate the total sum of $3.5 million in installments by no later than November 1, 2014, and with certain discounts applicable for early payments.

On January 20, 2012, the Trustee filed his motion for approval of the compromise with Jerrold Pressman and Geringer [Docket No. 183]. The motion was set for hearing on February 15, 2012. The tentative ruling was to grant the motion. At the hearing on February 15, 2012, special litigation counsel for the Trustee and John Menchaca ("Mr. Menchaca"), the duly appointed and acting Chapter

7 trustee for the bankruptcy estate of Jerrold Pressman, appeared and notified the Court of Jerrold Pressman's Chapter 7 bankruptcy filing on February 1, 2012, and requested that the Court continue the hearing on the motion. The Court set a continued hearing date of April 25, 2012. The Trustee, Mr. Menchaca, Jerrold Pressman and Geringer have stipulated to continue the hearing on the motion to May 23, 2012. An order continuing the hearing was entered on April 16, 2012 [Docket No. 194].

**B. The Pressman Bankruptcy Case.**

**1. The Petition**

On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the Pressman Bankruptcy Case [Docket No. 1].

**2. Statements and Schedules**

On February 29, 2012, Jerrold Pressman filed his statements and schedules (the "Pressman Statements and Schedules") in the Pressman Bankruptcy Case [Docket No. 26]. On March 1, 2012, Jerrold Pressman filed an amended creditor's matrix [Docket No. 29]. The 341a meeting of creditors was scheduled for March 12, 2012, but was continued to a date after the date of the hearing on this Motion

**C. The Sidecreek Bankruptcy Case.**

**1. The Petition**

On March 5, 2012, Sidecreek Development, Inc., f/k/a Creekside Development, Inc. ("Sidecreek"), a company owned 50% by Jerrold Pressman and 50% by Geringer[55], filed a voluntary Chapter 11 petition with the United States Bankruptcy Court for the Central District of California, Los Angeles Division, 2:12-bk-17787-ER (the "Sidecreek Bankruptcy Case") [Docket No. 1].

**2. Statements and Schedules**

On March 14, 2012, Sidecreek filed its statements and schedules (the "Sidecreek Statements and Schedules") in the Sidecreek Bankruptcy Case [Docket No. 11]. The 341a meeting of creditors was scheduled for April 9, 2012.

---

[55] Sidecreek Bankruptcy Case Docket No. 1.

## IV.

## SUBSTANTIVE CONSOLIDATION IS APPROPRIATE

### A. The Purpose and Effect of Substantive Consolidation

"The primary purpose of substantive consolidation "is to ensure the equitable treatment of all creditors." In re Bonham, 229 F.3d 750, 764 (9th Cir. 2000)(citing In re Augie/Restivo, 860 F.2d at 518). "Two broad themes have emerged from substantive consolidation case law: in ordering substantive consolidation, courts must (1) consider whether there is a disregard of corporate formalities and commingling of assets by various entities; and (2) balance the benefits that substantive consolidation would bring against the harms that it would cause. [Citations omitted] No uniform guideline for determining when to order substantive consolidation has emerged. Rather, "[o]nly through a searching review of the record, on a case-by-case basis, can a court ensure that substantive consolidation effects its sole aim: fairness to all creditors." In re Bonham, 229 F.3d 750, 765 (9th Cir. 2000).

"Its nearest non-bankruptcy analogy is the merger of two corporations under state law. In place of two or more debtors, each with its own estate and body of creditors, substantive consolidation substitutes a single debtor, a single estate with a common fund of assets, and a single body of creditors. [Citations omitted.] Assets and liabilities of each entity are pooled and inter-entity accounts and claims are eliminated. Creditors of the separate entities become creditors of the consolidated entity. Duplicative claims by creditors, uncertain as to which debtor owes their debts, are eliminated."

In re Parkway Calabasas Ltd., 89 B.R. 832, 836-837 (Bankr. C.D. Cal. 1988).

Although substantive consolidation is analogized to cases involving the merger of corporations, it is not limited to corporate cases. Published cases are clear that estates of individual debtors may be consolidated with estates of corporate debtors. For example, in Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S.Ct. 904 (U.S. S.Ct. 1941), the Supreme Court approved the consolidation of the estate of an individual debtor with the estate of his corporation. More recently, in Bonham, the Ninth Circuit affirmed substantive consolidation of the estate of an individual debtor with two non-debtor closely held corporations.

Bonham, 229 F.3d at 771.

"First, substantive consolidation must be distinguished from state law alter ego remedies, Although elements of the alter ego doctrine may provide grounds for substantive consolidation, the law of substantive consolidation is federal bankruptcy law and is not dependent upon state law concepts. Thus, the term "alter ego" does not have to meet the definition under any state law but instead is used loosely to indicate that a corporation is the instrumentality of the debtor used to conduct the debtor's financial affairs."

In re Lahijani, 2005 WL 46584900, 8 (Bankr. C.D. Cal. 2005).

"Substantive consolidation is a mechanism whereby the assets and liabilities of two or more related entities are pooled to create a single fund from which creditors of the combined estate may receive distributions. *In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000). Essentially, substantive consolidation ignores the corporate form in order to combine the assets and liabilities of entities whose businesses and/or finances are so intertwined that it makes no sense to disentangle them."

In re Wade Cook Financial Corp., 375 B.R. 580, 598 (9th Cir. BAP 2007).

**B. The Test for Substantive Consolidation**

In Bonham, the Ninth Circuit adopted the Second Circuit test for substantive consolidation:

"The Second Circuit has applied an independent test which requires the consideration of two factors: "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." *In re Reider*, 31 F.3d at 1108 (citing *In re Augie/Restivo*, 860 F.2d at 518); *see also Colonial Realty*, 966 F.2d at 61. The presence of either factor is a sufficient basis to order substantive consolidation. *See id.* The first factor, reliance on the separate credit of the entity, is based on the consideration that lenders "structure their loans according to their expectations regarding the[e] borrower and do not anticipate either having the assets of a more sound company available in the case of insolvency or having the creditors of a less sound debtor compete for the borrower's assets." *In re Augie/Restivo*, 860 F.2d at 518-19. Consolidation under the second factor, entanglement of the debtor's affairs, is justified only where "the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors" or where no accurate identification and allocation of the assets is possible." *Id.* at 519."

In re Bonham, 229 F.3d 750, 766 (9th Cir. 2000).

**C. Substantive Consolidation of the EPD and Pressman's Bankruptcy Estates Is Appropriate Based on the Ninth Circuit Test and Based on the Purpose of Substantive Consolidation**

**1. The Creditors Dealt With the Sole Proprietorship, EPD and Jerrold Pressman As a Single Economic Unit**

**a. No Distinction Between the Sole Proprietorship and EPD**

The Creditors did not know that the EPD Sole Proprietorship had become EPD, a limited liability company, in 2003. For example, Creditor Thomas Ferro (Ferro") testified that he began

loaning funds to EPD in 2002 (pre-formation of EPD, which took place in mid-2003) and that he was not aware of any distinction between the Sole Proprietorship and EPD:

> "Q. What was the year you stated you first invested or loaned monies to the Debtor?
> A. I believe it was 2002.
> Q. Did you have any understanding in 2002 as to whether what has been known as EPD Investment Company was a sole proprietorship or a limited liability company or something else?
> A. I did not know.
> Q. Did you ever have an understanding that, at some point in 2003, there was a limited liability company formed called EPD Investment Company, LLC?
> A. No.
> Q. Did Mr. Pressman ever discuss with you that he formed a limited liability company called EPD Investment Company, LLC?
> A. No.
> Q. Did he ever send you any documents or materials stating that he was forming a limited liability company?
> A. No.
> Q. So from your understanding from 2002 onward, what you thought of EPD was the same company?
> A. Um-hmm.
> Q. You thought it was a formal company rather than something that was a dba of an individual?
> A. Right."[56]

The Creditors' lack of understanding as to any distinction among the Sole Proprietorship, EPD and Jerrold Pressman is also evidenced by the statements in 11 Creditors' declarations that were filed in the EPD case. These statements are listed in the attached Appendix "1." These Creditors state that they invested, or loaned, a total of $22.775 million to EPD, and all but one of their declarations demonstrate that the monies were given to EPD before EPD was formed in 2003 (EPD has only been in existence for approximately 9 years—8 years as of the dates that the declarations were filed in 2011).

**b. Creditors Understood That the Assets of Companies in Which Pressman Had an Ownership Interest Were Available to Pay Amounts Owed to Them**

For the most part, the Sole Proprietorship and EPD did not distribute written materials other than promissory notes to the Creditors. Ferro testified that:

[56] Exhibit F to the Weber Declaration, Ferro Rule 2004 Examination Transcript, pp. 126-127, lines 17-25 and 1-16.

