proprietorship that became EPD in mid-2003. Consistent with my transfer of assets and liabilities from the Sole Proprietorship to EPD, I pledged all of my personal assets to EPD. I made it known to Creditors that my personal assets (mostly consisting of ownership in other companies) were ultimately available to pay amounts owed to them. In addition, I support substantive consolidation because I specifically recorded the UCC-1s in favor of EPD encumbering all of my personal assets to ensure that EPD and the Creditors through EPD, had security against my assets.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 23, 2012 at ______, California.

JERROLD S. PRESSMAN

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

CERTIFIED COPY

| | |
|---|---|
| IN RE:<br><br>EPD INVESTMENT COMPANY, LLC,<br><br>EIN NO. XXX-0994 | CASE NO. 2:10-BK-62208-ER<br><br>VOLUME I<br>(PAGES 1-228) |

RULE 2004 EXAMINATION OF JERROLD S. PRESSMAN

VOLUME I

MAY 17, 2011

EXHIBITS 1-32 BOUND UNDER THIS COVER

EXHIBITS 33-53 BOUND UNDER SEPARATE COVER

REPORTED BY LORI M. BARKLEY, C.S.R. NO. 6426

WATSON
COURT REPORTERS

1545 Sawtelle Blvd. Suite 26 Los Angeles CA 90025
phone 310.231.4333 or 800.373.0888 fax 310.231.4332
www.watsoncsr.com

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 1 Page 2 of 88

**Q.** And what was that called?
**A.** I can't remember the name of the entity.
**Q.** Anything else?
**A.** I'm sure there are some, again, but nothing material, nothing that stands out.
**Q.** Other than the companies that we just discussed, are you currently an officer of any entities?
**A.** Beyond what we discussed? I don't think so.
**Q.** Are you a director of any other entities?
**A.** I don't think so.
**Q.** Are you a member or manager of any other entities?
**A.** I don't think so.
**Q.** Now, when did you start EPD Company, LLC debtor?
**A.** What is the question?
FN 6
**Q.** When did you start the debtor?
**A.** 2003.
**Q.** You formed it as a California limited liability company in 2003?
**A.** Exactly. Is that the question you asked me, when that particular company, when the debtor got started? Yes.
**Q.** What type of the business is a debtor?
**A.** Kind of complicated. Does, like, four or five things. It's essentially a conduit company for venture

capitalists, venture capital investments. It has some of its own investments. It acted as a consultant, charged fees for services. It also acted as an administrative arm for some of its creditors and for itself, meaning some of the people would just put some money in and have EPD pay their mortgages and pay their telephone bills and pay their escrows and pay their girlfriends and their wives and all the things just an administrator does, strictly in an administrative capacity under the person's direction, you know, no input, just: Here's some money, here's my mortgage, pay it every month.

**Q.** Did it do anything else other than those things you just mentioned?

**A.** Well, it owned some leases of its own, received leasing income. It may have from time to time loaned some money, not that I can -- yeah, it loaned money out to a lot of these venture capitalists entities that we've discussed, and it administered the payments to the creditors, the interest payments to the principal payments, to the creditors.

FN 5

**Q.** We'll get back to that in a minute. Prior to 2003, was EPD company, without "LLC" at the end, an operating entity?

**A.** Yes.

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 1 Page 4 of 88

FN 5

**Q.** And prior to 2003, was it essentially run as a sole proprietorship by you?

**A.** That's correct.

**Q.** When did you start it as a sole proprietorship?

**A.** Probably 1973.

**Q.** And did it do the same things that you just mentioned?

**A.** Yeah, it did. It was more involved in the leasing business at the time, though. It leased vehicles and equipment to employees of one of the other companies, that Fire Master I talked about, the fire protection company, and it had hundreds of drivers and hundreds of officers across all over the country, and so it acted as a leasing company, so it would begin to bring in cash, and turn into arm's lengths leases between the employees so they could buy trucks and equipment.

**Q.** So prior to 2003, it was more involved in leasing. Did it also do the other things you mentioned: Investing money and acting as an administrative arm?

**A.** Yeah, all of the things that it was involved in was before 2003.

**Q.** Okay.

**A.** None of it came, to my remembrance -- maybe Mississippi was after 2003, but everything else was

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 5 of 88

FN 23

years to pay the interest and to pay the development costs.

**Q.** What properties did the debtor invest in?

**A.** Well, the debtors -- some of them invested -- actually, none of them invested in the properties direct. As a sole proprietor, the properties were all in my name, at least my ownership of those properties were in my name, because obviously, a bank isn't going to take a sole proprietorship entity. They have to take an individual who's going to personally guarantee the note. In 2003, when I became an LLC, I created a security agreement and filed a UCC-1 against me on behalf of the debtor, securing a hundred percent of everything I owned to secure the money that I had borrowed to pay -- to purchase and develop those properties, and then in 2009, when the UCC-1 expired, I re-filed again, so indirectly at that time, the investors -- or the creditors, or what do you -- yeah, the creditors, they had a promissory note from the company, the company loaned the money to me, theoretically, I invested the money in the properties, and then I pledged back my properties to the company via security agreement and a UCC-1 over the last -- from the time I became a sole proprietor -- from the time I became an LLC. Prior to that time, ninety percent of

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 6 of 88

**Q.** When the debtor was formed as an LLC in 2003, why didn't you transfer whatever investments or properties were in your name held for creditors or investors, transfer it into the debtor?

FN 26

**A.** You can't. It was already at the bank, and the bank isn't going to do that, you know. It's like calling the bank and say: Hey, I've got a new creditor, would you let me off the hook? There's no way they're going to let you off the hook. But I did the next best thing by assigning my rights to it, but by assigning my stuff, that's the same thing as doing it, and I don't have to tell you, but the terms of the UCC-1, while it's collateral, it also is very clear that every single penny that comes in that's distributed from that asset, whether it's in the form of a loan or whether it's in the form of a, in this case, a salary, I've never drawn a salary from any company in my whole life, not one of these companies, or has my son or any of my family members. We've never had a car, never taken an expense, we've never traveled, never taken a cookie from one of these companies, because the essence of a UCC-1 says anything you get in the interim goes directly into EPD, and that's just what happened.

FN 13

Over the years, we, to these entities, and this sounds like I'm really knowledgeable, but I just got

FN 13

this information yesterday so you'll be really impressed; I was. We put 73 million in and we got 48 million back, or 32 million back, you know, on the revolving notes, so we have a gigantic active business that was rotating that money, but every single cent that came out of any of those entities went directly into EPD, so just the fact that it was collateral, that's extra, but in terms of the flow of the cash, every cent went in. Never took a penny out of any of those entities.

**Q.** Prior to forming an account in 2003, did EPD have a bank account in its name?

**A.** Oh, yeah.

**Q.** What happened to the bank account?

**A.** When it's not doing business, just closed down the -- but any money that was in it got transferred. As I say, not one case, only money I have ever taken out of the company is my own money, just like any other creditor who put money in to pay my mortgages, I did the same thing. I would put my personal money in and it would pay out of my account, and it very clearly demonstrates that on the books and records, so if there's any money on EPD in that last day, even if it was a dollar, it would have gotten transferred to the new LLC.

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 8 of 88

to be real clear that's what I'm doing. I'm trying to be as honest as I can but I don't want to lead you astray by making you think I really know these numbers off the top of my head.

**Q.** Deposition or rule 2004 examination is about your best recollection, and in some instances later on, I may put a piece of paper in front of you to refresh your recollection as to a specific number or specific fact. Other than that, I'm just looking for your best recollection.

**A.** Well, perhaps I can give you one -- maybe I can give you one that's consolidated, because that's the way I would have remembered it. I wouldn't remember these

FN 14

individual entities. It's probably easier to tell you that, as I mentioned before, there was a total of $74 million loaned to these entities, these real estate entities, and there was about $43 million that was paid back on the revolving note, and it all came back in the form of principal so there's no accrual for interest -- excuse me, there was no interest paid. There is an accrual for interest, because these were interest-bearing notes and so to this day, probably on these properties alone, there's probably $28 million but again, the money came through me, most of the money came through me, so there's a portion of the money would come

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 1 Page 9 of 88

FN 14

on the books that they'd give me the money and I would give them the money, but there's about, on these properties, there's probably, at this point, 28 to $32 million of debt owed back to me, indirectly owed back to EPD, and I was not counting interest.

**Q.** Now, are all the land development deals that the debtor loaned money to, are those all the entities that Robert Geringer was involved in?

**A.** Each one of those, yes, that I've mentioned.

**Q.** Without going through the specific amounts, since you provided us the overall figure, did the debtor loan funds to JSP Properties?

**A.** Yes.

**Q.** Did the debtor loan funds --

FN 15

**A.** Well, excuse me, maybe. As I told you, they loaned it -- the books will demonstrate that the money was sent from EPD to JSP Properties, but it was probably allocated on the book as a loan to me. I have a $25 million dollar revolving note, so the money was loaned through me to the entity. Now, there might be some portion that was lent to them as well, because there was also a revolving note from the company, from JSP Property, back to the company, but I can't tell what you the breakdown was, but generally speaking, in my mind, I owe the money to EPD.

FN 9
FN 88

**A.** Well, the debtor was in my back pocket. The debtor never had an office, never had a computer, never had an over -- it never had a business, as such. It did have some employees back in 2009, who were doing some administrative work, but it never really had a place, and so when the offices were closed down, Broadway was evicted from its location because it couldn't pay the rent. At the time, Broadway was renting a space that was subleased by a bunch of arm's length companies, and I maintained an office there, and when the company was shut down, everybody left, and so theoretically, EPD has no employees, nor has it for more than a year, year and a half, and that doesn't mean it's closed down in terms of a business. We're just waiting -- I mean, any -- it's still recorded through Secretary of State, it's still an active business, it's just in my back pocket.

**Q.** What business has the debtor conducted for the last year to year and a half?

FN 27

**A.** None in terms of the debtor. But obviously, quite interested in the assets that are securing the debtor that I am a shareholder of, 'cause that's going to be our sources of repayment and income in the future.

**Q.** So at this point, the debtor has no employees?

**A.** No employees.

**Q.** And does it have a business location?

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 11 of 88

one, that one. It just pays its ongoing obligations.

FN 35

**Q.** At some point did the debtor not have enough funds on hand to pay all its obligations?

**A.** Yes.

**Q.** When was that?

**A.** Latter part of 2008, early part of 2009.

**Q.** What precipitated that?

FN 36

**A.** It's called the economy. The companies that were selling the properties lost their credit line, and the credit line was required in order to post the bonds to sell the property and to pay for the construction, particularly the one in Tennessee had a $4 million credit line that had been paid down. It was an original $8 million one, $4 million had been paid down and, like, on Monday they just cut everybody in the bank, every single person in the bank who had a credit line connected to real estate was cut off, and it just dried up the ability to sell the properties.

In addition to that, the cash flow that was generated, Broadway Entertainment, particularly, was doing five, six, seven million dollars a year in revenue, in income, and was making, you know, amazing profits, and its customers stopped paying their bills, and its customers were CBS and NBC, they stopped paying their bills, which made it impossible for the company to

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 12 of 88

FN 36

continue to operate.

The music venue on Sunset Boulevard just got caught in this -- after thirteen years, got caught in the economy, and people were buying one drink instead of two, and coming at midnight instead of ten, and just, like, in one year it wiped out fifty years of history, just like that.

**Q.** Are you referring to Key Club?

**A.** Yeah.

**Q.** The businesses you just mentioned and all other businesses, how did that impact the debtor not having sufficient funds in late '08 or early '09?

FN 37

**A.** Well, the debtor had revolving notes, and so as the other companies would make profit or income, they would pay it into EPD. As a matter of fact, Broadway Entertainment was literally paying EPD as much as six, seven, eight hundred thousand dollars a year for services. One year they paid them a million eight in the last five years for services rendered, but when Broadway no longer was getting paid, they had four or five million dollars worth of receivables and they couldn't get their money, they had to stop doing business, so that cash flow stopped, and EPD was selling things, as I told you, they averaged $3 million a year which would bring in enough money to pay for things, no

**Q.** And when was that?

**A.** Between 2007 and 2009, 2008, I don't remember, but you also have copies of the general ledger and the incoming money from him. You know, the electronic -- on the -- stuff that you have off of our electronic document documenting each check from him.

**Q.** Now, you said his investments were between 2007 and 2009, but the UCC-1 wasn't recorded until September 11, 2009, according to this statement.

**A.** That's probably true.

**Q.** So why was a UCC-1 recorded following his investments?

**A.** Elected to do it, you know, he was entitled to it.

**Q.** Did other people that invested get UCC-1s against the debtor?

**A.** HMB Holdings.

**Q.** Anyone else?

**A.** No.

FN 106

**Q.** Why did Bright Conscience Trust and HMB holdings get UCC-1 liens against the debtor but other investors did not?

**A.** Well, let's go backwards with HMB. I was in a very precarious position, being sued by a lot of people, and some of the people from HMB came to me and said

FN 106

that, as much as they loved me and as much as everything was great, they were going to have to bring lawsuits against me, because they just didn't want to sit around and wait for twenty years for their money, and they didn't want to be the last one in, and could I give them some collateral. Well, I had ten or twelve people. I couldn't give any single person collateral because that would destroy the collateral, and so one of them came to me and said would I form a company, and I get ten of these people and we agree to defer our lawsuits out and not sue, would you give us a collateral position, and I said sure, so that's what I did. So that's how that came about and in combination -- and then the Bright Conscience, John was being very helpful to me in other things just as a -- I don't know, I might have needed him in the future, and when he invested the money and I promised him, I can't even remember, I think he got a security agreement, I don't remember, but anyways, he was entitled to do it, and I guess he just did it. I mean, I didn't track when he did it. I don't know, did I sign it? I don't think I signed it. People don't sign UCC-1s, do they?

**Q.** Sign UCC-1s?

**A.** I don't know if I did or.

**Q.** I can't respond to that because it's an

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 15 of 88

examination.

**A.** I don't know. If I signed it I would know, but I may not have known he didn't file it.

FN 106

**Q.** So HMB Holdings, LLC received a UCC-1 because the members of it were threatening litigation against the debtor?

**A.** Right. And this is only some of their money, this is only a partial. Some of it is a third or half or something, so most of it's just a partial amount, but the consideration was to get them to defer the lawsuits against me, give me a chance to catch up.

**Q.** Did Mr. Kirkland ever threaten a lawsuit against the debtor?

**A.** Well, I don't think he came out and threatened me, but I sure wouldn't want to go up against him.

**Q.** Did he infer that he might sue you?

**A.** I don't recall.

**Q.** He may have?

**A.** He may have, but I don't recall.

**Q.** Was there any correspondence that would have inferred that?

**A.** No.

**Q.** Do you recall if that was when he was at Luce, Forward?

**A.** No, I don't. You mean when he started?

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 16 of 88

**A.** I read it and signed it.

**Q.** But you didn't seek any legal counsel other than your son?

**A.** I didn't need legal counsel. My choices were I got twelve people ready to sue me, I either sign it or I've got twelve lawsuits on my hand. No matter what legal counsel told me, I wasn't in a position to be bargaining.

FN 107

**Q.** If you flip back to exhibit number 15, which is the statements and schedules, and go to the next page on exhibit D, the exhibit to schedule D rather, exactly, the list of names, on the top it says "claims in HMB Holdings, LLC," what do you mean by "claims"? Do you mean members?

**A.** That's what I assume it means. Obviously, common sense would say that's what it means, but whether the word "claims" is correct, I don't know.

**Q.** So the people affiliated with HMB Holdings, LLC are Raymond Brosio, Robert Browne, Mitch Carter, Lawrence Cooper, Thomas Ferro, Ferro Trust, Dr. Melvin Glick, Ralph Grande, Norman Hanover, Bridget Hansel Andrews Estate, Miller Carbonic, Ron M. Sharrow and Kelly Watson?

**A.** Right.

**Q.** And those the people who threatening to sue you

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 17 of 88

FN 107

and/or the debtor?

**A.** Right.

**Q.** Did they do that in person or through a letter?

**A.** In person.

**Q.** What --

**A.** Excuse me, fifty telephone calls, some of them every day.

**Q.** And what --

**A.** These were people -- some of these were calling me every single day.

**Q.** What did they say?

**A.** They just said the same basic stuff: I've waited as long as I can wait, I don't want to be the last one on the band wagon here if we're sued by other people, and I don't want to be the guy that waits till the end and gets nothing, so while we believe in you and we really want this thing to work, we've got to have some collateral or we have no choice but to bring a lawsuit against you, bring lawsuits against you.

**Q.** And these numbers on the right, where did those come from?

**A.** I don't know.

**Q.** Do you recall if that's the amount that they were owed at the time?

**A.** It's not. It's only a portion of what's owed.

STATE OF CALIFORNIA, )
) SS.
COUNTY OF LOS ANGELES )

I, Lori M. Barkley, Certified Shorthand Reporter No. 6426, for the State of California, hereby certify:

That prior to being examined, the witness named in the foregoing rule 2004 examination was duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said rule 2004 examination was taken down by me in shorthand at the time and place therein named and thereafter reduced by me to typewritten form and that the same is a true, correct, and complete transcript of said proceedings.

I further certify that I am not interested in the outcome of the action.

Witness my hand this 20th day of May, 2011.

LORI M. BARKLEY, CSR NO. 6426

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

CERTIFIED COPY

| | |
|---|---|
| IN RE:<br><br>EPD INVESTMENT COMPANY, LLC,<br><br>EIN NO. XXX-0994 | CASE NO. 2:10-BK-62208-ER<br><br>VOLUME II (PAGES 229-469) |

RULE 2004 EXAMINATION OF JERROLD S. PRESSMAN

VOLUME II

MAY 31, 2011

REPORTED BY LORI M. BARKLEY, C.S.R. NO. 6426

WATSON
COURT REPORTERS
1545 Sawtelle Blvd. Suite 26 Los Angeles CA 90025
phone 310.231.4333 or 800.373.0888 fax 310.231.4332
www.watsoncsr.com

**A.** Well, if somebody owed him money and he owed me money, we'd both have to fight for money, we'd have to go against the company. If we had only one person and the fact that he was giving me the money, that gave me a great deal of security, made me very comfortable that he let me have the money and let me loan it in.

**Q.** Did Mr. Geringer loan the money to EPD or invest it in EPD?

FN 12

**A.** He loaned it. Just for the record, because we're using the word "investment" and "loan" intermittently, no one invested in EPD. When we say "investment" I mean -- I'm thinking you mean loan. No one ever invested in EPD.

**Q.** So any person that put money into EPD loaned the money to EPD?

**A.** Either loaned the money to EPD or put it in temporarily to be spent on their behalf somewhere else, but it was not an investment in EPD.

**Q.** They were all loans and they're all evidenced by promissory notes?

**A.** Correct.

MR. WEBER: Introduce exhibit number 104.

(Whereupon Exhibit 104 was marked for identification and is attached hereto.)

**A.** Might have.

**Q.** Do you recall how much?

**A.** No.

**Q.** Mr. Hanover's one of the people that comprised or still comprise HMB Holdings?

**A.** Yes.

**Q.** That's one of the group of people that you said threatened a lawsuit against you or the debtor?

**A.** Yes.

FN 108

**Q.** Did that group of people also threaten an involuntarily bankruptcy proceeding against you and the debtor?

**A.** Yes.

**Q.** When was that?

**A.** I don't remember, but Mr. Sloan was in the meeting when that occurred.

**Q.** Was it in 2009?

**A.** I don't recall.

**Q.** Who threatened an involuntarily bankruptcy proceeding?

**A.** Basically sixty percent of those HMB people were in that meeting.

**Q.** Was one of those people Norm Hanover?

**A.** Yes.

**Q.** Were they threatening an involuntary bankruptcy

FN 108

proceeding against you or the debtor or both?

**A.** Against the debtor.

**Q.** What was your response when they made that threat?

**A.** Well, you know, it wasn't done with a machine gun. It was that one of their options, there was a meeting of all this group of creditors, that several their options were to sue me, to put me into involuntarily bankruptcy, or to get a better sense of what the assets that were securing my note were, to give them a better sense of well being.

**Q.** So what was the result of that meeting?

**A.** I showed them the assets. They had some questions that they didn't think I owned 43 percent of North Hills; they thought I owned only ten percent, and they went through a lot of stuff, and I was able to demonstrate to them that I declared that on my income tax, and yes, in fact I did own it, and I gave them the paperwork demonstrating the status of the loan that I was really thinking I was going to get, hoping to get, and the paperwork showing that the loan was in process, and for the time being, they decided to give me more time to get things together.

**Q.** So instead of filing an involuntarily bankruptcy proceeding against the debtor, they ended up getting a

3, and there just wasn't anything I gave him; I just explained it to him. I told him, as opposed to gave him.

**Q.** And did Mr. Kupperberg prepare any sort of report on his findings?

**A.** Not to me.

**Q.** Are you aware as to whether he prepared a report for someone else?

**A.** I understand he didn't, but I don't know for sure.

FN 89

**Q.** Has the debtor ever had an independent audit during its operation?

**A.** No.

**Q.** Any reason why not?

**A.** Didn't need it.

**Q.** For what reason?

**A.** The only reason you need it is if you need bank financing or for a lender. You don't need it if you don't have that.

**Q.** Did any people loaning money to the debtor ever ask for audited financial statements?

**A.** Maybe, but I didn't have any. I don't recall anyone doing that, but they may have.

**Q.** You never offered to have an outside firm audit the debtor?

FN 89

**A.** No, I didn't.

**Q.** Did any outside accounting firm ever prepare a review or compilation of the finances of the debtor?

**A.** No.

**Q.** Any reason why not?

**A.** Didn't need to.

**Q.** Any other reason?

**A.** Didn't need to.

MR. WEBER: Introduce exhibit number 113.

(Whereupon Exhibit 113 was marked for identification and is attached hereto.)

THE WITNESS: Okay.

BY MR. WEBER:

**Q.** Have you seen this document before?

**A.** Yes.

**Q.** Is this an e-mail that you received from Rick Flores on or about January 3rd, 2011?

**A.** Yes.

**Q.** Did you discuss the contents of this e-mail with Mr. Flores?

**A.** Yes.

**Q.** What did you discuss?

**A.** I wasn't going to pay for it and I don't care,

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 25 of 88

**Q.** What was the name of the trust?

**A.** I don't know, Jerrold Pressman Insurance Trust.

FN 93

**Q.** Was there any reason why the trust was named as the beneficiary rather than the debtor?

**A.** Yes, 'cause basically, if you remember, the debtor owed me $5 million, and so it was technically my money, but it's irrelevant, because I didn't die, and had I died, the beneficiaries would have not gotten the money; they would have only gotten a small amount of money. The person I sold it to gets the bulk of it.

**Q.** When you said the debtor owed you $5 million, didn't you have a $25 million dollar note payable to the debtor?

**A.** That's true, yes.

**Q.** So you owed the debtor money; is that correct?

**A.** That's true, but I was a client of the debtor, or a creditor the debtor, just like everybody else. One was a business side and one was my personal money, that every penny I made and anything I ever did went into my personal account, just like everybody else, and they paid my bills and did my things out of my money, and you have a copy of that.

**Q.** So did the money from selling the insurance policies go to EPD or the debtor's general account or did it go to your personal account?

that. You can't do that any more.

**Q.** How did you know exactly what you could sell it for in a year or two?

**A.** Well, I used the word "exactly." That's really not true. Nothing's exact, but the -- you have a pretty good projection, they have a service, an insurance service that projects the life expectancy of people, and as an example, I bought a policy from a seventy-eight-year-old-man or an eighty-three-year-old man, so his life expectancy is whatever they would say, ten-year life expectancy, and what they required us to do is, during the period I owned it, I had to pay the premiums until that two-year expiration date, and at the end of the two years, I was able to sell it for, you know, a sizeable profit. I think one particular guy made as much a $350,000 profit for holding it for two years.

FN 92

**Q.** Where did you receive the funds to invest in life insurance policies?

**A.** EPD.

**Q.** So it was people that loaned money to EPD?

**A.** Yes.

**Q.** And you'd use that money to partially to invest in life insurance?

**A.** Exactly, and then that's why the profit and the

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 27 of 88

FN 92

money went back to EPD when it came in.

**Q.** Who is Bill Browne?

**A.** Creditor.

**Q.** Any other relation?

**A.** No.

**Q.** Did he work for Broadway Entertainment?

**A.** No.

**Q.** Did you have any sort of arrangement with Broadway Entertainment?

**A.** He might have been a consultant, I mean, we might have charged him as a consultant. We've done some work for him, some of his various businesses. I don't recall any details of it, though, nothing big.

**Q.** Who is Chilton Harper?

**A.** Never heard of him.

MR. WEBER: I'd like to introduce exhibit number 127.

(Whereupon Exhibit 127 was marked for identification and is attached hereto.)

BY MR. WEBER:

**Q.** Have you seen this document before?

**A.** Yes.

**Q.** Is that your signature on the last page?

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 28 of 88

**Q.** Did you sometimes provide updates in that regard?

**A.** No, only on request.

**Q.** Is there any reason for that?

**A.** No need to.

FN 61

**Q.** So the people that loaned money to the debtor and received promissory notes, they never asked what the company was doing with that money?

**A.** No, not really, I mean, they knew what we were involved in, they knew the businesses that we were touching, but we weren't using their specific money in any specific place, so the answer would be no, any more than you'd ask a bank what their investments were when you put money into a bank. You know, again, the word "fungible" comes up, their dollars are fungible. Some people might have been interested out of curiosity, but by and large, I hate to say it, but people trusted me. I'd been doing it for fifty years and they just figured I knew what I was doing, and I did. I just didn't know the world was going to come to an end in 2009.

**Q.** You stated during the first portion of your examination the other week that some of the people that lent money to the debtor were actually investing in leases, equipment leases?

**A.** Yes.

**A.** No.

**Q.** Are there any ice rinks that I missed that you or one of the companies you're affiliated with had an interest in or loans with?

**A.** I did leave one off I'd forgotten about. Which was ice -- not that I own today but it was ice -- we were affiliated with the Los Angeles Kings, and we built the training center for the Los Angeles Kings. We were partners with Anshutz Company and Fox Television. They owned one-third of that ice rink, and we built the building which is the training center for the Kings and the Lakers in El Segundo.

**Q.** And do you still have an interest in that?

**A.** No.

**Q.** Did you sell it?

**A.** Yes.

**Q.** When was that?

**A.** Oh, seven or eight years ago, we sold it back to Mr. Anshutz.

**Q.** Do you know how much you received for it?

**A.** I think $600,000.

**Q.** And what happened to the money?

**A.** It went into EPD.

FN 34

**Q.** Has the debtor filed a tax return for every year since 2003?

FN 34

**A.** No.

**Q.** What years has it filed tax returns for?

**A.** I think up to 2008.

**Q.** Why didn't it file a tax return after that?

**A.** Just don't have the money or the paperwork to put together, and we don't owe any taxes because there's a $10 million loss carry forward, so there's no taxes owed, so there's no penalty, and unless we're doing business, we may never file another tax return.

**Q.** So the debtor stopped filing tax returns because it wasn't still transacting business?

**A.** No, that isn't what I said. What I said was it doesn't have the money to do it, and it doesn't need to because it's got a tax loss carry forward, so it's not going to have a penalty, and we don't have the time or money to put a tax return together, and there's not that much information that is necessary at this point in time.

**Q.** Did the debtor have Ted Jonavic on a retainer?

**A.** Yes.

**Q.** Did you pay him some amount per month?

**A.** Yes.

**Q.** How much was that?

**A.** $5,500.

**Q.** So the debtor paid Mr. Jonavic $5,500 per month

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 31 of 88

back in 2006. We were trying to get things together and.

**Q.** And you actually put that money into an account of EPD Investment Company?

**A.** As I told you, my whole life, every cent that ever came in went into EPD, and then I took the money out from there. I've never taken any money -- any material money and put it in my bank account direct. Every check I ever got in my life came through EPD.

MR. MOE: Came through EPD?

THE WITNESS: Yes, the money was sent into EPD, then if I took it to pay my bills or whatever, there was an accounting for it. The only thing I ever took out was money that I put in.

BY MR. WEBER:

**Q.** So in this account at the debtor, was there a second segregated account for you as an individual at the debtor?

FN 90

**A.** Just like everybody else, I was just another creditor. I just had an account like everybody else. Every single person had a segregated account. Whatever went in, went out, got listed to that account. That's what this is generated from, that segregated account.

**Q.** You previously testified that all the money at the debtor was fungible.

FN 90

**A.** It is.

**Q.** Were there separate accounts set up for each individual or are these just paper transactions?

**A.** I don't understand your question. These are real transactions, not paper transactions. These are actual monies going in, but fungible means the pot. Money I put in isn't the actual dollar I get back. I might get your dollar that's in a big pot.

MR. MOE: Were there separate bank accounts?

THE WITNESS: No, no. Separate -- a separate account number and each one -- I mean, if it were a bank, it would be a separate bank account, but it's not a bank. There's a separate account for every single person.

BY MR. WEBER:

**Q.** So the debtor had some amount of money, correct?

**A.** Yes.

**Q.** So that money was just held in one general pool of money; is that correct?

**A.** Right.

**Q.** There weren't separate accounts at a bank or there wasn't some separate holding area, was there?

**A.** I see. No, no.

**Q.** So there was some general amount of money, and then there were paper transactions that keep track of

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 33 of 88

FN 90

who owed who, what?

**A.** Exactly.

**Q.** So in terms of this personal account at the debtor, you used that account to pay for your personal expenses?

**A.** Right.

**Q.** So, like, American Express and things of that sort?

**A.** Exactly.

**Q.** Do you use those accounts to pay for expenses of the debtor?

**A.** Sometimes. A lot of times I did, yes.

**Q.** Payroll?

**A.** I don't think payroll.

**Q.** Bonuses?

**A.** Maybe.

**Q.** If you flip to page 44, it's on the bottom right that marks the page numbers, if you look about a quarter of the way down there's a deposit that's dated January 31, 2005?

**A.** Page 44.

**Q.** About a quarter of the way down, there's a transaction dated January 31, 2005.

**A.** Right.

**Q.** And it says: Name, Jerrold SP and then an

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 34 of 88

**Q.** Page 41, there are transactions dated December 31, 2008.

**A.** All these December ones are the same thing, another year, probably clean out the year-end balance sheet where they would charge my account.

**Q.** January 1, 2009, there's a transaction for $205,020?

**A.** I don't know what that is.

**Q.** On page 45, there's a transaction dated March 24, 2009, to Scott Slinger, $400,000.

**A.** That's the $400,000 I was telling you that I sold the company for, I sold my interest in the ice rink for.

**Q.** That's the one in Simi Valley?

**A.** Yes.

**Q.** Is there a reason why the $400,000 was credited to your personal account rather than to the debtor's general account?

FN 91

**A.** That's because I didn't use any company money to buy it. I owned it and I personally sold my shares in it and then gave the money back to the EPD and loaned it back to EPD.

**Q.** Weren't your shares secured by the debtor?

**A.** Perhaps, yes.

**Q.** So why was the money put in your personal

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 35 of 88

FN 91

account?

**A.** Because I own the stock, and that's the way the check was, you know. It's fine, we can take it off if you want, you know, it's still in there. It's in EPD. They owe me the money and they're not going to pay me back, it's irrelevant.

**Q.** Again, don't you owe EPD $5 million or something like that?

**A.** I do, I do.

**Q.** But you keep referring to EPD owing --

**A.** There's a difference between me as an individual as one of the people that had one of these revolving accounts as a creditor; and me as a business creditor. Those notes are not due. Those notes are not due that the I owe the company for four or five years so, no, I don't owe that money until they become due, and there's no right of offset, so I have a right to collect what's owed me now, and in the future, pay the bill when it becomes due.

**Q.** On page 48 there's a transaction dated June 3rd, 2009, Stewart Title for $126,934.98.

**A.** Right, I sold the house that he owned.

**Q.** Again, the money was deposited into your personal account?

**A.** Exactly, something I bought ten years before and

STATE OF CALIFORNIA. )
) SS.
COUNTY OF LOS ANGELES )

I, Lori M. Barkley, Certified Shorthand Reporter No. 6426, for the State of California, hereby certify:

That prior to being examined, the witness named in the foregoing rule 2004 examination was duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said rule 2004 examination was taken down by me in shorthand at the time and place therein named and thereafter reduced by me to typewritten form and that the same is a true, correct, and complete transcript of said proceedings.

I further certify that I am not interested in the outcome of the action.

Witness my hand this 6th day of June, 2011.

______________________________

LORI M. BARKLEY, CSR NO. 6426

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

CERTIFIED COPY

| | |
|---|---|
| IN RE: | |
| EPD INVESTMENT COMPANY, LLC, | CASE NO. 2:10-BK-62208-ER |
| EIN NO. XXX-0994 | VOLUME III (PAGES 470-649) |

RULE 2004 EXAMINATION OF JERROLD PRESSMAN,

VOLUME III

JULY 8, 2011

REPORTED BY LORI M. BARKLEY, C.S.R. NO. 6426

WATSON
COURT REPORTERS
1545 Sawtelle Blvd. Suite 26 Los Angeles CA 90025
phone 310.231.4333 or 800.373.0888 fax 310.231.4332
www.watsoncsr.com

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 38 of 88

ability to get that information, I am the most knowledgeable, but again, the stuff that you're asking for, I'm not making an excuse, because it would be irrelevant to me whether -- if you want a list of every one of their independent contractors, there's hundreds and hundreds and hundreds of them, it would make no difference to me whatsoever, but I don't know where that information is. The people that came in may have thrown that away. There's no need to even keep that information for more than a couple of years anyways.

FN 101

**Q.** So are you referring to the Key Club?

**A.** Yes.

**Q.** So SC Club, LP is leasing the Key Club to a new entity?

**A.** Yes.

**Q.** And how much in lease payments does SC Club, LP receive?

**A.** Nothing.

**Q.** So why is it leasing the Key Club?

**A.** Because SC had a obligation to the landlord and this lease coming in is helping to mitigate that lease expense. The money that's coming in on the lease is less than the actual lease.

**Q.** So SC club, LP is making up the difference?

**A.** It has an obligation to do so but it's not.

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 39 of 88

FN 101

**Q.** And what's the entity that's currently engaged in the lease with SC Club, LP?

**A.** It's called Sunset Key, or something to that effect. I don't remember offhand. I'll probably remember when this is over.

**Q.** And that entity is not at all related to you or Keith Pressmen or Robert Geringer?

**A.** None whatsoever. Just to give you some insight, SC Club, LP was not making its lease payments so it was being evicted and, so the people that came in to enter into this sublease literally dealt with the landlord and we just acceded, agreed to the arrangement that was helping to mitigate the obligation.

**Q.** Flip to page 134; that's the Request For Documents and Things of the Person or Persons Most Qualified for SC Club, Inc., and I'd like you to go through that list and confirm that SC Club, Inc., has produced all responsive documents and things in its possession, custody and control.

