**John C. Kirkland, State Bar No. 149453**
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorney for Debtor(s)
**EPD INVESTMENT CO., LLC**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE**

In re:

EPD INVESTMENT CO., LLC,

Debtor.

**Case No.** 2:10-bk-62208-ER

**Chapter 7**

DECLARATION OF DONNA KRAFT

**DECLARATION OF DONNA KRAFT**

I, Donna Kraft, declare as follows:

1. I have personal knowledge of the following facts and testify hereto that if called upon as a witness, I could competently testify thereto in a court of law
2. I have been an investor along with my children for over a decade together our investment exceed $700,000,00
3. EPD's assets are primarily secured by real estate, and fortunately, during this economic downturn, EPD has been able to maintain the value of there assets, and as of this date, has not lost any property by way of foreclosure, even in this down market.
4. I am concerned that if this matter remains in Chapter 7, a bankruptcy trustee will place all parcels up for sale at the very lowest point in the market at liquidation prices, thereby creating a severe reduction in the total value of the assets, and not obtaining the maximum return to

the investors, and for that reason I respectfully request that this Court grant the motions to convert this matter to one under Chapter 11, thereby allowing EPD to submit a plan of reorganization which will allow the creditors to vote, and which will create an orderly liquidation of the real estate collateral since much of the properties are located in Mississippi, and Tennessee in unique markets that the debtor has more than two decades of experience in, and under their direction can generate funds to discharge all obligations of EPD and provide a substantial return to the investors.

I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct. This declaration is executed on the 5th day of April, 2011, at Las Vegas, Nevada.

Respectfully submitted,

Donna Kraft

Donna Kraft

# EXHIBIT D

John C. Kirkland, State Bar No. 149453
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorney for Debtor(s)
**EPD INVESTMENT CO., LLC**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA -- RIVERSIDE**

| | |
|---|---|
| In re:<br><br>EPD INVESTMENT CO., LLC,<br><br>Debtor. | **Case No.** 2:10-bk-62208-ER<br><br>**Chapter 7**<br><br>DECLARATION OF DONALD HAGANS |

**DECLARATION OF DONALD HAGANS**

I, Donald Hagans, declare as follows:

1. I have personal knowledge of the following facts and testify hereto that if called upon as a witness, I could competently testify thereto in a court of law
2. I am The owner of several businesses located in Nevada and California and an investor and creditor of EPD, the above-named debtor; my total investment with EPD exceeds $875,000.00; I have been invested with EPD for nearly a decade
3. EPD's assets are primarily secured by real estate, and fortunately, during this economic downturn, EPD has been able to maintain the value of there assets, and as of this date, has not lost any property by way of foreclosure, even in this down market.
4. I am concerned that if this matter remains in Chapter 7, a bankruptcy trustee will place all parcels up for sale at the very lowest point in the market at liquidation prices, thereby creating

a severe reduction in the total value of the assets, and not obtaining the maximum return to the investors, and for that reason I respectfully request that this Court grant the motions to convert this matter to one under Chapter 11, thereby allowing EPD to submit a plan of reorganization which will allow the creditors to vote, and which will create an orderly liquidation of the real estate collateral since much of the properties are located in Mississippi, and Tennessee in unique markets that the debtor has more than two decades of experience in, and under their direction can generate funds to discharge all obligations of EPD and provide a substantial return to the investors.

I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct. This declaration is executed on the 6th day of April, 2011, at Las Vegas, Nevada.

Respectfully submitted,

Donald Hagans

# EXHIBIT E

**John C. Kirkland, State Bar No. 149453**
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorney for Debtor(s)
**EPD INVESTMENT CO., LLC**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA -- RIVERSIDE**

| | |
|---|---|
| In re:<br><br>EPD INVESTMENT CO., LLC,<br><br>Debtor. | **Case No.** 2:10-bk-62208-ER<br><br>**Chapter 7**<br><br>DECLARATION OF PAT ADAMSON |

**DECLARATION OF PAT ADAMSON**

I, Pat Adamson, declare as follows:

1. I have personal knowledge of the following facts and testify hereto that if called upon as a witness, I could competently testify thereto in a court of law

2. I was employed for more than a decade by a major financial institution, and am an investor and creditor of EPD, the above-named debtor; my total investment with EPD exceeds $1,000,000.00; I have been invested with EPD over ten years.

3. EPD's assets are primarily secured by real estate, and fortunately, during this economic downturn, EPD has been able to maintain the value of there assets, and as of this date, has not lost any property by way of foreclosure, even in this down market.

4. I am concerned that if this matter remains in Chapter 7, a bankruptcy trustee will place all parcels up for sale at the very lowest point in the market at liquidation prices, thereby creating

[illegible] return to the investors, and for that reason I respectfully request that this Court grant the motions to convert this matter to one under Chapter 11, thereby allowing EPD to submit a plan of reorganization which will allow the creditors to vote, and which will create an orderly liquidation of the real estate collateral since much of the properties are located in Mississippi, and Tennessee in unique markets that the debtor has more than two decades of experience in, and under their direction can generate funds to discharge all obligations of EPD and provide a substantial return to the investors.

I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct. This declaration is executed on the 6th day of April, 2011, at Phoenix, Arizona.

Respectfully submitted,

PAdamson
Pat Adamson

# EXHIBIT F

**John C. Kirkland, State Bar No. 149453**
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017
Telephone No.: 213.892.4992
Fax No.: 213.452.8035
E-Mail: jkirkland@luce.com

Attorney for Debtor(s)
**EPD INVESTMENT CO., LLC**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA -- RIVERSIDE**

| | |
|---|---|
| In re:<br><br>EPD INVESTMENT CO., LLC,<br><br>Debtor. | **Case No.** 2:10-bk-62208-ER<br><br>**Chapter 7**<br><br>DECLARATION OF Ralph Grande |

**DECLARATION OF Ralph Grande**

I, Ralph Grande, declare as follows:

1. I have personal knowledge of the following facts and testify hereto that if called upon as a witness, I could competently testify thereto in a court of law
2. I am an part owner of a construction company that does business throughout the United States
3. I am a creditor of EPD, the above-named debtor. My current total investment with EPD exceeds $1,300,000.00; I have been invested with EPD over ten years.
4. As I understand it, EPD's assets are currently and primarily secured by real estate. During these difficult financial times, EPD has been able to maintain the value of these assets, and as of this date, to my knowledge, EPD has not lost any parcels by way of foreclosure, even in this down market.
5. I am concerned that if this matter remains in Chapter 7, a bankruptcy trustee will place all parcels up for sale at the bottom of the market, and at liquidation prices, thereby creating severe

loss of their value, as well not obtaining the maximum return for the investors' creditors. For that reason I respectfully request that this Court grant the motions to convert this matter to one under Chapter 11, thereby allowing EPD to submit a plan of reorganization which will allow the creditors to vote. This will create an orderly liquidation of real estate much of which is located in various areas of the southern States so that discharge can generate enough funds to satisfy most of the obligations of EPD and provide a substantial return to the investors.

I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct. This declaration is executed on the 7th day of April, 2011, at Ft. Myers, FL.

Respectfully submitted,

Ralph Grande

# EXHIBIT GGG

0318960973

[redacted]

FILED
SACRAMENTO, CA
JUL 03, 2003 AT 1505
KEVIN SHELLEY
SECRETARY OF STATE

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

National Corporate Research, Ltd.
1107 9th Street, Suite 1010
Sacramento, CA 95814

P[redacted]

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME

| | | | |
|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | |
| OR 1b. INDIVIDUAL'S LAST NAME: Pressman | FIRST NAME: Jerrold | MIDDLE NAME: S | SUFFIX |
| 1c. MAILING ADDRESS: 705 Pacific Coast Highway | CITY: Santa Monica | STATE: CA POSTAL CODE: 90402 | COUNTRY: USA |
| 1d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR / 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME ☐ NONE

| | | | |
|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR / 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) ☐ NONE

| | | | |
|---|---|---|---|
| 3a. ORGANIZATION'S NAME: EPD Investment Co., LLC | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS: 520 Broadway, Suite 660 | CITY: Santa Monica | STATE: CA POSTAL CODE: 90401 | COUNTRY: USA |

4. This FINANCING STATEMENT covers the following collateral:

All present and after-acquired fixtures, accessions and personal property, including without limitation all goods, consumer goods, inventory, equipment, furniture, money, documents, instruments, notes, promissory notes, drafts, checks, certificates of deposit, investment property, accounts, accounts receivable, chattel paper, general intangibles, leases, contracts, contract rights, goodwill, copyrights, trademarks, patents, rights to proceeds of letters of credit, and rights to payment of money, and all future advances and proceeds of any of the foregoing.

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable) 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE) (optional) ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

[redacted]

09-7204357956
07/31/2009 16:06
FILED
CALIFORNIA SECRETARY OF STATE
SOS
21883230003 UCC 1 FILING

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Katy Werner

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

National Corporate Research, Ltd.
1107 9th Street, Suite 1025
Sacramento, CA 95814
P6-10034513 L048725

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME: Pressman | FIRST NAME: Jerrold | MIDDLE NAME: S. | | SUFFIX |
| 1c. MAILING ADDRESS: 705 Pacific Coast Highway | CITY: Santa Monica | STATE: CA | POSTAL CODE: 90402 | COUNTRY: USA |
| [redacted] ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| [redacted] ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: EPD Investment Co., LLC | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS: 520 Broadway, Suite 660 | CITY: Santa Monica | STATE: CA | POSTAL CODE: 90401 | COUNTRY: USA |

4. This FINANCING STATEMENT covers the following collateral:

All present and after-acquired fixtures, accessions and personal property, including without limitation all goods, consumer goods, inventory, equipment, furniture, money, documents, instruments, ownership held in partnerships, corporations, LLC's or any other ownership of assets, notes, promissory notes, drafts, checks, certificates of deposit, investment property, accounts, accounts receivable, chattel paper, general intangibles, leases, contracts, contract rights, goodwill, copyrights, trademarks, patents, rights to proceeds of letters of credit and rights to payment of money, and all future advances and proceeds of any of the foregoing.

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA
L048725

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) - CALIFORNIA (REV 01/01/08)

# EXHIBIT HHH

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER – Bar No. 156593<br>COREY R. WEBER – Bar No. 205912<br>EZRA BRUTZKUS GUBNER LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Telephone: 818.827.9000<br>Facsimile: 818.827.9099<br>Email: sgubner@ebg-law.com<br>cweber@ebg-law.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Jason M. Rund, Chapter 7 Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re: | CASE NO.: 2:10-bk-62208-ER<br>CHAPTER: 7 |
|---|---|
| EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN, | **NOTICE OF MOTION FOR:**<br>CHAPTER 7 TRUSTEE'S FIRST OMNIBUS MOTION FOR APPROVAL OF COMPROMISES<br><br>**(*Specify name of Motion*)** |
| Consolidated Debtor(s). | DATE: June 5, 2013<br>TIME: 10:00 am<br>COURTROOM: 1568<br>PLACE: United States Bankruptcy Court<br>255 East Temple Street<br>Los Angeles, CA 90012 |

1. TO (*specify name*): THE HONORABLE ERNEST M. ROBLES, ALL CREDITORS AND TO ALL INTERESTED PARTIES:

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date: April 30, 2013

EZRA BRUTZKUS GUBNER LLP
Printed name of law firm

/s/ Corey R. Weber
Signature

COREY R. WEBER
Printed name of attorney

STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: sgubner@ebg-law.com
cweber@ebg-law.com

Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee

ROBERT A. HESSLING – Bar No. 096466
MATTHEW F. KENNEDY – Bar No. 199485
ROBERT A. HESSLING, APC
3853 Meadow Park Lane
Torrance, CA 90505
Telephone: (310) 375-0255
Facsimile: (310) 373-5152
Email: rhessling@gmail.com
matthewfkenn@gmail.com

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EPD INVESTMENT COMPANY, LLC and JERROLD S. PRESSMAN,<br><br>Consolidated Debtors. | Case No. 2:10-bk-62208-ER [Lead Case]<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S FIRST OMNIBUS MOTION FOR APPROVAL OF COMPROMISES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JASON M. RUND IN SUPPORT THEREOF [Fed. R. Bank. P. 9019; Loc. Bankr. R. 9013-1]; AND REQUEST FOR JUDICIAL NOTICE**<br><br>**Hearing:**<br>**Date:** June 5, 2013<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 1568<br>United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ....... 9

I. INTRODUCTION ....... 9

II. BACKGROUND ....... 9

A. The EPD Bankruptcy Case. ....... 9

1. The Involuntary Petition and the Order for Relief ....... 9

2. The Motion to compel and the Debtor's Filings of Statements, Schedules and a Creditor's Matirx ....... 10

3. EPD's Motion to Convert the Case to Chapter 11, and Motion to Alter or Amend ....... 10

4. The Rule 2004 Examinations ....... 10

B. The Pressman Bankruptcy Case ....... 11

C. Substantive Consolidation ....... 11

D. The Adversary Proceedings ....... 11

1. The London Adversary Proceeding. ....... 11

2. The Mosley Adversary Proceeding. ....... 12

E. The Demand Letters ....... 12

1. The Hillcreste Demand Letter. ....... 12

2. The IWU Demand Letter. ....... 12

3. The FGCU Demand Letter. ....... 12

F. The Facts re Sidecreek and the Trustee's Claim ....... 13

G. The Salient Terms of the Agreements ....... 13

The London Agreement contains the following essential terms ....... 2, 14

The Hillcreste Agreement contains the following essential terms ....... 3, 15

The IWU Agreement contains the following essential terms ....... 3, 16

The FGCU Agreement contains the following essential terms ....... 4, 16

The Mosley Agreement contains the following essential terms ....... 5, 17

The Sidecreek Agreement contains the following essential terms ....... 6, 18

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 5 of 48

III. THE AGREEMENTS ARE PROPERLY APPROVED ..... 19

A. Legal Standards for Approval ..... 19

B. Application of the *A&C Properties* Factors Demonstrates That the Agreements Should Be Approved. ..... 20

1. The A & C Properties Factors As to the London Agreement ..... 21

a. Probability of Success on the Merits ..... 21

b. The Difficulty, If Any, In Collection ..... 21

c. The Complexity, Expense and Inconvenience of Litigation. ..... 21

d. The Paramount Interests of Creditors. ..... 22

2. The A & C Properties Factors As to the Hillcreste Agreement ..... 22

a. Probability of Success on the Merits ..... 22

b. The Difficulty, If Any, In Collection ..... 23

c. The Complexity, Expense and Inconvenience of Litigation. ..... 23

d. The Paramount Interests of Creditors. ..... 23

3. The A & C Properties Factors As to the IWU Agreement. ..... 23

a. Probability of Success on the Merits ..... 23

b. The Difficulty, If Any, In Collection ..... 24

c. The Complexity, Expense and Inconvenience of Litigation. ..... 24

d. The Paramount Interests of Creditors. ..... 24

4. The A & C Properties Factors As to the FGCU Agreement. ..... 25

a. Probability of Success on the Merits ..... 25

b. The Difficulty, If Any, In Collection ..... 25

c. The Complexity, Expense and Inconvenience of Litigation. ..... 25

d. The Paramount Interests of Creditors. ..... 26

5. The A & C Properties Factors As to the Mosley Agreement. ..... 26

a. Probability of Success on the Merits ..... 26

b. The Difficulty, If Any, In Collection ..... 27

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 6 of 48


c. The Complexity, Expense and Inconvenience of Litigation. ....27

d. The Paramount Interests of Creditors. ....27

6. The A & C Properties Factors As to the Sidecreek Agreement. ....27

a. Probability of Success on the Merits ....27

b. The Difficulty, If Any, In Collection. ....28

c. The Complexity, Expense and Inconvenience of Litigation. ....28

d. The Paramount Interests of Creditors. ....28

IV. CONCLUSION ....29

DECLARATION OF JASON M. RUND ....30

REQUEST FOR JUDICIAL NOTICE. ....41

# TABLE OF AUTHORITIES

Page

## CASES

In re A&C Properties,
784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986) ........19

