

FILED & ENTERED

FEB 17 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:   EPD Investment Co., LLC, Debtor | Case No.:   2:10-bk-62208-ER<br>Adv. No.:   2:12-ap-02424-ER |
| Jason M. Rund, solely in his capacity as Chapter 7 Trustee,<br><br>Plaintiff<br><br>v.<br><br>John C. Kirkland and Poshow Ann Kirkland, solely in her capacity as Trustee of the Bright Conscience Trust Dated September 9, 2009,<br><br>Defendants | **MEMORANDUM OF DECISION GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR SUMMARY ADJUDICATION**<br><br>Date:   January 24, 2018<br>Time:   10:00 a.m.<br>Location:   Ctrm. 1568<br>Roybal Federal Building<br>255 East Temple Street<br>Los Angeles, CA 90012 |

The Court conducted a hearing on the Motion for Summary Adjudication filed by the Chapter 7 Trustee on January 24, 2018, at 10:00 a.m.[1] At the conclusion of the hearing, the Court

---

[1] In preparing this Memorandum of Decision, the Court considered the following pleadings and papers:
1) Motion to Strike:
   a) Chapter 7 Trustee's Notice of Motion and Motion to Strike and Exclude Declaration and Expert Report of J. Michael Issa Filed in Opposition to Motion for Summary Adjudication Regarding the Second, Third, and Sixth Claims for Relief for Avoidance and Recovery of Fraudulent Transfers Made With Actual Intent [Doc. No. 316]
   b) Opposition to Chapter 7 Trustee's Notice of Motion and Motion to Strike and Exclude Declaration and Expert Report of J. Michael Issa Filed in Opposition to Motions for Summary Adjudication [Doc. No. 324]
      i) Notice of Supplemental Marked Deposition Transcripts in Support of Defendants' Opposition to Motion to Strike and Exclude Declaration and Expert Report of J. Michael Issa [Doc. No. 325]

    c) Chapter 7 Trustee's Reply Brief in Support of Motion to Strike and Exclude Declaration and Expert Report of J. Michael Issa Filed in Opposition to Motion for Summary Adjudication Regarding Second, Third and Sixth Claims for Relief for Avoidance and Recovery of Fraudulent Transfers Made with Actual Intent [Doc. No. 327]
        i) Notice of Supplemental Transcript Markings Re: Reply in Support of Motion to Strike [Doc. No. 328]

2) Motions for Summary Adjudication:
    a) Chapter 7 Trustee's Notice of Motion and Motion for Summary Adjudication Regarding the Trustee's First Claim for Relief for Disallowance of Claims, or in the Alternative, for Equitable Subordination of Claims and Proofs of Claim [Doc. No. 258]
    b) Chapter 7 Trustee's Notice of Motion and Motion for Summary Adjudication Regarding the Second, Third and Sixth Claims for Relief for Avoidance and Recovery of Fraudulent Transfers Made with Actual Intent [Doc. No. 259]

3) Declarations and Evidence Filed in Support of Motions for Summary Adjudication:
    a) Declaration of Jason M. Rund, Chapter 7 Trustee, in Support of Chapter 7 Trustee's [Motions for Summary Adjudications] (the "Rund Decl.") [Doc. No. 260]
    b) Declaration of Thomas P. Jeremiassen, CPA/CFF, CIRA Regarding Expert Report in Support of Chapter 7 Trustee's [Motions for Summary Adjudication] (the "Jeremiassen Decl.") [Doc. No. 261]
    c) Declaration of Corey R. Weber in in Support of [Motions for Summary Adjudication] (the "Weber Decl.") [Doc. No. 262]
        i) Notice of Errata Re Exhibits to Declaration of Corey R. Weber in Support of [Motions for Summary Adjudication] [contains corrections regarding the testimony that is and is not being offered] [Doc. No. 280]
    d) Request for Judicial Notice in Support of Chapter 7 Trustee's [Motions for Summary Adjudication] [Doc. No. 263]
        i) Notice of Errata Re: Request for Judicial Notice [sets forth correct hearing time] [Doc. No. 272]
        ii) Notice of Errata Re: Request for Judicial Notice [contains corrections regarding the captions and filing dates of certain exhibits] [Doc. No. 284]
    e) Trustee's Notice of Filing of Discovery Documents Re [Motions for Summary Adjudication] [Doc. No. 264]
    f) Separate Statement [of Uncontroverted Facts] in Support of Chapter 7 Trustee's Motion for Summary Adjudication Regarding the Trustee's First Claim for Relief for Disallowance of Claims, or, in the Alternative, for Equitable Subordination of Claims and Proofs of Claim [Doc. No. 265]
        i) Notice of Errata Re Separate Statements [Doc. No. 285]
    g) Separate Statement [of Uncontroverted Facts] in Support of Chapter 7 Trustee's Motion for Summary Adjudication Regarding the Second, Third, and Sixth Claims for Relief for Avoidance and Recovery of Fraudulent Transfers Made with Actual Intent [Doc. No. 266]
    h) Chapter 7 Trustee's Designation of Expert Witness Thomas P. Jeremiassen, CPA/CFF, CIRA (the "Jeremiassen Report") [Doc. No. 267]
    i) Notice of Lodging of Transcripts and Designation of Testimony Offered by the Chapter 7 Trustee Pursuant to Local Bankruptcy Rule 7030-1(b) in Support of Chapter 7 Trustee's [Motions for Summary Adjudication] [Doc. No. 276]

4) Defendants' Combined Opposition to Plaintiff's Motions for Summary Adjudication [Doc. No. 300]
    a) Defendants' Combined Statement of Genuine Issues in Opposition to Motions for Summary Adjudication [Doc. No. 301]
    b) Evidentiary Objections to Declarations of Allen Sumian, Corey R. Weber and Thomas P. Jeremiassen [Doc. No. 302]
    c) Declaration of J. Michael Issa in Opposition to Plaintiff's Motions for Summary Adjudication [Doc. No. 303]
    d) Declaration of John C. Kirkland in Opposition to Plaintiff's Motions for Summary Adjudication [Doc. No. 304]
    e) Declaration of Poshow Ann Kirkland in Opposition to Plaintiff's Motions for Summary Judgment [Doc. No. 305]
    f) Declaration of Jerrold S. Pressman in Opposition to Plaintiff's Motions for Summary Adjudication [Doc. No. 306]
    g) Declaration of Ruben J. Moreno in Opposition to Motions for Summary Adjudication [Doc. No. 307]

took the matter under submission and requested further briefing from the parties with respect to the admissibility of certain e-mails proffered by the Trustee in support of the Motion. The Court's review of the additional briefing does not persuade the Court to depart from its tentative ruling. For the reasons set forth below, the Court intends to grant the Trustee's Motion.[2] However, the findings set forth herein will not become the order of the Court until the District Court acts upon the Report and Recommendation submitted in connection with the Trustee's related motion for summary adjudication with respect to his fraudulent transfer claims.