> "Q. At any point while you were an investor in or lender to EPD, did you ever receive materials from EPD that discussed what EPD was investing in?
> A. No.
> Q. Did you ever receive any written materials as to any entity that EPD was loaning funds to?
> A. No.
> Q. Did you receive any written materials other than account statements from EPD?
> A. No.
> Q. Was—
> A. Well, I note for, when I invested, I would get a note—sorry for interrupting, a note from them when I invested my money, promissory notes.
> Q. Anything else?
> A. That's it.
> Q. Did you have any sort of online access to your accounts at EPD?
> A. No."[57]

However, the Sole Proprietorship and EPD sometimes distributed a 2-page synopsis titled "EPD Investment Portfolio" to Creditors. The EPD Investment Portfolio states:

> "As a follow up to our discussion, I have listed below several of the significant investments held by EPD and its affiliate companies and will attempt to give you a brief description of the companies. 1. North Hills Industrial Park consists of 26 acres of property located at Hayvenhurst and Roscoe in North Hills, California. The property consists of three structures measuring 140,000 sq. ft., 130,000 sq. ft., and 45,000 sq. ft., which are leased to Federal Express, Munchkin and the *Los Angeles Times*, respectively. All of these buildings were built to suit for each tenant. The current estimated value of the property is approximately $48 million, subject to approximately $19 million in debt and generates $3,000,000 in triple net rent… 3. Fallbrook consists of 827 acres in Mississippi below Memphis, Tennessee, which is the commercial distribution center for the East Coast. The Mississippi Department of Transportation has presently contracted to acquire 96 acres of the Fallbrook property to complete the national highway from Canada to the Mexican border. The current estimated value of the property is approximately $32 million with debt of approximately $10 million. 4. Brentwood consists of 250 acres of property in Brentwood, Tennessee, approximately 6 miles from Nashville. This is a portion of the original 4500 acre tract of land that we have been developing since 1992. Some of the remaining property is located in Franklin, and has recently been annexed into Brentwood, greatly increasing Brentwood's value. "[58]

> Jerrold Pressman described the EPD Investment Portfolio as follows:

> "The Investments are all held in outside entities except, EPD may have loaned some of these companies Funds. I have an ownership interest in all today except Easy Street Arena, and Iceoplex. The portfolio Package was purchased with monies borrowed from family and friends loaned first to EPD on a promissory note and, than

---

[57] Exhibit F to the Weber Declaration, Ferro Rule 2004 Examination Transcript, pp. 49-50, lines 10-25 and 1-3.
[58] Pressman Declaration, ¶ 12, and Exhibit R to the Pressman Declaration.

> [sic] to me under a revolving note to purchase the ownership and secured back to EPD via a UCC-1 stating [sic] in 2003 and again in 2009, specifically securing the loan with a Security Agreement specifying my ownership in ALL Corps LLC's Partnerships etc. EPD does not operate the outside owned businesses, and upon the sale or accumulation of any proceeds attributed to my ownership over the years all surplus funds were sent to EPD…"[59]

The Creditors understood from their discussions with Jerrold Pressman that the assets of companies in which Jerrold Pressman held ownership interests were available to pay the amounts owed to the Creditors.[60] According to Jerrold Pressman:

> "… they knew what we were involved in, they knew the businesses that we were touching, but we weren't using their specific money in any specific place, so the answer would be no, any more than you'd ask a bank what their investments were when you put money into a bank. You know, again, the word "fungible" comes up, their dollars are fungible. Some people might have been interested out of curiosity, but by and large, I hate to say it, but people trusted me. I'd been doing it for fifty years and they just figured I knew what I was doing, and I did. I just didn't know the world was going to come to an end in 2009."[61]

Likewise, the Creditors made no distinction among the assets of the Sole Proprietorship, EPD and Jerrold Pressman. All of them were understood to be one economic unit. In their declarations, each of the Creditors state that "EPD's assets are primarily secured by real estate."[62] Six of the 11 Creditors specifically state that "… much of the properties are located in Mississippi, and Tennessee in unique markets that the debtor has more than two decades of experience in, and under their direction can generate funds to discharge all obligations of EPD and provide a substantial return to the investors."[63] Meanwhile, EPD's Schedule A and Amended Schedule A list no real property owned by EPD.[64] EPD's Schedule B consists of promissory notes from Pressman and three companies in which Pressman holds ownership interests (Broadway Entertainment Marketing, Inc., and S.C. Club), and one promissory note from a Creditor. In EPD's Schedule B, there are no promissory notes from the companies that own real property. Pressman's Schedule A also lists no

---

[59] Pressman Declaration, ¶ 13, and Exhibit S to the Pressman Declaration, Pressman e-mail to Kirkland dated 1/19/11.
[60] Pressman Declaration, ¶ 14.
[61] Exhibit B to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. II, p. 397, lines 6-20.
[62] *See* Appendix I; *See also* EPD Bankruptcy Case, Docket Nos. 83 and 101.
[63] Id.
[64] EPD Bankruptcy Case, Docket Nos. 103 and 136.

real property.[65]

The assets and liabilities of the Sole Proprietorship, EPD and Pressman were not separate and distinct. In addition to the statements made by Creditors in the declarations filed in the EPD Bankruptcy Case, Ferro[66] testified that he believed that his money loaned to, or invested in, EPD was invested in the North Hills Property, and in property in Tennessee and Mississippi, and that he believed that EPD owned real property:

> "Q. Were you provided any written materials on EPD?
> A. You mean as far as marketing materials or?
> Q. Marketing, an offering circular, anything?
> A. No. I was probably told information about what the investments were and where they were and I was shown—I know I was shown North Hills at the time, the property.
> Q. Did you have any understanding as to what EPD would do with that money once you deposited it into EPD?
> A. Invest in real estate…"[67]

> "Q. But you had no specific understanding in terms of what EPD would do it [sic] terms of investing your money?
> A. You mean exactly how they did it? I knew, like, if I made a deal, some of the money, I knew, went into the property in Tennessee; I knew that some of my money went into property in North Hills in the San Fernando valley.
> Q. Anything else?
> A. Mississippi.
> Q. Anything else?
> A. Maybe, but I don't recall."[68]

> "Q. If you had known when you invested funds or loaned funds to the Debtor that the Debtor didn't own any real property, would you still have invested the funds or loaned the funds?
> A. Probably not.
> Q. And it was your understanding, during the entire time that you were an investor in or lender to the Debtor, that the Debtor did own real property?
> A. Yes."[69]

Many, if not most, of EPD's creditors were aware of Jerrold Pressman's stock in NHIP, and relied on the potential sale of that stock in order to provide for the repayments of the amounts owed by EPD to these creditors.[70] Beginning in mid-2009, when EPD stopped making regular payments

---

[65] Pressman Bankruptcy Case, Docket No. 26.
[66] The Court may recall that Mr. Ferro previously appeared before this Court.
[67] Exhibit F to the Weber Declaration, Ferro Rule 2004 Examination Transcript, pp. 46-47, lines 20-25 and 1-4.
[68] Exhibit F to the Weber Declaration, Ferro Rule 2004 Examination Transcript, p. 48, lines 13-22.
[69] Exhibit F to the Weber Declaration, Ferro Rule 2004 Examination Transcript, pp. 145-146, lines 23-25 and 1-6.
[70] Pressman Declaration, ¶ 14.

to creditors, the Creditors repeatedly contacted Jerrold Pressman regarding the status of the refinancing of real property owned by NHIP and/or the sale of the NHIP stock in order to generate funds for EPD to pay Creditors.[71] Creditors also repeatedly contacted Jerrold Pressman regarding the status of the Tennessee and Mississippi real property to determine EPD's ability to make payments to Creditors.[72] The Creditors made no distinction among the assets of the Sole Proprietorship, EPD and Jerrold Pressman.

**2. The Affairs of EPD and Pressman Are So Entangled That Consolidation Will Benefit All Creditors**

**a. Disregard of Corporate Formalities**

**1. Secretary of State Filings Were Not Accurate**

The Statements of Information filed by EPD with the California Secretary of State were not accurate. The Statements of Information represent that Keith Pressman, Christine Kamps and Ruben Moreno are officers of EPD.[73] However, none of those individuals had any management role at EPD.[74] Instead, Jerrold Pressman solely managed and controlled EPD.[75] EPD filed its first Statement of Information with the California Secretary of State on May 24, 2004, and listed Keith Pressman as President, Christine Kamps as Vice President and Ruben Moreno as Secretary.[76] EPD thereafter filed "no change" statements to the Statement of Information on April 1, 2005 and again on April 26, 2007.[77] Contrary to these documents, Keith Pressman, Christine Kamps and Ruben Moreno never had any role in the management of EPD.[78] Keith Pressman testified that: "I was basically put in for estate planning purposes, so I didn't have an active role."[79] Keith Pressman further testified that he was not involved in the management of EPD at any time.[80] Keith Pressman's testimony also showed that he had very little knowledge about the business conducted by EPD:

"Q. What type of business is the Debtor?