**A.** Everything in my care, custody and control, yes.

**Q.** How about everything in SC Club, Inc.,'s possession, custody or control?

**A.** Yes.

**Q.** It has been produced to the extent it exists?

**A.** Yes.

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 40 of 88

did come in as a borrowing, for expediency sake, it would be offset against the promissory note or the multiple advance note, so in that sense -- in terms of Broadway and SC Club, you're probably right. In terms of the ice rinks, you're probably not right.

**Q.** So your testimony is that the Debtor borrowed money from the ice rinks and not the other way around?

**A.** No, no. Those are two separate questions. Sometimes the Debtor borrowed from the ice rinks, and sometimes the ice rinks borrowed from the Debtor, but there were different ice rinks.

**Q.** And did Ice Skating Enterprises, Inc., ever borrow money from the Debtor?

**A.** No.

**Q.** Did Ice Group Escondido, Inc., ever borrow money from the Debtor?

**A.** No.

**Q.** And how do you know that?

**A.** Because they never needed any money. The Debtor was borrowing money from them.

FN 11

**Q.** The people that loaned money to the Debtor, they generally got somewhere between ten and twelve percent as a guaranteed per annum interest payment; is that correct?

**A.** That's correct, that's correct contemporarily,

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 41 of 88

FN 11

but over the years, it was as low as 2 and as high as 15 or 16, depending on what the credit -- what the interest rate was during that period of time.

**Q.** How about between 2003 and the present?

**A.** I would say most of it is between 8 and 12. There might have been an occasional 14, even.

**Q.** So theoretically, the Debtor would have to generate greater than that percentage in order to operate profitably; is that correct?

**A.** Absolutely.

**Q.** And on investments that the Debtor made year after year from 2003 to present, did the Debtor earn more than, say, 12 percent on whatever it was loaning money in regard to, or investing in?

**A.** On an accrued basis, absolutely.

**Q.** And that's each year?

**A.** Yeah.

**Q.** Did it actually receive that money or is that theoretical interest?

**A.** Well, that's what an accrual interest it; it's not theoretical, it's real interest, when you take it, you take it, but in addition to that, as you know, not only the notes that were loaned out to these other entities paid the 12 percent, so that would have been a wash, plus there was a kicker of ownership that would

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 42 of 88

of the date of the bankruptcy petition, the Debtor owes approximately $67 million to creditors.

**A.** That's true.

FN 24

**Q.** So as of the petition date, the Debtor owed approximately $67 million to creditors, correct?

**A.** Yes.

**Q.** And the Debtor had approximately $32 million in assets, correct?

**A.** Yes.

**Q.** So what happened to the rest of the money?

**A.** The rest of the money, you know, I'm not an accountant, it's there. The ownership that I have in these outside entities are backing up these securities, so if I get profit from these other entities, which I hopefully will, that money belongs to this company as collateral against my notes, and so my intentions were to take any monies that I generated from these properties that I hold separately to cover this, and I believe that there's enough money in there to do that.

**Q.** If the Debtor is taking in money from people who are loaning the money to the Debtor, or putting money in the Debtor for whatever reason, the Debtor is taking that money and transferring it out to other entities that you're involved in with the hope that that money comes back with interest and principal, why is the

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 43 of 88

document that lists the promissory notes, but my recollection is the one page listed approximately $24 million due from you to the Debtor and most of the balance due from SC Club, LP, SC Club, Inc., and Broadway Entertainment to the Debtor; is that correct?

**A.** That's correct.

**Q.** So why is that $32 million rather than $67 million?

FN 25

**A.** Well, at the time that some of this debt was entered into, when I, as you remember, I was a sole proprietor, and so as a sole proprietor, I also accepted responsibility of having a personal guarantee on the differential of what you're talking about, and so that's why those other assets, at the time I gave those -- that personal guarantee, it was my intention to cover the difference between the two of these, and that really would be the net effect, assuming that the people would collect $32 million, assuming it was all paid, and then the balance would be paid by me. And those assets do, can get that amount of money, even in these terrible times, unless we start to lose the property, which I'm close to doing but it's -- providing we can survive, going forward, when those last lots are sold, my personal guarantee will click in for the difference and these people will get their money.

STATE OF CALIFORNIA. )
) SS.
COUNTY OF LOS ANGELES )

I, Lori M. Barkley, Certified Shorthand Reporter No. 6426, for the State of California, hereby certify:

That prior to being examined, the witness named in the foregoing deposition was duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced by me to typewritten form and that the same is a true, correct, and complete transcript of said proceedings.

I further certify that I am not interested in the outcome of the action.

Witness my hand this 13th day of July, 2011.

LORI M. BARKLEY, CSR NO. 6426

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

CERTIFIED COPY

IN RE:

EPD INVESTMENT COMPANY, LLC,

EIN NO. XXX-0994

CASE NO. 2:10-BK-62208-ER

EXHIBITS BOUND SEPARATELY

# RULE 2004 EXAMINATION OF RUBEN MORENO

JUNE 1, 2011

REPORTED BY LORI M. BARKLEY, C.S.R. NO. 6426

WATSON
COURT REPORTERS

1545 Sawtelle Blvd. Suite 26 Los Angeles CA 90025
phone 310.231.4333 or 800.373.0888 fax 310.231.4332
www.watsoncsr.com



EXHIBIT "D"

**Q.** What year was that?
**A.** 1996.
**Q.** What was your position at Billboard Live?
**A.** I was accounting -- account payable, I assume.
**Q.** An accounts payable clerk?
**A.** Yeah.
**Q.** When did you hold that position until?
**A.** I believe it was 1998.
**Q.** What was your next position?
**A.** Business Manager at House of Blues, Concerts.
**Q.** What years did you have that position?
**A.** 1998 to either end of 2000 or beginning of 2001.
**Q.** What do you as a Business Manager?
**A.** I did what you call show settlements, payables, budgets, and some forecasting.
**Q.** And how about after that?
FN 85
**A.** I started working for Jerry Pressman.
**Q.** What year was that?
**A.** Either end of 2000 or beginning of 2001.
**Q.** And did you work for Mr. Pressman as an individual or for a company that he was affiliated with?
**A.** A company.
**Q.** Which company?
**A.** I believe my W-2 just said "Jerry Pressman" on it. From what I remember it just said "Jerry Pressman."

FN 85

**Q.** So you were employed by him as an individual?
**A.** You mean a 1099, individual?
**Q.** You said the W-2 said that Jerry Pressman was your employer?
**A.** Yes.
**Q.** As an individual?
**A.** Yes, I suppose yes.
**Q.** What was your position?
**A.** Bookkeeper.
**Q.** What were your duties as a bookkeeper?
**A.** Oversee the clerks, help prepare financial statements.
**Q.** Anything else?
**A.** You know, to help support the clerk staff, the accounting staff.
**Q.** What years did you hold that position through?
**A.** In either 2002, 2001 to about August 2010.
**Q.** So somewhere between nine and ten years?
**A.** Yes.
**Q.** During that time did you do the bookkeeping for one or more of the entities that Mr. Pressman is affiliated with?
**A.** Yes.
**Q.** Which entities?
**A.** EPD, Broadway Entertainment, and Key Club.

FN 85

**Q.** Any others?

**A.** During that period?

**Q.** Yes.

**A.** No.

**Q.** By EPD, are you referring to EPD Investment Co., LLC?

**A.** Yes.

**Q.** And prior to 2003, are you also referring to EPD Investment Company without the LLC?

**A.** Yes.

**Q.** You referenced Broadway Entertainment; is that Broadway Entertainment Marketing, Inc.?

**A.** I believe it is.

**Q.** You mentioned the Key Club; is that the entertainment venue that was on Sunset Boulevard in Hollywood?

**A.** Yes.

**Q.** Did you do work for SC Club, Inc., or SC Club, LP?

**A.** I don't think SC, Inc.

**Q.** SC Club, Inc., or SC Club, LP?

**A.** SC Club, LP is Key Club, so yes, if I'm correct.

**Q.** Were you a full-time employee between 2000, 2001 and August 2010?

**A.** Yes.

conducted?

**A.** He owned a nightclub, he did movie premier, and he owned some property.

**Q.** And again, you understand by "debtor" I'm referring to EPD Investment Company, LLC?

**A.** No, sorry. Every time you say "debtor" I'm referring to Jerry. Repeat the question.

FN 86

**Q.** Between 2000 and 2001, whenever you began working for Mr. Pressman, through August 2010, what was your understanding of what business or businesses the debtor was in?

**A.** You know, I'm not sure.

**Q.** You have no idea what the debtor did?

**A.** Well, he -- I do, I guess he was a leasing company. I mean, I never really fully understood what EPD did.

**Q.** What do you mean by a leasing company?

**A.** I know that we made leasing payments to people, so.

**Q.** Do you know why the debtor made leasing payments to people?

**A.** To secure leases for them.

**Q.** What were the leases for?

**A.** I don't know. I didn't -- I wasn't involved in that process.

debtor?
**A.** If this is correct, then he did. It says "John Kirkland" at the bottom.
**Q.** Do you know if he prepared Bylaws for the debtor?
**A.** I don't know what bylaws are.
**Q.** Do you know if he prepared an Operating Agreement for the debtor?
**A.** I don't know.
**Q.** Do you know how often Mr. Kirkland spoke with Mr. Pressman?
**A.** No.
FN 82
**Q.** As Secretary of the debtor in May 2004, what was your job description; what did you do?
**A.** I was Jerry's bookkeeper.
**Q.** Anything else?
**A.** Secretary, whatever that function means.
**Q.** Did you do anything additional as a Secretary for the debtor?
**A.** No, I don't believe I did.
**Q.** In 2004, what functions did Keith Pressman perform as President of the debtor?
**A.** I don't know.
**Q.** In 2004 what functions did Christine Kamps perform as Vice-President for the debtor?

Mr. Pressman, as to who the President of the debtor was?

**A.** No, I wouldn't have known.

**Q.** In 2005 did you know, without talking with Mr. Pressman, who the Vice-President of the debtor was?

**A.** No.

**Q.** And in 2005, without checking with Mr. Pressman, did you know that you were the Secretary of the debtor?

**A.** Without checking?

**Q.** Yes.

**A.** Repeat the question, I'm sorry.

FN 83

**Q.** In 2005, if you hadn't checked with Mr. Pressman, did you know that you were the Secretary of the debtor?

**A.** If I didn't check with him? No, I wouldn't have known.

**Q.** If you flip to the next page, there is another document titled Statement of Information Limited Liability Company, appears to have been filed with the California Secretary of State on April 26, 2007; do you see that?

**A.** Yes.

**Q.** And then there's a checked box with "no change statement." Do you see that?

**A.** Yes.

**Q.** On this form there's no signature at the bottom;

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 52 of 88

do you recall preparing this statement?

**A.** No, I don't recall.

FN 84

**Q.** In 2007 do you know if you were the Secretary of the debtor?

**A.** I don't recall if I was.

**Q.** Do you recall who any of the officers or members or managers of the debtor were in 2007?

**A.** No.

**Q.** If you flip to the next page it states it's a Resignation of Agent Upon Who Process May Be Served. It appears to have been filed with the California Secretary of State on January 28th, 2011. Do you see that?

**A.** Yes.

**Q.** And did you file this Resignation of Agent with the Secretary of State?

**A.** No.

**Q.** Do you know who did?

**A.** No.

**Q.** Do you know if Mr. Kirkland was the agent for service of process for the debtor between 2003 and the date of this resignation of agent?

**A.** Only because this says in 2003 he was.

**Q.** Did you discuss this Resignation of Agent form with Mr. Kirkland?

**A.** No.

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 1 Page 53 of 88

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

CERTIFIED COPY

| | |
|---|---|
| IN RE:<br><br>EPD INVESTMENT COMPANY, LLC,<br><br>EIN NO. XXX-0994 | CASE NO. 2:10-BK-62208-ER<br><br>EXHIBITS BOUND UNDER SEPARATE COVER |

RULE 2004 EXAMINATION OF KEITH PRESSMAN

JUNE 24, 2011

REPORTED BY LORI M. BARKLEY, C.S.R. NO. 6426

WATSON
COURT REPORTERS
1545 Sawtelle Blvd. Suite 26 Los Angeles CA 90025
phone 310.231.4333 or 800.373.0888 fax 310.231.4332
www.watsoncsr.com

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 54 of 88

**Q.** Mr. Pressman, you testified that you were a, or are currently a member and manager of the Debtor; is that correct?
**A.** I believe so.
FN 81
**Q.** What type of business is the Debtor?
**A.** I know the Debtor does various businesses, lends money, does consulting. I don't know the full extent of it.
**Q.** Other than lending money and doing consulting, does it have any other functions as a business?
**A.** Yeah, I don't know exactly what the extent of it is.
**Q.** Who did or does the Debtor lend money to?
**A.** Various entities, various creditors, but I wasn't involved in that end of it.
**Q.** Do you know the names of any entities or creditors that it loaned money to?
**A.** I'm sure I do, just not offhand. If you showed me some names, I'm sure I'd recognize them.
**Q.** Can you name any?
**A.** I'm sure I can. I'm kind of drawing a blank but I know I've heard the names. I know of them. Wait, as far as -- well, I know the company lends money to Jerrold Pressman, and he makes investments, but again, I'm not -- I don't really get involved in the day-to-day

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 55 of 88

FN 81

and how it's structured and how he does it.
**Q.** Who determines or determined how much money the Debtor loaned to Jerrold Pressman?
**A.** That's something only he would know. I wasn't involved in that part of it.
**Q.** Can you name any other people or entities that the Debtor loaned money to?
**A.** You know what? I couldn't really answer that, because I don't know if he structured it where they lent it to him or he lent it or they did it straight, so I probably wouldn't be the best person to talk to regarding that.
**Q.** And what type of consulting did the Debtor do?
**A.** I probably wouldn't be the best one to ask on that. I mean, I'm not sure exactly.
**Q.** Do you have any knowledge regarding what type of consulting?
**A.** Not that specific company. I mean, I know -- I don't know what was allocated, what he was doing under the umbrella of that company. I probably -- probably wouldn't be the best person to ask on that one.
**Q.** You said that you're a member and manager of the Debtor; what were your functions as a manager of the Debtor?
**A.** I don't think I was a manager, actually. I

think I might have been getting it mixed up with EPD Leasing. I might have got confused there. When you asked me, were you asking as the Debtor? I don't remember. I'm not sure exactly. I think I might be a member. I don't think I'm a manager of the Debtor. Maybe I thought you were referring to my company, which was the leasing company.

FN 80

**Q.** Did you have any involvement in the management of the Debtor?

**A.** No.

**Q.** At any point?

**A.** No.

MR. WEBER: I'd like to introduce previously marked exhibit 116, which is a compilation of Secretary of State records regarding the Debtor.

**Q.** Take a moment to review those.

**A.** Okay.

**Q.** Mr. Pressman, have you seen these documents before?

**A.** I may have.

**Q.** You don't recall offhand?

**A.** I don't recall offhand.

**Q.** If you turn to the second page it's a Limited Liability Company Statement of Information dated May 24th, 2004. Do you see that?

**A.** Yes.
**Q.** Now, in item number 9 A, it states that you're the president of the Debtor. Do you see that?
**A.** Right, yes, yes.
FN 79
**Q.** Were you the president of the Debtor in 2004?
**A.** I should -- yes, I'm sure I was.
**Q.** What functions did you perform as president of the Debtor?
**A.** I was basically put in for estate planning purposes, so I didn't have an active role.
**Q.** Did you have any role in managing the Debtor in 2004?
**A.** Not that I remember.
**Q.** Did you discuss with anyone as to whether you were going to become president of the Debtor?
**A.** I don't remember.
**Q.** Did you discuss any duties that the president of the Debtor would have?
**A.** I don't recall offhand.
**Q.** Do you serve as outside counsel for any companies?
**A.** Any companies at all?
**Q.** At all.
**A.** I do, yes, I do.
**Q.** So you're aware that officers of a company have

STATE OF CALIFORNIA. )
) SS.
COUNTY OF LOS ANGELES )

I, Lori M. Barkley, Certified Shorthand Reporter No. 6426, for the State of California, hereby certify:

That prior to being examined, the witness named in the foregoing rule 2004 examination was duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said rule 2004 examination was taken down by me in shorthand at the time and place therein named and thereafter reduced by me to typewritten form and that the same is a true, correct, and complete transcript of said proceedings.

I further certify that I am not interested in the outcome of the action.

Witness my hand this 28th day of June, 2011.

LORI M. BARKLEY, CSR NO. 6426

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

CERTIFIED COPY

| | |
|---|---|
| IN RE: | |
| EPD INVESTMENT COMPANY, LLC, | CASE NO. 2:10-BK-62208-ER |
| EIN NO. XXX-0994 | |

RULE 2004 EXAMINATION OF THOMAS FERRO

JUNE 30, 2011

REPORTED BY LORI M. BARKLEY, C.S.R. NO. 6426

WATSON
COURT REPORTERS
1545 Sawtelle Blvd. Suite 26 Los Angeles CA 90025
phone 310.231.4333 or 800.373.0888 fax 310.231.4332
www.watsoncsr.com



EXHIBIT "F"

about EPD?

**A.** Well, in my mind, it was the same people behind it, so I might have been talking about EPD or Key Club, whatever their relationship was. If you run one business honestly you're probably going to run the other one honestly. If you're dishonest in one, you're probably dishonest in the other one.

**Q.** Who were the people behind EPD and Key Club?

**A.** You mean the employees at the time?

**Q.** You said that, you just made a statement that the people behind both businesses were the same?

**A.** Oh, Jerry Pressman and Keith Pressman.

**Q.** Anyone else?

**A.** I don't know if Chris Kamps who ran the club, had a role in EPD or not, but I definitely spoke with her.

**Q.** Did you do any actual due diligence on EPD itself as far as its track record on investing?

**A.** No.

FN 67

**Q.** Were you provided any written materials on EPD?

**A.** You mean as far as marketing materials or?

**Q.** Marketing, an offering circular, anything.

**A.** No. I was probably told information about what the investments were and where they were and I was shown -- I know I was shown North Hills at the time, the

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 61 of 88

FN 67

property.

**Q.** Did you have any understanding as to what EPD would do with that money once you deposited it into EPD?

**A.** Invest it in real estate.

**Q.** Anything else?

**A.** I know that they owned -- or I don't know how it was owned, I shouldn't say that, but the club, the Key Club and the ice rinks.

**Q.** Your understanding was EPD owned the Key Club and the ice rings?

**A.** I didn't know if they owned them or not. I just knew they were operated by the principal people from EPD.

**Q.** So your only understanding is that money you deposited into EPD would be invested by EPD into some type of real estate?

**A.** As opposed to, what do you mean by "only understanding"?

**Q.** What was your understanding as to what EPD would do with the money? Was it only that it would be invested in real estate or would it be invested in other things or put to other uses?

**A.** Well, I don't know exactly what they did with every single penny of my money. I knew that I was going to be paid interest on it, and I was aware other people

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 62 of 88

had been very successful with it for a long period of time.

**Q.** How much interest were you to be paid?

**A.** Twelve percent.

**Q.** Per annum?

**A.** Yes.

**Q.** Is that a guaranteed amount of interest?

**A.** Yes. I shouldn't state that. Various interest for various projects, but if it was a straight EPD Investment, it was a twelve percent investment. If I bought into one of the projects or something, it might have been a various interest rate.

FN 68

**Q.** But you had no specific understanding in terms of what EPD would do it terms of investing your money?

**A.** You mean exactly how they did it? I knew, like, if I made a deal, some of the money, I knew, went into property in Tennessee; I knew that some of my money went into property in North Hills in the San Fernando valley.

**Q.** Anything else?

**A.** Mississippi.

**Q.** Anything else?

**A.** Maybe, but I don't recall.

**Q.** So theoretically, you would invest money in or loan money to EPD, you'd get a twelve percent return on it, so EPD would have to earn something in excess of

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 53 of 88

twelve percent in order to guarantee that return; is that correct?

**A.** I would imagine. I don't know how they do their business, but that would only make sense, as a business person.

**Q.** And did Mr. Pressman have any discussions with you as to what sort of rate of return EPD was getting on its investments?

**A.** No.

FN 57

**Q.** At any point while you were an investor in or lender to EPD, did you ever receive materials from EPD that discussed that EPD was investing in?

**A.** No.

**Q.** Did you ever receive any written materials as to any entity that EPD was loaning money to?

**A.** No.

**Q.** Did you receive any written materials other than account statements from EPD?

**A.** No.

**Q.** Was --

**A.** Well, I note for, when I invested, I would get a note -- sorry for interrupting, a note from them when I invested my money, promissory notes.

**Q.** Anything else?

**A.** That's it.

FN 57

**Q.** Did you have any sort of online access to your accounts at EPD?

**A.** No.

**Q.** Could you request the return of your money at any time?

**A.** Yes.

**Q.** Is there any sort of period where, if you gave a request today, was there, like, a thirty-day delay or was it immediate that you would get a return of money?

**A.** It was pretty immediate; it was within a few days.

**Q.** Was it your understanding from Mr. Pressman that you could simply demand the return for funds and EPD would return those funds to you?

**A.** Yes.

**Q.** And that was your understanding the whole time that you were an investor in or lender to EPD?

**A.** Yes.

**Q.** Did any of your family members or relatives invest money in or lend money to EPD as well?

**A.** Yes.

**Q.** Who is that?

**A.** My mother and father.

**Q.** Anyone else?

**A.** Which would appear as the Ferro Family Trust,

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 65 of 88

supplied to me by one of the girls in the EPD office who researched it for me, it's possible.

**Q.** If you look at page 2 of the Operating Agreement, at the bottom of the page it says: Operating Agreement/2, there is a section 2.1 that says: Initial contributions. Do you see that?

**A.** Yes.

**Q.** It says that: Members initially shall contribute to the company capital as described in Exhibit 3 attached to this agreement. The agreed total value of such property and cash is equal to the value of the members' investment with EPD. Do you see that?

**A.** Yes, I see it.

FN 109

**Q.** Did you actually contribute any money to HMB?

**A.** You mean after it was formed?

**Q.** Correct.

**A.** No.

**Q.** Did any of the other members contribute money to HMB?

**A.** No.

**Q.** Does HMB have any cash?

**A.** No.

**Q.** Does HMB have any assets?

**A.** No.

**Q.** Does HMB have any liabilities?

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 68 of 88

FN 109

**A.** No.

**Q.** Does HMB conduct any business whatsoever?

**A.** No.

**Q.** Has HMB ever conducted any business?

**A.** No.

**Q.** The sole purpose for HMB was to be an entity that would have collateral against the Debtor's assets?

**A.** Correct.

**Q.** Has HMB ever had a bank account?

**A.** No.

**Q.** Has HMB ever had a securities account, stocks, bonds, anything else?

**A.** No.

**Q.** Has it ever had any assets whatsoever?

**A.** No.

**Q.** Are you the only manager of HMB?

**A.** Yes.

**Q.** Do you receive a management fee?

**A.** No.

**Q.** Have you ever received any money from HMB?

**A.** No.

**Q.** Has anyone ever received money from HMB?

**A.** No.

**Q.** If you look on the page that says, at the bottom, Operating Agreement/5, at the bottom there's a

Debtor put in there.

**A.** Okay. I'm looking at the bottom number and as I look back, I look at numbers and I don't see any -- not very many big numbers outside of the HMB number, and there's a couple of, whatever that first one you mentioned, Bright Conscience, and there's a couple of other ones that are large, but most of them are not that large, so I'm not sure whether that totaled out to $57 million. Just a question.

**Q.** After the examination you're welcome to ask Mr. Pressman or Mr. Moe, but it's not something that was filed by the Trustee.

**A.** Thank you, okay.

**Q.** Looking to exhibit 234, have you seen this document before?

**A.** No, I've never seen this document.

FN 56

**Q.** What was the year you stated you first invested or loaned monies to the Debtor?

**A.** I believe it was 2002.

**Q.** Did you have any understanding in 2002 as to whether what has been known as EPD Investment Company was a sole proprietorship or a limited liability company or something else?

**A.** I did not know.

**Q.** Did you ever have an understanding that, at some

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 68 of 88

FN 56

point in 2003, there was a limited liability company formed called EPD Investment Company, LLC?

**A.** No.

**Q.** Did Mr. Pressman ever discuss with you that he formed a limited liability company called EPD Investment Company LLC?

**A.** No.

**Q.** Did he ever send you any documents or materials stating that he was forming a limited liability company?

**A.** No.

**Q.** So from your understanding from 2002 onward, what you thought of EPD was the same company?

**A.** Um-hmm.

**Q.** You thought it was a formal company rather than something that was a dba of an individual?

**A.** Right.

**Q.** Is that understanding based on your conversations with Jerrold Pressman?

**A.** I don't know what it was based on. Just my understanding. I don't know whether it was based on my conversations or just my thought.

**Q.** Did Mr. Pressman or anyone else ever mention setting up a mechanism where he would pledge his assets to the Debtor?

**A.** Yes.

going under. I never saw the government bailing out a company over the weekend, you know, like they did AIG. I'd never seen that kind of stuff. I never saw when America was teetering on the brink. I'd never seen that before, so I had some understanding from my mother and father growing up, that they grew up during the depression era, so I had some understanding, so my thing would be to give someone the benefit of the doubt, so I still have faith that I will see my money some day, and I hope that you're going to help me do that. That's why I'm here.

**Q.** Looking to exhibit 233, the bankruptcy statements and schedules we had just looked at, looking at schedule A, it lists that there is no real property; do you see that?

**A.** Are you on page 1?

**Q.** It lists it on page 1 in summary fashion, but the third page of the document says: Schedule A, real property.

**A.** I see that.

**Q.** You see it says "none"?

**A.** Yes.

FN 69

**Q.** If you had known when you invested funds or loaned funds to the Debtor that the Debtor didn't own any real property, would you still have invested the

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits Part 1 Page 70 of 88

FN 69

funds or loaned the funds?

**A.** Probably not.

**Q.** And it was your understanding, during the entire time that you were an investor in or lender to the Debtor, that the Debtor did own real property?

**A.** Yes.

MR. WEBER: Off the record for a second.

(Whereupon a discussion was held off the record.)

MR. WEBER: Back on the record.

When we were off the record, we discussed the stipulation as follows:

The court reporter will be relieved of her duties; she'll prepare a transcript of the proceedings today, attaching any exhibits that were in use today; that after preparing the transcript, she'll prepare the transcript and send it to Mr. Ferro at an address of his choosing.

Mr. Ferro, what's the address you'd like it sent to?

THE WITNESS: 23448 Moon Shadows, two words, Drive, Malibu, California 90265.

MR. WEBER: Once you've received the transcript

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 1 Page 71 of 88

STATE OF CALIFORNIA. )
) SS.
COUNTY OF LOS ANGELES )

I, Lori M. Barkley, Certified Shorthand Reporter No. 6426, for the State of California, hereby certify:

That prior to being examined, the witness named in the foregoing examination was duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said examination was taken down by me in shorthand at the time and place therein named and thereafter reduced by me to typewritten form and that the same is a true, correct, and complete transcript of said proceedings.

I further certify that I am not interested in the outcome of the action.

Witness my hand this 6th day of July, 2011.

______________________________
LORI M. BARKLEY, CSR NO. 6426

**CITY NATIONAL BANK**
The way up.®

## *DECLARATION AS TO BUSINESS RECORDS*

*State of California, County of Los Angeles, ss:*

*I, the under signed, hereby declare and state as follows:*

*1. I am employed by **City National Bank**, a national banking association, which is engaged in the general business of banking. My place of employment is at 555 S. Flower St, 21st Floor, Los Angeles, CA 90071.*

*2. I am a duly authorized custodian of the records, or qualified witness, and have authority to certify the records herein described.*

*3. City National Bank responds to the United States Bankruptcy Subpoena in the matter of **EPD Investment** case number **2:10-bk-62208-er** as follows:*

*4. Furnished herewith are true copies of all the records described in the United States Bankruptcy Subpoena, except as hereinafter stated.*

*5. The records consist of the following: **Providing copies of Statements, Checks and Wires from August 2003 when account opened to August 2008 for account number 112122257 pertaining to EPD Investment CO. Providing copies of Statements, Checks, and Wires from October 2007 to date of production for account number 112828184 pertaining to EPD Investment. Please note that account number 112122257 was converted to account number 112828184 in October 2007 before it closed in August 2008. Therefore check numbers may reflect on both account statements for October 2007.***

*6. The bank records, true copies of which are furnished herewith, were prepared by or received by the personnel of **City National Bank** in the ordinary course of business, at or near the time of the applicable act, condition or event.*

*7. The records produced were copied from the original or copies maintained by City National Bank as a business record.*

*8. Following is a list of records described in the United States Bankruptcy Subpoena but copies of which cannot be furnished, because the bank does not have the records so describe: **NONE.***

***TO: Ezra Brutzkus Gubner LLP***
***Attn: Corey Weber***
***ADDRESS: 21650 Oxnard Street***
***Suite 500***
***Woodland Hills, CA 91367***

*Executed at Los Angeles, California, this 19th day of April, 2011.*

*I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own personal knowledge and, if called, I would so testify.*

[signature]

***Shirani Kumarasiri***
***Assistant Vice President***

1867

EXHIBIT "G"

**Run Date:** 19-Apr-11
**Run Time:** 8:29 AM

**Transaction Detail Report**

**Page:** 1
**User Name:** ECOTTO

**BNK:** CNB **SND DATE:** 081223 **VAL:** 081223 **TRN:** 081223-00002030
**AMT:** $54,000.00 **CUR:** USD **FOR AMT:** 54,000.00
**SRC:** CMS **ADV:** FED **TYP:** FTR **LOC:** MTRANS **CHECK NUM:**

**DBT:** D/112828184
**ACC:** D/112828184 **ON FILE:** Y
**DEPT:** 001 **CTRY:**
EPD INVESTMENT CO., LLC
520 BROADWAY SUITE 660
SANTA MONICA CA 90401

**SEND:**
**SNDR REF NUM:** 1768461

**CDT:**
**ACC:** **ON FILE:** N
**DEPT:** 057 **CTRY:**
SUNTRUST BANK
ATLANTA, GA

**BNF BNK:** [redacted]
SUN TRUST BANK

**BNF:** /9088000112 **BK:** N
CREEKSIDE DEVELOPEMENT, INC.
[redacted]

**ADVICE INSTRUCTIONS:**
KEVIN C KING (404) 724-3643

**ORIG TO BNF INFO:**
FOR RE-SAD 9202229



*122000166*
12/10/2008
6620995920

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

12/09/2008
00611171146
[redacted]

67541

EPD INVESTMENT CO., LLC

CITY NATIONAL BANK

PAY TO THE ORDER OF SunTrust Bank $ **45,000.00

Forty-Five Thousand and 00/100 DOLLARS

SunTrust Bank
401 Commerce Street
Suite 3100
Nashville, TN 37219
Attn: Brian Jones
Cust # 0010842708

MEMO

[redacted] 112828184 ⑈0004500000⑈

⑈067541⑈ [redacted] 84⑈ ⑈0004500000⑈

112828184 12/10/2008 45,000.00



[redacted]

**Run Date:** 19-Apr-11
**Run Time:** 8:32 AM

**Transaction Detail Report**

**Page:** 1
**User Name:** ECOTTO

**BNK:** CNB **SND DATE:** 091001 **VAL:** 091001 **TRN:** 091001-00004045
**AMT:** $40,000.00 **CUR:** USD **FOR AMT:** 40,000.00
**SRC:** FAX **ADV:** FED **TYP:** FTR **LOC:** MTRANS **CHECK NUM:**

**DBT:** D/112828184
**ACC:** D/112828184 **ON FILE:** Y
**DEPT:** 001 **CTRY:**
EPD INVESTMENT CO., LLC
520 BROADWAY SUITE 660
SANTA MONICA CA 90401

**CDT:** A/053000219
**ACC:** G/09811201000 **ON FILE:** N
**DEPT:** 057 **CTRY:**
WACHOVIA BANK, NA
CHARLOTTE, NC

**BNF:** /[redacted]761 **BK:** N
SUNSET KEY LLC

**ORIG TO BNF INFO:**
KEY CLUB

70111

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 680
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK

16-1606-1220

11/16/2009

PAY TO THE ORDER OF: Alon Abady $ **22,525.00

Twenty-Two Thousand Five Hundred Twenty-Five and 00/100********************************************** DOLLARS

Alon Abady

MEMO

AUTHORIZED SIGNATURE

⑈070111⑈ ⑆122016066⑆ 112⑉828184⑈ ⑇0002252500⑇

112828184 11/17/2009 22,525.00

[redacted]

1871

67747

EPD INVESTMENT CO., LLC
520 BROADWAY, STE. 660
SANTA MONICA, CA 90401
(310) 451-7111

CITY NATIONAL BANK
HEAD OFFICE BANKING
BEVERLY HILLS, CALIFORNIA 90210
16-1606-1220

11/19/2008

PAY TO THE ORDER OF Abady Trust $ **782,000.00

Seven Hundred Eighty-Two Thousand and 00/100********** DOLLARS

Abady Trust
Attn: Alon Abady
9595 Wilshire Blvd.
Ste. 1010
Beverly Hills, CA 90212

MEMO Per JSP

⑈067747⑈ ⑆122016066⑆ 112828184⑈ ⑈0078200000⑈

112828184 11/21/2008 782,000.00

[redacted]

EXHIBIT: 6
DEPONENT: Pressman
DATE: 5-17-11
LORI BARKLEY, CSR #6426

# State of California
## Kevin Shelley
## Secretary of State

File # 200317910131

FILED
in the office of the Secretary of State of the State of California

JUN 27 2003

Kevin Shelley
KEVIN SHELLEY, SECRETARY OF STATE

This Space For Filing Use Only

## LIMITED LIABILITY COMPANY ARTICLES OF ORGANIZATION

**A $70.00 filing fee must accompany this form.**

**IMPORTANT – Read instructions before completing this form.**

1. NAME OF THE LIMITED LIABILITY COMPANY (END THE NAME WITH THE WORDS "LIMITED LIABILITY COMPANY," "LTD. LIABILITY CO.," OR THE ABBREVIATIONS "LLC" OR "L.L.C.")
   EPD INVESTMENT CO., LLC
2. THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE IN ANY LAWFUL ACT OR ACTIVITY FOR WHICH A LIMITED COMPANY MAY BE ORGANIZED UNDER THE BEVERLY-KILLEA LIMITED LIABILITY COMPANY ACT.
3. CHECK THE APPROPRIATE PROVISION BELOW AND NAME THE AGENT FOR SERVICE OF PROCESS.
   [✓] AN INDIVIDUAL RESIDING IN CALIFORNIA. PROCEED TO ITEM 4.
   [ ] A CORPORATION WHICH HAS FILED A CERTIFICATE PURSUANT TO SECTION 1505. PROCEED TO ITEM 5.
   AGENT'S NAME: JOHN C. KIRKLAND
4. ADDRESS OF THE AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL:
   ADDRESS 2450 COLORADO AVENUE, SUITE 400E
   CITY SANTA MONICA STATE CA ZIP CODE 90404
5. THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY: (CHECK ONE)
   [ ] ONE MANAGER
   [ ] MORE THAN ONE MANAGER
   [✓] ALL LIMITED LIABILITY COMPANY MEMBER(S)
6. OTHER MATTERS TO BE INCLUDED IN THIS CERTIFICATE MAY BE SET FORTH ON SEPARATE ATTACHED PAGES AND ARE MADE A PART OF THIS CERTIFICATE. OTHER MATTERS MAY INCLUDE THE LATEST DATE ON WHICH THE LIMITED LIABILITY COMPANY IS TO DISSOLVE.
7. NUMBER OF PAGES ATTACHED, IF ANY:
8. TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY. (FOR INFORMATIONAL PURPOSES ONLY)
9. IT IS HEREBY DECLARED THAT I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.
   Amy Brown
   SIGNATURE OF ORGANIZER
   JUNE 27, 2003
   DATE
   AMY BROWN
   TYPE OR PRINT NAME OF ORGANIZER
10. RETURN TO:
    NAME JOHN C. KIRKLAND
    FIRM GREENBERG TRAURIG, LLP
    ADDRESS 2450 COLORADO AVENUE, SUITE 400E
    CITY/STATE SANTA MONICA, CALIFORNIA
    ZIP CODE 90404

SEC/STATE FORM LLC-1 (Rev. 04/2003) – FILING FEE $70.00 APPROVED BY SECRETARY OF STATE

JERROLD S. PRESSMAN

**Date:** 12/10/04

**To:** Theodore A. Jonavic

**Company:**

**Fax Number:** 909 989 4050

**From:** Jerrold S. Pressman

**Fax Number:** (310) 394-6404 **Phone Number:** (310) 451-7111

**Total Number of Pages Including This Cover Sheet:** 41

**Message:** AS DISCUSSED

JSD - 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

S.P. - 69-?7-6625

520 BROADWAY SUITE 660 • SANTA MONICA, CA • 90401
PHONE: 310-451-7111 • FAX: 310-395-7645

EXHIBIT: 205
DEPONENT: T. Jonavic
DATE: 6/29/11
LORI BARKLEY, CSR #6426

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 1 Page 80 of 88



JERROLD S. PRESSMAN

December 10, 2004

Via Facsimile No. (909) 989-4050

Theodore P. Jonavic
5724 Shire Court
Rancho Cucamonga, CA 91701-1935

Re: Stretto

Dear Ted:

In order to gain some level of legal corporate protection for the on-going business of EPD, I effectively created on July 1, 2003, a new LLC. The Operating Agreement is enclosed.