In re Morrison,
69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) ........19

In re W.T. Grant Co.,
699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1984) ........20

In re Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982) ........19

In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988) ........19

## FEDERAL STATUTES

11 U.S.C. § 706(a) ........10

Fed. R. Bankr. P. 9019(a) ........19

## STATE STATUTES

California Civil Code § 1542 ........3, 4, 5, 15, 16, 17, 18

**TO THE HONORABLE ERNEST M. ROBLES, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTOR EPD INVESTMENT CO., LLC, DEBTOR JERROLD PRESSMAN, BRANDON LONDON, ERIC LONDON, LARRY LONDON AND TYRONE LONDON, NHPMN-GP, INC. DBA HILLCRESTE AND LA HILLCRESTE APARTMENTS LLC AKA HILLCRESTE APARTMENTS, ILLINOIS WESLEYAN UNIVERSITY, FLORIDA GULF COAST UNIVERSITY, JENNIFER MOSLEY, SIDECREEK DEVELOPMENT, INC., AND ALL OTHER INTERESTED PARTIES:**

Jason M. Rund, the duly appointed and acting Chapter 7 Trustee (the "Trustee") for the consolidated bankruptcy estate of debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (the "Consolidated Estate"), hereby moves this Court for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving a compromise of controversies by way of settlement agreements (the "Agreements") with the following parties:

1. Brandon London, Eric London, Larry London and Tyrone London (collectively, the "Londons") (the "London Agreement");
2. NHPMN-GP, Inc. dba Hillcreste Apartments and LA Hillcreste Apartments LLC aka Hillcreste Apartments (collectively, "Hillcreste") (the "Hillcrest Agreement");
3. Illinois Wesleyan University ("IWU") (the "IWU Agreement");
4. Florida Gulf Coast University ("FGCU") (the "FGCU Agreement");
5. Jennifer Mosley ("Mosley") (the "Mosley Agreement"); and
6. Sidecreek Development, Inc. ("Sidecreek") (the "Motion").

The Agreements resolve the Trustee's claims and potential claims against the Londons, Hillcrest, IWU, FGCU, Mosley and Sidecreek (collectively, the "Settling Parties"). All of the claims are subject to dispute between the Trustee and the Settling Parties (collectively, the "Parties").

**The hearing will take place on June 5, 2013 at 10:00 a.m. in Courtroom 1568 of the United States Bankruptcy Court for the Central District of California, Los Angeles Division, located at 255 East Temple Street, Los Angeles, California.**

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 9 of 48

**The London Agreement contains the following essential terms:**

1. The Londons shall pay the total amount of Seventy Thousand Dollars ($70,000.00) to the Trustee in full and complete satisfaction of all claims of the Trustee against the Londons;

2. The Londons will represent that, to the best of their knowledge, other than the transfers alleged in the Complaint, they are not aware of having received any other transfers from the Debtors.

3. The Londons will provide representations, and declarations under penalty of perjury, as to:

   a. The reasons for their receipt of funds transferred from EPD;

   b. Affirming that they did not have any actual or inquiry notice of any kind that the Debtors were engaged in a Ponzi scheme or any other improper activity;

   c. The funds that the Londons received from the Debtors were solely for the reasons stated by the Londons;

   d. At the time of the transfers, the Londons had no information, knowledge or believe that the Debtors were insolvent, that any transfers to the Londons caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

4. The Londons agree to waive their right to file a proof of claim, or to obtain an allowed claim, based on the Settlement Amount (or any portion thereof), or on any other basis in the Bankruptcy Case. To the extent that the Londons previously filed proofs of claim, such claims are waived and none of the Londons shall receive an allowed claim.

5. The Trustee and the Londons shall provide general and mutual releases, including a California Civil Code § 1542 waiver; and
6. The London Agreement is subject to Court approval.

**The Hillcreste Agreement contains the following essential terms:**

1. Hillcreste shall pay the total amount of Twenty-Six Thousand Three Hundred Twenty-One Dollars and Three Cents ($26,301.03) to the Trustee;
2. Hillcreste will represent that, to the best of its knowledge, other than the transfers alleged in the Recitals of the Hillcreste Agreement, it is not aware of having received any other transfers from the Debtors.
3. Hillcreste will represent that it had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Hillcreste caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as they became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.
4. The Trustee and Hillcreste shall provide general and mutual releases, including a California Civil Code § 1542 waiver; and
5. The Hillcreste Agreement is subject to Court approval.

**The IWU Agreement contains the following essential terms:**

1. IWU shall pay the total amount of Fifteen Thousand Dollars ($15,000.00) to the Trustee;
2. IWU will represent that, to the best of its knowledge, other than the transfers alleged in the Recitals of the IWU Agreement, it is not aware of having received any other transfers from the Debtors.

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 11 of 48

3. IWU will represent that it had no information, knowledge or belief that the Debtors were insolvent, that any transfers to IWU caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as they became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

4. The Trustee and IWU shall provide general and mutual releases, including a California Civil Code § 1542 waiver; and

5. The IWU Agreement is subject to Court approval.

**The FGCU Agreement contains the following essential terms:**

1. FGCU shall pay the total amount of Nine Thousand Ten Dollars and Forty-Eight Cents ($9,010.48) to the Trustee in full and complete satisfaction of all claims of the Trustee against FGCU;

2. FGCU will represent that, to the best of its knowledge, other than the transfers alleged, it are not aware of having received any other transfers from the Debtors.

3. FGCU will represent that it had no information, knowledge or belief that the Debtors were insolvent, that any transfers to FGCU caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as they became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct;

4. The Trustee and FGCU shall provide general and mutual releases, including a California Civil Code § 1542 waiver; and

5. The FGCU Agreement is subject to Court approval.

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 12 of 48

**The Mosley Agreement contains the following essential terms:**

1. Mosley shall pay the total amount of Two Thousand One Hundred Fifty-Seven Dollars and Sixteen Cents ($2,157.16) to the Trustee in full and complete satisfaction of all claims of the Trustee against Mosley;

2. Mosley will represent that, to the best of her knowledge, other than the transfers alleged in the Complaint, she is not aware of having received any other transfers from the Debtors.

3. Mosley will provide representations as to the reasons for her receipt of funds transferred from EPD and affirming that she did not have any actual or inquiry notice of any kind that the Debtors were engaged in a Ponzi scheme or any other improper activity, and that the funds that Mosley received from the Debtors were received solely for the reasons stated by her;

4. Mosley will represent that she had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Mosley caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as they became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct;

5. Mosley agrees to waive her right to file a proof of claim, or to obtain an allowed claim, based on the Settlement Amount, or on any other basis in the Bankruptcy Case. To the extent that Mosley previously filed proofs of claim, such claims are waived and Mosley shall not receive an allowed claim.

6. The Trustee and Mosley shall provide general and mutual releases, including a California Civil Code § 1542 waiver; and

7. The Mosley Agreement is subject to Court approval.

**<u>The Sidecreek Agreement contains the following essential terms:</u>**

1. Sidecreek shall pay the sum of Fifty Thousand Dollars ($50,000) to the Trustee, and such payment shall be made out of the escrow for Sidecreek's sale of its assets to IX ST Portfolio 14, LP, a Delaware limited partnership ("Starwood").
2. The Trustee consents to Sidecreek's sale of the rights, title and interests in the Assets to Starwood, provided that the Trustee is paid the sum of $50,000 out of the sale proceeds of the assets and through the escrow for the sale of the assets.
3. Promptly after both the Trustee's receipt of the settlement amount of $50,000 and the entry of a Bankruptcy Court order approving the settlement in the Debtors' consolidated case, the Trustee's proof of unsecured nonpriority claim, being Claim No. 2, in the sum of $3,071,647.71("Trustee's Claim") in Sidecreek's Chapter 11 case shall be deemed to be released, and the 50% equity interest of Jerrold S. Pressman ("Equity Interest") in Sidecreek shall be deemed extinguished.
4. Except with respect to the rights and obligations under the Sidecreek Agreement, the Trustee, on behalf of the Debtors' Estate, releases any and all claims and causes of action, both known and unknown, against Sidecreek and its agents, employees, attorneys, officers and directors relating to the Trustee's Claim and Equity Interest and the Sidecreek assets.
5. Except with respect to the rights and obligations under the Sidecreek Agreement, Sidecreek releases all of its claims and causes of action, both known and unknown, against the Trustee, in his personal capacity and capacity as the Chapter 7 Trustee, his agents, employees, and attorneys, and the Debtors' Estate.
6. The Sidecreek Agreement is subject to Court Approval.

///

///

///

///

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 9013-1(f) of the Local Bankruptcy Rules, each interested party opposing, joining or responding to the Motion shall file with the Clerk of the Bankruptcy Court and serve upon: (1) the general counsel and the special litigation counsel for the Trustee at the addresses in the upper left hand corner of this pleading; (2) the United States Trustee; (3) Frederick Rafeedie, Jones, Bell, Abbott, Fleming & Fitzgerald L.L.P., counsel for the Londons, at 601 South Figueroa Street, 27th Floor, Los Angeles, CA 90017-5759; (4) Risa L. Wolf-Smith, Holland & Hart LLP, counsel for Hillcrest, at 555 Seventeenth Street, Suite 3200, Denver, CO 80202; (5) Clayton J. Patterson, Dunn Law Firm LLP, counsel for IWU, at 1001 North Main Street, Suite A, Bloomington, IL 61701; (6) David Greenbaum, Assistant General Counsel, Florida Gulf Coast University, counsel for FGCU, at 10501 FGCU Boulevard South Fort Myers, Florida 33965-6565; (7) Warren Nemiroff, Law Office of Warren Nemiroff, counsel for Mosley, at 420 North Camden Drive, Suite 202, Beverly Hills, CA 90210; and (8) Summer Saad, Landsberg & Associates, APLC, 5950 Canoga Avenue, Suite 605, Woodland Hills, CA 91367, not later than fourteen (14) calendar days before the date designated for the hearing either (A) a brief but complete written statement of all reasons in opposition thereto or in support or joinder thereof, an answering memorandum of points and authorities, declarations and copies of all photographs and documentary evidence on which the opposing party intends to rely; or (B) a written statement that the Motion will not be opposed. The opposing papers shall advise the adverse party that any reply to the opposition shall be filed with the Court and served on the opposing party not later than seven (7) calendar days (not excluding Saturdays, Sundays and legal holidays) prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 9013-1(h) of the Local Bankruptcy Rules, failure to timely file and serve a response in accordance with the Local Bankruptcy Rules may be deemed to constitute consent to the relief requested by the Trustee in the Motion.

///

///

///

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 15 of 48

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of Motion, the Motion and the Memorandum of Points and Authorities, the Agreements and the Declaration of Jason M. Rund attached to the Motion, all papers and records in the above-referenced bankruptcy case, all matters of which this Court may take judicial notice, and such further evidence and argument that may be presented to the Court at the hearing on the Motion.

Dated: April 30, 2013

**EZRA BRUTZKUS GUBNER LLP**

By: ______________________
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Trustee and the Settling Parties (the Londons, Hillcreste, IWU, FGCU, Mosley and Sidecreek) have engaged in settlement discussions in regard to the Trustee's claims and potential claims against the Settling Parties. The Agreements, if approved by the Court, will collectively result in the recovery of One Hundred Seventy-Two Thousand Four Hundred Eighty-Eight Dollars and Sixty-Seven Cents ($172,488.67) for the benefit of the Consolidated Estate. The Trustee believes, in his business judgment, that the settlements reflected in the Agreements present the Consolidated Estate with an outcome that is superior to the alternative of potentially costly litigation with the Settling Parties.

Based on the grounds stated herein and in the Rund Declaration, the Trustee respectfully requests that the Court grant this Motion and enter an order:

1. Approving the Agreements;

2. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreements; and

3. Granting such other and further relief as this Court may deem just and proper.

## II.

## BACKGROUND

### A. The EPD Bankruptcy Case.

#### 1. The Involuntary Petition and the Order for Relief.

Petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively, the "Petitioning Creditors") filed the Involuntary Petition on December 7, 2010 [Docket No. 1]. The Court entered an Order for Relief on February 9, 2011. [Docket Nos. 28 and 29].

**2. The Motion to Compel and the Debtor's Filings of Statements, Schedules and a Creditor's Matrix.**

On March 17, 2011, the Trustee filed his motion to compel EPD to: (1) file statements, schedules and a creditor's matrix; (2) turn over the books, records and property of EPD; and (3) cooperate with the Trustee [Docket No. 68]. On April 28, 2011, the Court entered an Order granting the Trustee's motion to compel [Docket No. 125]. The Order stated that EPD must file its statements, schedules and creditor matrix by no later than April 14, 2011 and that EPD must turn over its books, records and property by no later than April 20, 2011.

The Debtor filed Statements and Schedules on April 14, 2011 (the "EPD Statements and Schedules") and filed Amended Statements and Schedules on June 8, 2011 (the "Amended EPD Statements and Schedules"). The 341a meeting of creditors took place on September 8, 2011. Pressman appeared on behalf of the Debtor at the meeting of creditors.

**3. EPD's Motion to Convert the Case to Chapter 11, and Motion to Alter or Amend.**

On February 24, 2011, EPD filed a motion to convert the case under 11 U.S.C. § 706(a) [Docket No. 51]. On the same day, EPD filed a motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 50]. On March 25, 2011, EPD filed declarations in support of its reply memorandum regarding the motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 83]. On April 11, 2011, EPD filed additional declarations in support of its conversion motion [Docket No. 101]. On April 27, 2011, the Court entered an Order denying EPD's motion to alter or amend the order for relief in an involuntary case, or in the alternative for relief from default [Docket No. 122]. On April 28, 2011, the Court entered an Order denying without prejudice EPD's conversion motion [Docket No. 126].

**4. The Rule 2004 Examinations.**

On April 27, 2011, the Trustee filed a motion for the examinations of, and the production of documents and things by: (1) the person(s) most qualified for debtor EPD; (2) Jerrold Pressman; (3) Keith Pressman, Esq.; (4) Ruben Moreno; (5) John C. Kirkland, Esq.; (6) the person(s) most

qualified for Broadway Entertainment Marketing, Inc.; (7) the person(s) most qualified for S.C. Club, L.P.; (8) the person(s) most qualified for S.C. Club, Inc.; (9) the person(s) most qualified for the Bright Conscience Trust; (10) the person most qualified for HMB Holdings, LLC; and (11) Ted Jonavic pursuant to Fed. R. Bankr. P. 2004 [Docket No. 123]. The Court entered an Order granting the Trustee's motion on June 21, 2011 [Docket No. 147]. The Rule 2004 examinations took place as follows: Jerrold Pressman in his capacity as an individual and as the designated person most qualified for EPD, Broadway Entertainment, S.C. Club, L.P. and S.C. Club, Inc. on May 17, 2011, May 31, 2011 and July 8, 2011; John C. Kirkland on May 27, 2011; Ruben Moreno on June 1, 2011; Keith Pressman on June 24, 2011; Ted Jonavic on June 29, 2011; and Thom Ferro as the designated person most qualified for HMB Holdings, LLC on June 30, 2011.