## I. Background

On December 7, 2010, creditors commenced an involuntary petition against EPD Investment Co., LLC ("EPD"). The Court entered an Order for Relief on February 9, 2011. On February 1, 2012, Jerrold S. Pressman ("Pressman") filed a voluntary Chapter 7 petition. On June 4, 2012, the bankruptcy cases of EPD and Pressman (collectively, the "Debtors") were substantively consolidated.

Pursuant to the operative Fourth Amended Complaint (the "Complaint") [Doc. No. 234] against John C. Kirkland and Poshow Ann Kirkland as Trustee of the Bright Conscience Trust Dated September 9, 2009 (the "BC Trust"), the Chapter 7 Trustee (the "Trustee") seeks to (1) disallow or equitably subordinate proofs of claim filed by the BC Trust and (2) avoid allegedly fraudulent transfers from the Debtors to Mr. Kirkland and the BC Trust.

**Summary of the Complaint's Allegations**

The allegations of the Complaint are as follows: Between the 1970s and June 27, 2003, EPD Investment Co. was an unincorporated sole proprietorship run by Pressman. Complaint at ¶12. On June 27, 2003, EPD was formed as a California limited liability company to provide

---

    h) Notice of Intent to Offer Deposition Evidence at Hearing and Declaration of Lewis R. Landau in Opposition to Plaintiff's Motions for Summary Adjudication [Doc. No. 308]
    i) Proof of Service of Doc Nos. 300–308 [Doc. No. 309]
    j) Notice of Lodgment of Deposition Transcript of Thomas P. Jeremiassen [Doc. No. 322]
5) Trustee's Evidentiary Objections to Declarations Submitted in Support of Defendants' Opposition:
    a) Evidentiary Objections to Declaration of Poshow Ann Kirkland in Opposition to Motions for Summary Adjudication [Doc. No. 310]
    b) Evidentiary Objections to Declaration of Ruben J. Moreno in Opposition to Motions for Summary Adjudication [Doc. No. 311]
    c) Evidentiary Objections to Declaration of John C. Kirkland in Opposition to Motions for Summary Adjudication [Doc. No. 312]
    d) Evidentiary Objections to Declaration of Jerrold S. Pressman in Opposition to Motions for Summary Adjudication [Doc. No. 313]
6) Trustee's Responses to Evidentiary Objections to Declarations of Allen Sumian, Corey R. Weber, and Thomas P. Jeremiassen [Doc. No. 314]
7) Post-Hearing Briefing:
    a) Post-Hearing Citations to the Record at Request of Court in Support of Chapter 7 Trustee's [Motions for Summary Adjudication] [Doc. No. 333]
        i) Request for Judicial Notice in Support of Post-Hearing Citations to Record at Request of Court in Support of Chapter 7 Trustee's [Motions for Summary Adjudication] [Doc. No. 336]
    b) Response to Post-Hearing Brief Re Admission of Untimely and Privileged Deposition Transcript Exhibits [Doc. No. 335]
    c) Response to Request for Judicial Notice Re Evidentiary Objections [Doc. No. 337]

[2] This Memorandum of Decision addresses certain evidentiary issues raised in the post-hearing briefing and addresses certain issues raised at oral argument, but otherwise maintains the tentative ruling which the Court made available to the parties prior to the January 24, 2018 hearing.

corporate protection and to satisfy Mr. Pressman's goal of retirement. *Id.* Upon EPD's formation in 2003, the EPD sole proprietorship's assets and liabilities were transferred from Mr. Pressman to EPD. *Id.* At all times, the members and managers of EPD were Mr. Pressman and his son, Keith Pressman ("Keith"). *Id.*

EPD operated as a Ponzi scheme since its formation in 2003. *Id.* at ¶24. Between 2003 and mid-2009, EPD repaid existing creditors by using funds from new creditors. *Id.* EPD was balance sheet insolvent from at least December 2003, according to its tax returns, and has never been profitable. *Id.* at ¶¶20–21. Many of EPD's creditors mistakenly believed that EPD owned substantial real property assets in Tennessee, Mississippi, and elsewhere, when in fact EPD owned no real property. *Id.* at ¶16. Instead, EPD owned promissory notes secured by Mr. Pressman's assets, and it was Mr. Pressman who held an ownership interest in entities owning property in Tennessee, Mississippi, and elsewhere. *Id.*

In mid-2009, EPD could not pay creditors because the companies Mr. Pressman partially owned lacked sufficient operating cash flow, and because EPD was no longer receiving cash infusions from new investors. *Id.* at ¶25.

Mr. Kirkland was outside counsel for the Mr. Pressman, EPD, and other business entities owned by the Mr. Pressman. *Id.* at ¶28. Mr. Kirkland invested and/or loaned in excess of $150,000 of his personal funds to EPD (Mr. Kirkland's "EPD Interests"). *Id.* at ¶29. In September 2009, after EPD had ceased making payments to most creditors, Mr. Kirkland assigned his EPD Interests to the BC Trust (his family trust), and/or to his wife Poshow Ann Kirkland as Trustee of the BC Trust, through a Notice of Assignment. The Notice of Assignment provides: "Notice is hereby given that all rights of John C. Kirkland under all such Loan Documents have been sold, transferred, and assigned to the Bright Conscience Trust Dated September 9, 2009." *Id.*

The BC Trust took the assignment subject to all claims and defenses of Mr. Kirkland, and did not take the assignment in good faith or for adequate consideration. *Id.* On September 11, 2009, the BC Trust filed and/or recorded a UCC-1 financing statement as to all assets of the Debtors. *Id.* On May 5, 2010, the BC Trust filed and/or recorded an amendment to the UCC-1 financing statement, which provided that "[t]his amendment is to clarify and confirm that the prior grant of security did not include the stock of North Hills Industrial Park, Inc., a California S-Corporation." *Id.*