---

[71] Pressman Declaration, ¶ 14.
[72] Pressman Declaration, ¶ 14.
[73] RJN, Exhibit Nos. 2-4, Statements of Information.
[74] Pressman Declaration, ¶ 3.
[75] Pressman Declaration, ¶ 3.
[76] RJN, Exhibit 2, Statement of Information filed on May 24, 2004.
[77] RJN, Exhibits 3 and 4, Statements of Information filed on April 1, 2005 and April 26, 2007.
[78] Pressman Declaration, ¶ 3.
[79] Exhibit E to the Weber Declaration, Keith Pressman Rule 2004 Examination Transcript, p. 33, lines 5-13.
[80] Exhibit E to the Weber Declaration, Keith Pressman Rule 2004 Examination Transcript, p. 32, lines 8-12.

A. I know the Debtor does various businesses, lends money, does consulting. I don't know the full extent of it.
Q. Other than lending money and doing consulting, does it have any other functions as a business?
A. Yeah, I don't know exactly what the extent of it is.
Q. Who did or does the Debtor lend money to?
A. Various entities, various creditors, but I wasn't involved in that end of it.
Q. Do you know the names of any entities or creditors that it loaned money to?
A. I'm sure I do, just not offhand. If you showed me some names, I'm sure I'd recognize them.
Q. Can you name any?
A. I'm sure I can. I'm kind of drawing a blank but I know I've heard the names. I know of them. Wait, as far as—well, I know the company lends money to Jerrold Pressman, and he makes investments, but again, I'm not—I don't really get involved in the day-to-day and how it's structured and how he does it.
Q. Who determines or determined how much money the Debtor loaned to Jerrold Pressman?
A. That's something only he would know. I wasn't involved in that part of it."[81]

Ruben Moreno's testimony at his Rule 2004 examination showed that he was a bookkeeper for Jerrold Pressman and had no role as an officer of EPD:

"Q. As Secretary of the debtor in May 2004, what was your job description; what did you do?
A. I was Jerry's bookkeeper.
Q. Anything else?
A. Secretary, whatever that function means.
Q. Did you do anything additional as a Secretary for the debtor?
A. No, I don't believe I did"[82]

"Q. In 2005, if you hadn't checked with Mr. Pressman, did you know that you were the Secretary of the debtor?
A. If I didn't check with him? No, I wouldn't have known."[83]

"Q. In 2007 do you know if you were the Secretary of the debtor?
A. I don't recall if I was.
Q. Do you recall who any of the officers or members or managers of the debtor were in 2007?
A. No."[84]

Moreno was an employee of Jerrold Pressman between the end of 2001 or the beginning of 2002 through August 2010, and performed bookkeeping functions for EPD and other entities during

---

[81] Exhibit E to the Weber Declaration, Keith Pressman Rule 2004 Examination Transcript, pp. 30-31, lines 5-25 and 1-5.
[82] Exhibit D to the Weber Declaration, Moreno Transcript, p. 37, lines 13-20.
[83] Exhibit D to the Weber Declaration, Moreno Transcript, p. 39, lines 11-15.
[84] Exhibit D to the Weber Declaration, Moreno Transcript, p. 40, lines 3-8

that time.[85] Despite performing bookkeeping services for EPD for almost 10 years and being listed on EPD's Statements of Information as the Secretary of EPD, when Moreno was asked about his understanding of EPD's business, Moreno testified, "You know, I'm not sure… Well, he—I do, I guess he was a leasing company. I mean, I never really fully understood what EPD did."[86]

**2. EPD Did Not Generally Observe Corporate Formalities—It Acted as a Conduit for Jerrold Pressman**

Pressman described EPD as follows: "…I confirmed EPD never had an office (paid rent) or a computer of its own, or even a desk. It was started in the 1970s before it became an LLC in 2003. **It was only an accounting entity that acted as a conduit to flow funds to entities held by me…**"[87] Jerrold Pressman testified in his capacity as an individual and as the designated person most qualified for EPD that EPD was managed solely by him and was operated in his "back pocket".[88] Despite the amount of money that EPD was handling (as evidenced by the EPD Statements and Schedules and Amended Statements and Schedules, Docket Nos. 106 and 140), EPD never had either an independent audit or a review or compilation from an outside accounting firm because, according to Jerrold Pressman, "Didn't need to."[89]

**b. Commingling of Assets and Liabilities**

**1. Jerrold Pressman's Personal Account at EPD**

The monies of Jerrold Pressman and EPD were commingled. One example was the intermingling of personal funds (since EPD had the UCC-1s against Jerrold Pressman's assets, the personal funds were secured in favor of EPD) and EPD funds. According to Jerrold Pressman in regard to his personal account at EPD:

A. Just like everybody else, I was just another creditor. I just had an account like everybody else. Every single person had a segregated account. Whatever went in, went out, got listed to that account. That's what this is generated from, that segregated account.
Q. You previously testified that all the money at the debtor was fungible.

---

[85] Exhibit D to the Weber Declaration, Moreno Transcript, pp. 16-18, lines 17-25, 1-25 and 1-25.
[86] Exhibit D to the Weber Declaration, Moreno Transcript, p. 32, lines 8-16.
[87] Pressman Declaration, ¶ 6, and Exhibit J to the Pressman Declaration, e-mail from Pressman to Kirland dated March 21, 2011 (emphasis added).
[88] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. I, p. 57, lines 1-16.
[89] Exhibit B to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. II, pp. 337-338, lines 11-25 and 1-8.

A. It is…
Q. So the debtor had some amount of money, correct?
A. Right.
Q. There weren't separate accounts at a bank or there wasn't some separate holding area, was there?
A. I see. No, no.
Q. So there was some general amount of money, and then there were paper transactions that keep track of who owed who, what?
A. Exactly.
Q. So in terms of this personal account at the debtor, you used that account to pay for your personal expenses?
A. Right.
Q. So, like American Express and things of that sort?
A. Exactly."[90]

Another example is Jerrold Pressman's sale of ownership interests while these interests were subject to the UCC-1s in favor of EPD. In regard to the sale of an ownership interest in Ice Skating Enterprises, Inc., Jerrold Pressman testified that the sale amount was deposited into EPD but credited to his personal account at EPD that was available to pay personal expenses:

"A. That's because I didn't use any company money to buy it. I owned it and I personally sold my shares in it and then gave the money back to EPD and loaned it back to EPD.
Q. Weren't your shares secured by the debtor?
A. Perhaps, yes.
Q. So why was the money put in your personal account?
A. Because I own the stock, and that's the way the check was, you know. It's fine, we can take it off if you want, you know, it's still in there. It's in EPD. They owe me the money and they're not going to pay me back, it's irrelevant.
Q. Again, don't you owe EPD $5 million or something like that?
A. I do, I do.
Q. But you keep referring to EPD owing—
A. There's a difference between me as an individual as one of the people that had one of these revolving accounts as a creditor; and me as a business creditor. Those notes are not due. Those notes are not due that the I owe the company for four or five years so, no, I don't owe that money until they become due, and there's no right of offset, so I have the right to collect what's owed me now, and in the future, pay the bill when it becomes due."[91]

Another example is EPD's purchase and sale of whole life insurance policies. Jerrold Pressman testified that EPD used EPD funds to purchase whole life insurance policies insuring

[90] Exhibit B to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. II, pp. 421-423, lines 19-25, 1-25 and 1-9.
[91] Exhibit B to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. II, pp. 434-435, lines 19-25 and 1-19.

Jerrold Pressman's life[92], but that Jerrold Pressman's personal trust was the named beneficiary of the policies. As to the reason for the beneficiary designation, Jerrold Pressman testified:

> "A. Yes, 'cause basically, if you remember, the debtor owed me $5 million, and so it was technically my money, but it's irrelevant, because I didn't die, and had I died, the beneficiaries would have not gotten the money; they would have gotten a small amount of money. The person I sold it to gets the bulk of it.
> Q. When you said the debtor owed you $5 million, did you have a $25 million note payable to the debtor?
> A. That's true, yes.
> Q. So you owed the debtor money; is that correct?
> A. That's true, but I was a client of the debtor, or a creditor the debtor, just like everybody else. One was a business side and one was my personal money, that every penny I made and anything I ever did went into my personal account, just like everybody else, and they paid my bills and did my things out of my money, and you have a copy of that."[93]

**2. SunTrust Bank**

The commingling of assets is evidenced by transfers to Sun Trust Bank ("Sun Trust"), which is listed as a creditor in the Pressman Bankruptcy Case but not in the EPD Bankruptcy Case. A default judgment was entered in Sun Trust's favor and against Jerrold Pressman on November 3, 2011 in *Suntrust Bank v. Jerrold Pressman*, United States District Court for the Middle District of Tennessee, Nashville Division, Case No. 3:11-cv-00542. The order by the District Court entered the default judgment *nunc pro tunc* to July 28, 2011.[94] EPD's security interest in the assets of the Pressman Bankruptcy Estate is senior inasmuch as the UCC-1s were recorded in 2003 and 2009 while the default judgment was entered in 2011.[95] In addition, to the extent that substantive consolidation is granted *nunc pro tunc* to the involuntary petition date in the EPD Bankruptcy Case, that case predates the litigation filed by SunTrust against Jerrold Pressman that Pressman chose not to defend prior to the filing of the Pressman Bankruptcy Case.