You will note in Exhibit B, that the company is held by Keith Pressman and Jerrold Pressman in percentage relationship to their capital contributions of $32,000. In order to meet the above needs and satisfy my goals of personal retirement, I transferred all of the assets, debt and goodwill of EPD sole proprietorship to EPD LLC on that date. However, since I had personally guaranteed all of the existing EPD notes, I personally indemnified the LLC against all of the old debt that was transferred. That resulted in any new debt coming in as having no personal guarantee since it becomes the obligation of the new LLC. Keith, who is also an attorney, has taken over the active operation of the LLC.

In that respect, I have enclosed the LLC balance sheet and profit and loss statement with my comments on it. Effectively, they are the numbers that were officially transferred as debt. Bear in mind they also effectively have the notes receivable, many which have to be written off at some point in time.

I have also eliminated the lease expense since these transactions booked the incoming money and never adjusted for the outgoing funds into the lease.

The bottom line is, we need to capitalize the company with the accounts receivable against the accounts payable and the hard assets such as furniture and fixtures and leasehold improvements.

The P&L reflects the payment of obligations and those assumed notes that have come from the goodwill connected to them.

I need my return by Monday, December 13th. An intelligent estimate is fine.

If you have any questions, let me know.

Sincerely yours,

JSP

Jerrold S. Pressman

JSP/cb
Attachments

320 BROADWAY SUITE 660 • SANTA MONICA, CA • 90401
PHONE: 310-451-7111 • FAX: 310-393-7645

**Corey Weber**

EXHIBIT: 2
DEPONENT: Pressman
DATE: 5-17-11
LORI BARKLEY, CSR #6426

**From:** Kirkland, John
**Sent:** Monday, March 21, 2011 3:10 PM
**To:** 'Jerry Pressman'
**Subject:** RE:

office

---

**From:** Jerry Pressman [mailto:Jerry@theepdgroup.com]
**Sent:** Monday, March 21, 2011 3:07 PM
**To:** Kirkland, John
**Subject:**

Will have disc ready later this afternoon. Shall I send it to office or house. I confirmed EPD never had an office (paid rent) or a computer of its own,or even a desk. It was started in the 1970s before it became an LLC in 2003. It was only an accounting entity that acted as a conduit to flow funds to entities held by me. All of those ownership's were pledged back to EPD as collateral to the Promissory note I executed with EPD.EPD LLC gave partners notes to receipt their funds only after June of 2003.

When is our next hearing prior to the March 28th Chapter 11 motion to convert?

EPD Investment Co LLC was formed in July of 2003.It was the successor Company to EPD Investment Co, a Sole Proprietorship with a properly filed DBA for the Sole Proprietor Jerrold Pressman. At the time it became a LLC, JSP as the former sole proprietor pledged through a security agreement and UCC 1 all of his assets and ownership to EPD LLC since as a sole proprietor the ownership in the assets acquired by EPD was held in his name to facilitate bank financing personal guarantees and flexibility. Particularly related to real property and stock or membership ownership in acquired LLCs or Sub s Corporations.

EPD performed several functions over the years but primarily operated as a Venture Capital Company.

EPD has acquired over the past forty years, ownership in more than one hundred and fifty OPERATIONAL companies with multiple employees, locations, product, lines, and services.

The ownership or options to acquire ownership were related to business in their early stages requiring a combination of loans for working capital, management and professional support, and establishment of credit lines, financing, and access to resources to obtain operating equipment through Leasing, or subcontracting arrangements.

In addition EPD provided in some cases on site management, personal hiring, marketing and strategic planning.

EPD as all Venture capital companies, participated in the target company's growth with an eye toward obtaining equity interests in exchange for its contribution, and participate in the future sale or merger of the entity after it completed a projected level through internal growth, and acquisition.

EPD either acquired a small interest through acquisition of ownership, or an option and a participation arrangement related to future earnings or sale proceeds of the target companies.

Part of EPDS commitment was to finance the Targets growth by itself or others, and to arrange to lease operational equipment to the Target companies; by allowing third party lessors to participate directly with the target they received collateral backing up their funds.

Over the years EPD provided loans and leases, and with each segment of capital infusion, increased its percentage of ownership in the Target, or increased its level of income based upon formulas tied to sales or profit, and in some cases for payment of services.

Through the original use of EPD funds at inception contributed by JSP AND KP and several other family members during the early years ,and later from ONLY close friends and their families EPD pooled the funds and continued to pursue the above business formula. From time to time returning invested funds to its partners generated through the sale of equity or from the profit generated through fees or profit distribution.

Some of the partners in the pool directed their funds to be held in various forms including interest-bearing notes. Some took a partnership interest in the asset by sharing a defined economic interest and some elected to enter into an arms length lease with the Target, or to assume an assignment of an existing owned EPD lease providing them ownership in the underlying asset being leased, leveraging the ownership of the Target upward to increase the growth and value of the Target.

During these periods of growth and from time to time, loans and leases were reconciled and converted to equity, and in the event that there were arms length leases that existed upon the termination of ownership in the Target or conversion to equity JSP assumed the obligation to continue to pay the

monthly lease payment. Keeping in mind since most of the investors were family or extended family JSP had already guaranteed the payments set forth in the leases, and therefore continued to make the monthly payments to the lessor (partner), or alternately the lessor also converted their leases into equity at the same time.

One of the steps in the process that lends itself to confusion related to the actual funding of leases is tied to the system of giving the partner a temporary note to record the receipt of their funds, usually along with a letter indicating that the funds were being placed in their account pending the preparations of either paperwork or investment into a specific place. Therefore many partners have dual documents, one representing a note for the receipt of funds, the latter either a lease or understanding of the allocation of those funds obviously canceling out the note obligation.

During the term of the lease it was always understood that the Lessee (Target) during its period of initial growth might not have been able to pay the monthly payment in a timely fashion. It was therefore contemplated EPD who would benefit from the ultimate conversion was willing to make the payment, and set up a liability from the lessee (Target) which in the future would either be paid to EPD with interest or converted for a greater amount of equity in the Target.

To meet the spirit of diversification and the most tax advantages' position most leases were set up as forty two month leases using seven year depreciation equipment, and periodically re -leased to another or same lessor for additional time periods.

In consideration for JSP, personal guarantee at the end of the lease the asset would become the property of JSP or EPD for the benefit of EPD to be either re-leased or disposed of if it had no value.

To recap all of the assets held in the name of Jerrold Pressman over these many years were pledged back to EPD to secure its partners. During his ownership of the Targets, JSP never received a salary from EPD or The Target companies, and any funds conveyed regardless of its form, as repayment of investment, fees for services, profit distribution etc.were ALWAYS paid directly into EPD commensurate with JSP's obligation set forth under the security agreement.

**Corey Weber**

**From:** Kirkland, John
**Sent:** Monday, March 21, 2011 3:10 PM
**To:** 'Jerry Pressman'
**Subject:** RE:

EXHIBIT: 2
DEPONENT: Pressman
DATE: 5-17-11
LORI BARKLEY, CSR #6426

office

---

**From:** Jerry Pressman [mailto:Jerry@theepdgroup.com]
**Sent:** Monday, March 21, 2011 3:07 PM
**To:** Kirkland, John
**Subject:**

Will have disc ready later this afternoon. Shall I send it to office or house. I confirmed EPD never had an office (paid rent) or a computer of its own,or even a desk. It was started in the 1970s before it became an LLC in 2003. It was only an accounting entity that acted as a conduit to flow funds to entities held by me. All of those ownership's were pledged back to EPD as collateral to the Promissory note I executed with EPD.EPD LLC gave partners notes to receipt their funds only after June of 2003.

When is our next hearing prior to the March 28th Chapter 11 motion to convert?

EPD Investment Co LLC was formed in July of 2003.It was the successor Company to EPD Investment Co, a Sole Proprietorship with a properly filed DBA for the Sole Proprietor Jerrold Pressman. At the time it became a LLC, JSP as the former sole proprietor pledged through a security agreement and UCC 1 all of his assets and ownership to EPD LLC since as a sole proprietor the ownership in the assets acquired by EPD was held in his name to facilitate bank financing personal guarantees and flexibility. Particularly related to real property and stock or membership ownership in acquired LLCs or Sub s Corporations.

EPD performed several functions over the years but primarily operated as a Venture Capital Company.

EPD has acquired over the past forty years, ownership in more than one hundred and fifty OPERATIONAL companies with multiple employees, locations, product, lines, and services.

The ownership or options to acquire ownership were related to business in their early stages requiring a combination of loans for working capital, management and professional support, and establishment of credit lines, financing, and access to resources to obtain operating equipment through Leasing, or subcontracting arrangements.

In addition EPD provided in some cases on site management, personal hiring, marketing and strategic planning.

EPD as all Venture capital companies, participated in the target company's growth with an eye toward obtaining equity interests in exchange for its contribution, and participate in the future sale or merger of the entity after it completed a projected level through internal growth, and acquisition.

EPD either acquired a small interest through acquisition of ownership, or an option and a participation arrangement related to future earnings or sale proceeds of the target companies.

Part of EPDS commitment was to finance the Targets growth by itself or others, and to arrange to lease operational equipment to the Target companies; by allowing third party lessors to participate directly with the target they received collateral backing up their funds.

Over the years EPD provided loans and leases, and with each segment of capital infusion, increased its percentage of ownership in the Target, or increased its level of income based upon formulas tied to sales or profit, and in some cases for payment of services.

Through the original use of EPD funds at inception contributed by JSP AND KP and several other family members during the early years ,and later from ONLY close friends and their families EPD pooled the funds and continued to pursue the above business formula. From time to time returning invested funds to its partners generated through the sale of equity or from the profit generated through fees or profit distribution.

Some of the partners in the pool directed their funds to be held in various forms including interest-bearing notes. Some took a partnership interest in the asset by sharing a defined economic interest and some elected to enter into an arms length lease with the Target, or to assume an assignment of an existing owned EPD lease providing them ownership in the underlying asset being leased, leveraging the ownership of the Target upward to increase the growth and value of the Target.

During these periods of growth and from time to time, loans and leases were reconciled and converted to equity, and in the event that there were arms length leases that existed upon the termination of ownership in the Target or conversion to equity JSP assumed the obligation to continue to pay the

monthly lease payment. Keeping in mind since most of the investors were family or extended family JSP had already guaranteed the payments set forth in the leases, and therefore continued to make the monthly payments to the lessor (partner), or alternately the lessor also converted their leases into equity at the same time.

One of the steps in the process that lends itself to confusion related to the actual funding of leases is tied to the system of giving the partner a temporary note to record the receipt of their funds, usually along with a letter indicating that the funds were being placed in their account pending the preparations of either paperwork or investment into a specific place. Therefore many partners have dual documents, one representing a note for the receipt of funds, the latter either a lease or understanding of the allocation of those funds obviously canceling out the note obligation.

During the term of the lease it was always understood that the Lessee (Target) during its period of initial growth might not have been able to pay the monthly payment in a timely fashion. It was therefore contemplated EPD who would benefit from the ultimate conversion was willing to make the payment, and set up a liability from the lessee (Target) which in the future would either be paid to EPD with interest or converted for a greater amount of equity in the Target.

To meet the spirit of diversification and the most tax advantages' position most leases were set up as forty two month leases using seven year depreciation equipment, and periodically re -leased to another or same lessor for additional time periods.

In consideration for JSP, personal guarantee at the end of the lease the asset would become the property of JSP or EPD for the benefit of EPD to be either re-leased or disposed of if it had no value.

To recap all of the assets held in the name of Jerrold Pressman over these many years were pledged back to EPD to secure its partners. During his ownership of the Targets, JSP never received a salary from EPD or The Target companies, and any funds conveyed regardless of its form, as repayment of investment, fees for services, profit distribution etc.were ALWAYS paid directly into EPD commensurate with JSP's obligation set forth under the security agreement.

# MULTIPLE ADVANCE PROMISSORY NOTE

$25,000,000.00

Santa Monica, California
July 3, 2003

**FOR VALUE RECEIVED, JERROLD S. PRESSMAN ("Maker")** promises to pay to **EPD INVESTMENT COMPANY, LLC ("Holder")** at 520 Broadway, Suite 660, Santa Monica, California 90401, or such place as may be designated by Holder in writing, the principal amount of Twenty-Five Million and No/100 Dollars ($25,000,000.00) plus interest and fees that have been advanced or which are hereafter advanced, from time to time, by Holder to or for the benefit of Maker, as reflected on the records of Maker. Interest on such amounts will be charged at the rate of twelve percent (12%) per annum.

In consideration of Holder's entering into this Multiple Advance Promissory Note, Maker agrees to pledge all of his assets as they appear on the U.C.C. 1 and Security Agreement attached hereto and made a part of this agreement.

It is anticipated that sums may continue to be advanced to Maker by Holder. Interest will run on any sum advanced hereunder from the date of such advance and Maker may pay interest or reduce principal from time to time as they desire, provided that all remaining principal and unpaid interest shall become due and payable no later than July 3, 2013.

If any amounts due hereunder, including both principal and interest then accrued and unpaid, are not paid when due, thereafter the unpaid portion of such entire amount shall bear simple interest at the maximum rate permitted by law until such unpaid portion of such entire amount is fully paid.

If this Note or any portion thereof is not paid when due, Maker promises to pay all costs of collection and reasonable attorneys' fees incurred by the Holder hereof on account of such collection, whether or not suit is filed hereon, if the Holder prevails at all in such collection efforts.

This Note is not negotiable.

Upon any default hereunder, the entire principal amount outstanding and all accrued interest thereon shall become due and payable at the option of Holder. Holder may exercise this option to accelerate during any default by Maker regardless of any prior forbearance.

Each payment due under this Note shall be applied first to any penalties, late charges, or additional costs owed by Maker hereunder, then to the payment of accrued interest then due, and thereafter to the reduction of the unpaid principal balance of this Note.

This Note may not be modified or amended orally, but only by a modification or amendment in writing signed by Holder and Maker. This Note shall be governed by and construed in accordance with the laws of the State of California.





EXHIBIT "L"

Case 2:10-bk-62208-ER Doc 200-1 Filed 04/27/12 Entered 04/27/12 19:33:49 Desc Exhibit Exhibits - Part 1 Page 88 of 88

This Note shall be binding upon and shall inure to the benefit of Maker and Holder, and their successors and assigns. Every provision of this Note is intended to be severable. If any term or provision hereof is declared by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable. Time is of the essence of this Note and the performance of each of the covenants and agreements contained herein.

This notice replaces all previous notes that may have been issued between Holder and Maker.

All agreements in this Note are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of advancement or acceleration of the maturity of the indebtedness, evidenced hereby, or otherwise, shall the amount paid or agreed to be paid hereunder for the use, forbearance or detention of money, exceed the highest lawful rate permitted under applicable usury laws. If, from any circumstance whatsoever, fulfillment of any provisions of this Note, at any time performance of such provisions shall be due, shall involve exceeding the legal interest rate, then the obligation to be fulfilled shall be reduced to the limit of legal validity, and if, from any circumstance whatsoever, Holder or any holder of this Note shall ever receive as interest an amount which would exceed the highest lawful rate, the receipt of such excess shall be credited against the principal amount of the indebtedness evidenced hereby to which the same may be lawfully credited, and any portion of such excess not capable of being so credited shall be rebated to Maker.

Notices shall be given under this Note in writing and shall be given at the address set forth herein for Holder and Maker. Notice shall be sent by hand delivery, by overnight delivery service or by U.S. Mail, registered or certified mail.

**IN WITNESS WHEREOF,** Maker has executed this Note as of the date first written above.

**MAKER:**

**By:** ______________________
**Jerrold S. Pressman**

**HOLDER:**
**EPD INVESTMENT COMPANY, LLC**

**By:** ______________________

**Its:** Managing Member

## SECURITY AGREEMENT

This Security Agreement executed at Santa Monica, California, by JERROLD S. PRESSMAN ("Pledgor" herein), in favor of EPD INVESTMENT COMPANY, LLC ("Secured Party" herein), is made with reference to the following facts:

Grant of Security Interest. As security for payment under the Multiple Advance Promissory Note in the amount of Twenty-Five Million Dollars and No/100 ($25,000,000.00) executed on July 3, 2003, Pledgor hereby grants and assigns to Secured Party a Lien on all of its respective right, title, and interest in, to, and under the "Collateral" represented by the U.C.C. 1 Financing Statement attached as Exhibit "A" hereto, whether now owned or owing to, or hereafter acquired by or arising in favor of, Pledgor, and any and all proceeds and products of the foregoing and all accessions to, substitutions and replacements for, and profits of any and all of the Collateral.

Pledgor's Covenants and Representations. Pledgor hereby covenants and agrees as follows:

(a) To perform and pay the Obligations to Secured Party when they are due;

(b) To pay all expenses, including attorney fees, incurred by Secured Party in the perfection, preservation, realization, enforcement, and exercise of Secured Party's rights under this Agreement upon an Event of Default;

(c) To give Secured Party notice of any litigation, proceeding or claim that may have a material adverse effect on the Collateral;

(d) Not to sell, assign, lease, transfer, or otherwise dispose of the Collateral, unless the items are sold or pledged in the ordinary course of business or replaced with comparable items of equal or greater value and Pledgor's equity in the replacement items is no less than the value of Pledgor's equity in the items that were replaced;

(e) Not to permit any new Lien to be placed on the Collateral, except in favor of Secured Party or a purchase money lender or equipment lessor (subject to the other terms of this Agreement), except in the ordinary course of business;

(f) To execute and deliver to Secured Party all financing statements and other documents that Secured Party reasonably requests, in order to carry into effect the provisions of this Agreement and to perfect and maintain a perfected first-priority security interest in the Collateral; and

(g) To perform any and all acts reasonably requested by Secured Party necessary to maintain, preserve, and protect the Collateral.

Upon default in the performance or payment of any obligation secured hereby, as adjudicated by a court of competent jurisdiction, Secured Party shall have the rights and remedies of a secured party under the Uniform Commercial Code of California. Pledgor shall pay promptly to Secured Party, upon demand, reasonable attorney's fees and all costs and other expenses paid or incurred by Secured Party in collecting or compromising any obligation secured hereby, or in enforcing or exercising its rights or remedies created by, connected with or provided in this agreement, whether or not suit is filed, and the proceeds of disposition of any or all of the Collateral pursuant to the Uniform Commercial Code of California shall be applied to the payment of such attorney's fees, costs and other expenses which shall become a part of the obligations secured hereby.

Pledgor warrants that Pledgor is the owner of the Collateral, free and clear of all liens, encumbrances, security interests and adverse claims except those incurred in the ordinary course of business.

Secured Party may exercise its rights with respect to the Collateral without any necessity on its part or on the part of the holder of any obligation secured hereby to realize upon or enforce any other security now or hereafter held for any such obligation.

Secured Party shall have the right at any time (but shall have no obligation) with or without notice and either in its name or in the name of its nominee or in the name of Pledgor, at the expense of Pledgor, to:

A. Collect by legal proceedings or otherwise all interest, dividends, principal payments and other sums now or hereafter payable upon or on account of the Collateral.

B. Enter into any extension or other agreement in any way relating to or affecting the Collateral and, in connection therewith, dispose or surrender control of the Collateral, or any part thereof, accept other property in addition to or in exchange or substitution therefore, or any part thereof, and perform such other acts as it deems proper.

C. Make any compromise or settlement on terms advisable or proper with reference to the Collateral.

D. Insure, process and preserve the Collateral.

E. Without limiting the generality of the foregoing, exercise all of the rights, powers and remedies of an owner of the Collateral except that there shall be no sale of all or any portion of the Collateral unless there is a default in the performance or payment of any obligation secured hereby, which has been adjudicated by a court of competent jurisdiction.

Secured Party shall incur no liability if any action taken by it or in its behalf in good faith, pursuant to the foregoing paragraph, shall prove to be in whole or in part inadequate or invalid, and Pledgor agrees to hold Secured Party free and harmless from and

against any and all loss, damage, liability and expense, including costs and reasonable attorneys' fees, to which Secured Party may be put or which it may incur by reason of or in connection with any such action or actions.

Upon a default hereunder, as adjudicated by a court of competent jurisdiction, Pledgor hereby irrevocably constitutes and appoints Secured Party its true and lawful attorney in Pledgor's name or in Secured Party's name or otherwise to enforce all rights of Pledgor in and to the Collateral.

Pledgor hereby agrees to take the necessary steps to preserve rights against prior parties to the Collateral and hereby waives any obligation of Secured Party to do so.

All notices and other communications hereunder shall be in writing and shall be delivered personally or be deposited in the United States mail, postage prepaid, addressed as follows: if to Secured Party, 520 Broadway Suite 660, Santa Monica, CA 90401; or if to Pledgor, 705 Palisades Beach Road, Santa Monica, 90404; or if to any successor or assign, at such address as such successor or assign from time to time may have designated by notice to Pledgor. Any notice so addressed and sent by mail shall be deemed to have been given when mailed.

This agreement shall be binding upon and shall inure to the benefit of the successors and assigns of Pledgor and Secured Party.

Executed this 3 day of July 2003.

JSPress

JERROLD S. PRESSMAN

Case 2:10-bk-62208-ER Doc 200-2 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 2 Page 1 of 17

PONENT: Pressman
ATE: 5-17-11
RI BARKLEY, CSR #6426

0318960973

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

National Corporate Research, Ltd.
1107 9th Street, Suite 1010
Sacramento, CA 95814

P[redacted]

FILED
SACRAMENTO, CA
JUL 03, 2003 AT 1505
KEVIN SHELLEY
SECRETARY OF STATE

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| 1b. INDIVIDUAL'S LAST NAME: Pressman | FIRST NAME: Jerrold | MIDDLE NAME: S | | SUFFIX |
| 1c. MAILING ADDRESS: 705 Pacific Coast Highway | CITY: Santa Monica | STATE: CA | POSTAL CODE: 90402 | COUNTRY: USA |
| 1d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR / 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR / 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: EPD Investment Co., LLC | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS: 520 Broadway, Suite 660 | CITY: Santa Monica | STATE: CA | POSTAL CODE: 90401 | COUNTRY: USA |

4. This FINANCING STATEMENT covers the following collateral:

**All present and after-acquired fixtures, accessions and personal property, including without limitation all goods, consumer goods, inventory, equipment, furniture, money, documents, instruments, notes, promissory notes, drafts, checks, certificates of deposit, investment property, accounts, accounts receivable, chattel paper, general intangibles, leases, contracts, contract rights, goodwill, copyrights, trademarks, patents, rights to proceeds of letters of credit, and rights to payment of money, and all future advances and proceeds of any of the foregoing.**

5. ALTERNATIVE DESIGNATION [if applicable]: LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING

6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## MULTIPLE ADVANCE PROMISSORY NOTE

$25,000,000.00

Santa Monica, California
July 31, 2009

**FOR VALUE RECEIVED, JERROLD S. PRESSMAN** ("Maker") promises to pay to **EPD INVESTMENT COMPANY, LLC ("Holder")** at 520 Broadway, Suite 660, Santa Monica, California 90401, or such place as may be designated by Holder in writing, the principal amount of Twenty-Five Million and No/100 Dollars ($25,000,000.00) plus interest and fees that have been advanced or which are hereafter advanced, from time to time, by Holder to or for the benefit of Maker, as reflected on the records of Maker. Interest on such amounts will be charged at the rate of twelve percent (12%) per annum.

In consideration of Holder's entering into this Multiple Advance Promissory Note, Maker agrees to pledge all of his assets as they appear on the U.C.C. 1 and Security Agreement attached hereto and made a part of this agreement.

It is anticipated that sums may continue to be advanced to Maker by Holder. Interest will run on any sum advanced hereunder from the date of such advance and Maker may pay interest or reduce principal from time to time as they desire, provided that all remaining principal and unpaid interest shall become due and payable no later than July 31, 2019.

If any amounts due hereunder, including both principal and interest then accrued and unpaid, are not paid when due, thereafter the unpaid portion of such entire amount shall bear simple interest at the maximum rate permitted by law until such unpaid portion of such entire amount is fully paid.

If this Note or any portion thereof is not paid when due, Maker promises to pay all costs of collection and reasonable attorneys' fees incurred by the Holder hereof on account of such collection, whether or not suit is filed hereon, if the Holder prevails at all in such collection efforts.

This Note is not negotiable.

Upon any default hereunder, the entire principal amount outstanding and all accrued interest thereon shall become due and payable at the option of Holder. Holder may exercise this option to accelerate during any default by Maker regardless of any prior forbearance.

Each payment due under this Note shall be applied first to any penalties, late charges, or additional costs owed by Maker hereunder, then to the payment of accrued interest then due, and thereafter to the reduction of the unpaid principal balance of this Note.

This Note may not be modified or amended orally, but only by a modification or amendment in writing signed by Holder and Maker. This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be binding upon and shall inure to the benefit of Maker and Holder, and their successors and assigns. Every provision of this Note is intended to be severable. If any term or provision hereof is declared by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable. Time is of the essence of this Note and the performance of each of the covenants and agreements contained herein.

This notice replaces all previous notes that may have been issued between Holder and Maker.

All agreements in this Note are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of advancement or acceleration of the maturity of the indebtedness, evidenced hereby, or otherwise, shall the amount paid or agreed to be paid hereunder for the use, forbearance or detention of money, exceed the highest lawful rate permitted under applicable usury laws. If, from any circumstance whatsoever, fulfillment of any provisions of this Note, at any time performance of such provisions shall be due, shall involve exceeding the legal interest rate, then the obligation to be fulfilled shall be reduced to the limit of legal validity, and if, from any circumstance whatsoever, Holder or any holder of this Note shall ever receive as interest an amount which would exceed the highest lawful rate, the receipt of such excess shall be credited against the principal amount of the indebtedness evidenced hereby to which the same may be lawfully credited, and any portion of such excess not capable of being so credited shall be rebated to Maker.

Notices shall be given under this Note in writing and shall be given at the address set forth herein for Holder and Maker. Notice shall be sent by hand delivery, by overnight delivery service or by U.S. Mail, registered or certified mail.

**IN WITNESS WHEREOF,** Maker has executed this Note as of the date first written above.

**MAKER:**

**By:** ______________________

**Jerrold S. Pressman**

**HOLDER:**
**EPD INVESTMENT COMPANY, LLC**

**By:** ______________________

**Its:** Managing Member

This Note shall be binding upon and shall inure to the benefit of Maker and Holder, and their successors and assigns. Every provision of this Note is intended to be severable. If any term or provision hereof is declared by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable. Time is of the essence of this Note and the performance of each of the covenants and agreements contained herein.

This notice replaces all previous notes that may have been issued between Holder and Maker.

All agreements in this Note are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of advancement or acceleration of the maturity of the indebtedness, evidenced hereby, or otherwise, shall the amount paid or agreed to be paid hereunder for the use, forbearance or detention of money, exceed the highest lawful rate permitted under applicable usury laws. If, from any circumstance whatsoever, fulfillment of any provisions of this Note, at any time performance of such provisions shall be due, shall involve exceeding the legal interest rate, then the obligation to be fulfilled shall be reduced to the limit of legal validity, and if, from any circumstance whatsoever, Holder or any holder of this Note shall ever receive as interest an amount which would exceed the highest lawful rate, the receipt of such excess shall be credited against the principal amount of the indebtedness evidenced hereby to which the same may be lawfully credited, and any portion of such excess not capable of being so credited shall be rebated to Maker.

Notices shall be given under this Note in writing and shall be given at the address set forth herein for Holder and Maker. Notice shall be sent by hand delivery, by overnight delivery service or by U.S. Mail, registered or certified mail.

**IN WITNESS WHEREOF,** Maker has executed this Note as of the date first written above.

**MAKER:**

**By:** ________________________
**Jerrold S. Pressman**

**HOLDER:**
**EPD INVESTMENT COMPANY, LLC**

**By:** ________________________

**Its:** Managing Member

# SECURITY AGREEMENT

This Security Agreement executed at Santa Monica, California, by JERROLD S. PRESSMAN ("Pledgor" herein), in favor of EPD INVESTMENT COMPANY, LLC ("Secured Party" herein), is made with reference to the following facts:

Grant of Security Interest. As security for payment under the Multiple Advance Promissory Note in the amount of Twenty-Five Million Dollars and No/100 ($25,000,000.00) executed on July 31, 2009, Pledgor hereby grants and assigns to Secured Party a Lien on all of its respective right, title, and interest in, to, and under the "Collateral" represented by the U.C.C. 1 Financing Statement attached as Exhibit "A" hereto, whether now owned or owing to, or hereafter acquired by or arising in favor of, Pledgor, and any and all proceeds and products of the foregoing and all accessions to, substitutions and replacements for, and profits of any and all of the Collateral.

Pledgor's Covenants and Representations. Pledgor hereby covenants and agrees as follows:

(a) To perform and pay the Obligations to Secured Party when they are due;

(b) To pay all expenses, including attorney fees, incurred by Secured Party in the perfection, preservation, realization, enforcement, and exercise of Secured Party's rights under this Agreement upon an Event of Default;

(c) To give Secured Party notice of any litigation, proceeding or claim that may have a material adverse effect on the Collateral;

(d) Not to sell, assign, lease, transfer, or otherwise dispose of the Collateral, unless the items are sold or pledged in the ordinary course of business or replaced with comparable items of equal or greater value and Pledgor's equity in the replacement items is no less than the value of Pledgor's equity in the items that were replaced;

(e) Not to permit any new Lien to be placed on the Collateral, except in favor of Secured Party or a purchase money lender or equipment lessor (subject to the other terms of this Agreement), except in the ordinary course of business;

(f) To execute and deliver to Secured Party all financing statements and other documents that Secured Party reasonably requests, in order to carry into effect the provisions of this Agreement and to perfect and maintain a perfected first-priority security interest in the Collateral; and

(g) To perform any and all acts reasonably requested by Secured Party necessary to maintain, preserve, and protect the Collateral.

Upon default in the performance or payment of any obligation secured hereby, as adjudicated by a court of competent jurisdiction, Secured Party shall have the rights and remedies of a secured party under the Uniform Commercial Code of California. Pledgor shall pay promptly to Secured Party, upon demand, reasonable attorney's fees and all costs and other expenses paid or incurred by Secured Party in collecting or compromising any obligation secured hereby, or in enforcing or exercising its rights or remedies created by, connected with or provided in this agreement, whether or not suit is filed, and the proceeds of disposition of any or all of the Collateral pursuant to the Uniform Commercial Code of California shall be applied to the payment of such attorney's fees, costs and other expenses which shall become a part of the obligations secured hereby.

Pledgor warrants that Pledgor is the owner of the Collateral, free and clear of all liens, encumbrances, security interests and adverse claims except those incurred in the ordinary course of business.

Secured Party may exercise its rights with respect to the Collateral without any necessity on its part or on the part of the holder of any obligation secured hereby to realize upon or enforce any other security now or hereafter held for any such obligation.

Secured Party shall have the right at any time (but shall have no obligation) with or without notice and either in its name or in the name of its nominee or in the name of Pledgor, at the expense of Pledgor, to:

A. Collect by legal proceedings or otherwise all interest, dividends, principal payments and other sums now or hereafter payable upon or on account of the Collateral.

B. Enter into any extension or other agreement in any way relating to or affecting the Collateral and, in connection therewith, dispose or surrender control of the Collateral, or any part thereof, accept other property in addition to or in exchange or substitution therefore, or any part thereof, and perform such other acts as it deems proper.

C. Make any compromise or settlement on terms advisable or proper with reference to the Collateral.

D. Insure, process and preserve the Collateral.

E. Without limiting the generality of the foregoing, exercise all of the rights, powers and remedies of an owner of the Collateral except that there shall be no sale of all or any portion of the Collateral unless there is a default in the performance or payment of any obligation secured hereby, which has been adjudicated by a court of competent jurisdiction.

Secured Party shall incur no liability if any action taken by it or in its behalf in good faith, pursuant to the foregoing paragraph, shall prove to be in whole or in part inadequate or invalid, and Pledgor agrees to hold Secured Party free and harmless from and

Case 2:10-bk-62208-ER Doc 200-2 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 2 Page 10 of 17

against any and all loss, damage, liability and expense, including costs and reasonable attorneys' fees, to which Secured Party may be put or which it may incur by reason of or in connection with any such action or actions.

Upon a default hereunder, as adjudicated by a court of competent jurisdiction, Pledgor hereby irrevocably constitutes and appoints Secured Party its true and lawful attorney in Pledgor's name or in Secured Party's name or otherwise to enforce all rights of Pledgor in and to the Collateral.