**B. <u>The Pressman Bankruptcy Case</u>.**

On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the Pressman Bankruptcy Case [Docket No. 1]. On February 29, 2012, Jerrold Pressman filed his statements and schedules (the "Pressman Statements and Schedules") in the Pressman Bankruptcy Case [Docket No. 26]. On March 1, 2012, Jerrold Pressman filed an amended creditor's matrix [Docket No. 29].

**C. <u>Substantive Consolidation</u>.**

On April 27, 2012, the Trustee filed a motion to substantively consolidate the bankruptcy estates of EPD and Pressman [Docket No. 200]. The Court entered an Order granting the substantive consolidation motion on June 4, 2012 [Docket No. 227]. Jason Rund is now the Chapter 7 Trustee for the Consolidated Estate.

**D. <u>The Adversary Proceedings</u>.**

**1. The London Adversary Proceeding**

On or about November 28, 2012, the Trustee filed an adversary complaint against the Londons, Adv. No. 2:12-ap-02540-ER. The complaint sought to avoid and recover transfers from EPD to the Londons as follows: (1) $43,982 to or for the benefit of Brandon London; (2) $43,306.24 to or for the benefit of Eric London; (3) $96,000 to or for the benefit of Larry London; and (4) $43,306.24 to or for the benefit of Tyrone London. The complaint sought to recover

transfers from EPD to or for the benefit of the Londons during the seven-year period prior to the Petition Date totaling $226,594.48. On or about January 10, 2013, the Londons filed an answer to the complaint. The Scheduling Order entered on February 19, 2013 provides that the discovery cut-off date is May 31, 2013, the pretrial conference is on July 11, 2013 and trial is during the week of August 26, 2013. On February 20, 2013, the Trustee filed a notice of settlement.

**2. The Mosley Adversary Proceeding**

On or about November 30, 2012, the Trustee filed an adversary complaint against Mosley, Adv. No. 2:12-ap-02587-ER. The complaint sought to avoid and recover transfers from EPD to Mosley during the seven-year period prior to the Petition Date totaling $110,016.16. On or about January 10, 2013, Mosley filed an answer to the complaint. The Scheduling Order entered on February 21, 2013 provides that the discovery cut-off date is May 31, 2013, the pretrial conference is on July 11, 2013 and trial is during the week of August 26, 2013. On February 22, 2013, the Trustee filed a notice of settlement.

**E. <u>The Demand Letters</u>.**

**1. The Hillcreste Demand Letter**

In or about October 2012, the Trustee sent a demand letter to Hillcreste demanding that Hillcreste return $52,642.06 in amounts transferred from EPD to Hillcreste during the seven-year period prior to the Petition Date. The Trustee and Hillcreste thereafter entered into settlement discussions that resulted in the Hillcreste Agreement.

**2. The IWU Demand Letter**

In or about October 2012, 2012, the Trustee sent a demand letter to IWU demanding that IWU return $46,213.63 in amounts transferred from EPD to IWU during the seven-year period prior to the Petition Date. The Trustee and IWU thereafter entered into settlement discussions that resulted in the IWU Agreement.

**3. The FGCU Demand Letter**

In or about October 2012, the Trustee sent a demand letter to FGCU demanding that FGCU return $10,011.64 in amounts transferred from EPD to FGCU during the seven-year period prior to

resulted in the FGCU Agreement.

**F. <u>The Facts re Sidecreek and the Trustee's Claim</u>**

On March 5, 2012, Sidecreek filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, and the case was assigned no. 2:12-bk-17787-ER. Sidecreek is the Debtor-in-Possession.

Sidecreek has filed a motion in its Chapter 11 case to sell all of its right, title and interest in its assets to Starwood for the purchase price of $275,000, plus Starwood's release of its in personam petition-date claim, set forth in its proof of claim in the amount of $5,517,782.76. In its sale motion, which is scheduled to be heard on May 8, 2013, Sidecreek states, among other things, that:

1. Starwood holds a lien of about $5.52 million affecting Sidecreek's assets, which except for funds of about $381 consist of 245 acres of undeveloped land in the cities of Brentwood, Tennessee and Franklin, Tennesse and related personal property (collectively, the "Assets").

2. In its First Amended Chapter 11 Plan of Reorganization, Sidecreek valued the land, "as is" in its undeveloped state, at $6.3 million.

3. In its January 2013 operating report, Sidecreek valued the land at approximately $5.43 million.

4. Sidecreek estimates that the total amount of its Chapter 11 administrative expenses is about $161,950.

On September 6, 2012, the Trustee filed the Trustee's Claim in the sum of $3,071,647.71 in Sidecreek's Chapter 11 case. Sidecreek disputes the Trustee's Claim and the Equity Interest.

**G. <u>The Salient Terms of the Agreements.</u>**

Recognizing the litigation risks, and desiring to eliminate the costs of further and protracted litigation, the Parties agreed to the following general terms of the Agreements (the following is only a summary of the Agreements; all parties in interest are respectfully directed to the Agreements themselves, attached hereto as **Exhibits A through F** to the Rund Declaration, for the specific terms of the Agreements; to the extent any terms listed below are inconsistent with the

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 21 of 48

specific terms of the Agreements; to the extent any terms listed below are inconsistent with the Agreements, the terms of the Agreements shall govern):

**The London Agreement contains the following essential terms:**

1. The Londons shall pay the total amount of Seventy Thousand Dollars ($70,000.00) to the Trustee in full and complete satisfaction of all claims of the Trustee against the Londons;

2. The Londons will represent that, to the best of their knowledge, other than the transfers alleged in the Complaint, they are not aware of having received any other transfers from the Debtors.

3. The Londons will provide representations, and declarations under penalty of perjury, as to:

   a. The reasons for their receipt of funds transferred from EPD;

   b. Affirming that they did not have any actual or inquiry notice of any kind that the Debtors were engaged in a Ponzi scheme or any other improper activity;

   c. The funds that the Londons received from the Debtors were solely for the reasons stated by the Londons;

   d. At the time of the transfers, the Londons had no information, knowledge or believe that the Debtors were insolvent, that any transfers to the Londons caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 22 of 48

4. The Londons agree to waive their right to file a proof of claim, or to obtain an allowed claim, based on the Settlement Amount (or any portion thereof), or on any other basis in the Bankruptcy Case. To the extent that the Londons previously filed proofs of claim, such claims are waived and none of the Londons shall receive an allowed claim.
5. The Trustee and the Londons shall provide general and mutual releases, including a California Civil Code § 1542 waiver; and
6. The London Agreement is subject to Court approval.

**The Hillcreste Agreement contains the following essential terms:**

1. Hillcreste shall pay the total amount of Twenty-Six Thousand Three Hundred Twenty-One Dollars and Three Cents ($26,301.03) to the Trustee;
2. Hillcreste will represent that, to the best of its knowledge, other than the transfers alleged in the Recitals of the Hillcreste Agreement, it is not aware of having received any other transfers from the Debtors.
3. Hillcreste will represent that it had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Hillcreste caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as they became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.
4. The Trustee and Hillcreste shall provide general and mutual releases, including a California Civil Code § 1542 waiver; and
5. The Hillcreste Agreement is subject to Court approval.

**The IWU Agreement contains the following essential terms:**

1. IWU shall pay the total amount of Fifteen Thousand Dollars ($15,000.00) to the Trustee;
2. IWU will represent that, to the best of its knowledge, other than the transfers alleged in the Recitals of the IWU Agreement, it is not aware of having received any other transfers from the Debtors.
3. IWU will represent that it had no information, knowledge or belief that the Debtors were insolvent, that any transfers to IWU caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as they became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.
4. The Trustee and IWU shall provide general and mutual releases, including a California Civil Code § 1542 waiver; and
5. The IWU Agreement is subject to Court approval.

**The FGCU Agreement contains the following essential terms:**

1. FGCU shall pay the total amount of Nine Thousand Ten Dollars and Forty-Eight Cents ($9,010.48) to the Trustee in full and complete satisfaction of all claims of the Trustee against FGCU;
2. FGCU will represent that, to the best of its knowledge, other than the transfers alleged, it are not aware of having received any other transfers from the Debtors.
3. FGCU will represent that it had no information, knowledge or belief that the Debtors were insolvent, that any transfers to FGCU caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as they became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 24 of 48

were engaged in any acts of fraud or other improper conduct;

4. The Trustee and FGCU shall provide general and mutual releases, including a California Civil Code § 1542 waiver; and

5. The FGCU Agreement is subject to Court approval.

**The Mosley Agreement contains the following essential terms:**

1. Mosley shall pay the total amount of Two Thousand One Hundred Fifty-Seven Dollars and Sixteen Cents ($2,157.16) to the Trustee in full and complete satisfaction of all claims of the Trustee against Mosley;

2. Mosley will represent that, to the best of her knowledge, other than the transfers alleged in the Complaint, she is not aware of having received any other transfers from the Debtors.

3. Mosley will provide representations as to the reasons for her receipt of funds transferred from EPD and affirming that she did not have any actual or inquiry notice of any kind that the Debtors were engaged in a Ponzi scheme or any other improper activity, and that the funds that Mosley received from the Debtors were received solely for the reasons stated by her;

4. Mosley will represent that she had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Mosley caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as they became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct;

5. Mosley agrees to waive her right to file a proof of claim, or to obtain an allowed claim, based on the Settlement Amount, or on any other basis in the Bankruptcy Case. To the extent that Mosley previously filed proofs of claim, such claims are waived and Mosley shall not receive an allowed claim.

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 25 of 48

waived and Mosley shall not receive an allowed claim.

6. The Trustee and Mosley shall provide general and mutual releases, including a California Civil Code § 1542 waiver; and

7. The Mosley Agreement is subject to Court approval.

**The Sidecreek Agreement contains the following essential terms:**

1. Sidecreek shall pay the sum of Fifty Thousand Dollars ($50,000) to the Trustee, and such payment shall be made out of the escrow for Sidecreek's sale of its assets to Starwood.

2. The Trustee consents to Sidecreek's sale of the rights, title and interests in the Assets to Starwood, provided that the Trustee is paid the sum of $50,000 out of the sale proceeds of the Assets and through the escrow for the sale of the Assets.

3. Promptly after both the Trustee's receipt of the settlement amount of $50,000 and the entry of a Bankruptcy Court order approving the settlement in the Debtors' consolidated case, the Trustee's proof of unsecured nonpriority claim, being Claim No. 2, in the sum of $3,071,647.71("Trustee's Claim") in Sidecreek's Chapter 11 case shall be deemed to be released, and the 50% equity interest of Jerrold S. Pressman ("Equity Interest") in Sidecreek shall be deemed extinguished.

4. Except with respect to the rights and obligations under the Sidecreek Agreement, the Trustee, on behalf of the Debtors' Estate, releases any and all claims and causes of action, both known and unknown, against Sidecreek and its agents, employees, attorneys, officers and directors relating to the Trustee's Claim and Equity Interest and the Sidecreek Assets.

5. Except with respect to the rights and obligations under the Sidecreek Agreement, Sidecreek releases all of its claims and causes of action, both known and unknown, against the Trustee, in his personal capacity and capacity as the Chapter 7 Trustee, his agents, employees, and attorneys, and the Debtors' Estate.

6. The Sidecreek Agreement is subject to Court Approval.

III.

**THE AGREEMENTS ARE PROPERLY APPROVED**

**A. Legal Standards for Approval.**

Federal Rule of Bankruptcy Procedure 9019 provides that on motion by a Trustee, the Court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a).

The decision of whether to approve or reject a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case. In re Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982); In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986).

More specifically, a Court should review the following factors in considering whether to approve a proposed settlement:

(a) The probability of success in the litigation; (b) the difficulty, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises.

Woodson, *supra*, 839 F.2d at 620 (quoting A&C Properties, *supra*, 784 F.2d at 1381). A settlement negotiated by a trustee, as a representative of the Consolidated Estate, is entitled to deference. In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987).

The Court need not conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised. In re Walsh Construction, Inc., *supra*, 669 F.2d at 1328. In fact, the Court need not decide the questions of law and fact raised in the controversies sought to be settled, and need not determine whether the settlement presented is the best one that could possibly have been achieved. Instead, the Court's responsibility is only to "canvass the issues to see 'whether the settlement falls below the lowest point in the zone of

reasonableness.'" In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1984) (quoting Newman v. Stein, 464 F.2d 689, 698 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972)).

The Trustee has the right to exercise reasonable business judgment in an effort to maximize the value of the assets of the Consolidated Estate. So long as a proposed compromise results in a recovery above the lowest point in the range of reasonable compromises, the Trustee should be authorized to proceed with such compromise. In light of the facts and circumstances in this case, application of the A&C Properties factors shows that the compromises set forth in the Agreements are fair and equitable, are in the best interests of the Consolidated Estate, and are well above the lowest point in the range of reasonableness.

**B. Application of the *A&C Properties* Factors Demonstrates That the Agreements Should Be Approved.**

The Trustee has sufficiently evaluated the Agreements and has compared the benefits of entering into the Agreements as opposed to litigation against the Settling Parties. In evaluating the Agreements, the Trustee has reviewed documents provided by the Debtors, EPD's bank records and Quick Books records, and other documents provided by third parties, and has considered the testimony obtained in several examinations authorized by the Court and conducted pursuant to Fed. R. Bankr. P. 2004, including but not limited to the examination of Pressman. The Trustee has also considered the pleadings filed in Sidecreek.

Based on this evaluation, the Trustee has determined that entering into the Agreements is in the best interests of the Consolidated Estate because the Agreements are fair and equitable, are a reasonable and appropriate exercise of the Trustee's business judgment, and will avoid the time, expense and risk inherent in litigation with the Settling Parties. The Trustee has evaluated the A&C Properties factors in exercising his business judgment as to whether to enter into the Agreements, and has concluded that under these factors, the Agreements should be approved. The A&C Properties factors, as they relate to each of the Agreements, are applied in the sections below.

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 28 of 48

**1. The A & C Properties Factors As to the London Agreement**

**a. Probability of Success on the Merits.**

The Londons were investors in, and/or lenders to, the Debtors. Based on the Trustee's analysis, the Londons were "net winners," having received more from EPD than they invested in and/or lent to EPD. The Trustee believes that it is likely that he would prevail as to claims relating to the Londons up to the amount of the Londons' "false profits" (the amount that they received from EPD less the amount that they invested in or lent to EPD). The Trustee's analysis shows that the Londons invested or lent $85,000 to EPD, and received $226,595 from EPD, for a "false profit" of $141, 595. The Londons additionally assert that they are entitled to additional credits, including a credit of $50,000 based on a written agreement between the Londons and Pressman. To the extent that the Londons were unable to prove their good faith defense at trial, the Trustee may be able to avoid and recover up to the amount of the transfers to the Londons during the 7-year period prior to the Petition Date of $226,595. However, based on the documents that the Trustee has reviewed to date, the Trustee believes that he would be limited to avoiding and recovering the amount of false profits that the Londons received. The Trustee also recognizes that the Londons may assert defenses, including but not limited to the $50,000 credit, and that the defenses may be heavily litigated. The Trustee recognizes that the results of potential litigation against the Londons are uncertain. The Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given the settlement amount of $70,000 without the need for litigation. The Trustee believes, in his business judgment, a settlement with the Londons is more beneficial than proceeding to litigate the claims.