Mr. Kirkland was aware that EPD operated as a Ponzi scheme. In 2005, Mr. Kirkland drafted letters to the California Franchise Tax Board which stated, among other things, that EPD's liabilities exceeded its assets, that EPD had negative cash flow, and that EPD required additional investment just to break even. *Id.* at ¶30(b)(i). Despite knowing that EPD operated as a Ponzi scheme, Mr. Kirkland took actions for the benefit of the BC Trust and to the detriment of EPD's other creditors, including:

1) Arranging for Mr. Pressman, through EPD, to make monthly mortgage payments on the house in which Mr. Kirkland and his spouse resided, even though Mr. Kirkland knew that EPD was insolvent and operated as a Ponzi scheme. *Id*. at ¶30d.
2) Defending suits brought against EPD by its creditors absent a good-faith basis, while at the same time benefitting from payments made by EPD to his mortgage lender. *Id.* at ¶30e.
3) Orchestrating transfers which he knew were fraudulent under the Bankruptcy Code, for the purpose of staving off litigation by EPD's unpaid creditors. *Id.* at ¶30f.

4) Representing Plush Lounge, an entity that received significant transfers from EPD, and owed those sums to EPD, in litigation that severely depleted the assets of Plush Lounge, while simultaneously representing adverse party EPD. *Id.* at ¶30m.
5) Filing false and misleading pleadings in EPD's involuntary bankruptcy proceeding, contesting that EPD owed funds to creditors.
6) Contesting the EPD involuntary bankruptcy proceeding without a good-faith basis to do so, seeking to convert the proceeding to Chapter 11 without a good-faith basis to do so, and advising EPD and Mr. Pressman not to cooperate with the Trustee.

*First Claim for Relief: Disallowance of Proofs of Claim, or, in the Alternative, Equitable Subordination of Proofs of Claim Against the BC Trust and Mr. Kirkland*

On December 12, 2011, the BC Trust filed three proofs of claim in the bankruptcy case, all in the amount of $2.672 million. *Id.* at ¶39. On February 15, 2013, the BC Trust filed a proof of claim in Mr. Pressman's bankruptcy case—which has now been substantively consolidated with the EPD case—in the amount of $3.529 million. *Id.* All Proofs of Claim are secured claims, and were executed by Poshow Ann Kirkland as Trustee of the BC Trust. *Id.*

The BC Trust is the assignee of Mr. Kirkland's EPD Interests and the BC Trust's Proofs of Claim are based on the assignment of Mr. Kirkland's EPD Interests. *Id.* at ¶40. The BC Trust did not separately invest or loan funds to the Debtors; its rights are based solely on the assignment of Mr. Kirkland's EPD Interests, which assignment was orchestrated by Mr. Kirkland while he was counsel for Mr. Pressman and EPD. *Id.*

Mr. Kirkland engaged in inequitable conduct in his representation of EPD, as set forth above. The BC Trust, as Mr. Kirkland's assignee, stands in his shoes and took the assignment of the EPD Interests subject to Mr. Kirkland's actions. Accordingly, the BC Trust's claims should be disallowed or equitably subordinated. *Id.* at ¶42–47.

*Second through Sixth Claims for Relief: Avoidance and Recovery of Intentional and Constructive Fraudulent Transfers*

Prior to the filing of the petition, the Debtors made transfers to the BC Trust evidenced by the liens in favor of the BC Trust. The transfer to the BC Trust is avoidable as actually fraudulent pursuant to §544 (applying California Civil Code §§3439.04(a) and 3439.07) and §548(a)(1)(A). The transfer is avoidable as constructively fraudulent pursuant to §544 (applying California Civil Code §§3439.04(b), 3439.05, and 3439.07) because it was made without the Debtors receiving reasonably equivalent value at a time when the Debtors were (1) insolvent or (2) were engaged in a business or transaction for which any property remaining was an unreasonably small capital or (3) intended to incur debts beyond their ability to pay. For the same reasons, the transfer is avoidable as constructively fraudulent pursuant to §548(a)(1)(B).

Prior to the filing of the petition, the Debtors made transfers for the benefit of Mr. Kirkland and the BC Trust by issuing checks to a Union Bank account. Those transfers are avoidable as intentionally fraudulent pursuant to §544 (applying California Civil Code §§3439.04(a) and 3439.07) and §548(a)(1)(A). Those transfers are avoidable as constructively fraudulent pursuant to §544 (applying California Civil Code §§3439.04(b), 3439.05, and 3439.07) and §548(a)(1)(B).

All the avoidable transfers are recoverable pursuant to §550(a)(1).

**Summary of the Trustee's Motion for Summary Adjudication, the Defendants' Opposition Thereto, and the Trustee's Supporting Reply**

The Trustee moves to disallow the proofs of claim filed by the BC Trust on the grounds that the BC Trust has not established the claims' *prima facie* validity. The Trustee next argues that even if the claim is valid, any security interest held by the BC Trust could extend to only a small portion of the proceeds collected by the Trustee. The Trustee asserts that the BC Trust's pre-petition security interest cannot extend, as a matter of law, to amounts recovered by the Trustee through the exercise of his avoidance powers. The Trustee further asserts that the interest rate claimed by the BC Trust is usurious in California and is therefore unenforceable.

In the alternative, the Trustee asserts that the BC Trust's claims should be equitably subordinated. The Trustee asserts that the BC Trust took the assignment of Mr. Kirkland's EPD Interests subject to all rights and liabilities of Mr. Kirkland. The Trustee maintains that Mr. Kirkland engaged in inequitable conduct in connection with his representation of EPD. On this basis, the Trustee maintains that equitable subordination of the BC Trust's claim is appropriate.

In Opposition, Defendants contend that (1) the BC Trust's claims cannot be equitably subordinated because the Trustee has already recovered damages on account of the conduct giving rise to the claim for equitable subordination; (2) that any claims for inequitable conduct against Mr. Kirkland have been released in connection with the Trustee's settlement of claims against law firms at which Mr. Kirkland worked; (3) that the Trustee cannot reach the assets of the BC Trust because it is an irrevocable trust; (4) that genuine issues exist as to the amount of interest to which the BC Trust is entitled to receive on account of its claim; and (5) that the Trustee is barred from asserting that the BC Trust's lien cannot extend to assets of the estate collected by the Trustee, because the Trustee failed to adequately plead these issues in the Complaint.