EPD's bank records show that EPD made 2 transfers directly to SunTrust in December 2008. EPD made a wire transfer directly to SunTrust in the amount of $54,000 on December 3, 2008[96]. The wire transfer states "BNF: /9088000112 CREEKSIDE DEVELOPMENT, INC. OBLIGOR #

---

[92] Exhibit B to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. II, pp. 393-394, lines 18-25 and 1.
[93] Exhibit B to the Weber Declaration, Jerrold Pressman Rule 2004 Transcript, Vol. II, p. 373, lines 3-22.
[94] RJN, Exhibit 11, Default Judgment in favor of SunTrust Bank.
[95] RJN, Exhibits 5 and 6, UCC-1s.
[96] Weber Declaration, ¶ 11 and Exhibit G thereto.

10842708…"[97] Presumably, based on the wire transfer document, the transfer was to SunTrust for the benefit of Sidecreek. EPD also made a transfer to SunTrust in the amount of $45,000 by business check a week later, on December 10, 2008[98]. The Trustee alleges that these transfers to Sun Trust are avoidable as fraudulent transfers. If the estates are not substantively consolidated, the Trustee may pursue the avoidance and recovery of these fraudulent transfers.

### 3. Sunset Key

The Superior Court for the State of California entered right to attach orders and orders for issuance of writ of attachment in favor of Sunset Key, LLC ("Sunset Key") and against Jerrold Pressman shortly prior to the filing of the Pressman Bankruptcy Case.[99] Default was entered by the Superior Court against Pressman on December 15, 2011.[100] Sunset Key did not obtain a default judgment against Pressman, and its writ of attachment dissolved upon the filing of the Pressman Bankruptcy Case since the Pressman Bankruptcy Case was filed within 90 days after the writ was issued. *See* California Code of Civil Procedure § 493.030(b).

Sunset Key demonstrates a situation where the assets and liabilities of Jerrold Pressman and EPD were intermingled. Although Sunset Key has no contractual relationship with EPD[101], EPD made several transfers to Sunset Key, the principal of Sunset Key and the trust for the principal of Sunset Key. There are transfers from EPD to: (1) Sunset Key, LLC in the amount of $40,000.00 by wire transfer on October 1, 2009; (2) Alon Abady, who appears to be the principal of Sunset Key, LLC, and the declarant in support of the *ex parte* application filed in the Superior Court, in the amount of $22,252.00 which cleared on November 17, 2009; and (3) the Abady Trust, which appears to be Mr. Abady's trust, in the amount of $782,000.00, which cleared on November 21, 2008.[102] The foregoing transfers total $844,252.00 to Sunset Key, LLC, the principal of Sunset Key, LLC and the trust for the principal of Sunset Key, LLC.

[97] Weber Declaration, ¶ 11 and Exhibit G thereto.
[98] Weber Declaration, ¶ 11 and Exhibit G thereto.
[99] RJN, Exhibits 13-14, orders entered by the Superior Court granting right to attach orders and writs of attachment against Jerrold Pressman and in favor of Sunset Key.
[100] RJN, Exhibit 15, entry of default against Jerrold Pressman and in favor of Sunset Key.
[101] RJN, Exhibit 12, complaint filed by Sunset Key against Pressman; *See also* Exhibit C to the Weber Declaration, Jerrold Pressman Rule 2004 Examination, Vol. III, pp. 486-487, lines 11-25 and 1-13.
[102] Weber Declaration, ¶ 11 and Exhibit G thereto.

### c. Secured Liens Were Recorded Against Both EPD and Jerrold Pressman by Creditors of EPD That Threatened Lawsuits and an Involuntary Bankruptcy Filing by the Family Trust of EPD's Former Bankruptcy Counsel

When the payments to Creditors stopped in mid-2009, some of the Creditors threatened to sue EPD and Jerrold Pressman. The result is that two favored groups of the Creditors obtained liens concurrently against both EPD and Jerrold Pressman: (1) HMB Holdings, LLC ("HMB Holdings")[103]; and (2) The Bright Conscience Trust[104]. Jerrold Pressman testified that: (1) HMB Holdings obtained a lien as a result of threatened lawsuits and a threatened involuntary bankruptcy proceeding; and (2) the Bright Conscience Trust obtained a lien because Jerrold Pressman needed John Kirkland's[105] legal services (Kirkland and his family trust were also EPD Creditors):

> "Q. Why did Bright Conscience Trust and HMB holdings get UCC-1 liens against the debtor but other investors did not?
> A. Well, let's go backwards with HMB. I was in a very precarious position, being sued by a lot of people, and some of the people from HMB came to me and said that, as much as they loved me and as much as everything was great, they were going to have to bring lawsuits against me, because they just didn't want to sit around and wait for twenty years for their money, and they didn't want to be the last one in, and could I give them some collateral. Well, I had ten or twelve people. I couldn't give any single person collateral because that would destroy the collateral, and so one of them came to me and said would I form a company, and I get ten of these people and we agree to defer our lawsuits out and not sue, would you give us a collateral position, and I said sure, so that's what I did. So that's how that came about and in combination—and then the Bright Conscience, John was being very helpful to me in other things just as a – I don't know, I might have needed him in the future, and when he invested the money and I promised him, I can't even remember, but anyways, he was entitled to do it, and I guess he just did it. I mean, I didn't track when he did it. I don't know, did I sign it? I don't think I signed it. People don't sign UCC-1s, do they?...
>
> Q. So HMB Holdings, LLC received a UCC-1 because the members of it were threatening litigation against the debtor?
> A. Right. And this is only some of their money, this is only a partial. Some of it is a third or half or something, so most of it's just a partial amount, but the consideration was to get them to defer the lawsuits against me, give me a chance to catch up.

---

[103] RJN, Exhibit 8, UCC-1 financing statement in favor of HMB Holdings in regard to EPD, and Exhibit 9, UCC-1 financing statement in favor of HMB Holdings in regard to Jerrold Pressman.

[104] RJN, Exhibit 10, UCC-1 financing statement in favor of Bright Conscience Trust in regard to both EPD and Jerrold Pressman.

[105] The Court may recall that Mr. Kirkland appeared on behalf of EPD pre-entry of the Order for Relief in the EPD Bankruptcy Case. Mr. Kirkland was then a partner at Luce Forward Hamilton & Scripps LLP. Mr. Kirkland also filed numerous pleadings on behalf of EPD in the EPD Bankruptcy Case.

Q. Did Mr. Kirkland ever threaten a lawsuit against the debtor?
A. Well, I don't think he came out and threatened me, but I sure wouldn't want to go up against him."[106]

"Q. If you flip back to exhibit number 15, which is the statements and schedules, and go to the next page on exhibit D, the exhibit to schedule D rather, exactly, the list of names, on top it says "claims in HMB Holdings, LLC" what do you mean by "claims"? Do you mean members?
A. That's what I assume it means. Obviously, common sense would say that's what it means, but whether the word "claims" is correct, I don't know.
Q. So the people affiliated with HMB Holdings, LLC are Raymond Brosio, Robert Browne, Mitch Carter, Lawrence Cooper, Thomas Ferro, Ferro Trust, Dr. Melvin Glick, Ralph Grande, Norman Hanover, Bridget Hansel Andrews Estate, Miller Carbonic, Ron M. Sharrow and Kelly Watson?
A. Right.
Q. And those the people who threatening to sue you and/or the debtor?
A. Right.
Q. Did they do that in person or through a letter?
A. In person.
Q. What—
A. Excuse me, fifty telephone calls, some of them every day.
Q. And what—
A. These were people—some of these were calling me every single day.
Q. What did they say?
A. They just said the same basic stuff: I've waited as long as I can wait, I don't want to be the last one on the band wagon here if we're sued by other people, and I don't want to be the guy that waits till the end and gets nothing, so while we believe in you and we really want this thing to work, we've got to have some collateral or we have no choice but to bring a lawsuit against you, bring lawsuits against you."[107]

"Q. Did that group of people also threaten an involuntary bankruptcy proceeding against you and the debtor?
A. Yes.
Q. When was that?
A. I don't remember, but Mr. Sloan was in the meeting that occurred.
Q. Was it in 2009?
A. I don't recall?
Q. Who threatened an involuntary bankruptcy proceeding?
A. Basically sixty percent of those HMB people were in that meeting.
Q. Was one of those people Norm Hanover?
A. Yes.
Q. Were they threatening an involuntary bankruptcy proceeding against you or the debtor or both?
A. Against the debtor.

---

[106] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination Transcript, Vol. I, pp. 171-173, lines 20-25, 1-22 and 4-15 respectively.
[107] Exhibit A to the Weber Declaration, Jerrold Pressman Rule 2004 Examination Transcript, Vol. I, pp. 188-189, lines 9-25 and 1-19.