Pledgor hereby agrees to take the necessary steps to preserve rights against prior parties to the Collateral and hereby waives any obligation of Secured Party to do so.

All notices and other communications hereunder shall be in writing and shall be delivered personally or be deposited in the United States mail, postage prepaid, addressed as follows: if to Secured Party, 520 Broadway Suite 660, Santa Monica, CA 90401; or if to Pledgor, 705 Palisades Beach Road, Santa Monica, CA 90404; or if to any successor or assign, at such address as such successor or assign from time to time may have designated by notice to Pledgor. Any notice so addressed and sent by mail shall be deemed to have been given when mailed.

This agreement shall be binding upon and shall inure to the benefit of the successors and assigns of Pledgor and Secured Party.

Executed this 31 day of July 2009.

JERROLD S. PRESSMAN

09-7204357956
07/31/2009 16:06
FILED
CALIFORNIA SECRETARY OF STATE
SOS
21883230003 UCC 1 FILING

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Katy Werner

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

National Corporate Research, Ltd.
1107 9th Street, Suite 1025
Sacramento, CA 95814
P6-10034513 L048725

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME: Pressman | FIRST NAME: Jerrold | MIDDLE NAME: S. | SUFFIX |
| 1c. MAILING ADDRESS: 705 Pacific Coast Highway | CITY: Santa Monica | STATE: CA / POSTAL CODE: 90402 | COUNTRY: USA |
| [redacted] ADD'L INFO RE ORGANIZATION DEBTOR / 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| [redacted] ADD'L INFO RE ORGANIZATION DEBTOR / 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME: EPD Investment Co., LLC | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS: 520 Broadway, Suite 660 | CITY: Santa Monica | STATE: CA / POSTAL CODE: 90401 | COUNTRY: USA |

4. This FINANCING STATEMENT covers the following collateral:

All present and after-acquired fixtures, accessions and personal property, including without limitation all goods, consumer goods, inventory, equipment, furniture, money, documents, instruments, ownership held in partnerships, corporations, LLC's or any other ownership of assets, notes, promissory notes, drafts, checks, certificates of deposit, investment property, accounts, accounts receivable, chattel paper, general intangibles, leases, contracts, contract rights, goodwill, copyrights, trademarks, patents, rights to proceeds of letters of credit and rights to payment of money, and all future advances and proceeds of any of the foregoing.

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA
L048725

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) – CALIFORNIA (REV 01/01/08)

1894

EXHIBIT "Q"

# EPD Investment Portfolio

As a follow up to our discussion, I have listed below several of the significant investments held by EPD and its affiliate companies and will attempt to give you a brief description of the companies.

1. North Hills Industrial Park consists of 26 acres of property located at Hayvenhurst and Roscoe in North Hills, California. The property consists of three structures measuring 140,000 sq. ft., 130,000 sq. ft., and 45,000 sq. ft., which are leased to Federal Express, Munchkin, and the *Los Angeles Times*, respectively. All of these buildings were built to suit for each tenant. The current estimated value of the property is approximately $48 million, subject to approximately $19 million in debt and generates $3,000,000 in triple net rent.

2. Westover Hills consisted of 400 acres of developed property located in San Antonio, Texas that were purchased in the late 1980's. The primary focus of the project since that time has been to sell lots, including the prime frontal acreage across the highway from the San Antonio Hyatt and the entrance road to Sea World. The current estimated value of the remaining property is approximately $3.5 million.

3. Fallbrook consists of 827 acres in Mississippi just below Memphis, Tennessee, which is the commercial distribution center for the East Coast. The Mississippi Department of Transportation has presently contracted to acquire 96 acres of the Fallbrook property to complete the national highway from Canada to the Mexican border. The current estimated value of the property is approximately $32 million with debt of approximately $10 million.

4. Brentwood consists of 250 acres of property in Brentwood, Tennessee, approximately 6 miles from Nashville. This is a portion of the original 4500 acre tract of land that we have been developing since 1992. Some of the remaining property is located Franklin, and has recently been annexed into Brentwood, greatly increasing Brentwood's value. The estimated net value of all remaining property is approximately $22,525,000.

5. Addison consists of a 50,000 sq. ft. building containing an ice skating rink in Addison, Texas. The property is secured by a trust deed, and the building has a market value of approximately $2.5 million.

6. Iceoplex manages a group of ice-skating rinks throughout California, including several rinks owned by municipalities. It also has a division that constructs and consults on the management and building of ice rinks. Notable accomplishments include the construction of the ice-skating rink and basketball training center for the Los Angeles Kings and LA Lakers in El Segundo, California, as well as the ice skating rink currently owned by the San Jose Sharks in Fremont, California.

7. Easy Street Arena is a dual ice skating facility located in Simi Valley, California. It houses one regular-sized rink and one Olympic-sized rink and is currently valued at approximately $3.5 million.

8. Broadway Entertainment has produced and marketed television and radio shows, including the Billboard Music Awards show on Fox Television, and broadcasted them nationally and internationally for more than 7 years. Segments have been broadcast from as far as Hong Kong

Thailand, and England. Broadway Entertainment also produced the Radio Music Awards on NBC. It has been responsible for marketing some of the most significant movies released in the last few years, including *Sex and the City*, *Wedding Crashers*, and *Hairspray*. The film promotions entail placing marketing and advertising for the films, as well as organizing the movie premieres, including red carpet celebrity photo shoots and exclusive after parties. This division grossed more than $6 million in 2008.

9. Celebrity Edge is an in-house radio station broadcasting to 20 million listeners of stations in the top 20 demographically significant domestic and international markets. The shows are largely celebrity interviews, but also include two (2) full-time contracted broadcast shows – one sports show and one talk show. Celebrity Edge also provides radio airtime for the Game Show Network, other radio stations, and podcasts.

10. Key Club is entering into its 13th year as a music venue and event facility located on the Sunset Strip. It has featured internationally known artists such as Rod Stewart, Prince, Sarah McLaughlin, Van Halen, Black-Eyed Peas, and Nine Inch Nails. Additional revenue is generated by leasing billboard space on the side of the club's building and jumbotron time on the club's large videotrons, while regularly hosting high profile special events. These events vary from bar mitzvahs to large Academy Award and Grammy Award Show after-parties and fundraising events sponsored by national charities, most of which feature major music and entertainment guests.

11. EPD oversees all of the properties. EPD's Business Division provides additional financial consulting, legal, and accounting services to its clients. The Business Division generates consulting fees and participation payments in the form of stock ownership or profit participation.

12. Other Businesses owned and operated by the group include RDT, JSP Properties, Creekside, and Pazza.

EXHIBIT: 64
DEPONENT: Kirkland
DATE: 5.27.11
LORI BARKLEY, CSR #6426

**Corey Weber**

**From:** Jerry Pressman [Jerry@theepdgroup.com]
**Sent:** Wednesday, January 19, 2011 12:21 PM
**To:** Kirkland, John

I am sending you a document included in the litigation that needs clarification. The portfolio I sent says"Investments held by EPD and its affiliate companies"The Investments are all held in outside entities except, EPD may have loaned some of these companies Funds. I have an ownership interest in all today except Easy Street Arena,and Iceoplex . The portfolio Package was purchased with monies borrowed from family and friends loaned first to EPD on a promissory note and, than to me under a revolving note to purchase the ownership and secured back to EPD via a UCC-1 stating in 2003 and again in 2009, specifically securing the loan with a Security Agreement specifying my ownership in ALL Corps LLC's Partnerships etc. EPD does not operate the outside owned businesses , and upon the sale or accumulation of any proceeds attributed to my ownership over the years all surplus funds were sent to EPD. I or Keith have never drawn salaries from any entity or EPD that is covered by the UCC-1

To win (lose) tomorrow some of the misstatements made in the declarations including Jenny Lee claiming she has a judgement that has been vacated or the Mc Carthy statements I went to Chicago and they purchased securities may not need to be refuted

EXHIBIT: 5
DEPONENT: Pressman
DATE: 5-17-11
LORI BARKLEY, CSR #6426

-----Original Message-----
From: "Jerry Pressman" <Jerry@theepdgroup.com>
To: "Keith Pressman" <Keith@theepdgroup.com>
Date: Wed, 08 Dec 2010 17:32:41 -0800
Subject: Sent to Cynthias Son in Law

-----Original Message-----
From: "Jerry Pressman" <Jerry@theepdgroup.com>
To: "Michael Kabik" [redacted]@shulmanrogers.com>
Date: Wed, 08 Dec 2010 17:31:23 -0800
Subject: RE: unable to contact you

I hope to be able to explain our arrangement with your mother in law. We are not an investment company. 95% of our group consists of ONLY family and extended family members. We have never had clients from the business world. For 35 years our family has pooled its resources and used the funds to purchase long term Land Development Projects. Most are located in prime areas such as Brentwood Tenn. a suburb of Nashville where we purchased and developed more than 2,000 acres in the past two decades. We currently control 250 acres of the remaining lots that have been appraised by the bank last year for more than $25,000,000 with only $4,000,000 of bank debt. All of the properties are highly valued and subject to very low loan to values.

During these awful economic times we have been lucky enough not to lose any property,any customers,or any tenants, and in most cases the property value has actually gone up. We do not invest in Stocks or Bonds, and have continued to reduce our debt through monthly amortization.

Cynthia was a life time friend of my sister who lives in Israel, and she prevailed upon me to allow Cynthia into our pool which is informal and secured only by a promissory note, but because of the arms length nature of the relationship I also personally guaranteed the note. All of the assets are held in separate corporate or LLC entities but secured back to the maker of the note through Security agreements and UCC-1 filings

Last year along with the rest of my banks customers after I paid down our $4,000,000 credit line as i always had intermittently to save the interest the bank temporarily froze the credit line that we depended on to satisfy our cash calls, and bridge periods of time between sales. Without the line to bond property that has been sold our cash flow temporarily dried up. Knowing Cynthia's situation we have tried to meet her minimum needs while almost every other person has been temporarily frozen. This includes my own children. I am sorry for the strain on her,but we are very close to closing a substantial loan that should within the next several week solve the problem, and allow us to return to the scheduled payment that we know she needs. Keith has been working with her ,and over the years we have all established a true affection for each other. I can assure you she has not lost one cent of the funds she has with us, along with our helping defer taxes on the distributions she has been getting will in a short time prove to be a safe and valuable resourse for her. We will continue to try to maximize her distributions, but have limited funds.

The only thing I can send you is the promissory note which she has a copy off. I know your reaction was without the benefit of the facts, and I hope tomorrow I will be able to give you a comfort level to bear with us over the next few weeks while we get our financing in place.
I look forward to our conversation.

-----Original Message-----
From: Michael Kabik <MKabik@shulmanrogers.com>
To: 'Jerry Pressman' <Jerry@theepdgroup.com>
Date: Wed, 8 Dec 2010 15:02:52 -0500
Subject: RE: unable to contact you

Dear Mr. Pressman,

Thank you for contacting me. I am in and out of meetings today. My next meeting is starting in a couple minutes. I will call you on your cell phone after the meeting ends. If there is a better number on which to reach you, please let me know.

Please fax or email the documentation requested re: my mother-in-law's investments with your company, as I discussed with Keith and also indicated in my email to you both.

Thank you.

Michael L. Kabik

MICHAEL L. KABIK
ATTORNEY AT LAW

mkabik@shulmanrogers.com | T 301.231.0937 | F 301.230.2891

SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.
12505 PARK POTOMAC AVENUE, 6TH FLOOR, POTOMAC, MD 20854
1100 New York Avenue, NW, Suite 500, West Tower, Washington, D.C. 20005

ShulmanRogers.com | BIO | VCARD

**From:** Jerry Pressman [mailto:Jerry@theepdgroup.com]
**Sent:** Wednesday, December 08, 2010 2:47 PM
**To:** Michael Kabik
**Subject:** unable to contact you

I have tried for two days to reach you at both your office and cell phone numbers and called at 11:00 today pursuant to my E mail to you last night. I will hopefully be able to break away later in the afternoon,and will try again.

Case 2:10-bk-62208-ER Doc 200-2 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 2 Page 17 of 17

The information contained in this electronic message and any attached documents is privileged, confidential, and protected from disclosure. It may be an attorney-client communication and, as such, is privileged and confidential. If you are not the intended recipient, note that any review, disclosure, copying, distribution, or use of the contents of this electronic message or any attached documents is prohibited. If you have received this communication in error, please destroy it and notify us immediately by telephone (1-301-230-5200) or by electronic mail (LawFirm@srgpe.com). Thank you.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) addressed herein. This communication may not be forwarded (other than within the recipient to which it has been sent) without our express written consent.

DEPONENT: T. Jonavic
DATE: 6/29/11
LORI BARKLEY, CSR #6426

Form **1065**
Department of the Treasury Internal Revenue Service

# U.S. Return of Partnership Income

For calendar year 2003, or tax year beginning Jul 1, 2003, and ending Dec 31, 20 03.
► See separate instructions.

OMB No.1545-0099
**2003**

| | | |
|---|---|---|
| A Principal business activity: SERVICE | Use the IRS label. Otherwise, print or type. Name of partnership: EPD INVESTMENTS, LLC | D Employer identification number: [redacted] |
| B Principal product or service: INVESTMENTS | Number, street, and room or suite number. If a P.O. box, see instructions: 520 BROADWAY, SUITE 660 | E Date business started: 07/01/03 |
| C Business code number: 532400 | City or town: SANTA MONICA State: CA ZIP code: 90401 | F Total assets (see instrs): $ 22,334,669. |

G Check applicable boxes: (1) [X] Initial return (2) [ ] Final return (3) [ ] Name change (4) [ ] Address change (5) [ ] Amended return
H Check accounting method: (1) [X] Cash (2) [ ] Accrual (3) [ ] Other (specify) ►
I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ► 2

**Caution:** *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

| | | | | | |
|---|---|---|---|---|---|
| INCOME | 1a Gross receipts or sales | 1a | 457,139. | | |
| | b Less returns and allowances | 1b | | 1c | 457,139. |
| | 2 Cost of goods sold (Schedule A, line 8) | | | 2 | 0. |
| | 3 Gross profit. Subtract line 2 from line 1c | | | 3 | 457,139. |
| | 4 Ordinary income (loss) from other partnerships, estates, and trusts *(attach schedule)* | | | 4 | |
| | 5 Net farm profit (loss) *(attach Schedule F (Form 1040))* | | | 5 | |
| | 6 Net gain (loss) from Form 4797, Part II, line 18 | | | 6 | |
| | 7 Other income (loss) *(attach schedule)* See Other income (loss) | | | 7 | 103,486. |
| | 8 **Total income (loss).** Combine lines 3 through 7 | | | 8 | 560,625. |
| DEDUCTIONS (SEE INSTRUCTIONS FOR LIMITATIONS) | 9 Salaries and wages (other than to partners) (less employment credits) | | | 9 | 99,610. |
| | 10 Guaranteed payments to partners | | | 10 | |
| | 11 Repairs and maintenance | | | 11 | 1,688. |
| | 12 Bad debts | | | 12 | |
| | 13 Rent | | | 13 | |
| | 14 Taxes and licenses | | | 14 | 16,606. |
| | 15 Interest | | | 15 | 543,273. |
| | 16a Depreciation (if required, attach Form 4562) | 16a | | | |
| | b Less depreciation reported on Schedule A and elsewhere on return | 16b | | 16c | |
| | 17 Depletion **(Do not deduct oil and gas depletion.)** | | | 17 | |
| | 18 Retirement plans, etc | | | 18 | |
| | 19 Employee benefit programs | | | 19 | |
| | 20 Other deductions *(attach schedule)* See Other deductions | | | 20 | 1,255,640. |
| | 21 **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | | | 21 | 1,916,817. |
| | 22 **Ordinary income (loss)** from trade or business activities. Subtract line 21 from line 8 | | | 22 | -1,356,192. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member) is based on all information of which preparer has any knowledge.

► Signature of general partner or limited liability company member ► Date

May the IRS discuss this return with the preparer shown below (see instrs)? [X] Yes [ ] No

**Paid Preparer's Use Only**

Preparer's signature — Date — Check if self-employed ► [ ] — Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ► THEODORE P. JONAVIC, CPA
[redacted]
CA 91701 — EIN ► — Phone no.

Form 1065 (2003) EPD INVESTMENTS, LLC [redacted] Page 2

**Schedule A** **Cost of Goods Sold** (see instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs *(attach schedule)* | 4 | |
| 5 | Other costs *(attach schedule)* REIMBURSED EXPENSES | 5 | 0. |
| 6 | **Total.** Add lines 1 through 5 | 6 | 0. |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 0. |

9a Check all methods used for valuing closing inventory:
- (i) ☐ Cost as described in Regulations section 1.471-3
- (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4
- (iii) ☐ Other (specify method used and attach explanation) ►

b Check this box if there was a writedown of 'subnormal' goods as described in Regulations section 1.471-2(c) ► ☐

c Check this box if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)* ► ☐

d Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership? ☐ Yes ☐ No

e Was there any change in determining quantities, cost, or valuations between opening and closing inventory? ☐ Yes ☐ No
If 'Yes', attach explanation

**Schedule B** **Other Information**

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box:<br>a ☐ Domestic general partnership b ☐ Domestic limited partnership<br>c ☒ Domestic limited liability company d ☐ Domestic limited liability partnership<br>e ☐ Foreign partnership f ☐ Other ► | | |
| 2 | Are any partners in this partnership also partnerships? | | X |
| 3 | During the partnership's tax year, did the partnership own any interest in another partnership or in any foreign entity that was disregarded as an entity separate from its owner under Regulations sections 301.7701-2 and 301.7701-3? If yes, see instructions for required attachment | | X |
| 4 | Is this partnership subject to the consolidated audit procedures of sections 6221 through 6233? If 'Yes,' see **Designation of Tax Matters Partner** below | X | |
| 5 | Does this partnership meet **all three** of the following requirements?<br>a The partnership's total receipts for the tax year were less than $250,000;<br>b The partnership's total assets at the end of the tax year were less than $600,000; **and**<br>c Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return.<br>If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item J on Schedule K-1 | | X |
| 6 | Does this partnership have any foreign partners? If 'Yes,' the partnership may have to file Forms 8804, 8805 and 8813. See instructions | | X |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | Has this partnership filed, or is it required to file, **Form 8264,** Application for Registration of a Tax Shelter? | | X |
| 9 | At any time during calendar year 2003, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1. If 'Yes,' enter the name of the foreign country ► | | X |
| 10 | During the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520. See instructions | | X |
| 11 | Was there a distribution of property or a transfer (e.g., by sale or death) of a partnership interest during the tax year? If 'Yes,' you may elect to adjust the basis of the partnership's assets under section 754 by attaching the statement described in the instructions under **Elections Made By the Partnership** | | X |
| 12 | Enter the number of **Forms 8865,** Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return ► | | |

**Designation of Tax Matters Partner** (see instructions)

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

Name of designated TMP ► KEITH PRESSMAN Identifying number of TMP ► [redacted]

Address of designated TMP ► 520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

PTPA0112 08/25/03 Form **1065** (2003)

Form 1065 (2003) EPD INVESTMENTS, LLC [redacted] Page 3

## Schedule K Partners' Shares of Income, Credits, Deductions, etc

| | (a) Distributive share items | | (b) Total amount |
|---|---|---|---|
| Income (Loss) | 1 Ordinary income (loss) from trade or business activities (page 1, line 22) | 1 | -1,356,192. |
| | 2 Net income (loss) from rental real estate activities (attach Form 8825) | 2 | 56,500. |
| | 3a Gross income from other rental activities — 3a | | |
| | b Expenses from other rental activities (attach sch) — 3b | | |
| | c Net income (loss) from other rental activities. Subtract line 3b from line 3a | 3c | |
| | 4 Portfolio income (loss) (attach Schedule D (Form 1065) for lines 4d and 4e: | | |
| | a Interest income | 4a | 82,268. |
| | b Dividends: (1) Qualified dividends ► ____ (2) Total ordinary dividends ► | 4b (2) | |
| | c Royalty income | 4c | |
| | d Net short-term capital gain (loss): (1) post-May 5, 2003 ► ____ (2) Entire year ► | 4d (2) | |
| | e Net long-term capital gain (loss): (1) post-May 5, 2003 ► ____ (2) Entire year ► | 4e (2) | |
| | f Other portfolio income (loss) (attach schedule) | 4f | |
| | 5 Guaranteed payments to partners | 5 | |
| | 6a Net section 1231 gain (loss) (post-May 5, 2003) (attach Form 4797) | 6a | |
| | b Net section 1231 gain (loss) (entire year) (attach Form 4797) | 6b | |
| | 7 Other income (loss) | 7 | |
| Deductions | 8 Charitable contributions (attach schedule) MISCELLANEOUS ORGANIZED CHARITIES | 8 | 15. |
| | 9 Section 179 expense deduction (attach Form 4562) | 9 | |
| | 10 Deductions related to portfolio income (itemize) | 10 | |
| | 11 Other deductions | 11 | |
| Credits | 12a Low-income housing credit: (1) From partnerships to which section 42(j)(5) applies | 12a (1) | |
| | (2) Other than on line 12a(1) | 12a (2) | |
| | b Qualified rehabilitation expenditures related to rental real estate activities (attach Form 3468) | 12b | |
| | c Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities | 12c | |
| | d Credits related to other rental activities | 12d | |
| | 13 Other credits | 13 | |
| Investment Interest | 14a Interest expense on investment debts | 14a | |
| | b (1) Investment income included on lines 4a, 4b(2), 4c, and 4f above | 14b (1) | 82,268. |
| | (2) Investment expenses included on line 10 above | 14b (2) | |
| Self-Employment | 15a Net earnings (loss) from self-employment | 15a | -1,356,192. |
| | b Gross farming or fishing income | 15b | |
| | c Gross nonfarm income | 15c | 560,625. |
| Adjustments and Tax Preference Items | 16a Depreciation adjustment on property placed in service after 1986 | 16a | |
| | b Adjusted gain or loss | 16b | |
| | c Depletion (other than oil and gas) | 16c | |
| | d (1) Gross income from oil, gas, and geothermal properties | 16d (1) | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | 16d (2) | |
| | e Other adjmnts & tax pref items | 16e | |
| Foreign Taxes | 17a Name of foreign country or U.S. possession ► | | |
| | b Gross income from all sources | 17b | |
| | c Gross income sourced at partner level | 17c | |
| | d Foreign gross income sourced at partnership level: | | |
| | (1) Passive ► ____ (2) Listed categories (attach sch) ► ____ (3) General limitation ► | 17d (3) | |
| | e Deductions allocated and apportioned at partner level: | | |
| | (1) Interest expense ► ____ (2) Other ► | 17e (2) | |
| | f Deductions allocated and apportioned at partnership level to foreign source income: | | |
| | (1) Passive ► ____ (2) Listed categories (attach sch) ► ____ (3) General limitation ► | 17f (3) | |
| | g Total foreign taxes (check one): ► ☐ Paid ☐ Accrued | 17g | |
| | h Reduction in taxes available for credit (attach schedule) | 17h | |
| Other | 18 Section 59(e)(2) expenditures: a Type ► ____ b Amount ► | 18b | |
| | 19 Tax-exempt interest income | 19 | |
| | 20 Other tax-exempt income | 20 | |
| | 21 Nondeductible expenses | 21 | 5,873. |
| | 22 Distributions of money (cash and marketable securities) | 22 | |
| | 23 Distributions of property other than money | 23 | |
| | 24 Other items and amounts required to be reported separately to partners (attach schedule) | | |

Form 1065 (2003) EPD INVESTMENTS, LLC [redacted] Page 4

## Analysis of Net Income (Loss)

1 Net income (loss). Combine Schedule K, lines 1 through 7 in column (b). From the result, subtract the sum of Schedule K, lines 8 through 11, 14a, 17g, and 18b ..... 1 | -1,217,439.

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | -1,217,439. | | | | |

**Note:** Schedules L, M-1 and M-2 are not required if Question 5 of Schedule B is answered 'Yes.'

## Schedule L Balance Sheets per Books

| | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|
| **Assets** | (a) | (b) | (c) | (d) |
| 1 Cash | | | | 228,223. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets *(attach schedule)* . Ln. 6 Stmt | | | | 8,075. |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments *(attach schedule)* . Ln. 8 Stmt | | | | 22,098,371. |
| 9a Buildings and other depreciable assets | | | | |
| b Less accumulated depreciation | | | | |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 13 Other assets *(attach schedule)* | | | | |
| 14 **Total** assets | | | | 22,334,669. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | | |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | 91,594. |
| 17 Other current liabilities *(attach sch)* | | | | |
| 18 All nonrecourse loans | | | | |
| 19 Mortgages, notes, bonds payable in 1 year or more | | | | 23,434,387. |
| 20 Other liabilities *(attach schedule)* | | | | |
| 21 Partners' capital accounts | | | | -1,191,312. |
| 22 **Total** liabilities and capital | | | | 22,334,669. |

## Schedule M-1 Reconciliation of Income (Loss) per Books With Income (Loss) per Return

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -1,223,312. | 6 Income recorded on books this year not included on Schedule K, lines 1 though 7 (itemize): a Tax-exempt interest ... $ | |
| 2 Income included on Schedule K, lines 1 through 4, 6b, and 7, not recorded on books this year (itemize): | | | |
| 3 Guaranteed pmts (other than health insurance) | | 7 Deductions included on Schedule K, lines 1 through 11, 14a, 17g, and 18b, not charged against book income this year (itemize): a Depreciation ..... $ | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 11, 14a, 17g, and 18b (itemize): a Depreciation ...... $ b Travel and entertainment ..... $ 5,873. | 5,873. | 8 Add lines 6 and 7 | |
| 5 Add lines 1 through 4 | -1,217,439. | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | -1,217,439. |

## Schedule M-2 Analysis of Partners' Capital Accounts

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | | 6 Distributions: a Cash | |
| 2 Capital contributed: a Cash | 32,000. | b Property | |
| b Property | | 7 Other decreases (itemize): | |
| 3 Net income (loss) per books | -1,223,312. | | |
| 4 Other increases (itemize): | | 8 Add lines 6 and 7 | |
| 5 Add lines 1 through 4 | -1,191,312. | 9 Balance at end of year. Subtract line 8 from line 5 | -1,191,312. |

Form **8825**

Department of the Treasury
Internal Revenue Service

# Rental Real Estate Income and Expenses of a Partnership or an S Corporation

► See instructions.
► Attach to Form 1065, Form 1065-B, or Form 1120S.

OMB No. 1545-1186

**2003**

Name: EPD INVESTMENTS, LLC

Employer identification number: [redacted]

1 Show the kind and location of each property. See page 2 for additional properties.

A AVALON BAY

B 520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

C

D

| | | Properties A | B | C | D |
|---|---|---|---|---|---|
| **Rental Real Estate Income** | | | | | |
| 2 Gross rents | 2 | 6,500. | 50,000. | | |
| **Rental Real Estate Expenses** | | | | | |
| 3 Advertising | 3 | | | | |
| 4 Auto and travel | 4 | | | | |
| 5 Cleaning and maintenance | 5 | | | | |
| 6 Commissions | 6 | | | | |
| 7 Insurance | 7 | | | | |
| 8 Legal and other professional fees | 8 | | | | |
| 9 Interest | 9 | | | | |
| 10 Repairs | 10 | | | | |
| 11 Taxes | 11 | | | | |
| 12 Utilities | 12 | | | | |
| 13 Wages and salaries | 13 | | | | |
| 14 Depreciation (see instructions) | 14 | | | | |
| 15 Other (list) ► | 15 | | | | |
| 16 Total expenses for each property. Add lines 3 through 15 | 16 | | | | |

| | | |
|---|---|---|
| 17 Total gross rents. Add gross rents from line 2, columns A through H | 17 | 56,500. |
| 18 Total expenses. Add total expenses from line 16, columns A through H | 18 | |
| 19 Net gain (loss) from Form 4797, Part II, line 18, from the disposition of property from rental real estate activities | 19 | |
| 20a Net income (loss) from rental real estate activities from partnerships, estates, and trusts in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1) | 20a | |

b Identify below the partnerships, estates, or trusts from which net income (loss) is shown on line 20a. Attach a schedule if more space is needed:

(1) Name (2) Employer identification number

21 Net income (loss) from rental real estate activities. Combine lines 17 through 20a. Enter the result here and on:
- **Form 1065 or 1120S:** Schedule K, line 2, or
- **Form 1065-B:** Part I, line 4

| | |
|---|---|
| 21 | 56,500. |

BAA For Paperwork Reduction Act Notice, see the separate instructions. Form 8825 (2003)

SPSZ0101 10/21/03

**Schedule K-1** (Form 1065)
Department of the Treasury Internal Revenue Service

# Partner's Share of Income, Credits, Deductions, etc

For calendar year 2003 or tax year beginning Jul 1, 2003, and ending Dec 31, 20 03

OMB No. 1545-0099

**2003**

**Partner's identifying number** ▶ [redacted]

Partner's name, address, and ZIP code

JERROLD S. PRESSMAN
520 BROADWAY
[redacted]

**Partnership's identifying number** ▶ [redacted]

Partnership's name, address, and ZIP code

EPD INVESTMENTS, LLC
520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

**A** This partner is a ☐ general partner ☐ limited partner ☒ limited liability company member

**B** What type of entity is this partner? ▶ INDIVIDUAL

**C** Is this partner a ☒ domestic or a ☐ foreign partner?

**D** Enter partner's % of:

| | (i) Before change or termination | (ii) End of year |
|---|---|---|
| Profit sharing | 49.00000 % | 49.00000 % |
| Loss sharing | % | 49.00000 % |
| Ownership of capital | % | 49.00000 % |

**E** IRS Center where partnership filed return: OGDEN, UT

**F** Partner's share of liabilities (see instructions):
Nonrecourse ... $
Qualified nonrecourse financing ... $ 11,527,731.
Other ... $

**G** Tax shelter registration number ▶

**H** Check here if this partnership is a publicly traded partnership as defined in section 469(k)(2) ☐

**I** Check applicable boxes: (1) ☐ Final K-1 (2) ☐ Amended K-1

**J Analysis of partner's capital account:**

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| | 15,000. | -599,423. | | -584,423. |

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Income (Loss) | 1 Ordinary income (loss) from trade or business activities | 1 | -664,534. | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2 Net income (loss) from rental real estate activities | 2 | 27,685. | |
| | 3 Net income (loss) from other rental activities | 3 | | |
| | 4 Portfolio income (loss): | | | |
| | a Interest income | 4a | 40,311. | Form 1040, line 8a |
| | b (1) Qualified dividends | 4b(1) | | Form 1040, line 9b |
| | (2) Total ordinary dividends | 4b(2) | | Form 1040, line 9a |
| | c Royalty income | 4c | | Schedule E, Part I, line 4 |
| | d (1) Net short-term capital gain (loss) (post-May 5, 2003) | 4d(1) | | Schedule D, line 5, column (g) |
| | (2) Net short-term capital gain (loss) (entire year) | 4d(2) | | Schedule D, line 5, column f) |
| | e (1) Net long-term capital gain (loss) (post-May 5, 2003) | 4e(1) | | Schedule D, line 12, column g) |
| | (2) Net long-term capital gain (loss) (entire year) | 4e(2) | | Schedule D, line 12, column (f) |
| | f Other portfolio income (loss) *(attach schedule)* | 4f | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 5 Guaranteed payments to partner | 5 | | |
| | 6a Net section 1231 gain (loss) (post-May 5, 2003) | 6a | | |
| | b Net section 1231 gain (loss) (entire year) | 6b | | |
| | 7 Other income (loss) *(attach schedule)* | 7 | | |
| Deductions | 8 Charitable contributions (see instructions) *(attach schedule)* SEE LINE 25 | 8 | 7. | Schedule A, line 15 or 16 |
| | 9 Section 179 expense deduction | 9 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10 Deductions related to portfolio income *(attach schedule)* | 10 | | |
| | 11 Other deductions *(attach schedule)* | 11 | | |
| Credits | 12a Low-income housing credit: | | | |
| | (1) From section 42(j)(5) partnerships | 12a(1) | | Form 8586, line 5 |
| | (2) Other than on line 12a(1) | 12a(2) | | |
| | b Qualified rehabilitation expenditures related to rental real estate activities | 12b | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities | 12c | | |
| | d Credits related to other rental activities | 12d | | |
| | 13 Other credits | 13 | | |

**BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065.**

Schedule K-1 (Form 1065) 2003

PTPA0312 10/21/03

Schedule K-1 (Form 1065) 2003 JERROLD S. PRESSMAN [redacted] Page 2

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Investment Interest | 14a Interest expense on investment debts | 14a | | Form 4952, line 1 |
| | b (1) Investment income included on lines 4a, 4b(2), 4c, and 4f | 14b(1) | 40,311. | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | (2) Investment expenses included on line 10 | 14b(2) | | |
| Self-employment | 15a Net earnings (loss) from self-employment | 15a | -664,534. | Schedule SE, Section A or B |
| | b Gross farming or fishing income | 15b | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Gross nonfarm income | 15c | 274,706. | |
| Adjustments and Tax Preference Items | 16a Depreciation adjustment on property placed in service after 1986 | 16a | | See Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| | b Adjusted gain or loss | 16b | | |
| | c Depletion (other than oil and gas) | 16c | | |
| | d (1) Gross income from oil, gas, and geothermal properties | 16d(1) | | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | 16d(2) | | |
| | e Other adjustments and tax preference items *(attach sch)* | 16e | | |
| Foreign Taxes | 17a Name of foreign country or U.S. possession ► | | | Form 1116, Part I |
| | b Gross income from all sources | 17b | | |
| | c Gross income sourced at partner level | 17c | | |
| | d Foreign gross income sourced at partnership level: | | | |
| | (1) Passive | 17d(1) | | |
| | (2) Listed categories *(attach schedule)* | 17d(2) | | |
| | (3) General limitation | 17d(3) | | |
| | e Deductions allocated and apportioned at partner level: | | | |
| | (1) Interest expense | 17e(1) | | |
| | (2) Other | 17e(2) | | |
| | f Deductions allocated and apportioned at partnership level to foreign source income: | | | |
| | (1) Passive | 17f(1) | | |
| | (2) Listed categories *(attach schedule)* | 17f(2) | | |
| | (3) General limitation | 17f(3) | | |
| | g Total foreign taxes (check one): ► ☐ Paid ☐ Accrued | 17g | | Form 1116, Part II |
| | h Reduction in taxes available for credit *(attach schedule)* | 17h | | Form 1116, line 12. |
| Other | 18a Section 59(e)(2) expenditures: a Type ► | | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | b Amount | 18b | | |
| | 19 Tax-exempt interest income | 19 | | Form 1040, line 8b |
| | 20 Other tax-exempt income | 20 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 21 Nondeductible expenses | 21 | 2,878. | |
| | 22 Distributions of money (cash and marketable securities) | 22 | | |
| | 23 Distributions of property other than money | 23 | | |
| | 24 Recapture of low-income housing credit: | | | Form 8611, line 8 |
| | a From section 42(j)(5) partnerships | 24a | | |
| | b Other than on line 24a | 24b | | |

**Supplemental Information**

25 Supplemental information required to be reported separately to each partner *(attach additional schedules if more space is needed)*:

LINE 8 - CHARITABLE CONTRIBUTIONS:

| | |
|---|---|
| MISCELLANEOUS ORGANIZED CHARITIES | 7. |
| TOTAL | 7. |

**Schedule K-1** (Form 1065)
Department of the Treasury Internal Revenue Service

# Partner's Share of Income, Credits, Deductions, etc

For calendar year 2003 or tax year beginning Jul 1 , 2003, and ending Dec 31 , 20 03

OMB No. 1545-0099

**2003**

**Partner's identifying number ▶** [redacted]
Partner's name, address, and ZIP code

KEITH PRESSMAN
520 BROADWAY
SUITE 660
SANTA MONICA, CA 90401

**Partnership's identifying number ▶** [redacted]
Partnership's name, address, and ZIP code

EPD INVESTMENTS, LLC
520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

A This partner is a ☐ general partner ☐ limited partner ☒ limited liability company member

B What type of entity is this partner? ▶ INDIVIDUAL

C Is this partner a ☒ domestic or a ☐ foreign partner?