**b. The Difficulty, If Any, In Collection.**

The Trustee is not aware of any issues in regard to difficulty in collection of a potential judgment against the Londons.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to a suit by the Trustee against the Londons would likely be heavily litigated. The outcome of litigation with the Londons is uncertain. Litigation involving

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 29 of 48

the foregoing would potentially be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in a potential action against the Londons will lessen the amount to potentially distribute to creditors of the Consolidated Estate. The Trustee does not believe, in his business judgment, that litigation with the Londons is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $70,000 without the need for litigation.

Based on the foregoing factors, the Trustee has concluded that entering into the London Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and has exercised his reasonable business judgment in concluding that it is better to proceed with the London Agreement than to litigate the herein-described issues/claims with the Londons.

**2. The A & C Properties Factors As to the Hillcreste Agreement**

**a. Probability of Success on the Merits.**

Based on the Trustee's analysis, Hillcreste does not appear to have had any relationship with the Debtors. Rather, Hillcreste apparently received transfers totaling $52,642.06 from the Debtors for the benefit of one or more persons that were investors in and/or lenders to the Debtors. The Trustee believes that it is likely that he would prevail as to claims relating to Hillcreste, but recognizes that Hillcreste may assert defenses, which may be heavily litigated (it is uncertain as to how heavily litigated the claims would be given the amount of the transfers). The Trustee recognizes that the results of potential litigation against Hillcreste are uncertain. Given, among other things, the amount of transfers at issue, the Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given the settlement amount of $26,321.03 without the need for litigation. The Trustee

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 30 of 48

believes, in his business judgment, a settlement with Hillcreste is more beneficial than proceeding to litigate the claims.

**b. The Difficulty, If Any, In Collection.**

The Trustee is not aware of any issues in regard to difficulty in collection of a potential judgment against Hillcreste.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to a suit by the Trustee against Hillcreste may be heavily litigated (based on the amount at issue, it is uncertain as to how heavily litigated the suit would be). The outcome of litigation Hillcreste is uncertain. Litigation involving the foregoing would potentially be costly and time consuming, especially in relation to the amount at issue. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in a potential action against Hillcreste will lessen the amount to potentially distribute to creditors of the Consolidated Estate. The Trustee does not believe, in his business judgment, that litigation with Hillcreste is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $26,321.03 without the need for litigation.

Based on the foregoing factors, the Trustee has concluded that entering into the Hillcreste Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and has exercised his reasonable business judgment in concluding that it is better to proceed with the Hillcreste Agreement than to litigate the herein-described issues/claims with Hillcreste.

**3. The A & C Properties Factors As to the IWU Agreement**

**a. Probability of Success on the Merits.**

Based on the Trustee's analysis, IWU does not appear to have had any relationship with the Debtors. Rather, IWU apparently received transfers totaling $46,213.63

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 31 of 48

from the Debtors for the benefit of one or more persons that were investors in and/or lenders to the Debtors. The Trustee believes that it is likely that he would prevail as to claims relating to IWU, but recognizes that IWU may assert defenses, which may be heavily litigated (based on the amount at issue, it is uncertain as to how heavily litigated the suit would be). The Trustee recognizes that the results of potential litigation against IWU are uncertain. Given, among other things, the amount of transfers at issue, the Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given the settlement amount of $15,000 without the need for litigation. The Trustee believes, in his business judgment, a settlement with IWU is more beneficial than proceeding to litigate the claims.

**b. The Difficulty, If Any, In Collection.**

The Trustee is not aware of any issues in regard to difficulty in collection of a potential judgment against IWU.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to a suit by the Trustee against IWU may be heavily litigated (it is uncertain as to how heavily litigated the claims would be given the amount of the transfers). The outcome of litigation IWU is uncertain. Litigation involving the foregoing would potentially be costly and time consuming, especially in relation to the amount at issue. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in a potential action against IWU will lessen the amount to potentially distribute to creditors of the Consolidated Estate. The Trustee does not believe, in his business judgment, that litigation with IWU is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $15,000 without the need for litigation.

Based on the foregoing factors, the Trustee has concluded that entering into the IWU Agreement is the most prudent and economical method of maximizing the recovery for the

Consolidated Estate, and has exercised his reasonable business judgment in concluding that it is better to proceed with the IWU Agreement than to litigate the herein-described issues/claims with IWU.

**4. The A & C Properties Factors As to the FGCU Agreement**

**a. Probability of Success on the Merits.**

Based on the Trustee's analysis, FGCU does not appear to have had any relationship with the Debtors. Rather, FGCU apparently received transfers totaling $10,011.64 from the Debtors for the benefit of one or more persons that were investors in and/or lenders to the Debtors. The Trustee believes that it is likely that he would prevail as to claims relating to FGCU, but recognizes that FGCU may assert defenses, which may be heavily litigated (based on the amount at issue, it is uncertain as to how heavily litigated the suit would be). The Trustee recognizes that the results of potential litigation against FGCU are uncertain. Given, among other things, the amount of transfers at issue, the Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given the settlement amount of $9,010.48 without the need for litigation. The Trustee believes, in his business judgment, a settlement with FGCU is more beneficial than proceeding to litigate the claims.

**b. The Difficulty, If Any, In Collection.**

The Trustee is not aware of any issues in regard to difficulty in collection of a potential judgment against FGCU.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to a suit by the Trustee against FGCU may be heavily litigated (given the amount at issue, it is uncertain as to how heavily litigated the claims would be). The outcome of litigation FGCU is uncertain. Litigation involving the foregoing would potentially be costly and time consuming, especially in relation to the amount at issue. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in a potential action against FGCU will lessen the amount to potentially distribute to creditors of the Consolidated Estate. The Trustee does not believe, in his business judgment, that litigation with FGCU is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $9,010.48 without the need for litigation.

Based on the foregoing factors, the Trustee has concluded that entering into the FGCU Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and has exercised his reasonable business judgment in concluding that it is better to proceed with the FGCU Agreement than to litigate the herein-described issues/claims with FGCU.

**5. The A & C Properties Factors As to the Mosley Agreement**

**a. Probability of Success on the Merits.**

Mosley was an investor in, and/or lender to, the Debtors. Based on the Trustee's analysis, Mosley was a "net winner," having received more from EPD than she invested in and/or lent to EPD. The Trustee believes that it is likely that he would prevail as to claims relating to Mosley up to the amount of Mosley's "false profits" (the amount that she received from EPD less the amount that she invested in or lent to EPD). To the extent that Mosely is unable to establish a good faith defense, the Trustee would potentially be able to avoid and recover all transfers from the Debtors to Mosley during the 7-year period prior to the Bankruptcy Case of $110,016. The Trustee's analysis shows that Mosley invested or lent $107,849 to EPD, and received $110,016 from EPD, for a "false profit" of $2,167. The Trustee believes that it is likely that he would prevail as to claims relating to Mosley, at least up to the amount of false profits. Based on the documents reviewed to date, the Trustee believes that his recovery in regard to Mosley would be limited to the amount of false profits. The Trustee recognizes that the results of potential litigation against Mosley are uncertain. Given, among other things, the amount of the transfers to Mosley and the amount of the false profits, the Trustee does not believe that it is prudent to subject the Estate to the risks and costs associated with the potential

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 34 of 48

litigation given the settlement amount of $2,157.16 (the approximate amount of the false profits) without the need for litigation. The Trustee believes, in his business judgment, a settlement with Mosley is more beneficial than proceeding to litigate the claims.

**b. The Difficulty, If Any, In Collection.**

The Trustee is not aware of any issues in regard to difficulty in collection of a potential judgment against Mosley.

**c. The Complexity, Expense and Inconvenience of Litigation.**

The issues in regard to a suit by the Trustee against Mosley may be heavily litigated. The outcome of litigation Mosley is uncertain. Litigation involving the foregoing would potentially be costly and time consuming, especially in relation to the amount of false profits. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, the Trustee would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in a potential action against Mosley will lessen the amount to potentially distribute to creditors of the Consolidated Estate. The Trustee does not believe, in his business judgment, that litigation with Mosley is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $2,157.16 without the need for litigation.

Based on the foregoing factors, the Trustee has concluded that entering into the Mosley Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and has exercised his reasonable business judgment in concluding that it is better to proceed with the Mosley Agreement than to litigate the herein-described issues/claims with Mosley.

**6. The A & C Properties Factors As to the Sidecreek Agreement**

**a. Probability of Success on the Merits.**

Although the Trustee believes that the Trustee's Claim in the sum of $3,071,647.71 should be allowed in Sidecreek's case, the prospect of allowing the Trustee's

Claim in full is uncertain. Sidecreek disputes the Trustee's Claim. More importantly, it appears that litigation to resolve the objections would not be economically feasible in light of the lack of funds that will be available for distribution to unsecured creditors in Sidecreek's Chapter 11 case. As indicated by the sale motion, Starwood holds a lien of about $5.52 million affecting the real property, the sale motion will result in cash proceeds of $275,000, and the estimated total amount of Chapter 11 administrative expenses is about $161,950. The Trustee believes, in his business judgment, that a settlement with Sidecreek is more beneficial than proceeding to litigate the Trustee's Claims.

**b. The Difficulty, If Any, In Collection.**

If the Trustee's Claim were allowed in full, he would not be able to collect the full amount of the Trustee's Claim due to the lack of funds available for distribution to unsecured creditors in the Sidecreek case.

**c. The Complexity, Expense and Inconvenience of Litigation.**

In light of the lack of funds available for distribution to unsecured creditors in Sidecreek's Chapter 11 case, litigation to resolve Sidecreek's objections to the Trustee's Claims would not be economically feasible. If the objections were heavily litigated, the expense of such litigation could exceed the amount of any pro rata distribution to the Trustee with respect to the Trustee's Claim.

**d. The Paramount Interests of Creditors.**

Any attorney's fees and costs incurred by the Trustee in litigation involving the Trustee's Claim will lessen the amount to potentially distribute to creditors of the Consolidated Estate. The Trustee does not believe, in his business judgment, that litigation with Sidecreek is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $50,000 without the need for litigation.

Based on the foregoing factors, the Trustee has concluded that entering into the Sidecreek Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and has exercised his reasonable business judgment in concluding that it is better to proceed with the Sidecreek Agreement than to litigate the herein-described issues/claims with Sidecreek.

## IV.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant this Motion and enter an order:

1. Approving the Agreements;

2. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreements; and

3. Granting such other and further relief as this Court may deem just and proper.

Dated: April 30, 2013

Respectfully submitted,

**EZRA BRUTZKUS GUBNER LLP**

By: ______________________
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 37 of 48

**DECLARATION OF JASON M. RUND**

I, Jason M. Rund declare:

1. I am an attorney at law duly admitted to practice before this Court and am the duly appointed, qualified and acting Chapter 7 trustee of the bankruptcy estate of consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (the "Consolidated Estate"). Other than as specifically identified herein, each of the facts contained in this declaration is based on personal knowledge and, if called as a witness, I could and would competently testify competently as to these facts.

2. Any capitalized terms used but not defined herein, shall have the same meaning as is affixed to them in the Motion.

3. The involuntary petition filed with the Court reflects that on December 7, 2010, the petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Sager, Jayne Sager as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee (collectively, the "Petitioning Creditors") filed the involuntary Chapter 7 petition against EPD.

4. On February 9, 2011, the Order for Relief was entered in this case as to EPD.

5. On or about February 12, 2011, I was appointed as the Chapter 7 Trustee in this case.

6. EPD filed Statements and Schedules on April 14, 2011 and filed Amended Statements and Schedules on June 8, 2011. The 341a meeting of creditors took place on September 8, 2011. Pressman appeared on behalf of EPD at the meeting of creditors.

7. My special litigation counsel conducted several examinations of Pressman and other witnesses pursuant to Fed. R. Bankr. P. 2004 (the "Rule 2004 Examinations"). I attended almost all of the Rule 2004 Examinations and received copies of the examination transcripts and the documents produced by Pressman and the other witnesses pursuant to the Rule 2004 Examinations.

8. On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the Pressman Bankruptcy Case. On February 29, 2012, Pressman filed his statements and schedules in the Pressman Bankruptcy Case. I am now the Chapter 7 Trustee for the Consolidated Estate.

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 38 of 48

9. On April 27, 2012, through my counsel, I filed a motion to substantively consolidate the bankruptcy estates of EPD and Pressman. The Court entered an Order granting the substantive consolidation motion on June 4, 2012.

10. On September 6, 2012, I filed a proof of unsecured nonpriority claim, being Claim No. 2, in the sum of $3,071,647.71in Sidecreek's Chapter 11 case.

11. Through my special litigation counsel, I commenced settlement negotiations with the Londons. On or about March 15, 2013, I executed the London Agreement. A true and correct copy of the London Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference.

12. Through my special litigation counsel, I commenced settlement negotiations with Hillcreste. On or about March 28, 2013, I executed the Hillcreste Agreement. A true and correct copy of the Hillcreste Agreement is attached hereto as **Exhibit B** and is incorporated herein by reference.

13. Through my special litigation counsel, I commenced settlement negotiations with IWU. On or about April 5, 2013, I executed the IWU Agreement. A true and correct copy of the IWU Agreement is attached hereto as **Exhibit C** and is incorporated herein by reference.

14. Through my special litigation counsel, I commenced settlement negotiations with FGCU. On or about December 4, 2012, I executed the FGCU Agreement. A true and correct copy of the FGCU Agreement is attached hereto as **Exhibit D** and is incorporated herein by reference.

15. Through my special litigation counsel, I commenced settlement negotiations with Mosley. On or about March 4, 2013, I executed the Mosley Agreement. A true and correct copy of the Mosley Agreement is attached hereto as **Exhibit E** and is incorporated herein by reference.

16. Through my special litigation counsel and general counsel, I commenced settlement negotiations with Sidecreek. On or about April 24, 2013, I executed the Sidecreek Agreement. A true and correct copy of the Sidecreek Agreement is attached hereto as **Exhibit F** and is incorporated herein by reference.

///

///

**The London Agreement**

17. In analyzing the reasonableness of the London Agreement, I considered the four factors established by the Ninth Circuit in the A & C Properties case, including: (1) probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation and the expense, inconvenience and delay attending it; and (4) the paramount interests of creditors. My analysis in this regard follows in the paragraphs below.

18. Probability of Success on the Merits. The Londons appear to have been investors in, and/or lenders to, the Debtors. The Londons appear to have been "net winners," having received more from EPD than they invested in and/or lent to EPD. I believe that it is likely that I would prevail as to claims relating to the Londons up to the amount of the Londons' "false profits" (the amount that they received from EPD less the amount that they invested in or lent to EPD). It appears that the Londons invested or lent $85,000 to EPD, and received $226,595 from EPD, for a "false profit" of $141, 595. The Londons additionally assert that they are entitled to additional credits, including a credit of $50,000 based on a written agreement between the Londons and Pressman. To the extent that the Londons were unable to prove their good faith defense at trial, I may be able to avoid and recover up to the amount of the transfers to the Londons during the 7-year period prior to the Petition Date of $226,595. However, based on the documents that I have reviewed to date, I believe that I would be limited to avoiding and recovering the amount of false profits that the Londons received. I also recognize that the Londons may assert defenses, including but not limited to the $50,000 credit, and that the defenses may be heavily litigated. I recognize that the results of potential litigation against the Londons are uncertain and do not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given the settlement amount of $70,000 without the need for litigation. In my business judgment, I believe that a settlement with the Londons is more beneficial than proceeding to litigate the claims.