In Reply to Defendants' Opposition, the Trustee asserts that Defendants raise only legal arguments and have failed to show any genuine dispute as to an issue of material fact that precludes the entry of summary adjudication. The Trustee rejects the Defendants' contention that the claims for inequitable conduct against Mr. Kirkland have been released, contending that Mr. Kirkland selectively quotes the release provisions of the settlement agreements out of context. The Trustee maintains that the irrevocability of the BC Trust does not defeat his claim for equitable subordination, because the equitable subordination claim does not seek to reach the assets of the BC Trust but rather to subordinate the claim to the claims of other creditors.

## II. Findings and Conclusions

At the outset, the Court notes that certain of the issues relevant to this matter are addressed in the Report and Recommendation that the Court has transmitted to the District Court in connection with the Trustee's Motion for Summary Adjudication as to the second, third, and sixth claims for relief. To the extent those issues are not restated herein, they are incorporated by reference.

Summary adjudication is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Civil Rule 56 (made applicable to these proceedings by Bankruptcy Rule 7056). The moving party has the burden of establishing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' only if it might affect the outcome of the case[.]" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The court is "required to view all facts and draw all reasonable inferences in favor of the nonmoving party" when reviewing the Motion. *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).

*Validity of the Proofs of Claim*

There is no genuine dispute as to the following facts. Mr. Kirkland invested in EPD in late 2007. In September 2009, Mr. Kirkland assigned his claims against the Debtors to the BC Trust. The BC Trust did not separately invest in or loan money to the Debtors, and did not pay Mr. Kirkland anything in exchange for the assignment.

On December 12, 2011, Poshow Kirkland filed Proofs of Claim Nos. 171, 235, and 236 on behalf of the BC Trust. Claim 171, 235, and 236 each list an amount owed of $2,672,000, as purportedly secured claims. On February 15, 2013, Poshow Kirkland filed Proof of Claim No. 13 in the consolidated case of Mr. Pressman. Claim 13 lists an amount owed of $3,529,000, as a secured claim. Claim 13 is the same as Claims 171, 235, and 236, but includes additional interest.

Ms. Kirkland has not amended any of the claims to include documentation or an itemization of claimed interest.

There is no dispute that the four claims are duplicative. The Court will disallow the duplicative proofs of claim and focus its analysis on whether the BC Trust is entitled to a single claim on account of the assignment of Mr. Kirkland's EPD Interests.

Under Bankruptcy Rule 3001(f), a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim. To overcome the presumption of validity created by a timely-filed proof of claim, an objecting party must do one of the following: (1) object based on legal grounds and provide a memorandum of points and authorities setting forth the legal basis for the objection; or (2) object based on a factual ground and provide sufficient evidence (usually in the form of declarations under penalty of perjury) to create triable issues of fact. *In re G.I. Indus., Inc.*, 204 F.3d 1276, 1280 (9th Cir. BAP 2000); *In re Medina*, 205 B.R. 216, 222 (9th Cir. BAP 1996); *In re Hemingway Transport, Inc.*, 993 F.2d 915, 925 (1st Cir. 1993). Upon objection, a proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *See Lundell v. Anchor Constr. Spec., Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (citing *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)). An objecting party bears the burden and must "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Holm*, 931 F.2d at 623. When the objector has shown enough evidence to negate one or more facts in the proof of claim, the burden shifts back to the claimant to prove the validity of the claim by a preponderance of evidence. *See Lundell*, 223 F.3d at 1039 (citation omitted).

The claim itself does not contain documentation substantiating the amounts claimed, and Ms. Kirkland's deposition testimony showed that she possessed only a rudimentary understanding of the basis for the claim:

> **Question (by Trustee's counsel):** Have you seen this document before?

> **Answer (in English):** Yes. I wrote this form and I signed it. I saw this one.
> **Question:** That's your signature at the bottom?
> **Answer (in English):** Yes.
> **Question:** And is that your handwriting—
> **Answer (in English):** Yes.
> **Question:** —in Sections 1 through 7?
> **Answer (in English):** Yes.
> **Question:** How did you arrive at the amount $2,672,000?
> **Answer (in English):** I find out from Jerry's office; someone told me.
> **Question:** You called up and someone gave you the amount?
> **Answer (in English):** I don't recall. I just—someone tell me to write this number, Jerry's office, somebody there.
> **Question:** You don't recall who?
> **Answer:** I don't recall who.
> **Question:** And did you base that amount off of anything else?
> **Answer (in English):** No. I know I have to file at that time. So I just find out the number and I wrote it there. Somebody from EPD's office tell me that's the amount they owed us, owed my kids' trust.

Poshow Kirkland Deposition Transcript [Doc. No. 262, Ex. 12] at 40:14–41:12.

As this litigation has progressed, Mr. Kirkland has supplied some additional evidence with respect to funds that he loaned to EPD (Mr. Kirkland subsequently assigned EPD's alleged obligation to him to the BC Trust). However, the evidence supplied is insufficient to substantiate the BC Trust's contention that it is owed $2,672,000 on account of amounts loaned by Mr. Kirkland.

In support of the BC Trust's claim, Defendants point to the declaration of Ruben J. Moreno, who worked as an account manager for EPD. Mr. Moreno contends that Mr. Kirkland loaned EPD $2,071,608.23 between September 2007 and October 2009. According to Mr. Moreno, the total balance owed the BC Trust, including interest, was $2,927,376.20 as of December 2010. Mr. Moreno asserts that, based on a default interest rate of 24%, the BC Trust is owed $14,381,715.78 as of December 2017. Mr. Kirkland also testifies as to the amounts that he loaned EPD between September 2007 and October 2009.

The Court finds that the testimony of Mr. Moreno and Mr. Kirkland is insufficient to create a genuine dispute as to the issue of how much Mr. Kirkland loaned EPD. Mr. Moreno's testimony cannot create a genuine issue because it contradicts his deposition testimony. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony. This sham affidavit rule prevents a party who has been examined at length on deposition from rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (internal citations and quotation marks omitted).