> Q. Well, you know, it wasn't done with a machine gun. It was one of their options, there was a meeting of all this group of creditors, that several their options were to sue me, to put me into involuntary bankruptcy, or to get a better sense of what the assets that were securing my note were, to give them a better sense of well being.
> Q. So what was the result of that meeting?
> A. I showed them the assets. They had some questions that they didn't think I owned 43% of North Hills; they thought I only owned ten percent, and they went through a lot of stuff, and I was able to demonstrate to them that I declared that on my income tax, and yes, in fact I did own it, and I gave them the status of the loan that I was really thinking I was going to get, hoping to get, and the paperwork showing that the loan was in proess, and for the time being, they decided to give me more time to get things together."[108]

HMB Holdings was formed solely to hold a lien by Creditors against the assets of EPD.[109] The Trustee asserts that the liens recorded against the assets of EPD and Jerrold Pressman are avoidable and recoverable as preferences and/or fraudulent transfers pursuant to 11 U.S.C. §§ 544, 547, 548, 550 and California Civil Code § 3439, *et seq.* The favored groups of Creditors consisting of HMB Holdings and the Bright Conscience Trust received liens against the assets of both Jerrold Pressman and EPD because these Creditors did not treat EPD differently from Jerrold Pressman. Similarly, Jerrold Pressman agreed to the liens because he also did not assert any real difference between his assets and EPD's assets. That is likely because EPD has a lien against all of Jerrold Pressman's assets. Jerrold Pressman's agreements to record liens against EPD's assets as well as his own in the face of threats of litigation and threats of involuntary bankruptcy proceedings weigh heavily in favor of substantive consolidation.

**3. The Benefits Strongly Outweigh the Harms of Substantive Consolidation**

**a. EPD Is By Far the Largest, and is the First Priority, Secured Creditor in the Pressman Bankruptcy Case, and There Will Likely Be No Funds To Distribute To General Unsecured Creditors in the Pressman Bankruptcy Case**

Pressman's Statements and Schedules list three secured creditors, with EPD as, by far, the largest secured creditor (98% of the scheduled secured claims on Schedule D). The amounts of secured claims listed in Schedule D are as follows: (a) EPD in the amount of $24,268 million; (b)

---

[108] Exhibit B to the Weber Declaration, Jerrold Pressman Rule 2004 Examination Transcript, Vol. II, pp. 313-314, lines 10-25 and 1-23.
[109] Exhibit F to the Weber Declaration, Ferro Rule 2004 Examination Transcript, pp. 66-67, lines 14-25 and 1-15.

Aurora Bank in the amount of $464,946; and (c) U.S. Bank in the amount of $14,633.[110] The secured claims of Aurora Bank and U.S. Bank appear to affect only a residence and a Chevrolet pickup truck, respectively, and do not affect any other property of the Pressman Bankruptcy Estate.[111] EPD's secured claim is the only secured claim listed in Schedule D that is a UCC-1 financing statement and that affects the interests in the various entities.

EPD's lien, which was perfected on July 31, 2009, is a first priority lien in the amount of at least $24 million and far exceeds the likely aggregate value of the assets in the Jerrold Pressman Case. As a result, in the event that this Motion is not granted, EPD's lien nevertheless affects all of the assets in the Jerrold Pressman case (except avoidance claims and causes of action, if any), and those Creditors who are creditors of the Pressman Bankruptcy Estate only will likely not receive any distribution absent any recoveries with respect to the avoidance claims and causes of action, if any.

**b. The Vast Majority of the General Unsecured Creditors in the EPD Bankruptcy Case and Pressman Bankruptcy Case Are the Same**

Jerrold Pressman lists over $119 million in unsecured claims in his Schedule F. The vast majority of the unsecured creditors listed in Schedule F in the EPD Amended Statements and Schedules and in the Pressman Statements and Schedules are the same. Fifty percent of the *new* claims[112] scheduled in the Pressman Schedule F (claims that are not listed in the EPD Schedule F) are scheduled as "Business Debt (EPD Investment Co., LLC)". The chart that is attached as Appendix 2 shows the new claims, the stated basis for the new claims, and the amounts of the new claims.

The most significant of these new claims that show no relation to EPD in Schedule F are SunTrust Bank and Sunset Key, both of which, as previously discussed, received transfers directly from EPD. Most of the new claims listed in the Pressman Schedule F either indicate that the claims are for "Business Debt (EPD Investment Co., LLC)" or are related to EPD by virtue of having received pre-petition transfers from EPD.

---

[110] Pressman Statements and Schedules, Schedule D, Docket No. 26.
[111] Id.
[112] There are also differences in amounts listed for certain of the creditors listed in the EPD Statements and Schedules and in the Pressman Statements and Schedules.

**c. Substantive Consolidation Would Substantially Reduce Administrative Expenses, Leaving More Funds Available for Distribution to Unsecured Creditors**

Substantive consolidation will result in a substantial savings of administrative expenses, leaving more funds available for the distribution to unsecured creditors. Without substantive consolidation, the Trustee will likely need to pursue litigation to foreclose his security interest in the assets of the Pressman Bankruptcy Estate and, if necessary, to avoid the fraudulent transfers involving any such assets. The outcome of the litigation will in all likelihood be the same as the outcome of substantive consolidation – the assets of the Pressman Bankruptcy Estate will become property of the EPD Bankruptcy Estate.

The Trustee has already retained general bankruptcy counsel and special litigation counsel, and the Trustee and his counsel have spent approximately one year conducting Rule 2004 examinations, analyzing potential litigation claims and conducting due diligence. The Sole Proprietorship and EPD operated as a continuing business for about 40 years. Absent consolidation, any counsel and accountants retained by the trustee in the Pressman Bankruptcy Case will likely need to spend significant time and fees duplicating the same efforts as the Trustee's counsel. To the extent that there are claims between the EPD Bankruptcy Estate and the Pressman Bankruptcy Estate, those claims would have to be litigated. In light of EPD's first priority secured claim in the Pressman Bankruptcy Case, it is likely that any counsel and accountants retained by the trustee in the Pressman Bankruptcy Cases will not be compensated for their efforts absent any recoveries with respect to avoidance claims and causes of action, if any. Administrative expenses would likely significantly increase, but there is likely no benefit to creditors in the Pressman Bankruptcy Case.

///

///

///

///

///

## V.

## CONCLUSION

Based on the grounds stated herein, in the Pressman Declaration, the Rund Declaration, the Weber Declaration, and the RJN, the Trustee respectfully requests that the Court enter an order providing for the following relief:

1. Granting this Motion;

2. Ordering that the bankruptcy estates for EPD and Jerrold Pressman be substantively consolidated *nunc pro tunc* to December 7, 2010, that all assets of the individual estates shall constitute the assets of the resulting Consolidated Estate, and that all liabilities of the individual estates shall constitute the liabilities of the Consolidated Estate;

3. The EPD Bankruptcy Case shall be deemed the "lead" case;

4. All claims filed in the Pressman Bankruptcy Case shall be deemed to have been filed in the EPD Bankruptcy Case against the Consolidated Estate, without the need for claimants to file additional proofs of claim in the EPD Bankruptcy Case;

5. Jason M. Rund shall serve as the sole trustee for the Consolidated Estate;

6. DGDK is authorized to serve as the general bankruptcy counsel, and EBG is authorized to serve as the special litigation counsel, of the Trustee for the Consolidated Estate without further order of the Court;

7. The consolidation of the estates shall not have any effect upon the amount, validity, priority or extent of liens against property of the estates;

8. For such other and further relief as the Court deems appropriate.

DATED: April 26, 2012

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee



570979

## APPENDIX I

| DECLARANT | TESTIMONY IN DECLARATION |
|---|---|
| Declaration of Robert Browne | "2. I am an investor and creditor of EPD Investment Co., LLC (EPD), the above-named debtor; in addition, I have caused my three children and my sister to place investments with EPD; the total investment by myself and my family members exceeds $6,000,000; **I have been involved by way of investments with EPD about 25 years**. 3. **EPD's assets are primarily secured by real estate**, and fortunately, during this downturn, EPD has been able to maintain their real estate, and as of this date, has not lost any parcels by way of foreclosure, even in this down market."<br><br>[Docket No. 83, Exhibit A.] (Bold emphasis added.) |
| Declaration of David M. Carter | "3. I am an investor and creditor of EPD, the above-named debtor; my total investment with EPD exceeds $1,500,000; **I have been invested with EPD over 10 years.** 4. **EPD's assets are primarily secured by real estate**, and fortunately, during this downturn, EPD has been able to maintain their real estate, and as of this date, has not lost any parcels by way of foreclosure, even in this down market."<br><br>[Docket No. 83, Exhibit B.] (Bold emphasis added.) |
| Declaration of Lawrence H. Cooper | "2. I am an investor and creditor of EPD Investment Co., LLC (EPD), the above-named debtor; in addition, I have caused one of my children to place investments with EPD; the total investments by myself and my son-in-law exceeds $5,000,000; **I have been an investor with EPD for over 16 years.** 3. **EPD's assets are primarily secured by real estate**, and fortunately, during this downturn, EPD has been able to maintain their real estate, and as of this date, has not lost any parcels by way of foreclosure, even in this down market."<br><br>[Docket No. 83, Exhibit C.] (Bold emphasis added.) |
| Declaration of Norman L. Hanover, Esq. (a former panel bankruptcy trustee) | "4. **I am an investor and creditor of EPD Investment Co., LLC (EPD), the above-named debtor and have been so since approximately 2003; the investment portfolio consists primarily of real estate**; at the present time EPD owes me and my wife approximately $1,800,000.00. EPD has had some financial difficulties for the past 2-3 years, but much to its credit, has not lost any of its assets to foreclosure or otherwise. It has continued to maintain its assets in a very difficult real estate market."<br><br>[Docket No. 83, Exhibit D.] (Bold emphasis added.) |