D Enter partner's % of: (i) Before change or termination (ii) End of year

| | (i) Before change or termination | (ii) End of year |
|---|---|---|
| Profit sharing | 51.00000 % | 51.00000 % |
| Loss sharing | % | 51.00000 % |
| Ownership of capital | % | 51.00000 % |

E IRS Center where partnership filed return: OGDEN, UT

F Partner's share of liabilities (see instructions):
Nonrecourse $
Qualified nonrecourse financing $ 11,998,250.
Other $

G Tax shelter registration number ▶

H Check here if this partnership is a publicly traded partnership as defined in section 469(k)(2) ☐

I Check applicable boxes: (1) ☐ Final K-1 (2) ☐ Amended K-1

**J Analysis of partner's capital account:**

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| | 17,000. | -623,889. | | -606,889. |

| | | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|---|
| Income (Loss) | 1 | Ordinary income (loss) from trade or business activities | 1 | -691,658. | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2 | Net income (loss) from rental real estate activities | 2 | 28,815. | |
| | 3 | Net income (loss) from other rental activities | 3 | | |
| | 4 | Portfolio income (loss): | | | |
| | | a Interest income | 4a | 41,957. | Form 1040, line 8a |
| | | b (1) Qualified dividends | 4b(1) | | Form 1040, line 9b |
| | | (2) Total ordinary dividends | 4b(2) | | Form 1040, line 9a |
| | | c Royalty income | 4c | | Schedule E, Part I, line 4 |
| | | d (1) Net short-term capital gain (loss) (post-May 5, 2003) | 4d(1) | | Schedule D, line 5, column (g) |
| | | (2) Net short-term capital gain (loss) (entire year) | 4d(2) | | Schedule D, line 5, column f) |
| | | e (1) Net long-term capital gain (loss) (post-May 5, 2003) | 4e(1) | | Schedule D, line 12, column g) |
| | | (2) Net long-term capital gain (loss) (entire year) | 4e(2) | | Schedule D, line 12, column (f) |
| | | f Other portfolio income (loss) *(attach schedule)* | 4f | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 5 | Guaranteed payments to partner | 5 | | |
| | 6a | Net section 1231 gain (loss) (post-May 5, 2003) | 6a | | |
| | | b Net section 1231 gain (loss) (entire year) | 6b | | |
| | 7 | Other income (loss) *(attach schedule)* | 7 | | |
| Deductions | 8 | Charitable contributions (see instructions) *(attach schedule)* SEE LINE 25 | 8 | 8. | Schedule A, line 15 or 16 |
| | 9 | Section 179 expense deduction | 9 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10 | Deductions related to portfolio income *(attach schedule)* | 10 | | |
| | 11 | Other deductions *(attach schedule)* | 11 | | |
| Credits | 12a | Low-income housing credit: | | | |
| | | (1) From section 42(j)(5) partnerships | 12a(1) | | Form 8586, line 5 |
| | | (2) Other than on line 12a(1) | 12a(2) | | |
| | | b Qualified rehabilitation expenditures related to rental real estate activities | 12b | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | | c Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities | 12c | | |
| | | d Credits related to other rental activities | 12d | | |
| | 13 | Other credits | 13 | | |

Schedule K-1 (Form 1065) 2003 KEITH PRESSMAN [redacted] Page 2

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Investment Interest | 14a Interest expense on investment debts | 14a | | Form 4952, line 1 |
| | b (1) Investment income included on lines 4a, 4b(2), 4c, and 4f | 14b(1) | 41,957. | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | (2) Investment expenses included on line 10 | 14b(2) | | |
| Self-employment | 15a Net earnings (loss) from self-employment | 15a | -691,658. | Schedule SE, Section A or B |
| | b Gross farming or fishing income | 15b | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Gross nonfarm income | 15c | 285,919. | |
| Adjustments and Tax Preference Items | 16a Depreciation adjustment on property placed in service after 1986 | 16a | | See Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| | b Adjusted gain or loss | 16b | | |
| | c Depletion (other than oil and gas) | 16c | | |
| | d (1) Gross income from oil, gas, and geothermal properties | 16d(1) | | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | 16d(2) | | |
| | e Other adjustments and tax preference items *(attach sch)* | 16e | | |
| Foreign Taxes | 17a Name of foreign country or U.S. possession ► | | | Form 1116, Part I |
| | b Gross income from all sources | 17b | | |
| | c Gross income sourced at partner level | 17c | | |
| | d Foreign gross income sourced at partnership level: | | | |
| | (1) Passive | 17d(1) | | |
| | (2) Listed categories *(attach schedule)* | 17d(2) | | |
| | (3) General limitation | 17d(3) | | |
| | e Deductions allocated and apportioned at partner level: | | | |
| | (1) Interest expense | 17e(1) | | |
| | (2) Other | 17e(2) | | |
| | f Deductions allocated and apportioned at partnership level to foreign source income: | | | |
| | (1) Passive | 17f(1) | | |
| | (2) Listed categories *(attach schedule)* | 17f(2) | | |
| | (3) General limitation | 17f(3) | | |
| | g Total foreign taxes (check one): ► ☐ Paid ☐ Accrued | 17g | | Form 1116, Part II |
| | h Reduction in taxes available for credit *(attach schedule)* | 17h | | Form 1116, line 12. |
| Other | 18a Section 59(e)(2) expenditures: a Type ► | | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | b Amount | 18b | | |
| | 19 Tax-exempt interest income | 19 | | Form 1040, line 8b |
| | 20 Other tax-exempt income | 20 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 21 Nondeductible expenses | 21 | 2,995. | |
| | 22 Distributions of money (cash and marketable securities) | 22 | | |
| | 23 Distributions of property other than money | 23 | | |
| | 24 Recapture of low-income housing credit: | | | Form 8611, line 8 |
| | a From section 42(j)(5) partnerships | 24a | | |
| | b Other than on line 24a | 24b | | |

**Supplemental Information**

25 Supplemental information required to be reported separately to each partner *(attach additional schedules if more space is needed)*:

LINE 8 - CHARITABLE CONTRIBUTIONS:
MISCELLANEOUS ORGANIZED CHARITIES 8.
TOTAL 8.

PTPA0312 10/21/03 Schedule K-1 (Form 1065) 2003

EPD INVESTMENTS, LLC 20-0150092 1

Form 1065, Line 7
**Other income (loss)**

| | |
|---|---|
| COMMISSION INCOME | 2,940. |
| OTHER FEES RECEIVED | 100,000. |
| REIMBURSEMENTS RECEIVED | 546. |
| Total | 103,486. |

Form 1065, Line 20
**Other deductions**

| | |
|---|---|
| ACCOUNTING | 36,308. |
| BANK CHARGES | 79,580. |
| DELIVERY AND FREIGHT | 1,822. |
| DUES AND SUBSCRIPTIONS | 171. |
| EQUIPMENT RENT | 971,779. |
| INSURANCE | 19,841. |
| LEGAL AND PROFESSIONAL | 47,790. |
| MEALS AND ENTERTAINMENT (50%) | 5,874. |
| OFFICE EXPENSE | 26,435. |
| OUTSIDE SERVICES | 55,000. |
| PARKING FEES AND TOLLS | 46. |
| SUPPLIES | 315. |
| TELEPHONE | 4,424. |
| TRAVEL | 939. |
| CONSULTING FEES | 14,402. |
| PAYROLL SERVICE FEES | 912. |
| PROMOTIONAL EXPENSES | -11,564. |
| STORAGE FEES | 1,566. |
| Total | 1,255,640. |

Form 1065, Schedule L, Line 6
**Other Current Assets**

| **Other Current Assets (itemize):** | Beginning of tax year | End of tax year |
|---|---|---|
| MISCELLANEOUS RECEIVABLE | | 8,075. |
| Total | | 8,075. |

Form 1065, Schedule L, Line 8
**Other Investments**

| **Other Investments (itemize):** | Beginning of tax year | End of tax year |
|---|---|---|
| NOTES RECEIVABLE | | 22,098,371. |
| Total | | 22,098,371. |

EPD INVESTMENTS, LLC 20-0150092 2

**Supporting Statement of:**

Form 1065 p3-4/Sch K, Line 4a (Regular)

| Description | Amount |
|---|---|
| NORM HANOVER | 3,696. |
| BANKS | 1,171. |
| KEY ITEM SALES | 77,401. |
| Total | 82,268. |

EXHIBIT: 208
DATE: 6/29/11
LORI BARKLEY, CSR #6426

Form **1065**
Department of the Treasury
Internal Revenue Service

# U.S. Return of Partnership Income

For calendar year 2004, or tax year beginning ____________, 2004, and ending ____________, 20 ____.
► See separate instructions.

OMB No.1545-0099
**2004**

A Principal business activity: SERVICE
B Principal product or service: INVESTMENTS
C Business code number: 532400

Use the IRS label. Otherwise, print or type.

Name of partnership: EPD INVESTMENTS, LLC
Number, street, and room or suite number. If a P.O. box, see instructions.: 520 BROADWAY, SUITE 660
City or town: SANTA MONICA State: CA ZIP code: 90401

D Employer identification number: [redacted]
E Date business started: 07/01/03
F Total assets (see instrs): $ 43,629,944.

G Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change (5) ☐ Amended return
H Check accounting method: (1) ☒ Cash (2) ☐ Accrual (3) ☐ Other (specify) ► ____________
I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ► 2

**Caution:** *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

**INCOME**

| Line | Description | | | | Amount |
|---|---|---|---|---|---|
| 1a | Gross receipts or sales | 1a | 1,057,504. | | |
| b | Less returns and allowances | 1b | | 1c | 1,057,504. |
| 2 | Cost of goods sold (Schedule A, line 8) | | | 2 | 26. |
| 3 | Gross profit. Subtract line 2 from line 1c | | | 3 | 1,057,478. |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts *(attach schedule)* | | | 4 | |
| 5 | Net farm profit (loss) *(attach Schedule F (Form 1040))* | | | 5 | |
| 6 | Net gain (loss) from Form 4797, Part II, line 17 | | | 6 | |
| 7 | Other income (loss) *(attach schedule)* REAL ESTATE COMMISSIONS | | | 7 | 13,692. |
| 8 | **Total income (loss).** Combine lines 3 through 7 | | | 8 | 1,071,170. |

**DEDUCTIONS** (SEE INSTRUCTIONS FOR LIMITATIONS)

| Line | Description | | | | Amount |
|---|---|---|---|---|---|
| 9 | Salaries and wages (other than to partners) (less employment credits) | | | 9 | 141,151. |
| 10 | Guaranteed payments to partners | | | 10 | |
| 11 | Repairs and maintenance | | | 11 | -1,201. |
| 12 | Bad debts | | | 12 | |
| 13 | Rent | | | 13 | 4,330. |
| 14 | Taxes and licenses | | | 14 | 47,262. |
| 15 | Interest | | | 15 | 1,094,224. |
| 16a | Depreciation *(if required, attach Form 4562)* | 16a | 7,850. | | |
| b | Less depreciation reported on Schedule A and elsewhere on return | 16b | | 16c | 7,850. |
| 17 | Depletion **(Do not deduct oil and gas depletion.)** | | | 17 | |
| 18 | Retirement plans, etc | | | 18 | |
| 19 | Employee benefit programs | | | 19 | |
| 20 | Other deductions *(attach statement)* *STMT | | | 20 | 3,000,949. |
| 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | | | 21 | 4,294,565. |
| 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 | | | 22 | -3,223,395. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member) is based on all information of which preparer has any knowledge.

► ____________ Signature of general partner or limited liability company member ► ____________ Date

May the IRS discuss this return with the preparer shown below (see instrs)? ☒ Yes ☐ No

**Paid Preparer's Use Only**

Preparer's signature | Date | Check if self-employed ► ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ► THEODORE P. JONAVIC, CPA
[redacted] CA 91701
EIN ►
Phone no.

## Schedule A Cost of Goods Sold (see instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs *(attach statement)* | 4 | |
| 5 | Other costs *(attach statement)* REBILLED EXPENSE REIMBURSEMENTS | 5 | 26. |
| 6 | **Total.** Add lines 1 through 5 | 6 | 26. |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 26. |

9a Check all methods used for valuing closing inventory:
(i) [ ] Cost as described in Regulations section 1.471-3
(ii) [ ] Lower of cost or market as described in Regulations section 1.471-4
(iii) [ ] Other (specify method used and attach explanation) ►
b Check this box if there was a writedown of 'subnormal' goods as described in Regulations section 1.471-2(c) ► [ ]
c Check this box if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)* ► [ ]
d Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership? [ ] Yes [X] No
e Was there any change in determining quantities, cost, or valuations between opening and closing inventory? [ ] Yes [X] No
If 'Yes', attach explanation.

## Schedule B Other Information

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box:<br>a [ ] Domestic general partnership b [ ] Domestic limited partnership<br>c [X] Domestic limited liability company d [ ] Domestic limited liability partnership<br>e [ ] Foreign partnership f [ ] Other ► | | |
| 2 | Are any partners in this partnership also partnerships? | | X |
| 3 | During the partnership's tax year, did the partnership own any interest in another partnership or in any foreign entity that was disregarded as an entity separate from its owner under Regulations sections 301.7701-2 and 301.7701-3? If yes, see instructions for required attachment | | X |
| 4 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 5 | Does this partnership meet all three of the following requirements?<br>a The partnership's total receipts for the tax year were less than $250,000;<br>b The partnership's total assets at the end of the tax year were less than $600,000; and<br>c Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return.<br>If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item N on Schedule K-1 | | X |
| 6 | Does this partnership have any foreign partners? If 'Yes,' the partnership may have to file Forms 8804, 8805 and 8813. See instructions | | X |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | Has this partnership filed, or is it required to file, Form 8264, Application for Registration of a Tax Shelter? | | X |
| 9 | At any time during calendar year 2004, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1. If 'Yes,' enter the name of the foreign country. ► | | X |
| 10 | During the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520. See instructions | | X |
| 11 | Was there a distribution of property or a transfer (e.g., by sale or death) of a partnership interest during the tax year? If 'Yes,' you may elect to adjust the basis of the partnership's assets under section 754 by attaching the statement described in the instructions under *Elections Made By the Partnership* | | X |
| 12 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return ► | | |

### Designation of Tax Matters Partner (see instructions)

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

Name of designated TMP ► KEITH PRESSMAN
Identifying number of TMP ► [redacted]

Address of designated TMP ► 520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

Form 1065 (2004) EPD INVESTMENTS, LLC [redacted] Page 3

## Schedule K Partners' Distributive Share Items

| Section | Item | | Line | Total amount |
|---|---|---|---|---|
| Income (Loss) | 1 Ordinary business income (loss) (page 1, line 22) | | 1 | -3,223,395. |
| | 2 Net rental real estate income (loss) *(attach Form 8825)* | | 2 | |
| | 3a Other gross rental income (loss) | 3a | | |
| | b Expenses from other rental activities *(attach stmt)* | 3b | | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | | 3c | |
| | 4 Guaranteed payments | | 4 | |
| | 5 Interest income | | 5 | 75,118. |
| | 6 Dividends: a Ordinary dividends | | 6a | |
| | b Qualified dividends | 6b | | |
| | 7 Royalties | | 7 | |
| | 8 Net short-term capital gain (loss) *(attach Schedule D (Form 1065))* | | 8 | |
| | 9a Net long-term capital gain (loss) *(attach Schedule D (Form 1065))* | | 9a | |
| | b Collectibles (28%) gain (loss) | 9b | | |
| | c Unrecaptured section 1250 gain *(attach statement)* | 9c | | |
| | 10 Net section 1231 gain (loss) *(attach Form 4797)* | | 10 | |
| | 11 Other income (loss) *(attach statement)* | | 11 | |
| Deductions | 12 Section 179 deduction *(attach Form 4562)* | | 12 | |
| | 13a Contributions Cash contributions (50%) | | 13a | 0. |
| | b Deductions related to portfolio income *(attach statement)* | | 13b | |
| | c Investment interest expense | | 13c | |
| | d Section 59(e)(2) expenditures: (1) Type ► (2) Amount ► | | 13d (2) | |
| | e Other deductions *(attach statement)* | | 13e | |
| Self-Employment | 14a Net earnings (loss) from self-employment | | 14a | -3,223,395. |
| | b Gross farming or fishing income | | 14b | |
| | c Gross nonfarm income | | 14c | 1,071,170. |
| Credits & Credit Recapture | 15a Low-income housing credit (section 42(j)(5)) | | 15a | |
| | b Low-income housing credit (other) | | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate) *(attach Form 3468)* | | 15c | |
| | d Other rental real estate credits | | 15d | |
| | e Other rental credits | | 15e | |
| | f Other credits and credit recapture *(attach statement)* | | 15f | |
| Foreign Transactions | 16a Name of country or U.S. possession ► | | | |
| | b Gross income from all sources | | 16b | |
| | c Gross income sourced at partner level | | 16c | |
| | *Foreign gross income sourced at partnership level* | | | |
| | d Passive ► e Listed categories *(attach statement)* ► f General limitation ► | | 16f | |
| | *Deductions allocated and apportioned at partner level* | | | |
| | g Interest expense ► h Other ► | | 16h | |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | | | |
| | i Passive ► j Listed categories *(attach statement)* ► k General limitation ► | | 16k | |
| | l Foreign taxes: (1) Paid ► (2) Accrued | | 16l (2) | |
| | m Reduction in taxes available for credit *(attach statement)* | | 16m | |
| Alternative Minimum Tax (AMT) Items | 17a Post-1986 depreciation adjustment | | 17a | 1,353. |
| | b Adjusted gain or loss | | 17b | |
| | c Depletion (other than oil and gas) | | 17c | |
| | d Oil, gas, and geothermal properties — gross income | | 17d | |
| | e Oil, gas, and geothermal properties — deductions | | 17e | |
| | f Other AMT items *(attach stmt)* | | 17f | |
| Other Information | 18a Tax-exempt interest income | | 18a | |
| | b Other tax-exempt income | | 18b | |
| | c Nondeductible expenses | | 18c | 6,692. |
| | 19a Distributions of cash and marketable securities | | 19a | |
| | b Distributions of other property | | 19b | |
| | 20a Investment income | | 20a | 75,118. |
| | b Investment expenses | | 20b | |
| | c Other items and amounts *(attach stmt)* | | | |

Form 1065 (2004) EPD INVESTMENTS, LLC [redacted] Page 4

## Analysis of Net Income (Loss)

| | | |
|---|---|---|
| 1 Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13e, 16l(1), and 16l(2) | 1 | -3,148,277. |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | -3,148,277. | | | | |

**Note:** Schedules L, M-1 and M-2 are not required if Question 5 of Schedule B is answered 'Yes.'

## Schedule L Balance Sheets per Books

| | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|
| **Assets** | (a) | (b) | (c) | (d) |
| 1 Cash | | 228,223. | | 198,509. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach stmt) Ln. 6. Stmt | | 8,075. | | 7,709. |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments (attach stmt) Ln. 8. Stmt | | 22,098,371. | | 33,122,975. |
| 9a Buildings and other depreciable assets | | | 70,376. | |
| b Less accumulated depreciation | | | 14,592. | 55,784. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 13 Other assets (attach stmt) Ln. 13. Stmt | | 7,175,768. | | 10,244,967. |
| 14 Total assets | | 29,510,437. | | 43,629,944. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | | 129,710. |
| 16 Mortgages, notes, bonds payable in less than 1 year | | 91,594. | | 137,500. |
| 17 Other current liabilities (attach stmt) | | | | |
| 18 All nonrecourse loans | | | | |
| 19 Mortgages, notes, bonds payable in 1 year or more | | 29,968,016. | | 47,014,520. |
| 20 Other liabilities (attach stmt) | | | | |
| 21 Partners' capital accounts | | -549,173. | | -3,651,786. |
| 22 Total liabilities and capital | | 29,510,437. | | 43,629,944. |

## Schedule M-1 Reconciliation of Income (Loss) per Books With Income (Loss) per Return

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -3,147,119. | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): a Tax-exempt interest $ | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | | |
| 3 Guaranteed pmts (other than health insurance) | | 7 Deductions included on Schedule K, lines 1 through 13e, 16l(1), and 16l(2), not charged against book income this year (itemize): a Depreciation $ 7,850. | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13e, 16l(1), and 16l(2) (itemize): a Depreciation $ 0. b Travel and entertainment $ 6,692. | 6,692. | | 7,850. |
| | | 8 Add lines 6 and 7 | 7,850. |
| 5 Add lines 1 through 4 | -3,140,427. | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | -3,148,277. |

## Schedule M-2 Analysis of Partners' Capital Accounts

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | -549,173. | 6 Distributions: a Cash | |
| 2 Capital contributed: a Cash | 44,506. | b Property | |
| b Property | | 7 Other decreases (itemize): | |
| 3 Net income (loss) per books | -3,147,119. | | |
| 4 Other increases (itemize): | | 8 Add lines 6 and 7 | |
| 5 Add lines 1 through 4 | -3,651,786. | 9 Balance at end of year. Subtract line 8 from line 5 | -3,651,786. |

☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0099

**Schedule K-1 (Form 1065)** **2004**

Department of the Treasury Internal Revenue Service

Tax year beginning ______, 2004 and ending ______, 20__

# Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

## Part I Information About the Partnership

**A** Partnership's employer identification number
[redacted]

**B** Partnership's name, address, city, state, and ZIP code
EPD INVESTMENTS, LLC
520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

**C** IRS Center where partnership filed return
OGDEN, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)
**E** ☐ Tax shelter registration number, if any
**F** ☐ Check if Form 8271 is attached

## Part II Information About the Partner

**G** Partner's identifying number
[redacted]

**H** Partner's name, address, city, state, and ZIP code
JERROLD S. PRESSMAN
[redacted]

**I** ☒ General partner or LLC member-manager ☐ Limited partner or other LLC member
**J** ☒ Domestic partner ☐ Foreign partner
**K** What type of entity is this partner? INDIVIDUAL

**L** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 49.00000 % | 49.00000 % |
| Loss | 49.00000 % | 49.00000 % |
| Capital | 49.00000 % | 49.00000 % |

**M** Partner's share of liabilities at year end:
Nonrecourse $
Qualified nonrecourse financing $ 23,104,490.
Recourse $ 64,855.

**N** Partner's capital account analysis:
Beginning capital account $ -269,775.
Capital contributed during the year $
Current year increase (decrease) $ -1,542,088.
Withdrawals and distributions $
Ending capital account $ -1,811,863.

☒ Tax basis ☐ GAAP ☐ Section 704(b) book
☐ Other (explain)

## Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| No. | Item | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | -1,579,464. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | 36,808. |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | |
| 11 | Other income (loss) | |
| 12 | Section 179 deduction | |
| 13 | Other deductions — A | 0. |
| 14 | Self-employment earnings (loss) — A | -1,579,464. |
| | C | 524,873. |
| 15 | Credits & credit recapture | |
| 16 | Foreign transactions | |
| 17 | Alternative minimum tax (AMT) items — A | 663. |
| 18 | Tax-exempt income and nondeductible expenses — C | 3,279. |
| 19 | Distributions | |
| 20 | Other information — A | 36,808. |

*See attached schedule for additional information.

FOR IRS USE ONLY

**This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.**

| | | *Enter on* |
|---|---|---|
| **1** | **Ordinary business income (loss).** You must first determine whether the income (loss) is passive or nonpassive. Then enter on your return as follows: | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | Schedule E, line 28, column (h) |
| | Nonpassive income | Schedule E, line 28, column (j) |
| **2** | **Net rental real estate income (loss)** | See the Partner's Instructions |
| **3** | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| **4** | **Guaranteed payments** | Schedule E, line 28, column (j) |
| **5** | **Interest income** | Form 1040, line 8a |
| **6a** | **Ordinary dividends** | Form 1040, line 9a |
| **6b** | **Qualified dividends** | Form 1040, line 9b |
| **7** | **Royalties** | Schedule E, line 4 |
| **8** | **Net short-term capital gain (loss)** | Schedule D, line 5, column (f) |
| **9a** | **Net long-term capital gain (loss)** | Schedule D, line 12, column (f) |
| **9b** | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D instructions) |
| **9c** | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10** | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11** | **Other income (loss)** | |
| | *Code* | |
| | **A** Other portfolio income (loss) | See the Partner's Instructions |
| | **B** Involuntary conversions | See the Partner's Instructions |
| | **C** Section 1256 contracts and straddles | Form 6781, line 1 |
| | **D** Mining exploration costs recapture | See Pub 535 |
| | **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| | **F** Other income (loss) | See the Partner's Instructions |
| **12** | **Section 179 deduction** | See the Partner's Instructions |
| **13** | **Other deductions** | |
| | **A** Cash contributions (50%) | Schedule A, line 15 |
| | **B** Cash contributions (30%) | Schedule A, line 15 |
| | **C** Noncash contributions (50%) | Schedule A, line 16 |
| | **D** Noncash contributions (30%) | Schedule A, line 16 |
| | **E** Capital gain property to a 50% organization (30%) | Schedule A, line 16 |
| | **F** Capital gain property (20%) | Schedule A, line 16 |
| | **G** Deductions — portfolio (2% floor) | Schedule A, line 22 |
| | **H** Deductions — portfolio (other) | Schedule A, line 27 |
| | **I** Investment interest expense | Form 4952, line 1 |
| | **J** Deductions — royalty income | Schedule E, line 18 |
| | **K** Section 59(e)(2) expenditures | See Partner's Instructions |
| | **L** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 31 |
| | **M** Educational assistance benefits | See the Partner's Instructions |
| | **N** Dependent care benefits | Form 2441, line 12 |
| | **O** Preproductive period expenses | See the Partner's Instructions |
| | **P** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | **Q** Penalty on early withdrawal of savings | Form 1040, line 33 |
| | **R** Pensions and IRAs | See the Partner's Instructions |
| | **S** Reforestation expense deduction | See the Partner's Instructions |
| | **T** Other deductions | See the Partner's Instructions |
| **14** | **Self-employment earnings (loss)** | |

**Note:** *If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.*

| | | |
|---|---|---|
| | **A** Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | **B** Gross farming or fishing income | See the Partner's Instructions |
| | **C** Gross non-farm income | See the Partner's Instructions |
| **15** | **Credits and credit recapture** | |
| | **A** Low-income housing credit (section 42(j)(5)) | Form 8586, line 5 |
| | **B** Low-income housing credit (other) | Form 8586, line 5 |
| | **C** Qualified rehabilitation expenditures (rental real estate) | Form 3468, line 1 |
| | **D** Qualified rehabilitation expenditures (other than rental real estate) | Form 3468, line 1 |
| | **E** Basis of energy property | Form 3468, line 2 |
| | **F** Qualified timber property | Form 3468, line 3 |
| | **G** Other rental real estate credits | See the Partner's Instructions |
| | **H** Other rental credits | See the Partner's Instructions |
| | *Code* | *Enter on* |
| | **I** Undistributed capital gains credit | Form 1040, line 69, box a |
| | **J** Work opportunity credit | Form 5884, line 3 |
| | **K** Welfare-to-work credit | Form 8861, line 3 |
| | **L** Disabled access credit | Form 8826, line 7 |
| | **M** Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| | **N** New York Liberty Zone business employee credit | Form 8884, line 3 |
| | **O** New markets credit | Form 8874, line 2 |
| | **P** Credit for employer social security and Medicare taxes | Form 8846, line 5 |
| | **Q** Backup withholding | Form 1040, line 63 |
| | **R** Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | **S** Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | **T** Recapture of investment credit | See Form 4255 |
| | **U** Other credits | See the Partner's Instructions |
| | **V** Recapture of other credits | See the Partner's Instructions |
| **16** | **Foreign transactions** | |
| | **A** Name of country or U.S. possession | Form 1116, Part I |
| | **B** Gross income from all sources | Form 1116, Part I |
| | **C** Gross income sourced at partner level | Form 1116, Part I |
| | *Foreign gross income sourced at partnership level* | |
| | **D** Passive | Form 1116, Part I |
| | **E** Listed categories | Form 1116, Part I |
| | **F** General limitation | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level* | |
| | **G** Interest expense | Form 1116, Part I |
| | **H** Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | **I** Passive | Form 1116, Part I |
| | **J** Listed categories | Form 1116, Part I |
| | **K** General limitation | Form 1116, Part I |
| | *Other information* | |
| | **L** Total foreign taxes paid | Form 1116, Part II |
| | **M** Total foreign taxes accrued | Form 1116, Part II |
| | **N** Reduction in taxes available for credit | Form 1116, line 12 |
| | **O** Foreign trading gross receipts | Form 8873 |
| | **P** Extraterritorial income exclusion | Form 8873 |
| | **Q** Other foreign transactions | See the Partner's Instructions |
| **17** | **Alternative minimum tax (AMT) items** | |
| | **A** Post-1986 depreciation adjustment | See the Partner's Instructions and the Instructions for Form 6251 |
| | **B** Adjusted gain or loss | |
| | **C** Depletion (other than oil & gas) | |
| | **D** Oil, gas, & geothermal properties — gross income | |
| | **E** Oil, gas, & geothermal properties — deductions | |
| | **F** Other AMT items | |
| **18** | **Tax-exempt income and nondeductible expenses** | |
| | **A** Tax-exempt interest income | Form 1040, line 8b |
| | **B** Other tax-exempt income | See the Partner's Instructions |
| | **C** Nondeductible expenses | See the Partner's Instructions |
| **19** | **Distributions** | |
| | **A** Cash and marketable securities | See the Partner's Instructions |
| | **B** Other property | See the Partner's Instructions |
| **20** | **Other information** | |
| | **A** Investment income | Form 4952, line 4a |
| | **B** Investment expenses | Form 4952, line 5 |
| | **C** Fuel tax credit information | Form 4136 |
| | **D** Look-back interest — completed long-term contracts | See Form 8697 |
| | **E** Look-back interest — income forecast method | See Form 8866 |
| | **F** Dispositions of property with section 179 deductions | See the Partner's Instructions |
| | **G** Recapture of section 179 deductions | |
| | **H** Special basis adjustments | |
| | **I** Section 453(l)(3) information | |
| | **J** Section 453A(c) information | |
| | **K** Section 1260(b) information | |
| | **L** Interest allocable to production expenditures | |
| | **M** CCF nonqualified withdrawals | |
| | **N** Information needed to figure depletion — oil and gas | |
| | **O** Amortization of Reforestation costs | |
| | **P** Unrelated business taxable income | |
| | **Q** Other information | |

☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0099

**Schedule K-1 (Form 1065)** **2004**

Department of the Treasury Internal Revenue Service

Tax year beginning ______, 2004 and ending ______, 20__

# Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

## Part I Information About the Partnership

**A** Partnership's employer identification number
[redacted]

**B** Partnership's name, address, city, state, and ZIP code
EPD INVESTMENTS, LLC
520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

**C** IRS Center where partnership filed return
OGDEN, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)
**E** ☐ Tax shelter registration number, if any
**F** ☐ Check if Form 8271 is attached

## Part II Information About the Partner

**G** Partner's identifying number
[redacted]

**H** Partner's name, address, city, state, and ZIP code
KEITH PRESSMAN
[redacted]

**I** ☒ General partner or LLC member-manager ☐ Limited partner or other LLC member

**J** ☒ Domestic partner ☐ Foreign partner

**K** What type of entity is this partner? INDIVIDUAL

**L** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 51.00000 % | 51.00000 % |
| Loss | 51.00000 % | 51.00000 % |
| Capital | 51.00000 % | 51.00000 % |

**M** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 24,047,530. |
| Recourse | $ 64,855. |

**N** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ -279,398. |
| Capital contributed during the year | $ 44,506. |
| Current year increase (decrease) | $ -1,605,031. |
| Withdrawals and distributions | $ |
| Ending capital account | $ -1,839,923. |

☒ Tax basis ☐ GAAP ☐ Section 704(b) book ☐ Other (explain)

## Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| Box | Item | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | -1,643,931. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | 38,310. |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | |
| 11 | Other income (loss) | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | A 0. |
| 14 | Self-employment earnings (loss) | A -1,643,931.<br>C 546,297. |
| 15 | Credits & credit recapture | |
| 16 | Foreign transactions | |
| 17 | Alternative minimum tax (AMT) items | A 690. |
| 18 | Tax-exempt income and nondeductible expenses | C 3,413. |
| 19 | Distributions | |
| 20 | Other information | A 38,310. |

*See attached schedule for additional information.