19. Collection Risk. I am not aware of any issues in regard to difficulty in collection of a potential judgment against the Londons.

20. Complexity of the Litigation and the Expense, Inconvenience and Delay Necessarily Attending It. The issues in regard to a suit by me against the Londons may be heavily

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 40 of 48

litigated and the outcome of litigation against the Londons is uncertain. Litigation involving the foregoing may be costly and time consuming. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

21. Paramount Interest of Creditors. Any attorney's fees and costs incurred by the estate in a potential action against the Londons will lessen the amount to potentially distribute to creditors of the Consolidated Estate. I do not believe, in my business judgment, that litigation with the Londons is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $70,000 without the need for litigation.

22. Based on the foregoing factors, I have concluded that entering into the London Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and have exercised my reasonable business judgment in concluding that it is better to proceed with the London Agreement than to litigate the herein-described issues/claims with the Londons.

**The Hillcreste Agreement**

23. In analyzing the reasonableness of the Hillcreste Agreement, I considered the four factors established by the Ninth Circuit in the A & C Properties case, including: (1) probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation and the expense, inconvenience and delay attending it; and (4) the paramount interests of creditors. My analysis in this regard follows in the paragraphs below.

24. Probability of Success on the Merits. Hillcreste does not appear to have had any relationship with the Debtors. Rather, Hillcreste apparently received transfers totaling $52,642.06 from the Debtors for the benefit of one or more persons that were investors in and/or lenders to the Debtors. I believe that it is likely that I would prevail as to claims relating to Hillcreste, but recognize that Hillcreste may assert defenses, which may be heavily litigated (based on the amount of the transfers, it is uncertain as to how heavily litigated the claims would be). I recognize that the results of potential litigation against Hillcreste are uncertain. Given, among other things, the amount of transfers at issue, I do not believe that it is prudent to subject the

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 41 of 48

Estate to the risks and costs associated with the potential litigation given the settlement amount of $26,321.03 without the need for litigation. I believe, in my business judgment, that a settlement with Hillcreste is more beneficial than proceeding to litigate the claims.

25. Collection Risk. I am not aware of any issues in regard to difficulty in collection of a potential judgment against Hillcreste.

26. Complexity of the Litigation and the Expense, Inconvenience and Delay Necessarily Attending It. The issues in regard to a suit by me against Hillcreste may be heavily litigated (based on the amount at issue, it is uncertain as to how heavily litigated the suit would be). The outcome of litigation against Hillcreste is uncertain. Litigation involving the foregoing would potentially be costly and time consuming, especially in relation to the amount at issue. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

27. Paramount Interest of Creditors. Any attorney's fees and costs incurred by the estate in a potential action against Hillcreste will lessen the amount to potentially distribute to creditors of the Consolidated Estate. I do not believe, in my business judgment, that litigation with Hillcreste is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $26,321.03 without the need for litigation.

28. Based on the foregoing factors, I have concluded that entering into the Hillcreste Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and have exercised my reasonable business judgment in concluding that it is better to proceed with the Hillcreste Agreement than to litigate the herein-described issues/claims with Hillcreste.

**The IWU Agreement**

29. In analyzing the reasonableness of the IWU Agreement, I considered the four factors established by the Ninth Circuit in the A & C Properties case, including: (1) probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation and the expense, inconvenience and delay attending it; and (4) the

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 42 of 48

paramount interests of creditors. My analysis in this regard follows in the paragraphs below.

30. Probability of Success on the Merits. IWU does not appear to have had any relationship with the Debtors. Rather, IWU apparently received transfers totaling $46,213.63 from the Debtors for the benefit of one or more persons that were investors in and/or lenders to the Debtors. I believe that it is likely that I would prevail as to claims relating to IWU, but recognize that IWU may assert defenses, which may be heavily litigated (based on the amount at issue, it is uncertain as to how heavily litigated the suit would be). I recognize that the results of potential litigation against IWU are uncertain. Given, among other things, the amount of transfers at issue, I do not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given the settlement amount of $15,000 without the need for litigation. I believe, in my business judgment, that a settlement with IWU is more beneficial than proceeding to litigate the claims.

31. Collection Risk. I am not aware of any issues in regard to difficulty in collection of a potential judgment against IWU.

32. Complexity of the Litigation and the Expense, Inconvenience and Delay Necessarily Attending It. The issues in regard to a suit by me against IWU may be heavily litigated (based on the amount of the transfers it is uncertain as to how heavily litigated the claims would be). The outcome of litigation against IWU is uncertain. Litigation involving the foregoing would potentially be costly and time consuming, especially in relation to the amount at issue. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

33. Paramount Interest of Creditors. Any attorney's fees and costs incurred by the estate in a potential action against IWU will lessen the amount to potentially distribute to creditors of the Consolidated Estate. I do not believe, in my business judgment, that litigation with IWU is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $15,000 without the need for litigation.

34. Based on the foregoing factors, I have concluded that entering into the IWU

Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and have exercised my reasonable business judgment in concluding that it is better to proceed with the IWU Agreement than to litigate the herein-described issues/claims with IWU.

**The FGCU Agreement**

35. In analyzing the reasonableness of the FGCU Agreement, I considered the four factors established by the Ninth Circuit in the A & C Properties case, including: (1) probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation and the expense, inconvenience and delay attending it; and (4) the paramount interests of creditors. My analysis in this regard follows in the paragraphs below.

36. Probability of Success on the Merits. FGCU does not appear to have had any relationship with the Debtors. Rather, FGCU apparently received transfers totaling $10,011.64 from the Debtors for the benefit of one or more persons that were investors in and/or lenders to the Debtors. I believe that it is likely that I would prevail as to claims relating to FGCU, but recognize that FGCU may assert defenses, which may be heavily litigated (based on the amount at issue, it is uncertain as to how heavily litigated the suit would be). I recognize that the results of potential litigation against FGCU are uncertain. Given, among other things, the amount of transfers at issue, I do not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given the settlement amount of $9,010.48 without the need for litigation. I believe, in my business judgment, that a settlement with FGCU is more beneficial than proceeding to litigate the claims.

37. Collection Risk. I am not aware of any issues in regard to difficulty in collection of a potential judgment against FGCU.

38. Complexity of the Litigation and the Expense, Inconvenience and Delay Necessarily Attending It. The issues in regard to a suit by me against FGCU may be heavily litigated (based on the amount of the transfers it is uncertain as to how heavily litigated the claims would be). The outcome of litigation against FGCU is uncertain. Litigation involving the foregoing would potentially be costly and time consuming, especially in relation to the amount at

issue. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

39. Paramount Interest of Creditors. Any attorney's fees and costs incurred by the estate in a potential action against FGCU will lessen the amount to potentially distribute to creditors of the Consolidated Estate. I do not believe, in my business judgment, that litigation with FGCU is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $9,010.48 without the need for litigation.

40. Based on the foregoing factors, I have concluded that entering into the FGCU Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and have exercised my reasonable business judgment in concluding that it is better to proceed with the FGCU Agreement than to litigate the herein-described issues/claims with FGCU.

**The Mosley Agreement**

41. In analyzing the reasonableness of the Mosley Agreement, I considered the four factors established by the Ninth Circuit in the A & C Properties case, including: (1) probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation and the expense, inconvenience and delay attending it; and (4) the paramount interests of creditors. My analysis in this regard follows in the paragraphs below.

42. Probability of Success on the Merits. Mosley appears to have been an investor in, and/or lender to, the Debtors. Mosley also appears to have been a "net winner," having received more from EPD than she invested in and/or lent to EPD. I believe that it is likely that I would prevail as to claims relating to Mosley up to the amount of Mosley's "false profits" (the amount that she received from EPD less the amount that she invested in or lent to EPD). To the extent that Mosely is unable to establish a good faith defense, I would potentially be able to avoid and recover all transfers from the Debtors to Mosley during the 7-year period prior to the Bankruptcy Case of $110,016. It appears that Mosley invested or lent $107,849 to EPD, and received $110,016 from EPD, for a "false profit" of $2,167. I believe that it is likely that I would prevail as to claims

relating to Mosley, at least up to the amount of false profits. Based on the documents reviewed to date, I believe that my recovery in regard to Mosley would be limited to the amount of false profits. I recognize that the results of potential litigation against Mosley are uncertain. Given, among other things, the amount of the transfers to Mosley and the amount of the false profits, I do not believe that it is prudent to subject the Estate to the risks and costs associated with the potential litigation given the settlement amount of $2,157.16 (the approximate amount of the false profits) without the need for litigation. I believe, in my business judgment, that a settlement with Mosley is more beneficial than proceeding to litigate the claims.

43. <u>Collection Risk</u>. I am not aware of any issues in regard to difficulty in collection of a potential judgment against Mosley.

44. <u>Complexity of the Litigation and the Expense, Inconvenience and Delay Necessarily Attending It</u>. The issues in regard to a suit by me against Mosley may be heavily litigated (although given the amount at issue it is uncertain as to how heavily litigated the issues would be). The outcome of litigation against Mosley is uncertain. Litigation involving the foregoing may potentially be costly and time consuming, especially in relation to the amount of false profits. The Consolidated Estate would bear attorney's fees and costs associated with the litigation. In addition, I would likely require expert testimony from two or more expert witnesses, adding additional cost to the litigation.

45. <u>Paramount Interest of Creditors</u>. Any attorney's fees and costs incurred by the estate in a potential action against Mosley will lessen the amount to potentially distribute to creditors of the Consolidated Estate. I do not believe, in my business judgment, that litigation with Mosley is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $2,157.16 without the need for litigation.

46. Based on the foregoing factors, I have concluded that entering into the Mosley Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and have exercised my reasonable business judgment in concluding that it is better to proceed with the Mosley Agreement than to litigate the herein-described issues/claims with Mosley.

47. Based on the foregoing factors, I have concluded that entering into the Agreements is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and have exercised my reasonable business judgment in concluding that it is better to proceed with the Agreements than to litigate with the Settling Parties.

**The Sidecreek Agreement**

48. In analyzing the reasonableness of the Sidecreek Agreement, I considered the four factors established by the Ninth Circuit in the A & C Properties case, including: (1) probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation and the expense, inconvenience and delay attending it; and (4) the paramount interests of creditors. My analysis in this regard follows in the paragraphs below

49. Probability of Success on the Merits. Although I believe that the Trustee's Claim in the sum of $3,071,647.71 should be allowed in Sidecreek's case, the prospect of allowing the Trustee's Claim in full is uncertain. Sidecreek disputes the Trustee's Claim. More importantly, it appears that litigation to resolve the objections would not be economically feasible in light of the lack of funds that will be available for distribution to unsecured creditors in Sidecreek's Chapter 11 case. As indicated by Sidecreek's sale motion, Starwood holds a lien of about $5.52 million affecting the real property, the sale motion will result in cash proceeds of $275,000, and the estimated total amount of Chapter 11 administrative expenses is about $161,950. I believe, in my business judgment, that a settlement with Sidecreek is more beneficial than proceeding to litigate the Trustee's Claims.

50. Collection Risk. If the Trustee's Claim were allowed in full, I would not be able to collect the full amount of the Trustee's Claim due to the lack of funds available for distribution to unsecured creditors in the Sidecreek case.

51. The Complexity, Expense and Inconvenience of Litigation. In light of the lack of funds available for distribution to unsecured creditors in Sidecreek's Chapter 11 case, I believe that litigation to resolve Sidecreek's objections to the Trustee's Claims would not be economically feasible. If the objections were heavily litigated, the expense of such litigation could exceed the amount of any pro rata distribution to me as Trustee with respect to the Trustee's Claim.

Case 2:10-bk-62208-ER Doc 540 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Main Document Page 47 of 48

52. The Paramount Interests of Creditors. Any attorney's fees and costs incurred by me in litigation involving the Trustee's Claim will lessen the amount to potentially distribute to creditors of the Consolidated Estate. I do not believe, in my business judgment, that litigation with Sidecreek is in the best interests of the Consolidated Estate or its creditors given the settlement amount of $50,000 without the need for litigation.

53. Based on the foregoing factors, I have concluded that entering into the Sidecreek Agreement is the most prudent and economical method of maximizing the recovery for the Consolidated Estate, and have exercised my reasonable business judgment in concluding that it is better to proceed with the Sidecreek Agreement than to litigate the herein-described issues/claims with Sidecreek.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 30, 2013 at El Segundo, California.

[signature]

JASON M. RUND

**REQUEST FOR JUDICIAL NOTICE**

Jason M. Rund, the Chapter 7 Trustee (the "Trustee") for the consolidated bankruptcy estate of debtors EPD Investment Co., LLC and Jerrold S. Pressman, requests pursuant to Fed.R.Evid. 201 that the Court take judicial notice of the Motion for Order Authorizing Sale of Estate Property and Compromise of Claims; Memorandum of Points and Authorities; Declaration of Robert D. Geringer (Docket No. 184) filed by Sidecreek on April 17, 2013 in the Chapter 11 case of *In re Sidecreek Development, Inc.*, Bk. No. 2:12-bk-17787-ER in the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

Dated: April 30, 2013

Respectfully submitted,

**EZRA BRUTZKUS GUBNER LLP**

By: [signature]
COREY R. WEBER
Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee

**<u>SETTLEMENT AGREEMENT</u>**

This Settlement Agreement (the "<u>Agreement</u>") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "<u>Trustee</u>") for the Chapter 7 bankruptcy estate (the "<u>Estate</u>") of consolidated debtors EPD Investment Co., LLC ("<u>EPD</u>") and Jerrold S. Pressman ("<u>Pressman</u>") (together, the "<u>Debtors</u>"), on the one hand, and defendants Brandon London, Eric London, Larry London, and Tyrone London, on the other hand (defendants Brandon, Eric, Larry, and Tyrone London are collectively referred to herein after as "<u>Defendants</u>"). The Trustee and Defendants (together referred to as the "<u>Parties</u>"), agree as follows:

**<u>RECITALS</u>**

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("<u>Petition Date</u>"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, before the Honorable Ernest M. Robles.

B. On or about November 28, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Brandon London, an individual, Eric London, an individual, Larry London, an individual, and Tyrone London,* Adv. No. 2:12-ap-02540-ER (the "Adversary Proceeding"), currently pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"). The Complaint sought to avoid and recover transfers from EPD to, or for the benefit of, Defendants. On or about January 10, 2013, Defendants filed their answer to the Complaint.

C. The Trustee alleges that EPD made: (1) transfers totaling $43,982.90 to or for the benefit of Defendant Brandon London; (2) transfers totaling $43,306.24 to or for the benefit of Defendant Eric London; (3) transfers totaling $96,000.00 to or for the benefit of Defendant Larry London; and (4) transfers totaling $43,306.24 to or for the benefit of Defendant Tyrone London (the foregoing transfers collectively referred to hereinafter as the "<u>Transfers</u>"), all of the Transfers having been made in the seven years preceding the Petition Date.

D. Defendants contend that the Transfers are not avoidable or recoverable by the Trustee. Defendants have acknowledged that the Transfers were in fact received by Defendants, but represent that certain of the funds constituting the Transfers were repayment of principal invested in and/or loaned to EPD by the Defendants.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

**<u>Terms of Agreement</u>**

**1. <u>Effective Date</u>.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of the first omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final and non-appealable order is entered by the Bankruptcy Court

approving this Agreement (the "Effective Date").