At his deposition, Mr. Moreno stated that he had never heard of the BC Trust and that he did not know whether the BC Trust had ever invested funds with EPD. Mr. Moreno did recall that Mr. Kirkland had invested funds with EPD, but he did not know how much Mr. Kirkland had invested. Mr. Moreno further testified that he had sent Mr. Kirkland an accounting of the funds that Mr. Kirkland had invested with EPD. However, Mr. Moreno testified that he obtained this information from Mr. Pressman:

>**Question (by Trustee's counsel):** Have you ever communicated with John Kirkland?
>**Answer:** Yes.
>**Question:** About what?
>**Answer:** He called me about a month ago to ask me for some information.
>**Question:** What kind of information?
>**Answer:** He wanted a listing of what he had deposited into EPD, I believe.
>**Question:** Anything else?
>**Answer:** That was it pretty much. It was pretty quick.
>**Question:** Did you speak with him by phone?
>**Answer:** Yes, only by phone.
>**Question:** And when you received that call, you didn't still work for EPD or Mr. Pressman, did you?
>**Answer:** No, I did not.
>**Question:** What did you tell him?
>**Answer:** I told him he would have to talk to Jerrold Pressman.
>**Question:** Did you provide anything to Mr. Kirkland?
>**Answer:** And then Jerrold asked me to provide him with the information.
>**Question:** Did you send information to Mr. Kirkland?
>**Answer:** I believe I did.
>**Question:** By e-mail?
>**Answer:** I think so. I don't remember or I could have faxed it over. Whatever he asked me to do after he talked to Jerry.
>**Question:** So your understanding is Kirkland then talked to Jerry Pressman and Jerry Pressman instructed you to send something to Mr. Kirkland?
>**Answer:** Yes.
>**Question:** So whatever it was, you didn't generate it, it was something Mr. Pressman gave to you?
>**Answer:** Yes.
>**Question:** Do you know what it was?
>**Answer:** It was a list of deposits.
>**Question:** And that came from Mr. Pressman?
>**Answer:** Yes.
>**Question:** Do you know how Mr. Pressman got it?
>**Answer:** Probably on the computer. It was probably on the computer somewhere. I might have given him the list on the computer, now that I'm thinking about it because I don't know where he would have got it at.
>**Question:** Other than that one call and e-mail or fax to Mr. Kirkland, have you communicated with Mr. Kirkland any other time since the bankruptcy case started?
>**Answer:** No.

Moreno Deposition Transcript 37–39.

Mr. Moreno's declaration testimony is fundamentally inconsistent with his deposition testimony. In his declaration filed in support of Defendants' Opposition to the Trustee's Motion for Summary Adjudication, Mr. Moreno states:

>Attached hereto as Exhibit A is a true and correct copy of the EPD account statements for John Kirkland. These statements come from the electronic accounting files of EPD

    prepared over the years and maintained under my supervision. The entries were input by myself and other accounting personnel at EPD at or near the time of each event.

Moreno Decl. [Doc. No. 307] at ¶2.

    The declaration testimony implies that Mr. Moreno had the ability to independently obtain information regarding EPD's accounts. By contrast, the deposition testimony shows that Mr. Moreno was able to determine how much Mr. Kirkland had loaned EPD only after consulting with Mr. Pressman. In this respect, Mr. Moreno's deposition testimony is materially inconsistent with his declaration testimony. As noted previously, a party cannot create an issue of fact by submitting declaration testimony inconsistent with that party's deposition testimony. Mr. Moreno's deposition testimony shows that he lacked personal knowledge of the amount that Mr. Kirkland loaned EPD—Mr. Moreno had to obtain the information from Mr. Pressman. The Court finds that the inconsistent declaration testimony, in which Mr. Moreno asserts that he does have personal knowledge of the amounts loaned by Mr. Kirkland, is inadmissible as a result of its inconsistency with the deposition testimony. Consequently, Mr. Moreno's declaration testimony cannot create a genuine dispute regarding the issue of how much Mr. Kirkland loaned to EPD.

    Mr. Kirkland also submits declaration testimony asserting that he loaned EPD $2,071,608.23 between September 2007 and October 2009. However, Mr. Kirkland does not provide any evidence substantiating the alleged loans. He does not provide any information regarding the methods of transfer or the originating or receiving bank account. He does not attach copies of checks or wire transfers. Mr. Kirkland's conclusory statements do not create a genuine issue of material fact. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

    Based on the report of the Trustee's expert witness Thomas Jeremiassen, the Court finds that there is no genuine dispute that Mr. Kirkland's net investment with EPD was no more than $1,116,755.41. *See* Doc. No. 267 at 26. This consists of a total of $1,221,608.23 that EPD received from Mr. Kirkland, less $104,852.82 in mortgage payments that EPD made on Mr. Kirkland's home. *Id.*

    The Trustee argues that $600,000 of the funds transmitted by Mr. Kirkland to EPD should not be deemed to be an investment, because those funds were booked to a revenue account entitled "Consulting & Professional Fees." However, Mr. Kirkland testifies that he had no knowledge of how EPD booked the funds that he transmitted. Accordingly, the Court cannot find that there is no genuine dispute as to the characterization of the $600,000 in funds.

    As set forth in greater detail below, the Court finds that although the BC Trust holds an allowed claim in the amount of $1,116,755.41 on account of funds that Mr. Kirkland loaned to EPD, the BC Trust's security interest cannot attach to the vast majority of the proceeds that have been collected by the Trustee. Further, the Court finds that to the extent the BC Trust's claim does attach to proceeds held by the estate, the Trustee is entitled to prevail upon his claim for equitable subordination.

*BC Trust's Claim Does Not Extend to Proceeds Held by the Estate in Connection with (1) Settlements Reached in Avoidance Actions Brought by the Trustee, (2) Settlements with John Kirkland's Former Law Firms, and (3) a Settlement with Mr. Geringer*

    The primary sources of the funds held by the estate are as follows (amounts listed below exceed the estate's cash on hand because fees have already been paid to professionals):

1) Settlements of the Trustee's avoidance claims, in the amount of $3,811,650.83.
2) Settlements with two of Mr. Kirkland's prior law firms, in the aggregate amount of $1,250,000.00.
3) A settlement with Robert Geringer, whereby Mr. Geringer paid the estate $3,615,817.85, representing the amount that Mr. Geringer paid Mr. Pressman for stock in North Hills Industrial Park, Inc.
4) Proceeds from the sale of stock in Ice Skating Enterprises, Inc., in the net amount of $54,588.83.
5) Proceeds in the amount of $50,000 in connection with Mr. Pressman's stock ownership in Sidecreek Development, Inc.

As a matter of law, even if BC Trust held a security interest, it could not extend to the proceeds collected by the Trustee through the settlements set forth in ¶¶1–3.