| | |
|---|---|
| Declaration of Ronald Sharrow | "3. I am an investor and creditor of EPD; my total investment and unsecured notes due me from EPD exceed $600,000; **I have been invested with EPD for over 10 years.** 4. **EPD's assets are primarily secured by real estate**, and fortunately, during this downturn, EPD has been able to maintain their real estate, and as of this date, has not lost any parcels by way of foreclosure, even in this down market."<br><br>[Docket No. 83, Exhibit E.] (Bold emphasis added.) |
| Declaration of James Rosenbaum | "2. I am the President of Miller Carbonic, Inc. a corporation that is an investor and creditor of EPD, the above-named debtor; my total investment with EPD exceeds $2,000,000.00; **I have been invested with EPD over thirty years.** 3. **EPD's assets are primarily secured by real estate**, and fortunately, during this economic downturn, EPD has been able to maintain the value of there [sic] asserts, and as of this date, has not lost any property by way of foreclosure, even in this down market. 4. **I am concerned that if this matter remains in Chapter 7, a bankruptcy trustee will place all parcels up for sale at the very lowest point in the market at liquidation prices**, thereby creating a severe reduction in the total value of the assets, and not obtaining the maximum return to the investors, and for that reason I respectfully request that this Court grant the motions to convert this matter to one under Chapter 11, thereby allowing EPD to submit a plan of reorganization which will allow the creditors to vote, and **which will create an orderly liquidation of the real estate collateral since much of the properties are located in Mississippi, and Tennessee in unique markets that the debtor has more than two decades of experience in**, and under their direction can generate funds to discharge all obligations of EPD and provide a substantial return to the investors."<br><br>[Docket No. 101, Exhibit A.] (Bold emphasis added.) |
| Declaration of Ray Brosio | "2. My total investment in EPD exceeds $2,000,000.00; **I have been invested with EPD over a decade.** 3. **EPD's assets are primarily secured by real estate**, and fortunately, during this economic downturn, EPD has been able to maintain the value of those assets, and as of this date, has not lost any property by way of foreclosure, even in this down market. 4. **I am concerned that if this matter remains in Chapter 7, a bankruptcy trustee will place all undeveloped parcels up for sale at the very lowest point in the market at liquidation prices**, thereby creating a severe reduction in the total value of the assets, that will not obtain the maximum return to the investors, and for that reason I respectfully request that this Court grant the motions to convert this matter to one under Chapter 11, thereby allowing EPD to submit a plan of reorganization which will allow the creditors to vote, and **which will create an orderly liquidation of the real estate collateral since much of the properties are located in Mississippi, and Tennessee in unique markets that the debtor has more than two decades of experience in**, and I believe that under their direction can generate funds to discharge all obligations of EPD and provide a substantial return to the investors."<br><br>[Docket No. 101, Exhibit B.] (Bold emphasis added.) |

| | |
|---|---|
| Declaration of Donna Kraft | "2. **I have been an investor along with my children for over a decade** together our investment exceeds $700,000. 3. **EPD's assets are primarily secured by real estate**, and fortunately, during this economic downturn, EPD has been able to maintain the value of there [sic] assets, and as of this date, has not lost any property by way of foreclosure, even in this down market. 3. **I am concerned that if this matter remains in Chapter 7, a bankruptcy trustee will place all parcels up for sale at the very lowest point in the market at liquidation prices**, thereby creating a severe reduction in the total value of the assets, and not obtaining the maximum return to the investors, and for that reason I respectfully request that this Court grant the motions to convert this matter to one under Chapter 11, thereby allowing EPD to submit a plan of reorganization which will allow the creditors to vote, and **which will create an orderly liquidation of the real estate collateral since much of the properties are located in Mississippi, and Tennessee in unique markets that the debtor has more than two decades of experience in**, and under their direction can generate funds to discharge all obligations of EPD and provide a substantial return to the investors."<br><br>[Docket No. 101, Exhibit C.] (Bold emphasis added.) |
| Declaration of Donald Hagans | "2. I am The owner of several businesses located in Nevada and California and an investor and creditor of EPD, the above-named debtor; my total investment with EPD exceeds $875,000; **I have been invested with EPD for nearly a decade.** 3. **EPD's assets are primarily secured by real estate**, and fortunately, during this economic downturn, EPD has been able to maintain the value of there [sic] assets, and as of this date, has not lost any property by way of foreclosure, even in this down market. 4. **I am concerned that if this matter remains in Chapter 7, a bankruptcy trustee will place all parcels up for sale at the very lowest point in the market at liquidation prices**, thereby creating a severe reduction in the total value of the assets, and not obtaining the maximum return to the investors, and for that reason I respectfully request that this Court grant the motions to convert this matter to one under Chapter 11, thereby allowing EPD to submit a plan of reorganization which will allow the creditors to vote, and **which will create an orderly liquidation of the real estate collateral since much of the properties are located in Mississippi, and Tennessee in unique markets that the debtor has more than two decades of experience in**, and under their direction can generate funds to discharge all obligations of EPD and provide a substantial return to the investors."<br><br>[Docket No. 101, Exhibit D.] (Bold emphasis added.) |

| | |
|---|---|
| Declaration of Pat Adamson | "2. I was employed for more than a decade by a major financial institution, and am an investor and creditor of EPD, the above-named debtor; my total investment with EPD exceeds $1,000,000.00; **I have been invested with EPD over ten years.** 3. **EPD's assets are primarily secured by real estate**, and fortunately, during this economic downturn, EPD has been able to maintain the value of there [sic] assets, and as of this date, has not lost any property by way of foreclosure, even in this down market. 4. **I am concerned that if this matter remains in Chapter 7, a bankruptcy trustee will place all parcels up for sale at the very lowest point in the market at liquidation prices**, thereby creating a severe reduction in the total value of the assets, and not obtaining the maximum return to the investors, and for that reason, I respectfully request that this Court grant the motions to convert this matter to one under Chapter 11, thereby allowing EPD to submit a plan of reorganization which will allow the creditors to vote, and **which will create an orderly liquidation of the real estate collateral since most of the properties are located in Mississippi, and Tennessee in unique markets that the debtor has more than two decades of experience in**, and under their direction can generate funds to discharge all obligations of EPD and provide a substantial return to the investors."<br><br>[Docket No. 101, Exhibit E.] (Bold emphasis added.) |
| Declaration of Ralph Grande | "3. I am a creditor of EPD, the above-named debtor. My current total investment with EPD exceeds $1,300,000.00; **I have been invested with EPD over ten years.** 4. As I understand it, **EPD's assets are currently and primarily secured by real estate.** During these difficult financial times, EPD has been able to maintain the value of these assets, and as of this date, to my knowledge, EPD has not lost any parcels by way of foreclosure, even in this down market. 4. **I am concerned that if this matter remains in Chapter 7, a bankruptcy trustee will place all parcels up for sale at the very lowest point in the market at liquidation prices**, thereby creating a severe reduction in the total value of the assets, and not obtaining the maximum return to the investors, and for that reason I respectfully request that this Court grant the motions to convert this matter to one under Chapter 11, thereby allowing EPD to submit a plan of reorganization which will allow the creditors to vote, and **which will create an orderly liquidation of the real estate collateral since much of the properties are located in Mississippi, and Tennessee in unique markets that the debtor has more than two decades of experience in**, and under their direction can generate funds to discharge all obligations of EPD and provide a substantial return to the investors."<br><br>[Docket No. 101, Exhibit F.] (Bold emphasis added.) |