FOR IRS USE ONLY

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065. Schedule K-1 (Form 1065) 2004

PTPA0312 01/05/05

**This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.**

**1 Ordinary business income (loss).** You must first determine whether the income (loss) is passive or nonpassive. Then enter on your return as follows:

| | *Enter on* |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |
| **2 Net rental real estate income (loss)** | See the Partner's Instructions |
| **3 Other net rental income (loss)** | |
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Partner's Instructions |
| **4 Guaranteed payments** | Schedule E, line 28, column (j) |
| **5 Interest income** | Form 1040, line 8a |
| **6a Ordinary dividends** | Form 1040, line 9a |
| **6b Qualified dividends** | Form 1040, line 9b |
| **7 Royalties** | Schedule E, line 4 |
| **8 Net short-term capital gain (loss)** | Schedule D, line 5, column (f) |
| **9a Net long-term capital gain (loss)** | Schedule D, line 12, column (f) |
| **9b Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D instructions) |
| **9c Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10 Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11 Other income (loss)** | |
| *Code* | |
| A Other portfolio income (loss) | See the Partner's Instructions |
| B Involuntary conversions | See the Partner's Instructions |
| C Section 1256 contracts and straddles | Form 6781, line 1 |
| D Mining exploration costs recapture | See Pub 535 |
| E Cancellation of debt | Form 1040, line 21 or Form 982 |
| F Other income (loss) | See the Partner's Instructions |
| **12 Section 179 deduction** | See the Partner's Instructions |
| **13 Other deductions** | |
| A Cash contributions (50%) | Schedule A, line 15 |
| B Cash contributions (30%) | Schedule A, line 15 |
| C Noncash contributions (50%) | Schedule A, line 16 |
| D Noncash contributions (30%) | Schedule A, line 16 |
| E Capital gain property to a 50% organization (30%) | Schedule A, line 16 |
| F Capital gain property (20%) | Schedule A, line 16 |
| G Deductions — portfolio (2% floor) | Schedule A, line 22 |
| H Deductions — portfolio (other) | Schedule A, line 27 |
| I Investment interest expense | Form 4952, line 1 |
| J Deductions — royalty income | Schedule E, line 18 |
| K Section 59(e)(2) expenditures | See Partner's Instructions |
| L Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 31 |
| M Educational assistance benefits | See the Partner's Instructions |
| N Dependent care benefits | Form 2441, line 12 |
| O Preproductive period expenses | See the Partner's Instructions |
| P Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| Q Penalty on early withdrawal of savings | Form 1040, line 33 |
| R Pensions and IRAs | See the Partner's Instructions |
| S Reforestation expense deduction | See the Partner's Instructions |
| T Other deductions | See the Partner's Instructions |
| **14 Self-employment earnings (loss)** | |

Note: *If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.*

| | |
|---|---|
| A Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| B Gross farming or fishing income | See the Partner's Instructions |
| C Gross non-farm income | See the Partner's Instructions |
| **15 Credits and credit recapture** | |
| A Low-income housing credit (section 42(j)(5)) | Form 8586, line 5 |
| B Low-income housing credit (other) | Form 8586, line 5 |
| C Qualified rehabilitation expenditures (rental real estate) | Form 3468, line 1 |
| D Qualified rehabilitation expenditures (other than rental real estate) | Form 3468, line 1 |
| E Basis of energy property | Form 3468, line 2 |
| F Qualified timber property | Form 3468, line 3 |
| G Other rental real estate credits | See the Partner's Instructions |
| H Other rental credits | See the Partner's Instructions |

| *Code* | Enter on |
|---|---|
| I Undistributed capital gains credit | Form 1040, line 69, box a |
| J Work opportunity credit | Form 5884, line 3 |
| K Welfare-to-work credit | Form 8861, line 3 |
| L Disabled access credit | Form 8826, line 7 |
| M Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| N New York Liberty Zone business employee credit | Form 8884, line 3 |
| O New markets credit | Form 8874, line 2 |
| P Credit for employer social security and Medicare taxes | Form 8846, line 5 |
| Q Backup withholding | Form 1040, line 63 |
| R Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| S Recapture of low-income housing credit (other) | Form 8611, line 8 |
| T Recapture of investment credit | See Form 4255 |
| U Other credits | See the Partner's Instructions |
| V Recapture of other credits | See the Partner's Instructions |
| **16 Foreign transactions** | |
| A Name of country or U.S. possession | Form 1116, Part I |
| B Gross income from all sources | Form 1116, Part I |
| C Gross income sourced at partner level | Form 1116, Part I |
| *Foreign gross income sourced at partnership level* | |
| D Passive | Form 1116, Part I |
| E Listed categories | Form 1116, Part I |
| F General limitation | Form 1116, Part I |
| *Deductions allocated and apportioned at partnership level* | |
| G Interest expense | Form 1116, Part I |
| H Other | Form 1116, Part I |
| *Deductions allocated and apportioned at partnership level to foreign source income* | |
| I Passive | Form 1116, Part I |
| J Listed categories | Form 1116, Part I |
| K General limitation | Form 1116, Part I |
| *Other information* | |
| L Total foreign taxes paid | Form 1116, Part II |
| M Total foreign taxes accrued | Form 1116, Part II |
| N Reduction in taxes available for credit | Form 1116, line 12 |
| O Foreign trading gross receipts | Form 8873 |
| P Extraterritorial income exclusion | Form 8873 |
| Q Other foreign transactions | See the Partner's Instructions |
| **17 Alternative minimum tax (AMT) items** | |
| A Post-1986 depreciation adjustment | See the Partner's Instructions and the Instructions for Form 6251 |
| B Adjusted gain or loss | |
| C Depletion (other than oil & gas) | |
| D Oil, gas, & geothermal properties — gross income | |
| E Oil, gas, & geothermal properties — deductions | |
| F Other AMT items | |
| **18 Tax-exempt income and nondeductible expenses** | |
| A Tax-exempt interest income | Form 1040, line 8b |
| B Other tax-exempt income | See the Partner's Instructions |
| C Nondeductible expenses | See the Partner's Instructions |
| **19 Distributions** | |
| A Cash and marketable securities | See the Partner's Instructions |
| B Other property | See the Partner's Instructions |
| **20 Other information** | |
| A Investment income | Form 4952, line 4a |
| B Investment expenses | Form 4952, line 5 |
| C Fuel tax credit information | Form 4136 |
| D Look-back interest — completed long-term contracts | See Form 8697 |
| E Look-back interest — income forecast method | See Form 8866 |
| F Dispositions of property with section 179 deductions | See the Partner's Instructions |
| G Recapture of section 179 deductions | |
| H Special basis adjustments | |
| I Section 453(l)(3) information | |
| J Section 453A(c) information | |
| K Section 1260(b) information | |
| L Interest allocable to production expenditures | |
| M CCF nonqualified withdrawals | |
| N Information needed to figure depletion — oil and gas | |
| O Amortization of Reforestation costs | |
| P Unrelated business taxable income | |
| Q Other information | |

Form 1065, Line 20
**Other deductions**

| | |
|---|---|
| ACCOUNTING | 9,864. |
| AUTOMOBILE AND TRUCK EXPENSE | 618. |
| BANK CHARGES | 0. |
| DELIVERY AND FREIGHT | 4,491. |
| INSURANCE | 0. |
| LEGAL AND PROFESSIONAL | 76,151. |
| OFFICE EXPENSE | 2,798. |
| OUTSIDE SERVICES | 38,898. |
| POSTAGE | 679. |
| SUPPLIES | 0. |
| TELEPHONE | -18,011. |
| TRAVEL | 1,063. |
| CONSULTING FEES | 264,427. |
| PAYROLL SERVICE FEES | 1,338. |
| BANK CHARGES | 49,289. |
| COMMISSIONS | 66,712. |
| DUES AND SUBSCRIPTIONS | 1,160. |
| PARKING | 432. |
| PROMOTIONAL ITEMS | 0. |
| EQUIPMENT RENT | 2,446,416. |
| INSURANCE | 39,831. |
| MEALS AND ENTERTAINMENT (50%) | 6,692. |
| OUTSIDE SERVICES | 5,200. |
| COMPUTER EXPENSES | 115. |
| STORAGE | 2,794. |
| ROUNDING | -8. |
| Total | 3,000,949. |

Form 1065, Schedule L, Line 6
**Other Current Assets**

| **Other Current Assets:** | Beginning of tax year | End of tax year |
|---|---|---|
| MISCELLANEOUS RECEIVABLE | 8,075. | 7,709. |
| Total | 8,075. | 7,709. |

Form 1065, Schedule L, Line 8
**Other Investments**

| **Other Investments:** | Beginning of tax year | End of tax year |
|---|---|---|
| NOTES RECEIVABLE | 22,098,371. | 31,962,368. |
| INTERCOMPANY RECEIVABLES | | 914,358. |
| MISCELLANEOUS RECEIVABLES | | 16,800. |
| OTHER RECEIVABLES | | 229,449. |
| Total | 22,098,371. | 33,122,975. |

Form 1065, Schedule L, Line 13
**Other Assets**

| **Other Assets:** | Beginning of tax year | End of tax year |
| --- | --- | --- |
| GOODWILL | 7,175,768. | |
| LONG-TERM INVESTMENTS | | 10,161,047. |
| OTHER ASSETS | | 83,920. |
| Total | 7,175,768. | 10,244,967. |

2013
DEPONENT: T. Jonavic
DATE: 6/29/11
LORI BARKLEY, CSR #6426

Form **1065**
Department of the Treasury
Internal Revenue Service

# U.S. Return of Partnership Income

For calendar year 2005, or tax year beginning __________, 2005, and ending __________, 20 ____.
► See separate instructions.

OMB No.1545-0099

**2005**

| | | |
|---|---|---|
| A Principal business activity: SERVICE | Name of partnership: EPD INVESTMENTS, LLC | D Employer identification number: [redacted] |
| B Principal product or service: INVESTMENTS | Number, street, and room or suite number. If a P.O. box, see the instructions: 520 BROADWAY, SUITE 660 | E Date business started: 07/01/03 |
| C Business code number: 532400 | City or town: SANTA MONICA State: CA ZIP code: 90401 | F Total assets (see instrs): $ 43,817,222. |

Use the IRS label. Otherwise, print or type.

G Check applicable boxes: (1) [ ] Initial return (2) [ ] Final return (3) [ ] Name change (4) [ ] Address change (5) [ ] Amended return

H Check accounting method: (1) [X] Cash (2) [ ] Accrual (3) [ ] Other (specify) ► ________________

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ► 2

**Caution:** *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

**INCOME**

| Line | Description | | | Line | Amount |
|---|---|---|---|---|---|
| 1a | Gross receipts or sales | 1a | 4,493,653. | | |
| b | Less returns and allowances | 1b | | 1c | 4,493,653. |
| 2 | Cost of goods sold (Schedule A, line 8) | | | 2 | 1,872,000. |
| 3 | Gross profit. Subtract line 2 from line 1c | | | 3 | 2,621,653. |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts *(attach statement)* | | | 4 | |
| 5 | Net farm profit (loss) *(attach Schedule F (Form 1040))* | | | 5 | |
| 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 6 | |
| 7 | Other income (loss) *(attach schedule)* DEFERRED REVENUE RECOGNIZED | | | 7 | 732,381. |
| 8 | **Total income (loss).** Combine lines 3 through 7 | | | 8 | 3,354,034. |

**DEDUCTIONS** (SEE INSTRUCTIONS FOR LIMITATIONS)

| Line | Description | | | Line | Amount |
|---|---|---|---|---|---|
| 9 | Salaries and wages (other than to partners) (less employment credits) | | | 9 | 156,411. |
| 10 | Guaranteed payments to partners | | | 10 | |
| 11 | Repairs and maintenance | | | 11 | |
| 12 | Bad debts | | | 12 | |
| 13 | Rent | | | 13 | 2,885. |
| 14 | Taxes and licenses | | | 14 | 27,416. |
| 15 | Interest | | | 15 | 1,625,427. |
| 16a | Depreciation *(if required, attach Form 4562)* | 16a | 7,499. | | |
| b | Less depreciation reported on Schedule A and elsewhere on return | 16b | | 16c | 7,499. |
| 17 | Depletion **(Do not deduct oil and gas depletion.)** | | | 17 | |
| 18 | Retirement plans, etc | | | 18 | |
| 19 | Employee benefit programs | | | 19 | |
| 20 | Other deductions *(attach statement)* STMT | | | 20 | 3,525,140. |
| 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | | | 21 | 5,344,778. |
| 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 | | | 22 | -1,990,744. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member) is based on all information of which preparer has any knowledge.

► ______________________ Signature of general partner or limited liability company member ► ________ Date

May the IRS discuss this return with the preparer shown below (see instrs)? [X] Yes [ ] No

**Paid Preparer's Use Only**

| | | |
|---|---|---|
| Preparer's signature | Date | Check if self-employed ► [ ] Preparer's SSN or PTIN |
| Firm's name (or yours if self-employed), address, and ZIP code: THEODORE P. JONAVIC, CPA [redacted] CA 91701 | | EIN ► |
| | | Phone no. (909) 989-7426 |

Form 1065 (2005) EPD INVESTMENTS, LLC [redacted] Page 2

**Schedule A Cost of Goods Sold** (see the instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | 1,872,000. |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs *(attach statement)* | 4 | |
| 5 | Other costs *(attach statement)* | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | 1,872,000. |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 1,872,000. |

9a Check all methods used for valuing closing inventory:

(i) ☐ Cost as described in Regulations section 1.471-3

(ii) ☐ Lower of cost or market as described in Regulations section 1.471-4

(iii) ☐ Other (specify method used and attach explanation) ►

b Check this box if there was a writedown of 'subnormal' goods as described in Regulations section 1.471-2(c) ► ☐

c Check this box if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)* ► ☐

d Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership? ☐ Yes ☒ No

e Was there any change in determining quantities, cost, or valuations between opening and closing inventory? ☐ Yes ☒ No

If 'Yes', attach explanation.

**Schedule B Other Information**

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box:<br>a ☐ Domestic general partnership b ☐ Domestic limited partnership<br>c ☒ Domestic limited liability company d ☐ Domestic limited liability partnership<br>e ☐ Foreign partnership f ☐ Other ► | | |
| 2 | Are any partners in this partnership also partnerships? | | X |
| 3 | During the partnership's tax year, did the partnership own any interest in another partnership or in any foreign entity that was disregarded as an entity separate from its owner under Regulations sections 301.7701-2 and 301.7701-3? If yes, see instructions for required attachment | | X |
| 4 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 5 | Does this partnership meet all three of the following requirements?<br>a The partnership's total receipts for the tax year were less than $250,000;<br>b The partnership's total assets at the end of the tax year were less than $600,000; and<br>c Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return.<br>If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item N on Schedule K-1 | | X |
| 6 | Does this partnership have any foreign partners? If 'Yes,' the partnership may have to file Forms 8804, 8805 and 8813. See the instructions | | X |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | Has this partnership filed, or is it required to file, a return under section 6111 to provide information on any reportable transaction? | | X |
| 9 | At any time during calendar year 2005, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1. If 'Yes,' enter the name of the foreign country. ► | | X |
| 10 | During the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520. See the instructions | | X |
| 11 | Was there a distribution of property or a transfer (for example, by sale or death) of a partnership interest during the tax year? If 'Yes,' you may elect to adjust the basis of the partnership's assets under section 754 by attaching the statement described under *Elections Made By the Partnership* in the instructions | | X |
| 12 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return ► | | |

**Designation of Tax Matters Partner** (see the instructions)

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

Name of designated TMP ► KEITH PRESSMAN

Identifying number of TMP ► [redacted]

Address of designated TMP ► 520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

Form 1065 (2005)

PTPA0112 12/28/05

Case 2:10-bk-62208-ER Doc 200-4 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part4 Page 7 of 17

Form 1065 (2005) EPD INVESTMENTS, LLC [redacted] Page 3

## Schedule K Partners' Distributive Share Items

| | | Line | Total amount |
|---|---|---|---|
| Income (Loss) | 1 Ordinary business income (loss) (page 1, line 22) | 1 | -1,990,744. |
| | 2 Net rental real estate income (loss) *(attach Form 8825)* | 2 | |
| | 3a Other gross rental income (loss) — 3a | | |
| | b Expenses from other rental activities *(attach stmt)* — 3b | | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Guaranteed payments | 4 | |
| | 5 Interest income | 5 | 104,691. |
| | 6 Dividends: a Ordinary dividends | 6a | |
| | b Qualified dividends — 6b | | |
| | 7 Royalties | 7 | |
| | 8 Net short-term capital gain (loss) *(attach Schedule D (Form 1065))* | 8 | |
| | 9a Net long-term capital gain (loss) *(attach Schedule D (Form 1065))* | 9a | |
| | b Collectibles (28%) gain (loss) — 9b | | |
| | c Unrecaptured section 1250 gain *(attach statement)* — 9c | | |
| | 10 Net section 1231 gain (loss) *(attach Form 4797)* | 10 | |
| | 11 Other income (loss) *(see instructions)* Type ► | 11 | |
| Deductions | 12 Section 179 deduction *(attach Form 4562)* | 12 | |
| | 13a Contributions | 13a | |
| | b Investment interest expense | 13b | |
| | c Section 59(e)(2) expenditures: (1) Type ► (2) Amount ► | 13c (2) | |
| | d Other deductions *(see instructions)* Type ► | 13d | |
| Self-Employment | 14a Net earnings (loss) from self-employment | 14a | -1,990,744. |
| | b Gross farming or fishing income | 14b | |
| | c Gross nonfarm income | 14c | 3,354,034. |
| Credits & Credit Recapture | 15a Low-income housing credit (section 42(j)(5)) | 15a | |
| | b Low-income housing credit (other) | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate) *(attach Form 3468)* | 15c | |
| | d Other rental real estate credits *(see instructions)* Type ► | 15d | |
| | e Other rental credits *(see instructions)* Type ► | 15e | |
| | f Other credits and credit recapture *(see instructions)* Type ► | 15f | |
| Foreign Transactions | 16a Name of country or U.S. possession ► | | |
| | b Gross income from all sources | 16b | |
| | c Gross income sourced at partner level | 16c | |
| | *Foreign gross income sourced at partnership level* | | |
| | d Passive ► e Listed categories *(attach statement)* ► f General limitation ► | 16f | |
| | *Deductions allocated and apportioned at partner level* | | |
| | g Interest expense ► h Other ► | 16h | |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | | |
| | i Passive ► j Listed categories *(attach statement)* ► k General limitation ► | 16k | |
| | l Total foreign taxes (check one): ► Paid ☐ Accrued ☐ | 16l | |
| | m Reduction in taxes available for credit *(attach statement)* | 16m | |
| | n Other foreign tax information *(attach statement)* | | |
| Alternative Minimum Tax (AMT) Items | 17a Post-1986 depreciation adjustment | 17a | -4. |
| | b Adjusted gain or loss | 17b | |
| | c Depletion (other than oil and gas) | 17c | |
| | d Oil, gas, and geothermal properties – gross income | 17d | |
| | e Oil, gas, and geothermal properties – deductions | 17e | |
| | f Other AMT items *(attach stmt)* | 17f | |
| Other Information | 18a Tax-exempt interest income | 18a | |
| | b Other tax-exempt income | 18b | |
| | c Nondeductible expenses | 18c | 278. |
| | 19a Distributions of cash and marketable securities | 19a | |
| | b Distributions of other property | 19b | |
| | 20a Investment income | 20a | 104,691. |
| | b Investment expenses | 20b | |
| | c Other items and amounts *(attach stmt)* | | |

BAA Form 1065 (2005)

PTPA0134 07/26/05

Form 1065 (2005) EPD INVESTMENTS, LLC [redacted] Page 4

**Analysis of Net Income (Loss)**

| | | |
|---|---|---|
| 1 Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | 1 | -1,886,053. |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | -1,886,053. | | | | |

**Note:** Schedules L, M-1 and M-2 are not required if Question 5 of Schedule B is answered 'Yes.'

**Schedule L Balance Sheets per Books**

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 198,509. | | 183,211. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach stmt) Ln. 6 Stmt | | 1,099,165. | | 626,631. |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments (attach stmt) Ln. 8 Stmt | | 32,401,255. | | 34,745,618. |
| 9a Buildings and other depreciable assets | 70,376. | | 70,376. | |
| b Less accumulated depreciation | 14,592. | 55,784. | 22,091. | 48,285. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 13 Other assets (attach stmt) Ln 13 Stmt | | 10,161,047. | | 8,213,477. |
| 14 Total assets | | 43,915,760. | | 43,817,222. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | 129,710. | | 11,517. |
| 16 Mortgages, notes, bonds payable in less than 1 year | | 137,500. | | 137,500. |
| 17 Other current liabilities (attach stmt) Ln. 17 Stmt | | 15,299,408. | | 17,209,754. |
| 18 All nonrecourse loans | | | | |
| 19 Mortgages, notes, bonds payable in 1 year or more | | 31,516,991. | | 31,510,905. |
| 20 Other liabilities (attach stmt) | | | | |
| 21 Partners' capital accounts | | -3,167,849. | | -5,052,454. |
| 22 Total liabilities and capital | | 43,915,760. | | 43,817,222. |

**Schedule M-1 Reconciliation of Income (Loss) per Books With Income (Loss) per Return**

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -1,878,831. | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): a Tax-exempt interest $ | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | | |
| 3 Guaranteed pmts (other than health insurance) | | 7 Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): a Depreciation $ 7,500. | 7,500. |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): a Depreciation $ b Travel and entertainment $ 278. | 278. | 8 Add lines 6 and 7 | 7,500. |
| 5 Add lines 1 through 4 | -1,878,553. | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | -1,886,053. |

**Schedule M-2 Analysis of Partners' Capital Accounts**

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | -3,167,849. | 6 Distributions: a Cash | |
| 2 Capital contributed: a Cash | | b Property | |
| b Property | | 7 Other decreases (itemize): PRIOR YEAR ADJUSTMENT | 5,774. |
| 3 Net income (loss) per books | -1,878,831. | | |
| 4 Other increases (itemize): | | 8 Add lines 6 and 7 | 5,774. |
| 5 Add lines 1 through 4 | -5,046,680. | 9 Balance at end of year. Subtract line 8 from line 5 | -5,052,454. |

PTPA0134 07/26/05 Form 1065 (2005)

Case 2:10-bk-62208-ER Doc 200-4 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part4 Page 9 of 17

651105

☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0099

**Schedule K-1 (Form 1065)** **2005**

Department of the Treasury Internal Revenue Service

For calendar year 2005, or tax year beginning ________, 2005 ending ________.

## Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

### Part I Information About the Partnership

**A** Partnership's employer identification number
[redacted]

**B** Partnership's name, address, city, state, and ZIP code
EPD INVESTMENTS, LLC
520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

**C** IRS Center where partnership filed return
OGDEN, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)
**E** ☐ Tax shelter registration number, if any
**F** ☐ Check if Form 8271 is attached

### Part II Information About the Partner

**G** Partner's identifying number
[redacted]

**H** Partner's name, address, city, state, and ZIP code
JERROLD S. PRESSMAN
[redacted]

**I** ☒ General partner or LLC member-manager ☐ Limited partner or other LLC member

**J** ☒ Domestic partner ☐ Foreign partner

**K** What type of entity is this partner? INDIVIDUAL

**L** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 49.00000 % | 49.00000 % |
| Loss | 49.00000 % | 49.00000 % |
| Capital | 49.00000 % | 49.00000 % |

**M** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 15,507,718. |
| Recourse | $ 8,438,423. |

**N** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ -269,775. |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ -923,456. |
| Withdrawals and distributions | $ |
| Ending capital account | $ -1,193,231. |

☒ Tax basis ☐ GAAP ☐ Section 704(b) book
☐ Other (explain)

### Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| Line | Item | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | -975,465. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | 51,299. |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | |
| 11 | Other income (loss) | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| 14 | Self-employment earnings (loss) | A -975,465. |
| | | C 1,643,477. |
| 15 | Credits & credit recapture | |
| 16 | Foreign transactions | |
| 17 | Alternative minimum tax (AMT) items | A -2. |
| 18 | Tax-exempt income and nondeductible expenses | C 136. |
| 19 | Distributions | |
| 20 | Other information | A 51,299. |

*See attached statement for additional information.

FOR IRS USE ONLY

BAA For Privacy Act and Paperwork Reduction Act Notice, see Instructions for Form 1065. Schedule K-1 (Form 1065) 2005

PTPA0312 01/04/06

Schedule K-1 (Form 1065) 2005 JERROLD S. PRESSMAN [redacted] Page 2

**This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.**

1 Ordinary business income (loss). You must first determine whether the income (loss) is passive or nonpassive. Then enter on your return as follows:

| | Enter on |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |
| 2 Net rental real estate income (loss) | See the Partner's Instructions |
| 3 Other net rental income (loss) | |
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Partner's Instructions |
| 4 Guaranteed payments | Schedule E, line 28, column (j) |
| 5 Interest income | Form 1040, line 8a |
| 6a Ordinary dividends | Form 1040, line 9a |
| 6b Qualified dividends | Form 1040, line 9b |
| 7 Royalties | Schedule E, line 4 |
| 8 Net short-term capital gain (loss) | Schedule D, line 5, column (f) |
| 9a Net long-term capital gain (loss) | Schedule D, line 12, column (f) |
| 9b Collectibles (28%) gain (loss) | 28% Rate Gain Worksheet, line 4 (Schedule D instructions) |
| 9c Unrecaptured section 1250 gain | See the Partner's Instructions |
| 10 Net section 1231 gain (loss) | See the Partner's Instructions |
| 11 Other income (loss) | |
| Code | |
| A Other portfolio income (loss) | See the Partner's Instructions |
| B Involuntary conversions | See the Partner's Instructions |
| C Section 1256 contracts and straddles | Form 6781, line 1 |
| D Mining exploration costs recapture | See Pub 535 |
| E Cancellation of debt | Form 1040, line 21 or Form 982 |
| F Other income (loss) | See the Partner's Instructions |
| 12 Section 179 deduction | See the Partner's Instructions |
| 13 Other deductions | |
| A Cash contributions (50%) | See the Partner's Instructions |
| B Cash contributions (30%) | See the Partner's Instructions |
| C Noncash contributions (50%) | See the Partner's Instructions |
| D Noncash contributions (30%) | See the Partner's Instructions |
| E Capital gain property to a 50% organization (30%) | See the Partner's Instructions |
| F Capital gain property (20%) | See the Partner's Instructions |
| G Cash contributions (100%) | See the Partner's Instructions |
| H Investment interest expense | Form 4952, line 1 |
| I Deductions — royalty income | Schedule E, line 18 |
| J Section 59(e)(2) expenditures | See Partner's Instructions |
| K Deductions — portfolio (2% floor) | Schedule A, line 22 |
| L Deductions — portfolio (other) | Schedule A, line 27 |
| M Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| N Educational assistance benefits | See the Partner's Instructions |
| O Dependent care benefits | Form 2441, line 12 |
| P Preproductive period expenses | See the Partner's Instructions |
| Q Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| R Pensions and IRAs | See the Partner's Instructions |
| S Reforestation expense deduction | See the Partner's Instructions |
| T Domestic production activities information | See Form 8903 Instructions |
| U Qualified production activities income | Form 8903, line 7 |
| V Employer's W-2 wages | Form 8903, line 13 |
| W Other deductions | See the Partner's Instructions |
| 14 Self-employment earnings (loss) | |

*Note. If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.*

| | |
|---|---|
| A Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| B Gross farming or fishing income | See the Partner's Instructions |
| C Gross non-farm income | See the Partner's Instructions |
| 15 Credits and credit recapture | |
| A Low-income housing credit (section 42(j)(5)) | Form 8586, line 4 |
| B Low-income housing credit (other) | Form 8586, line 4 |
| C Qualified rehabilitation expenditures (rental real estate) | Form 3468, line 1 |
| D Qualified rehabilitation expenditures (other than rental real estate) | Form 3468, line 1 |
| E Basis of energy property | See the Partner's Instructions |
| F Other rental real estate credits | See the Partner's Instructions |
| G Other rental credits | See the Partner's Instructions |
| H Undistributed capital gains credit | Form 1040, line 70; check box a |
| I Credit for alcohol used as fuel | See the Partner's Instructions |

| Code | Enter on |
|---|---|
| J Work opportunity credit | Form 5884, line 3 |
| K Welfare-to-work credit | Form 8861, line 3 |
| L Disabled access credit | Form 8826, line 7 |
| M Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| N Credit for increasing research activities | Form 6765, line 42 |
| O New markets credit | Form 8874, line 2 |
| P Credit for employer social security and Medicare taxes | Form 8846, line 5 |
| Q Backup withholding | Form 1040, line 64 |
| R Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| S Recapture of low-income housing credit (other) | Form 8611, line 8 |
| T Recapture of investment credit | See Form 4255 |
| U Other credits | See the Partner's Instructions |
| V Recapture of other credits | See the Partner's Instructions |
| 16 Foreign transactions | |
| A Name of country or U.S. possession | Form 1116, Part I |
| B Gross income from all sources | Form 1116, Part I |
| C Gross income sourced at partner level | Form 1116, Part I |
| *Foreign gross income sourced at partnership level* | |
| D Passive | Form 1116, Part I |
| E Listed categories | Form 1116, Part I |
| F General limitation | Form 1116, Part I |
| *Deductions allocated and apportioned at partnership level* | |
| G Interest expense | Form 1116, Part I |
| H Other | Form 1116, Part I |
| *Deductions allocated and apportioned at partnership level to foreign source income* | |
| I Passive | Form 1116, Part I |
| J Listed categories | Form 1116, Part I |
| K General limitation | Form 1116, Part I |
| *Other information* | |
| L Total foreign taxes paid | Form 1116, Part II |
| M Total foreign taxes accrued | Form 1116, Part II |
| N Reduction in taxes available for credit | Form 1116, line 12 |
| O Foreign trading gross receipts | Form 8873 |
| P Extraterritorial income exclusion | Form 8873 |
| Q Other foreign transactions | See the Partner's Instructions |
| 17 Alternative minimum tax (AMT) items | |
| A Post-1986 depreciation adjustment | See the Partner's Instructions and the Instructions for Form 6251 |
| B Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| C Depletion (other than oil & gas) | See the Partner's Instructions and the Instructions for Form 6251 |
| D Oil, gas, & geothermal properties — gross income | See the Partner's Instructions and the Instructions for Form 6251 |
| E Oil, gas, & geothermal properties — deductions | See the Partner's Instructions and the Instructions for Form 6251 |
| F Other AMT items | See the Partner's Instructions and the Instructions for Form 6251 |
| 18 Tax-exempt income and nondeductible expenses | |
| A Tax-exempt interest income | Form 1040, line 8b |
| B Other tax-exempt income | See the Partner's Instructions |
| C Nondeductible expenses | See the Partner's Instructions |
| 19 Distributions | |
| A Cash and marketable securities | See the Partner's Instructions |
| B Other property | See the Partner's Instructions |
| 20 Other information | |
| A Investment income | Form 4952, line 4a |
| B Investment expenses | Form 4952, line 5 |
| C Fuel tax credit information | Form 4136 |
| D Look-back interest — completed long-term contracts | See Form 8697 |
| E Look-back interest — income forecast method | See Form 8866 |
| F Dispositions of property with section 179 deductions | See the Partner's Instructions |
| G Recapture of section 179 deductions | See the Partner's Instructions |
| H Special basis adjustments | See the Partner's Instructions |
| I Section 453(l)(3) information | See the Partner's Instructions |
| J Section 453A(c) information | See the Partner's Instructions |
| K Section 1260(b) information | See the Partner's Instructions |
| L Interest allocable to production expenditures | See the Partner's Instructions |
| M CCF nonqualified withdrawals | See the Partner's Instructions |
| N Information needed to figure depletion — oil and gas | See the Partner's Instructions |
| O Amortization of Reforestation costs | See the Partner's Instructions |
| P Unrelated business taxable income | See the Partner's Instructions |
| Q Other information | See the Partner's Instructions |

PTPA0312 01/04/06

Schedule K-1 (Form 1065) 2005

651105

☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0099

**Schedule K-1 (Form 1065)** **2005**

Department of the Treasury Internal Revenue Service

For calendar year 2005, or tax year beginning ________, 2005 ending ________.

## Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

### Part I Information About the Partnership

**A** Partnership's employer identification number
[redacted]

**B** Partnership's name, address, city, state, and ZIP code
EPD INVESTMENTS, LLC
[redacted]

**C** IRS Center where partnership filed return
OGDEN, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)
**E** ☐ Tax shelter registration number, if any
**F** ☐ Check if Form 8271 is attached

### Part II Information About the Partner

**G** Partner's identifying number
[redacted]

**H** Partner's name, address, city, state, and ZIP code
KEITH PRESSMAN
[redacted]

**I** ☒ General partner or LLC member-manager ☐ Limited partner or other LLC member

**J** ☒ Domestic partner ☐ Foreign partner

**K** What type of entity is this partner? INDIVIDUAL

**L** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 51.00000 % | 51.00000 % |
| Loss | 51.00000 % | 51.00000 % |
| Capital | 51.00000 % | 51.00000 % |

**M** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 16,140,687. |
| Recourse | $ 8,782,848. |

**N** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ -279,398. |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ -961,149. |
| Withdrawals and distributions | $ |
| Ending capital account | $ -1,240,547. |

☒ Tax basis ☐ GAAP ☐ Section 704(b) book
☐ Other (explain)

### Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| Box | Item | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | -1,015,279. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | 53,392. |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | |
| 11 | Other income (loss) | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| 14 | Self-employment earnings (loss) A | -1,015,279. |
| | C | 1,710,557. |
| 15 | Credits & credit recapture | |
| 16 | Foreign transactions | |
| 17 | Alternative minimum tax (AMT) items A | -2. |
| 18 | Tax-exempt income and nondeductible expenses C | 142. |
| 19 | Distributions | |
| 20 | Other information A | 53,392. |

*See attached statement for additional information.