2. **Payment by Defendants**. Defendants shall pay the total amount of Seventy Thousand Dollars ($70,000.00) to the Trustee (the "Settlement Amount") on or before the fifth (5th) business day after the Effective Date. The Settlement Amount shall be paid by cashier's check made payable to "Jason M. Rund, Chapter 7 Trustee for consolidated debtors EPD Investment Co., LLC, and Jerrold S. Pressman". The Settlement Amount shall be delivered to the attention of Corey R. Weber, Esq. and Michael W. Davis, Esq., Ezra Brutzkus Gubner LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367. If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

3. **Dismissal Of Adversary Proceeding**. Within twenty (20) business days after the Effective Date, and after the Trustee has: (1) received the Settlement Amount; and (2) the Court has entered an order approving this Agreement, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing his or her own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement. The Defendants agree that no stipulation shall be necessary unless required by the Court.

4. **Release of Claims**. The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendants, and each of them, from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendants, and each of them, on their respective behalves, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint.

The Parties understand that the release(s) of claims set forth in this Agreement cover claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Defendants, and each of them, agree to waive their right to file a proof of claim, or to obtain an allowed claim, based on the Settlement Amount (or any portion thereof), or on any other basis, in the Bankruptcy Case. To the extent that Defendants previously filed proofs of claim(s), such claims are waived and none of the Defendants shall not receive an allowed claim. Nothing contained in the releases herein shall negate or

impair the Trustee's right to enforce this Agreement, including but not limited to the payment of the Settlement Amount.

5. **Defendants' Representations.**

Defendants, and each of them, represent to the Trustee the following:

a. Defendants received the benefit of the following respective transfers from the Debtors: (1) transfers totaling $43,982.90 to or for the benefit of Defendant Brandon London; (2) transfers totaling $43,306.24 to or for the benefit of Defendant Eric London; (3) transfers totaling $96,000.00 to or for the benefit of Defendant Larry London; and (4) transfers totaling $43,306.24 to or for the benefit of Defendant Tyrone London, all of the foregoing having been made in the seven years preceding the Petition Date. Defendants are not aware of any other transfers from the Debtors to them.

b. Defendants, and each of them, did not have any actual or inquiry notice of any kind that the EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendants received from the Debtors were received solely for the reasons stated in herein above.

c. That at the time of the Transfers, Defendants had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendants caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

d. Concurrently with the execution of this Agreement, Defendants agree to execute declarations under penalty of perjury affirming the representations made by the Defendants herein.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such

alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability**. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous**. As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority**. Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood**. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and Pdf Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

[signatures follow]

Dated: ____________________

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 5 of 37

3-15-13

CONSOLIDATED DEBTORS EPD INVESTMENT CO., LLC, AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Dated: 3/6/13

DEFENDANT BRANDON LONDON

By: ______________________
BRANDON LONDON, an individual

Dated: 3/6/13

DEFENDANT ERIC LONDON

By: ______________________
ERIC LONDON, an individual

Dated: 3-6-2013

DEFENDANT LARRY LONDON

By: ______________________
LARRY LONDON, an individual

Dated: 3-6-2013

DEFENDANT TYRONE LONDON

By: ______________________
TYRONE LONDON, an individual

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 6 of 37

Approved as to Form:

Dated: 3/15/13

EZRA BRUTZKUS GUBNER LLP

By: [signature]

COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: March 13, 2013

JONES, BELL, ABBOTT, FLEMING & FITZGERALD L.L.P.

By: [signature]

FREDRICK A. RAFEEDIE
Attorney for Defendants Brandon London,
Eric London, Larry London, and Tyrone London

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - P and POS Page 7 of 37

SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, solely in his capacity as Chapter 7 bankruptcy trustee (the "Trustee") for the consolidated Chapter 7 bankruptcy estate (the "Consolidated Estate" or the "Estate") of debtors EPD Investment Company, LLC ("EPD") and Jerrold S. Pressman ("Pressman") (collectively the "Debtors"), and NHPMN-GP, Inc., a Delaware Corporation d/b/a/ Hillcreste Apartments, and LA Hillcreste Apartments, LLC, a Delaware limited liability company a/k/a/ Hillcreste Apartments (collectively "NHPMN-GP"). The Trustee and NHPMN-GP, the parties hereto (collectively referred to as the "Parties"), agree as follows:

RECITALS

A. Petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee filed an involuntary bankruptcy petition against EPD Investment Co., LLC ("EPD") on December 7, 2010 (the "EPD Bankruptcy Case"). The Court entered an Order for Relief on February 9, 2011.

B. On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the "Pressman Bankruptcy Case."

C. On April 27, 2012, the Trustee filed a motion to substantively consolidate the EPD Bankruptcy Case and the Pressman Bankruptcy Case (the "Consolidated Estate"), which the Court approved by an Order entered on June 4, 2012. Jason Rund is now the Chapter 7 Trustee for the Consolidated Estate.

D. The Trustee demanded that NHPMN-GP return $52,642.06 in amounts transferred from EPD to NHPMN-GP during the seven years prior to the bankruptcy petition date pursuant to 11 U.S.C. §§ 544, 548 and 550 and California Civil Code Section 3439, *et seq*. NHPMN-GP denies the Trustee's assertions and contends that any transfers are not avoidable or recoverable. NMB

E. NHPMN-GP represents and warrants the following:

(i) NHPMN-GP had no information, knowledge or belief that the Debtors were insolvent, that any transfers to NHPMN-GP caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors or were engaged in any acts of fraud or other improper conduct.

(ii) NHPMN-GP is not aware of any transfers received from the Debtors, or from insiders of the Debtors or other related entities, other than the transfers referred to in Recital D above.

F. In order to fully and finally resolve the disputes described herein and to avoid the risks and expense of litigation, the Trustee, on the one hand, and NHPMN-GP, on the other hand,



EXHIBIT "B"

hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, and incorporating the Recitals set forth hereinabove, the Parties hereby agree as follows:

## Terms of Agreement

1. Effective Date. After his receipt of the fully executed Agreement, and at such time is economical to the estate as part of the first omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final and non-appealable order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date").

2. Payment by NHPMN-GP to the Trustee. NHPMN-GP shall pay the total amount of Twenty Six Thousand Three Hundred Twenty One Dollars and Three Cents ($26,321.03) to the Trustee (the "Settlement Amount") on or before the fifth (5th) business day after the Effective Date. The Settlement Amount shall be paid by wire or cashier's check made payable to "Jason M. Rund, Chapter 7 Trustee for the estate of debtors EPD Investment Co., LLC et al." The Settlement Amount, if by cashier's check, shall be delivered to the attention of Steven T. Gubner, Esq. and Corey R. Weber, Esq., Ezra Brutzkus Gubner LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.

3. Representations and Warranties. NHPMN-GP represents and warrants that the representations made in Recital E are true and correct, and Recital E is specifically incorporated herein by reference.

4. Release of Claims.

(a) The Trustee, on behalf of the Consolidated Estate, and on behalf of his successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges NHPMN-GP and its past, present, or future, direct or indirect, predecessors, assigns, subsidiaries, divisions, affiliated entities, partners, directors, officers, shareholders, members, employees, agents representatives, attorneys, accountants, consultants, appraisers, insurers, general or limited partners or partnerships, spouses, executors, heirs, personal representatives, devisees, beneficiaries, and all persons acting by, through, under, or in concert with any of them, from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any potential avoidance action, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.* Nothing in the Recitals contained in this Paragraph 4 shall release any claims that the Trustee has, or may have, against any defendant in pending adversary proceedings, or against any party that has executed a tolling stipulation, or against any persons or

entity that has files a Proof of Claim in the EPD Bankruptcy Case and/or the Pressman Bankruptcy Case. All such claims are expressly reserved by the Trustee.

(b) NHPMN-GP, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee in his individual and representative capacities, the Estate, the Debtors and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any potential action or claim against the Trustee, the Estate, the Debtors and the Trustee's attorneys and other professionals.

(c) The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> <u>SECTION 1542.</u> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

5. <u>Non-Admission.</u> By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

6. <u>Integration.</u> This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to

the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

7. Severability. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

8. Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estates, and NHPMN-GP, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

9. Construction. This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

10. Jurisdiction. The Bankruptcy Court shall retain jurisdiction over this Agreement, and shall resolve any disputes arising under this Agreement.

11. Miscellaneous. As used in this Agreement, the masculine, feminine or neutral gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

12. Authority. Each of the signatories to this Agreement warrants that he has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

13. Terms Read and Understood. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

///

///

///

///

14. Counterparts and Facsimile and pdf Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile of pdf signature shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: ____________________

____________________
Jason M. Rund
Chapter 7 Trustee for the Consolidated Estate of EPD Investment Co., LLC, and Jerrold S. Pressman

NHPMN-GP, INC., a Delaware corporation

Dated: 3/28/13

By: [signature]
Nicholas M. Billings
Vice President, Assistant General Counsel and Assistant Secretary

LA HILLCRESTE APARTMENTS LLC,
a Delaware limited liability company

By: AIMCO PROPERTIES, L.P.,
a Delaware limited partnership,
its member

By: AIMCO-GP, INC.,
a Delaware corporation,
its general partner

Dated: 3/28/13

By: [signature]
Nicholas M. Billings
Vice President, Assistant General Counsel and Assistant Secretary

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 12 of 37

Approved as to Form:

Dated: 3/28/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________

Ronald P. Abrams
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee for the
Consolidated Estate of EPD Investment
Co., LLC and Jerrold S. Pressman

Dated: 4/2/13

HOLLAND & HART LLP

By: ______________________

Risa L. Wolf-Smith
Attorneys for NHPMN-GP, Inc. d/b/a/ Hillcreste Apartments and
LA Hillcreste Apartments, LLC, a/k/a/ Hillcreste Apartments

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 13 of 37

14. Counterparts and Facsimile and pdf Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile of pdf signature shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 3/28/13

Jason M. Rund
Chapter 7 Trustee for the Consolidated Estate of BPD Investment Co., LLC, and Jerrold S. Pressman

NHPMN-GP, INC., a Delaware corporation

Dated: 3/28/13

By: ______________________
Nicholas M. Billings
Vice President, Assistant General Counsel and Assistant Secretary

LA HILLCRESTE APARTMENTS LLC,
a Delaware limited liability company

By: AIMCO PROPERTIES, L.P.,
a Delaware limited partnership,
its member

By: AIMCO-GP, INC.,
a Delaware corporation,
its general partner

Dated: 3/28/13

By: ______________________
Nicholas M. Billings
Vice President, Assistant General Counsel and Assistant Secretary

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 14 of 37

SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, solely in his capacity as Chapter 7 bankruptcy trustee (the "Trustee") for the consolidated Chapter 7 bankruptcy estate (the "Consolidated Estate" or the "Estate") of debtors EPD Investment Company, LLC ("EPD") and Jerrold S. Pressman ("Pressman") (collectively the "Debtors"), and Illinois Wesleyan University ("IWU"). The Trustee and IWU, the parties hereto (collectively referred to as the "Parties"), agree as follows:

RECITALS

A. Petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee filed an involuntary bankruptcy petition against EPD Investment Co., LLC ("EPD") on December 7, 2010 (the "EPD Bankruptcy Case"). The Court entered an Order for Relief on February 9, 2011.

B. On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the "Pressman Bankruptcy Case."

C. On April 27, 2012, the Trustee filed a motion to substantively consolidate the EPD Bankruptcy Case and the Pressman Bankruptcy Case (the "Consolidated Estate"), which the Court approved by an Order entered on June 4, 2012. Jason Rund is now the Chapter 7 Trustee for the Consolidated Estate.

D. The Trustee demanded that IWU return $46,213.63 in amounts transfers from EPD to IWU during the seven years prior to the bankruptcy petition date pursuant to 11 U.S.C. §§ 544, 548 and 550 and California Civil Code Section 3439, *et seq.* IWU denies the Trustee's assertions and contends that any transfers are not avoidable or recoverable.

E. IWU represents and warrants the following:

(i) IWU had no information, knowledge or belief that the Debtors were insolvent, that any transfers to IWU caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

(ii) IWU is not aware of any transfers received from the Debtors, or from insiders of the Debtors or other related entities, other than the transfers referred to in Recital D above.

F. In order to fully and finally resolve the disputes described herein and to avoid the risks and expense of litigation, the Trustee, on the one hand, and IWU, on the other hand, hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be



EXHIBIT "C"

performed by each party, and incorporating the Recitals set forth hereinabove, the Parties hereby agree as follows:

**Terms of Agreement**

1. **Effective Date**. After his receipt of the fully executed Agreement, and at such time is economical to the estate as part of the first omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final and non-appealable order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date").

2. **Payment by IWU to the Trustee**. IWU shall pay the total amount of Fifteen Thousand Dollars ($15,000.00) to the Trustee (the "Settlement Amount") on or before September 30, 2013. The Settlement Amount shall be paid by cashier's check made payable to "Jason M. Rund, Chapter 7 Trustee for the estate of debtors EPD Investment Co., LLC et al." The Settlement Amount cashier's check shall be delivered to the attention of Steven T. Gubner, Esq. and Corey R. Weber, Esq., Ezra Brutzkus Gubner LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.

3. **Representations and Warranties**. IWU represents and warrants that the representations made in Recital E are true and correct, and Recital E is specifically incorporated herein by reference.

4. **Release of Claims.**

(a) The Trustee, on behalf of the Consolidated Estate, and on behalf of his successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges IWU, its trustees, officers, employees and representatives, from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any potential avoidance action, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.* Nothing in the Recitals contained in this Paragraph 4 shall release any claims that the Trustee has, or may have, against any defendant in pending adversary proceedings, or against any party that has executed a tolling stipulation, or against any persons or entity that has files a Proof of Claim in the EPD Bankruptcy Case and/or the Pressman Bankruptcy Case. All such claims are expressly reserved by the Trustee.

(b) IWU, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee in his individual and representative capacities, the Estate, the Debtors and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees,

liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any potential action or claim against the Trustee, the Estate, the Debtors and the Trustee's attorneys and other professionals.

(c) The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **<u>SECTION 1542</u>. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

5. **<u>Non-Admission</u>.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

6. **<u>Integration</u>.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

7. **<u>Severability</u>.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 17 of 37

invalidated.

8. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estates, and IWU, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

9. **Construction**. This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

10. **Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over this Agreement, and shall resolve any disputes arising under this Agreement.

11. **Miscellaneous**. As used in this Agreement, the masculine, feminine or neutral gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

12. **Authority**. Each of the signatories to this Agreement warrants that he has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

13. **Terms Read and Understood**. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

///

///

///

///

///

///

///

///

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 18 of 37

14. **Counterparts and Facsimile and pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original. and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile of pdf signature shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 4-5-13

Jason M. Rund
Chapter 7 Trustee for the Consolidated Estate of EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 4-4-13

By: Daniel P. Klotzbach
VP for Business & Finance
Illinois Wesleyan University

Approved as to Form:

Dated: 4/5/13

EZRA BRUTZKUS GUBNER LLP

By:
Ronald P. Abrams
Special Litigation Counsel for Jason M. Rund, Chapter 7 Trustee for the Consolidated Estate of EPD Investment Co., LLC and Jerrold S. Pressman

Dated: April 4, 2013

DUNN LAW FIRM LLP

By:
Clayton J. Patterson
Attorneys for Illinois Wesleyan University

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 19 of 37

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, solely in his capacity as Chapter 7 bankruptcy trustee (the "Trustee") for the consolidated Chapter 7 bankruptcy estate (the "Consolidated Estate" or the "Estate") of debtors EPD Investment Company, LLC ("EPD") and Jerrold S. Pressman ("Pressman") (collectively the "Debtors"), and Florida Gulf Coast University ("FGCU"). The Trustee and FGCU, the parties hereto (collectively referred to as the "Parties"), agree as follows:

## RECITALS

A. Petitioning creditors Arthur Huerth, Leslie Huerth, the estate of Dale Saeger, Jayne Saeger as trustee of the Saeger Declaration of Trust 7/22/94, Orland McCarthy, Vicki McCarthy and Jenny Lee filed an involuntary bankruptcy petition against EPD Investment Co., LLC ("EPD") on December 7, 2010 (the "EPD Bankruptcy Case"). The Court entered an Order for Relief on February 9, 2011.