*1. Funds Recovered in Connection with the Settlement of the Trustee's Avoidance Claims*

As a matter of law, the funds collected by the Trustee in connection with the settlement of avoidance actions are not subject to any lien asserted by BCT. In *McGoldrick v. Juice Farms, Inc. (In re Ludford Fruit Prod., Inc.)*, 99 B.R. 18, 24–25 (Bankr. C.D. Cal. 1989), the court rejected a creditor's contention that it held a security interest in the recoveries obtained by the Trustee through the exercise of his avoidance powers:

> Juice Farms contends that since its security interest included both collateral that existed at the time the Security Agreement was executed and that Debtor acquired later, the preference actions and resulting recoveries obtained by Trustee for the benefit of Debtor's bankruptcy estate are collateral subject to Juice Farm's pre-petition security interest. Although simple and internally consistent, this analysis does not take into account 11 U.S.C. § 552 and therefore is incomplete.
>
> Section 552(a) provides:
>
>> (a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.
>
> Neither the preference actions nor the resulting recoveries in this case came into being until after Debtor filed its Chapter 11 petition. Therefore, Section 552(a) prevents Juice Farms' pre-petition security interest from attaching to the preference actions or the preference recoveries.
>
> An exception to Section 552(a) is contained in Section 552(b) of the Bankruptcy Code. Section 552(b) provides:
>
>> (b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, *if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, rents, of profits of such property, then such security interest extends to* such *proceeds, products,* offspring, rents, or profits *acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law,*

> except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. (Emphasis added.)
>
> Simply stated, Section 552(b) provides that if a pre-petition security interest encumbers proceeds of pre-petition collateral, the post-petition proceeds of pre-petition collateral will be subject to the creditor's pre-petition security interest.
>
> Juice Farms has failed to cite any persuasive authority that provides that the "general intangibles" at issue here—the bankruptcy estate's right to recover preferences under 11 U.S.C. § 547—are the proceeds of Juice Farms' pre-petition collateral. Logically, it is difficult to understand how an avoidance power action that springs into being with the commencement of a bankruptcy case could be the proceed of *any* form of collateral. California Commercial Code § 9306(1) defines "proceeds" to mean "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." The bankruptcy estate's right to sue under 11 U.S.C. § 547 is not received by the bankruptcy estate in exchange for the transfer of any property. Rather, it is a special power Congress grants to the fiduciary in charge of a bankruptcy estate, trustee or debtor in possession, to implement the equal distribution of assets among the various classes of claims in the estate.
>
> To conclude that preference actions are the proceeds of collateral held pursuant to a pre-petition security interest would not only violate logic but also the policy behind the avoidance powers. *See In re Integrated Testing Products Corp.,* 69 B.R. 901, 904–05 (D.N.J.1987). My conclusion is also buttressed by the language of California Commercial Code § 9306(4) which lists the types of proceeds in which a secured party has a perfected security interest in the event of an insolvency proceeding. Avoidance power choses in action are not listed there. Therefore, by its own terms, the exception set forth in subsection (b) of Section 552 does not allow Juice Farm's pre-petition security interest to attach to this estate's § 547 actions.

*Ludford Fruit*, 99 B.R. at 24–25.

The BC Trust cites *In re Figearo*, 79 B.R. 914, 918 (Bankr. D. Nev. 1987) for the proposition that proceeds collected in connection with the Trustee's avoiding powers may be subject to a creditor's security interest. The Court declines to follow *Figearo*, which is contrary to *Ludford Fruit*. The leading treatise, *Collier on Bankruptcy*, is consistent with *Ludford Fruit*:

> Some courts have ruled that, where the creditor has an independent right to recover the property in question, the creditor may claim an interest in that same property if and when it is recovered by the trustee pursuant to an avoiding power under the Bankruptcy Code. Under this reasoning, monies recovered as the result of a fraudulent transfer action sometimes are found to be "proceeds" of the creditor's independent right to follow such monies when they are traceable into the hands of the transferee.
>
> Other courts have distinguished these rulings when the avoidance action arises under the preference statute. According to these courts, preference recoveries are not "proceeds" of the creditor's collateral within the meaning of section 552(b)(1), because the right to recover a preference, unlike a chose in action for fraudulent transfer, occurs only in bankruptcy and is vested, with few exceptions, in a trustee.
>
> Once a bankruptcy case commences, however, because all recoveries under the avoiding powers are property of the estate, administered almost exclusively by the trustee for the benefit of the estate as a whole rather than for any creditor individually, it is difficult to see how such recoveries can be other than "after-acquired property" within the

meaning of section 552(a), rather than proceeds of prepetition collateral under section 552(b)(1). This is true for fraudulent transfers as well as preferences, and no persuasive distinction seems possible along these lines. Prebankruptcy state law preferences exist, and may be asserted postbankruptcy under section 544(b) of the Bankruptcy Code. And the assertion by a trustee of state fraudulent transfer law under section 544(b) allows for an expanded recovery under the rule of *Moore v. Bay*, as well as section 550, underscoring the fact that the recoveries that are property of the estate under section 541(a)(3) are peculiarly postpetition in nature. Indeed, a creditor may not sue to recover a state law fraudulent transfer once a case in bankruptcy is commenced, because this would be taking a chose in action from the estate, thereby violating the automatic stay. On the whole, therefore, the more persuasively reasoned opinions do not permit secured creditors to share in recoveries obtained by bankruptcy trustees or estate representatives pursuant to the avoiding powers, even where such creditors may have independent, traceable rights to those funds.

5-552 *Collier on Bankruptcy* ¶ 552.02 (16th ed. 2017).

The Court further notes that *Figearo* is contrary to the weight of authority and has not been followed by more recent cases. *See, e.g., Official Committee of Unsecured Creditors v. UMB Bank, NA et al. (In re Residential Capital, LLC)*, 497 B.R. 403, 414 (Bankr. S.D.N.Y. 2013) (declining to follow *Figearo*; holding that the Trustee's avoidance power claims "must be considered after-acquired property belonging to the estate"; and holding that "because the Debtor does not own the right to pursue a fraudulent transfer action in bankruptcy (since that action belongs to the trustee post-petition under section 554(b)), the Debtor could not have encumbered or assigned that right prepetition").