## APPENDIX II

| SCHEDULED UNSECURED CREDITOR | PRESSMAN BANKRUPTCY CASE |
|---|---|
| Alfonso Ribero | $168,000.00<br>"Business Debt (EPD Investment Co., LLC)" |
| American Express Centurion Bank | $0<br>"Lawsuit" |
| AMEX | $4,457.76<br>"Business Debt" |
| AMEX | $130,595.32<br>"Business Debt" |
| Andew Inkeles | $431,749.44<br>"Business Debt (EPD Investment Co., LLC)" |
| Arthur Huerth | $380,770.80<br>"Lawsuit" |
| Bank of America Visa | $105,073.30 |
| CAMOFI Master LDC. | $0<br>"Lawsuit" |
| Chase Visa | $26,557.00<br>"Business Debt" |
| Creditor's Trade Ass. | $24,148.00<br>"Consumer Debt" |
| Fraft Leasing | $200,951.93<br>"Business Debt (EPD Investment Co., LLC)" |
| John S. Bentley | $10,000.00<br>"Business Debt (EPD Investment Co., LLC)" |
| Laurie Zabollis | $4,500,000.00<br>"Business Debt (EPD Investment Co., LLC)" |
| Linda & Stephen Hirsch | $50,000.00<br>"Business Debt (EPD Investment Co., LLC)" |
| Maximillian A. Mead | $74,949.98<br>"Business Debt (EPD Investment Co., LLC)" |
| National Mortgage | $250,000.00<br>"Business Debt (EPD Investment Co., LLC)" |
| Sun Trust Bank | $4,761,250.57<br>Judgment |
| Sunset Key LLC | $2,000,000.00<br>Lawsuit |
| TD Finance | $32,000.00<br>"Business Debt (EPD Investment Co., LLC)" |
| Isis Burkholder | $293,758.65<br>"Business Debt (EPD Investment Co., LLC)" |

**DECLARATION OF JASON M. RUND**

I, Jason M. Rund declare:

1. I am an attorney at law duly admitted to practice before this Court and am the duly appointed, qualified and acting Chapter 7 trustee of the bankruptcy estate (the "EPD Bankruptcy Estate") of debtor EPD Investment Co., LLC ("EPD"). Other than as specifically identified herein, each of the facts contained in this declaration is based on personal knowledge and, if called as a witness, I could and would competently testify competently as to these facts. Capitalized terms herein shall have the same meaning as in the Motion.

2. The involuntary petition filed with the Court reflects that on December 7, 2010, the petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Sager, Jayne Sager as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively, the "Petitioning Creditors") filed the involuntary Chapter 7 petition against EPD.

3. On February 9, 2011, the Order for Relief was entered in the EPD Bankruptcy Case.

4. On or about February 12, 2011, I was appointed as the Chapter 7 Trustee in the EPD Bankruptcy Case.

5. EPD filed Statements and Schedules on April 14, 2011 and filed Amended Statements and Schedules on June 8, 2011. The 341a meeting of creditors took place on September 8, 2011. Jerrold Pressman appeared on behalf of EPD at the meeting of creditors.

6. My special litigation counsel conducted several examinations of Jerrold Pressman and other witnesses pursuant to Fed. R. Bankr. P. 2004 (the "Rule 2004 Examinations"). I attended almost all of the Rule 2004 Examinations and received copies of the examination transcripts and the documents produced by Jerrold Pressman and the other witnesses pursuant to the Rule 2004 Examinations.

7. After thoroughly reviewing the Rule 2004 Examination transcripts, the documents produced by the examinees and other third parties, the statements and schedules filed in the EPD Bankruptcy Case and the Pressman Bankruptcy Case, and after considering the potential benefits and harms of substantive consolidation, and for the reasons stated in the Motion, I support the

substantive consolidation of the EPD Bankruptcy Estate and the Pressman Bankruptcy Estate to ensure the equitable treatment of creditors in both bankruptcy estates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 11, 2012 at Los Angeles, California.

JASON M. RUND

**DECLARATION OF COREY R. WEBER**

I, Corey R. Weber, declare:

1. I am admitted to practice before this Court and am an attorney at Ezra Brutzkus Gubner LLP ("EBG"), special litigation counsel for Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of EPD Investment Company, LLC ("EPD"). I have been the attorney at EBG primarily responsible for all aspects of representing the Trustee, including but not limited to attending and conducting all Rule 2004 examinations in the bankruptcy case. Capitalized terms herein shall have the same meaning as in the Motion.

2. I have personal knowledge of the facts in this declaration and, if called as a witness, could and would testify competently to these facts.

3. The Rule 2004 examinations in the EPD Bankruptcy Case took place as follows: Jerrold Pressman in his capacity as an individual and as the designated person most qualified for EPD, Broadway Entertainment, S.C. Club, L.P. and S.C. Club, Inc. on May 17, 2011, May 31, 2011 and July 8, 2011; John C. Kirkland on May 27, 2011; Ruben Moreno on June 1, 2011; Keith Pressman on June 24, 2011; Ted Jonavic on June 29, 2011; and Thom Ferro as the designated person most qualified for HMB Holdings, LLC on June 30, 2011 (collectively, the "Rule 2004 Examinations").

4. I attended each of the Rule 2004 Examinations and took the examinations of each of the various witnesses. I have reviewed each of the transcripts from the Rule 2004 Examinations, and with the exception of certain typographical and grammatical errors, the transcripts appear to be an accurate recitation of what transpired at the Rule 2004 Examinations.

5. A true and correct copy of pages cited from the transcript from the Rule 2004 Examination of Jerrold Pressman in his capacity as an individual and as the designated person most qualified for EPD, Broadway Entertainment, S.C. Club, L.P. and S.C. Club, Inc. on May 17, 2011, Volume I, is attached hereto as **Exhibit A**. The potions of the transcript cited in the Motion are bracketed in dark blue on the left hand side of the pages. The deposition transcript will be separately lodged with bracketing in the margins as required by Loc. Bankr. R. 7030-1(b).

6. True and correct copies of pages cited from the transcript from the Rule 2004 Examination of Jerrold Pressman in his capacity as an individual and as the designated person most qualified for EPD, Broadway Entertainment, S.C. Club, L.P. and S.C. Club, Inc. on May 31, 2011, Volume II, is attached hereto as **Exhibit B**. The potions of the transcript cited in the Motion are bracketed in dark blue on the left hand side of the pages. The deposition transcript will be separately lodged with bracketing in the margins as required by Loc. Bankr. R. 7030-1(b).

7. True and correct copies of pages cited from the transcript from the Rule 2004 Examination of Jerrold Pressman in his capacity as an individual and as the designated person most qualified for EPD, Broadway Entertainment, S.C. Club, L.P. and S.C. Club, Inc. on July 8, 2011, Volume III, is attached hereto as **Exhibit C**. The potions of the transcript cited in the Motion are bracketed in dark blue on the left hand side of the pages. The deposition transcript will be separately lodged with bracketing in the margins as required by Loc. Bankr. R. 7030-1(b).

8. True and correct copies of pages cited from the transcript from the Rule 2004 Examination of Ruben Moreno on June 1, 2011 is attached hereto as **Exhibit D**. The potions of the transcript cited in the Motion are bracketed in dark blue on the left hand side of the pages. The deposition transcript will be separately lodged with bracketing in the margins as required by Loc. Bankr. R. 7030-1(b).

9. True and correct copies of pages cited from the transcript from the Rule 2004 Examination of Keith Pressman on June 24, 2011 is attached hereto as **Exhibit E**. The potions of the transcript cited in the Motion are bracketed in dark blue on the left hand side of the pages. The deposition transcript will be separately lodged with bracketing in the margins as required by Loc. Bankr. R. 7030-1(b).

10. True and correct copies of pages cited from the transcript from the Rule 2004 Examination of Thom Ferro as the designated person most qualified for HMB Holdings, LLC on June 30, 2011 is attached hereto as **Exhibit F**. The potions of the transcript cited in the Motion are bracketed in dark blue on the left hand side of the pages. The deposition transcript will be separately lodged with bracketing in the margins as required by Loc. Bankr. R. 7030-1(b).

11. On or about April 19, 2011 City National Bank produced bank records for EPD to my office. A true and correct copy of the declaration provided by City National Bank and true and correct copies of the checks and wire transfers produced by City National Bank that are referenced in the Motion are attached hereto as **Exhibit G**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 26, 2012 at Woodland Hills, California.

COREY R. WEBER

**DECLARATION OF JERROLD S. PRESSMAN**

I, Jerrold S. Pressman, declare:

1. I am over 18 years of age. I have personal knowledge of the facts in this declaration and, if called as a witness, could and would testify competently to these facts. This declaration is made in support of the Trustee's motion for substantive consolidation of the bankruptcy estates of debtor EPD Investment Co., LLC and the bankruptcy estate for me as an individual.

2. Between the 1970s and June 27, 2003, "EPD Investment Co." was an unincorporated sole proprietorship run by me (the "EPD Sole Proprietorship"). EPD was formed as a California limited liability company on June 27, 2003. A true and correct copy of the limited liability company's articles of formation is attached hereto as **Exhibit H**.

3. I am the Manager of EPD Investment Company, LLC, a California limited liability company ("EPD"). Since its formation, I have been a Manager of EPD and have been the only person at EPD with the authority to make decisions on behalf of EPD. Although my son, Keith Pressman, Christine Kamps and Ruben Moreno are listed as officers and/or managers of EPD on Statements of Information filed by EPD with the California Secretary of State, none of them ever had authority to make decisions on behalf of EPD.