FOR IRS USE ONLY

BAA For Privacy Act and Paperwork Reduction Act Notice, see Instructions for Form 1065. Schedule K-1 (Form 1065) 2005

PTPA0312 01/04/06

**This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.**

| | | Enter on |
|---|---|---|
| 1 | Ordinary business income (loss). You must first determine whether the income (loss) is passive or nonpassive. Then enter on your return as follows: | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | Schedule E, line 28, column (h) |
| | Nonpassive income | Schedule E, line 28, column (j) |
| 2 | Net rental real estate income (loss) | See the Partner's Instructions |
| 3 | Other net rental income (loss) | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| 4 | Guaranteed payments | Schedule E, line 28, column (j) |
| 5 | Interest income | Form 1040, line 8a |
| 6a | Ordinary dividends | Form 1040, line 9a |
| 6b | Qualified dividends | Form 1040, line 9b |
| 7 | Royalties | Schedule E, line 4 |
| 8 | Net short-term capital gain (loss) | Schedule D, line 5, column (f) |
| 9a | Net long-term capital gain (loss) | Schedule D, line 12, column (f) |
| 9b | Collectibles (28%) gain (loss) | 28% Rate Gain Worksheet, line 4 (Schedule D instructions) |
| 9c | Unrecaptured section 1250 gain | See the Partner's Instructions |
| 10 | Net section 1231 gain (loss) | See the Partner's Instructions |
| 11 | Other income (loss) | |
| | *Code* | |
| | A Other portfolio income (loss) | See the Partner's Instructions |
| | B Involuntary conversions | See the Partner's Instructions |
| | C Section 1256 contracts and straddles | Form 6781, line 1 |
| | D Mining exploration costs recapture | See Pub 535 |
| | E Cancellation of debt | Form 1040, line 21 or Form 982 |
| | F Other income (loss) | See the Partner's Instructions |
| 12 | Section 179 deduction | See the Partner's Instructions |
| 13 | Other deductions | |
| | A Cash contributions (50%) | See the Partner's Instructions |
| | B Cash contributions (30%) | See the Partner's Instructions |
| | C Noncash contributions (50%) | See the Partner's Instructions |
| | D Noncash contributions (30%) | See the Partner's Instructions |
| | E Capital gain property to a 50% organization (30%) | See the Partner's Instructions |
| | F Capital gain property (20%) | See the Partner's Instructions |
| | G Cash contributions (100%) | See the Partner's Instructions |
| | H Investment interest expense | Form 4952, line 1 |
| | I Deductions — royalty income | Schedule E, line 18 |
| | J Section 59(e)(2) expenditures | See Partner's Instructions |
| | K Deductions — portfolio (2% floor) | Schedule A, line 22 |
| | L Deductions — portfolio (other) | Schedule A, line 27 |
| | M Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | N Educational assistance benefits | See the Partner's Instructions |
| | O Dependent care benefits | Form 2441, line 12 |
| | P Preproductive period expenses | See the Partner's Instructions |
| | Q Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | R Pensions and IRAs | See the Partner's Instructions |
| | S Reforestation expense deduction | See the Partner's Instructions |
| | T Domestic production activities information | See Form 8903 Instructions |
| | U Qualified production activities income | Form 8903, line 7 |
| | V Employer's W-2 wages | Form 8903, line 13 |
| | W Other deductions | See the Partner's Instructions |
| 14 | Self-employment earnings (loss) | |

*Note. If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.*

| | | |
|---|---|---|
| | A Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | B Gross farming or fishing income | See the Partner's Instructions |
| | C Gross non-farm income | See the Partner's Instructions |
| 15 | Credits and credit recapture | |
| | A Low-income housing credit (section 42(j)(5)) | Form 8586, line 4 |
| | B Low-income housing credit (other) | Form 8586, line 4 |
| | C Qualified rehabilitation expenditures (rental real estate) | Form 3468, line 1 |
| | D Qualified rehabilitation expenditures (other than rental real estate) | Form 3468, line 1 |
| | E Basis of energy property | See the Partner's Instructions |
| | F Other rental real estate credits | See the Partner's Instructions |
| | G Other rental credits | See the Partner's Instructions |
| | H Undistributed capital gains credit | Form 1040, line 70; check box a |
| | I Credit for alcohol used as fuel | See the Partner's Instructions |

| | Code | Enter on |
|---|---|---|
| | J Work opportunity credit | Form 5884, line 3 |
| | K Welfare-to-work credit | Form 8861, line 3 |
| | L Disabled access credit | Form 8826, line 7 |
| | M Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| | N Credit for increasing research activities | Form 6765, line 42 |
| | O New markets credit | Form 8874, line 2 |
| | P Credit for employer social security and Medicare taxes | Form 8846, line 5 |
| | Q Backup withholding | Form 1040, line 64 |
| | R Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | S Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | T Recapture of investment credit | See Form 4255 |
| | U Other credits | See the Partner's Instructions |
| | V Recapture of other credits | See the Partner's Instructions |
| 16 | Foreign transactions | |
| | A Name of country or U.S. possession | Form 1116, Part I |
| | B Gross income from all sources | Form 1116, Part I |
| | C Gross income sourced at partner level | Form 1116, Part I |
| | *Foreign gross income sourced at partnership level* | |
| | D Passive | Form 1116, Part I |
| | E Listed categories | Form 1116, Part I |
| | F General limitation | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level* | |
| | G Interest expense | Form 1116, Part I |
| | H Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | I Passive | Form 1116, Part I |
| | J Listed categories | Form 1116, Part I |
| | K General limitation | Form 1116, Part I |
| | *Other information* | |
| | L Total foreign taxes paid | Form 1116, Part II |
| | M Total foreign taxes accrued | Form 1116, Part II |
| | N Reduction in taxes available for credit | Form 1116, line 12 |
| | O Foreign trading gross receipts | Form 8873 |
| | P Extraterritorial income exclusion | Form 8873 |
| | Q Other foreign transactions | See the Partner's Instructions |
| 17 | Alternative minimum tax (AMT) items | |
| | A Post-1986 depreciation adjustment | See the Partner's Instructions and the Instructions for Form 6251 |
| | B Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| | C Depletion (other than oil & gas) | See the Partner's Instructions and the Instructions for Form 6251 |
| | D Oil, gas, & geothermal properties — gross income | See the Partner's Instructions and the Instructions for Form 6251 |
| | E Oil, gas, & geothermal properties — deductions | See the Partner's Instructions and the Instructions for Form 6251 |
| | F Other AMT items | See the Partner's Instructions and the Instructions for Form 6251 |
| 18 | Tax-exempt income and nondeductible expenses | |
| | A Tax-exempt interest income | Form 1040, line 8b |
| | B Other tax-exempt income | See the Partner's Instructions |
| | C Nondeductible expenses | See the Partner's Instructions |
| 19 | Distributions | |
| | A Cash and marketable securities | See the Partner's Instructions |
| | B Other property | See the Partner's Instructions |
| 20 | Other information | |
| | A Investment income | Form 4952, line 4a |
| | B Investment expenses | Form 4952, line 5 |
| | C Fuel tax credit information | Form 4136 |
| | D Look-back interest — completed long-term contracts | See Form 8697 |
| | E Look-back interest — income forecast method | See Form 8866 |
| | F Dispositions of property with section 179 deductions | See the Partner's Instructions |
| | G Recapture of section 179 deduction | See the Partner's Instructions |
| | H Special basis adjustments | See the Partner's Instructions |
| | I Section 453(l)(3) information | See the Partner's Instructions |
| | J Section 453A(c) information | See the Partner's Instructions |
| | K Section 1260(b) information | See the Partner's Instructions |
| | L Interest allocable to production expenditures | See the Partner's Instructions |
| | M CCF nonqualified withdrawals | See the Partner's Instructions |
| | N Information needed to figure depletion — oil and gas | See the Partner's Instructions |
| | O Amortization of Reforestation costs | See the Partner's Instructions |
| | P Unrelated business taxable income | See the Partner's Instructions |
| | Q Other information | See the Partner's Instructions |

PTPA0312 01/04/06

Case 2:10-bk-62208-ER Doc 200-4 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc
Exhibit Exhibits - Part 4 Page 13 of 17

EPD INVESTMENTS, LLC 20-0150092 1

Form 1065, Line 20
**Other deductions**

| | |
|---|---|
| ACCOUNTING | |
| AUTOMOBILE AND TRUCK EXPENSE | 862. |
| BANK CHARGES | 22,941. |
| DELIVERY AND FREIGHT | 5,375. |
| INSURANCE | 42,895. |
| LEGAL AND PROFESSIONAL | 39,438. |
| OFFICE EXPENSE | 7,901. |
| OUTSIDE SERVICES | |
| POSTAGE | |
| SUPPLIES | |
| TELEPHONE | -9. |
| TRAVEL | |
| CONSULTING FEES | |
| PAYROLL SERVICE FEES | 13,630. |
| REBILLABLE EXPENSES | -31,721. |
| FREMONT EXPENSES | 40,994. |
| COMPUTER EXPENSES | 1,565. |
| CONTRACT LEASE EXPENSE | 3,376,146. |
| DUES AND SUBSCRIPTIONS | 226. |
| MEALS AND ENTERTAINMENT (50%) | 278. |
| PARKING EXPENSES | 289. |
| PROPERTY EXPENSES | 4,330. |
| Total | 3,525,140. |

Form 1065, Schedule L, Line 6
**Other Current Assets**

| Other Current Assets: | Beginning of tax year | End of tax year |
|---|---|---|
| MISCELLANEOUS RECEIVABLE | 1,099,165. | 626,631. |
| Total | 1,099,165. | 626,631. |

Form 1065, Schedule L, Line 8
**Other Investments**

| Other Investments: | Beginning of tax year | End of tax year |
|---|---|---|
| NOTES RECEIVABLE | 32,384,455. | 34,728,818. |
| RIVERHOUSE COLORADO | 16,800. | 16,800. |
| Total | 32,401,255. | 34,745,618. |

Form 1065, Schedule L, Line 13
**Other Assets**

| Other Assets: | Beginning of tax year | End of tax year |
|---|---|---|
| OTHER INVESTMENTS | 10,161,047. | 8,213,477. |
| Total | 10,161,047. | 8,213,477. |

EPD INVESTMENTS, LLC 20-0150092 2

Form 1065, Schedule L, Line 17
**Other Current Liabilities**

| Other Current Liabilities: | Beginning of tax year | End of tax year |
|---|---|---|
| CONTRACTS PAYABLE | 15,299,408. | 17,209,754. |
| Total | 15,299,408. | 17,209,754. |

Case 2:10-bk-62208-ER Doc 200-4 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 4 Page 15 of 17



**Supporting Statement of:**

Form 1065 p1-2/Line 13

| Description | Amount |
|---|---|
| EQUIPMENT RENT | 67. |
| STORAGE | 2,818. |
| Total | 2,885. |

EXHIBIT: 217
DEPONENT: T. Jonavic
DATE: 6/29/11
LORI BARKLEY, CSR #6426

Form **1065**
Department of the Treasury
Internal Revenue Service

# U.S. Return of Partnership Income

For calendar year 2006, or tax year beginning ________, 2006, ending ________, 20 ___.
► See separate instructions.

OMB No.1545-0099
**2006**

A Principal business activity: SERVICE
B Principal product or service: INVESTMENTS
C Business code number: 532400

Use the IRS label. Otherwise, print or type.

Name of partnership: EPD INVESTMENTS, LLC
Number, street, and room or suite number. If a P.O. box, see the instructions: 520 BROADWAY, SUITE 660
City or town: SANTA MONICA State: CA ZIP code: 90401

D Employer identification number: [redacted]
E Date business started: 07/01/03
F Total assets (see instrs): $ 43,401,964.

G Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change (5) ☐ Amended return
H Check accounting method: (1) ☒ Cash (2) ☐ Accrual (3) ☐ Other (specify) ►
I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ► 2
J Check if Schedule M-3 required (attach Schedule M-3) ☐

**Caution.** *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

**INCOME**

| Line | Description | Sub-line | Sub-amount | Line | Amount |
|---|---|---|---|---|---|
| 1a | Gross receipts or sales | 1a | 2,643,244. | | |
| b | Less returns and allowances | 1b | | 1c | 2,643,244. |
| 2 | Cost of goods sold (Schedule A, line 8) | | | 2 | 765,000. |
| 3 | Gross profit. Subtract line 2 from line 1c | | | 3 | 1,878,244. |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts *(attach statement)* | | | 4 | |
| 5 | Net farm profit (loss) *(attach Schedule F (Form 1040))* | | | 5 | |
| 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 6 | |
| 7 | Other income (loss) *(attach statement)* | | | 7 | |
| 8 | **Total income (loss).** Combine lines 3 through 7 | | | 8 | 1,878,244. |

**DEDUCTIONS** (SEE INSTRUCTIONS FOR LIMITATIONS)

| Line | Description | Sub-line | Sub-amount | Line | Amount |
|---|---|---|---|---|---|
| 9 | Salaries and wages (other than to partners) (less employment credits) | | | 9 | 242,958. |
| 10 | Guaranteed payments to partners | | | 10 | |
| 11 | Repairs and maintenance | | | 11 | -55. |
| 12 | Bad debts | | | 12 | |
| 13 | Rent | | | 13 | 3,715. |
| 14 | Taxes and licenses | | | 14 | 487,519. |
| 15 | Interest | | | 15 | 2,000,786. |
| 16a | Depreciation *(if required, attach Form 4562)* | 16a | 7,630. | | |
| b | Less depreciation reported on Schedule A and elsewhere on return | 16b | | 16c | 7,630. |
| 17 | Depletion **(Do not deduct oil and gas depletion.)** | | | 17 | |
| 18 | Retirement plans, etc | | | 18 | |
| 19 | Employee benefit programs | | | 19 | |
| 20 | Other deductions *(attach statement)* * STMT | | | 20 | 4,266,960. |
| 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | | | 21 | 7,009,513. |
| 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 | | | 22 | -5,131,269. |
| 23 | Credit for federal telephone excise tax paid (attach Form 8913) | | | 23 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

► Signature of general partner or limited liability company member manager ► 10/14/07 Date

May the IRS discuss this return with the preparer shown below (see instrs)? ☒ Yes ☐ No

**Paid Preparer's Use Only**

Preparer's signature — Date: 06/21/11 — Check if self-employed ► ☒ — Preparer's SSN or PTIN: [redacted]
Firm's name (or yours if self-employed), address, and ZIP code: THEODORE P. JONAVIC, CPA [redacted] A 91701
EIN ►
Phone no. (909) 989-7426

Form 1065 (2006) EPD INVESTMENTS, LLC [redacted] Page 2

## Schedule A Cost of Goods Sold (see the instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | 765,000. |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs *(attach statement)* | 4 | |
| 5 | Other costs *(attach statement)* | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | 765,000. |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 765,000. |

9a Check all methods used for valuing closing inventory:

(i) ☐ Cost as described in Regulations section 1.471-3

(ii) ☐ Lower of cost or market as described in Regulations section 1.471-4

(iii) ☐ Other (specify method used and attach explanation) ► ________

b Check this box if there was a writedown of 'subnormal' goods as described in Regulations section 1.471-2(c) ► ☐

c Check this box if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)* ► ☐

d Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership? ☐ Yes ☐ No

e Was there any change in determining quantities, cost, or valuations between opening and closing inventory? ☐ Yes ☐ No

If 'Yes', attach explanation.

## Schedule B Other Information

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box:<br>a ☐ Domestic general partnership  b ☐ Domestic limited partnership<br>c ☒ Domestic limited liability company  d ☐ Domestic limited liability partnership<br>e ☐ Foreign partnership  f ☐ Other ► ________ | | |
| 2 | Are any partners in this partnership also partnerships? | | X |
| 3 | During the partnership's tax year, did the partnership own any interest in another partnership or in any foreign entity that was disregarded as an entity separate from its owner under Regulations sections 301.7701-2 and 301.7701-3? If yes, see instructions for required attachment | | X |
| 4 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 5 | Does this partnership meet all three of the following requirements?<br>a The partnership's total receipts for the tax year were less than $250,000;<br>b The partnership's total assets at the end of the tax year were less than $600,000; and<br>c Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return.<br>If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item N on Schedule K-1 | | X |
| 6 | Does this partnership have any foreign partners? If 'Yes,' the partnership may have to file Forms 8804, 8805 and 8813. See the instructions | | X |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | Has this partnership filed, or is it required to file, a return under section 6111 to provide information on any reportable transaction? | | X |
| 9 | At any time during calendar year 2006, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1. If 'Yes,' enter the name of the foreign country. ► ________ | | X |
| 10 | During the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520. See the instructions | | X |
| 11 | Was there a distribution of property or a transfer (for example, by sale or death) of a partnership interest during the tax year? If 'Yes,' you may elect to adjust the basis of the partnership's assets under section 754 by attaching the statement described under *Elections Made By the Partnership* in the instructions | | X |
| 12 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return ► | | |

### Designation of Tax Matters Partner (see the instructions)

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

Name of designated TMP ► KEITH PRESSMAN  Identifying number of TMP [redacted]

Address of designated TMP ► 520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

Form 1065 (2006)

PTPA0112 12/29/06

Form 1065 (2006) EPD INVESTMENTS, LLC [redacted] Page 3

**Schedule K** **Partners' Distributive Share Items**

| Section | Item | Line | Total amount |
|---|---|---|---|
| Income (Loss) | 1 Ordinary business income (loss) (page 1, line 22) | 1 | -5,131,269. |
| | 2 Net rental real estate income (loss) *(attach Form 8825)* | 2 | |
| | 3a Other gross rental income (loss) — 3a | | |
| | b Expenses from other rental activities *(attach stmt)* — 3b | | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Guaranteed payments | 4 | |
| | 5 Interest income | 5 | 43,401. |
| | 6 Dividends: a Ordinary dividends | 6a | |
| | b Qualified dividends — 6b | | |
| | 7 Royalties | 7 | |
| | 8 Net short-term capital gain (loss) *(attach Schedule D (Form 1065))* | 8 | |
| | 9a Net long-term capital gain (loss) *(attach Schedule D (Form 1065))* | 9a | |
| | b Collectibles (28%) gain (loss) — 9b | | |
| | c Unrecaptured section 1250 gain *(attach statement)* — 9c | | |
| | 10 Net section 1231 gain (loss) *(attach Form 4797)* | 10 | |
| | 11 Other income (loss) *(see instructions)* Type ► | 11 | |
| Deductions | 12 Section 179 deduction *(attach Form 4562)* | 12 | |
| | 13a Contributions Cash contributions (50%) | 13a | 100. |
| | b Investment interest expense | 13b | |
| | c Section 59(e)(2) expenditures: (1) Type ► (2) Amount ► | 13c (2) | |
| | d Other deductions *(see instructions)* Type ► | 13d | |
| Self-Employment | 14a Net earnings (loss) from self-employment | 14a | -5,131,269. |
| | b Gross farming or fishing income | 14b | |
| | c Gross nonfarm income | 14c | 1,878,244. |
| Credits | 15a Low-income housing credit (section 42(j)(5)) | 15a | |
| | b Low-income housing credit (other) | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate) *(attach Form 3468)* | 15c | |
| | d Other rental real estate credits *(see instructions)* . Type ► | 15d | |
| | e Other rental credits *(see instructions)* Type ► | 15e | |
| | f Other credits *(see instructions)* Type ► | 15f | |
| Foreign Transactions | 16a Name of country or U.S. possession ► | | |
| | b Gross income from all sources | 16b | |
| | c Gross income sourced at partner level | 16c | |
| | *Foreign gross income sourced at partnership level* | | |
| | d Passive ► e Listed categories *(attach statement)* ► f General limitation ► | 16f | |
| | *Deductions allocated and apportioned at partner level* | | |
| | g Interest expense ► h Other ► | 16h | |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | | |
| | i Passive ► j Listed categories *(attach statement)* ► k General limitation ► | 16k | |
| | l Total foreign taxes (check one): ► Paid ☐ Accrued ☐ | 16l | |
| | m Reduction in taxes available for credit *(attach statement)* | 16m | |
| | n Other foreign tax information *(attach statement)* | | |
| Alternative Minimum Tax (AMT) Items | 17a Post-1986 depreciation adjustment | 17a | -3. |
| | b Adjusted gain or loss | 17b | |
| | c Depletion (other than oil and gas) | 17c | |
| | d Oil, gas, and geothermal properties — gross income | 17d | |
| | e Oil, gas, and geothermal properties — deductions | 17e | |
| | f Other AMT items *(attach stmt)* | 17f | |
| Other Information | 18a Tax-exempt interest income | 18a | |
| | b Other tax-exempt income | 18b | |
| | c Nondeductible expenses | 18c | |
| | 19a Distributions of cash and marketable securities | 19a | |
| | b Distributions of other property | 19b | |
| | 20a Investment income | 20a | 43,401. |
| | b Investment expenses | 20b | |
| | c Other items and amounts *(attach stmt)* | | |

## Analysis of Net Income (Loss)

| | | | |
|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | 1 | -5,087,968. |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | -5,087,968. | | | | |

## Schedule L Balance Sheets per Books

| | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|
| **Assets** | (a) | (b) | (c) | (d) |
| 1 Cash | | 183,211. | | 241,988. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets *(attach stmt)* | | 626,631. | | 1,381,696. |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments *(attach stmt)* | | 34,238,118. | | 33,507,633. |
| 9a Buildings and other depreciable assets | 70,376. | | 70,376. | |
| b Less accumulated depreciation | 22,091. | 48,285. | 22,091. | 48,285. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 13 Other assets *(attach stmt)* | | 8,213,477. | | 8,222,362. |
| 14 Total assets | | 43,309,722. | | 43,401,964. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | 11,517. | | 97,282. |
| 16 Mortgages, notes, bonds payable in less than 1 year | | 137,500. | | 387,267. |
| 17 Other current liabilities *(attach stmt)* | | 17,209,754. | | 18,637,423. |
| 18 All nonrecourse loans | | | | |
| 19 Mortgages, notes, bonds payable in 1 year or more | | 31,510,905. | | 34,271,890. |
| 20 Other liabilities *(attach stmt)* | | | | |
| 21 Partners' capital accounts | | -5,559,954. | | -9,991,898. |
| 22 Total liabilities and capital | | 43,309,722. | | 43,401,964. |

## Schedule M-1 Reconciliation of Income (Loss) per Books With Income (Loss) per Return

**Note.** Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -5,087,968. | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): a Tax-exempt interest . . . $ | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | | |
| 3 Guaranteed pmts (other than health insurance) | | 7 Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): a Depreciation . . . $ | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): a Depreciation . . . $ b Travel and entertainment . . . $ | | 8 Add lines 6 and 7 | |
| 5 Add lines 1 through 4 | -5,087,968. | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | -5,087,968. |

## Schedule M-2 Analysis of Partners' Capital Accounts

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | -5,559,954. | 6 Distributions: a Cash | |
| 2 Capital contributed: a Cash | 656,024. | b Property | |
| b Property | | 7 Other decreases (itemize): | |
| 3 Net income (loss) per books | -5,087,968. | | |
| 4 Other increases (itemize): | | 8 Add lines 6 and 7 | |
| 5 Add lines 1 through 4 | -9,991,898. | 9 Balance at end of year. Subtract line 8 from line 5 | -9,991,898. |

Form **8879-PE**

Department of the Treasury
Internal Revenue Service

# IRS *e-file* Signature Authorization for Form 1065

For calendar year 2006, or tax year beginning ________, 2006, ending ________, ____.

▶ See instructions. Do not send to the IRS. Keep for your records.

OMB No. 1545-2042

**2006**

Name of partnership: EPD INVESTMENTS, LLC

Employer identification number: [redacted]

**Part I — Tax Return Information** (Whole dollars only)

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales less returns and allowances (Form 1065, line 1c) | 1 | 2,643,244. |
| 2 | Gross profit (Form 1065, line 3) | 2 | 1,878,244. |
| 3 | Ordinary business income (loss) (Form 1065, line 22) | 3 | -5,131,269. |
| 4 | Net rental real estate income (loss) (Form 1065, Schedule K, line 2) | 4 | |
| 5 | Other net rental income (loss) (Form 1065, Schedule K, line 3c) | 5 | |

**Part II — Declaration and Signature Authorization of General Partner or Limited Liability Company Member Manager (Be sure to get a copy of the partnership's return)**

Under penalties of perjury, I declare that I am a general partner or limited liability company member manager of the above partnership and that I have examined a copy of the partnership's 2006 electronic return of partnership income and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the partnership's electronic tax return. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the partnership's return to the IRS and to receive from the IRS **(a)** an acknowledgement of receipt or reason for rejection of the transmission, and **(b)** the reason for any delay in processing the return. I have selected a personal identification number (PIN) as my signature for the partnership's electronic income tax return.

**General Partner or Limited Liability Company Member Manager's PIN: check one box only**

☐ I authorize ____________ (ERO firm name) to enter my PIN ________ (do not enter all zeros) as my signature on the partnership's 2006 electronically filed income tax return.

☒ As a general partner or limited liability company member manager of the partnership, I will enter my PIN as my signature on the partnership's 2006 electronically filed income tax return.

General partner or limited liability company member manager's signature ▶ ____________

Title ▶ LLC MEMBER Date ▶ 10/14/07

**Part III — Certification and Authentication**

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN. [redacted]
do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the 2006 electronically filed income tax return for the partnership indicated above. I confirm that I am submitting this return in accordance with the requirements of **Pub 3112,** IRS *e-file* Application and Participation, and **Pub 4163,** Modernized e-File (MeF) Information for Authorized IRS *e-file* Providers.

ERO's signature ▶ ____________ Date ▶ 06/21/2011

**ERO Must Retain This Form — See Instructions**

**Do Not Submit This Form to the IRS Unless Requested To Do So**

651106

☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0099

**Schedule K-1 (Form 1065)** **2006**

Department of the Treasury
Internal Revenue Service

For calendar year 2006, or tax year beginning ________, 2006 ending ________, ______

# Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

## Part I Information About the Partnership

**A** Partnership's employer identification number
[redacted]

**B** Partnership's name, address, city, state, and ZIP code
EPD INVESTMENTS, LLC
[redacted]

**C** IRS Center where partnership filed return
OGDEN, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)
**E** ☐ Tax shelter registration number, if any ________
**F** ☐ Check if Form 8271 is attached

## Part II Information About the Partner

**G** Partner's identifying number
[redacted]

**H** Partner's name, address, city, state, and ZIP code
JERROLD S. PRESSMAN
[redacted]

**I** ☒ General partner or LLC member-manager ☐ Limited partner or other LLC member

**J** ☒ Domestic partner ☐ Foreign partner

**K** What type of entity is this partner? INDIVIDUAL

**L** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 49.00000 % | 49.00000 % |
| Loss | 49.00000 % | 49.00000 % |
| Capital | 49.00000 % | 49.00000 % |

**M** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 16,982,987. |
| Recourse | $ 9,180,005. |

**N** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ -269,775. |
| Capital contributed during the year | $ 656,024. |
| Current year increase (decrease) | $ -2,493,104. |
| Withdrawals and distributions | $ |
| Ending capital account | $ -2,106,855. |

☒ Tax basis ☐ GAAP ☐ Section 704(b) book
☐ Other (explain)

## Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| Line | Item | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | -2,514,322. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | 21,266. |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | |
| 11 | Other income (loss) | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | A 49. |
| 14 | Self-employment earnings (loss) | A -2,514,322. |
| | | C 920,340. |
| 15 | Credits | |
| 16 | Foreign transactions | |
| 17 | Alternative minimum tax (AMT) items | A -1. |
| 18 | Tax-exempt income and nondeductible expenses | |
| 19 | Distributions | |
| 20 | Other information | A 21,266. |

*See attached statement for additional information.

FOR IRS USE ONLY

BAA For Privacy Act and Paperwork Reduction Act Notice, see Instructions for Form 1065. Schedule K-1 (Form 1065) 2006

PTPA0312 12/08/06

**This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.**

| | | Report on |
|---|---|---|
| **1** | **Ordinary business income (loss).** You must first determine whether the income (loss) is passive or nonpassive. Then enter on your return as follows: | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | Schedule E, line 28, column (h) |
| | Nonpassive income | Schedule E, line 28, column (j) |
| **2** | **Net rental real estate income (loss)** | See the Partner's Instructions |
| **3** | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| **4** | **Guaranteed payments** | Schedule E, line 28, column (j) |
| **5** | **Interest income** | Form 1040, line 8a |
| **6a** | **Ordinary dividends** | Form 1040, line 9a |
| **6b** | **Qualified dividends** | Form 1040, line 9b |
| **7** | **Royalties** | Schedule E, line 4 |
| **8** | **Net short-term capital gain (loss)** | Schedule D, line 5, column (f) |
| **9a** | **Net long-term capital gain (loss)** | Schedule D, line 12, column (f) |
| **9b** | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| **9c** | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10** | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11** | **Other income (loss)** | |
| | *Code* | |
| | A Other portfolio income (loss) | See the Partner's Instructions |
| | B Involuntary conversions | See the Partner's Instructions |
| | C Section 1256 contracts and straddles | Form 6781, line 1 |
| | D Mining exploration costs recapture | See Pub 535 |
| | E Cancellation of debt | Form 1040, line 21 or Form 982 |
| | F Other income (loss) | See the Partner's Instructions |
| **12** | **Section 179 deduction** | See the Partner's Instructions |
| **13** | **Other deductions** | |
| | A Cash contributions (50%) | See the Partner's Instructions |
| | B Cash contributions (30%) | See the Partner's Instructions |
| | C Noncash contributions (50%) | See the Partner's Instructions |
| | D Noncash contributions (30%) | See the Partner's Instructions |
| | E Capital gain property to a 50% organization (30%) | See the Partner's Instructions |
| | F Capital gain property (20%) | See the Partner's Instructions |
| | G Investment interest expense | Form 4952, line 1 |
| | H Deductions — royalty income | Schedule E, line 18 |
| | I Section 59(e)(2) expenditures | See the Partner's Instructions |
| | J Deductions — portfolio (2% floor) | Schedule A, line 22 |
| | K Deductions — portfolio (other) | Schedule A, line 27 |
| | L Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | M Educational assistance benefits | See the Partner's Instructions |
| | N Dependent care benefits | Form 2441, line 12 |
| | O Preproductive period expenses | See the Partner's Instructions |
| | P Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | Q Pensions and IRAs | See the Partner's Instructions |
| | R Reforestation expense deduction | See the Partner's Instructions |
| | S Domestic production activities information | See Form 8903 Instructions |
| | T Qualified production activities income | Form 8903, line 7 |
| | U Employer's W-2 wages | Form 8903, line 13 |
| | V Other deductions | See the Partner's Instructions |
| **14** | **Self-employment earnings (loss)** | |
| | Note. *If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.* | |
| | A Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | B Gross farming or fishing income | See the Partner's Instructions |
| | C Gross non-farm income | See the Partner's Instructions |
| **15** | **Credits** | |
| | A Low-income housing credit (section 42(j)(5)) | See the Partner's Instructions |
| | B Low-income housing credit (other) | See the Partner's Instructions |
| | C Qualified rehabilitation expenditures (rental real estate) | See the Partner's Instructions |
| | D Other rental real estate credits | See the Partner's Instructions |
| | E Other rental credits | See the Partner's Instructions |
| | F Undistributed capital gains credit | Form 1040, line 70; check box a |
| | G Credit for alcohol used as fuel | See the Partner's Instructions |
| | H Work opportunity credit | See the Partner's Instructions |
| | I Welfare-to-work credit | See the Partner's Instructions |
| | J Disabled access credit | See the Partner's Instructions |

| | *Code* | *Report on* |
|---|---|---|
| | K Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| | L Credit for increasing research activities | See the Partner's Instructions |
| | M New markets credit | See the Partner's Instructions |
| | N Credit for employer social security and Medicare taxes | See the Partner's Instructions |
| | O Backup withholding | Form 1040, line 64 |
| | P Other credits | See the Partner's Instructions |
| **16** | **Foreign transactions** | |
| | A Name of country or U.S. possession | Form 1116, Part I |
| | B Gross income from all sources | Form 1116, Part I |
| | C Gross income sourced at partner level | Form 1116, Part I |
| | *Foreign gross income sourced at partnership level* | |
| | D Passive | Form 1116, Part I |
| | E Listed categories | Form 1116, Part I |
| | F General limitation | Form 1116, Part I |
| | *Deductions allocated and apportioned at partner level* | |
| | G Interest expense | Form 1116, Part I |
| | H Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | I Passive | Form 1116, Part I |
| | J Listed categories | Form 1116, Part I |
| | K General limitation | Form 1116, Part I |
| | *Other information* | |
| | L Total foreign taxes paid | Form 1116, Part II |
| | M Total foreign taxes accrued | Form 1116, Part II |
| | N Reduction in taxes available for credit | Form 1116, line 12 |
| | O Foreign trading gross receipts | Form 8873 |
| | P Extraterritorial income exclusion | Form 8873 |
| | Q Other foreign transactions | See the Partner's Instructions |
| **17** | **Alternative minimum tax (AMT) items** | |
| | A Post-1986 depreciation adjustment | See the Partner's Instructions and the Instructions for Form 6251 |
| | B Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| | C Depletion (other than oil & gas) | See the Partner's Instructions and the Instructions for Form 6251 |
| | D Oil, gas, & geothermal — gross income | See the Partner's Instructions and the Instructions for Form 6251 |
| | E Oil, gas, & geothermal — deductions | See the Partner's Instructions and the Instructions for Form 6251 |
| | F Other AMT items | See the Partner's Instructions and the Instructions for Form 6251 |
| **18** | **Tax-exempt income and nondeductible expenses** | |
| | A Tax-exempt interest income | Form 1040, line 8b |
| | B Other tax-exempt income | See the Partner's Instructions |
| | C Nondeductible expenses | See the Partner's Instructions |
| **19** | **Distributions** | |
| | A Cash and marketable securities | See the Partner's Instructions |
| | B Other property | See the Partner's Instructions |
| **20** | **Other information** | |
| | A Investment income | Form 4952, line 4a |
| | B Investment expenses | Form 4952, line 5 |
| | C Fuel tax credit information | Form 4136 |
| | D Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| | E Basis of energy property | See the Partner's Instructions |
| | F Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | G Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | H Recapture of investment credit | Form 4255 |
| | I Recapture of other credits | See the Partner's Instructions |
| | J Look-back interest — completed long-term contracts | See Form 8697 |
| | K Look-back interest — income forecast method | See Form 8866 |
| | L Dispositions of property with section 179 deductions | See the Partner's Instructions |
| | M Recapture of section 179 deductions | See the Partner's Instructions |
| | N Interest expense for corporate partners | See the Partner's Instructions |
| | O Section 453(l)(3) information | See the Partner's Instructions |
| | P Section 453A(c) information | See the Partner's Instructions |
| | Q Section 1260(b) information | See the Partner's Instructions |
| | R Interest allocable to production expenditures | See the Partner's Instructions |
| | S CCF nonqualified withdrawals | See the Partner's Instructions |
| | T Information needed to figure depletion — oil and gas | See the Partner's Instructions |
| | U Amortization of reforestation costs | See the Partner's Instructions |
| | V Unrelated business taxable income | See the Partner's Instructions |
| | W Other information | See the Partner's Instructions |

Case 2:10-bk-62208-ER Doc 200-3 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 3 Page 6 of 34

651106

☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0099

**Schedule K-1 (Form 1065)** **2006**

Department of the Treasury Internal Revenue Service

For calendar year 2006, or tax year beginning ________, 2006 ending ________, ______

# Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

## Part I Information About the Partnership

A Partnership's employer identification number
[redacted]

B Partnership's name, address, city, state, and ZIP code
EPD INVESTMENTS, LLC
[redacted]

C IRS Center where partnership filed return
OGDEN, UT

D ☐ Check if this is a publicly traded partnership (PTP)

E ☐ Tax shelter registration number, if any

F ☐ Check if Form 8271 is attached

## Part II Information About the Partner

G Partner's identifying number
[redacted]

H Partner's name, address, city, state, and ZIP code
KEITH PRESSMAN
[redacted]

I ☒ General partner or LLC member-manager ☐ Limited partner or other LLC member

J ☒ Domestic partner ☐ Foreign partner

K What type of entity is this partner? INDIVIDUAL

L Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 51.00000 % | 51.00000 % |
| Loss | 51.00000 % | 51.00000 % |
| Capital | 51.00000 % | 51.00000 % |

M Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 17,676,170. |
| Recourse | $ 9,554,700. |

N Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ -279,398. |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ -2,594,864. |
| Withdrawals and distributions | $ |
| Ending capital account | $ -2,874,262. |

☒ Tax basis ☐ GAAP ☐ Section 704(b) book
☐ Other (explain)

## Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| Line | Item | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | -2,616,947. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | 22,135. |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | |
| 11 | Other income (loss) | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | A 51. |
| 14 | Self-employment earnings (loss) | A -2,616,947. |
| | | C 957,904. |
| 15 | Credits | |
| 16 | Foreign transactions | |
| 17 | Alternative minimum tax (AMT) items | A -2. |
| 18 | Tax-exempt income and nondeductible expenses | |
| 19 | Distributions | |
| 20 | Other information | A 22,135. |

*See attached statement for additional information.