B. On February 1, 2012, Pressman filed a voluntary Chapter 7 petition, commencing the "Pressman Bankruptcy Case."

C. On April 27, 2012, the Trustee filed a motion to substantively consolidate the EPD Bankruptcy Case and the Pressman Bankruptcy Case (the "Consolidated Estate"), which the Court approved by an Order entered on June 4, 2012. Jason Rund is now the Chapter 7 Trustee for the Consolidated Estate.

D. The Trustee demanded that FGCU return $10,011.64 in amounts transfers from EPD to FGCU during the seven years prior to the bankruptcy petition date pursuant to 11 U.S.C. §§ 544, 548 and 550 and California Civil Code Section 3439, *et seq.* FGCU denies the Trustee's assertions and contends that any transfers are not avoidable or recoverable.

E. FGCU represents and warrants the following:

(i) FGCU had no information, knowledge or belief that the Debtors were insolvent, that any transfers to FGCU caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors or were engaged in any acts of fraud or other improper conduct.

(ii) FGCU is not aware of any transfers received from the Debtors, or from insiders of the Debtors or other related entities, other than the transfers referred to in Recital D above.

F. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee, on the one hand, and FGCU, on the other hand, hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 20 of 37

performed by each party, and incorporating the Recitals set forth hereinabove, the Parties hereby agree as follows:

## Terms of Agreement

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such time is economical to the estate as part of the first omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final and non-appealable order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date").

2. **Payment by FGCU to the Trustee.** FGCU shall pay the total amount of Nine Thousand Ten Dollars and Forty-Eight Cents ($9,010.48) to the Trustee (the "Settlement Amount") on or before the fifth (5th) business day after the Effective Date. The Settlement Amount shall be paid by cashier's check made payable to "Jason M. Rund, Chapter 7 Trustee for the estate of debtors EPD Investment Co., LLC et al." The Settlement Amount, if by cashier's check, shall be delivered to the attention of Steven T. Gubner, Esq. and Corey R. Weber, Esq., Ezra Brutzkus Gubner LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.

3. **Representations and Warranties.** FGCU represents and warrants that the representations made in Recital E are true and correct, and Recital E is specifically incorporated herein by reference.

4. **Tolling.** FGCU hereby agrees to toll any and all claims or potential claims by the Trustee against it, and agrees to concurrently execute a tolling stipulation, which tolling shall expire 30 days after an order is entered by the Court on a motion to approve this Agreement. This tolling provision is effective as of the date that this Agreement is fully executed, rather than on the Effective Date.

5. **Release of Claims.**

(a) The Trustee, on behalf of the Consolidated Estate, and on behalf of his successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges FGCU from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any potential avoidance action, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

(b) FGCU, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee in his individual and representative capacities, the Estate, the Debtors and the Trustee's attorneys and other professionals from all actual or potential claims, demands,

Case 2:16-bk-62203-ER Doc 940-1 Filed 04/30/19 Entered 04/30/19 16:16:19 Desc Exhibit A - F and POS Page 21 of 37

obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any potential action or claim against the Trustee, the Estate, the Debtors and the Trustee's attorneys and other professionals.

(c) The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. **Severability.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 22 of 37

the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estates, and FGCU, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. **Construction.** This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement, and shall resolve any disputes arising under this Agreement.

12. **Miscellaneous.** As used in this Agreement, the masculine, feminine or neutral gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. **Authority.** Each of the signatories to this Agreement warrants that he has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. **Terms Read and Understood.** The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. **Counterparts and Facsimile and Pdf Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile of pdf signature shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 12-4-12

Jason M. Rund
Chapter 7 Trustee for the Consolidated Estate of EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 12/5/12

By: ____________________
Vee Leonard, General Counsel
Florida Gulf Coast University

Approved as to Form:

Dated: 12/5/12

EZRA BRUTZKUS GUBNER LLP

By: ____________________
Corey R. Weber
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee for the
Consolidated Estate of EPD Investment
Co., LLC and Jerrold S. Pressman

Dated: ____________________

FLORIDA GULF COAST UNIVERSITY

By: ____________________
David M. Greenbaum
Assistant General Counsel
Florida Gulf Coast University

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Jason M. Rund, Chapter 7 bankruptcy trustee (the "Trustee") for the Chapter 7 bankruptcy estate (the "Estate") of the consolidated debtors EPD Investment Co., LLC ("EPD") and Jerrold S. Pressman ("Pressman") (together, the "Debtors"), on the one hand, and defendant Jennifer Mosley, an individual ("Defendant"), on the other hand. The Trustee and Defendant (together referred to as the "Parties"), agree as follows:

## RECITALS

A. An involuntary bankruptcy case was filed against EPD on December 7, 2010 ("Petition Date"). The Order for Relief was entered on February 9, 2011. On February 1, 2012, Pressman filed a Chapter 7 bankruptcy case. On June 4, 2012 the Bankruptcy Court entered an Order substantively consolidating the EPD and Pressman bankruptcy cases nunc pro tunc to December 7, 2010. The consolidated bankruptcy case is Case No. 2:10-bk-62208-ER (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, before the Honorable Ernest M. Robles.

B. On or about November 30, 2012, the Trustee filed the Complaint to Avoid and Recover Fraudulent Transfers (the "Complaint"), which initiated the adversary proceeding entitled *Jason M. Rund, Chapter 7 Trustee v. Jennifer Mosley,* Adv. No. 2:12-ap-02587-ER (the "Adversary Proceeding"), currently pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court"). The Complaint sought to avoid and recover transfers from EPD to, or for the benefit of, Defendant. On or about January 10, 2013, Defendant filed her answer to the Complaint.

C. The Trustee alleges that EPD made transfers totaling $110,016.16 to or for the benefit of Defendant ("Transfers"), in the seven years preceding the Petition Date.

D. Defendant contends that the Transfers are not avoidable or recoverable by the Trustee. Defendant has acknowledged that the Transfers were in fact received by Defendant, but represents that a majority of the funds constituting the Transfers were repayment of principal invested in and/or loaned to EPD by the Defendant. Defendant contends that she only received, in excess of her principal investments, the amount of $2,157.16.

E. In order to fully and finally resolve the disputes described herein and to avoid the hazards and expense of litigation, the Trustee and Defendant hereby enter into this compromise and settlement.

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each party, the Parties hereby agree as follows:

### Terms of Agreement

1. **Effective Date.** After his receipt of the fully executed Agreement, and at such a time as is convenient for the Trustee as part of the first omnibus motion to approve settlement agreements, the Trustee will seek the Bankruptcy Court's approval of this Agreement. This Agreement shall become effective on the fifteenth (15th) calendar day after a final and non-appealable order is entered by the Bankruptcy Court approving this Agreement (the "Effective Date").

2. **Payment by Defendant.** Defendant shall pay the total amount of Two Thousand One Hundred Fifty Seven Dollars and Sixteen Cents ($2,157.16) to the Trustee (the "Settlement Amount") on or before the fifth (5th) business day after the Effective Date. The Settlement Amount shall be paid by cashier's



**EXHIBIT "E"**

check made payable to "Jason M. Rund, Chapter 7 Trustee for consolidated debtors EPD Investment Co., LLC, and Jerrold S. Pressman". The Settlement Amount, if by cashier's check, shall be delivered to the attention of Corey R. Weber, Esq. and Michael W. Davis, Esq., Ezra Brutzkus Gubner LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367. If this Agreement is not approved by the Court, this Agreement shall be of no further force or effect.

3. **Dismissal Of Adversary Proceeding.** Within twenty (20) business days after the Effective Date, and after the Trustee has: (1) received the Settlement Amount; and (2) the Court has entered an order approving this Agreement, the Trustee shall file a request for dismissal of the Adversary Proceeding with prejudice and with each party bearing his or her own respective attorney's fees and costs in connection with the Adversary Proceeding and this Agreement The Defendant agrees that no stipulation shall be necessary unless required by the Court.

4. **Release of Claims.** The Trustee, on behalf of the Debtors' Estate, and on behalf of its respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Defendant from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint, including, but not limited to, any action arising under 11 U.S.C. §§ 544, 548 and 550 and California Civil Code § 3439, *et seq.*

Defendant, on her behalf, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully releases and forever discharges the Trustee, the Debtors' Estate, and the Trustee's attorneys and other professionals from all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys fees, liabilities, and indemnities, whether known or unknown, arising from or relating to the Complaint.

The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties expressly waive all rights under Section 1542 of the California Civil Code, which Section the Parties have read and understand, and which provides as follows:

> **SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.**

Defendant agrees to waive her right to file a proof of claim, or to obtain an allowed claim, based on the Settlement Amount, or on any other basis, in the Bankruptcy Case. To the extent that Defendant previously filed a proof of claim(s), such claims are waived and Defendant shall not received an allowed claim. Nothing contained in the releases herein shall negate or impair the Trustee's right to enforce this Agreement, including but not limited to the payment of the Settlement Amount.

5. **Defendant's Representations.**

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 20 of 37

Defendant represents to the Trustee the following:

a. Defendant, made an investment and/or loan of $107,859 in EPD in February of 2008.

b. Defendant received the benefit of the following transfers from the Debtors: $90,000 on or about April 16, 2008; $15,000 on or about April 28, 2008; $1,516.16 on or about May 4, 2008; and $3,500 on or about November 13, 2008.

c. Defendant requested the Transfers be made to her solely for the purpose of repayment of principal and that a portion of that principal be paid to third parties.

d. Defendant did not have any actual or inquiry notice of any kind that the EPD or Pressman were engaged in a Ponzi scheme or any other improper activity, and the funds that the Defendant received from the Debtors were received solely for the reasons stated in herein above.

e. That at the time of the Transfers, Defendant had no information, knowledge or belief that the Debtors were insolvent, that any transfers to Defendant caused or would cause the Debtors to become insolvent, that the Debtors were unable to pay their debts as such debts became due, that the Debtors were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining for the Debtors was an unreasonably small capital, or that the Debtors were engaged in any acts of fraud or other improper conduct.

f. Concurrently with the execution of this Agreement, Defendant agrees to execute a declaration under penalty of perjury affirming the representations made by the Defendant herein.

6. **Non-Admission.** By entering into this Agreement, the Parties agree and understand that this is a compromise and settlement of disputed claims and that there is no implication or admission of liability or wrongdoing whatsoever by the Parties with respect to the issues in dispute. The Parties further agree and understand that by entering into this Agreement, the existence and execution of this Agreement shall not be considered, nor be offered or received into evidence or otherwise filed or lodged in any proceeding, except as may be necessary to prove the terms of this Agreement, or to enforce this Agreement, nor may it be considered or deemed admissible as an admission by the Parties of any liability, wrongdoing, error, or violation of law.

7. **Integration.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement supersedes all prior representations and agreements, if any, between the parties or their legal counsel. This Agreement contains the entire and only understanding between the Parties. It may not be altered, amended or extinguished, except by a writing which expressly refers to this Agreement and which is signed subsequent to the execution of this Agreement by the party or parties to any such alteration, amendment or extinguishment, or their successors-in-interest. Any such alteration, amendment or extinguishment must be executed by the party against whom enforcement is sought and is subject to approval by the Bankruptcy Court.

8. <u>Severability</u>. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Trustee, the Debtors' Estate, and Defendant, and each of them, and their respective heirs, executors, administrators, assigns, successors-in-interest, predecessors-in-interest and anyone claiming by, through or under any one of them.

10. <u>Construction.</u> This Agreement shall be governed and construed in accordance with the internal laws, other than choice of law, of the State of California and, where applicable, the United States Bankruptcy Code.

11. <u>Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Adversary Proceeding, and shall resolve any disputes arising under this Agreement.

12. <u>Miscellaneous.</u> As used in this Agreement, the masculine, feminine or neuter gender, or the singular or plural number, shall be deemed to include the others, whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

13. <u>Authority</u>. Each of the signatories to this Agreement warrants that he or she has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

14. <u>Terms Read and Understood</u>. The Parties to this Agreement hereby certify that they have read all of the terms of the foregoing Agreement, have conferred with counsel pertaining to same, or have had the full opportunity to do so, and fully understand all of the terms hereof, and the Parties hereby acknowledge and represent that they enter into this Agreement of their own free will and not from any representation, commitment, promise, pressure or duress from any other Party.

15. <u>Counterparts and Facsimile and Pdf Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement, subject to Court approval. All counterparts so executed shall constitute one Agreement binding on all the parties hereto, subject to Court approval, notwithstanding that all parties are not signatories to the same counterpart. A facsimile signature or electronically-imaged signature in "pdf" format shall, for purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

Dated: 3-4-13

JASON M. RUND,
CHAPTER 7 BANKRUPTCY TRUSTEE FOR
CONSOLIDATED DEBTORS EPD INVESTMENT CO.,
LLC, AND JERROLD S. PRESSMAN

By: ______________________
JASON M. RUND
Chapter 7 Trustee

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 28 of 37

Dated: 3-4-13

DEFENDANT JENNIFER MOSLEY

By: ______________________
JENNIFER MOSLEY, an individual

Approved as to Form:

Dated: 3/4/13

EZRA BRUTZKUS GUBNER LLP

By: ______________________
COREY R. WEBER
Special Litigation Counsel for
Jason M. Rund, Chapter 7 Trustee
for Consolidated Debtors, EPD Investment Co., LLC, and Jerrold S. Pressman

Dated: 3/4/13

LAW OFFICE OF WARREN NEMIROFF, ESQ.

By: ______________________
WARREN NEMIROFF
Attorney for Defendant, Jennifer Mosley,
an individual

<u>**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**</u>

This Settlement Agreement and Mutual Release is made by and between Jason M. Rund, the Chapter 7 Trustee of the consolidated estate ("Estate") of EPD Investment Company, LLC ("EPD") and Jerrold S. Pressman ("Pressman") (collectively, the "Debtors") in *In re EPD Investment Company, LLC and Jerrold S. Pressman*, Case No. 2:10-bk-62208-ER in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, and Sidecreek Development, Inc. ("Sidecreek") with respect to the following recitals of fact:

A. On December 7, 2012, an involuntary Chapter 7 petition was filed against EPD. On February 9, 2011, an order for relief was entered in EPD's case. Jason M. Rund was appointed as the Chapter 7 Trustee of EPD's estate.

B. On February 1, 2012, Pressman filed a voluntary Chapter 7 petition.

C. On April 27, 2012, the Trustee filed a motion for substantive consolidation of the bankruptcy estates of EPD and Pressman. By an order entered on June 4, 2012, the Court granted the motion, the two estates were consolidated, and Jason M. Rund was appointed as the Chapter 7 Trustee of the Estate.