*2. Funds Recovered through Settlements With Mr. Kirkland's Former Law Firms*

Funds recovered by the Trustee in connection with the settlement of the Trustee's claims against two of Mr. Kirkland's former law firms cannot be subject to any security interest of the BC Trust. The Trustee asserted claims against Luce Forward Hamilton & Scripps LLP ("Luce Forward") for the avoidance and recovery of transfers pursuant to §§544, 547, 548, and 550, as well as claims for professional negligence, legal malpractice, and breach of fiduciary duty. The Trustee settled those claims for a payment of $750,000.

As discussed above, claims based upon the Trustee's avoiding powers are not subject to a prepetition creditor's lien, pursuant to §552(a). The Trustee's claims against Luce Forward for professional negligence and legal malpractice arose from Mr. Kirkland's misconduct while he was employed at Luce Forward. The BC Trust, as Mr. Kirkland's assignee, does not hold a security interest in the proceeds of a settlement that resulted from Mr. Kirkland's misconduct.

The Trustee asserted claims against Greenberg Traurig LLP and Greenberg Traurig PA ("Greenberg Traurig") for the avoidance and recovery of transfers pursuant to §§544, 547, 548, and 550, as well as claims for professional negligence, legal malpractice, and breach of fiduciary duty. The Trustee settled those claims for a payment of $500,000. Similar to the settlement with Luce Forward, the settlement with Greenberg Traurig arose in connection with Mr. Kirkland's misconduct while he was employed at Greenberg Traurig. The settlement with Greenberg Traurig, like the settlement with Luce Forward, is not subject to a prepetition creditor's lien.

*3. Funds Recovered through the Settlement With Robert Geringer*

The Trustee recovered $3,615,817.85 in connection with a settlement with Robert Geringer. The settlement was based on payments made by Mr. Geringer for the purchase of stock in NHIP.

The BC Trust points to a UCC financing statement recorded in September 2009 in support of its contention that it holds a security interest in NHIP's stock, and therefore a security interest in the proceeds of the settlement with Mr. Geringer. The BC Trust ignores the fact that an amended UCC-3 financing statement was subsequently recorded that provides: "This amendment is to clarify and confirm that the prior grant of security did not include the stock of North Hills Industrial Park, Inc., [NHIP] a California S-Corporation."

Lisa Underkoffler, Mr. Kirkland's secretary, filed the amended UCC-3 on May 5, 2010. Doc. No. 262 at Ex. 18 (document produced by National Corporate Research, Ltd., establishing that the UCC-3 was filed by Ms. Underkoffler). Ms. Underkoffler testified that she would not have filed the UCC-3 absent Mr. Kirkland's authorization.

Mr. Kirkland states that he never consented to the filing of the amended financing statement, was never told about the amended financing statement, and contends that the amended financing statement was filed at a time when he was out of the country and had limited communication with his office. Doc. No. 304 at ¶28.

The Court finds that at the time Ms. Underkoffler filed the UCC-3, she was an agent of Mr. Kirkland acting within the scope of her authority. As a result, Mr. Kirkland is bound by Ms. Underkoffler's filing of the UCC-3. *See* Cal. Civ. Code §2330; *Official Committee of Unsecured Creditors v. City Nat. Bank, N.A.*, 2011 WL 1832963, at *5 (N.D. Cal. 2011) ("It is well established that a principal is bound by the acts of an agent acting within the scope of the agent's authority."). Being bound by the acts of his agent Ms. Underkoffler, Mr. Kirkland cannot create a genuine dispute of material fact by testifying that he did not consent to the filing of the UCC-3.

*The Trustee Has Not Demonstrated that He Is Entitled to Surcharge the BC Trust's Claim*

The only proceeds as to which the BC Trust's alleged security interest could conceivably attach are the $54,588.53 that the Trustee obtained from the sale of stock in Ice Skating Enterprises, Inc. and the $50,000 that the Trustee obtained on account of Mr. Pressman's stock ownership interested in Sidecreek Development, Inc.

The Trustee asserts that he is entitled to surcharge the BC Trust's claim, and that such surcharge vastly exceeds the proceeds as to which the claim could be attach. The Trustee is correct that, pursuant to §506(c), he is entitled to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim …." However, such a recovery would be limited to the costs incurred by the Trustee in selling the Ice Skating Enterprises stock and obtaining the distribution on account of Mr. Pressman's Sidecreek Development stock. The Trustee has not furnished any evidence of the amounts incurred to liquidate such property. Instead, the Trustee points only to the attorneys' fees accrued in liquidating all the assets of the estate.

*The Trustee is Entitled to Prevail Upon His Equitable Subordination Claim*

Ultimately, the fact that the BC Trust's claim can attach to a small portion of the proceeds collected by the Trustee is unavailing, as the Court finds that the Trustee is entitled to prevail upon his claim for equitable subordination.

Section 510(c) provides that "the court may under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another

allowed claim." The subordination of claims based on equitable considerations generally requires three findings: "(1) that the claimant engaged in some type of inequitable conduct, (2) that the misconduct injured creditors or conferred unfair advantage on the claimant, and (3) that subordination would not be inconsistent with the Bankruptcy Code." *Henry v. Lehman Comm. Papers, Inc. (In re First All. Mortgage Co.)*, 471 F.3d 977, 1006 (9th Cir. 2006).

The BC Trust acquired Mr. Kirkland's EPD Interests through an assignment, and therefore remains subject to the rights and liabilities of Mr. Kirkland, including any liability flowing from Mr. Kirkland's inequitable acts prior to assignment. Here, there is no genuine dispute as to the facts establishing that Mr. Kirkland engaged in inequitable conduct sufficient to support equitable subordination.

Mr. Kirkland's conduct was inequitable in significant part because of his status as an insider of EPD. Mr. Kirkland's insider status is established by the fact that Mr. Kirkland was EPD's agent for service of process and served as outside counsel for companies partially owned or controlled by Mr. Pressman, including Plus Lounge Las Vegas LLC, SC Club LP, and Broadway Entertainment Marketing Inc. Even in situations where Mr. Kirkland did not formally represent EPD, he controlled EPD's legal advice and actions. For example, on March 21, 2006, Christopher Austin, an associate at Greenberg Traurig, the law firm at which Mr. Kirkland was then a partner, sent an e-mail to Mr. Kirkland stating:

> I note that EPD Investment Company, LLC is the secured party on the UCC-1 filing for the inventory at Plush Lounge. I assume EPD is another company owned/controlled by Jerry and that we are counsel for EPD. Can you confirm the relationship? I'm in the process of preparing the letter demanding the delivery/return of the remaining items identified on the UCC-1 that we were unable to recover because Marriott kicked us out, and it seems to me that the demand should come from the secured party EPD as well as (or perhaps exclusive of) Plush Lounge Las Vegas, LLC (the identified Debtor). Your thoughts?