4. Upon EPD's formation in June 2003, the EPD Sole Proprietorship assets and liabilities were transferred from me to EPD. There is no formal document or agreement between the EPD Sole Proprietorship and EPD in regard to the transfer of assets and liabilities.

5. In December 2004, I sent a letter to the EPD Sole Proprietorship and EPD's accountant, Ted Jonavic, explaining the formation of EPD:

> "[i]n order to gain some level of legal corporate protection for the on-going business of EPD, I effectively created on July 1, 2003, a new LLC… In order to meet the above needs and satisfy my goals of personal retirement, I transferred all of the assets, debt and goodwill of EPD sole proprietorship to EPD LLC on that date."

A true and correct copy of the letter to Jonavic is attached hereto as **Exhibit I**.

6. On or about March 21, 2011, I sent an e-mail to John Kirkland describing the Sole Proprietorship and EPD as follows: "…I confirmed EPD never had an office (paid rent) or a computer of its own, or even a desk. It was started in the 1970s before it became an LLC in 2003. It

Case 2:10-bk-62208-ER Doc 260 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Main Document Page 32 of 55

was only an accounting entity that acted as a conduit to flow funds to entities held by me…" A true and correct copy of the e-mail is attached hereto as **Exhibit J**.

7. The Sole Proprietorship and EPD obtained funds from the Creditors in exchange for promissory notes or demand notes that were due on demand or within 30 days after demand. The promissory notes and demand notes varied in interest rates, but bore mostly double-digit interest rates per year.

8. The Sole Proprietorship and EPD would, in turn, loan the funds to other companies in which I held ownership interests. As stated in a memorandum prepared by me, EPD:

> "was the successor Company to EPD Investment Co., a Sole Proprietorship with a properly filed DBA for the Sole Proprietor Jerrold Pressman. At the time it became a LLC, JSP as the former sole proprietor pledged through a security agreement and UCC 1 all of his assets and ownership to EPD LLC since as a sole proprietor the ownership in the assets acquired by EPD was held in his name to facilitate bank financing personal guarantees and flexibility. Particularly related to real property and stock or membership ownership in acquired LLCs or Sub s Corporations."

A true and correct copy of the memorandum is attached hereto as **Exhibit K**.

9. On or about July 3, 2003, I executed a $25 million revolving promissory note in favor of EPD (the "2003 Note"). A true and correct copy of the 2003 Note is attached hereto as **Exhibit L**. On or about July 3, 2003, I entered into a security agreement with EPD. A true and correct copy of the 2003 Security Agreement is attached hereto as **Exhibit M**. On or about July 3, 2003, I caused to be recorded a UCC-1 financing statement encumbering all of my assets in favor of EPD (the "2003 UCC-1"). A true and correct copy of the 2003 UCC-1 is attached hereto as **Exhibit N**.

10. On or about July 31, 2009, I entered into a second $25 million revolving promissory note (the "2009 Note")(the 2003 Note and the 2009 Note are collectively referred to as the "Notes") and a security agreement with EPD (the "2009 Security Agreement")(the 2003 Security Agreement and the 2009 Security Agreement are collectively referred to as the "Security Agreements"). A true and correct copy of the 2009 Note is attached hereto as **Exhibit O** and a true and correct copy of the 2009 Security Agreement is attached hereto as **Exhibit P**. On or about July 31, 2009, I recorded a UCC-1 financing statement encumbering all of my assets in favor of EPD (the "2009 UCC-1")(the 2003 UCC-1 and the 2009 UCC-1 are collectively referred to as the "UCC-1s". A true and correct copy of the 2009 UCC-1 is attached hereto as **Exhibit Q**.

11. The 2009 UCC-1 (Exhibit Q) states that it covers the following all-encompassing set of my assets as collateral:

> "All present and after-acquired fixtures, accessions and personal property, including without limitation all goods, consumer goods, inventory, equipment, furniture, money, documents, instruments, ownership held in partnerships, corporations, LLC's or any other ownership of assets, notes, promissory notes, drafts, checks, certificates of deposit, investment property, accounts, accounts receivable, chattel paper, general intangibles, leases, contracts, contract rights, goodwill, copyrights, trademarks, patents, rights to proceeds of letters of credit and rights to payment of money, and all future advances and proceeds of any of the foregoing."

12. The Sole Proprietorship and EPD sometimes distributed a 2-page synopsis titled "EPD Investment Portfolio" to Creditors. The EPD Investment Portfolio states:

> "As a follow up to our discussion, I have listed below several of the significant investments held by EPD and its affiliate companies and will attempt to give you a brief description of the companies. 1. <u>North Hills Industrial Park</u> consists of 26 acres of property located at Hayvenhurst and Roscoe in North Hills, California. The property consists of three structures measuring 140,000 sq. ft., 130,000 sq. ft., and 45,000 sq. ft., which are leased to Federal Express, Munchkin and the *Los Angeles Times*, respectively. All of these buildings were built to suit for each tenant. The current estimated value of the property is approximately $48 million, subject to approximately $19 million in debt and generates $3,000,000 in triple net rent… 3. <u>Fallbrook</u> consists of 827 acres in Mississippi below Memphis, Tennessee, which is the commercial distribution center for the East Coast. The Mississippi Department of Transportation has presently contracted to acquire 96 acres of the Fallbrook property to complete the national highway from Canada to the Mexican border. The current estimated value of the property is approximately $32 million with debt of approximately $10 million. 4. <u>Brentwood</u> consists of 250 acres of property in Brentwood, Tennessee, approximately 6 miles from Nashville. This is a portion of the original 4500 acre tract of land that we have been developing since 1992. Some of the remaining property is located in Franklin, and has recently been annexed into Brentwood, greatly increasing Brentwood's value. "

A true and correct copy of the EPD Investment Portfolio is attached hereto as **Exhibit R**.

13. In an e-mail dated January 19, 2011 that I sent to John Kirkland, I described the EPD Investment Portfolio as follows:

> "The Investments are all held in outside entities except, EPD may have loaned some of these companies Funds. I have an ownership interest in all today except Easy Street Arena, and Iceoplex. The portfolio Package was purchased with monies borrowed from family and friends loaned first to EPD on a promissory note and, than [sic] to me under a revolving note to purchase the ownership and secured back to EPD via a UCC-1 stating [sic] in 2003 and again in 2009, specifically securing the loan with a Security Agreement specifying my ownership in ALL Corps LLC's Partnerships etc. EPD does not operate the outside owned businesses, and upon the sale or accumulation of any proceeds attributed to my ownership over the years all surplus funds were sent to EPD…"

A true and correct copy of the e-mail is attached hereto as **Exhibit S**.

14. Throughout the existence of the Sole Proprietorship and EPD, I told the Creditors that my personal assets were ultimately the security for the liabilities of the Sole Proprietorship and EPD. Many, if not most, of the Creditors were aware through my discussions with them that I held ownership interests in the stock and/or property of NHIP, and of the entities that own land in Tennessee and Mississippi. Beginning in early or mid-2009, EPD stopped making regular payments to Creditors. After that point, the Creditors repeatedly contacted me regarding the status of refinancing of the real property owned by NHIP and/or the sale of stock of NHIP, in order to generate funds for EPD to pay creditors. Creditors also repeatedly contacted me regarding the status of the Tennessee and Mississippi real property in which I hold ownership interests in order to determine EPD's ability to make payments to them. At the request of the Creditors, I provided updates about the real property owned by other entities, and also provided documents with a full accounting of those properties to an accountant. An example of my communications with Creditors is an e-mail that I sent to Michael Kabik on December 8, 2012:

> "... We are not an investment company. 95% of our group consists of ONLY family and extended family members. We have never had clients from the business world. For 35 years our family has pooled its resources and used the funds to purchase long term Land Development Projects. Most are located in prime areas such as Brentwood Tenn. a suburb of Nashville where we purchased and developed more than 2,000 acres in the past two decades. We currently control 250 acres of the remaining lots that have been appraised by the bank last year for more than $25,000,000 with only $4,000,000 of bank debt. All of the properties are highly valued and subject to very low loan to values."

A true and correct copy of my e-mail is attached hereto as **Exhibit T**.

15. True and correct copies of EPD's tax returns for fiscal years 2003 through 2008 are attached hereto as **Exhibits U through Z**. EPD did not file tax returns for fiscal years 2009 through 2011 because EPD did not have the money or the paperwork to put the tax returns together and because EPD did not believe that it owed taxes based on a $10 million capital loss carry forward.

16. The testimony that I provided in Rule 2004 examinations on May 17, 2011, May 31, 2011 and July 8, 2011 is true and accurate to the best of my knowledge, and my testimony is accurately reflected in the transcripts prepared by the court reporter.

17. I support the substantive consolidation of the EPD Bankruptcy Estate and the bankruptcy estate of me as an individual based on the history of EPD as initially a sole