FOR IRS USE ONLY

BAA For Privacy Act and Paperwork Reduction Act Notice, see Instructions for Form 1065. Schedule K-1 (Form 1065) 2006

PTPA0312 12/08/06

**This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.**

| | | Report on |
|---|---|---|
| 1 | **Ordinary business income (loss).** You must first determine whether the income (loss) is passive or nonpassive. Then enter on your return as follows: | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | Schedule E, line 28, column (h) |
| | Nonpassive income | Schedule E, line 28, column (j) |
| 2 | **Net rental real estate income (loss)** | See the Partner's Instructions |
| 3 | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| 4 | **Guaranteed payments** | Schedule E, line 28, column (j) |
| 5 | **Interest income** | Form 1040, line 8a |
| 6a | **Ordinary dividends** | Form 1040, line 9a |
| 6b | **Qualified dividends** | Form 1040, line 9b |
| 7 | **Royalties** | Schedule E, line 4 |
| 8 | **Net short-term capital gain (loss)** | Schedule D, line 5, column (f) |
| 9a | **Net long-term capital gain (loss)** | Schedule D, line 12, column (f) |
| 9b | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D instructions) |
| 9c | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| 10 | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| 11 | **Other income (loss)** | |
| | *Code* | |
| | A Other portfolio income (loss) | See the Partner's Instructions |
| | B Involuntary conversions | See the Partner's Instructions |
| | C Section 1256 contracts and straddles | Form 6781, line 1 |
| | D Mining exploration costs recapture | See Pub 535 |
| | E Cancellation of debt | Form 1040, line 21 or Form 982 |
| | F Other income (loss) | See the Partner's Instructions |
| 12 | **Section 179 deduction** | See the Partner's Instructions |
| 13 | **Other deductions** | |
| | A Cash contributions (50%) | See the Partner's Instructions (A–F) |
| | B Cash contributions (30%) | |
| | C Noncash contributions (50%) | |
| | D Noncash contributions (30%) | |
| | E Capital gain property to a 50% organization (30%) | |
| | F Capital gain property (20%) | |
| | G Investment interest expense | Form 4952, line 1 |
| | H Deductions — royalty income | Schedule E, line 18 |
| | I Section 59(e)(2) expenditures | See the Partner's Instructions |
| | J Deductions — portfolio (2% floor) | Schedule A, line 22 |
| | K Deductions — portfolio (other) | Schedule A, line 27 |
| | L Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | M Educational assistance benefits | See the Partner's Instructions |
| | N Dependent care benefits | Form 2441, line 12 |
| | O Preproductive period expenses | See the Partner's Instructions |
| | P Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | Q Pensions and IRAs | See the Partner's Instructions |
| | R Reforestation expense deduction | See the Partner's Instructions |
| | S Domestic production activities information | See Form 8903 Instructions |
| | T Qualified production activities income | Form 8903, line 7 |
| | U Employer's W-2 wages | Form 8903, line 13 |
| | V Other deductions | See the Partner's Instructions |
| 14 | **Self-employment earnings (loss)** | |
| | **Note.** *If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.* | |
| | A Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | B Gross farming or fishing income | See the Partner's Instructions |
| | C Gross non-farm income | See the Partner's Instructions |
| 15 | **Credits** | |
| | A Low-income housing credit (section 42(j)(5)) | See the Partner's Instructions (A–E) |
| | B Low-income housing credit (other) | |
| | C Qualified rehabilitation expenditures (rental real estate) | |
| | D Other rental real estate credits | |
| | E Other rental credits | |
| | F Undistributed capital gains credit | Form 1040, line 70; check box a |
| | G Credit for alcohol used as fuel | See the Partner's Instructions |
| | H Work opportunity credit | See the Partner's Instructions (H–J) |
| | I Welfare-to-work credit | |
| | J Disabled access credit | |

| | Code | Report on |
|---|---|---|
| | K Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| | L Credit for increasing research activities | See the Partner's Instructions (L–N) |
| | M New markets credit | |
| | N Credit for employer social security and Medicare taxes | |
| | O Backup withholding | Form 1040, line 64 |
| | P Other credits | See the Partner's Instructions |
| 16 | **Foreign transactions** | |
| | A Name of country or U.S. possession | Form 1116, Part I (A–C) |
| | B Gross income from all sources | |
| | C Gross income sourced at partner level | |
| | *Foreign gross income sourced at partnership level* | |
| | D Passive | Form 1116, Part I (D–F) |
| | E Listed categories | |
| | F General limitation | |
| | *Deductions allocated and apportioned at partner level* | |
| | G Interest expense | Form 1116, Part I |
| | H Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | I Passive | Form 1116, Part I (I–K) |
| | J Listed categories | |
| | K General limitation | |
| | *Other information* | |
| | L Total foreign taxes paid | Form 1116, Part II |
| | M Total foreign taxes accrued | Form 1116, Part II |
| | N Reduction in taxes available for credit | Form 1116, line 12 |
| | O Foreign trading gross receipts | Form 8873 |
| | P Extraterritorial income exclusion | Form 8873 |
| | Q Other foreign transactions | See the Partner's Instructions |
| 17 | **Alternative minimum tax (AMT) items** | |
| | A Post-1986 depreciation adjustment | See the Partner's Instructions and the Instructions for Form 6251 (A–F) |
| | B Adjusted gain or loss | |
| | C Depletion (other than oil & gas) | |
| | D Oil, gas, & geothermal — gross income | |
| | E Oil, gas, & geothermal — deductions | |
| | F Other AMT items | |
| 18 | **Tax-exempt income and nondeductible expenses** | |
| | A Tax-exempt interest income | Form 1040, line 8b |
| | B Other tax-exempt income | See the Partner's Instructions |
| | C Nondeductible expenses | See the Partner's Instructions |
| 19 | **Distributions** | |
| | A Cash and marketable securities | See the Partner's Instructions |
| | B Other property | See the Partner's Instructions |
| 20 | **Other information** | |
| | A Investment income | Form 4952, line 4a |
| | B Investment expenses | Form 4952, line 5 |
| | C Fuel tax credit information | Form 4136 |
| | D Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| | E Basis of energy property | See the Partner's Instructions |
| | F Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | G Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | H Recapture of investment credit | Form 4255 |
| | I Recapture of other credits | See the Partner's Instructions |
| | J Look-back interest — completed long-term contracts | See Form 8697 |
| | K Look-back interest — income forecast method | See Form 8866 |
| | L Dispositions of property with section 179 deductions | See the Partner's Instructions (L–W) |
| | M Recapture of section 179 deductions | |
| | N Interest expense for corporate partners | |
| | O Section 453(l)(3) information | |
| | P Section 453A(c) information | |
| | Q Section 1260(b) information | |
| | R Interest allocable to production expenditures | |
| | S CCF nonqualified withdrawals | |
| | T Information needed to figure depletion — oil and gas | |
| | U Amortization of reforestation costs | |
| | V Unrelated business taxable income | |
| | W Other information | |

EPD INVESTMENTS, LLC 20-0150092 1

Form 1065, Line 20
**Other deductions**

| | |
|---|---|
| ACCOUNTING | 110,000. |
| AUTOMOBILE AND TRUCK EXPENSE | 5,632. |
| BANK CHARGES | 7,347. |
| DELIVERY AND FREIGHT | 6,723. |
| INSURANCE | 48,079. |
| LEGAL AND PROFESSIONAL | 527,715. |
| OFFICE EXPENSE | 1,893. |
| OUTSIDE SERVICES | -16,949. |
| POSTAGE | 0. |
| SUPPLIES | 0. |
| TELEPHONE | -8,198. |
| TRAVEL | 26. |
| CONSULTING FEES | 0. |
| PAYROLL SERVICE FEES | 1,982. |
| REBILLABLE EXPENSES | -4,939. |
| COMMISSIONS | 0. |
| COMPUTER EXPENSES | 1,640. |
| CONTRACT EXPENSES | 3,583,830. |
| DUES AND SUBSCRIPTIONS | 2,108. |
| PARKING | 71. |
| Total | 4,266,960. |

**Supporting Statement of:**

Form 1065 p1-2/Line 13

| Description | Amount |
|---|---|
| EQUIPMENT LEASE COSTS | 123. |
| STORAGE RENT | 3,592. |
| Total | 3,715. |

Mailed 8/4/2010

Form **1065**

Department of the Treasury
Internal Revenue Service

# U.S. Return of Partnership Income

For calendar year 2007, or tax year beginning __________, 2007, ending __________, 20 ____.
► See separate instructions.

OMB No.1545-0099

**2007**

A Principal business activity: SERVICE

B Principal product or service: INVESTMENTS

C Business code number: 532400

Use the IRS label. Otherwise, print or type.

Name of partnership: EPD INVESTMENTS, LLC

Number, street, and room or suite number. If a P.O. box, see the instructions.: 520 BROADWAY, SUITE 660

City or town: SANTA MONICA — State: CA — ZIP code: 90401

D Employer identification number: [redacted]

E Date business started: 07/01/03

F Total assets (see instrs): $ 26,678,448.

G Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change (5) ☐ Amended return

H Check accounting method: (1) ☒ Cash (2) ☐ Accrual (3) ☐ Other (specify) ► __________

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ► 2

J Check if Schedule M-3 attached ☐

**Caution.** *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

| | Line | Description | | | | Amount |
|---|---|---|---|---|---|---|
| INCOME | 1a | Gross receipts or sales | 1a | 3,377,071. | | |
| | b | Less returns and allowances | 1b | | 1c | 3,377,071. |
| | 2 | Cost of goods sold (Schedule A, line 8) | | | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c | | | 3 | 3,377,071. |
| | 4 | Ordinary income (loss) from other partnerships, estates, and trusts *(attach statement)* | | | 4 | |
| | 5 | Net farm profit (loss) *(attach Schedule F (Form 1040))* | | | 5 | |
| | 6 | Net gain (loss) from Form 4797, Part II, line 17 *(attach Form 4797)* | | | 6 | |
| | 7 | Other income (loss) *(attach statement)* DEFERRED REVENUE RECOGNITION | | | 7 | |
| | 8 | **Total income (loss).** Combine lines 3 through 7 | | | 8 | 3,377,071. |
| DEDUCTIONS (SEE INSTRUCTIONS FOR LIMITATIONS) | 9 | Salaries and wages (other than to partners) (less employment credits) | | | 9 | 84,978. |
| | 10 | Guaranteed payments to partners | | | 10 | |
| | 11 | Repairs and maintenance | | | 11 | -197. |
| | 12 | Bad debts | | | 12 | |
| | 13 | Rent | | | 13 | -8,317. |
| | 14 | Taxes and licenses | | | 14 | 28,829. |
| | 15 | Interest | | | 15 | 1,383,966. |
| | 16a | Depreciation *(if required, attach Form 4562)* | 16a | 4,626. | | |
| | b | Less depreciation reported on Schedule A and elsewhere on return | 16b | | 16c | 4,626. |
| | 17 | Depletion **(Do not deduct oil and gas depletion.)** | | | 17 | |
| | 18 | Retirement plans, etc | | | 18 | |
| | 19 | Employee benefit programs | | | 19 | |
| | 20 | Other deductions *(attach statement)* * STMT | | | 20 | 2,467,487. |
| | 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | | | 21 | 3,961,372. |
| | 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 | | | 22 | -584,301. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

► __________ Signature of general partner or limited liability company member manager ► __________ Date

May the IRS discuss this return with the preparer shown below (see instrs)? ☒ Yes ☐ No

**Paid Preparer's Use Only**

Preparer's signature: [signature] — Date: 07/06/10 — Check if self-employed ► ☒ — Preparer's SSN or PTIN: [redacted]

Firm's name (or yours if self-employed), address, and ZIP code: THEODORE P. JONAVIC, CPA [redacted] CA 91701

EIN ►

Phone no. (909) 989-7426



EXHIBIT: 49
DEPONENT: Pressman
DATE: 5-17-11
LORI BARKLEY, CSR #6426

1944

EXHIBIT "Y"

Form 1065 (2007) EPD INVESTMENTS, LLC [redacted] Page 2

**Schedule A** **Cost of Goods Sold** (see the instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs *(attach statement)* | 4 | |
| 5 | Other costs *(attach statement)* | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9a Check all methods used for valuing closing inventory:
(i) ☐ Cost as described in Regulations section 1.471-3
(ii) ☐ Lower of cost or market as described in Regulations section 1.471-4
(iii) ☐ Other (specify method used and attach explanation) ►

b Check this box if there was a writedown of 'subnormal' goods as described in Regulations section 1.471-2(c) ► ☐
c Check this box if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)* ► ☐
d Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership? ☐ Yes ☐ No
e Was there any change in determining quantities, cost, or valuations between opening and closing inventory? ☐ Yes ☐ No
If 'Yes', attach explanation .

**Schedule B** **Other Information**

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box:<br>a ☐ Domestic general partnership b ☐ Domestic limited partnership<br>c ☒ Domestic limited liability company d ☐ Domestic limited liability partnership<br>e ☐ Foreign partnership f ☐ Other .... ► | | |
| 2 | Are any partners in this partnership also partnerships? | | X |
| 3 | During the partnership's tax year, did the partnership own any interest in another partnership or in any foreign entity that was disregarded as an entity separate from its owner under Regulations sections 301.7701-2 and 301.7701-3? If 'Yes,' see instructions for required attachment | | X |
| 4 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 5 | Does this partnership meet all three of the following requirements?<br>a The partnership's total receipts for the tax year were less than $250,000;<br>b The partnership's total assets at the end of the tax year were less than $600,000; and<br>c Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return.<br>If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1 | | X |
| 6 | Does this partnership have any foreign partners? If 'Yes,' the partnership may have to file Forms 8804, 8805 and 8813. See the instructions | | X |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | Has this partnership filed, or is it required to file, a return under section 6111 to provide information on any reportable transaction? | | X |
| 9 | At any time during calendar year 2007, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1. If 'Yes,' enter the name of the foreign country. . ► | | X |
| 10 | During the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520. See the instructions | | X |
| 11 | Was there a distribution of property or a transfer (for example, by sale or death) of a partnership interest during the tax year? If 'Yes,' you may elect to adjust the basis of the partnership's assets under section 754 by attaching the statement described under *Elections Made By the Partnership* in the instructions | | X |
| 12 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return ► | | |

**Designation of Tax Matters Partner** (see the instructions)
Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

Name of designated TMP ► KEITH PRESSMAN Identifying number of TMP ► 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

Address of designated TMP ► 520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

Form 1065 (2007)

PTPA0112 12/27/07

Form 1065 (2007) EPD INVESTMENTS, LLC [redacted] Page 3

**Schedule K — Partners' Distributive Share Items**

| | Item | | Line | Total amount |
|---|---|---|---|---|
| Income (Loss) | 1 Ordinary business income (loss) (page 1, line 22) | | 1 | -584,301. |
| | 2 Net rental real estate income (loss) *(attach Form 8825)* | | 2 | |
| | 3a Other gross rental income (loss) | 3a | | |
| | b Expenses from other rental activities *(attach stmt)* | 3b | | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | | 3c | |
| | 4 Guaranteed payments | | 4 | |
| | 5 Interest income | | 5 | |
| | 6 Dividends: a Ordinary dividends | | 6a | |
| | b Qualified dividends | 6b | | |
| | 7 Royalties | | 7 | |
| | 8 Net short-term capital gain (loss) *(attach Schedule D (Form 1065))* | | 8 | |
| | 9a Net long-term capital gain (loss) *(attach Schedule D (Form 1065))* | | 9a | |
| | b Collectibles (28%) gain (loss) | 9b | | |
| | c Unrecaptured section 1250 gain *(attach statement)* | 9c | | |
| | 10 Net section 1231 gain (loss) *(attach Form 4797)* | | 10 | |
| | 11 Other income (loss) *(see instructions)* Type ► | | 11 | |
| Deductions | 12 Section 179 deduction *(attach Form 4562)* | | 12 | |
| | 13a Contributions Cash contributions (50%) | | 13a | 0. |
| | b Investment interest expense | | 13b | |
| | c Section 59(e)(2) expenditures: (1) Type ► (2) Amount ► | | 13c (2) | |
| | d Other deductions *(see instructions)* Type ► | | 13d | |
| Self-Employment | 14a Net earnings (loss) from self-employment | | 14a | -584,301. |
| | b Gross farming or fishing income | | 14b | |
| | c Gross nonfarm income | | 14c | 3,377,071. |
| Credits | 15a Low-income housing credit (section 42(j)(5)) | | 15a | |
| | b Low-income housing credit (other) | | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate) *(attach Form 3468)* | | 15c | |
| | d Other rental real estate credits *(see instructions)* Type ► | | 15d | |
| | e Other rental credits *(see instructions)* Type ► | | 15e | |
| | f Other credits *(see instructions)* Type ► | | 15f | |
| Foreign Transactions | 16a Name of country or U.S. possession ► | | | |
| | b Gross income from all sources | | 16b | |
| | c Gross income sourced at partner level | | 16c | |
| | *Foreign gross income sourced at partnership level* | | | |
| | d Passive category ► e General category ► f Other ► | | 16f | |
| | *Deductions allocated and apportioned at partner level* | | | |
| | g Interest expense ► h Other ► | | 16h | |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | | | |
| | i Passive category ► j General category ► k Other ► | | 16k | |
| | l Total foreign taxes (check one): ► Paid ☐ Accrued ☐ | | 16l | |
| | m Reduction in taxes available for credit *(attach statement)* | | 16m | |
| | n Other foreign tax information *(attach statement)* | | | |
| Alternative Minimum Tax (AMT) Items | 17a Post-1986 depreciation adjustment | | 17a | -4. |
| | b Adjusted gain or loss | | 17b | |
| | c Depletion (other than oil and gas) | | 17c | |
| | d Oil, gas, and geothermal properties – gross income | | 17d | |
| | e Oil, gas, and geothermal properties – deductions | | 17e | |
| | f Other AMT items *(attach stmt)* | | 17f | |
| Other Information | 18a Tax-exempt interest income | | 18a | |
| | b Other tax-exempt income | | 18b | |
| | c Nondeductible expenses | | 18c | |
| | 19a Distributions of cash and marketable securities | | 19a | 0. |
| | b Distributions of other property | | 19b | 0. |
| | 20a Investment income | | 20a | |
| | b Investment expenses | | 20b | |
| | c Other items and amounts *(attach stmt)* | | | |

Form 1065 (2007) EPD INVESTMENTS, LLC [redacted] Page 4

## Analysis of Net Income (Loss)

| | | |
|---|---|---|
| 1 Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | 1 | -584,301. |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | -584,301. | | | | |

## Schedule L Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 241,988. | | 290,084. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach stmt) Ln. 6 Stmt | | 1,381,696. | | -38,845. |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments (attach stmt) | | 33,507,633. | | |
| 9a Buildings and other depreciable assets | 70,376. | | 70,376. | |
| b Less accumulated depreciation | 22,091. | 48,285. | 26,717. | 43,659. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 13 Other assets (attach stmt) Ln. 13 Stmt | | 8,222,362. | | 26,383,550. |
| 14 Total assets | | 43,401,964. | | 26,678,448. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | 97,282. | | 92,978. |
| 16 Mortgages, notes, bonds payable in less than 1 year | | 387,267. | | 2,249,201. |
| 17 Other current liabilities (attach stmt) Ln. 17 Stmt | | 18,637,423. | | |
| 18 All nonrecourse loans | | | | |
| 19 Mortgages, notes, bonds payable in 1 year or more | | 34,271,890. | | 44,823,147. |
| 20 Other liabilities (attach stmt) | | | | |
| 21 Partners' capital accounts | | -9,991,898. | | -20,486,878. |
| 22 Total liabilities and capital | | 43,401,964. | | 26,678,448. |

## Schedule M-1 Reconciliation of Income (Loss) per Books With Income (Loss) per Return

**Note.** Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -672,651. | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): * STMT | 92,978. | a Tax-exempt interest $ | |
| 3 Guaranteed pmts (other than health insurance) | | 7 Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | a Depreciation $ 4,626. | |
| a Depreciation $ | | * STMT 2. | 4,628. |
| b Travel and entertainment $ | | 8 Add lines 6 and 7 | 4,628. |
| 5 Add lines 1 through 4 | -579,673. | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | -584,301. |

## Schedule M-2 Analysis of Partners' Capital Accounts

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | -9,991,898. | 6 Distributions: a Cash | 0. |
| 2 Capital contributed: a Cash | 0. | b Property | 0. |
| b Property | 0. | 7 Other decreases (itemize): | |
| 3 Net income (loss) per books | -672,651. | * STMT | |
| 4 Other increases (itemize): | | | 9,822,329. |
| | | 8 Add lines 6 and 7 | 9,822,329. |
| 5 Add lines 1 through 4 | -10,664,549. | 9 Balance at end of year. Subtract line 8 from line 5 | -20,486,878. |

Form **7004**
(Rev December 2007)
Department of the Treasury
Internal Revenue Service

# Application for Automatic 6-Month Extension of Time To File Certain Business Income Tax, Information, and Other Returns

► File a separate application for each return.

OMB No. 1545-0233

**Type or Print**

File by the due date for the return for which an extension is requested. See instructions.

Name: EPD INVESTMENTS, LLC

Identifying number: [redacted]

Number, street, and room or suite number. (If P.O. box, see instructions.): 520 BROADWAY, SUITE 660

City, town, state, and ZIP code (If a foreign address, enter city, province or state, and country (follow the country's practice for entering postal code)).: SANTA MONICA CA 90401

**Note. See instructions before completing this form.**

1 Enter the form code for the return that this application is for (see below) .......... 09

2 If the foreign corporation does not have an office or place of business in the United States, check here .......... ► ☐

3 If the organization is a corporation or partnership that qualifies under Regulations section 1.6081-5, check here .......... ► ☐

4a The application is for calendar year 20 07, or tax year beginning ________, 20 __, and ending ________, 20 __

b **Short tax year.** If this tax year is less than 12 months, check the reason:
☐ Initial return ☐ Final return ☐ Change in accounting period ☐ Consolidated return to be filed

5 If the organization is a corporation and is the common parent of a group that intends to file a consolidated return, check here .......... ► ☐
If checked, attach a schedule, listing the name, address, and Employer Identification Number (EIN) for each member covered by this application.

6 Tentative total tax .......... 6

7 **Total** payments and credits (see instructions) .......... 7

8 **Balance due.** Subtract line 7 from line 6. **Generally, you must deposit this amount using the Electronic Federal Tax Payment System (EFTPS), a Federal Tax Deposit (FTD) Coupon, or Electronic Funds Withdrawal (EFW)** (see instructions for exceptions) .......... 8

| Application Is For: | Form Code | Application Is For: | Form Code |
|---|---|---|---|
| Form 706-GS(D) | 01 | Form 1120-ND | 19 |
| Form 706-GS(T) | 02 | Form 1120-ND (section 4951 taxes) | 20 |
| Form 1041 (estate) | 04 | Form 1120-PC | 21 |
| Form 1041 (trust) | 05 | Form 1120-POL | 22 |
| Form 1041-N | 06 | Form 1120-REIT | 23 |
| Form 1041-QFT | 07 | Form 1120-RIC | 24 |
| Form 1042 | 08 | Form 1120S | 25 |
| Form 1065 | 09 | Form 1120-SF | 26 |
| Form 1065-B | 10 | Form 3520-A | 27 |
| Form 1066 | 11 | Form 8612 | 28 |
| Form 1120 | 12 | Form 8613 | 29 |
| Form 1120-A (fiscal year 2006-2007 corporations) | 14 | Form 8725 | 30 |
| Form 1120-C | 34 | Form 8804 | 31 |
| Form 1120-F | 15 | Form 8831 | 32 |
| Form 1120-FSC | 16 | Form 8876 | 33 |
| Form 1120-H | 17 | Form 8924 | 35 |
| Form 1120-L | 18 | | |

BAA For Paperwork Reduction Act Notice, see separate instructions. Form 7004 (Rev 12-2007)

## Form 7004 Electronic Filing Information Worksheet 2007

| Name | [redacted]ber |
|---|---|
| EPD INVESTMENTS, LLC | |

**Prepare Form 7004 for Electronic Filing**

Extension accepted ........ ► [X]

**Signature of Officer**

Officer's Name ........ ► __________

Officer's Title ........ ► __________

Signature Date ........ ► __________

**Perjury Statement:** Under penalties of perjury, I declare that I have been authorized by the above taxpayer to make this authorization and that I have examined a copy of the taxpayer's electronic extension (Form 7004) for the tax period indicated above and to the best of my knowledge and belief, it is true, correct, and complete.

**Consent to disclosure:** I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the partnership's return to the IRS and to receive from the IRS (a) an acknowledgement of receipt or reason for rejection of the transmission, (b) an indication of any refund offset, (c) the reason for any delay in processing the return or refund, and (d) the date of any refund.

651107

☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0099

**Schedule K-1 (Form 1065)** **2007**

Department of the Treasury
Internal Revenue Service

For calendar year 2007, or tax year beginning ________, 2007 ending ________, ____

# Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

## Part I Information About the Partnership

A Partnership's employer identification number
[redacted]

B Partnership's name, address, city, state, and ZIP code
EPD INVESTMENTS, LLC
520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

C IRS Center where partnership filed return
OGDEN, UT

D ☐ Check if this is a publicly traded partnership (PTP)

## Part II Information About the Partner

E Partner's identifying number
[redacted]

F Partner's name, address, city, state, and ZIP code
JERROLD S. PRESSMAN
[redacted]

G ☒ General partner or LLC member-manager ☐ Limited partner or other LLC member

H ☒ Domestic partner ☐ Foreign partner

I What type of entity is this partner? INDIVIDUAL

J Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 49.00000 % | 49.00000 % |
| Loss | 49.00000 % | 49.00000 % |
| Capital | 49.00000 % | 49.00000 % |

K Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 23,065,451. |
| Recourse | $ 45,559. |

L Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ -4,896,030. |
| Capital contributed during the year | $ 0. |
| Current year increase (decrease) | $ -5,142,540. |
| Withdrawals and distributions | $ 0. |
| Ending capital account | $ -10,038,570. |

☒ Tax basis ☐ GAAP ☐ Section 704(b) book
☐ Other (explain)

## Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | -286,307. | |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | | |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | | |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | A | 0. |
| 14 | Self-employment earnings (loss) | A | -286,307. |
| | | C | 1,654,765. |
| 15 | Credits | | |
| 16 | Foreign transactions | | |
| 17 | Alternative minimum tax (AMT) items | A | -2. |
| 18 | Tax-exempt income and nondeductible expenses | | |
| 19 | Distributions | A | 0. |
| | | B | 0. |
| 20 | Other information | | |

*See attached statement for additional information.

FOR IRS USE ONLY

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065.

Schedule K-1 (Form 1065) 2007

PTPA0312 12/31/07

1950

**This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.**

| | Report on |
|---|---|
| **1 Ordinary business income (loss).** You must first determine whether the income (loss) is passive or nonpassive. Then enter on your return as follows: | |
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |
| **2 Net rental real estate income (loss)** | See the Partner's Instructions |
| **3 Other net rental income (loss)** | |
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Partner's Instructions |
| **4 Guaranteed payments** | Schedule E, line 28, column (j) |
| **5 Interest income** | Form 1040, line 8a |
| **6a Ordinary dividends** | Form 1040, line 9a |
| **6b Qualified dividends** | Form 1040, line 9b |
| **7 Royalties** | Schedule E, line 4 |
| **8 Net short-term capital gain (loss)** | Schedule D, line 5, column (f) |
| **9a Net long-term capital gain (loss)** | Schedule D, line 12, column (f) |
| **9b Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| **9c Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10 Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11 Other income (loss)** | |
| *Code* | |
| A Other portfolio income (loss) | See the Partner's Instructions |
| B Involuntary conversions | See the Partner's Instructions |
| C Section 1256 contracts and straddles | Form 6781, line 1 |
| D Mining exploration costs recapture | See Pub 535 |
| E Cancellation of debt | Form 1040, line 21 or Form 982 |
| F Other income (loss) | See the Partner's Instructions |
| **12 Section 179 deduction** | See the Partner's Instructions |
| **13 Other deductions** | |
| A Cash contributions (50%) | See the Partner's Instructions (A–F) |
| B Cash contributions (30%) | |
| C Noncash contributions (50%) | |
| D Noncash contributions (30%) | |
| E Capital gain property to a 50% organization (30%) | |
| F Capital gain property (20%) | |
| G Investment interest expense | Form 4952, line 1 |
| H Deductions — royalty income | Schedule E, line 18 |
| I Section 59(e)(2) expenditures | See the Partner's Instructions |
| J Deductions — portfolio (2% floor) | Schedule A, line 23 |
| K Deductions — portfolio (other) | Schedule A, line 28 |
| L Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| M Educational assistance benefits | See the Partner's Instructions |
| N Dependent care benefits | Form 2441, line 14 |
| O Preproductive period expenses | See the Partner's Instructions |
| P Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| Q Pensions and IRAs | See the Partner's Instructions |
| R Reforestation expense deduction | See the Partner's Instructions |
| S Domestic production activities information | See Form 8903 Instructions |
| T Qualified production activities income | Form 8903, line 7 |
| U Employer's W-2 wages | Form 8903, line 15 |
| V Other deductions | See the Partner's Instructions |
| **14 Self-employment earnings (loss)** | |
| **Note.** *If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.* | |
| A Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| B Gross farming or fishing income | See the Partner's Instructions |
| C Gross non-farm income | See the Partner's Instructions |
| **15 Credits** | |
| A Low-income housing credit (section 42(j)(5)) | See the Partner's Instructions (A–E) |
| B Low-income housing credit (other) | |
| C Qualified rehabilitation expenditures (rental real estate) | |
| D Other rental real estate credits | |
| E Other rental credits | |
| F Undistributed capital gains credit | Form 1040, line 70; check box a |
| G Credit for alcohol used as fuel | See the Partner's Instructions (G–J) |
| H Work opportunity credit | |
| I Welfare-to-work credit | |
| J Disabled access credit | |

| *Code* | *Report on* |
|---|---|
| K Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| L Credit for increasing research activities | See the Partner's Instructions (L–N) |
| M New markets credit | |
| N Credit for employer social security and Medicare taxes | |
| O Backup withholding | Form 1040, line 64 |
| P Other credits | See the Partner's Instructions |
| **16 Foreign transactions** | |
| A Name of country or U.S. possession | Form 1116, Part I (A–C) |
| B Gross income from all sources | |
| C Gross income sourced at partner level | |
| *Foreign gross income sourced at partnership level* | |
| D Passive category | Form 1116, Part I (D–F) |
| E General category | |
| F Other | |
| *Deductions allocated and apportioned at partner level* | |
| G Interest expense | Form 1116, Part I |
| H Other | Form 1116, Part I |
| *Deductions allocated and apportioned at partnership level to foreign source income* | |
| I Passive category | Form 1116, Part I (I–K) |
| J General category | |
| K Other | |
| *Other information* | |
| L Total foreign taxes paid | Form 1116, Part II |
| M Total foreign taxes accrued | Form 1116, Part II |
| N Reduction in taxes available for credit | Form 1116, line 12 |
| O Foreign trading gross receipts | Form 8873 |
| P Extraterritorial income exclusion | Form 8873 |
| Q Other foreign transactions | See the Partner's Instructions |
| **17 Alternative minimum tax (AMT) items** | |
| A Post-1986 depreciation adjustment | See the Partner's Instructions and the Instructions for Form 6251 (A–F) |
| B Adjusted gain or loss | |
| C Depletion (other than oil & gas) | |
| D Oil, gas, & geothermal — gross income | |
| E Oil, gas, & geothermal — deductions | |
| F Other AMT items | |
| **18 Tax-exempt income and nondeductible expenses** | |
| A Tax-exempt interest income | Form 1040, line 8b |
| B Other tax-exempt income | See the Partner's Instructions |
| C Nondeductible expenses | See the Partner's Instructions |
| **19 Distributions** | |
| A Cash and marketable securities | See the Partner's Instructions |
| B Other property | See the Partner's Instructions |
| **20 Other information** | |
| A Investment income | Form 4952, line 4a |
| B Investment expenses | Form 4952, line 5 |
| C Fuel tax credit information | Form 4136 |
| D Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| E Basis of energy property | See the Partner's Instructions |
| F Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| G Recapture of low-income housing credit (other) | Form 8611, line 8 |
| H Recapture of investment credit | Form 4255 |
| I Recapture of other credits | See the Partner's Instructions |
| J Look-back interest — completed long-term contracts | See Form 8697 |
| K Look-back interest — income forecast method | See Form 8866 |
| L Dispositions of property with section 179 deductions | See the Partner's Instructions (L–W) |
| M Recapture of section 179 deduction | |
| N Interest expense for corporate partners | |
| O Section 453(l)(3) information | |
| P Section 453A(c) information | |
| Q Section 1260(b) information | |
| R Interest allocable to production expenditures | |
| S CCF nonqualified withdrawals | |
| T Information needed to figure depletion — oil and gas | |
| U Amortization of reforestation costs | |
| V Unrelated business taxable income | |
| W Other information | |

Case 2:10-bk-62208-ER Doc 200-3 Filed 04/27/12 Entered 04/27/12 11:19:21 Desc Exhibit Exhibits - Part 3 Page 18 of 34

651107

☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0099

**Schedule K-1 (Form 1065)** **2007**

Department of the Treasury Internal Revenue Service

For calendar year 2007, or tax year beginning ________, 2007 ending ________

## Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

### Part I Information About the Partnership

A Partnership's employer identification number
[redacted]

B Partnership's name, address, city, state, and ZIP code
EPD INVESTMENTS, LLC
520 BROADWAY, SUITE 660
SANTA MONICA, CA 90401

C IRS Center where partnership filed return
OGDEN, UT

D ☐ Check if this is a publicly traded partnership (PTP)

### Part II Information About the Partner

E Partner's identifying number
[redacted]

F Partner's name, address, city, state, and ZIP code
KEITH PRESSMAN
[redacted]

G ☒ General partner or LLC member-manager ☐ Limited partner or other LLC member

H ☒ Domestic partner ☐ Foreign partner

I What type of entity is this partner? INDIVIDUAL

J Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 51.00000 % | 51.00000 % |
| Loss | 51.00000 % | 51.00000 % |
| Capital | 51.00000 % | 51.00000 % |

K Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 24,006,897. |
| Recourse | $ 47,419. |

L Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ -5,095,868. |
| Capital contributed during the year | $ 0. |
| Current year increase (decrease) | $ -5,352,440. |
| Withdrawals and distributions | $ 0. |
| Ending capital account | $ -10,448,308. |

☒ Tax basis ☐ GAAP ☐ Section 704(b) book
☐ Other (explain)

### Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| Line | Item | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | -297,994. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | |
| 11 | Other income (loss) | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| | A | 0. |
| 14 | Self-employment earnings (loss) | |
| | A | -297,994. |
| | C | 1,722,306. |
| 15 | Credits | |
| 16 | Foreign transactions | |
| 17 | Alternative minimum tax (AMT) items | |
| | A | -2. |
| 18 | Tax-exempt income and nondeductible expenses | |
| 19 | Distributions | |
| | A | 0. |
| | B | 0. |
| 20 | Other information | |

*See attached statement for additional information.

FOR IRS USE ONLY