D. On March 5, 2012, Sidecreek filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, and the case was assigned no. 2:12-bk-17787-ER. Sidecreek is the Debtor-in-Possession.

E. Other than de minimis personal property consisting of funds of about $381 as of the Chapter 11 petition date of Sidecreek, Sidecreek's sole asset is about 245 acres of undeveloped land in the cities of Brentwood, Tennessee and Franklin, Tennesse and related personal property (collectively, the "Assets"). IX ST Portfolio 14, LP, a Delaware limited partnership ("Starwood"), holds a lien of about $5.52 million affecting the Assets.

F. On September 6, 2012, the Trustee filed an unsecured nonpriority claim, being Claim No. 2, in the sum of $3,071,647.71("Trustee's Claim") in Sidecreek's Chapter 11 case. Sidecreek disputes the Trustee's Claim and the 50% equity interest of Jerrold S. Pressman ("Equity Interest")

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 30 of 37

G. Sidecreek has filed a motion to sell all of its right, title and interest in the Assets to Starwood for the purchase price of $275,000, plus Starwood's release of its in personam petition-date claim, set forth in its proof of claim in the amount of $5,517,782.76. In its motion, Sidecreek estimates that the total amount of its Chapter 11 administrative expenses is about $161,950.

H. It is the intention of the parties to settle all claims and causes of action relating to the Trustee's Claim and Equity Interest, and Sidecreek's Assets.

The parties agree as follows:

1. Incorporation Of Recitals

The above recitals are incorporated herein and made a part of this Agreement.

2. Payment To Trustee

Sidecreek shall pay the sum of $50,000 to the Trustee. Such payment shall be made out of the escrow for Sidecreek's sale of the Assets to Starwood.

3. Consent to Sale of Assets

The Trustee consents to Sidecreek's sale of the rights, title and interests in the Assets to Starwood, provided that the Trustee is paid the sum of $50,000 out of the sale proceeds of the Assets and through the escrow for the sale of the Assets.

4. Release of Proof of Claim and Extinguish Equity Interest

Promptly after both the Trustee's receipt of the settlement amount of $50,000 and the entry of a Bankruptcy Court order approving this settlement in the Debtors' case, the Trustee's Claim shall be deemed to be released and its Equity Interest shall be deemed extinguished.

5. Court Approval

The Trustee will seek a court order under Fed.R.Bankr.P. 9019, Local Bankruptcy Rules 9013-1 and 9019-1, and any other applicable rule in the Debtors' case, approving the compromise and settlement in this Agreement. This Agreement is effective only upon the entry of an order approving the compromise and settlement in this Agreement. If the Court does not

approve this Agreement, this Agreement has no force or effect and the parties may pursue their respective rights and claims.

6. Releases

6.1 Except with respect to the rights and obligations under this Agreement, the Trustee, on behalf of the Debtors' Estate, releases any and all claims and causes of action, both known and unknown, against Sidecreek and its agents, employees, attorneys, officers and directors relating to the Trustee's Claim and Equity Interest and the Sidecreek Assets.

6.2 Except with respect to the rights and obligations under this Agreement, Sidecreek releases all of its claims and causes of action, both known and unknown, against the Trustee, in his personal capacity and capacity as the Chapter 7 Trustee, his agents, employees, and attorneys, and the Debtors' Estate.

7. Effect of Releases

Except with respect to the rights and obligations under this Agreement, this Agreement is a full settlement of any and all of the above-described claims and causes of action, both known and unknown, of the Trustee and Sidecreek, notwithstanding California Civil Code § 1542 which provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him must have materially affected his or her settlement with the debtor.

8. Miscellaneous

8.1 This Agreement is a result of a compromise and is not an admission of liability or responsibility on the part of any of the parties, who deny such liability and disclaim such responsibility.

8.2 The parties declare and represent that no promise not herein expressed has been made to them, and that this Agreement contains the entire agreement between the parties.

8.3 The parties will execute all further and additional documents that are reasonable, convenient, necessary or desirable to carry out the provisions of this Agreement.

8.4 This Agreement is deemed to have been executed and delivered within the State of California, and the rights and obligations of the parties are to be construed and enforced in accordance with and governed by the laws of the State of California, except where federal bankruptcy laws apply.

8.5 The Bankruptcy Court shall have and retain exclusive jurisdiction to interpret and enforce, and resolve any dispute regarding, this Agreement.

8.6 This Agreement is the entire agreement between the parties with respect to the subject matter of this Agreement. This Agreement supersedes all prior and contemporaneous oral and written agreements and discussions. This Agreement may be amended only by an agreement in writing.

8.7 This Agreement is not a release of any of the obligations imposed under this Agreement.

8.8 In the event of any litigation or arbitration relating to this Agreement, the prevailing party is entitled to reasonable attorneys' fees and costs.

8.9 The parties will pay their respective legal fees and other expenses relating to this dispute.

8.10 The Bankruptcy Court shall have and retain exclusive jurisdiction to interpret and enforce, and resolve any dispute regarding, this Agreement.

8.11 Each party has read this Agreement. The parties fully understand the significance of all of the terms of this Agreement and have signed this Agreement voluntarily. The parties understand that they may seek the advice and opinions of independent counsel as to the significance and effect of the terms of this Agreement.

8.12 This Agreement may be executed in counterparts. When each party has signed and delivered at least one such counterpart, each counterpart will be deemed an original

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 33 of 37

and, when taken together with other signed counterparts, constitutes one Agreement, which is binding upon and effective as to all parties.

Dated: April 29, 2013

JASON M. RUND
Chapter 7 Trustee of the Estate of EPD Investment, LLC and Jerrold S. Pressman

Dated: April 26, 2013

SIDECREEK DEVELOPMENT, INC.

By:____________________
Robert D. Geringer
President

Case 2:10-bk-62208-ER Doc 940-1 Filed 04/30/13 Entered 04/30/13 16:16:19 Desc Exhibit A - F and POS Page 34 of 37

APPROVED AS TO FORM:

Dated: April 26, 2013

ROBERT A. HESSLING, APC

By: ______________________________
MATTHEW F. KENNEDY
General Counsel for Jason M. Rund, Chapter 7 Trustee of the Estate of EPD Investment Company, LLC and Jerrold S. Pressman

Dated: April 25, 2013

LANDSBERG & ASSOCIATES

By: ______________________________
SUMMER SAAD
Attorneys for Sidecreek Development, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.**

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S FIRST OMNIBUS MOTION FOR APPROVAL OF COMPROMISES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JASON M. RUND IN SUPPORT THEREOF [Fed. R. Bank. P. 9019; Loc. Bankr. R. 9013-1]; AND REQUEST FOR JUDICIAL NOTICE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 30, 2013**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **April 30, 2013**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor In Pro Se (returned)
~~EPD Investment Co., LLC~~
~~601 S. Figueroa Street, Suite 3900~~
~~Los Angeles, CA 90017~~

Debtor In Pro Se
Jerrold S. Pressman
1201 Idaho Ave., Apt 10
Santa Monica, CA 90403

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 20, 2013**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**BY OVERNIGHT MAIL**

Honorable Ernest M. Robles
United States Bankruptcy Court
Los Angeles Division – Roybal Federal Bldg.
255 East Temple Street, Suite 1560
Los Angeles, CA 90012-3332

**BY EMAIL**

Fredrick A. Rafeedie – farafeedie@jonesbell.com
Risa L. Wolf-Smith – rwolf@hollandhart.com
Clayton J. Patterson – cjp@dunnlaw.com
David M. Greenbaum – dgreenbaum@fgcu.edu
Warren N Nemiroff – wnemiroff@yahoo.com
Summer Saad – ssaad@landsberg-law.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 30, 2013 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

Michael W Aiken MAiken@NBSDefaultServices.com
Justin D Balser justin.balser@akerman.com, toni.domres@akerman.com; kristine.elliott@akerman.com; victoria.edwards@akerman.com; elizabeth.streible@akerman.com; courtney.linney@akerman.com; chris.carrington@akerman.com; ian.hicks@akerman.com
Adam N Barasch anb@severson.com
Colin M Bernardino cbernardino@kilpatricktownsend.com
Craig R Bockman crbockman@jonesbell.com, yleandro@jonesbell.com
Rebecca A Caley rcaley@caleylaw.com
Michael E Clark notices@blclaw.com, ecf@blclaw.com;borowitzclark1@gmail.com
Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
Sara E Cook lpalma@mckenna-law.com, scook@mckenna-law.com;bankruptcy@mckenna-law.com
Christopher D Crowell ccrowell@frandzel.com, efiling@frandzel.com;shom@frandzel.com
Aaron De Leest aed@dgdk.com, DanningGill@gmail.com
Richard K Diamond rdiamond@dgdk.com, DanningGill@gmail.com
Claire Y Dossier claire.dossier@akerman.com, toni.domres@akerman.com; amy.rock@akerman.com; melissa.cizmorris@akerman.com; lisa.blaylock@akerman.com; courtney.linney@akerman.com
Lei Lei Wang Ekvall lekvall@wgllp.com
David K Eldan malvarado@pmcos.com, rpinal@pmcos.com;efilings@pmcos.com
Russ W Ercolani russ@ercolanilawgroup.com
Debra Fogelman DEBRAFOGELMAN@LIVE.COM
Anthony A Friedman aaf@lnbyb.com
Michael J Gomez mjg@lrplaw.net, rebecca@lrplaw.net
Michael I Gottfried mgottfried@lgbfirm.com, ncereseto@lgbfirm.com;rmartin-patterson@lgbfirm.com
Regis Guerin efilings@amlegalgroup.com
Alan S Gutman alangutman@gutmanlaw.com
David S Hagen go4broq@earthlink.net
Robert A Hessling rhessling@gmail.com
Richard B Hopkins rhopkins@bargerwolen.com
Lon B Isaacson - INACTIVE - ecfnotices@lbilaw.com
John P Jacobs jpjacobs@steptoe.com, mmartinez@steptoe.com;tsosa@steptoe.com
Michael S Kogan mkogan@koganlawfirm.com
Alan R Kossoff akossoff@kwikalaw.com, bdipalma@kwikalaw.com
John P Kreis jkreis@attglobal.net
Lewis R Landau LLandau@HorganRosen.com
Ian Landsberg ilandsberg@landsberg-law.com, bgomelsky@landsberg-law.com; ssaad@landsberg-law.com; dzuniga@landsberg-law.com
Mary D Lane mal@msk.com, mec@msk.com
Kenderton S Lynch kenlynchlaw@aol.com
Howard N Madris hmadris@madrislaw.com
Aaron J Malo amalo@sheppardmullin.com
Ashley M McDow amcdow@mbnlawyers.com, aacosta@mbnlawyers.com
Neeta Menon nmenon@btlaw.com
Reed M Mercado rmercado@sheppardmullin.com
Stacey A Miller smiller@tharpe-howell.com
John A Moe jmoe@mckennalong.com
Susan I Montgomery susan@simontgomerylaw.com
Randall P Mroczynski randym@cookseylaw.com
Alan I Nahmias anahmias@mbnlawyers.com, jdale@mirmanbubman.com
David L. Neale dln@lnbrb.com
Warren N Nemiroff wnemiroff@yahoo.com
Brian A Paino ecfcacb@piteduncan.com
Kathy Bazoian Phelps kphelps@dgdk.com, DanningGill@gmail.com
Christopher O Rivas crivas@reedsmith.com
Jason M Rund (TR) trustee@srlawyers.com, jrund@ecf.epiqsystems.com
Deborah L Schrier-Rape DSchrierRape@goodwinprocter.com, smpearce@goodwinprocter.com

**BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

Benjamin Seigel bseigel@buchalter.com, IFS_filing@buchalter.com
Steven J Shapero sshapero@shaperohurst.com
Michael St James ecf@stjames-law.com
Alberta P Stahl (TR) trusteestahl@earthlink.net, astahl@ecf.epiqsystems.com; trusteestahl\;\;\;.net@cacbapp.cacb.circ9.dcn
Adam M Starr starra@gtlaw.com, laik@gtlaw.com
Tina M Starr tstarr@caleylaw.com
David A Tilem davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com; dianachau@tilemlaw.com; joanfidelson@tilemlaw.com
Scott C Timpe stimpe@mbnlawyers.com, scott.timpe@gmail.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Susan L Vaage svaage@grahamvaagelaw.com
Gilbert B Weisman notices@becket-lee.com
Aleksandra Zimonjic azimonjic@lgbfirm.com, marizaga@lgbfirm.com; scolen@lgbfirm.com; ncereseto@lgbfirm.com

**BY UNITED STATES MAIL**

Attorneys for Brandon London, Eric London, Larry London and Tyrone London
Fredrick A. Rafeedie, Esq.
Jones, Bell, Abbott, Fleming & Fitzgerald L.L.P.
601 South Figueroa Street, 27th Floor
Los Angeles, CA 90017-5759

Attorneys for NHPMN-GP, Inc. dba Hillcreste Apartments and L.A. Hillcreste Apartments, LLC, aka Hillcreste Apartments
Risa L. Wolf-Smith, Esq.
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202

Attorneys for Illinois Wesleyan University
Clayton J. Patterson, Esq.
Dunn Law Firm, LLP
1001 North Main Street, Suite A
Bloomington, IL 61701

Attorneys for Florida Gulf Coast University
David M. Greenbaum
Assistant General Counsel
Office of the General Counsel
Florida Gulf Coast University
Edwards Hall, Room 321
10501 FGCU Blvd S.
Fort Myers, FL 33965-6565

Attorneys for Jennifer Mosley
Warren Nemiroff, Esq.
Law Office of Warren Nemiroff
420 North Camden Drive, Suite 202
Beverly Hills, CA 90210

Attorneys for Sidecreek Development, Inc.
Summer Saad, Esq.
Landsberg & Associates
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

STEVEN T. GUBNER – Bar No. 156593
COREY R. WEBER – Bar No. 205912
MICHAEL W. DAVIS - Bar No. 274126
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000, Facsimile: (818) 827-9099
Email: sgubner@ebg-law.com, cweber@ebg-law.com

Special Litigation Counsel for Jason M. Rund,
Chapter 7 Trustee for the Consolidated Bankruptcy
Estate of Debtors EPD Investment Company, LLC
and Jerrold S. Pressman

FILED & ENTERED

JUN 10 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

EPD INVESTMENT COMPANY, LLC, and
JERROLD S. PRESSMAN,

Consolidated Debtors.

Case No. 2:10-bk-62208-ER
[Lead Case]

Chapter 7

**ORDER APPROVING CHAPTER 7 TRUSTEE'S FIRST OMNIBUS MOTION FOR APPROVAL OF COMPROMISES WITH (1) BRANDON LONDON, ERIC LONDON, LARRY LONDON AND TYRONE LONDON; (2) NHPMN-GP, INC. DBA HILLCRESTE APARTMENTS AND LA HILLCRESTE APARTMENTS LLC; (3) ILLINOIS WESLEYAN UNIVERSITY; (4) FLORIDA GULF COAST UNIVERSITY; (5) JENNIFER MOSLEY; AND (6) SIDECREEK DEVELOPMENT, INC.**

**Hearing:**
**Date:** June 5, 2013
**Time:** 10:00 a.m.
**Place:** Courtroom 1568
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

The Chapter 7 Trustee's First Omnibus Motion for Approval of Compromises (the "Motion," Docket No. 540), came on for hearing before the Honorable Ernest W. Robles, United States Bankruptcy Judge, in Courtroom 1568 at 10:00 a.m. on June 5, 2013. The Court reviewed the