Doc. No. 262 at Ex. 16 (records produced by Greenberg Traurig LLP).

Mr. Kirkland responded: "Please make the demand on behalf of Plush. I'll have a different lawyer make the demand on behalf of EPD." *Id.*

Defendants object to the introduction of these e-mails on the grounds that they were not timely submitted and that they are protected by the attorney-client and work-product privileges. Defendants' objections are overruled.

With respect to timely submission, it is true that the e-mails were inadvertently omitted from the exhibits attached to the Trustee's declaration in support of the Motion for Summary Adjudication [Doc. No. 262]. However, that declaration is 2,377 pages long. In addition, the e-mails were included as exhibits to deposition transcripts that were lodged in connection with the Motion. Defendants have had an opportunity to submit additional briefing setting forth their evidentiary objections to the e-mails. Under these circumstances, it would place form over substance to strike the e-mails on timeliness grounds.

The Court rejects Defendants' argument that the e-mails are protected by the attorney-client privilege. The attorney-client privilege "normally extends both to the substance of the client's communication as well as the attorney's advice in response thereto," and also extends "to those papers prepared by an attorney or at an attorney's request for the purpose of advising a client, provided the papers are based on and would tend to reveal the client's confidential communications." *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). However, the privilege does not extend "beyond the substance of the client's confidential communications to the

attorney" and "will not conceal everything said and done in connection with an attorney's legal representation of a client in a matter." *Id.*

The e-mails merely establish that Mr. Kirkland controlled EPD's legal strategy even in situations where he did not formally represent EPD. They do not reveal the substance of confidential communications by either Plush or EPD to Mr. Kirkland. They do not reveal any substantive legal advice given by Mr. Kirkland to either Plush or EPD. Mr. Kirkland's directive to have one attorney send a demand letter on behalf of EPD and have a different attorney send a demand letter on behalf of Plush does not constitute the type of substantive legal advice protected by the privilege. Accordingly, the attorney-client privilege does not apply.

With respect to Defendants' work-product privilege objection, the Court finds that the work-product privilege does not prevent admission of the e-mails solely for the purpose of establishing that Mr. Kirkland controlled EPD's legal strategy even when he did not formally represent EPD. The work-product privilege protects from disclosure "the mental impressions, conclusions, opinions, or legal theories ... of an attorney or other representative of a party." *Upjohn Co. v. United States*, 449 U.S. 383, 400. Here, the e-mails are relevant only insofar as they demonstrate that Mr. Kirkland controlled EPD's legal strategy; the specific legal advice Mr. Kirkland rendered is not relevant to this litigation. Therefore, admission of the e-mails for the sole purpose of establishing Mr. Kirkland's control of EPD's legal strategy does not violate the work-product privilege.

Mr. Kirkland's inequitable conduct consisted of facilitating the recordation of the UCC-1 financing statement in favor of the BC Trust, at the same time that EPD was experiencing serious cash flow problems and was not paying its other creditors. These actions inured to the detriment of EPD's other creditors but benefited the BC Trust in favor of Mr. Kirkland's children. The actions were undertaken at a time when EPD was experiencing serious cash flow issues. The recordation of the lien in favor of the BC Trust consisted of substantially all of EPD's remaining assets.

Because the Court finds that the Trustee is entitled to prevail upon his claim for equitable subordination, the Court does not rule upon the amount of interest, if any, to which EPD is entitled. Such a determination is unnecessary given that EPD's claim will be subordinated to all other claims.

*Defendants' Arguments in Opposition to the Motion Lack Merit*

Defendants assert various arguments in opposition to the Motion for Summary Adjudication, all of which lack merit.

First, Defendants argue that the Trustee's claims against Mr. Kirkland have been released in connection with settlements entered into between the Trustee and Mr. Kirkland's former law firms. Defendants selectively quote portions of the release provisions out of context. The releases preserved the Trustee's claims against Mr. Kirkland; only the claims against the law firms were released.

Second, Defendants argue that the Trustee may not obtain equitable subordination because he has already recovered amounts in settlements from Mr. Kirkland's prior law firms. The Trustee's settlements with those prior firms were based on avoidance actions and claims for malpractice and breach of fiduciary duty. The instant claims for equitable subordination are not duplicative of claims previously asserted. Defendants' argument lacks merit.

Third, the Trustee's disallowance and equitable subordination claims are not time-barred. Defendants claim that a statute of limitations was somehow triggered based on the date that Mr.

Kirkland ceased employment with the law firm Luce Forward. Defendants' position is contrary to the Bankruptcy Code, which permits the Trustee to object to proofs of claim, and provides for the equitable subordination of claims. None of these provisions are subject to a statute of limitations.

Fourth, Defendants assert that the BC Trust has a defense to the Trustee's avoidance claims because the BC Trust qualifies as a holder in due course that took for value and in good faith under Cal. Comm. Code §3302(a). According to Defendants, the BC Trust took for value because the beneficiaries of the BC Trust are Mr. and Mrs. Kirkland's children, and Mr. and Mrs. Kirkland are required to support their children pursuant to Cal. Fam. Code §4053(b) and (d).

Defendants do not contest that no money or property of any kind was provided by the BC Trust to Mr. Kirkland in exchange for Mr. Kirkland's assignment of his EPD Interests to the BC Trust. Defendants instead rely upon the novel proposition that the Kirkland's obligation to support their children constitutes "value" within the meaning of Cal. Comm. Code §3302(a). Defendants do not cite any authority for this proposition, and the Court finds that it lacks merit. The Kirkland's independent statutory obligation to provide for their children cannot serve as a mechanism to enable Defendants to circumvent the Bankruptcy Code's fraudulent transfer provisions. Such a result would make it far too easy for debtors to avoid obligations to their creditors.

## III. Conclusion

Based upon the foregoing, the Court finds that the Trustee is entitled to judgment in his favor on his equitable subordination claim. The findings set forth herein will not become the order of the Court until the District Court acts upon the Report and Recommendation submitted in connection with the Trustee's related motion for summary adjudication with respect to his fraudulent transfer claims.

###

Date: February 17, 2018

Ernest M. Robles
United States Bankruptcy Judge